**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Proposed Counsel to the Debtor and Debtor in*
  *Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                                    :          Chapter 11
                                                         :
DOWLING COLLEGE,                                         :          Case No. 16-75545 (REG)
                                                         :
                                                         :
                                    Debtor.              :
-----------------------------------------------------------------x

**APPLICATION FOR AN ORDER APPOINTING GARDEN CITY GROUP, LLC, AS**
**CLAIMS AND NOTICING AGENT FOR THE DEBTOR PURSUANT TO 28 U.S.C.**
**§ 156(c) AND 11 U.S.C. § 105(a), *NUNC PRO TUNC* TO THE PETITION DATE**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned

chapter 11 case (the "Chapter 11 Case"), hereby submits this application for entry of an order,

substantially in the form of Exhibit C attached hereto (the "Retention Order") pursuant to Section

156(c) of title 28 of the United States Code and Section 105(a) of title 11 of the United States

Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), appointing Garden City Group, LLC

("GCG") as claims and noticing agent ("Claims and Noticing Agent") in the Debtor's Chapter 11

Case (the "Section 156(c) Application") *nunc pro tunc* to the Petition Date (as defined below).

In support of the Section 156(c) Application, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding under 28 U.S.C. § 157(b).

3.      Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein is Section 156(c) of title 28 of the United States Code, E.D.N.Y. Local Bankruptcy Rule 5075-1, Section 105(a) of the Bankruptcy Code and the Guidelines for First Day Motions adopted by the Board of Judges for this Court (the "First Day Guidelines").

## BACKGROUND

5.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

6.      The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No trustee, examiner or official committee has been appointed in this Chapter 11 Case.

8.      Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

9.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration")

## RELIEF REQUESTED

10.     By this Section 156(c) Application, the Debtor respectfully requests the entry of an Order pursuant to 28 U.S.C. § 156(c) and Bankruptcy Code Section 105(a), for an order appointing GCG to act as Claims and Noticing Agent *nunc pro tunc* to the Petition Date and pursuant to the terms of the Engagement Agreement annexed hereto as Exhibit B.  In Support of this Section 156(c) Application, the Debtor submits the Declaration of Craig Johnson, attached hereto as Exhibit A (the ("Johnson Declaration").

11.     Under the terms of the proposed Engagement Agreement, GCG will assume  full responsibility for the distribution of notices, the processing of proofs of claim filed in the Debtor's Chapter 11 Case, and the maintenance of the official claims register.  By appointing GCG as the Claims and Noticing Agent in this Chapter 11 Case, the distribution of notices and the processing of claims will be expedited, and the Clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

12.     Prior to its selection of GCG as the Claims and Noticing Agent, the Debtor obtained and reviewed engagement proposals from two (2) other Court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that GCG's rates are competitive and reasonable given GCG's quality of service and expertise.  Accordingly, the Debtor's selection of GCG satisfies 28 U.S.C. § 156(c).

13.     By separate application, the Debtor may seek authorization to retain and employ GCG as administrative advisor in the Chapter 11 Case pursuant to Section 327(a) of the Bankruptcy Code because the administration of the Chapter 11 Case may require GCG to perform duties for the Debtor outside the scope of 28 U.S.C. § 156(c).

## BASIS FOR RELIEF REQUESTED

14.     Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases.  It provides, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

15.     In addition, E.D.N.Y. Local Bankruptcy Rule 5075-1 provides in pertinent part as follows:

> The Court may permit, subject to the supervision of the Clerk, the use of services and agents to maintain Court records, issue notices, file certain documents, and maintain and disseminate other administrative information when the costs of such services and agents are paid for by the estate.

E.D.N.Y. LBR 5075-1.

16.     Pursuant to Local Rule 5075-1, the Debtor has spoken with the Clerk's Office, has shared a draft of this Section 156(c) Application with the Clerk and has received and incorporated the Clerk's comments into the Section 156(c) Application and Order prior to filing.

17.     In compliance with the E.D.N.Y. Local Bankruptcy Rules and First Day Guidelines, the Debtor obtained and reviewed engagement proposals from three (3) court-

approved notice and claims agents.  The Debtor provided three (3) notice and claims agent with basic facts about the Debtor's case and asked each notice and claims agent to submit a written proposal based on the facts.  Based on correspondence with the claims agent and their answers to case-specific pricing questions, the Debtor selected GCG as its notice and claims agent on account of GCG superior capability and price terms.

18.     Although the Debtor has not yet filed its schedules of assets and liabilities, it anticipates that there will be hundreds of entities to be noticed.  Without the assistance of a claims and noticing agent, the Debtor is not equipped to efficiently and effectively distribute all notices that are likely to be required in this Chapter 11 Case.  In view of the number of anticipated claimants and the complexity of the Debtor's business, the Debtor submits that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtor's estate and its creditors.

19.     The Debtor believes that its estate and creditors will benefit from GCG's retention and that GCG is fully equipped to handle the volume of mailing involved in properly sending the required notices to, and processing the claims of, creditors and other parties in interest in this Chapter 11 Case.

## GCG'S QUALIFICATIONS

20.     GCG  is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  GCG professionals have experience in noticing, claims administration, solicitation and tabulation of votes on any plan, and handling other administrative aspects of chapter 11 cases of this size and complexity.  GCG has acted as the claims and noticing agent in numerous cases of comparable size within this District, including but not limited to: In re Long Beach Medical Center, et al.,

Case No. 14-70593 (AST) (Bankr. E.D.N.Y. Feb. 26, 2016); <u>In re Peninsula Hospital, et al.</u>, Case No. 11-47056 (ESS) (Bankr. E.D.N.Y. Nov. 28, 2011); <u>In re Agape World, Inc.</u>, Case No. 09-70660 (DTE) (Bankr. E.D.N.Y. Mar. 12, 2009); <u>In re Cooperfield Investment, LLC</u>, Case No. 07-71327 (CEC) (Bankr. E.D.N.Y. Aug. 20, 2007); <u>In re Zurich Depository Corp.</u>, Case No. 07-71352 (JBR) (Bankr. E.D.N.Y. June 20, 2007).[1]

## <u>SCOPE OF RETENTION</u>

21.    This Section 156(c) Application pertains only to the work to be performed by GCG as Claims and Noticing Agent under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and E.D.N.Y. LBR 5075-1, and any work to be performed by GCG as Claims and Noticing Agent outside of this scope is not covered by this Section 156(c) Application or by any order granting approval hereof.   Specifically, GCG as Claims and Noticing Agent will perform the following tasks in its role as claims and noticing agent (the "<u>Claims and Noticing Services</u>"), as well as all quality control relating thereto:

(a) prepare and serve required notices and documents in the Chapter 11 Case in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of the Chapter 11 case and the initial meeting of creditors under Bankruptcy Code section 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan of liquidation, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Case.

(b) maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules</u>"), listing the Debtor's known creditors and any amounts owed thereto;

---

[1] Because of the voluminous nature of the cases referenced herein, orders granting GCG's retention are not attached to the Section 156(c) Application.  Copies of such orders, however, are available on request of the Debtor's proposed counsel.

(c) maintain (i) a list of potential creditors and parties-in-interest, (ii) a "core" mailing list consisting of all parties described in Sections 2002(i), (j) and (k) of the Bankruptcy Code and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and (iii) a "Master Service List" and "General Service List" as described in the Debtor's case management procedures and update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d) furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f) for *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g) process all proofs of claim received, including those received by the Clerk's office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h) maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

(i) implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(j) record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); provided, however, that if any evidence of transfer of claim(s) is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to

waive the 21-day notice and objection period required under Bankruptcy Rule 3001(e), then process the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

(k) coordinate with the Clerk to promptly include all of the Court-filed proofs of claim (whether filed electronically or in hard copy) on the Claims Register;

(l) upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk upon the Clerk's request copies of the Claims Register for the Clerk's review;

(m) monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and make necessary notations on and/or changes to the Claims Register;

(n) identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(o) assist in the dissemination of information to the public, and respond to requests for administrative information regarding the Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

(p) if the Chapter 11 Case is converted to chapter 7, contact the Clerk's office within three (3) days of the notice of entry of the order converting the Chapter 11 Case;

(q) thirty (30) days prior to the close of the Chapter 11 Case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Case;

(r) within seven (7) days of notice to Claims and Noticing Agent of entry of an order closing the Chapter 11 case, provide to the Court the final version of the Claims Register in an electronic format along with images of all claims in numeric order as of the date immediately before the discharge of the Claims and Noticing Agent or before the close of the Chapter 11 Case;

(s) at the close of this Chapter 11 Case, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office;

(t) provide such other related claims and noticing services as the Debtor may require in connection with the Chapter 11 Case.

22.      The Claims Register shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by GCG as Claims and Noticing Agent.

## COMPENSATION

23.      The Debtor proposes to retain GCG under the terms set forth in the Engagement Letter and at the rates set forth in the pricing schedule provided to the Debtor (the "Dowling Pricing Schedule").[2]  The Debtor believes these rates and terms are consistent with the market for comparable services.

24.      The Debtor also proposes that the cost of GCG's services be paid from the Debtor's estate pursuant to Section 156(c) of title 28 of the United States Code and Section 503(b)(1)(A) of the Bankruptcy Code.  Moreover, the Debtor believes that the fees and expenses incurred by GCG are administrative in nature and should not be subject to the standard fee application procedures for professionals.  As such, the Debtor requests authority to compensate GCG in accordance with the terms of the Engagement Agreement in the ordinary course of business without further application to, or order of, the Court.

25.      GCG agrees to maintain records of all Claims and Noticing Services, including showing dates, categories of Claims and Noticing Services, fees charged and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee, counsel to the Debtor, counsel to any official committee monitoring the expenses of the Debtor, and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises

---

[2] Due to the competitive and sensitive nature of the Dowling Pricing Schedule, the Debtor attaches GCG's standard, discounted pricing schedule to the Engagement Agreement as filed.  The Dowling Pricing Schedule provides additional discounted hourly rates and pricing concessions.  Upon request, the Debtor will provide a copy of the Dowling Pricing Schedule to the Court and the United States Trustee.

relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

26.     Prior to the Petition Date the Debtor provided GCG as Claims and Noticing Agent a retainer in the amount of $15,000.  GCG seeks to first apply the retainer to all prepetition invoices, and thereafter to apply any retainer amount against the final invoice submitted to the Debtor for postpetition Claims and Noticing Services rendered under the Engagement Agreement.

27.     For the avoidance of doubt, all payments to GCG on account of compensation in this Chapter 11 Case shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash and other collateral, including but not limited to any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Motion and those materials.

## GCG'S DISINTERESTEDNESS

28.     Although the Debtor does not propose to employ GCG under Section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application, GCG has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Johnson Declaration, GCG has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed, and that it is a "disinterested person," as defined in Section 101(14) of the Bankruptcy Code.

29.    In connection with its retention as Claims and Noticing Agent, GCG represents in the Johnson Declaration, among other things, that:

(a) GCG is not a creditor of the Debtor;

(b) GCG will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

(c) by accepting employment in the Chapter 11 Case, GCG waives any rights to receive compensation from the United States government in connection with the Debtor's Chapter 11 Case;

(d) in its capacity as the Claims and Noticing Agent in this Chapter 11 Case, GCG will not be an agent of the United States and will not act on behalf of the United States; and

(e) GCG will no employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this Chapter 11 Case;

(f) it is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) with respect to the matters upon which it is to be engaged.

## NOTICE

30.    As of the filing of this Section 156(c) Application, no trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case.  Notice of this Motion will be given to (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) the holders of the 20 largest unsecured claims; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

## **<u>NO PRIOR REQUEST</u>**

31.     No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor requests entry of the Retention Order, in the form attached hereto as <u>Exhibit C</u>, authorizing GCG to act as claims and noticing agent for the maintenance and processing of claims and the distribution of notices.

Dated:   New York, New York
          November 29, 2016

                                        **KLESTADT WINTERS JURELLER**
                                        **SOUTHARD & STEVENS, LLP**


                                By:   */s/ Sean C. Southard*
                                        Sean C. Southard
                                        Lauren C. Kiss
                                        200 West 41st Street, 17th Floor
                                        New York, NY 10036
                                        Tel: (212) 972-3000
                                        Fax: (212) 972-2245
                                        Email: ssouthard@klestadt.com
                                                 lkiss@klestadt.com

                                        *Proposed Attorneys to the Debtor and Debtor*
                                        *   in Possession*

# Exhibit A

**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Proposed Counsel to the Debtor and Debtor in*
  *Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                          :          Chapter 11
                                                               :
DOWLING COLLEGE,                                               :          Case No. 16-_____ (  _)
                                                               :
                                                               :
                                 Debtor.                       :
----------------------------------------------------------------x

### DECLARATION OF CRAIG JOHNSON IN SUPPORT OF DEBTOR'S APPLICATION TO RETAIN AND TO EMPLOY GARDEN CITY GROUP, LLC AS CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE, AND APPROVING RELATED AGREEMENT

Craig Johnson makes this declaration under 28 U.S.C. § 1746, and states the following:

1.      I am an Assistant Vice President, Operations of Garden City Group, LLC ("GCG"), a bankruptcy administrator and class action settlement company, and I am authorized to make and submit this declaration on behalf of GCG.

2.      This declaration (the "Declaration") is submitted in support of the Application of Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), seeking authorization to retain GCG as the official claims and noticing agent (the "Claims and Noticing Agent") in the Debtor's Chapter 11 Case *nunc pro tunc*

to the Petition Date, pursuant to 28 U.S.C. § 156(c) (the " Section <u>156(c)  Application</u>")[1].  Except as otherwise noted, I have personal knowledge of the facts contained in this Declaration.

3.     GCG is one of the country's leading Chapter 11 case administrators and is well equipped to assist the Debtor in connection with the Chapter 11 Case.  GCG specializes in providing comprehensive administrative services to debtors in chapter 11 cases including, among other things, services pertaining to noticing and managing the administration of the Debtor's claims and claims register.  GCG has been retained as the official claims and noticing agent in several cases within the Eastern District of New York, including, but not limited to, the following: <u>In re Long Beach Medical Center, et al.</u>, Case No. 14-70593 (AST) (Bankr. E.D.N.Y. Feb. 26, 2016); <u>In re Peninsula Hospital, et al.</u>, Case No. 11-47056 (ESS) (Bankr. E.D.N.Y. Nov. 28, 2011); <u>In re Agape World, Inc.</u>, Case No. 09-70660 (DTE) (Bankr. E.D.N.Y. Mar. 12, 2009); <u>In re Cooperfield Investment, LLC</u>, Case No. 07-71327 (CEC) (Bankr. E.D.N.Y. Aug. 20, 2007); and <u>In re Zurich Depository Corp.</u>, Case No. 07-71352 (JBR) (Bankr. E.D.N.Y. June 20, 2007).

4.     The Debtor has selected GCG to serve as its Claims and Noticing Agent, as further detailed in the Section 156(c) Application.  The services to be performed by GCG are set forth in detail in both the Section 156(c) Application and the Engagement Agreement by and between the Debtor and GCG, attached to the Section 156(c) Application as <u>Exhibit B</u>, and are incorporated herein by reference.  GCG will charge the Debtor the rates set forth in a pricing schedule provided to the Debtor (the "<u>Dowling Pricing Schedule</u>").

5.     By separate application, the Debtor may seek authorization to retain and employ GCG as administrative advisor in the Chapter 11 Case pursuant to Section 327(a) of the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

Bankruptcy Code because the administration of the Chapter 11 Case may require GCG to perform duties for the Debtor outside the scope of 28 U.S.C. § 156(c).

6.      GCG represents, among other things, that:

(a)     GCG is not a creditor of the Debtor;

(b)     GCG will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

(c)     by accepting employment in the Chapter 11 Case, GCG waives any rights to receive compensation from the United States government in connection with the Debtor's Chapter 11 Case;

(d)     in its capacity as the Claims and Noticing Agent in this Chapter 11 Case, GCG will not be an agent of the United States and will not act on behalf of the United States;

(e)     GCG will no employ any past or present employees of the Debtor in connection with its work as the claims and noticing agent in this Chapter 11 Case;

(f)     GCG is a "disinterested person" as that term is defined in Bankruptcy Code Section 101(14) with respect to the matters upon which it is to be engaged;

(g)     in its capacity as Claims and Noticing Agent in this Chapter 11 Case, GCG will not intentionally misrepresent any fact to any person;

(h)     GCG will be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

(i)     GCG will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by GCG as Claims and Noticing Agent in this Chapter 11 Case shall be at the expense of the Clerk's office.

7.      At this time, to the best of my knowledge, neither GCG, nor any of its professional personnel have any relationship with the Debtor that would impair GCG's ability to serve as Claims and Noticing Agent.

8.      GCG may have relationships with some of the Debtor's creditors, but they are in matters completely unrelated to the Chapter 11 Case, either as vendors or in cases where GCG serves in a neutral capacity as a class action settlement claims administrator or bankruptcy administrator.  GCG's assistance in the cases where GCG acts as a class action settlement claims administrator has been primarily related to the design and dissemination of legal notice and other administrative functions in class actions.  In addition, GCG personnel may have relationships with some of the Debtor's creditors however, such relationships are of a personal, financial nature and completely unrelated to the Chapter 11 Case.  GCG has working relationships with certain of the professionals retained by the Debtor and other parties herein, but such relationships are completely unrelated to the Chapter 11 Case.  GCG has represented and will continue to represent, clients in matters unrelated to the Chapter 11 Case, and has had, and will continue to have, relationships in the ordinary course of its business with certain vendors and professionals in connection with matters unrelated to the Chapter 11 Case.

9.      Since 1999, GCG has been a wholly owned subsidiary of Crawford & Company. I am advised that Crawford & Company has no material relationship with the Debtor, and while it may have rendered services to certain creditors, received services from certain creditors or have a vendor relationship with some creditors, such relationships were (or are) in no way connected to GCG's retention by the Debtor in the Chapter 11 Case.  To the extent GCG discovers any facts bearing on matters described herein, GCG will supplement information contained herein.

10.     GCG has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, the Chapter 11 Case.  If GCG's proposed retention is approved by this Court, GCG will not accept any engagement or perform any service for any entity or any person other than the Debtor in this Chapter 11 Case without the express consent and authority of the Debtor.  In addition, GCG may provide professional services to entities or persons that may be creditors or parties in interest in this Chapter 11 Case, which services do not relate to, or have any direct connection with, the Chapter 11 Case or the Debtor.

11.     The Debtor does not owe GCG any amounts for services performed or expenses incurred prior to the Petition Date.  Prior to the Petition Date, GCG received a retainer of $15,000 in anticipation of the services to be rendered by GCG in connection with the commencement of the Chapter 11 Case.  GCG will first apply the retainer against all prepetition fees and expenses and thereafter against the final bill issued to the Debtor for fees and expenses for services that GCG will render in the Chapter 11 Case.

12.     Subject to the Court's approval, the Debtor has agreed to compensate GCG for professional services rendered in connection with the Chapter 11 Case, pursuant to the Engagement Agreement.  Payments shall be made by the Debtor to GCG upon GCG's submission of billing statements, including a detailed listing of services and expenses, at the end of each calendar month.

13.     GCG shall comply with all requests of the Clerk of the Court and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

14.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed on this 16th day of November, 2016

_/s/ Craig Johnson_
Craig Johnson
Assistant Vice President, Operations
Garden City Group, LLC

# **<u>Exhibit B</u>**



GCG™
Garden City Group, LLC™

## BANKRUPTCY ADMINISTRATION AGREEMENT

This Bankruptcy Administration Agreement, dated as of November 14, 2016, is between Garden City Group, LLC, a Delaware limited liability company (the "Company"), and Dowling College (the "Client").

The Client desires to retain the Company to perform certain basic administrative services for the Client in its chapter 11 case anticipated to be filed in the United States Bankruptcy Court for the Eastern District of New York (such Court or such other Bankruptcy Court where said chapter 11 cases may actually be filed in lieu thereof, the "Bankruptcy Court"), and the Company desires to be retained to perform such services in accordance with the terms and conditions of this Agreement.

In consideration of the mutual covenants herein contained, the parties hereby agree as follows:

1.    Services.  The Company agrees to provide certain basis claims, noticing, solicitation, tabulation, website, and other services relating to the administration of the Client's case (the "Services") commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The pricing for the Services is set forth in the pricing schedule, dated November 11, 2016 that has been supplied to the Client (the "Dowling Pricing Schedule").

The Client agrees and understands that none of the Services constitute legal advice.

2.    Payment for Services; Expenses.

2.1.    Compensation.  The Client agrees to pay the Company its fees and expenses as outlined in the Dowling Pricing Schedule (subject to Bankruptcy Court approval in the event of an unresolved dispute).  Because the Dowling Pricing Schedule contains sensitive / competitive information, the Company and Client have agreed to attach to this publicly-available Retention Agreement the Company's standard discounted pricing schedule.  Nonetheless, the actual Dowling Pricing Schedule reflects GCG's standard discounted pricing schedule with further agreed-upon discounts and pricing concessions.

The Client and the Company intend that all fees and expenses incurred in connection with Services rendered by the Company pre-petition be paid in advance of or contemporaneously with the rendering of such Services.  To that end, the Client agrees to pay, by wire transfer, the Company a retainer of **$15,000** (which may be replenished from time to time), to be applied as follows: (a) first against the contemporaneous and subsequent fees and expenses incurred by the Client in connection with Services rendered by the Company pre-petition; and (b) with respect to the portion of the retainer that remains outstanding, if any, after the petitions are filed, first against any outstanding pre-petition fees and expenses incurred by the Client in connection with the Services (and the retainer will thereafter be replenished to the original retainer amount to the extent necessary), and then against the final bill that will be rendered by the Company to the Client for the post-petition fees and expenses incurred by the Client in connection with the Services.

2.2.    Expenses.  In addition to the compensation set forth in Section 2.1, the Client shall reimburse the Company for all out-of-pocket expenses reasonably incurred by the Company in connection with the performance of the Services (subject to Bankruptcy Court determination in the event of an unresolved dispute).  The out-of-pocket expenses will be billed on the expense (non-fee) portion of the Company's invoice to the Client and may include, but are not limited to, postage, banking fees, brokerage fees, costs of messenger and delivery service, travel, filing fees, staff overtime meal expenses and other similar expenses.  In some cases, the Company may receive a rebate at the end of a year from a vendor.  The Client and the Company intend to satisfy all expenses incurred in connection with pre-petition Services from advance retainers or contemporaneous payments.  All such payments shall be made by wire transfer.

2.3.    Billing and Payment.  Except as provided in Section 2.2, or specifically set forth below in this Section 2.3, the Company shall bill the Client for its fees and expenses for Services performed under 28 U.S.C. § 156(c) on a monthly basis, and the Client shall pay the Company within thirty (30) days of its receipt of each such bill in the ordinary course of business (subject to Bankruptcy Court approval in the event of an unresolved dispute).  With respect to pre-petition invoices, the same will show application of advance and contemporaneous payments against subsequent and contemporaneous fees and expenses and state an advance amount to replenish the retainer.  Unless otherwise agreed to in writing, (i) postage expense, and certain other expenses, and (ii) fees for print notice and media publication (including any markups and/or commissions charged by GCG and included in those fees) must be paid within three (3) business days of the date of GCG's invoice.

3.    Term and Termination.

3.1.    Term.  The term of this Agreement shall commence on the date hereof and shall continue until performance in full of the Services, unless earlier terminated as set forth herein.

3.2.    Termination.

(a)    In the event of any material breach of this Agreement by either party hereto, either party may apply to the Bankruptcy Court for an order allowing termination of the Agreement.  Grounds for termination include: (i) failure to cure a material breach within thirty (30) days after receipt of written notice by the non-breaching party or (ii) in the case of any breach which requires more than thirty (30) days to effect a cure, failure to commence and continue, in good faith, efforts to cure such breach, provided that such cure shall be effected no later than ninety (90) days after receipt of written notice of such breach.  Waiver of any such default or material breach by either party hereto shall not be construed as limiting any right of termination for a subsequent default or material breach.

(b)    The Company shall be entitled to an administrative claim for all fees and expenses outstanding at the time of termination (subject to Bankruptcy Court approval in the event of an unresolved dispute).

(c)    In accordance with the Bankruptcy Court's Local Rules, procedures and/or directives, or in the absence thereof, as soon as practicable (i) following the entry of a final decree closing the chapter 11 case, or (ii) following the conversion of the chapter 11 case to chapter 7, the Company shall forward all original proofs of claim to the Federal Archives Record Administration.  For all other documents in the Company's actual or constructive possession (including, but not limited to, letters, e-mails, facsimiles, other correspondence and all undeliverable and/or returned mail), the Company shall retain paper copies and electronic copies for one (1) year (i) following the entry of a final decree closing the chapter 11 cases, or (ii) following the conversion of the chapter 11 case to chapter 7.  Following the one (1) year retention period, the Company shall have the right to destroy all such

2

documents. This provision shall not affect the Company's normal course business processes for archives and back-up tapes.

4.  Independent Contractor. It is understood and agreed that the Company, through itself or any of its agents, shall perform the Services as an independent contractor. Neither the Company nor any of its employees shall be deemed to be an employee of the Client. Neither the Company nor any of its employees shall be entitled to any benefits provided by the Client to its employees, and the Client will make no deductions from any of the payments due to the Company hereunder for state or federal tax purposes. The Company agrees that the Company shall be responsible for any and all taxes and other payments due on payments received hereunder by the Company from the Client. Nothing in this Agreement requires the Client to use the Company for any future work relating to the Services, and, in the event the Client decides to use another party for such future work, the Company agrees to cooperate fully with the Client to ensure a smooth transition to the new party.

5.  Accuracy of Client Supplied Information. The Client are responsible for the accuracy of all programs, data and other information they submit to the Company (including all information for the preparation of Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements")) and for the output of such information. The Company may undertake to place such data and information into certain systems and programs, including in connection with the generation of Schedules and Statements. The Company does not verify information provided by the Client and, with respect to Schedules and Statements preparation, all decisions are at the sole discretion and direction of the Client. All Schedules and Statements filed on behalf of, or by, the Client are reviewed and ultimately approved by the Client, and the Company bears no responsibility for the accuracy or contents therein.

6.  Confidential Information.

6.1.  Confidentiality. In connection with this Agreement, each of the Client and the Company (as the case may be, the "Disclosing Party") may disclose to the Company or the Client (as the case may be, the "Receiving Party") certain information (a) that is marked or otherwise identified in writing as confidential or proprietary information of the Disclosing Party ("Confidential Information") prior to or upon receipt by the Receiving Party; or (b) which the Receiving Party reasonably should recognize from the circumstances surrounding the disclosure to be Confidential Information. The Receiving Party (x) shall hold all Confidential Information in confidence and will use such information only for the purposes of fulfilling the Receiving Party's obligations hereunder, and for no other purpose, and (y) shall not disclose, provide, disseminate or otherwise make available any Confidential Information to any third party other than for the purposes of fulfilling the Receiving Party's obligations hereunder, in either case, without the express prior written permission of the Disclosing Party. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information pursuant to a validly issued subpoena or order of a court of competent jurisdiction, provided, however, that the Receiving Party must provide the Disclosing Party with prompt written notice of such subpoena or court order so that the Disclosing Party may seek a protective order or other appropriate remedy, and the Receiving Party shall reasonably cooperate with the Disclosing Party's efforts to obtain same.

6.2.   Protection of Intellectual Property.  The Client acknowledge that the Company's intellectual property, including, without limitation, the Company's inventions (whether or not patentable), processes, trade secrets and know how are of ultimate importance to the Company.  Accordingly, the Client agrees to use its best efforts to protect such intellectual property, and shall not, either during the term of this Agreement, or subsequent to its termination, utilize, reveal or disclose any of such intellectual property.  The Client understands that the software programs and other materials furnished by the Company pursuant to this Agreement, and/or developed during the course of this Agreement by the Company, are the sole property of the Company.  The term "program" shall include, without limitation, data processing programs, check printing programs, specifications, applications, routines, sub-routines, procedural manuals and documentation.  The Client further agrees that any ideas, concepts, know-how or techniques relating to the claims management software used or developed by the Company during the course of this Agreement shall be the exclusive property of the Company.

6.3.   Scope.  The foregoing obligations in Sections 6.1 and 6.2 shall not apply to (a) information that is or becomes generally known or available by publication, commercial use or otherwise through no fault of the Receiving Party; (b) information that is known by the Receiving Party prior to the time of disclosure by the Disclosing Party to the Receiving Party; (c) information that is obtained from a third party who, to the Receiving Party's knowledge, has the right to make such disclosure without restriction; (d) any disclosure required by applicable law; or (e) information that is released for publication by the Disclosing Party in writing.  The obligations set forth under Sections 6.1 and 6.2 shall survive the termination of this Agreement.

7.   Limitation on Damages.  The Company shall be without liability to the Client with respect to anything done or omitted to be done, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct.  In no event shall liability to the Client for any claims, losses, costs, fines, penalties or damages, including court costs and reasonable attorneys' fees (collectively, "Losses"), whether direct or indirect, arising out of or in connection with or related to this Agreement, exceed the total amount billed or billable to the Client for the portion of the particular work which gave rise to the Losses.  Under no circumstances will the Company be liable to the Client for any special, consequential or incidental damages incurred by the Client relating to this Agreement or the performance of Services hereunder, regardless of whether the Client's claim is for breach of warranty, contract, tort (including negligence), strict liability or otherwise.

8.   Indemnification.  The Client hereby indemnifies and holds harmless the Company and its directors, officers, employees, affiliates and agents against any losses incurred by the Company arising out of, in connection with or related to (a) any gross negligence or willful misconduct by the Client, its employees, agents or representatives, or any misrepresentations made by such persons to third parties in connection with the Company's acts or omissions in connection with its rendering of the Services; (b) any breach of this Agreement by the Client; or (c) any erroneous instructions or information provided to the Company by any of the Clients for use in providing the Services.

9.   Jurisdiction.  This Agreement is subject to the approval of the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction over all matters regarding this Agreement.

10.    Force Majeure.  Whenever performance by the Company of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions or by reason of any other matter beyond the Company's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

11.    Notice.  Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five (5) days after the date of deposit in the United States mail, or, if sent by overnight courier, one (1) business day after delivery to such courier, as follows:  if to the Company, to Garden City Group, LLC, 1985 Marcus Avenue, Lake Success, New York 11042, Attention:  Kenneth Cutshaw, Chief Executive Officer; and if to the Client, to RSR Consulting, LLC, 1330 Avenue of the Americas, Suite 23A, New York, New York 10019, Attention:  Robert S. Rosenfeld.

12.    Governing Law.  This contract will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

13.    Severability.  All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court having competent jurisdiction, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

14.    Assignment.  This Agreement and the rights and obligations of the Company and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

15.    General.  This Agreement supersedes and replaces any existing agreement entered into by the Company and the Client relating generally to the same subject matter, and may be modified only in a writing signed by the Company and the Client.  The paragraph headings in this Agreement are included only for convenience, do not in any manner modify or limit any of the provisions of this Agreement and may not be used in the interpretation of this Agreement.  Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument.  The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application").  If an order is entered approving such Application (the "Retention Order"), any discrepancies between this Agreement, the Application and the Retention Order shall be controlled by the Application and the Retention Order.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

**Dowling College**                                    *Garden City Group, LLC*

By: _____                    By: _____
Name:  Robert S. Rosenfeld                      Name:  Angela Ferrante
Title:   Chief Restructuring Officer             Title:   Senior Vice President

6



Garden City Group, LLC™

## Exhibit A



# GCG Pricing

| **Services** | **Fees (Unit/Hourly)** |
|---|---|

### Set-Up Creditor File

Set-up fee ............................................................................................................... Waived

Electronic import of creditor data ........................................................ No per creditor charge

Assist with production of Schedules and Statements of Financial Affairs .......................... Standard hourly rates

### Noticing

Notice printing / copies ........................................................................ $0.10 per page
(volume discounts apply)

Electronic noticing (e-mail) ................................................................ $50 per 1,000

Facsimile noticing (domestic facsimile) ............................................... $0.10 per page

Personalization/labels........................................................................ $0.05 each

Legal publication of notice.................................................................. Quote

Processing undeliverables ................................................................... $0.25 each

### Document Management

Sort and prep mail (including handling remails)................................... Standard hourly rates

Document scanning............................................................................. $0.12 per image

Monthly document storage   (paper) ................................................... $1.50 per box
(electronic).......................................................... $0.02 per image
(waived for first three months)

### Claims Administration

Association of claimant name and address to database.......................... $0.15 per claim

Claim acknowledgement postcards...................................................... $0.10 each

Processing of claims, including non-conforming claims,
supervisory review and application of message codes........................... Standard hourly rates

### Public Securities / Balloting / Solicitation and Tabulation

Solicitation and Balloting (including coordination with nominees and Broadridge
and processing of master ballots, tabulation, verification and certification of vote)............ Standard hourly rates

### Web Site

Creating customized, interactive web site (including e-mail box for creditors) .................. Standard hourly rates

Monthly maintenance fee.................................................................... $200 per month

Providing updates to website .............................................................. Standard hourly rates

| Services | Fees (Unit/Hourly) |
|---|---|

**Contact Services**

Case-specific voice-mail box for creditors..........................................................................No charge

Interactive Voice Response ("IVR")...................................................................$1,900 set up
$0.39 per minute

Customer Service Representatives ......................................................................$0.95 per minute

Monthly maintenance charge ..............................................................................$100 per month

Management of Call Center (including handling of claimant
communications, call backs, e-mails, and other correspondences) ......................................Standard hourly rates

**Miscellaneous Expenses**

Travel ...................................................................................................................At cost

Postage, courier, etc ...........................................................................................At cost

Copying, facsimile ..............................................................................................$0.10 per page

**Hourly Billing Rates**[*]

| Title | Standard Hourly Rates |
|---|---|
| Administrative, Mailroom and Claims Control | $45-$55 |
| Project Administrators | $70-$85 |
| Project Supervisors | $95-$110 |
| Graphic Support & Technology Staff | $100-$200 |
| Project Managers and Senior Project Managers | $125-$175 |
| Directors and Asst. Vice Presidents | $200-$295 |
| Vice Presidents and above | $295* |

---

[*] For this engagement, GCG agrees to provide discounted hourly rates as reflected in the chart above and to cap its highest hourly rate at $295. Expert services provided by Angela Ferrante and Craig Johnson, the latter in connection with solicitation (including of public securities) and tabulation will be at a rate of $310 per hour. Any additional services not covered by this proposal will be charged at GCG hourly rates including any outsourced work performed under GCG supervision and controls. GCG will not charge overtime for any of its hourly rates.

# **Exhibit C**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                    :          Chapter 11
                                                         :
DOWLING COLLEGE,                                         :          Case No. 16-75545 (REG)
                                                         :
                                                         :
                          Debtor.                        :
---------------------------------------------------------------x

**ORDER AUTHORIZING RETENTION AND APPOINTMENT OF GARDEN CITY**
**GROUP, LLC AS CLAIMS AND NOTICING AGENT UNDER 28 U.S.C. § 156(c),**
**11 U.S.C. § 105(A), E.D.N.Y. LBR 5075-1 AND GRANTING RELATED RELIEF**

Upon the Section 156(c) Application[1] of Dowling College (the "Debtor"), debtor and

debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case") for an order

authorizing the retention and appointment of Garden City Group, LLC ("GCG") as Claims and

Noticing Agent (the "Claims and Noticing Agent"), under 28 U.S.C. § 156(c), Section 105(a) of

the Bankruptcy Code and E.D.N.Y. LBR 5075-1 to, among other things, (i) distribute required

notices to parties in interest, (ii) receive, maintain, docket and otherwise administer the proofs of

claim filed in the Debtor's Chapter 11 Case, and (iii) provide such other administrative services

as may be required by the Debtor that would fall within the purview of services to be provided

by the Clerk's Office, and upon the Declaration of Craig Johnson submitted in support of the

Section 156(c) Application, and the Debtor having estimated that there are hundreds of creditors

in the Chapter 11 Case, many of which are expected to file proofs of claim, and it appearing that

the receiving, docketing and maintaining of proofs of claim would be unduly time consuming

and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c) to utilize,

at the Debtor's expense, outside agents and facilities to provide notices to parties in title 11 cases

---
[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Section
156(c) Application.

and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that Claims and Noticing Agent has the capability and experience to provide such services and that Claims and Noticing Agent is disinterested as that term is defined under section 101(14) of the Bankruptcy Code and does not hold an interest adverse to the Debtor or the estate respecting the matters upon which it is to be engaged; and good and sufficient notice of the Section 156(c) Application having been given; and no other or further notice being required; and it appearing that the employment of Claims and Noticing Agent is in the best interests of the Debtor, the estate and creditors; and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT :

1.      The Section 156(c) Application is granted to the extent set forth herein.

2.      The Debtor is authorized to retain GCG as the Claims and Noticing Agent, *nunc pro tunc* to the date of the filing of the petition initiating this case, under the terms of the Engagement Agreement, and the Claims and Noticing Agent is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in the Chapter 11 Case, and all related tasks, all as described in the Section 156(c) Application (the "Claims and Noticing Services") including the following:

(a) prepare and serve required notices and documents in the Chapter 11 Case in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of the Chapter 11 case and the initial meeting of creditors under Bankruptcy Code section 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan of liquidation, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Case;

(b) maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtor's known creditors and any amounts owed thereto;

(c) maintain (i) a list of potential creditors and parties-in-interest, (ii) a "core" mailing list consisting of all parties described in Sections 2002(i), (j) and (k) of the Bankruptcy Code and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and (iii) a "Master Service List" and "General Service List" as described in the Debtor's case management procedures and update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d) furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) coordinate and handle any required publication of notices relating to the last date for the filing of proofs of claim, any proposed sale of assets and/or such other notices as may otherwise be requested by the Court and/or the Clerk;

(f) maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(g) for *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(h) process all proofs of claim received, including those received by the Clerk's office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(i) maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk and provide the Clerk with certified, duplicate unofficial Claims Register on a quarterly basis; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

(j)  implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(k)  monitor the Court's docket for all filed notices of appearance, address changes, and claims-related pleadings and orders of the Court, and make any necessary notations on and/or changes to the Claims Register;

(l)  assist in the dissemination of information to the public, and respond to creditor inquiries and requests for administrative information regarding the Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website designated specifically for the Debtor and/or a call center;

(m)  record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); provided, however, that if any evidence of transfer of claim(s) is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to waive the 21-day notice and objection period required under Bankruptcy Rule 3001(e), then process the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

(n)  coordinate with the Clerk to promptly incorporate all of the Court-filed proofs of claim (whether filed electronically or in hard copy) on the Claims Register;

(o)  upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review;

(p)  if the Chapter 11 Case is converted to chapter 7, contact the Clerk's office within three (3) days of the notice of entry of the order converting the Chapter 11 Case;

(q)  thirty (30) days prior to the close of the Chapter 11 Case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Case;

(r)  within seven (7) days of notice to Claims and Noticing Agent of entry of an order closing the Chapter 11 case, provide to the Court the final version of the Claims Register in an electronic format along with images of all claims in numeric order as of the date immediately before the discharge of the Claims and Noticing Agent or before the close of the Chapter 11 Case;

(s)  at the close of this Chapter 11 Case, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office;

(t)  provide such other related claims and noticing services as the Debtor may require in connection with the Chapter 11 Case.

3.      Upon the Debtor's request, GCG will assist the Debtor with any additional services requested by the Debtor.

4.      The Claims and Noticing Agent shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this Chapter 11 Case and is authorized and directed to maintain official claims registers for each of the Debtor and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      The Claims and Noticing Agent is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      The Claims and Noticing Agent is authorized to take such other action to comply with all duties set forth in the Section 156(c) Application.

7.      The Debtor is authorized to compensate Claims and Noticing Agent in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Claims and Noticing Agent and the rates charged for each, and to reimburse Claims and Noticing Agent for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Claims and Noticing Agent to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

8.      Claims and Noticing Agent shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for the official committee of unsecured creditors, if any, monitoring the expenses of the Debtor and any party-in-interest who specifically requests service of the monthly invoices.

9.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices, and that the parties may seek resolution of the matter from the Court if resolution is not achieved.

10.      Pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Claims and Noticing Agent under this Order shall be treated as an administrative expense of the Debtor's chapter 11 estate.

11.      The Claims and Noticing Agent shall first apply its retainer to all pre-petition invoices, and second shall apply the retainer against the first bill submitted to the Debtor for post-petition services.

12.      For the avoidance of doubt, all payments to GCG on account of compensation in this Chapter 11 Case shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash and other collateral, including but not limited to any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Order and those materials.

13.      In the event Claims and Noticing Agent is unable to provide the services set out in this Order, Claims and Noticing Agent will immediately notify the Clerk and Debtor's attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtor's attorney.

14.      The Debtor may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Claims and Noticing Agent but is not specifically authorized by this Order.

15.     The Debtor and Claims and Noticing Agent are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Section 156(c) Application.

16.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

17.     If the Debtor's chapter 11 case converts to a case under Chapter 7 of the Bankruptcy Code, Claims and Noticing Agent will continue to be paid for its services until the claims filed in the Chapter 11 Case have been completely processed, and that if claims agent representation is necessary in the converted Chapter 7 case, Claims and Noticing Agent will continue to be paid in accordance with 28 U.S.C. § 156(c) on the terms set forth in the Section 156(c) Application and this Order.

18.     The Claims and Noticing Agent shall not cease providing claims processing services during the Chapter 11 Case for any reason, including nonpayment, without an order of the Court.

19.     The Claims and Noticing Agent shall be discharged at the conclusion of the Chapter 11 Case, or as otherwise provided by entry of an additional order by the Court, and at the conclusion of the Chapter 11 Case, the Claims and Noticing Agent may dispose of any records, documents and the like that have been provided or delivered to the Claims and Noticing Agent, whether in paper or electronic form, after holding and maintaining such records for a period of seven (7) years following the closing of the Chapter 11 Case, subject to the Claims and Noticing Agent's responsibility for archiving the claims with the Federal Archives Record Administration, if applicable.

20.     This Order shall be immediately effective and enforceable upon its entry.

21.     To the extent that there may be any inconsistency between the terms of the Section 156(c) Application, the Engagement Agreement or this Order, the terms of this Order shall govern.