**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Proposed Counsel to the Debtor and Debtor-in-*
  *Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                                              :        Chapter 11
                                                                   :
DOWLING COLLEGE,                                                   :        Case No. 16-75545 (REG)
                                                                   :
                                                                   :
                                        Debtor.                    :
------------------------------------------------------------------x

**DEBTOR'S MOTION PURSUANT TO SECTIONS 105(a) AND 363(b)**
**OF THE BANKRUPTCY CODE FOR AN ORDER (I) AUTHORIZING**
**RSR CONSULTING, LLC TO CONTINUE TO PROVIDE THE DEBTOR WITH**
**A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL, AND**
**(II) DESIGNATING ROBERT S. ROSENFELD AS CHIEF RESTRUCTURING**
**OFFICER TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the

above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its proposed attorneys,

Klestadt Winters Jureller Southard & Stevens, LLP, hereby files this motion (the "Motion") for

entry of an order (the "Proposed Order") in the form attached hereto as Exhibit A: (I) authorizing

RSR Consulting, LLC ("RSR") to provide the Debtor with the continued services of a Chief

Restructuring Officer and additional personnel; and (II) designating Robert S. Rosenfeld ("Mr.

Rosenfeld") as the continuing Chief Restructuring Officer ("CRO") to the Debtor effective as of

the Petition Date (defined below).  In support of this Motion, the Debtor submits the *Declaration of Robert S. Rosenfeld in Support of the Debtor's Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order (I) Authorizing RSR Consulting, LLC to Provide the Debtor with a Chief Restructuring Officer and Personnel, and (II) Designating Robert S. Rosenfeld as Chief Restructuring Officer to the Debtor Effective as of the Petition Date* (the "Rosenfeld Declaration"), attached hereto as Exhibit B.  In further support of the Motion, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtor requires the services of a CRO with the necessary expertise to continue to serve as day-to-day manager of the Debtor.  The CRO will be responsible for managing the Debtor as a debtor in possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation, and performing such other duties customary to a chief restructuring officer.  For these reasons and those set forth below, the Debtor respectfully requests entry of the Proposed Order.

## JURISDICTION

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are Sections 105(a) and 363(b) of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

3.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the or this "Court").

4.      The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case.

6.      The factual background relating to the Debtor's commencement of this Chapter 11 Case and the facts and circumstances supporting the relief requested herein are set forth in greater detail in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration").

## RELIEF REQUESTED

7.      By this Motion, the Debtor seeks the entry of an order pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code (i) authorizing RSR to continue to provide the Debtor with a CRO and additional personnel and (ii) designating Mr. Rosenfeld as the CRO to the Debtor effective as of the Petition Date in accordance with the terms and conditions set forth in that certain engagement letter dated October 17, 2016 by and between the Debtor and RSR (the "Engagement Letter"). A copy of the Engagement Letter is attached hereto as Exhibit C.

## RSR AND MR. ROSENFELD'S QUALIFICATIONS

8.      As set forth in the Rosenfeld Declaration, RSR has extensive experience in providing bankruptcy crisis management, consulting, and special financial advisory services. RSR enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases throughout the United States, on behalf of debtors, creditors, bondholders, investors and other entities.

9.    Mr. Rosenfeld has over 32 years' experience advising and managing publicly-held and private companies, in many aspects of distressed company situations.  Mr. Rosenfeld has extensive experience in the reorganization, restructuring, and liquidation of troubled companies, both out-of-court and in chapter 11 cases, and has advised debtors, creditors, and equity constituencies in many complex financial restructurings.  He has served in the roles of Chief Restructuring Officer, Chapter 7 Trustee, Examiner, Liquidating Trustee, Responsible Officer and Plan Administrator.  He is a Certified Public Accountant licensed in the State of New York, a Certified Fraud Examiner, and a Chartered Global Management Accountant.

10.    Relevant to his appointment in this case, Mr. Rosenfeld has been called upon in previous matters to (a) provide advisory and fiduciary services for complex restructurings, (b) provide operational and financial restructuring support to companies, and (c) preserve assets and enhance recoveries to parties in interest in connection with his fiduciary services.

11.    The companies that he has administered range in size from middle-market to multibillion dollar companies.  He has managed and advised on the liquidation and valuation of real estate throughout the New York metropolitan area and the United States for matters in bankruptcy and out of court.

12.    A sample of some of the matters where Mr. Rosenfeld has served in the role of fiduciary includes bankruptcy court cases in the Southern and Eastern Districts of New York, the District of Delaware, the District of New Jersey, the Northern District of Illinois, and the District of Connecticut.   A sample of Mr. Rosenfeld's appointments as a fiduciary include: Chief Restructuring Officer in *In re ATLS Acquisition, LLC, et al*., Case No. 13-10262 (PJW) (Bankr. D. Del.); Chief Restructuring Officer in *In re ChemRX Corporation, et. al.*, Case No. 10-11567 (MFW) (Bank. D. Del.); Chief Restructuring Officer in *In re Henry Dunay Designs, Inc.*, Case

No. 09-13969 (SMB) (Bankr. S.D.N.Y.); Examiner in *In re Southampton Brick & Tile, LLC*, Case No. 11-75928 (DTE) (Bankr. E.D.N.Y); Chapter 7 Trustee *in In re Bethny Place, LLC*, Case No. 09-13354 (CSS) (Bankr. D. Del.); and Chapter 7 Trustee in *In re Buttonwood Group Trading, LLC*, Case No. 13-06894 (DLT) (Bankr. N.D. Ill).

13.     RSR, through Mr. Rosenfeld, has devoted time and effort to come up to speed with the Debtor's business operations, financial affairs, debt structure, and other related matters. Accordingly, RSR has developed relevant experience regarding the Debtor that will facilitate effective and efficient services in this Chapter 11 Case.

14.     If the Debtor is not permitted to retain RSR, the Debtor will be forced to retain a new restructuring advisor and CRO that will not be familiar with the Debtor's financial affairs.  The time expended in locating and retaining a new advisor and CRO and in bringing them up to speed likely would delay and hinder the Debtor's wind down activities.

## SCOPE OF SERVICES

15.     Pursuant to the Engagement Letter and subject to approval of this Court, the Debtor appointed Mr. Rosenfeld to serve as CRO of the Debtor.  Additional RSR staff will be made available to serve under the CRO during this Chapter 11 Case pursuant to the terms of the Engagement Letter.  As CRO, Mr. Rosenfeld reports directly to Debtor's Board of Trustees (the "Board").

16.     As set forth above, Mr. Rosenfeld and RSR have extensive experience in providing restructuring, advisory and management services in reorganization and liquidation proceedings and have an excellent reputation for the services they have rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. The compensation arrangement reflected in the attached Engagement Letter is consistent with, and typical of,

arrangements entered into by RSR and other restructuring and consulting firms with respect to rendering similar services for clients such as the Debtor.

17.    Mr. Rosenfeld and RSR are well-qualified and able to continue to provide restructuring management and advisory services to the Debtor in a cost-effective, efficient, and timely manner.  Mr. Rosenfeld was asked to accept the role as the Debtor's CRO prior to the Petition Date and has agreed to subject himself to the jurisdiction and supervision of this Court.

18.    The Debtor requires the services of Mr. Rosenfeld and RSR personnel for the following purposes, among others[1]:

a.  Continue the role of Chief Restructuring Officer in connection with the operating, restructuring, and/or wind down activities of the Debtor and its assets.

b.  Continue to analyze the business, operations, properties, financial condition and prospects of the Debtor.

c.  Have the general authority to retain professionals on behalf of the Debtor to immediately assist in evaluating and preserving the value of the assets.

d.  Have the authority to make decisions with respect to the management and operation of the Debtor's business, including, but not limited to, operations and employment matters, managing outside professionals for the Debtor, all the rights and powers to open and close bank accounts, to disburse funds from such accounts as consistent with the Debtor's obligations, and sign tax returns on behalf of the Debtor in such manner as the CRO deems necessary or appropriate and consistent with the business judgment rule.

e.  Continue his leadership role in evaluating and challenging the Debtor's short-term cash flow projections, including underlying assumptions.

f.  Continue his leadership role in developing a plan of action for restructuring, liquidation or dissolution of the Debtor and discuss with the Board, counsel, secured creditors, other creditors and/or governmental authorities.

g.  Assist in the assembly of financial information to be used relating to the sales of assets as required.

---

[1] The summary of the Engagement Letter contained herein is provided for explanatory purposes only.  In the event of any inconsistency between the summary and the terms and provisions of the Engagement Letter, the Engagement Letter shall control.

h. Upon the filing of a chapter 11 case as authorized by the Board, assist the Debtor with the following:

    i. Act as a liaison and coordinate information flow and efforts between management of the Debtor and its advisors and creditors and their advisors, as well as the U.S. Trustee's office. Provide regular updates, including but not limited to updates on reasonable request, to key stakeholders, including the indenture trustees for the bonds issued by or for the benefit of the Debtor, holders and insurers of these bonds, any official committees appointed in the Chapter 11 Case, and their respective professionals, subject to reasonable and appropriate confidentiality restrictions.

    ii. Assist management with the coordination and production of information required by various constituents and their legal and financial advisors, including the U.S. Trustee, claims agent, and other professionals in this Chapter 11 Case.

    iii. Authority to execute draw requests and other documents necessary in connection with funding of any DIP credit agreement or cash collateral order.

    iv. Attend Bankruptcy Court proceedings and section 341 meeting, as well as additional meetings with creditors and stakeholders, as may be required. Provide testimony as reasonably required in connection with same.

i. Engage in negotiations regarding the operation during and exit from the Chapter 11 Case, including chapter 11 plan and related documents.

j. Perform such other services as requested or directed by the Board as are reasonably related to the services described in the Engagement Agreement, and agreed to by RSR.

19. The CRO will continue to report directly to the Board as requested from time to time. Further, the CRO will provide the Board with regular updates regarding the Debtor's wind down process. The additional personnel provided by RSR pursuant to the Engagement Letter shall be supervised by and report to the CRO.

20. The Debtor requires RSR's and Mr. Rosenfeld's professional services and expertise in order to assist the Debtor in the administration of this Chapter 11 Case and its

efforts to maximize the value of its estate. RSR will coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

21.    The services described above and in the Engagement Letter are necessary to enable the Debtor to maximize the value of its estate and successfully complete its Chapter 11 Case.

## DISINTERESTEDNESS

22.    To the best of the Debtor's knowledge, information and belief, neither RSR nor any professional employee of RSR, has any connection with, holds or represents any interest adverse to the Debtor, its significant creditors, or any other party in interest, or their respective attorneys and accountants, except as set forth in the Rosenfeld Declaration.

23.    Although the Debtor submits that RSR's retention is not governed by section 327 of the Bankruptcy Code, the Debtor attaches the Rosenfeld Declaration to disclose, among other things, any relationship that either the CRO or other professional employees of RSR have with the Debtor, its creditors, or other parties in interest.  Based upon the Rosenfeld Declaration, the Debtor submits that, other than with respect to RSR's financial advisory services, Mr. Rosenfeld and RSR are each a "disinterested person," as that term is defined in Section 101(14) of the Bankruptcy Code.

24.    In addition, RSR will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, RSR will file a supplemental certification with the Court.

25.    Based upon the foregoing, the Debtor submits that the relief requested herein is essential, appropriate, and in the best interest of the Debtor's estate and creditors, and therefore, should be granted in this Chapter 11 Case.

## PROFESSIONAL COMPENSATION

26.     Pursuant to the terms of the Engagement Letter, with respect to services of Mr. Rosenfeld as the Chief Restructuring Officer for the Debtor and its estate, the Debtor agreed to compensate RSR on an hourly basis.  Billings will be rendered by RSR to the Debtor each week for services provided by RSR personnel and for out-of-pocket expenses.  Mr. Rosenfeld has a current hourly rate of $390 per hour and other personnel at RSR bill from $300 to $375 per hour. Pursuant to RSR's customary practices, its hourly rates are revised annually to reflect advancing experience, capabilities, and seniority of RSR's professionals as well as general economic factors.  RSR may from time to time add or delete staff, and will file a staffing report to reflect any such changes.  From time to time RSR may use independent contractors employed by RSR on a contract basis and billed to the Debtor at the same levels and rates as RSR staff of comparable experience and expertise.  Such personnel shall comply with the disinterestedness review procedures stated above.

27.     In addition to compensation for professional services rendered by personnel, RSR also will be entitled to reimbursement for its reasonable costs and expenses. Such costs and expenses may include, among others, charges for messenger services, photocopying, travel expenses (coach air travel), long distance telephone charges, postage and other charges customarily invoiced by similar firms.

28.    As reflected in the Rosenfeld Declaration, on October 18, 2016, RSR was provided with an advance retainer in relation to the preparation of the Chapter 11 Case in the amount of $100,000[2].  See Rosenfeld Declaration at ¶ 28.

## INDEMNIFICATION

29.    The Debtor has agreed to indemnify, to make certain contributions to, and to reimburse RSR in connection with the Engagement Letter pursuant to the following terms:

> By signing a copy of this Agreement, the [Debtor] agrees to hold harmless RSR from all claims and/or losses to which RSR may become subject in connection with RSR's role in this matter, and to indemnify RSR against any claims, losses and expenses as incurred (including the reasonable expense of investigation and preparation and reasonable legal fees and disbursements) arising out of or in connection with any action or claim, unless it is finally judicially determined that such losses, claims, damages or liabilities resulted from the gross negligence or willful misconduct of RSR or any controlling person, director, officer, member, employee, subcontractor, agent or affiliate of RSR.  Such commitments shall extend upon the terms set forth in this section to any controlling person, director, officer, member, employee, subcontractor, agent or affiliate of RSR (collectively, 'RSR Indemnitees').

> The [Debtor] agrees that the indemnification and reimbursement commitments set forth in this paragraph shall apply if either the [Debtor] or RSR is a formal party to any lawsuits, investigations, claims or other proceedings related to the Engagement and that such commitments shall extend upon the terms set forth in this section to any RSR Indemnitees. The [Debtor] further agrees that, without prior notice to RSR, it will not enter into any settlement of a lawsuit, claim or other proceeding related to RSR and its Engagement or the Agreement (whether or not RSR or any other RSR Indemnitees is an actual or potential party to such lawsuit, claim or proceeding) unless the [Debtor] uses reasonable best efforts to ensure that such settlement includes an explicit and unconditional release from the party bringing such lawsuit, claim or other proceeding of all RSR Indemnitees for any acts or statements related to the Engagement or the underlying lawsuit.

> If any of the RSR Indemnitees are required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the [Debtor] shall reimburse RSR for any

---

[2] As more particularly described in the First Day Declaration, since on or about September 20, 2016, necessary expenses of Dowling, including payment of professional fees and advance retainers, were funded by UMB Bank, National Association, as escrow agent in accordance with that certain escrow agreement of even date.

professional time and expenses (including reasonable legal fees) incurred to respond to the request.

The [Debtor] further agrees that the RSR Indemnitees are entitled to retain, at their own cost and expense, separate counsel of their choice in connection with any of the matters in respect of which indemnification, reimbursement or contribution may be sought under this Agreement. In no event shall RSR be liable for punitive, exemplary, consequential or indirect damages or expenses (including without limitation, lost profits, opportunity costs, etc.), which may be alleged in connection with this Agreement or the services provided hereunder, except for any loss or damage resulting from RSR's gross negligence or willful misconduct.

The [Debtor] represents and warrants that it has an insurance policy (the 'D&O Policy') that provides liability insurance covering the [Debtor's] directors, officers and any equivalently placed employees in the amount of $5,000,000 in the aggregate for the period ending September 30, 2017, plus a prepaid 'discovery period' of six years. Concurrent with the execution of this Agreement, the [Debtor] shall cause its insurance broker to add Robert Rosenfeld and RSR to its D&O policy effective immediately and to send copies of all documentation and other communications regarding the [Debtor's] D&O policy, including without limitation any renewal or cancellation thereof, to the attention of Robert Rosenfeld at RSR Consulting, LLC. The [Debtor] agrees to maintain substantially similar coverage for all periods under which this Agreement is in effect. If at any time the [Debtor] is unwilling or unable to procure a D&O Policy, then RSR reserves the right to terminate this Agreement.

The terms of this section (Indemnification; Limitation on Liability; Insurance section) shall survive the expiration or termination of this Agreement.

Engagement Letter, p. 7–8.

30.    The Debtor and RSR believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for firms providing special financial or restructuring advisory services. Indeed, the indemnification provisions contain certain qualifications and limitations that are customary in this district and others. See, e.g., In re ConnectEdu, Inc., Case No. 14-11238 (SCC) (Bankr. S.D.N.Y. June 16, 2014) [Docket No. 171] (order retaining chief restructuring officer and supporting firm and approving indemnification provisions); In re Sonix Medical Resources, Inc., Case No. 09-77781 (DTE)

(Bankr. E.D.N.Y. Mar. 4, 2010) [Docket No. 272] (order retaining chief restructuring officer and supporting firm and approving indemnification provisions); In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008) [Docket No. 2278] (same).

31.     Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtor and RSR at arm's-length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of RSR's proposed retention, are reasonable and in the best interests of the Debtor, its estate and creditors in light of the fact that the Debtor requires RSR's services to successfully wind down its affairs. Accordingly, as part of the Motion, the Debtor requests that this Court approve the indemnification provisions as set forth in the Engagement Letter.

## FEES AND REPORTING

32.     The Debtor is seeking authority to engage RSR to provide Robert S. Rosenfeld as a Chief Restructuring Officer under Sections 105(a) and 363(b) of the Bankruptcy Code in this Chapter 11 Case.  Accordingly, RSR is not being employed as a professional under Bankruptcy Code Section 327, and is not required to submit fee applications pursuant to Bankruptcy Code Sections 330 and 331.

33.     If the Court approves the relief requested herein, RSR will, however, file with the Court on a monthly basis, with a copy to the United States Trustee and the Debtor's material prepetition and post-petition secured lenders, a report of staffing on the engagement for the previous month ("Monthly Staffing Report").  Such reports shall contain a list of the individuals who provided services during the monthly period, their respective billing rates, a description of services rendered with associated time entries, the aggregate hours spent by each individual for

that month, and the fees associated therewith and a listing of disbursements incurred.    All Monthly Staffing Reports shall be subject to review by the Court in the event an objection is filed.  Any such objection must be filed within twenty (20) days of the filing of the applicable report.

34.    Notwithstanding the procedure set forth above, the Debtor intends to pay RSR in accordance with the terms set forth in the Engagement Letter without any further order from this Court; provided, however, RSR shall file the Monthly Staffing Reports in accordance with the procedures described above.

35.    For the avoidance of doubt, all payments to RSR on account of compensation in this Chapter 11 Case shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash and other collateral, including but not limited to any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Motion and those materials.

## BASIS FOR RELIEF

### A.  The Debtor Has Exercised Its Sound Business Judgment

36.    The Debtor seeks approval of the appointment of RSR and Mr. Rosenfeld pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) provides, in relevant part, that the trustee or debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ."  11 U.S.C. § 363(b)(1).  Further, pursuant to Section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

37.    Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to Section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 466 (2d Cir. 2007) (citing Lionel); In re Delaware & Hudson Ry. Co., 124 B.R 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to Section 363(b)).

38.    Bankruptcy courts have analyzed the propriety of a debtor-in-possession's employment of a corporate officer under Section 363 of the Bankruptcy Code on numerous occasions and have determined that it is an appropriate exercise of business judgment to employ a corporate officer in such manner.  See, e.g., In re ConnectEdu, Inc., Case No. 14-11238 (SCC) (Bankr. S.D.N.Y. June 16, 2014) [Docket No. 171]; In re Interfaith Medical Center, Inc., Case No. 12-48226 (CEC) (Bankr. E.D.N.Y. Mar. 27, 2014) [Docket No. 1000]; In re Laboratory Partners, Inc., Case No. 13-12769 (PJW) (Bankr. D. Del. Nov. 26, 2013) [Docket No. 141] (authorizing retention of CEO pursuant to Section 363); In re Delta Petroleum Corp., Case No. 11-14006 (KJC) (Bankr. D. Del. Jan. 11, 2012) [Docket No. 180]  (authorizing retention of CEO pursuant to Section 363); In re Universal Building Products, Inc., No. 10-12453 (MFW) (Bankr. D. Del. Aug. 23, 2010) [Docket No. 129]; In re Sharper Image Corp., No. 08-10322 (KG) (Bankr. D. Del. Apr. 23, 2008) [Docket No. 412]; In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 17, 2007) [Docket No. 3412]; In re Mirant Corp., Case No. 03-46590 (DML) (Bankr. N.D. Tex. Sept. 29, 2003) [Docket No. 999]; In re Fleming Cos., Inc., Case No. 03-10945 (MFW) (Bankr. D. Del. June 25, 2003) [Docket No. 1698]; In re LJM2

Co-Inv., L.P., Case No. 02-38335 (SAF) (Bankr. N.D. Tex. Dec. 13, 2002) [Docket No. 96]; In re Exide Techs., Inc., Case No. 02-11125 (JCA) (Bankr. D. Del. May 10, 2002) [Docket No. 214].

39.     Here, the decision to employ RSR and retain Mr. Rosenfeld as CRO should be authorized because it is based on the sound exercise of the business judgment of the Debtor's Board.  Indeed, Mr. Rosenfeld is well qualified to serve as CRO.  He has extensive experience in senior management roles and as a restructuring advisor.  The Debtor believes that RSR, in conjunction with Mr. Rosenfeld in his capacity as CRO, will be able to continue to provide services that benefit the Debtor's estate and creditors.

40.     In view of the foregoing, the Debtor believes that the retention of RSR and Mr. Rosenfeld as CRO is a sound exercise of the Debtor's business judgment and is in the best interest of all parties in interest in this Chapter 11 Case.  As such, the Debtor respectfully requests that the Court authorize the retention and employment of RSR and the CRO to assist in that endeavor *nunc pro tunc* to the Petition Date, as well as pursuant to Section 363 of the Bankruptcy Code.

## NOTICE

41.     As of the filing of this Motion, no trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case.  Notice of this Motion will be served on (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) the holders of the 20 largest unsecured claims; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York

15

State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

42.     No prior request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests entry of an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         November 29, 2016

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   */s/ Sean C. Southard*
      Sean C. Southard
      Lauren C. Kiss
      200 West 41st Street, 17th Floor
      New York, NY 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: ssouthard@klestadt.com
             lkiss@klestadt.com

      *Proposed Attorneys to the Debtor and Debtor
      in Possession*

# **Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                                   :          Chapter 11
                                                        :
DOWLING COLLEGE,                                        :          Case No. 16-75545 (REG)
                                                        :
                                                        :
                                    Debtor.             :
---------------------------------------------------------------x

<u>ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE
BANKRUPTCY CODE (I) AUTHORIZING RSR CONSULTING, LLC
TO CONTINUE TO PROVIDE THE DEBTOR WITH A CHIEF
RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL, AND
(II) DESIGNATING ROBERT S. ROSENFELD AS CHIEF RESTRUCTURING
OFFICER TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE</u>

Upon the motion (the "<u>Motion</u>")[1] of Dowling College ("<u>Dowling</u>" or the "<u>Debtor</u>"),

debtor and debtor-in-possession in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>")

for entry of an order (I) authorizing RSR Consulting, LLC ("<u>RSR</u>") to continue to provide the

Debtor with a Chief Restructuring Officer and additional personnel; and (II) designating Robert

S. Rosenfeld ("<u>Mr. Rosenfeld</u>") as Chief Restructuring Officer ("<u>CRO</u>") to the Debtor effective

as of the Petition Date in accordance with the terms and conditions set forth in the Engagement

Letter (the "<u>Engagement Letter</u>") attached to the Motion as Exhibit C; and upon consideration of

the Rosenfeld Declaration; and the Court being satisfied that RSR and the CRO are each a

disinterested person and neither hold nor represent an adverse interest to the Debtor or the

Debtor's estate in the matters with respect to which RSR is to be employed; and it appearing that

the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and that the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and there being due and

sufficient notice of the Motion; and a hearing on the Motion having been heard before this Court;

and there being no objections to the relief granted herein; and no additional notice of the Motion

---
[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

being required under the circumstances; and it appearing that the terms and conditions of the proposed retention as set forth in the Engagement Letter are reasonable and that the relief requested in the Motion and granted herein is in the best interests of the Debtor, its estate, and creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted and the Engagement Letter is approved as set forth below.

2.      RSR is authorized to provide the Debtor with a CRO and additional personnel under the terms and conditions set forth in the Motion, the Rosenfeld Declaration, and the Engagement Letter annexed thereto, effective as of the Petition Date, provided any change is done on notice consistent with Paragraph 7 below.

3.      Mr. Rosenfeld and RSR are authorized to perform the services as provided for in the Engagement Letter.

4.      In accordance with Sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor is authorized to employ and retain RSR, and appoint Robert S. Rosenfeld, as its CRO in accordance with the terms and conditions set forth in the Motion, the Rosenfeld Declaration, and the Engagement Letter annexed thereto, effective as of the Petition Date.

5.      The terms of the Engagement Letter are approved, except as specifically modified by this Order, in which case the terms of this Order shall supersede the terms of the Engagement Letter.

6.      RSR and Mr. Rosenfeld shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with this Chapter 11 Case.

7.    In the event that the Debtor seeks to have RSR personnel assume executive officer positions that are different than the positions disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

8.    No principal, employee or independent contractor of RSR shall serve as a director of the Debtor during the pendency of this Chapter 11 Case.

9.    RSR shall file with the Court on a monthly basis, with a copy to the United States Trustee and the Debtor's material prepetition and post-petition secured lenders, a report of staffing on the engagement for the previous month ("Monthly Staffing Report").  Such reports shall contain a list of the individuals who provided services during the monthly period, their respective billing rates, a description of services rendered with associated time entries, the aggregate hours spent by each individual for that month, and the fees associated therewith and a listing of disbursements incurred.   All Monthly Staffing Reports shall be subject to review by the Court in the event an objection is filed.  Any such objection shall be filed within twenty (20) days of the filing of the applicable report.

10.    Notwithstanding the procedure set forth in paragraph 9 above, the Debtor is authorized to pay RSR in accordance with the terms set forth in the Engagement Letter without any further order from this Court; provided, however, RSR shall file the Monthly Staffing Reports in accordance with the procedures described in paragraph 9 above.

11.    Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved

by entry of this Order.  No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

12.      For the avoidance of doubt, all payments to RSR on account of compensation in this Chapter 11 Case shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash and other collateral, including but not limited to any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Order and those materials.

13.      The indemnification provisions as set forth in the Engagement Letter are hereby approved.  The Debtor is permitted to indemnify RSR and Mr. Rosenfeld on the same terms as provided to the Debtor's other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtor's D&O policy.

14.      RSR and Mr. Rosenfeld shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor, its creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

15.      The Bankruptcy Court shall retain jurisdiction to resolve all disputes related to RSR and Mr. Rosenfeld's engagement by the Debtor.

16.      To the extent that there may be any inconsistency between the terms of the Motion, the Engagement Letter or this Order, the terms of this Order shall govern.

17.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

4

19.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**NO OBJECTION:**

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:_____
Stan Yang, Esq.
TRIAL ATTORNEY

# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                            :        Chapter 11
                                                 :
DOWLING COLLEGE,                                 :        Case No. 16-
                                                 :
                                                 :
                              Debtor.            :
----------------------------------------------------------------x

**DECLARATION OF ROBERT S. ROSENFELD IN SUPPORT OF
DEBTOR'S MOTION PURSUANT TO SECTIONS 105(a) AND 363(b)
OF THE BANKRUPTCY CODE FOR AN ORDER (I) AUTHORIZING
RSR CONSULTING, LLC TO CONTINUE TO PROVIDE THE DEBTOR WITH
A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL, AND
(II) DESIGNATING ROBERT S. ROSENFELD AS CHIEF RESTRUCTURING
OFFICER TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

I, Robert S. Rosenfeld, hereby declare as follows:

1.      I am the Managing Director of RSR Consulting, LLC ("RSR"), a restructuring and financial advisory firm that specializes in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. RSR maintains an office at 1330 Avenue of the Americas, Suite 23A, New York, New York 10019.

2.      I submit this declaration (the "Declaration") in support of the motion (the "Motion"), submitted simultaneously herewith by the above-captioned debtor and debtor-in-possession (the "Debtor"), for entry of an order (the "Order") (i) authorizing RSR to continue to provide the Debtor with a Chief Restructuring Officer and additional personnel, and (ii) designating Robert S. Rosenfeld as Chief Restructuring Officer ("CRO") to the Debtor effective as of the Petition Date.[1]    Except as otherwise noted, I have personal

---
[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.

### RSR and Mr. Rosenfeld's Qualifications

3.      RSR has extensive experience in providing bankruptcy crisis management, consulting, and special financial advisory services.  RSR enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases throughout the United States, on behalf of debtors, creditors, bondholders, investors and other entities.

4.      I have over 32 years' experience advising and managing publicly-held and private companies, in many aspects of distressed company situations.  I have extensive experience in the reorganization, restructuring, and liquidation of troubled companies, both out-of-court and in chapter 11 cases, and have advised debtors, creditors, and equity constituencies in many complex financial restructurings.  I have served in the roles of Chief Restructuring Officer, Chapter 7 Trustee, Examiner, Liquidating Trustee, Responsible Officer and Plan Administrator.  I am a Certified Public Accountant licensed in the State of New York, a Certified Fraud Examiner, and a Chartered Global Management Accountant.

5.      Relevant to RSR's engagement and my appointment in this case, RSR has been called upon in previous matters to (a) provide advisory and fiduciary services for complex restructurings, (b) provide operational and financial restructuring support to companies, and (c) preserve assets and enhance recoveries to parties in interest in connection with our fiduciary services.

6.      RSR has administered companies that range in size from middle-market to multibillion dollar companies.  RSR has managed and advised on the liquidation and valuation of

real estate throughout the New York metropolitan area and the United States for matters in bankruptcy and out of court.

7.      A sample of some of the matters where I have served in the role of fiduciary includes bankruptcy court cases in the Southern and Eastern Districts of New York, the District of Delaware, the District of New Jersey, the Northern District of Illinois, and the District of Connecticut.  A sample of my appointments as a fiduciary include:  Chief Restructuring Officer in *In re ATLS Acquisition, LLC et al*., Case No. 13-10262 (PJW) (Bankr. D. Del.); Chief Restructuring Officer in *In re ChemRX Corporation, et al.*, Case No. 10-11567 (MFW) (Bank. D. Del.); Chief Restructuring Officer in *In re Henry Dunay Designs, Inc.*, Case No. 09-13969 (SMB) (Bankr. S.D.N.Y.); Examiner in *In re Southampton Brick & Tile, LLC*, Case No. 11-75928 (DTE) (Bankr. E.D.N.Y); Chapter 7 Trustee *in In re Bethny Place, LLC*, Case No. 09-13354 (CSS) (Bankr. D. Del.); and Chapter 7 Trustee in *In re Buttonwood Group Trading, LLC*, Case No. 13-06894 (DLT) (Bankr. N.D. Ill).

8.      RSR and the Debtor executed an engagement letter (the "Engagement Letter") for RSR's services on October 17, 2016.  A copy of the Engagement Letter is attached to the Motion as Exhibit C.

## Scope of Employment

9.      Pursuant to the Engagement Letter and for purposes of this Chapter 11 Case, the Debtor has requested that I act as the CRO.  Working collaboratively with the Debtor's Board, I, along with other personnel from RSR staffed on this case, will assist the Debtor with, among other things, the following:

   a.  Continue the role of Chief Restructuring Officer in connection with the operating, restructuring, and/or wind down activities of the Debtor and its assets.

   b.  Continue to analyze the business, operations, properties, financial condition and prospects of the Debtor.

3

c.  Have the general authority to retain professionals on behalf of the Debtor to immediately assist in evaluating and preserving the value of the assets.

d.  Have the authority to make decisions with respect to the management and operation of the Debtor's business, including, but not limited to, operations and employment matters, managing outside professionals for the Debtor, all the rights and powers to open and close bank accounts, to disburse funds from such accounts as consistent with the Debtor's obligations, and sign tax returns on behalf of the Debtor in such manner as the CRO deems necessary or appropriate and consistent with the business judgment rule.

e.  Continue my leadership role in evaluating and challenging the Debtor's short-term cash flow projections, including underlying assumptions.

f.  Continue my leadership role in developing a plan of action for restructuring, liquidation or dissolution of the Debtor and discuss with the Board, counsel, secured creditors, other creditors and/or governmental authorities.

g.  Assist in the assembly of financial information to be used relating to the sales of assets as required.

h.  Upon the filing of a chapter 11 case as authorized by the Board, assist the Debtor with the following:

   i.  Act as a liaison and coordinate information flow and efforts between management of the Debtor and its advisors and creditors and their advisors, as well as the U.S. Trustee's office.  Provide regular updates, including but not limited to updates on reasonable request, to key stakeholders, including the indenture trustees for the bonds issued by or for the benefit of the Debtor, holders and insurers of these bonds, any official committees appointed in the Chapter 11 Case, and their respective professionals, subject to reasonable and appropriate confidentiality restrictions.

   ii.  Assist management with the coordination and production of information required by various constituents and their legal and financial advisors, including the U.S. Trustee, claims agent, and other professionals in this Chapter 11 Case.

   iii.  Authority to execute draw requests and other documents necessary in connection with funding of any DIP credit agreement or cash collateral order.

   iv.  Attend Bankruptcy Court proceedings and section 341 meeting, as well as additional meetings with creditors and stakeholders, as may be required. Provide testimony as reasonably required in connection with same.

4

    i.   Engage in negotiations regarding the operation during and exit from the Chapter 11 Case, including chapter 11 plan and related documents.

    j.   Perform such other services as requested or directed by the Board as are reasonably related to the services described in the Engagement Agreement, and agreed to by RSR.

### **Indemnification and Contribution Provisions**

10.    The Debtor has agreed to indemnify, to make certain contributions to, and to reimburse RSR in connection with the Engagement Letter pursuant to the following terms:

By signing a copy of this Agreement, the [Debtor] agrees to hold harmless RSR from all claims and/or losses to which RSR may become subject in connection with RSR's role in this matter, and to indemnify RSR against any claims, losses and expenses as incurred (including the reasonable expense of investigation and preparation and reasonable legal fees and disbursements) arising out of or in connection with any action or claim, unless it is finally judicially determined that such losses, claims, damages or liabilities resulted from the gross negligence or willful misconduct of RSR or any controlling person, director, officer, member, employee, subcontractor, agent or affiliate of RSR. Such commitments shall extend upon the terms set forth in this section to any controlling person, director, officer, member, employee, subcontractor, agent or affiliate of RSR (collectively, 'RSR Indemnitees').

The [Debtor] agrees that the indemnification and reimbursement commitments set forth in this paragraph shall apply if either the [Debtor] or RSR is a formal party to any lawsuits, investigations, claims or other proceedings related to the Engagement and that such commitments shall extend upon the terms set forth in this section to any RSR Indemnitees. The [Debtor] further agrees that, without prior notice to RSR, it will not enter into any settlement of a lawsuit, claim or other proceeding related to RSR and its Engagement or the Agreement (whether or not RSR or any other RSR Indemnitees is an actual or potential party to such lawsuit, claim or proceeding) unless the [Debtor] uses reasonable best efforts to ensure that such settlement includes an explicit and unconditional release from the party bringing such lawsuit, claim or other proceeding of all RSR Indemnitees for any acts or statements related to the Engagement or the underlying lawsuit.

If any of the RSR Indemnitees are required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the [Debtor] shall reimburse RSR for any professional time and expenses (including reasonable legal fees) incurred to respond to the request.

The [Debtor] further agrees that the RSR Indemnitees are entitled to retain, at their own cost and expense, separate counsel of their choice in connection with any of the matters in respect of which indemnification, reimbursement or contribution may be sought under this Agreement.  In no event shall RSR be liable for punitive, exemplary, consequential or indirect damages or expenses (including without limitation, lost profits, opportunity costs, etc.), which may be alleged in connection with this Agreement or the services provided hereunder, except for any loss or damage resulting from RSR's gross negligence or willful misconduct.

The [Debtor] represents and warrants that it has an insurance policy (the 'D&O Policy') that provides liability insurance covering the [Debtor's] directors, officers and any equivalently placed employees in the amount of $5,000,000 in the aggregate for the period ending September 30, 2017, plus a prepaid 'discovery period' of six years.  Concurrent with the execution of this Agreement, the [Debtor] shall cause its insurance broker to add Robert Rosenfeld and RSR to its D&O policy effective immediately and to send copies of all documentation and other communications regarding the [Debtor's] D&O policy, including without limitation any renewal or cancellation thereof, to the attention of Robert Rosenfeld at RSR Consulting, LLC.  The [Debtor] agrees to maintain substantially similar coverage for all periods under which this Agreement is in effect.  If at any time the [Debtor] is unwilling or unable to procure a D&O Policy, then RSR reserves the right to terminate this Agreement.

The terms of this section (Indemnification; Limitation on Liability; Insurance section) shall survive the expiration or termination of this Agreement.

Engagement Letter, p. 7–8.

11.    The indemnification, contribution and reimbursement provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for CRO's providing the services described in the Engagement Letter.  The terms of the Engagement Letter were fully negotiated between the Debtor and RSR at arm's-length.

**Fees and Reporting**

12.    The Debtor is seeking authority to engage RSR to provide Robert S. Rosenfeld as a Chief Restructuring Officer under Sections 105(a) and 363(b) of the Bankruptcy Code in this Chapter 11 Case.  Accordingly, RSR is not being employed as a professional under Bankruptcy

Code 327, and is not required to submit fee applications pursuant to Bankruptcy Code Sections 330 and 331.

13.     If the Court approves the relief requested herein, RSR will, however, file with the Court on a monthly basis, with a copy to the United States Trustee and the Debtor's material prepetition and post-petition secured lenders, a report of staffing on the engagement for the previous month ("Monthly Staffing Report").  Such reports shall contain a list of the individuals who provided services during the monthly period, their respective billing rates, a description of services rendered with associated time entries, the aggregate hours spent by each individual for that month, and the fees associated therewith and a listing of disbursements incurred.  All Monthly Staffing Reports shall be subject to review by the Court in the event an objection is filed.  Any such objection must be filed within twenty (20) days of the filing of the applicable report.

14.     Notwithstanding the procedure set forth above, I understand that the Debtor intends to pay RSR in accordance with the terms set forth in the Engagement Letter without any further order from this Court; provided, however, RSR shall file the Monthly Staffing Reports in accordance with the procedures described above.

## Disinterestedness

15.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry by myself or other RSR employees, other than in connection with this engagement, neither I, nor RSR, nor any of its managing directors, employees or agents have any connection with the Debtor, its creditors, the United States Trustee for the Eastern District of New York, or any other party with an actual or potential interest in this Chapter 11 Case, or their respective attorneys or accountants, except as set forth below.

7

16.     RSR is not employed by, and has not been employed by, any entity other than the Debtor in matters related to this Chapter 11 Case, except as described herein.

17.     I am, together with my support staff at RSR, well-qualified and able to continue to provide CRO-type services to the Debtor in a cost-effective, efficient, and timely manner. I have agreed to assume the position of CRO and to subject myself to the jurisdiction and supervision of the Court.

18.     From time to time, RSR has provided services, and likely will continue to provide services, to certain creditors of the Debtor and various other parties who may be adverse to the Debtor in matters wholly unrelated this Chapter 11 Case. As described below, however, RSR has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided, services to any significant creditors, investors, insiders or other parties in interest in such unrelated matters.

19.     RSR provides services in connection with cases, proceedings and transactions unrelated to this Chapter 11 Case. Those unrelated matters involve numerous attorneys, financial advisors and creditors, some of whom may be claimants or parties with actual or potential interests in this Chapter 11 Case, or may represent such parties.

20.     RSR personnel may have business associations with certain creditors of the Debtor unrelated to this Chapter 11 Case. In addition, in the ordinary course of its business, RSR may engage counsel or other professionals in matters unrelated to this Chapter 11 case who now represent, or who may in the future represent, creditors or other parties in interest in this Chapter 11 Case.

21.     In connection with the preparation of this Declaration, RSR reviewed a comprehensive list provided by the Debtor of persons who may have connections with the Debtor

(the "Retention Checklist").  RSR's review, completed under my supervision, consisted of a search of RSR's computer network of parties listed on the Retention Checklist against the names of individuals and entities that are represented by RSR.

22.     Based on the results of its review, RSR does not have a relationship with any of the parties listed on the Retention Checklist in matters related to this Chapter 11 Case. However, based on the results of its review, RSR had (or has) a relationship with the following parties in matters unrelated to these proceedings:

23.     As part of its practice, RSR has worked with and may continue to work with certain of the attorneys in matters unrelated to this Chapter 11 Case.

24.     I am presently aware of the following such instances in which I have been retained by or have retained a certain professional affiliated with this Chapter 11 Case:

- I previously retained Meyer, Suozzi, English & Klein, P.C. ("MSEK"), counsel to the Debtor's Board of Trustees, in several matters to render legal services for RSR and/or myself in various capacities.  Those roles have included:  (i) the chief restructuring officer for CRC Parent Corporation, f/k/a Chem Rx Corporation, and its affiliated chapter 11 debtors, Case No. 10-11567 (MFW) (Bank. D. Del.), which are now closed; (ii) the chief restructuring officer for ATLS Acquisition, LLC, et al., Case No. 13-10262 (LSS) (Bankr. D. Del.), but for which MSEK's role has been completed; (iii) in my role as court-appointed examiner in a case unrelated to this Chapter 11 Case that was pending in the Bankruptcy Court for the Eastern District of New York, and for which my and MSEK's roles have been completed; and (iv) other matters that are not publicly filed, subject to confidentiality provisions, and are entirely unrelated to the Debtor's Chapter 11 Case.

- Thomas R. Slome, a shareholder of MSEK, retained RSR as his financial consultant in a matter where he was the examiner in a case captioned *In re Madison 92nd Street Associates, LLC*, Case No. 11-13917 (SMB) (Bankr. S.D.N.Y.). Mr. Slome and RSR have completed their respective roles in that matter.

- Both RSR and MSEK have been professionals for the same client in a completed state court litigation entirely unrelated to this Chapter 11 Case.

- I have previously been retained by and have retained the law firm Farrell Fritz, P.C., in which one of the members of the Debtor's Board of Trustees, John Racanelli, is a partner. Those matters have been completed over seven (7) years ago. Neither RSR nor I have had any prior matters with the Debtor's Board of Trustees prior to this case.

- Both RSR and the Debtor's counsel, Klestadt Winters Jureller Southard & Stevens, LLP are professionals for the same debtor in a bankruptcy matter pending in the Bankruptcy Court for the Southern District of New York in a matter entirely unrelated to this.

25.    To the best of my knowledge, no services have been provided to these parties-in-interest which involve their rights or interests in the Debtor's case, nor does RSR's involvement in this Chapter 11 Case compromise its ability to continue such services.

26.    As part of its diverse practice, RSR appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties-in-interest in this Chapter 11 Case. Further, RSR has performed, in the past, and may perform in the future, consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom are be involved in these proceedings. Based on RSR's current knowledge of the professionals involved, and to the best of my knowledge, none of these

relationships create interests materially adverse to the Debtor, and none is in connection with this Chapter 11 Case.

27.    On a going forward basis, RSR shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor, its creditors, or other parties in interest.

28.    None of RSR's personnel nor I are a "creditor" of the Debtor within the meaning of Section 101(10) of the Bankruptcy Code.    Further, neither I, RSR (including its affiliates and employees), nor any member of the RSR engagement team serving the Debtor, to the best of my knowledge, is a holder of any of the Debtor's outstanding debt, equity, or preferred stock investments.

29.    RSR is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14) in that RSR (including its employees):

(a)    Is not a creditor (including by reason of unpaid fees and expenses for prepetition services) equity security holder or insider of the Debtor;

(b)    Is not and was not, within two (2) years before the date of the filing of this Chapter 11 Case, a director, officer, or employee of the Debtor (except as noted above); and

(c)    Does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

30.    Despite the efforts described above to identify and disclose RSR's connections with parties in interest in this Chapter 11 Case, RSR is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if RSR discovers additional information that requires disclosure, RSR will file a supplemental disclosure with the Court.

31.     On October 18, 2016, in connection with this Chapter 11 Case, RSR received an advance retainer in the amount of $100,000[2].

32.     From time to time RSR may use independent contractors employed by RSR on a contract basis and billed to the Debtor at the same levels and rates as RSR staff of comparable experience and expertise.  Such personnel shall comply with the disinterestedness review procedures stated above.

33.     Subject to Court approval, RSR will seek payment for compensation earned for the services provide to the Debtor (as outlined in the Motion), and reimbursement of actual and necessary expenses incurred by RSR.  The range of RSR's customary hourly rates, as charged to matters of this type, by the professionals assigned to this engagement, are referenced in the Motion.

34.     RSR does expect to increase rates modestly and in accordance with market norms as of January 1, 2017 and will provide notice of such rate adjustments by filing the same publicly on the docket of the Chapter 11 Case.

35.     RSR reserves the right to supplement this Declaration in the event that RSR discovers any facts bearing on matters described in this Declaration regarding RSR employment with the Debtor.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

---

[2] As more particularly described in the First Day Declaration, since on or about September 20, 2016, necessary expenses of Dowling, including payment of professional fees and advance retainers, were funded by UMB Bank, National Association, as escrow agent in accordance with that certain escrow agreement of even date.

Dated:  New York, New York
        November 27, 2016

                                        */s/ Robert S. Rosenfeld*
                                        Robert S. Rosenfeld
                                        RSR Consulting, LLC

# **Exhibit C**

# RSRCONSULTING LLC

TRUST • EXPERIENCE • VALUE • RESULTS

**October 17, 2016**

Dowling College

Board of Trustees

RE: Dowling College / RSR Consulting, LLC Retention and Letter Agreement

This letter agreement (the "Agreement") confirms and sets forth the terms and conditions of the engagement between RSR Consulting, LLC ("RSR"), and Dowling College (the "Company"), including the scope of the services to be performed and the basis of compensation for those services (the "Engagement"). Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and RSR. All references in this Agreement to RSR shall include directors, officers, members, managers, agents, and employees of RSR, and independent contractors retained by RSR, if any.

1.    **Scope of Professional Services**

a.    RSR shall provide to the Company the services of Robert Rosenfeld, effective October 17, 2016, who will serve as the Company's Chief Restructuring Officer ("CRO") in connection with the operating, restructuring, and/or wind down activities of the Company and its assets as more fully described below. Prior to the commencement of the CRO services stated above, RSR has provided financial consulting services to the Company to become familiar with and analyze the business, operations, properties, financial condition and prospects of the Company. The CRO shall report to the Board of Trustees (the "Board") and have the following responsibilities and authority:

    i.    Become familiar with and analyze the business, operations, properties, financial condition and prospects of the Company;

    ii.    Have the general authority to retain professionals on behalf of Dowling to immediately assist in evaluating and preserving the value of the assets;

    iii.    Have the authority to make decisions with respect to the management and operation of the Company's business, including, but not limited to, operations and employment matters, managing outside professionals for the Company, all the rights and powers to open and close bank accounts, to disburse funds from such accounts as consistent with the Debtors' obligations, and sign tax returns on behalf of the Debtors in such manner as the CRO deems necessary or appropriate and consistent with the business judgment rule;

RSR Consulting, LLC
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-658-0300
www.rsrconsultingllc.com

iv.     Assume a leadership role and participate with the Company's management in on-going communications with the Company's Board, creditors, vendors and other stakeholders;

v.     Assume a leadership role in evaluating and challenging the Company's current short-term cash flow projections, including underlying assumptions;

vi.     Assume a leadership role in developing a plan of action for restructuring, liquidation or dissolution of the Company and discuss with the Board, counsel, secured creditors, other creditors and/or governmental authorities;

vii.     Assist in the assembly of financial information to be issued relating to the sales of assets as required;

viii.     Organize and/or participate in meetings with management, the Board, counsel, secured creditors, other creditors, governmental authorities and other parties, as necessary;

ix.     Assist in evaluation of strategic alternatives and asset disposition options for the Company;

x.     Review and assist management with the preparation of information required to file a petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") and assist the Company in fulfilling the related responsibilities and financial requirements in the Chapter 11 Case and other documents required under the Bankruptcy Code;

xi.     As authorized by the Board, execute any petition, first day declaration, or related documents reasonably necessary in connection with filing of the Chapter 11 Case, including the negotiation and entry into any DIP credit agreement, cash collateral agreement, or plan support agreement.

xii.     Upon the filing of the Chapter 11 Case as authorized by the Board, in addition to the foregoing, assist the Company with the following:

    a.     Act as a liaison and coordinate information flow and efforts between management of the Company and its advisors and creditors and their advisors, as well as the U.S. Trustee's office. Provide regular updates, including but not limited to updates on reasonable request, to key stakeholders, including the indenture trustees for the bonds issued by or for the benefit of the Company, holders and insurers of these bonds, any official committees appointed in those proceedings, and their respective professionals, subject to reasonable and appropriate confidentiality restrictions.

RSR Consulting, LLC
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-658-0300
www.rsrconsultingllc.com

2

      b.  Assist management with the coordination and production of information required by various constituents and their legal and financial advisors, including the U.S. Trustee, claims agent, and other professionals in the Chapter 11 Case.

      c.  Authority to execute draw requests and other documents necessary in connection with funding of any DIP credit agreement or cash collateral order.

      d.  Attend Court proceedings and section 341 meeting, as well as additional meetings with creditors and stakeholders, as may be required.  Provide testimony as reasonably required in connection with same.

xiii.    Participate in efforts in any sale of significant assets after consultation with any holders of liens therein;

xiv.    Engage in negotiations regarding the operation during and exit from the Chapter 11 Case, including chapter 11 plan and related documents;

xv.    Render other general "CRO-type" services to the extent necessary to implement the terms of this Engagement and otherwise fulfill the CRO's duties and responsibilities, including attending court hearings, if so requested, and identifying or evaluating strategies to maximize the value of the estate as appropriate;

xvi.    Perform such other services as requested or directed by the Board as are reasonably related to the above described services, and agreed to by RSR.

    b.    RSR may require and utilize RSR personnel, in addition to the CRO, as are necessary or appropriate to assist in the performance of the duties set forth in clause 1 a. above.  RSR shall not assign any of its obligations hereunder or sub-contract any portion of its obligations hereunder, provided that RSR may, from time to time, utilize subcontractors to assist it in fulfilling its duties hereunder.

    c.    RSR is hereby authorized by the Company to communicate directly with and share information if appropriate in RSR's judgement with constituents of the Company, including the indenture trustees for the bonds issued by or for the benefit of the Company, holders and insurers of these bonds, any official committees appointed in those proceedings, and their respective professionals in the performance of RSR's services under this Engagement, subject to reasonable and appropriate confidentiality restrictions.

---

RSR Consulting, LLC
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-658-0300
www.rsrconsultingllc.com

3

2.     **Performance of Service**

Management will direct the Company's personnel to cooperate with RSR and to make available to RSR access to the Company's books and records and all other information as may be necessary to assist RSR in the performance of its services.

RSR's work will not encompass procedures sufficient to constitute an audit as defined by the American Institute of Certified Public Accountants.   Accordingly, RSR will not express an opinion on any information provided to RSR, as such term is defined by generally accepted auditing standards.  RSR will assume any financial information RSR receives has been prepared in accordance with generally accepted accounting principles.   The Engagement cannot be relied upon to detect errors and irregularities, including fraud or defalcations that may exist.   However, RSR will inform the Company of any irregularities that may come to RSR's attention.

The Company acknowledges that all advice (written or oral) given by RSR to the Company in connection with this Engagement is intended solely for the benefit and use of the Company (limited to the Board and the Company's management) in considering the actions to which it relates.  The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks and programs referred to herein or discussions with the Company's creditors, without RSR's prior approval except as required by law. This agreement will survive the termination of the Engagement.

3.     **Projections; Reliance: Limitations of Duties**

The Company understands that the services to be rendered by the CRO and other RSR personnel may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements.  In addition, the CRO, RSR and its personnel will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements.  The CRO, any other RSR personnel and RSR are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Company.  The CRO or any RSR personnel and RSR are under no obligation to update data submitted to them or review any other areas unless specifically requested by the Board to do so.  RSR will not be responsible for independently verifying the accuracy of any information provided to RSR by the Company or its agents (the "Information") and shall not be liable for inaccuracies in any Information provided to RSR by or at the direction of the Company.

Neither the CRO, any other RSR personnel nor RSR makes any representation or guarantee that any restructuring or liquidation proposal or strategic alternative (each a "Strategy" and collectively referred to as "Strategies") can be formulated for the Company, that any Strategy presented to the Company will be

RSR Consulting, LLC
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-658-0300
www.rsrconsultingllc.com

4

more successful than any or all other possible Strategy, that restructuring is the best course of action for the Company or, if formulated, that any proposed Strategy will be accepted by any of the Company's creditors or other constituents. Further, neither the CRO, any other RSR personnel nor RSR, assumes responsibility for the selection of any Strategy that any officer or party assists in formulating and presenting to the Company, and the CRO and any other RSR personnel shall be responsible for implementation only of the Strategy approved by the Board and only to the extent and in the manner authorized and directed by the Board.

In undertaking to provide the services set forth herein, RSR does not guarantee or otherwise provide any assurances that it will obtain any particular recovery amounts for the assets or full satisfaction of the Company's debts. The Company's obligation to pay RSR's compensation and reimbursement of expenses set forth herein shall not be conditioned upon any particular results being achieved by RSR.

4.    **Compensation of Services**

For its services, RSR will be compensated on an hourly basis in accordance with the schedule set forth herein. The current hourly rates, which are adjusted annually effective January 1, are as follows:

| | |
|---|---|
| R. Rosenfeld – Managing Director | $390 |
| Directors & Consultants | $300 to $375 |

RSR shall be reimbursed for all reasonable out-of-pocket expenses incurred in carrying out the terms of this Agreement, including telephone, travel, facsimile, courier, computer time charges and attorneys' fees (to the extent necessary).

Billings will be rendered by RSR to the Company each week for services provided by RSR personnel and for out-of-pocket expenses.

It is our policy to hold a retainer in such matters. The Company will provide RSR a $100,000.00 retainer (the "Retainer") via wire transfer upon execution of this retention agreement to secure all amounts owed or to become owing to RSR under the Engagement or this Agreement. The Retainer shall be credited against any amounts due at the termination of the Engagement, and any unused balance shall be returned upon the satisfaction of all of Company's obligations hereunder. Prior to the filing of the Chapter 11 Case, the Retainer shall be replenished so that after application to all outstanding fees and expenses of RSR through the filing of the Chapter 11 Case, the Retainer is equal to or greater than $100,000.00.

All billings are due upon receipt of each invoice and shall be paid no later than three business days from receipt via wire transfer to the following account:

RSR Consulting, LLC
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-658-0300
www.rsrconsultingllc.com

5

**Wire Transfer instructions are as follows**:

**Signature Bank**
**565 Fifth Avenue, FL 12**
**New York, NY 10017**
**Account Name: RSR CONSULTING, LLC**
**Routing Number 026013576**
**Account # 1502155748**
**SWIFT Code is SIGNUS33**

If invoices are not paid within fifteen (15) days of the invoice date, RSR shall be entitled, without prejudice to any other rights that it might have, to suspend provision of services to the Company until all amounts due are paid in full.   Prior to any bankruptcy filing, all invoices must be paid in full.

5.    **Term of Engagement**

The Engagement shall commence effective as of October 5, 2016 and may be terminated by either party without cause by giving 15 days' written notice to the other party. RSR may withdraw immediately and without prior notice for good cause without the Company's consent.  Good cause includes the Company's material breach of this Agreement (including the Company's failure to pay any reasonable invoice or indemnity obligation when due), the Company's failure or refusal to reasonably cooperate with RSR, or any fact or circumstance that would render RSR's continuing representation unlawful or unethical. Without limiting its rights or remedies, RSR shall have the right to halt or terminate its services entirely if payment is not received in strict accordance with the payment terms stated above.  RSR shall also have the right to terminate its services if Court approval of this Agreement, pursuant to a final order in form and substance to RSR, is not entered within 21 days of the Company's commencement of a Chapter 11 filing, which period may be extended by RSR in its sole discretion.  In the event of termination, payment shall be made to RSR for all fees and expenses incurred through termination.

In the event of Company's default of the obligations stated herein, Company shall be liable to RSR for RSR's costs and expenses, including reasonable attorneys' fees, related to recovery of amounts due under this Agreement.  The Company's obligation to pay RSR's compensation and reimbursement of expenses set forth herein shall not be conditioned upon any particular results being achieved by RSR or actions pursued by the Company.

6.    **Conflicts of Interest**

RSR confirms that no member of RSR or its staff has any financial interest or business connection with the Company, and RSR is aware of no conflicts in connection with this Engagement.  Since RSR is a consulting firm that serves clients both in and out of court, it is possible that RSR may have rendered

RSR Consulting, LLC
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-658-0300
www.rsrconsultingllc.com

6

services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. In the event you accept the terms of this Engagement, RSR will not represent, and RSR warrants that RSR has not represented, the interest of any such entities or people in connection with this matter. RSR shall monitor its records and the Chapter 11 Case for possible conflicts that could arise during the course of the Engagement, and RSR will promptly file a disclosure with the Court should any come to RSR's attention. RSR reserves the right to resign from this Engagement on written notice of not less than 15 days at any time if conflicts of interest arise or become known to it that, in its judgment, would impair its ability to perform objectively. However, any withdrawal or resignation shall be reasonably coordinated with the Company in a confidential manner so as to avoid any unnecessary disruption to the Chapter 11 Case or any Strategy that the Board determines to pursue.

### Responsibility for Assignment/Obligations of RSR Solely to the Company

The services herein provided are to be rendered solely to the Company. They are not being rendered by RSR as an agent or as a fiduciary of the Board or the creditors of the Company and RSR shall not have any liability or obligation with respect to its services hereunder to such members of the Board, creditors, or to any officers, employees or any other person or entity, other than the Company.

### 7.       Indemnification; Limitation on Liability; Insurance

By signing a copy of this Agreement, the Company agrees to hold harmless RSR from all claims and/or losses to which RSR may become subject in connection with RSR's role in this matter, and to indemnify RSR against any claims, losses and expenses as incurred (including the reasonable expense of investigation and preparation and reasonable legal fees and disbursements) arising out of or in connection with any action or claim, unless it is finally judicially determined that such losses, claims, damages or liabilities resulted from the gross negligence or willful misconduct of RSR or any controlling person, director, officer, member, employee, subcontractor, agent or affiliate of RSR. Such commitments shall extend upon the terms set forth in this section to any controlling person, director, officer, member, employee, subcontractor, agent or affiliate of RSR (collectively, "RSR Indemnitees").

The Company agrees that the indemnification and reimbursement commitments set forth in this paragraph shall apply if either the Company or RSR is a formal party to any lawsuits, investigations, claims or other proceedings related to the Engagement and that such commitments shall extend upon the terms set forth in this section to any RSR Indemnitees. The Company further agrees that, without prior notice to RSR, it will not enter into any settlement of a lawsuit, claim or other proceeding related to RSR and its Engagement or the Agreement (whether or not RSR or any other RSR Indemnitees is an actual or potential party to such lawsuit, claim or proceeding) unless the Company uses reasonable best efforts to ensure that such settlement includes an explicit and unconditional release from the party bringing such

RSR Consulting, LLC
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-658-0300
www.rsrconsultingllc.com

7

lawsuit, claim or other proceeding of all RSR Indemnitees for any acts or statements related to the Engagement or the underlying lawsuit.

If any of the RSR Indemnitees are required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse RSR for any professional time and expenses (including reasonable legal fees) incurred to respond to the request.

The Company further agrees that the RSR Indemnitees are entitled to retain, at their own cost and expense, separate counsel of their choice in connection with any of the matters in respect of which indemnification, reimbursement or contribution may be sought under this Agreement. In no event shall RSR be liable for punitive, exemplary, consequential or indirect damages or expenses (including without limitation, lost profits, opportunity costs, etc.), which may be alleged in connection with this Agreement or the services provided hereunder, except for any such loss or damage resulting from RSR's gross negligence or willful misconduct.

The Company represents and warrants that it has an insurance policy (the "D&O" policy) that provides liability insurance covering the Company's directors, officers and any equivalently placed employees in the amount of $5,000,000 in the aggregate for the period ending September 30, 2017, plus a prepaid "discovery period" of six years. Concurrent with the execution of this Agreement, the Company shall cause its insurance broker to add Robert Rosenfeld and RSR to its D&O policy effective immediately and to send copies of all documentation and other communications regarding the Company's D&O policy, including without limitation any renewal or cancellation thereof, to the attention of Robert Rosenfeld at RSR Consulting, LLC. The Company agrees to maintain substantially similar coverage for all periods under which this Agreement is in effect. If at any time the Company is unwilling or unable to procure a D&O Policy, then RSR reserves the right to terminate this Agreement.

The terms of this section (Indemnification; Limitation on Liability; Insurance section) shall survive the expiration or termination of this Agreement.

8.    **Entire Agreement, Governing Laws and Jurisdiction, Etc.**

This Agreement and terms and conditions set forth above represent the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties. This Agreement cannot be terminated or changed, nor can any of its provisions be waived, except by written agreement signed by all parties hereto, except to the extent provided expressly herein. This Agreement shall be binding upon and inure to the benefit of any successors of the Company and RSR.

If at any time after the termination of this Agreement, the CRO or any other personnel of RSR may be called upon to render services directly or indirectly relating to the subject matter of this Agreement beyond the services contemplated herein (including, but not limited to, producing of documents,

RSR Consulting, LLC
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-658-0300
www.rsrconsultingllc.com

8

answering interrogatories, giving depositions, giving expert or other testimony, whether by agreement, subpoena or otherwise), the Company shall, provided RSR was in compliance with its obligations under the Agreement at the time the Agreement was terminated, pay RSR's then current hourly rates for the persons involved for the time reasonably expended in rendering such services, including, but not limited to, time for meetings, conferences, preparation and travel, and all related costs and expenses, including the reasonable legal fees and expenses of RSR's counsel.

This Agreement shall be governed by and construed to be in accordance with the laws of the State of New York applicable to contracts made and to be performed solely in such state by citizens thereof.

9.    **Jay Alix & Associates Protocol**

RSR and the Company acknowledge the Jay Alix & Associates Protocol (the "Protocol") imposed by the United States Trustee and the United States Bankruptcy Court barring a financial advisory firm from serving in multiple roles on behalf of a debtor in possession in a Chapter 11 restructuring. RSR and the Company acknowledge that in the event of a Chapter 11 filing on behalf of the Company, the Protocol will apply in connection with an application to retain RSR as CRO pursuant to this Agreement. Thus, the Company engages RSR in a single capacity, solely as CRO, to provide the services set forth herein, so as to comply, among other things, with the Protocol.

We look forward to working with you on this assignment and are prepared to start work immediately. If the foregoing is in accordance with your understanding, please sign this letter in the space provided and return it to us.

A telecopy or electronic transmission via e-mail of a signed original of this Agreement shall be sufficient to bind the parties whose signatures appear hereon.

RSR CONSULTING, LLC

By: _____

Robert S. Rosenfeld
Managing Director of RSR

**ACCEPTED AND AGREED**

**Dowling College Board of Trustees**

By: _____    Date: _10/17/16_

Name: _Michael P. Puorro_

Title: _Chairman of the Board of Trustees, Dowling College_

RSR Consulting, LLC
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-658-0300
www.rsrconsultingllc.com