**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Proposed Counsel to the Debtor and Debtor-in-*
  *Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                          :        Chapter 11
                                               :
DOWLING COLLEGE,                               :        Case No. 16-75545 (REG)
                                               :
                                               :
                            Debtor.            :
-----------------------------------------------------------------x

**MOTION OF THE DEBTOR, PURSUANT TO SECTIONS 105(a) AND**
**363(b) OF THE BANKRUPTCY CODE, FOR ENTRY OF INTERIM AND**
**FINAL ORDERS AUTHORIZING THE DEBTOR TO (I) CONTINUE**
**ITS EXISTING INSURANCE PROGRAMS AND RELATED AGREEMENTS,**
**INCLUDING PREMIUM FINANCING AGREEMENT AND (II) PAY CERTAIN**
**PREPETITION INSURANCE PREMIUMS, CLAIMS AND RELATED EXPENSES**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

        Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned

chapter 11 case (the "Chapter 11 Case"), hereby moves (the "Motion") for entry of interim and

final orders, authorizing the Debtor to (I) continue existing insurance programs and related

agreements, including its Premium Financing Agreement and (II) pay certain prepetition

Insurance Premiums, claims and related expenses, subject to and in accordance with the

provisions of any post-petition financing order entered in connection with the Chapter 11 Case.

In support thereof, the Debtor relies on the *Declaration of Robert S. Rosenfeld, Chief*

*Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "<u>First Day Declaration</u>"), and respectfully represents as follows:

## SUMMARY OF RELIEF REQUESTED

1.      By this Motion, the Debtor seeks entry of interim and final orders, substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to Sections 105(a), 363(b), 1107 and 1108 of Title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>"), (I) authorizing the Debtor, subject to consultation with the indenture trustees and bond insurer for its prepetition funded debt, (a) to continue its existing insurance programs, including, among others, its workers compensation program, casualty, property, flood, general liability and non-profit directors and officers liability policy, and (b) to honor and renew, as necessary, its prepetition insurance Premium Financing Agreement (as defined herein) and Insurance Policies (as defined herein) in the ordinary course of its business, including the payment of all required premiums and (c) to pay certain necessary prepetition, deductibles claims and related expenses, and (II) granting related relief.[1]

2.      The Debtor's maintenance of its relationships with the insurers is critical to ensuring the continued availability of insurance coverage and reasonable pricing of such coverage.  Additionally, the continued maintenance of the Debtor's insurance policies is required under the operating guidelines issued by the Office of the United States Trustee for a debtor and debtor in possession (the "<u>Guidelines</u>").  Absent the relief requested herein the insurance programs may be terminated which could endanger the prospects of a successful liquidation.

---

[1] For the avoidance of doubt, all payments contemplated hereunder shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash and other collateral, including but not limited to any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Motion and those materials.

## JURISDICTION

3.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

4.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

6.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

7.      The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

8.      No trustee, examiner or official committee has been appointed in this Chapter 11 Case.

9.      Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

10.     The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

3

## FACTS RELEVANT TO THIS MOTION

### *The Insurance Policies*

11.     In the ordinary course of the Debtor's business, the Debtor maintains forty three (43) insurance policies which are administered through several private insurance carriers (the "Insurance Carriers").   The polices provide coverage for, among other things, flood damage, casualty, property damage, crime, breach of duty by officers and directors, and various other insurance and risk control programs (collectively, the "Insurance Policies").   A summary of the Debtor's principal Insurance Policies is set forth on Exhibit B attached hereto[2].

12.     All of the Insurance Policies referenced above are essential to the Debtor's operations and sale of the Debtor's assets and real property.   Included among the Insurance Policies is a workers' compensation policy the Debtor maintains for the benefit of its employees. The continuation of the workers compensation policies is critical to ensuring employee safety and preserving employee morale.   In addition, flood insurance policies are required and maintained for most of the Debtor's real property due to its coastal location and maintenance of these flood insurance policies after the Petition Date is critical to the Debtor's efforts to sell its property in this Chapter 11 Case.

13.     The premiums for most of the Insurance Programs (the "Insurance Premiums") are determined annually and are either paid by the Debtor directly or financed through a premium financing agreement with Premium Assignment Corporation ("PAC").   The Debtor repays the premiums via installments through the policy term directly to PAC.   The Debtor believes that all payments due and owing under the Insurance Policies, including any material

---

[2] Due to the breadth of the Debtor's business, the Debtor may have certain current Insurance Policies which were inadvertently excluded from Exhibit B.   The failure of the Debtor to include a particular policy on Exhibit B shall not operate to exclude that policy from the relief requested in this Motion or any order entered in connection therewith.

4

Insurance Premiums, that were due and payable on or prior to the Petition Date have been fully paid.

14.     If the Insurance Policies expire or lapse, the Debtor could be exposed to substantial liability for damages resulting to person or property.  Moreover, in many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtor's activities, including requirements of the Office of the United States Trustee.  Maintenance of such coverage is thus critical to the preservation of the Debtor's assets and the estate.

15.     Accordingly, the Debtor seeks to maintain its existing Insurance Policies and seeks authority to pay any prepetition premiums or expenses, including any required processing costs, relating to the Debtor's maintenance of its Insurance Policies (collectively, the "Prepetition Insurance Claims").

16.     In addition, to the extent Insurance Policies expire during the course of this Chapter 11 Case, the Debtor seeks authority to renew the Insurance Policies without further Court approval.  In accordance with any post-petition financing order entered in this Chapter 11 Case, and subject to consultation with the indenture trustees and bond insurer for its prepetition funded debt the Debtor intends to renew six (6) flood insurance policies and one (1) short term disability policy before their terms expire at the end of this year.  The Debtor has also included the estimated payment of these amounts within its budget under the proposed DIP financing.

***The Premium Financing Agreement***

17.     The Debtor finances premiums under six (6) of the Insurance Policies (the "Financed Policies"), since it is not economically advantageous or otherwise financially feasible for the Debtor to pay the premium on the Financed Policies, in full, on a lump sum or quarterly

basis.  Accordingly, in the ordinary course of business, the Debtor finances the premiums on the Financed Policies in accordance with its premium financing agreement (the "Premium Financing Agreement") with PAC.  The aggregate annual premiums being financed for the Insurance Coverage for the policy period from October 1, 2016 through October 1, 2017 total $344,990.25. A schedule of the Premium Financing Agreement payments is attached hereto as Exhibit C.

18.     Under the terms of the Financed Policies, the Debtor is required to make certain necessary payments to PAC (the "Premium Financing Obligations") in connection with the financing which is detailed on Exhibit C hereto.  The Debtor has included the payment of these amounts within its budget under the proposed DIP financing.  The Debtor is current on all payments due to PAC under the Financed Policies.  However, a premium financing payment in the approximate amount of $35,000 will come due shortly after the Petition Date under the existing terms of the Premium Financing Agreement.

19.     The Debtor's obligation under the Premium Financing Agreement is secured solely by a security interest in any unearned premiums which may become payable under the policies covered by the Premium Financing Agreement.

20.     If the Debtor was unable to continue honoring its obligations under the Premium Financing Agreement, PAC may seek relief from the automatic stay to terminate the Financed Policies and recoup its losses.  Should the agreement be terminated, the Debtor would be required to obtain replacement insurance on an expedited basis and likely at a significant cost to its estate.

21.     Accordingly, as part of this Motion, the Debtor is seeking authority to continue honoring its obligations under the Premium Financing Agreement.  In view of the importance of maintaining insurance coverage with respect to its ongoing activities and the preservation of its

estate and assets, the Debtor believes it is in the best interests of its estate to authorize the Debtor to honor its obligations under the Premium Finance Agreement. Any other alternative would likely require a considerable expenditure of cash and would cause direct harm to the Debtor's estate.

22.    In addition, to the extent the Premium Financing Agreement expires during the course of this Chapter 11 Case, the Debtor seeks authority to renew its Premium Financing Agreement without further Court approval subject to consultation with the indenture trustees and bond insurer for its prepetition funded debt. The Debtor respectfully submits that renewal of the Premium Financing Agreement falls squarely within its ordinary course of business and, but for the constraints of Section 364 of the Bankruptcy Code, the Debtor would not need the Court's prior approval to renew the Premium Financing Agreement. To reduce the administrative burden to its estate, as well as to confirm its ability to satisfy one of its obligations of operating as a debtor in possession, the Debtor thus seeks the Court's authority to renew the Premium Financing Agreement when and as necessary in the Debtor's business judgment.

### _Deductibles_

23.    Pursuant to the Insurance Policies, the Debtor may be required to pay various deductibles or retention amounts (the "Deductibles"), depending upon the type of claim and insurance policy involved. Under certain policies, the Insurance Carriers may pay claimants and then invoice the Debtor for any Deductibles. In such situations, the Insurance Carriers may have prepetition claims against the Debtor. As of the Petition Date, the Debtor does not believe there are any material prepetition obligations owed to Insurance Carriers relating to Deductibles but, out of an abundance of caution, the Debtor seeks authority to satisfy any such prepetition obligations.

## RELIEF REQUESTED

24.     By this Motion, the Debtor seeks entry of interim and final orders, substantially in the form attached hereto as Exhibit A, pursuant to Sections 105(a) and 363(b) the Bankruptcy Code, (I) authorizing the Debtor, subject to consultation with the indenture trustees and bond insurer for its prepetition funded debt and consistent with the provisions of any post-petition financing order, (a) to continue its existing insurance programs, including, among others, its workers compensation program, casualty, property, flood, general liability, damage, crime, and non-profit directors and officers liability policy, and (b) to honor and renew, as necessary, its prepetition insurance Premium Financing Agreement and any individual Insurance Policy in the ordinary course of its business including payment of any required premiums, and (c) to pay certain necessary prepetition, deductibles claims and related expenses, and (II) granting related relief.

25.     For the avoidance of doubt, all payments contemplated hereunder shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash and other collateral, including but not limited to any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Motion and those materials.

## BASIS FOR RELIEF REQUESTED

***Continued Payment and Renewal of Obligations Due Under the Insurance Policies in the Ordinary Course of the Debtor's Business is Warranted***

26.     Section 363(b)(1) of the Bankruptcy Code provides that after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

8

27.    In addition, Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad statutory authority to enforce the Bankruptcy Code's provisions either under the specific statutory language of the Bankruptcy Code or under equitable common law doctrines. Specifically, Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

28.    The "necessity of payment" doctrine further supports the relief requested herein. The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor to pay prepetition claims where such payment is essential to the continued operation of the debtor."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).  See also In re Lehigh & New England Ry. Co.., 657 F.2d 570, 581–82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of [an entity in receivership] in serious jeopardy"); In re Chateaugay Corp., 80 B.R. 279, 285-87 (S.D.N.Y. 1987); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191–92 (Bankr. D. Del. 1994); In re UNR Indus., Inc., 143 B.R. 506, 519–20 (Bankr. N.D. Ill. 1992), rev'd on other grounds, UNR Indus., Inc. v. Bloomington Factory Workers (In re UNR Indus., Inc.), 173 B.R. 149 (N.D. Ill. 1994).  This doctrine is consistent with the paramount goal of chapter 11 of "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs, 98 B.R. at 176.  See also Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945), cert. denied, 325 U.S. 873 (1945) ("Let [the debtor] once be shut down, and it will lose much of its value . . . .  Some priority to [the debtor's prepetition suppliers] may be as essential to the preservation of the business during that period as it is later."); In re Gulf Air, Inc., 112 B.R. 152,

153–54 (Bankr. W.D. La. 1989) (allowing payment of prepetition claims under the "necessity of payment" doctrine).

29.     This "necessity of payment" doctrine functions in a Chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical pre-petition claims not explicitly authorized by the Bankruptcy Code.  The doctrine is frequently invoked early in a bankruptcy case, particularly in connection with the Bankruptcy Code sections that relate to payment of pre-petition claims.  Numerous bankruptcy courts in this circuit, recognizing a Chapter 11 debtor's vital need to maintain insurance coverage in the ordinary course, have granted the relief requested herein in other chapter 11 cases.  See, e.g., In re Federation Employment and Guidance Service, Inc. d/b/a FEGS, Case No. 15-71074 (REG) (Bankr. E.D.N.Y. Mar. 24, 2015 and Apr. 24, 2015); In re Long Beach Medical Center, et al., Case No. 14-70593 (AST) (Bankr. E.D.N.Y. Mar. 12, 2014); In re Cengage Learning Inc., et al., Case No. 13-44106 (ESS) (Bankr. E.D.N.Y. Aug. 2, 2013); In re Sound Shore Medical Center, et al., Case No. 13-22840 (RDD) (Bankr. S.D.N.Y. May 31, 2013 and July 1, 2013).

30.     In addition, the Court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically Sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the going concern value of an operating business, and prepetition claims may be paid if necessary to perform the debtor's duty.  See In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition

claim."). A bankruptcy court's exercise of its authority under Section 105(a) of the Bankruptcy Code is also appropriate to carry out two (2) central policies underlying chapter 11: (a) to permit the successful rehabilitation of the debtor; and (b) to preserve going concern value and maximize property available to satisfy all creditors.

31.     Similarly, Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. Although there has not yet been a published decision interpreting the "immediate and irreparable harm" standard in Bankruptcy Rule 6003, the Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the court instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (quoting N.Y. Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975)). Further, the "harm must be shown to be actual and imminent, not remote or speculative." Id. at 214. See also Rodriguez v. DeBuono, 175 F.3d 227, 233–234 (2d Cir. 1998). The Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Second Circuit.

32.     It is critical to the Debtor's ongoing operations that it be permitted to continue its Insurance Policies and ensure that the Prepetition Insurance Claims continue to be processed and paid. If the Insurance Policies are not maintained, the Debtor would be required to make alternative arrangements for insurance coverage and almost certainly at a significantly higher cost. Additionally, if the existing insurance programs lapse, the Debtor could be exposed to

11

substantial liability for personal and/or property damages, to the detriment of all parties in interest.

33.    Any termination of the Debtor's workers compensation coverage poses a risk that eligible claimants will not receive timely payments with respect to employment-related injuries. This could have a negative impact on the financial well-being and morale of the Debtor's employees and their willingness to remain in the Debtor's employ, pending the sale of the Debtor's assets.   The Debtor's ability to preserve employee morale and retain employees is critical to preserving the value of its assets.   In addition, if the flood insurance policies are terminated or lapse, the Debtor could be exposed to substantial liability to the detriment of all parties in interest.  A failure to maintain the Insurance Policies would also constitute a violation of applicable state laws.   In addition, the United States Trustee Guidelines for debtors in possession require the Debtor to maintain its Insurance Policies.

34.    The amounts proposed to be paid with respect to pre-petition periods for the Prepetition Insurance Claims are minimal compared to the potential liability exposure of the Debtor and its employees.   Accordingly, the relief requested is both warranted and justified under the circumstances.

### *The Debtor Should be Authorized to Renew and Honor the Premium Financing Agreement*

35.    The Debtor respectfully submits that payment of prepetition premiums and amounts owing under the Premium Financing Agreement is also necessary and appropriate, and may be authorized under Sections 105(a), 1107 and 1108 of the Bankruptcy Code.  Payment of the Debtor's obligations to PAC and the renewal, revision, extension, supplementation, change or entering into new insurance policies, as needed in the Debtor's business judgment, are necessary to ensuring the Debtor's ongoing operations and indeed required under the Guidelines.

Moreover, as fiduciaries for its bankruptcy estate, the Debtor could be violating its duties under Section 1108 of the Bankruptcy Code if it in any way jeopardizes the coverage provided under the Insurance Policies.

36.     As described above, non-payment of the Insurance Premiums and the Premium Financing Obligations could result in cancellation of the Insurance Policies, in which case the Debtor would not only be in violation of the Guidelines and various contractual agreements, but also may be unable to find alternative insurance coverage, or find such alternatives only at a much higher cost than the Debtor currently incurs.  Therefore, the potential harm and economic disadvantage that would stem from the potential cancellation of the Insurance Policies, or any failure to renew the Insurance Policies, as needed in the Debtor's business judgment, are grossly disproportionate to the amount of the Premium Financing Obligations, and the costs to renew, revise, extend, supplement, change or enter into new insurance coverage.

37.     Payment of the Premium Financing Obligations is also warranted under the circumstances of this case.  Pursuant to the Premium Financing Agreement, PAC maintains a security interest in unearned premiums (the "Unearned Premiums").  Security interests created by premium financing agreements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements. See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.), 67 B.R. 990, 994–95 (Bankr. D. Conn. 1986); Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.), 9 B.R. 159, 164–66 (Bankr. D.D.C. 1981).

38.     Section 364(c) of the Bankruptcy Code further allows a debtor, in the exercise of its business judgment, to incur secured post-petition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate.  See, e.g., In re Ames

Dept. Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to post-petition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"); In re Simasko Prod. Co., 47 B.R. 444, 448–49 (Bankr. D. Colo. 1985) (authorizing interim financing agreement where debtor's business judgment indicated financing was necessary and reasonable for benefit of estate).

39.    Additionally, as indicated above, as a secured creditor, PAC would also be entitled to seek relief from the automatic stay, either to cancel the Financed Policies in accordance with the terms of the Premium Financing Agreement, or to seek adequate protection of its investment. See Universal Motor Express, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay).

40.    As secured creditors, insurance premium financiers are entitled to adequate protection of the value of their security to protect them against diminution in the value of their collateral.  Adequate protection may take many forms, including relief from the automatic stay and authority to apply unearned premiums to the outstanding debt. Where the unearned premiums have diminished to less than the amount of the outstanding debt, cash payments may suffice as adequate protection of the insurance premium financier's interest.  See TIFCO, 67 B.R. at 999–1000.

41.    Accordingly, PAC may be entitled to adequate protection of its interests in any unearned premiums under Section 363(e) of the Bankruptcy Code. The Debtor's failure to provide such adequate protection – for example by failing to pay the ongoing installments due under the Premium Financing Agreement – may constitute cause under Section 362(d) of the

14

Bankruptcy Code for PAC to obtain relief from the automatic stay and terminate the Financed Policies.

42.    In addition, under the terms of the Premium Financing Agreement, PAC may cancel the Financed Policies for non-payment and may accelerate and declare due and payable the entire unpaid premiums upon the Debtor's failure to pay the monthly Premium Financing Obligations.  Because the Debtor is required to maintain insurance coverage during this Chapter 11 Case, the cancellation of these policies would be particularly disastrous.

43.    In light of the importance of maintaining insurance coverage with respect to its business activities and preserving liquidity by financing its insurance premiums, the Debtor thus believes it is in the best interest of its estate to receive Court approval to honor its obligations under the Premium Financing Agreement and, as necessary, renew or enter into new such agreements.

### REQUEST FOR AUTHORITY AND DIRECTION FOR BANKS TO HONOR AND PAY CHECKS AND FUND TRANSFERS RELATED TO PREPETITION INSURANCE CLAIMS

44.    The Debtor requests that Signature Bank (the "Bank"), where the Debtor maintains its debtor-in-possession operating account be authorized and directed, when requested by the Debtor in the Debtor's sole discretion, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to the Prepetition Insurance Claims, including the Premium Financing Obligations and Deductibles, whether such checks were presented or fund transfer requests were submitted on or after the Petition Date, provided that sufficient funds are available in the applicable account to make the payments.  The Debtor represents that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized

15

payment of the Prepetition Insurance Claims. Accordingly, the Debtor believes that checks other than those relating to authorized payments will not be honored inadvertently.

45.    The Debtor further represents that it will have access to sufficient debtor in possession financing to satisfy all Prepetition Insurance Claims and renew the Insurance Policies as needed, and to the extent described herein, as such amounts become due in the ordinary course of its business.

46.    Nothing contained herein is intended or should be construed as (a) an admission as to the validity of any claim against the Debtor, (b) a waiver of the Debtor's rights to dispute any claim on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim is a claim for Prepetition Insurance Claims or Premium Financing Obligations, or (e) an assumption or adoption of any policy or other agreement pursuant to Section 365 of the Bankruptcy Code. The Debtor reserves all of its rights under the Bankruptcy Code concerning the Insurance Policies.

## THE REQUIREMENTS OF RULE 6003 ARE SATISFIED

47.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. For reasons discussed above, authorizing the Debtor to continue insurance coverage entered into prepetition, honor its prepetition Premium Financing Agreement, renew its Premium Financing Agreement and Insurance Policies in the ordinary course of business, and granting related relief, is integral to the Debtor's ability to sell its assets in this Chapter 11 Case.

48.    Failure to receive such authorization and other relief during the first 21 days of this Chapter 11 Case would severely disrupt the Debtor's operations at this critical juncture. For

16

the reasons discussed herein, the relief requested is necessary in order for the Debtor to preserve the ongoing value of the Debtor's assets and real property and maximize the value of its estate for the benefit of all stakeholders.  Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF RULE 6004 REQUIREMENTS

49.     The Debtor's need for immediate authority to satisfy the Prepetition Insurance Claims also justifies elimination of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay period imposed by Bankruptcy Rule 6004(h).  That rule provides that, unless a court orders otherwise, an order authorizing the use, sale or lease of property (other than cash collateral) is stayed until the expiration of 14 days after entry of the order.  FED. R. BANKR. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order takes effect.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

50.     As described above, any delay in the Debtor obtaining the relief requested herein may undermine the purpose of that relief which will ensure the continued maintenance of the Debtor's Insurance Policies and the safety of its employees.  Accordingly, the Court should waive the 14 day stay period provided for in Bankruptcy Rule 6004(h), and order that the Debtor is immediately authorized to honor and pay the Prepetition Insurance Claims and related obligations as described in this Motion.

## MOTION PRACTICE

51.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of its application to this

Motion.  Moreover, in addition to all entities otherwise entitled to receive notice, the Debtor has given notice of this Motion to all entities believed to have or be claiming an interest in the subject matter of the proposed order or who, it is believed, otherwise would be affected by the proposed order.  Accordingly, the Debtor submits that this Motion satisfies Local Rule 9013-1.

## NOTICE

52.	As of the filing of this Motion, no trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case.  Notice of this Motion will be given to (a) United States Trustee for the Eastern District of New York; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) the holders of the 20 largest unsecured claims; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that no other notice need be given.

## NO PRIOR APPLICATION

53.	No previous application for the relief sought herein has been made to this or to any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court (a) enter an order in the form attached hereto as Exhibit A granting the relief requested herein on an interim basis, (b) schedule a final hearing on the Motion, and (c) grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated:   New York, New York
         November 29, 2016

                                    **KLESTADT WINTERS JURELLER**
                                    **SOUTHARD & STEVENS, LLP**


                          By:   */s/ Sean C. Southard*_____
                                Sean C. Southard
                                Lauren C. Kiss
                                200 West 41st Street, 17th Floor
                                New York, NY 10036
                                Tel: (212) 972-3000
                                Fax: (212) 972-2245
                                Email: ssouthard@klestadt.com
                                        lkiss@klestadt.com

                                *Proposed Attorneys to the Debtor and Debtor*
                                *in Possession*

# <u>Exhibit A</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                          :        Chapter 11
                                               :
DOWLING COLLEGE,                               :        Case No. 16-75545 (REG)
                                               :
                                               :
                              Debtor.          :
------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE
BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO (I) CONTINUE
ITS EXISTING INSURANCE PROGRAMS AND RELATED AGREEMENTS,
INCLUDING PREMIUM FINANCING AGREEMENT (II) PAY CERTAIN
PREPETITION INSURANCE PREMIUMS, CLAIMS AND RELATED EXPENSES**

Upon consideration of the motion (the "Motion")[1] of Dowling College (the "Debtor"),

debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"),

seeking entry of an order pursuant to Sections 105(a) and 363(b) of Title 11 of the United States

Code (as amended, the "Bankruptcy Code") (a) authorizing the Debtor to (i) continue its existing

insurance programs, including among others, its workers compensation program, casualty,

property, flood, general liability and non-profit directors and officers liability policy, (ii) honor

and renew, as necessary, its prepetition Premium Financing Agreement and Insurance Policies,

and (iii) pay certain prepetition insurance premiums, claims and related expenses, and

(b) granting certain related relief, all as described more fully in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before the Court pursuant

to 28 U.S.C. §§ 1408 and 1409; and due notice of the Motion and hearing on the Motion having

been provided; and it appearing that due and appropriate notice of the Motion has been given

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

under the circumstances; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon the First Day Declaration; and upon the record of the Hearing and all of the proceedings before the Court; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor, its estate and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.　　The Motion is granted on an interim basis to the extent provided herein.

2.　　The Debtor is authorized to continue its Insurance Policies, as more fully described in the Motion, and to pay the Prepetition Insurance Claims, the Premium Financing Obligations and any other amounts related to the maintenance and renewal of the Insurance Policies, including but not limited to, state assessments, processing costs and accrued but unpaid prepetition charges for the administration of the program, in accordance with any post-petition financing order entered by the Court in this Chapter 11 Case, subject to consultation with the indenture trustees and bond insurer for its prepetition funded debt, and subject further to any condition that any payments related to pre-petition charges shall be made on ten (10) days prior notice to counsel for the Official Committee of Unsecured Creditors (the "Creditors' Committee") and the Office of the United States Trustee.

3.　　All applicable banks and other financial institutions are authorized and directed, when requested by the Debtor in the Debtor's sole discretion, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to the Prepetition Insurance Claims and any related prepetition processing costs, whether such checks were presented or fund transfer requests were submitted on or after the

2

Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

4.      For the avoidance of doubt, all payments contemplated by the Motion and this Interim Order shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash and other collateral, including but not limited to any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Interim Order and those materials.

5.      For the avoidance of doubt, the Debtor's obligation under the Premium Financing Agreement is secured solely by a security interest in any unearned premiums which may become payable under the policies covered by the Premium Financing Agreement.

6.      Nothing contained in this Interim Order or the Motion shall constitute a rejection or assumption by the Debtor, as a debtor in possession, of any executory contract or unexpired lease by virtue of reference of any such contract or lease in the Motion.

7.      Any payment made pursuant to this Interim Order is not, and shall not be, deemed an admission to the validity of the underlying obligation or waiver of any rights the Debtor may have to subsequently dispute such obligation.

8.      The Debtor shall serve a copy of this Interim Order within five (5) business days after entry hereof, upon: (a) United States Trustee for the Eastern District of New York; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) the holders of the 20 largest unsecured claims and, upon its appointment, counsel for the official committee of unsecured creditors (the "Creditors' Committee"); (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv)

New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002. Notice served pursuant to the preceding sentence shall be via first class mail, postage prepaid. No further notice of the final hearing to approve the Motion or of the entry of this Interim Order need be served by the Debtor.

9.      The final hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on [_____], 2016 at 10:00 a.m. (Prevailing Eastern time), and any objections to entry of such order shall be in writing, filed with the Court and served upon (i) The Office of the United States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, Esq., Trial Attorney; (ii) counsel to the Debtor:  Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn:  Sean C. Southard, Esq.; (iii) counsel to the Debtor's material prepetition and post-petition secured lenders:  (a) Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn:  P. Miyoko Sato, Esq. and Ian A. Hammel, Esq., (b) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn:  Brian D. Pfeiffer, Esq. and Neil S. Begley, Esq., (c) Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn:  Richard J. McCord, Esq. and Thomas J. McNamara, Esq., and (d) Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, Attn:  Adam T. Berkowitz, Esq.; and (iv) counsel to the Creditors' Committee, so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on [_____], 2016.

10.      The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

11.     The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion or are otherwise deemed waived.

12.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Interim Order.

13.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

# <u>Exhibit B</u>

**Insurance Policies Financed Thru Premium Assignment Corporation**

| Carrier | Policy From | Policy To | Premium | Type | Broker | Remaining Balance |
|---|---|---|---|---|---|---|
| Zurich American Insurance Company | 10/1/2016 | 10/1/2017 | $233,831 | Property | SterlingRisk | $157,835.92 |
| Zurich American Insurance Company | 10/1/2016 | 10/1/2017 | Included under the Business Personal Property | Inland Marine | SterlingRisk | Included under the Business Personal Property |
| Philadelphia | 10/1/2016 | 10/1/2017 | $91,605 | General Liability | SterlingRisk | $61,833.38 |
| Hartford Fire Ins. Co. | 10/1/2016 | 10/1/2017 | $43,871 | Commercial Auto | SterlingRisk | $29,612.93 |
| Hartford Casualty Ins. Co. | 10/1/2016 | 10/1/2017 | $4,830 | Workers Compensation | SterlingRisk | $3,260.25 |
| Columbia Casualty | 10/1/2016 | 10/1/2017 | $85,850 | Umbrella | SterlingRisk | $57,948.75 |
| | | | | | | |
| **TOTAL:** | | | **$459,987** | | | **$310,491.23** |

**Insurance Policies Not Financed (Premiums Paid Prepetition)**

| Carrier | Policy From | Policy To | Premium | Type | Broker |
|---|---|---|---|---|---|
| Chubb/Federal Insurance Company | 10/1/2016 | 10/1/2017 | $86,483.00 | Directors and Officers Liability/Employment Practices Liability | ARC Excess & Surplus, LLC |
| Chubb/Executive Risk Specialty Ins. Co. | 10/1/2016 | 10/1/2017 | $13,647.00 | Fiduciary Liability/Crime | ARC Excess & Surplus, LLC |

| Carrier | Policy From | Policy To | Premium | Type | Broker |
|---|---|---|---|---|---|
| Prudential | 9/1/2015 | 11/30/2016 | $8.45 per employee per month | Short Term Disability | SterlingRisk |
| American Bankers Insurance Company of Florida | 12/31/2015 | 12/31/2016 | $3,323.00 | Flood Insurance 0 Chateau/150 Idle Hour Blvd., Oakdale, NY 11769 (sewage treatment) | SterlingRisk |
| American Bankers Insurance Company of Florida | 12/31/2015 | 12/31/2016 | $5,393.00 | Flood Insurance 150 Idle Hour Blvd. Oakdale, NY 11769 (Fortunoff Hall) | SterlingRisk |
| American Bankers Insurance Company of Florida | 12/31/2015 | 12/31/2016 | $8,365.00 | Flood Insurance 121 Central Blvd. Oakdale, NY 11769 (Security Building) | SterlingRisk |
| American Bankers Insurance Company of Florida | 12/31/2015 | 12/31/2016 | $675.00 | Flood Insurance 80 Chateau Drive Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 12/31/2015 | 12/31/2016 | $8,922.00 | Flood Insurance 89 Central Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 12/31/2015 | 12/31/2016 | $3,323.00 | Flood Insurance 1300 William Floyd Pkwy Shirley, NY 11967 | SterlingRisk |

| Carrier | Policy From | Policy To | Premium | Type | Broker |
|---|---|---|---|---|---|
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $3,323.00 | Flood Insurance<br>96 Biltmore Avenue<br>Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $700.00 | Flood Insurance<br>87 Central Blvd.<br>Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance<br>88 Central Blvd.<br>Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $3,348.00 | Flood Insurance<br>120 Central Blvd.<br>Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $700.00 | Flood Insurance<br>138 Central Blvd.<br>Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $675.00 | Flood Insurance<br>21 Chateau Drive<br>Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance<br>27 Chateau Drive<br>Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance<br>39 Chateau Drive<br>Oakdale, NY 11769 | SterlingRisk |

| Carrier | Policy From | Policy To | Premium | Type | Broker |
|---|---|---|---|---|---|
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance 47 Chateau Drive Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance 64 Chateau Drive Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $675.00 | Flood Insurance 72 Chateau Drive Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance 81 Chateau Drive Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $2,990.00 | Flood Insurance 94 Connetquot Drive Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance 102 Connetquot Drive Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $5,393.00 | Flood Insurance 275 Connetquot Drive Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $675.00 | Flood Insurance 14 Elsmere Avenue Oakdale, NY 11769 | SterlingRisk |

4

| Carrier | Policy From | Policy To | Premium | Type | Broker |
|---------|-------------|-----------|---------|------|--------|
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $675.00 | Flood Insurance 90 Elsmere Avenue Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance 15 Idle Hour Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance 99 Idle Hour Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance 115 Idle Hour Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $5,393.00 | Flood Insurance 123 Idle Hour Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $3,323.00 | Flood Insurance 135 Idle Hour Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $3,323.00 | Flood Insurance 150 Idle Hour Blvd. – Racanelli Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $5,393.00 | Flood Insurance 150 Idle Hour Blvd. – KSC Oakdale, NY 11769 | SterlingRisk |

| Carrier | Policy From | Policy To | Premium | Type | Broker |
|---------|-------------|-----------|---------|------|--------|
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $3,323.00 | Flood Insurance 8 Montauk Highway Shirley, NY 11967 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $675.00 | Flood Insurance 44 Van Bomel Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $675.00 | Flood Insurance 48 Van Bomel Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $675.00 | Flood Insurance 52 Van Bomel Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $724.00 | Flood Insurance 56 Van Bomel Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $675.00 | Flood Insurance 64 Van Bomel Blvd. Oakdale, NY 11769 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $3,667.00 | Flood Insurance 1300 William Floyd Pkwy Shirley, NY 11967 | SterlingRisk |
| American Bankers Insurance Company of Florida | 11/1/2016 | 11/1/2017 | $675.00 | Flood Insurance 58 Woodlawn Avenue Oakdale, NY 11769 | SterlingRisk |

# <u>Exhibit C</u>

**Premium Financing Agreement**

| Finance Company | Policy Period | Premium Amount Financed | Monthly Payments[1] |
|---|---|---|---|
| Premium Assignment Corporation | 10/1/2016 -10/1/2017 | $344,990.25 | $35,058.27 |

---

[1] There are a total of 10 payments due under the Premium Financing Agreement, with the first installment payment due on 11/1/2016.