**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Proposed Counsel to the Debtor and Debtor-in-*
    *Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                           :       Chapter 11
                                                :
DOWLING COLLEGE,                                :       Case No. 16-75545 (REG)
                                                :
                                                :
                                Debtor.         :
-----------------------------------------------------------------x

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) APPROVING SALE PROCEDURES FOR THE SALE OF THE DEBTOR'S**
**RESIDENTIAL PORTFOLIO AND (II) APPROVING SUCH SALES OF THE**
**DEBTOR'S RESIDENTIAL PORTFOLIO FREE AND**
**CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

    Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the

above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its proposed attorneys,

Klestadt Winters Jureller Southard & Stevens, LLP, hereby files a motion for the entry of interim

and final orders substantially in the form attached hereto as Exhibit A (the "Sale Order") (i)

approving sale procedures substantially in the form attached as Schedule 1 to the Sale Order for

the sale of the Debtor's portfolio of ancillary, mostly residential, real property and any personal

property located thereon (the "Residential Portfolio") and (ii) approving the sale of the

1

Residential Portfolio free and clear of all liens, claims, encumbrances, security interests and other interests pursuant to a proposed Purchase Agreement (as hereinafter defined) to the Buyers (as hereinafter defined) (the "Motion").  The Debtor requests an interim order to consummate the sale of six (6) parcels within the Residential Portfolio where special circumstances exist.  Due to creditor restraints served on the Debtor under state law before the Petition Date, the Debtor was unable to consummate these transactions prepetition and all six (6) parcels have closing dates under existing purchase contracts that have passed.  Many of the buyers for these parcels have expressed increasing concern and frustration with the status of their transactions.  For three of these parcels, the buyers have interest rate locks for acquisition financing that are at risk of expiring before a final hearing on the Motion can be held.  Under these circumstances, the Debtor believes there is a material chance one or more of these transactions will fail absent expedited relief.  The Debtor also seeks interim relief to maintain marketing efforts for the remaining Residential Portfolio that were in process as of the Petition Date to avoid damaging the overall marketing effort for the Residential Portfolio pending further order from this Court.

## PRELIMINARY STATEMENT

1.      The Debtor is seeking through this Motion authority to sell thirty two (32) non-contiguous parcels of predominantly residential property owned by the Debtor and scattered through the neighborhood adjacent to the Debtor's former main campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769 (the "Oakdale Campus").  Twenty four of these parcels were utilized as residential properties and either rented to third party tenants or occupied by faculty.  Seven were used in the Debtor's operations.  One of the parcels is vacant land.  A schedule setting forth the addresses of the Residential Portfolio is attached hereto as Exhibit B. The Debtor is seeking authority to sell the Residential Portfolio to potential buyers (the "Buyers"

and each a "Buyer"), pursuant to a proposed form of purchase agreement (the "Purchase Agreement").  A copy of the Purchase Agreement is attached hereto as Exhibit C[1].

2.       To provide confidence and comfort to all of the Debtor's stakeholders concerning this sales effort, including creditors and existing and prospective Buyers, the Debtor seeks entry of the Sale Order authorizing the Debtor to (i) proceed to a closing with those Buyers currently under contract (the "Pending Sales") and (ii) enter into postpetition contracts for the sale of any parcel in the Residential Portfolio and to close on such sales (the "Future Sales").  Toward that end, the Debtor requests that the Court authorize the Residential Sale Procedures (as hereinafter defined), which will permit the closing of the Residential Portfolio without the need for a specific hearing for each sale, in the event that the Creditors' Committee and the Secured Parties (as hereinafter defined) consent to such sale.

3.       The Debtor submits that the ability to sell the Residential Portfolio free and clear of all liens, claims and encumbrances, security interests and other interests is of paramount importance to the successful liquidation of the Debtor.

## JURISDICTION

4.       The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.       The statutory predicates for the relief sought herein are Sections 105(a) and 363(b), (d) and (f), 365, 1107 and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and General Order 557 of the Bankruptcy Court for the Eastern District of New York.

---

[1] Capitalized terms used in this Motion, unless herein defined, are used with the meanings ascribed to such terms in the Purchase Agreement.

## BACKGROUND

### A.    General.

6.    On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

7.    The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

8.    No trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case.

9.    The factual background relating to the Debtor's commencement of this Chapter 11 Case and the facts and circumstances supporting the relief requested herein are set forth in greater detail in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration").

### B.    Residential Portfolio and Prepetition Marketing.

10.    The Residential Portfolio serves as collateral for three (3) series of bonds issued by or for the benefit of the Debtor: (a) a series of revenue bonds issued for the benefit of the Debtor by the Suffolk County Industrial Development Agency in 1996 (the "Series 1996 Bonds"); (b) a series of revenue bonds issued for the benefit of the Debtor by the Town of Brookhaven Industrial Development Agency in 2002 (the "Series 2002 Bonds"); and (c) a series of revenue bonds issued by the Debtor in 2015 (the "Series 2015 Bonds" and, collectively with the Series 1996 Bonds and Series 2002 Bonds, the "Secured Obligations").

11.     Prior to the Petition Date, the Debtor, in consultation with UMB Bank, National Association, as indenture trustee for the Secured Obligations, and certain institutional holders of the Secured Obligations (each a "Secured Party" and collectively, the "Secured Parties), commenced marketing of the Residential Portfolio.  Prior to the Petition Date, the Debtor hired Douglas Elliman (the "Residential Agent") as its real estate broker to market and sell the Residential Portfolio.  Contemporaneously with the filing of the instant Motion, the Debtor is filing an application to retain Douglas Elliman to continue to market and sell these assets.

12.     This process has been robust and portions of the Residential Portfolio have been listed for sale since March, 2016.  The marketing effort has included detailed market analysis to price each parcel that has been listed for sale, extensive marketing through print and electronic platforms, and traditional "open house" marketing.  These ongoing efforts have resulted in eight (8) fully negotiated and executed pre-petition contracts (each a "Pre-Petition Sales Contract") for the Pending Sales.

**C.     Post Petition Marketing and Sale.**

13.     To facilitate the Pending Sales and as set forth more fully in Schedule 1 to the Sale Order[2], the Debtor proposes residential sale procedures (the "Residential Sale Procedures") authorizing the Debtor to, in general terms:

> a.     consummate the Pending Sales in accordance with the Pre-Petition Sales Contracts;
>
> b.     apply any deposits made with the Debtor as provided under the Pre-Petition Sales Contracts; and
>
> c.     pay closing costs when consummating Pending Sales that are customarily satisfied by sellers in real estate transactions in Suffolk County, New York out of gross proceeds thereof, including state transfer taxes (if necessary), property condition disclosure reimbursement payments and, subject to the

---

[2] To the extent there is inconsistency between this summary of the Residential Sale Procedures and the actual Residential Sale Procedures attached as **Schedule 1 to Exhibit A, Schedule 1** controls.

terms of any order by this Court approving the Debtor's retention of the Residential Agent, fees, commissions and expenses of the Residential Agent ("Ancillary Sale Costs").

14.     With respect to the remaining properties within the Residential Portfolio, the Debtor proposes that the Residential Sale Procedures authorize the Debtor to, in general terms:

      a.     continue marketing the Residential Portfolio in consultation with the Secured Parties in a manner consistent with the pre-petition marketing effort for these assets;

      b.     provide notice promptly to (a) counsel to the Secured Parties, (b) counsel to any statutory committee, and (c) any other party asserting a lien of record against the associated property (collectively, the "Sale Notice Parties") after any proposed sale of assets that comprises the Residential Portfolio becomes subject, after the date hereof, to an agreed-upon form of purchase and sale agreement (each a "Post-Petition Sales Contract");

      c.     consummate any sale described in a notice to Sale Notice Parties in accordance with the applicable Post-Petition Sales Contract absent objection by Sale Notice Parties to the proposed sale price thereunder on or before the date that is ten (10) days after the date notice is given;

      d.     apply any deposits made with the Debtor as provided under any such Post-Petition Sales Contracts; and

      e.     pay Ancillary Sale Costs in consummating sales from the Residential Portfolio.

15.     To the extent there are unresolved objections as to the proposed sale price for any transaction contemplated by a Post-Petition Sales Contract, the Debtor shall seek further relief from this Court.

16.     Pursuant to General Order 557, the Court is asked to take notice of the following "extraordinary provision" of the proposed Residential Sale Procedures:

      Relief from Bankruptcy Rule 6004(h). The proposed form of Sale Order contains a waiver of the stay imposed by Bankruptcy Rule 6004(h).

## THE DEBTOR SHOULD BE AUTHORIZED
## TO SELL THE RESIDENTIAL PORTFOLIO

17.     The Debtor believes – in an exercise of informed business judgment – that the sale of the Residential Portfolio is in the best interests of the Debtor, its creditors and the Debtor's estate.  Under the circumstances of this Chapter 11 case, this Court should approve these sales.

18.     Bankruptcy Code Section 363 authorizes the use, sale or lease of the Debtor's assets.  11 U.S.C. § 363.

19.     Bankruptcy courts routinely authorize estate property sales under Section 363(b) when there a legitimate business reason. See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).  Courts generally defer to debtors' sound business judgment in these matters.  See, e.g., In re MF Global, Inc., 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015).

20.     A debtor generally satisfies this business judgment standard when it acts on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.  In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

21.     Bankruptcy Code Section 105(a) further supports bankruptcy asset sales.  Under Section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

22.     There is ample justification to sell the Residential Portfolio in this Chapter 11 Case:  the Debtor has ceased all meaningful business as an educational institution and otherwise.  Pursuant to separate motions filed or to be filed with the Court, the Debtor will seek authority to sell or otherwise dispose of ***all*** of its other assets and to ultimately make distributions to its creditors in accordance with their rights under state and other applicable law.

23.     In addition, this Motion complies with Section 363(d) of the Bankruptcy Code. Pursuant to Section 363(d) of the Bankruptcy Code, a transfer of property by a not-for-profit entity must be made in compliance with applicable nonbankruptcy law governing such transfer. See 11 U.S.C. § 363(d).   An insolvent not-for-profit corporation that is seeking to sell all or substantially all of its assets is required, pursuant to Sections 510 and 511 of the New York Not-for-Profit Corporation Law, to obtain approval of such sale transaction from either the state court or bankruptcy court.   The New York Not-for-Profit Corporation Law does not define what constitutes "all or substantially all" of the assets of a corporation.   However, the Residential Portfolio, when considered as a whole, or individually, does not amount to "all or substantially all" of the Debtor's assets such that court approval is necessary.

## THE DEBTOR SHOULD BE AUTHORIZED TO IMPLEMENT
## SALE PROCEDURES APPROPRIATE FOR THE RESIDENTIAL PORTFOLIO

24.     The proposed Residential Sale Procedures should be approved as well.   Sale procedures are commonplace in bankruptcy sales when they maximize the value of assets, and otherwise enhance the sale process. See In re Metaldyne Corp., 409 B.R. 661, 667-70 (Bankr. S.D.N.Y. 2009); In re Cormier, 382 B.R. 377, 388 (Bankr. W.D. Mich. 2008); In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 535-37 (3d Cir. 1999); see also Integrated Res., 147 B.R. at 656-57.

25.     The proposed Residential Sale Procedures here will facilitate the Debtor's efforts to maximize recoveries from the Residential Portfolio while safeguarding the interests of stakeholders in this Chapter 11 Case.

**A.      The Residential Sale Procedures Are a Valid Exercise of the Debtor's Business Judgment.**

26.      The Residential Sale Procedures should be approved as a valid exercise of the Debtor's business judgment.  Courts in the Second Circuit typically approve sale procedures where they represent an informed "business judgment".  See Integrated Res., 147 B.R. at 657-58 (to evaluate bid protections, courts should employ the business judgment rule, which proscribes judicial second-guessing of the corporate debtor's actions taken in good faith, absent self-dealing, and in the exercise of honest judgment); see also Metaldyne Corp., 409 B.R. at 669-70; In re First Republic Group Realty, LLC, Case No. 09-13983-MG, 2010 Bankr. LEXIS 3191, 2010 WL 3638032 (Bankr. S.D.N.Y. Aug. 18, 2010) (approving sale procedures upon finding that the sale constituted the exercise of the debtor's sound business judgment).

27.      Courts in the Second Circuit have observed that when a debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will "generally not entertain objections".  In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

28.      Here, the Residential Sale Procedures were developed in consultation with the Debtor's financial and legal advisors, including the Residential Agent, and through arm's-length negotiations with the Secured Parties who are aligned with the Debtor in their desire to maximize proceeds from sale of the Residential Portfolio.

29.      The Debtor's business judgment in crafting the Residential Sale Procedures is reflected in the demonstrable benefits the Residential Sale Procedures will bring to the Debtor's sales effort.  The Residential Sale Procedures are mindful of the Debtor's obligations to recover proceeds for distribution to stakeholders and as set forth above, each parcel is priced for sale only after a detailed market analysis is performed.  The Residential Sale Procedures then use this

market analysis to leverage the existing, well developed, well understood sales market for residential property. The Residential Sale Procedures are specifically mindful that most potential buyers for these assets are consumers who are familiar with general home-buying procedures, but are likely poorly versed in bankruptcy-specific Section 363 sales.

30.     There are otherwise demonstrable benefits to the Residential Sale Procedures since any failure to consummate Pending Sales in accordance with Pre-Petition Sale Contracts may cause defaults under Pre-Petition Sale Contracts and possible termination thereof. That would expose the Debtor to uncertain timing and transaction pricing that may ultimately materialize for affected parcels. Authority to consummate the Pending Sales without material delay is also crucial to the Debtor's ability to monetize the overall Residential Portfolio. There are at any given moment dozens of residential properties for sale in Oakdale and the immediate vicinity; any material delay in completing these sales (or other result that prevents the Debtor from consummating Pending Sales on their existing terms) may brand the Debtor in the marketplace as a difficult transaction partner, leaving the Debtor at a disadvantage compared to competing sellers of similar properties in the same neighborhood.

**B.     The Residential Sale Procedures Are Consistent With Procedures Other Bankruptcy Courts Have Approved To Sell Residential Property And Similar Assets.**

31.     The Residential Sale Procedures are also consistent with sale programs numerous bankruptcy courts have tailored to residential real property Portfolio s. See e.g., In re Towers of Channelside, Case No. 08-bk-939-KRM (Bankr. M.D. Fla. Feb. 1 & 15, 2008) [D.E. # 31 & 54]; In re Cabi Downtown LLC, Case No. 09-27168-BKC-LMI (Bankr. S.D. Fla. Aug. 27, 2009) [D.E. #51]; In re TOUSA, Inc., Case No. 08-10928-JKO (Bankr. S.D. Fla. Jan. 31, 2008) [D.E.

#110]; and In re WCI Communities, Inc., Case No. 08-11643-KJC (Bankr. D. Del. Aug. 5, 2008) [D.E. # 61].

32.    Other bankruptcy courts have approved procedures to liquidate residential portfolios with many of the same features the Debtor is requesting here, including:

    a.    authority to consummate home sales that, like the Pending Sales, were negotiated at arms-length pre-petition;

    b.    global procedures for additional marketing and sales of remaining home Portfolio s after the petition date;

    c.    authority to consummate sales of other homes after "negative notice" to core parties to protect interests of other case stakeholders; and

    d.    streamlined timing, including relief from Bankruptcy Rules 6003 and 6004.

33.    The Residential Sale Procedures are also consistent with the streamlined rules courts frequently approve for the sale of "ancillary" and "de minimis" assets.  See In re Borders Group, Inc., 453 B.R. 477 (Bankr. S.D.N.Y. 2011) (approving streamlined asset sale procedures for assets sold at prices up to $1 million); In re Mesa Air Group, Case No. 10-10018-MG (Bankr. S.D.N.Y. Feb. 25, 2010) [D.E. #371] (approving streamlined asset sale procedures for assets sold at prices up to $750,000); In re Eastman Kodak Company, et al., Case No. 12-10202-MEW (Bankr. S.D.N.Y. Feb. 28, 2012) [D.E. #445] (approving streamlined asset sale procedures for assets sold at prices up to $3 million).  As noted, the Debtor's primary assets include two (2) large former educational campuses that supported its former core business as a private four (4) year college.  Bankruptcy courts have routinely recognized the value of simplified procedures to liquidate "non-core" assets that, like the Residential Portfolio, strike an appropriate balance for all stakeholders.

## THE RESIDENTIAL PORTFOLIO SHOULD BE SOLD FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

34.     The sales contemplated by this Motion and the proposed Residential Sale Procedures should be free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363(f).   That relief is appropriate for the Residential Portfolio since potential homebuyers may not proceed if the Debtor cannot deliver clean title at closing.

35.     Section 363(f) permits sales of property free and clear of liens, claims, interests and encumbrances when any one of five conditions is satisfied, including:

a.     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

b.     the affected entity consents;

c.     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d.     such interest is in bona fide dispute; or

e.     the affected entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

See 11 U.S.C. § 363(f).

36.     If the Residential Sale Procedures are approved, Section 363(f) will be satisfied as to the Secured Parties, who are consenting to these procedures and will, subject to an order that reflects these procedures, consent to the anticipated sales of the Residential Portfolio.   See 11 U.S.C. § 363(f)(2); In re Jones, 548 B.R. 658, 662 (Bankr. W.D.N.Y. 2016) (approving sale free and clear of first mortgagee's lien per mortgagee's consent pursuant to Section 363(f)(2)); In re United Puerto Rican Food Corp., 41 B.R. 565, 574 (Bankr. E.D.N.Y. 1984) (free and clear sale proper if lienholder consents).

37.    Section 363(f) will be satisfied as to any other parties that may assert liens, claims, interests or encumbrances against the Residential Portfolio or any portion thereof as well. The Residential Portfolio will be sold, based on the marketing effort, for amounts the Debtor believes, in the exercise of its business judgment, will reflect its fair market value.  Further, any interest in the Residential Portfolio asserted by parties other than the Secured Parties is subordinate to the Secured Parties' rights.  Unless and until proceeds arising from the sale of the Residential Portfolio are sufficient to satisfy the claims of the Secured Parties in full, any other parties asserting liens are, in fact, unsecured.  See In re Chrysler LLC, 405 B.R. 84, 89 (Bankr. S.D.N.Y. 2009) (authorizing Section 363 sale because, among other reasons, the liquidation value of the collateral was lower than the sale price and the full value of the collateral was being distributed to the secured lenders).

### REQUEST FOR INTERIM RELIEF AND
### WAIVER OF BANKRUPTCY RULES 6003 AND 6004

38.    The Debtor believes interim relief is appropriate (1) to permit the Debtor to consummate six (6) of the eight (8) Pending Sales per the terms of the Pre-Petition Sales Contracts pending entry of a final order on the Motion and (2) to allow the Debtor to continue its existing marketing efforts for the balance of the Residential Portfolio, pending the entry of a final order, with respect to the relief requested herein.

39.    Pursuant to Bankruptcy Rule 6003, the Court may permit sales of assets in this case within the first twenty (20) days after the Petition Date when such relief is necessary to avoid immediate and irreparable harm.  See Bankruptcy Rule 6003.

40.    Relatedly, the Court may grant relief from Bankruptcy Rule 6004(h), which otherwise requires that an order authorizing the sale of property other than cash collateral is

stayed until the expiration of fourteen (14) days after entry of the order.  See Bankruptcy Rule 6004(h).

41.     The Debtor believes relief from the limitations in Bankruptcy Rules 6003 and 6004(h) - that would otherwise frustrate the relief sought in this Motion - is in the best interest of the Debtor, its creditors and the Debtor's estate.

42.     As set forth above, any failure to timely consummate Pending Sales may cause defaults under the Pre-Petition Sales Contracts or otherwise cause the termination of Pending Sales.

43.     To strike an appropriate balance between the possibly competing interests of stakeholders, the Debtor is limiting its requests to consummate Pending Sales as part of interim relief to the following parcels where the sale date has already lapsed and where, in at least some cases, the buyer has informed the Debtor it is facing expiration of a rate lock:

| Parcel Address: | Contract Price: | Outside Closing Date: |
|---|---|---|
| 64 Van Bomel Ave. | $323,500 | October 6, 2016 |
| 138 Central Ave. | $335,000 | September 30, 2016 |
| 102 Connetquot Ave. | $561,500 | September 15, 2016 |
| 115 Idle Hour Blvd. | $327,500 | November 14, 2016 |
| 99 Idle Hour Blvd. | $284,000 | November 4, 2016 |
| 80 Chateau Blvd. | $295,000 | November 4, 2016 |

44.     As is reflected in the First Day Declaration, the Debtor's professionals have informed the Debtor that each of these transactions is at risk already, and any further delay may result in the loss of these opportunities.

45.     Failure to approve the Residential Sale Procedures on an interim basis may also harm on-going negotiations regarding the remaining Residential Portfolio by forcing the Debtor and other stakeholders to stand down pending approval by this Court.  Perhaps most concerning, as set forth above, any failure to consummate the Pending Sales may jeopardize confidence in

the residential broker and buyer community and imperil the disposition process for the Residential Portfolio.

46.    Accordingly, the Debtor requests the Court waive Bankruptcy Rule 6003's limitation on asset dispositions during the initial days of this proceeding, and enter an interim order substantially in the form of <u>Exhibit A</u>.  The Debtor similarly requests the Court waive Bankruptcy Rule 6004(h)'s stay so that the closing for each of the Residential Portfolio may occur as soon as possible.

<b><u>MOTION PRACTICE</u></b>

47.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion.

<b><u>NOTICE</u></b>

48.    As of the filing of this Motion, no trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case.  Notice of this Motion will be given to: (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders or any agent therefore; (c) the holders of the 20 largest unsecured claims; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002; (f) all parties who are known to assert a lien, claim, encumbrance or other interests on any portion of the Debtor's assets; and (g) all parties identified by the Debtor as potentially having an interest in acquiring any homes in the Residential Portfolio.  The Debtor submits that no other notice need be given.

15

## **NO PRIOR REQUEST**

49.      No previous request for the relief sought herein has been made to this or any other court.

**WHEREFORE** the Debtor respectfully requests that the Court enter an order substantially similar to the proposed order, attached hereto as Exhibit A, (i) authorizing, on an interim basis, the consummation of the six (6) Pending Sales described herein free and clear of all liens, claims, interests and encumbrances; (ii) establishing, on an interim basis, the Residential Sale Procedures to continue to market and negotiate (but not, pending entry of a final order, consummate) sales for the Residential Portfolio, free and clear of all liens, claims, interests and encumbrances; (iii) scheduling a final hearing on the Motion; (iv) waiving the requirements of Bankruptcy Rules 6003 and 6004 as set forth herein; (v) entering a final order, substantially in the form of the Interim Order; and (vi) granting such other and further relief as may be just and proper.

Dated:   New York, New York
         November 29, 2016

                **KLESTADT WINTERS JURELLER**
                **SOUTHARD & STEVENS, LLP**


        By:   */s/ Sean C. Southard*
             Sean C. Southard
             Lauren C. Kiss
             200 West 41st Street, 17th Floor
             New York, NY 10036
             Tel: (212) 972-3000
             Fax: (212) 972-2245
             Email: ssouthard@klestadt.com
                    lkiss@klestadt.com

             *Proposed Attorneys to the Debtor and Debtor*
              *in Possession*

# <u>Exhibit A</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                              :        Chapter 11
                                                   :
DOWLING COLLEGE,                                   :        Case No. 16-75545 (REG)
                                                   :
                                                   :
                              Debtor.              :
-----------------------------------------------------------------x

**INTERIM ORDER AUTHORIZING SALES OF**
**RESIDENTIAL PORTFOLIO AND RELATED PROCEDURES**

Upon the motion (the "Motion")[1] dated November 29, 2016 of Dowling College

("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11

case (the "Chapter 11 Case"), by and through its proposed attorneys, Klestadt Winters Jureller

Southard & Stevens, LLP, for entry of an order, (i) approving the Residential Sale Procedures

and (ii) approving the sale of the Residential Portfolio free and clear of all liens, claims,

encumbrances, security interests and other interests as set forth therein; and this Court having

held a hearing on the Motion on [_____], 2016 (the "Hearing"); and, based on the Motion

and the record of the Hearing, it now appearing that the relief requested in the Motion is in the

best interest of the Debtor's estate; and after due deliberation thereon and good cause appearing

therefor,

IT IS HEREBY ORDERED THAT:

A.      The Motion is granted on an interim basis.  Any objections to the relief sought in

the Motion that have not been previously resolved or withdrawn, and all reservations of rights

contained therein, are overruled on the merits.

B.      The Debtor is authorized to consummate the sale of six (6) Pending Sales as

described in the Motion in accordance with the Residential Sale Procedures annexed hereto as

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

<u>Schedule 1</u>.  The Debtor is otherwise authorized to implement the Residential Sale Procedures on an interim basis, provided the actual consummation of any further sales from the Residential Portfolio shall be deferred pending entry of a final order on the Motion.

C.      Pursuant to 11 U.S.C. Section 363(f) of the Bankruptcy Code all sales by the Debtor pursuant to the Residential Sale Procedures shall be free and clear of all liens, claims, interests and encumbrances.  Any transfer of assets pursuant to the Residential Sale Procedures is exempt from New York State real estate transfer tax insofar as it is a conveyance pursuant to the Bankruptcy Code. *See* N.Y. Tax Law Section 1405(b)(8).

D.      The Debtor has complied with Section 363(d)(1) of the Bankruptcy Code.

E.      The filing of a copy of this Order in each county where the Debtor is selling the Residential Portfolio pursuant to the Residential Sale Procedures may be relied upon by all title insurers in order to issue title insurance policies on properties located within such county.

F.      In accordance with Bankruptcy Rule 6004(a), the Debtor shall serve notice of the Motion to all of the Debtor's creditors within five (5) business days after entry of this Interim Order.

G.      The Debtor shall serve a copy of this Interim Order within five (5) business days after entry hereof, upon: (a) United States Trustee for the Eastern District of New York; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) the holders of the 20 largest unsecured claims and, upon its appointment, counsel for the official committee of unsecured creditors (the "<u>Creditors' Committee</u>"); (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York

2

State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (f) all parties who are known to assert a lien, claim, encumbrance or other interest on any portion of the Debtor's assets; and (g) all parties identified by the Debtor as potentially having an interest in acquiring any homes in the Residential Portfolio. Notice served pursuant to the preceding sentence shall be via first class mail, postage prepaid. No further notice of the final hearing to approve the Motion or of the entry of this Interim Order need be served by the Debtor.

H.     The final hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on [_____], 2016 at 10:00 a.m. (Prevailing Eastern time), and any objections to entry of such order shall be in writing, filed with the Court and served upon (i) The Office of the United States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, Esq., Trial Attorney; (ii) counsel to the Debtor: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Sean C. Southard, Esq.; (iii) counsel to the Debtor's material prepetition and post-petition secured lenders: (a) Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn: P. Miyoko Sato, Esq. and Ian A. Hammel, Esq., (b) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Brian D. Pfeiffer, Esq. and Neil S. Begley, Esq., (c) Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord, Esq. and Thomas J. McNamara, Esq., and (d) Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, Attn: Adam T. Berkowitz, Esq.; and (iv) counsel to the Creditors' Committee, so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on [_____], 2016.

I.      The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion or are otherwise deemed waived.

J.      Notwithstanding the possible applicability of Bankruptcy Rule 6004, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

K.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

# **Schedule 1**

## Residential Sale Procedures

**I.      Residential Sale Procedures for Pending Sales:**

a.      The Debtor is authorized to consummate the Pending Sales in accordance with Pre-Petition Sales Contracts free and clear of all liens, claims, interests and encumbrances;

b.      The Debtor shall honor and apply any deposits made with the Debtor as provided in Pre-Petition Sales Contracts; and

c.      The Debtor shall at closing pay closing costs customarily satisfied by sellers in real estate transactions in Suffolk County, New York out of gross proceeds thereof, including state transfer taxes (if necessary), property condition disclosure reimbursement payments and, subject to the terms of any order by this Court approving the Debtor's retention of the Residential Agent, fees, commissions and expenses of the Residential Agent ("Ancillary Sale Costs").

**II.     Residential Sale Procedures for Remaining Portfolio:**

a.      The Debtor is authorized to continue marketing the Residential Portfolio in consultation with the Secured Parties in a manner consistent with the pre-petition marketing effort for these assets;

b.      Promptly after any proposed sale of assets that comprises the Residential Portfolio has been reduced to a form of purchase and sale agreement acceptable to the Debtor and Secured Parties (each a "Post-Petition Sales Contract"), the Debtor shall provide notice (a "Proposed Sale Notice") to (a) counsel to the Secured Parties, (b) counsel to any statutory committee, and (c) any other party asserting a lien of record against the associated property (collectively, the "Sale Notice Parties") reflecting the gross purchase price of the anticipated sale;

c.      Any Sale Notice Party may provide written objection to the proposed sale price described in any Proposed Sale Notice to counsel for the Debtor and all other Sale Notice Parties on or before the date that is ten (10) days after a Proposed Sale Notice is given;

d.      The Debtor shall honor and apply any deposits made with the Debtor as provided in Post-Petition Sales Contracts;

e.      If the Debtor does not receive an objection to a Proposed Sale Notice of a type described in these Residential Sale Procedures within the ten-day period described above, the Debtor may proceed to close the sales described therein for a price equal to or greater than the gross sale price on the Proposed Sale Notice, free and clear of all liens, claims, interests and encumbrances and shall at closing pay Ancillary Costs. The Debtor will promptly thereafter file with the Court a statement as to the relevant sale(s) and serve such statement on the Sale Notice Parties;

f.      If any Sale Notice Party timely serves a written objection to the proposed sale price of any assets pursuant to these procedures, the Sale Notice Parties may attempt to resolve the dispute, the Debtor shall otherwise promptly file a motion seeking a resolution of such dispute, and such dispute will be heard at the Court's next available hearing date or otherwise at the Court's earliest convenience.

# <u>Exhibit B</u>

**The Residential Portfolio**

| Address | Building Use | Notes |
|---|---|---|
| 96 Biltmore Ave. | Visual Arts Center | |
| 87 Central Blvd. | Residence | |
| 88 Central Blvd. | Residence | |
| 89 Central Blvd. | Residence | |
| 121 Central Blvd. | Security Offices | |
| 138 Central Blvd. | Residence | Pending Sale |
| 21 Chateau Drive | Residence | |
| 27 Chateau Drive | Residence | |
| 39 Chateau Drive | Residence | |
| 47 Chateau Drive | Residence | |
| 64 Chateau Drive | Veterans House | |
| 72 Chateau Drive | Residence | |
| 80 Chateau Drive | Residence | Pending Sale |
| 81 Chateau Drive | Residence | Pending Sale |
| 94 Connetquot Drive | Residence | |
| 102 Connetquot Drive | Residence | Pending Sale |
| 274 Connetquot Drive | Lot | |
| 275 Connetquot Drive | Music Department | |
| 14 Elmsmere Drive | Residence | Pending Sale |
| 90 Elsmere Drive | Residence | |
| 8 Idle Hour Blvd. | Offices | |
| 15 Idle Hour Blvd. | Residence | |
| 99 Idle Hour Blvd. | Residence | Pending Sale |
| 115 Idle Hour Blvd. | Residence | Pending Sale |
| 123 Idle Hour Blvd. | Campus Offices | |
| 135 Idle Hour Blvd. | Campus Offices | |
| 44 Van Bomel Blvd. | Residence | |
| 48 Van Bomel Blvd. | Residence | |
| 52 Van Bomel Blvd. | Residence | |
| 56 Van Bomel Blvd. | Residence | |
| 64 Van Bomel Blvd. | Residence | Pending Sale |
| 58 Woodlawn Ave. | Residence | |

# **Exhibit C**

A-125——Residential contract of sale. 11-2000

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

## NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.

This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

# Contract of Sale made as of _____ \_\_, 2016       BETWEEN

**DOWLING COLLEGE**
Address:  **150 Idle Hour Boulevard, Oakdale, New York 11769**
Social Security Number/ Fed. I.D. No(s):                              hereinafter called "Seller" and

_____

Address: _____
Social Security Number/ Fed. I.D. No(s):                              hereinafter called "Purchaser".

# The parties hereby agree as follows:

**1. Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: _____, **Oakdale, New York  11769**

**Tax Map Designation:** _____

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2. Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal

unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting, and built-ins not excluded below (*strike out inapplicable items*).  **All to the extent as they presently exist in "As Is-Where Is" condition.**

Excluded from this sale are furniture and household furnishings and  **n/a.**

**3.** Purchase Price. The purchase price is          $
payable as follows:
     (a)  on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt or which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
                                                                     $
     ~~(b)  by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:~~          $0
     ~~(c)  by a purchase money note and mortgage from Purchaser to Seller:~~          $
     (d)   balance at Closing in accordance with paragraph 7:
                                                                     $

**4.   ~~Existing Mortgage.~~** (*Delete if inapplicable*) ~~If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
     ~~(a)  The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of~~
~~percent per annum, in monthly installments of $~~
~~which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on~~
     ~~(b)   To the extent that any required payments are made on~~

~~the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~

~~(c)  If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.~~

~~(d)  Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.~~

~~(e)  Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

**5.  Purchase Money Mortgage.** (~~*Delete if inapplicable*~~) ~~If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:~~

~~(a)  The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $~~

~~for its preparation.~~

~~(b)  The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than~~

~~percent per annum and the total debt service thereunder shall not be greater than $ _____ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

**6.  Downpayment in Escrow.** (a) ~~Seller's attorney~~ **Garfunkel Wild, P.C.** ("Escrowee") shall hold the Downpayment in escrow in a segregated **IOLA** bank account at **Citibank, N.A.** address **111 Great Neck Road, Great Neck, New York 10021**

until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) **non**-interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b)  The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c)  Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d)  Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e)  Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f)  The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

**7.  Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a)  Cash, but not over $ 1,000.00:

(b)  Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings

and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of **$1,000.00**; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. **Mortgage Commitment Contingency.** (*Delete paragraph if inapplicable. For explanation, see* Notes on Mortgage Commitment Contingency Clause.) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before _____ (__) days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, to Purchaser, at Purchaser's sole cost and expense, of $_____ for a term of at least **30** years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly.

(c) (*Delete this subparagraph if inapplicable*) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that

does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

10. **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date **of Closing** ~~hereof~~ by any governmental department having authority

as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b)    ~~(Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

**11.    Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i)    The Premises abut or have a right of access to a public road;

(ii)    Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii)    Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv)    The Premises are not affected by any exemptions or abatements of taxes **other than a STAR exemption, if any**; and

(v)    Seller has been known by no other name for the past ten years, except

**NONE**

(b)    Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c)    Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12.    Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" **"Where is"** in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13.    Insurable Title.** Seller shall give and Purchaser shall accept such title as: **Stewart Title Insurance Company through Michael Bidner**

shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14.    Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a **Bargain and Sale with covenant's against Grantor's acts** deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b)    If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15.    Closing Date and Place.** Closing shall take place at the office of:

**Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, New York 11021**

at    **10:00 am**        o'clock **on or about _____, 2016**.

**16.    Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a)    The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b)    The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a        **single**        family dwelling at the date of Closing.

(c)    The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d)    The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e)    All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in ~~working order~~ **"As is -Where is" condition** as of the date of Closing.

(f)    If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g)    The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17.    Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or

recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i)   taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; ~~(iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing;~~ ~~(v) vault charges;~~ (vi) rents as and when collected.

(b)   If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c)   If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d)   If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e)   Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

**20. Use or Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to payor discharge, Seller may use any portion of the cash balance of the purchase price to payor discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear or such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. The Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect or the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, ~~if this contract is subject to the mortgage contingency set forth in paragraph 8, after~~ ~~a mortgage commitment has been accepted by Purchaser~~. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i)   If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects. Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 15 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c)   If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b)   If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the

4036823v.1

Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b)  delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c)  with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than: **Douglas Elliman Real Estate** ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28. Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b)  Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c)  Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d)  The captions in this contract are for convenience or reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e)  This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f)  Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g)  Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h)  This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

Continued on Rider attached hereto. *Delete if inapplicable*.

(i)  If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

**In Witness Whereof,** this contract has been duly executed by the parties hereto.

**DOWLING COLLEGE**

By:_____    *Seller*        _____    *Purchaser*
      Name:
      Title:

**Attorney for Seller:**                          **Attorney for Purchaser:**
**Klestadt Winters Jureller Southard &**          **Address: _____**
**Steven, LLP**
**Attn: Sean C. Southard, Esq.**                  **_____**
**Address: 200 West 41st Street, 17th Floor**    **Tel.: _____ Fax: _____**
**New York, NY 10036**
**Office: (212) 972-3000**
**Direct: (212) 679-5320**
**Fax: (212) 972-2245**

Receipt of the downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

**Garfunkel Wild, P.C.**                          *Escrowee*

By: _____    By: _____
      Authorized Signatory

## RIDER TO RESIDENTIAL CONTRACT OF SALE

SELLER:          DOWLING COLLEGE

PURCHASER:       _____

PREMISES:        _____, Oakdale, NY

DATE:            _____ __, 2016

---

In the event of any conflict between the provisions of this Rider and the provisions of the Residential Contract of Sale to which this Rider is annexed, the provisions of this Rider shall be deemed to control.  Any references to "the Contract" or "this Contract" in the Residential Contract of Sale or in this Rider shall be deemed to include the provisions set forth in this Rider.

29.    <u>Section 2 of this Contract is amended to include the following</u>:

No part of the purchase price shall be deemed to be paid by Purchaser for any of the personal property included in this sale.

30.    <u>A new section 7(e) is included in the Contract as follows</u>:

(e)    Purchaser acknowledges that attorney escrow account checks will not be accepted to pay Seller at Closing in excess of $500.00.

31.    <u>Section 9 of this Contract is amended to include the following</u>:

(f)    Any state of facts that an accurate survey may show provided the same do not render the premises uninsurable; and

(g)    Covenants, restrictions, easements and agreements of record, provided the same do not prohibit the present use of the Premises as a single family residence; and

(h)    All encroachments of the Premises upon any street, highway or adjoining premises; and

(i)    All encroachments of less than one (1) foot upon and affixations to the Premises from any adjoining premises; and

(j)    Rights, if any, relating to construction and maintenance in connection with any public utility of wires, poles, pipes, conduits, and appurtenances thereto, on, under or across the Premises; and

(k)    Minor variations between the record lot lines of the Premises and those shown on the tax map; and

4036779v.1

(l)    Minor variations between record lot lines and the location of fences located on the Premises not to exceed one (1) foot, provided that title company does not claim an out of possession exception; and

32.    <u>Section 16(b) is amended to include the following</u>:

Seller shall not be obligated to commence any proceedings, obtain any variance, nor to expend any money in order to comply with this Section.  If Seller would be obligated to commence a proceeding, obtain a variance or expend any money in order to comply with this Section 16(b), Seller shall have the right to terminate this Contract on notice to Purchaser whereupon Purchaser shall be entitled to a return of the Down payment and other monies as described in Section 21(c), in which event this Contract shall be deemed canceled and the parties shall have no further obligations to each other except for those obligations specifically stated in the Contract to survive termination, provided, however, that upon Seller's election to terminate this Contract, Purchaser shall have the right to void such election by agreeing to accept such certificates as Seller shall be able to deliver without commencing such proceeding, obtain said variance or expending any money, which election by Purchaser shall be made within five (5) business days after delivery of notice from Seller of their election to terminate this Contract as aforesaid.

33.    <u>Section 12 and 16(e) is amended to include the following</u>:

Seller makes no representation as to the physical condition of the Premises or any structure or improvements located thereon.  Purchaser acknowledges that Purchaser is fully familiar with the physical condition of the Premises and Purchaser shall be required to accept the Premises together with any and all defects in its "AS-IS WHERE-IS" condition as of the date of Closing except as expressly set forth herein.

34.    <u>Paragraph 18 is modified to include the following</u>:

If Purchaser takes title subject to any unpaid tax, water charge or sewer rent and receives from Seller a credit or adjustment at Closing for Seller's proportionate share thereof, Purchaser warrants and represents to Seller that Purchaser shall timely pay such tax, charge or rent and shall indemnify Seller and hold Seller harmless from and against any cost, expense and liability in connection therewith.  The provisions of this paragraph shall survive Closing.

35.    <u>Section 21(b) is amended to include the following</u>:

Seller shall not be required to bring any action or proceeding or incur any expense to obtain such title as it has agreed to convey hereunder, except that Seller, at its sole expense, shall take whatever action is necessary to discharge, satisfy or have Purchaser's title insurance company insure against collection, the lien of any mortgage given by Seller encumbering the Premises.

36.    <u>Section 21 (c) is amended to include the following</u>:

The "net cost of examination of title" shall be deemed to mean expenses actually incurred by Purchaser for title examination and survey update, but in no event shall the same

exceed the net amount which would be charged by a title company in the County where the Premises are located without issuance of a policy.

37.    Paragraph 25 is amended to include the following:

Copies of all Notices to Seller or Seller's counsel shall also be delivered to Garfunkel Wild, P.C. at 111 Great Neck Road, 6th Floor, Great Neck, New York 11021, Attention: Sean P. Leyden, Esq. Garfunkel Wild, P.C. is also permitted to deliver Notices on behalf of Seller.

38.    Acceptance of Deed:

The acceptance by Purchaser of the deed transferring title to the Premises and delivery of possession in accordance with the terms and conditions herein shall be deemed to be full performance of and discharge of any and all agreements and obligations to be performed by Seller pursuant to the provisions of this Contract, except where such agreements and obligations are specifically herein stated to survive the Closing, delivery of the deed, or transfer of title.

39.    Limitations:

Neither party shall assert any claim or shall bring any action against the other, regardless of form, arising out of this Contract, more than six (6) months after the Closing.

40.    Property Condition Disclosure Statement:

Purchaser acknowledges that Purchaser is aware of the Property Condition Disclosure Act (the "PCDA") and the right to obtain from Seller a signed Statement under the PCDA.  It is understood that Seller does not intend to provide such Statement to Purchaser. Purchaser shall receive a credit at Closing in the amount of $500.00 against the Purchase Price in accordance with Article 14 of the New York Real Property Law.

41.    Liquid Assets:

Purchaser represents that to its knowledge, it has liquid assets sufficient to perform its obligations under this Contract, including without limitation, paying all closing costs, title premiums, taxes and other charges.

42.    Sale Not Conditional:

The within sale is not conditioned upon the sale of any real property presently owned by Purchaser.

43.    Seller's Concession:

Seller shall give to Purchaser, at closing, a concession in the amount of $7,000.00 to be used by Purchaser toward Purchaser's closing costs. Purchaser and Seller represent that there is no illegality, deception or misrepresentation in connection with the concession and same has been fully disclosed to Purchaser's lending institution and same shall be disclosed and

included on the closing disclosure statement executed by the parties at closing.  Purchaser shall reimburse Seller for any incremental increase in New York State transfer taxes as a result of the concession. If the Premises does not appraise with the aforementioned concession, Purchaser shall nonetheless pay the closing cost out of its personal funds and proceeds with the mortgage commitment in such lesser amount and concession shall be reduced accordingly.

44.    Counterparts:

This Contract may be executed in one or more counterparts, each of which shall be deemed an original and all of which, taken together, shall constitute but one and the same instrument.  Executed copies of this Contract may be delivered by holographic originals, telefacsimile or electronic (e.g., pdf) means, any of which shall be effective to constitute delivery.

***Signature Page Immediately Follows***

4036779v.1

IN WITNESS WHEREOF, the parties have executed this Rider to the Contract as of the date first above written.

**SELLER:**

DOWLING COLLEGE

_____

**Name:**
**Title:**

**PURCHASER:**

_____

_____

**EXHIBIT A**

**LEGAL DESCRIPTION**
**OF PREMISES**

# EXHIBIT B

**Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards**

**Lead Warning Statement**

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory.  Lead poisoning also poses a particular risk to pregnant women.  The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards.  A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Seller's Disclosure** (initial)

_____ (a)    Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐    Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

_____

_____

☐    Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____ (b)    Records and reports available to the seller (check one below):

☐    Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead based paint hazards in the housing (list documents below).

_____

☐    Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgement** (initial)

_____ (c)    Purchaser has received copies of all information listed above.

_____ (d)    Purchase has received the pamphlet *Protect Your Family from Lead in Your Home*.

_____ (e)    Purchase has (check one below):

☐    Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based  paint and/or lead-based paint hazards; or

☐    Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgement** (initial)

_____ (f)    Agent has informed the seller of the seller's obligations under 42 U.S.C. 4582(d) and is aware of his/her responsibility to endure compliance.

**Certificate of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | |
|---|---|
| _____ | _____ |
| Seller                                   Date | Seller                                   Date |
| _____ | _____ |
| Seller                                   Date | Seller                                   Date |
| _____ | _____ |
| Agent                                   Date | Agent                                   Date |
| _____ | _____ |
| Purchaser                              Date | Purchaser                              Date |

4036779v.1