**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Proposed Counsel to the Debtor and Debtor-in-*
*Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                    :    Chapter 11
                                                         :
DOWLING COLLEGE,                                         :    Case No. 16-75545 (REG)
                                                         :
                                                         :
                                      Debtor.            :
-------------------------------------------------------------x

### APPLICATION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE RETENTION OF A&G REALTY PARTNERS, LLC AND MADISON HAWK PARTNERS, LLC AS REAL ESTATE ADVISORS TO THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned

chapter 11 case (the "Chapter 11 Case"), submits this application (the "Application") for entry of

interim and final orders, substantially in the form attached hereto as Exhibit A, approving the

retention of A&G Realty Partners, LLC ("A&G") and Madison Hawk Partners, LLC ("Madison

Hawk" and together with A&G, the "Campus Agents"), as real estate advisors to the Debtor,

*nunc pro tunc* to the Petition Date, pursuant to Sections 327(a) and 328(a) of Title 11 of the

United States Code  (the "Bankruptcy Code"), Rules 2014, 6003 and 6004 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1 of the Local

Bankruptcy Rules for the Eastern District of New York (the "Local Rules").  In support of this Application, the Debtor respectfully sets forth and represents as follows:

## SUMMARY OF RELIEF REQUESTED

1.      By this Application, the Debtor requests entry of an order, substantially in the form of Exhibit A hereto, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1, authorizing the Debtor to retain the Campus Agents as its exclusive real estate advisors[1] *nunc pro tunc* to the Petition Date on the terms and conditions set forth in that certain real estate services agreement entered into on October 19, 2016 between the Campus Agents and the Debtor (the "Services Agreement")[2], a copy of which is attached hereto as Exhibit B, to assist with the sale and disposition of the collateral held by the Series 2006 Bond Trustee under the Series 2006 Bond Documents[3] (the "Series 2006 Collateral") consisting of the following parcels of the Debtor's real property:  (i) approximately 25 acre campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769, as more fully described in the Series 2006 Bond Documents (the "Oakdale Campus") and (ii) approximately 103 acre campus located at 1300 William Floyd Parkway, Shirley, Town of Brookhaven, New York 11967, as more fully described in the Series 2006 Bond Documents (the "Brookhaven Campus").  For the avoidance of doubt, the Campus Agents will not serve as real estate advisors with respect to (i) the thirty-two residences adjacent to the Oakdale Campus and (ii) the dormitories located at the Brookhaven Campus.  The Debtor believes the retention of the Campus Agents as its real estate advisors for the Series 2006 Collateral will enable the Debtor to effectuate a prompt sale of the Series 2006 Collateral and obtain the highest

---

[1] As a result of certain financing transactions as described in the First Day Declaration (defined herein), all of the Debtor's assets and real property are subject to the liens and security interests of the Debtor's prepetition bondholders.  The collateral held by each prepetition bondholder will be marketed and sold by a different real estate broker.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Services Agreement.

[3] The Series 2006 Bond Trustee and the Series 2006 Bond Documents shall have the meanings ascribed to them in the First Day Declaration.

and best value for the Series 2006 Collateral.  Accordingly, the Debtor submits the retention of the Campus Agents is in the best interest of the Debtor's estate and its creditors.

2.      In support of this Application, the Debtor relies upon (i) the Affidavit of Andrew Graiser, Co-President of A&G, executed on October 31, 2016, a copy of which is annexed hereto as Exhibit C (the "Graiser Affidavit") and (ii) the Affidavit of Jeffrey L. Hubbard, President of Madison Hawk, executed on October 31, 2016, a copy of which is annexed hereto as Exhibit D (the "Hubbard Affidavit").

3.      The Debtor requests an interim order to allow the Campus Agents to market the Oakdale Campus immediately after the Petition Date pending further order from this Court.  The Campus Agents expect to spend substantial time and money marketing the Oakdale Campus within the first few weeks of this case and, therefore, the Debtor submits that interim relief is appropriate.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5.      Venue of this proceeding within this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are Sections 327(a) and 328(a) of the Bankruptcy Code and Rules 2014 and 2016 of the Bankruptcy Code.

## BACKGROUND

7.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

8.      The Debtor continues to manage its property as a debtor in possession pursuant to

Sections 1107(a) and 1108 of the Bankruptcy Code.

9.      No trustee, examiner or official committee has been appointed in this Chapter 11 Case.

10.      Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

11.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer to the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration").

## RELIEF REQUESTED

12.      By this Application, the Debtors seek entry of an order pursuant to Sections 327 and 328 of the Bankruptcy Code authorizing the employment and retention of the Campus Agents as the exclusive real estate advisors to the Debtor for the Series 2006 Collateral pursuant to the terms and conditions of the Campus Agents' Services Agreement with the Debtor, attached hereto as Exhibit B.  As set forth in the Services Agreement, the term of the retention shall be for nine (9) months from the Effective Date of the Services Agreement and shall continue on a month-to-month basis until cancelled by the Debtor or the Campus Agents in accordance with the Services Agreement.  In light of the unique circumstances and complexity of

this Chapter 11 Case, the Debtor requires the services of skilled and experienced real estate advisors that are familiar with the Debtor's real property.

13.     As part of this Application, the Debtor also requests that the Court grant the Campus Agents a waiver of compliance with the information requirements relating to compensation requests set forth in the United States Trustees Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "Fee Guidelines") to the extent requested herein and as further detailed below.

## SERVICES TO BE RENDERED DURING THE CHAPTER 11 CASE

14.     As set forth more fully in the Services Agreement, the Campus Agents will perform the following services (the "Services")[4]:

    a.    consult with the Debtor to discuss the Debtor's goals, objectives and financial parameters in relation to the Series 2006 Collateral;

    b.    prepare marketing materials for the Series 2006 Collateral for distribution and presentation to prospective purchasers of the Series 2006 Collateral;

    c.    prepare and implement a marketing plan for the sale of the Series 2006 Collateral;

    d.    organize and host a secure and confidential virtual data room and interact with prospective bidders concerning confidential diligence that may be performed in relation to the Series 2006 Collateral;

    e.    summarize proposals received and assist in the evaluation and comparison of proposals received from potential purchasers of the Series 2006 Collateral;

    f.    report periodically to the Debtor regarding the status of the marketing and sale of the Series 2006 Collateral; and

    g.    solicit and manage offers to purchase the Series 2006 Collateral.

15.     The Services are necessary to enable the Debtor to maximize the value of its Series 2006 Collateral and is in the best interests of the Debtor, its estate and its creditors.  Therefore, the

---

[4]  A description of the terms of the Services Agreement contained herein is a summary provided for convenience purposes only.  In the event of any inconsistency between the summary of the Services as set forth herein and the Services Agreement, the Services Agreement shall control.

Debtor has requested that the Campus Agents perform the Services set forth in the Services Agreement and summarized herein, subject to the Court's approval of this Application, and the Campus Agents have stated their desire, willingness and ability to act as the Debtor's real estate advisors in this Chapter 11 Case.

16.    As soon as practicable after the Petition Date, the Campus Agents' intend to market the Oakdale Campus by submitting print and digital ads to multiple entities for publication.  A substantial marketing effort is expected within the first few weeks after the Petition Date.  In addition to marketing the Oakdale Campus, the Campus Agents plan to enter into negotiations with potential purchasers to determine whether any of those parties would be willing to be a stalking horse bidder.  As a result, the Campus Agents will be spending substantial time and money immediately after the Petition Date.

17.    The services that will be rendered by the Campus Agents in connection with this proposed engagement are not duplicative of the services to be performed by any of the Debtor's other retained professionals or advisors.  The Debtor will coordinate with the Campus Agents and the Debtor's other professionals to minimize unnecessary duplication of efforts among the Debtor's professionals.

**THE CAMPUS AGENTS' QUALIFICATIONS**

18.    The Campus Agents are diversified real estate consulting and advisory firms with offices located throughout the country.  The Campus Agents evaluate, restructure, facilitate the acquisition of, and dispose of all types of real estate.  Additionally, the Campus Agents have significant experience in the disposition and renegotiation of leases and properties in bankruptcy.  The Campus Agents' professionals have been retained as real estate consultants

in a variety of bankruptcy cases involving issues relating to the review, analysis, renegotiation, and disposition of key real property and lease agreements.

19.      In addition, prior to the Petition Date, the Campus Agents conducted due diligence regarding the Series 2006 Collateral in preparation for an active postpetition marketing process.  As result of these efforts and the prepetition services provided to date, the Campus Agents have acquired significant knowledge of the Series 2006 Collateral and the Debtor's goals and objectives related thereto.

20.      As a result of their numerous years of business experience, the Campus Agents each have acquired a wide pool of prospective buyers, investors as well as active broker contacts. Accordingly, the Debtor believes that the engagement of the Campus Agents is critical to its efforts to navigate successfully through chapter 11 and provide a maximum recovery to its creditors.

21.      The Debtor has selected the Campus Agents as its real estate advisors based upon, among other things, (i) the Debtor's need to retain skilled and experienced real estate advisors to provide services relating to the Series 2006 Collateral, (ii) the Campus Agents extensive knowledge of the Series 2006 Collateral, and (iii) the Campus Agents extensive experience and excellent reputation in providing real estate consulting services in complex chapter 11 cases such as this case.

22.      The Debtor has determined that all parties in interest will benefit from the Campus Agents' business contacts, marketing strengths and extensive industry experience and their services will substantially enhance the Debtor's efforts to maximize the value of its Series 2006 Collateral.

23.    Furthermore, the Campus Agents are well qualified to perform all services contemplated by the Services Agreement and to represent the Debtor's interests in this Chapter 11 Case in a cost-effective, efficient, and timely manner.

## PROFESSIONAL COMPENSATION

24.    Subject to the Court's approval, the Debtor will compensate the Campus Agents in accordance with the terms and conditions set forth in the Services Agreement, including Schedule B thereto, which provides that the Debtor will pay to the Campus Agents a fee of four percent (4%) of the Gross Proceeds ("Property Sale Fee") for the sale of any parcel of the Series 2006 Collateral.  Subject to the requirement that the Campus Agents file a final fee application with the Court, the Debtor intends to pay the Campus Agents their Property Sale Fee directly from the sale proceeds of any parcel of the Series 2006 Collateral.

25.    The Debtor has been advised that the Campus Agents have entered into a certain agreement between themselves to share the Property Sale Fee.

26.    The Campus Agents has not yet been paid any compensation by the Debtor in connection with this matter to date.

27.    In addition to any fees payable by the Debtor to the Campus Agents, the Debtor will also reimburse the Campus Agents for their reasonable out-of-pocket expenses (including mailing, pre-approved marketing expenses as part of a pre-approved budget and travel expenses) incurred in connection with their retention and performance of Services.  The Campus Agents will provide the Debtor with a detailed marketing budget, which shall be subject to the Debtor's review and approval.  All reimbursable expenses for goods or services provided by third parties will be billed and payable without markup by the Campus Agents, and with respect to reimbursable expenses incurred by the Campus Agents directly, will represent the actual expense

to the Campus Agents for providing such goods or services.  Any reimbursable expenses and disbursements for which the Campus Agents will seek reimbursement will be approved in advance by the Debtor and will be paid within two (2) weeks upon receipt of invoice.

28.    The Debtor believes that the compensation structure described above and set forth in the Services Agreement is comparable to compensation generally charged by real estate advisors of similar structure to the Campus Agents for comparable engagements, both in and out of bankruptcy.  Furthermore, the Debtor believes that the compensation structure is consistent with the Campus Agents' normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in this case.

### THE DEBTOR SEEKS AUTHORITY TO RETAIN, EMPLOY AND COMPENSATE THE CAMPUS AGENTS UNDER SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE

29.    The Debtor seeks approval of the fee arrangement under the Services Agreement pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code to retain and employ the Campus Agents as its real estate advisors to assist with the sale and disposition of the Series 2006 Collateral in this Chapter 11 Case.  Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

30.    As recognized by numerous courts, Congress intended Section 328(a) to enable a debtor to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to review if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."  See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum

Co.), 123 F.3d 861, 862–63 (5th Cir. 1997); <u>Henry A. Leonard & Co. v. United States Trustee (In re River Foal, Inc.)</u>, 161 B.R. 568, 569 (Bankr. S.D.N.Y. 1993).

31.     The Debtor submits that the fee structure set forth in the Services Agreement is reasonable under Section 328(a) of the Bankruptcy Code in light of (a) the nature and scope of services to be provided by the Campus Agents, (b) industry practice with respect to the fee structure proposed by the Campus Agents, (c) market rates charged for comparable services both in and out of chapter 11, and (d) the Campus Agents' substantial experience with respect to real estate issues.

32.     In addition, the terms of the Services Agreement were negotiated in good faith and at arms-length between the Debtor and the Campus Agents and reflect the Debtor's evaluation of the value and expertise of the work to be performed by the Campus Agents.

<b><u>DISINTERESTEDNESS</u></b>

33.     Section 327(a) of the Bankruptcy Code provides that a debtor "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties . . ." 11 U.S.C. § 327(a).

34.     To the best of the Debtor's knowledge, and as set forth in more detail in the Graiser Affidavit and Hubbard Affidavit, the Campus Agents (a) are each a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, and (b) do not hold or represent an interest adverse to the Debtor or the Debtor's estate.

35.     Furthermore, as set forth in the Graiser Affidavit and Hubbard Affidavit, the Campus Agents have indicated that based on the results of its research conducted to date, and to the best of its knowledge, neither the Campus Agents, nor any employee thereof, has any

connection with the Debtor, any creditors of the Debtor's estate, or any other parties-in-interest (as reasonably known by the Campus Agents) or their respective attorneys and accountants, or other advisors, or the United States Trustee, or any person employed in the Office of the United States Trustee.

36.     The Campus Agents were not owed any amounts by the Debtor as of the Petition Date and do not hold a claim against the Debtor's estate.  The Campus Agents have indicated that if they discover any information that is contrary to or pertinent to the statements made in the Graiser Affidavit or Hubbard Affidavit, the Campus Agents will promptly disclose such information to this Court, the Debtor, and the United States Trustee.

37.     The Debtor has also been advised that the Campus Agents have entered into a certain agreement between themselves to share the Property Sale Fee and that other than this agreement, the Campus Agents have not agreed to share with any person or firm, other than its own members and employees, the compensation to be paid for the professional services rendered in connection with this Chapter 11 Case.

## FEE APPLICATION

38.     The Debtor respectfully submits that inasmuch of the Campus Agents' compensation is results oriented and directly related to benefits received by the Debtor's estate as a result of the sale transactions, requiring the Campus Agents to file detailed time records and periodic fee applications in accordance with Sections 330 and 331 of the Bankruptcy Code, and in compliance with Bankruptcy Rule 2016 and the Fee Guidelines is unnecessary under the circumstances.  The Debtor has been further advised by the Campus Agents that it is not their practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis.

39.    As set forth herein, the Campus Agents are being retained under Sections 327(a) and 328(a) of the Bankruptcy Code and will be employed by the Debtor to perform a highly specialized and discrete task and accordingly, will not be compensated based upon time and effort expended.  Instead, the Campus Agents will be compensated based on a percentage of the proceeds of any final transaction consummated in connection with the Series 2006 Collateral. Requiring the Campus Agents to record and submit detailed time entries in light of the transactional nature of the services to be rendered by the Campus Agents herein and the flat fee, percentage-based fee structure proposed under the Services Agreement would be unduly burdensome to the Campus Agents.  The Debtor further acknowledges and agrees that the ultimate benefit to the Debtor from the Campus Agents' services likely could not be measured merely by reference to the number of hours to be expended by the Campus Agents' professionals in the performance of such services.  Accordingly, the Debtor requests that the Campus Agents be relieved of the requirement to maintain detailed time records or file interim fee applications.

40.    Notwithstanding, the Campus Agents' fees and expenses in this Chapter 11 Case shall be subject to final approval of the Court upon proper application by the Campus Agents in accordance with procedures for the allowance of final compensation applicable to professionals in this Chapter 11 Case, and in accordance with the requirements of the Bankruptcy Code, Bankruptcy Rules and the Local Rules, as those procedures may be modified or supplemented by order of this Court.  However, inasmuch as the Campus Agents are being retained pursuant to Section 328 of the Bankruptcy Code, the Debtor additionally requests that the final fee application filed by the Campus Agents not be subject to review under Section 330 of the Bankruptcy Code.

41.    The Debtor's retention of the Campus Agents pursuant to the terms and conditions set forth herein is necessary and in the best interests of the Debtor, its creditors and its estate.  Based on the foregoing, the Debtor requests that the Court enter an Order, substantially in the form annexed hereto as <u>Exhibit A</u>, approving the Campus Agents' retention as exclusive real estate advisors for the Debtor with respect to the Series 2006 Collateral pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, and approving the terms of the Services Agreement.

<b><u>INTERIM RELIEF IS APPROPRIATE</u></b>

A.    <b><u>The Requirements of Bankruptcy Rule 6003 Have Been Satisfied.</u></b>

42.    Bankruptcy Rule 6003 empowers this Court to grant relief within the first 21 days after the Petition Date to the extent that such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm.

43.    Based on the foregoing, the Debtor submits that the requested relief is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted promptly in all respects to avoid immediate and irreparable harm to the Debtor's estate, notwithstanding the 21-day period provided in Bankruptcy Rule 6003.

B.    <b><u>Waiver of Bankruptcy Rules 6004(a) and 6004(h)</u></b>

44.    To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease or property under Bankruptcy Rule 6004(h).

<b><u>NOTICE</u></b>

45.    As of the filing of this Application, no trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case.  Notice of this Application will be given to (a) the United

States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) the holders of the 20 largest unsecured claims; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

## **NO PRIOR REQUEST**

46.     No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE,** the Debtor respectfully requests that the Court (i) enter an interim order substantially in the form attached hereto as <u>Exhibit A</u> approving the retention of the Campus Agents as its real estate advisors in this Chapter 11 Case *nunc pro tunc* to the Petition Date, (b) schedule a final hearing on the Motion, and (c) grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated:   New York, New York
         November 29, 2016

                            **KLESTADT WINTERS JURELLER**
                            **SOUTHARD & STEVENS, LLP**


By:   */s/ Sean C. Southard*
         Sean C. Southard
         Lauren C. Kiss
         200 West 41st Street, 17th Floor
         New York, New York 10036
         Tel: (212) 972-3000
         Fax: (212) 972-2245
         Email: ssouthard@klestadt.com
               lkiss@klestadt.com


         *Proposed Counsel to the Debtor and*
          *Debtor-in-Possession*

# **Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                     :      Chapter 11
                                                          :
DOWLING COLLEGE,                                          :      Case No. 16-75545 (REG)
                                                          :
                                                          :
                                    Debtor.               :
---------------------------------------------------------------x

**INTERIM ORDER AUTHORIZING THE DEBTOR TO RETAIN A&G REALTY**
**PARTNERS, LLC AND MADISON HAWK PARTNERS, LLC AS REAL ESTATE**
**ADVISORS TO THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE**

Upon consideration of the application dated November 29, 2016 (the "Application")[1] of

Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter

11 case (the "Chapter 11 Case"), for entry of an order, pursuant to Sections 327(a) and 328(a) of

Title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtor to employ

and retain A&G Realty Partners, LLC ("A&G") and Madison Hawk Partners, LLC ("Madison

Hawk" and together with A&G, the "Campus Agents") as its exclusive real estate advisors to

assist with the sale and disposition of the Series 2006 Collateral in accordance with the terms and

conditions set forth in the Services Agreement, a copy of which is attached to the Application as

Exhibit B, *nunc pro tunc* to the Petition Date, all as more fully set forth in the Application; and

upon the Affidavit of Andrew Graiser, sworn to on October 31, 2016 (the " Graiser Affidavit")

and annexed to the Application as Exhibit C; and upon the Affidavit of Jeffrey L. Hubbard,

sworn to on October 31, 2016 (the "Hubbard Affidavit") and annexed to the Application as

Exhibit D; and it appearing that the Court has jurisdiction to consider the Application and the

relief requested herein; and consideration of the Application and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and venue being proper before the

---
[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being satisfied based on the representations made in the Application and the Graiser Affidavit and the Hubbard Affidavit that the Campus Agents are each a "disinterested" person with the meaning of Sections 101(14) and 327(a) of the Bankruptcy Code; and that the relief requested in the Application is in the best interests of the Debtor, its creditors, and all parties-in-interest; and it appearing that due and appropriate notice of the Application has been given under the circumstances; and it appearing that no other or further notice need be given; and after due deliberation; and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED**, that

1.      The Application is granted on an interim basis to the extent provided herein.

2.      In accordance with Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), the Debtor is hereby authorized to employ and retain the Campus Agents as its exclusive real estate advisors to assist with the sale and disposition of the Series 2006 Collateral on the terms set forth in the Application, the Graiser Affidavit and the Hubbard Affidavit, and to perform all of the services set forth in the Application, on the terms set forth in the Application, the Graiser Affidavit and the Hubbard Affidavit, *nunc pro tunc* to the Petition Date.

3.      The terms and provisions of the Services Agreement are approved and the Debtor is authorized to (i) compensate the Campus Agents in accordance with the Services Agreement and (ii) pay the Campus Agents its Property Sale Fee directly from the sale proceeds of any parcel of the Series 2006 Collateral.  The Campus Agents' Property Sale Fee remains subject to the filing of a final fee application by the Campus Agents in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any Orders

entered by the Court.

4.      For the avoidance of doubt, all payments made directly by the Debtor to the Campus Agents, with the exception of the Property Sale Fee, shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash and other collateral, including but not limited to any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Interim Order and those materials.

5.      The information requirements set forth in the United States Trustees Guidelines for Reviewing Applications for Compensation and Reimbursements of Expenses Filed under 11 U.S.C. § 330 and General Order 613, Guidelines for Fees and Disbursements for Professionals in Eastern District of New York Bankruptcy Cases, effective as of June 10, 2013 are hereby waived and the Campus Agents shall not be required to maintain records of detailed time entries in connection with the Services.

6.      The Debtor shall serve a copy of this Interim Order within five (5) business days after entry hereof, upon: (a) United States Trustee for the Eastern District of New York; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) the holders of the 20 largest unsecured claims and, upon its appointment, counsel for the official committee of unsecured creditors (the "Creditors' Committee"); (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002.

Notice served pursuant to the preceding sentence shall be via first class mail, postage prepaid. No further notice of the final hearing to approve the Application or of the entry of this Interim Order need be served by the Debtor.

7.     The final hearing to consider entry of an order granting the relief requested in the Application on a final basis shall be held on [_____], 2016 at 10:00 a.m. (Prevailing Eastern time), and any objections to entry of such order shall be in writing, filed with the Court and served upon (i) The Office of the United States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, Esq., Trial Attorney; (ii) counsel to the Debtor:  Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn:  Sean C. Southard, Esq.; (iii) counsel to the Debtor's material prepetition and post-petition secured lenders:  (a) Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn:  P. Miyoko Sato, Esq. and Ian A. Hammel, Esq., (b) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn:  Brian D. Pfeiffer, Esq. and Neil S. Begley, Esq., (c) Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn:  Richard J. McCord, Esq. and Thomas J. McNamara, Esq., and (d) Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, Attn:  Adam T. Berkowitz, Esq.; and (iv) counsel to the Creditors' Committee, so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on [_____], 2016.

8.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

9.     The Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation or interpretation of this Interim Order.


**NO OBJECTION:**

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:_____
Stan Yang, Esq.
TRIAL ATTORNEY

# <u>Exhibit B</u>

FINAL COPY – 10.19.16



# REAL ESTATE SERVICES
# AGREEMENT WITH
# DOWLING COLLEGE

This Real Estate Services Agreement including the Schedules attached hereto (collectively the "**Agreement**") is made as of October 19, 2016 (the "**Agreement Date**") by and between **A&G REALTY PARTNERS, LLC**, a New York limited liability company ("**A&G**") and **MADISON HAWK PARTNERS, LLC**, a New York limited liability company ("**Madison Hawk**") (collectively the "**Service Providers**") and **DOWLING COLLEGE**, a New York State not-for-profit corporation, including its affiliates and subsidiaries (collectively the "**Company**" and/or the "**Debtor**") (each a "**Party**" and collectively the "**Parties**").

WITNESSETH:

**WHEREAS**, the Debtor intends to file a voluntary petition in the United States Bankruptcy Court ("**Bankruptcy Court**") seeking relief under Title 11 of the United States Code ("**Bankruptcy Code**");

**WHEREAS**, the Debtor anticipates that it will continue to manage its Properties as "debtor-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court;

**WHEREAS**, the Debtor owns certain real Properties, including buildings and fixtures attached thereto (each a "**Property**" and collectively the "**Properties**") and desires to sell such Properties ("**Property Sales**");

**WHEREAS**, the Debtor has designated the Properties that it is seeking to sell with the assistance of the Service Providers on Schedule A, which is attached hereto and made a part hereof; and

**WHEREAS**, the Debtor desires to retain the Service Providers to provide the services described below and the Service Providers are willing to provide such services under the terms and conditions contained herein.

**NOW THEREFORE**, in consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Services to be Provided.  In accordance with the terms and conditions of this Agreement, the Service Providers will provide the following services (the "**Services**"):

      a)   consult with the Debtor to discuss the Debtor's goals, objectives and financial parameters in relation to the Properties;

      b)   prepare marketing materials for the Properties for distribution and presentation to prospective purchasers of the Properties;

      c)   prepare and implement a marketing plan for the sale of the Properties;

2

d) organize and host a secure and confidential virtual data room ("**VDR**")[1] and interact with prospective bidders concerning confidential diligence that may be performed in relation to the Properties;

e) summarize proposals received and assist in the evaluation and comparison of proposals received from potential purchasers of the Properties;

f) report periodically to the Debtor regarding the status of the Services; and

g) solicit and manage offers to purchase the Properties.

2. <u>Term of Agreement</u>.  This Agreement shall be for nine (9) months following the Agreement Date (the "**Term**") and thereafter shall continue on a month-to-month basis until cancelled by either Party on thirty days' prior written notice to the other Party in accordance with the notice provision below.

3. <u>Compensation</u>.  The compensation for the Services is set forth on Schedule B, which is attached hereto and incorporated herein ("**Compensation**").

4. <u>Intentionally Omitted</u>.

5. <u>Recordkeeping</u>.  The Services to be provided by the Service Providers pursuant to this Agreement are, in general, transactional in nature. Accordingly, the Service Providers will not bill the Debtor by the hour or maintain time records.  The Parties agree that the Service Providers are not being requested or required to maintain time records under this Agreement and that the Compensation is fixed in accordance with the terms herein.

6. <u>Expenses and Disbursements</u>.  The Service Providers shall not be responsible for any transactional costs. The Debtor shall reimburse the Service Providers for their reasonable out-of-pocket expenses (including mailing, pre-approved marketing expenses as part of a pre-approved budget and travel expenses) incurred in connection with their retention and performance of Services.  The Service Providers will provide the Debtor with a detailed marketing budget. All reimbursable expenses for goods or services provided by third parties shall be billed and payable without markup by the Service Providers, and with respect to reimbursable expenses incurred by the Service Providers directly, shall represent the actual expense to the Service Providers for providing such good or service. Any reimbursable expenses and disbursements for which the Service Providers will seek reimbursement must be approved in advance by the Debtor.  All reimbursable expenses and disbursements shall be paid within two (2) weeks upon receipt of invoice.

7. <u>Exclusive</u>.  During the duration of this Agreement, the Service Providers shall have the sole and exclusive authority to perform the Services for the Properties referenced herein. The Debtor agrees to forward all relevant inquiries regarding the Properties made to the

---

[1] For the avoidance of doubt, the information in the VDR shall at all times remain the sole property of the Debtor and the Debtor shall have ultimate control and sole authority over terms of confidentiality and viewing rights of third parties in relation to the same.

Debtor, its representatives or related parties to the Service Providers. The Debtor acknowledges that the Service Providers may be engaged to provide the same or similar services as those referenced herein to other persons or entities (including, but not limited to, purchasers of the Debtor, its assets, leases, properties and/or designation rights) and that any such engagement shall not constitute or be deemed to be a violation of this Agreement, provided that it is not contrary to the interests of the Debtor or otherwise interferes with the Service Providers' ability to provide the Services. For the avoidance of doubt, the Service Providers are not presently engaged in and will not accept any future engagement (without the express written consent of the Debtor) that involves the disposition of commercial real estate of greater than five (5) acres in the Towns of Islip or Brookhaven during the term of this Agreement. The Service Providers will notify the Debtor of any such potential conflicts that may arise in the future as soon as reasonably practicable and before accepting any future engagement.

8. <u>Debtor's Representative</u>. Robert Rosenfeld, Chief Restructuring Officer of the Debtor, will be the Debtor's representative ("**Debtor's Representative**") in dealing with A&G. The Debtor reserves the right, at any time and from time-to-time, upon written notice to the Service Providers, to designate a successor representative or an additional representative and to limit the authority of the representative(s) in any respect. The Service Providers will report regularly to the Debtor's Representative in order to keep him fully apprised of the status of their performance. Andrew Graiser and Jeff Hubbard will be the designated principal representatives for the Service Providers. If the Service Providers seek to change their principal designated representatives, the Debtor agrees to reasonably consent to any proposed replacement.

9. <u>Debtor Cooperation</u>. The Debtor agrees to provide the Service Providers with all information concerning the Properties reasonably necessary for their performance of their obligations hereunder, including, but not limited to, copies of the deeds, a list of current rents, taxes and other charges relating to the Properties, all reasonably necessary due diligence documentation and such other information as the Service Providers reasonably request for the performance of their Services. Additionally, the Debtor agrees to make its personnel and representatives reasonably available to the Service Providers for consultation as necessary. The Service Providers shall coordinate the ordering of title and survey reporting in relation to the Properties with the Debtor's counsel.

All information provided by the Debtor to the Service Providers, as well as the information that the Debtor inserts in the Schedule(s) shall collectively be referred to as "**Debtor Information**". The Debtor shall use reasonable best efforts to ensure that all Debtor Information is materially accurate and complete at the time it is furnished and the Debtor shall, as soon as it becomes aware of any inaccuracy or incompleteness in any Debtor Information provided, promptly advise the Service Providers in writing of such inaccuracy or incompleteness and correct the same. It is understood and agreed by the Parties that the Service Providers shall base their Services, performance and Compensation on the Debtor Information. Any material inaccuracies, discrepancies or omissions in the Debtor Information may affect the Services provided and lead to a delay in the provision of the Services.

4

10.    Use of Debtor Name. The Service Providers may use the Debtor's name and logo to identify the Debtor as one of their clients. Notwithstanding the foregoing, the Service Providers shall not issue any press release or other public statement utilizing the Debtor's name and logo without the prior written consent of the Debtors' Representative.

11.    No Authority to Execute Agreements. The Service Providers shall have no right or power to enter into any agreement in the name of or on behalf of the Debtor or to otherwise obligate the Debtor in any manner unless authorized in writing.

12.    Meetings and Written Reports. After the commencement of this Agreement, the Service Providers shall meet with, in a manner agreed to by the Parties, the Debtor's Representative(s) and counsel to review the Debtor's goals, objectives and financial parameters. Thereafter, they will meet with or participate in telephone conferences with the Debtor's Representative(s) regarding the status of the Services as mutually agreed to by the Parties.

13.    Disclosures/Reports. All information, advice, recommendations or other content of any reports, presentation or other communications that the Service Providers provide under the terms of this Agreement are solely for the benefit of the Debtor and subject to applicable law, may not be disclosed to any other party without the prior written consent of the Service Providers. All opinions and advice (written or oral) given by the Service Providers to the Debtor in connection with this Agreement are intended solely for the benefit and use of the Debtor and no such opinion or advice shall be used for any other purpose, or reproduced, disseminated, quoted or referred to at any time, in any manner, or for any purpose, without the prior written consent of the Service Providers.

If the Debtor receives a subpoena, summons or court order by any federal, state or other regulatory agency having jurisdiction over the Debtor relating in any respect to the Service Providers or its Services, the Debtor shall immediately notify the Service Providers so that they may obtain a protective order for such information. If they are unable to obtain a protective order and the Debtor is required to provide information regarding the Service Providers and/or the Services, the Debtor agrees to provide only that information which is legally required.

14.    Approval of Contracts. All of the terms and conditions of each Property Sale shall be subject to approval by the Debtor, which may be withheld in the Debtor's sole and absolute discretion. The Service Providers shall have no right or power to enter into any agreement in the name of or on behalf of the Debtor or to otherwise obligate the Debtor in any manner with respect to any Property or otherwise.

15.    Independent Contractor. The Parties acknowledge and agree that the arrangements contemplated herein are and will be for the performance of the Services and that nothing contained herein shall create or be construed as creating a contract or other arrangement of employment between the Parties. The Service Providers shall provide the Services as independent contractors and not as employees, agents, partners or joint ventures of the Debtor, unless agreed otherwise by the Parties.

5

16.    <u>Early Termination.</u>  If any Party materially fails to perform its obligations in accordance with the terms herein, and does not cure such failure within a reasonable period of time after written notice of default, any other Party will have the right to terminate this Agreement by notice of termination to the non-performing Party, effective ten (10) calendar days after the date of such notice. Additionally, if the Service Providers become unable to perform their duties as a result of a legal, contractual or regulatory restriction, they shall have the right to terminate this Agreement on not less than ten (10) calendar day's written notice if legally permissible. Any rights or obligations incurred or accrued by any Party prior to termination shall survive termination of this Agreement.

17.    <u>Assignment</u>. No Party may delegate or assign their rights and obligations under this Agreement in whole or in part to an unaffiliated third party without the prior written consent of the other Parties.

18.    <u>Notices.</u>  Unless otherwise expressly provided herein or waived in writing by the Party to whom notice is given, any notice or other communication required or permitted hereunder will be effective if given in writing (i) when delivered by hand; (ii) three days after sent by certified mail, return receipt requested; (iii) when delivered by electronic email communication to the email address set forth below and verified by confirmed receipt; or (iv) one day after delivery to a commercial overnight courier, and addressed to the Parties as follows:

To Debtor:

Dowling College
150 Idle Hour Blvd.
Oakdale, NY 11769
Attention:  Robert S. Rosenfeld, CRO
Tel:  516-241-2254
Email: rsrosenfeld@rsrconsultingllc.com

With a copy to:

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, NY 10036
Attn:  Sean C. Southard, Esq.
Tel: (212) 679-5320
Email: ssouthard@klestadt.com

To Service Providers:

A&G Realty Partners, LLC
445 Broadhollow Road, Suite 410
Melville, NY 11747
Attn:  Andrew Graiser
Tel: (631) 465-9506
Email:  andy@agrealtypartners.com

6

FINAL COPY – 10.19.16

Madison Hawk, LLC
575 Lexington Ave.
New York, NY 10022
Attention: Jeff Hubbard
Tel: (212) 971-9720
Email: jhubbard@madisonhawk.com

19.  Representations, Warranties and Covenants. Each Party warrants and represents that it
has all requisite power and authority to enter into this Agreement and that this Agreement
has been validly authorized by all necessary corporate action and constitutes a legal, valid
and binding agreement of the Party.  Each Party warrants and represents that this
Agreement does not and will not violate any applicable law or conflict with any
agreement, instrument, judgment, order or decree to which it is a party or by which it is
bound.  Furthermore, each Party represents and agrees that it will comply with all
applicable laws, rules, regulations, orders or decrees during the term of this Agreement in
performing its obligations hereunder. Each Party represents that the person signing this
Agreement on its behalf has the requisite authority to enter into this Agreement and can
bind the respective Party. Furthermore, each Party agrees to deal with the other fairly and
in good faith so as to allow each Party to perform its duties and earn the benefit of this
Agreement. The Service Providers represent that they are real estate brokers licensed by
and good standing with the State of New York. The Service Providers agree to utilize
reasonable efforts and diligence to achieve the purpose of this Agreement.

20.  Bankruptcy. Upon filing of the petition for bankruptcy relief, the Debtor agrees to
promptly apply to the Bankruptcy Court for an order, in a form reasonably acceptable to
the Service Providers, authorizing the Debtor to retain and pay the Service Providers in
accordance with the terms of this Agreement and to use its best efforts to obtain such
order.  The Debtor agrees to seek the hiring and retention of the Service Providers under
sections 327 and 328 of the Bankruptcy Code.  The Debtor will provide the Service
Providers with a copy of the pleadings requesting their retention prior to submission to
the Bankruptcy Court and advise them of any objections or hearings pertaining to their
retention.  The order authorizing the Service Providers' retention must be acceptable to
them and their obligations hereunder are conditioned upon the grant of such order.
Furthermore, if such order is not obtained within sixty days from the date in which it is
filed, the Service Providers shall have the right to terminate this Agreement at any time
thereafter.  If an acceptable order is not obtained authorizing the Service Providers'
services and fees as set forth herein, the Debtor agrees to amend the application in
conjunction with and the approval of the Service Providers and request a hearing to
review the application.  In the event that the Debtor is unable to obtain an acceptable
order authorizing the hiring and retention of the Service Providers under the terms of this
Agreement and the Agreement is terminated, the Service Providers reserve the right to
seek a substantial contribution claim for any rights or obligations incurred or accrued
prior to such termination.

21.  Survival of Fee. In the event that this Agreement is terminated, the Service Providers
shall deliver to Debtor within ten (10) calendar days from such termination a list of

7

potential purchasers with whom the Service Providers have negotiated regarding purchase of Property or the Properties (the "**Potential Purchasers List**"). In the event that, within six (6) months following the termination of this Agreement, the Debtor, or its successors or assigns, enters into a transaction with a third party named on the Potential Purchasers List and the Service Providers have performed the Services, the proximate cause of which is the transaction being entered into with such third party and the result of which would have entitled the Service Providers to a fee pursuant to this Agreement, then in that event, the Service Providers shall be entitled to and paid their fee pursuant to the terms of this Agreement notwithstanding the fact that the Agreement has terminated. If the Service Providers fail to deliver the Potential Purchasers List to Debtor as required by this Agreement, then the Service Providers shall not be entitled to receive their fee, notwithstanding any performance of the Services. In no event shall Debtor be required to pay any fee to the Service Providers in the event that Property or the Properties are sold more than six (6) months after the termination of this Agreement.

22.    Intellectual Property. The Service Providers may use data, software, designs, utilities, tools, models, systems and other methodologies that they own or license in performing the Services hereunder. Notwithstanding the delivery of any reports by the Service Providers to the Debtor, the Service Providers shall retain all intellectual property rights in such materials (including any improvements or knowledge developed while performing the Services) and in any working papers compiled in connection with the Services. For the avoidance of doubt, no property rights or interests shall be acquired by the Service Providers in relation to the Debtor Information whether included in the VDR or otherwise.

23.    Indemnification. The Debtor hereby agrees to indemnify the Service Providers and their respective officers, directors, and employees, and hold each of them harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted against, resulting from (directly or indirectly), or related to the Services or actions or omissions of the Service Providers taken pursuant to this Agreement, (including, but not limited to, any covenants, representations or warranties contained herein) or in any written agreement entered into in connection herewith; except to the extent that such claims or liabilities arise as a direct result of the Service Providers' gross negligence or willful misconduct in connection therewith. The Service Providers hereby agree to indemnify and hold harmless Debtor and its directors, officers and employees, against and from any and all losses, liabilities, and damages (including without limitation reasonable attorneys' fees) arising in connection with any third party action, claim, proceeding, or investigation relating to this Agreement which is the direct result of the gross negligence, willful misconduct, or fraud of the Service Providers (or any of their directors, officers and employees).

24.    Limitation on Liability. No Party to this Agreement shall be responsible for any indirect, incidental, consequential, exemplary, punitive or other special damages (including, but not limited to, loss of profits and damage to reputation or business) arising under or by reason of this Agreement, the Services or any act or omission hereunder. No Party to this Agreement shall be liable if it is unable to perform its responsibilities hereunder as a

result of events beyond its control. Furthermore, in no event shall any Party's liability for a default or breach of this Agreement exceed the amount of fees paid hereunder.

25. <u>Binding Effect. No Third Party Beneficiaries</u>. This Agreement binds and inures to the benefit of the Parties hereto and their respective successors and permitted assigns, and except as expressly provided herein, is not intended to confer any rights or remedies upon any person not a party to this Agreement.

26. <u>Waivers and Amendments</u>. Waiver by any Party of any default by another Party shall not be deemed a waiver of any other default. This Agreement (including the Schedule(s) attached hereto) may not be waived, amended, or modified by any Party unless in writing and signed by the Parties hereto.

27. <u>Severability</u>. If any provision, or any portion of any provision, contained in this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, then it is the intent of the Parties to modify or limit such provision or portion thereof so as to be valid and enforceable to the extent permitted under applicable law. In the event that such provisions or portion thereof cannot be modified, then such provision or portion thereof shall be deemed omitted and this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

28. <u>Entire Agreement</u>. This Agreement, together with that certain Confidentiality Agreement dated as of July 25, 2016 between the Parties, constitutes the entire agreement between the Parties with respect to the subject matter herein. All other prior agreements, representations, statements, negotiations, understandings, and undertakings are superseded by this Agreement.

29. <u>Counterpart Execution/Facsimile and Electronic Signatures</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document. Facsimile and electronic signatures on this Agreement and any document contemplated hereby shall be deemed to be original signatures.

30. <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of New York without reference to its conflict of laws rules.

31. <u>Waiver of Jury Trial</u>. Each of the Parties unconditionally waives, to the extent legally permissible, the right to a jury trial in connection with any claim arising out of or related to this Agreement.

32. <u>Headings</u>. The section headings and use of defined terms in the singular or plural tenses in this Agreement is solely for the convenience of the Parties.

33. <u>No Presumptions</u>. This Agreement by shall be deemed drafted by the Parties and there shall be no presumption for or against any Party in the interpretation of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of the Agreement Date.

DOWLING COLLEGE

By: _C.A.S.R.M_____

Name _ROBERT S. ROSENFELD_

Title: _CHIEF RESTRUCTURING OFFICER_

A&G REALTY PARTNERS, LLC

By: _Andrew Graiser_____
Name: Andrew Graiser
Title:   Co-President

MADISON HAWK PARTNERS, LLC

By: _____
Name: Jeffrey Hubbard
Title:   President

**Schedules**

| | |
|---|---|
| Schedule A | Properties – Property Sales |
| Schedule B | Compensation |

FINAL COPY – 10.19.16

## SCHEDULE A
### Properties -Property Sales

Oakdale Campus (excluding all residences or other properties that constitute the collateral of the Series 2015 Taxable Bonds)

Brookhaven Campus (excluding the dormitory facility that constitutes the collateral of the Series 2002 Bonds)

## SCHEDULE B
## Compensation

### A.  Definitions

"Document" - shall be defined as any amendment or agreement that relates to a Property, including but not limited to, the sale of all or part of a Property.  A document shall also include any letter agreement executed by a third party.

"Gross Proceeds" - shall be defined as the total consideration paid to the Debtor by a landlord, tenant, investor, purchaser, buyer of designation rights or any other party to either purchase a Property or any right related to the Property including, but not limited to, any credit-bidding by any of the respective lenders or the transfer of debt.

### B.  Fees

The Service Providers shall be compensated for their Services as follows:

1. Property Sale.  For each sale of a Property negotiated by the Service Providers on behalf of the Debtor, the Service Providers shall earn and be paid a fee of four percent (4%) of the Gross Proceeds of such sale, but only as if and when title to each Property actually closes and is conveyed to the purchaser/s with whom the Service Providers have negotiated such sale on behalf of the Debtor.

### C.  Payment of Fees.

The Debtor shall pay all Property Sale fees due to A&G directly as part of the closing and/or the transfer of title of each asset.

# <u>Exhibit C</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                                        :        Chapter 11
                                                             :
DOWLING COLLEGE,                                             :        Case No. 16-
                                                             :
                                                             :
                                  Debtor.     :
-----------------------------------------------------------------x

**AFFIDAVIT OF ANDREW GRAISER IN SUPPORT OF APPLICATION
FOR INTERIM AND FINAL ORDERS AUTHORIZING THE RETENTION OF A&G
REALTY PARTNERS, LLC AND MADISON HAWK PARTNERS, LLC AS REAL
ESTATE ADVISORS TO THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE**

STATE OF NEW YORK          )
                           ) SS.:
COUNTY OF NEW YORK   )

ANDREW GRAISER, being duly sworn, deposes and says:

1.      I am the Co-President of A&G Realty Partners, LLC ("A&G").  I am authorized to execute this Affidavit on behalf of A&G and submit this Affidavit on behalf of A&G in support of the application (the "Application")[1] of Dowling College, (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), seeking authorization to employ and retain A&G and Madison Hawk Partners, LLC ("Madison Hawk" and together with A&G, the "Campus Agents") as its real estate advisors, as set forth in the Application and the Services Agreement, and in compliance with Sections 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules").

2.      A&G maintains offices at 445 Broadhollow Road, Suite 410, Melville, New York

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application and the Services Agreement.

11747.   Unless otherwise stated in this Affidavit, I have personal knowledge of the facts hereinafter set forth.[2]   To the extent that any information disclosed herein requires subsequent amendment or modification upon A&G's completion of further analysis or as additional creditor information becomes available to it, one or more supplemental affidavits will be submitted to the court reflecting the same.

3.      The terms and conditions of the Campus Agents' retention by the Debtor for the sale of the Series 2006 Collateral are set forth in that certain real estate services agreement dated as of October 19, 2016, attached to the Application as <u>Exhibit B</u> (the "<u>Services Agreement</u>"), which terms and conditions are summarized herein.

<u>QUALIFICATION OF PROFESSIONALS</u>

4.      A&G is well-suited to provide the real estate services that the Debtor requires and has requested that A&G, together with Madison Hawk, provide in this Chapter 11 Case.   A&G is a diversified real estate consulting and advisory firm with offices located throughout the United States.   A&G evaluates, restructures, facilities the acquisition of, and disposes of all types of real estate.   A&G's professionals have extensive experience in providing services regarding the review, analysis, restructuring, disposition, and negotiation of real property lease agreements.

5.      A&G's principals have over fifty years of commercial real estate experience and A&G has significant experience in the disposition and renegotiation of leases and properties in bankruptcy.   Indeed, A&G's professionals have been retained as real estate consultants in a variety of bankruptcy cases involving issues relating to the review, analysis, renegotiation, and disposition of key real property and lease agreements.

---

[2] Certain of the disclosures herein may relate to matters within the knowledge of other professionals at A&G and are based on information provided by them and records kept in the ordinary course of A&G's business.

2

6.　　In addition, prior to the Petition Date, A&G, along with Madison Hawk, conducted due diligence regarding the Series 2006 Collateral and have acquired significant knowledge of the Series 2006 Collateral and the Debtor's goals and objectives related thereto.

7.　　A&G has also acquired a wide pool of prospective buyers, investors and active broker contacts as a result of its numerous years of business experience.

8.　　Accordingly, I believe A&G is well qualified to perform all services contemplated by the Services Agreement, and to represent the Debtor's interests in this Chapter 11 Case in a cost-effective, efficient and timely manner.  I believe that the Services are necessary to enable the Debtor to maximize the value of its Series 2006 Collateral.

9.　　Additionally, I believe that the Services that will be provided under the Services Agreement will be complementary rather than duplicative of the services to be performed by the Debtor's other professionals retained in this Chapter 11 Case.  Furthermore, A&G will carry out its functions and will use reasonable efforts to coordinate with the Debtor and its professionals retained in this Chapter 11 Case to avoid any unnecessary duplication of services.

## SERVICES TO BE RENDERED DURING THE CHAPTER 11 CASE

10.　　As set forth more fully in the Services Agreement, A&G, together with Madison Hawk, will provide the following services for the Debtor (the "Services"):

a. consult with the Debtor to discuss the Debtor's goals, objectives and financial parameters in relation to the Series 2006 Collateral;

b. prepare marketing materials for the Series 2006 Collateral for distribution and presentation to prospective purchasers of the Series 2006 Collateral;

c. prepare and implement a marketing plan for the sale of the Series 2006 Collateral;

d. organize and host a secure and confidential virtual data room and interact with prospective bidders concerning confidential diligence that may be performed in relation to the Series 2006 Collateral;

e. summarize proposals received and assist in the evaluation and comparison of proposals received from potential purchasers of the Series 2006 Collateral;

3

      f.   report periodically to the Debtor regarding the status of the marketing and sale of the Series 2006 Collateral; and

      g.   solicit and manage offers to purchase the Series 2006 Collateral.

11.     As stated above, A&G has extensive experience in the sale of commercial and residential real estate. The Debtor has requested Campus Agents' services and expertise to properly dispose of the Series 2006 Collateral and A&G is capable of providing the required services, together with Madison Hawk, as indicated herein and in the Application.

## PROFESSIONAL COMPENSATION

12.     Subject to the Court's approval, the Debtor will compensate the Campus Agents in accordance with the terms and conditions set forth in the Services Agreement, including Schedule B thereto, which provides that the Debtor will pay to the Campus Agents a fee of four percent (4%) of the Gross Proceeds ("Property Sale Fee") for the sale of any parcel of the Series 2006 Collateral. Subject to the requirement that the Campus Agents file a final fee application with the Court, the Debtor has advised the Campus Agents that it intends to pay the Campus Agents their Property Sale Fee directly from the sale proceeds of any parcel of the Series 2006 Collateral.

13.     A&G has agreed to share the Property Sale Fee with Madison Hawk pursuant to a certain agreement between the parties.

14.     To date, A&G has not been paid any compensation by the Debtor in connection with this matter.

15.     A&G also intends to seek reimbursement for its reasonable out-of-pocket expenses (including mailing, pre-approved marketing expenses as part of a pre-approved budget and travel expenses) incurred in connection with its retention and performance of Services. The Campus Agents will provide the Debtor with a detailed marketing budget, which shall be subject to the

Debtor's review and approval.  All reimbursable expenses for goods or services provided by third parties will be billed and payable without markup by the Campus Agents, and with respect to reimbursable expenses incurred by the Campus Agents directly, will represent the actual expense to the Campus Agents for providing such goods or services.  Any reimbursable expenses and disbursements for which the Campus Agents will seek reimbursement will be approved in advance by the Debtor and will be paid within two (2) weeks upon receipt of invoice.

16.    I believe that the compensation structure described above and set forth in the Services Agreement is comparable to compensation generally charged by real estate advisors of similar stature to A&G for comparable engagements, both in and out of bankruptcy. Furthermore, the proposed compensation structure is also consistent with A&G's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in this Chapter 11 Case.

## FEE APPLICATION

17.    A&G understands that fees and expenses in this Chapter 11 Case shall be subject to final approval of the Court upon proper application by the Campus Agents in accordance with procedures for the allowance of final compensation applicable to professionals in this Chapter 11 Case, and in accordance with the requirements of the Bankruptcy Code.  However, inasmuch as A&G is being retained under Section 328 of the Bankruptcy Code and A&G's compensation is results-oriented and directly related to the benefits received by the Debtor's estate as a result of the sale transactions, A&G has informed the Debtor that it is not its practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis.  Therefore, A&G requests that this requirement be waived and that the final fee application is not subject to Section 330 review.  A&G, together with Madison Hawk, will however,

5

file a final fee application in accordance with applicable Bankruptcy Rules, Local Rules and any other orders of this Court.

## DISINTERESTEDNESS OF PROFESSIONALS

18.     The Debtor has numerous creditors and other parties in interest with which it maintains business relationships.  In connection with the Debtor's proposed retention of A&G in this Chapter 11 case, A&G has reviewed the list of parties in interest provided by the Debtor (the "Potential Parties in Interest").   A&G undertook a comprehensive review of these parties to determine whether it had any conflicts or other relationships that might cause it to not be disinterested or to hold or represent an interest adverse to the Debtor.  There are no connections to disclose.

19.     To the best of my knowledge and belief, A&G (i) does not hold any interest materially adverse to the Debtor's estate, (ii) has no connection with the Debtor, its creditors or other parties in interest herein, and (iii) is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code (as modified by Section 1107(b) of the Bankruptcy Code).

20.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, A&G has not been retained to assist any entity or person other than the Debtor on matters relating to, or in direct connection with, this Chapter 11 Case, except as otherwise disclosed herein.   A&G will, however, continue to provide professional services to entities or persons that may be creditors of the Debtor or parties in interest in this Chapter 11 Case, provided that such services do not relate to, or have any direct connection with, this Chapter 11 Case or the Debtor.

21.     Neither I nor any other professional of A&G who will work on this engagement, to the best of my knowledge after reasonable inquiry, is related or connected to any of the United

States Bankruptcy Judges that could be assigned to this Chapter 11 Case, the United States Trustee for the Eastern District of New York (the "U.S. Trustee"), or any persons employed by the U.S. Trustee.

22.     As part of its diverse practice, A&G appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties in interest in this Chapter 11 Case.   Also, A&G has performed in the past, and may perform in the future, real estate consulting and advisory services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in this proceeding.   In addition, A&G may have in the past, may currently, and may in the future work with or against other professionals involved in this case in matters unrelated to the Debtor and this Chapter 11 Case.

23.      A&G is not a "creditor" with respect to any fees and expenses of the Debtor within the meaning of Section 101(10) of the Bankruptcy Code.  Further, neither I nor any other member of the A&G team serving the Debtor, to the best of my knowledge, is a holder of any outstanding debt instrument of the Debtor.

24.     Consequently, to the best of my knowledge, A&G is "disinterested" as that term is defined in Section 101(14) of the Bankruptcy Code as modified by Section 1107(b) of the Bankruptcy Code, in that:

      (a) neither A&G nor any professional at A&G working on this engagement is or was a creditor, equity security holder or insider of the Debtor;

      (b) neither A&G nor any professional at A&G working on this engagement is or was, within two (2) years before the commencement of this Chapter 11 Case, a director, officer, or employee of the Debtor; and

      (c) A&G has no interest materially adverse to the interests of the estate or of any class of

creditors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor.

25.     Despite the efforts described above to identify and disclose connections with parties in interest in this Chapter 11 Case, because the Debtor is a large enterprise with numerous creditors and other relationships, A&G is unable to state with certainty that every client representation or other connection of A&G has been disclosed.   If A&G discovers additional information requiring disclosure, A&G will file supplemental disclosures with the Court as promptly as possible.   A&G further understands that it has a duty to continue to check for conflicts and connections, and in the event any new facts or relationships subsequently are discovered during the pendency of this Chapter 11 Case, A&G will supplement this Affidavit and file the same with the Court.

26.     This Affidavit is provided in accordance with Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

*[Signature Page Follows]*

Dated:  New York, New York
       October 31, 2016

                                                        */s/ Andrew Graiser*
                                                        ANDREW GRAISER

Sworn to before me this
31st day of October, 2016


*/s/ Christopher Heyen*

Notary Public, State of New York
LIC.: 01HE6198383
Commission Expires:  Dec. 22, 2016

# **Exhibit D**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

```
--------------------------------------------------------------x
In re                                         :    Chapter 11
                                              :
DOWLING COLLEGE,                              :    Case No. 16-
                                              :
                                              :
                             Debtor.          :
--------------------------------------------------------------x
```

**AFFIDAVIT OF JEFFREY L. HUBBARD IN SUPPORT
OF APPLICATION FOR INTERIM AND FINAL ORDERS
AUTHORIZING THE RETENTION OF A&G REALTY PARTNERS,
LLC AND MADISON HAWK PARTNERS, LLC AS REAL ESTATE
ADVISORS TO THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE**

```
STATE OF NEW YORK      )
                       ) SS.:
COUNTY OF NEW YORK     )
```

JEFFREY L. HUBBARD, being duly sworn, deposes and says:

        1.      I am President of Madison Hawk Partners, LLC ("Madison Hawk").  I am authorized to execute this Affidavit on behalf of Madison Hawk and submit this Affidavit on behalf of Madison Hawk in support of the application (the "Application")[1] of Dowling College, (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), seeking authorization to employ and retain A&G and Madison Hawk Partners, LLC ("Madison Hawk" and together with A&G, the "Campus Agents") as its real estate advisors, as set forth in the Application and the Services Agreement, and in compliance with Sections 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules").

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application and the Services Agreement.

2.      Madison Hawk maintains offices at 575 Lexington Avenue, Suite 4017, New York, New York 10022.  Unless otherwise stated in this Affidavit, I have personal knowledge of the facts hereinafter set forth.[2]  To the extent that any information disclosed herein requires subsequent amendment or modification upon Madison Hawk's completion of further analysis or as additional creditor information becomes available to it, one or more supplemental affidavits will be submitted to the court reflecting the same.

3.      The terms and conditions of the Campus Agents' retention by the Debtor for the sale of the Series 2006 Collateral are set forth in that certain real estate services agreement dated as of October 19, 2016, attached to the Application as <u>Exhibit B</u> (the "<u>Services Agreement</u>"), which terms and conditions are summarized herein.

<u>QUALIFICATION OF PROFESSIONALS</u>

4.      Madison Hawk is well-suited to provide the real estate services that the Debtor requires and has requested that Madison Hawk, together with A&G, provide in this Chapter 11 Case. Madison Hawk is a national real estate firm that specializes in structured accelerated sales and providing asset specific disposition solutions and marketing strategies to complex real estate transactions.  Additionally, Madison Hawk is extensively experienced in the marketing and sale of real property on Long Island.  Madison Hawk is a licensed real estate broker in and by the State of New York.

5.      Madison Hawk has a wide pool of prospective buyers and an investor list of over 10,000 prospects as well as approximately 3,000 active broker contacts.  Madison Hawk has been retained as a real estate professional in other bankruptcy cases.  Further, Madison Hawk has a global reach in marketing commercial and residential real estate firms providing services to thousands of

---

[2] Certain of the disclosures herein may relate to matters within the knowledge of other professionals at Madison Hawk and are based on information provided by them and records kept in the ordinary course of Madison Hawk's business.

clients including valuations, research services, capital market services, brokerage services, real estate financial services, and consulting.

6.        In addition, prior to the Petition Date, Madison Hawk, along with A&G, conducted due diligence regarding the Series 2006 Collateral and has acquired significant knowledge of the Series 2006 Collateral and the Debtor's goals and objectives related thereto.

7.        Accordingly, I believe Madison Hawk is well qualified to perform all services contemplated by the Services Agreement, and to represent the Debtor's interests in this Chapter 11 Case in a cost-effective, efficient and timely manner.  I believe that the Services are necessary to enable the Debtor to maximize the value of its Series 2006 Collateral.

8.        Additionally, I believe that the Services that will be provided under the Services Agreement will be complementary rather than duplicative of the services to be performed by the Debtor's other professionals retained in this Chapter 11 Case.  Furthermore, Madison Hawk will carry out its functions and will use reasonable efforts to coordinate with the Debtor and its professionals retained in this Chapter 11 Case to avoid any unnecessary duplication of services.

## SERVICES TO BE RENDERED DURING THE CHAPTER 11 CASE

9.        As set forth more fully in the Services Agreement, Madison Hawk, together with A&G, will provide the following services for the Debtor (the "Services"):

a.  consult with the Debtor to discuss the Debtor's goals, objectives and financial parameters in relation to the Series 2006 Collateral;

b.  prepare marketing materials for the Series 2006 Collateral for distribution and presentation to prospective purchasers of the Series 2006 Collateral;

c.  prepare and implement a marketing plan for the sale of the Series 2006 Collateral;

d.  organize and host a secure and confidential virtual data room and interact with prospective bidders concerning confidential diligence that may be performed in relation to the Series 2006 Collateral;

e.  summarize proposals received and assist in the evaluation and comparison of proposals received from potential purchasers of the Series 2006 Collateral;

3

  f. report periodically to the Debtor regarding the status of the marketing and sale of the Series 2006 Collateral; and

  g. solicit and manage offers to purchase the Series 2006 Collateral.

10. As stated above, Madison Hawk has extensive experience in the sale of commercial and residential real estate. The Debtor has requested Campus Agents' services and expertise to properly dispose of the Series 2006 Collateral and Madison Hawk is capable of providing the required services, together with A&G, as indicated herein and in the Application.

## PROFESSIONAL COMPENSATION

11. Subject to the Court's approval, the Debtor will compensate the Campus Agents in accordance with the terms and conditions set forth in the Services Agreement, including Schedule B thereto, which provides that the Debtor will pay to the Campus Agents a fee of four percent (4%) of the Gross Proceeds ("Property Sale Fee") for the sale of any parcel of the Series 2006 Collateral. Subject to the requirement that the Campus Agents file a final fee application with the Court, the Debtor has advised the Campus Agents that it intends to pay the Campus Agents their Property Sale Fee directly from the sale proceeds of any parcel of the Series 2006 Collateral.

12. Madison Hawk has agreed to share the Property Sale Fee with A&G pursuant to a certain agreement between the parties.

13. To date, Madison Hawk has not been paid any compensation by the Debtor in connection with this matter.

14. Madison Hawk also intends to seek reimbursement for its reasonable out-of-pocket expenses (including mailing, pre-approved marketing expenses as part of a pre-approved budget and travel expenses) incurred in connection with its retention and performance of Services. The Campus Agents will provide the Debtor with a detailed marketing budget, which shall be subject

to the Debtor's review and approval. All reimbursable expenses for goods or services provided by third parties will be billed and payable without markup by the Campus Agents, and with respect to reimbursable expenses incurred by the Campus Agents directly, will represent the actual expense to the Campus Agents for providing such goods or services. Any reimbursable expenses and disbursements for which the Campus Agents will seek reimbursement will be approved in advance by the Debtor and will be paid within two (2) weeks upon receipt of invoice.

15.    I believe that the compensation structure described above and set forth in the Services Agreement is comparable to compensation generally charged by real estate advisors of similar stature to Madison Hawk for comparable engagements, both in and out of bankruptcy. Furthermore, the proposed compensation structure is also consistent with Madison Hawk's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in this Chapter 11 Case.

## FEE APPLICATION

16.    Madison Hawk understands that fees and expenses in this Chapter 11 Case shall be subject to final approval of the Court upon proper application by the Campus Agents in accordance with procedures for the allowance of final compensation applicable to professionals in this Chapter 11 Case, and in accordance with the requirements of the Bankruptcy Code. However, inasmuch as Madison Hawk is being retained under Section 328 of the Bankruptcy Code and Madison Hawk's compensation is results-oriented and directly related to the benefits received by the Debtor's estate as a result of the sale transactions, Madison Hawk has informed the Debtor that it is not its practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis. Therefore, Madison Hawk requests that this requirement be

waived and that the final fee application is not subject to Section 330 review. Madison Hawk, together with A&G, will however, file a final fee application in accordance with applicable Bankruptcy Rules, Local Rules and any other orders of this Court.

## DISINTERESTEDNESS OF PROFESSIONALS

17.     The Debtor has numerous creditors and other parties in interest with which it maintains business relationships. In connection with the Debtor's proposed retention of Madison Hawk in this Chapter 11 case, Madison Hawk has reviewed the list of parties in interest provided by the Debtor (the "Potential Parties in Interest"). Madison Hawk undertook a comprehensive review of these parties to determine whether it had any conflicts or other relationship that might cause it to not be disinterested or to hold or represent an interest adverse to the Debtor. There are no connections to disclose.

18.     To the best of my knowledge and belief, Madison Hawk (i) does not hold any interest materially adverse to the Debtor's estate, (ii) has no connection with the Debtor, its creditors or other parties in interest herein, and (iii) is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code (as modified by Section 1107(b) of the Bankruptcy Code).

19.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, Madison Hawk has not been retained to assist any entity or person other than the Debtor on matters relating to, or in direct connection with, this Chapter 11 Case, except as otherwise disclosed herein. Madison Hawk will, however, continue to provide professional services to entities or persons that may be creditors of the Debtor or parties in interest in this Chapter 11 Case, provided that such services do not relate to, or have any direct connection with, this Chapter 11 Case or the Debtor.

20.     Neither I nor any other professional of Madison Hawk who will work on this engagement, to the best of my knowledge after reasonable inquiry, is related or connected to any of the United States Bankruptcy Judges that could be assigned to this Chapter 11 Case, the United States Trustee for the Eastern District of New York (the "U.S. Trustee"), or any persons employed by the U.S. Trustee.

21.     As part of its diverse practice, Madison Hawk appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties in interest in this Chapter 11 Case.  Also, Madison Hawk has performed in the past, and may perform in the future, real estate consulting and advisory services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in this proceeding.  In addition, Madison Hawk may have in the past, may currently, and may in the future work with or against other professionals involved in this case in matters unrelated to the Debtor and this Chapter 11 Case.

22.      Madison Hawk is not a "creditor" with respect to any fees and expenses of the Debtor within the meaning of Section 101(10) of the Bankruptcy Code.  Further, neither I nor any other member of the Madison Hawk team serving the Debtor, to the best of my knowledge, is a holder of any outstanding debt instrument of the Debtor.

23.     Consequently, to the best of my knowledge, Madison Hawk is "disinterested" as that term is defined in Section 101(14) of the Bankruptcy Code as modified by Section 1107(b) of the Bankruptcy Code, in that:

> (a) neither Madison Hawk nor any professional at Madison Hawk working on this engagement is or was a creditor, equity security holder or insider of the Debtor;
>
> (b) neither Madison Hawk nor any professional at Madison Hawk working on this

engagement is or was, within two (2) years before the commencement of this Chapter 11 Case, a director, officer, or employee of the Debtor; and

(c) Madison Hawk has no interest materially adverse to the interests of the estate or of any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor.

24.     Despite the efforts described above to identify and disclose connections with parties in interest in this Chapter 11 Case, because the Debtor is a large enterprise with numerous creditors and other relationships, Madison Hawk is unable to state with certainty that every client representation or other connection of Madison Hawk has been disclosed.  If Madison Hawk discovers additional information requiring disclosure, Madison Hawk will file supplemental disclosures with the Court as promptly as possible.  Madison Hawk further understands that it has a duty to continue to check for conflicts and connections, and in the event any new facts or relationships subsequently are discovered during the pendency of this Chapter 11 Case, Madison Hawk will supplement this Affidavit and file the same with the Court.

25.     This Affidavit is provided in accordance with Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

[*Signature Page Follows*]

Dated: New York, New York
     October 31, 2016

                                              */s/ Jeffrey L. Hubbard*
                                              JEFFREY L. HUBBARD

Sworn to before me this
31st day of October, 2016

*/s/ Gisselle Medina*

Notary Public, State of New York
LIC.: 01ME6335688
Commission Expires: January 19, 2020

9