**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Proposed Counsel to the Debtor and Debtor-in-*
   *Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                                   :        Chapter 11
                                                        :
DOWLING COLLEGE,                                        :        Case No. 16-75545 (REG)
                                                        :
                                                        :
                                     Debtor.            :
-----------------------------------------------------------------x

**APPLICATION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**THE RETENTION OF DOUGLAS ELLIMAN AS REAL ESTATE**
**BROKER FOR THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

      Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned

chapter 11 case (the "Chapter 11 Case"), submits this application (the "Application") for entry of

interim and final orders, substantially in the form attached hereto as Exhibit A, approving the

retention of Douglas Elliman (the "Residential Agent"), as real estate broker for the Debtor, *nunc*

*pro tunc* to the Petition Date, pursuant to Sections 327(a) and 328(a) of Title 11 of the United

States Code (the "Bankruptcy Code"), Rules 2014, 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014-1 of the Local

Bankruptcy Rules for the Eastern District of New York (the "Local Rules").  In support of this

Application, the Debtor respectfully sets forth and represents as follows:

## SUMMARY OF RELIEF REQUESTED

1.      By this Application, the Debtor requests entry of interim and final orders,

substantially in the form of Exhibit A hereto, pursuant to Sections 327(a) and 328(a) of the

Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1, authorizing the Debtor to retain the

Residential Agent as its exclusive real estate broker[1] to assist with the sale and disposition of a

portfolio of thirty two (32) non-contiguous parcels of predominantly residential property owned

by the Debtor and scattered through the neighborhood adjacent to the Debtor's former main

campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769 (the "Residential

Portfolio").  The Residential Agent is a specialist in the Oakdale community for residential and

smaller commercial properties of the type that comprise the Residential Portfolio  A schedule

setting forth the addresses of the Residential Portfolio is attached hereto as Exhibit B.  As set

forth in the Listing Agreements, the term of the proposed retention shall continue in full force

until November 1, 2017, unless sooner terminated or extended in accordance with the provisions

of the Listing Agreements.

2.      The Debtor believes the retention of the Residential Agent as its broker for the

Residential Portfolio will enable the Debtor to effectuate a prompt sale of the Residential Portfolio

and obtain the highest and best value for the Residential Portfolio.  Accordingly, the Debtor submits

the retention of the Residential Agent is in the best interest of the Debtor's estate and its creditors.

3.      The terms and conditions of the Residential Agent's retention as exclusive real estate

---

[1] As a result of certain financing transactions as described in the First Day Declaration (defined herein), all of the Debtor's assets and real property are subject to the liens and security interests of the Debtor's prepetition bondholders.  The collateral held by each prepetition bondholder will be marketed and sold by a different real estate broker.

broker in connection with the sale of the Residential Portfolio are set forth in those certain forms of listing agreement between the Debtor and the Residential Agent (the "Listing Agreements"), dated as of November 22, 2016 and attached hereto as Exhibit C.  In support of this Application, the Debtor relies upon the Affidavit of Ann Conroy, executed on November 18, 2016, a copy of which is annexed hereto as Exhibit D (the "Conroy Affidavit").

4.       Contemporaneously with the filing of the instant Application, the Debtor is filing a motion seeking, among other things, an interim order to (i) consummate the sale of six (6) parcels within the Residential Portfolio where special circumstances exist and (ii) maintain marketing efforts for the remaining Residential Portfolio that were in process as of the Petition Date (the "Sale Motion").  As a result, if the Sale Motion is granted on an interim basis, the Debtor will require the Residential Agent's continued services immediately, and, therefore, the Debtor submits that interim relief is appropriate.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

6.       Venue of this proceeding within this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.       The statutory predicates for the relief requested herein are Sections 327(a) and 328(a) of the Bankruptcy Code and Rules 2014 and 2016 of the Bankruptcy Code.

## BACKGROUND

8.       On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

9.      The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10.     No trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case.

11.     Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

12.     The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in greater detail in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration").

## RELIEF REQUESTED

13.     By this Application, pursuant to Sections 327 and 328 of the Bankruptcy Code, the Debtor seeks to employ and retain the Residential Agent as the exclusive real estate agent and broker for the Residential Portfolio pursuant to the terms of the Residential Agent's Listing Agreements with the Debtor, attached hereto as Exhibit C.  In light of the unique circumstances and complexity of this Chapter 11 Case, the Debtor requires the services of a skilled and experienced real estate broker that is familiar with the Debtor's real property.

14.     The Residential Agent has extensive experience in selling residential properties and specializes in such sales.  As a result, the Debtor retained the Residential Agent prior to the

Petition Date to market and sell the Residential Portfolio, and as of the Petition Date, seven (7) parcels within the Residential Portfolio are under contract for sale. In light of its prior retention, the Residential Agent is familiar with the Residential Portfolio and is well positioned to continue providing services to the Debtor. The Debtor thus believes that the Residential Agent is well qualified to act as its exclusive real estate broker for the Residential Portfolio in this Chapter 11 Case. The Debtor further desires to use the Residential Agent's professional services and the Residential Agent has agreed to perform such services, pursuant to the terms of the Listing Agreements and consistent with Section 328 of the Bankruptcy Code. Generally, both Listing Agreements are materially the same, with one emphasizing substantially all of the parcels in the Residential Portfolio, which will be marketed by one of the Residential Agent's residential specialists, and the second emphasizing a subset of the Residential Portfolio that will also be marketed by one of the Residential Agent's commercial specialists.

15.     As the Debtor's exclusive real estate broker for the Residential Portfolio, the Residential Agent will assist in the continued marketing and sale of the Residential Portfolio. The Residential Agent's retention is necessary given the Debtor's need to sell the Residential Portfolio in a prompt, efficient and cost-effective manner.

16.     As part of this Application, the Debtor also requests that the Court grant the Residential Agent a waiver of compliance with the information requirements relating to compensation requests set forth in the United States Trustees Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "Fee Guidelines") to the extent requested herein and as further detailed below.

## **SERVICES TO BE RENDERED DURING THE CHAPTER 11 CASE**

17.     Among the services to be provided by the Residential Agent, as well as further described in the Listing Agreements, and subject to Court approval, are the following:

      a.    assisting the Debtor through market analysis to establish listing prices for parcels within the Residential Portfolio;

      b.    marketing the Residential Portfolio using such advertising, solicitation of outside brokers, and other promotional and marketing activities as may be necessary and agreed upon with the Debtor;

      c.    analyzing offers and proposals from potential purchasers and offering recommendations to the Debtor in connection with any proposed transaction involving the Residential Portfolio;

      d.    assisting the Debtor in consulting with key stakeholders, including parties with liens of record in the Residential Portfolio concerning sales matters;

      e.    assisting with negotiations regarding any potential transaction involving the Residential Portfolio; and

      f.    assisting with the consummation of any transaction involving the Residential Portfolio.

18.     As an additional service, in the event of consummation of a sale of any parcel of the Residential Portfolio covered under the Listing Agreements and the retention and receipt of the Commission (hereinafter defined) from the Debtor, the Residential Agent will compensate any outside broker who dealt with the Residential Agent in representation of a purchaser of any parcel of the Residential Portfolio in an amount equal to fifty percent (50%) of the Commission received by the Residential Agent from the Debtor under the Listing Agreements, as set forth herein.

19.     The services that will be rendered by the Residential Agent in connection with the proposed engagement are not duplicative of the services to be performed by any of the Debtor's other retained professionals or advisors.  The Debtor believes the foregoing services are critical to the success of the proposed sale of the Residential Portfolio.

## RESIDENTIAL AGENT'S QUALIFICATIONS

20.     The Residential Agent is well-suited to provide the real estate services required by the Debtor.  The Residential Agent is a licensed real estate broker in and by the State of New York with substantial experience in the marketing and sale of residential and commercial real property in Long Island.  As indicated above, the Residential Agent has already assisted the Debtor in bringing seven parcels in the Residential Portfolio under contract.  As a result, the Residential Agent is able to effectively and efficiently market and dispose of residential real estate.

## PROFESSIONAL COMPENSATION

21.     Subject to the Court's approval, the Debtor will compensate the Residential Agent in accordance with the Listing Agreements.  As detailed in the Listing Agreements, upon the sale of any parcel of the Residential Portfolio, the Residential Agent will be paid a commission (the "Commission") equal to two and a half percent (2 ½ %) of the purchase price if sold to an existing tenant and the Residential Agent is the only agent involved in the transaction and otherwise four percent (4%) of the purchase price.  In addition, the Residential Agent will compensate any outside broker who dealt with the Residential Agent in representation of the purchaser in an amount equal to fifty percent (50%) of the Commission received by the Residential Agent from the Debtor under the Listing Agreements.  Subject to the requirement that the Residential Agent file a final fee application with the Court, the Debtor intends to pay the Residential Agent its Commission directly from the sale proceeds of any parcel of the Residential Portfolio.

22.     The Residential Agent also intends to seek reimbursement for its reasonable legal fees and expenses, if any, incurred in connection with the filing of any required fee applications or the commencement of any actions or proceedings resulting from the Debtor's failure to make any

commission payments earned by the Residential Agent under the Listing Agreements, subject to the Debtor's rights to object and/or dispute any such requests.

23.     The Residential Agent has not yet been paid any compensation by the Debtor in connection with this matter to date.

**THE DEBTOR SEEKS AUTHORITY TO RETAIN,
EMPLOY AND COMPENSATE THE RESIDENTIAL AGENT
UNDER SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE**

24.     The Debtor seeks approval of the fee arrangement under the Listing Agreements pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code to retain and employ the Residential Agent as its broker to assist with the sale and disposition of the Residential Portfolio in this Chapter 11 Case.   Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

25.     As recognized by numerous courts, Congress intended Section 328(a) to enable a debtor to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to review if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."  See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861, 862–63 (5th Cir. 1997); Henry A. Leonard & Co. v. United States Trustee (In re River Foal, Inc.), 161 B.R. 568, 569 (Bankr. S.D.N.Y. 1993).

26.     The Debtor submits that the fee structure set forth in the Listing Agreements is reasonable under Section 328(a) of the Bankruptcy Code in light of (a) the nature and scope of services to be provided by the Residential Agent, (b) industry practice with respect to the fee

structure proposed by the Residential Agent, (c) market rates charged for comparable services both in and out of chapter 11, and (d) the Residential Agent's substantial experience with respect to real estate issues.

27.    In addition, the terms of the Listing Agreements were negotiated in good faith and at arms-length between the Debtor and the Residential Agent and reflect the Debtor's evaluation of the value and expertise of the work to be performed by the Residential Agent.

**DISINTERESTEDNESS**

28.    Section 327(a) of the Bankruptcy Code provides that a debtor "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties . . ." 11 U.S.C. § 327(a).

29.    To the best of the Debtor's knowledge, and as set forth in more detail in the Conroy Affidavit, and subject to the disclosures made therein, the Residential Agent (a) is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, and (b) does not hold or represent an interest adverse to the Debtor or the Debtor's estate.

30.    Furthermore, except as disclosed in the Conroy Affidavit, the Residential Agent has indicated that based on the results of its research conducted to date, and to the best of its knowledge, neither the Residential Agent, nor any employee thereof, has any connection with the Debtor, any creditors of the Debtor's estate, or any other parties-in-interest (as reasonably known by the Residential Agent) or their respective attorneys and accountants, or other advisors, or the United States Trustee, or any person employed in the Office of the United States Trustee.

31.     The Residential Agent was not owed any amounts by the Debtor as of the Petition Date and does not hold a claim against the Debtor's estate.  The Residential Agent has indicated that if it discovers any information that is contrary to or pertinent to the statements made in the Conroy Affidavit, the Residential Agent will promptly disclose such information to this Court, the Debtor, and the United States Trustee.

32.     The Debtor has also been advised that the Residential Agent has not agreed to share with any person or firm, other than its own members and employees and any outside broker representing a purchaser of the Residential Portfolio, as required by the terms of the Listing Agreements, the compensation to be paid for the professional services rendered in connection with this Chapter 11 Case.

## FEE APPLICATION

33.     The Debtor respectfully submits that inasmuch of the Residential Agent's compensation is results oriented and directly related to benefits received by the Debtor's estate as a result of the sale transactions, requiring the Residential Agent to file detailed time records and periodic fee applications in accordance with Sections 330 and 331 of the Bankruptcy Code, and in compliance with Bankruptcy Rule 2016 and the Fee Guidelines is unnecessary under the circumstances.  The Debtor has been further advised by the Residential Agent that it is not its practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis.

34.     As set forth herein, the Residential Agent is being retained under Sections 327(a) and 328(a) of the Bankruptcy Code and will be employed by the Debtor to perform a highly specialized and discrete task and accordingly, will not be compensated based upon time and effort expended.  Instead, the Residential Agent will be compensated based on a percentage of the

proceeds of any final transaction consummated in connection with the Residential Portfolio Residential Portfolio.  Requiring the Residential Agent to record and submit detailed time entries in light of the transactional nature of the services to be rendered by the Residential Agent herein and the flat fee, percentage-based fee structure proposed under the Listing Agreements would be unduly burdensome to the Residential Agent.  The Debtor further acknowledges and agrees that the ultimate benefit to the Debtor from the Residential Agent's services likely could not be measured merely by reference to the number of hours to be expended by the Residential Agent's professionals in the performance of such services.  Accordingly, the Debtor requests that the Residential Agent be relieved of the requirement to maintain detailed time records or file interim fee applications.

35.    Notwithstanding, the Residential Agent's fees and expenses in this Chapter 11 Case shall be subject to final approval of the Court upon proper application by the Residential Agent in accordance with procedures for the allowance of final compensation applicable to professionals in this Chapter 11 Case, and in accordance with the requirements of the Bankruptcy Code, Bankruptcy Rules and the Local Rules, as those procedures may be modified or supplemented by order of this Court.  However, inasmuch as the Residential Agent is being retained pursuant to Section 328 of the Bankruptcy Code, the Debtor additionally requests that the final fee application filed by the Residential Agent not be subject to review under Section 330 of the Bankruptcy Code.

36.    The Debtor's retention of the Residential Agent pursuant to the terms and conditions set forth herein is necessary and in the best interests of the Debtor, its creditors and its estate.  Based on the foregoing, the Debtor requests that the Court enter an Order, substantially in the form annexed hereto as <u>Exhibit A</u>, approving the Residential Agent's retention as exclusive

real estate broker for the Debtor with respect to the Residential Portfolio pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, and approving the terms of the Listing Agreements.

## INTERIM RELIEF IS APPROPRIATE

### A.     The Requirements of Bankruptcy Rule 6003 Have Been Satisfied.

37.     Bankruptcy Rule 6003 empowers this Court to grant relief within the first 21 days after the Petition Date to the extent that such relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). As explained above, and in the Debtor's motion to sell the Residential Portfolio, which has been filed contemporaneously with this Application, the relief requested herein is necessary to avoid immediate and irreparable harm.

38.     Based on the foregoing, the Debtor submits that the requested relief is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted promptly in all respects to avoid immediate and irreparable harm to the Debtor's estate, notwithstanding the 21-day period provided in Bankruptcy Rule 6003.

### B.     Waiver of Bankruptcy Rules 6004(a) and 6004(h)

39.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease or property under Bankruptcy Rule 6004(h).

## NOTICE

40.     As of the filing of this Application, no trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case. Notice of this Application will be given to (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) the holders of the 20 largest unsecured claims; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii)

the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

## <u>NO PRIOR REQUEST</u>

41.     No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE,** the Debtor respectfully requests that the Court (i) enter an interim order substantially in the form attached hereto as Exhibit A approving the retention of the Residential Agent as its real estate broker in this Chapter 11 Case *nunc pro tunc* to the Petition Date, (b) schedule a final hearing on the Application, and (c) grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated:   New York, New York
    November 29, 2016

           **KLESTADT WINTERS JURELLER**
           **SOUTHARD & STEVENS, LLP**


      By:  */s/ Sean C. Southard*
         Sean C. Southard
         Lauren C. Kiss
         200 West 41st Street., 17th Floor
         New York, New York 10036
         Tel: (212) 972-3000
         Fax: (212) 972-2245
         Email: ssouthard@klestadt.com
           lkiss@klestadt.com


         *Proposed Counsel to the Debtor and*
         *Debtor-in-Possession*

# <u>Exhibit A</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                              :        Chapter 11
                                                   :
DOWLING COLLEGE,                                   :        Case No. 16-75545 (REG)
                                                   :
                                                   :
                              Debtor.              :
-------------------------------------------------------------x

**INTERIM ORDER AUTHORIZING THE DEBTOR TO**
**RETAIN DOUGLAS ELLIMAN AS REAL ESTATE BROKER TO**
**THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE**

Upon consideration of the application dated November 29, 2016 (the "Application")[1] of

Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter

11 case (the "Chapter 11 Case"), for entry of an order, pursuant to Sections 327(a) and 328(a) of

Title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtor to employ

and retain Douglas Elliman ("Residential Agent") as its exclusive real estate broker to assist with

the sale and disposition of the Residential Portfolio in accordance with the terms and conditions

set forth in the Listing Agreements, copies of which are attached to the Application as Exhibit C,

*nunc pro tunc* to the Petition Date, all as more fully set forth in the Application; and upon the

Affidavit of Ann Conroy, sworn to on November 18, 2016 (the "Conroy Affidavit") and annexed

to the Application; and it appearing that the Court has jurisdiction to consider the Application

and the relief requested herein; and consideration of the Application and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and venue being proper

before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being satisfied based on

the representations made in the Application and the Conroy Affidavit that the Residential Agent

is a "disinterested" person within the meaning of Sections 101(14) and 327(a) of the Bankruptcy

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

Code; and that the relief requested in the Application is in the best interests of the Debtor, its

creditors, and all parties-in-interest; and it appearing that due and appropriate notice of the

Application has been given under the circumstances; and it appearing that no other or further

notice need be given; and after due deliberation; and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED**, that

1.       The Application is granted on an interim basis to the extent provided herein.

2.       In accordance with Sections 327(a) and 328(a) of the Bankruptcy Code and

Bankruptcy Rule 2014(a), the Debtor is hereby authorized to employ and retain the Residential

Agent as its exclusive real estate broker to assist with the sale and disposition of the Residential

Portfolio on the terms set forth in the Application and Conroy Affidavit, and to perform all of the

services set forth in the Application, on the terms set forth in the Application, *nunc pro tunc* to

the Petition Date.

3.       The terms and provisions of the Listing Agreements are approved and the Debtor

is authorized to (i) compensate the Residential Agent in accordance with the Listing Agreements

and (ii) pay the Residential Agent its Commission directly from the sale proceeds of any parcel

of the Residential Portfolio.  The Residential Agent's Commission remains subject to the filing

of a final fee application by the Residential Agent in accordance with the applicable provisions

of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any Orders entered by the

Court.

4.       For the avoidance of doubt, all payments made directly by the Debtor to the

Residential Agent, with the exception of the Residential Agent's Commission, shall in all

respects remain subject to the terms of any documents or orders of this Court concerning debtor

in possession financing or the use of cash and other collateral, including but not limited to any

approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Interim Order and those materials.

5.     The information requirements set forth in the United States Trustees Guidelines for Reviewing Applications for Compensation and Reimbursements of Expenses Filed under 11 U.S.C. § 330 and General Order 613, Guidelines for Fees and Disbursements for Professionals in Eastern District of New York Bankruptcy Cases, effective as of June 10, 2013 are hereby waived and the Residential Agent shall not be required to maintain records of detailed time entries in connection with its services.

6.     The Debtor shall serve a copy of this Interim Order within five (5) business days after entry hereof, upon: (a) United States Trustee for the Eastern District of New York; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) the holders of the 20 largest unsecured claims and, upon its appointment, counsel for the official committee of unsecured creditors (the "Creditors' Committee"); (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002. Notice served pursuant to the preceding sentence shall be via first class mail, postage prepaid. No further notice of the final hearing to approve the Application or of the entry of this Interim Order need be served by the Debtor.

7.     The final hearing to consider entry of an order granting the relief requested in the Application on a final basis shall be held on [_____], 2016 at 10:00 a.m. (Prevailing Eastern

time), and any objections to entry of such order shall be in writing, filed with the Court and served upon (i) The Office of the United States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, Esq., Trial Attorney; (ii) counsel to the Debtor:  Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn:  Sean C. Southard, Esq.; (iii) counsel to the Debtor's material prepetition and post-petition secured lenders:  (a) Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn:  P. Miyoko Sato, Esq. and Ian A. Hammel, Esq., (b) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn:  Brian D. Pfeiffer, Esq. and Neil S. Begley, Esq., (c) Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn:  Richard J. McCord, Esq. and Thomas J. McNamara, Esq., and (d) Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, Attn:  Adam T. Berkowitz, Esq.; and (iv) counsel to the Creditors' Committee, so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on [_____], 2016.

8.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

9.    The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Interim Order.

**NO OBJECTION:**

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:_____
Stan Yang, Esq.
TRIAL ATTORNEY

# **<u>Exhibit B</u>**

**The Residential Portfolio**

| Address | Building Use | Notes |
|---|---|---|
| 96 Biltmore Ave. | Visual Arts Center | |
| 87 Central Blvd. | Residence | |
| 88 Central Blvd. | Residence | |
| 89 Central Blvd. | Residence | |
| 121 Central Blvd. | Security Offices | |
| 138 Central Blvd. | Residence | Pending Sale |
| 21 Chateau Drive | Residence | |
| 27 Chateau Drive | Residence | |
| 39 Chateau Drive | Residence | |
| 47 Chateau Drive | Residence | |
| 64 Chateau Drive | Veterans House | |
| 72 Chateau Drive | Residence | |
| 80 Chateau Drive | Residence | Pending Sale |
| 81 Chateau Drive | Residence | Pending Sale |
| 94 Connetquot Drive | Residence | |
| 102 Connetquot Drive | Residence | Pending Sale |
| 274 Connetquot Drive | Lot | |
| 275 Connetquot Drive | Music Department | |
| 14 Elmsmere Drive | Residence | Pending Sale |
| 90 Elsmere Drive | Residence | |
| 8 Idle Hour Blvd. | Offices | |
| 15 Idle Hour Blvd. | Residence | |
| 99 Idle Hour Blvd. | Residence | Pending Sale |
| 115 Idle Hour Blvd. | Residence | Pending Sale |
| 123 Idle Hour Blvd. | Campus Offices | |
| 135 Idle Hour Blvd. | Campus Offices | |
| 44 Van Bomel Blvd. | Residence | |
| 48 Van Bomel Blvd. | Residence | |
| 52 Van Bomel Blvd. | Residence | |
| 56 Van Bomel Blvd. | Residence | |
| 64 Van Bomel Blvd. | Residence | Pending Sale |
| 58 Woodlawn Ave. | Residence | |

# <u>Exhibit C</u>



COMMERCIAL SERVICES
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

## MASTER LISTING AGREEMENT - EXCLUSIVE RIGHT TO SELL
## (COMMERCIAL)

THIS MASTER LISTING AGREEMENT - EXCLUSIVE RIGHT TO SELL ("Agreement") is entered into as of the 22nd day of November, 2016, by and between **DouglasElliman Real Estate** (the "Broker") and **Dowling College**, through its Chief Restructuring Officer, 1300 William Floyd Parkway Shirley, New York 11967 ("Owner").

### RECITALS

WHEREAS, Owner owns certain commercial properties listed on <u>Exhibit A</u> hereto (each a "Property" and together, the "Properties"), and

WHEREAS, Owner desires to engage the Broker as its exclusive broker, and to grant to the Broker the exclusive right, to list for sale the Properties, individually or together as a whole, and the Broker is agreeable to such engagement on the terms and conditions as set forth in this Agreement,

In consideration of mutual covenants herein contained, the Owner and Broker agree as follows:

1.    <u>Term</u>. This Agreement shall continue in full force until November 1, 2017, unless sooner terminated or extended in accordance with the provisions of this Agreement.

2.    <u>Exclusive Right</u>.  Owner hereby appoints Broker as its exclusive agent and grants Broker the exclusive right to solicit and procure prospective purchasers for each of the Properties.  Broker accepts the appointment and agrees to act in good faith and use diligent efforts to perform the services required by this Agreement. Owner and Broker agree that Broker may offer for sale each Property individually or in any combination.

3.    <u>License</u>.  Broker represents that it and the personnel providing services hereunder are, to the extent required by law, duly licensed. Broker shall, at its own expense, obtain and keep in full force and effect all licenses and permits required to be maintained by Broker in connection with rendering of services hereunder.

4.    <u>Performance of Services</u>. Broker shall perform the services through able, qualified and trained personnel of Broker in sufficient number to properly render the services in the manner appropriate for the Property as required by this Agreement.  Broker shall have the exclusive right to hire, direct, discipline, compensate and terminate the personnel of Broker, and shall exercise complete and exclusive control over the conduct of Broker's personnel.  Such services shall include:

(a)    <u>Inspection, Review and Analysis</u>.  Broker shall review each Property to determine its relative market appeal, quality of location, market and area trends, and potential for value enhancement prior to entering the market.  Broker shall be entitled to rely on information provided by Owner, Owner's agents, and any property manager for the



COMMERCIAL SERVICES
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

Property, and shall not be responsible for verifying the accuracy or completeness of any such information.

(b)    Marketing Plan. Broker shall develop and prepare for the Owner's review and approval a detailed marketing plan (the "Marketing Plan") setting forth a comprehensive strategy for sale of the Properties.

(c)    Offering Materials. Broker shall assemble and produce for the Owner's review and approval an offering brochure and/or other marketing materials of a type which is customary for similar properties.    Owner shall provide the information in its possession, custody or control regarding the Properties necessary for Broker to prepare a professional offering brochure. The brochure shall include, as appropriate, property facts, photographs, high-quality graphics, descriptive area and location information, site plan, and other relevant information as available.

(d)    Marketing Efforts and Advertising.    Owner has authorized Broker to advertise the Properties for sale.  Broker shall expose the Properties to a wide variety of purchasers via direct mail, print advertising, electronically and on the Internet, as deemed appropriate by Broker.  Broker shall provide prospective purchasers with additional information and coordinate site visits. Broker shall not disseminate any offering brochures or other written promotional materials, until approved by Owner in writing. Upon completion of the sale of the Properties, Broker may advertise or issue a press release or other public announcement regarding the sale, in form and content reasonably acceptable to the Owner.

(e)    Prospective Purchaser Qualification and Inspections. Broker shall solicit and identify prospective purchasers of the Properties, deliver the offering materials to such prospective purchasers and, in connection therewith, assist the Owner in qualifying prospective purchasers prior to recommending acceptance of an offer, provided, however, that the Owner shall have the ultimate responsibility for determining the financial condition and capabilities of any prospective purchaser.  Broker shall make the necessary arrangements with Owner or Owner's agent to permit prospective purchasers to physically inspect any of the Properties.

(f)    Inquiries. Broker shall promptly inform the Owner of all offers and inquiries received from brokers, prospective purchasers or anyone else with respect to any of the Property.

(g)    Negotiations and Legal and Tax Advice. All negotiations with prospective purchasers shall be conducted by Broker in conjunction with the Owner and their counsel. The Owner and the Owner's counsel shall be responsible for determining the legal sufficiency of the purchase and sale Agreement and all other documents relating to any transaction contemplated by this Agreement; and Owner and its financial advisors shall be solely responsible for determining the tax consequences of any transaction contemplated under this Agreement.



COMMERCIAL SERVICES
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

5.    Reports.  Broker shall submit to the Owner, no later than the fifth (5th) day of each month, a monthly report on the marketing of the Properties which shall include an updated list of all prospective purchasers and a summary of the status of any offers or negotiations. Owner expressly agrees that the trustee and holders of Owner's Series 2015 Revenue Bonds and their agents or representative may receive any and all materials prepared by Broker in performance of this Agreement and discuss any and all issues associated with this engagement, including the marketing of the Properties and the solicitation of offers, with Broker independent from the Owner.

6.    Fees and Expenses. Owner agrees to pay Broker a sales commission for its services rendered hereunder in an amount equal to four (4%) percent of the purchase price of the sale of any of the Properties. This commission shall be considered earned and payable for services rendered if, during the term of this Agreement, any of the Property is sold to a purchaser is procured by Broker or the Owner. Said commission will be deemed earned with respect to each Property sold pursuant to the previous sentence, and will be due and payable upon the closing of such Property. In the event multiple Properties are sold to one purchaser in a single sale transaction, such commission shall calculated based upon the purchase price thereof and will be paid upon the closing of all such Properties, at the closing.

7.    Co-Broker.    In the event a sale is procured for any Property in conjunction with another licensed real estate broker ("Co-Broker"), then Owner shall pay commission with respect to such Property in accordance with the rates mentioned in Paragraph 6 to the Broker and the Broker shall be solely responsible for paying any commission or amounts due to the Co-Broker.

8.    [omitted].

9.    Rights after Expiration. Upon expiration of this agency, Broker agrees to submit a list of prospective purchasers to whom the Properties have been submitted prior to expiration of this Agreement. Said list shall be delivered to Owner within 5 days after the term of this agency expires. Owner agrees to pay Broker the commission hereunder if any Property is sold to any such prospective purchasers within 120 calendar days of the expiration of this Agreement.

10    Termination By Owner For Cause.  Owner shall have the right to terminate this Agreement upon not less than sixty (60) days' prior written notice to Broker in the event of a material breach or default by Broker of any of its obligations hereunder.

11.    Indemnification.

        (a)    Broker agrees to indemnify and defend Owner and the Trustee from and against all liability, damages, losses and expenses resulting from claims or causes of action by a third party (collectively, "Claims") based solely upon Broker's wrongful act, failure to act, or misrepresentation. Such obligation to defend and indemnify will not apply, however, if the claim or cause of action is based upon or arises in any way out of an act, failure to act or representation of any other person or entity, including, but not limited to, Owner providing to Broker incorrect information or failing to disclose to Broker information which should have otherwise been disclosed to such claimant or to Broker.



**COMMERCIAL SERVICES**
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

(b)    Owner agrees to indemnify and defend Broker from and against all Claims by a third party based solely upon Owner's wrongful act, failure to act, or misrepresentation, including, but not limited to, Owner providing to Broker incorrect information or failing to disclose to Broker information which should have otherwise been disclosed to such claimant or to Broker; provided that no such indemnification shall cover any and all liability, damages, losses and expenses resulting from claims or causes of action by a third party  based solely upon Broker's wrongful act, failure to act, or misrepresentation.

12.    <u>Entire Agreement.</u>  This Agreement constitutes the entire Agreement between Owner and Broker and supersedes all prior discussions, Agreements, and negotiations, whether oral or written. No alteration, amendment, or termination of this Agreement will be valid or binding unless made in writing and executed by Owner and Broker.

13.    <u>Governing Law.</u>  This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New York, without regard to its conflicts of laws principles.

14.    <u>Bankruptcy.</u>  Broker and the Owner acknowledge that this Agreement is being entered into in anticipation of a filing by the Owner of a petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Proceeding") and that the sale of the Properties shall be conducted in accordance with 11 U.S.C. 363.   In the event of a Bankruptcy Proceeding, Owner agrees to use commercially reasonable efforts to promptly seek court approval to employ Broker on the terms of this Agreement.



**COMMERCIAL SERVICES**
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

IN WITNESS WHEREOF, Owner and Broker have executed this Agreement on the $\underline{28}$ day of
$\underline{November}$ 2016.

By: _____  / CRO-DOWLING COLLEGE

     Owner

By: _____

    Douglas Elliman Real Estate (Commercial Services)



**COMMERCIAL SERVICES**
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

## EXHIBIT A

| Address | Building Use |
|---|---|
| 96 Biltmore Ave.* | Visual Arts Center |
| 121 Central Blvd.* | Security Offices |
| 64 Chateau Drive* | Veterans House |
| 274 Connetquot Drive* | Lot |
| 275 Connetquot Drive* | Music Department |
| 8 Idle Hour Blvd.* | Offices |
| 123 Idle Hour Blvd.* | Campus Offices |
| 135 Idle Hour Blvd.* | Campus Offices |

* Co-marketed by the residential and commercial divisions.



**RESIDENTIAL SERVICES**
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

## MASTER LISTING AGREEMENT - EXCLUSIVE RIGHT TO SELL
## (RESIDENTIAL)

THIS MASTER LISTING AGREEMENT - EXCLUSIVE RIGHT TO SELL ("Agreement") is entered into as of the 22nd day of November, 2016, by and between **DouglasElliman Real Estate** (the "Broker") and **Dowling College**, through its Chief Restructuring Officer, 1300 William Floyd Parkway Shirley, New York 11967 ("Owner").

### RECITALS

WHEREAS, Owner owns certain residential properties listed on <u>Exhibit A</u> hereto (each a "Property" and together, the "Properties"), and

WHEREAS, Owner desires to engage the Broker as its exclusive broker, and to grant to the Broker the exclusive right, to list for sale the Properties, individually or together as a whole, and the Broker is agreeable to such engagement on the terms and conditions as set forth in this Agreement,

In consideration of mutual covenants herein contained, the Owner and Broker agree as follows:

1.      <u>Term</u>. This Agreement shall continue in full force until November 1, 2017, unless sooner terminated or extended in accordance with the provisions of this Agreement.

2.      <u>Exclusive Right</u>. Owner hereby appoints Broker as its exclusive agent and grants Broker the exclusive right to solicit and procure prospective purchasers for each of the Properties. Broker accepts the appointment and agrees to act in good faith and use diligent efforts to perform the services required by this Agreement. Owner and Broker agree that Broker may offer for sale each Property individually or in any combination.

3.      <u>License</u>. Broker represents that it and the personnel providing services hereunder are, to the extent required by law, duly licensed. Broker shall, at its own expense, obtain and keep in full force and effect all licenses and permits required to be maintained by Broker in connection with rendering of services hereunder.

4.      <u>Performance of Services</u>. Broker shall perform the services through able, qualified and trained personnel of Broker in sufficient number to properly render the services in the manner appropriate for the Property as required by this Agreement.  Broker shall have the exclusive right to hire, direct, discipline, compensate and terminate the personnel of Broker, and shall exercise complete and exclusive control over the conduct of Broker's personnel.  Such services shall include:

      (a)      <u>Inspection, Review and Analysis</u>.  Broker shall review each Property to determine its relative market appeal, quality of location, market and area trends, and potential for value enhancement prior to entering the market.  Broker shall be entitled to rely on information provided by Owner, Owner's agents, and any property manager for the

[Illegible faded footer text]



**RESIDENTIAL SERVICES**
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

Property, and shall not be responsible for verifying the accuracy or completeness of any such information.

(b)     <u>Marketing Plan</u>. Broker shall develop and prepare for the Owner's review and approval a detailed marketing plan (the "Marketing Plan") setting forth a comprehensive strategy for sale of the Properties.

(c)     <u>Offering Materials</u>. Broker shall assemble and produce for the Owner's review and approval an offering brochure and/or other marketing materials of a type which is customary for similar properties. Owner shall provide the information in its possession, custody or control regarding the Properties necessary for Broker to prepare a professional offering brochure. The brochure shall include, as appropriate, property facts, photographs, high-quality graphics, descriptive area and location information, site plan, and other relevant information as available.

(d)     <u>Marketing Efforts and Advertising</u>. Owner has authorized Broker to advertise the Properties for sale. Broker shall expose the Properties to a wide variety of purchasers via direct mail, print advertising, electronically and on the Internet, as deemed appropriate by Broker. Broker shall provide prospective purchasers with additional information and coordinate site visits. Broker shall not disseminate any offering brochures or other written promotional materials, until approved by Owner in writing. Upon completion of the sale of the Properties, Broker may advertise or issue a press release or other public announcement regarding the sale, in form and content reasonably acceptable to the Owner.

(e)     <u>Prospective Purchaser Qualification and Inspections</u>. Broker shall solicit and identify prospective purchasers of the Properties, deliver the offering materials to such prospective purchasers and, in connection therewith, assist the Owner in qualifying prospective purchasers prior to recommending acceptance of an offer, provided, however, that the Owner shall have the ultimate responsibility for determining the financial condition and capabilities of any prospective purchaser. Broker shall make the necessary arrangements with Owner or Owner's agent to permit prospective purchasers to physically inspect any of the Properties.

(f)     <u>Inquiries</u>. Broker shall promptly inform the Owner of all offers and inquiries received from brokers, prospective purchasers or anyone else with respect to any of the Property.

(g)     <u>Negotiations and Legal and Tax Advice</u>. All negotiations with prospective purchasers shall be conducted by Broker in conjunction with the Owner. The Owner and the Owner's counsel shall be responsible for determining the legal sufficiency of the purchase and sale Agreement and all other documents relating to any transaction contemplated by this Agreement; and Owner and its financial advisors shall be solely responsible for determining the tax consequences of any transaction contemplated under this Agreement.

© 2011, Douglas Elliman Real Estate. All material presented herein is intended for information purposes only. While this is believed to be correct, it is represented subject to errors, omissions, changes or withdrawal without notice. All property information, including, but not limited to square footage, room count, number of bedrooms and the school district in property listings are deemed reliable, but should be verified by your own attorney, architect or zoning expert. Equal Housing Opportunity.



**RESIDENTIAL SERVICES**
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

5.     Reports.  Broker shall submit to the Owner, no later than the fifth (5th) day of each month, a monthly report on the marketing of the Properties which shall include an updated list of all prospective purchasers and a summary of the status of any offers or negotiations. Owner expressly agrees that the trustee and holders of Owner's Series 2015 Revenue Bonds and their agents or representative may receive any and all materials prepared by Broker in performance of this Agreement and discuss any and all issues associated with this engagement, including the marketing of the Properties and the solicitation of offers, with Broker independent from the Owner.

6.     Fees and Expenses. Owner agrees to pay Broker a sales commission for its services rendered hereunder in an amount two and a half percent (2 ½ %) of the purchase price if sold to an existing tenant and the Residential Agent is the only agent involved in the transaction and otherwise four percent (4%) of the purchase price for each of the Properties. This commission shall be considered earned and payable for services rendered if, during the term of this Agreement, any of the Property is sold to a purchaser is procured by Broker or the Owner. Said commission will be deemed earned with respect to each Property sold pursuant to the previous sentence, and will due and payable upon the closing of such Property. In the event multiple Properties are sold to one purchaser in a single sale transaction, such commission shall calculated based upon the total purchase prices thereof and will be paid upon the closing of all such Properties, at the closing.

7.     Other Brokers. The Broker represents the Owner as seller's agent and shall cooperate with other brokers who are Participants in the Multiple Listing Service of Long Island, Inc. (MLSLI) ("Cooperating Brokers"). Owner acknowledges that Broker must cooperate with agents that represent buyer. In the event a sale is procured for any Property in conjunction with a Cooperating Broker or Buyer's broker, then Owner shall pay commission with respect to such Property in accordance with the rates mentioned in Paragraph 6 to the Broker and the Broker shall be solely responsible for paying any commission or amounts due to the Cooperating Broker or Buyer's broker.

8.     [omitted]

9.     Rights after Expiration. Upon expiration of this agency, Broker agrees to submit a list of prospective purchasers to whom the Properties have been submitted prior to expiration of this Agreement. Said list shall be delivered to Owner within 5 days after the term of this agency expires. Owner agrees to pay Broker the commission hereunder if any Property is sold to any such prospective purchasers within 120 calendar days of the expiration of this Agreement.

10     Termination By Owner For Cause. Owner shall have the right to terminate this Agreement upon not less than sixty (60) days' prior written notice to Broker in the event of a material breach or default by Broker of any of its obligations hereunder.

11.    Indemnification.

        (a)     Broker agrees to indemnify and defend Owner and the Trustee from and against all liability, damages, losses and expenses resulting from claims or causes of action by a third party (collectively, "Claims") based solely upon Broker's wrongful act, failure to act, or misrepresentation. Such obligation to defend and indemnify will not apply, however, if the claim or cause of action is based upon or arises in any way out of an act, failure to act or representation of any other person or

© 2012 Douglas Elliman Real Estate. An equal opportunity housing provider. All office(s) are independently owned and operated except Douglas Elliman Real Estate offices, those in New York City and Long Island, and those in Westchester, Putnam and Dutchess Counties. Douglas Elliman Real Estate is a licensed real estate broker located at 575 Madison Avenue, New York, NY 10022.



RESIDENTIAL SERVICES
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

entity, including, but not limited to, Owner providing to Broker incorrect information or failing to disclose to Broker information which should have otherwise been disclosed to such claimant or to Broker.

(b)    Owner agrees to indemnify and defend Broker from and against all Claims by a third party based solely upon Owner's wrongful act, failure to act, or misrepresentation, including, but not limited to, Owner providing to Broker incorrect information or failing to disclose to Broker information which should have otherwise been disclosed to such claimant or to Broker; provided that no such indemnification shall cover any and all liability, damages, losses and expenses resulting from claims or causes of action by a third party  based solely upon Broker's wrongful act, failure to act, or misrepresentation.

12.    Entire Agreement.  This Agreement constitutes the entire agreement between Owner and Broker and supersedes all prior discussions, Agreements, and negotiations, whether oral or written. No alteration, amendment, or termination of this Agreement will be valid or binding unless made in writing and executed by Owner and Broker.

13.    Governing Law.  This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New York, without regard to its conflicts of laws principles.

14.    Bankruptcy.  Broker and the Owner acknowledge that this Agreement is being entered into in anticipation of a filing by the Owner of a petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Proceeding") and that the sale of the Properties shall be conducted in accordance with 11 U.S.C. 363.   In the event of a Bankruptcy Proceeding, Owner agrees to use commercially reasonable efforts to promptly seek court approval to employ Broker on the terms of this Agreement.

15.    Acknowledgements.  Owner understand and agrees that neither Long Island Board of Realtors, Inc. nor MLSLI are parties to this Agreement and that the Broker is not an agent for either of said organizations and has no authority to make any representation, Agreement or commitment with respect to either said organizations other than other contained herein.

16.    Property Condition Disclosure.  Prior to entering into a binding contract of sale for any of the Properties listed in Exhibit A, the Owner shall complete and execute a Property Condition Disclosure Statement and deliver it to the respective buyer.

IN WITNESS WHEREOF, Owner and Broker have executed this Agreement on the 25th day of November 2016.

By: _____  /CRO Dowling College
    Owner

By: _____
    Douglas Elliman Real Estate

© 2010, Douglas Elliman Real Estate. All property information is deemed reliable but not guaranteed. All measurements and square footages are approximate. This is not intended to solicit property already listed. Equal Housing Opportunity.



**RESIDENTIAL SERVICES**
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405  | Fax: 631.543.0851
www.elliman.com



**RESIDENTIAL SERVICES**
1772 E Jericho Turnpike, Huntington NY 11743
Office: 631.858.2405 | Fax: 631.543.0851
www.elliman.com

## EXHIBIT A

| Address | Building Use |
|---|---|
| 96 Biltmore Ave.* | Visual Arts Center |
| 87 Central Blvd. | Residence |
| 88 Central Blvd. | Residence |
| 89 Central Blvd. | Residence |
| 121 Central Blvd.* | Security Offices |
| 138 Central Blvd. | Residence |
| 21 Chateau Drive | Residence |
| 27 Chateau Drive | Residence |
| 39 Chateau Drive | Residence |
| 47 Chateau Drive | Residence |
| 64 Chateau Drive* | Veterans House |
| 72 Chateau Drive | Residence |
| 80 Chateau Drive | Residence |
| 81 Chateau Drive | Residence |
| 94 Connetquot Drive | Residence |
| 102 Connetquot Drive | Residence |
| 274 Connetquot Drive* | Lot |
| 275 Connetquot Drive* | Music Department |
| 14 Elmsmere Drive | Residence |
| 90 Elsmere Drive | Residence |
| 8 Idle Hour Blvd.* | Offices |
| 15 Idle Hour Blvd. | Residence |
| 99 Idle Hour Blvd. | Residence |
| 115 Idle Hour Blvd. | Residence |
| 123 Idle Hour Blvd.* | Campus Offices |
| 135 Idle Hour Blvd.* | Campus Offices |
| 44 Van Bomel Blvd. | Residence |
| 48 Van Bomel Blvd. | Residence |
| 52 Van Bomel Blvd. | Residence |
| 56 Van Bomel Blvd. | Residence |
| 64 Van Bomel Blvd. | Residence |
| 58 Woodlawn Ave. | Residence |

* Co-marketed by Broker's residential and commercial divisions.

# **<u>Exhibit D</u>**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                                 :          Chapter 11
                                                                      :
DOWLING COLLEGE,                                       :          Case No. 16-
                                                                      :
                                                                      :
                                        Debtor.            :
----------------------------------------------------------------x

### AFFIDAVIT OF ANN CONROY IN SUPPORT OF APPLICATION
### FOR INTERIM AND FINAL ORDERS AUTHORIZING THE
### RETENTION OF DOUGLAS ELLIMAN AS REAL ESTATE
### BROKER FOR THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE

STATE OF NEW YORK        )
                                            ) SS.:
COUNTY OF NASSAU          )

Ann Conroy, being duly sworn, deposes and says:

1.        I am the President of the Long Island Division of Douglas Elliman (the "Residential

Agent").  I am authorized to execute this Affidavit on behalf of the Residential Agent and submit this

Affidavit on behalf of the Residential Agent in support of the application (the "Application")[1] of

Dowling College, (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter

11 case (the "Chapter 11 Case"), seeking authorization to employ and retain the Residential Agent

as its real estate broker (the "Engagement"), as set forth in the Application and the Listing

Agreements, and in compliance with Sections 327(a) and 328(a) of Title 11 of the United States

Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Local Rule 2014-1 of the Local Bankruptcy Rules for the Eastern

District of New York (the "Local Rules").

2.        The Residential Agent maintains offices at 110 Walt Whitman Road, Huntington,

---
[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

New York and approximately sixty (60) offices throughout Long Island.  Unless otherwise stated

in this Affidavit, I have personal knowledge of the facts hereinafter set forth.[2]  To the extent that

any information disclosed herein requires subsequent amendment or modification upon the

Residential Agent's completion of further analysis or as additional creditor information becomes

available to it, one or more supplemental affidavits will be submitted to the court reflecting the

same.

3.      The terms and conditions of the Residential Agent's retention by the Debtor for the

sale of the Residential Portfolio are set forth in those certain forms of listing agreement dated as

of November 22, 2016, attached to the Application as Exhibit C (the "Listing Agreements"),

which terms and conditions are summarized herein.   Generally, both Listing Agreements are

materially the same, with one emphasizing substantially all of the parcels in the Residential Portfolio,

which will be marketed by one of the Residential Agent's residential specialists, and the second

emphasizing a subset of the Residential Portfolio that will also be marketed by one of the Residential

Agent's commercial specialists.

### QUALIFICATION OF PROFESSIONALS

4.      The Residential Agent is well-suited to provide the real estate services that the Debtor

requires and has requested that the Residential Agent provide in this Chapter 11 Case.   The

Residential Agent is extensively experienced in the marketing and sale of real property on Long

Island.  The Residential Agent is a licensed real estate broker in and by the state of New York.

5.      The Residential Agent desires and is willing to act as the Debtor's exclusive real

estate broker for the sale of the Residential Portfolio in this Chapter 11 Case and render the

necessary professional services required in connection with the sale of the Residential Portfolio.

---

[2] Certain of the disclosures herein may relate to matters within the knowledge of other professionals at the Residential Agent and are based on information provided by them and records kept in the ordinary course of the Residential Agent's business.

## SERVICES TO BE RENDERED DURING THE CHAPTER 11 CASE

6.  In connection with this Chapter 11 Case, the services the Residential Agent will provide to the Debtor will include, but are not limited to, the following:

(a)  assisting the Debtor through market analysis to establish listing prices for parcels within the Residential Portfolio;

(b)  marketing the Residential Portfolio using such advertising, solicitation of outside brokers, and other promotional and marketing activities as may be necessary and agreed upon with the Debtor;

(c)  analyzing offers and proposals from potential purchasers and offering recommendations to the Debtor in connection with any proposed transaction involving the Residential Portfolio;

(d)  assisting the Debtor in consulting with key stakeholders, including parties with liens of record in the Residential Portfolio concerning sales matters;

(e)  assisting with negotiations regarding any potential transaction involving the Residential Portfolio; and

(f)  assisting with the consummation of any transaction involving the Residential Portfolio.

7.  As an additional service, in the event of consummation of a sale of any parcel of the Residential Portfolio covered under the Listing Agreements and the retention and receipt of the Commission (defined herein) from the Debtor, the Residential Agent will compensate any outside broker who dealt with the Residential Agent in representation of a purchaser of any parcel of the Residential Portfolio in an amount equal to fifty percent (50%) of the Commission received by the Residential Agent from Debtor under the Listing Agreements, as set forth herein.  As stated above, the Residential Agent has extensive experience in the sale of residential real estate.  The Debtor has requested the Residential Agent's services and expertise to properly dispose of the Properties and the Residential Agent is capable of providing the required services, as indicated herein and in the Application.

## PROFESSIONAL COMPENSATION

8.      Pursuant to the Listing Agreements and subject to the approval of the Bankruptcy Court, upon the sale of any parcel of the Residential Portfolio, the Residential Agent will be paid a commission (the "Commission") equal to two and a half percent (2 ½ %) of the purchase price if sold to an existing tenant and the Residential Agent is the only agent involved in the transaction and otherwise four percent (4%) of the purchase price.  In addition, the Residential Agent will compensate any outside broker who dealt with the Residential Agent in representation of the purchaser in an amount equal to fifty percent (50%) of the Commission received by the Residential Agent from the Debtor under the Listing Agreements.  Subject to the requirement that the Residential Agent file a final fee application with the Court, the Debtor has advised the Residential Agent that it intends to pay the Residential Agent its Commission directly from the sale proceeds of any parcel of the Residential Portfolio.

9.      The Residential Agent also intends to seek reimbursement for its reasonable legal fees and expenses, if any, incurred in connection with the filing of any required fee applications or the commencement of any actions or proceedings resulting from the Debtor's failure to make any commission payments actually earned by the Residential Agent, subject to the Debtor's rights to object and/or dispute any such fee requests.

10.     To date, the Residential Agent has not been paid any compensation by the Debtor in connection with this matter.

## FEE APPLICATION

11.     The Residential Agent understands that fees and expenses in this Chapter 11 Case shall be subject to final approval of the Court upon proper application by the Residential Agent in accordance with procedures for the allowance of final compensation applicable to professionals in

4

this Chapter 11 Case, and in accordance with the requirements of the Bankruptcy Code. Inasmuch as the Residential Agent is being retained under Section 328 of the Bankruptcy Code and the Residential Agent's compensation is results-oriented and directly related to the benefits received by the Debtor's estate as a result of the transaction, the Residential Agent has informed the Debtor that it is not its practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis. Therefore, the Residential Agent requests that this requirement be waived and that the final fee application is not subject to Section 330 review. The Residential Agent will however, file a final fee application in accordance with applicable Bankruptcy Rules, Local Rules and any other orders of this Court.

## DISINTERESTEDNESS OF PROFESSIONALS

12.    In connection with this proposed retention, the Residential Agent reviewed a comprehensive list provided by the Debtor of individuals and entities who may have contacts with the Debtor (the "Retention Checklist"). The Residential Agent does not have a global conflicts database. However, the Residential Agent has conducted an inquiry to determine whether there were or are relationships with the list of parties on the Retention Checklist (collectively, the "Potential Parties in Interest") and thoroughly reviewed and compiled for the purpose of this Affidavit.

13.    The Residential Agent has a longstanding relationship with the Debtor, and has assisted the Debtor in multiple leasing and sale transactions for real property now or formerly owned by the Debtor. Except as otherwise set forth herein, however, to the best of my knowledge insofar as I have been able to ascertain after reasonable inquiry and relying upon the procedures employed by the Residential Agent to identify potential relationships, neither I nor the professionals of the Residential Agent working on this engagement have any other relationship with the Debtor, and the parties set forth on the Retention Checklist, specifically the Debtor's largest creditors, its officers and

5

directors, and certain other listed parties.

14.    As matters of disclosure, the Residential Agent has identified the following connections with the listed Potential Parties in Interest:

| Potential Party in Interest | Connection |
| --- | --- |
| CBRE, Inc. | A Residential Agent employee that will be directly involved in this engagement worked with CBRE, Inc.'s now president approximately 25 years ago when both worked at a competing real estate brokerage. |
| Meyer, Suozzi, English & Klein, P.C. | The firm from time to time serves as legal counsel to the Residential Agent in matters unrelated to this engagement. |
| Certilman Balin Adler & Hyman, LLP | The firm from time to time serves as legal counsel to the Residential Agent in matters unrelated to this engagement. |
| Dennis O'Doherty | Mr. O'Doherty is a local real estate attorney and various representatives of Residential Agent have been participants in other real estate transactions where Mr. O'Doherty has also been involved. Mr. O'Doherty and a Residential Agent employee that will be directly involved in this engagement are members of the Sayville Yacht Club. |
| Gerald Curtin | Mr. Curtin and an employee of Residential Agent in the same office as a Residential Agent employee that will be directly involved in this engagement were formerly members of the same Tennis Club. |
| Jack O'Connor | Mr. O'Connor (or a business with which he is affiliated) leases property to a business operated by the husband of a Residential Agent employee that will be directly involved in this engagement. |
| Ralph Cerullo | Mr. Cerullo has worked with Residential Agent as representative of the Debtor on past listings and sales of the Debtor properties. |
| Cigna Health & Life Insurance | Provides health insurance for the Residential Agent. |
| CohnReznick, LLP | The firm provides Sarbanes Oxley consultant work for the Residential Agent. |
| American Express | The Residential Agent has accounts with American Express. |

| Capital One NA | The Residential Agent maintains accounts with Capital One. |

15.     Further, certain of Residential Agent's employees previously represented the Debtor as listing agent in rental transactions with several parties that are current tenants of parcels within the Residential Portfolio.

16.     From time to time, the Residential Agent has provided services, may currently provide services, and will likely continue to provide services to certain creditors of the Debtor, other parties in interest and various other parties in matters unrelated to this Chapter 11 Case.  Certain creditors, other parties in interest, attorneys, or accountants have or may have provided goods or services to, currently provide goods or services to, and may in the future provide goods and services to the Residential Agent in matters unrelated to this Chapter 11 Case.

17.     Based upon my review, neither I nor any other professional at the Residential Agent working on this engagement hold or represent any interest materially adverse to the Debtor or the Debtor's estate with respect to the matters upon which it is to be engaged.

18.     The Residential Agent is not a "creditor" with respect to any fees and expenses of the Debtor within the meaning of Section 101(10) of the Bankruptcy Code.  Further, neither I nor any other member of the Residential Agent team serving the Debtor, to the best of my knowledge, is a holder of any outstanding debt instrument of the Debtor.

19.     Consequently, to the best of my knowledge, the Residential Agent is "disinterested" as that term is defined in Section 101(14) of the Bankruptcy Code as modified by Section 1107(b) of the Bankruptcy Code, in that:

(a)     neither the Residential Agent nor any professional at the Residential Agent working on this engagement is or was a creditor, equity security holder or insider of the Debtor;

(b)     neither the Residential Agent nor any professional at the Residential Agent working on this engagement is or was, within two (2) years before the commencement of this Chapter 11 Case, a director, officer, or employee of the Debtor;

(c)     the Residential Agent has no interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor.

20.     As part of its practice, the Residential Agent appears in cases, proceedings and transactions involving many different professionals, including attorneys, financial advisors and creditors, some of which may represent or be claimants and/or parties in interest in this Chapter 11 Case.  Also, the Residential Agent has in the past represented, currently represents, and likely in the future will represent certain creditors of the Debtor and other parties in interest, or their attorneys, accountants or investment banks, in matters unrelated to the Debtor, this Chapter 11 Case, or the claims of those entities against the Debtor.  The Residential Agent will have no relationship with any such entity, attorney or financial advisory that would be materially adverse to the Debtor in this Chapter 11 Case.

21.     Despite the efforts described above to identify and disclose connections with parties in interest in this Chapter 11 Case, because the Debtor is a large enterprise with numerous creditors and other relationships, the Residential Agent is unable to state with certainty that every client representation or other connection of the Residential Agent has been disclosed.  If the Residential Agent discovers additional information requiring disclosure, the Residential Agent will file supplemental disclosures with the Court as promptly as possible.  The Residential Agent further understands that it has a duty to continue to check for conflicts and connections, and in the event any new facts or relationships subsequently are discovered during the pendency of this Chapter 11 Case, the Residential Agent will supplement this Affidavit and file the same with the Court.

21.     This Affidavit is provided in accordance with Section 327(a) of the Bankruptcy Code

and Bankruptcy Rule 2014.


Dated:  New York, New York
        November 18, 2016                        /s/ Ann Conroy
                                          _____
                                                 Ann Conroy



Sworn to before me this
18th day of November, 2016


/s/ Cheryl Hess
_____

Notary Public, State of New York
LIC.: 01HE6026371
Commission Expires: June 14, 2019