1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 8-16-75545-reg

4    - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    DOWLING COLLEGE

8

9              Debtor.

10

11   - - - - - - - - - - - - - - - - - - - -x

12

13                         United States Bankruptcy Court

14                         290 Federal Plaza

15                         Central Islip, New York  11722

16

17                         December 2, 2016

18                         10:10 AM

19

20

21   B E F O R E:

22   HON. ROBERT E. GROSSMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

1    HEARING re [30] Order to Schedule Emergency Hearing on [4]

2    Motion to Authorize/Direct the form and manner of notice of

3    commencement of this chapter 11 case by Lauren Catherine Kiss

4    on behalf of Dowling College.

5

6    HEARING re [31] Order to Schedule Emergency Hearing on [9]

7    Motion for Authority to Obtain Credit Under Section 364(b),

8    Rule 4001(c) or (d) to Obtain Post-Petition Secured,

9    Superpriority Financing Pursuant to 11 U.S.C. Sections 105,

10   361, 362, 363, and 364 and (B) to Utilize Cash Collateral

11   Pursuant to 11 U.S.C. Section 363; Adequate Protection to Pre-

12   Petition Secured Creditors Pursuant to 11 U.S.C. Sections 361,

13   362, 363 and 364 by Joseph Charles Corneau on behalf of

14   Dowling College.

15

16   HEARING re [32] Order to Schedule Emergency Hearing on [5]

17   Motion to Authorize/Direct Establishing Case Management

18   Procedures Filed by Lauren Catherine Kiss on behalf of Dowling

19   College.

20

21   HEARING re [33] Order to Schedule Emergency Hearing on [6]

22   Application to Employ and Appoint Garden City Group, LLC, as

23   Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C.

24   Section 156(c) and 11 U.S.C. Section 105(a), Nunc Pro Tunc to

25   the Petition Date by Lauren Catherine Kiss on behalf of Dowling

1    College.

2

3    HEARING re [34] Order to Schedule Emergency Hearing on [7]

4    Application to Employ Pursuant to Sections 105(a) and 363(b) of

5    the Bankruptcy Code for an Order Authorizing RSR Consulting,

6    LLC to Continue to Provide the Debtor with a Chief

7    Restructuring Officer and Additional Personnel, and

8    Designating Robert S. Rosenfeld as Chief Restructuring Officer

9    to the Debtor Effective as of the Petition Date by Lauren

10   Catherine Kiss on behalf of Dowling College

11

12   HEARING re [35] Order to Schedule Emergency Hearing on [10]

13   Motion to Authorize the Closing and Balance Transfers of

14   Certain Prepetition Bank Accounts and Granting a Limited Waiver

15   of Section 345 Investment and Deposit Requirements by Joseph

16   Charles Corneau on behalf of Dowling College.

17

18   HEARING re [36] Order to Schedule Emergency Hearing on [11]

19   Motion to Pay Prepetition Payroll and To Pay Union by Joseph

20   Charles Corneau on behalf of Dowling College.

21

22   HEARING re [37] Order to Schedule Emergency Hearing on [12]

23   Motion to Pursuant to Sections 105(a) and 363(b) of the

24   Bankruptcy Code Authorizing the Debtor to Continue its Existing

25   Insurance Programs and Related Agreements, Including Premium

1   Financing Agreement and To Pay Certain Prepetition Insurance

2   Premiums, Claims and Related Expenses by Joseph Charles

3   Corneau on behalf of Dowling College.

4

5   HEARING re [38] Order to Schedule Emergency Hearing on [14]

6   Motion to Sell Property of the Estate Free and Clear of Liens

7   under 11 U.S.C 363(f) Approving Sale Procedures for Residential

8   Portfolio by Joseph Charles Corneau on behalf of Dowling

9   College.

10

11  HEARING re [40] Order to Schedule Emergency Hearing on [15]

12  Application to Employ A&G Realty Partners, LLC and Madison Hawk

13  Partners, LLC as Real Estate Advisors to the Debtor, Nunc

14  Pro Tunc to the Petition Date by Joseph Charles Corneau on

15  behalf of Dowling College.

16

17  HEARING re [41] Order to Schedule Emergency Hearing on [16]

18  Application to Employ Douglas Elliman as Real Estate Broker for

19  the Debtor, Nunc Pro Tunc to the Petition Date by Joseph

20  Charles Corneau on behalf of Dowling College.

21

22

23

24

25  Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    COOLEY LLP

4         Attorney representing Cooley LLP

5         101 California St, 5th Floor

6         San Francisco, CA 94111

7

8    BY:  EVAN M LAZEROWITZ (Tele/Video)

9

10   MERGER MARKET

11        Attorney representing Merger Market

12        330 Hudson St., Floor 4

13        New York NY 10013

14

15   BY:  MARIA CHUTCHIAN (Tele/Video)

16

17   GARFUNKEL WILD, P.C.

18        Attorney representing UMB Bank, National Association as

19        Indenture Trustee, Creditor

20        111 Great Neck Road

21        Great Neck NY 11021

22

23   BY:  ADAM T BERKOWITZ

24

25

1    MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

2         Attorney representing UMB Bank, NA as Trustee

3         One Financial Center

4         Boston MA 02111

5

6    BY:  IAN A. HAMMEL

7

8    CERTILMAN BALIN

9         Attorney representing ACA Financial Guaranty Corp.

10        90 Merrick Avenue

11        East Meadow NY 11554

12

13   BY:  RICHARD J MCCORD

14

15   KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

16        Attorney representing Dowling College, Debtor

17        200 West 41st Street, 17th Floor

18        New York NY 10036-7203

19

20   BY:  SEAN C SOUTHARD

21

22

23

24

25

1    KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

2         Attorney representing Dowling College, Debtor

3         200 West 41st Street, 17th Floor

4         New York, NY 10036-7203

5

6    BY:  LAUREN CATHERINE KISS

7

8    STIM & WARMUTH PC

9         Attorney representing Kimberly Dawn Poppiti, Creditor

10        2 Eighth Street

11        Farmingville NY 11738

12

13   BY:  GLENN P WARMUTH

14

15   SCHULTE ROTH & ZABEL LLP

16        Attorney representing ACA Financial

17        919 Third Avenue

18        New York NY 10022

19

20   BY:  BRIAN D PFEIFFER

21

22

23

24

25

1    OFFICE OF THE UNITED STATES TRUSTEE

2         Central Islip Office,

3         Alfonse M D'Amato US Courthouse

4         U.S. Trustee

5         560 Federal Plaza

6         Central Islip NY 11722

7

8    BY:  STAN YANG

9

10   RSR CONSULTING, LLC

11        Debtor's principal

12        49 Roy Avenue

13        Massapequa NY 11758

14

15   BY:  ROBERT ROSENFELD

16

17

18

19

20

21

22

23

24

25

Page 9

1  MEYER SUOZZI ENGLISH & KLEIN P.C.

2       Attorney representing Certain Members

3       Of The Dowling College Board

4       of Trustees, Interested Party

5       990 Stewart Avenue

6       Suite 300 PO Box 9194

7       Garden City NY 11530-9194

8

9  BY:  HOWARD B KLEINBERG

10

11  LAURIE ZACHARSKY - Interested Party

12

13  JANE CARR - Interested Party

14

15

16

17

18

19

20

21

22

23

24

25

1                     P R O C E E D I N G S

2              CLERK:  Judge Grossman presiding.

3              THE COURT:  Good morning.  Please be seated.

4              CLERK:  Matters on Dowling College.

5              THE COURT:  Can I get appearances from those who are

6       going to participate?

7              MR. SOUTHARD:  Good morning, Your Honor.  Sean

8       Southard, of Klestadt Winters Jureller Southard & Stevens, as

9       proposed counsel to Dowling College, Debtor in Possession.

10      With me this morning, Your Honor, is Lauren Kiss from my

11      office.  Also with me this morning, Your Honor, on behalf of

12      Dowling College is Robert Rosenfeld of RSR Consulting, who is

13      Dowling's Chief Restructuring Officer.  And he is joined by

14      Neil Bivona, also of RSR Consulting.

15             THE COURT:  Okay.

16             MR. KLEINBERG:  Good morning, Your Honor.  Howard

17      Kleinberg, the law firm of Meyer Suozzi.  We represent the

18      Dowling College Board of Trustee members.

19             MR. BERKOWITZ:  Good morning, Your Honor.  Adam

20      Berkowitz of Garfunkel Wild.  I'm here with Ian Hammel, with

21      Mintz Levin, on behalf of UMB Bank, National Association of

22      bond trustee.

23             MR. HAMMEL:  Good morning, Your Honor.

24             MR. MCCORD:  Good morning, Your Honor.  Certilman

25      Balan, by Richard McCord, and Brian Pfeiffer from Schulte Roth,

1    on behalf of ACA Financial Guarantee Corp.

2         MR. YANG:  Good morning, Your Honor.  Stan Yang for

3    the United States Trustee.

4         MR. WARMUTH:  Good morning, Your Honor.  Glenn

5    Warmuth, Stim & Warmuth, on behalf of Kimberly Poppiti.

6         THE COURT:  Okay.

7         MR. SOUTHARD:  Good morning, Your Honor.  Again, for

8    the record, Sean Southard, proposed counsel to the Debtor in

9    Possession.

10         I would like to thank Your Honor and his Chambers,

11    first off, for working with the Debtor and its professionals to

12    accommodate these First Day matters on an expedited schedule,

13    and for Your Honor's and his Chamber's patience with the

14    parties as we've attempted to work out some of the details

15    related to this morning's hearing.

16         I'd also like to thank the Office of the United

17    States Trustee and the Clerk's Office for giving this case and

18    our draft motions --

19         THE COURT:  Excuse me.  Do we have folks on the

20    phone?  Nobody for appearance though?  Okay.  Go ahead.

21         MR. SOUTHARD:  And for giving this case and our draft

22    motions the prompt attention that both those offices did before

23    this morning.

24         On the petition date, Your Honor, as one of the many

25    filings my office made, we filed a First-day Declaration from

1    Mr. Rosenthal as TRO, dated November 29th, 2016.  That document

2    was docketed as Number 23.  And that Declaration, Your Honor,

3    was submitted in accordance with Rules 1007-4 and 9077-1 of the

4    Local Rules for the Eastern District of New York.

5            That Declaration constitutes a sworn statement from

6    Mr. Rosenfeld and provides background information on the Debtor

7    and the events that led to the Chapter 11 filing, and also

8    serves as support for the urgency and the necessity that we

9    believe exists in relation to certain of the relief that we'll

10    be seeking from Your Honor this morning.

11            That relief includes the authority to borrow funds,

12    the authority to use cash collateral to provide adequate

13    protection to prepetition secured parties, to retain certain

14    professionals and real estate brokers to approve certain sales

15    that we believe are necessary, and to pay certain prepetition

16    claims, including honoring certain employee benefits and some

17    insurance programs.

18            Subject to Your Honor's inquiries throughout this

19    morning, or any other parties, I would ask Your Honor to rely

20    on that Declaration as the direct testimony of Mr. Rosenfeld on

21    behalf of the Debtor and in support of the relief that we'll be

22    seeking this morning, and --

23            THE COURT:  Just the payments relative to the

24    employees that you're seeking revolve around the nine or 10

25    people that are still left there?

1    MR. SOUTHARD:  That's correct, Your Honor.  There are

2    nine.

3    THE COURT:  Because, you know, last night, we got an

4    adversary complaint filed seeking a class-action on behalf of

5    hundreds -- I don't know how many -- of former employees,

6    professors, for violation of the WARN Act and a variety of

7    things.

8    That was filed late last night.  So, nothing is as

9    alleged there.  You're not anticipating any of the borrowings

10   that you're seeking today relative to that argument?  This is

11   just for the current employees, because that complaint also

12   states, as opposed to some of the representations, that there

13   is a significant amount of prepetition wage and other claims on

14   behalf of employees that are due and owing.

15   MR. SOUTHARD:  Yeah, I...  Your Honor, to address

16   that, which I did have a -- not a great deal of time to review,

17   but I did see that it was docketed and quickly reviewed it

18   before this morning, that those employees that are the subject

19   of that complaint, as I understand it, are not the employees --

20   THE COURT:  Okay.

21   MR. SOUTHARD:  -- that remain at the Debtor employ

22   today.  They largely comprise the vast majority of former

23   employees who were terminated in or about June of this year,

24   once it was determined that there was an inability to continue

25   to pay them, while Dowling pursued the last bits of --

1          THE COURT:  Yeah, the merits are --

2          MR. SOUTHARD:  -- the transaction.

3          THE COURT:  -- there.  I certainly don't want to get

4    into it, but I just want to make sure that the only thing we're

5    looking -- you're looking for and is contemplated today as one

6    of the motions you want have to do with current actual

7    employees that represent nine or 10 folks?

8          MR. SOUTHARD:  That's correct, Your Honor.

9          THE COURT:  Okay.

10         MR. SOUTHARD:  That's correct.  So, with regard to

11   the issue of the direct testimony in relation to the

12   Declaration which we filed, unless there's any objection, I

13   would request that we move that Declaration into evidence for

14   that purpose at this time.

15         THE COURT:  Well, it's docketed, so yeah, it's part

16   of the record.

17         MR. SOUTHARD:  Thank you, Your Honor.  Before I turn

18   to the motions this morning, Your Honor, this is the First Day

19   hearing before Your Honor.  I thought it would be appropriate

20   to take a few moments and provide you with some background

21   concerning Dowling and the events that have transpired over the

22   last year or so before the bankruptcy, as well as our

23   expectations for the case going forward.

24         Dowling College, Your Honor, is a not-for-profit

25   educational corporation and a registered 501(c)(3) corporation.

1    It was incorporated in 1968 by the Board of Regents of the

2    University of the state of New York.  Historically, Dowling has

3    operated as a private educational institution, with a focus

4    most recently of providing undergraduate and graduate programs

5    concentrated in liberal arts, business, education and aviation

6    programs.

7              Dowling operated what I would describe as a fairly

8    traditional not-for-profit college model with unionized full-

9    time and adjunct faculty, administrative employees and staff,

10    as well as facilities personnel.  The administration, which was

11    traditionally led by the college president, as the highest

12    ranked, reported ultimately to a volunteer Board of Directors,

13    Board of Trustees.

14              Dowling's last president, Dr. Albert Inserra,

15    resigned that office in August of this year, and Dowling's

16    board later appointed a chief restructuring officer, which

17    position is now held by Mr. Rosenfeld.

18              Your Honor, Dowling's Board of Trustees is presently

19    comprised of eight members who are identified by name in the

20    First-Day Declaration.

21              Dowling and its present and past administrations and

22    Board of Trustees have a very proud history of doing a lot of

23    good work in this local community for almost 50 years, all in

24    furtherance and fulfillment of Dowling's educational mission.

25    And I think I would be remiss if I didn't pause for a moment

1    and just note that Dowling's board views this bankruptcy

2    process now as nearing the end of a very sad chapter of this

3    once very proud institution.

4            Fortunately, to a certain extent, a good deal of the

5    grief and heartache, I think, that for many that were involved

6    in this has largely been processed during the past summer

7    following the decision to close down the academic operations.

8    Those events were pretty widely publicized both in the local

9    and national media following Dowling's loss of accreditation,

10   which was essentially the end of its ability to continue

11   operating as an educational provider.

12           Relatedly, a lot of the hard work, that has already

13   been done, in fact, in relation to winding down those academic

14   operations, including things like negotiating articulation

15   agreements, holding college admission fairs, and actually

16   transitioning students and their records to successor

17   institutions.  That work was hard.  It took a while and it was

18   done with the oversight of a lot of agencies, including the New

19   York State Department of Education, who was very involved and

20   indeed very helpful to that transition process.

21           So, what that means, I think, Your Honor, from a big

22   picture perspective for this proceeding before you is that this

23   is really a liquidation process associated with the substantial

24   real estate assets that remain for Dowling.  And the Debtor's

25   goal with regard to this case is really to set up a fair and

1   open sale process and maximize the value of the remaining

2   assets, and then ultimately distribute those proceeds in a

3   manner that's consistent with the priorities that the

4   Bankruptcy Code requires.

5          Your Honor, in terms of Dowling's major real estate

6   assets, they break down into three main groupings.  There is

7   the Oakdale campus, which is very close to here.  It's

8   approximately 23 acres.  There is what we call the residential

9   portfolio.  That comprises 32 parcels that surround the Oakdale

10  campus.  And then there is the Brookhaven campus, which is

11  approximately 103 acres.

12         Dowling carries book values on its balance sheet for

13  the real estate and the improvements associated with that of

14  roughly $50 million.  But Dowling also has certain appraisals -

15  -

16         THE COURT:  Fifty-nine dollars?

17         MR. SOUTHARD:  $50 million.

18         THE COURT:  Oh.

19         MR. SOUTHARD:  I'm sorry, Your Honor.  But Dowling

20  also has certain appraisals that would peg that value at

21  potentially higher.  And so, the draft schedules, as they're

22  currently prepared, show those values, and the petition

23  identified those values, at north of $100 million. As Your

24  Honor knows, ultimately, the market will determine what that

25  real estate is worth in relation to the contemplated sale

1    process that we hope to conduct in this Chapter 11 case.

2            Your Honor, Dowling also has very significant secured

3    debt obligations that essentially completely encumber from a

4    lien perspective the real estate assets I just spoke of.  In

5    terms of that collateral, those assets are divided up as

6    follows:

7            The series 2002 bonds, for which UMB Bank serves as

8    indenture trustee, and the principal amount outstanding of

9    which is approximately $11 million, they have a first priority

10   mortgage lien in relation to the dormitory facility that is

11   located at the Brookhaven campus.  So, approximately 2 acres of

12   improved real estate within the Brookhaven campus --

13           THE COURT:  So, of the 103 acres within Brookhaven,

14   2002 indenture bond covers two acres on which dormitories

15   exist?

16           MR. SOUTHARD:  That's correct, Your Honor.

17           THE COURT:  But that's within that whole 103 acres?

18           MR. SOUTHARD:  That is correct.

19           THE COURT:  Okay.

20           MR. SOUTHARD:  That is correct.

21           THE COURT:  They have no -- they have no lien, no

22   security interest in the other 101 acres?

23           MR. SOUTHARD:  They do not.  And somewhat unusual in

24   construct.  So, I start with that because then it's a little

25   easier to understand the rest of how this applies.

1          So then, the series 2006 bonds, which are -- for

2    which Wilmington Trust serves as indenture trustee, and for

3    which there is approximately $38 million outstanding, that is

4    the only insured bond series that Dowling has.  And the bond

5    insurer in relation to that series --

6          THE COURT:  All of them tax free bonds?

7          MR. SOUTHARD:  Three out of four series, Your Honor,

8    are tax-free bonds.  One --

9          THE COURT:  So the issuers were municipalities?

10          MR. SOUTHARD:  Correct.  The industrial development

11    agencies.  They are what you would call conduit bonds.  So, ACA

12    Financial Guarantee Corporation is the bond insurer associated

13    with the 2006 bonds series.  And again, that's the only insured

14    series that Dowling has.

15          The 2006 bonds had a first priority mortgage lien in

16    relation to both the Oakdale campus and the Brookhaven campus,

17    with the sole exception of the Brookhaven dorm I just spoke of,

18    for which they take a second position behind the 2002 bonds.

19    So, they have a first position mortgage across both campuses

20    with a second position behind the 2-acre facility in

21    Brookhaven.

22          Then, finally, the series 2015 bonds, which is again,

23    UMB serves as indenture trustee, with roughly $7 million

24    outstanding, has a first priority mortgage lien in relation to

25    the residential portfolio that we'll speak to Your Honor about

1   a little later.  Those are the 32 homes -- 32 parcels, I should

2   say --

3           THE COURT:  Which was that?  2012, or...

4           MR. SOUTHARD:  That was the 2015 --

5           THE COURT:  2015?

6           MR. SOUTHARD:  -- bonds.  And those, Your Honor, I'll

7   point out are the only taxable bond series.

8           THE COURT:  And that's on the residential portfolio?

9           MR. SOUTHARD:  Correct.  And then behind, sitting

10  behind the 2015 bond trustee on the residential portfolio, is a

11  junior mortgage that is shared, pari passu by the series 2002

12  bonds and a series 1996 bonds.  So, they take a second position

13  on the residences behind the 2015 bonds.

14          So, that is in essence the big picture capital stack

15  as it relates to the real estate assets.  And overall, Your

16  Honor, the approximate amount of asserted secured debt is about

17  $59 million.  And we have identified in the draft schedules

18  somewhere between $5 million and $6 million in asserted

19  unsecured debt, for a total debt load of somewhere just under

20  $63 million.

21          THE COURT:  ACA or AGA?

22          MR. SOUTHARD:  ACA.

23          THE COURT:  ACA is guarantor as a subrogation right.

24          MR. SOUTHARD:  That's so, ultimately, they are in

25  effect the credit exposure party on the 2006 bonds.

1          THE COURT:  Okay.

2          MR. SOUTHARD:  And they have, based on that position,

3     taken a meaningful role in the workout efforts that preceded

4     this bankruptcy and in relation the financing that we'll

5     talk about in a short while.

6          Your Honor, for just a point of reference, we

7     attempted somewhat of a visual depiction of how the real estate

8     assets breakdown and how the liens apply to them as part of the

9     DIP motion.  And there is, in essence, a schematic that's

10    attached as an exhibit to the DIP motion, which I think can be

11    somewhat helpful in trying to understand what I just walked

12    through.

13         THE COURT:  Which -- that's 8?

14         MR. SOUTHARD:  Yeah, the DIP --

15         THE COURT:  It's in my little binder.

16         MR. SOUTHARD:  The DIP motion is Docket entry Number

17    9, but it's 8 on our (indiscernible).

18         THE COURT:  Okay.

19         MR. SOUTHARD:  And that schematic is Exhibit E to the

20    DIP motion.

21         THE COURT:  I know it's here because I just saw it.

22         MR. SOUTHARD:  I have another copy here, Your Honor,

23    if it could be helpful.

24         THE COURT:  You mean if I'm too stupid to figure out

25    where it is?

1          MR. SOUTHARD:  We don't need to spend too much more

2     time with it right now, unless Your Honor would like to see it.

3          THE COURT:  Yeah, I got it.  Here we go.  So, you

4     have Oakdale, Brookhaven, risk properties and other

5     unrestricted assets.

6          MR. SOUTHARD:  Right.  And you'll, Your Honor, is

7     sort of a subpart of the Brookhaven campus, we identify the

8     Brookhaven dorm.  And this is really an effort to try to show

9     the way the liens --

10          THE COURT:  That's on the dorm and the land under the

11     dorm, or not?

12          MR. SOUTHARD:  That is on the dorm and the land, I

13     believe.  So, the idea here and the concept is really to just

14     show how the liens fall off of those different major buckets of

15     real estate.

16          And then the second slide, which we can talk about

17     when we get to the DIP presentation, shows how a very similar

18     structure exists under the DIP, except the agent, the DIP

19     agent, UMB Bank, would essentially take a first priority lien

20     with regard to all those assets at the very top.

21          THE COURT:  Okay.

22          MR. SOUTHARD:  So, relevant to mention, I think,

23     before we discuss the Debtor's current sales strategy, a little

24     over a year ago, Dowling did hire an investment banker and ran

25     a pretty comprehensive marketing and sale process to try to

1    find a partner or an affiliation party that would hopefully

2    address its financial concerns and those identified by the

3    accrediting body, Middle States Commission on Higher Education.

4    As we explain in that First Day Declaration and as was pretty

5    widely reported, unfortunately, that going concern sale process

6    was unsuccessful ultimately.  But I assure you, it was not for

7    a lack of effort.

8            Many of the parties that were involved in that

9    process are the same parties now involved in the early stages

10   of this Chapter 11 case and have been working together in some

11   capacity for quite some time now, including through a

12   forbearance and a turnaround effort during that forbearance

13   period, and then the later going concern effort.  And the same

14   group of core parties that are those that are now offering the

15   DIP financing in this case, those parties were also actively

16   involved in the winddown efforts that followed the cessation of

17   operations once the accreditation was lost.

18           So, overall, as we've mentioned a couple of times,

19   Your Honor, this is a liquidating Chapter 11 case.  We do not

20   expect there to be a reorganization.  And although we filed a

21   good number of motions on the first day during this case on

22   November 29th, a lot of those motions don't actually require

23   relief from Your Honor and we're not seeking relief with

24   respect to them this morning.

25           For instance, there are a number of professional

1    retentions, including that of my firm and special consel, that

2    we would plan to work with the U.S. Trustee's Office on in the

3    coming days, and then ultimately present it to Your Honor, in

4    accordance with the rules and common practice.

5            THE COURT:  Are there any professionals that you're

6    seeking retention of today?

7            MR. SOUTHARD:  There is one, Your Honor.  There is

8    one, and that is the broker associated with the residential

9    portfolio.

10           THE COURT:  That's Elliman?

11           MR. SOUTHARD:  That's Douglas Elliman.

12           THE COURT:  Elliman.

13           MR. SOUTHARD:  Yeah.  And the other retention that we

14   had originally asked Your Honor to schedule for this morning,

15   which was the broker associated with the Oakdale campus sale,

16   we have, in consideration of some of the concerns of the U.S.

17   Trustee, agreed to put that off until the 15th, which is the

18   next scheduled hearing --

19           THE COURT:  It's my understanding that the Trustee's

20   office hopes to have a committee formed prior to that date?

21           MR. YANG:  Well, that's our hope, Your Honor.  An

22   organization meeting has been scheduled for next Friday at

23   noon, December 9th, so it's our hope that we could have a

24   committee put together by then.

25           THE COURT:  Okay.

1          MR. SOUTHARD:  Also filed but not scheduled to be

2     heard this morning, just for purposes of the big picture, were

3     motions to reject certain leases and a motion to improve an

4     interim compensation arrangement for professionals, and a

5     motion to approve a plan support agreement, which essentially

6     imposes certain case deadlines or milestones and sets out the

7     broad outline of the liquidating plan.  That was a document and

8     a discussion that took place with the interested parties in

9     advance of this case and is really essentially designed to try

10    to move this case through a fairly prompt exit, one that is

11    currently contemplated by those milestones as the early part of

12    May next year for an exit under a liquidating plan.  And in

13    terms of sales strategy, up until that--

14          THE COURT:  Do you need both the plan support

15    agreement and this cash -- and the DIP order?

16          MR. SOUTHARD:  The plan support agreement is not on

17    for today, Your Honor.  That --

18          THE COURT:  But at any point?

19          MR. SOUTHARD:  I'm sorry, I don't understand the

20    question.

21          THE COURT:  Do you need approval of that plan support

22    agreement while at the same time you're seeking under the DIP

23    order, do they conflict in any way?

24          MR. SOUTHARD:  I don't believe that they do.  We do

25    need plan -- we do need to seek approval and ultimately obtain

1    approval of the plan support agreement, or that may be a

2    default, unless waived under the DIP, assuming --

3                THE COURT:  Default of what?

4                MR. SOUTHARD:  A default of our adequate protection

5    agreement, to seek that and obtain it.  So, one of the

6    requirements that exists under the DIP financing arrangement is

7    that the Debtor will seek approval of the plan support

8    agreement from this Court and that we'll obtain it --

9                THE COURT:  Yeah, I've been through this.

10               MR. SOUTHARD:  Okay.

11               THE COURT:  And most of you probably have on a number

12   of occasions.  If I have to look at the plan support agreement

13   and the DIP agreement and make sure -- if all that happens is

14   the plan support agreement sets dates, which become a default

15   under the DIP agreement, the DIP agreement, as written -- not

16   necessarily be approved -- as written, has a number of

17   draconian events that occur on default.

18               So, in other words, if this Court didn't enter an

19   order by a certain date, it would be a default under the plan

20   support agreement, which would be a default under the same DIP

21   and order I just did, which would then lead to Armageddon.

22   That's not happening.

23               MR. SOUTHARD:  Okay.

24               THE COURT:  So, I think instead of wasting your time,

25   the end of that story is going to be that both the plan support

1    agreement and the DIP agreement, to the extent they're

2    consistent, is fine.  To the extent they're inconsistent, the

3    DIP order is going to prevail.  And to the extent you

4    incorporate one into the other, I don't know why you don't do

5    it; just put it in the DIP order.

6                MR. SOUTHARD:  Yeah.

7                THE COURT:  So, the fewer documents I have to figure

8    out, and when I get a 35-page DIP order, which as all of you

9    know by now is one of the least favorite things you can do to

10   us is give us 35-page DIP orders, and then an equal number of a

11   plan support agreement, you're just giving me more time and

12   opportunity to have problems --

13               MR. SOUTHARD:  I understand.

14               THE COURT:  -- which you don't want me to do.  So,

15   since nothing is on today, I ask you all to -- some kind of

16   sanity in that.

17               MR. SOUTHARD:  I appreciate Your Honor's comments and

18   I will assure you that we will discuss it among the parties in

19   question and certainly do everything possible to honor Your

20   Honor's views on that.

21               THE COURT:  But just so everybody understands, this

22   is a liquidation.  There aren't 2000 employees where people are

23   threatening that if I don't do A, they're going to go onto the

24   streets, which normally don't force us to do anything anyway.

25   This is a liquidation that's largely for the benefit of the

1    secured creditors.  They want a soft landing.  They want orders

2    that ultimately make this property more valuable than it would

3    be if it were just sold without the ability to come into a

4    court and try to get it sold free and clear of whatever zoning

5    and other things it -- especially the 103-acre piece and

6    probably the 25-acre piece.

7              I'm prepared to work with you guys doing that.  I

8    think that's a proper role for the Court, but only because I

9    believe if we maximize the value, there's an opportunity to

10   make distributions to other than the secured creditors.

11   Secured creditors can take care of themselves.

12             We run these things so that other folks may get

13   something they otherwise wouldn't.  To the extent we play that

14   role, that's the reason you're here.  But if documents are

15   placed in front of me, or proposed orders are put in front of

16   me, which in my mind make that possibility slim or none, it can

17   be very difficult for me to agree with them.

18             So, while you're negotiating your points and what

19   consequences there are to defaults, don't throw in a wish list

20   of every secured creditor, because there are multiples here.

21   Each law firm has their own favorite line in this document.

22             Just give me a document, protect yourselves, and

23   let's make this case more complicated than it is.  It's two or

24   three parcels of property that you want to settle.

25             Now, there are adjunct issues here that will pop out

1    of the woodwork that'll be your issues, less the secured

2    creditor.  And if the guarantor has its own ideas of when it

3    wants to push things, that's their business.  So, let's try to

4    keep this as simple as possible.  It ain't that complicated.

5    It's a group of properties that you want to sell for the

6    benefit of whomever gets the money.  And I agree with that.  I

7    don't have any problem doing it.  So, that's my little speech.

8    Now you can go on.

9            MR. SOUTHARD:  Thank you, Your Honor.  I appreciate

10   your comments and I'm the parties have heard them and will --

11           THE COURT:  Oh, they've heard it --

12           MR. SOUTHARD:  -- discuss --

13           THE COURT:  -- before, most of the people have been

14   in here.

15           MR. SOUTHARD:  -- discuss them.  So, turning again

16   just quickly to the grand sales strategy, as Your Honor knows,

17   based on the documents that have been filed, we have sought,

18   and it has indeed been scheduled, bid procedures associated

19   with the sale of the Oakdale campus.  That is scheduled to be

20   heard on December 15th.  And in addition, we have modified the

21   prior request so that the broker associated with that sale's

22   retention will now be heard on the same date.

23           With regard to the Brookhaven campus, as Your Honor

24   mentioned, we do contemplate before going out to market and

25   trying to sale that campus that there needs to be some planning

1  done with the participation of the Town, among other interested

2  parties.  And so, at this time, we expect to proceed with

3  trying to work on that planning phase, but do not anticipate in

4  the very near term going out to market with regard to that

5  campus.

6          And then finally, Your Honor, the residential

7  portfolio is a group of parcels that the Debtor prepetition has

8  been engaged in an attempt to sell --

9          THE COURT:  Are those houses empty?

10          MR. SOUTHARD:  Some are and some aren't.

11          THE COURT:  Of the ones that are up today; you've got

12  six or seven up today.

13          MR. SOUTHARD:  Yeah.  Your Honor --

14          THE COURT:  They are all empty?

15          MR. SOUTHARD:  They are not, but they're -- if they

16  are occupied, the buyer is the party that's occupying it.  So,

17  in -- and we can turn to that at whatever point Your --

18          THE COURT:  Whatever order you want, just --

19          MR. SOUTHARD:  Okay.  Well, I thought, with Your

20  Honor's agreement, we could maybe move through the agenda as

21  proposed --

22          THE COURT:  That's fine.

23          MR. SOUTHARD:  -- and take some of the easier items,

24  perhaps, off the top.  Your Honor, the first motion that we

25  have this morning on the calendar is a motion essentially to

1    approve the form of notice of commencement of the case that we

2    would ask Garden City Group, as our proposed noticing agent, to

3    serve.

4              THE COURT:  Well, we're going to have to approve the

5    retention of Garden City Group then.

6              MR. SOUTHARD:  We will indeed, Your Honor.  And that

7    is on the calendar.

8              THE COURT:  Let's do that first, please.

9              MR. SOUTHARD:  Okay.  Very well.

10             THE COURT:  I don't want to come back --

11             MR. SOUTHARD:  So, Your Honor, the Docket Entry

12   Number 6, which is Number 3 on our agenda, is the application

13   by the Debtor to employ Garden City Group, LLC, as claims and

14   noticing agent for the Debtor, under 28 U.S.C. 156(c) and 11

15   U.S.C. 105.  The form of this order and application were

16   previously reviewed and commented on by the Clerk's Office, as

17   well as the U.S. Trustee.  The U.S. Trustee has indicated they

18   are signed off with no objection in relation to this motion,

19   and I --

20             THE COURT:  So, our Clerk's Office and Mr. Yang are

21   okay with this?

22             MR. SOUTHARD:  Correct, Your Honor.

23             THE COURT:  Anybody else have any comment on it, want

24   to be heard?  Court will grant the Motion.

25             MR. SOUTHARD:  Thank you, Your Honor.  Then turning

1    back to where we started a moment ago, with the Debtor's

2    motion, which is docketed at Number 4, the Motion to Approve

3    the Notice of Commencement Form, Your Honor, we simply seek

4    approval of the form of notice of commencement that's designed

5    to give the required notice to parties in interest of the case

6    and the meeting of creditors that's been set by the U.S.

7    Trustee's Office for January 6th, I believe.

8            And one thing to note here, a point that we did

9    discuss with the U.S. Trustee's Office, and that is that former

10   students, to the extent they are not identified as creditors,

11   are going to receive this notice by email.  And we had some

12   discussion with the U.S. Trustee's Office about whether that

13   was actually a more targeted notice for the former students, as

14   opposed to mail.  And I think ultimately, the view was under

15   these circumstances in this particular case, that it makes

16   sense.  But not a policy matter for their office.  So, with

17   that said, the U.S. Trustee had no objection to this motion.

18           THE COURT:  Yeah, I agree with them.  I think that is

19   the best way to do it.

20           MR. SOUTHARD:  Thank you.

21           THE COURT:  So, anybody want to be heard on this?

22   No.  We'll grant the motion.

23           MR. SOUTHARD:  Thank you, Your Honor.  The next item

24   on the calendar is the Debtor's Motion to Approve a Case

25   Management Procedures Protocol.  This is docketed at Number 5

1  on the docket.  And basically, the Debtor here seeks to enter

2  an order, an administrative order, that's designed to try to

3  organize and alleviate some of the noticing concerns or

4  questions that parties in interest may have, as well as trying

5  to alleviate some burdens on both the Court and the Debtor.

6         This is a fairly standard form of case management

7  order, but I admit that I'm unfamiliar with Your Honor's

8  preferences with regard to these types of orders, and so I know

9  certain judges prefer them and certain do not.  We have filed

10  it because we think it could be appropriate in this case.

11         THE COURT:  No, I find it helpful in larger cases, so

12  I'm okay with it, but --

13         MR. SOUTHARD:  Okay.  And again --

14         THE COURT:  -- you can move from the general service

15  list to the master service upon request?

16         MR. SOUTHARD:  I'm sorry, Your Honor?

17         THE COURT:  You can move as a creditor from the

18  general list to the master list -- master service upon request

19  of the party?

20         MR. SOUTHARD:  Correct.  Correct.  And again, this

21  motion was reviewed by the U.S. Trustee's Office and they have

22  no objection.

23         THE COURT:  And again, our Clerk's Office has seen

24  this as well?

25         MR. SOUTHARD:  Our Clerk's Office actually did not

1    review this one.  They did not want to see it.

2              THE COURT:  Mm hmm.

3              MR. SOUTHARD:  But it has been filed, obviously, on

4    the docket.

5              THE COURT:  All right.  I have no -- they'll handle

6    it.  Anybody want to be heard?  Court will grant that motion.

7              MR. SOUTHARD:  Thank you, Your Honor.  Your Honor,

8    the next motion this morning on the calendar is the Debtor's

9    motion, which is docketed at Number 7, and it seeks approval of

10   the retention of RSR Consulting, LLC.  RSR, as you can see from

11   the other pleadings in the case, have essentially made

12   available Mr. Rosenfeld to serve as the Debtor's CRO, who has

13   been serving in that capacity under a prepetition engagement

14   letter since or about October 17th.  And this motion seeks to

15   approve the continued retention of Mr. Rosenfeld and RSR in

16   this capacity under Section 363(b).

17             The U.S. Trustee's Office has reviewed this and has

18   agreed to sign off on this for purposes of interim approval,

19   and they would ask that final consideration be reserved until

20   the December 15th hearing, when we next expect to be before

21   Your Honor.

22             THE COURT:  They received a $100,000 retainer.  Has

23   that retainer been utilized?

24             MR. SOUTHARD:  They received a $100,000 retainer.

25   They have been paid, general speaking, weekly, and that

1    retainer has been static.  I --

2             THE COURT:  So that retainer exists in a bank account

3    someplace?

4             MR. SOUTHARD:  I would have to consult with them,

5    Your Honor, to answer the question about whether they've had to

6    debit any portion of that before the bankruptcy.

7             THE COURT:  He's right behind you.  Ask him.

8             MR. ROSENFELD:  Yeah.  Yes, we're holding it in a

9    separate bank account and the intention is to -- is a little --

10   we've applied a little portion of that retainer going into the

11   petition -- to the bankruptcy.  And the intent is to apply that

12   retainer against our post-petition fees on a weekly basis.

13            MR. SOUTHARD:  The expectation, Your Honor, is that

14   the professionals for the Debtor would burn off their retainers

15   first, which in relation to the services that would be rendered

16   here, subject to the entry of an interim compensation order,

17   and Your Honor's approval --

18            THE COURT:  For him to take money from the retainer,

19   do I have to sign off?

20            MR. SOUTHARD:  I'm sorry.

21            THE COURT:  For him to take money out of his retainer

22   that was given prepetition, is it your view he would have to

23   submit an order to me to sign off on, or can he just do it?

24            MR. SOUTHARD:  Assuming Your Honor were to approve

25   his engagement, he could just do it.

1    THE COURT:  But once that's burned off, he would have

2  to come to court.

3    MR. SOUTHARD:  Once that's burned off, the way this

4  is constructed is he would be funded through the DIP on a

5  weekly basis.  And there is a 20-day notice period associated

6  with his monthly statements that he's going to file.  And if

7  there should be an objection that is ultimately sustained by

8  Your Honor, he would be subject to disgorgement associated with

9  the portion that was objectionable.

10    MR. YANG:  Your Honor, that's the reason why we want

11  to have a very short leash with respect to this particular

12  retention.  We want to have the committee weigh in and see

13  whether the committee has any issue with this retention.

14    THE COURT:  Yeah, I'll retain him on an interim basis

15  between now and the 15th.  On the 15th, we'll have a hearing

16  and none of the $100,000 is to be touched until the 15th.

17    MR. SOUTHARD:  Understood, Your Honor.

18    THE COURT:  That wasn't a request.

19    MR. SOUTHARD:  Your Honor, just a point of

20  clarification associated with the suggested manner of

21  proceeding.  The DIP budget as currently set forth does not

22  provide in this period for any payment associated with the

23  services over the next two weeks.

24    THE COURT:  So the emergency budget that was given to

25  me to carry through the 15th doesn't cover anything for that?

 1          MR. SOUTHARD:  It does not.  It had instead assumed

 2  that they would be able to in essence burn off their retainer.

 3          THE COURT:  How much are you talking about?

 4          MR. SOUTHARD:  Your Honor, approximately $60,000 for

 5  the two-week period in question.

 6          THE COURT:  No.  Do you got another figure you want?

 7  I'm not giving them 60 percent of $100,000 that was given to

 8  them prepetition as a retainer until I've retained them.

 9  Otherwise, I would retain them today.

10          But I don't want to retain them today because I want

11  a committee -- and I agree with the U.S. Trustee -- I've been

12  down this road with -- and I have no problem with you, I don't

13  even know you -- with chief restructuring officers that are

14  brought on prepetition.  And I have no belief that they won't

15  be retained.  But the estate gave them $100,000 prepetition.  I

16  could have you disgorge all of that and then they'd have

17  nothing.

18          So, I'm willing, if you guys want to adjust your

19  emergency budget and cover them.  That's fine.  Or I'll give

20  them $25,000 of the $100,000.  But I'm not giving a -- you're

21  not disbursing $60,000.  It's not a debate.  I'm not --

22          MR. SOUTHARD:  Understood, Your Honor, understood.

23          THE COURT:  Okay?

24          MR. SOUTHARD:  Yeah.

25          THE COURT:  So, you all figure out what you want to

1    do.

2              MR. SOUTHARD:  We'll --

3              THE COURT:  I'm not having any conversation about it.

4              MR. SOUTHARD:  With Your Honor's permission, we'll

5    revisit this after the parties have conferred.

6              THE COURT:  Yeah, if you stick it in the emergency

7    budget, that's fine.  Or up to $25,000 out of that.  You can

8    combine the two.  I don't care how you get there.  But that's

9    it.

10              MR. SOUTHARD:  I get it.  Thank you, Your Honor.

11              THE COURT:  All right.

12              MR. SOUTHARD:  So, the next item that --

13              THE COURT:  So, you want me to retain them on an

14    interim basis between now and the 15th, through?

15              MR. SOUTHARD:  Yes, Your Honor.

16              THE COURT:  Will anybody oppose that?  All right.

17    We'll do that.

18              MR. SOUTHARD:  Thank you, Your Honor.  The next item

19    on the calendar is the Debtor's Motion to Approve Debtor in

20    Possession Financing and Cash Collateral Use.  That's docketed

21    at Number 9 on the docket.

22              Your Honor, the Debtor filed a motion seeking interim

23    and final relief in terms of the style of the motion in

24    discussions during the first days of this case.  The Debtor,

25    this morning, has adjusted the request associated with the

1    motion to cover just what we will call an emergency period,

2    which will cover us from the petition date, ideally, through

3    the week ended December 16th, which is the day after we are

4    next scheduled to be before Your Honor on December 15th for

5    what we would then seek to style as an interim hearing.

6         Your Honor, the DIP facility provides that security

7    would be granted to the DIP agent for the benefit of the DIP

8    lenders and would receive a priming first position lien

9    relative to all of the Debtor's assets, with one exception

10   being the interest of the premium finance company on the

11   unearned premium associated with the insurance policies.  So,

12   one of the motions that we'll get to in a few moments has to do

13   with the Debtor's request to continue financing certain of its

14   insurance policies.

15        THE COURT:  So, the secured lenders, who are all pari

16   passu in your -- we're not really dealing with this today, but

17   I just want to see if I understand it.  The DIP financing

18   contemplates that the four or five -- whatever the entities are

19   -- will loan up to a certain amount potentially on a pari passu

20   basis, and each of them a part of the DIP financing, with a

21   single agent representing them all, correct?

22        MR. SOUTHARD:  I will slightly modify that statement.

23   The DIP agent is serving as agent for all and the DIP agent

24   would take a first position priority lien for the ratable

25   benefit of each of those lenders.  What happens then is,

1    depending upon what proceeds in the future are created by the

2    Debtor's estate in the liquidation, that agent, under

3    essentially a waterfall proceeds construct that's in the DIP

4    note, will apply those proceeds to one of the several term

5    loans that exist.

6              THE COURT:  But in the budgets we've got, each DIP

7    lender has a line item for DIP interest and fees --

8              MR. SOUTHARD:  Yes.

9              THE COURT:  Which I assume is a pro rata amount due

10   them of the 100 percent?

11             MR. SOUTHARD:  That is correct, Your Honor.  That is

12   pro rata now.

13             THE COURT:  And so, the DIP -- the current secured

14   creditors will loan the Debtor money, for which they will take

15   a priority position over themselves, and so that to the

16   extent...  The more money they loan into this and the greater

17   the costs, the less the chance there'll be anything left for

18   anybody else.  May be the fact, but that's --

19             MR. SOUTHARD:  I think that --

20             THE COURT:  As long as everybody understands that's

21   the deal.

22             MR. SOUTHARD:  That is a fact.  That is.

23             THE COURT:  All right.  And then the DIP -- the agent

24   is getting a $200,000 non-refundable fee and a set-up fee of

25   $4,000 and $9,000 quarterly --

1       MR. SOUTHARD:  To --

2       THE COURT:  -- being paid by themselves.

3       MR. SOUTHARD:  The paid by themselves portion is

4  perfectly accurate, Your Honor.  The $200,000 upfront fee is

5  for the term loan lenders.  The agent itself has an agent fee,

6  which is part of the amounts that Your Honor --

7       THE COURT:  But the term loan lenders refused to

8  allow anybody else to be a DIP lender, under your own

9  documents.

10      MR. SOUTHARD:  They just -- they made very clear they

11 did not want to be prime, Your Honor.  That is correct.

12      THE COURT:  So --

13      MR. SOUTHARD:  Let me --

14      THE COURT:  I just --

15      MR. SOUTHARD:  I'm sorry.

16      THE COURT:  No, you guys live with this.  I'm just

17 trying to understand it.

18      MR. SOUTHARD:  Yeah.

19      THE COURT:  The current lenders take the position

20 nobody else can loan the entity money, will loan it money at --

21 I forget the interest rate here -- and fees, which are going to

22 get charged to the entity, which will come out of...  Because

23 if the properties are underwater, it's all a waste of time.

24 There's no point in taking -- priming yourself if you're not

25 even going to get paid back what you're currently owned.

1          So, the contemplation is that the properties are not

2     underwater, but they have greater value than the current DIP.

3     But each of these expenses that are layered on this as

4     contemplated reduces the ability to make a distribution to

5     other than the secured creditor, which is one of the things the

6     committee's going to have to look at.  That's why we're going

7     to do it.  It's not that we haven't seen them.  This is not

8     terribly uncommon.  But I would caution people not to...  You

9     can't just load up fees to ensure that nobody else will get any

10    money, because you're not going to do that.  So, just think

11    about the consequences.  We have super priorities that are on

12    everything, including, I believe...  Is it on the carveouts as

13    well, or not?

14          MR. SOUTHARD:  No, Your Honor.

15          THE COURT:  Carveouts?  Okay.  That's for sort of two

16    weeks from now.  But you also have in the DIP you're giving

17    them a lien on Section 5 claims.

18          MR. SOUTHARD:  Well, let me be clear on that point,

19    Your Honor.

20          THE COURT:  Let me say, the proposal doesn't do that.

21          MR. SOUTHARD:  Eventually, at the final...  The

22    request is that only on a final order would that be granted.

23    So, there's no -- under the version that we filed, the interim

24    version, that is not intended to grant a lien on avoidance

25    actions, nor does it intend to permit the super --

1          THE COURT:  I have never done that.

2          MR. SOUTHARD:  The super --

3          THE COURT:  I've never done that.  I've never given

4    people a lien -- a post-petition lien on Section 5 claims.  And

5    if you can convince me I should do it for the first time, good

6    luck.  I have a fundamental belief that that is -- and I'm

7    facing that in some other cases, and I just think it's wrong.

8    Now, that doesn't mean you can't convince me of it, but I've

9    dealt with this issue for years and I've never been convinced

10   of it, convinced that it's the right thing to do.  These are

11   claims that are created clearly post-petition.

12          There are other things in here that limit the ability

13   of anyone to challenge the position of a secured creditor,

14   which I also know is common, which...  So, any of the fees

15   being dispersed to the committee or others can't be used at all

16   to challenge.  And since you're not allowed to borrow from

17   anybody else, one would assume that the results of that is you

18   can't challenge a secured creditor, unless somebody does it pro

19   bono.  And I'm not sure how that would work.

20          So, in going through this, you know, we read it, and

21   I'm going to have a series of these questions on the 15th and

22   ultimately by the time we have a final.  You're free to raise

23   them.  I'm not telling you you can't do it.  And if a committee

24   is formed and that committee consents or agrees with you, I

25   still may not agree, but at least we'll have a discussion.

1          But I wanted to give you just a heads-up that while

2     the interim is on the 15th, which is two weeks from now, it's

3     not that we've read the DIP proposed order and it's basically

4     okay.  I've got a lot of issues with it, which aren't

5     appropriate for today, but I think you ought to just understand

6     that.  I believe DIP orders should be as simple as possible.  I

7     also believe in holidays, but that...

8          And reasonable constraints should be put on parties.

9     It's your money.  You have a right to choose how to use your

10    money, but since you've chosen this format, this Court, and as

11    a benefit to being in this Court, there's some fairness that's

12    required of everybody who's here, secured lenders included.

13    And they have a right to get their money.  They're exposed and

14    they -- I have no problem with them getting their money.  I

15    have no problem with loaning money at an interest rate.

16          I do have problems when you box people in so that

17    they cannot exercise rights that Congress gives them under the

18    statute.  And I don't want to get into that fight after I sign

19    an order, with people trying to explain to me what I actually

20    meant.  I know what I mean.  So, anyway...

21          MR. SOUTHARD:  I think those are helpful comments,

22    again, Your Honor, and I certainly understand what you're

23    saying loud and clear.  For purposes of the request this

24    morning, Your Honor, we had many discussions with the Office of

25    the U.S. Trustee about their own concerns on some of the points

Page 45

1    Your Honor has noted.  And we have generally an agreement to

2    adjust several of those --

3              THE COURT:  All right.

4              MR. SOUTHARD:  -- items and actually have a revised

5    form of proposal --

6              THE COURT:  Yeah, we have a good U.S.T.'s office out

7    here, so I have confidence that they can present the issues to

8    you.

9              MR. SOUTHARD:  So, we have a revised form of order

10   that I think is largely agreeable.  It's been in discussion

11   just this morning as well.  But it will involve an adjustment

12   of the proposed budget.  And I think this is an important point

13   for Your Honor to understand, that the proposed DIP lenders

14   have agreed that the $200,000 fee that would go up front off

15   the top, in essence, is being deferred until -- for

16   consideration until the interim hearing.  So, that has been

17   removed from the revised budget that the parties are discussing

18   this morning.

19              In addition, there's been an agreement to remove the

20   automatic stay waiver associated with post-default remedies for

21   this interim -- or emergency period, rather.  And we've made

22   clear on the challenge period that should this case convert

23   before expiration of the existing challenge, that a Chapter 7

24   Trustee would have --

25              THE COURT:  Can a not-for-profit be a 7?

1          MR. SOUTHARD:  Only if voluntarily so, Your Honor.

2     But nonetheless, the U.S. Trustee was concerned that our form

3     of challenge did not contemplate that potential adjustment to a

4     Chapter 7.  So, that's likewise been remedied.

5          And I believe that the U.S. Trustee's Office is --

6     with those changes and also our confirmation that the form of

7     order never intended to provide a lien or a touch of the super-

8     priority claim to avoidance actions during the interim period,

9     and now the emergency -- they were satisfied, I think, that it

10    meets the guidelines.

11         THE COURT:  But the order I'm going to sign on an

12    emergency basis, is that a two-page order or a 34-page order?

13         MR. SOUTHARD:  It's presently a 34-page order, Your

14    Honor, and it --

15         THE COURT:  Well, because the caveats are going to be

16    that whatever I sign is valid only until the 15th, I mean, it

17    wouldn't make any sense.  You have provisions in here, such as

18    they have a right to credit the full amount of their secured

19    debt.  But if nobody can challenge the amount of the secured

20    debt and I've given them a right to credit bid that, have I

21    already determined that that secured debt is reasonable, is

22    allowable?  I don't know why we need that two-week period.

23         All I would like to do is sign an order saying that

24    you can advance the funds.  You're protected any way you want

25    on those emergency funds.  I'll give you full protection, a

1    super-priority on those emergency funds.  But I'm loathe to put

2    in an order on an emergency basis many provisions which I think

3    we're going to have to talk about, or see -- that Mr. Yang has

4    raised, and we don't have a committee formed yet.  I would

5    almost be precluding the committee from raising objections at

6    the interim financing because I've already signed an order

7    saying it's appropriate.

8            So, if you want an order that's 34 pages but says at

9    the end, "and I can change my mind on any of these issues," I

10   think you should just try to do a shorter order, getting you

11   through this two-week period, which guarantees -- which

12   protects the advance -- this gap advance of monies, but doesn't

13   change anybody else's rights.  I don't want to grant rights or

14   take rights away, but I'm willing to protect any way you want

15   this gap money.  I think they have a right to that.  But I have

16   a problem trying to figure out, ultimately signing a 34-page

17   order for a two-week period, and then what I can do on the

18   15th.  I might as well sign it today.

19           So, if that -- and I've done this on other occasions.

20   You can protect your money, your current advance, any way you

21   want.  You can put it in the budget any way you want.  I'll

22   work with you on that.  But I want a fresh start on the 15th so

23   that we can see what should be in this and shouldn't be in

24   this, and hopefully, a committee will be formed by then who can

25   also make representations to the Court.

1          MR. HAMMEL:  Your Honor, may I be heard?

2          THE COURT:  Sure.

3          MR. HAMMEL:  Good morning, Your Honor.  Ian Hammel,

4    on behalf of UMD Bank, National Association.  First of all,

5    thank you, Your Honor, for hearing us this morning.  I echo a

6    lot of Mr. Southard's comments, thanking the Court for its time

7    and its attention to the files since the case was filed on

8    Tuesday evening.

9          With respect to this particular point, Your Honor, it

10   would be my strong preference, as indenture trustee for three

11   of the four series of bonds, if we could keep a form of order

12   which closely resembles the form that was uploaded.  I heard

13   everything Your Honor said.  I agree completely that as an

14   interim order, everything that's in there is subject to

15   reconsideration and further discussion and a subsequent

16   hearing.  However, a couple of points.  I believe that one of

17   the important functions of an interim DIP order is to make sure

18   that the world knows what direction the parties are intending

19   to head with respect to a final order.

20          THE COURT:  On an interim order, I agree.  But I'm

21   not signing an interim order today.  I'm signing an emergency

22   order.

23          MR. HAMMEL:  I understand, Your Honor.  I do think

24   that there is value to letting the world know where it is that

25   we ultimately would like to head.  The second thing, Your

1    Honor, is this was a -- as you can appreciate -- a very heavily

2    negotiated set of provisions, and I think that if we attempt to

3    do something shorter, it's going to take a lot of time, the

4    professionals will incur a lot the fees.  And I believe, Your

5    Honor, that we can address the concern that you raised by

6    simply making clear that this is up for discussion on the 15th,

7    and hopefully, a committee will be in place and other

8    stakeholders will have had an opportunity to look at the

9    documents.  And if there are issues, I'm happy to address them

10   at this time.

11           THE COURT:  What I'm suggesting is that if you want

12   to go that way, I'm going to put in the order something that

13   basically negates anything in that order for my hearing on the

14   15th.  I thought it would be more helpful to you to do a short

15   order, which I would agree with, and find binding.  If you want

16   to go in your direction, and I've had hundreds of people appear

17   on these kinds of cases and tell me if I don't do X, the world

18   ends and the secured creditor will do Y.  We have the same

19   answer all the time.  Do whatever you want to do.  I do what I

20   want to do; you do what you want to do.

21           MR. HAMMEL:  I understand --

22           THE COURT:  So --

23           MR. HAMMEL:  -- your point, Your Honor.

24           THE COURT:  But it's not -- just so you understand,

25   that's not a -- and I know you didn't intend it that way, but

1    going forward, that's not a useful approach with me.  I've been

2    doing this a long time.  You guys want to be here; it's a

3    benefit for you to be here.  The law says what it says.  I'm

4    going to interpret the law.  I've given you two options.  Do a

5    short order that protects the money.  Give me something else

6    and I'm going to put right on that order something that makes

7    it very clear it's of no full force and effect going forward

8    until the Court signs either an interim or a final.  Pick

9    either one.

10          MR. HAMMEL:  Thank you, Your Honor.

11          THE COURT:  But that's going to appear in that 34-

12    page order, because I won't have the time to really understand

13    it, we won't have the time -- there's nobody here today that

14    can raise the issues by suggesting to me that you all have

15    spent an enormous amount of time.  I know that's what you want.

16    That's what you wrote.  I don't figure you're getting something

17    you don't want.  What I'm telling you is I don't want it.

18          You've got things in there that shouldn't be in a DIP

19    order.  You've got provisions in there that you know many

20    judges take out.  And I don't have a problem.  You tried.  But

21    I've read a lot of these.  And so, either spend the time to get

22    to an order that the Court can sign and is willing to sign, or

23    fight me.  And you can't win it.  You can't win that fight.

24    That's one of the little benefits of -- I don't make any money

25    anymore, but I get these black robes.  I'm going to win that

1    fight, at least at this stage.

2            MR. HAMMEL:  Your Honor, I understand completely.

3            THE COURT:  I know you do.

4            MR. HAMMEL:  And I also want to be very clear, Your

5    Honor -- and I'm not representing ACA or Wilmington Trust in

6    this, so I want to very clear that Mr. Pfeiffer's here and Mr.

7    McCord are here to speak on behalf of --

8            THE COURT:  All of you guys are really good lawyers

9    from really good firms.  You've done this a hundred times.  I

10   would do the same thing; take a shot, see what happens.  We had

11   that conversation now.  Now you proceed.  After I've explained

12   this, you proceed on either course.  I'll sign either one.  My

13   suggestion is to take a shorter one that you really want and

14   it'd be binding, or getting a longer one, which I'll sign, but

15   trust me, it's not going to be of any use to anybody going

16   forward.

17           MR. HAMMEL:  Your Honor, if it's okay with you, maybe

18   we can at an appropriate time have a brief break and confer and

19   report back to Your Honor.

20           THE COURT:  Sure.

21           MR. HAMMEL:  Thank you.

22           THE COURT:  Whenever you want.  Let's finish the --

23           MR. WARMUTH:  Your Honor, if I may be heard?

24           THE COURT:  Yeah.  Who do you represent?

25           MR. WARMUTH:  I represent Kimberly Poppiti.  She's an

1    unsecured creditor, Your Honor.  And --

2            THE COURT:  I'm only dealing with First Day orders.

3            MR. WARMUTH:  Oh, I know that, Your Honor.  And

4    you're dealing with this, the cash collateral, the Debtor

5    financing orders.  And our concerns are echoed by the Court,

6    and we appreciate the Court's comments, that there are many

7    provisions in this very lengthy and long-negotiated order that

8    could be prejudicial for the unsecured creditors, who have had

9    no opportunity to review it.  There's no committee yet that can

10   review it.  And so, we appreciate your comments with respect to

11   -- with not approving those provisions at this time.

12           THE COURT:  Okay.

13           MR. WARMUTH:  Thank you.

14           THE COURT:  Thank you.  But Mr. Yang of the U.S.

15   Trustee's Office raised a lot of these before the Court ever

16   did.  So --

17           MR. WARMUTH:  Understood.

18           THE COURT:  -- you've got other people watching out

19   for this.

20           MR. SOUTHARD:  Thank you, Your Honor.

21           THE COURT:  All right.  So, I'm going to -- I'll take

22   your (indiscernible) and you can tell me what you want to do,

23   but I'm going to approve that emergency budget.  If you want to

24   increase it, that's okay with me too.  And just tell me what

25   form you want me to do it.  You can confer and get back to me,

1    or you can draft an order and submit it to Chambers, but I'm

2    going to grant you the relief of the interim -- and then we'll

3    have the interim on the 15th.  And that's the date we'll get a

4    more complete order.  And I am sensitive to the requirements

5    and the needs of your clients.  It's not that I haven't been

6    there.  But you just have to balance this.  Okay.

7            MR. SOUTHARD:  Thank you, Your Honor.  So, moving

8    along then with regard to the next motion on this morning's

9    calendar, that has to do with the Debtor's motion related to

10   cash management, and that's docketed at Number 10 on the

11   docket.

12           Your Honor, here, for the avoidance of doubt, this is

13   not a motion where we would traditionally ask Your Honor to

14   continue using for operational purposes the prepetition bank

15   accounts.  Instead, we want to be very clear that we are

16   opening new DIP accounts with Signature Bank, and those will be

17   the only accounts out of which disbursements are made during

18   the bankruptcy case.  So, I wanted to get that off --

19           THE COURT:  Are you moving the restricted accounts to

20   Signature and will remain restricted, or are you leaving the

21   restricted accounts where they are?

22           MR. SOUTHARD:  We would propose to leave the

23   restricted accounts exactly where they are for a period of

24   time.  And part of the reason for --

25           THE COURT:  I agree with that.  I do.

1          MR. SOUTHARD:  -- for that is really just to finish

2     the diligence associated with the restrictions, report those

3     findings to the Court and to the creditors who have an interest

4     in it, and the U.S. Trustee's Office, as well as the New York

5     State Attorney General, who, as Your Honor knows, their

6     Charities Bureau takes as a very important issue protection of

7     charitable funds.  And so, certain of these funds we believe to

8     be endowed funds associated with the Debtors endowment, and we

9     want to make sure we don't run afoul of the applicable rule

10    there.

11          THE COURT:  Now, there's a reference in here that

12    some of these -- some of this doesn't comply with the U.S.T.

13    guidelines.  I couldn't figure out --

14          MR. SOUTHARD:  Yes, Your Honor --

15          THE COURT:  -- what, if any.

16          MR. SOUTHARD:  The short answer on that is that the

17    largest of the funds that are the restricted funds or endowed

18    funds reside at an account in Lazard.  And Lazard is not an

19    approved depository, so what we have discussed with the U.S.

20    Trustee's Office was adjourning or extending our time to comply

21    with Section 345(b), as opposed to any waiver.  And with that

22    adjustment to the form of order, the US Trustee's Office has

23    indicated that they are in agreement with --

24          THE COURT:  Yeah, I'm okay with this.  So, it's going

25    to go to Signature Bank --

1              MR. SOUTHARD:  But --

2              THE COURT:  -- and to the extent the dollars exceed

3     the statutory amount, signature (indiscernible) the difference

4     if you ever got there?

5              MR. SOUTHARD:  That's correct, Your Honor.

6              THE COURT:  It's okay with you, Mr. Yang?

7              MR. YANG:  Yes, Sir.

8              THE COURT:  All right.  Anybody want to be heard?

9     Court will grant that motion.

10             MR. SOUTHARD:  Thank you very much, Your Honor.  Your

11    Honor, the next item on the calendar this morning has to do

12    with the Debtor's employee motion, and that's docketed at

13    Number 11.

14             Your Honor, this, again, is a fairly simple motion,

15    which actually does not seek a whole lot of relief.  And the

16    reason being is that the nine employees who are -- continue to

17    be employed by the Debtor, were actually funded their payroll

18    prior to the petition date and were paid through yesterday,

19    which is a post-petition date.

20             So, there is no request for payments of prepetition

21    wages in favor of those employees.  Instead, what we really

22    want to do is continue to honor the withholding type of

23    arrangements that exist with certain of these employees and

24    make payments over, for instance, in relation to union

25    obligations, the small union obligations that remain with three

1    of the nine employees.  Three of the facility's employees are

2    unionized.  They're the only three that remain with the Debtor,

3    and those three, there are contributions due associated with

4    their compensation.  So, we seek authority to continue to pay

5    those amounts.

6              At present -- and just to be clear, there are no

7    health benefits or other benefits that are being offered to

8    these continuing employees, and really, what we are seeking to

9    do is just honor the ordinary course construct of how the

10   payroll has continued during this --

11             THE COURT:  Were these folks getting health benefits?

12             MR. SOUTHARD:  At one time they were, Your Honor.

13             THE COURT:  And they're aware they don't get them

14   now?

15             MR. SOUTHARD:  They are.

16             THE COURT:  Oh.

17             MR. SOUTHARD:  Very much so.

18             THE COURT:  All right.  Mr. Yang, are you okay with

19   this?

20             MR. YANG:  Yes, Your Honor.

21             THE COURT:  Anybody wish to be heard?  Oh, come on

22   up.

23             MS. ZACHARSKY:  Should I enter?

24             THE COURT:  Yeah, come on up.

25             MS. ZACHARSKY:  Your Honor --

1          THE COURT:  Just tell me who you are.

2          MS. ZACHARSKY:  Your Honor, my name is Laurie

3     Zacharsky and I represent myself as a creditor.  And I'm

4     currently without representation in the matter of bankruptcy.

5     But I have representation in another related matter that was

6     filed with the Court yesterday.  I'm looking for representation

7     for the surprisingly rapid bankruptcy filing and ask for

8     additional time to find representation if possible.  But I ask

9     to join the creditors' committee in any case. I represent the

10    full-time faculty union.  I'm president of the Dowling College

11    Chapter --

12         THE COURT:  Okay.  Let me try to help you out.  Mr.

13    Yang organizes or helps organize in the United States Trustee's

14    Office, which is an adjunct to the Department of Justice.  A

15    creditors' committee.  He can explain to you what that means

16    and how you may appear at a meeting of that.  The rest of

17    what's going on today is what we call First Day Orders, which

18    are things to keep this Debtor alive until we can move further

19    on down the chain.  None of anybody's rights are really being -

20    - should be impaired or affected by anything I do today.

21         Going forward, that won't be true.  Every decision a

22    court makes helps somebody and isn't as popular with somebody

23    else.  You will be -- if you file what's called a Notice of

24    Appearance, you can get copies -- you talk to these folks,

25    they'll help you out.  If it's appropriate, you can get copies

1    of all the pleadings, you can read what's going on.

2         As far as getting representation, we don't do that.

3    I can't help you there.  I do know that you are the lead, or at

4    least the main plaintiff in an action that was filed last

5    night, but I did -- (indiscernible) better be right.  Reading

6    it, not disparaging it; just shows my life.  And you're

7    represented by a firm in the city in that case, and that's not

8    on today.  We're not going to have any conversation about that.

9    Your individual rights seem to be part and parcel of that

10   litigation.  So, I would suggest you talk to those folks.  But

11   there's nothing that can happen today that should either help

12   or hurt where you currently stand.

13        MS. ZACHARSKY:  Thank you, Your Honor.

14        THE COURT:  Okay.  All right, if nobody else, the

15   Court will grant this motion.

16        MR. SOUTHARD:  Thank you, Your Honor.  Your Honor,

17   the next motion on the calendar this morning is Docket Entry

18   Number 12.  And this motion seeks to approve the continuation,

19   in essence, of the Debtor's different insurance programs,

20   including certain of those policies which it finances through a

21   premium financing arrangement.

22        THE COURT:  Is there a D&O policy in this?

23        MR. SOUTHARD:  There is, Your Honor, a D&O policy.

24   It is not part of the financed policies.  It was prepaid prior

25   to the petition date.  There is, and we'll certainly have

1    available for any committee's review those policies, in big

2    picture terms, there is a policy that's prepaid for a year,

3    starting October 1st.

4            THE COURT:  And covered in these policies are the

5    current Chief Restructuring Officer and Chief Operating

6    Officer?

7            MR. SOUTHARD:  The current policy, yes, Your Honor.

8            THE COURT:  All right.  Okay.  So, you want me to

9    approve the -- it's really a financing of these and the

10   continuation of them?

11           MR. SOUTHARD:  That's correct, Your Honor.  It has to

12   do with -- we pay on a monthly basis --

13           THE COURT:  I know.

14           MR. SOUTHARD:  -- amounts due under that financing

15   arrangement.

16           THE COURT:  But the land, the buildings, the

17   everything is fully covered?

18           MR. SOUTHARD:  It is, Your Honor.

19           THE COURT:  I assume you guys know that?  It's your

20   collateral.  Anybody want to be heard on this?  Court will

21   grant the motion.

22           MR. SOUTHARD:  Thank you, Your Honor.  Your Honor,

23   the next item on the calendar this morning for consideration is

24   the Debtors motion for entry and final orders approving sale

25   procedures for the sale of the Debtors residential portfolio,

1    and approving those sales, ultimately, free and clear of liens,

2    claims and encumbrances.

3            Your Honor, with regard to this motion this morning,

4    the relief that is sought is fairly discrete, and that relief

5    really relates to six of the 32 parcels in the residential

6    portfolio overall.  And if I might give Your Honor a little bit

7    of background associated with the residential portfolio.

8            Your Honor, seven of the parcels, the 32, were

9    previously used in the Debtor's operations in some respect.

10    One of the parcels is actually vacant land, and that leaves 24

11    that were previously utilized either as residential properties,

12    either rented to third parties or occupied by faculty or

13    administration in certain instances.  Fourteen of those

14    residences, 14 of the 24, are currently occupied and the

15    remaining 10 are vacant.

16            So, the residential portfolio, as we discussed early

17    this morning, is subject to a first lien and security interest

18    of the series 2015 bond trustee, and a second mortgage in favor

19    of the series 1996 and series 2002 bond trustees.  And in

20    total, there is a good deal of debt that is associated with

21    those bonds series, to the point where ultimately the Debtor

22    does not feel that there is going to be property interest or

23    equity interest over and above that secured debt.

24            Your Honor, the Debtor, in discussion with the

25    relevant secured creditors prior to the petition date beginning

1    back in or about March of this year, selected a well-known

2    broker, Douglas Elliman, to begin marketing in a comprehensive

3    way to sell the residential portfolio.  And indeed,

4    historically the Debtor had sold certain of the residential

5    portfolio parcels, which at one point numbered greater than 32,

6    in the course of its efforts to try to turn around and in

7    certain instances create some cash flow during those

8    challenging liquidity periods.

9            As we find ourself today of having commenced the

10    petition, there were six out of eight -- I should say there

11    were eight out of the 32 in total, that were actually in

12    contract as of the petition date.  So, we are in a contract of

13    sale for eight parcels.  Six of those eight, the Debtor has

14    concerns about the potential for losing the sales if we are

15    unable to close them promptly.

16            And this morning's relief that we're requesting from

17    Your Honor is really focused on that, the request that for

18    various reasons that include the fact that each of those

19    contracts is beyond its expiration date in terms of the closing

20    date, that we be permitted to go forward and close those

21    transactions.

22            THE COURT:  The folks who are in these six, either

23    they're vacant or they are being bought by the occupant?

24            MR. SOUTHARD:  Correct.

25            THE COURT:  They're just regular folks who live out

1    (indiscernible) want these houses?  There's no relationship

2    between any of them and the Debtor?

3             MR. SOUTHARD:  What -- in terms of the houses -- the

4    occupants of the houses, I believe that's true.  But one of the

5    purchasers, who is actually occupying another of the houses

6    than is the subject of the purchase, is the former athletic

7    director of Dowling.  That's the related party.  But that,

8    again, is a market-based sale and --

9             THE COURT:  That was an arms-length transaction?

10            MR. SOUTHARD:  Absolutely.  Absolutely.  I mean,

11   these -- Your Honor, these -- in terms of just some numbers,

12   you know, the average between the six contract prices as

13   compared to the asking prices --

14            THE COURT:  No, I've been through it.  I'd like to

15   see these folks get the houses, unless we have a problem.

16            MR. YANG:  Your Honor, yes, we did speak at great

17   length with respect to the issue.  Unfortunately, pursuant to

18   Rule 6003, the estate has to wait for 21 days to have these

19   sales approved.  And especially at this point --

20            THE COURT:  Has to wait 21 days to close or has to

21   wait 21 days for me to sign the order approving the sale?

22            MR. YANG:  Your Honor, the way we read it, it's 21

23   days to approve.

24            THE COURT:  You're asking for a waiver of that,

25   right?

1          MR. YANG:  Right.

2          MR. SOUTHARD:  We are.

3          MR. YANG:  Your Honor, the Code made it very -- the

4     Rule made it very clear, unless the Debtor could demonstrate

5     irreparable harm and the way that we look at --

6          THE COURT:  Irreparable harm to whom?

7          MR. YANG:  Just to the estate.  And we look at the

8     motion that was made on Page 14, Paragraph 43 in particular, I

9     believe that the Debtor was concerned with respect to the

10    (indiscernible) of being locked in for these purchase -- or

11    potential purchases.  But those are already being expired.  So,

12    either their motion be approved today or approved when we come

13    back the 15th of December, there's no -- really no difference,

14    no urgency and no irreparable harm, to the creditors of the

15    estate.  And that's why we request Your Honor to adjourn --

16         THE COURT:  All of these funds are going to go to the

17    secured creditor anyway, right?

18         MR. YANG:  Correct.

19         THE COURT:  Which is --

20         MR. SOUTHARD:  That's correct, subject to the

21    challenge, Your Honor, that exists under any ultimate financing

22    order that Your Honor might enter.

23         THE COURT:  I mean, I understand it's my -- and my

24    inclination was to not -- was to delay it, but in a practical

25    world, interest rates are going up.

1              MR. SOUTHARD:  They are.

2              THE COURT:  And these folks want a house.  They are

3    of capable of closing?

4              MR. SOUTHARD:  That's our belief, Your Honor, yes.  I

5    mean, each save...  Two of the six were cash deals.  So, they

6    are not dependent upon mortgages.

7              THE COURT:  Who's got the lien -- who's got the lien

8    on this?  You got -- you?

9              MR. HAMMEL:  Yes, Your Honor.  The 2015 bonds --

10             THE COURT:  If I were to ask you if you don't get the

11   funds as quickly as anticipated, does that affect your

12   willingness to make an emergency landing -- emergency financing

13   available to the Debtor?  Does it affect it?

14             MR. HAMMEL:  My preference is to get the money as

15   soon as possible.  The direct answer to your question is no,

16   Your Honor.  The most important --

17             THE COURT:  Yeah, it would've helped to say yes.

18   That one, you would've helped to say yes.  You've got to show

19   me how it affects the Debtor, since you're going to get the

20   financing anyway.  I would like to figure out a way to get

21   these people comfort that they're going to get this.  They're

22   not going to close -- when are they going to close, even if you

23   get the approval?

24             MR. SOUTHARD:  So, realistically, Your Honor, you

25   know, we've had this sort of practical discussion about timing,

1    if we should approval today.  We think, you know, seven to 10

2    days is the lineup period.

3              THE COURT:  Tell you what.  If you don't close until

4    the 15th, which is the next hearing, they can't get their

5    financing unless I sign an order because they won't get a title

6    opinion.

7              MR. SOUTHARD:  Correct, Your Honor.

8              THE COURT:  And this doesn't contemplate a plan

9    because apparently, you're paying the transfer taxes, which is

10    peanuts in this.

11              MR. YANG:  Your Honor, that's another discussion that

12    we had.  I notice that the Debtor has requested that the

13    transfer taxes be waived on some of these properties.

14              THE COURT:  Not --

15              MR. YANG:  However --

16              THE COURT:  What I read is you're paying.

17              MR. SOUTHARD:  Yeah, you're --

18              MR. YANG:  Well, in these -- maybe these particular -

19    - with these particular properties, because I know there's --

20    at some point the Debtor requested that should be waived.

21              THE COURT:  Well, but I only care about these six

22    right now, and the transfer tax out here is nothing, right?

23    It's not like the City.  Is it one percent?

24              MR. SOUTHARD:  It's certainly less than the City.

25              THE COURT:  I mean, on a $300,000 house.

1          MR. SOUTHARD:  Your Honor, the transfer tax request

2     will not get in the way of approval on this if that needs to be

3     stricken.

4          THE COURT:  What I'd like you to do is go back to

5     these buyers and see either what their banks or they need, and

6     they couldn't wait until the 15th.

7          Yes.

8          MS. CARR:  I'm one of the buyers.

9          THE COURT:  Come on up.  Take your coat off and stay

10    a minute.

11         MS. CARR:  Hi, Your Honor.  My name is Jane Carr and

12    I'm one of the purchasers.  I'm a cash purchaser.  And we are

13    buying the property as an investment property.

14         THE COURT:  So, there's no reason you can't wait

15    until the 15th?

16         MS. CARR:  We're actually ready to bail because we

17    went into contract in October and I know another one of the

18    purchasers through my realtor is also an investor and they're

19    also to ready to bail on the property because we've been

20    waiting for two months now to close.  And --

21         THE COURT:  Well, if I tell you I'm going to approve

22    it on the 15th, you're going to bail out?

23         MS. CARR:  Um --

24         THE COURT:  Because if you say yes, you're not going

25    to get the house.

1              MS. CARR:  We're not sure.  You know, we've been

2    waiting for two months to close --

3              THE COURT:  Your economic decision.

4              MS. CARR:  Yeah, I know.  So, I'm not sure where we

5    stand on this, but we've been waiting for two months and we had

6    until November 4th was our closing date, on or about November

7    4th.

8              THE COURT:  What I'm going to -- thank you.

9              MS. CARR:  So --

10             THE COURT:  I appreciate that.  Okay.

11             MS. CARR:  Yeah, we're not sure where we stand.

12             THE COURT:  Let's see if we can accommodate you.

13             MS. CARR:  Okay, thank you.

14             THE COURT:  Mr. Yang, you don't have any problem if I

15   do this on the 15th, right?

16             MR. YANG:  No.  Yeah (indiscernible) it was 21 days

17   but we kind of compromised it --

18             THE COURT:  Okay.  Here's the deal.  Other than if

19   you've got an emergency, a particular house that an emergency,

20   either a financing's going to expire or -- not just somebody

21   making an investment decision -- convey that to Mr. Yang and if

22   you put an order in front of me, I'll sign it.  Other than

23   that, let's just go to the 15th and make it easy.  I see no

24   reason I won't approve it on the 15th, but instead of getting

25   cross-straws with the Rule and trying to have a finding about

1    this, which I haven't been able to get anybody to give me a

2    reason for, if you can -- if you have an emergency close, then

3    you can present that order to the Court for that particular

4    home after you confirm with, obviously, the secured creditor

5    and the U.S.T., and as long as -- and I -- I'll sign it.  I'll

6    figure out a way to sign it.  But other than that, we'll do it

7    on the 15th.  And on the 15th, unless something odd happens,

8    I'll approve these sales.

9              MR. SOUTHARD:  I appreciate Your Honor's

10   consideration in the matter.  The good news is that our notice

11   works, clearly, by virtue of our last speaker.  So, that's

12   good.

13             I will confer with the parties and I appreciate Your

14   Honor's consideration.

15             THE COURT:  Yeah, there I'm concerned about the

16   people who are buying, and I don't want somebody to lose a

17   house, especially this time of year, because they lose their

18   financing.

19             MR. HAMMEL:  Your Honor, just a brief housekeeping

20   matter, if I can be heard?

21             THE COURT:  No pun intended?

22             MR. HAMMEL:  Ian Hammel, Your Honor.  In terms of --

23   I appreciate the compromise that Your Honor just did and we're

24   perfectly willing to accept that.  I just want to make sure

25   that if we find ourselves in one of these positions, I just

1  wanted to be clear in terms of what Your Honor's expectations

2  are.  One, an indication that we've conferred with Mr. Yang and

3  his office, and I guess you would approve the certification

4  with whatever documents we put in front of Your Honor.  And

5  second, (indiscernible) probably something along the lines of a

6  brief explanation in the body of the document as to why they

7  felt there were exigent circumstances?

8          THE COURT:  Just if Mr. Yang and you all agree, I

9  don't need to know -- this isn't -- don't write a whole tome

10  here.  I accept your word for it.

11         MR. HAMMEL:  Exactly why I asked you the question,

12  Your Honor.

13         THE COURT:  Yeah, no, I don't want to read any more

14  than I have to.

15         MR. HAMMEL:  Thank you very much, Your Honor.

16         THE COURT:  And I accept that you guys -- this is a

17  house.  I would like to get it done.  If there's an emergency,

18  submit the order and I'll sign it.  It's just a sale -- it's an

19  order approving a sale of a particular house.  You're not

20  trying to save the transfer taxes on it.  And so, for the Court

21  not to approve it -- as long as you're all consenting.  And

22  that's for the emergency circumstance.  Other than that, we'll

23  handle the rest of them on the 15th.

24         MR. HAMMEL:  One other point, Your Honor, and this

25  goes over, I think, into the other application that was on this

1    morning (indiscernible) Douglas Elliman.  The buyers of these

2    properties tend to need some handholding, and the primary

3    reason why we had asked Mr. Southard to bring forward their

4    application for today was --

5              THE COURT:  Does Mr. -- Mr. Yang, do you have an

6    opposition to that?

7              MR. YANG:  Your Honor, just Rule 6003(b) stating that

8    has to -- I'm sorry, (a)-- pursuant to Rule 2014 has to wait 21

9    days as well, so, it's not something that I can sign off on.

10             THE COURT:  But we could do it nunc pro tunc to the

11   petition.

12             MR. YANG:  For signing on the 15th, yeah.  I don't

13   have --

14             THE COURT:  Tell them they're protected.

15             MR. YANG:  Yeah, I don't have any problem with that.

16             THE COURT:  Tell them to keep doing what they're

17   doing.

18             MR. HAMMEL:  Thank you, Your Honor.

19             MR. SOUTHARD:  Your Honor, with that, I believe we

20   have concluded the calendar this morning, because that resolves

21   Docket Entry Number 16 --

22             THE COURT:  All right.  A&G and (indiscernible) are

23   going to go on on the 15th --

24             MR. SOUTHARD:  Correct, Your Honor.

25             THE COURT:  Elliman we just dealt with a little.  We

1    dealt with the interim order.  You were going to confirm

2    (indiscernible) and let Chambers know what you want to do on

3    the form of order for the emergency financing.

4              MR. SOUTHARD:  Yes, Your Honor.

5              THE COURT:  I dealt with your chief restructuring

6    order officer.

7              MR. SOUTHARD:  Yes, Your Honor.

8              THE COURT:  It's nothing personal.  I mean, I'm not

9    trying to hurt you on that.  I'm just...

10             MR. HAMMEL:  Your Honor, just one more clarification?

11   If we (indiscernible) settlement for purposes of

12   (indiscernible) just be clear that that would be

13   (indiscernible).

14             THE COURT:  It's going to be on the 15th and I'll

15   approve it on the 15th.

16             MR. HAMMEL:  Thank you, Your Honor.

17             THE COURT:  And you can tell them if they wish it to

18   be nunc pro tunc to a different date, I'll do it.

19             MR. HAMMEL:  Thank you, Your Honor.

20             THE COURT:  So, I don't want that -- they should

21   understand they're protected.

22             MR. YANG:  Your Honor, I think the caveat was

23   provided to the committee and the secured creditors --

24             THE COURT:  Excuse me?  I didn't hear you.

25             MR. YANG:  -- once appointed.  If a committee is

1    appointed on the 15 -- by the 15, they have an objection,

2    that's something that I guess the Court (indiscernible).

3            THE COURT:  All right.  With the ones I said I'm

4    going to approve on the 15th, unless the committee has really

5    significant problems with Douglas Elliman and the Chief

6    Restructuring Officer, I told them I'm going to do it on the

7    15th, so...  Perfectly capable of changing my mind, but not

8    unless somebody can really explain why.  And I don't want --

9    and that should be -- if there is an opposition of that, those

10   papers should be submitted before the hearing.

11           All right.  Everybody else happy or relatively happy

12   or anything else I can do for anybody?  Okay.  Thank you, all.

13           ALL:  Thank you, Your Honor.

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                        Page      Line

5    Motion for Approval of Retention

6    of Garden City Group Granted           31        23

7    Motion to Approve Form of Notice Granted  32      23

8    Motion to Approve a Case Management

9    Procedures Protocol Granted            34        7

10   Motion for Approval of Retention

11   of RSR Consulting on Interim Basis

12   Granted                                38        17

13   Motion to Approve DIP Financing Granted  52       23

14   Motion to Authorize Closing Granted    55        9

15   Motion to Pay Prepetition Payroll Granted  58     15

16   Motion regarding Insurance Programs Granted  59   19

17   Motion to Sell Property                62        18

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    **Sonya**                    Digitally signed by Sonya Ledanski
                                   Hyde
6    **Ledanski Hyde**            DN: cn=Sonya Ledanski Hyde,
                                   o=Veritext, ou,
                                   email=digital@veritext.com, c=US
7                                  Date: 2016.12.08 16:49:05 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 8, 2016

| & | | | |
|---|---|---|---|
| **&**  6:15 7:1,8,15 9:1 10:8 11:5 | 43:21 44:2 46:16 47:18,22 49:6,14 53:3 63:13 65:4 66:6,15,22 67:15 67:23,24 68:7,7 69:23 70:12,23 71:14,15 72:4,7 | **25,000**  37:20 38:7 **28**  2:23 31:14 **290**  1:14 **29th**  12:1 23:22 | **50**  15:23 17:14,17 **501**  14:25 **52**  73:13 **55**  73:14 **560**  8:5 |

**0**

**02111**  6:4

**1**

**10**  3:12 12:24 14:7 53:10 60:15 65:1
**100**  17:23 40:10
**100,000**  34:22,24 36:16 37:7,15,20
**10013**  5:13
**10022**  7:18
**10036-7203**  6:18 7:4
**1007-4**  12:3
**101**  5:5 18:22
**103**  17:11 18:13 18:17 28:5
**105**  2:9,24 3:4,23 31:15
**10:10**  1:18
**11**  2:3,9,11,12,24 3:18 4:7 12:7 18:1 18:9 23:10,19 31:14 55:13
**11021**  5:21
**111**  5:20
**11501**  74:23
**11530-9194**  9:7
**11554**  6:11
**11722**  1:15 8:6
**11738**  7:11
**11758**  8:13
**12**  3:22 58:18
**14**  4:5 60:14 63:8
**15**  4:11 72:1,1 73:15
**156**  2:24 31:14
**15th**  24:17 29:20 34:20 36:15,15,16 36:25 38:14 39:4

**16**  4:17 70:21
**16th**  39:3
**17**  73:12
**17th**  6:17 7:3 34:14
**18**  73:17
**19**  73:16
**1968**  15:1
**1996**  20:12 60:19
**1st**  59:3

**2**

**2**  1:17 7:10 18:11 19:20
**20**  36:5
**200**  6:17 7:3
**200,000**  40:24 41:4 45:14
**2000**  27:22
**2002**  18:7,14 19:18 20:11 60:19
**2006**  19:1,13,15 20:25
**2012**  20:3
**2014**  70:8
**2015**  19:22 20:4,5 20:10,13 60:18 64:9
**2016**  1:17 12:1 74:25
**21**  62:18,20,21,22 67:16 70:8
**23**  12:2 17:8 73:6 73:7,13
**24**  60:10,14
**25**  28:6

**3**

**3**  14:25 31:12
**30**  2:1
**300**  9:6 74:22
**300,000**  65:25
**31**  2:6 73:6
**32**  2:16 17:9 20:1 20:1 60:5,8 61:5 61:11 73:7
**33**  2:21
**330**  5:12 74:21
**34**  3:3 46:12,13 47:8,16 50:11 73:9
**345**  3:15 54:21
**35**  3:12 27:8,10
**36**  3:18
**361**  2:10,12
**362**  2:10,13
**363**  2:10,11,13 3:4 3:23 4:7 34:16
**364**  2:7,10,13
**37**  3:22
**38**  4:5 19:3 73:12

**4**

**4**  2:1 5:12 32:2
**4,000**  40:25
**40**  4:11
**4001**  2:8
**41**  4:17
**41st**  6:17 7:3
**43**  63:8
**49**  8:12
**4th**  67:6,7

**5**

**5**  2:16 20:18 32:25 42:17 43:4

**58**  73:15
**59**  20:17 73:16
**5th**  5:5

**6**

**6**  2:21 20:18 31:12
**60**  37:7
**60,000**  37:4,21
**6003**  62:18 70:7
**62**  73:17
**63**  20:20
**6th**  32:7

**7**

**7**  3:3 19:23 34:9 45:23,25 46:4 73:9

**8**

**8**  21:13,17 74:25
**8-16-75545**  1:3

**9**

**9**  2:6 21:17 38:21 73:14
**9,000**  40:25
**90**  6:10
**9077-1**  12:3
**919**  7:17
**9194**  9:6
**94111**  5:6
**990**  9:5
**9th**  24:23

**a**

**a&g**  4:12 70:22
**ability**  16:10 28:3 42:4 43:12
**able**  37:2 68:1
**absolutely**  62:10 62:10

**aca** 6:9 7:16 11:1
  19:11 20:21,22,23
  51:5
**academic** 16:7,13
**accept** 68:24
  69:10,16
**accommodate**
  11:12 67:12
**account** 35:2,9
  54:18
**accounts** 3:14
  53:15,16,17,19,21
  53:23
**accreditation**
  16:9 23:17
**accrediting** 23:3
**accurate** 41:4
  74:4
**acre** 19:20 28:5,6
**acres** 17:8,11
  18:11,13,14,17,22
**act** 13:6
**action** 13:4 58:4
**actions** 42:25 46:8
**actively** 23:15
**actual** 14:6
**adam** 5:23 10:19
**addition** 29:20
  45:19
**additional** 3:7
  57:8
**address** 13:15
  23:2 49:5,9
**adequate** 2:11
  12:12 26:4
**adjourn** 63:15
**adjourning** 54:20
**adjunct** 15:9
  28:25 57:14
**adjust** 37:18 45:2
**adjusted** 38:25
**adjustment** 45:11
  46:3 54:22

**administration**
  15:10 60:13
**administrations**
  15:21
**administrative**
  15:9 33:2
**admission** 16:15
**admit** 33:7
**advance** 25:9
  46:24 47:12,12,20
**adversary** 13:4
**advisors** 4:13
**affect** 64:11,13
**affiliation** 23:1
**afoul** 54:9
**aga** 20:21
**agencies** 16:18
  19:11
**agenda** 30:20
  31:12
**agent** 2:23 22:18
  22:19 31:2,14
  39:7,21,23,23,23
  40:2,23 41:5,5
**ago** 22:24 32:1
**agree** 28:17 29:6
  32:18 37:11 43:25
  48:13,20 49:15
  53:25 69:8
**agreeable** 45:10
**agreed** 24:17
  34:18 45:14
**agreement** 4:1
  25:5,15,16,22
  26:1,5,8,12,13,14
  26:15,15,20 27:1
  27:1,11 30:20
  45:1,19 54:23
**agreements** 3:25
  16:15
**agrees** 43:24
**ahead** 11:20

**ain't** 29:4
**albert** 15:14
**alfonse** 8:3
**alive** 57:18
**alleged** 13:9
**alleviate** 33:3,5
**allow** 41:8
**allowable** 46:22
**allowed** 43:16
**amount** 13:13
  18:8 20:16 39:19
  40:9 46:18,19
  50:15 55:3
**amounts** 41:6
  56:5 59:14
**answer** 35:5 49:19
  54:16 64:15
**anticipate** 30:3
**anticipated** 64:11
**anticipating** 13:9
**anybody** 31:23
  32:21 34:6 38:16
  40:18 41:8 43:17
  47:13 51:15 55:8
  56:21 59:20 68:1
  72:12
**anybody's** 57:19
**anymore** 50:25
**anyway** 27:24
  44:20 63:17 64:20
**apparently** 65:9
**appear** 49:16
  50:11 57:16
**appearance** 11:20
  57:24
**appearances** 10:5
**applicable** 54:9
**application** 2:22
  3:4 4:12,18 31:12
  31:15 69:25 70:4
**applied** 35:10
**applies** 18:25

**apply** 21:8 35:11
  40:4
**appoint** 2:22
**appointed** 15:16
  71:25 72:1
**appraisals** 17:14
  17:20
**appreciate** 27:17
  29:9 49:1 52:6,10
  67:10 68:9,13,23
**approach** 50:1
**appropriate**
  14:19 33:10 44:5
  47:7 51:18 57:25
**approval** 25:21,25
  26:1,7 32:4 34:9
  34:18 35:17 64:23
  65:1 66:2 73:5,10
**approve** 12:14
  25:5 31:1,4 32:2
  32:24 34:15 35:24
  38:19 52:23 58:18
  59:9 62:23 66:21
  67:24 68:8 69:3
  69:21 71:15 72:4
  73:7,8,13
**approved** 26:16
  54:19 62:19 63:12
  63:12
**approving** 4:7
  52:11 59:24 60:1
  62:21 69:19
**approximate**
  20:16
**approximately**
  17:8,11 18:9,11
  19:3 37:4
**argument** 13:10
**armageddon**
  26:21
**arms** 62:9
**arrangement** 25:4
  26:6 58:21 59:15

**arrangements**
55:23
**articulation** 16:14
**arts** 15:5
**asked** 24:14 69:11
70:3
**asking** 62:13,24
**asserted** 20:16,18
**assets** 16:24 17:2
17:6 18:4,5 20:15
21:8 22:5,20 39:9
**associated** 16:23
17:13 19:12 24:8
24:15 29:18,21
36:5,8,20,22
38:25 39:11 45:20
54:2,8 56:3 60:7
60:20
**association** 5:18
10:21 48:4
**assume** 40:9
43:17 59:19
**assumed** 37:1
**assuming** 26:2
35:24
**assure** 23:6 27:18
**athletic** 62:6
**attached** 21:10
**attempt** 30:8 49:2
**attempted** 11:14
21:7
**attention** 11:22
48:7
**attorney** 5:4,11
5:18 6:2,9,16 7:2
7:9,16 9:2 54:5
**august** 15:15
**authority** 2:7
12:11,12 56:4
**authorize** 2:2,17
3:13 73:14
**authorizing** 3:5
3:24

**automatic** 45:20
**available** 34:12
59:1 64:13
**avenue** 6:10 7:17
8:12 9:5
**average** 62:12
**aviation** 15:5
**avoidance** 42:24
46:8 53:12
**aware** 56:13

**b**

**b** 1:21 2:7,10 3:4
3:23 9:9 34:16
54:21 70:7
**back** 31:10 32:1
41:25 51:19 52:25
61:1 63:13 66:4
**background** 12:6
14:20 60:7
**bail** 66:16,19,22
**balan** 10:25
**balance** 3:13
17:12 53:6
**balin** 6:8
**bank** 3:14 5:18
6:2 10:21 18:7
22:19 35:2,9 48:4
53:14,16 54:25
**banker** 22:24
**bankruptcy** 1:1
1:13,23 3:5,24
14:22 16:1 17:4
21:4 35:6,11
53:18 57:4,7
**banks** 66:5
**based** 21:2 29:17
62:8
**basically** 33:1
44:3 49:13
**basis** 35:12 36:5
36:14 38:14 39:20
46:12 47:2 59:12
73:11

**beginning** 60:25
**behalf** 2:4,13,18
2:25 3:10,16,20
4:3,8,15,20 10:11
10:21 11:1,5
12:21 13:4,14
48:4 51:7
**belief** 37:14 43:6
64:4
**believe** 12:9,15
22:13 25:24 28:9
32:7 42:12 44:6,7
46:5 48:16 49:4
54:7 62:4 63:9
70:19
**benefit** 27:25 29:6
39:7,25 44:11
50:3
**benefits** 12:16
50:24 56:7,7,11
**berkowitz** 5:23
10:19,20
**best** 32:19
**better** 58:5
**beyond** 61:19
**bid** 29:18 46:20
**big** 16:21 20:14
25:2 59:1
**binder** 21:15
**binding** 49:15
51:14
**bit** 60:6
**bits** 13:25
**bivona** 10:14
**black** 50:25
**board** 9:3 10:18
15:1,12,13,16,18
15:22 16:1
**body** 23:3 69:6
**bond** 10:22 18:14
19:4,4,12 20:7,10
60:18,19

**bonds** 18:7 19:1,6
19:8,11,13,15,18
19:22 20:6,12,12
20:13,25 48:11
60:21 64:9
**bono** 43:19
**book** 17:12
**borrow** 12:11
43:16
**borrowings** 13:9
**boston** 6:4
**bought** 61:23
**box** 9:6 44:16
**break** 17:6 51:18
**breakdown** 21:8
**brian** 7:20 10:25
**brief** 51:18 68:19
69:6
**bring** 70:3
**broad** 25:7
**broker** 4:18 24:8
24:15 29:21 61:2
**brokers** 12:14
**brookhaven**
17:10 18:11,12,13
19:16,17,21 22:4
22:7,8 29:23
**brought** 37:14
**buckets** 22:14
**budget** 36:21,24
37:19 38:7 45:12
45:17 47:21 52:23
**budgets** 40:6
**buildings** 59:16
**burdens** 33:5
**bureau** 54:6
**burn** 35:14 37:2
**burned** 36:1,3
**business** 15:5 29:3
**buyer** 30:16
**buyers** 66:5,8
70:1

**buying** 66:13
68:16

**c**

**c** 2:8,24 5:1 6:20
10:1 14:25 31:14
74:1,1
**ca** 5:6
**calendar** 30:25
31:7 32:24 34:8
38:19 53:9 55:11
58:17 59:23 70:20
**california** 5:5
**call** 17:8 19:11
39:1 57:17
**called** 57:23
**campus** 17:7,10
17:10 18:11,12
19:16,16 22:7
24:15 29:19,23,25
30:5
**campuses** 19:19
**capable** 64:3 72:7
**capacity** 23:11
34:13,16
**capital** 20:14
**care** 28:11 38:8
65:21
**carr** 9:13 66:8,11
66:11,16,23 67:1
67:4,9,11,13
**carries** 17:12
**carry** 36:25
**carveouts** 42:12
42:15
**case** 1:3 2:3,17
11:17,21 14:23
16:25 18:1 23:10
23:15,19,21 25:6
25:9,10 28:23
31:1 32:5,15,24
33:6,10 34:11
38:24 45:22 48:7
53:18 57:9 58:7

73:8
**cases** 33:11 43:7
49:17
**cash** 2:10 12:12
25:15 38:20 52:4
53:10 61:7 64:5
66:12
**catherine** 2:3,18
2:25 3:10 7:6
**caution** 42:8
**caveat** 71:22
**caveats** 46:15
**center** 6:3
**central** 1:15 8:2,6
**certain** 3:14 4:1
9:2 12:9,13,14,15
12:16 16:4 17:14
17:20 25:3,6
26:19 33:9,9
39:13,19 54:7
55:23 58:20 60:13
61:4,7
**certainly** 14:3
27:19 44:22 58:25
65:24
**certification** 69:3
**certified** 74:3
**certilman** 6:8
10:24
**cessation** 23:16
**chain** 57:19
**challenge** 43:13
43:16,18 45:22,23
46:3,19 63:21
**challenging** 61:8
**chamber's** 11:13
**chambers** 11:10
53:1 71:2
**chance** 40:17
**change** 47:9,13
**changes** 46:6
**changing** 72:7

**chapter** 2:3 12:7
16:2 18:1 23:10
23:19 45:23 46:4
57:11
**charged** 41:22
**charitable** 54:7
**charities** 54:6
**charles** 2:13 3:16
3:20 4:2,8,14,20
**chief** 3:6,8 10:13
15:16 37:13 59:5
59:5 71:5 72:5
**choose** 44:9
**chosen** 44:10
**chutchian** 5:15
**circumstance** 69:22
**circumstances** 32:15 69:7
**city** 2:22 9:7 31:2
31:5,13 58:7
65:23,24 73:6
**claim** 46:8
**claims** 2:23 4:2
12:16 13:13 31:13
42:17 43:4,11
60:2
**clarification** 36:20 71:10
**class** 13:4
**clear** 4:6 28:4
41:10 42:18 44:23
45:22 49:6 50:7
51:4,6 53:15 56:6
60:1 63:4 69:1
71:12
**clearly** 43:11
68:11
**clerk** 10:2,4
**clerk's** 11:17
31:16,20 33:23,25
**clients** 53:5

**close** 16:7 17:7
61:15,20 62:20
64:22,22 65:3
66:20 67:2 68:2
**closely** 48:12
**closing** 3:13 61:19
64:3 67:6 73:14
**coat** 66:9
**code** 3:5,24 17:4
63:3
**cohn** 6:1
**collateral** 2:10
12:12 18:5 38:20
52:4 59:20
**college** 1:7 2:4,14
2:19 3:1,10,16,20
4:3,9,15,20 6:16
7:2 9:3 10:4,9,12
10:18 14:24 15:8
15:11 16:15 57:10
**combine** 38:8
**come** 28:3 31:10
36:2 41:22 56:21
56:24 63:12 66:9
**comfort** 64:21
**coming** 24:3
**commenced** 61:9
**commencement**
2:3 31:1 32:3,4
**comment** 31:23
**commented** 31:16
**comments** 27:17
29:10 44:21 48:6
52:6,10
**commission** 23:3
**committee** 24:20
24:24 36:12,13
37:11 43:15,23,24
47:4,5,24 49:7
52:9 57:9,15
71:23,25 72:4
**committee's** 42:6
59:1

**common** 24:4
43:14
**community** 15:23
**company** 39:10
**compared** 62:13
**compensation**
25:4 35:16 56:4
**complaint** 13:4,11
13:19
**complete** 53:4
**completely** 18:3
48:13 51:2
**complicated**
28:23 29:4
**comply** 54:12,20
**comprehensive**
22:25 61:2
**comprise** 13:22
**comprised** 15:19
**comprises** 17:9
**compromise**
68:23
**compromised**
67:17
**concentrated** 15:5
**concept** 22:13
**concern** 23:5,13
49:5
**concerned** 46:2
63:9 68:15
**concerning** 14:21
**concerns** 23:2
24:16 33:3 44:25
52:5 61:14
**concluded** 70:20
**conduct** 18:1
**conduit** 19:11
**confer** 51:18
52:25 68:13
**conferred** 38:5
69:2
**confidence** 45:7

**confirm** 68:4 71:1
**confirmation** 46:6
**conflict** 25:23
**congress** 44:17
**consel** 24:1
**consenting** 69:21
**consents** 43:24
**consequences**
28:19 42:11
**consideration**
24:16 34:19 45:16
59:23 68:10,14
**consistent** 17:3
27:2
**constitutes** 12:5
**constraints** 44:8
**construct** 18:24
40:3 56:9
**constructed** 36:4
**consult** 35:4
**consulting** 3:5
8:10 10:12,14
34:10 73:11
**contemplate**
29:24 46:3 65:8
**contemplated**
14:5 17:25 25:11
42:4
**contemplates**
39:18
**contemplation**
42:1
**continuation**
58:18 59:10
**continue** 3:6,24
13:24 16:10 39:13
53:14 55:16,22
56:4
**continued** 34:15
56:10
**continuing** 56:8
**contract** 61:12,12
62:12 66:17

**contracts** 61:19
**contributions**
56:3
**conversation** 38:3
51:11 58:8
**convert** 45:22
**convey** 67:21
**convince** 43:5,8
**convinced** 43:9,10
**cooley** 5:3,4
**copies** 57:24,25
**copy** 21:22
**core** 23:14
**corneau** 2:13 3:16
3:20 4:3,8,14,20
**corp** 6:9 11:1
**corporation** 14:25
14:25 19:12
**correct** 13:1 14:8
14:10 18:16,18,20
19:10 20:9 31:22
33:20,20 39:21
40:11 41:11 55:5
59:11 61:24 63:18
63:20 65:7 70:24
**costs** 40:17
**counsel** 10:9 11:8
**country** 74:21
**couple** 23:18
48:16
**course** 51:12 56:9
61:6
**court** 1:1,13 10:3
10:5,15 11:6,19
12:23 13:3,20
14:1,3,9,15 17:16
17:18 18:13,17,19
18:21 19:6,9 20:3
20:5,8,21,23 21:1
21:13,15,18,21,24
22:3,10,21 24:5
24:10,12,19,25
25:14,18,21 26:3

26:8,9,11,18,24
27:7,14,21 28:4,8
29:11,13 30:9,11
30:14,18,22 31:4
31:8,10,20,23,24
32:18,21 33:5,11
33:14,17,23 34:2
34:5,6,22 35:2,7
35:18,21 36:1,2
36:14,18,24 37:3
37:6,23,25 38:3,6
38:11,13,16 39:15
40:6,9,13,20,23
41:2,7,12,14,16
41:19 42:15,20
43:1,3 44:10,11
45:3,6,25 46:11
46:15 47:25 48:2
48:6,20 49:11,22
49:24 50:8,11,22
51:3,8,20,22,24
52:2,5,12,14,15
52:18,21 53:19,25
54:3,11,15,24
55:2,6,8,9 56:11
56:13,16,18,21,24
57:1,6,12,22
58:14,15,22 59:4
59:8,13,16,19,20
61:22,25 62:9,14
62:20,24 63:6,16
63:19,23 64:2,7
64:10,17 65:3,8
65:14,16,21,25
66:4,9,14,21,24
67:3,8,10,12,14
67:18 68:3,15,21
69:8,13,16,20
70:5,10,14,16,22
70:25 71:5,8,14
71:17,20,24 72:2
72:3

court's  52:6
courthouse  8:3
cover  36:25 37:19
  39:1,2
covered  59:4,17
covers  18:14
create  61:7
created  40:1
  43:11
credit  2:7 20:25
  46:18,20
creditor  5:19 7:9
  28:20 29:2 33:17
  42:5 43:13,18
  49:18 52:1 57:3
  63:17 68:4
creditors  2:12
  28:1,10,11 32:6
  32:10 40:14 52:8
  54:3 57:9,15
  60:25 63:14 71:23
cro  34:12
cross  67:25
current  13:11
  14:6 22:23 40:13
  41:19 42:2 47:20
  59:5,7
currently  17:22
  25:11 36:21 41:25
  57:4 58:12 60:14

**d**

d  2:8 7:20 10:1
  73:1
d&o  58:22,23
d'amato  8:3
date  2:25 3:9 4:14
  4:19 11:24 24:20
  26:19 29:22 39:2
  53:3 55:18,19
  58:25 60:25 61:12
  61:19,20 67:6
  71:18 74:25

dated  12:1
dates  26:14
dawn  7:9
day  11:12,25
  14:18 15:20 23:4
  23:21 36:5 39:3
  52:2 57:17
days  24:3 38:24
  62:18,20,21,23
  65:2 67:16 70:9
deadlines  25:6
deal  13:16 16:4
  40:21 60:20 67:18
dealing  39:16
  52:2,4
deals  64:5
dealt  43:9 70:25
  71:1,5
debate  37:21
debit  35:6
debt  18:3 20:16
  20:19,19 46:19,20
  46:21 60:20,23
debtor  1:9 2:23
  3:6,9,24 4:13,19
  6:16 7:2 10:9 11:8
  11:11 12:6,21
  13:21 26:7 30:7
  31:13,14 33:1,5
  35:14 38:19,22,24
  40:14 52:4 55:17
  56:2 57:18 60:21
  60:24 61:4,13
  62:2 63:4,9 64:13
  64:19 65:12,20
debtor's  8:11
  16:24 22:23 32:1
  32:24 34:8,12
  38:19 39:9,13
  40:2 53:9 55:12
  58:19 60:9
debtors  54:8
  59:24,25

december  1:17
  24:23 29:20 34:20
  39:3,4 63:13
  74:25
decision  16:7
  57:21 67:3,21
declaration  11:25
  12:2,5,20 14:12
  14:13 15:20 23:4
default  26:2,3,4
  26:14,17,19,20
  45:20
defaults  28:19
deferred  45:15
delay  63:24
demonstrate  63:4
department  16:19
  57:14
dependent  64:6
depending  40:1
depiction  21:7
deposit  3:15
depository  54:19
describe  15:7
designating  3:8
designed  25:9
  32:4 33:2
details  11:14
determine  17:24
determined  13:24
  46:21
development
  19:10
difference  55:3
  63:13
different  22:14
  58:19 71:18
difficult  28:17
diligence  54:2
dip  21:9,10,14,16
  21:20 22:17,18,18
  23:15 25:15,22
  26:2,6,13,15,15

26:20 27:1,3,5,8
  27:10 36:4,21
  39:6,7,7,17,20,23
  39:23 40:3,6,7,13
  40:23 41:8 42:2
  42:16 44:3,6
  45:13 48:17 50:18
  53:16 73:13
direct  2:2,17
  12:20 14:11 64:15
direction  48:18
  49:16
director  62:7
directors  15:12
disbursements
  53:17
disbursing  37:21
discrete  60:4
discuss  22:23
  27:18 29:12,15
  32:9
discussed  54:19
  60:16
discussing  45:17
discussion  25:8
  32:12 43:25 45:10
  48:15 49:6 60:24
  64:25 65:11
discussions  38:24
  44:24
disgorge  37:16
disgorgement
  36:8
disparaging  58:6
dispersed  43:15
distribute  17:2
distribution  42:4
distributions
  28:10
district  1:2 12:4
divided  18:5
docket  21:16
  31:11 33:1 34:4

38:21 53:11 58:17
70:21
**docketed** 12:2
13:17 14:15 32:2
32:25 34:9 38:20
53:10 55:12
**document** 12:1
25:7 28:21,22
69:6
**documents** 27:7
28:14 29:17 41:9
49:9 69:4
**doing** 15:22 28:7
29:7 50:2 70:16
70:17
**dollars** 17:16 55:2
**don't** 37:12
**dorm** 19:17 22:8
22:10,11,12
**dormitories** 18:14
**dormitory** 18:10
**doubt** 53:12
**douglas** 4:18
24:11 61:2 70:1
72:5
**dowling** 1:7 2:4
2:14,18,25 3:10
3:16,20 4:3,8,15
4:20 6:16 7:2 9:3
10:4,9,12,18
13:25 14:21,24
15:2,7,21 16:24
17:12,14,19 18:2
19:4,14 22:24
57:10 62:7
**dowling's** 10:13
15:14,15,18,24
16:1,9 17:5
**dr** 15:14
**draconian** 26:17
**draft** 11:18,21
17:21 20:17 53:1

**due** 13:14 40:9
56:3 59:14

### e

**e** 1:21,21,22 5:1,1
10:1,1 21:19 73:1
74:1
**early** 23:9 25:11
60:16
**easier** 18:25 30:23
**east** 6:11
**eastern** 1:2 12:4
**easy** 67:23
**echo** 48:5
**echoed** 52:5
**economic** 67:3
**ecro** 1:25
**education** 15:5
16:19 23:3
**educational** 14:25
15:3,24 16:11
**effect** 20:25 50:7
**effective** 3:9
**effort** 22:8 23:7
23:12,13
**efforts** 21:3 23:16
61:6
**eight** 15:19 61:10
61:11,13,13
**eighth** 7:10
**either** 50:8,9,21
51:12,12 58:11
60:11,12 61:22
63:12 66:5 67:20
**elliman** 4:18
24:10,11,12 61:2
70:1,25 72:5
**else's** 47:13
**email** 32:11
**emergency** 2:1,6
2:16,21 3:3,12,18
3:22 4:5,11,17
36:24 37:19 38:6
39:1 45:21 46:9

46:12,25 47:1,2
48:21 52:23 64:12
64:12 67:19,19
68:2 69:17,22
71:3
**employ** 2:22 3:4
4:12,18 13:21
31:13
**employed** 55:17
**employee** 12:16
55:12
**employees** 12:24
13:5,11,14,18,19
13:23 14:7 15:9
27:22 55:16,21,23
56:1,1,8
**empty** 30:9,14
**encumber** 18:3
**encumbrances**
60:2
**ended** 39:3
**endowed** 54:8,17
**endowment** 54:8
**ends** 49:18
**engaged** 30:8
**engagement** 34:13
35:25
**english** 9:1
**enormous** 50:15
**ensure** 42:9
**enter** 26:18 33:1
56:23 63:22
**entities** 39:18
**entity** 41:20,22
**entry** 21:16 31:11
35:16 58:17 59:24
70:21
**equal** 27:10
**equity** 60:23
**especially** 28:5
62:19 68:17
**essence** 20:14
21:9 37:2 45:15

58:19
**essentially** 16:10
18:3 22:19 25:5,9
30:25 34:11 40:3
**establishing** 2:17
**estate** 4:6,13,18
12:14 16:24 17:5
17:13,25 18:4,12
20:15 21:7 22:15
37:15 40:2 62:18
63:7,15
**evan** 5:8
**evening** 48:8
**events** 12:7 14:21
16:8 26:17
**eventually** 42:21
**everybody** 27:21
40:20 44:12 72:11
**evidence** 14:13
**exactly** 53:23
69:11
**exceed** 55:2
**exception** 19:17
39:9
**excuse** 11:19
71:24
**exercise** 44:17
**exhibit** 21:10,19
**exigent** 69:7
**exist** 18:15 40:5
55:23
**existing** 3:24
45:23
**exists** 12:9 22:18
26:6 35:2 63:21
**exit** 25:10,12
**expect** 23:20 30:2
34:20
**expectation** 35:13
**expectations**
14:23 69:1
**expedited** 11:12

**expenses** 4:2 42:3
**expiration** 45:23
  61:19
**expire** 67:20
**expired** 63:11
**explain** 23:4
  44:19 57:15 72:8
**explained** 51:11
**explanation** 69:6
**exposed** 44:13
**exposure** 20:25
**extending** 54:20
**extent** 16:4 27:1,2
  27:3 28:13 32:10
  40:16 55:2

**f**

**f** 1:21 4:7 74:1
**facilities** 15:10
**facility** 18:10
  19:20 39:6
**facility's** 56:1
**facing** 43:7
**fact** 16:13 40:18
  40:22 61:18
**faculty** 15:9 57:10
  60:12
**fair** 16:25
**fairly** 15:7 25:10
  33:6 55:14 60:4
**fairness** 44:11
**fairs** 16:15
**fall** 22:14
**far** 58:2
**farmingville** 7:11
**favor** 55:21 60:18
**favorite** 27:9
  28:21
**federal** 1:14 8:5
**fee** 40:24,24 41:4
  41:5 45:14
**feel** 60:22
**fees** 35:12 40:7
  41:21 42:9 43:14

49:4
**felt** 69:7
**ferris** 6:1
**fewer** 27:7
**fifty** 17:16
**fight** 44:18 50:23
  50:23 51:1
**figure** 21:24 27:7
  37:6,25 47:16
  50:16 54:13 64:20
  68:6
**file** 36:6 57:23
**filed** 2:18 11:25
  13:4,8 14:12
  23:20 25:1 29:17
  33:9 34:3 38:22
  42:23 48:7 57:6
  58:4
**files** 48:7
**filing** 12:7 57:7
**filings** 11:25
**final** 34:19 38:23
  42:21,22 43:22
  48:19 50:8 59:24
**finally** 19:22 30:6
**finance** 39:10
**financed** 58:24
**finances** 58:20
**financial** 6:3,9
  7:16 11:1 19:12
  23:2
**financing** 2:9 4:1
  21:4 23:15 26:6
  38:20 39:13,17,20
  47:6 52:5 58:21
  59:9,14 63:21
  64:12,20 65:5
  68:18 71:3 73:13
**financing's** 67:20
**find** 23:1 33:11
  49:15 57:8 61:9
  68:25

**finding** 67:25
**findings** 54:3
**fine** 27:2 30:22
  37:19 38:7
**finish** 51:22 54:1
**firm** 10:17 24:1
  28:21 58:7
**firms** 51:9
**first** 11:11,12,25
  14:18 15:20 18:9
  19:15,19,24 22:19
  23:4,21 30:24
  31:8 35:15 38:24
  39:8,24 43:5 48:4
  52:2 57:17 60:17
**five** 39:18
**floor** 5:5,12 6:17
  7:3
**flow** 61:7
**focus** 15:3
**focused** 61:17
**folks** 11:19 14:7
  28:12 56:11 57:24
  58:10 61:22,25
  62:15 64:2
**followed** 23:16
**following** 16:7,9
**follows** 18:6
**forbearance**
  23:12,12
**force** 27:24 50:7
**foregoing** 74:3
**forget** 41:21
**form** 2:2 31:1,15
  32:3,4 33:6 45:5,9
  46:2,6 48:11,12
  52:25 54:22 71:3
  73:7
**format** 44:10
**formed** 24:20
  43:24 47:4,24
**former** 13:5,22
  32:9,13 62:6

**forth** 36:21
**fortunately** 16:4
**forward** 14:23
  50:1,7 51:16
  57:21 61:20 70:3
**four** 19:7 39:18
  48:11
**fourteen** 60:13
**francisco** 5:6
**free** 4:6 19:6,8
  28:4 43:22 60:1
**fresh** 47:22
**friday** 24:22
**front** 28:15,15
  45:14 67:22 69:4
**fulfillment** 15:24
**full** 15:8 46:18,25
  50:7 57:10
**fully** 59:17
**functions** 48:17
**fundamental** 43:6
**funded** 36:4 55:17
**funds** 12:11 46:24
  46:25 47:1 54:7,7
  54:8,17,17,18
  63:16 64:11
**further** 48:15
  57:18
**furtherance** 15:24
**future** 40:1

**g**

**g** 10:1
**gap** 47:12,15
**garden** 2:22 9:7
  31:2,5,13 73:6
**garfunkel** 5:17
  10:20
**general** 33:14,18
  34:25 54:5
**generally** 45:1
**getting** 40:24
  44:14 47:10 50:16
  51:14 56:11 58:2

67:24

**give**  27:10 28:22
32:5 37:19 44:1
46:25 50:5 60:6
68:1

**given**  35:22 36:24
37:7 43:3 46:20
50:4

**gives**  44:17

**giving**  11:17,21
27:11 37:7,20
42:16

**glenn**  7:13 11:4

**glovsky**  6:1

**go**  11:20 22:3
27:23 29:8 45:14
49:12,16 54:25
61:20 63:16 66:4
67:23 70:23

**goal**  16:25

**goes**  69:25

**going**  10:6 14:23
23:5,13 26:25
27:3,23 29:24
30:4 31:4 32:11
35:10 36:6 41:21
41:25 42:6,6,10
43:20,21 46:11,15
47:3 49:3,12 50:1
50:4,6,7,11,25
51:15,15 52:21,23
53:2 54:24 57:17
57:21 58:1,8
60:22 63:16,25
64:19,21,22,22
66:21,22,24 67:8
67:20 70:23 71:1
71:14 72:4,6

**good**  10:3,7,16,19
10:23,24 11:2,4,7
15:23 16:4 23:21
43:5 45:6 48:3
51:8,9 60:20

68:10,12

**graduate**  15:4

**grand**  29:16

**grant**  31:24 32:22
34:6 42:24 47:13
53:2 55:9 58:15
59:21

**granted**  39:7
42:22 73:6,7,9,12
73:13,14,15,16

**granting**  3:14

**great**  5:20,21
13:16 62:16

**greater**  40:16
42:2 61:5

**grief**  16:5

**grossman**  1:22
10:2

**group**  2:22 23:14
29:5 30:7 31:2,5
31:13 73:6

**groupings**  17:6

**guarantee**  11:1
19:12

**guarantees**  47:11

**guarantor**  20:23
29:2

**guaranty**  6:9

**guess**  69:3 72:2

**guidelines**  46:10
54:13

**guys**  28:7 37:18
41:16 50:2 51:8
59:19 69:16

---

**h**

**hammel**  6:6 10:20
10:23 48:1,3,3,23
49:21,23 50:10
51:2,4,17,21 64:9
64:14 68:19,22,22
69:11,15,24 70:18
71:10,16,19

**handholding**  70:2

**handle**  34:5 69:23

**happen**  58:11

**happening**  26:22

**happens**  26:13
39:25 51:10 68:7

**happy**  49:9 72:11
72:11

**hard**  16:12,17

**harm**  63:5,6,14

**hawk**  4:12

**head**  48:19,25

**heads**  44:1

**health**  56:7,11

**hear**  71:24

**heard**  25:2 29:10
29:11,20,22 31:24
32:21 34:6 48:1
48:12 51:23 55:8
56:21 59:20 68:20

**hearing**  2:1,1,6,6
2:16,16,21,21 3:3
3:3,12,12,18,18
3:22,22 4:5,5,11
4:11,17,17 11:15
14:19 24:18 34:20
36:15 39:5 45:16
48:5,16 49:13
65:4 72:10

**heartache**  16:5

**heavily**  49:1

**held**  15:17

**help**  57:12,25
58:3,11

**helped**  64:17,18

**helpful**  16:20
21:11,23 33:11
44:21 49:14

**helps**  57:13,22

**hi**  66:11

**higher**  17:21 23:3

**highest**  15:11

**hire**  22:24

**historically**  15:2
61:4

**history**  15:22

**hmm**  34:2

**holding**  16:15
35:8

**holidays**  44:7

**home**  68:4

**homes**  20:1

**hon**  1:22

**honor**  10:7,10,11
10:16,19,23,24
11:2,4,7,10,24
12:2,10,19 13:1
13:15 14:8,17,18
14:19,24 15:18
16:21 17:5,19,24
18:2,16 19:7,25
20:6,16 21:6,22
22:2,6 23:19,23
24:3,7,14,21
25:17 27:19 29:9
29:16,23 30:6,13
30:24 31:6,11,22
31:25 32:3,23
33:16 34:7,7,21
35:5,13,24 36:8
36:10,17,19 37:4
37:22 38:10,15,18
38:22 39:4,6
40:11 41:4,6,11
42:14,19 44:22,24
45:1,13 46:1,14
48:1,3,5,9,13,23
49:1,5,23 50:10
51:2,5,17,19,23
52:1,3,20 53:7,12
53:13 54:5,14
55:5,10,11,14,22
56:9,12,20,25
57:2 58:13,16,16
58:23 59:7,11,18

59:22,22 60:3,6,8
60:24 61:17 62:11
62:16,22 63:3,15
63:21,22 64:4,9
64:16,24 65:7,11
66:1,11 68:19,22
68:23 69:4,12,15
69:24 70:7,18,19
70:24 71:4,7,10
71:16,19,22 72:13
**honor's**  11:13
12:18 27:17,20
30:20 33:7 35:17
38:4 68:9,14 69:1
**honoring**  12:16
**hope**  18:1 24:21
24:23
**hopefully**  23:1
47:24 49:7
**hopes**  24:20
**house**  64:2 65:25
66:25 67:19 68:17
69:17,19
**housekeeping**
68:19
**houses**  30:9 62:1
62:3,4,5,15
**howard**  9:9 10:16
**hudson**  5:12
**hundred**  51:9
**hundreds**  13:5
49:16
**hurt**  58:12 71:9
**hyde**  4:25 74:3,8

**i**

**ian**  6:6 10:20 48:3
68:22
**idea**  22:13
**ideally**  39:2
**ideas**  29:2
**identified**  15:19
17:23 20:17 23:2
32:10

**identify**  22:7
**impaired**  57:20
**important**  45:12
48:17 54:6 64:16
**imposes**  25:6
**improve**  25:3
**improved**  18:12
**improvements**
17:13
**inability**  13:24
**inclination**  63:24
**include**  61:18
**included**  44:12
**includes**  12:11
**including**  3:25
12:16 16:14,18
23:11 24:1 42:12
58:20
**inconsistent**  27:2
**incorporate**  27:4
**incorporated**  15:1
**increase**  52:24
**incur**  49:4
**indenture**  5:19
18:8,14 19:2,23
48:10
**indicated**  31:17
54:23
**indication**  69:2
**indiscernible**
21:17 52:22 55:3
58:5 62:1 63:10
67:16 69:5 70:1
70:22 71:2,11,12
71:13 72:2
**individual**  58:9
**industrial**  19:10
**information**  12:6
**inquiries**  12:18
**inserra**  15:14
**instance**  23:25
55:24

**instances**  60:13
61:7
**institution**  15:3
16:3
**institutions**  16:17
**insurance**  3:25
4:1 12:17 39:11
39:14 58:19 73:16
**insured**  19:4,13
**insurer**  19:5,12
**intend**  42:25
49:25
**intended**  42:24
46:7 68:21
**intending**  48:18
**intent**  35:11
**intention**  35:9
**interest**  18:22
32:5 33:4 39:10
40:7 41:21 44:15
54:3 60:17,22,23
63:25
**interested**  9:4,11
9:13 25:8 30:1
**interim**  25:4
34:18 35:16 36:14
38:14,22 39:5
42:23 44:2 45:16
45:21 46:8 47:6
48:14,17,20,21
50:8 53:2,3 71:1
73:11
**interpret**  50:4
**investment**  3:15
22:24 66:13 67:21
**investor**  66:18
**involve**  45:11
**involved**  16:5,19
23:8,9,16
**irreparable**  63:5
63:6,14
**islip**  1:15 8:2,6

**issue**  14:11 36:13
43:9 54:6 62:17
**issuers**  19:9
**issues**  28:25 29:1
44:4 45:7 47:9
49:9 50:14
**it'd**  51:14
**item**  32:23 38:12
38:18 40:7 55:11
59:23
**items**  30:23 45:4

**j**

**j**  6:13
**jane**  9:13 66:11
**january**  32:7
**join**  57:9
**joined**  10:13
**joseph**  2:13 3:15
3:19 4:2,8,14,19
**judge**  1:23 10:2
**judges**  33:9 50:20
**june**  13:23
**junior**  20:11
**jureller**  6:15 7:1
10:8
**justice**  57:14

**k**

**keep**  29:4 48:11
57:18 70:16
**kimberly**  7:9 11:5
51:25
**kind**  27:15 67:17
**kinds**  49:17
**kiss**  2:3,18,25
3:10 7:6 10:10
**klein**  9:1
**kleinberg**  9:9
10:16,17
**klestadt**  6:15 7:1
10:8
**know**  13:3,5
21:21 27:4,9 33:8
37:13 43:14,20

44:20 46:22 48:24
49:25 50:15,19
51:3 52:3 58:3
59:13,19 62:12
64:25 65:1,19
66:17 67:1,4 69:9
71:2
**known**  61:1
**knows**  17:24
29:16 48:18 54:5

**l**

**lack**  23:7
**land**  22:10,12
59:16 60:10
**landing**  28:1
64:12
**largely**  13:22 16:6
27:25 45:10
**larger**  33:11
**largest**  54:17
**late**  13:8
**lauren**  2:3,18,25
3:9 7:6 10:10
**laurie**  9:11 57:2
**law**  10:17 28:21
50:3,4
**lawyers**  51:8
**layered**  42:3
**lazard**  54:18,18
**lazerowitz**  5:8
**lead**  26:21 58:3
**leases**  25:3
**leash**  36:11
**leave**  53:22
**leaves**  60:10
**leaving**  53:20
**led**  12:7 15:11
**ledanski**  4:25 74:3
74:8
**left**  12:25 40:17
**legal**  74:20
**lender**  40:7 41:8

**lenders**  39:8,15
39:25 41:5,7,19
44:12 45:13
**length**  62:9,17
**lengthy**  52:7
**letter**  34:14
**letting**  48:24
**levin**  6:1 10:21
**liberal**  15:5
**lien**  18:4,10,21
19:15,24 22:19
39:8,24 42:17,24
43:4,4 46:7 60:17
64:7,7
**liens**  4:6 21:8 22:9
22:14 60:1
**life**  58:6
**likewise**  46:4
**limit**  43:12
**limited**  3:14
**line**  28:21 40:7
73:4
**lines**  69:5
**lineup**  65:2
**liquidating**  23:19
25:7,12
**liquidation**  16:23
27:22,25 40:2
**liquidity**  61:8
**list**  28:19 33:15,18
33:18
**litigation**  58:10
**little**  18:24 20:1
21:15 22:23 29:7
35:9,10 50:24
60:6 70:25
**live**  41:16 61:25
**llc**  2:22 3:6 4:12
4:13 8:10 31:13
34:10
**llp**  5:3,4 6:15 7:1
7:15

**load**  20:19 42:9
**loan**  39:19 40:14
40:16 41:5,7,20
41:20
**loaning**  44:15
**loans**  40:5
**loathe**  47:1
**local**  12:4 15:23
16:8
**located**  18:11
**locked**  63:10
**long**  40:20 50:2
52:7 68:5 69:21
**longer**  51:14
**look**  26:12 42:6
49:8 63:5,7
**looking**  14:5,5
57:6
**lose**  68:16,17
**losing**  61:14
**loss**  16:9
**lost**  23:17
**lot**  15:22 16:12,18
23:22 44:4 48:6
49:3,4 50:21
52:15 55:15
**loud**  44:23
**luck**  43:6

**m**

**m**  5:8 8:3
**ma**  6:4
**madison**  4:12
**mail**  32:14
**main**  17:6 58:4
**major**  17:5 22:14
**majority**  13:22
**making**  49:6
67:21
**management**  2:17
32:25 33:6 53:10
73:8
**manner**  2:2 17:3
36:20

**march**  61:1
**maria**  5:15
**market**  5:10,11
17:24 29:24 30:4
62:8
**marketing**  22:25
61:2
**massapequa**  8:13
**master**  33:15,18
33:18
**matter**  1:5 32:16
57:4,5 68:10,20
**matters**  10:4
11:12
**maximize**  17:1
28:9
**mccord**  6:13
10:24,25 51:7
**meadow**  6:11
**mean**  21:24 43:8
44:20 46:16 62:10
63:23 64:5 65:25
71:8
**meaningful**  21:3
**means**  16:21
57:15
**meant**  44:20
**media**  16:9
**meeting**  24:22
32:6 57:16
**meets**  46:10
**members**  9:2
10:18 15:19
**mention**  22:22
**mentioned**  23:18
29:24
**merger**  5:10,11
**merits**  14:1
**merrick**  6:10
**meyer**  9:1 10:17
**middle**  23:3
**milestones**  25:6
25:11

**million** 17:14,17
  17:23 18:9 19:3
  19:23 20:17,18,18
  20:20
**mind** 28:16 47:9
  72:7
**mineola** 74:23
**mintz** 6:1 10:21
**minute** 66:10
**mission** 15:24
**mm** 34:2
**model** 15:8
**modified** 29:20
**modify** 39:22
**moment** 15:25
  32:1
**moments** 14:20
  39:12
**money** 29:6 35:18
  35:21 40:14,16
  41:20,20 42:10
  44:9,10,13,14,15
  47:15,20 50:5,24
  64:14
**monies** 47:12
**monthly** 36:6
  59:12
**months** 66:20
  67:2,5
**morning** 10:3,7
  10:10,11,16,19,23
  10:24 11:2,4,7,23
  12:10,19,22 13:18
  14:18 23:24 24:14
  25:2 30:25 34:8
  38:25 44:24 45:11
  45:18 48:3,5
  55:11 58:17 59:23
  60:3,17 70:1,20
**morning's** 11:15
  53:8 61:16
**mortgage** 18:10
  19:15,19,24 20:11

**60**:18
**mortgages** 64:6
**motion** 2:2,7,17
  3:13,19,23 4:6
  21:9,10,16,20
  25:3,5 30:24,25
  31:18,24 32:2,2
  32:17,22,24 33:21
  34:6,8,9,14 38:19
  38:22,23 39:1
  53:8,9,13 55:9,12
  55:14 58:15,17,18
  59:21,24 60:3
  63:8,12 73:5,7,8
  73:10,13,14,15,16
  73:17
**motions** 11:18,22
  14:6,18 23:21,22
  25:3 39:12
**move** 14:13 25:10
  30:20 33:14,17
  57:18
**moving** 53:7,19
**multiples** 28:20
**municipalities**
  19:9

**n**

**n** 5:1 10:1 73:1
  74:1
**name** 15:19 57:2
  66:11
**national** 5:18
  10:21 16:9 48:4
**near** 30:4
**nearing** 16:2
**necessarily** 26:16
**necessary** 12:15
**necessity** 12:8
**neck** 5:20,21
**need** 22:1 25:14
  25:21,25,25 46:22
  66:5 69:9 70:2

**needs** 29:25 53:5
  66:2
**negates** 49:13
**negotiated** 49:2
  52:7
**negotiating** 16:14
  28:18
**neil** 10:14
**never** 43:1,3,3,9
  46:7
**new** 1:2,15 5:13
  6:18 7:4,18 12:4
  15:2 16:18 53:16
  54:4
**news** 68:10
**night** 13:3,8 58:5
**nine** 12:24 13:2
  14:7 17:16 55:16
  56:1
**non** 40:24
**noon** 24:23
**normally** 27:24
**north** 17:23
**note** 16:1 32:8
  40:4
**noted** 45:1
**notice** 2:2 31:1
  32:3,4,5,11,13
  36:5 57:23 65:12
  68:10 73:7
**noticing** 2:23 31:2
  31:14 33:3
**november** 12:1
  23:22 67:6,6
**number** 12:2
  21:16 23:21,25
  26:11,16 27:10
  31:12,12 32:2,25
  34:9 38:21 53:10
  55:13 58:18 70:21
**numbered** 61:5
**numbers** 62:11

**nunc** 2:24 4:13,19
  70:10 71:18
**ny** 5:13,21 6:11,18
  7:4,11,18 8:6,13
  9:7 74:23

**o**

**o** 1:21 10:1 74:1
**oakdale** 17:7,9
  19:16 22:4 24:15
  29:19
**objection** 14:12
  31:18 32:17 33:22
  36:7 72:1
**objectionable**
  36:9
**objections** 47:5
**obligations** 18:3
  55:25,25
**obtain** 2:7,8 25:25
  26:5,8
**obviously** 34:3
  68:4
**occasions** 26:12
  47:19
**occupant** 61:23
**occupants** 62:4
**occupied** 30:16
  60:12,14
**occupying** 30:16
  62:5
**occur** 26:17
**october** 34:14
  59:3 66:17
**odd** 68:7
**offered** 56:7
**offering** 23:14
**office** 8:1,2 10:11
  11:16,17,25 15:15
  24:2,20 31:16,20
  32:7,9,12,16
  33:21,23,25 34:17
  44:24 45:6 46:5
  52:15 54:4,20,22

57:14 69:3
officer  3:7,8 10:13
  15:16 59:5,6 71:6
  72:6
officers  37:13
offices  11:22
oh  17:18 29:11
  52:3 56:16,21
okay  10:15 11:6
  11:20 13:20 14:9
  18:19 21:1,18
  22:21 24:25 26:10
  26:23 30:19 31:9
  31:21 33:12,13
  37:23 42:15 44:4
  51:17 52:12,24
  53:6 54:24 55:6
  56:18 57:12 58:14
  59:8 67:10,13,18
  72:12
old  74:21
once  13:24 16:3
  23:17 36:1,3
  71:25
ones  30:11 72:3
open  17:1
opening  53:16
operated  15:3,7
operating  16:11
  59:5
operational  53:14
operations  16:7
  16:14 23:17 60:9
opinion  65:6
opportunity
  27:12 28:9 49:8
  52:9
oppose  38:16
opposed  13:12
  32:14 54:21
opposition  70:6
  72:9

options  50:4
order  2:1,6,16,21
  3:3,5,12,18,22 4:5
  4:11,17 25:15,23
  26:19,21 27:3,5,8
  30:18 31:15 33:2
  33:2,7 35:16,23
  42:22 44:3,19
  45:9 46:7,11,12
  46:12,13,23 47:2
  47:6,8,10,17
  48:11,14,17,19,20
  48:21,22 49:12,13
  49:15 50:5,6,12
  50:19,22 52:7
  53:1,4 54:22
  62:21 63:22 65:5
  67:22 68:3 69:18
  69:19 71:1,3,6
orders  27:10 28:1
  28:15 33:8 44:6
  52:2,5 57:17
  59:24
ordinary  56:9
organization
  24:22
organize  33:3
  57:13
organizes  57:13
originally  24:14
ought  44:5
ourself  61:9
outline  25:7
outstanding  18:8
  19:3,24
overall  20:15
  23:18 60:6
oversight  16:18
owing  13:14
owned  41:25

p
p  5:1,1 7:13 10:1
p.c.  5:17 9:1
page  27:8,10
  46:12,12,13 47:16
  50:12 63:8 73:4
pages  47:8
paid  34:25 41:2,3
  41:25 55:18
papers  72:10
paragraph  63:8
parcel  58:9
parcels  17:9 20:1
  28:24 30:7 60:5,8
  60:10 61:5,13
pari  20:11 39:15
  39:19
part  14:15 21:8
  25:11 39:20 41:6
  53:24 58:9,24
participate  10:6
participation  30:1
particular  32:15
  36:11 48:9 63:8
  65:18,19 67:19
  68:3 69:19
parties  11:14
  12:13,19 23:8,9
  23:14,15 25:8
  27:18 29:10 30:2
  32:5 33:4 38:5
  44:8 45:17 48:18
  60:12 68:13
partner  23:1
partners  4:12,13
party  9:4,11,13
  20:25 23:1 30:16
  33:19 62:7
passu  20:11 39:16
  39:19
patience  11:13
pause  15:25

pay  3:19,19 4:1
  12:15 13:25 56:4
  59:12 73:15
paying  65:9,16
payment  36:22
payments  12:23
  55:20,24
payroll  3:19 55:17
  56:10 73:15
pc  6:1 7:8
peanuts  65:10
peg  17:20
people  12:25
  27:22 29:13 42:8
  43:4 44:16,19
  49:16 52:18 64:21
  68:16
percent  37:7
  40:10 65:23
perfectly  41:4
  68:24 72:7
period  23:13 36:5
  36:22 37:5 39:1
  45:21,22 46:8,22
  47:11,17 53:23
  65:2
periods  61:8
permission  38:4
permit  42:25
permitted  61:20
personal  71:8
personnel  3:7
  15:10
perspective  16:22
  18:4
petition  2:8,12,25
  3:9 4:14,19 11:24
  17:22 35:11,12
  39:2 43:4,11
  55:18,19 58:25
  60:25 61:10,12
  70:11

**pfeiffer** 7:20
  10:25
**pfeiffer's** 51:6
**phase** 30:3
**phone** 11:20
**pick** 50:8
**picture** 16:22
  20:14 25:2 59:2
**piece** 28:5,6
**place** 25:8 49:7
**placed** 28:15
**plaintiff** 58:4
**plan** 24:2 25:5,7
  25:12,14,16,21,25
  26:1,7,12,14,19
  26:25 27:11 65:8
**planning** 29:25
  30:3
**play** 28:13
**plaza** 1:14 8:5
**pleadings** 34:11
  58:1
**please** 10:3 31:8
**po** 9:6
**point** 20:7 21:6
  25:18 30:17 32:8
  36:19 41:24 42:18
  45:12 48:9 49:23
  60:21 61:5 62:19
  65:20 69:24
**points** 28:18
  44:25 48:16
**policies** 39:11,14
  58:20,24 59:1,4
**policy** 32:16 58:22
  58:23 59:2,7
**pop** 28:25
**popeo** 6:1
**poppiti** 7:9 11:5
  51:25
**popular** 57:22
**portfolio** 4:8 17:9
  19:25 20:8,10

24:9 30:7 59:25
  60:6,7,16 61:3,5
**portion** 35:6,10
  36:9 41:3
**position** 15:17
  19:18,19,20 20:12
  21:2 39:8,24
  40:15 41:19 43:13
**positions** 68:25
**possession** 10:9
  11:9 38:20
**possibility** 28:16
**possible** 27:19
  29:4 44:6 57:8
  64:15
**post** 2:8 35:12
  43:4,11 45:20
  55:19
**potential** 46:3
  61:14 63:11
**potentially** 17:21
  39:19
**practical** 63:24
  64:25
**practice** 24:4
**pre** 2:11
**preceded** 21:3
**precluding** 47:5
**prefer** 33:9
**preference** 48:10
  64:14
**preferences** 33:8
**prejudicial** 52:8
**premium** 3:25
  39:10,11 58:21
**premiums** 4:2
**prepaid** 58:24
  59:2
**prepared** 17:22
  28:7
**prepetition** 3:14
  3:19 4:1 12:13,15
  13:13 30:7 34:13

35:22 37:8,14,15
  53:14 55:20 73:15
**present** 15:21
  24:3 45:7 56:6
  68:3
**presentation**
  22:17
**presently** 15:18
  46:13
**president** 15:11
  15:14 57:10
**presiding** 10:2
**pretty** 16:8 22:25
  23:4
**prevail** 27:3
**previously** 31:16
  60:9,11
**prices** 62:12,13
**primary** 70:2
**prime** 41:11
**priming** 39:8
  41:24
**principal** 8:11
  18:8
**prior** 24:20 29:21
  55:18 58:24 60:25
**priorities** 17:3
  42:11
**priority** 18:9
  19:15,24 22:19
  39:24 40:15 46:8
  47:1
**private** 15:3
**pro** 2:24 4:14,19
  40:9,12 43:18
  70:10 71:18
**probably** 26:11
  28:6 69:5
**problem** 29:7
  37:12 44:14,15
  47:16 50:20 62:15
  67:14 70:15

**problems** 27:12
  44:16 72:5
**procedures** 2:18
  4:7 29:18 32:25
  59:25 73:9
**proceed** 30:2
  51:11,12
**proceeding** 16:22
  36:21
**proceedings** 74:4
**proceeds** 17:2
  40:1,3,4
**process** 16:2,20
  16:23 17:1 18:1
  22:25 23:5,9
**processed** 16:6
**professional**
  23:25
**professionals**
  11:11 12:14 24:5
  25:4 35:14 49:4
**professors** 13:6
**profit** 14:24 15:8
  45:25
**programs** 3:25
  12:17 15:4,6
  58:19 73:16
**prompt** 11:22
  25:10
**promptly** 61:15
**proper** 28:8
**properties** 22:4
  29:5 41:23 42:1
  60:11 65:13,19
  70:2
**property** 4:6 28:2
  28:24 60:22 66:13
  66:13,19 73:17
**proposal** 42:20
  45:5
**propose** 53:22
**proposed** 10:9
  11:8 28:15 30:21

31:2 44:3 45:12
45:13
**protect**  28:22
47:14,20
**protected**  46:24
70:14 71:21
**protection**  2:11
12:13 26:4 46:25
54:6
**protects**  47:12
50:5
**protocol**  32:25
73:9
**proud**  15:22 16:3
**provide**  3:6 12:12
14:20 36:22 46:7
**provided**  71:23
**provider**  16:11
**provides**  12:6
39:6
**providing**  15:4
**provisions**  46:17
47:2 49:2 50:19
52:7,11
**publicized**  16:8
**pun**  68:21
**purchase**  62:6
63:10
**purchaser**  66:12
**purchasers**  62:5
66:12,18
**purchases**  63:11
**purpose**  14:14
**purposes**  25:2
34:18 44:23 53:14
71:11
**pursuant**  2:9,11
2:12,23 3:4,23
62:17 70:8
**pursued**  13:25
**push**  29:3
**put**  24:17,24 27:5
28:15 44:8 47:1

47:21 49:12 50:6
67:22 69:4

**q**

**quarterly**  40:25
**question**  25:20
27:19 35:5 37:5
64:15 69:11
**questions**  33:4
43:21
**quickly**  13:17
29:16 64:11
**quite**  23:11

**r**

**r**  1:21 5:1 10:1
74:1
**raise**  43:22 50:14
**raised**  47:4 49:5
52:15
**raising**  47:5
**ran**  22:24
**ranked**  15:12
**rapid**  57:7
**rata**  40:9,12
**ratable**  39:24
**rate**  41:21 44:15
**rates**  63:25
**read**  43:20 44:3
50:21 58:1 62:22
65:16 69:13
**reading**  58:5
**ready**  66:16,19
**real**  4:13,18 12:14
16:24 17:5,13,25
18:4,12 20:15
21:7 22:15
**realistically**  64:24
**really**  16:23,25
22:8,13 25:9
39:16 50:12 51:8
51:9,13 54:1
55:21 56:8 57:19
59:9 60:5 61:17
63:13 72:4,8

**realtor**  66:18
**realty**  4:12
**reason**  28:14
36:10 53:24 55:16
66:14 67:24 68:2
70:3
**reasonable**  44:8
46:21
**reasons**  61:18
**receive**  32:11 39:8
**received**  34:22,24
**reconsideration**
48:15
**record**  11:8 14:16
74:4
**records**  16:16
**reduces**  42:4
**reference**  21:6
54:11
**refundable**  40:24
**refused**  41:7
**reg**  1:3
**regard**  14:10
16:25 22:20 29:23
30:4 33:8 53:8
60:3
**regarding**  73:16
**regents**  15:1
**registered**  14:25
**regular**  61:25
**reject**  25:3
**related**  3:25 4:2
11:15 53:9 57:5
62:7
**relatedly**  16:12
**relates**  20:15 60:5
**relation**  12:9
14:11 16:13 17:25
18:10 19:5,16,24
21:4 31:18 35:15
55:24
**relationship**  62:1

**relative**  12:23
13:10 39:9
**relatively**  72:11
**relevant**  22:22
60:25
**relief**  12:9,11,21
23:23,23 38:23
53:2 55:15 60:4,4
61:16
**rely**  12:19
**remain**  13:21
16:24 53:20 55:25
56:2
**remaining**  17:1
60:15
**remedied**  46:4
**remedies**  45:20
**remiss**  15:25
**remove**  45:19
**removed**  45:17
**rendered**  35:15
**rented**  60:12
**reorganization**
23:20
**report**  51:19 54:2
**reported**  15:12
23:5
**represent**  10:17
14:7 51:24,25
57:3,9
**representation**
57:4,5,6,8 58:2
**representations**
13:12 47:25
**represented**  58:7
**representing**  5:4
5:11,18 6:2,9,16
7:2,9,16 9:2 39:21
51:5
**request**  14:13
29:21 33:15,18
36:18 38:25 39:13
42:22 44:23 55:20

**requested** 61:17 63:15 66:1

**requested** 65:12 65:20

**requesting** 61:16

**require** 23:22

**required** 32:5 44:12

**requirements** 3:15 26:6 53:4

**requires** 17:4

**resembles** 48:12

**reserved** 34:19

**reside** 54:18

**residences** 20:13 60:14

**residential** 4:7 17:8 19:25 20:8 20:10 24:8 30:6 59:25 60:5,7,11 60:16 61:3,4

**resigned** 15:15

**resolves** 70:20

**respect** 23:24 36:11 48:9,19 52:10 60:9 62:17 63:9

**rest** 18:25 57:16 69:23

**restricted** 53:19 53:20,21,23 54:17

**restrictions** 54:2

**restructuring** 3:7 3:8 10:13 15:16 37:13 59:5 71:5 72:6

**results** 43:17

**retain** 12:13 36:14 37:9,10 38:13

**retained** 37:8,15

**retainer** 34:22,23 34:24 35:1,2,10 35:12,18,21 37:2 37:8

**retainers** 35:14

**retention** 24:6,13 29:22 31:5 34:10 34:15 36:12,13 73:5,10

**retentions** 24:1

**review** 13:16 34:1 52:9,10 59:1

**reviewed** 13:17 31:16 33:21 34:17

**revised** 45:4,9,17

**revisit** 38:5

**revolve** 12:24

**richard** 6:13 10:25

**right** 20:23 22:2,6 34:5 35:7 38:11 38:16 40:23 43:10 44:9,13 45:3 46:18,20 47:15 50:6 52:21 55:8 56:18 58:5,14 59:8 62:25 63:1 63:17 65:22,22 67:15 70:22 72:3 72:11

**rights** 44:17 47:13 47:13,14 57:19 58:9

**risk** 22:4

**road** 5:20 37:12 74:21

**robert** 1:22 3:8 8:15 10:12

**robes** 50:25

**role** 21:3 28:8,14

**rosenfeld** 3:8 8:15 10:12 12:6,20 15:17 34:12,15 35:8

**rosenthal** 12:1

**roth** 7:15 10:25

**roughly** 17:14 19:23

**roy** 8:12

**rsr** 3:5 8:10 10:12 10:14 34:10,10,15 73:11

**rule** 2:8 54:9 62:18 63:4 67:25 70:7,8

**rules** 12:3,4 24:4

**rulings** 73:3

**run** 28:12 54:9

**s**

**s** 3:8 5:1 10:1

**sad** 16:2

**sale** 4:7 17:1,25 22:25 23:5 24:15 29:19,25 59:24,25 61:13 62:8,21 69:18,19

**sale's** 29:21

**sales** 12:14 22:23 25:13 29:16 60:1 61:14 62:19 68:8

**san** 5:6

**sanity** 27:16

**satisfied** 46:9

**save** 64:5 69:20

**saw** 21:21

**saying** 44:23 46:23 47:7

**says** 47:8 50:3,3

**schedule** 2:1,6,16 2:21 3:3,12,18,22 4:5,11,17 11:12 24:14

**scheduled** 24:18 24:22 25:1 29:18 29:19 39:4

**schedules** 17:21 20:17

**schematic** 21:9,19

**schulte** 7:15 10:25

**sean** 6:20 10:7 11:8

**seated** 10:3

**second** 19:18,20 20:12 22:16 48:25 60:18 69:5

**section** 2:7,11,24 2:24 3:15 34:16 42:17 43:4 54:21

**sections** 2:9,12 3:4,23

**secured** 2:8,12 12:13 18:2 20:16 28:1,10,11,20 29:1 39:15 40:13 42:5 43:13,18 44:12 46:18,19,21 49:18 60:23,25 63:17 68:4 71:23

**security** 18:22 39:6 60:17

**see** 13:17 22:2 34:1,10 36:12 39:17 47:3,23 51:10 62:15 66:5 67:12,23

**seek** 25:25 26:5,7 32:3 39:5 55:15 56:4

**seeking** 12:10,22 12:24 13:4,10 23:23 24:6 25:22 38:22 56:8

**seeks** 33:1 34:9,14 58:18

**seen** 33:23 42:7

**selected** 61:1

**sell** 4:6 29:5 30:8 61:3 73:17

**sense** 32:16 46:17

**sensitive** 53:4

separate 35:9
series 18:7 19:1,4
  19:5,7,13,14,22
  20:7,11,12 43:21
  48:11 60:18,19,19
  60:21
serve 31:3 34:12
serves 12:8 18:7
  19:2,23
service 33:14,15
  33:18
services 35:15
  36:23
serving 34:13
  39:23
set 16:25 32:6
  36:21 40:24 49:2
sets 25:6 26:14
settle 28:24
settlement 71:11
seven 30:12 60:8
  65:1
shared 20:11
sheet 17:12
short 21:5 36:11
  49:14 50:5 54:16
shorter 47:10
  49:3 51:13
shot 51:10
show 17:22 22:8
  22:14 64:18
shows 22:17 58:6
sign 34:18 35:19
  35:23 44:18 46:11
  46:16,23 47:18
  50:22,22 51:12,14
  62:21 65:5 67:22
  68:5,6 69:18 70:9
signature 53:16
  53:20 54:25 55:3
signed 31:18 47:6
significant 13:13
  18:2 72:5

signing 47:16
  48:21,21 70:12
signs 50:8
similar 22:17
simple 29:4 44:6
  55:14
simply 32:3 49:6
single 39:21
sir 55:7
sitting 20:9
six 30:12 60:5
  61:10,13,22 62:12
  64:5 65:21
slide 22:16
slightly 39:22
slim 28:16
small 55:25
soft 28:1
sold 28:3,4 61:4
sole 19:17
solutions 74:20
somebody 43:18
  57:22,22 67:20
  68:16 72:8
someplace 35:3
somewhat 18:23
  21:7,11
sonya 4:25 74:3,8
soon 64:15
sorry 17:19 25:19
  33:16 35:20 41:15
  70:8
sort 22:7 42:15
  64:25
sought 29:17 60:4
southard 6:15,20
  7:1 10:7,8,8 11:7
  11:8,21 13:1,15
  13:21 14:2,8,10
  14:17 17:17,19
  18:16,18,20,23
  19:7,10 20:4,6,9
  20:22,24 21:2,14

21:16,19,22 22:1
  22:6,12,22 24:7
  24:11,13 25:1,16
  25:19,24 26:4,10
  26:23 27:6,13,17
  29:9,12,15 30:10
  30:13,15,19,23
  31:6,9,11,22,25
  32:20,23 33:13,16
  33:20,25 34:3,7
  34:24 35:4,13,20
  35:24 36:3,17,19
  37:1,4,22,24 38:2
  38:4,10,12,15,18
  39:22 40:8,11,19
  40:22 41:1,3,10
  41:13,15,18 42:14
  42:18,21 43:2
  44:21 45:4,9 46:1
  46:13 52:20 53:7
  53:22 54:1,14,16
  55:1,5,10 56:12
  56:15,17 58:16,23
  59:7,11,14,18,22
  61:24 62:3,10
  63:2,20 64:1,4,24
  65:7,17,24 66:1
  68:9 70:3,19,24
  71:4,7
southard's 48:6
speak 19:25 51:7
  62:16
speaker 68:11
speaking 34:25
special 24:1
speech 29:7
spend 22:1 50:21
spent 50:15
spoke 18:4 19:17
st 5:5,12
stack 20:14
staff 15:9

stage 51:1
stages 23:9
stakeholders 49:8
stan 8:8 11:2
stand 58:12 67:5
  67:11
standard 33:6
start 18:24 47:22
started 32:1
starting 59:3
state 15:2 16:19
  54:5
statement 12:5
  39:22
statements 36:6
states 1:1,13 8:1
  11:3,17 13:12
  23:3 57:13
static 35:1
stating 70:7
statute 44:18
statutory 55:3
stay 45:20 66:9
stevens 6:15 7:1
  10:8
stewart 9:5
stick 38:6
stim 7:8 11:5
story 26:25
strategy 22:23
  25:13 29:16
straws 67:25
street 6:17 7:3,10
streets 27:24
stricken 66:3
strong 48:10
structure 22:18
students 16:16
  32:10,13
stupid 21:24
style 38:23 39:5
subject 12:18
  13:18 35:16 36:8

48:14 60:17 62:6
63:20
**submit** 35:23 53:1
69:18
**submitted** 12:3
72:10
**subpart** 22:7
**subrogation**
20:23
**subsequent** 48:15
**substantial** 16:23
**successor** 16:16
**suggest** 58:10
**suggested** 36:20
**suggesting** 49:11
50:14
**suggestion** 51:13
**suite** 9:6 74:22
**summer** 16:6
**suozzi** 9:1 10:17
**super** 42:11,25
43:2 46:7 47:1
**superpriority** 2:9
**support** 12:8,21
25:5,14,16,21
26:1,7,12,14,20
26:25 27:11
**sure** 14:4 26:13
43:19 48:2,17
51:20 54:9 67:1,4
67:11 68:24
**surprisingly** 57:7
**surround** 17:9
**sustained** 36:7
**sworn** 12:5

**t**

**t** 5:23 74:1,1
**take** 14:20 19:18
20:12 22:19 28:11
30:23 35:18,21
39:24 40:14 41:19
47:14 49:3 50:20
51:10,13 52:21

66:9
**taken** 21:3
**takes** 54:6
**talk** 21:5 22:16
47:3 57:24 58:10
**talking** 37:3
**targeted** 32:13
**tax** 19:6,8 65:22
66:1
**taxable** 20:7
**taxes** 65:9,13
69:20
**tele** 5:8,15
**tell** 49:17 52:22
52:24 57:1 65:3
66:21 70:14,16
71:17
**telling** 43:23
50:17
**tend** 70:2
**term** 30:4 40:4
41:5,7
**terminated** 13:23
**terms** 17:5 18:5
25:13 38:23 59:2
61:19 62:3,11
68:22 69:1
**terribly** 42:8
**testimony** 12:20
14:11
**thank** 11:10,16
14:17 29:9 31:25
32:20,23 34:7
38:10,18 48:5
50:10 51:21 52:13
52:14,20 53:7
55:10 58:13,16
59:22 67:8,13
69:15 70:18 71:16
71:19 72:12,13
**thanking** 48:6
**thing** 14:4 32:8
43:10 48:25 51:10

**things** 13:7 16:14
27:9 28:5,12 29:3
42:5 43:12 50:18
57:18
**think** 15:25 16:5
16:21 21:10 22:22
26:24 28:8 32:14
32:18 33:10 40:19
42:10 43:7 44:5
44:21 45:10,12
46:9 47:2,10,15
48:23 49:2 65:1
69:25 71:22
**third** 7:17 60:12
**thought** 14:19
30:19 49:14
**threatening** 27:23
**three** 17:6 19:7
28:24 48:10 55:25
56:1,2,3
**throw** 28:19
**time** 13:16 14:14
15:9 22:2 23:11
25:22 26:24 27:11
30:2 41:23 43:5
43:22 48:6 49:3
49:10,19 50:2,12
50:13,15,21 51:18
52:11 53:24 54:20
56:12 57:8,10
68:17
**times** 23:18 51:9
**timing** 64:25
**title** 65:5
**today** 13:10,22
14:5 24:6 25:17
27:15 30:11,12
37:9,10 39:16
44:5 47:18 48:21
50:13 57:17,20
58:8,11 61:9
63:12 65:1 70:4

**told** 72:6
**tome** 69:9
**top** 22:20 30:24
45:15
**total** 20:19 60:20
61:11
**touch** 46:7
**touched** 36:16
**town** 30:1
**traditional** 15:8
**traditionally**
15:11 53:13
**transaction** 14:2
62:9
**transactions**
61:21
**transcribed** 4:25
**transcript** 74:4
**transfer** 65:9,13
65:22 66:1 69:20
**transfers** 3:13
**transition** 16:20
**transitioning**
16:16
**transpired** 14:21
**tried** 50:20
**tro** 12:1
**true** 57:21 62:4
74:4
**trust** 19:2 51:5,15
**trustee** 5:19 6:2
8:1,4 10:18,22
11:3,17 18:8 19:2
19:23 20:10 24:17
31:17,17 32:17
37:11 44:25 45:24
46:2 48:10 60:18
**trustee's** 24:2,19
32:7,9,12 33:21
34:17 46:5 52:15
54:4,20,22 57:13
**trustees** 9:4 15:13
15:18,22 60:19

Page 19

**try** 22:8,25 25:9
28:4 29:3 33:2
47:10 57:12 61:6
**trying** 21:11
29:25 30:3 33:4
41:17 44:19 47:16
67:25 69:20 71:9
**tuesday** 48:8
**tunc** 2:24 4:14,19
70:10 71:18
**turn** 14:17 30:17
61:6
**turnaround** 23:12
**turning** 29:15
31:25
**two** 18:14 28:23
36:23 37:5 38:8
42:15 44:2 46:12
46:22 47:11,17
50:4 64:5 66:20
67:2,5
**type** 55:22
**types** 33:8

**u**

**u.s.** 1:23 8:4 24:2
24:16 31:17,17
32:6,9,12,17
33:21 34:17 37:11
44:25 46:2,5
52:14 54:4,19
**u.s.c** 4:7
**u.s.c.** 2:9,11,12,23
2:24 31:14,15
**u.s.t.** 54:12 68:5
**u.s.t.'s** 45:6
**ultimate** 63:21
**ultimately** 15:12
17:2,24 20:24
23:6 24:3 25:25
28:2 32:14 36:7
43:22 47:16 48:25
60:1,21

**um** 66:23
**umb** 5:18 6:2
10:21 18:7 19:23
22:19
**umd** 48:4
**unable** 61:15
**uncommon** 42:8
**undergraduate**
15:4
**understand** 13:19
18:25 21:11 25:19
27:13 39:17 41:17
44:5,22 45:13
48:23 49:21,24
50:12 51:2 63:23
71:21
**understanding**
24:19
**understands**
27:21 40:20
**understood** 36:17
37:22,22 52:17
**underwater** 41:23
42:2
**unearned** 39:11
**unfamiliar** 33:7
**unfortunately**
23:5 62:17
**union** 3:19 55:24
55:25 57:10
**unionized** 15:8
56:2
**united** 1:1,13 8:1
11:3,16 57:13
**university** 15:2
**unknown** 1:25
**unrestricted** 22:5
**unsecured** 20:19
52:1,8
**unsuccessful** 23:6
**unusual** 18:23
**upfront** 41:4

**uploaded** 48:12
**urgency** 12:8
63:14
**use** 12:12 38:20
44:9 51:15
**useful** 50:1
**utilize** 2:10
**utilized** 34:23
60:11

**v**

**vacant** 60:10,15
61:23
**valid** 46:16
**valuable** 28:2
**value** 17:1,20 28:9
42:2 48:24
**values** 17:12,22
17:23
**variety** 13:6
**various** 61:18
**vast** 13:22
**veritext** 74:20
**version** 42:23,24
**video** 5:8,15
**view** 32:14 35:22
**views** 16:1 27:20
**violation** 13:6
**virtue** 68:11
**visual** 21:7
**voluntarily** 46:1
**volunteer** 15:12

**w**

**wage** 13:13
**wages** 55:21
**wait** 62:18,20,21
66:6,14 70:8
**waiting** 66:20
67:2,5
**waived** 26:2 65:13
65:20
**waiver** 3:14 45:20
54:21 62:24

**walked** 21:11
**want** 14:3,4,6
27:14 28:1,1,24
29:5 30:18 31:10
31:23 32:21 34:1
34:6 36:10,12
37:6,10,10,18,25
38:13 39:17 41:11
44:18 46:24 47:8
47:13,14,21,21,22
49:11,15,19,20,20
50:2,15,17,17
51:4,6,13,22
52:22,23,25 53:15
54:9 55:8,22 59:8
59:20 62:1 64:2
68:16,24 69:13
71:2,20 72:8
**wanted** 44:1
53:18 69:1
**wants** 29:3
**warmuth** 7:8,13
11:4,5,5 51:23,25
52:3,13,17
**warn** 13:6
**waste** 41:23
**wasting** 26:24
**watching** 52:18
**waterfall** 40:3
**way** 22:9 25:23
32:19 36:3 46:24
47:14,20,21 49:12
49:25 61:3 62:22
63:5 64:20 66:2
68:6
**we've** 11:14 23:18
35:10 40:6 44:3
45:21 64:25 66:19
67:1,5 69:2
**week** 37:5 39:3
46:22 47:11,17
**weekly** 34:25
35:12 36:5

| | **x** |
|---|---|
| **weeks** 36:23 42:16 44:2 | **x** 1:4,11 49:17 73:1 |
| **weigh** 36:12 | |
| **went** 66:17 | **y** |
| **west** 6:17 7:3 | |
| **widely** 16:8 23:5 | **y** 49:18 |
| **wild** 5:17 10:20 | **yang** 8:8 11:2,2 |
| **willing** 37:18 | 24:21 31:20 36:10 |
| 47:14 50:22 68:24 | 47:3 52:14 55:6,7 |
| **willingness** 64:12 | 56:18,20 57:13 |
| **wilmington** 19:2 | 62:16,22 63:1,3,7 |
| 51:5 | 63:18 65:11,15,18 |
| **win** 50:23,23,25 | 67:14,16,21 69:2 |
| **winddown** 23:16 | 69:8 70:5,7,12,15 |
| **winding** 16:13 | 71:22,25 |
| **winters** 6:15 7:1 | **yeah** 13:15 14:1 |
| 10:8 | 14:15 21:14 22:3 |
| **wish** 28:19 56:21 | 24:13 26:9 27:6 |
| 71:17 | 30:13 32:18 35:8 |
| **withholding** | 36:14 37:24 38:6 |
| 55:22 | 41:18 45:6 51:24 |
| **woodwork** 29:1 | 54:24 56:24 64:17 |
| **word** 69:10 | 65:17 67:4,11,16 |
| **words** 26:18 | 68:15 69:13 70:12 |
| **work** 11:14 15:23 | 70:15 |
| 16:12,17 24:2 | **year** 13:23 14:22 |
| 28:7 30:3 43:19 | 15:15 22:24 25:12 |
| 47:22 | 59:2 61:1 68:17 |
| **working** 11:11 | **years** 15:23 43:9 |
| 23:10 | **yesterday** 55:18 |
| **workout** 21:3 | 57:6 |
| **works** 68:11 | **york** 1:2,15 5:13 |
| **world** 48:18,24 | 6:18 7:4,18 12:4 |
| 49:17 63:25 | 15:2 16:19 54:4 |
| **worth** 17:25 | |
| **would've** 64:17,18 | **z** |
| **write** 69:9 | |
| **written** 26:15,16 | **zabel** 7:15 |
| **wrong** 43:7 | **zacharsky** 9:11 |
| **wrote** 50:16 | 56:23,25 57:2,3 |
| | 58:13 |
| | **zoning** 28:4 |