1   UNITED STATES BANKRUPTCY COURT

2   EASTERN DISTRICT OF NEW YORK

3   Case No. 8-16-75545-reg

4   - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6

7   DOWLING COLLEGE,

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - -x

11

12                 United States Bankruptcy Court

13                 290 Federal Plaza

14                 Central Islip, New York 11722

15

16                 December 15, 2016

17                 10:06 AM

18

19

20

21  B E F O R E:

22  HON. ROBERT E. GROSSMAN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  UNKNOWN

1    HEARING re [39] Ex Parte Order to Schedule Hearing on [13]

2    Motion approving bidding procedures for the sale of the

3    Debtor's Oakdale campus, scheduling an auction and a sale

4    hearing Free and Clear of Liens under 11 U.S.C 363(f) by Joseph

5    Charles Corneau on behalf of Dowling College.

6

7    HEARING re [31] Final ADJ Order to Schedule Emergency Hearing

8    on [9] Motion for Authority to Obtain Credit Under Section

9    364(b), Rule 4001(c) or (d) to Obtain Post-Petition Secured,

10   Superpriority Financing Pursuant to 11 U.S.C. Sections 105,

11   361, 362, 363, and 364 and (B) to Utilize Cash Collateral

12   Pursuant to 11 U.S.C. Section 363; Adequate Protection to Pre-

13   Petition Secured Creditors Pursuant to 11 U.S.C. Sections 361,

14   362, 363 and 364 by Joseph Charles Corneau on behalf of Dowling

15   College.

16

17   HEARING re [34] ADJ Order to Schedule Emergency Hearing on [7]

18   Application to Employ Pursuant to Sections 105(a) and 363(b) of

19   the Bankruptcy Code for an Order Authorizing RSR Consulting,

20   LLC to Continue to Provide the Debtor with a Chief

21   Restructuring Officer and Additional Personnel, and Designating

22   Robert S. Rosenfeld as Chief Restructuring Officer to the

23   Debtor Effective as of the Petition Date by Lauren Catherine

24   Kiss on behalf of Dowling College.

25

1   HEARING re [38] ADJ Order to Schedule Emergency Hearing on [13]

2   Motion to Sell Property [14] Motion to Sell Property of the

3   Estate Free and Clear of Liens under 11 U.S.C 363(f) Approving

4   Sale Procedures for Residential Portfolio by Joseph Charles

5   Corneau on behalf of Dowling College.

6

7   HEARING re [40] ADJ Order to Schedule Emergency Hearing on [15]

8   Application to Employ A&G Realty Partners, LLC and Madison Hawk

9   Partners, LLC as Real Estate Advisors to the Debtor, Nunc Pro

10  Tunc to the Petition Date by Joseph Charles Corneau on behalf

11  of Dowling College.

12

13  HEARING re [41] ADJ Order to Schedule Emergency Hearing on [16]

14  Application to Employ Douglas Elliman as Real Estate Broker for

15  the Debtor, Nunc Pro Tunc to the Petition Date by Joseph

16  Charles Corneau on behalf of Dowling College.

17

18  HEARING re [35] Final ADJ Order to Schedule Emergency Hearing

19  on [10] Motion to Authorize the Closing and Balance Transfers

20  of Certain Prepetition Bank Accounts and Granting a Limited

21  Waiver of Section 345 Investment and Deposit Requirements by

22  Joseph Charles Corneau on behalf of Dowling College.

23

24

25

1    HEARING re [36] Final ADJ Order to Schedule Emergency Hearing

2    on [11] Motion to Pay Prepetition Payroll and To Pay Union by

3    Joseph Charles Corneau on behalf of Dowling College.

4

5    HEARING re [37] Final ADJ Order to Schedule Emergency Hearing

6    on [12] Motion to Pursuant to Sections 105(a) and 363(b) of the

7    Bankruptcy Code Authorizing the Debtor to Continue its Existing

8    Insurance Programs and Related Agreements, Including Premium

9    Financing Agreement and To Pay Certain Prepetition Insurance

10   Premiums, Claims and Related Expenses by Joseph Charles Corneau

11   on behalf of Dowling College.

12

13   HEARING re [21] Motion to Authorize/Direct Pursuant to Local

14   Rule 2016-1 and 11 U.S.C. Sections 105(a) and 331, Establishing

15   Procedures for Interim Compensation and Reimbursement of

16   Expenses of Professionals by Joseph Charles Corneau on behalf

17   of Dowling College.

18

19   HEARING re [22] Motion to Authorize/Direct Pursuant to Sections

20   105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule

21   9019 for an Order Authorizing the Debtor to Enter Into and

22   Perform Under Plan Support Agreement by Lauren Catherine Kiss

23   on behalf of Dowling College.

24

25

1    HEARING re [20] Motion to Reject Lease or Executory Contract

2    Pursuant to Section 365(a) of the Bankruptcy Code, to Reject

3    Certain Unexpired Leases Effective as of the Petition Date by

4    Joseph Charles Corneau on behalf of Dowling College.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    OUTTEN & GOLDEN LLP

4         Attorneys for Lori Zaikowski, Creditor

5         3 Park Avenue, 29th Floor

6         New York, NY 10016

7

8    BY:   JACK A. RAISNER (TELEPHONICALLY)

9

10   GARFUNKEL WILD, P.C.

11        Attorneys for UMB Bank, National Association as Indenture

12        Trustee, Creditor

13        111 Great Neck Road

14        Great Neck, NY 11021

15

16   BY:   ADAM T. BERKOWITZ

17

18   SILVERMAN ACAMPORA LLP

19        Attorneys for Official Committee of Unsecured Creditors

20        100 Jericho Quadrangle

21        Jericho, NY 11753

22

23   BY:   GERARD LUCKMAN

24        KENNETH SILVERMAN

25

```
 1   MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO

 2         Attorneys for UMB Bank at Bond Trustee

 3         One Financial Center

 4         Boston, MA 02110

 5

 6   BY:   IAN A. HAMMEL

 7

 8   UNITED STATES DEPARTMENT OF JUSTICE

 9         Attorney for the U.S. Trustee

10         560 Federal Plaza

11         Central Islip, NY 11722

12

13   BY:   CHRISTINE BLACK

14

15   KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

16         Attorneys for the Debtor

17         200 West 41st Street, 17th Floor

18         New York NY 10036

19

20   BY:   SEAN C. SOUTHARD

21         LAUREN CATHERINE KISS

22

23

24

25
```

1   STIM & WARMUTH PC

2        Attorneys for Kimberly Dawn Poppiti, Creditor

3        2 Eighth Street

4        Farmingville, NY 11738

5

6   BY:   GLENN P. WARMUTH

7

8   MEYER SUOZZI ENGLISH & KLEIN P.C.

9        Attorneys for Certain Members Of The Dowling College

10       Board of Trustees, Interested Party

11       990 Stewart Avenue, Suite 300 PO Box 9194

12       Garden City, NY 11530

13

14  BY:   HOWARD B. KLEINBERG

15

16  CERTILMAN BALIN ADLER & HYMAN

17       Attorneys for ACA Financial Guaranty Corp., Creditor

18       90 Merrick Avenue

19       East Meadow, NY 11554

20

21  BY:   RICHARD J. MCCORD

22

23  ALSO APPEARING:

24  MARYELLEN BRIDGEMAN

25  CARLOS CUNHA

Page 9

1                    P R O C E E D I N G S

2              THE COURT:  Good morning, please be seated.

3              MR. LUCKMAN:  Good morning, Your Honor.

4              CLERK:  Matters on Dowling College.

5              MR. SOUTHARD:  Good morning, Your Honor.  Sean

6    Southard, of Kelstadt Winters Jureller Southard & Stevens on

7    behalf of Dowling College, the debtor in position.  With me

8    this morning, Your Honor, is Lauren Kiss from my office.  Also

9    here on behalf of the Debtor is Robert Rosenfeld, the Debtor's

10   chief restructuring officer.

11             MR. LUCKMAN:  Good morning, Your Honor, Gerard

12   Luckman, Silverman Acampora, proposed counsel for the official

13   committee of unsecured creditors.  Also with me today is Robert

14   Ansell.

15             MR. ANSELL:  Good morning, Your Honor.

16             THE COURT:  Good morning.

17             MS. BLACK:  Good morning, Your Honor, Christine

18   Black, Office of the United States Trustee.

19             MR. BERKOWITZ:  Good morning, Your Honor.  Adam

20   Berkowitz of Garfunkel Wild, together with Ian Hammel of Mintz

21   Levin on behalf of UMB Bank, the bond trustee.

22             MR. MCCORD:  Good morning, Your Honor, Certilman

23   Balin  for ACA Financial Corp. by Richard McCord.

24             MR. KLEINBERG:  Good morning, Judge, Howard

25   Kleinberg, Meyer Suozzi, for the board of trustees for Dowling

1    College.

2            MR. WARMUTH:  Good morning, Your Honor, Glenn

3    Warmuth, Stim & Warmuth for Kimberly Poppiti.

4            MR. KNAPP:  James Knapp, Assistant U.S. Attorney for

5    the United States Department of Education, good morning, Your

6    Honor.

7            CLERK:  Please state your phone appearance.

8            MR. RAISNER:  It's Jack Raisner on behalf of Ms.

9    Zaikowski and the putative foreign class in the adversary.

10            THE COURT:  That's it?  Okay.

11            MR. SOUTHARD:  Thank you, again.  Good morning, Your

12    Honor.  Sean Southard, for the record, on behalf of the Debtor.

13            Your Honor, since the first-day hearings before you

14    on December 12th, Your Honor entered a number of orders in

15    relation to that emergency relief that we sought on those first

16    days, and scheduled further hearings on various of those

17    motions for this morning, as well as certain other motions were

18    scheduled for this morning's calendar, not previously on before

19    Your Honor.

20            Since that last hearing, just in terms of items that

21    have transpired, Your Honor, notice of the commencement of the

22    Chapter 11 case was served, broadly, and we have received and

23    answered a number of inquiries by creditors, former students,

24    and based on their receipt of that notice, so I think the

25    notice was successful.  Your Honor, the schedules of assets and

1    liabilities and the statement of financial affairs were filed

2    this week, timely, and those are being reviewed by the relevant

3    parties in the case, having just recently been filed.

4            And perhaps most importantly, Your Honor, the U.S.

5    Trustee's Office did form a three-member committee on Friday of

6    last week, and that committee has retained, subject to Your

7    Honor's approval, the Silverman Acampora firm to assist them

8    with their role in this case.

9            Your Honor, the attorneys at the Silverman firm did

10   immediately contact my office after their proposed retention

11   and selection by the committee, and began getting up to speed

12   very quickly, including over the weekend, which we appreciate.

13   And we've worked with them pretty extensively through the first

14   part of this week.

15           So as of last night, I am pleased to say that I think

16   we are largely consensual with regard to all of the relief we

17   seek this morning before Your Honor with the committee.

18           The committee did file a statement indicating certain

19   of the motions as of early yesterday that they were in effect,

20   signed off on after having reviewed and discussed with us, I

21   would refer to those as the more administrative-type motions

22   that Your Honor had essentially previously approved.

23           And they were really more focused on, over the last

24   couple of days, the DIP financing and cash collateral motion,

25   the bid procedures associated with the Oakdale Campus, and the

1  associated retention of the broker for the Oakdale Campus, and

2  then also the residential real estate sale procedures.  So

3  before I turn to the calendar this morning, I thought I met let

4  committee counsel offer Your Honor some remarks on their

5  initial thoughts on the case to date.

6           THE COURT:  Sure.

7           MR. LUCKMAN:  Good morning, Your Honor.  Gerard

8  Luckman, SilvermanAcampora.

9           The committee was formed on December 9th, late in the

10  evening, or sorry, early in the evening, they selected our firm

11  as counsel.  We have worked throughout the weekend and early

12  part of this week with the Debtor, the Debtor's professionals,

13  as well as the attorneys representing the lenders, DIP lenders.

14  We've had full cooperation from all of those parties.

15           Early on in the case we filed a notice of the

16  uncontroversial, non-controverted matters.  We did not file

17  objections because we were working through all of the other

18  items, and we're getting full cooperation and agreement by the

19  parties, as a result of our comments to the other pending

20  matters.  I hope that we will see those changes or revision

21  either have been circulated by redlines to the Court and put on

22  the record at today's hearing.

23           We also started receiving documentation from the

24  lenders regarding -- to start the challenge period under the

25  DIP loan, or the DIP financing.  We have it starting at 60 days

1    from the receipt of documents.  ACA has already sent us their

2    documents, and we would expect the documents from the other

3    lender probably by early next week to start that process.

4           We will be reviewing the schedules that have been

5    filed.  If we have any comments or questions, we will be taking

6    those to the Debtor at another point, but we thought it was

7    important to move the case forward and get the sales process

8    started, so we just worked with the professionals get that

9    done, rather than spending time filing objections and then

10   trying to resolve the objections.  We just told them our

11   objections, and we resolved them.  Thank you.

12           THE COURT:  Okay.

13           MR. SOUTHARD:  Thank you, Your Honor.  So what I

14   would propose to do, Your Honor, is essentially follow the

15   proposed agenda that was filed yesterday evening, which starts

16   off with what we refer to as the uncontested matters.  As I

17   mentioned, however, I do believe we are fully consensual on the

18   matters that we would intend to present to Your Honor this

19   morning.

20           So the first item on the calendar, Your Honor, is the

21   Debtor's motion, which was previously heard by Your Honor on

22   the first days, on an interim basis, and that is seeking

23   authority to continue with the retention of RSR Consulting,

24   LLC, who has provided the chief restructuring officer in Mr.

25   Rosenfeld to the Debtor, and that Your Honor previously

1    approved on an interim basis, subject to this morning's final

2    review.

3           The committee has filed a statement indicating no

4    objection, having reviewed it and discussed it with the Debtor,

5    and with Mr. Rosenfeld, and I believe the U.S. Trustee's office

6    has likewise signed off on the retention at this point.  So I

7    would ask Your Honor to enter a final order approving Mr.

8    Rosenfeld's retention through RSR Consulting.

9           THE COURT:  Who does he report to?

10          MR. SOUTHARD:  Ultimately, Mr. Rosenfeld reports to

11   the board of trustees.

12          THE COURT:  And who is he working for, the Debtor?

13          MR. SOUTHARD:  He is very much working for the

14   Debtor.  He is an officer of the Debtor.

15          THE COURT:  The board of trustees that existed at the

16   time, prepetition, is the same board of trustees that exists

17   now?

18          MR. SOUTHARD:  It is, Your Honor.  IN the immediate

19   period before the petition date, yes.  If we were to go back

20   historically, obviously that board of trustees has changed

21   during all prepetition periods.  But during the year, roughly,

22   before the bankruptcy, it's been -- the same trustees are still

23   those trustees.

24          THE COURT:  Will any advice or discussions he has

25   with the board of trustees be deemed in any way privileged, or

1    will it be subject to full disclosure to all parties, by both

2    the board of trustees, and Mr. Rosenfeld?

3              MR. SOUTHARD:  Your Honor, I would believe --

4              THE COURT:  Because the board has its own lawyer,

5    doesn't it?

6              MR. SOUTHARD:  The board -- individual board members

7    are represented by Mr. Kleinberg, of the Meyer Suozzi firm.  So

8    in answer to Your Honor's question, would they be privileged

9    communications, I think it would depend on the extent to which

10   my office was present in those communications, and it was an

11   attorney-client kind of discussion.

12             THE COURT:  But if you are not present --

13             MR. SOUTHARD:  Then I would think they are not.

14             THE COURT:  If you're not present, and Mr. Rosenfeld

15   is asked to participate in conversation with members of the

16   board and their counsel, or the board and its counsel, that is

17   not going to be deemed prejudice --

18             MR. SOUTHARD:  Privileged.

19             THE COURT:  Privileged.

20             MR. SOUTHARD:  And without having previously

21   considered the matter, Your Honor, I think the answer is no.

22             THE COURT:  Well, Mr. Kleinberg is here, and he

23   represents those parties.  Do you agree, Mr. Kleinberg, on

24   behalf of those, that no privilege will be raised with regard

25   to conversations between Mr. Rosenfeld and his position as

1    chief restructuring officer, and members of the board, or the

2    board itself.

3            MR. KLEINBERG:  He's not an attorney, so when he

4    speaks to the board, as far as I'm aware, there is no

5    privilege.  Suffice it to say, we would have to be careful

6    between what he say to the board and what I say to the board,

7    because there clearly is a privilege between myself and those

8    board members.

9            THE COURT:  Okay.  Not okay, I necessarily agree, but

10   okay, I understand.

11           MR. KLEINBERG:  And that's our position.

12           THE COURT:  But I'm willing to retain him, but under

13   no circumstance will any party that I can see now be able to

14   argue that he is agent or representative of the board or any

15   member of the board in any potential action, or anything.  So

16   you -- I don't think it's a problem, and I'm willing to retain

17   him, but I want the record to be clear that I'm identifying

18   this, and giving people an opportunity to speak to it.

19           MR. KLEINBERG:  That I clearly agree with.  Mr.

20   Rosenfeld and his firm are being retained by the college, as an

21   entity.  The board is the board, the board directs, ultimately,

22   the decisions of the college through its executives, but Mr.

23   Rosenfeld's position is as a chief officer.  Not an executive,

24   but a restructuring officer in this case.

25           THE COURT:  Can the board terminate him?

1          MR. KLEINBERG:  Subject to his retention agreement

2     and court approval, yes.

3          THE COURT:  It's got to be subject to my approval.

4          MR. KLEINBERG:  Absolutely.

5          THE COURT:  All right, okay.  Anybody else want to be

6     heard on this?  Court will grant the motion.

7          MR. SOUTHARD:  Thank you, thank you.  The next motion

8     on this morning's calendar is the Debtor's motion to permit the

9     closing of certain prepetition bank accounts, and certain

10    limited relief, relative to Section 345 of the Bankruptcy Code.

11    This is, in effect, the bank accounts motion.  Your Honor, the

12    committee did review this motion, and I should say, Your Honor

13    previously granted interim relief associated with this motion.

14         Again, for the record, the proposal is to freeze any

15    accounts, subject to the further order of the Court, that may

16    arguably contain restricted funds.  And we have committed to

17    further investigate and to report out to Your Honor and to the

18    other constituents in the case our belief as to the extent of

19    those restraints and restrictions, and then ultimately seek a

20    further order from Your Honor before any of those monies are

21    moved.  Those that, however, contain unrestricted funds, we

22    would propose to close, deposit in newly-opened DIP accounts,

23    and ultimately use in connection with the operations in this

24    administration of this case.

25         THE COURT:  Well, the determination as to whether or

1    not they restricted funds or not, we're not making now.  We're

2    just making mechanical decision, which is I'll permit you open

3    and close accounts as you deem appropriate, as long as the

4    legal rights to the parties to those funds are unaffected,

5    without further order of the Court.

6              MR. SOUTHARD:  That's correct, Your Honor.

7              THE COURT:  Anyone else want to be heard on that?

8              MR. LUCKMAN:  Your Honor, we were comfortable with

9    the explanation that the Debtor was working to determine what

10   funds were unrestricted versus what we distributed.  We spoke

11   with the Office of the United States Trustee regarding the

12   amount in the accounts that were already being closed and

13   reopened for the time period being allowed, or being provided

14   for the Debtor to identify which funds were restricted versus

15   unrestricted, and then moving those accounts at the appropriate

16   time, subject to the further order for the Court.  And as long

17   as it was subject to the further order of the Court, we were

18   comfortable with the process.

19             THE COURT:  Who has signature authority on those

20   accounts now?

21             MR. SOUTHARD:  Your Honor, Mr. Rosenfeld has

22   signature authority.

23             THE COURT:  Are there dual signatures required to

24   dispute any of the funds, substantial funds.

25             MR. SOUTHARD:  I don't believe so, Your Honor.

1    THE COURT:  I think everybody's comfortable.

2    MR. LUCKMAN:  I would opposed to anybody but Mr.

3 Rosenfeld signing any of these checks, so if you --

4    THE COURT:  Would you be opposed to somebody in

5 addition to Mr. Rosenfeld?

6    MR. LUCKMAN:  Yes.

7    THE COURT:  You only want Mr. Rosenfeld?

8    MR. LUCKMAN:  Yes.

9    THE COURT:  Anybody else?

10    MS. BLACK:  Your Honor, I'm not taking a position on

11 that, but we did review the order with respect to the bank

12 accounts.  There's a procedure in there for the transfer of

13 money into the DIP accounts, so we're satisfied with the

14 provisions set forth therein.  There's no official 345 waiver.

15 It's something that will be carried for another 60 days, I

16 believe, so that that can be worked out once they review the

17 status of each of the bank accounts.

18    MR. SOUTHARD:  Yes, Your Honor.  We agreed that we

19 are not technically seeking a waiver of Section 345, but rather

20 adjourning consideration and giving us extra time to comply.

21    THE COURT:  All right, so Mr. Rosenfeld ends up with

22 sole signature power on that.  He will be directed in that by -

23 -

24    MR. SOUTHARD:  By Your Honor's order of the Court.

25    THE COURT:  And on a daily basis, budget will

1    control?

2            MR. SOUTHARD:  That's correct, Your Honor.

3            THE COURT:  Okay.  Court will grant the motion.

4            MR. SOUTHARD:  Thank you, Your Honor.  The third item

5    on this morning's calendar is the Debtor's motion seeking a

6    final order to authorize the Debtor to make payments associated

7    with the Debtor's employees and payroll, and related

8    obligations.  Your Honor previously approved this on the first

9    day, on an interim basis, and the committee has indicated no

10   objection.

11           THE COURT:  So, these are the folks who still work

12   there?

13           MR. SOUTHARD:  That's correct, Your Honor.  There are

14   nine employees.

15           THE COURT:  There are a total of nine employees?

16           MR. SOUTHARD:  Correct.

17           THE COURT:  Or nine employees in a union and other

18   people?

19           MR. SOUTHARD:  A total of nine, three of which are

20   unionized.

21           THE COURT:  The Court will grant the motion.

22           MR. SOUTHARD:  Thank you, Your Honor.  The next

23   matter on the calendar this morning is the Debtor's motion for

24   final order authorizing it to continue to use its exiting

25   insurance programs and related insurance premium financing.

1    Again, Your Honor, approved on an interim basis at the first

2    day hearings.

3            The relief sought here, which covers, essentially,

4    the continuation of all the Debtor's required insurance

5    policies and coverages during the post-petition period, and

6    payment of associated financing.  The committee has reviewed

7    this motion, and likewise indicated no objection.

8            THE COURT:  And this includes the D&O policy, to the

9    extent there is one?

10            MR. SOUTHARD:  Yeah, no, Your Honor, in terms of

11    financing, the D&O policy was prepaid.  So the D&O coverage

12    does not require financing during the post-petition period.

13    Right now there is a one-year policy that was prepaid as of

14    October 1st.  And that, so that policy is not in force and

15    effect, but it doesn't require any further payments in terms of

16    premium.

17            THE COURT:  And it's in full force and effect until

18    October of '17?

19            MR. SOUTHARD:  Correct, Your Honor.

20            THE COURT:  All right.  We'll worry about it then.

21    And all the other policies stay in place?

22            MR. SOUTHARD:  Yes, Your Honor.

23            THE COURT:  Now, there's no -- I read someplace, and

24    this may have nothing to do with this, that the college self-

25    insured its health plan --

1          MR. SOUTHARD:  That's correct.

2          THE COURT:  With a contract party being used to pay

3     the bills, and then pay any excess above the set amount.  Is

4     that policy contained in these policies?

5          MR. SOUTHARD:  It is not, Your Honor.  It is not.

6     That self-insured healthcare plan has effectively been

7     terminated, back in June of 2016.  That plan is not the subject

8     of this motion.

9          THE COURT:  Well, the counterparty to that, and I

10    don't know what company was it, or is it?

11         MR. SOUTHARD:  Cigna was what we would refer to as a

12    third-party administrator.  And in essence, they processed

13    claims --

14         THE COURT:  Have they turned over the documents yet?

15         MR. SOUTHARD:  They have not provided all the

16    information that the Debtor requires yet.

17         THE COURT:  Well, it's going to be hard to figure out

18    what some people are owed, at least in their minds, if the

19    company that was responsible for mechanically prosecuting the

20    claims, and in some cases maybe paying, refuses to tell the

21    Debtor what the status is.  So I would like somebody to tee up,

22    like, now, and tell those guys they got two choices, either

23    turn it over, or I'm going to order them to turn it over.

24         MR. LUCKMAN:  Your Honor, the committee has expressed

25    interest in this issue as well.  It wasn't on for today, as far

1    as the insurance premium financing, but it has come up -- was

2    raised as a concern with how far, or what universe of potential

3    claims in this case may be, because this termination is rather

4    abrupt.  There are significant claims that go back even prior

5    to the termination that were unpaid, and if it is of grave

6    concern to the city -- to the committee, regarding the extent

7    of the liabilities that might --

8            THE COURT:  Well, my concern is less institutional

9    than it is personal to individuals who have no idea if their

10   bills were paid, are probably being hit on a weekly basis with

11   some bills that they claim they're owed, can't do anything

12   about it, and have nobody to talk to.  And while we're all

13   worried about large claims and institutions, looking through

14   176 pages of schedules, there are a bunch of people here who

15   got hurt.  Now, we all need to make sure we can quantify that.

16   I don't know if we can solve it for them, but we need to be

17   able to quantify what position they're in.

18           MR. SILVERMAN:  Precisely, Your Honor.  In our first

19   committee meeting, it was actually raised by members of the

20   committee that they were unclear as to what was covered and

21   what not -- what wasn't covered, and some of them were getting

22   chargebacks for things that they thought had been covered.  So

23   this is one of our projects that we passed.

24           Again, not on for today, but clearly something that

25   we're going to work with the Debtor to get the insurance --

1        THE COURT:  No, I didn't want to imply that it was on

2    today, but it was one of the things that I had read in the

3    papers, and they had mentioned -- I forget it, but I said it.

4    Does anybody have any -- want to be heard at all on the

5    insurance motion?  The Court will grant that motion.

6        MR. SOUTHARD:  Thank you, Your Honor.  Your Honor,

7    the next item on this morning's calendar is the Debtor's

8    application to retain Douglas Ellerman as the real estate

9    broker for the Debtor associated with the residential

10   properties.

11       Your Honor, this motion seeks the retention of

12   Douglas Ellerman under both the 327 and 328.  The proposal that

13   Douglas Ellerman be paid its commission, which would either be

14   four percent at the maximum, or 2.5 percent in the event that

15   one of the existing tenants should be the purchaser, on the

16   theory that less work is involved for that effort.

17       It would be paid that commission ultimately out of

18   the proceeds of sale, which is customary at the closing for a

19   residential real estate closing of this type, but that Douglas

20   Ellerman would nonetheless be required to come back and make a

21   fee application to Your Honor, a final fee application.  The

22   committee has reviewed that application and has no objection,

23   has stated that in their filing.  I believe the U.S. trustee's

24   office is likewise accepting of that retention.

25       THE COURT:  And the fund that has the first secured

1   position on these has no objection to this process?

2          MR. HAMMEL:  Good morning, Your Honor.  Ian Hammel on

3   behalf of UMD, no objection.

4          THE COURT:  Okay.  Anybody else wish to be heard?

5   The Court will grant the motion.

6          MR. SOUTHARD:  Thank you, Your Honor.  The next

7   motion on the calendar this morning, Your Honor, is the

8   Debtor's motion under Section 365 to reject certain of its

9   unexpired leases nunc pro tunc to the petition date.  Your

10  Honor, This motion was filed on the first day of the case, and

11  was served soon thereafter, once we received today's date, in

12  terms of scheduling.  There are currently 11 leases listed on

13  this motion, and Schedule 1 attached to it.

14          I will say, it has come to the Debtor's attention

15  that there are a couple of other leases, now that the schedules

16  have been completed, that will likewise require rejection in

17  the future.  I just note that for the record.  As it relates to

18  the current motion, essentially the Debtor has determined that

19  the office equipment and computers, printers, copiers that are

20  the nature of these leases are unnecessary in relation to the

21  wind-down of its operation, and accordingly, to avoid incurring

22  the unnecessary potential administrative expenses under the

23  leases, the Debtor seeks the entry of Your Honor's order to

24  reject those leases effective as of the petition date.

25          THE COURT:  One of these leases offered is for

1    computers, I guess 12 or 13 computers that are also shown to be

2    missing?

3            MR. SOUTHARD:  I believe that is the case, Your

4    Honor.  And what happened there, there was a theft.  And that

5    theft was reported and investigated by the local police, and

6    insurance claims have been made associated with that theft, but

7    we do seek to reject the lease associated with that.  That

8    counterparty has been given notice, and there have been no

9    objections.

10           THE COURT:  Okay.  So he's aware that he's not

11   getting his computers back at the moment, we're just rejecting

12   the lease?

13           MR. SOUTHARD:  Very much aware, Your Honor.

14           THE COURT:  All right, anybody else want to be heard

15   on this?

16           MR. LUCKMAN:  We had no issues or objection.  We just

17   wanted to make sure any information that's needed by the

18   company is backed up off the server or the computers that are

19   remaining leases that are being rejected.  I'm sure the Debtor

20   has done that already, prior to rejecting these leases.

21           THE COURT:  Yeah, does any of the leases -- do any of

22   the leases that are being rejected have anything to do with

23   maintaining or inventorying information?

24           MR. SOUTHARD:  My understanding is the answer is no,

25   Your Honor.  And I'm receiving confirmation from the CRO in

1    that respect?

2          MR. SILVERMAN:  Your Honor, to be helpful, the

3    committee views this case basically as a liquidating 11, and

4    everybody here is a fiduciary, and we've now made clear that

5    Mr. Rosenfeld is a fiduciary to the estate.  And I just, I

6    think it would accelerate some of the information-gathering.

7    If I may ask Mr. Rosenfeld, has the cloud -- all the

8    information and info in the cloud been preserved at this point?

9          THE COURT:  Sir, I can't hear you.

10          MR. ROSENFELD:  It's been backed up.  The

11    information's been backed up.  Not necessarily in the cloud,

12    but it's basically in their system, the hardware.

13          MR. SOUTHARD:  They have hard servers.

14          THE COURT:  Well, having lived through this in other

15    cases, and increasingly living through this world of not

16    understanding it, I don't understand what the cloud means -- I

17    mean, I understand the concept that somehow something's here,

18    and it goes up there, and you can pull it back down.

19          When this case gets going, and people start not

20    cooperating, which is normal in cases, and you get a subpoena,

21    or you get a request for information, are there any documents

22    or information groups that you can, Mr. Rosenfeld, that you can

23    tell me that by the rejecting of these leases, your ability to

24    provide that information will in any way be impaired?

25          MR. ROSENFELD:  No, sir.  Everything that would --

1    all the information that is needed, that we believe will be

2    needed for the future is on the equipment that we have in place

3    that is not being rejected.  What we are rejecting,.  We do not

4    need the information on those computers.

5            THE COURT:  So you can pull up the history of

6    students, teachers, employees, who paid what, government

7    grants, what happened, all that?

8            MR. SOUTHARD:  Well, Your Honor, to be clear, Dowling

9    does not have the most advanced IT systems.  Indeed, that was

10   one of the many challenges that Dowling had, historically.  So

11   pulling information generally, depending on what type of

12   information we're talking about -- academic records and the

13   like -- that can be done fairly easily.  But it is an old and

14   somewhat antiquated system that the Debtor uses.

15           THE COURT:  Just as an example, whatever you have, I

16   can't -- none of us can make what doesn't exist, exist.

17           MR. SOUTHARD:  Yes.

18           THE COURT:  I just want to make sure that there's

19   nothing we're doing today that doesn't impair the ability to

20   get what you do have, whatever that is.  Because if somebody

21   filed a proof of claim, as an example, a kid student saying

22   he's owed $2100 in overpayment for a Pell grant, which was

23   filed a couple of days ago, I have no idea what that means.  I

24   mean, I know what a Pell grant is, but I have no idea what that

25   claim is.  The ability to confirm that payment or what happened

1    to that student's money never existed, does exist?  And if it

2    does exist, I don't want anything to impair it.  If it never

3    existed, there's nothing I can do about it.

4              MR. SOUTHARD:  Does exist, and what we believe is

5    that none of the items that are associated with the rejection

6    this morning would impact the current ability to respond to

7    that.

8              THE COURT:  All right, that's fine.  The Court will

9    grant the motion.

10             MR. SOUTHARD:  Thank you, Your Honor.  Your Honor,

11   the next matter on the calendar this morning is Debtor's motion

12   for an administrative order to approve interim compensation and

13   reimbursement of expenses for professionals retained by the

14   estate.  Your Honor, this is a standard form motion that

15   provides, in essence, for --

16             THE COURT:  Standard forms I can deal with.  You guys

17   jerry -- you changed it.

18             MR. SOUTHARD:  How so, Your Honor?

19             THE COURT:  Well, we would point it out, but you

20   know.  There's a standard we use in the Eastern District.  I

21   don't know whether you track the Southern District or not,

22   because having lived in both places, I forget, but there are

23   certain provisions that have been included in the interim

24   order, or the proposed interim order, that do not track our

25   standard.  If you intend it to, then I'll just put it back the

```
 1    way it should be.
 2            If you didn't intend that, then tell me why you want
 3    the changes.  But it's not my Court -- I guess my Court is this
 4    Court.  But I'm not going to try to explain to you now -- I
 5    guess I can do a couple -- what changes there are.  You guys
 6    made the changes.
 7            MR. SOUTHARD:  Well, Your Honor --
 8            THE COURT:  So if you're willing to live with the
 9    exact form of the Eastern District, I'm fine.
10            MR. SOUTHARD:  Your Honor, as I stand before you, I
11    am unware of any intentional changes.  And I will say that my
12    belief is that this form of motion and order was actually the
13    same one that was used before Judge Trust in the Long Beach
14    Medical Center.
15            THE COURT:  That's not my question.
16            MR. SOUTHARD:  And so I think that's what --
17            THE COURT:  Good answer, but not my question.
18            MR. SOUTHARD:  That's where we drew our forms from.
19            MR. LUCKMAN:  Your Honor, why don't we suggest that
20    the form of the Eastern District order will be submitted in
21    connection with this motion, or this application, and Mr.
22    Southard's office and my office will take a look at how this
23    form may have morphed or diverted or diverged from the
24    (indiscernible) --
25            THE COURT:  Yeah, if you guys aren't sure --
```

1        MR. LUCKMAN:  (indiscernible) of this district.

2        THE COURT:  If you're not sure, you can contact Ms.

3  Ryan, or have a call, and we'll point out the words -- if it

4  were just words, it wouldn't bother me, but there are concepts,

5  and a couple of those concepts I remember when we went to

6  interim orders years ago were discussed among the Judges' Group

7  out here, and we intended to put it in this way.

8        I've lost track between the Southern and Eastern,

9  because I'm trying to make everybody's life easier, but there

10 are some distinctions between Southern District and Eastern

11 District, and whatever Judge Trust may or may not have done,

12 that's his courtroom.

13       MR. SOUTHARD:  Yeah, by no means do I intend to

14 suggest that you should be --

15       THE COURT:  No, I need to follow them, too.

16       MR. SOUTHARD:  But just, what I know as I stand

17 before you is that's where we derived the form from.  So we

18 will make it  --

19       THE COURT:  All right, it doesn't have to come back

20 on.  I'll grant the motion subject to the changes.  If you all

21 don't agree, you can then either have me amend the order the

22 way I want it and sign it, or put it back on for another

23 hearing.  My suggestion is to just let me change it.

24       MR. SOUTHARD:  I think we will likely follow Your

25 Honor's suggestion.  Thank you.

1          THE COURT:  Since I'm the paymaster, okay.

2          MR. SOUTHARD:  Your Honor, thank you.  So the next

3    matter on the calendar this morning is one of the more

4    meaningful matters, which thankfully --

5          THE COURT:  I thought your fee app, the interims were

6    meaningful.

7          MR. SOUTHARD:  Well, when we get to that point, Your

8    Honor, those will be meaningful, yes.

9          THE COURT:  All right.

10         MR. SOUTHARD:  Your Honor, this is the Debtor's

11   motion to approve post-petition financing, and to approve the

12   granting of adequate protection in relation to the use of cash

13   collateral.  Your Honor, this is -- today's hearing is an

14   interim hearing, associated with this relief, which was

15   requested on the first day of the case, and for which Your

16   Honor granted emergency-style relief at the first-day hearings.

17         Your Honor, the committee has worked pretty

18   extensively with the Debtor, and the counsel to the various DIP

19   lenders during the last few days, and there have been many

20   discussions and negotiations, which I am pleased to say, have

21   found their way into a revised form of proposed order, which is

22   long-form order in relation -- and then tracks --

23         THE COURT:  That's the one I got early evening, last

24   night?

25         MR. SOUTHARD:  That's correct, Your Honor.  There

1    have not been any changes since the version that was submitted

2    to Your Honor.  And I will point out that-- and perhaps I can

3    let the committee, if they would like, go through the changes

4    that they have made, I think, for the betterment of the estate,

5    or I would be pleased to summarize those, whichever you would

6    prefer.

7         MR. LUCKMAN:  I'll do generally.  Your Honor, we were

8    faced with dealing with a complex order trying to establish the

9    liens and interest being provided to various lenders, with

10   varying collateral.  And the biggest problem with dealing with

11   this document, that others have dealt with for many, many

12   months, was that there were -- even after reaching an agreement

13   on it, of what the collateral package would be, there was a lot

14   of internal inconsistencies as the document was being revised.

15        We ended up putting a paragraph of clarification at

16   the very end, on the interim, rather than going through the

17   expense of having multiple attorneys trying to rewrite a whole

18   document, as far as the interim.  Whether that process is going

19   to happen in connection with the final -- it may make sense to

20   try to trip down the document, and actually explain what the

21   collateral packages are.

22        The committee's concerns at the onset were that it

23   appeared that there was going to be an effective cross-

24   collateralization, what I believe was being -- what we called

25   this -- there's two types, there are several types of loans.

1    There are what we call protective advances, or collateral

2    preservation loans, and then there's one loan for just the

3    general administration of the case, and for running the Debtor

4    until the liquidation process.

5         The committee didn't have a problem providing a full,

6    binding lien, or DIP lien for that portion of the loan, which

7    is about maybe 30-35 percent of the loan.  (indiscernible)

8    having super priority administrative claims going for that

9    portion of the loan.

10        But we did have a problem with regard to the balance

11   of the loan, which is more collateral preservation.  And what

12   we agreed was that the liens in that case, for those loans, it

13   would attach solely to the collateral secure on those loans.

14        THE COURT:  Prepetition collateral.

15        MR. LUCKMAN:  Prepetition.  There are issues with

16   regarding to liens on avoidance actions that we had a problem,

17   we took out.  We took out certain fall provisions that just

18   didn't make sense in the context of the liquidating Debtor.

19   And then we tried to deal with issue regarding challenge

20   periods --

21        THE COURT:  Weren't the Section 5 claims put back in

22   now?  That I told you to take out, now they're back in?

23        MR. SOUTHARD:  They appear in the order, Your Honor,

24   but they are made subject to a final order.  So in effect, they

25   show, but they're not there.

1              MR. LUCKMAN:  They are not in the interim, Your

2     Honor.  There are no liens on avoidance actions relief

3     following in the interim, and we do not believe -- and we're

4     certain that there will not be in connection with the final as

5     well.

6              THE COURT:  Well, I'm pretty certain, but the form of

7     order that was used to get to today, I can applaud counsel for

8     getting there, all of you, was like nine or ten pages, which I

9     kind of liked.  We've gone back to the 54 page, and then

10    adjusted the 54 page, leaving in any number of things that are

11    not going to be in, at least if you want me to sign it, a final

12    order.

13             So I'm very hesitant to sign an interim order, and

14    then get confused about what happens between the interim order

15    and the final order, if something occurs, did I enter an order

16    that gives them comfort, and gives them legal rights that I

17    never intend to do on a final?

18             So I'll give you a couple of examples, as we got

19    this, I got to read it late last night, and so I can't tell you

20    I remember anything -- all of what's in there.  But I believe

21    the Section 5 claim provision remains.  If someone says it

22    doesn't, then as another actually fairly clever move, in either

23    the note or the proposed order that says any collateral sold,

24    such as these houses, if you want me to sell today, the first

25    application to those funds, if the lender had been subject to a

1    Section 5 claim, or if any Section 5 claim had been

2    successfully prosecuted, the funds from this collateral goes to

3    pay their -- pay that off, pay their loan down.

4            So essentially you're getting to use -- it's not

5    collateral, you just have to use that to their benefit.  That's

6    a distinction, I have a great deal of trouble understanding the

7    difference.  And since I am never in the mood to have

8    litigation over my own orders, having lived though that as a

9    lawyer, trying to convince a judge he didn't say what he said,

10   I try to, if I can see these things, bring them up now.

11           So to make it clear, Section 5 claims are separate

12   and apart from the collateral package.  And I think including

13   the collateral package that creates a super priority.  Because

14   I have Lender A lending itself money, and then increasing the

15   priority of its position over any funds that may happen to not

16   be covered by the original loan, in order to preserve their own

17   collateral in what's essentially a liquidation.

18           So it's okay with me, as I said last time.  But let's

19   not get too greedy.  If there are Section 5 claims that a

20   lender does not have collateral on now, and that same lender is

21   the lender on this DIP, and wants a super priority, okay, but

22   it's not coming on to Section 5 claims.  So figure it out, and

23   I'm hesitant to -- I don't want to put it in the interim,

24   because I know I'm not going to do it in the final.  And if

25   people can't live with that, tell me now, and we'll see what

1    else we want to do with this case.

2        The next issue is changing the order priority of who

3    has the burden of proof on a stay question.  This document

4    basically says that if there's a default, and god knows

5    anything in this case can be a default, based on these

6    documents, without even getting to the plan support agreement,

7    which then cross-collateralizes itself to this agreement, so I

8    assume anything in the world is a default.

9        If the lenders haven't had the ability, or the order

10   we provide that 362 is waived, and they needn't come back to

11   court, rather the Debtor or the committee has to come back to

12   Court, and it is then their burden to extend the stay, or to

13   reinstate it, which is a totally different burden than someone

14   who's asking to lift it.  I just wrote a decision on this, in

15   dealing with 362.

16       I'm not interested in that.  I never have signed an

17   order that automatically lifts the stay.  If there's a default,

18   they can stop funding.  But I don't know who the classes are in

19   this case yet.  I don't know who has rights and who doesn't

20   have rights.  I don't know what this class action is about.  I

21   don't know who did what to whom.  And for me to sign an order

22   saying that if there's a default, the only thing that exists in

23   the case, which is the collateral, can be sold off at the

24   benefit of the secured creditor.

25       Now, the schedules show that you all believe the

1  collateral is worth far more than the debt, at this point.  Or

2  at least, claim to be.  I don't know.  The markets can tell us.

3  But I do have a suspicion that a secured creditor, who's owed

4  60, or whatever it is, anything above that, if he controls it -

5  - and I don't blame him, would sell it for somebody who will

6  pay him the amount that he's owed, and everybody else, don't

7  worry about it.  That might as well make it 7, I don't need an

8  11 to do that.

9          So the secured creditors are getting benefits by the

10  process.  The Debtor's getting benefits, the creditors are

11  getting benefits, but it's a benefit analysis.  And no analysis

12  will have me do things that I don't think are right.  I just

13  won't do it.  This isn't a case where somebody's telling me

14  I've got 1000 employees that are going to be on the street if I

15  convert the case.  This is a straight liquidation.  I'm willing

16  to leave it, fine.

17          I think an 11 is a good vehicle for this, because I

18  think it's going to be useful in a lot of different ways.  But

19  don't push it.  Just don't push it.  I'm not running this case

20  for the benefit of the secured creditors.  I don't run any case

21  for the benefit of the secured creditors.  They can take care

22  of themselves.

23          So they have rights, those rights should be

24  recognized.  I think they're giving post-petition financing.

25  They're entitled to rights under post-petition financing.

1    They're entitled to collateral for the post-petition financing.

2    But for the end, there's nothing in this case other than the

3    secured creditor -- everybody's got other things to do.

4           So what I suggest, again, that we can go through this

5    interim, which contains all the same stuff, or many of the same

6    things that I didn't want originally, and either I can take it

7    out, and then sign an order that I'm comfortable with to get

8    you from here to the final, or you can take it out and explain

9    to us why you want to leave certain things in.

10          But if you want to leave it the way it is now,

11   either I'm taking it out and I'll sign an order, or tell me

12   that just -- tell me you don't want it, you don't want any of

13   it.  Which doesn't make any sense, because if you're not going

14   to do any financing, we'll convert it.

15          So I think the answer is expand to the extent you

16   need to, within the limits, the current emergency order, the

17   plan support agreement, where something says you need a final

18   by December 30th.  I don't know if I can do that.  I really

19   don't.  I'm not going to make people change their plans,

20   because it's an artificial date.  I don't think there's any

21   difference -- this isn't a year-end issue.  There's no tax

22   issue.  Here.  I would suggest you go into the beginning of

23   January.  I'll give you an order that's good for there.  The

24   lender will -- and I told you last time, the lender will be

25   fully protected, whatever he puts up, for now.

1          Just give me something -- we can get to the final, we

2    can have this whole fight, and I'll listen to the arguments.

3    I'm not precluding him making an argument to me on the final,

4    but I don't need to have it twice, and I'm not prepared to have

5    it today.  So the only thing that would happen is I won't sign

6    the order.

7          MR. SOUTHARD:  Your Honor, I think that's helpful

8    information.  I suspect I will have some conversations with

9    counsel.

10          THE COURT:  I don't know why anybody who thought it

11    would a surprise, anybody who knows me --

12          MR. SOUTHARD:  To the lenders, and I think we can

13    have a conversion, and certainly make some revisions.  In terms

14    of the intention this morning, just from a timing perspective,

15    and the milestone that Your Honor referenced, the parties do

16    not expect at this point, and have adjusted that milestone

17    associated with the final order to push it beyond the expected

18    next hearing which Your Honor has given us, which is, I

19    believe, January 10th.  So I believe the milestone was adjusted

20    to accommodate that timing, and that's in that amended --

21          THE COURT:  Is there any reason we simply can't

22    extend the current order until January 10th?

23          MR. LUCKMAN:  Ask the lenders.

24          MR. HAMMEL:  Your Honor, I think we're going to have

25    to have a conversation about it.  As Your Honor perhaps

Page 41

1   anticipated, there may be something that are not in the current

2   form of order that we might be looking for.

3           THE COURT:  All right.  If you can show -- and these

4   guys, all these guys, including you, have done this.  To the

5   extent you can explain to me why there has to be an addition to

6   protect your new advance, I'm fine.

7           MR. HAMMEL:  Thank you, Your Honor.

8           THE COURT:  But that should be a rather narrow -- and

9   then we should take the current order, and just, I'll extend it

10  through January 10th.  The current -- we do it all the time.

11  We don't have to spend a lot of energy, spend a lot of money

12  rewriting things.  Get ready for January 10th, for a final.  I

13  suspect the committee will have more comments on the final, as

14  he said he will.  So why am I spending all this effort now?

15          I'll grant an extension between now and January 10th.

16  Just tell us what additions you would need that you all agree

17  with, and as long as it's not anywhere -- it doesn't alter what

18  I just said, I'm fine with it.  I'm not trying to hurt anybody.

19          MR. HAMMEL:  Thank you, Your Honor.

20          THE COURT:  So I think I'll be willing to do the same

21  thing I did before.  I'll grant an extension of the order for

22  the financing through January 10th.  You'll submit the form of

23  order, certainly it's covered in the motion papers, we've

24  covered everything, but submit the form of order that works on

25  consent of all the parties, tell us, and we'll sign it.  And

1    between now and then, we'll continue the existing order, if not

2    lapsing. I don't want you to have an order that lapsed today.

3    If I don't sign this order for a day or so, I'm covering you

4    between the gap period.  We'll bridge to whatever the point is

5    that I signed the order.  And I'll so order the record on that.

6              MR. SOUTHARD:  Thank you, thank you, Your Honor.

7              THE COURT:  All right.

8              MR. SOUTHARD:  Your Honor, the next time on the

9    calendar this morning is the first order that is market

10   contested, though again I believe we have, as of yesterday

11   evening, have a consensual motion and form of order to present

12   to Your Honor.

13             And this is the application to retain the A&G realty

14   partners, LLC, and Madison Hawk Partners, LLC, as the Debtor's

15   real estate advisors in relation to both the Oakdale Campus and

16   the Brookhaven Campus.  As it relates to current intentions,

17   however, their primary focus in the coming days will be on the

18   Oakdale Campus.  The motion and form of order proposed likewise

19   seek the retention under both 327 and 328, with the expectation

20   that the commission would be approved as a fixed fee.  The

21   commission that is proposed is four percent, in relation to the

22   sale of either of those campuses.

23             THE COURT:  And that's -- it's not four percent

24   twice.  It's four percent, split however they want it?

25             MR. SOUTHARD:  That's correct, Your Honor, there was

1    -- and indeed, there were some questions received from the U.S.

2    Trustee's office, as well as the committee on that question,

3    and seeking clarification about that question, because you have

4    two brokers working together on this that are sharing one

5    commission.

6           So a declaration was filed late yesterday evening by

7    -- on behalf of the Madison Hawk firm, making clear that they

8    will look only to the funds actually paid to A&G, which is the

9    way the terms of the order read, that the Debtor would pay the

10   commission to A&G, and then Madison Hawk will look to A&G only,

11   and not look to the Debtor's estate for any remuneration.

12          THE COURT:  And any dispute there will be done in

13   another court?

14          MR. SOUTHARD:  That's correct, Your Honor.  It won't

15   be your problem.

16          THE COURT:  That's important.

17          MR. SOUTHARD:  Your Honor, for the record, I also

18   wanted to mention that there have been a number of discussions

19   about how to approach the concept of co-brokers, should a buyer

20   come with a broker.  And I will represent to the Court that

21   based upon extensive discussion of the committee, and the

22   Madison Hawk and A&G firms, that the Debtor's professionals

23   that are being retained, the advisors this morning, will agree

24   if a half a point to be made available in the event of a co-

25   broker.  So one-half of a point out of their four percent

1    commission --

2          THE COURT:  Who are the Debtor's advisors?

3          MR. SOUTHARD:  A&G and Madison Hawk, Your Honor.

4          THE COURT:  So if somebody else brings a broker,

5    they'll give up a half a point out of the four?

6          MR. SOUTHARD:  Correct.  And that -- from the

7    committee's perspective, is designed to encourage brokers to

8    bring their buyers to the table.  And ultimately, the Debtor

9    believes that to be a fair and reasonable approach to the

10   concern of the committee, and I believe all the parties are

11   accepting that arrangement.  And the marketing materials will

12   likewise make reference to the availability of a co-broker fee.

13         THE COURT:  Yeah, this property has been shopped

14   prior to this?

15         MR. SOUTHARD:  Your Honor, yes.  The Debtor ran a

16   very extensive going concern sale process, basically a year

17   ago, and this property was part of that going concern sale

18   process.  It has not been actively marketed --

19         THE COURT:  My only point is, are there any potential

20   buyers that you are excluding from the pool of people that A&G

21   would be paid?  A lot of times when you have circumstances

22   where a Debtor owns a building basically says, "I found A, B,

23   C, and D, and you agreed that if they're the buyer, you get a

24   quarter of a point," or something.

25         MR. SOUTHARD:  Right.

1          THE COURT:  Is there any -- in this case, do we have

2    any restrictions on a sale to anyone that would alter the

3    compensation or commissions to A&G and the other company?

4          MR. SOUTHARD:  We do not, Your Honor.

5          THE COURT:  All right.

6          MR. SOUTHARD:  And I think the primary reason is that

7    it was a different process that was run before --

8          THE COURT:  I don't have an interest in that, I just

9    want to make clear, or make sure that we don't have that issue,

10   because that pops up every once in a while.  So any buyer,

11   brought by anyone, these firms will be entitled to a four

12   percent commission?

13         MR. SOUTHARD:  Assuming we close that transaction.

14         THE COURT:  All right.  Anybody else want to be

15   heard?

16         MR. LUCKMAN:  Your Honor, as Mr. Southard said, this

17   was one application that we had a lot of conversation over with

18   the Debtor and the real estate professionals, regarding that it

19   was important for the committee to have the ability to for a

20   co-broker.  Not being fully up to speed with the Debtor's prior

21   marketing efforts, the existence of another broker out there

22   who may have a vying interest in the property, being able to be

23   compensated was important to us, as to not limit the exposure

24   of these properties.  And we're satisfied (indiscernible).

25         THE COURT:  All right.  Yes, sir.  What can I do for

Page 46

1    you?  Come on up.  And just tell me who you are.

2            MR. JAVAID:  My name is Kabir Javaid.  I am an alumni

3    of Dowling College.

4            THE COURT:  You are what?

5            MR. JAVAID:  I am an alumni of Dowling College.  I

6    read about the plan that the counsel has put together for the

7    sale of the two properties.  Initially, I thought it was the

8    entire package -- the houses with the two properties of the

9    college, which I thought was a very good idea, because the two

10   major properties, it's going to take a very long time to do

11   anything in the future, but I know that the Court has no

12   concern on that, nor does the counsel, either side, they're

13   just hear to just liquidate the property and just call it a

14   day.  One thing I wanted to ask --

15           THE COURT:  Well, that's not -- hold it.  To be fair,

16   all of these guys -- lenders, all of them, the only reason

17   they're here is they're trying to maximize the value of this

18   property.  So the theory that they will just -- they don't care

19   about that, their job as professionals, and as fiduciaries now,

20   is to maximize this value to get back to people who were owed

21   money the most money possible, and nobody can buy this without

22   me signing an order.

23           And my job is to make sure that the process they went

24   through was fair, that everybody had a chance to bid on it, and

25   then they make a recommendation as to in the end, who buys it,

1    and for what price.  So I don't want you to think that this is

2    just -- that they have no interest in maximizing the value.

3    That is their sole interest, otherwise they don't need any of

4    this.

5             MR. JAVAID:  My only concern with what I've read so

6    far is the fact that I don't see the concept of market in any

7    of the stuff that have read --

8             THE COURT:  Marketing or market?

9             MR. JAVAID:  Market, that let the market decide who

10   is going to be the winner.  Because I feel like at this point,

11   what we're pretty much doing is allowing one failure to set the

12   stage for the next failure.

13            THE COURT:  Let me just explain the process --

14            MR. JAVAID:  Well, what I'm seeing --

15            THE COURT:  Stop, stop.  They present to me what's

16   called a big procedure, which is the process by which they're

17   going to market this product.  They'll advertise it, they'll

18   send out brochures, they'll send it internationally, maybe.

19   You have two firms who earn four percent, they get four

20   percent, the bigger number, their four percent is higher.  It

21   is the ultimate incentive.  Brokers want to sell for the most

22   they can.

23            There'll be other folks who say, "We don't want you

24   to get the most, we want this property kept as a park," as an

25   example.  And they have their interests.  So everybody has

1    different interests.  But the process itself -- and you'll be

2    able to read it, it'll be online, will require the brokers to

3    acknowledge to me that they reached out as wide a net as

4    possible, solicited the most bids they could, and the whole

5    process is transparent.  You may not like it, you may not agree

6    with it, you may think they may not be very good at it.  You'll

7    understand it, and it'll be transparent.  I can't solve the

8    other portions.

9            MR. JAVAID:  My other concern is the fact that, how

10   long this process is going to take.  I just want to be very

11   clear, winter is upon us.  Another major thing is that is a

12   mansion of Vanderbilt himself.  It has significant historical

13   value, especially to me.  I mean, I went to that college, not

14   because of Dowling College, I went to that college because of

15   Vanderbilt's mansion.  So I just want to be very clear, I don't

16   want some not-for-profit company coming in, "Oh, here's my bid

17   for $30 million," and then three years later, "Oh, the bid has

18   not taken any --" So I want this to be very swift.

19           THE COURT:  Sir, you will have -- listen to me, you

20   will get, if you're a creditor, I don't know if you are, you

21   will get notice of this whole process.  At that point in time,

22   when they present to the Court the buyer, how much the buyer's

23   paying, you and anyone else who wishes to raise an issue, that

24   has standing to raise an issue will be entitled to raise an

25   issue.

1          One of the things we don't do -- I don't do, but most

2     Judges won't -- is get into hypotheticals about if so-and-so

3     buys it and they do X.  That's a conversation that never ends.

4     So I'm not -- I appreciate the fact that you have passion about

5     this.  You will have an opportunity, assuming you have

6     standing, which is a different question, to make that position

7     known.

8          The committee represents probably your interests if

9     you're a creditor, an unsecured creditor.  They have a website,

10    you can call them, talk to them.  I encourage you to stay

11    involved in it.  And again, I can't guarantee that you'll like

12    the answers, but I will guarantee you it'll be transparent.

13          MR. JAVAID:  The reason why I'm here right now, I

14    just have very, very clear thing that I wanted to say.  I want

15    -- I do not want the Debtors or the creditors to decide the

16    next person who's going to take over the property, period,

17    because in my opinion they're a failure, and a failure cannot

18    allow another failure to take hold --

19          THE COURT:  Well, the only person who can sign that

20    order is me.  You may not like what I do, but I'm the one who's

21    going to sign it.

22          MR. JAVAID:  That's fine.  But I will not allow a

23    Debtor a decide the next person --

24          THE COURT:  Well, as we come as the end of this

25    discussion, I don't want to let you walk away with the pretense

1    that it's up to you to allow or not.  One of the things I get

2    when they hand out these little uniforms is at this stage, it's

3    my decision, not yours.

4              MR. JAVAID:  I agree.

5              THE COURT:  You can make arguments, as they do.  But

6    -- and we're done with this discussion.  But I didn't want to

7    let that pass.  You can be passionate about it, you can want

8    your beliefs to carry the day, but at the end, the person you

9    look at is me.  I'm making the decision.

10             MR. JAVAID:  And second thing I wanted to --

11             THE COURT:  No, we're done.  Thank you.

12             MR. SOUTHARD:  Thank you, Your Honor.  Again, for the

13   record, Sean Southard, on behalf of the Debtor, Dowling

14   College.  Your Honor, I believe we were concluding the proposed

15   retention for the real estate agents, A&G and Madison Hawk --

16             THE COURT:  Try it again.  Anybody else want to be

17   heard?  Okay, come on up.

18             Mr. BAHAR:  My name is Joseph Bahar, I was employed

19   at Dowling College since 1970, and I worked there for 45 years.

20   I understand that this is a bankruptcy hearing.  What I'm

21   concerned about is a larger issue of losing an institution of

22   higher education on Long Island, and I'm very, very distressed

23   about that.  I retired, I was not even involved.  I'm not

24   concerned as much about the loss of the opportunity for

25   students to gain an education.  Over the years, many, many

1    students profited by the institution, in so many different ways

2    that we couldn't even discuss it here.

3            My concern is your entering in this bankruptcy has

4    already been processed, the finances have already been

5    acknowledged, the losses -- why hasn't there been any interest

6    by the federal government in seeking to save Dowling College as

7    an institution of higher education?  During the crisis of the

8    financial bailouts on Wall Street, there was much intervention

9    by federal governments, by different agencies, to save the

10   banks, to save Wall Street industries.

11           Here is a local community institution.  Why hasn't

12   anyone reached out from the government, from a credible source

13   to save this institution, to refuse the bankruptcy proceedings,

14   and to continue, perhaps under a new administration, perhaps

15   with new policies, new programs, to continue the educational

16   faculties that are absolutely necessary for the survival of

17   this community?  Thank you.

18           THE COURT:  Thank you.  Anybody else?  Okay, thank

19   you.  The Court will grant the motion.

20           MR. SOUTHARD:  Thank you, Your Honor.  The next item

21   on this morning's call, Your Honor, is the Debtor's motion to

22   approve bid procedures associated with the Oakdale Campus sale.

23           Your Honor, the Debtor, as we've now mentioned many

24   times, is seeking to sell the Oakdale campus, which is located

25   at 150 Idle Hour Boulevard in Oakdale.

1           The Oakdale campus is roughly 25 acres.  It contains

2   several improvements, including a former mansion of the

3   Vanderbilt Family, as was recently mentioned, a student center,

4   a science center, a dormitory building.  And the sale will

5   include all of the real property and fixtures, as proposed, but

6   does not propose to sell, at this time, the personal property

7   that may be located at the Oakdale Campus.

8           Your Honor, we've talked about previously, and

9   explained the different liens and judgment claims that are

10  associated with the proposed sale.  Each of those parties has

11  received notice and an opportunity to object to these proposed

12  procedures.

13          As of this morning, the only objection that was

14  received in relation to this motion formally, was a -- what I

15  would style as a limited objection filed by one of the judgment

16  creditors, Powerhouse Paving, that was filed prior to the

17  first-day hearings.  And as I read that statement, it is a

18  declaration of rights in relation to the judgment that was

19  obtained, and a request for adequate protection generally, with

20  respect to that judgment.

21          I don't believe that counsel is here in support of

22  that objection today, but if he were, I would respond in, among

23  other ways, by indicating that I don't believe the issue of

24  adequate protection as it relates to this sale is right for

25  this hearing, associated with the bid procedures, but instead

1    may, if at all, be right in connection with the sale approval,

2    and only after we actually know what the proposed value

3    associated with an accepted bid may be to present to Your

4    Honor.

5           THE COURT:  Now, the property is being offered as is,

6    where is?

7           MR. SOUTHARD:  That's correct, Your Honor.

8           THE COURT:  With no representations concerning

9    zoning, or any other aspect of town's rights to the property?

10          MR. SOUTHARD:  No representations related to zoning,

11   or the town's rights.

12          THE COURT:  Okay, so a buyer who chooses to do

13   whatever with the property, it's up to him, and we're not

14   making any representation, nor will the Court ultimately signs

15   an order, at this point, that alters, amends, changes any

16   existing laws with regard to the use of this property?

17          MR. SOUTHARD:  That's correct, Your Honor.

18          THE COURT:  All right.  And I assume it's going to be

19   shopped the same way most properties are?  Advertise it,

20   they'll circulate it --

21          MR. SOUTHARD:  The intention is to very broadly

22   market these assets, both in standard press media, among other

23   things, our office as Debtor's counsel will publish, in

24   accordance with the bid procedures order as proposed, in

25   national publication, the sale notice.  But in addition to

1   that, and probably more importantly, there will be very

2   targeted marketing efforts by the proposed real estate agents.

3            Your Honor, we propose at this point in time to

4   establish deadlines in relation to the bid procedures, which

5   would include bids due by March 27th of 2017, and a potential

6   auction date, should one be necessary, on March 31st of 2017,

7   and ultimately seek a sale hearing on or about April 10th of

8   2017.  Your Honor, the procedures, however, do contain enough

9   flexibility, should circumstances warrant, that those dates can

10  be adjusted.

11           THE COURT:  And it's ultimately to be sold pursuant

12  an auction?  Highest and best.

13           MR. SOUTHARD:  That is the intention, Your Honor.

14  And I guess it's at least conceivable that no bids are received

15  that we would run an auction, but that is our expectation.

16           Your Honor, we had previously, in relation to the

17  motion, sought the approval or pre-approval of bid protections

18  in the event that the Debtor was able to identify a stalking

19  horse bidder.  In consultation with the committee, it has been

20  decided that that request has been removed from the motion, and

21  the proposed form of order that will be presented to Your

22  Honor.

23           Instead, we would propose to come back to Your Honor

24  should we identify a stalking horse, and seek approval of that

25  stalking horse bid.

1          THE COURT:  Well, the way I see it, it's a two-step

2     process.  You're going to find somebody or not.  If you have a

3     stalking horse, then you're going to get me to approve that

4     contract, subject to being higher and better, and it'll have

5     whatever provisions it'll have.

6          MR. SOUTHARD:  That's correct, Your Honor.  And we

7     would ask to do that on no less than 10 days' notice to Your

8     Honor.

9          THE COURT:  We'll take care of it.

10          MR. SOUTHARD:  Thank you.

11          THE COURT:  Does anybody want to be heard on this?

12     The Court will grant the motion.

13          MR. SOUTHARD:  Thank you, Your Honor.  Your Honor, I

14     believe I may have inadvertently skipped over one item on the

15     calendar this morning that we do need to cover, and that is the

16     Debtor's motion to approve the residential real estate

17     procedures.

18          THE COURT:  These are the six houses?

19          MR. SOUTHARD:  Yes, Your Honor.  We spoke to Your

20     Honor about six of these at the last hearing, and Your Honor

21     indicated a response to some of the concerns raised by the U.S.

22     trustee's office, that we would schedule it for further

23     consideration this morning.  What we'd seek in terms of revised

24     -- slightly revised relief this morning, is we would ask Your

25     Honor to approve us to close eight contacts.  Those eight were

1    the ones that were in contract as of the petition date.  The

2    six that we spoke to you about of those eight were the most

3    urgent as of the last hearing.

4              THE COURT:  And the proceeds of those sales all go to

5    pay down debt, that you then borrow back?

6              MR. SOUTHARD:  They do, Your Honor.  And this is a

7    motion that, again, the committee was pretty involved in

8    discussing over the last few days.

9              THE COURT:  I think so.

10             MR. SOUTHARD:  The idea that the proceeds would go

11   now to pay down that debt was something that was discussed and

12   considered, and I believe the committee is agreeable to that

13   happening, subject to the challenge that exists under the DIP

14   financing, such that if they were to successfully challenge the

15   liens, then there would be a disgorgement.

16             THE COURT:  I can understand why you're doing it, but

17   just so the record is clear, you're going to convert hard asset

18   to cash, a couple million -- I don't know what this sells for,

19   a couple of million bucks.  Which you'll then pay down the

20   lender, and in your budget, borrow back, giving that loan a

21   super priority, and paying a greater interest rate, and a point

22   for it.  Odd way to run a business, but that's the deal, I got

23   it.  And I assume the lender needs it, because he's got to

24   make, for his own reasons -- and that's okay with -- as long as

25   nobody's opposed to this, and everybody understands what we're

1    doing, that is where we find ourselves.  So does anybody want

2    to be heard?

3             MR. LUCKMAN:  Your Honor, the committee considered

4    all of that.  It wasn't even as far as exactly what Your Honor

5    raised.  But in light of conversations with the lenders, to

6    understand who's actually funding these loans, and so forth, as

7    long as the committee had the reservation of rights with regard

8    to the challenge period, we agree to (indiscernible).

9             THE COURT:  I'm not going to challenge your business

10   decision to do this.  Anybody else wants to be heard?

11            MR. HAMMEL:  Your Honor, very briefly, Ian Hammel.  I

12   didn't want to lose sight of the fact that there are

13   approximately two dozen other homes that would also be sold

14   through a process that's described in the papers, and I just

15   wanted to make sure that we're clear that we're asking the

16   Court for relief to continue a process -- and there are

17   milestones.  The committee is obviously going to be involved,

18   and other stakeholders, in that process as well.

19            THE COURT:  Actually, I hadn't focused on that, but

20   thank you.  How many more houses are there above this, these

21   eight?

22            MR. SOUTHARD:  Your Honor, in terms of parcels, there

23   are a total of 32.  So my lawyer math tells me that that's 24

24   above the 8 that we're talking about.

25            THE COURT:  And what counsel just told me is that by

1    approving this, I'm approving the same process, that the sale

2    of all of these homes, and the total of that money is going to

3    be going to the lenders, for which you're going to have to then

4    borrow back?  Why don't I just deal with eight at a time?  Why

5    am I issuing an order like that?

6            MR. SOUTHARD:  Your Honor, what the second --

7            THE COURT:  Which I didn't think about, but thank

8    you.

9            MR. SOUTHARD:  The second part of the relief in the

10   motion looked to implement procedures that are designed to

11   streamline the disposition in the future, such that we don't

12   have to burden Your Honor --

13           THE COURT:  Yeah, I appreciate that, but --

14           MR. SOUTHARD:  With a 363 sale motion each and every

15   time, notice to all creditors.

16           THE COURT:  As I say, I appreciate you not wanting to

17   overburden me, but I would rather approve the sale of eight --

18   because you don't have the others teed up now anyway -- and

19   when you get some others -- at least the committee then, and

20   others can have a more recent look at this.  So -- and I do

21   appreciate that point being raised, because I didn't focus on

22   it, because I didn't realize I was approving -- because eight -

23   - 24 more properties, the range in value in these things,

24   according to your schedules, is from 600,000 to 200-some-odd

25   thousand.  So we're talking about more than a dollar,

1    especially when the budgetary needs probably don't exceed the

2    total sale of these houses.

3              So if the houses were sold and the proceeds used by

4    the Debtor, one could avoid some substantial costs and super

5    priority.  Now the lenders, again, they have the right to seek

6    what they want.  But I would prefer that people be able to

7    think through these things as we understand the case for.  And

8    since there's no urgency today to be approved beyond the eight,

9    and I do appreciate that you don't want to overburden me, but

10   I'll be able to work through this problem.

11             MR. HAMMEL:  Your Honor, just a suggestion, if we

12   could --

13             THE COURT:  The first one didn't work so well, want

14   to keep going?

15             MR. HAMMEL:  Thank you, Your Honor, I was just going

16   to suggest that perhaps we deal with the eight that are on the

17   record, we carry the procedures to the next hearing.

18             THE COURT:  You and I agree.

19             MR. HAMMEL:  Thank you, Your Honor.

20             THE COURT:  All right, who are you?  Come on up.  You

21   realize, whoever you are, you just got an advantage.  This can

22   only go the wrong way.

23             MR. CUNHA:  Carlos Cunha.

24             THE COURT:  Hold it, just tell me who you are.

25             MR. CUNHA:  Carlos Cunha, I'm a former faculty

1    member, now living in Missouri, for obvious reasons.

2              THE COURT:  Living in where?

3              MR. CUNHA:  Missouri.

4              THE COURT:  Did we make you move there?

5              MR. CUNHA:  Well, everyone has to work someplace.

6              THE COURT:  All right.

7              MR. CUNHA:  So going back to the issue of the people

8    that are not part of the major creditors, individuals like me

9    that are owed money for medical expenses and other things,

10   isn't there a way to have these sales go to the big pool,

11   instead of going automatically to the bank, so that the money

12   is available for everybody, to make sure everyone gets

13   restitution?

14             THE COURT:  There are multiple ways to do any

15   particular thing.  My job is not to come up with those.  These

16   guys do, and then the law tells me, as long as what they come

17   up with meets a certain standard, I'm going to approve that.

18   Your comment, which is whatever rights you have today shouldn't

19   be reduced, is what at least I'm trying -- and I think

20   everybody here is actually trying.  Nobody's trying to hurt

21   anybody.

22             This is just not a great situation, and most cases

23   like this, that end up here, people aren't in great positions.

24   But these guys, at least people here are really good at what

25   they do, and they give you your best shot.  And even -- I mean,

1    you look at the lenders, and people always pick on lenders, if

2    they didn't loan money, the school wouldn't be here today.

3          So everybody's got rights.  I'm trying to balance all

4    those rights.  I think what counsel just agreed to, he could

5    have fought me on.  Wouldn't have won it, but he could have

6    fought on.  But he agreed, because everybody really is trying

7    to make this -- we can't create money.  Nobody here.  It's

8    going to sell for what it's going to sell for, and how that

9    cash flows, moves out, is basically set by the law, with some

10   twerks.  So the goal is to have as much money as possible, then

11   you have a better chance of getting your money back.  And so

12   everything we're doing is towards that end.

13         Now, does that mean everybody likes it?  Nope.

14   Normally here, 50 percent of the people think I'm a genius, and

15   50 percent go outside and say he's an idiot.  It's kind of like

16   being at home for me.  But that's the way it works.  So we're

17   trying to do the best we can.  I appreciate you coming.  And so

18   thank you.

19         MR. CUNHA:  Thank you.

20         THE COURT:  Okay.  Anybody else?  Come on up.

21         MS. BRIDGEMAN:  (indiscernible)

22         THE COURT:  Hold it.  Don't talk until you get to the

23   microphone.

24         MS. BRIDGEMAN:  I'm sorry.  My name is Maryellen

25   Bridgeman, I'm also a former employee of Dowling College.  Many

1    of us worked there for 21 or some-odd -- many, many years.  I

2    represented the staff, many people were hurt, medical claims,

3    loss of wages, how many people have moved out of the state as a

4    result of Dowling College.  We understand the finances, but I'm

5    thinking to myself as I sit here, if we're going to be selling

6    homes, why would we give it to the lender, in order for the

7    lender to charge us more money to borrow more money, rather

8    than to pay down other things that would probably be better for

9    the college?  It doesn't quite make sense to me.

10            It doesn't make sense that they're also bringing in

11   money from Stoney Brook as they're renting out the Brookhaven

12   dorms, and they have nine employees.  Most employees are still

13   questioning what those nine employees could possibly still be

14   working on between June and now, and it just doesn't make sense

15   to most of the employees out there.  And that's the reason that

16   I, as nervous as I am, stood up and said something.

17            THE COURT:  Well, I can't answer what makes sense and

18   doesn't, but on the dollar question, you own a home?

19            MS. BRIDGEMAN:  I do.

20            THE COURT:  You have a mortgage?

21            MS. BRIDGEMAN:  I don't.

22            THE COURT:  You don't?

23            MS. BRIDGEMAN:  No.

24            THE COURT:  Well, you're lucky.  For those of us who

25   have mortgages, we owe banks money.  And therefore, that bank

1    that holds a mortgage on a house gets paid if that house is

2    sold.  That's why it loaned the money to buy the house.  Here,

3    there's an institution that the loaned money to Dowling College

4    to keep it going, for whatever purposes, and got as collateral

5    for that a mortgage, which everybody tells me is a valid,

6    forcible mortgage, on these 30-some-odd homes, which means when

7    they are sold, in order for the person who's buying it to get

8    clean title, the bank has to get satisfied, which means they

9    got to get their money.

10              So if the bank who held the lien allowed the college

11   not to pay them, then they wouldn't.  They have every right to

12   require exactly what they're requiring.  The second point,

13   which then means that the Debtor has to borrow money, is just a

14   fact of life.

15              MS. BRIDGEMAN:  Okay, makes sense.

16              THE COURT:  So I think it's -- within the context of

17   the whole case, that incremental cost is probably not going to

18   be pivotal.  The concept that you raised is one that those two

19   guys, in part, and the Debtor's counsel are responsible to

20   represent the interested parties, to make sure this thing goes

21   as fairly as possible.  And as I said to the other folks, you

22   may not like the answer.  But you're going to understand it,

23   it's going to be transparent, and that's all we can do.  All

24   right?  Thank you.

25              MS. BRIDGEMAN:   Thank you, thank you.

1          THE COURT:  Anybody else?  Okay.  So the Court will

2   grant the motion, limited to the eight homes without prejudice

3   to anybody, including the institutions asking for additional

4   relief when we get into the rest of these houses.

5          MR. SOUTHARD:  Thank you, Your Honor.  Just for

6   clarification purposes, we had proposed to put this on for a

7   final hearing, relative, I guess, to the procedures, at this

8   point, for the January 10th date.

9          THE COURT:  You want to sell them -- don't these

10  people want to buy these things?

11         MR. SOUTHARD:  Oh, absolutely, Your Honor, with

12  regard to the eight, we would request in the proposed form of

13  order that will be before Your Honor --

14         THE COURT:  Right, you can sell those houses.

15         MR. SOUTHARD:  Yeah.  We appreciate that, Your Honor,

16  and indeed have taken steps to line up closings, starting next

17  week.  With regard to the procedures, am I understanding Your

18  Honor to deny those procedures at this point, or are they

19  subject to further consideration by Your Honor at a final

20  hearing?

21         THE COURT:  If I had to rule today, I'm not going to

22  agree what I'm going to do with the other 24.  But if you want

23  to just carry it -- since there's nothing in front of me, I

24  don't know why I have to -- why don't I just carry it?

25         MR. SOUTHARD:  That would be fine, Your Honor.  We'll

```
 1    --

 2              THE COURT:  Because otherwise they're going to have

 3    to deny it, and you're going to have to do something else.  But

 4    I'm granting you the relief with that provision for these

 5    eight.  We're just leaving -- when we get to the final, there

 6    can be a more complete discussion, argument about whether the

 7    process that the lenders contemplate is one that you all agree

 8    with --

 9              MR. SOUTHARD:  Thank you.

10              THE COURT:  And everybody ultimately agrees --

11              MR. SOUTHARD:  Thank you, Your Honor.  The form of

12    order will propose to carry that portion of the motion, I

13    appreciate that.  Your Honor, then I think that brings us to

14    the final item on this morning's calendar, which is the

15    Debtor's motion to approve the plan support agreement.  And

16    this is an item that Your Honor had some thoughts and comments

17    on at the first --

18              THE COURT:  And since I haven't looked at it since

19    the last hearing, and don't remember what my thoughts were, we

20    can either have a whole discussion where I end up telling you

21    we're just going to adjourn this until January 10th, or we

22    could just skip that, and say we'll adjourn this to January

23    10th.  It's your option.  I'm here.

24              MR. SOUTHARD:  Your Honor, I am prepared to adjourn,

25    based on Your Honor --
```

1          THE COURT:  Sometimes life is good.  Anybody else

2    want to argue this position?  Quickly, quickly, quickly.  Okay,

3    we'll just adjourn that motion until -- and what I'd like for

4    somebody to do is explain to me on January 10th in the

5    liquidating entity, the two pieces of property, will I need a

6    plan support agreement that conflicts -- or I have to worry

7    about how it relates to a DIP order that has 54 pages.

8          I don't know why, because the lenders -- if the

9    lenders, there are no other assets other than which they're

10   secured on, so the concept that you can confirm a plan

11   ultimately, over what they want, is probably not one I can

12   understand at this point, and a plan support agreement, which

13   locks up the Debtor, when I don't even know what classes are in

14   this case -- I don't know if I have a class action case on one

15   side.  I don't know who the creditors are, I don't know the

16   priorities of the creditors, I don't know -- we don't know any

17   of that, at this point.

18          So I mean, plan supports I've dealt with -- maybe not

19   out here, but I did in the Southern District sometimes, and I

20   understand why people do them, and they're beneficial, but I'm

21   not sure in a, basically a real estate case, it's a liquidating

22   entity with no employees and no reorganization going forward, I

23   need it.  Because the DIP gives them the power to either fund

24   or not.  The only stroke they have is whether they continue to

25   fund.  I don't know why I need a plan support agreement for

```
 1    that.  But I'm willing to entertain it.

 2            But then we're going to have to analyze its

 3    relationship to every other order, and there are triggers

 4    within that plan support agreements that didn't meet it, that

 5    would create a default, which creates the problem of what we

 6    were talking about before, with the stay and everything else.

 7    And since the only parties for the plan support agreement are

 8    the Debtor and the lenders, what's the role of everybody else?

 9    Because they're not -- the committee's not going to part of

10    that.

11            MR. SOUTHARD:  The committee would not be a party to

12    that agreement.

13            THE COURT:  It's not a pre-pack.

14            MR. SOUTHARD:  No, it is not, Your Honor,

15            THE COURT:  And you want to be out of here by the

16    spring.  It'll take me that long to figure out the plan support

17    agreement.

18            MR. SOUTHARD:  Your Honor, I fully appreciate your

19    comments, and I think we'll discuss it among the parties, and

20    decided exactly what to present.

21            THE COURT:  And there you can save the effort.  I'll

22    work on the houses, you get rid of the plan support agreement

23    for me to think about.  That can save me the effort.  We done?

24            MR. SOUTHARD:  Duly noted, Your Honor.  Yes, thank

25    you.
```

1           THE COURT:  Anybody else want to be heard?  Thank you

2    all for being here.  Have a great holiday, guys, and we'll see

3    you soon.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           I N D E X

2

3                           RULINGS

4                                    Page        Line

5      Debtor's application to retain Douglas Ellerman as the real

6      estate broker for the Debtor associated with the residential

7      properties                            25          4

8

9      Debtor's motion seeking authority to continue with the

10     retention of RSR Consulting, LLC.         17          5

11

12     Debtor's motion to permit the closing of certain prepetition

13     bank accounts, and certain limited relief, relative to

14     Section 345 of the Bankruptcy Code         20          3

15

16     Debtor's motion seeking a final order to authorize the

17     Debtor to make payments associated with the Debtor's

18     employees and payroll, and related obligations.

19                                       20          21

20

21     Debtor's motion for final order authorizing it to continue

22     to use its exiting insurance programs and related insurance

23     premium financing.                    24          1

24

25     Debtor's motion under Section 365 to reject certain of its

1    unexpired leases nunc pro tunc to the petition date.

2                                          29        8

3

4    Debtor's motion for an administrative order to approve

5    interim compensation and reimbursement of expenses for

6    professionals retained by the estate.        31        19

7

8    Debtor's motion to approve post-petition financing, and to

9    approve the granting of adequate protection in relation to

10   the use of cash collateral. (Extension granted)

11                                         41        15

12

13   Debtor's application to retain the A&G realty partners, LLC,

14   and Madison Hawk Partners, LLC, as the Debtor's real estate

15   advisors in relation to both the Oakdale Campus and the

16   Brookhaven Campus                       51        18

17

18   Debtor's motion to approve bid procedures associated with

19   the Oakdale Campus sale.                 55        11

20

21

22

23

24

25

Page 71

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4       transcript is a true and accurate record of the proceedings.

5

6       Sonya
        Ledanski Hyde

    Digitally signed by Sonya Ledanski
    Hyde
    DN: cn=Sonya Ledanski Hyde, o, ou,
    email=digital1@veritext.com, c=US
    Date: 2016.12.23 14:00:39 -05'00'

7

8       Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  December 23, 2016

**[& - addition]**                                                                                               Page 1

**&**

**&**   6:3 7:1,15 8:1,8
8:16 9:6 10:3

**0**

**02110**   7:4

**1**

**1**   25:13 69:23
**10**   3:19 55:7
**100**   6:20
**1000**   38:14
**10016**   6:6
**10036**   7:18
**105**   2:10,18 4:6,14
4:20
**10:06**   1:17
**10th**   40:19,22
41:10,12,15,22
54:7 64:8 65:21
65:23 66:4
**11**   2:4,10,12,13
3:3 4:2,14 10:22
25:12 27:3 38:8
38:17 70:19
**11021**   6:14
**111**   6:13
**11501**   71:23
**11530**   8:12
**11554**   8:19
**11722**   1:14 7:11
**11738**   8:4
**11753**   6:21
**12**   4:6 26:1
**12th**   10:14
**13**   2:1 3:1 26:1
**14**   3:2
**15**   1:16 3:7 70:11
**150**   51:25
**16**   3:13
**17**   21:18 69:10
**176**   23:14
**17th**   7:17

**18**   70:16
**19**   70:6
**1970**   50:19
**1st**   21:14

**2**

**2**   8:3
**2.5**   24:14
**20**   5:1 69:14,19
**200**   7:17 58:24
**2016**   1:16 22:7
71:25
**2016-1**   4:14
**2017**   54:5,6,8
**21**   4:13 62:1 69:19
**2100**   28:22
**22**   4:19
**23**   71:25
**24**   57:23 58:23
64:22 69:23
**25**   52:1 69:7
**27th**   54:5
**29**   70:2
**290**   1:13
**29th**   6:5

**3**

**3**   6:5 69:14
**30**   48:17 63:6
**30-35**   34:7
**300**   8:11 71:22
**30th**   39:18
**31**   2:7 70:6
**31st**   54:6
**32**   57:23
**327**   24:12 42:19
**328**   24:12 42:19
**330**   71:21
**331**   4:14
**34**   2:17
**345**   3:21 17:10
19:14,19 69:14
**35**   3:18
**36**   4:1

**361**   2:11,13
**362**   2:11,14 37:10
37:15
**363**   2:4,11,12,14
2:18 3:3 4:6,20
58:14
**364**   2:9,11,14
**365**   5:2 25:8 69:25
**37**   4:5
**38**   3:1
**39**   2:1

**4**

**4**   69:7
**40**   3:7
**4001**   2:9
**41**   3:13 70:11
**41st**   7:17
**45**   50:19

**5**

**5**   34:21 35:21 36:1
36:1,11,19,22
69:10
**50**   61:14,15
**51**   70:16
**54**   35:9,10 66:7
**55**   70:19
**560**   7:10

**6**

**60**   12:25 19:15
38:4
**600,000**   58:24

**7**

**7**   2:17 38:7

**8**

**8**   57:24 70:2
**8-16-75545**   1:3

**9**

**9**   2:8
**90**   8:18
**9019**   4:21

**9194**   8:11
**990**   8:11
**9th**   12:9

**a**

**a&g**   3:8 42:13
43:8,10,10,22
44:3,20 45:3
50:15 70:13
**ability**   27:23
28:19,25 29:6
37:9 45:19
**able**   16:13 23:17
45:22 48:2 54:18
59:6,10
**abrupt**   23:4
**absolutely**   17:4
51:16 64:11
**aca**   8:17 9:23 13:1
**academic**   28:12
**acampora**   6:18
9:12 11:7
**accelerate**   27:6
**accepted**   53:3
**accepting**   24:24
44:11
**accommodate**
40:20
**accounts**   3:20
17:9,11,15,22
18:3,12,15,20
19:12,13,17 69:13
**accurate**   71:4
**acknowledge**   48:3
**acknowledged**
51:5
**acres**   52:1
**action**   16:15
37:20 66:14
**actions**   34:16 35:2
**actively**   44:18
**adam**   6:16 9:19
**addition**   19:5 41:5
53:25

| | | | |
|---|---|---|---|
| **additional** 2:21 64:3 | **agreed** 19:18 34:12 44:23 61:4 61:6 | **apart** 36:12 **app** 32:5 **appear** 34:23 | **arrangement** 44:11 **artificial** 39:20 |
| **additions** 41:16 | **agreement** 4:9,22 | **appearance** 10:7 | **asked** 15:15 |
| **adequate** 2:12 32:12 52:19,24 70:9 | 12:18 17:1 33:12 37:6,7 39:17 65:15 66:6,12,25 | **appeared** 33:23 **appearing** 8:23 **applaud** 35:7 | **asking** 37:14 57:15 64:3 **aspect** 53:9 |
| **adjourn** 65:21,22 65:24 66:3 | 67:7,12,17,22 **agreements** 4:8 | **application** 2:18 3:8,14 24:8,21,21 | **asset** 56:17 **assets** 10:25 53:22 66:9 |
| **adjourning** 19:20 | 67:4 | 24:22 30:21 35:25 | **assist** 11:7 |
| **adjusted** 35:10 40:16,19 54:10 | **agrees** 65:10 **allow** 49:18,22 | 42:13 45:17 69:5 70:13 | **assistant** 10:4 **associated** 11:25 |
| **adler** 8:16 | 50:1 | **appreciate** 11:12 | 12:1 17:13 20:6 |
| **administration** 17:24 34:3 51:14 | **allowed** 18:13 63:10 | 49:4 58:13,16,21 59:9 61:17 64:15 | 21:6 24:9 26:6,7 29:5 32:14 40:17 |
| **administrative** 11:21 25:22 29:12 34:8 70:4 | **allowing** 47:11 **alter** 41:17 45:2 **alters** 53:15 | 65:13 67:18 **approach** 43:19 44:9 | 51:22 52:10,25 53:3 69:6,17 70:18 |
| **administrator** 22:12 | **alumni** 46:2,5 **amend** 31:21 | **appropriate** 18:3 18:15 | **association** 6:11 **assume** 37:8 |
| **advance** 41:6 | **amended** 40:20 | **approval** 11:7 | 53:18 56:23 |
| **advanced** 28:9 | **amends** 53:15 | 17:2,3 53:1 54:17 | **assuming** 45:13 |
| **advances** 34:1 | **amount** 18:12 | 54:17,24 | 49:5 |
| **advantage** 59:21 | 22:3 38:6 | **approve** 29:12 | **attach** 34:13 |
| **adversary** 10:9 | **analysis** 38:11,11 | 32:11,11 51:22 | **attached** 25:13 |
| **advertise** 47:17 53:19 | **analyze** 67:2 **ansell** 9:14,15 | 55:3,16,25 58:17 60:17 65:15 70:4 | **attention** 25:14 **attorney** 7:9 10:4 |
| **advice** 14:24 | **answer** 15:8,21 | 70:8,9,18 | 15:11 16:3 |
| **advisors** 3:9 42:15 43:23 44:2 70:15 | 26:24 30:17 39:15 62:17 63:22 | **approved** 11:22 14:1 20:8 21:1 | **attorneys** 6:4,11 6:19 7:2,16 8:2,9 |
| **affairs** 11:1 | **answered** 10:23 | 42:20 59:8 | 8:17 11:9 12:13 |
| **agencies** 51:9 | **answers** 49:12 | **approving** 2:2 3:3 | 33:17 |
| **agenda** 13:15 | **anticipated** 41:1 | 14:7 58:1,1,22 | **auction** 2:3 54:6 |
| **agent** 16:14 | **antiquated** 28:14 | **approximately** | 54:12,15 |
| **agents** 50:15 54:2 | **anybody** 17:5 | 57:13 | **authority** 2:8 |
| **ago** 28:23 31:6 44:17 | 19:2,9 24:4 25:4 26:14 40:10,11 | **april** 54:7 **arguably** 17:16 | 13:23 18:19,22 69:9 |
| **agree** 15:23 16:9 16:19 31:21 41:16 | 41:18 45:14 50:16 51:18 55:11 57:1 | **argue** 16:14 66:2 **argument** 40:3 | **authorize** 3:19 4:13,19 20:6 |
| 43:23 48:5 50:4 57:8 59:18 64:22 | 57:10 60:21 61:20 64:1,3 66:1 68:1 | 65:6 **arguments** 40:2 | 69:16 **authorizing** 2:19 |
| 65:7 | **anyway** 58:18 | 50:5 | 4:7,21 20:24 |
| **agreeable** 56:12 | | | |

69:21
**automatically**
37:17 60:11
**availability** 44:12
**available** 43:24
60:12
**avenue** 6:5 8:11
8:18
**avoid** 25:21 59:4
**avoidance** 34:16
35:2
**aware** 16:4 26:10
26:13

**b**

**b** 1:21 2:9,11,18
4:6,20 8:14 44:22
**back** 14:19 22:7
23:4 24:20 26:11
27:18 29:25 31:19
31:22 34:21,22
35:9 37:10,11
46:20 54:23 56:5
56:20 58:4 60:7
61:11
**backed** 26:18
27:10,11
**bahar** 50:18,18
**bailouts** 51:8
**balance** 3:19
34:10 61:3
**balin** 8:16 9:23
**bank** 3:20 6:11
7:2 9:21 17:9,11
19:11,17 60:11
62:25 63:8,10
69:13
**bankruptcy** 1:1
1:12,23 2:19 4:7
4:20,20 5:2 14:22
17:10 50:20 51:3
51:13 69:14
**banks** 51:10 62:25

**based** 10:24 37:5
43:21 65:25
**basically** 27:3,12
37:4 44:16,22
61:9 66:21
**basis** 13:22 14:1
19:25 20:9 21:1
23:10
**beach** 30:13
**began** 11:11
**beginning** 39:22
**behalf** 2:5,14,24
3:5,10,16,22 4:3
4:11,16,23 5:4 9:7
9:9,21 10:8,12
15:24 25:3 43:7
50:13
**belief** 17:18 30:12
**beliefs** 50:8
**believe** 13:17 14:5
15:3 18:25 19:16
24:23 26:3 28:1
29:4 33:24 35:3
35:20 37:25 40:19
40:19 42:10 44:10
50:14 52:21,23
55:14 56:12
**believes** 44:9
**beneficial** 66:20
**benefit** 36:5 37:24
38:11,20,21
**benefits** 38:9,10
38:11
**berkowitz** 6:16
9:19,20
**best** 54:12 60:25
61:17
**better** 55:4 61:11
62:8
**betterment** 33:4
**beyond** 40:17
59:8

**bid** 11:25 46:24
48:16,17 51:22
52:25 53:3,24
54:4,17,25 70:18
**bidder** 54:19
**bidding** 2:2
**bids** 48:4 54:5,14
**big** 47:16 60:10
**bigger** 47:20
**biggest** 33:10
**bills** 22:3 23:10,11
**binding** 34:6
**black** 7:13 9:17
9:18 19:10
**blame** 38:5
**board** 8:10 9:25
14:11,15,16,20,25
15:2,4,6,6,16,16
16:1,2,4,6,6,8,14
16:15,21,21,21,25
**bond** 7:2 9:21
**borrow** 56:5,20
58:4 62:7 63:13
**boston** 7:4
**bother** 31:4
**boulevard** 51:25
**box** 8:11
**bridge** 42:4
**bridgeman** 8:24
61:21,24,25 62:19
62:21,23 63:15,25
**briefly** 57:11
**bring** 36:10 44:8
**bringing** 62:10
**brings** 44:4 65:13
**broadly** 10:22
53:21
**brochures** 47:18
**broker** 3:14 12:1
24:9 43:20,25
44:4,12 45:20,21
69:6

**brokers** 43:4,19
44:7 47:21 48:2
**brook** 62:11
**brookhaven**
42:16 62:11 70:16
**brought** 45:11
**bucks** 56:19
**budget** 19:25
56:20
**budgetary** 59:1
**building** 44:22
52:4
**bunch** 23:14
**burden** 37:3,12
37:13 58:12
**business** 56:22
57:9
**buy** 46:21 63:2
64:10
**buyer** 43:19 44:23
45:10 48:22 53:12
**buyer's** 48:22
**buyers** 44:8,20
**buying** 63:7
**buys** 46:25 49:3

**c**

**c** 2:9 6:1 7:20 9:1
44:23 71:1,1
**calendar** 10:18
12:3 13:20 17:8
20:5,23 24:7 25:7
29:11 32:3 42:9
55:15 65:14
**call** 31:3 34:1
46:13 49:10 51:21
**called** 33:24 47:16
**campus** 2:3 11:25
12:1 42:15,16,18
51:22,24 52:1,7
70:15,16,19
**campuses** 42:22
**care** 38:21 46:18
55:9

**careful** 16:5
**carlos** 8:25 59:23
  59:25
**carried** 19:15
**carry** 50:8 59:17
  64:23,24 65:12
**case** 1:3 10:22
  11:3,8 12:5,15
  13:7 16:24 17:18
  17:24 23:3 25:10
  26:3 27:3,19
  32:15 34:3,12
  37:1,5,19,23
  38:13,15,19,20
  39:2 45:1 59:7
  63:17 66:14,14,21
**cases** 22:20 27:15
  27:20 60:22
**cash** 2:11 11:24
  32:12 56:18 61:9
  70:10
**catherine** 2:23
  4:22 7:21
**center** 7:3 30:14
  52:3,4
**central** 1:14 7:11
**certain** 3:20 4:9
  5:3 8:9 10:17
  11:18 17:9,9 25:8
  29:23 34:17 35:4
  35:6 39:9 60:17
  69:12,13,25
**certainly** 40:13
  41:23
**certified** 71:3
**certilman** 8:16
  9:22
**challenge** 12:24
  34:19 56:13,14
  57:8,9
**challenges** 28:10
**chance** 46:24
  61:11

**change** 31:23
  39:19
**changed** 14:20
  29:17
**changes** 12:20
  30:3,5,6,11 31:20
  33:1,3 53:15
**changing** 37:2
**chapter** 10:22
**charge** 62:7
**chargebacks**
  23:22
**charles** 2:5,14 3:4
  3:10,16,22 4:3,10
  4:16 5:4
**checks** 19:3
**chief** 2:20,22 9:10
  13:24 16:1,23
**choices** 22:22
**chooses** 53:12
**christine** 7:13
  9:17
**cigna** 22:11
**circulate** 53:20
**circulated** 12:21
**circumstance**
  16:13
**circumstances**
  44:21 54:9
**city** 8:12 23:6
**claim** 23:11 28:21
  28:25 35:21 36:1
  36:1 38:2
**claims** 4:10 22:13
  22:20 23:3,4,13
  26:6 34:8,21
  36:11,19,22 52:9
  62:2
**clarification**
  33:15 43:3 64:6
**class** 10:9 37:20
  66:14

**classes** 37:18
  66:13
**clean** 63:8
**clear** 2:4 3:3
  16:17 27:4 28:8
  36:11 43:7 45:9
  48:11,15 49:14
  56:17 57:15
**clearly** 16:7,19
  23:24
**clerk** 9:4 10:7
**clever** 35:22
**client** 15:11
**close** 17:22 18:3
  45:13 55:25
**closed** 18:12
**closing** 3:19 17:9
  24:18,19 69:12
**closings** 64:16
**cloud** 27:7,8,11,16
**code** 2:19 4:7,20
  5:2 17:10 69:14
**cohn** 7:1
**collateral** 2:11
  11:24 32:13 33:10
  33:13,21 34:1,11
  34:13,14 35:23
  36:2,5,12,13,17
  36:20 37:23 38:1
  39:1 63:4 70:10
**collateralization**
  33:24
**collateralizes** 37:7
**college** 1:7 2:5,15
  2:24 3:5,11,16,22
  4:3,11,17,23 5:4
  8:9 9:4,7 10:1
  16:20,22 21:24
  46:3,5,9 48:13,14
  48:14 50:14,19
  51:6 61:25 62:4,9
  63:3,10

**come** 23:1 24:20
  25:14 31:19 37:10
  37:11 43:20 46:1
  49:24 50:17 54:23
  59:20 60:15,16
  61:20
**comfort** 35:16
**comfortable** 18:8
  18:18 19:1 39:7
**coming** 36:22
  42:17 48:16 61:17
**commencement**
  10:21
**comment** 60:18
**comments** 12:2
  13:5 41:13 65:12
  67:19
**commission** 24:13
  24:17 42:20,21
  43:5,10 44:1
  45:12
**commissions** 45:3
**committed** 17:16
**committee** 6:19
  9:13 11:5,6,11,17
  11:18 12:4,9 14:3
  17:12 20:9 21:6
  22:24 23:6,19,20
  24:22 27:3 32:17
  33:3 34:5 37:11
  41:13 43:2,21
  44:10 45:19 49:8
  54:19 56:7,12
  57:3,7,17 58:19
  67:11
**committee's** 33:22
  44:7 67:9
**communications**
  15:9,10
**community** 51:11
  51:17
**company** 22:10
  22:19 26:18 45:3

48:16
**compensated**
  45:23
**compensation**
  4:15 29:12 45:3
  70:5
**complete** 65:6
**completed** 25:16
**complex** 33:8
**comply** 19:20
**computers** 25:19
  26:1,1,11,18 28:4
**conceivable** 54:14
**concept** 27:17
  43:19 47:6 63:18
  66:10
**concepts** 31:4,5
**concern** 23:2,6,8
  44:10,16,17 46:12
  47:5 48:9 51:3
**concerned** 50:21
  50:24
**concerning** 53:8
**concerns** 33:22
  55:21
**concluding** 50:14
**confirm** 28:25
  66:10
**confirmation**
  26:25
**conflicts** 66:6
**confused** 35:14
**connection** 17:23
  30:21 33:19 35:4
  53:1
**consensual** 11:16
  13:17 42:11
**consent** 41:25
**consideration**
  19:20 55:23 64:19
**considered** 15:21
  56:12 57:3

**constituents**
  17:18
**consultation**
  54:19
**consulting** 2:19
  13:23 14:8 69:10
**contact** 11:10
  31:2
**contacts** 55:25
**contain** 17:16,21
  54:8
**contained** 22:4
**contains** 39:5 52:1
**contemplate** 65:7
**contested** 42:10
**context** 34:18
  63:16
**continuation** 21:4
**continue** 2:20 4:7
  13:23 20:24 42:1
  51:14,15 57:16
  66:24 69:9,21
**contract** 5:1 22:2
  55:4 56:1
**control** 20:1
**controls** 38:4
**controverted**
  12:16
**conversation**
  15:15 40:25 45:17
  49:3
**conversations**
  15:25 40:8 57:5
**conversion** 40:13
**convert** 38:15
  39:14 56:17
**convince** 36:9
**cooperating** 27:20
**cooperation** 12:14
  12:18
**copiers** 25:19
**corneau** 2:5,14
  3:5,10,16,22 4:3

4:10,16 5:4
**corp** 8:17 9:23
**correct** 18:6 20:2
  20:13,16 21:19
  22:1 32:25 42:25
  43:14 44:6 53:7
  53:17 55:6
**cost** 63:17
**costs** 59:4
**counsel** 9:12 12:4
  12:11 15:16,16
  32:18 35:7 40:9
  46:6,12 52:21
  53:23 57:25 61:4
  63:19
**counterparty**
  22:9 26:8
**country** 71:21
**couple** 11:24
  25:15 28:23 30:5
  31:5 35:18 56:18
  56:19
**court** 1:1,12 9:2
  9:16 10:10 12:6
  12:21 13:12 14:9
  14:12,15,24 15:4
  15:12,14,19,22
  16:9,12,25 17:2,3
  17:5,6,15,25 18:5
  18:7,16,17,19,23
  19:1,4,7,9,21,24
  19:25 20:3,3,11
  20:15,17,21,21
  21:8,17,20,23
  22:2,9,14,17 23:8
  24:1,5,25 25:4,5
  25:25 26:10,14,21
  27:9,14 28:5,15
  28:18 29:8,8,16
  29:19 30:3,3,4,8
  30:15,17,25 31:2
  31:15,19 32:1,5,9
  32:23 34:14,21

35:6 37:11,12
  40:10,21 41:3,8
  41:20 42:7,23
  43:12,13,16,20
  44:2,4,13,19 45:1
  45:5,8,14,25 46:4
  46:11,15 47:8,13
  47:15 48:19,22
  49:19,24 50:5,11
  50:16 51:18,19
  53:5,8,12,14,18
  54:11 55:1,9,11
  55:12,18 56:4,9
  56:16 57:9,16,19
  57:25 58:7,13,16
  59:13,18,20,24
  60:2,4,6,14 61:20
  61:22 62:17,20,22
  62:24 63:16 64:1
  64:1,9,14,21 65:2
  65:10,18 66:1
  67:13,15,21 68:1
**courtroom** 31:12
**cover** 55:15
**coverage** 21:11
**coverages** 21:5
**covered** 23:20,21
  23:22 36:16 41:23
  41:24
**covering** 42:3
**covers** 21:3
**create** 61:7 67:5
**creates** 36:13 67:5
**credible** 51:12
**credit** 2:8
**creditor** 6:4,12
  8:2,17 37:24 38:3
  39:3 48:20 49:9,9
**creditors** 2:13
  6:19 9:13 10:23
  38:9,10,20,21
  49:15 52:16 58:15
  60:8 66:15,16

**crisis** 51:7
**cro** 26:25
**cross** 33:23 37:7
**cunha** 8:25 59:23
  59:23,25,25 60:3
  60:5,7 61:19
**current** 25:18
  29:6 39:16 40:22
  41:1,9,10 42:16
**currently** 25:12
**customary** 24:18

**d**

**d** 2:9 9:1 44:23
  69:1
**d&o** 21:8,11,11
**daily** 19:25
**date** 2:23 3:10,15
  5:3 12:5 14:19
  25:9,11,24 39:20
  54:6 56:1 64:8
  70:1 71:25
**dates** 54:9
**dawn** 8:2
**day** 10:13 20:9
  21:2 25:10 32:15
  32:16 42:3 46:14
  50:8 52:17
**days** 10:16 11:24
  12:25 13:22 19:15
  28:23 32:19 42:17
  55:7 56:8
**deadlines** 54:4
**deal** 29:16 34:19
  36:6 56:22 58:4
  59:16
**dealing** 33:8,10
  37:15
**dealt** 33:11 66:18
**debt** 38:1 56:5,11
**debtor** 1:9 2:20
  2:23 3:9,15 4:7,21
  7:16 9:7,9 10:12
  12:12 13:6,25

14:4,12,14,14
  18:9,14 20:6
  22:16,21 23:25
  24:9 25:18,23
  26:19 28:14 32:18
  34:3,18 37:11
  43:9 44:8,15,22
  45:18 49:23 50:13
  51:23 54:18 59:4
  63:13 66:13 67:8
  69:6,17
**debtor's** 2:3 9:9
  12:12 13:21 17:8
  20:5,7,23 21:4
  24:7 25:8,14
  29:11 32:10 38:10
  42:14 43:11,22
  44:2 51:21 53:23
  55:16 63:19 65:15
  69:5,9,12,16,17
  69:21,25 70:4,8
  70:14,18
**debtors** 49:15
**debtor's** 45:20
  70:13
**december** 1:16
  10:14 12:9 39:18
  71:25
**decide** 47:9 49:15
  49:23
**decided** 54:20
  67:20
**decision** 18:2
  37:14 50:3,9
  57:10
**decisions** 16:22
**declaration** 43:6
  52:18
**deem** 18:3
**deemed** 14:25
  15:17
**default** 37:4,5,8
  37:17,22 67:5

**deny** 64:18 65:3
**department** 7:8
  10:5
**depend** 15:9
**depending** 28:11
**deposit** 3:21 17:22
**derived** 31:17
**described** 57:14
**designating** 2:21
**designed** 44:7
  58:10
**determination**
  17:25
**determine** 18:9
**determined** 25:18
**didn't** 67:4
**difference** 36:7
  39:21
**different** 37:13
  38:18 45:7 48:1
  49:6 51:1,9 52:9
**dip** 11:24 12:13
  12:25,25 17:22
  19:13 32:18 34:6
  36:21 56:13 66:7
  66:23
**direct** 4:13,19
**directed** 19:22
**directs** 16:21
**disclosure** 15:1
**discuss** 51:2 67:19
**discussed** 11:20
  14:4 31:6 56:11
**discussing** 56:8
**discussion** 15:11
  43:21 49:25 50:6
  65:6,20
**discussions** 14:24
  32:20 43:18
**disgorgement**
  56:15
**disposition** 58:11

**dispute** 18:24
  43:12
**distinction** 36:6
**distinctions** 31:10
**distressed** 50:22
**distributed** 18:10
**district** 1:2 29:20
  29:21 30:9,20
  31:1,10,11 66:19
**diverged** 30:23
**diverted** 30:23
**document** 33:11
  33:14,18,20 37:3
**documentation**
  12:23
**documents** 13:1,2
  13:2 22:14 27:21
  37:6
**doing** 28:19 47:11
  56:16 57:1 61:12
**dollar** 58:25 62:18
**dormitory** 52:4
**dorms** 62:12
**douglas** 3:14 24:8
  24:12,13,19 69:5
**dowling** 1:7 2:5
  2:14,24 3:5,11,16
  3:22 4:3,11,17,23
  5:4 8:9 9:4,7,25
  28:8,10 46:3,5
  48:14 50:13,19
  51:6 61:25 62:4
  63:3
**dozen** 57:13
**drew** 30:18
**dual** 18:23
**due** 54:5
**duly** 67:24

**e**

**e** 1:21,21,22 6:1,1
  9:1,1 69:1 71:1
**early** 11:19 12:10
  12:11,15 13:3

32:23
**earn** 47:19
**easier** 31:9
**easily** 28:13
**east** 8:19
**eastern** 1:2 29:20
  30:9,20 31:8,10
**ecro** 1:25
**education** 10:5
  50:22,25 51:7
**educational** 51:15
**effect** 11:19 17:11
  21:15,17 34:24
**effective** 2:23 5:3
  25:24 33:23
**effectively** 22:6
**effort** 24:16 41:14
  67:21,23
**efforts** 45:21 54:2
**eight** 55:25,25
  56:2 57:21 58:4
  58:17,22 59:8,16
  64:2,12 65:5
**eighth** 8:3
**either** 12:21 22:22
  24:13 31:21 35:22
  39:6,11 42:22
  46:12 65:20 66:23
**ellerman** 24:8,12
  24:13,20 69:5
**elliman** 3:14
**emergency** 2:7,17
  3:1,7,13,18 4:1,5
  10:15 32:16 39:16
**employ** 2:18 3:8
  3:14
**employed** 50:18
**employee** 61:25
**employees** 20:7
  20:14,15,17 28:6
  38:14 62:12,12,13
  62:15 66:22 69:18

**encourage** 44:7
  49:10
**ended** 33:15
**ends** 19:21 49:3
**energy** 41:11
**english** 8:8
**enter** 4:21 14:7
  35:15
**entered** 10:14
**entering** 51:3
**entertain** 67:1
**entire** 46:8
**entitled** 38:25
  39:1 45:11 48:24
**entity** 16:21 66:5
  66:22
**entry** 25:23
**equipment** 25:19
  28:2
**especially** 48:13
  59:1
**essence** 22:12
  29:15
**essentially** 11:22
  13:14 21:3 25:18
  36:4,17
**establish** 33:8
  54:4
**establishing** 4:14
**estate** 3:3,9,14
  12:2 24:8,19 27:5
  29:14 33:4 42:15
  43:11 45:18 50:15
  54:2 55:16 66:21
  69:6 70:6,14
**evening** 12:10,10
  13:15 32:23 42:11
  43:6
**event** 24:14 43:24
  54:18
**everybody** 27:4
  38:6 46:24 47:25
  56:25 60:12,20

61:6,13 63:5
  65:10 67:8
**everybody's** 19:1
  31:9 39:3 61:3
**ex** 2:1
**exact** 30:9
**exactly** 57:4 63:12
  67:20
**example** 28:15,21
  47:25
**examples** 35:18
**exceed** 59:1
**excess** 22:3
**excluding** 44:20
**executive** 16:23
**executives** 16:22
**executory** 5:1
**exist** 28:16,16
  29:1,2,4
**existed** 14:15 29:1
  29:3
**existence** 45:21
**existing** 4:7 24:15
  42:1 53:16
**exists** 14:16 37:22
  56:13
**exiting** 20:24
  69:22
**expand** 39:15
**expect** 13:2 40:16
**expectation** 42:19
  54:15
**expected** 40:17
**expense** 33:17
**expenses** 4:10,16
  25:22 29:13 60:9
  70:5
**explain** 30:4
  33:20 39:8 41:5
  47:13 66:4
**explained** 52:9
**explanation** 18:9

**exposure** 45:23
**expressed** 22:24
**extend** 37:12
  40:22 41:9
**extension** 41:15
  41:21 70:10
**extensive** 43:21
  44:16
**extensively** 11:13
  32:18
**extent** 15:9 17:18
  21:9 23:6 39:15
  41:5
**extra** 19:20

**f**

**f** 1:21 2:4 3:3 71:1
**faced** 33:8
**fact** 47:6 48:9
  49:4 57:12 63:14
**faculties** 51:16
**faculty** 59:25
**failure** 47:11,12
  49:17,17,18
**fair** 44:9 46:15,24
**fairly** 28:13 35:22
  63:21
**fall** 34:17
**family** 52:3
**far** 16:4 22:25
  23:2 33:18 38:1
  47:6 57:4
**farmingville** 8:4
**federal** 1:13 7:10
  51:6,9
**fee** 24:21,21 32:5
  42:20 44:12
**feel** 47:10
**ferris** 7:1
**fiduciaries** 46:19
**fiduciary** 27:4,5
**fight** 40:2
**figure** 22:17 36:22
  67:16

**file**  11:18 12:16
**filed**  11:1,3 12:15
    13:5,15 14:3
    25:10 28:21,23
    43:6 52:15,16
**filing**  13:9 24:23
**final**  2:7 3:18 4:1
    4:5 14:1,7 20:6,24
    24:21 33:19 34:24
    35:4,11,15,17
    36:24 39:8,17
    40:1,3,17 41:12
    41:13 64:7,19
    65:5,14 69:16,21
**finances**  51:4 62:4
**financial**  7:3 8:17
    9:23 11:1 51:8
**financing**  2:10 4:9
    11:24 12:25 20:25
    21:6,11,12 23:1
    32:11 38:24,25
    39:1,14 41:22
    56:14 69:23 70:8
**find**  55:2 57:1
**fine**  29:8 30:9
    38:16 41:6,18
    49:22 64:25
**firm**  11:7,9 12:10
    15:7 16:20 43:7
**firms**  43:22 45:11
    47:19
**first**  10:13,15
    11:13 13:20,22
    20:8 21:1 23:18
    24:25 25:10 32:15
    32:16 35:24 42:9
    52:17 59:13 65:17
**fixed**  42:20
**fixtures**  52:5
**flexibility**  54:9
**floor**  6:5 7:17
**flows**  61:9

**focus**  42:17 58:21
**focused**  11:23
    57:19
**folks**  20:11 47:23
    63:21
**follow**  13:14
    31:15,24
**following**  35:3
**force**  21:14,17
**forcible**  63:6
**foregoing**  71:3
**foreign**  10:9
**forget**  24:3 29:22
**form**  11:5 29:14
    30:9,12,20,23
    31:17 32:21,22
    35:6 41:2,22,24
    42:11,18 54:21
    64:12 65:11
**formally**  52:14
**formed**  12:9
**former**  10:23 52:2
    59:25 61:25
**forms**  29:16 30:18
**forth**  19:14 57:6
**forward**  13:7
    66:22
**fought**  61:5,6
**found**  32:21 44:22
**four**  24:14 42:21
    42:23,24 43:25
    44:5 45:11 47:19
    47:19,20
**free**  2:4 3:3
**freeze**  17:14
**friday**  11:5
**front**  64:23
**full**  12:14,18 15:1
    21:17 34:5
**fully**  13:17 39:25
    45:20 67:18
**fund**  24:25 66:23
    66:25

**funding**  37:18
    57:6
**funds**  17:16,21
    18:1,4,10,14,24
    18:24 35:25 36:2
    36:15 43:8
**further**  10:16
    17:15,17,20 18:5
    18:16,17 21:15
    55:22 64:19
**future**  25:17 28:2
    46:11 58:11

**g**

**g**  9:1
**gain**  50:25
**gap**  42:4
**garden**  8:12
**garfunkel**  6:10
    9:20
**gathering**  27:6
**general**  34:3
**generally**  28:11
    33:7 52:19
**genius**  61:14
**gerard**  6:23 9:11
    12:7
**getting**  11:11
    12:18 23:21 26:11
    35:8 36:4 37:6
    38:9,10,11 61:11
**give**  35:18 39:23
    40:1 44:5 60:25
    62:6
**given**  26:8 40:18
**gives**  35:16,16
    66:23
**giving**  16:18
    19:20 38:24 56:20
**glenn**  8:6 10:2
**glovsky**  7:1
**go**  14:19 23:4 33:3
    39:4,22 56:4,10
    59:22 60:10 61:15

**goal**  61:10
**god**  37:4
**goes**  27:18 36:2
    63:20
**going**  15:17 22:17
    22:23 23:25 27:19
    30:4 33:16,18,23
    34:8 35:11 36:24
    38:14,18 39:13,19
    40:24 44:16,17
    46:10 47:10,17
    48:10 49:16,21
    53:18 55:2,3
    56:17 57:9,17
    58:2,3,3 59:14,15
    60:7,11,17 61:8,8
    62:5 63:4,17,22
    63:23 64:21,22
    65:2,3,21 66:22
    67:2,9
**golden**  6:3
**good**  9:2,3,5,11,15
    9:16,17,19,22,24
    10:2,5,11 12:7
    25:2 30:17 38:17
    39:23 46:9 48:4
    60:24 66:1
**government**  28:6
    51:6,12
**governments**  51:9
**grant**  17:6 20:3
    20:21 24:5 25:5
    28:22,24 29:9
    31:20 41:15,21
    51:19 55:12 64:2
**granted**  17:13
    32:16 70:10
**granting**  3:20
    32:12 65:4 70:9
**grants**  28:7
**grave**  23:5
**great**  6:13,14 36:6
    60:22,23 68:2

**greater** 56:21
**greedy** 36:19
**grossman** 1:22
**group** 31:6
**groups** 27:22
**guarantee** 49:11
  49:12
**guaranty** 8:17
**guess** 26:1 30:3,5
  54:14 64:7
**guys** 22:22 29:16
  30:5,25 41:4,4
  46:16 60:16,24
  63:19 68:2

**h**

**half** 43:24,25 44:5
**hammel** 7:6 9:20
  25:2,2 40:24 41:7
  41:19 57:11,11
  59:11,15,19
**hand** 50:2
**happen** 33:19
  36:15 40:5
**happened** 26:4
  28:7,25
**happening** 56:13
**happens** 35:14
**hard** 22:17 27:13
  56:17
**hardware** 27:12
**hawk** 3:8 42:14
  43:7,10,22 44:3
  50:15 70:14
**health** 21:25
**healthcare** 22:6
**hear** 27:9 46:13
**heard** 13:21 17:6
  18:7 24:4 25:4
  26:14 45:15 50:17
  55:11 57:2,10
  68:1
**hearing** 2:1,1,4,7
  2:7,17,17 3:1,1,7

3:7,13,13,18,18
4:1,1,5,5,13,19
5:1 10:20 12:22
31:23 32:13,14
40:18 50:20 52:25
54:7 55:20 56:3
59:17 64:7,20
65:19
**hearings** 10:13,16
  21:2 32:16 52:17
**held** 63:10
**helpful** 27:2 40:7
**hesitant** 35:13
  36:23
**higher** 47:20
  50:22 51:7 55:4
**highest** 54:12
**historical** 48:12
**historically** 14:20
  28:10
**history** 28:5
**hit** 23:10
**hold** 46:15 49:18
  59:24 61:22
**holds** 63:1
**holiday** 68:2
**home** 61:16 62:18
**homes** 57:13 58:2
  62:6 63:6 64:2
**hon** 1:22
**honor** 9:3,5,8,11
  9:15,17,19,22
  10:2,6,12,13,14
  10:19,21,25 11:4
  11:9,17,22 12:4,7
  13:13,14,18,20,21
  13:25 14:7,18
  15:3,21 17:11,12
  17:17,20 18:6,8
  18:21,25 19:10,18
  20:2,4,8,13,22
  21:1,10,19,22
  22:5,24 23:18

24:6,6,11,21 25:2
25:6,7,10 26:4,13
26:25 27:2 28:8
29:10,10,14,18
30:7,10,19 32:2,8
32:10,13,16,17,25
33:2,7 34:23 35:2
40:7,15,18,24,25
41:7,19 42:6,8,12
42:25 43:14,17
44:3,15 45:4,16
50:12,14 51:20,21
51:23 52:8 53:4,7
53:17 54:3,8,13
54:16,22,23 55:6
55:8,13,13,19,20
55:20,25 56:6
57:3,4,11,22 58:6
58:12 59:11,15,19
64:5,11,13,15,18
64:19,25 65:11,13
65:16,24,25 67:14
67:18,24
**honor's** 11:7 15:8
  19:24 25:23 31:25
**hope** 12:20
**horse** 54:19,24,25
  55:3
**hour** 51:25
**house** 63:1,1,2
**houses** 35:24 46:8
  55:18 57:20 59:2
  59:3 64:4,14
  67:22
**howard** 8:14 9:24
**hurt** 23:15 41:18
  60:20 62:2
**hyde** 5:25 71:3,8
**hyman** 8:16
**hypotheticals**
  49:2

**i**

**ian** 7:6 9:20 25:2
  57:11
**idea** 23:9 28:23,24
  46:9 56:10
**identify** 18:14
  54:18,24
**identifying** 16:17
**idiot** 61:15
**idle** 51:25
**immediate** 14:18
**immediately**
  11:10
**impact** 29:6
**impair** 28:19 29:2
**impaired** 27:24
**implement** 58:10
**imply** 24:1
**important** 13:7
  43:16 45:19,23
**importantly** 11:4
  54:1
**improvements**
  52:2
**inadvertently**
  55:14
**incentive** 47:21
**include** 52:5 54:5
**included** 29:23
**includes** 21:8
**including** 4:8
  11:12 36:12 41:4
  52:2 64:3
**inconsistencies**
  33:14
**increasing** 36:14
**increasingly**
  27:15
**incremental** 63:17
**incurring** 25:21
**indenture** 6:11
**indicated** 20:9
  21:7 55:21

**indicating** 11:18 14:3 52:23
**indiscernible** 30:24 31:1 34:7 45:24 57:8 61:21
**individual** 15:6
**individuals** 23:9 60:8
**industries** 51:10
**info** 27:8
**information** 22:16 26:17,23 27:6,8 27:21,22,24 28:1 28:4,11,12 40:8
**information's** 27:11
**initial** 12:5
**initially** 46:7
**inquiries** 10:23
**institution** 50:21 51:1,7,11,13 63:3
**institutional** 23:8
**institutions** 23:13 64:3
**insurance** 4:8,9 20:25,25 21:4 23:1,25 24:5 26:6 69:22,22
**insured** 21:25 22:6
**intend** 13:18 29:25 30:2 31:13 35:17
**intended** 31:7
**intention** 40:14 53:21 54:13
**intentional** 30:11
**intentions** 42:16
**interest** 22:25 33:9 45:8,22 47:2 47:3 51:5 56:21
**interested** 8:10 37:16 63:20

**interests** 47:25 48:1 49:8
**interim** 4:15 13:22 14:1 17:13 20:9 21:1 29:12 29:23,24 31:6 32:14 33:16,18 35:1,3,13,14 36:23 39:5 70:5
**interims** 32:5
**internal** 33:14
**internationally** 47:18
**intervention** 51:8
**inventorying** 26:23
**investigate** 17:17
**investigated** 26:5
**investment** 3:21
**involved** 24:16 49:11 50:23 56:7 57:17
**island** 50:22
**islip** 1:14 7:11
**issue** 22:25 34:19 37:2 39:21,22 45:9 48:23,24,25 50:21 52:23 60:7
**issues** 26:16 34:15
**issuing** 58:5
**it'll** 48:2,7 49:12 55:5 67:16
**item** 13:20 20:4 24:7 51:20 55:14 65:14,16
**items** 10:20 12:18 29:5
**it'll** 55:4

**j**

**j** 8:21
**jack** 6:8 10:8
**james** 10:4

**january** 39:23 40:19,22 41:10,12 41:15,22 64:8 65:21,22 66:4
**javaid** 46:2,2,5 47:5,9,14 48:9 49:13,22 50:4,10
**jericho** 6:20,21
**jerry** 29:17
**job** 46:19,23 60:15
**joseph** 2:4,14 3:4 3:10,15,22 4:3,10 4:16 5:4 50:18
**judge** 1:23 9:24 30:13 31:11 36:9
**judges** 31:6 49:2
**judgment** 52:9,15 52:18,20
**june** 22:7 62:14
**jureller** 7:15 9:6
**justice** 7:8

**k**

**kabir** 46:2
**keep** 59:14 63:4
**kelstadt** 9:6
**kenneth** 6:24
**kept** 47:24
**kid** 28:21
**kimberly** 8:2 10:3
**kind** 15:11 35:9 61:15
**kiss** 2:24 4:22 7:21 9:8
**klein** 8:8
**kleinberg** 8:14 9:24,25 15:7,22 15:23 16:3,11,19 17:1,4
**klestadt** 7:15
**knapp** 10:4,4
**know** 22:10 23:16 28:24 29:20,21

31:16 36:24 37:18 37:19,20,21 38:2 39:18 40:10 46:11 48:20 53:2 56:18 64:24 66:8,13,14 66:15,15,16,16,25
**known** 49:7
**knows** 37:4 40:11

**l**

**lapsed** 42:2
**lapsing** 42:2
**large** 23:13
**largely** 11:16
**larger** 50:21
**late** 12:9 35:19 43:6
**lauren** 2:23 4:22 7:21 9:8
**law** 60:16 61:9
**laws** 53:16
**lawyer** 15:4 36:9 57:23
**lease** 5:1 26:7,12
**leases** 5:3 25:9,12 25:15,20,23,24,25 26:19,20,21,22 27:23 70:1
**leave** 38:16 39:9 39:10
**leaving** 35:10 65:5
**ledanski** 5:25 71:3 71:8
**legal** 18:4 35:16 71:20
**lender** 13:3 35:25 36:14,20,20,21 39:24,24 56:20,23 62:6,7
**lenders** 12:13,13 12:24 32:19 33:9 37:9 40:12,23 46:16 57:5 58:3 59:5 61:1,1 65:7

66:8,9 67:8
**lending** 36:14
**levin** 7:1 9:21
**liabilities** 11:1
23:7
**lien** 34:6,6 63:10
**liens** 2:4 3:3 33:9
34:12,16 35:2
52:9 56:15
**life** 31:9 63:14
66:1
**lift** 37:14
**lifts** 37:17
**light** 57:5
**liked** 35:9
**likes** 61:13
**likewise** 14:6 21:7
24:24 25:16 42:18
44:12
**limit** 45:23
**limited** 3:20 17:10
52:15 64:2 69:13
**limits** 39:16
**line** 64:16 69:4
**liquidate** 46:13
**liquidating** 27:3
34:18 66:5,21
**liquidation** 34:4
36:17 38:15
**listed** 25:12
**listen** 40:2 48:19
**litigation** 36:8
**little** 50:2
**live** 30:8 36:25
**lived** 27:14 29:22
36:8
**living** 27:15 60:1
60:2
**llc** 2:20 3:8,9
13:24 42:14,14
69:10 70:13,14
**llp** 6:3,18 7:15

**loan** 12:25 34:2,6
34:7,9,11 36:3,16
56:20 61:2
**loaned** 63:2,3
**loans** 33:25 34:2
34:12,13 57:6
**local** 4:13 26:5
51:11
**located** 51:24 52:7
**locks** 66:13
**long** 18:3,16
30:13 32:22 41:17
46:10 48:10 50:22
56:24 57:7 60:16
67:16
**look** 30:22 43:8
43:10,11 50:9
58:20 61:1
**looked** 58:10
65:18
**looking** 23:13
41:2
**lori** 6:4
**lose** 57:12
**losing** 50:21
**loss** 50:24 62:3
**losses** 51:5
**lost** 31:8
**lot** 33:13 38:18
41:11,11 44:21
45:17
**luckman** 6:23 9:3
9:11,12 12:7,8
18:8 19:2,6,8
22:24 26:16 30:19
31:1 33:7 34:15
35:1 40:23 45:16
57:3
**lucky** 62:24

**m**

**ma** 7:4
**madison** 3:8
42:14 43:7,10,22

44:3 50:15 70:14
**maintaining**
26:23
**major** 46:10
48:11 60:8
**making** 18:1,2
40:3 43:7 50:9
53:14
**mansion** 48:12,15
52:2
**march** 54:5,6
**market** 42:9 47:6
47:8,9,9,17 53:22
**marketed** 44:18
**marketing** 44:11
45:21 47:8 54:2
**markets** 38:2
**maryellen** 8:24
61:24
**materials** 44:11
**math** 57:23
**matter** 1:5 15:21
20:23 29:11 32:3
**matters** 9:4 12:16
12:20 13:16,18
32:4
**maximize** 46:17
46:20
**maximizing** 47:2
**maximum** 24:14
**mccord** 8:21 9:22
9:23
**meadow** 8:19
**mean** 27:17 28:24
48:13 60:25 61:13
66:18
**meaningful** 32:4,6
32:8
**means** 27:16
28:23 31:13 63:6
63:8,13
**mechanical** 18:2

**mechanically**
22:19
**media** 53:22
**medical** 30:14
60:9 62:2
**meet** 67:4
**meeting** 23:19
**meets** 60:17
**member** 11:5
16:15 60:1
**members** 8:9 15:6
15:15 16:1,8
23:19
**mention** 43:18
**mentioned** 13:17
24:3 51:23 52:3
**merrick** 8:18
**met** 12:3
**meyer** 8:8 9:25
15:7
**microphone** 61:23
**milestone** 40:15
40:16,19
**milestones** 57:17
**million** 48:17
56:18,19
**minds** 22:18
**mineola** 71:23
**mintz** 7:1 9:20
**missing** 26:2
**missouri** 60:1,3
**moment** 26:11
**money** 19:13 29:1
36:14 41:11 46:21
46:21 58:2 60:9
60:11 61:2,7,10
61:11 62:7,7,11
62:25 63:2,3,9,13
**monies** 17:20
**months** 33:12
**mood** 36:7
**morning** 9:2,3,5,8
9:11,15,16,17,19

9:22,24 10:2,5,11
10:17 11:17 12:3
12:7 13:19 20:23
25:2,7 29:6,11
32:3 40:14 42:9
43:23 52:13 55:15
55:23,24
**morning's** 10:18
14:1 17:8 20:5
24:7 51:21 65:14
**morphed** 30:23
**mortgage** 62:20
63:1,5,6
**mortgages** 62:25
**motion** 2:2,8 3:2,2
3:19 4:2,6,13,19
5:1 11:24 13:21
17:6,7,8,11,12,13
20:3,5,21,23 21:7
22:8 24:5,5,11
25:5,7,8,10,13,18
29:9,11,14 30:12
30:21 31:20 32:11
41:23 42:11,18
51:19,21 52:14
54:17,20 55:12,16
56:7 58:10,14
64:2 65:12,15
66:3 69:9,12,16
69:21,25 70:4,8
70:18
**motions** 10:17,17
11:19,21
**move** 13:7 35:22
60:4
**moved** 17:21 62:3
**moves** 61:9
**moving** 18:15
**multiple** 33:17
60:14

**n**

**n** 6:1 9:1 69:1
71:1
**name** 46:2 50:18
61:24
**narrow** 41:8
**national** 6:11
53:25
**nature** 25:20
**necessarily** 16:9
27:11
**necessary** 51:16
54:6
**neck** 6:13,14
**need** 23:15,16
28:4 31:15 38:7
39:16,17 40:4
41:16 47:3 55:15
66:5,23,25
**needed** 26:17 28:1
28:2
**needn't** 37:10
**needs** 56:23 59:1
**negotiations**
32:20
**nervous** 62:16
**net** 48:3
**never** 29:1,2
35:17 36:7 37:16
49:3
**new** 1:2,14 6:6
7:18 41:6 51:14
51:15,15
**newly** 17:22
**night** 11:15 32:24
35:19
**nine** 20:14,15,17
20:19 35:8 62:12
62:13
**nobody's** 56:25
60:20
**non** 12:16

**nope** 61:13
**normal** 27:20
**normally** 61:14
**note** 25:17 35:23
**noted** 67:24
**notice** 10:21,24,25
12:15 26:8 48:21
52:11 53:25 55:7
58:15
**number** 10:14,23
35:10 43:18 47:20
**nunc** 3:9,15 25:9
70:1
**ny** 6:6,14,21 7:11
7:18 8:4,12,19
71:23

**o**

**o** 1:21 9:1 71:1
**oakdale** 2:3 11:25
12:1 42:15,18
51:22,24,25 52:1
52:7 70:15,19
**object** 52:11
**objection** 14:4
20:10 21:7 24:22
25:1,3 26:16
52:13,15,22
**objections** 12:17
13:9,10,11 26:9
**obligations** 20:8
69:18
**obtain** 2:8,9
**obtained** 52:19
**obvious** 60:1
**obviously** 14:20
57:17
**occurs** 35:15
**october** 21:14,18
**odd** 56:22 58:24
62:1 63:6
**offer** 12:4
**offered** 25:25 53:5

**office** 9:8,18 11:5
11:10 14:5 15:10
18:11 24:24 25:19
30:22,22 43:2
53:23 55:22
**officer** 2:21,22
9:10 13:24 14:14
16:1,23,24
**official** 6:19 9:12
19:14
**oh** 48:16,17 64:11
**okay** 10:10 13:12
16:9,9,10 17:5
20:3 25:4 26:10
32:1 36:18,21
50:17 51:18 53:12
56:24 61:20 63:15
64:1 66:2
**old** 28:13 71:21
**once** 19:16 25:11
45:10
**ones** 56:1
**online** 48:2
**onset** 33:22
**open** 18:2
**opened** 17:22
**operation** 25:21
**operations** 17:23
**opinion** 49:17
**opportunity**
16:18 49:5 50:24
52:11
**opposed** 19:2,4
56:25
**option** 65:23
**order** 2:1,7,17,19
3:1,7,13,18 4:1,5
4:21 14:7 17:15
17:20 18:5,16,17
19:11,24 20:6,24
22:23 25:23 29:12
29:24,24 30:12,20
31:21 32:21,22

33:8 34:23,24
35:7,12,13,14,15
35:15,23 36:16
37:2,9,17,21 39:7
39:11,16,23 40:6
40:17,22 41:2,9
41:21,23,24 42:1
42:2,3,5,5,9,11,18
43:9 46:22 49:20
53:15,24 54:21
58:5 62:6 63:7
64:13 65:12 66:7
67:3 69:16,21
70:4

**orders** 10:14 31:6
36:8

**original** 36:16

**originally** 39:6

**outside** 61:15

**outten** 6:3

**overburden** 58:17
59:9

**overpayment**
28:22

**owe** 62:25

**owed** 22:18 23:11
28:22 38:3,6
46:20 60:9

**owns** 44:22

**p**

**p** 6:1,1 8:6 9:1

**p.c.** 6:10 8:8

**pack** 67:13

**package** 33:13
36:12,13 46:8

**packages** 33:21

**page** 35:9,10 69:4

**pages** 23:14 35:8
66:7

**paid** 23:10 24:13
24:17 28:6 43:8
44:21 63:1

**papers** 24:3 41:23
57:14

**paragraph** 33:15

**parcels** 57:22

**park** 6:5 47:24

**part** 11:14 12:12
44:17 58:9 60:8
63:19 67:9

**parte** 2:1

**participate** 15:15

**particular** 60:15

**parties** 11:3 12:14
12:19 15:1,23
18:4 40:15 41:25
44:10 52:10 63:20
67:7,19

**partners** 3:8,9
42:14,14 70:13,14

**party** 8:10 16:13
22:2,12 67:11

**pass** 50:7

**passed** 23:23

**passion** 49:4

**passionate** 50:7

**paving** 52:16

**pay** 4:2,2,9 22:2,3
36:3,3,3 38:6 43:9
56:5,11,19 62:8
63:11

**paying** 22:20
48:23 56:21

**paymaster** 32:1

**payment** 21:6
28:25

**payments** 20:6
21:15 69:17

**payroll** 4:2 20:7
69:18

**pc** 8:1

**pell** 28:22,24

**pending** 12:19

**people** 16:18
20:18 22:18 23:14

27:19 36:25 39:19
44:20 46:20 59:6
60:7,23,24 61:1
61:14 62:2,3
64:10 66:20

**percent** 24:14,14
34:7 42:21,23,24
43:25 45:12 47:19
47:20,20 61:14,15

**perform** 4:22

**period** 12:24
14:19 18:13 21:5
21:12 42:4 49:16
57:8

**periods** 14:21
34:20

**permit** 17:8 18:2
69:12

**person** 49:16,19
49:23 50:8 63:7

**personal** 23:9
52:6

**personnel** 2:21

**perspective** 40:14
44:7

**petition** 2:9,13,23
3:10,15 5:3 14:19
21:5,12 25:9,24
32:11 38:24,25
39:1 56:1 70:1,8

**phone** 10:7

**pick** 61:1

**pieces** 66:5

**pivotal** 63:18

**place** 21:21 28:2

**places** 29:22

**plan** 4:22 21:25
22:6,7 37:6 39:17
46:6 65:15 66:6
66:10,12,18,25
67:4,7,16,22

**plans** 39:19

**plaza** 1:13 7:10

**please** 9:2 10:7

**pleased** 11:15
32:20 33:5

**po** 8:11

**point** 13:6 14:6
27:8 29:19 31:3
32:7 33:2 38:1
40:16 42:4 43:24
43:25 44:5,19,24
47:10 48:21 53:15
54:3 56:21 58:21
63:12 64:8,18
66:12,17

**police** 26:5

**policies** 21:5,21
22:4 51:15

**policy** 21:8,11,13
21:14 22:4

**pool** 44:20 60:10

**popeo** 7:1

**poppiti** 8:2 10:3

**pops** 45:10

**portfolio** 3:4

**portion** 34:6,9
65:12

**portions** 48:8

**position** 9:7 15:25
16:11,23 19:10
23:17 25:1 36:15
49:6 66:2

**positions** 60:23

**possible** 46:21
48:4 61:10 63:21

**possibly** 62:13

**post** 2:9 21:5,12
32:11 38:24,25
39:1 70:8

**potential** 16:15
23:2 25:22 44:19
54:5

**power** 19:22
66:23

**powerhouse** 52:16
**pre** 2:12 54:17 67:13
**precisely** 23:18
**precluding** 40:3
**prefer** 33:6 59:6
**prejudice** 15:17 64:2
**premium** 4:8 20:25 21:16 23:1 69:23
**premiums** 4:10
**prepaid** 21:11,13
**prepared** 40:4 65:24
**prepetition** 3:20 4:2,9 14:16,21 17:9 34:14,15 69:12
**present** 13:18 15:10,12,14 42:11 47:15 48:22 53:3 67:20
**presented** 54:21
**preservation** 34:2 34:11
**preserve** 36:16
**preserved** 27:8
**press** 53:22
**pretense** 49:25
**pretty** 11:13 32:17 35:6 47:11 56:7
**previously** 10:18 11:22 13:21,25 15:20 17:13 20:8 52:8 54:16
**price** 47:1
**primary** 42:17 45:6
**printers** 25:19

**prior** 23:4 26:20 44:14 45:20 52:16
**priorities** 66:16
**priority** 34:8 36:13,15,21 37:2 56:21 59:5
**privilege** 15:24 16:5,7
**privileged** 14:25 15:8,18,19
**pro** 3:9,15 25:9 70:1
**probably** 13:3 23:10 49:8 54:1 59:1 62:8 63:17 66:11
**problem** 16:16 33:10 34:5,10,16 43:15 59:10 67:5
**procedure** 19:12 47:16
**procedures** 2:2 3:4 4:15 11:25 12:2 51:22 52:12 52:25 53:24 54:4 54:8 55:17 58:10 59:17 64:7,17,18 70:18
**proceedings** 51:13 71:4
**proceeds** 24:18 56:4,10 59:3
**process** 13:3,7 18:18 25:1 33:18 34:4 38:10 44:16 44:18 45:7 46:23 47:13,16 48:1,5 48:10,21 55:2 57:14,16,18 58:1 65:7
**processed** 22:12 51:4

**product** 47:17
**professionals** 4:16 12:12 13:8 29:13 43:22 45:18 46:19 70:6
**profit** 48:16
**profited** 51:1
**programs** 4:8 20:25 51:15 69:22
**projects** 23:23
**proof** 28:21 37:3
**properties** 24:10 45:24 46:7,8,10 53:19 58:23 69:7
**property** 3:2,2 44:13,17 45:22 46:13,18 47:24 49:16 52:5,6 53:5 53:9,13,16 66:5
**proposal** 17:14 24:12
**propose** 13:14 17:22 52:6 54:3 54:23 65:12
**proposed** 9:12 11:10 13:15 29:24 32:21 35:23 42:18 42:21 50:14 52:5 52:10,11 53:2,24 54:2,21 64:6,12
**prosecuted** 36:2
**prosecuting** 22:19
**protect** 41:6
**protected** 39:25
**protection** 2:12 32:12 52:19,24 70:9
**protections** 54:17
**protective** 34:1
**provide** 2:20 27:24 37:10
**provided** 13:24 18:13 22:15 33:9

**provides** 29:15
**providing** 34:5
**provision** 35:21 65:4
**provisions** 19:14 29:23 34:17 55:5
**publication** 53:25
**publish** 53:23
**pull** 27:18 28:5
**pulling** 28:11
**purchaser** 24:15
**purposes** 63:4 64:6
**pursuant** 2:10,12 2:13,18 4:6,13,19 5:2 54:11
**push** 38:19,19 40:17
**put** 12:21 29:25 31:7,22 34:21 36:23 46:6 64:6
**putative** 10:9
**puts** 39:25
**putting** 33:15

**q**

**quadrangle** 6:20
**quantify** 23:15,17
**quarter** 44:24
**question** 15:8 30:15,17 37:3 43:2,3 49:6 62:18
**questioning** 62:13
**questions** 13:5 43:1
**quickly** 11:12 66:2,2,2
**quite** 62:9

**r**

**r** 1:21 6:1 9:1 71:1
**raise** 48:23,24,24
**raised** 15:24 23:2 23:19 55:21 57:5 58:21 63:18

raisner 6:8 10:8,8
ran 44:15
range 58:23
rate 56:21
reached 48:3
51:12
reaching 33:12
read 21:23 24:2
35:19 43:9 46:6
47:5,7 48:2 52:17
ready 41:12
real 3:9,14 12:2
24:8,19 42:15
45:18 50:15 52:5
54:2 55:16 66:21
69:5 70:14
realize 58:22
59:21
really 11:23 39:18
60:24 61:6
realty 3:8 42:13
70:13
reason 40:21 45:6
46:16 49:13 62:15
reasonable 44:9
reasons 56:24
60:1
receipt 10:24 13:1
received 10:22
25:11 43:1 52:11
52:14 54:14
receiving 12:23
26:25
recognized 38:24
recommendation
46:25
record 10:12
12:22 16:17 17:14
25:17 42:5 43:17
50:13 56:17 59:17
71:4
records 28:12

redlines 12:21
reduced 60:19
refer 11:21 13:16
22:11
reference 44:12
referenced 40:15
refuse 51:13
refuses 22:20
reg 1:3
regard 11:16
15:24 34:10 53:16
57:7 64:12,17
regarding 12:24
18:11 23:6 34:16
34:19 45:18
reimbursement
4:15 29:13 70:5
reinstate 37:13
reject 5:1,2 25:8
25:24 26:7 69:25
rejected 26:19,22
28:3
rejecting 26:11,20
27:23 28:3
rejection 25:16
29:5
related 4:8,10
20:7,25 53:10
69:18,22
relates 25:17
42:16 52:24 66:7
relation 10:15
25:20 32:12,22
42:15,21 52:14,18
54:4,16 70:9,15
relationship 67:3
relative 17:10
64:7 69:13
relevant 11:2
relief 10:15 11:16
17:10,13 21:3
32:14,16 35:2
55:24 57:16 58:9

64:4 65:4 69:13
remaining 26:19
remains 35:21
remarks 12:4
remember 31:5
35:20 65:19
removed 54:20
remuneration
43:11
renting 62:11
reopened 18:13
reorganization
66:22
report 14:9 17:17
reported 26:5
reports 14:10
represent 43:20
63:20
representation
53:14
representations
53:8,10
representative
16:14
represented 15:7
62:2
representing
12:13
represents 15:23
49:8
request 27:21
52:19 54:20 64:12
requested 32:15
require 21:12,15
25:16 48:2 63:12
required 18:23
21:4 24:20
requirements
3:21
requires 22:16
requiring 63:12
reservation 57:7

residential 3:4
12:2 24:9,19
55:16 69:6
resolve 13:10
resolved 13:11
respect 19:11 27:1
52:20
respond 29:6
52:22
response 55:21
responsible 22:19
63:19
rest 64:4
restitution 60:13
restraints 17:16
restricted 17:16
18:1,14
restrictions 17:19
45:2
restructuring
2:21,22 9:10
13:24 16:1,24
result 12:19 62:4
retain 16:12,16
24:8 42:13 69:5
70:13
retained 11:6
16:20 29:13 43:23
70:6
retention 11:10
12:1 13:23 14:6,8
17:1 24:11,24
42:19 50:15 69:10
retired 50:23
review 14:2 17:12
19:11,16
reviewed 11:2,20
14:4 21:6 24:22
reviewing 13:4
revised 32:21
33:14 55:23,24
revision 12:20

**revisions** 40:13
**rewrite** 33:17
**rewriting** 41:12
**richard** 8:21 9:23
**rid** 67:22
**right** 17:5 19:21
  21:13,20 26:14
  29:8 31:19 32:9
  38:12 41:3 42:7
  44:25 45:5,14,25
  49:13 52:24 53:1
  53:18 59:5,20
  60:6 63:11,24
  64:14
**rights** 18:4 35:16
  37:19,20 38:23,23
  38:25 52:18 53:9
  53:11 57:7 60:18
  61:3,4
**road** 6:13 71:21
**robert** 1:22 2:22
  9:9,13
**role** 11:8 67:8
**rosenfeld** 2:22 9:9
  13:25 14:5,10
  15:2,14,25 16:20
  18:21 19:3,5,7,21
  27:5,7,10,22,25
**rosenfeld's** 14:8
  16:23
**roughly** 14:21
  52:1
**rsr** 2:19 13:23
  14:8 69:10
**rule** 2:9 4:14,20
  64:21
**rulings** 69:3
**run** 38:20 45:7
  54:15 56:22
**running** 34:3
  38:19
**ryan** 31:3

**s**

**s** 2:22 6:1 9:1
**sale** 2:2,3 3:4 12:2
  24:18 42:22 44:16
  44:17 45:2 46:7
  51:22 52:4,10,24
  53:1,25 54:7 58:1
  58:14,17 59:2
  70:19
**sales** 13:7 56:4
  60:10
**satisfied** 19:13
  45:24 63:8
**save** 51:6,9,10,13
  67:21,23
**saying** 28:21
  37:22
**says** 35:21,23 37:4
  39:17 44:22
**schedule** 2:1,7,17
  3:1,7,13,18 4:1,5
  25:13 55:22
**scheduled** 10:16
  10:18
**schedules** 10:25
  13:4 23:14 25:15
  37:25 58:24
**scheduling** 2:3
  25:12
**school** 61:2
**science** 52:4
**sean** 7:20 9:5
  10:12 50:13
**seated** 9:2
**second** 50:10 58:6
  58:9 63:12
**section** 2:8,12
  3:21 5:2 17:10
  19:19 25:8 34:21
  35:21 36:1,1,11
  36:19,22 69:14,25
**sections** 2:10,13
  2:18 4:6,14,19

**secure** 34:13
**secured** 2:9,13
  24:25 37:24 38:3
  38:9,20,21 39:3
  66:10
**see** 12:20 16:13
  36:10,25 47:6
  55:1 68:2
**seeing** 47:14
**seek** 11:17 17:19
  26:7 42:19 54:7
  54:24 55:23 59:5
**seeking** 13:22
  19:19 20:5 43:3
  51:6,24 69:9,16
**seeks** 24:11 25:23
**selected** 12:10
**selection** 11:11
**self** 21:24 22:6
**sell** 3:2,2 35:24
  38:5 47:21 51:24
  52:6 61:8,8 64:9
  64:14
**selling** 62:5
**sells** 56:18
**send** 47:18,18
**sense** 33:19 34:18
  39:13 62:9,10,14
  62:17 63:15
**sent** 13:1
**separate** 36:11
**served** 10:22
  25:11
**server** 26:18
**servers** 27:13
**set** 19:14 22:3
  47:11 61:9
**sharing** 43:4
**shopped** 44:13
  53:19
**shot** 60:25
**show** 34:25 37:25
  41:3

**shown** 26:1
**side** 46:12 66:15
**sight** 57:12
**sign** 31:22 35:11
  35:13 37:21 39:7
  39:11 40:5 41:25
  42:3 49:19,21
**signature** 18:19
  18:22 19:22
**signatures** 18:23
**signed** 11:20 14:6
  37:16 42:5
**significant** 23:4
  48:12
**signing** 19:3 46:22
**signs** 53:14
**silverman** 6:18,24
  9:12 11:7,9 23:18
  27:2
**silvermanacam...**
  12:8
**simply** 40:21
**sir** 27:9,25 45:25
  48:19
**sit** 62:5
**situation** 60:22
**six** 55:18,20 56:2
**skip** 65:22
**skipped** 55:14
**slightly** 55:24
**sold** 35:23 37:23
  54:11 57:13 59:3
  63:2,7
**sole** 19:22 47:3
**solely** 34:13
**solicited** 48:4
**solutions** 71:20
**solve** 23:16 48:7
**somebody** 19:4
  22:21 28:20 38:5
  44:4 55:2 66:4
**somebody's** 38:13

**someplace** 21:23
  60:5
**something's** 27:17
**somewhat** 28:14
**sonya** 5:25 71:3,8
**soon** 25:11 68:3
**sorry** 12:10 61:24
**sought** 10:15 21:3
  54:17
**source** 51:12
**southard** 7:15,20
  9:5,6,6 10:11,12
  13:13 14:10,13,18
  15:3,6,13,18,20
  17:7 18:6,21,25
  19:18,24 20:2,4
  20:13,16,19,22
  21:10,19,22 22:1
  22:5,11,15 24:6
  25:6 26:3,13,24
  27:13 28:8,17
  29:4,10,18 30:7
  30:10,16,18 31:13
  31:16,24 32:2,7
  32:10,25 34:23
  40:7,12 42:6,8,25
  43:14,17 44:3,6
  44:15,25 45:4,6
  45:13,16 50:12,13
  51:20 53:7,10,17
  53:21 54:13 55:6
  55:10,13,19 56:6
  56:10 57:22 58:6
  58:9,14 64:5,11
  64:15,25 65:9,11
  65:24 67:11,14,18
  67:24
**southard's** 30:22
**southern** 29:21
  31:8,10 66:19
**speak** 16:18
**speaks** 16:4

**speed** 11:11 45:20
**spend** 41:11,11
**spending** 13:9
  41:14
**split** 42:24
**spoke** 18:10 55:19
  56:2
**spring** 67:16
**staff** 62:2
**stage** 47:12 50:2
**stakeholders**
  57:18
**stalking** 54:18,24
  54:25 55:3
**stand** 30:10 31:16
**standard** 29:14,16
  29:20,25 53:22
  60:17
**standing** 48:24
  49:6
**start** 12:24 13:3
  27:19
**started** 12:23 13:8
**starting** 12:25
  64:16
**starts** 13:15
**state** 10:7 62:3
**stated** 24:23
**statement** 11:1,18
  14:3 52:17
**states** 1:1,12 7:8
  9:18 10:5 18:11
**status** 19:17 22:21
**stay** 21:21 37:3,12
  37:17 49:10 67:6
**step** 55:1
**steps** 64:16
**stevens** 7:15 9:6
**stewart** 8:11
**stim** 8:1 10:3
**stoney** 62:11
**stood** 62:16

**stop** 37:18 47:15
  47:15
**straight** 38:15
**streamline** 58:11
**street** 7:17 8:3
  38:14 51:8,10
**stroke** 66:24
**student** 28:21
  52:3
**student's** 29:1
**students** 10:23
  28:6 50:25 51:1
**stuff** 39:5 47:7
**style** 32:16 52:15
**subject** 11:6 14:1
  15:1 17:1,3,15
  18:16,17 22:7
  31:20 34:24 35:25
  55:4 56:13 64:19
**submit** 41:22,24
**submitted** 30:20
  33:1
**subpoena** 27:20
**substantial** 18:24
  59:4
**successful** 10:25
**successfully** 36:2
  56:14
**suffice** 16:5
**suggest** 30:19
  31:14 39:4,22
  59:16
**suggestion** 31:23
  31:25 59:11
**suite** 8:11 71:22
**summarize** 33:5
**suozzi** 8:8 9:25
  15:7
**super** 34:8 36:13
  36:21 56:21 59:4
**superpriority**
  2:10

**support** 4:22 37:6
  39:17 52:21 65:15
  66:6,12,25 67:4,7
  67:16,22
**supports** 66:18
**sure** 12:6 23:15
  26:17,19 28:18
  30:25 31:2 45:9
  46:23 57:15 60:12
  63:20 66:21
**surprise** 40:11
**survival** 51:16
**suspect** 40:8
  41:13
**suspicion** 38:3
**swift** 48:18
**system** 27:12
  28:14
**systems** 28:9

**t**

**t** 6:16 71:1,1
**table** 44:8
**take** 30:22 34:22
  38:21 39:6,8 41:9
  46:10 48:10 49:16
  49:18 55:9 67:16
**taken** 48:18 64:16
**talk** 23:12 49:10
  61:22
**talked** 52:8
**talking** 28:12
  57:24 58:25 67:6
**targeted** 54:2
**tax** 39:21
**teachers** 28:6
**technically** 19:19
**tee** 22:21
**teed** 58:18
**telephonically** 6:8
**tell** 22:20,22
  27:23 30:2 35:19
  36:25 38:2 39:11
  39:12 41:16,25

46:1 59:24
**telling** 38:13
  65:20
**tells** 57:23 60:16
  63:5
**ten** 35:8
**tenants** 24:15
**terminate** 16:25
**terminated** 22:7
**termination** 23:3
  23:5
**terms** 10:20 21:10
  21:15 25:12 40:13
  43:9 55:23 57:22
**thank** 10:11 13:11
  13:13 17:7,7 20:4
  20:22 24:6 25:6
  29:10 31:25 32:2
  41:7,19 42:6,6
  50:11,12 51:17,18
  51:18,20 55:10,13
  57:20 58:7 59:15
  59:19 61:18,19
  63:24,25,25 64:5
  65:9,11 67:24
  68:1
**thankfully** 32:4
**theft** 26:4,5,6
**theory** 24:16
  46:18
**thing** 37:22 40:5
  41:21 46:14 48:11
  49:14 50:10 60:15
  63:20
**things** 23:22 24:2
  35:10 36:10 38:12
  39:3,6,9 41:12
  49:1 50:1 53:23
  58:23 59:7 60:9
  62:8 64:10
**think** 10:24 11:15
  15:9,13,21 16:16
  19:1 27:6 30:16

31:24 33:4 36:12
  38:12,17,18,24
  39:15,20 40:7,12
  40:24 41:20 45:6
  47:1 48:6 56:9
  58:7 59:7 60:19
  61:4,14 63:16
  65:13 67:19,23
**thinking** 62:5
**third** 20:4 22:12
**thought** 12:3 13:6
  23:22 32:5 40:10
  46:7,9
**thoughts** 12:5
  65:16,19
**thousand** 58:25
**three** 11:5 20:19
  48:17
**time** 13:9 14:16
  18:13,16 19:20
  36:18 39:24 41:10
  42:8 46:10 48:21
  52:6 54:3 58:4,15
**timely** 11:2
**times** 44:21 51:24
**timing** 40:14,20
**title** 63:8
**today** 9:13 22:25
  23:24 24:2 28:19
  35:7,24 40:5 42:2
  52:22 59:8 60:18
  61:2 64:21
**today's** 12:22
  25:11 32:13
**told** 13:10 34:22
  39:24 57:25
**total** 20:15,19
  57:23 58:2 59:2
**totally** 37:13
**town's** 53:9,11
**track** 29:21,24
  31:8

**tracks** 32:22
**transaction** 45:13
**transcribed** 5:25
**transcript** 71:4
**transfer** 19:12
**transfers** 3:19
**transparent** 48:5
  48:7 49:12 63:23
**transpired** 10:21
**tried** 34:19
**triggers** 67:3
**trip** 33:20
**trouble** 36:6
**true** 71:4
**trust** 30:13 31:11
**trustee** 6:12 7:2,9
  9:18,21 18:11
**trustee's** 11:5
  14:5 24:23 43:2
  55:22
**trustees** 8:10 9:25
  14:11,15,16,20,22
  14:23,25 15:2
**try** 30:4 33:20
  36:10 50:16
**trying** 13:10 31:9
  33:8,17 36:9
  41:18 46:17 60:19
  60:20,20 61:3,6
  61:17
**tunc** 3:10,15 25:9
  70:1
**turn** 12:3 22:23
  22:23
**turned** 22:14
**twerks** 61:10
**twice** 40:4 42:24
**two** 22:22 33:25
  43:4 46:7,8,9
  47:19 55:1 57:13
  63:18 66:5
**type** 11:21 24:19
  28:11

**types** 33:25,25

**u**

**u.s.** 1:23 7:9 10:4
  11:4 14:5 24:23
  43:1 55:21
**u.s.c** 2:4 3:3
**u.s.c.** 2:10,12,13
  4:14
**ultimate** 47:21
**ultimately** 14:10
  16:21 17:19,23
  24:17 44:8 53:14
  54:7,11 65:10
  66:11
**umb** 6:11 7:2 9:21
**umd** 25:3
**unaffected** 18:4
**unclear** 23:20
**uncontested**
  13:16
**uncontroversial**
  12:16
**understand** 16:10
  27:16,17 48:7
  50:20 56:16 57:6
  59:7 62:4 63:22
  66:12,20
**understanding**
  26:24 27:16 36:6
  64:17
**understands**
  56:25
**unexpired** 5:3
  25:9 70:1
**uniforms** 50:2
**union** 4:2 20:17
**unionized** 20:20
**united** 1:1,12 7:8
  9:18 10:5 18:11
**universe** 23:2
**unknown** 1:25
**unnecessary**
  25:20,22

**unpaid**  23:5
**unrestricted**
    17:21 18:10,15
**unsecured**  6:19
    9:13 49:9
**unware**  30:11
**urgency**  59:8
**urgent**  56:3
**use**  17:23 20:24
    29:20 32:12 36:4
    36:5 53:16 69:22
    70:10
**useful**  38:18
**uses**  28:14
**utilize**  2:11

**v**

**valid**  63:5
**value**  46:17,20
    47:2 48:13 53:2
    58:23
**vanderbilt**  48:12
    52:3
**vanderbilt's**
    48:15
**various**  10:16
    32:18 33:9
**varying**  33:10
**vehicle**  38:17
**veritext**  71:20
**version**  33:1
**versus**  18:10,14
**views**  27:3
**vying**  45:22

**w**

**wages**  62:3
**waived**  37:10
**waiver**  3:21 19:14
    19:19
**walk**  49:25
**wall**  51:8,10
**want**  16:17 17:5
    18:7 19:7 24:1,4
    26:14 28:18 29:2

30:2 31:22 35:11
35:24 36:23 37:1
39:6,9,10,12,12
42:2,24 45:9,14
47:1,21,23,24
48:10,15,16,18
49:14,15,25 50:6
50:7,16 55:11
57:1,12 59:6,9,13
64:9,10,22 66:2
66:11 67:15 68:1
**wanted**  26:17
    43:18 46:14 49:14
    50:10 57:15
**wanting**  58:16
**wants**  36:21 57:10
**warmuth**  8:1,6
    10:2,3,3
**warrant**  54:9
**wasn't**  57:4
**way**  14:25 27:24
    30:1 31:7,22
    32:21 39:10 43:9
    53:19 55:1 56:22
    59:22 60:10 61:16
**ways**  38:18 51:1
    52:23 60:14
**we've**  11:13 12:14
    27:4 35:9 41:23
    51:23 52:8
**website**  49:9
**week**  11:2,6,14
    12:12 13:3 64:17
**weekend**  11:12
    12:11
**weekly**  23:10
**went**  31:5 46:23
    48:13,14
**west**  7:17
**whichever**  33:5
**wide**  48:3
**wild**  6:10 9:20

**willing**  16:12,16
    30:8 38:15 41:20
    67:1
**wind**  25:21
**winner**  47:10
**winter**  48:11
**winters**  7:15 9:6
**wish**  25:4
**wishes**  48:23
**won**  61:5
**words**  31:3,4
**work**  20:11 23:25
    24:16 59:10,13
    60:5 67:22
**worked**  11:13
    12:11 13:8 19:16
    32:17 50:19 62:1
**working**  12:17
    14:12,13 18:9
    43:4 62:14
**works**  41:24
    61:16
**world**  27:15 37:8
**worried**  23:13
**worry**  21:20 38:7
    66:6
**worth**  38:1
**wrong**  59:22
**wrote**  37:14

**x**

**x**  1:4,10 49:3 69:1

**y**

**yeah**  21:10 26:21
    30:25 31:13 44:13
    58:13 64:15
**year**  14:21 21:13
    39:21 44:16
**years**  31:6 48:17
    50:19,25 62:1
**yesterday**  11:19
    13:15 42:10 43:6
**york**  1:2,14 6:6
    7:18

**z**

**zaikowski**  6:4
    10:9
**zoning**  53:9,10