**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Proposed Counsel to the Debtor and Debtor-in-
    Possession*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                    :        Chapter 11
                                                         :
DOWLING COLLEGE,                                         :        Case No. 16-75545 (REG)
                                                         :
                                                         :
                                    Debtor.              :
---------------------------------------------------------------x

**SUPPLEMENTAL AFFIDAVIT OF SEAN C. SOUTHARD IN SUPPORT OF
APPLICATION FOR AN ORDER APPROVING THE RETENTION OF KLESTADT
WINTERS JURELLER SOUTHARD & STEVENS, LLP AS GENERAL BANKRUPTCY
COUNSEL TO THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE**

STATE OF NEW YORK        )
                         ) SS.:
COUNTY OF NEW YORK       )

SEAN C. SOUTHARD, being duly sworn, deposes and says:

1.      I am an attorney at law admitted to practice in the State of New York and the

Bankruptcy Courts and District Courts for the Southern and Eastern Districts of New York.  I am an

equity partner at the firm of Klestadt Winters Jureller Southard & Stevens, LLP ("KWJS&S"), which

maintains an office at 200 West 41st Street, 17th Floor, New York, NY 10036.  I submit this

supplement affidavit (the "Supplemental Affidavit") in further support of the application (the

"Application") of Dowling College ("Dowling" or the "Debtor") for the entry of an order authorizing

the Debtor's retention of KWJS&S as its general bankruptcy counsel *nunc pro tunc* to the Petition Date.

2.      I am familiar with the matters set forth herein and make this Supplemental Affidavit in further support of the Application by the Debtor for authority to retain KWJS&S as counsel.

3.      The proposed rates of compensation to be sought by KWJS&S, subject to final Court approval, are the customary hourly rates in effect when services are performed by the attorneys and paralegals who provide services to the Debtor.  The current hourly rates for the category of KWJS&S professionals anticipated to be staffed on this matter are set forth in the chart below.  These hourly rates are subject to periodic adjustment and the Debtor has been advised of that fact.

| CATEGORY OF TIMEKEEPER | NUMBER OF TIMEKEEPERS EXPECTED TO WORK ON THE MATTER DURING THE BUDGET PERIOD | AVERAGE HOURLY RATE (2016-2017)[1] |
|---|---|---|
| Equity Partner | 2 | 562.5 |
| Non-Equity Partner | 2 | 485 |
| Of Counsel | 1 | 350 |
| Associate (over 5 years) | 1 | 385 |
| Associate (under 5 years) | 1 | 350 |
| Paralegal(s) | 2 | 150 |

4.      KWJS&S maintains records of all of its clients and the matters on which it represents such clients, and the other parties which have a substantial role in such matters.  I have caused a review of such records to be performed in order determine KWJS&S's connections with the Debtor, its creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee and any person employed in the office of the United States Trustee.  In addition, I have reviewed relationships that KWJS&S has with potential parties in interest as set forth on **Schedule 1** hereto to determine if any such relationships give rise to an actual or potential conflict of interest or

---

[1] Rates reflected here are blended and reflect anticipated rate increases for January 1, 2017.

otherwise affect its disinterestedness.

5.      Other than as previously disclosed in my prior affidavit to this Court in support of the Application dated November 29, 2016 (the "Prior Affidavit"), KWJS&S has no connections to disclose.

6.      As previously disclosed in the Prior Affidavit, the Retainer Funds[2] received by KWJS&S were funded directly by UMB Bank, National Association, as Escrow Agent from funds contributed by the Bond Trustees and the Series 2006 Bond Insurer (now current debtor in possession lenders) for the benefit of the Debtor.   As explained more fully in the First Day Declaration of Robert S. Rosenfeld, on or about September 20, 2016, Dowling and the Bond Trustees, the Series 2006 Bond Insurer, and UMB Bank, N.A., as escrow agent (the "Escrow Agent"), entered into that certain Escrow Agreement, pursuant to which the Bond Trustees and Series 2006 Bond Insurer caused certain protective advances to be made under applicable loan facilities to pay expenses otherwise due by Dowling (the "Escrow Advance Agreement").   The terms of the Escrow Advance Agreement reflect that Dowling maintained no interest in the funds held by the Escrow Agent.   To be clear, however, Dowling is expected to repay the funds advanced under the Escrow Advance Agreement as part of the claims asserted by the Bond Trustees and Series 2006 Bond Insurer.   As of the Petition Date, I'm informed that approximately $2.8 million has been funded through the Escrow Advance Agreement to pay expenses of Dowling, including the Retainer Funds and other professional fee retainers for other professional firms.   Prior to establishment of the Escrow Advance Agreement, funding of fees and expense to professional firms was generally paid directly by Dowling.

7.      For the avoidance of doubt and notwithstanding the source of payment of its

---

[2] Capitalized terms not otherwise set forth herein shall have the meaning set forth in the Prior Affidavit or the Application.

retainer funds, KWJS&S has never represented the interests of the Escrow Agent, Bond Trustees or the Series 2006 Bond Insurer who were the ultimate source of the protective advances, whether directly or indirectly.  For the further avoidance of doubt, KWJS&S will not represent the individual interests of any of the Escrow Agent, Bond Trustees or the Series 2006 Bond Insurer in relation to the Chapter 11 Case.  Rather, KWJS&S's only client in the Chapter 11 Case and the only party that it is expected to represent the interests of during the Chapter 11 Case is the Debtor.

8.      KWJS&S shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this Chapter 11 Case in compliance with Sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.  KWJS&S also intends to make reasonable efforts to comply with the Large Case Guidelines, both in connection with this Application and the interim and final fee applications to be filed by KWJS&S in this Chapter 11 Case.

9.      The following is provided in response to the request for additional information set forth in Paragraph D.1. of the Large Case Guidelines:

| | |
|---|---|
| **Question:** | Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? |
| Response: | No. |
| **Question:** | Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? |
| Response: | No. |
| **Question:** | If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If your billing rates and material financial terms have changed postpetition, |

explain the difference and the reasons for the difference.

Response:    KWJS&S did represent the Debtor during the 12 months prepetition concerning certain non-bankruptcy matters disclosed in the Application and for periods prior thereto. However, KWJS&S's billing rates have not changed except in relation to annual increases during the period of the pre-bankruptcy engagements for Dowling. Indeed, since January 1, 2016, our firm rates have not changed.  By way of illustration, my personal hourly rate for calendar years 2014 and 2015 was $525.  My hourly rate was adjusted upward to $550 effective January 1, 2016 and is expected to adjust to $575 on January 1, 2017.

**Question:**   Has your client approved your prospective budget and staffing plan, and, if so for what budget period?

Response:     Yes.  For the 13 and 30 week period following the Petition Date.

10.    In summary, I believe KWJS&S is disinterested and is well qualified to represent the

Debtor in this Chapter 11 Case.

*/s/Sean C. Southard*

Sean C. Southard

Sworn to before me this
28th day of December, 2016

*/s/Christopher J. Reilly*

Notary Public, State of New York
LIC.: 02RE6297793 (Kings Co.)
Commission Expires: March 3, 2018

5