# Exhibit C



| | |
|---|---|
| 980 Washington Street | 1500 Broadway |
| Suite 330 | 8th Floor |
| Dedham, MA 02026 | New York, NY 10036 |

March 14, 2017

Dowling College
150 Idle Hour Blvd.
Oakdale, NY 11769
Attn: Robert S. Rosenfeld

      Re: Proposal to Market and Sell IP Addresses

Mr. Rosenfeld:

This letter (the "Letter Agreement") sets forth the proposal of Hilco IP Services LLC d/b/a Hilco Streambank ("Hilco Streambank") to act as the exclusive agent of Dowling College (the "Company") for purposes of monetizing the Company's interest in certain internet protocol numbers as described on the annexed Exhibit A (the "IP Addresses"). Hilco Streambank acknowledges that the Company is a debtor in possession under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), with its bankruptcy case pending in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), under case number 16-75545, and that this Letter Agreement is subject to approval of the Bankruptcy Court. Subject to Bankruptcy Court approval, Hilco Streambank is prepared to immediately commence working on behalf of the Company to market and sell the IP Addresses subject to the following terms and conditions:

1. <u>Engagement</u>:  Subject to Bankruptcy Court approval, Hilco Streambank shall be engaged as the Company's exclusive agent to market and sell the IP Addresses effective as of the date of execution of this Letter Agreement (the "Commencement Date").

2. <u>Scope of Services</u>:  Hilco Streambank will work with the Company to collect and secure all of the available information and other data concerning the IP Addresses. Hilco Streambank shall assist the Company in recovering its American Registry for Internet Numbers (ARIN) registration and securing the rights to the IP Addresses. Hilco Streambank shall develop and execute a sales and marketing program designed to elicit proposals to acquire the IP Addresses from qualified acquirers with a view toward completing one or more sales, assignments, licenses, or other dispositions of the IP Addresses during the Exclusive Term.  Hilco Streambank shall assist the Company in connection with the transfer of the IP Addresses to the acquirer(s) who offer the highest or otherwise best consideration for the IP Addresses.

3. <u>Exclusivity</u>: Hilco Streambank shall be the Company's exclusive agent during the Exclusive Term of this Letter Agreement.

4. <u>Term</u>:  The initial term of this engagement shall be one hundred eighty (180) days from the Commencement Date (the "Exclusive Term"). Thereafter, Hilco Streambank's exclusive retention shall continue until terminated by either party on 30-days advance written notice.  Prior to termination of the Exclusive Term, Hilco Streambank shall deliver to the Company a written list of prospects with whom Hilco Streambank has had written (including email) contact for the IP Addresses (the "Contacted Prospect List").  If within one hundred eighty (180) days after the

termination of this Letter Agreement, the Company consummates a sale, assignment, license, or other disposition of any or all of the IP Addresses to a prospect set forth on the Contacted Prospect List, Hilco Streambank shall be entitled to a fee in accordance with this Letter Agreement as if the sale, assignment, license, or other disposition had been agreed to or consummated before this Letter Agreement was terminated.

5. <u>Compensation to Hilco Streambank</u>: For its efforts, Hilco Streambank shall be compensated based on the following commission structure:

    a. <u>Commission</u>: Hilco Streambank shall be paid a commission (the "Commission") based on aggregate Gross Proceeds (hereinafter defined) generated from the sale, assignment, license, or other disposition of the IP Addresses as follows:

        i. For a sale or sales of the IP addresses in a lot size of /17 (32,768 addresses) or larger, a Commission equal to 6% of the aggregate Gross Proceeds; or

        ii. for a sale or sales of the IP Addresses in a lot size smaller than a /17 (32,768 addresses), a Commission equal to 10% of the aggregate Gross Proceeds.

    b. "Gross Proceeds" means the aggregate cash or non-cash consideration received by the Company in consideration of the assignment of its interests in the IP Addresses. The value of non-cash consideration paid for the IP Addresses shall be determined by mutual agreement between Hilco Streambank and the Company.

6. <u>Company's Representation RE: Rights to IP Addresses</u>: The Company represents that it is the rightful holder of the IP Addresses, and has the authority to transfer its rights, title, and interests in the IP Addresses to a purchaser. The Company holds its rights to the IP Addresses subject to Regional Internet Registry (RIR) rights and regulations, if any.

7. <u>No Guaranty</u>: Hilco Streambank has not guaranteed, and is not hereby guarantying, any specific result on the sale, assignment, license, or other disposition of the IP Addresses.

8. <u>Nature of Services</u>: The Company recognizes and acknowledges that the services to be provided by Hilco Streambank pursuant to this Letter Agreement are, in general, transactional in nature, and Hilco Streambank will not be billing the Company by the hour or maintaining time records.

9. <u>Entire Agreement/Amendment</u>: This Letter Agreement constitutes the entire agreement between the Company and Hilco Streambank and supersedes all prior discussions, negotiations and agreements, whether oral or written. This Letter Agreement shall not be modified or amended in any respect except by a written instrument executed by or on behalf of the parties to this Letter Agreement.

10. <u>Governing Law</u>: This Letter Agreement shall be governed by and interpreted in accordance with the laws of the State of New York, without reference to any conflict of law's provisions thereof. Each of the parties hereto irrevocably and unconditionally submits, for itself and its properties, to the

Hilco Streambank
IP Addresses Engagement Letter
Page 3

exclusive jurisdiction of the Bankruptcy Court, in any action or proceeding arising out of or relating to this Letter Agreement.

11. <u>WAIVER OF JURY TRIAL</u>: EACH OF HILCO STREAMBANK AND THE COMPANY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS LETTER AGREEMENT AND ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH ANY OF THE FOREGOING, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

12. <u>Limitation of Liability</u>: Hilco Streambank's maximum liability to the Company arising for any reason out of or relating to this Letter Agreement, whether a claim in tort, contract, or otherwise, shall be limited to the amount of fees paid by the Company to Hilco Streambank under this Letter Agreement for these services, except to the extent such liability is finally determined to have been caused by gross negligence or willful misconduct of Hilco Streambank or its personnel.

13. <u>Indemnification</u>:    The Company shall indemnify and hold Hilco Streambank and its affiliates harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the acts or omissions of the Company or its consultants, members, employees, representatives, and principals; (b) the breach of any provision of, or the failure to perform any obligation under this Letter Agreement by the Company; and (c) any liability or other claims asserted by the Company's consultants, shareholders, members, employees, representatives, principals, advisors, or any other person (excluding Hilco Streambank) against Hilco Streambank arising out of or related to the Company's conduct of the sale, assignment, license, or other disposition of the IP Addresses, except claims arising from Hilco Streambank's gross negligence or willful misconduct.  Hilco Streambank shall indemnify and hold the Company harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the acts or omissions of Hilco Streambank or its consultants, members, employees, representatives, and principals; and (b) the breach of any provision of, or the failure to perform any obligation under this Letter Agreement by Hilco Streambank, except claims arising from the Company's gross negligence or willful misconduct.

14. <u>Further Assurances</u>: Hilco Streambank and the Company shall take all such further actions as are necessary or appropriate to carry out the terms and conditions of the Letter Agreement, including (without limitation) with respect to Hilco Streambank's retention and any and all sales, assignments, licenses, or other dispositions of the IP Addresses.

Please confirm your agreement to engage Hilco Streambank to market and sell the IP Addresses on the foregoing terms and conditions by executing this letter on the space provided below.  If you have any questions concerning this letter, or the proposed scope of this project, please give the undersigned a call at (212)610-5663.  Thank you very much.  We look forward to working with you.

Hilco Streambank
IP Addresses Engagement Letter
Page 4

Sincerely,
Hilco IP Services LLC d/b/a Hilco Streambank

By:
Name: Jack Hazan
Title: EVP

ACCEPTED AND AGREED:
Dowling College

By:
Name: Robert S. Rosenfeld
Title: Chief Restructuring Officer

Hilco Streambank
IP Addresses Engagement Letter
Page 5

EXHIBIT A

Schedule of IP Addresses



1.  One (1) /16 block containing 65,536 IP addresses within net range of 149.72.0.0 - 149.72.255.255.