**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| DOWLING COLLEGE, : | |
| f/d/b/a DOWLING INSTITUTE, : | Case No. 16-75545 (REG) |
| f/d/b/a DOWLING COLLEGE ALUMNI : | |
| ASSOCIATION, : | |
| f/d/b/a CECOM, : | |
| a/k/a DOWLING COLLEGE, INC., : | |
| : | |
| Debtor. : | |

-----------------------------------------------------------------x

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER APPROVING**
**A TERMINATION FEE AND EXPENSE REIMBURSEMENT**
**TO VANDERBILT PALACE LLC IN ACCORDANCE**
**WITH THE TERMS OF THE PURCHASE AGREEMENT**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College, (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), submits this application (the "Application") for an order, substantially in the form attached hereto as Exhibit A, approving, and authorizing, the Debtor to pay a termination fee and expense reimbursement to Vanderbilt Palace LLC ("VPLLC") in accordance with the terms of that certain Asset Purchase Agreement dated as of March 22, 2017 (the "Purchase Agreement") for the sale of the Oakdale Campus (as hereinafter

defined), a copy of which is attached hereto as Exhibit B. In further support of this Application, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are Sections 105(a), 363, 503 and 507 of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

3. On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

4. The Debtor continues to manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On December 9, 2016, the United States Trustee appointed Ultimate Power Inc., Linda Ardito and Lori Zaikowski to the Official Committee of Unsecured Creditors (the "Creditors' Committee"). Later that day, the Creditors' Committee selected SilvermanAcampora LLP as its general bankruptcy counsel.

6. Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO"). The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation,

preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

7.  The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration") [DE 23].

8.  The Debtor is seeking to sell certain real property consisting of an estimated 25 acre campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769 (the "Oakdale Campus").  Toward that end, on the Petition Date, the Debtor filed an application requesting the entry of, among other things, bidding procedures and bidder protections for the sale of the Oakdale Campus (the "Bidding Procedures Motion") [DE 13][1].

9.  On December 16, 2016, the Court entered an order approving the Bidding Procedures Motion (the "Bidding Procedures Order") [DE 111], which set forth, among other things, the following schedule in connection with the sale of the Oakdale Campus:

| | |
|---|---|
| Sealed Bid Deadline: | March 27, 2017 (4:00 p.m. EST) |
| Potential Auction: | March 31, 2017 (11:00 a.m. EST) |
| Objection Deadline: | April 6, 2017 (4:00 p.m. EST) |
| Sale Hearing: | April 10, 2017 (10:00 a.m. EST) |

10.  Both the Bidding Procedures Order and the Bidding Procedures attached thereto provide that the foregoing schedule is subject to modification and that the Auction may be adjourned, continued or suspended in consultation with certain creditor groups.  *See* Bidding Procedures Order, ¶ 4; Bidding Procedures, p. 1.  The Debtor presently contemplates extending the Sealed Bid Deadline and the Auction date by one or two business days and will promptly advise all interested parties once that determination is made as to schedule.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Motion.

11.     At the time the Debtor filed the Bidding Procedures Motion no Stalking Horse Bidder had been identified.  However, the Bidding Procedures Order provides that "[i]n the event that the Debtor identifies a Stalking Horse Bidder, the Debtor is authorized to present to this Court on not less than ten (10) days' notice, a proposed form of agreement and related proposed Bidding Procedures that the Debtor believes are necessary to induce the Stalking Horse Bidder to pursue the Sale."  Bidding Procedures Order, p. 5.

12.     Since the Petition Date, the Debtor's real estate brokers, A&G Realty Partners, LLC and Madison Hawk Partners, LLC (collectively, the "Campus Agents") have been marketing the Oakdale Campus and soliciting and managing offers to purchase the Oakdale Campus.  Through its extensive marketing process the Campus Agents have identified VPLLC as a potential Stalking Horse Bidder and entered into negotiations with VPLLC, who is willing to serve as a Stalking Horse Bidder.

13.     The consideration under the Purchase Agreement for the Oakdale Campus is $8,000,000 (the "Purchase Price").  The Debtor has received a $400,000 deposit from VPLLC in accordance with the terms of the Purchase Agreement (equal to five percent).  The Debtor believes that the Purchase Agreement is fair and reasonable and in the best interest of the Debtor's estate, its creditors and all other parties in interest.  Notwithstanding, the proposed sale to VPLLC will be tested by an additional solicitation process and Auction during which higher and/or better offers will be considered.

14.     The Purchase Agreement is limited in scope to the real property, fixtures and improvements which comprise the Oakdale Campus, and certain ancillary rights tied to the real property in the nature of insurance and warranty.  For the avoidance of doubt, the scope of sale to VPLLC specifically excludes the Furniture and Equipment (as defined in the Purchase

Agreement). The Debtor contemplates completing separate sale(s) and/or removal of the Furniture and Equipment from the Oakdale Campus to be completed no later than July 31, 2017 and the Purchase Agreement contemplates the same. Likewise, the Purchase Agreement contemplates the removal of all Restricted Assets and Necessary Records by July 31, 2017. The parties were careful to ensure that closing could take place as soon as possible and notwithstanding that it may take additional time to accomplish the removal of the foregoing property and information.

15. As an inducement to cause VPLLC to serve as "stalking horse" bidder for the upcoming Auction, the Purchase Agreement provides for a termination fee in the amount of one percent (1%) of the Purchase Price, or $80,000 (the "Termination Fee") and an expense reimbursement not to exceed one percent (1%) of the Purchase Price, or $80,000 (the "Expense Reimbursement", and together with the Termination Fee, the "Bidding Protections").

16. If approved, the Bidding Protections would be payable in the event that a higher or better offer (a "Competing Bid") is accepted by the Debtor and the Bankruptcy Court issues an order approving a transaction with such alternative party or otherwise confirming a plan or asset sale within one (1) year of the execution date of the Purchase Agreement which does not involve the sale of the Oakdale Campus to VPLLC (an "Alternate Transaction"). Separately and if approved, the Expense Reimbursement is payable if (i) VPLLC has properly served the Debtor with a Time is of the Essence demand and the Debtor has not properly rejected the same and not performed, (ii) the Purchase Agreement is terminated because of a material breach by the Debtor, (iii) there is a Material Adverse Effect or (iv) a Title Defect exists and is willfully placed of record or consented to be placed of record by the Debtor after the date of the Purchase Agreement.

17. In addition, the Purchase Agreement provides that the Bidding Protections will be granted an administrative expense priority pursuant to Bankruptcy Code sections 503(b) and 507(b) of the Bankruptcy Code.

## RELIEF REQUESTED

18. In order to ensure that the highest and best offer is realized for the Oakdale Campus, the Debtor seeks to proceed with VPLLC as a Stalking Horse Bidder and seeks approval of the Bidding Protections (which together will not exceed 2% of the Purchase Price) to enable the Debtor to continue marketing the Oakdale Campus and conduct an Auction for higher or better offers.

## BASIS FOR RELIEF REQUESTED

19. The Debtor believes that (a) approval of the Termination Fee and Expense Reimbursement is an integral part of the Purchase Agreement, (b) in the absence of the Debtor's obligation to pay the Termination Fee and Expense Reimbursement, VPLLC would not have entered into the Purchase Agreement, (c) entry of the Purchase Agreement is necessary for preservation of the Debtor's estate and is beneficial to the Debtor, and (d) the Termination Fee and Expense Reimbursement are reasonable in relation to VPLLC's efforts and to the magnitude of the transactions and consideration contemplated by the Purchase Agreement. Further, VPLLC's bid establishes an appropriate floor value for the Oakdale Campus after diligent marketing and discussions with numerous potentially interested bidders.

20. In addition, the declaration of Emilio Amendola, Co-President of A&G Realty Partners, LLC, in support of the Application is attached hereto as Exhibit C.

21. Bankruptcy courts have approved bidding incentives similar to the Termination Fee and Expense Reimbursement under the "business judgment rule," and such arrangements are

presumptively valid provided that (i) the trustee's or debtor's decision to agree to the termination fee and expense reimbursement is not tainted by bad faith or self-dealing, (ii) the termination fee and expense reimbursement do not hamper bidding, and (iii) the amount of the termination fee and expense reimbursement is reasonable. See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656-57 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993). A termination fee or break-up fee and expense reimbursement serve as an "incentive payment" offered to an unsuccessful bidder who places the debtor's property in a "sales configuration mode," thereby attracting other bidders to the auction. Specifically, termination fee and expense reimbursements are designed to "(i) attract or retain a potentially successful bid, (ii) to establish a bid standard or minimum for other bidders to follow, and (iii) to attract additional bidders." Id. at 661-62.

22. In the instant case, the Termination Fee and Expense Reimbursement are the product of good faith, arm's-length negotiations between the Debtor and VPLLC, each of whom was represented by counsel. The Termination Fee and Expense Reimbursement provide a material benefit to the estate by enabling the Debtor to obtain a commitment from VPLLC which has and will continue to expend money, time and effort formulating and negotiating an offer for the Oakdale Campus, notwithstanding the Purchase Agreement is subject to higher or better offers. In the Debtor's business judgment, the Termination Fee and Expense Reimbursement are fair and reasonable when considering the potential amount of time, effort, cost, and expense that VPLLC has incurred in negotiating the Purchase Agreement, and necessary to reimburse VPLLC for its costs and expenses in the event an Alternate Transaction is thereafter consummated.

23. Moreover, the Termination Fee and Expense Reimbursement do not hamper any other party's ability to offer a higher or better bid for the Oakdale Campus. Given the size of the

Termination Fee and Expense Reimbursement relative to the total amount of consideration provided for the Oakdale Campus pursuant to the Purchase Agreement with VPLLC, and relative to the "overbid" requirements set forth in the Bidding Procedures, the Debtor submits that the fee is not so large as to have a "chilling effect" on other prospective bidders' interest in the Oakdale Campus. Because the Purchase Agreement has created a floor for any additional bids, VPLLC has provided significant value to the Debtor's estate. The Debtor submits that the Termination Fee and Expense Reimbursement are appropriate under these circumstances.

24. Finally, the amount of the Termination Fee and Expense Reimbursement are reasonable in relation to the size of the proposed sale and under the facts and uncertainties of this transaction. The aggregate of the Termination Fee and Expense Reimbursement will not exceed two percent (2%) of the Purchase Price, which is reasonable under the facts and uncertainties of this transaction. Courts in this District (and surrounding districts) have approved termination or breakup fees in substantially similar amounts as measured in proportion to the proposed purchase price offered for a debtor's assets. See In re Long Beach Medical Center, et al., Case No. 14-70593 (AST) (Bankr. E.D.N.Y. Mar. 13, 2014) (approving termination fee in the amount of $630,000 and expense reimbursement not to exceed $210,000, which together aggregated 4% of the proposed purchase price); In re Personal Communications Devices, LLC, et al., Case No. 13-74303 (AST) (Bankr. E.D.N.Y. Sept. 16, 2013) (approving termination fee in the amount of $3,500,000 million in transaction with a proposed purchase price of $105,250,000); In re Sound Shore Medical Center of Westchester, et al., Case No. 13-22840 (RDD) (Bankr. S.D.N.Y. June 25, 2013) (conditionally approving a break-up fee of 3% on a $58.75 million purchase price); In re New York Westchester Square Medical Center, Case No. 06-13050 (SMB) (Bankr. S.D.N.Y. Feb. 1, 2013); (approving a break-up fee of 3% on a $15.3 million assets sale); In re Saint

Vincent Catholic Medical Center, et al., Case No. 10-11963 (CGM) (Bankr S.D.N.Y, June 30, 2011) (approving a break-up fee of 2% on a $34 million sale of assets); In re Cabrini Med. Ctr., Case No. 09-14398 (AJG) (Bankr. S.D.N.Y. Dec. 30, 2009) (approving a break-up fee of 3.75% for an $80 million sale); In re Bearingpoint, Inc. et al., No. 09-10691 (REG) (Bank. S.D.N.Y. Apr. 7, 2009) (approving a break-up fee of approximately 3% on a $350 million sale).

## NO PRIOR REQUEST

25. No previous request for the relief sought herein has been made to this or any other court.

## NOTICE

26. Notice of this Application will be served by overnight courier service or electronic mail on (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) counsel to the Creditors' Committee; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002; (f) all parties who are known to assert a lien, claim, encumbrance or other interest on any portion of the Debtor's assets; and (g) all parties identified by the Debtor as potentially having an interest in acquiring some or all of the Oakdale Campus.

**WHEREFORE** the Debtor respectfully requests that the Court enter an order substantially similar to the proposed order, attached hereto as Exhibit A, granting the relief requested herein, and granting the Debtor such other and further relief as is just and proper.

Dated: New York, New York
March 24, 2017

            **KLESTADT WINTERS JURELLER**
             **SOUTHARD & STEVENS, LLP**

          By: */s/ Sean C. Southard*
            Sean C. Southard
            Lauren C. Kiss
            200 West 41st Street, 17th Floor
            New York, NY 10036
            Tel: (212) 972-3000
            Fax: (212) 972-2245
            Email: ssouthard@klestadt.com
               lkiss@klestadt.com

            *Counsel to the Debtor and Debtor in*
             *Possession*