# **<u>Exhibit C</u>**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                                          :    Chapter 11
                                                               :
DOWLING COLLEGE,                                               :
f/d/b/a DOWLING INSTITUTE,                                     :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                                 :
ASSOCIATION,                                                   :
f/d/b/a CECOM,                                                 :
a/k/a DOWLING COLLEGE, INC.,                                   :
                                                               :
                                          Debtor.              :
-----------------------------------------------------------------x

**DECLARATION OF EMILIO AMENDOLA IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER APPROVING A TERMINATION FEE AND EXPENSE REIMBURSEMENT TO VANDERBILT PALACE LLC IN ACCORDANCE WITH THE TERMS OF THE PURCHASE AGREEMENT**

I, EMILIO AMENDOLA, declare, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.    I am a Co-President of A&G Realty Partners, LLC ("A&G"). I am authorized to execute this Declaration on behalf of A&G and submit it in support of the application (the "Application")[1] of Dowling College, (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), seeking approval of a termination fee and expense reimbursement to Vanderbilt Palace LLC ("VPLLC").

2.    A&G maintains offices at 445 Broadhollow Road Suite 410, Melville, New York 11747. Unless otherwise stated in this Declaration, I have personal knowledge of the facts hereinafter set forth.[2]

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.
[2] Certain of the disclosures herein may relate to matters within the knowledge of other professionals at A&G and are based on information provided by them and records kept in the ordinary course of A&G's business.

3. A&G was retained by Order of this Court dated December 20, 2016 [ECF No. 114] as real estate advisors to the Debtor (together with Madison Hawk Partners, LLC, the "Campus Agents") to market and sell the certain collateral associated with the Series 2006 bonds, including the Oakdale Campus.

4. In connection with this Chapter 11 Case, the Campus Agents have extensively marketed the Oakdale Campus through a combination of means, including by direct mailing, press releases, color brochure and offering memorandum, both traditional print[3] and web-based advertising, solicitation of outside brokers, and other promotional and marketing activities, including through social media.

5. Since the first marketing efforts began, there have been over 4,900 unique visitors to the property auction webpage maintained by the Campus Agents in relation to this sale effort. The Campus Agents have received 170 direct inquiries. Over 30 groups have entered into non-disclosure agreements in order to gain access to the diligence information maintained by the Campus Agents. Of those groups, 20 have toured and physically inspected the Oakdale Campus.[4]

6. Based upon my interaction with the interested parties to date and my experience in similar sale processes, I believe that establishing a reasonable minimum or baseline bid prior to the deadline for competing bids and related auction is of great benefit to the Debtor and its estate.

7. In an effort to secure such a baseline or minimum bid, the Campus Agents requested that any potential bidder that was interested in serving as a stalking horse make such bid during the week of February 27, 2017. Of the interested parties submitting stalking horse bids, VPLLC was determined to be the highest and best bid to serve as stalking horse.

---

[3] Print advertisements have run in the Wall Street Journal, New York Times, Jewish Week, Newsday, Real Estate Weekly, Long Island Jewish World, and Long Island Business News.

[4] The Campus Agents have reported on a weekly basis to the Debtor and understand that the Debtor has shared these confidential updates with certain creditor constituencies, including the Official Committee of Unsecured Creditors.

8. No financing contingency exists in relation to VPLLC's proposed bid as stalking horse. Further, we have received proof of funds by VPLLC's related company, Empire Equities Capital, which suggest there will be no issue in closing the proposed transaction.

9. The Termination Fee and Expense Reimbursement sought as bid protections by VPLLC are customary requests in my experience. Specifically, I believe that an aggregate of up to 2% of the Purchase Price is a reasonable level of aggregate bid protection as compared to the many stalking horse bids I have previously been involved in.

10. Overall, I have recommended that the Debtor proceed with the VPLLC bid and seek this Court's approval of the bid protections sought by VPLLC.

Dated: Melville, New York
      March 24, 2017                        */s/ Emilio Amendola*
                                               *EMILIO AMENDOLA*