Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 8-16-75545-reg

4    - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    DOWLING COLLEGE

8

9             Debtor.

10

11   - - - - - - - - - - - - - - - - - - - -x

12

13

14                      United States Bankruptcy Court

15                      290 Federal Plaza

16                      Central Islip, New York  11722

17

18                      March 30, 2017

19                      1:08 PM - 1:45 PM

20

21

22

23   B E F O R E:

24   HON. ROBERT E. GROSSMAN

25   U.S. BANKRUPTCY JUDGE

1    HEARING re [248] Order Scheduling a Hearing on Shorten Notice:

2    [246] Motion to Authorize/Direct Debtor's Application for Entry

3    of an Order Approving a Termination Fee and Expense

4    Reimbursement to Vanderbilt Palace LLC in Accordance with the

5    Terms of the Purchase Agreement by Lauren Catherine Kiss on

6    behalf of Dowling College. [247] Motion to Authorize/Direct Ex

7    Parte Motion of the Debtor to Shorten Time with Respect to the

8    Hearing.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO PC

4          Attorney representing UMB Bank National Association -

5          One Financial Center

6          Boston MA 02111

7

8    BY:  IAN HAMMEL

9

10   CERTILMAN BALIN ADLER & HYMAN

11          Attorney representing ACA Financial Guaranty Corp.,

12          Creditor

13          90 Merrick Avenue

14          East Meadow NY 11554

15

16   BY:  RICHARD J MCCORD

17

18   KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

19          Attorney representing Dowling College, Debtor

20          200 West 41st Street 17th Floor

21          New York NY 10036-7203

22

23   BY:  SEAN C SOUTHARD

24

25

Page 4

1   MEYER SUOZZI ENGLISH & KLEIN P.C.

2        Attorney representing Certain Members Of The Dowling

3        College Board of Trustees, Interested Party

4        990 Stewart Avenue

5        Suite 300 PO Box 9194

6        Garden City NY 11530-9194

7

8   BY:  HOWARD B KLEINBERG

9

10  OFFICE OF THE UNITED STATES TRUSTEE

11       U.S. Trustee

12       Central Islip Office, Alfonse M D'Amato US Courthouse

13       560 Federal Plaza

14       Central Islip NY 11722

15

16  BY:  STAN YANG

17

18  BACKENROTH FRANKEL & KRINSKY

19       Attorney representing Vanderbilt

20       800 3rd Ave

21       New York NY 10022

22

23  BY:  MARK FRANKEL

24

25

1    SILVERMANACAMPORA LLP

2         Attorney representing Official Committee Of Unsecured

3         Creditors, Creditor Committee

4         100 Jericho Quadrangle

5         Suite 300

6         Jericho NY 11753

7

8    BY:   RONALD J FRIEDMAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   P R O C E E D I N G S

 2              MR. SOUTHARD:  Good afternoon, Your Honor.

 3              CLERK:  Dowling College.

 4              MR. SOUTHARD:  Good afternoon, Your Honor.  Sean

 5    Southard of Klestadt Winters Jureller Southard & Stevens, on

 6    behalf of Dowling College, the Debtor in Possession.

 7              MR. MCCORD:  Good afternoon, Your Honor.  I'm

 8    Richard McCord for ACA Financial Guaranty Corp.

 9              MR. FRIEDMAN:  Good afternoon, Your Honor.  Ronald

10    Friedman from Silverman Acampora, counsel for the Creditors

11    Committee.

12              MR. FRANKEL:  Mark Frankel, Backenroth Frankel &

13    Krinsy, attorneys for Vanderbilt Palace LLC, potential

14    purchaser.

15              MR. YANG:  Good afternoon, Your Honor, Stan Yang,

16    I'm the Trustee.

17              MR. KLEINBERG:  Howard Kleinberg, Meyer Suozzi,

18    for the Dowling College Board of Trustees.

19              CLERK:  Please state your phone appearance.

20              MR. HAMMEL:  Yes, good afternoon.  Ian Hammel on

21    behalf of UMB Bank as indenture Trustee.

22              THE COURT:  Okay.

23              MR. SOUTHARD:  Thank you, Your Honor.  Once again

24    for the record, Sean Southard on behalf of the Debtor,

25    Dowling College.  Your Honor, we're here this afternoon
```

1    before you on the Debtor's application for entry of an order

2    approving a termination fee and expense reimbursement in

3    relation to a proposed stalking horse agreement that the

4    Debtor entered into with Vanderbilt Palace, LLC, subject to

5    Your Honor's consideration today.  That motion was docketed

6    at Number 246 and filed on March 24th of this year.

7              As Your Honor is aware, the stalking horse

8    application relates to the Debtor's sale of its Oakdale

9    campus, which is, approximately, 25 acres located at 150

10   Idle Hour Boulevard, a short distance from the courthouse.

11   Your Honor will recall that as of the petition date, the

12   Debtor had filed a motion seeking to put in place procedures

13   related to the proposed sale of the Oakdale campus.

14             Your Honor then later entered a form of bidding

15   procedures order which has guided the Debtors in their

16   marketing and sale efforts associated with the Oakdale

17   campus.  And per the authority that was granted under the

18   bidding procedures order, the schedule of that proposed

19   process was modified slightly recently whereby the bid

20   deadline was extended by two business days, and the auction

21   was likewise adjourned for two businesses days -- such that

22   yesterday was the bid deadline for competing bids and

23   Tuesday of next week will be the auction for this property.

24             Your Honor, that schedule is modified at least in

25   part to address what was a fairly late entry into a stalking

1    horse agreement with the proposed stalking horse, Vanderbilt

2    Palace.  That motion, as we mentioned, was filed on Friday

3    of last week and Your Honor was good enough to hear us on

4    short notice today for the purposes of considering

5    essentially the bid protections associated with that

6    proposed stalking horse.

7           Your Honor, the bid procedures order that you

8    previously entered did contemplate the possibility of a

9    stalking horse bid, although it did not require one, and the

10   Debtor's real estate brokers involved in the marketing of

11   the Oakdale campus, A&G Realty Partners and Madison Hart

12   Partners have been actively marketing the Oakdale campus

13   since the early stages of this case and also managing the

14   interest by different parties, and reacting to those

15   interests.  And, ultimately, one of the things that they did

16   was attempt to find a stalking horse bidder.

17          And through those efforts, Vanderbilt Palace was

18   identified as a potential stalking horse bidder, and indeed

19   was willing to serve as stalking horse.  And the terms of

20   that proposed stalking horse deal are set forth in the

21   Debtor's application, and the proposed form of contract is

22   actually attached.

23          The purchase price for the proposed stalking horse

24   is $8 million.  We have received a deposit equal to 5

25   percent, which is consistent with the bid procedure, so

1    $400,000.  And from the Debtor's perspective, the Debtor

2    feels that the stalking horse deal at the time was fair and

3    reasonable to set a floor and encourage competitive bidding

4    and supports the approval of the proposed bid protections in

5    favor of that stalking horse.

6         To complete the record this morning -- or this

7    afternoon, rather, and in part to acknowledge the one

8    objection that was received in relation to this application

9    by the Committee, the Debtor was indeed fortunate to receive

10   four competing bids yesterday, all of which are above the

11   stalking horse number, two significantly above the stalking

12   horse number.  I think it's also important to note that the

13   bid forms for at least two of those contracts are more ideal

14   in an estate-friendly way in the view of the Debtor and some

15   of the other estate constituents than the terms set forth in

16   the stalking horse agreement presently.

17        So, with all of that said, Your Honor, and to

18   complete that record, I think the Debtor's view is

19   nonetheless that Vanderbilt was willing to step up at the

20   time when others were not and set a floor and, therefore,

21   the Debtor believes that the stalking horse did, in fact,

22   serve its purpose and that Your Honor should approve the bid

23   protections as reasonable and, in essence, beneficial to the

24   estate for having done their job.  Your Honor, we have other

25   --

1          THE COURT:  Well, anybody else want to be heard on

2     that?  On the stalking horse?  If the property doesn't sell

3     for greater than the secured debt, has the secured creditor

4     agreed to a carve out for the stalking horse bid?

5          MR. SOUTHARD:  Your Honor, the secured creditor

6     has not opposed the application.  In essence, my

7     understanding is they do consent to this payment being made

8     from the proceeds.  There hasn't been a specific formal

9     agreement on a carve out but there is consent to this

10    payment, is my understanding.

11         THE COURT:  Okay.

12         MR. FRIEDMAN:  For the record, Ronald Friedman

13    from Silverman Acampora for the Committee, Your Honor.  Just

14    briefly in opposition.  As Mr. Southard said, it was five

15    days before the bids were due.  We received bids.  We knew

16    from communications and correspondence that there would be a

17    high likelihood that we'd receive bids in excess of this

18    that would not have that breakup fee or bid protection.  It

19    ends up being a $160,000 expense, which Your Honor correctly

20    noted is coming from the secure creditors one way or

21    another.  To the extent the estate doesn't have to bear that

22    burden, there would be additional dollars that should be

23    available for the rest of the estate and the creditor body.

24         With respect to did the stalking horse actually

25    provide a benefit to the estate, I think that would be hard

1    to prove from the stalking horse perspective at this point

2    in time given that the forms of the APAs that we received

3    from the other bidders are markedly better in terms of the

4    requirements of the estate.  It actually incorporated many

5    of the revisions that had been requested by the Committee

6    and other parties in interest that had been bandied about

7    with some of the parties for weeks prior to the time of the

8    stalking horse.  It's certainly a late filed stalking horse

9    -- a mere four or five days before the bids were due.  And

10   with respect to the benefit of the estate, I think it

11   remains to be seen.

12           With respect to an opportunity to try to resolve

13   the matter with Mr. Frankel, we had a brief conversation

14   beforehand.  I don't know that it's achievable at this point

15   in time, but certainly -- we would certainly give them the

16   right to file a claim to the extent that they can establish

17   that they provided a benefit to the estate for reimbursement

18   of some limited expenses.  That may be something that would

19   be worthwhile and clearly provided under 503.

20           But with respect to the application, Your Honor,

21   we would ask that the objection be sustained, especially

22   given the fact that there are four competing bids that are

23   well in excess of this on markedly better APA terms.

24           THE COURT:  UST have any position?

25           MR. YANG:  Good afternoon, Your Honor.  Based on

1    the additional bid that we also have seen, it appears that

2    in terms of the APA, as Mr. Friedman mentioned to Your

3    Honor, those terms are much more, I guess, acceptable to the

4    Debtors or more beneficial to the estate.  So, at best, Your

5    Honor, my position is -- our position at this point is that

6    if Your Honor is inclined to even decide this issue, we'd

7    suggest that perhaps we would put it over -- adjourn it

8    after the auction and determine whether -- how benefit --

9    how much benefit the stalking horse actually was able to

10   render for this estate.

11            At this point it's very difficult to tell.  Maybe

12   the stalking horse becomes the successful bidder.  We don't

13   know.  Maybe they decide to change their mind and change the

14   term sheets and, again, become the successful bidder.  So

15   that's really our position at this point.

16            MR. FRANKEL:  Your Honor, my client spent a lot of

17   time working with the Debtor to come to an agreeable

18   contract at an agreeable price.  The expense reimbursement

19   and termination fees we accepted as proposed.  The Debtor

20   had the choice of going forward without a stalking horse or

21   determining with the consent of its broker, advise of its

22   broker that it needed a stalking horse.  On Friday of last

23   week, it decided that it needed a stalking horse.  The

24   bidding deadline was Monday.  They sent out a notice and all

25   of a sudden they got bids.

1          The Debtor in consultation with the broker

2     believes that -- although it's impossible to prove why

3     people bid, how much they bid, when they bid, I don't think

4     it's the Court's job or the Committee's or the U.S.

5     Trustee's to play Monday morning quarterback.  The Debtor

6     had the choice to go with the stalking horse or not.  They

7     decided to do it.  They got the benefit of their bargain.

8     As stalking horse bidder, we should get the benefit of our

9     bargain, and we would ask that the Court grant the Debtor's

10    motion.

11          THE COURT:  There are currently apparently higher

12    bids.  Are you going to go above those bids?

13          MR. FRANKEL:  The higher bids we were informed

14    late last night -- we got a copy a couple of hours ago of

15    the form of contract.  I have to go over it with the client.

16    I don't know.

17          THE COURT:  Well, if you do, then you wouldn't get

18    the stalking horse -- you wouldn't get anything anyway.

19          MR. FRANKEL:  Correct but...

20          THE COURT:  If you don't and they already have

21    them, you don't play any role.

22          MR. FRANKEL:  We played our role.  Our role is

23    finished.

24          THE COURT:  No, that's a role that you decided to

25    take on as a business opportunity.  I'm the only one who can

1    make it into a stalking horse.  That's why you're here.  And

2    you know that.  So your client wanted the opportunity to be

3    a stalking horse bidder, did whatever work he had to get to

4    that spot, and it's up to me to determine whether or not

5    that provides any benefit to the estate.  I'm not sure it

6    does.  But if the secured -- there's not going to be any

7    credit bidding in this case.  I would doubt.  And if the

8    secured creditor is the only one that gets paid and there's

9    no money going to anybody else -- if he wants to pay you, he

10   can pay you, I guess.

11          But the estate's not going to pay you out of any

12   assets that would otherwise be available for any other

13   creditor.  You can claim it, but I'm not going to approve a

14   stalking horse contract after bids are already in, which are

15   higher than the current...  They might as well just write

16   you a check.  Go call the secured creditor and have him

17   right you a check.

18          MR. FRANKEL:  Your Honor, the point is that the

19   Debtor sent out the amended notice extending the bid

20   deadline with our bid as the floor.  They got the benefit

21   and they should be -- the Debtor got the benefit of using us

22   as a stalking horse and they should get --

23          THE COURT:  Well, you can argue subsequently down

24   the road that you have a claim, but I'm not approving a

25   stalking horse bidder and a reimbursement of expenses in a

1    case where that bidder is already lower than the other bids

2    which are already in before I ever approved it.  It's

3    bizarre.  I mean, you were free to do this three weeks ago,

4    four weeks ago.

5            MR. FRANKEL:  The contract was signed last week.

6    The Debtor immediately put in the --

7            THE COURT:  I just got -- Mark, I just got it.

8            MR. FRANKEL:  Okay.

9            THE COURT:  So, look, I don't see any basis in law

10   or any other cases we've done.  People have enough trouble

11   with stalking horse.  Again, if the secured creditor -- if

12   these creditors want to write your client a check for great

13   services rendered, I won't prevent them from doing that.

14   They're free to do it.

15           MR. FRANKEL:  Well, then could you approve the

16   stalking horse fee provided that it does not affect payment

17   to creditors junior to the secured creditor?

18           THE COURT:  I don't...

19           MR. SOUTHARD:  I object.  I object to that, Your

20   Honor.  I'm not quite sure what he's saying but I still

21   object to it.

22           THE COURT:  What he's saying is he's going to

23   write a check today.

24           MR. SOUTHARD:  Yeah, right.  I object.  Nice try.

25           THE COURT:  Yeah.  I mean, I give you credit.  We

1    have other issues on this, but I give you credit on that

2    one.  But, again, if Mr. McCord, or the guy on the phone, or

3    anybody else wants to give you a check, I fully endorse Mr.

4    Frankel and his work.  That's all I've got on that one,

5    though.  I'm not going to go ahead in a traditional sense.

6    It would just -- it doesn't meet the standards that any of

7    us have ever used for approving stalking horse bidders.

8          Now, I don't know what else we have on today -- I

9    don't think we have much else on today.

10          MR. SOUTHARD:  That's the only motion, Your Honor.

11          THE COURT:  But I have my own issues in this case.

12    And there's not a broad enough audience but I'm sure you can

13    get it out.

14          MR. SOUTHARD:  Sure.

15          THE COURT:  The purchase agreement as well as the

16    contract that I saw between you and Vanderbilt Place (Sic)

17    have references to New York State -- New York State Court.

18          MR. SOUTHARD:  Yes, Your Honor.

19          THE COURT:  As a blanket statement, this Court

20    will not sign any order that in any way divests its

21    authority to another court or State Court.  So, if the

22    Attorney General of the State of New York wishes to raise

23    that issue, feel free to do it.  But if you're drafting

24    contracts that provide for any way, shape, or form that

25    another court can enter a decision or ruling other than the

1   appellate process within the federal system, can comment or

2   alter my order in this court, I will never sign that order.

3          MR. SOUTHARD:  I appreciate that, Your Honor.  I

4   think it probably makes sense for a brief discussion on this

5   subject...

6          THE COURT:  Sure.

7          MR. SOUTHARD:  ...if you would indulge me.

8          THE COURT:  Judge Wallace issued a decision in a

9   matter similar to this...

10         MR. SOUTHARD:  Yes.

11         THE COURT:  ...6-7 months ago.  A case called HHH

12  something.  Now, his facts are different but within this

13  circuit, there is relatively little law on it -- it does

14  require, I believe, me as a federal judge to satisfy the

15  standards that appear in the state court -- state law

16  relative to the sale or transition of a not-for-profit

17  entity, loosely put.  And without having studied it --

18  though I did some reading on it last night, I think that's

19  probably correct.

20         So I will apply in all likelihood those standards

21  but that decision is mine.  And it will not be subject to

22  any review by a state court.

23         MR. SOUTHARD:  I am familiar with the case, Your

24  Honor, and indeed we on behalf of the Debtor considered Your

25  Honor's position now stated and viewpoint now stated.  We

1    also considered what had been an historical practice in

2    relation to not-for-profit bankruptcy debtors in this state

3    whereby often times the Bankruptcy Court would approve a

4    disposition of property in relation to the bankruptcy estate

5    and then a secondary, albeit often times considered to be

6    somewhat of a rubber stamp would occur in relation to the

7    New York not-for-profit law approvals that the Attorney

8    General's Office through its Charities Bureau would

9    generally insist upon.

10           And, indeed, we had some discussions with the

11   Charities Bureau prior to the case and prior to the filing

12   of our motion, and our motion, I would submit to Your Honor,

13   is not entirely clear as to the direction the Debtor

14   intended to take on that issue.  And we have since that time

15   had further discussions with the Attorney General's Office

16   and their office is of the view that, notwithstanding the

17   case law that we've just referenced, that Judge Wiles ruled

18   on, that they would insist on the Debtor seeking that State

19   Court approval.

20           THE COURT:  How are they going to do that?

21           MR. SOUTHARD:  It's not entirely clear to me, Your

22   Honor, but --

23           THE COURT:  I welcome them to file papers.

24           MR. SOUTHARD:  We, on behalf of the Debtor, were

25   of...  Let me also say that the Attorney General's Office

1   did convey to us a willingness to work closely with us to

2   shepherd through that process in an efficient way that would

3   not disrupt our timeline that we assured them was important

4   to us to close a deal.  And --

5           THE COURT:  My issue is not time; my issue is

6   legal principle.

7           MR. SOUTHARD:  I understand, I understand.

8           THE COURT:  I have a very strong sense of what the

9   Federal Courts do and what the State Courts do.  I don't

10  care whether that -- how people massage around it; there's

11  nothing going to be in an order that I sign that can be

12  interpreted in any way as that order not being final.  Not

13  appealable -- I mean, they can appeal in the federal system.

14  And if you want to take it over and have a State Court judge

15  read it to see if he likes it, that's okay with me.  But I

16  don't care what his answer is.  I don't know how to say it

17  more plainly.  And if there's anything in the orders that

18  implies that, it's coming out.

19           And if the Attorney General of the State of New

20  York, or the State of New York has a problem with that,

21  they're free to come in.  Put papers in like everybody else.

22           MR. SOUTHARD:  I appreciate Your Honor's position

23  and I understand --

24           THE COURT:  I've made -- look, I've made this

25  position clear.  I have a very large charity in front of you

1    -- the next case.  This is an issue that's rampant in that

2    case.  Most of the time it comes out correct.  But it is an

3    issue that I at least am very passionate about in ensuring

4    that we maintain the integrity of our court system.  And the

5    fact that for one reason or another they may prefer

6    something, it's okay -- I'm just not doing it.

7                MR. SOUTHARD:  I understand.

8                THE COURT:  So, I don't want anybody to waste

9    time.  And if they intend to come in and object, they should

10   do it sooner.  If the sale takes place and I sign an order

11   and their goal is to just interfere with the process, we're

12   going to have other problems.

13               So, they're on notice.  There's nothing in front

14   of me today on this issue.  There's no...  But we did notice

15   that on at least four separate occasions there's a reference

16   to the New York State Supreme Court.  It doesn't say you

17   have to but it's vague, which I guess was done

18   intentionally.  And I'm just suggesting that you pass on

19   that vagueness is irrelevant to me.  It's not happening.

20               MR. SOUTHARD:  I do appreciate Your Honor's

21   comments and we most definitely will pass them on.  I will

22   make sure the transcript is provided to them.

23               THE COURT:  Yeah, they have whatever rights and

24   they have -- I'm sure they believe their position, but

25   that's why we settle these things in courts.  And this is

1    the only place they can go right now.

2          MR. SOUTHARD:  I understand.  I will just say that

3    I desire to find a path of least resistance that will permit

4    us to close timely a sale, and I'm hopeful that the Attorney

5    General's Office will also see the wisdom --

6          THE COURT:  Well, unless they can figure out how

7    to interfere with my order, then it's simple.

8          MR. SOUTHARD:  I don't want them to encourage them

9    to do that.

10         THE COURT:  No, no, no, no.  But they have the

11   same rights of appeal, if they have the standing, and the

12   same rights of appeal as anybody else.  So -- and they have

13   -- I would urge them to make that issue and let us deal with

14   the issue if it's going to -- if the way to make an issue,

15   as quickly as possible.  It is not, in my mind, useful for

16   anyone to think you can do this by ambush.  We've identified

17   the question.  I'm putting it right on the record.  Show

18   them the transcript.  Have the issue, I'm welcome to hear

19   it.

20         I think my understanding is what I've just said.

21   If they can convince me otherwise, that would be fine too.

22   And they also have the complete appellate process.  But I

23   think in the interest of the project, the Debtor, and the

24   numerous people involved in this case, don't -- they should

25   not do this in any way other than straight up and do it.

1   File your papers if you want.  Otherwise I'm not going to

2   have any objections.

3           MR. SOUTHARD:  Thank you, Your Honor, that's a

4   helpful record to share.

5           THE COURT:  Yeah, and I want -- and I thought...

6   Anyway, that's all I've got on that.

7           MR. SOUTHARD:  No, I think that's most helpful and

8   I will undoubtedly share that promptly.  Your Honor, a

9   couple of other items of a similar nature that I wanted to

10  mention today.  New York State Department of Education also

11  reached out to us after viewing the stalking horse form of

12  proposed agreement and wanted to be clear, and I would like

13  to just state this on the record today so that it is clear,

14  that the Debtor is not attempting to assign any charter or

15  right to accreditation to operate an educational --

16          THE COURT:  I think that was a comment that I saw

17  in the redline version that the Committee signed.

18          MR. SOUTHARD:  It is, Your Honor.

19          THE COURT:  They made that an item that would be

20  excluded from the transfer.

21          MR. SOUTHARD:  They did, and that was based on

22  this request of the state.  So I just wanted that to be

23  clear that that will be in the form of agreement that we

24  will use to bid at the auction.

25          Your Honor, in addition, I wanted to mention that

1    we have moved the auction to an alternative location on Long

2    Island.  It will be actually held at Mr. McCord's offices in

3    East Meadow, which is considered to be a more appropriate

4    venue in light of the parties that will be participating --

5    which we expect to be, at this point, just the approved and

6    qualified bidders and the estate parties that have a role in

7    assessing those bids.  It is not our intention to make it an

8    open forum for any and all parties --

9            THE COURT:  In terms of the bid, you've got to be

10   a qualified bidder, so...

11           MR. SOUTHARD:  That's correct, Your Honor.  So,

12   those are the sort of ancillary items that I wanted to

13   mention.  We are encouraged obviously by the bids that we

14   have received.  It would appear that we should be headed for

15   a spirited auction and we appreciate Your Honor's

16   flexibility in hearing us today on short notice.

17           THE COURT:  Yeah, I think this is an important --

18   not the dollar value, but it's important.  I think there are

19   an awful lot of folks in that community and on Long Island

20   who have interests in, if not financial, they have interests

21   in the future of this property, the future of that building

22   out there.  A lot of people have different views of what it

23   should be but -- so I think it should be done as open as

24   possible.  And I think we should accommodate as well as we

25   can so that the analysis of what is the highest and best,

1   which normally is simple but in these kind of deals may not

2   be, and be done openly and transparently.

3            And I think you guys have done a good job of that.

4   Plenty of people know about this.  It's a different kind of

5   property, obviously.  So, see where we go.  But, again, I

6   don't want...  I would prefer not to have surprise

7   interference.  They know -- if the agent knows what he

8   wants, just do it.  If you can accommodate him by saying,

9   "We'll show you this before the judge signs it," you can do

10  that, too.  As long as it's --

11           MR. SOUTHARD:  We most certainly would not have a

12  problem with that approach.

13           THE COURT:  But it's just -- my position is one of

14  principle.  I'm not going to have the process of this Court

15  altered for what I believe goes back 200 and some odd years.

16  I'm just not going to do it.

17           MR. SOUTHARD:  Thank you, Your Honor.

18           MR. MCCORD:  Your Honor, I understand what the

19  bidding procedure order says and I'm just concerned that

20  there are going to be laypeople with all sorts of

21  backgrounds...

22           THE COURT:  There will.

23           MR. MCCORD:  ...that may possibly want to attend

24  this auction.  And if they're prohibited from doing so, I'm

25  afraid they'll come before this Court and say that something

1    embarrassing is going on because we weren't allowed to even

2    observe.

3            So, we discussed this before today and we're

4    respectfully seeking input from you because this is your

5    court and this is your case.  And that's a concern we all

6    have, is that it's only qualified bidders -- it's going to

7    be obviously a very limited number of people, plus all the

8    estate representatives.  But we anticipate there will be

9    people, parties, professionals that may want to come and

10   observe and possibly (indiscernible) the outcome of the

11   auction.

12           THE COURT:  Yeah.  I would...  We've all done

13   these.  And there are cases where you make it as difficult

14   as possible for people to get in there.  We know that most

15   of the folks you're talking about have no -- they're not

16   going to bid.  And, in fact, they will want to speak, and

17   you'll have to explain why they can't.

18           I think it may end up to be relatively

19   inconvenient to do it at a law firm.  I think you're going

20   to have people coming up into the waiting room, and then

21   you're going to either ask them to leave and it can become a

22   mess.  We -- if you wanted to do it out here, we can give

23   you a courtroom to do it in.  I don't do auctions, but we

24   could make a courtroom in this building where we have, you

25   know, ways of maintaining order and yet it would also give

1   people a sense that they can watch the process.

2         MR. SOUTHARD:  Your Honor, from the Debtor's

3   perspective, we have less of a concern with watching the

4   process and more of a concern with the potential for

5   disruption.

6         THE COURT:  There isn't.  And I think in a

7   building like this where we can control that better than you

8   can in a private setting and people are much less likely in

9   a federal building to go beyond certain decorum -- well, we

10   may be fooled.  Nobody shows up.  But my sense is there have

11   literally been several thousand people signing petitions.

12   I'm aware -- and they don't even know what's happening with

13   the property.

14         But a lot of these folks have an enormous amount

15   of their life tied up in this area.  These houses, as you

16   know, they're relatively small -- they're nice houses.

17   They're around there, interspersed with property.  They've

18   lived there for as long as this school has been there, and

19   they've heard things: It can become a mall, become a

20   homeless shelter.  And, yeah, you may have people -- and

21   you're going to have to explain that's not the right setting

22   for it.  And, if necessary, then you'll have to leave.

23         I would rather not have that at Mr. McCord's

24   office and have them come over here and say I was thrown out

25   of that office in...  But it's up to you.

1          MR. MCCORD:  Your Honor, what we envision doing at

2     that location is we have a lower level where we have a

3     conference room that can hold at least 100 people, probably

4     more.  It's as big as the cafeteria downstairs.  We were

5     also planning on making available the professional breakout

6     rooms in the two floors that the firm's in --

7          THE COURT:  That's fine.

8          MR. MCCORD:  And then also have potential security

9     but escorts.  And it would be in an area that's away from

10    the general operations of the firm --

11         THE COURT:  I'm just making this available.  That

12    sounds fine, too.

13         MR. MCCORD:  My concern is not security, my

14    concern is not the type of disruption that you were just

15    referring to; my concern is -- and it's not even the

16    students and professors or whatever, it's other

17    professionals that are going to come.  The media, for

18    example.  How are you going to stop Richard McCord from

19    coming in and letting the reporter from Newsday in, or not

20    letting the report from Newsday in?  That's what I'm worried

21    about is that they're going to come hit you and say, "What's

22    going on?  Why can't I even sit in and observe?" They don't

23    know what the law is.  They would probably -- half of them

24    haven't dealt with a federal --

25         THE COURT:  You can only do two things:  You can

1   do it there...  I'm making this available.  After that I'm

2   out of options.  I'm not going to do it.  I don't do

3   auctions.

4           MR. SOUTHARD:  I appreciate that, Your Honor.  And

5   I appreciate the offer, and we will discuss and consider

6   that as an alternative under the circumstances.  And your

7   comments are helpful.

8           THE COURT:  Yeah, I mean, we're here.  You can do

9   it here.  Then if somebody has a question, I'm here.  You

10  can do it there and you can get me on the phone.  You can do

11  any number of things.  I know we used to do auctions many --

12  some of you guys know -- many, many years ago when I was a

13  lawyer and then later on...  I don't think many judges

14  conduct their own auctions in the circuit anymore since

15  Judge Blackshear sold the Baltimore Orioles.  And I'm not

16  going to start again.

17          So, any way we can help you with it.  I do agree

18  that I would like it to be as transparent as possible.

19  There are people who will listen and there are people who

20  won't listen, no matter what you tell them.  They're just

21  not going to listen.  But, you know, we'll get through it.

22  We get through a lot of things.

23          So the sale is taking place Wednesday?  Tuesday?

24  Wednesday?

25          MR. SOUTHARD:  Tuesday at 11 o'clock is the

1    auction.

2            THE COURT:  And then you're due in here on April

3    10th?

4            MR. SOUTHARD:  Correct, Your Honor.  With

5    objections currently due on the 6th.

6            THE COURT:  And is there a form of contract that

7    each bidder has given you that you work with?

8            MR. SOUTHARD:  Your Honor, we received -- we put

9    out an ideal form and, by in large, that form has been

10   adopted.  Each bidder has entered into slightly

11   modifications that we're discussing with them, trying as

12   best we can to bring all bids on an apples to apples kind of

13   basis.

14           THE COURT:  And no sale order requires me to enter

15   any order that affects usage?  Easement, zoning, anything

16   like that?

17           MR. SOUTHARD:  No, Your Honor.

18           THE COURT:  Okay.  Okay.

19           MR. SOUTHARD:  Well, thank you very much for your

20   time today, Your Honor.

21           THE COURT:  Thank you.

22           MR. MCCORD:  Thank you, Your Honor.

23           THE COURT:  Okay.  Let us know -- just

24   logistically, because we've got to let the marshals know if

25   we're going to have people coming in.

1           MR. SOUTHARD:  We will discuss it promptly.

2           THE COURT:  So, that can be Monday.  It doesn't

3    have to be...  We don't need much warning on it.  All right?

4    Thank you.

5           MR. SOUTHARD:  Thank you very much.

6           THE COURT:  Court's adjourned.  Sorry.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   C E R T I F I C A T I O N

2

3     I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6     Sonya
      Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde,
o=Veritext, ou,
email=digital@veritext.com, c=US
Date: 2017.03.31 16:09:38 -04'00'

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  March 31, 2017

| & | 5 | adopted 29:10 | appealable 19:13 |
|---|---|---|---|

**&**

& 3:3,10,18 4:1
4:18 6:5,12

**0**

02111 3:6

**1**

100 5:4 27:3
10022 4:21
10036-7203 3:21
10th 29:3
11 28:25
11501 31:23
11530-9194 4:6
11554 3:14
11722 1:16 4:14
11753 5:6
150 7:9
160,000 10:19
17th 3:20
1:08 1:19
1:45 1:19

**2**

200 3:20 24:15
2017 1:18 31:25
246 2:2 7:6
247 2:6
248 2:1
24th 7:6
25 7:9
290 1:15

**3**

30 1:18
300 4:5 5:5 31:22
31 31:25
330 31:21
3rd 4:20

**4**

400,000 9:1
41st 3:20

**5**

5 8:24
503 11:19
560 4:13

**6**

6-7 17:11
6th 29:5

**8**

8 8:24
8-16-75545 1:3
800 4:20

**9**

90 3:13
9194 4:5
990 4:4

**a**

a&g 8:11
able 12:9
aca 3:11 6:8
acampora 6:10
10:13
acceptable 12:3
accepted 12:19
accommodate
23:24 24:8
accreditation
22:15
accurate 31:4
achievable 11:14
acknowledge 9:7
acres 7:9
actively 8:12
addition 22:25
additional 10:22
12:1
address 7:25
adjourn 12:7
adjourned 7:21
30:6
adler 3:10

adopted 29:10
advise 12:21
affect 15:16
afraid 24:25
afternoon 6:2,4,7
6:9,15,20,25 9:7
11:25
agent 24:7
ago 13:14 15:3,4
17:11 28:12
agree 28:17
agreeable 12:17
12:18
agreed 10:4
agreement 2:5 7:3
8:1 9:16 10:9
16:15 22:12,23
ahead 16:5
albeit 18:5
alfonse 4:12
allowed 25:1
alter 17:2
altered 24:15
alternative 23:1
28:6
ambush 21:16
amended 14:19
amount 26:14
analysis 23:25
ancillary 23:12
answer 19:16
anticipate 25:8
anybody 10:1
14:9 16:3 20:8
21:12
anymore 28:14
anyway 13:18
22:6
apa 11:23 12:2
apas 11:2
apparently 13:11
appeal 19:13
21:11,12

appealable 19:13
appear 17:15
23:14
appearance 6:19
appears 12:1
appellate 17:1
21:22
apples 29:12,12
application 2:2
7:1,8 8:21 9:8
10:6 11:20
apply 17:20
appreciate 17:3
19:22 20:20 23:15
28:4,5
approach 24:12
appropriate 23:3
approval 9:4
18:19
approvals 18:7
approve 9:22
14:13 15:15 18:3
approved 15:2
23:5
approving 2:3 7:2
14:24 16:7
approximately
7:9
april 29:2
area 26:15 27:9
argue 14:23
assessing 23:7
assets 14:12
assign 22:14
associated 7:16
8:5
association 3:4
assured 19:3
attached 8:22
attempt 8:16
attempting 22:14
attend 24:23

**attorney** 3:4,11
3:19 4:2,19 5:2
16:22 18:7,15,25
19:19 21:4
**attorneys** 6:13
**auction** 7:20,23
12:8 22:24 23:1
23:15 24:24 25:11
29:1
**auctions** 25:23
28:3,11,14
**audience** 16:12
**authority** 7:17
16:21
**authorize** 2:2,6
**available** 10:23
14:12 27:5,11
28:1
**ave** 4:20
**avenue** 3:13 4:4
**aware** 7:7 26:12
**awful** 23:19

**b**

**b** 1:23 4:8
**back** 24:15
**backenroth** 4:18
6:12
**backgrounds**
24:21
**balin** 3:10
**baltimore** 28:15
**bandied** 11:6
**bank** 3:4 6:21
**bankruptcy** 1:1
1:14,25 18:2,3,4
**bargain** 13:7,9
**based** 11:25 22:21
**basis** 15:9 29:13
**bear** 10:21
**behalf** 2:6 6:6,21
6:24 17:24 18:24
**believe** 17:14
20:24 24:15

**believes** 9:21 13:2
**beneficial** 9:23
12:4
**benefit** 10:25
11:10,17 12:8,9
13:7,8 14:5,20,21
**best** 12:4 23:25
29:12
**better** 11:3,23
26:7
**beyond** 26:9
**bid** 7:19,22 8:5,7
8:9,25 9:4,13,22
10:4,18 12:1 13:3
13:3,3 14:19,20
22:24 23:9 25:16
**bidder** 8:16,18
12:12,14 13:8
14:3,25 15:1
23:10 29:7,10
**bidders** 11:3 16:7
23:6 25:6
**bidding** 7:14,18
9:3 12:24 14:7
24:19
**bids** 7:22 9:10
10:15,15,17 11:9
11:22 12:25 13:12
13:12,13 14:14
15:1 23:7,13
29:12
**big** 27:4
**bizarre** 15:3
**blackshear** 28:15
**blanket** 16:19
**board** 4:3 6:18
**body** 10:23
**boston** 3:6
**boulevard** 7:10
**box** 4:5
**breakout** 27:5
**breakup** 10:18

**brief** 11:13 17:4
**briefly** 10:14
**bring** 29:12
**broad** 16:12
**broker** 12:21,22
13:1
**brokers** 8:10
**building** 23:21
25:24 26:7,9
**burden** 10:22
**bureau** 18:8,11
**business** 7:20
13:25
**businesses** 7:21

**c**

**c** 3:1,23 6:1 31:1,1
**cafeteria** 27:4
**call** 14:16
**called** 17:11
**campus** 7:9,13,17
8:11,12
**can't** 25:17 27:22
**care** 19:10,16
**carve** 10:4,9
**case** 1:3 8:13 14:7
15:1 16:11 17:11
17:23 18:11,17
20:1,2 21:24 25:5
**cases** 15:10 25:13
**catherine** 2:5
**center** 3:5
**central** 1:16 4:12
4:14
**certain** 4:2 26:9
**certainly** 11:8,15
11:15 24:11
**certified** 31:3
**certilman** 3:10
**change** 12:13,13
**charities** 18:8,11
**charity** 19:25
**charter** 22:14

**check** 14:16,17
15:12,23 16:3
**choice** 12:20 13:6
**circuit** 17:13
28:14
**circumstances**
28:6
**city** 4:6
**claim** 11:16 14:13
14:24
**clear** 18:13,21
19:25 22:12,13,23
**clearly** 11:19
**clerk** 6:3,19
**client** 12:16 13:15
14:2 15:12
**close** 19:4 21:4
**closely** 19:1
**cohn** 3:3
**college** 1:7 2:6
3:19 4:3 6:3,6,18
6:25
**come** 12:17 19:21
20:9 24:25 25:9
26:24 27:17,21
**comes** 20:2
**coming** 10:20
19:18 25:20 27:19
29:25
**comment** 17:1
22:16
**comments** 20:21
28:7
**committee** 5:2,3
6:11 9:9 10:13
11:5 22:17
**committee's** 13:4
**communications**
10:16
**community** 23:19
**competing** 7:22
9:10 11:22

**competitive**  9:3
**complete**  9:6,18
  21:22
**concern**  25:5 26:3
  26:4 27:13,14,15
**concerned**  24:19
**conduct**  28:14
**conference**  27:3
**consent**  10:7,9
  12:21
**consider**  28:5
**consideration**  7:5
**considered**  17:24
  18:1,5 23:3
**considering**  8:4
**consistent**  8:25
**constituents**  9:15
**consultation**  13:1
**contemplate**  8:8
**contract**  8:21
  12:18 13:15 14:14
  15:5 16:16 29:6
**contracts**  9:13
  16:24
**control**  26:7
**conversation**
  11:13
**convey**  19:1
**convince**  21:21
**copy**  13:14
**corp**  3:11 6:8
**correct**  13:19
  17:19 20:2 23:11
  29:4
**correctly**  10:19
**correspondence**
  10:16
**counsel**  6:10
**country**  31:21
**couple**  13:14 22:9
**court**  1:1,14 6:22
  10:1,11 11:24
  13:9,11,17,20,24

14:23 15:7,9,18
15:22,25 16:11,15
16:17,19,19,21,21
16:25 17:2,6,8,11
17:15,22 18:3,19
18:20,23 19:5,8
19:14,24 20:4,8
20:16,23 21:6,10
22:5,16,19 23:9
23:17 24:13,14,22
24:25 25:5,12
26:6 27:7,11,25
28:8 29:2,6,14,18
29:21,23 30:2,6
**courthouse**  4:12
  7:10
**courtroom**  25:23
  25:24
**courts**  19:9,9
  20:25
**court's**  13:4 30:6
**credit**  14:7 15:25
  16:1
**creditor**  3:12 5:3
  10:3,5,23 14:8,13
  14:16 15:11,17
**creditors**  5:3 6:10
  10:20 15:12,17
**current**  14:15
**currently**  13:11
  29:5

**d**

**d**  6:1
**d'amato**  4:12
**date**  7:11 31:25
**days**  7:20,21
  10:15 11:9
**deadline**  7:20,22
  12:24 14:20
**deal**  8:20 9:2 19:4
  21:13
**deals**  24:1

**dealt**  27:24
**debt**  10:3
**debtor**  1:9 2:7
  3:19 6:6,24 7:4,12
  9:1,9,14,21 12:17
  12:19 13:1,5
  14:19,21 15:6
  17:24 18:13,18,24
  21:23 22:14
**debtor's**  2:2
**debtors**  7:15 12:4
  18:2
**debtor's**  7:1,8
  8:10,21 9:1,18
  13:9 26:2
**decide**  12:6,13
**decided**  12:23
  13:7,24
**decision**  16:25
  17:8,21
**decorum**  26:9
**definitely**  20:21
**department**  22:10
**deposit**  8:24
**desire**  21:3
**determine**  12:8
  14:4
**determining**
  12:21
**different**  8:14
  17:12 23:22 24:4
**difficult**  12:11
  25:13
**direct**  2:2,6
**direction**  18:13
**discuss**  28:5 30:1
**discussed**  25:3
**discussing**  29:11
**discussion**  17:4
**discussions**  18:10
  18:15
**disposition**  18:4

**disrupt**  19:3
**disruption**  26:5
  27:14
**distance**  7:10
**district**  1:2
**divests**  16:20
**docketed**  7:5
**doesn't**  10:2,21
  16:6 20:16 30:2
**doing**  15:13 20:6
  24:24 27:1
**dollar**  23:18
**dollars**  10:22
**don't**  11:14 12:12
  13:3,16,20,21
  15:9,18 16:8,9
  19:9,16,16 20:8
  21:8,24 24:6
  25:23 26:12 27:22
  28:2,13 30:3
**doubt**  14:7
**dowling**  1:7 2:6
  3:19 4:2 6:3,6,18
  6:25
**downstairs**  27:4
**drafting**  16:23
**due**  10:15 11:9
  29:2,5

**e**

**e**  1:23,23,24 3:1,1
  6:1,1 31:1
**early**  8:13
**easement**  29:15
**east**  3:14 23:3
**eastern**  1:2
**education**  22:10
**educational**  22:15
**efficient**  19:2
**efforts**  7:16 8:17
**either**  25:21
**embarrassing**
  25:1

**encourage** 9:3 21:8
**encouraged** 23:13
**endorse** 16:3
**ends** 10:19
**english** 4:1
**enormous** 26:14
**ensuring** 20:3
**enter** 16:25 29:14
**entered** 7:4,14 8:8 29:10
**entirely** 18:13,21
**entity** 17:17
**entry** 2:2 7:1,25
**envision** 27:1
**equal** 8:24
**escorts** 27:9
**especially** 11:21
**essence** 9:23 10:6
**essentially** 8:5
**establish** 11:16
**estate** 8:10 9:14 9:15,24 10:21,23 10:25 11:4,10,17 12:4,10 14:5 18:4 23:6 25:8
**estate's** 14:11
**everybody** 19:21
**ex** 2:6
**example** 27:18
**excess** 10:17 11:23
**excluded** 22:20
**expect** 23:5
**expense** 2:3 7:2 10:19 12:18
**expenses** 11:18 14:25
**explain** 25:17 26:21
**extended** 7:20
**extending** 14:19

**extent** 10:21 11:16

**f**

**f** 1:23 31:1
**fact** 9:21 11:22 20:5 25:16
**facts** 17:12
**fair** 9:2
**fairly** 7:25
**familiar** 17:23
**favor** 9:5
**federal** 1:15 4:13 17:1,14 19:9,13 26:9 27:24
**fee** 2:3 7:2 10:18 15:16
**feel** 16:23
**feels** 9:2
**fees** 12:19
**ferris** 3:3
**figure** 21:6
**file** 11:16 18:23 22:1
**filed** 7:6,12 8:2 11:8
**filing** 18:11
**final** 19:12
**financial** 3:5,11 6:8 23:20
**find** 8:16 21:3
**fine** 21:21 27:7,12
**finished** 13:23
**firm** 25:19 27:10
**firm's** 27:6
**five** 10:14 11:9
**flexibility** 23:16
**floor** 3:20 9:3,20 14:20
**floors** 27:6
**folks** 23:19 25:15 26:14
**fooled** 26:10

**foregoing** 31:3
**form** 7:14 8:21 13:15 16:24 22:11 22:23 29:6,9,9
**formal** 10:8
**forms** 9:13 11:2
**forth** 8:20 9:15
**fortunate** 9:9
**forum** 23:8
**forward** 12:20
**four** 9:10 11:9,22 15:4 20:15
**frankel** 4:18,23 6:12,12,12 11:13 12:16 13:13,19,22 14:18 15:5,8,15 16:4
**free** 15:3,14 16:23 19:21
**friday** 8:2 12:22
**friedman** 5:8 6:9 6:10 10:12,12 12:2
**friendly** 9:14
**front** 19:25 20:13
**fully** 16:3
**further** 18:15
**future** 23:21,21

**g**

**g** 6:1
**garden** 4:6
**general** 16:22 19:19 27:10
**generally** 18:9
**general's** 18:8,15 18:25 21:5
**give** 11:15 15:25 16:1,3 25:22,25
**given** 11:2,22 29:7
**glovsky** 3:3
**go** 13:6,12,15 14:16 16:5 21:1 24:5 26:9

**goal** 20:11
**goes** 24:15
**going** 12:20 13:12 14:6,9,11,13 15:22 16:5 18:20 19:11 20:12 21:14 22:1 24:14,16,20 25:1,6,16,19,21 26:21 27:17,18,21 27:22 28:2,16,21 29:25
**good** 6:2,4,7,9,15 6:20 8:3 11:25 24:3
**grant** 13:9
**granted** 7:17
**great** 15:12
**greater** 10:3
**grossman** 1:24
**guaranty** 3:11 6:8
**guess** 12:3 14:10 20:17
**guided** 7:15
**guy** 16:2
**guys** 24:3 28:12

**h**

**half** 27:23
**hammel** 3:8 6:20 6:20
**happening** 20:19 26:12
**hard** 10:25
**hart** 8:11
**hasn't** 10:8
**haven't** 27:24
**headed** 23:14
**hear** 8:3 21:18
**heard** 10:1 26:19
**hearing** 2:1,1,8 23:16
**held** 23:2
**help** 28:17

**helpful** 22:4,7
28:7
**he's** 15:20,22,22
**hhh** 17:11
**high** 10:17
**higher** 13:11,13
14:15
**highest** 23:25
**historical** 18:1
**hit** 27:21
**hold** 27:3
**homeless** 26:20
**hon** 1:24
**honor** 6:2,4,7,9,15
6:23,25 7:7,11,14
7:24 8:3,7 9:17,22
9:24 10:5,13,19
11:20,25 12:3,5,6
12:16 14:18 15:20
16:10,18 17:3,24
18:12,22 22:3,8
22:18,25 23:11
24:17,18 26:2
27:1 28:4 29:4,8
29:17,20,22
**honor's** 7:5 17:25
19:22 20:20 23:15
**hopeful** 21:4
**horse** 7:3,7 8:1,1
8:6,9,16,18,19,20
8:23 9:2,5,11,12
9:16,21 10:2,4,24
11:1,8,8 12:9,12
12:20,22,23 13:6
13:8,18 14:1,3,14
14:22,25 15:11,16
16:7 22:11
**hour** 7:10
**hours** 13:14
**houses** 26:15,16
**howard** 4:8 6:17
**hyde** 2:25 31:3,8

**hyman** 3:10

**i**

**ian** 3:8 6:20
**ideal** 9:13 29:9
**identified** 8:18
21:16
**idle** 7:10
**immediately** 15:6
**implies** 19:18
**important** 9:12
19:3 23:17,18
**impossible** 13:2
**inclined** 12:6
**inconvenient**
25:19
**incorporated** 11:4
**indenture** 6:21
**indiscernible**
25:10
**indulge** 17:7
**informed** 13:13
**input** 25:4
**insist** 18:9,18
**integrity** 20:4
**intend** 20:9
**intended** 18:14
**intention** 23:7
**intentionally**
20:18
**interest** 8:14 11:6
21:23
**interested** 4:3
**interests** 8:15
23:20,20
**interfere** 20:11
21:7
**interference** 24:7
**interpreted** 19:12
**interspersed**
26:17
**involved** 8:10
21:24

**irrelevant** 20:19
**island** 23:2,19
**islip** 1:16 4:12,14
**isn't** 26:6
**issue** 12:6 16:23
18:14 19:5,5 20:1
20:3,14 21:13,14
21:14,18
**issued** 17:8
**issues** 16:1,11
**item** 22:19
**items** 22:9 23:12
**it's** 9:12 11:8,14
12:11 13:2,4 14:4
15:2 18:21 19:18
20:6,17,19 21:7
21:14 23:18 24:4
24:10,13 25:6,6
26:25 27:4,15,16
**i'm** 6:7,16 13:25
14:5,13,24 15:20
16:5,12 20:6,18
20:24 21:4,17,18
22:1 24:14,16,19
24:24 26:12 27:11
27:20 28:1,1,2,9
28:15
**i've** 16:4 19:24,24
21:20 22:6

**j**

**j** 3:16 5:8
**jericho** 5:4,6
**job** 9:24 13:4 24:3
**judge** 1:25 17:8
17:14 18:17 19:14
24:9 28:15
**judges** 28:13
**junior** 15:17
**jureller** 3:18 6:5

**k**

**kind** 24:1,4 29:12
**kiss** 2:5

**klein** 4:1
**kleinberg** 4:8 6:17
6:17
**klestadt** 3:18 6:5
**knew** 10:15
**know** 11:14 12:13
13:16 14:2 16:8
19:16 24:4,7
25:14,25 26:12,16
27:23 28:11,12,21
29:23,24
**knows** 24:7
**krinsky** 4:18
**krinsy** 6:13

**l**

**large** 19:25 29:9
**late** 7:25 11:8
13:14
**lauren** 2:5
**law** 15:9 17:13,15
18:7,17 25:19
27:23
**lawyer** 28:13
**laypeople** 24:20
**leave** 25:21 26:22
**ledanski** 2:25 31:3
31:8
**legal** 19:6 31:20
**letting** 27:19,20
**level** 27:2
**levin** 3:3
**life** 26:15
**light** 23:4
**likelihood** 10:17
17:20
**likes** 19:15
**likewise** 7:21
**limited** 11:18 25:7
**listen** 28:19,20,21
**literally** 26:11
**little** 17:13
**lived** 26:18

| | | | |
|---|---|---|---|
| **llc** 2:4 6:13 7:4 | **media** 27:17 | **night** 13:14 17:18 | **open** 23:8,23 |
| **llp** 3:18 5:1 | **meet** 16:6 | **normally** 24:1 | **openly** 24:2 |
| **located** 7:9 | **members** 4:2 | **note** 9:12 | **operate** 22:15 |
| **location** 23:1 27:2 | **mention** 22:10,25 | **noted** 10:20 | **operations** 27:10 |
| **logistically** 29:24 | 23:13 | **notice** 2:1 8:4 | **opportunity** |
| **long** 23:1,19 | **mentioned** 8:2 | 12:24 14:19 20:13 | 11:12 13:25 14:2 |
| 24:10 26:18 | 12:2 | 20:14 23:16 | **opposed** 10:6 |
| **look** 15:9 19:24 | **mere** 11:9 | **notwithstanding** | **opposition** 10:14 |
| **loosely** 17:17 | **merrick** 3:13 | 18:16 | **options** 28:2 |
| **lot** 12:16 23:19,22 | **mess** 25:22 | **number** 7:6 9:11 | **order** 2:1,3 7:1,15 |
| 26:14 28:22 | **meyer** 4:1 6:17 | 9:12 25:7 28:11 | 7:18 8:7 16:20 |
| **lower** 15:1 27:2 | **million** 8:24 | **numerous** 21:24 | 17:2,2 19:11,12 |
| **m** | **mind** 12:13 21:15 | **ny** 3:14,21 4:6,14 | 20:10 21:7 24:19 |
| | **mine** 17:21 | 4:21 5:6 31:23 | 25:25 29:14,15 |
| **m** 4:12 | **mineola** 31:23 | **o** | **orders** 19:17 |
| **ma** 3:6 | **mintz** 3:3 | | **orioles** 28:15 |
| **madison** 8:11 | **modifications** | **o** 1:23 6:1 31:1 | **outcome** 25:10 |
| **maintain** 20:4 | 29:11 | **oakdale** 7:8,13,16 | **o'clock** 28:25 |
| **maintaining** | **modified** 7:19,24 | 8:11,12 | **p** |
| 25:25 | **monday** 12:24 | **object** 15:19,19 | |
| **making** 27:5,11 | 13:5 30:2 | 15:21,24 20:9 | **p** 3:1,1 6:1 |
| 28:1 | **money** 14:9 | **objection** 9:8 | **p.c.** 4:1 |
| **mall** 26:19 | **months** 17:11 | 11:21 | **paid** 14:8 |
| **managing** 8:13 | **morning** 9:6 13:5 | **objections** 22:2 | **palace** 2:4 6:13 |
| **march** 1:18 7:6 | **motion** 2:2,6,7 7:5 | 29:5 | 7:4 8:2,17 |
| 31:25 | 7:12 8:2 13:10 | **observe** 25:2,10 | **papers** 18:23 |
| **mark** 4:23 6:12 | 16:10 18:12,12 | 27:22 | 19:21 22:1 |
| 15:7 | **moved** 23:1 | **obviously** 23:13 | **part** 7:25 9:7 |
| **markedly** 11:3,23 | **n** | 24:5 25:7 | **parte** 2:7 |
| **marketing** 7:16 | | **occasions** 20:15 | **participating** 23:4 |
| 8:10,12 | **n** 3:1 6:1 31:1 | **occur** 18:6 | **parties** 8:14 11:6 |
| **marshals** 29:24 | **national** 3:4 | **odd** 24:15 | 11:7 23:4,6,8 25:9 |
| **massage** 19:10 | **nature** 22:9 | **offer** 28:5 | **partners** 8:11,12 |
| **matter** 1:5 11:13 | **necessary** 26:22 | **office** 4:10,12 | **party** 4:3 |
| 17:9 28:20 | **need** 30:3 | 18:8,15,16,25 | **pass** 20:18,21 |
| **mccord** 3:16 6:7,8 | **needed** 12:22,23 | 21:5 26:24,25 | **passionate** 20:3 |
| 16:2 24:18,23 | **never** 17:2 | **offices** 23:2 | **path** 21:3 |
| 27:1,8,13,18 | **new** 1:2,16 3:21 | **official** 5:2 | **pay** 14:9,10,11 |
| 29:22 | 4:21 16:17,17,22 | **okay** 6:22 10:11 | 15:16 |
| **mccord's** 23:2 | 18:7 19:19,20 | 15:8 19:15 20:6 | **payment** 10:7,10 |
| 26:23 | 20:16 22:10 | 29:18,18,23 | **pc** 3:3 |
| **meadow** 3:14 23:3 | **newsday** 27:19,20 | **old** 31:21 | **people** 13:3 15:10 |
| **mean** 15:3,25 | **nice** 15:24 26:16 | **once** 6:23 | 19:10 21:24 23:22 |
| 19:13 28:8 | | | 24:4 25:7,9,14,20 |

26:1,8,11,20 27:3
28:19,19 29:25
**percent** 8:25
**permit** 21:3
**perspective** 9:1
11:1 26:3
**petition** 7:11
**petitions** 26:11
**phone** 6:19 16:2
28:10
**place** 7:12 16:16
20:10 21:1 28:23
**plainly** 19:17
**planning** 27:5
**play** 13:5,21
**played** 13:22
**plaza** 1:15 4:13
**please** 6:19
**plenty** 24:4
**plus** 25:7
**pm** 1:19,19
**po** 4:5
**point** 11:1,14 12:5
12:11,15 14:18
23:5
**popeo** 3:3
**position** 11:24
12:5,5,15 17:25
19:22,25 20:24
24:13
**possession** 6:6
**possibility** 8:8
**possible** 21:15
23:24 25:14 28:18
**possibly** 24:23
25:10
**potential** 6:13
8:18 26:4 27:8
**practice** 18:1
**prefer** 20:5 24:6
**presently** 9:16
**prevent** 15:13

**previously** 8:8
**price** 8:23 12:18
**principle** 19:6
24:14
**prior** 11:7 18:11
18:11
**private** 26:8
**probably** 17:4,19
27:3,23
**problem** 19:20
24:12
**problems** 20:12
**procedure** 8:25
24:19
**procedures** 7:12
7:15,18 8:7
**proceedings** 31:4
**proceeds** 10:8
**process** 7:19 17:1
19:2 20:11 21:22
24:14 26:1,4
**professional** 27:5
**professionals** 25:9
27:17
**professors** 27:16
**profit** 17:16 18:2
18:7
**prohibited** 24:24
**project** 21:23
**promptly** 22:8
30:1
**property** 7:23
10:2 18:4 23:21
24:5 26:13,17
**proposed** 7:3,13
7:18 8:1,6,20,21
8:23 9:4 12:19
22:12
**protection** 10:18
**protections** 8:5
9:4,23
**prove** 11:1 13:2

**provide** 10:25
16:24
**provided** 11:17,19
15:16 20:22
**provides** 14:5
**purchase** 2:5 8:23
16:15
**purchaser** 6:14
**purpose** 9:22
**purposes** 8:4
**put** 7:12 12:7 15:6
17:17 19:21 29:8
**putting** 21:17

**q**

**quadrangle** 5:4
**qualified** 23:6,10
25:6
**quarterback** 13:5
**question** 21:17
28:9
**quickly** 21:15
**quite** 15:20

**r**

**r** 1:23 3:1 6:1 31:1
**raise** 16:22
**rampant** 20:1
**reached** 22:11
**reacting** 8:14
**read** 19:15
**reading** 17:18
**real** 8:10
**really** 12:15
**realty** 8:11
**reason** 20:5
**reasonable** 9:3,23
**recall** 7:11
**receive** 9:9 10:17
**received** 8:24 9:8
10:15 11:2 23:14
29:8
**record** 6:24 9:6
9:18 10:12 21:17
22:4,13 31:4

**redline** 22:17
**reference** 20:15
**referenced** 18:17
**references** 16:17
**referring** 27:15
**reg** 1:3
**reimbursement**
2:4 7:2 11:17
12:18 14:25
**related** 7:13
**relates** 7:8
**relation** 7:3 9:8
18:2,4,6
**relative** 17:16
**relatively** 17:13
25:18 26:16
**remains** 11:11
**render** 12:10
**rendered** 15:13
**report** 27:20
**reporter** 27:19
**representatives**
25:8
**representing** 3:4
3:11,19 4:2,19 5:2
**request** 22:22
**requested** 11:5
**require** 8:9 17:14
**requirements**
11:4
**requires** 29:14
**resistance** 21:3
**resolve** 11:12
**respect** 2:7 10:24
11:10,12,20
**respectfully** 25:4
**rest** 10:23
**review** 17:22
**revisions** 11:5
**richard** 3:16 6:8
27:18
**right** 11:16 14:17
15:24 21:1,17

22:15 26:21 30:3
**rights** 20:23 21:11
  21:12
**road** 14:24 31:21
**robert** 1:24
**role** 13:21,22,22
  13:24 23:6
**ronald** 5:8 6:9
  10:12
**room** 25:20 27:3
**rooms** 27:6
**rubber** 18:6
**ruled** 18:17
**ruling** 16:25

**s**

**s** 3:1 6:1
**sale** 7:8,13,16
  17:16 20:10 21:4
  28:23 29:14
**satisfy** 17:14
**saw** 16:16 22:16
**saying** 15:20,22
  24:8
**says** 24:19
**schedule** 7:18,24
**scheduling** 2:1
**school** 26:18
**sean** 3:23 6:4,24
**secondary** 18:5
**secure** 10:20
**secured** 10:3,3,5
  14:6,8,16 15:11
  15:17
**security** 27:8,13
**see** 15:9 19:15
  21:5 24:5
**seeking** 7:12
  18:18 25:4
**seen** 11:11 12:1
**sell** 10:2
**sense** 16:5 17:4
  19:8 26:1,10

**sent** 12:24 14:19
**separate** 20:15
**serve** 8:19 9:22
**services** 15:13
**set** 8:20 9:3,15,20
**setting** 26:8,21
**settle** 20:25
**shape** 16:24
**share** 22:4,8
**sheets** 12:14
**shelter** 26:20
**shepherd** 19:2
**short** 7:10 8:4
  23:16
**shorten** 2:1,7
**show** 21:17 24:9
**shows** 26:10
**sic** 16:16
**sign** 16:20 17:2
  19:11 20:10
**signed** 15:5 22:17
**significantly** 9:11
**signing** 26:11
**signs** 24:9
**silverman** 6:10
  10:13
**silvermanacam...**
  5:1
**similar** 17:9 22:9
**simple** 21:7 24:1
**sit** 27:22
**slightly** 7:19
  29:10
**small** 26:16
**sold** 28:15
**solutions** 31:20
**somebody** 28:9
**somewhat** 18:6
**sonya** 2:25 31:3,8
**sooner** 20:10
**sorry** 30:6
**sort** 23:12

**sorts** 24:20
**sounds** 27:12
**southard** 3:18,23
  6:2,4,5,5,23,24
  10:5,14 15:19,24
  16:10,14,18 17:3
  17:7,10,23 18:21
  18:24 19:7,22
  20:7,20 21:2,8
  22:3,7,18,21
  23:11 24:11,17
  26:2 28:4,25 29:4
  29:8,17,19 30:1,5
**speak** 25:16
**specific** 10:8
**spent** 12:16
**spirited** 23:15
**spot** 14:4
**stages** 8:13
**stalking** 7:3,7,25
  8:1,6,9,16,18,19
  8:20,23 9:2,5,11
  9:11,16,21 10:2,4
  10:24 11:1,8,8
  12:9,12,20,22,23
  13:6,8,18 14:1,3
  14:14,22,25 15:11
  15:16 16:7 22:11
**stamp** 18:6
**stan** 4:16 6:15
**standards** 16:6
  17:15,20
**standing** 21:11
**start** 28:16
**state** 6:19 16:17
  16:17,21,22 17:15
  17:15,22 18:2,18
  19:9,14,19,20
  20:16 22:10,13,22
**stated** 17:25,25
**statement** 16:19
**states** 1:1,14 4:10

**step** 9:19
**stevens** 3:18 6:5
**stewart** 4:4
**stop** 27:18
**straight** 21:25
**street** 3:20
**strong** 19:8
**students** 27:16
**studied** 17:17
**subject** 7:4 17:5
  17:21
**submit** 18:12
**subsequently**
  14:23
**successful** 12:12
  12:14
**sudden** 12:25
**suggest** 12:7
**suggesting** 20:18
**suite** 4:5 5:5 31:22
**suozzi** 4:1 6:17
**supports** 9:4
**supreme** 20:16
**sure** 14:5 15:20
  16:12,14 17:6
  20:22,24
**surprise** 24:6
**sustained** 11:21
**system** 17:1 19:13
  20:4

**t**

**t** 31:1,1
**take** 13:25 18:14
  19:14
**takes** 20:10
**talking** 25:15
**tell** 12:11 28:20
**term** 12:14
**termination** 2:3
  7:2 12:19
**terms** 2:5 8:19
  9:15 11:3,23 12:2
  12:3 23:9

**thank** 6:23 22:3 24:17 29:19,21,22 30:4,5
**that's** 12:15 13:24 14:1 16:4,10 17:18 19:15 20:1 20:25 22:3,6,7 23:11 25:5 26:21 27:7,9,20
**there's** 14:6,8 16:12 19:10,17 20:13,14,15
**they'll** 24:25
**they're** 15:14 19:21 20:13 24:24 25:15 26:16,16,17 27:21 28:20
**they've** 26:17,19
**things** 8:15 20:25 26:19 27:25 28:11 28:22
**think** 9:12,18 10:25 11:10 13:3 16:9 17:4,18 21:16,20,23 22:7 22:16 23:17,18,23 23:24 24:3 25:18 25:19 26:6 28:13
**thought** 22:5
**thousand** 26:11
**three** 15:3
**thrown** 26:24
**tied** 26:15
**time** 2:7 9:2,20 11:2,7,15 12:17 18:14 19:5 20:2,9 29:20
**timeline** 19:3
**timely** 21:4
**times** 18:3,5
**today** 7:5 8:4 15:23 16:8,9 20:14 22:10,13

23:16 25:3 29:20
**traditional** 16:5
**transcribed** 2:25
**transcript** 20:22 21:18 31:4
**transfer** 22:20
**transition** 17:16
**transparent** 28:18
**transparently** 24:2
**trouble** 15:10
**true** 31:4
**trustee** 4:10,11 6:16,21
**trustees** 4:3 6:18
**trustee's** 13:5
**try** 11:12 15:24
**trying** 29:11
**tuesday** 7:23 28:23,25
**two** 7:20,21 9:11 9:13 27:6,25
**type** 27:14

**u**

**u.s.** 1:25 4:11 13:4
**ultimately** 8:15
**umb** 3:4 6:21
**understand** 19:7 19:7,23 20:7 21:2 24:18
**understanding** 10:7,10 21:20
**undoubtedly** 22:8
**united** 1:1,14 4:10
**unsecured** 5:2
**urge** 21:13
**usage** 29:15
**use** 22:24
**useful** 21:15
**ust** 11:24

**v**

**vague** 20:17
**vagueness** 20:19
**value** 23:18
**vanderbilt** 2:4 4:19 6:13 7:4 8:1 8:17 9:19 16:16
**venue** 23:4
**veritext** 31:20
**version** 22:17
**view** 9:14,18 18:16
**viewing** 22:11
**viewpoint** 17:25
**views** 23:22

**w**

**waiting** 25:20
**wallace** 17:8
**want** 10:1 15:12 19:14 20:8 21:8 22:1,5 24:6,23 25:9,16
**wanted** 14:2 22:9 22:12,22,25 23:12 25:22
**wants** 14:9 16:3 24:8
**warning** 30:3
**waste** 20:8
**watch** 26:1
**watching** 26:3
**way** 9:14 10:20 16:20,24 19:2,12 21:14,25 28:17
**ways** 25:25
**wednesday** 28:23 28:24
**week** 7:23 8:3 12:23 15:5
**weeks** 11:7 15:3,4
**welcome** 18:23 21:18

**weren't** 25:1
**west** 3:20
**we'd** 10:17 12:6
**we'll** 24:9 28:21
**we're** 6:25 20:11 25:3 28:8 29:11 29:25
**we've** 15:10 18:17 21:16 25:12 29:24
**what's** 26:12 27:21
**wiles** 18:17
**willing** 8:19 9:19
**willingness** 19:1
**winters** 3:18 6:5
**wisdom** 21:5
**wishes** 16:22
**won't** 15:13 28:20
**work** 14:3 16:4 19:1 29:7
**working** 12:17
**worried** 27:20
**worthwhile** 11:19
**wouldn't** 13:17,18
**write** 14:15 15:12 15:23

**x**

**x** 1:4,11

**y**

**yang** 4:16 6:15,15 11:25
**yeah** 15:24,25 20:23 22:5 23:17 25:12 26:20 28:8
**year** 7:6
**years** 24:15 28:12
**yesterday** 7:22 9:10
**york** 1:2,16 3:21 4:21 16:17,17,22 18:7 19:20,20 20:16 22:10

| | |
|---|---|
| **you'll** | 25:17 26:22 |
| **you're** | 14:1 16:23 |
| | 25:15,19,21 26:21 |
| | 29:2 |
| **you've** | 23:9 |

| **z** |
|---|
| **zoning** 29:15 |