**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DOWLING COLLEGE, | : | |
| f/d/b/a DOWLING INSTITUTE, | : | Case No. 16-75545 (REG) |
| f/d/b/a DOWLING COLLEGE ALUMNI | : | |
| ASSOCIATION, | : | |
| f/d/b/a CECOM, | : | |
| a/k/a DOWLING COLLEGE, INC., | : | |
| | : | |
| Debtor. | : | |

------------------------------------------------------------------x

**DEBTOR'S SUPPLEMENTAL STATEMENT IN SUPPORT OF ITS**
**MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363, AND 365**
**OF THE BANKRUPTCY CODE APPROVING SALE OF THE DEBTOR'S**
**OAKDALE CAMPUS FREE AND CLEAR OF LIENS,**
**CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College, (the "Debtor"), debtor and debtor-in-possession in the above-captioned

chapter 11 case (the "Chapter 11 Case"), submits this statement in further support (the

"Statement") of its motion seeking entry of an order, substantially in the form attached hereto as

Exhibit A (the "Sale Order")[1], (i) approving a sale of the Oakdale Campus[2], free and clear of all liens, claims and encumbrances, security interests and other interests pursuant to a Purchase Agreement to the Successful Bidder as determined by the Bidding Procedures and (ii) granting related relief (the "Sale Motion") [DE 13].

## BACKGROUND

A.  *Case Background*

1.   On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

2.   The Debtor continues to manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.   On December 9, 2016, the United States Trustee appointed Ultimate Power Inc., Linda Ardito and Lori Zaikowski to the Official Committee of Unsecured Creditors (the "Creditors' Committee"). Later that day, the Creditors' Committee selected SilvermanAcampora LLP as its general bankruptcy counsel.

4.   Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO"). The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

---

[1] Attached hereto as Exhibit A-1 is the proposed Sale Order and attached hereto as Exhibit A-2 is a comparison of the proposed Sale Order to the proposed form of order attached to the Sale Motion at the time it was filed.
[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion [DE 13].

5. The events leading up to the Petition Date and certain of the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration") [DE 23]. Mr. Rosenfeld has also provided a declaration in further support of the Sale Motion filed at substantially the same time as this Statement (the "Supplemental Declaration").

B. *Bidding Procedures*

6. The Debtor is seeking to sell certain real property consisting of an estimated 25 acre campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769 (the "Oakdale Campus"). Toward that end, on the Petition Date, the Debtor filed the Sale Motion requesting the entry of, among other things, bidding procedures and bidder protections for the sale of the Oakdale Campus.

7. On December 16, 2016, the Court entered an order approving, in part, the Sale Motion (the "Bidding Procedures Order") [DE 111], which set forth, among other things, the following schedule in connection with the sale of the Oakdale Campus:

| | |
|---|---|
| Sealed Bid Deadline: | March 27, 2017 (4:00 p.m. EST) |
| Auction: | March 31, 2017 (11:00 a.m. EST) |
| Objection Deadline: | April 6, 2017 (4:00 p.m. EST) |
| Sale Hearing: | April 10, 2017 (10:00 a.m. EST) |

C. *Marketing Efforts*

8. As set forth in the Supplemental Declaration, the Debtor's real estate brokers, A&G Realty Partners, LLC and Madison Hawk Partners, LLC (collectively, the "Campus Agents"), have extensively marketed the Oakdale Campus. See Campus Agents' Report, dated April 5, 2017, and attached to the Supplemental Declaration as Exhibit 1.

D.    *Stalking Horse Application*

9.    At the time the Debtor filed the Sale Motion no Stalking Horse Bidder had been identified. However, the Bidding Procedures Order provides that "[i]n the event that the Debtor identifies a Stalking Horse Bidder, the Debtor is authorized to present to this Court on not less than ten (10) days' notice, a proposed form of agreement and related proposed Bidding Procedures that the Debtor believes are necessary to induce the Stalking Horse Bidder to pursue the Sale." Bidding Procedures Order, p. 5.

10.    Through its extensive marketing process, the Debtor and the Campus Agents identified Vanderbilt Palace LLC ("VPLLC") as a potential stalking horse bidder and entered into negotiations with VPLLC. As a result of those negotiations, on March 24, 2017, the Debtor filed an application (the "Stalking Horse Application") [DE 246] for entry of an order approving a termination fee and expense reimbursement to VPLLC in accordance with the terms of that certain Asset Purchase Agreement dated as of March 22, 2017 for the sale of the Oakdale Campus.

11.    On March 30, 2017, the Court held a hearing on shortened notice to consider the Stalking Horse Application and on April 5, 2017 entered an order denying the Stalking Horse Application [DE 266].

E.    *Auction Process*

12.    Both the Bidding Procedures Order and the Bidding Procedures attached thereto provide that the schedule for the sale of the Oakdale Campus is subject to modification and that the Auction may be adjourned, continued or suspended in consultation with certain creditor groups. *See* Bidding Procedures Order, ¶ 4; Bidding Procedures, p. 1.

13. On March 27, 2017, after consultation with the necessary creditor groups, the Debtor filed an amended notice of bid deadline and Auction for the sale of the Oakdale Campus [DE 250], which set forth the following schedule:

| | |
|---|---|
| Amended Sealed Bid Deadline: | March 29, 2017 (4:00 p.m. EST) |
| Amended Auction: | April 4, 2017 (11:00 a.m. EST) |
| Objection Deadline: | April 6, 2017 (4:00 p.m. EST) |
| Sale Hearing: | April 10, 2017 (10:00 a.m. EST) |

14. As of the March 29, 2017 deadline to submit sealed bids, the Debtor received five (5) bids for the Oakdale Campus. Thereafter the Debtor, in consultation with the Creditors' Committee and the lenders parties to that certain Debtor-in-Possession Multi-Draw Term Loan Promissory Note dated as of November 29, 2016 (the "DIP Lenders"), designated the five (5) bidders as Qualified Bidders and conducted the Auction on April 4, 2017 at the law office of Certilman Balin Adler & Hyman LLP in East Meadow, New York, commencing at approximately 11:00 a.m.

15. As explained more fully in the Supplemental Declaration, the Auction was very successful and resulted in a high bid of $26,500,000, submitted by Princeton Education Center LLC ("Princeton") (Group C). The second highest bid was $26,100,000, submitted by NCF Capital Limited ("NCF") (Group A). Each of the three highest bids was made by an Educational End User. Each of the fourth and fifth highest bids was made by a Redeveloper.

16. On April 6, 2017, the Debtor, after extensive consideration by and consultation with representatives of the Creditors' Committee and the DIP Lenders, determined to close the Auction formally and designated Group C (Princeton Education Center LLC) to be the successful bidder (the "Successful Bidder") and Group A (NCF Capital Limited) to be the backup bidder (the "Backup Bidder"), subject to confirmation by the Board of Trustees of Dowling College (the "Board").

17.     A copy of the Asset Purchase Agreement between the Debtor and Princeton Education Center LLC, dated April 6, 2017 (the "Purchase Agreement") is attached hereto as Exhibit B. The Purchase Agreement is limited in scope to the real property, fixtures and improvements which comprise the Oakdale Campus, and certain ancillary rights tied to the real property in the nature of insurance and warranty. The sale to the Successful Bidder specifically excludes the Furniture and Equipment (as defined in the Purchase Agreement). The Debtor contemplates completing separate sale(s) and/or removal of the Furniture and Equipment from the Oakdale Campus no later than July 31, 2017 and the Purchase Agreement contemplates the same. In addition, the closing shall take place within thirty (30) days after satisfaction or waiver of all conditions to the obligations of the Debtor and the Successful Bidder.

F.     *Applicable Nonbankruptcy Law*

18.     Pursuant to Section 363(d) of the Bankruptcy Code, a transfer of property by a not-for-profit entity must be made in compliance with applicable nonbankruptcy law governing such transfer. Specifically, Section 363(d) provides that "[t]he trustee may use, sell or lease property under subsection (b) or (c) of this section – (1) in the case of a debtor that is a corporation or trust that is not a moneyed business, commercial corporation, or trust, only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation or trust." 11 U.S.C. § 363(d)(1).

19.     An insolvent not-for-profit corporation that is seeking to sell all or substantially all of its assets is required, pursuant to Sections 510 and 511 of the New York Not-for-Profit Corporation Law, to submit a verified petition to the New York State Supreme Court where the corporation has its principal office for approval of such sale transaction, on notice to the Attorney General. The state court will approve the proposed sale transaction if it finds that "the consideration and the terms of the transaction are fair and reasonable to the corporation and that

the purposes of the corporation or the interests of the members will be promoted." N.Y. Not-for-Profit Corp. Law § 511(d).

20. The Debtor and its counsel have conferred with the New York State Attorney General's Office and agreed that the transfer of the Oakdale Campus does not amount to or otherwise comprise a transfer of "all or substantially all" of the Debtor's assets. As such, New York State court approval of the Sale to the Successful Bidder, pursuant to Sections 510 and 511 of the New York Not-for-Profit Corporation Law is not necessary. As a result, the Debtor submits that the Sale complies with applicable non-bankruptcy law.

G.   *Debtor's Business Judgment*

21. As indicated in the Sale Motion, the decision to sell the Oakdale Campus was one of necessity and resulted from a lack of remaining viable alternatives. As set forth extensively in the First Day Declaration, the Debtor previously attempted to find a counter-party that would permit the Debtor to continue as a going concern. Unfortunately, the Debtor had no option at the outset of this Chapter 11 Case that involves a continued operation as a higher education institution.

22. The Debtor submits that the proposed Sale to Successful Purchaser represents the sound business judgment of the Debtor and is appropriate in light of the facts and circumstances set forth herein. The Debtor determined in its business judgment, after an extensive marketing process and highly competitive Auction, that the Sale to the Successful Bidder was the highest and best bid because, among other things, (i) the purchase price was the highest among the Qualified Bidders and (ii) the Debtor is confident in the Successful Bidder's ability to close the transaction within the contemplated time frame. It is essential that the proposed Sale be closed as quickly as reasonably possible to avoid continuing losses and maximize asset values. The proposed Sale to the Successful Bidder accomplishes this.

H.  *Sale Free and Clear*

23. Under Section 363(f) of the Bankruptcy Code, a debtor may sell property under the Bankruptcy Code free and clear of liens, claims and encumbrances, provided that: (i) applicable nonbankruptcy law permits the sale of the property free and clear of such interests; (ii) the entity holding the lien, claim or encumbrance consents to the sale; (iii) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest.  11 U.S.C. § 363(f). See In re Smart World Tech., LLC, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests.  It thus allows purchasers . . . to acquire assets without any accompanying liabilities."); In re Dundee Equity Corp., No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

24. In accordance with the provisions of the proposed Purchase Agreement and as set forth more fully in the Sale Motion and Section 363(f), the Debtor requests that it be authorized to conduct the Sale free and clear of all Liens, other than the Permitted Exceptions (as set forth in the Purchase Agreement), with any such Liens to attached to the proceeds of the Sale in the order and priority that they are entitled to.

25. All parties holding liens on the Debtor's assets, including the Oakdale Campus, were provided with notice of the proposed Sale and given an opportunity to object to the relief requested in the Sale Motion.  Any such entity that has not objected to the Sale should be deemed to have consented.  See, e.g., Futuresource LLC v. Reuters Ltd., 312 F.3d 281, 285–86 (7th Cir. 2002) (standing for the proposition that the lack of an objection to a proposed sale of

assets counts as consent); Hargrave v. Township of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); In re Elliot, 94 B.R. 343, 345–46 (E.D. Pa. 1988) citing In re Gabel, 61 B.R. 661, 667 (Bankr. W.D. La. 1985). See also, In re Enron Corp., No. 01-16034 (AJG), 2003 WL 21755006 at *2 (AJG) (Bankr. S.D.N.Y July 28, 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)).

26.    From the Debtor's perspective, the Sale is essentially fully consensual at this point. The Debtor notes that the relief sought herein in relation to the Sale is clearly supported by the Creditors' Committee and the DIP Lenders, the latter of which entities assert first position secured claims in and to the property to be sold. Section 363(f)(2) of the Bankruptcy Code is satisfied with regard to any parties holding a lien on the Oakdale Campus that have not objected to the relief requested in the Sale Motion.

27.    Alternatively, Section 363(f)(5) is also satisfied and provides adequate cause for granting authorization to conduct the Sale free and clear of Liens. Under the proposed Purchase Agreement, any party holding a Lien may be compelled to accept a monetary satisfaction of its lien. The Purchase Agreement also provides that Liens on the Assets shall attach to the proceeds of the Sale, subject to any claims and defenses the Debtor may have with respect thereto. Liens which cannot be satisfied through a monetary judgment (if any) are included among the Permitted Exceptions and will not attach to the proceeds of the Sale. Therefore, it is submitted that Section 363(f)(5) can be deemed satisfied upon a sale of the assets being conducted free and clear of all liens.

28.     After proper notice, the only objection filed in relation to the Sale Motion and relief sought herein was filed back on December 1, 2016 on behalf of Powerhouse Paving, a prepetition judgment creditor of the Debtor (the "<u>Powerhouse Objection</u>") [DE 56, 59].  The Powerhouse Objection has not been further argued or supported since the original date of filing. It is essentially a request for adequate protection and recognition of the relative priority of Powerhouse Paving based upon the judgment.  Noteworthy is that the Powerhouse Objection itself concedes the Debtor's Sale can be consummated and the Debtor's assets transferred free of the judgment lien by operation of Section 363(f).  This same rationale holds true with respect to any and all liens, claims or encumbrances pending against the property which is the subject of the Sale, whether the subject of formal objection or otherwise.

**WHEREFORE** the Debtor respectfully requests that the Court enter an order substantially similar to the proposed Sale Order, attached hereto as Exhibit A, granting the relief requested herein, and granting the Debtor such other and further relief as is just and proper.

Dated: New York, New York
April 7, 2017

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By:  */s/ Sean C. Southard*
Sean C. Southard
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, NY 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: ssouthard@klestadt.com
lkiss@klestadt.com

*Counsel to the Debtor and Debtor in Possession*