**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                  :       Chapter 11
                                                       :
DOWLING COLLEGE,                                       :
f/d/b/a DOWLING INSTITUTE,                             :       Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                         :
ASSOCIATION,                                           :
f/d/b/a CECOM,                                         :
a/k/a DOWLING COLLEGE, INC.,                           :
                                                       :
                                  Debtor.              :
---------------------------------------------------------------x

**DECLARATION OF ROBERT S. ROSENFELD, CHIEF RESTRUCTURING OFFICER
OF THE DEBTOR, IN SUPPORT OF THE DEBTOR'S MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105(a), 363, AND 365 OF THE BANKRUPTCY CODE
APPROVING SALE OF THE DEBTOR'S OAKDALE CAMPUS FREE AND CLEAR
OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

   I, ROBERT S. ROSENFELD, declare, pursuant to section 1746 of title 28 of the United

States Code, as follows:

   1.  I am the Chief Restructuring Officer (the "CRO") of the above-captioned debtor

and debtor in possession ("Dowling" or the "Debtor").

   2.  I submit this declaration in further support of the Debtor's motion seeking entry of

an order (i) approving the sale of the Oakdale Campus[1], free and clear of all liens, claims and

encumbrances, security interests and other interests pursuant to a Purchase Agreement to the

Successful Bidder as determined by the Bidding Procedures and (ii) granting related relief (the

"Sale Motion") [DE 13].

   3.  All statements contained herein are based on personal knowledge or made upon

information and belief.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale
Motion [DE 13].

4.      Prior to the Petition Date, I was retained to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  In accordance with my retention Order, entered December 16, 2016 [DE 106], I have taken over as the day-to-day manager of the Debtor and I am responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

A.      *Bidding Procedures*

5.      On the Petition Date, as part of the Sale Motion, the Debtor requested the entry of bidding procedures and bidder protections for the sale of the Oakdale Campus.

6.      On December 16, 2016, the Court entered an order approving those bidding procedures [DE 111].

B.      *Marketing Efforts*

7.      The Debtor's real estate brokers, A&G Realty Partners, LLC and Madison Hawk Partners, LLC (collectively, the "Campus Agents"), have extensively marketed the Oakdale Campus through a combination of means, including by direct mailing, press releases, color brochure and offering memorandum, both traditional print[2] and web-based advertising, solicitation of outside brokers, and other promotional and marketing activities, including through social media.

8.      As set forth more fully in the report prepared by the Campus Agents, dated April 5, 2017, and attached hereto as Exhibit 1, since the first marketing efforts began, there have been over 5,000 unique visitors to the property auction webpage maintained by the Campus Agents in relation to this sale effort.  The Campus Agents received 188 direct inquiries.  Thirty-seven (37) groups

---

[2] Print advertisements have run in the Wall Street Journal, New York Times, Jewish Week, Newsday, Real Estate Weekly, Long Island Jewish World, and Long Island Business News.

entered into non-disclosure agreements in order to gain access to the diligence information maintained by the Campus Agents.  Of those groups, twenty (20) toured and physically inspected the Oakdale Campus.[3]

C.      *Stalking Horse Application*

9.      At the time the Debtor filed the Sale Motion no Stalking Horse Bidder had been identified.

10.      Through its extensive marketing process, the Debtor and its Campus Agents identified Vanderbilt Palace LLC ("VPLLC") as a potential stalking horse bidder and entered into negotiations with VPLLC.  As a result of those negotiations, on March 24, 2017, the Debtor filed an application (the "Stalking Horse Application") for entry of an order approving a termination fee and expense reimbursement to VPLLC.

11.      On March 30, 2017, the Court held a hearing on shortened notice to consider the Stalking Horse Application and on April 5, 2017 entered an order denying the Stalking Horse Application [DE 266].

D.      *Auction Process*

12.      Both the Bidding Procedures Order and the Bidding Procedures attached thereto provide that the schedule for the sale of the Oakdale Campus is subject to modification and that the Auction may be adjourned, continued or suspended in consultation with certain creditor groups.  *See* Bidding Procedures Order, ¶ 4; Bidding Procedures, p. 1.

13.      On March 27, 2017, after consultation with the necessary creditor groups, the Debtor filed an amended notice of bid deadline and Auction for the sale of the Oakdale Campus [DE 250], which set forth the following schedule:

---

[3] The Campus Agents have reported on a weekly basis to the Debtor and the Debtor has shared these confidential updates with certain creditor constituencies, including the Creditors' Committee.

| Amended Sealed Bid Deadline: | March 29, 2017 (4:00 p.m. EST) |
| Amended Auction: | April 4, 2017 (11:00 a.m. EST) |
| Objection Deadline: | April 6, 2017 (4:00 p.m. EST) |
| Sale Hearing: | April 10, 2017 (10:00 a.m. EST) |

14.     As of the March 29, 2017 deadline to submit sealed bids, the Debtor received five (5) bids for the Oakdale Campus.  Thereafter the Debtor, in consultation with the Creditors' Committee and the lenders parties to that certain Debtor-in-Possession Multi-Draw Term Loan Promissory Note dated as of November 29, 2016 (the "DIP Lenders"), designated the five (5) bidders as Qualified Bidders and conducted the Auction on April 4, 2017 at the law office of Certilman Balin Adler & Hyman LLP in East Meadow, New York, commencing at approximately 11:00 a.m.

15.     Each Qualified Bidder was given a letter designation: Group A, B, C, D and E, respectively.

16.     Three (3) of the Qualified Bidders advised the Debtor that their intention was to use the Oakdale Campus for various types of educational purposes (each an "Educational End User"). Two (2) of the Qualified Bidders advised the Debtor that their intention was to redevelop the Oakdale Campus (each a "Redeveloper").

17.     The Auction commenced at approximately 11:00 a.m. and each of the bidders bid multiple rounds with breaks at various points in time.  At the end, the highest bid was $26,500,000, submitted by Princeton Education Center LLC ("Princeton") (Group C).  The second highest bid was $26,100,000, submitted by NCF Capital Limited ("NCF") (Group A).   The third highest bid was $25,800,000 submitted by Ritnand Balved Education Foundation or its Nominee(s) ("Ritnand") (Group D).   The fourth highest bid was $16,500,000 submitted by Island Estate Group LLC ("Island") (Group E).  The fifth highest bid was $14,600,000 submitted by VPLLC (Group B).  Each of the three highest bids was made by an Educational End User.  Each of the fourth and fifth highest

4

bids was made by a Redeveloper.  A copy of the transcript of the Auction is attached hereto as Exhibit 2.

18.     Prior to the commencement of the Auction, each Qualified Bidder provided proof of financial wherewithal to close on their initial offer as a condition to become a Qualified Bidder pursuant to the Bidding Procedures Order.  However, given the results described above, which were significantly higher than the initial bid at the Auction of $9,000,000, the Debtor and interested parties were required to consider, among other things, the financial wherewithal of the top bidders to consummate the sale on their respective bids and the likelihood of timely closing on their respective bids.

19.     At that time, representatives of the Debtor, the Campus Agents, representatives of ACA Financial Guaranty Corporation and the Creditors' Committee met privately with representatives of each of the three (3) highest bids.  In those private meetings, the Debtor requested from each of the top three bidders proof of financial wherewithal to close on their respective bids. The Debtor also requested, consistent with the Bidding Procedures Order, that each of the three (3) highest bids supplement their respective deposits in order that they might be considered as the highest and best bid.

20.     On April 6, 2017, the Debtor, after extensive consideration by and consultation with representatives of the Creditors' Committee and the DIP Lenders, determined to close the Auction formally and designated Group C (Princeton Education Center LLC) to be the successful bidder (the "Successful Bidder") and Group A (NCF Capital Limited) to be the backup bidder (the "Backup Bidder"), subject to confirmation by the Board of Trustees of Dowling College (the "Board").

21.    The Purchase Agreement between the Debtor and the Successful Bidder is limited in scope to the real property, fixtures and improvements which comprise the Oakdale Campus, and certain ancillary rights tied to the real property in the nature of insurance and warranty.  The sale to the Successful Bidder specifically excludes the Furniture and Equipment (as defined in the Purchase Agreement).  The Debtor contemplates completing separate sale(s) and/or removal of the Furniture and Equipment from the Oakdale Campus no later than July 31, 2017 and the Purchase Agreement contemplates the same.  In addition, the closing shall take place within thirty (30) days after satisfaction or waiver of all conditions to the obligations of the Debtor and the Successful Bidder.    Subject to Court approval, the Debtor and the Successful Bidder contemplate a closing taking place during the month of May, 2017.

22.    On April 6, 2017, the Board convened by telephone and approved a resolution which authorized and approved me to execute the Purchase Agreement with the Successful Bidder and to execute any and all related closing documents in order to effectuate the sale of the Oakdale Campus to the Successful Bidder if approved by the Court.

E.    *Debtor's Business Judgment*

23.    I believe that the Sale represents the sound business judgment of the Debtor and is appropriate in light of the facts and circumstances set forth herein.  After an extensive marketing process and highly competitive Auction, I believe that the Sale to the Successful Bidder is the highest and best bid because, among other things, (i) the purchase price was the highest among the Qualified Bidders and (ii) the Successful Bidder appears eager and able to close the transaction within the contemplated time frame.  I believe it is important that the proposed Sale be closed as quickly as reasonably possible to avoid continuing losses and maximize the net asset value for creditors of this estate.  In my view, the proposed Sale to the Successful Bidder accomplishes this.

6

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is try and correct to the best of my knowledge, information and belief.

Dated:  April 7, 2017

/s/ Robert S. Rosenfeld

Robert S. Rosenfeld
Chief Restructuring Officer