# AFFIDAVIT

STATE OF TEXAS )
) ss:
CITY AND COUNTY OF DALLAS)

I, Jeb Smith, being duly sworn, depose and say that I am the Advertising Clerk of the Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general circulation throughout the United States, and that the notice attached to this Affidavit has been regularly published in THE WALL STREET JOURNAL for New York distribution for

1 insertion(s) on the following date(s):

APR-15-2017;

ADVERTISER: DOWLING COLLEGE;

and that the foregoing statements are true and correct to the best of my knowledge.

Sworn to before me this
17 day of April    2017

_____
Notary Public



TOBY A. BREITEN
Notary Public
STATE OF TEXAS
My Comm. Exp. April 24, 2018

IN THE DOWLING COLLEGE, f/d/b/a DOWLING INSTITUTE, f/d/b/a DOWLING : Chapter 11
COLLEGE ALUMNI ASSOCIATION, f/d/b/a CECOM, a/k/a DOWLING COLLEGE, INC., : Case No.
Debtor. : 16-75545 (REG)

## NOTICE OF INTENT TO DISPOSE OF PROPERTY

Dowling College (the "<u>College</u>" or the "<u>Debtor</u>") is a not-for-profit educational corporation and registered 501(c)(3) corporation. Historically, Dowling operated as an independent comprehensive educational institution.

On November 29, 2016 (the "<u>Petition Date</u>"), Dowling commenced the instant case (the "<u>Bankruptcy Case</u>") by filing a voluntary petition in the United States Bankruptcy Court for the Eastern District of New York (the "<u>Bankruptcy Court</u>") for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and an order for relief was simultaneously entered.

As of the Petition Date, certain items of personal property remained in Dowling's possession which may be owned by third parties. Dowling refers to those items as non-estate property ("<u>NEP</u>") because they do not constitute property of its estate in accordance with the meaning of section 541 of the Bankruptcy Code, and this includes personal property that may be deemed restricted because the personal property was donated to the Debtor subject to donor-imposed restrictions (a "<u>Restricted Asset</u>").

On April 12, 2017, the Bankruptcy Court entered an Order authorizing Dowling to dispose of certain NEP (other than Restricted Assets) remaining in its possession pursuant to certain procedures set forth therein. Any person or entity that believes its personal property is in the possession of Dowling and desires to retrieve such personal property must follow the property disposition procedures described below. **For the avoidance of doubt, there is no requirement or obligation to retrieve personal property if any party does not wish to obtain it and is prepared to allow Dowling potentially either sell, abandon or destroy the same. Please note that after a certain specified period of time, as set forth below, all unclaimed NEP (other than Restricted Assets) may be sold, abandoned or destroyed.**

**1. HOW TO FILE A CLAIM OR OTHER ENTITLEMENT TO NEP, INCLUDING A RESTRICTED ASSET.** To assert a claim or other entitlement to NEP, including a Restricted Asset, an interested party must complete and return a Property Request Form which can be found at http://cases.gardencitygroup.com/dco or by contacting the Debtor's counsel at: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York, 10036, Tel: (212) 972-3000, Fax: (212) 972-2245.

Property Request Forms must be received no later than June 14, 2017. Such forms can be submitted (i) electronically by utilizing the Online Portal that can be accessed at the Debtor's Court appointed Claims Agent's website: http://cases.gardencitygroup.com/dco or (ii) by mailing the form to: Dowling College Case Administration, c/o GCG, P.O. Box 10342, Dublin, OH 43017-5542.

To the extent a Property Request Form is timely received and to the extent the claimed NEP (other than Restricted Assets) may be located by the Debtor and the Debtor in its reasonable business judgment is satisfied with respect to the requesting party's ownership of or entitlement to the NEP, all information concerning the location of the NEP will be made available and such party will be provided an opportunity to obtain the NEP and the same will not be disposed of or abandoned by the Debtor if adequate arrangements are made with the Debtor by the owner of the NEP within forty-five (45) days following timely receipt of the Property Request Form.

**2. DISPUTED OWNERSHIP OF NEP.** To the extent any dispute arises with respect to (a) ownership or entitlement to certain NEP (other than Restricted Assets), or (b) other matters related to a Property Request, the Debtor, in consultation with the Committee and debtor-in-possession lenders, will attempt to resolve such dispute among the interested parties in good faith and without the need for Bankruptcy Court intervention. If after good faith efforts among the parties to a dispute, such dispute continues and any party expresses to the Debtor a desire for hearing before the Bankruptcy Court, the Debtor shall schedule a hearing on not less than 20 days' notice to the interested parties so that the Bankruptcy Court may consider and resolve the dispute. All persons wishing to be heard related to the noticed dispute must file and serve papers upon counsel to the Debtor, Committee, and debtor-in-possession lenders no later than 10 days prior to the established hearing date. The Debtor, the Committee, and/or the debtor-in-possession lenders shall have an opportunity to respond by filing and serving papers not less than 3 days prior to the established hearing date.

**3. CONSEQUENCES OF FAILURE TO REQUEST AN OPPORTUNITY TO RETRIEVE NEP.** FOR THAT NEP (OTHER THAN RESTRICTED ASSETS) FOR WHICH NO PROPERTY REQUEST FORM IS TIMELY RECEIVED, THE BANKRUPTCY COURT HAS GRANTED THE DEBTOR THE AUTHORITY TO SELL, ABANDON OR DESTROY SUCH NEP. ACCORDINGLY, NEP MAY BE SOLD, ABANDONED OR DESTROYED IF YOU CHOOSE NOT TO ACT.

**THERE IS NO OBLIGATION TO RETRIEVE NEP THAT IS UNWANTED.**

**4. RESTRICTED ASSETS PROCEDURE.** To the extent a Property Request Form relates to a Restricted Asset, *cy pres* relief (or similar proceeding under applicable non-bankruptcy law) will be needed. The Debtor has ceased operations and, therefore, to comply with restrictions in gift instruments it will be necessary to redirect the gift to another recipient, modify its specific purpose or otherwise modify the restriction.

Dated: New York, New York, April 12, 2017

**BY ORDER OF THE COURT**

Klestadt Winters Jureller Southard & Stevens, LLP, Counsel for Dowling College, Debtor and Debtor in Possession, 200 West 41st Street, 17th Floor, New York, New York 10036, (212) 972-3000

## WEEKEND INVESTOR

# Your Tax Dollars at Work: Social, Troops and the Rest



**TAX REPORT**
**LAURA SAUNDERS**

With April 18 nearly here, U.S. taxpayers are likely asking themselves: Where exactly are my tax dollars going?

To answer the question, here is a "Taxpayer Receipt" showing how each $100 of taxes was spent, both for 2016 and five years earlier. It was prepared by the Committee for a Responsible Federal Budget, a nonpartisan and nonprofit group in Washington that monitors federal spending. The group's three chairmen are Republican Mitch Daniels, Democrat Leon Panetta and independent Tim Penny.

Looking at the list of expenditures, it is clear why some say the U.S. is a giant insurance company with an army. Half of all spending goes for Social Security benefits and health programs such as Medicare and Medicaid, while another 20% is for defense and military benefits.

The rest is for spending on other agencies and programs, plus interest on the national debt.

In the past five years, the shares of spending for Social Security, Medicare and Medicaid have each risen more than 15%.

Social Security and Medicare increased largely due to the aging of the population, while the increase in Medicaid comes from aging, growth in health-care costs and expanded eligibility under the Affordable Care Act, also known as Obamacare.

Over the same period, the share devoted to national defense dropped 22%, in part because Congress reduced war spending and capped other military spending in 2011, according to Marc Goldwein, a senior staffer on the committee.

The tax figures include all federal revenue.

The individual income tax provided nearly half the total (47%), while payroll taxes kicked in about one-third (34%).

The rest of it came from corporate income taxes (9%) and other levies such as customs duties and excise taxes (9%).

One important figure isn't in the total: the additional amount per $100 of taxes needed to cover the deficit. This amount was $35.70 in 2011 and $15.24 in 2016. The deficit figure for 2011 was much higher because the country was still emerging from the recession, so tax receipts were lower and stimulus costs were higher.

This budget snapshot shows the dilemmas faced by President Trump and Congress.

Retiring boomers expect both Social Security and Medicare benefits, so any cuts to those programs will be unpopular. At current projections, the Social Security trust fund will be exhausted in 17 years because the program is underfunded by at least 20%.

President Trump's "skinny" budget, released in March, showed deep cuts to some agencies, but it only tackled discretionary spending, leaving out 70% of total spending.

"The budget is far out of balance," says Mr. Goldwein. "Cuts will have to come from popular programs, because that's where the money is being spent."



### Uncle Sam's Spending
Allocation of $100 paid in federal taxes, 2016 vs. 2011

| Item | 2016 allocation | 2011 | Change |
|---|---:|---:|---:|
| Social Security | $23.61 | $20.18 | ▲17.0% |
| Medicare | 15.26 | 13.26 | ▲15.1 |
| National defense | 15.24 | 19.62 | ▼22.3 |
| Medicaid | 9.55 | 7.62 | ▲25.4 |
| Interest | 6.25 | 6.14 | ▲1.8 |
| Veterans | 4.58 | 3.54 | ▲29.5 |
| Civilian federal retirement | 2.57 | 2.31 | ▲11.3 |
| Transportation | 2.39 | 2.58 | ▼7.6 |
| Refundable credits* | 2.21 | 2.84 | ▼22.2 |
| Education | 2.08 | 1.98 | ▲5.3 |
| Other | 16.26 | 19.93 | ▼18.4 |

*Including the American Opportunity Credit (for college), the Child Tax Credit and the Earned-Income Credit (for the working poor)
Source: Committee for a Responsible Federal Budget
THE WALL STREET JOURNAL.

CHRISTOPHE VORLET

## INVEST
*Continued from page B1*

"I was surprised both by how large and how common these differences are," says Mr. Petajisto. Even if you trade only a few times a year, "your ETF portfolio could easily be costing you 1% or 2%, and you might not even know it."

He estimates that the hidden costs of trading ETFs exceed $18 billion annually, a trifle in the trillions of dollars of combined trading in these funds, but real money to those who leave it on the table.

These costs lurk in the normally tiny space between the market price of an ETF and the per-share value of the stocks, bonds and other assets it holds. The market price is the number most commonly quoted, including by most brokers; the value of the underlying assets is much less widely available. So the gap between the two numbers is hard for most investors to see.

A broker making a market in an ETF will buy up a fixed amount of the portfolio's underlying assets in proportions matching their weights within the fund. The ETF's manager then creates new shares in exchange for that equal amount of its holdings. Normally, the fund's new shares and the basket of its assets will be almost identical in price. But fees and transaction costs aren't zero, and it can take time to round up securities that rarely trade, so the prices seldom match to the penny. Think of all this as a single grain of sand in the gears that manufacture an ETF.

During turbulent markets or in thinly traded securities such as municipal bonds or stocks in developing nations, that swap may come off at widely divergent prices. That is a cost of putting illiquid assets into a liquid fund.

When enthusiasm pushes an ETF's share price above the value of its holdings, that is called a premium; when the fund's shares trade for less than its underlying assets are worth, that's a discount.

Before trading, check the fund's "intraday indicative value," a real-time estimate of what its holdings are worth. You can do that on Yahoo Finance by entering the fund's ticker followed by "-IV" or view it on Morningstar.com's quote page for each ETF.

Right now, with markets extraordinarily calm, these costs are minimal. Only about two dozen out of nearly 2,000 ETFs in the U.S. have traded at average premiums or discounts of 1% or more in the past month, according to data from ETF.com. But that is unusual—and probably unsustainable.

Big, popular funds such as iShares Core U.S. Aggregate Bond, SPDR S&P 500 and Vanguard Total Stock Market ETF normally trade within a few hundredths of a percentage point of their underlying value.

*Antti Petajisto reckons the hidden costs of trading ETFs exceed $18 billion annually.*

To trade, set a limit order—a price above which you will not buy or below which you won't sell—within a penny or two of indicative value.

If you invest through a financial adviser, make sure he or she uses limit orders and always checks indicative value before trading, urges Samuel Lee of SVRN Asset Management in Chicago.

Avoid volatile days, says Mr. Petajisto, when premiums and discounts can shoot from fractions of a percentage point to 5% or more.

Typically, several ETFs from different managers invest in similar or identical assets. Track them over time so you don't end up buying one at a big premium.

Finally, favor widely traded ETFs that invest in big, broad markets. The narrower the fund, the wider those hidden costs tend to be. If you must buy a specialized fund, monitor the gap between price and value to see if you can grab it at a discount.

ADVERTISEMENT

# Legal Notices
To advertise: 800-366-3975 or WSJ.com/classifieds

### NOTICE OF SALE

**NOTICE OF PUBLIC SALE** • Property to be Sold
Public Sale No. 1: Wednesday, April 19, 2017, 9:30 a.m. EDT
Asset Type for Lots 1-5: ABS CDO. Asset Type for Lots 6-12: CRE CDO. Asset Type for Lots 13-14: CMBS. Asset Type for Lot 15: Prime / Alt-A. Asset Type for Lots 16-28: Subprime

| Lot # | CUSIP | Issue | Original Face |
|---|---|---|---|
| 1 | 124598CAC1 | CBCL 12A C | 4,000,000 |
| 2 | 124598FAE0 | CBCL 13A C | 2,000,000 |
| 3 | 124670AC4 | CBCL 15A C | 2,800,000 |
| 4 | 25454VAE9 | DGCDO 2005-1A D | 2,500,000 |
| 5 | G8659QAC6 | TABS 2005-2X D | 5,000,000 |
| 6 | 385000AH7 | GKKRE 2005-1A G | 2,000,000 |
| 7 | 385000AJ3 | GKKRE 2005-1A H | 3,000,000 |
| 8 | 53944PAL6 | LNR 2005-1A FFL | 5,000,000 |
| 9 | 62940PAE7 | NSTAR 2006-6A E | 2,750,000 |
| 10 | G7550UAE5 | RFCCD 2005-2X C | 1,000,000 |
| 11 | 982512AE5 | WWCAP 2005-1A E | 4,000,000 |
| 12 | 982512AF2 | WWCAP 2005-1A F | 2,500,000 |
| 13 | 12667XAL0 | CWCI 2005-1A E | 1,000,000 |
| 14 | 12667XAN6 | CWCI 2005-1A F | 2,875,000 |
| 15 | 36242D4C4 | GSAA 2005-6 B2 | 1,000,000 |
| 16 | 04541GTS1 | ABSHE 2005-HE6 M8 | 2,000,000 |
| 17 | 004375FE6 | ACCR 2006-1 M8 | 3,500,000 |
| 18 | 004375FF3 | ACCR 2006-1 M9 | 3,538,000 |
| 19 | 004380AN4 | ACCR 2007-1 M5 | 1,000,000 |
| 20 | 17307G2V9 | CMLTI 2006-WFH1 M8 | 669,000 |
| 21 | 362341CG2 | GSAMP 2005-SD2 B1 | 1,000,000 |
| 22 | 362341CH0 | GSAMP 2005-SD2 B2 | 2,400,000 |
| 23 | 46626LES5 | JPMAC 2005-OPT2 M7 | 1,500,000 |
| 24 | 456666JC7 | MABS 2005-WF1 M8 | 1,534,000 |
| 25 | 57643LKE5 | MABS 2005-WF1 M9 | 1,000,000 |
| 26 | 74919XAH5 | RAAC 2007-SP2 M2 | 2,000,000 |
| 27 | 86359DLT2 | SASC 2005-WF3 M8 | 1,000,000 |
| 28 | 86359QLU9 | SASC 2005-WF3 M9 | 2,000,000 |

Public Sale No. 2: Wednesday, April 19, 2017, 12:00 p.m. EDT
Asset Type for all Lots: Zero Factor - RMBS

| Lot # | CUSIP | Issue | Original Face |
|---|---|---|---|
| 1 | 04541GUW0 | ABSHE 2005-HE8 M9 | 4,000,000 |
| 2 | 04541GAK3 | ABSHE 2006-HE3 M7 | 2,000,000 |
| 3 | 04544QAP2 | ABSHE 2006-HE7 M9 | 5,000,000 |
| 4 | 04544TAN1 | ABSHE 2007-HE2 M6 | 1,150,000 |
| 5 | 004421XP3 | ACE 2006-ASP2 M8 | 2,000,000 |
| 6 | 004421XQ1 | ACE 2006-ASP2 M9 | 1,618,000 |
| 7 | 004421VA8 | ACE 2006-N1 M7 | 2,000,000 |
| 8 | 004421VB6 | ACE 2006-N1 M8 | 2,000,000 |
| 9 | 004421VC4 | ACE 2006-N1 M9 | 1,500,000 |
| 10 | 07399MAP2 | BSABS 2006-HE9 M9 | 2,700,000 |
| 11 | 144539AP8 | CARR 2006-NC5 M9 | 1,900,000 |
| 12 | 17307G9A3 | CMLTI 2005-OPT4 M10 | 1,000,000 |
| 13 | 17307G2W7 | CMLTI 2006-WFH1 M9 | 1,300,000 |
| 14 | 173090AP9 | CMLTI 2006-WFH3 M10 | 1,000,000 |
| 15 | 173090AN4 | CMLTI 2006-WFH3 M9 | 3,271,000 |
| 16 | 12668ATF2 | CWALT 2005-J12 2B1 | 1,000,000 |
| 17 | 12668ATG0 | CWALT 2005-J12 2B2 | 2,500,000 |
| 18 | 23243LAN2 | CWL 2006-14 M9 | 1,800,000 |
| 19 | 12666BAP0 | CWL 2006-22 M9 | 2,900,000 |
| 20 | 12666BAN5 | CWL 2006-23 M9 | 3,000,000 |
| 21 | 23243HAP6 | CWL 2006-24 M9 | 1,500,000 |
| 22 | 126670WK0 | CWL 2006-3 M8 | 6,000,000 |

| 23 | 126670YS1 | CWL 2006-5 B | 1,500,000 |
|---|---|---|---|
| 24 | 126670YR3 | CWL 2006-5 M8 | 2,750,000 |
| 25 | 126670ZT8 | CWL 2006-6 M6 | 2,000,000 |
| 26 | 126670ZU5 | CWL 2006-6 M7 | 3,000,000 |
| 27 | 126669AN8 | CWL 2006-BC5 M8 | 1,500,000 |
| 28 | 12666SAP3 | CWL 2006-BC5 M9 | 1,000,000 |
| 29 | 12666SAP3 | CWL 2006-BC1 M8 | 1,750,000 |
| 30 | 29256RAN4 | ECR 2005-3 B | 2,000,000 |
| 31 | 29256PAM6 | ECR 2005-3 M8 | 2,500,000 |
| 32 | 29256PBE3 | ECR 2005-4 M9 | 3,500,000 |
| 33 | 32027NWU1 | FFML 2005-FF10 M4 | 3,000,000 |
| 34 | 32027NWX5 | FFML 2005-FF10 M7 | 5,000,000 |
| 35 | 36362985S5 | FFML 2005-FF8 M5 | 2,493,000 |
| 36 | 32027NUU3 | FFML 2005-FF7 M9 | 1,500,000 |
| 37 | 362341QW2 | FFML 2005-FF8 B2 | 2,000,000 |
| 38 | 36341QX0 | FFML 2005-FF8 B3 | 1,225,000 |
| 39 | 32027NXK2 | FFML 2005-FFH4 M7 | 2,161,000 |
| 40 | 32027NXL0 | FFML 2005-FFH4 M8 | 2,000,000 |
| 41 | 32028KAQ9 | FFML 2006-FF17 M9 | 3,500,000 |
| 42 | 32027NAB4 | FFML 2006-FF2 M5 | 1,496,000 |
| 43 | 32027NA92 | FFML 2006-FF2 M6 | 3,000,000 |
| 44 | 35729PY5 | FHLT 2005-C M8 | 2,000,000 |
| 45 | 35729PKZ2 | FHLT 2005-C M9 | 1,000,000 |
| 46 | 362341PG8 | GSAA 2005-11 B2 | 2,000,000 |
| 47 | 362341AU6 | GSAA 2005-15 B1 | 1,500,000 |
| 48 | 362341GT0 | GSAA 2005-8 B3 | 1,000,000 |
| 49 | 443288A01 | HASC 2006-HE2 M9 | 1,000,000 |
| 50 | 40430HDM7 | HASC 2006-OPT1 M8 | 2,466,000 |
| 51 | 40430HDN5 | HASC 2006-OPT1 M9 | 2,305,000 |
| 52 | 43709QAQ9 | HEAT 2006-8 B1 | 3,650,000 |
| 53 | 456606JC7 | INABS 2005-C M9 | 1,800,000 |
| 54 | 456606L9 | INABS 2006-B M8 | 2,450,000 |
| 55 | 43709AN7 | INABS 2006-D M9 | 3,000,000 |
| 56 | 46626LAN0 | JPMAC 2005-OPT1 M9 | 3,000,000 |
| 57 | 46629QBF2 | JPMAC 2006-FRE2 M9 | 2,000,000 |
| 58 | 46626LFV7 | JPMAC 2006-FRE1 M8 | 2,000,000 |
| 59 | 46626LFU9 | JPMAC 2006-FRE1 M9 | 4,000,000 |
| 60 | 46626LH12 | JPMAC 2006-FRE2 M8 | 1,000,000 |
| 61 | 46626LHK9 | JPMAC 2006-FRE2 M9 | 1,064,000 |
| 62 | 54251JPE8 | LBMLT 2005-3 M8 | 1,000,000 |
| 63 | 54251APF5 | LBMLT 2005-3 M9 | 4,000,000 |
| 64 | 54251YAQ1 | LBMLT 2006-10 M10 | 1,000,000 |
| 65 | 54251YAP3 | LBMLT 2006-10 M9 | 4,566,000 |
| 66 | 54251I4U6 | LBMLT 2006-2 M8 | 3,000,000 |
| 67 | 542514UD4 | LBMLT 2006-2 M9 | 4,000,000 |
| 68 | 54251UPI | LBMLT 2006-8 M9 | 3,000,000 |
| 69 | 54251WAQ5 | LBMLT 2006-9 M10 | 1,250,000 |
| 70 | 54251WAP7 | LBMLT 2006-9 M9 | 3,000,000 |
| 71 | 57645666G2 | MABS 2007-NCW M5 | 2,750,000 |
| 72 | 61570A93 | MSAC 2006-HE8 B3 | 4,661,000 |
| 73 | 61750SAQ5 | MSAC 2006-HE8 M9 | 4,000,000 |
| 74 | 61744CAO6 | MSAC 2006-NC2 B1 | 4,359,000 |
| 75 | 61744CFDO | MSAC 2006-NC2 B2 | 2,000,000 |
| 76 | 61744BS61G8 | MSAC 2006-NC2 M8 | 1,000,000 |
| 77 | 61744C2N9 | MSAC 2006-NC3 B3 | 1,000,000 |
| 78 | 61744CVX8 | MSHEL 2006-2 B2 | 2,000,000 |
| 79 | 61744CYV6 | MSHEL 2006-2 B3 | 1,500,000 |
| 80 | 64352VN83 | NCHET 2005-4 M8 | 3,500,000 |
| 81 | 64352VNC1 | NCHET 2005-4 M9 | 3,000,000 |
| 82 | 64352VNS6 | NCHET 2005-B M8 | 4,000,000 |

| 83 | 64352VPW5 | NCHET 2005-D M7 | 5,000,000 |
|---|---|---|---|
| 84 | 66987XHE8 | NHEL 2005-3 M8 | 3,000,000 |
| 85 | 66987XH7F5 | NHEL 2005-3 M9 | 1,500,000 |
| 86 | 66987WDL8 | NHEL 2005-A M7 | 3,000,000 |
| 87 | 68389FJR6 | OOMLT 2005-4 M9 | 1,000,000 |
| 88 | 68389FLA0 | OOMLT 2006-1 M10 | 1,000,000 |
| 89 | 68389FKZ6 | OOMLT 2006-1 M9 | 3,000,000 |
| 90 | 73316PHA1 | POPLR 2005-5 MV6 | 1,000,000 |
| 91 | 74923BAN1 | RAMP 2006-EFC2 M9 | 1,250,000 |
| 92 | 81375WFM3 | SABR 2005-FR4 B2 | 3,000,000 |
| 93 | 81375WFZ4 | SABR 2005-FR5 B3 | 4,300,000 |
| 94 | 81375WGY6 | SABR 2005-OP2 B2 | 2,000,000 |
| 95 | 81375WGZ3 | SABR 2005-OP2 B3 | 1,000,000 |
| 96 | 81375WJP2 | SABR 2006-OP1 B3 | 1,750,000 |
| 97 | 86358EUG9 | SAIL 2005-6 M7 | 1,000,000 |
| 98 | 86376FR0 | SASC 2006-WF1 M9 | 6,595,000 |
| 99 | 86361EAP6 | SASC 2006-WF3 M9 | 1,000,000 |
| 100 | 81879MAM1 | SGMS 2005-OPT1 M9 | 1,473,000 |
| 101 | 83611MMF2 | SVHE 2006-OPT1 M7 | 1,585,000 |
| 102 | 83611MMG0 | SVHE 2006-OPT1 M8 | 1,000,000 |
| 103 | 83611MLT3 | SVHE 2006-OPT1 M9 | 1,500,000 |
| 104 | 83611MMT2 | SVHE 2006-OPT2 M7 | 2,000,000 |
| 105 | 83611MMU9 | SVHE 2006-OPT2 M8 | 2,000,000 |
| 106 | 83611MMV7 | SVHE 2006-OPT2 M9 | 1,000,000 |
| 107 | 94769WAG8 | WEBS 2006-1A A3L | 6,000,000 |
| 108 | 93363XAN3 | WMHE 2007-HE4 M8 | 1,000,000 |
| 109 | 93363XAP8 | WMHE 2007-HE4 M9 | 1,000,000 |
| 110 | 92977YBF7 | WMLT 2005-WMC1 M9 | 2,000,000 |

Dock Street Capital Management LLC, on behalf of The Bank of New York Mellon, in its capacity as trustee (the "Trustee"), will be conducting sales of certain collateral pledged to the Trustee. The Collateral (as defined herein) will be offered and sold by the Trustee without recourse, representations or covenants, express or implied, being made by the Trustee with respect to the Collateral (except as to title to the Collateral) or with respect to any other information then in the Trustee's possession, including without limitation any offering circular or other financial information. **Location of Sale.** The sales will be held at 575-B Riverside Avenue, Westport, CT 06880. **Additional Information.** Please be advised that the sale of the securities listed above may be made only to the best bidder who is also a qualified bidder and will be subject to a reserve level. For additional information, including with respect to qualified bidder status, and to obtain copies of an Investor Representation and Confidentiality Agreement, contact David Crowle or Jeffrey Holtman by email at dcrowle@dockstreetcap.com or jholtman@dockstreetcap.com, respectively, by phone at (212) 457-8268, by facsimile at (212) 457-8269 or by mail addressed to 575-B Riverside Avenue, Westport, CT 06880. **Disclaimer.** The Trustee is authorized at such sales, if the Trustee deems it advisable or is required by applicable law to do so: (i) to restrict the prospective bidders or purchasers of the above identified security (the "Collateral") to be sold to those who will represent and agree that they are purchasing for their own account for investment and not with a view to the distribution or resale of any of such assets, (ii) to verify that each certificate for the security to be sold bears a legend substantially to the effect that such security has not been registered under the Securities Act of 1933, as amended, and may not be disposed of in violation of the provisions of said Act, (iii) to disclaim and to refuse to give any warranty (other than as to title), and (iv) to impose such other limitations or conditions in connection with any such sale as the Trustee deems necessary or advisable.

### BANKRUPTCIES

**UNITED STATES BANKRUPTCY COURT, EASTERN DISTRICT OF NEW YORK**
In re DOWLING COLLEGE, f/d/b/a DOWLING INSTITUTE, f/d/b/a DOWLING COLLEGE ALUMNI ASSOCIATION, f/d/b/a CECOM, a/k/a DOWLING COLLEGE, INC., Debtor.
Chapter 11
Case No.: 16-75545 (REG)

**NOTICE OF INTENT TO DISPOSE OF PROPERTY**
Dowling College ("Dowling" or the "Debtor") is a not-for-profit educational corporation and registered 501(c)(3) corporation. Historically, Dowling operated as an independent comprehensive educational institution.
On November 29, 2016 (the "Petition Date"), Dowling commenced the instant case (the "Bankruptcy Case") by filing a voluntary petition in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and an order for relief was simultaneously entered.
As of the Petition Date, certain items of personal property remained in Dowling's possession which may be owned by third parties. Dowling refers to those items as non-estate property ("NEP") because they do not constitute property of its estate in accordance with the meaning of section 541 of the Bankruptcy Code, and this includes personal property that may be deemed restricted because the personal property was donated to the Debtor subject to donor-imposed restrictions (a "Restricted Asset").
On April 12, 2017, the Bankruptcy Court entered an Order authorizing Dowling to dispose of certain NEP (other than Restricted Assets) remaining in its possession pursuant to certain procedures set forth therein. Any person or entity that believes its personal property is in the possession of Dowling and desires to retrieve such property must follow the property disposition procedures described below. For the avoidance of doubt, with respect to any personal property of any party does not wish to obtain it and is prepared to have Dowling potentially either sell, abandon or destroy the same. Please note that after a certain specified period of time, as set forth below, all unclaimed NEP (other than Restricted Assets) may be sold, abandoned or destroyed.
**1. HOW TO FILE A CLAIM OR OTHER ENTITLEMENT TO NEP, INCLUDING A RESTRICTED ASSET.** To assert a claim or other entitlement to NEP, including a Restricted Asset, an interested party must complete and return a Property Request Form which can be found at http://cases.gardencitygroup.com/dco or by contacting the Debtor's counsel at: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Tel: (212) 972-3000, Fax: (212) 972-2245.
Property Request Forms must be received no later than June 14, 2017. Such forms can be submitted (i) electronically by utilizing the Online Portal that can be accessed at the Debtor's Court appointed Claims Agent's website: http://cases.gardencitygroup.com/dco or (ii) by mailing the form to Dowling College Case Administration, c/o GCG, P.O. Box 10342, Dublin, OH 43017-5542.
To the extent a Property Request Form is timely received and to the extent the claimed NEP (other

than Restricted Assets) may be located by the Debtor and the Debtor in its reasonable business judgment is satisfied with respect to the requesting party's ownership of or entitlement to the NEP, all information concerning the location of the NEP will be made available and such party will be provided an opportunity to obtain the NEP and the same will not be disposed of or abandoned by the Debtor if adequate arrangements are made with the Debtor by the owner of the NEP within forty-five (45) days following timely receipt of the Property Request Form.

**2. DISPUTED OWNERSHIP OF NEP.** To the extent any dispute arises with respect to (a) ownership or entitlement to certain NEP (other than Restricted Assets), or (b) other matters related to a Property Request, the Debtor, in consultation with the Committee and debtor-in-possession lenders, will attempt to resolve such dispute among the interested parties in good faith and without the need for Bankruptcy Court intervention. If after good faith efforts among the parties to a dispute, such dispute continues and any party expresses to the Debtor a desire for hearing before the Bankruptcy Court, the Debtor shall schedule a hearing on not less than 20 days' notice to the interested parties so that the Bankruptcy Court may consider and resolve the dispute. All persons wishing to be heard related to the noticed dispute must file and serve papers upon counsel to the Debtor, Committee, and debtor-in-possession lenders no later than 10 days prior to the established hearing date. The Debtor, the Committee, and the debtor-in-possession lenders shall have an opportunity to respond by filing and serving papers not less than 3 days prior to the established hearing date.

**3. CONSEQUENCES OF FAILURE TO REQUEST AN OPPORTUNITY TO RETRIEVE NEP.** FOR THAT NEP (OTHER THAN RESTRICTED ASSETS) FOR WHICH NO PROPERTY REQUEST FORM IS TIMELY RECEIVED, THE BANKRUPTCY COURT HAS GRANTED THE DEBTOR THE AUTHORITY TO SELL, ABANDON OR DESTROY SUCH NEP. ACCORDINGLY, NEP MAY BE SOLD, ABANDONED OR DESTROYED IF YOU CHOOSE NOT TO ACT.
**THERE IS NO OBLIGATION TO RETRIEVE NEP THAT IS UNWANTED.**

**4. RESTRICTED ASSETS PROCEDURE.** To the extent a Property Request Form relates to a Restricted Asset, cy pres relief (or other similar proceeding under applicable non-bankruptcy law) will be needed. The Debtor has ceased operations and, therefore, to comply with restrictions in gift instruments it will be necessary to redirect the gift to another recipient, modify its specific purpose or otherwise modify the restriction.
Dated: New York, New York, April 12, 2017
**BY ORDER OF THE COURT**
Klestadt Winters Jureller Southard & Stevens, LLP, Counsel for Dowling College, Debtor and Debtor in Possession, 200 West 41st Street, 17th Floor, New York, New York 10036, (212) 972-3000

### NOTICE OF SALE

**NOTICE OF PUBLIC SALE** • Property to be Sold
Portfolio - Mixed Bag
**Bid Deadline: April 20th, 2017 at 10.00 a.m. (Eastern time)**

| # | ISIN | Security | Original Principal Amount |
|---|---|---|---|
| 1 | US00432CDE84 | ACCSS 2006-1 B | $7,000,000.00 |
| 2 | US49326RCK08 | ASLT 2005-A 2B | $8,000,000.00 |
| 3 | US49327HAHB4 | KSLT 2006-A 2B | $7,000,000.00 |
| 4 | US63543MAF05 | NCSLT 2006-2 B | $800,000.00 |
| 5 | US63543MAGP7 | NCSLT 2006-2 C | $600,000.00 |
| 6 | US63543VAH69 | NCSLT 2006-3 C | $5,400,000.00 |
| 7 | US63543VAJ26 | NCSLT 2006-3 D | $5,000,000.00 |
| 8 | US63543LAQ05 | NCSLT 2007-2 C | $1,400,000.00 |
| 9 | US78443CBR43 | SLMA 2004-B C | $5,000,000.00 |
| 10 | US78443CCB42 | SLMA 2005-B B | $5,000,000.00 |
| 11 | US80986W4AD8 | EFOF 2007-1A C | $5,000,000.00 |
| 12 | US72799AC69 | PRSP 2006-1X C | $4,000,000.00 |
| 13 | US20047RABB2 | COMM 2007-FL14 J | $3,494,000.00 |
| 14 | US204343A48D | GNHRE 2006-1X C | $2,500,000.00 |
| 15 | US G7360PAJ50 | RTPF 2007-2X G | $5,000,000.00 |
| 16 | US30846D141 | MTP 2007-2X AC | $2,000,000.00 |
| 17 | US01158RAD55 | ALESC 7X B | $3,000,000.00 |
| 18 | US G0690QAD96 | ATTIN 2006-2X C | $4,500,000.00 |
| 19 | US G0690QAF45 | ATTIN 2006-2X F1 | $3,000,000.00 |
| 20 | US G0690QAE69 | ATTIN 2006-2X E | $3,000,000.00 |
| 21 | US G2865INAA30 | BBN 2006-1X A1A | $4,500,000.00 |
| 22 | US G2865GPAE72 | TRBN 2006-7A XL | $10,000,000.00 |
| 23 | US80911YAB23 | TRAP 2006-11X A2 | $5,000,000.00 |
| 24 | US90112YAB23 | TRAP 2006-11X A2 | $5,000,000.00 |
| 25 | US25224AA065 | ARESE 2007-1X D | $4,250,000.00 |
| 26 | US02565394034 | AVOCA V-X E | $5,000,000.00 |
| 27 | US02565339035 | AVOCA V-X F | $3,000,000.00 |
| 28 | US02562896375 | DUCHS VI-X E | $7,000,000.00 |
| 29 | US02562896961 | DUCHS VI-X F | $5,000,000.00 |
| 30 | US02612259661 | EUROC V-X D | $5,000,000.00 |
| 31 | US02612227323 | EUROC V-X E | $3,000,000.00 |
| 32 | US02681022825 | EUROC V-X D | $5,000,000.00 |
| 33 | US02681011126 | REGP 1X E | $7,000,000.00 |
| 34 | US02603035171 | THESE 2006-1X D | $4,000,000.00 |
| 35 | US02603143080 | HHV8 2007-2 C | $12,000,000.00 |
| 36 | US03454671053 | HIPO HIPO-10 C | $7,000,000.00 |
| 37 | IT00004215346 | BPMO 2007-1 C | $3,500,000.00 |
| 38 | US02560811766 | LEEK 19X CC | $6,000,000.00 |
| 39 | IT00043562553 | TDAC 8 C | $4,000,000.00 |
| 40 | IT00041603818 | INTS 3 C | $7,000,000.00 |
| 41 | ES034715059 | BBVAR 2007-2 C | $7,500,000.00 |
| 42 | ES0347966025 | CAJ 2007-1 B | $7,800,000.00 |
| 43 | ES0295172406 | CAIWA II C2 | $8,450,000.00 |
| 44 | XS0290419380 | EMUH 2007-1 M2 | $3,000,000.00 |

Cowen and Company ("Cowen"), on behalf of The Bank of New York Mellon Trust Company, National Association, in its capacity as trustee (the "Trustee"), will be conducting the sale of certain collateral pledged to the Trustee. The Collateral (as defined herein) will be offered and sold by the Trustee without recourse, representations, or covenants, express or implied, being made by the Trustee with respect to the Collateral (except as to title to the Collateral) or with respect to any other information then in the Trustee's possession, including without limitation any offering circular or other financial information. **Location of Sale.** The sale will be conducted by Cowen at 599 Lexington Avenue, 21st Floor, New York, New York 10022. **To Place a Bid or for Additional Information.** In addition to any other terms or limitations, please be advised that the sale of each security listed above may be made only to the best bidder who is also a qualified bidder and may be subject to a reserve level. For additional information, including with respect to qualified bidder status, and to obtain copies of an Investor Representations and Confidentiality Agreement, contact James Burke or Yulia Gilman with Cowen at jim.burke@cowen.com or yulia.gilman@cowen.com, respectively, or at (212) 201-4837 or (646) 562-1354, respectively. **Disclaimer.** The Trustee is authorized at such sale, if the Trustee deems it advisable or is required by applicable law to do so: (i) to restrict the prospective bidders on or purchasers of any of the above identified securities to be sold (the "Collateral") to those who will represent and agree that they are purchasing for their own account for investment and not with a view to the distribution or resale of any of such assets, (ii) to verify that each certificate for each security to be sold that has not been registered under the Securities Act of 1933 bears a legend substantially to the effect that such security has not been registered under the Securities Act of 1933 and may not be disposed of in violation of the provisions of said Act, (iii) to disclaim and to refuse to give any warranty (other than as to title), and (iv) to impose such other limitations or conditions in connection with any such sale as the Trustee deems necessary or advisable.

### THE WALL STREET JOURNAL.

# LEGAL NOTICES

**(800) 366-3975 | sales.legalnotices@wsj.com**
For more information visit: **wsj.com/classifieds**

© 2017 Dow Jones & Company, Inc. All Rights Reserved.       DOW JONES

ADVERTISEMENT

# Leisure Travel
To advertise: 800-366-3975 or WSJ.com/classifieds

### FRANCE

## Celebrate Summer
**30% savings on select July 2017 departures**

Experience the charm of Burgundy or the Upper Loire aboard our luxury barges *Adrienne* and *Horizon II*.



**FRENCH COUNTRY WATERWAYS, LTD.**
P.O. Box 2195, Duxbury, MA 02331
800-222-1236    781-934-2454
www.fcwl.com