1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 8-16-75545-reg

4    Adv. Case No. 8-16-08178-reg

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7    DOWLING COLLEGE,

8                    Debtor.

9    - - - - - - - - - - - - - - - - - - - -x

10   ZAIKOWSKI,

11                   Plaintiff,

12        Vs.

13   DOWLING COLLEGE,

14                   Defendant.

15   - - - - - - - - - - - - - - - - - - - -x

16                          United States Bankruptcy Court

17                          290 Federal Plaza

18                          Central Islip, New York 11722

19                          April 10, 2017

20                          10:16 AM

21   B E F O R E:

22   HON. ROBERT E. GROSSMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  MT / DB

1    HEARING re [13] Motion to Authorize/Direct a Class

2    Certification pursuant to Rule 23(b)(3) of the Federal

3    Rules of Civil Procedure, made applicable by Federal Rule of

4    Bankruptcy Procedure 7023, comprised of Plaintiff and all

5    persons who worked at or reported to a Facility of Defendant

6    who were terminated without cause on or about June 1, 2016 or

7    within 30 days of that date by Jack A Raisner on behalf of Lori

8    Zaikowski.

9

10   HEARING re [39] ADJ Ex Parte Order to Schedule Hearing on [13]

11   Motion approving bidding procedures for the sale of the

12   Debtor's Oakdale campus, scheduling an auction and a sale

13   hearing Free and Clear of Liens under 11 U.S.C 363(f) by Joseph

14   Charles Corneau on behalf of Dowling College.

15

16   HEARING re [74] Order Scheduling Initial Case Management

17   Conference.

18

19   HEARING re [31] Final ADJ Order to Schedule Emergency Hearing

20   on [9] Motion for Authority to Obtain Credit Under Section

21   364(b), Rule 4001(c) or (d) to Obtain Post-Petition Secured,

22   Superpriority Financing Pursuant to 11 U.S.C. Sections 105,

23   361, 362, 363, and 364 and (B) to Utilize Cash Collateral

24   Pursuant to 11 U.S.C. Section 363; Adequate Protection to Pre-

25   Petition Secured Creditors Pursuant to 11 U.S.C. Sections 361,

1    362, 363 and 364 by Joseph Charles Corneau on behalf of Dowling

2    College.

3

4    HEARING re [243] Motion for 2004 Examination of KPMG LLP, by an

5    Authorized Partner or Person with Knowledge of Debtor's

6    Business Transactions and Production of Documents by Anthony C

7    Acampora on behalf of Official Committee Of Unsecured

8    Creditors.

9

10   HEARING re [22] ADJ Motion to Authorize/Direct Pursuant to

11   Sections 105(a) and 363(b) of the Bankruptcy Code and

12   Bankruptcy Rule 9019 for an Order Authorizing the Debtor to

13   Enter Into and Perform Under Plan Support Agreement by Lauren

14   Catherine Kiss on behalf of Dowling College.

15

16   HEARING re [238] Application to Employ Hilco Streambank as

17   Broker for the Debtor in connection with the marketing of

18   certain internet protocol numbers (the IP Addresses), Nunc Pro

19   Tunc to March 14, 2017 by Lauren Catherine Kiss on behalf of

20   Dowling College.

21

22   HEARING re [239] Motion to Sell Property of the Estate Free and

23   Clear of Liens under 11 U.S.C 363(f) Establishing Procedures

24   for the Sale of the Debtor's IP Addresses by Lauren Catherine

25   Kiss on behalf of Dowling College.

1    HEARING re [240] Motion to Approve and Authorizing

2    Implementation of Procedures for Identification of and

3    Potential Disposition of Certain non-estate Property by Lauren

4    Catherine Kiss on behalf of Dowling College.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO PC

4         Attorney for UMB Bank

5         One Financial Center

6         Boston, MA 02111

7

8    BY:   IAN HAMMEL (TELEPHONICALLY)

9

10   LIU, ZHENG, CHEN & HOFFMAN LLP

11        Attorney for Princeton Education Center LLC

12        358 5th Ave, Room 1003

13        New York, NY 10001

14

15   BY:   CHENGYU HOU

16

17   SILVERMAN ACAMPORA LLP

18        Attorney for Official Committee Of Unsecured Creditors,

19        Creditor Committee

20        100 Jericho Quadrangle, Suite 300

21        Jericho, NY 11753

22

23   BY:   RONALD J. FRIEDMAN

24

25

1    GARFUNKEL WILD, P.C.

2         Attorney for UMB Bank, National Association as

3         Indenture Trustee, Creditor

4         111 Great Neck Road

5         Great Neck, NY 11021

6

7    BY:   ADAM T. BERKOWITZ

8

9    CERTILMAN BALIN ADLER& HYMAN

10        Attorney for ACA Financial Guaranty Corp., Creditor

11        90 Merrick Avenue

12        East Meadow, NY 11554

13

14   BY:   RICHARD J. MCCORD

15

16   KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LL

17        Attorney for the Debtor

18        200 West 41st Street, 17th Floor

19        New York, NY 10036

20

21   BY:   SEAN C. SOUTHARD

22

23

24

25

Page 7

1    UNITED STATES DEPARTMENT OF JUSTICE

2          Attorney for the U.S. Trustee

3          Central Islip Office

4          Alfonse M D'Amato US Courthouse

5          560 Federal Plaza

6          Central Islip, NY 11722

7

8    BY:   STAN YANG

9

10   MEYER SUOZZI ENGLISH & KLEIN P.C.

11         Attorney for Certain Members Of The Dowling College Board

12         of Trustees, Interested Party

13         990 Stewart Avenue, Suite 300, PO Box 9194

14         Garden City, NY 11530

15

16   BY:   HOWARD B. KLEINBERG

17

18   EMILIO AMENDOLA, Witness

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            CLERK:  Matter up, Dowling College.

3            THE COURT:  Your appearances, please?

4            MR. MCCORD:  Good morning, Your Honor.  Certilman

5    Balin, by Richard McCord, for ACA Financial Guaranty Corp.

6            MR. SOUTHARD:  Good morning, Your Honor.  Sean

7    Southard of Klestadt Winters Jureller Southard & Stevens, on

8    behalf of Dowling College.

9            MR. SILVERMAN:  Good morning, Your Honor.  Kenneth

10   Silverman, of SilvermanAcampora, for the Official Committee of

11   Unsecured Creditors.

12           MR. HOU:  Good morning.  Chengyu Hou --

13           THE COURT:  Can you go up to the --

14           CLERK:  Sir, could you go up to the microphone.

15           THE COURT:  -- podium, please, sir?

16           MR. HOU:  Good morning, Your Honor.  Chengyu Hou from

17   Liu, Zheng, Chen & Hoffman, LLP, representing the buyer,

18   Princeton Education Center, LLC.

19           THE COURT:  Okay.

20           MR. KLEINBERG:  Good morning, Your Honor.  Howard

21   Kleinberg with Meyer Suozzi, for the Dowling Board.

22           MR. BERKOWITZ:  Good morning, Your Honor.  Adam

23   Berkowitz, with Garfunkel Wild, on behalf of UMB Bank as

24   Trustee.  I believe my colleague and co-counsel,

25   (indiscernible).

1          MR. YANG:  Good morning, Your Honor.  Stan Yang from

2    the U.S. Trustee's Office.

3          CLERK:  Please state your phone appearance.

4          MR. HAMMEL:  Good morning, Your Honor.  Ian Hammel,

5    on behalf of UMB Bank, as Trustee.

6          THE COURT:  All right.  Okay.

7          MR. SOUTHARD:  Good morning.  Your Honor, again, for

8    the record, Sean Southard, on behalf of Dowling College.  Your

9    Honor, this morning we had a number of items on the agenda, the

10   first of which is a general status conference in relation to

11   the case overall.  Your Honor, I will try to be relatively

12   brief, given the other matters on the calendar this morning.

13          In terms of next hearing dates before Your Honor, we

14   have a hearing set for April 26, where Your Honor is going to

15   be asked to hear the Debtor's Motion to Extend Exclusivity for

16   120 Days.

17          The next hearing after that, Your Honor, is May 22,

18   and on that date, the Debtor would intend to file a motion

19   seeking approval of the retention of liquidators in relation to

20   the furniture and equipment that the Debtor will seek to sell,

21   as well as a motion in relation to document retention and

22   destruction, and potentially, also, a motion to retain special

23   counsel, the Farrell Fritz firm, in the role of special

24   planning counsel associated with the Brookhaven Campus and the

25   planning that is now taking place associated with that before

1    the Town.

2             Your Honor, in terms of the Brookhaven Campus

3    planning effort and status, my understanding is that we are

4    roughly 60 days or so away from the next phase, which would be

5    appearing before the Town Planning Board, and there are likely

6    to be various meetings between now and then with different

7    parties associated with the Town and with the Debtor and its

8    representatives.

9             Once that Planning Board approves the project as

10   proposed, my understanding is that would be a likely

11   appropriate time to begin marketing the Brookhaven Campus for

12   disposition.  So, give or take, we're in the, you know, 60 to

13   90-day window, I think, from that process likely beginning in

14   terms of a market --

15            THE COURT:  Is somebody working on that now?

16            MR. SOUTHARD:  Yes, Your Honor.  We had previously

17   retained the firm of FPM.  That is a planning firm.  They have

18   been working with the various constituents on the estate side

19   to come up with potential alternatives associated with the

20   expected use and redevelopment of the Brookhaven Campus and

21   have come up with different options, essentially trying to

22   preserve as much optionality for that development as possible

23   with the Town.

24            And at this point, that's essentially where we are,

25   with some concepts agreed to in rough terms.  The Town has yet

1  to formally consider that proposal.

2         So, the view would be that the Farrell Fritz firm

3  would assist with that matter in terms of special counsel role.

4  They are particularly qualified and have experience before this

5  Town and Town Planning Board.  And so, that is a motion that

6  Your Honor is likely to see in the coming days.

7         Your Honor, I believe that's all the matters we

8  anticipated --

9         THE COURT:  You guys also adjourned the cross-

10  certification?

11         MR. SOUTHARD:  Yes, Your Honor.  That matter was on

12  for this morning, and by agreement between the Plaintiff's

13  counsel and my office, it was decided that it was best at this

14  time to adjourn that cross-certification motion.  We do see the

15  potential for dispute about the ultimate scope of the class,

16  and that could potentially impact the extent of damages.  And

17  so --

18         THE COURT:  You have a bar date in this -- the bar

19  date has passed in this case, right?

20         MR. SOUTHARD:  It has, Your Honor.

21         THE COURT:  Is there any risk that people who had

22  been expected to be represented by the class, if the class is

23  not certified will find themselves locked out of the case?

24         MR. SOUTHARD:  Well, I believe, Your Honor, if either

25  the class proposed counsel or the claimants did not file claims

1    before the bar date, they could potentially be barred.  If they

2    did so under any belief that they were being represented

3    already.  I can't speak to that.

4              THE COURT:  All right.

5              MR. SOUTHARD:  I don't know that to be an issue as of

6    yet.

7              Your Honor, in terms of the bar date and the claims,

8    generally, the Debtor is working on reviewing and analyzing the

9    claims pool.  That data has been shared with the Creditors'

10   Committee as well.  More I understand, it will be doing their

11   own review.  There were more than approximately 700 claimants

12   overall between scheduled and filed.

13             Your Honor, the priority claims, as scheduled, were

14   approximately $500,000, as follows.  Currently, there are

15   approximately $6.3 million.  And in a limited review that's

16   taken place thus far, we would expect significant objections to

17   likely lie in the priority claims class.

18             Among other things there were what appear to be full-

19   time faculty members, former full-time faculty members, that

20   filed their entire severance amounts as priority, which has, I

21   think, had the practical effect of dramatically increasing that

22   pool.

23             Your Honor, in terms of general unsecured claims

24   overall, the Debtor scheduled approximately $4.4 million and

25   there have filed and scheduled a total of about $11.8 million.

Page 13

1    So, the reconciliation process and the potential objections

2    process will undoubtedly unfold at some point in the future in

3    the case, but I wanted to give Your Honor a brief overview of

4    what we saw.

5            THE COURT:  Okay.

6            MR. SOUTHARD:  In terms of other progress in the

7    case, Your Honor, the self-insured medical plan and the

8    information that the Debtor sought from its third-party

9    administrator, we have recently received production associated

10   with the 2004 discovery motion and order that Your Honor

11   entered, and the Debtor is reviewing that information.  It may

12   be that we will require some additional assistance in terms of

13   analyzing that by someone with particular expertise in

14   reviewing such claims, but we'll take that matter up with Your

15   Honor to the extent that becomes necessary.

16            In addition, in terms of the Title IV financing, Your

17   Honor, the Debtor has been working with the U.S. Department of

18   Education and various of its representatives in an effort to

19   close out, essentially, its participation, its former

20   participation, in the Title IV programs.  That process has

21   taken some time.  It's a lot of administrative back and forth,

22   but it is progressing, I think, smoothly at this point.

23            THE COURT:  Does the government have any claims

24   against the Debtor?

25            MR. SOUTHARD:  The government authority has not yet

1    passed in the case, Your Honor.  To my knowledge, they have not

2    yet filed a claim as against the Debtor.  There is always the

3    potential for that type of claim, but I'm not presently aware

4    of claims.

5            Your Honor, in addition, the Debtor has recently

6    determined to terminate its 403(b) plan and has prepared the

7    requisite forms, including the 5500 filing for the year and in

8    2015.  And it's presently working on audits for 2016 and 2017,

9    and expect to complete the closure of that plan sometime in

10   September or October of this year.  Again, no claims are

11   expected to arise out of that as against the Debtor.

12           Your Honor, and then finally, with regard to the

13   residential portfolio, which we've spoken of many times before,

14   the Debtor continues to market and sell those properties in

15   accordance with Your Honor's approved procedures.

16           So, Your Honor, that, from my perspective, concludes

17   the overview of the case status, in addition to those items

18   that are on the calendar for today.  Unless Your Honor has any

19   questions or any other party has any comments --

20           THE COURT:  Anybody else have any questions or

21   comments at this point?  Okay.

22           MR. SOUTHARD:  Thank you, Your Honor.  So, that

23   brings us, Your Honor, I believe, to the application by the

24   Committee seeking an examination of KPMG in relation to

25   Bankruptcy Rule 2004.  My understanding, and I believe it's

1    been docketed, is that there is a stipulation essentially

2    resolving this matter between the Official Committee and KPMG.

3    But perhaps counsel would like to speak to that.

4              MR. SILVERMAN:  Yes, Your Honor.  We entered into a

5    stip with KPMG.  Graciously, we said we'll allow them to

6    complete the tax season.  Starting on or about May 1st, they're

7    going to start providing us with rolling discovery.  But we've

8    asked them for a lot and they haven't argued.

9              THE COURT:  They are the auditors?

10             MR. SILVERMAN:  Excuse me?

11             THE COURT:  They are the auditors, or were?

12             MR. SILVERMAN:  Yes.  (indiscernible) auditors, yes.

13   And so, we believe starting in May, we will have a

14   collaborative discovery scheduled.  At the moment, we're not

15   anticipating a problem.  They consented to the discovery, and

16   my partner, Anthony, and counsel for KPMG went over the topics

17   of discovery.  There didn't seem to be much dispute.  And so,

18   we're hoping for that to run smoothly and efficiently.

19             THE COURT:  There are GAAP financials on this I

20   assume, or not?

21             MR. SOUTHARD:  Yes, Your Honor.

22             THE COURT:  Okay.

23             MR. SOUTHARD:  Your Honor, so the next item on the

24   calendar then this morning is Number 3, and that is the

25   Debtor's application for entry of an order authorizing the

1    retention and employment of Hilco Streambank as broker for the

2    Debtor, nunc pro tunc to March 14.  That is Docket Number 238.

3    And related to this motion is the motion that is also on the

4    agenda, which is the Debtor's motion for an order establishing

5    procedures for the sale of the Debtor's IP addresses, Your

6    Honor, and that's Docket Number 239.

7            Your Honor, this motion seeks -- the first motion

8    seeks the employment of Hilco IP Services, LLC, doing business

9    as Hilco Streambank, as broker for the Debtor in connection

10   with the marketing of certain of the Debtor's internet protocol

11   numbers, or IP addresses.  And the retention is sought pursuant

12   to Sections 327(a) and 328(a) of the Bankruptcy Code, whereby

13   Hilco Streambank would serve as the Debtor's exclusive broker

14   for purposes of selling these assets, and only these assets.

15           THE COURT:  Are the IP addresses under lien?

16           MR. SOUTHARD:  Your Honor, the --

17           THE COURT:  Or subject to the lien?

18           MR. SOUTHARD:  The belief is that the DIP lien, which

19   has been created thus far, covers those IP addresses in

20   relation to the advances made during the bankruptcy case.  In

21   addition to that, there was a blanket lien that was granted in

22   the summer prior to the filing date in 2016 that covered

23   certain advances made by the prepetition lenders in August of

24   2016.  Those two --

25           THE COURT:  And that lien covers IP addresses?

1          MR. SOUTHARD:  Those two liens are believed to cover

2     these assets, certainly the DIP lien and the superpriority

3     claim that would be associated with the DIP lien would cover

4     these proceeds now.  Your Honor, we have the somewhat unusual

5     circumstance where at this point in time, we don't have a final

6     order in the case associated with financing and cash

7     collateral, and so, certainly, it is possible that there could

8     be some adjustment to the liens that have been granted.

9          So, my understanding in conferring with all the

10    relevant parties in advance of filing the motion is that both

11    the Committee and the secured creditors are agreeable that the

12    proceeds would go to pay down the DIP, to the extent received

13    after the sale.  And that's what our motion does state.

14         MR. SILVERMAN:  Your Honor, Mr. Southard is right,

15    for the purposes of the sale, we agree that to the extent there

16    are DIP proceeds, they should go through the DIP.  We haven't

17    conceded yet what the security lien covers, both pre-and post-

18    petition.  We are in negotiate -- discussing with them, not

19    negotiations, over that specific issue.  We're still working on

20    it.

21         We do believe that we have a working model with the

22    secured creditors that hopefully will result in a significant

23    carveout to the estate, and result through them in a follow-up

24    DIP order.  We're not there yet.

25         Our hope is we will be there for the April 26th

1    hearing.  We think that the conversation has advanced

2    significantly, but we have, again, not conceded any --

3            THE COURT:  The form of order I'm being given today

4    for the sale of these assets, all of you are in synch that

5    that's okay?

6            MR. SILVERMAN:  Yes.  Because the DIP has to get

7    there.

8            THE COURT:  All right.

9            MR. SOUTHARD:  Thank you, Your Honor.  I'm happy to

10   give you more of an explanation of the motion, if you desire

11   it, or the IP addresses.

12           THE COURT:  No.  Consider I had absolutely no idea

13   what it meant when I first read it.  I actually spent some time

14   now, I know enough to not ask any intelligent questions.

15   Apparently, you can sell each little address and you've got

16   165,000 of them and this person who actually does this.  That's

17   as articulate as I can be.

18           MR. SILVERMAN:  I could be just a little bit more

19   articulate.

20           THE COURT:  Showoff.

21           MR. SILVERMAN:  The addresses have tremendous value

22   because they're in consecutive order.  And hopefully, it's

23   because they're in consecutive order that the sale would be

24   successful.

25           THE COURT:  Okay.  So, anybody want to be heard on

1    this?  All right.  So, I'll grant the motion to retain the

2    broker, but I have a question about the broker's fees.  And

3    I'll grant the motion establishing procedures for the sale of

4    the IP addresses.

5            The broker's commission is a sliding commission?

6            MR. SOUTHARD:  Correct.

7            THE COURT:  Does it incentivize the broker to sell it

8    in small bunches, or is it a cumulative?

9            MR. SOUTHARD:  Your Honor, so the scale of -- there

10   are really just two percentages in terms of commission, and the

11   toggle point or the threshold where that changes from one to

12   the other is basically half the addresses that the Debtor

13   possesses.

14           So, if the Hilco firm was to find a buyer for less

15   than half of the addresses, it would get a 10 percent

16   commission for that sale.  If it finds a sale for more than

17   half, half or more, then the commission is just six percent.

18   As I understand their intention --

19           THE COURT:  Six percent on the whole or six percent

20   on the overage above the half?

21           MR. SOUTHARD:  Six percent on the size of the amount

22   sold, yeah.  So, if they sold three-quarters, for instance,

23   which I think, as I understand it from Hilco is unlikely,

24   because typically these addresses are sold in these blocks,

25   consecutive numbered blocks, to obtain the highest value, and

1    the Debtor has what's denominated as a Size 16 address block,

2    which is 65,000, roughly, numbers.

3            When you move down one size to a Size 17 block,

4    that's the roughly half number that would be the toggle point

5    on this sale.  And that was something that was negotiated with

6    them.  We had discussed the terms and retention with the U.S.

7    Trustee's Office in advance and made some modest changes to

8    those rates.

9            THE COURT:  Everybody is okay with this?  So, in

10   other words, I could sell half and get 10 percent, but I would

11   drop down to six percent if I sold half plus two IP addresses?

12   I'd lose four percent --

13           MR. SOUTHARD:   If you sold --

14           MR. SILVERMAN:  Less than half.

15           THE COURT:  -- in addition -- a dollar?

16           MR. SOUTHARD:  If you sold less than half, Your

17   Honor, you would get -- I think part of the reason for that is

18   that it's very unlikely to sell less than half of the numbers

19   we have here.

20           THE COURT:  Okay.

21           MR. SOUTHARD:  Unless they're sold --

22           THE COURT:  All you guys agree.  You're all math

23   wizards and you all agree that this works.  Can't wait to see

24   it when it comes back.  Court will grant that motion.

25           MR. SOUTHARD:  Thank you, Your Honor.  Appreciate it.

1    Your Honor, the next matter on the calendar this morning is

2    Docket Number 5 -- or, I'm sorry, Matter Number 5 on the

3    agenda, Docket Number 240, and that's the Debtor's motion for

4    an order approving and authorizing the implementation of

5    procedures for identification of and potential disposition of

6    certain person property.

7         Your Honor, this motion relates to the personal

8    property that remains in Dowling's possession as of the

9    petition date, which amounts to items that are not property of

10   the estate, which we have denominated as non-estate property.

11   And those consist of, among other things, potentially the

12   personal effects of the former faculty members and staff.  It

13   also includes potentially restricted assets that may have been

14   gifted to Dowling at various points throughout its history.

15        Your Honor, there have been various inquiries and

16   demands or claims associated with these personal effects and

17   this non-estate property since the beginning of the case.  And

18   this motion is really designed to provide more robust notice of

19   the opportunity to make claims associated with those properties

20   and retrieve them, as well as to aid in the identification of

21   potentially restricted assets that, for some reason or another,

22   the Debtor has not previously identified.

23        This is a motion that we discussed extensively with

24   all the parties involved in the case, and including the

25   Charities Bureau for the New York State Attorney General's

1    Office.  And they, indeed, gave us comments which we included,

2    in large part, in the motion that we filed and the relief form

3    that we are requesting.

4         Your Honor, we do intend, the Debtor does intend, to

5    dispose of all the assets it owns, including both the campuses,

6    as you're aware we've discussed many times.  And so, there is

7    some urgency, particularly with respect to the Oakdale Campus

8    to proceed with this process of identifying and safeguarding

9    assets and otherwise disposing of any assets that are

10   ultimately abandoned --

11        THE COURT:  What are the types of assets we're

12   talking about?

13        MR. SOUTHARD:  In certain instances, former professor

14   -- former faculty have indicated they've left their work papers

15   and maybe some, you know, dissertation type work that they find

16   very valuable to them personally, but which there is no value

17   to the estate.  In addition, it could be on the restricted

18   assets side, you know, a painting that was donated by some

19   donor many years ago --

20        THE COURT:  Why isn't that property of the estate?

21        MR. SOUTHARD:  It depends on the -- the only -- it

22   would be, unless that donation was made with the restriction as

23   to particular use or purpose, in which case, it would become

24   non-estate property and --

25        THE COURT:  Who's going to make that decision?

1          MR. SOUTHARD:  If there is a dispute, Your Honor, we

2    would bring that dispute to you.

3          THE COURT:  So there's paintings, books --

4          MR. SILVERMAN:  Lab equipment.

5          THE COURT:  Equipment.

6          MR. SOUTHARD:  The process we envision --

7          THE COURT:  These were all excluded from the sale?

8          MR. SOUTHARD:  That's correct, Your Honor.

9          THE COURT:  All right.

10         MR. SOUTHARD:  So, Your Honor, (indiscernible) over -

11   -

12         THE COURT:  If something is abandoned and it's not

13   property of the estate, it wouldn't be covered by anybody's

14   lien then.  I ask, is it covered by anybody's lien?

15         MR. SOUTHARD:  If it's not property of the estate,

16   no.

17         THE COURT:  Okay.

18         MR. SOUTHARD:  I guess there's a point at which it

19   could become property of the estate, if it's abandoned in favor

20   of the Debtor.

21         THE COURT:  Leave it alone now.  Makes my head hurt.

22         MR. SOUTHARD:  Thank you, Your Honor.  Again, there

23   are no objections on this motion.  We would propose to

24   immediately serve notice broadly on the potentially affected

25   parties, as well as are proposing to publish the notice in the

1    Wall Street Journal, New York edition.

2              THE COURT:  Everybody okay?

3              MR. SILVERMAN:  The Committee's okay.

4              THE COURT:  Okay.  We'll grant that.

5              MR. SOUTHARD:  Thank you, Your Honor.  The next item

6    on the calendar this morning is Number 6 on the agenda, and

7    that is the continued motion of the Debtor to approve continued

8    use of financing, continued use of cash collateral, and

9    borrowing under the Debtor in Possession financing facility.

10             Your Honor, the parties, including the DIP lenders

11   and the Committee, continue to discuss the potential for

12   resolution of various issues, including the terms and the scope

13   of a final Debtor in Possession order.  And this morning, there

14   is an agreement to essentially continue, with Your Honor's

15   consent, the existing terms of interim financing approval until

16   the hearing, which is, I believe, scheduled for May 23rd with

17   Your Honor, and we'd asked to extend the authority through the

18   period ended May 26th, which is the Friday of that week.

19             The hope and expectation of the parties involved is

20   that by that point in time, there would be a resolution reached

21   that would hopefully be presented to you Your Honor at that

22   hearing.

23             THE COURT:  Anybody want to be heard on this?

24             MR. SILVERMAN:  Other than we're working

25   collaboratively and the budget goes through June, I believe, so

1    there won't be any change, Mr. Southard is correct.

2            MR. YANG:  Your Honor, with respect to the budget,

3    just had a look at it, we don't have any objection.

4            THE COURT:  Okay.  We'll continue the interim cash

5    collateral through May 26.

6            MR. SOUTHARD:  Thank you, Your Honor.  We would

7    intend to submit an order to that effect and an extended budget

8    consistent with our prior practice in this case --

9            THE COURT:  When does this authorization end?

10           MR. SOUTHARD:  The current authorization ends this

11   Friday, so what I would ask, Your Honor, if there is potential

12   for --

13           THE COURT:  I'll give you a bridge until I sign it,

14   in case I don't sign it by Friday.

15           MR. SOUTHARD:  Thank you very much, Your Honor.

16           THE COURT:  So, whatever that date is, we'll bridge

17   this until the date the Court enters the order, and the order

18   will be good until May 26.

19           MR. SOUTHARD:  Thank you, Your Honor.

20           MR. SOUTHARD:  Your Honor, the next item on this

21   morning's agenda is the Debtor's motion seeking approval of the

22   sale of its Oakdale Campus.  As Your Honor is aware, the Debtor

23   filed a motion on the first day of this case seeking to

24   establish both procedures and to ultimately approve the sale of

25   its Oakdale Campus.  That was filed as Docket Number 13.

1          The Debtor is seeking to sell what is an estimated

2     25-acre campus located at 150 Idle Hour Boulevard, which

3     comprises its Oakdale Campus.  The sale includes the real

4     property, fixtures and improvements that comprise the Oakdale

5     Campus, but excludes the furniture and equipment.

6          Your Honor, there are certain liens and judgments

7     against the Oakdale Campus.  The first lien and security

8     interests are in favor of the Series 2006 bond trustee, which

9     is Bloomington Trust.

10          There is a purported second lien, which is

11     unrecorded, on the Oakdale Campus in favor of the U.S.

12     Department of Education, pursuant to a $3 million note.  The

13     belief of the Debtors is that any mortgage there was never

14     reported and is thus unperfected.

15          And then in addition to those two claims and

16     potential liens, there are mechanics liens that have been filed

17     against that property and certain judgment liens.

18          Your Honor, each of those parties has received

19     notice, both at the outset of this case, as well as the bidding

20     procedures order that was entered in December, and then most

21     recently with the submissions that were made confirming the

22     result of the auction on Friday of this last week.

23          Your Honor, on December 16th, Your Honor did enter an

24     order approving the bidding procedures.  That was at Docket

25     Entry Number 111, which set forth the schedule of deadlines in

1    connection with the sale of the Oakdale Campus.  Also, on the

2    petition date, the Debtor filed a motion seeking to retain A&G

3    Realty Partners, LLC, and Madison Hawk Partners, LLC, the

4    campus agents, to help market and sell, among other things, the

5    Oakdale Campus.

6          Your Honor the retentions of the campus agents by

7    order, also dated December 16th, and that was Docket Entry

8    Number 114.

9          Your Honor, as was set forth in the campus agents'

10   report dated April 5th, 2017, that was attached as Exhibit 1 to

11   the Declaration of Robert S. Rosenfeld in support of the sale

12   motion filed this last Friday at Docket Entry Number 272, the

13   campus agents have extensively marketed the Oakdale Campus

14   through a combination of means, including direct mailing, press

15   releases, photo brochures, offering memorandum, traditional

16   print, web-based advertising and other promotions and marketing

17   activities.

18         Since the first marketing efforts began, there have

19   been over 5000 unique visitors to the property auction webpage

20   maintained by those agents.  The campus agents have also

21   received direct inquiries from 188 parties.  Forty-seven of

22   those groups entered into nondisclosure agreements in order to

23   gain access to the diligence information that was maintained by

24   those campus agents.  And of those groups, 20 toured and

25   physically inspected the campus.

1    As Your Honor is aware, at the time the sale motion

2    was filed, there was no stalking horse bidder identified.  The

3    Debtor did identify a potential stalking horse bidder and

4    ultimately filed an application seeking the approval of certain

5    bid protections in favor of that proposed stalking horse.

6    Around the same time the Debtor was negotiating that

7    agreement, it decided, in consultation with the Creditors'

8    Committee and the DIP lenders, to amend certain of the bid

9    deadlines set forth in Your Honor's bidding procedures order,

10   consistent with the authority granted.

11   The Debtor amended the sealed bid deadline from March

12   27th to March 29th and change the auction date from March 31st

13   to April 4th.  The deadline to object to the sale motion stayed

14   the same, and the sale hearing, this morning's hearing, did not

15   change either.

16   What this meant, ultimately, is that sealed bids were

17   due one day before Your Honor heard the stalking horse

18   application, and that Debtor timely received four competing

19   bids, all of which were higher than the stalking horse proposed

20   first price.

21   And at the hearing to consider that stalking horse

22   application, the Creditors' Committee had objected on the basis

23   that those four competing bids were actually better than the

24   proposed stalking horse, and thus, the stalking horse provided

25   no benefit to the estate.  Your Honor ultimately denied that

1    stalking horse application.

2           Following that, on April 4th, the Debtor, in

3    consultation with the Creditors' Committee and the DIP lenders,

4    qualified five bidders and conducted the auction at the law

5    offices of Certilman Blain in East Meadow.  Each qualified

6    bidder was given a letter designation, Groups A through E,

7    respectively.

8           Prior to the auction and in relation to their bids,

9    three of the qualified bidders advised the Debtor that their

10   intention was to use the Oakdale Campus for various types of

11   educational purposes after they acquired the assets.  Two of

12   those qualified bidders advised the Debtor that their intention

13   was to essentially redevelop the Oakdale Campus.

14          The auction commenced at approximately 11:00 AM, with

15   a starting bid of $9 million.  And each of the bidders bid

16   multiple rounds, with breaks at various points in time.  At the

17   end, the bids were as follows:  The high bidder was for

18   $26,500,000, submitted by Princeton Education Center, LLC.

19          The second highest bidder was for $26,100,000,

20   submitted by NCF Capital Limited.

21          The third highest bidder, $25,800,000, submitted by

22   Ritnand Balved Education Foundation.  The fourth highest

23   bidder, $16,500,000 was submitted by Island Estate Group.  And

24   the fifth highest bidder was for $14,600,00, submitted by the

25   proposed stalking horse candidate, Vanderbilt Palace.

1    Your Honor, each of the three highest bids were made

2    by what we would refer to as an educational end-user.  And the

3    bottom two bids, or the lowest two bids, were made by the re-

4    developers, in essence.

5    Your Honor, a copy of the transcript from the

6    auction, which was transcribed by a court reporter, is attached

7    as Exhibit 2 to Mr. Rosenfeld's Declaration filed in support of

8    the sale. Prior to the commencement of the auction, each of

9    those qualified bidders did provide us with proof of financial

10    wherewithal to close up to certain levels of value, as a

11    condition to becoming a qualified bidder.

12    However, given the robust results at the auction,

13    which I just described, the Debtor and the interested parties

14    felt it prudent to further consider financial wherewithal of

15    the top bidders in order to consummate the sale on the higher

16    bids that were made during the auction.

17    As a result, the Debtor closed the bidding on April

18    4th, but kept the auction open and requested from each of the

19    three highest bidders, among other things, proof of financial

20    wherewithal to close on their respective bids and a

21    supplemental deposit, increasing or trueing up the deposit that

22    we had initially received.

23    Your Honor, on April 6th, the Debtor, after extensive

24    consideration by and consultation with representatives of the

25    Creditors' Committee and the DIP lenders, as well as the U.S.

1    Trustee, and by confirmation of the Board of Trustees of

2    Dowling College, determined to close the auction formally and

3    designate Group C, Princeton Education Center, LLC, to be the

4    successful bidder, and Group A, NCF Capital Limited, to be the

5    backup bidder.

6         Your Honor, we believe that the motion this morning

7    is well supported in terms of the Debtor's business judgment.

8    Under applicable law, a proposed sale must represent the

9    reasonable exercise of business judgment on the part of the

10   Debtor in Possession in order to be approved under Section 363

11   of the Bankruptcy Code.

12        As set forth in Mr. Rosenfeld's Declaration, the

13   proposed sale to Princeton represents the sound business

14   judgment of the Debtor and is appropriate in light of the facts

15   and circumstances of this case.

16        After an extensive marketing process and a highly

17   competitive auction, the sale to the successful bidder is the

18   highest and best bid because, among other things, the purchase

19   price was the highest among the qualified bidders and the

20   successful bidder appears eager and capable to close the

21   transaction within the contemplated timeframe.

22        The Debtor believes it's important that the proposed

23   sale be closed as quickly as possible to avoid continuing

24   losses and to otherwise maximize the net value that would be

25   obtained from the sale for the benefit of this estate.  Your

1    Honor, the proposed sale to the successful bidder, we believe,

2    accomplishes this.

3            Your Honor, we have also considered the extent to

4    which applicable non-bankruptcy law applies to this sale.

5    Pursuant to Section 363(d) of the Bankruptcy Code, a transfer

6    of property by a not-for-profit entity must be made in

7    compliance with applicable non-bankruptcy law governing such

8    transfer.  Outside bankruptcy, in a sale of a not-for-profit

9    corporation seeking to sell all or substantially all of its

10   assets is required pursuant to Sections 510 and 511 of the New

11   York State Not-For-Profit Corporation Law to submit a verified

12   petition to the New York State Supreme Court where the

13   corporation has its principal office for approval of such

14   transaction, on notice to the Attorney General.

15           Your Honor, the State Court would approve such a

16   proposed sale transaction under state law to the extent it

17   finds "the consideration and the terms of the transaction are

18   fair and reasonable to the corporation, and that the purposes

19   of the corporation, or the interests of the members will be

20   promoted."  That is a quote, Your Honor, form the standard set

21   forth in Section 511(d) of the New York Not-For-Profit

22   Corporation Law.

23           Last week, the Debtor and its counsel conferred with

24   the New York State Attorney General's Office regarding whether

25   State Court approval would be required, and the Debtor

1    understood -- I should clarify that statement -- regarding

2    whether their office intended to review under Sections 510 and

3    511 of the New York Not-For-Profit Law the proposed sale.  And

4    it was our understanding that there was agreement that because

5    the Oakdale Campus does not amount to, or otherwise comprise, a

6    transfer of all or substantially all of the Debtor's assets,

7    that the review under Sections 510 and 511 would not be

8    necessary.  In essence, we did not meet the threshold or the

9    trigger for a review application of --

10            THE COURT:  Well, it must meet the other standards.

11   It doesn't require review, but in my analyzing the sale, I have

12   to take into consideration those assets, correct, or not?

13            MR. SOUTHARD:  Your Honor, I don't think you do, as a

14   technical matter.  But our position is that you can and you

15   should find, in any event, that the sale is appropriate in

16   light of applicable non-bankruptcy law.

17            Interestingly, Your Honor, the Attorney General's

18   Office altered that understanding and position on Friday

19   afternoon by telephone when they indicated, essentially, that

20   because Dowling's sale of the Oakdale Campus might amount to

21   substantially all assets, it planned to review, to perform the

22   review, and to make any necessary arguments to this Court,

23   consistent with its oversight role under New York State Law,

24   and --

25            THE COURT:  When would they do that?  Because your

1    order asked me to sign an order that's effective instantly.

2              MR. SOUTHARD:  Indeed, Your Honor.  We left that

3    discussion with some disagreements about whether the diligence

4    that they were conducting at this point about the future use or

5    potential future use was appropriate at this time, or whether

6    it was more appropriate in relation to any application process

7    that the proposed purchaser might make to their office to seek

8    a charter, for instance.

9              But nonetheless, what I suggested to their office was

10   that I would attempt to, and indeed did get a telephone

11   conference, Mr. Hou, who is here today representing the

12   purchaser, to answer any questions that their office might have

13   about the purchaser's intentions with regard to the property.

14   We had that conversation on Friday afternoon and I believe it

15   was a productive conversation.  Counsel to the proposed

16   purchaser provided them with answers to all the questions they

17   asked, including some follow-up emails later Friday evening,

18   and also on Saturday.  And after we --

19              THE COURT:  Can you tell me what they were told?

20              MR. SOUTHARD:  Absolutely, Your Honor.  Mr. Hou

21   explained that his client's intention with regard to future

22   operations were to use the property as a private bilingual K-12

23   school that would ultimately need to be licensed by the state.

24   And frankly, that educational use or purpose was something that

25   Dowling's Board was pleased to know would be consistent, at

1   least in some way, with Dowling's educational mission.  And the

2   purchaser's counsel indicated clearly that he had every

3   intention, or their clients had every intention of complying

4   with applicable non-bankruptcy law in relation to its intended

5   future use.

6            But at present, it had not obtained a charter to

7   operate said school and had not taken the formal additional

8   steps to pursue that purpose because, from there's perspective,

9   they had not yet obtained the property from which they would to

10  carry out that activity.

11           THE COURT:  But their success at that is irrelevant

12  to the Debtor?

13           MR. SOUTHARD:  I believe once the sale closes, that's

14  correct, Your Honor.

15           I think that the Debtor's Board did give some

16  consideration to that future use here.  However, this was sort

17  of an easy decision for the parties to make because not only

18  did this bidder have an intended use that was consistent in

19  some way with the educational mission of Dowling, but in

20  addition, they were also the high bidder by $400,000.

21           THE COURT:  But the sale of the property will be

22  completed before the buyer has a charter?

23           MR. SOUTHARD:  Correct.

24           THE COURT:  And whether that buyer gets the charter

25  and can then use the property as it is currently intended will

1    no longer be an issue for the Debtor, because you would have

2    closed?

3            MR. SOUTHARD:  Correct, Your Honor.

4            MR. SILVERMAN:  Extending that, Your Honor, it's my

5    understanding that the APA that was signed by Princeton in

6    furtherance of the sale does not have any contingency about use

7    or permit, and that it is a straight, as-is sale,

8    notwithstanding the APA, and that there will be no subsequent

9    look back, if you will, or an intent to look back by the buyer.

10   They're taking it as is.  I think it's superfluous to say where

11   it is -- we know where it is.  But they're taking it as is.

12   And I think it would be helpful if buyer's counsel confirms

13   that remark in court.  I don't believe a buyer is in court,

14   being that they're overseas.  But that's my understanding, and

15   I think it's the buyer's and the Debtor's understanding.

16           MR. SOUTHARD:  That is the Debtor's understanding.

17           THE COURT:  Would counsel be willing to put that on

18   the record?

19           MR. HOU:  Yes, Your Honor, I would like to confirm

20   that my clients intend to offer it and do this project as a K-

21   12 school.  Because we recently got wind of auction and we

22   intend to close in more than one month.  So, there are still

23   some -- how we will own this property and how we'll proceed

24   through the application for all of the charter (indiscernible)

25   from the New York Education Department, this deal not finalized

1    yet.  However, the purpose is already very clear for a K-12

2    school.

3            THE COURT:  So, you will close --

4            MR. HOU:  Yes.

5            THE COURT:  -- prior to your having any of the

6    required, or as you believe, the required charters, land use,

7    or any of that?  You're basically taking the property as it is

8    now?

9            MR. HOU:  Yes.  According to the current draft of the

10   asset purchase agreement, which my client already

11   (indiscernible), yes, we are buying this property as is.

12           THE COURT:  All right.  And that includes, not all

13   the charters, but usage, zoning, everything else?

14           MR. SOUTHARD:  It does, Your Honor.  And to be clear

15   -- I believe I made the statement at the last hearing on the

16   stalking horse application, but again, for the record day, the

17   asset purchase agreement specifically excludes as an asset to

18   be sold, Dowling's charter, or its accreditation, if any, or

19   any right to operate an educational --

20           THE COURT:  I'm not talking about charters.  I'm

21   talking about the usage of the property.

22           MR. SOUTHARD:  Yes, Your Honor.  The usage of the

23   property is as is.  We are making no continuing representations

24   as to the existing use of the property.

25           THE COURT:  Now, under the New York Not-For-Profit

1    laws -- and I think this satisfies that -- the Court's required

2    to not only look at the -- I believe, Judge Wiles' decision

3    about a year ago, a little less than a year ago, I agree with -

4    - that it is, in a sense, a furtherance of the intent of

5    Dowling's purpose, which is to be an educational facility.

6    That this buyer is buying it with the intent of continuing its

7    usage as an educational facility.  And it has agreed to work

8    with the state and any other licensing board, post-closing to

9    ensure that that will happen.

10          MR. SOUTHARD:  That's right, Your Honor.

11          THE COURT:  Then it's up to those parties.  It's not

12    my direction.  Now...  Okay.

13          MR. SOUTHARD:  Your Honor, I think also relevant to

14    complete the analysis is that the intended use of the proceeds

15    of Dowling from the sale, when it closes, is a proper purpose

16    for a not-for-profit corporation, like any corporation, and

17    that is to pay its legitimate debt.  I think that is a point

18    that was made by Judge Wiles in his decision and in his

19    analysis, and that same--

20          THE COURT:  That the -- I'm not saying what I think I

21    meant, but that determination is not without some dispute --

22          MR. SOUTHARD:  Agreed.

23          THE COURT:  -- in other cases.  That upon a

24    liquidation of a not-for-profit -- unfortunately I have some

25    experience with these days -- that a valid usage of those funds

1    is payment to creditors, pay its bills.  There have been a

2    couple of decisions, not any higher court level, that that may

3    be open to debate.  But that issue is not in front of me at

4    this point.

5              What is also clear in these cases is that the right

6    of various parties responsible for these not-for-profits,

7    officers and directors of the company, of the entities, under

8    New York law, New York Not-For-Profit Law, especially when you

9    have audited financials have potential liabilities that go

10   beyond what we normally would see in a Subchapter S

11   Corporation, or regular corporation.  And at some point, in

12   these cases, that analysis, whatever that analysis is, needs to

13   be presented and explained before the end of the case.

14             I think Attorney General Schneiderman, about a year

15   ago, issued amendments to the not-for-profit laws, which

16   increased the exposure of certain folks.  I'm not sure they --

17   a lot of people read them, but increased the potential exposure

18   on parties who may not assume they have liability.  I'm not

19   saying they do, but I think these things are all important in

20   my analysis of the case going forward is under -- does keep an

21   eye on New York not-for-profits.  We still have other pieces in

22   this case that are going to have to be disposed of -- how we

23   got here, which is true in this case and another one that I

24   have.

25             By the end of the case, and I think it's important in

1    these cases, that we have an understanding of how everybody got

2    to where they got.  That doesn't mean anybody's liable.  It

3    just means we need an explanation, and there's got to be some

4    transparency in these cases that is different, or may be

5    different, from what you're used to, or any of us are used to,

6    in the more traditional Chapter 11 cases.

7              MR. SILVERMAN:  Your Honor, the Committee could not

8    agree more with your last sentiment.  We've had conversations

9    with the Debtor as well as with the Committee in terms of

10   pacing the manner in which we look at things, the sale, claims,

11   we had the KPMG, orders for review.  We have other discovery

12   that we intend to do.  We are cognizant of what the not-for-

13   profit laws require and the context --

14             THE COURT:  Yeah, I actually have great faith in the

15   professionals in this case.  So, I just wanted to put that on

16   the record.  I'm not saying anything that you don't know.

17             MR. SILVERMAN:  Not a today issue.

18             THE COURT:  No, there's a normal course of time for

19   all these things, and I just wanted to bring it up on the day

20   we're seeking to approve the sale of what is the primary asset;

21   not sole asset, but most visible asset, I think, of this

22   Debtor.

23             Does anybody else wish to be heard on this?

24             MR. SOUTHARD:  Your Honor, before -- if you would

25   indulge me, before we do that, I did want to note for the

1    record that there was one objection filed back on December 1st

2    by Powerhouse Paving, which is a judgment creditor of the

3    Debtor.  And that objection we've talked about previously at

4    the bid procedures hearing.  And in our view, that is really a

5    request for adequate protection and a recognition of the

6    relative priority of Powerhouse Paving's judgment.

7            THE COURT:  Yeah, I agree with that.

8            MR. SOUTHARD:  Your Honor, so we do not consider that

9    objection, and indeed the objection itself does acknowledge

10   that we are able to sell free and clear of it with its lien to

11   attach to the proceeds.

12           THE COURT:  You're basically seeking a waiver of the

13   appeals time period as well, correct?

14           MR. SOUTHARD:  Your Honor, we are not seeking a

15   waiver of the 14 day stay in relation to the order today.

16           THE COURT:  I thought I -- okay.  I thought probably

17   read it wrong, but just check.

18           MR. SILVERMAN:  Can we visit for a second?  And if I

19   may, Mr. Southard has an awful on his plate today.

20           THE COURT:  No, no, no.

21           MR. SILVERMAN:  One of the other things that we had

22   discussed as far as the sale, that I'm sure Mr. Southard is

23   going to get to, but it's that we have backup in this.

24           THE COURT:  I was going to ask that next.

25           MR. SILVERMAN:  I knew you were, so...  Occasionally,

1    I like to anticipate.  And we are keeping the backup bitter in,

2    pursuant to the procedures.  I believe that they have funded

3    the additional deposit.  I'm not clear whether they gave the

4    subsequent financial assurances, but I do believe they upped

5    their bid.

6              MR. SOUTHARD:  So, back -- with regard to the issue

7    Your Honor raised, you are quite correct.  We were seeking and

8    are seeking that waiver.  That is in the proposed form of

9    order.  It was in --

10             THE COURT:  Just tell me why.

11             MR. SOUTHARD:  Your Honor, we desire to proceed as

12   quickly as possible towards a closing.  The likelihood is that

13   we will not be able to close this transaction in 14 days, but

14   nonetheless desire to proceed as quickly as possible towards a

15   closing.

16             THE COURT:  Well, it was in the papers and it's been

17   served on everybody.

18             MR. SOUTHARD:  It was, Your Honor.

19             THE COURT:  Nobody's objected.

20             MR. SOUTHARD:  My apologies for the miscommunication.

21             THE COURT:  Has the form of order been shown to the

22   title company?

23             MR. SOUTHARD:  It has, Your Honor.

24             THE COURT:  Good.

25             MR. SOUTHARD:  That has -- I will note on that point

1    that there have been a couple of minor language changes since

2    it was filed -- the proposed order was filed on Friday -- that

3    we have circulated to the parties in interest this morning, and

4    will submit, you know, to Your Honor, assuming those changes

5    are acceptable to the parties in interest.  I don't believe

6    them to be material in any way.

7             Now, back on the point that Mr. Silverman was raising

8    about the backup bidder.  The Debtor has, with both

9    consultation and consent of the Committee and the DIP lenders,

10   determines NCF to be the backup bidder.  We have a signed

11   contract from that backup bidder at the lower bid --

12            THE COURT:  And their intended use is basically the

13   same as an educational facility?

14            MR. SOUTHARD:  There intended use is for some manner

15   of educational facility, Your Honor, not identical to the

16   intended use of the high bidder.  I believe their intention is

17   for a business school to be run from the campus.

18            But to further complete the record, we have an

19   initial deposit from that backup bidder of five percent of

20   their initial $9 million bid.  We do not yet have the trued up

21   or increased deposit that would bring them to the position of

22   five percent on their bid at auction.  We have requested that.

23   We do not presently have it.

24            I don't believe counsel is here today to speak to

25   that, but we intend to pursue that with them and address it

1    further before Your Honor, to the extent it becomes necessary.

2            THE COURT:  Okay.

3            MR. SOUTHARD:  So, Your Honor --

4            THE COURT:  Hold it.

5            MR. SOUTHARD:  I'm sorry.

6            MR. SILVERMAN:  Your Honor, on the 363(m), maybe we

7    would note for the record in the form of a proffer.  Attorneys

8    can't testify.

9            THE COURT:  I don't think there's an (m) finding in

10   this, is there?  I looked for that.  There's (h).  I didn't see

11   an (m) finding.  But it could be that I just can't read.  I'm

12   wondering if you're proceeding under the New York Charities

13   whether you get an (m) or you're going under 510 and 512; 510,

14   511, 6 (indiscernible)...

15           MR. SOUTHARD:  Your Honor, I don't believe there's a

16   --

17           MR. SILVERMAN:  My apologies, Your Honor--

18           MR. SOUTHARD:  --specific frame --

19           MR. SILVERMAN:  -- it was regarding the

20   (indiscernible).

21           MR. SOUTHARD:  Your Honor, counsel has reminded me

22   that in relation to the request for waiver of the 14 days, that

23   they expected the order to run the natural course of 14 days

24   and that they had factored that into their timing for closing.

25   He prefers that the 14 days --

1          THE COURT:  You have a buyer who wants the 14 days in

2     it?  It's okay with me.  I think the misunderstanding is that

3     they don't intend to close within those -- well, you can set

4     the closing date when you want.  It's just a question of

5     whether you want the 14 days waived.  If you don't, that's okay

6     with me.

7          MR. HOU:  So, Your Honor, prior to the auction, we

8     had the clarification with Sean that there will be a 14-days'

9     notice period.  Today is the 18th.  April 10th is the close

10    date, and around two days there might be a (indiscernible), and

11    after that there would be a 14-day period.

12          So, based on our asset purchase agreement, we have --

13    from that point, we have 30 days to close.  So, this auction is

14    a very urgent matter, so all the funding to -- we do not expect

15    any external funding from the financiers.  So, this is quite

16    stressful, actually.

17          So, but based on this value, based on the

18    clarification, we made all the funding activities based on this

19    schedule.  (indiscernible) there is a request for a waiver of

20    these 14 days, that might cause a lot of disruption to our

21    funding activities.

22          THE COURT:  Okay.  I don't think it has anything to

23    do with it, but that's fine.

24          MR. HOU:  Okay.

25          THE COURT:  That's okay.  So, you'll have to strike

1    that from the order.

2             MR. HOU:  Okay, (indiscernible).

3             MR. SOUTHARD:  Your Honor, the only alternative, that

4    I was just discussing with counsel, would be that we might

5    request the waiver, as Your Honor has suggested may be

6    available, and then agree that the closing would not be

7    required within 30 days, but rather 45 days.

8             THE COURT:  Well, I'm not going to really -- you

9    can't order waiving the 14 days in a deal that's not going to

10   close for 30 days.  That's kind of just avoiding people's

11   rights for no reason, and there has to be a reason to avoid

12   those rights.

13            MR. SOUTHARD:  Understood, Your Honor.

14            THE COURT:  Based on the dialogue we just had, we're

15   taking that out.  So --

16            MR. SOUTHARD:  Fair enough.

17            THE COURT:  -- delete from the order that provision.

18   And where are we on the (m) provision?

19            MR. SOUTHARD:  Your Honor, there is no request in the

20   order for a 363(m) finding.  I think one is appropriate.  One

21   is available on the record, but the present form --

22            THE COURT:  Well, I'm not going to make you live with

23   -- I mean, if you want to amend it...  Do people think an (m)

24   finding -- you're the seller...  Does anybody want it or not?

25   I don't -- it's not me.  I'm not buying it.

1          MR. SOUTHARD:  I don't represent the purchaser

2     either.

3          THE COURT:  Okay.  It is what it is.

4          MR. SOUTHARD:  Your Honor, one other item I just

5     wanted to note in terms of the applicable non-bankruptcy law.

6     My understanding is that under 509 of that same not-for-profit

7     corporations law, a sale of less than substantially all assets

8     does not require court approval under non-bankruptcy law.  And

9     so, it would be possible for Your Honor to make that finding

10    relative to the Oakdale Campus, not amounting to substantially

11    all --

12         THE COURT:  How can I make that finding if I don't

13    know what the remainder of the estate's worth?

14         MR. SOUTHARD:  Well, Your Honor, we could give you

15    some testimony in that respect.  But we also have the assets,

16    as identified in the schedules and in this -- the record --

17         THE COURT:  Well even if the sale were -- even if

18    those sections were applicable, my view of the law is that I

19    would be the one applying that law, not the state court judge.

20         MR. SOUTHARD:  Absolutely, Your Honor.

21         THE COURT:  And I've said that repeatedly.  So, as

22    long as I believe that the record is sufficient, that I'm

23    comfortable signing the order, that it has met those standards.

24    The fact that a state court judge may or may not take another

25    view, my humble role, one, the AG is not telling you you have

1   to, and two, it would have no impact on me.  And the order has

2   in it, I believe, Sections 510 -- I think 509, 510, unless you

3   deleted it.

4          MR. SOUTHARD:  No, Your Honor.  The order contains

5   the provision that essentially determines that the sale did not

6   amount to substantially all assets, and thus that a 510, 511

7   analysis is not required.  I think what we had done here this

8   morning is slightly different than that --

9          THE COURT:  For me to make that finding -- but you

10  already have an order saying this was not governed by the not-

11  for-profit laws because the sale was for less than --blank.

12  There's nothing in the record that reflects what the total

13  assets are, whether they're right or wrong.  And so, perhaps,

14  if you could file an affidavit or something that said maybe

15  this works at the -- whoever it is who's responsible for

16  knowing what this stuff is worth, can give some estimate of

17  value and, therefore, it is the Debtor's view.  And no one

18  objects that the assets are not -- do not fall within 510 or

19  509.  But I have not nothing on the record that would allow me

20  to enter an order saying it's not applicable because it's not -

21  - it's less than -- I know it's not substantially all, but it's

22  less than the standard.  So, I just need some additional data

23  by which the Court can enter that order.

24         MR. SOUTHARD:  Your Honor, I am prepared to put on

25  some very brief testimony to that extent --

1          THE COURT:  That would work for me.

2          MR. SOUTHARD:  -- this morning.

3          THE COURT:  I just -- I don't want to get anything...

4   Any little thing can derail something.  And something like

5   this, if it gets derailed, it's never going to get back on the

6   track.  So, if you've got somebody that you can put on the

7   stand, I don't care if you ask him two or three questions.

8   Just so the record will reflect something and then I can find -

9   - make a finding based on that testimony.

10         MR. SOUTHARD:  Thank you, Your Honor.  The Debtor

11  would like to call to the stand Emilio Amendola.

12         CLERK:  Do you swear to tell the truth, the whole

13  truth, and nothing but the truth, so help you God?

14         MR. AMENDOLA:  Yes, I do.

15         CLERK:  Please be seated, state and spell your name

16  for the record.

17         MR. AMENDOLA:  My name is Emilio Amendola.  Emilio is

18  E-M-I-L-I-O.  Amendola is A-M-E-N-D, as in David, O-L-A.

19             DIRECT EXAMINATION OF EMILIO AMENDOLA

20  BY MR. SOUTHARD:

21  Q    Thank you, Mr. Amendola.  When was your firm retained in

22  relation to the Dowling case?

23  A    November of last year.

24  Q    And did the scope of your firm's retention include

25  marketing and sale of both the Oakdale Campus and the

Page 50

1    Brookhaven Campus?

2    A    Yes, it did.

3    Q    Are you aware of any other asset classes or asset groups

4    that Dowling owns?

5    A    In addition to Oakdale, there's a 105, roughly 105 acre

6    tract in Brookhaven, (indiscernible) and roughly 20 unsold

7    homes.

8    Q    Approximately how large is the Oakdale campus?

9    A    Roughly 25 and a half acres.

10    Q    And I believe you've just testified that the Brookhaven

11    Campus is roughly 105 acres?

12    A    That's correct.

13    Q    So, Brookhaven is significantly larger than the Oakdale

14    Campus?

15    A    Yes.

16    Q    Are you experienced in determining or assessing the value

17    of real estate?

18    A    Yes, I am.

19    Q    Could you explain your experience?

20    A    Yeah, we do quite a bit of valuation work for lending

21    institutions, investors, bankruptcy estates, companies

22    (indiscernible).

23    Q    And in relation to your retention for Dowling, did you or

24    your firm assess the value of the two campuses prior to

25    marketing?

1    A    Yes, we did.

2    Q    Would you say that the Oakdale Campus constitutes more or

3    less than 50 percent of the value of Dowling's real estate?

4    A    Less than 50 percent.

5    Q    Can you generally describe the marketing of the Oakdale

6    Campus?

7    A    There was quite a bit of extensive marketing effort in

8    terms of media, internet, direct communication,

9    (indiscernible).  And as you had stated earlier, we had quite a

10   few, 190-ish, 180-ish, different parties requesting

11   information, 20 parties that toured the property, and at the

12   auction had three user bidders and two investment bidders.

13   Q    And were you satisfied with the value that was obtained at

14   the auction?

15   A    Yes.

16   Q    Thank you.

17           MR. SOUTHARD:  Nothing further, Your Honor.

18           THE COURT:  Anyone else have any questions?  Thank

19   you.

20           MR. AMENDOLA:  Thank you.

21           THE COURT:  All right.  It's apparent that Mr.

22   Amendola is an expert and he has testified to the Court that

23   the assets being sold today are less than what they expect the

24   total value of the assets of the estate to be.  That is -- and

25   with that, the Court will make a finding, as represented by

1    counsel and as contained in the order.

2            MR. SOUTHARD:  Thank you, Your Honor.  I would then

3    just note for the record that there are no objections from

4    either prepetition secured lender group, the DIP lenders, the

5    Committee, or the U.S. Trustee, to the Debtor's motion to sell

6    today.  And indeed, other than the Powerhouse Paving objection,

7    which I believe should be overruled, the proposed sale is

8    consensual.

9            THE COURT:  There's also no objections by the United

10   States government, New York state, or any other governmental

11   agency.  The Attorney General's Office has not filed any

12   objections.  And, therefore, those parties are deemed to have

13   been on notice and permitted the sale to go ahead without

14   objection.

15           Anybody else?  Last time.  No one else wishing to be

16   heard, the Court will grant the motion for the sale of the

17   property to the Princeton Education Center for $26.5 million.

18           MR. SOUTHARD:  Thank you, Your Honor.

19           THE COURT:  Okay.

20           MR. SOUTHARD:  Your Honor, just as a housekeeping

21   matter, I believe there was one other item on today's agenda,

22   and that was the adversary proceeding by (indiscernible), which

23   is the WARN Act litigation.  And as I mentioned in earlier

24   remarks, that matter has been adjourned to, I believe, the May

25   23rd date.

1          THE COURT:  Is there a case in the East -- over in

2     the district court?

3          MR. SOUTHARD:  There is no case.

4          THE COURT:  There's no cases that have to be removed

5     here?

6          MR. SOUTHARD:  Not --

7          THE COURT:  Okay.

8          MR. SOUTHARD:  Not in relation to this, Your Honor.

9     This was filed, I believe, on the third day of this case, the

10    third day of --

11         THE COURT:  And this is going to track -- you're

12    tracking on this one, the class certification question?

13         MR. SOUTHARD:  Correct, Your Honor.

14         THE COURT:  Okay.  Anybody else?  Thank you all.

15    That's a great job.  I appreciate it.

16         MR. SOUTHARD:  Thank you, Your Honor.

17         MR. SILVERMAN:  Thank you, Your Honor.

18         THE COURT:  You guys go celebrate.  Have a nice

19    holiday.

20         MR. SOUTHARD:  You, too.

21         MR. SILVERMAN:  You too, Your Honor.

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                          Page      Line

5     Motion for 2004 Exam of KPMG

6     Motion to Retain Broker, granted        19        25

7     Motion for Sale Procedures, granted     19        25

8         (HE GRANTED AGAIN AFTER QUESTIONS at

9          P18  L12)

10    Motion to Approve & Authorize, granted  25        4

11    Motion for Cash Collateral, continued   22        23

12    Motion for Sale of Oakdale Campus, granted  53    9

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5
     Sonya
6                                    Digitally signed by Sonya Ledanski Hyde
                                     DN: cn=Sonya Ledanski Hyde, o=Veritext,
     Ledanski Hyde                   ou, email=digital@veritext.com, c=US
7                                    Date: 2017.04.24 14:27:31 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  April 24, 2017

| & | | | |
|---|---|---|---|
| **&**  5:3,10 6:16 7:10 8:7,17 54:10 | **165,000**  18:16 | **29th**  28:12 | **512**  44:13 |
| | **16th**  26:23 27:7 | **3** | **53**  54:12 |
| | **17**  20:3 | | **5500**  14:7 |
| **0** | **17th**  6:18 | **3**  2:2 15:24 26:12 | **560**  7:5 |
| **02111**  5:6 | **180**  51:10 | **30**  2:7 45:13 46:7 46:10 | **5th**  5:12 27:10 |
| **1** | **188**  27:21 | **300**  5:20 7:13 55:22 | **6** |
| **1**  2:6 27:10 | **18th**  45:9 | | **6**  24:6 44:14 |
| **10**  1:19 19:15 20:10 | **19**  54:6,7 | **31**  2:19 | **6.3**  12:15 |
| | **190**  51:10 | **31st**  28:12 | **60**  10:4,12 |
| **100**  5:20 | **1st**  15:6 41:1 | **327**  16:12 | **65,000**  20:2 |
| **10001**  5:13 | **2** | **328**  16:12 | **6th**  30:23 |
| **1003**  5:12 | | **330**  55:21 | **7** |
| **10036**  6:19 | **2**  30:7 | **358**  5:12 | |
| **105**  2:22 3:11 50:5 50:5,11 | **20**  27:24 50:6 51:11 | **361**  2:23,25 | **700**  12:11 |
| | **200**  6:18 | **362**  2:23 3:1 | **7023**  2:4 |
| **10:16**  1:20 | **2004**  3:4 13:10 14:25 54:5 | **363**  2:13,23,24 3:1 3:11,23 31:10 32:5 44:6 46:20 | **74**  2:16 |
| **10th**  45:9 | | | **8** |
| **11**  2:13,22,24,25 3:23 40:6 | **2006**  26:8 | | **8-16-08178**  1:4 |
| | **2015**  14:8 | **364**  2:21,23 3:1 | **8-16-75545**  1:3 |
| **11.8**  12:25 | **2016**  2:6 14:8 16:22,24 | **39**  2:10 | **9** |
| **11021**  6:5 | | **4** | |
| **111**  6:4 26:25 | **2017**  1:19 3:19 14:8 27:10 55:25 | | **9**  2:20 29:15 43:20 54:12 |
| **114**  27:8 | | **4**  54:10 | |
| **11501**  55:23 | **22**  3:10 9:17 54:11 | **4.4**  12:24 | **90**  6:11 10:13 |
| **11530**  7:14 | **23**  2:2 54:11 | **400,000**  35:20 | **9019**  3:12 |
| **11554**  6:12 | **238**  3:16 16:2 | **4001**  2:21 | **9194**  7:13 |
| **11722**  1:18 7:6 | **239**  3:22 16:6 | **403**  14:6 | **990**  7:13 |
| **11753**  5:21 | **23rd**  24:16 52:25 | **41st**  6:18 | **a** |
| **11:00**  29:14 | **24**  55:25 | **45**  46:7 | **a&g**  27:2 |
| **12**  34:22 36:21 37:1 | **240**  4:1 21:3 | **4th**  28:13 29:2 30:18 | **abandoned**  22:10 23:12,19 |
| | **243**  3:4 | | |
| **120**  9:16 | **25**  26:2 50:9 54:6 54:7,10 | **5** | **able**  41:10 42:13 |
| **13**  2:1,10 25:25 | | **5**  21:2,2 | **absolutely**  18:12 34:20 47:20 |
| **14**  3:19 16:2 41:15 42:13 44:22,23,25 45:1,5,8,11,20 46:9 | **25,800,000**  29:21 | **50**  51:3,4 | |
| | **26**  9:14 25:5,18 | **500,000**  12:14 | **aca**  6:10 8:5 |
| | **26,100,000**  29:19 | **5000**  27:19 | **acampora**  3:7 5:17 |
| | **26,500,000**  29:18 | **509**  47:6 48:2,19 | |
| | **26.5**  52:17 | **510**  32:10 33:2,7 44:13,13 48:2,2,6 48:18 | **acceptable**  43:5 |
| **14,600,00**  29:24 | **26th**  17:25 24:18 | | **access**  27:23 |
| **150**  26:2 | **272**  27:12 | | **accomplishes**  32:2 |
| **16**  20:1 | **27th**  28:12 | **511**  32:10,21 33:3 33:7 44:14 48:6 | **accreditation**  37:18 |
| **16,500,000**  29:23 | **290**  1:17 | | |

| | | | |
|---|---|---|---|
| accurate 55:4 | affidavit 48:14 | analysis 38:14,19 | approval 9:19 |
| acknowledge 41:9 | afternoon 33:19 | 39:12,12,20 48:7 | 24:15 25:21 28:4 |
| acquired 29:11 | 34:14 | analyzing 12:8 | 32:13,25 47:8 |
| acre 26:2 50:5 | ag 47:25 | 13:13 33:11 | approve 4:1 24:7 |
| acres 50:9,11 | agency 52:11 | answer 34:12 | 25:24 32:15 40:20 |
| act 52:23 | agenda 9:9 16:4 | answers 34:16 | 54:10 |
| activities 27:17 | 21:3 24:6 25:21 | anthony 3:6 15:16 | approved 14:15 |
| 45:18,21 | 52:21 | anticipate 42:1 | 31:10 |
| activity 35:10 | agents 27:4,6,9,13 | anticipated 11:8 | approves 10:9 |
| adam 6:7 8:22 | 27:20,20,24 | anticipating | approving 2:11 |
| addition 13:16 | ago 22:19 38:3,3 | 15:15 | 21:4 26:24 |
| 14:5,17 16:21 | 39:15 | anybody 14:20 | approximately |
| 20:15 22:17 26:15 | agree 17:15 20:22 | 18:25 24:23 40:23 | 12:11,14,15,24 |
| 35:20 50:5 | 20:23 38:3 40:8 | 46:24 52:15 53:14 | 29:14 50:8 |
| additional 13:12 | 41:7 46:6 | anybody's 23:13 | april 1:19 9:14 |
| 35:7 42:3 48:22 | agreeable 17:11 | 23:14 40:2 | 17:25 27:10 28:13 |
| address 18:15 | agreed 10:25 38:7 | apa 36:5,8 | 29:2 30:17,23 |
| 20:1 43:25 | 38:22 | apologies 42:20 | 45:9 55:25 |
| addresses 3:18,24 | agreement 3:13 | 44:17 | argued 15:8 |
| 16:5,11,15,19,25 | 11:12 24:14 28:7 | apparent 51:21 | arguments 33:22 |
| 18:11,21 19:4,12 | 33:4 37:10,17 | apparently 18:15 | articulate 18:17 |
| 19:15,24 20:11 | 45:12 | appeals 41:13 | 18:19 |
| adequate 2:24 | agreements 27:22 | appear 12:18 | asked 9:15 15:8 |
| 41:5 | ahead 52:13 | appearance 9:3 | 24:17 34:1,17 |
| adjourn 11:14 | aid 21:20 | appearances 8:3 | assess 50:24 |
| adjourned 11:9 | alfonse 7:4 | appearing 10:5 | assessing 50:16 |
| 52:24 | allow 15:5 48:19 | appears 31:20 | asset 37:10,17,17 |
| adjustment 17:8 | altered 33:18 | applicable 2:3 | 40:20,21,21 45:12 |
| adler& 6:9 | alternative 46:3 | 31:8 32:4,7 33:16 | 50:3,3 |
| administrative | alternatives 10:19 | 35:4 47:5,18 | assets 16:14,14 |
| 13:21 | amend 28:8 46:23 | 48:20 | 17:2 18:4 21:13 |
| administrator | amended 28:11 | application 3:16 | 21:21 22:5,9,9,11 |
| 13:9 | amendments | 14:23 15:25 28:4 | 22:18 29:11 32:10 |
| adv 1:4 | 39:15 | 28:18,22 29:1 | 33:6,12,21 47:7 |
| advance 17:10 | amendola 7:18 | 33:9 34:6 36:24 | 47:15 48:6,13,18 |
| 20:7 | 49:11,14,17,17,18 | 37:16 | 51:23,24 |
| advanced 18:1 | 49:19,21 51:20,22 | applies 32:4 | assist 11:3 |
| advances 16:20 | amount 19:21 | applying 47:19 | assistance 13:12 |
| 16:23 | 33:5,20 48:6 | appreciate 20:25 | associated 9:24,25 |
| adversary 52:22 | amounting 47:10 | 53:15 | 10:7,19 13:9 17:3 |
| advertising 27:16 | amounts 12:20 | appropriate | 17:6 21:16,19 |
| advised 29:9,12 | 21:9 | 10:11 31:14 33:15 | association 6:2 |
| | | 34:5,6 46:20 | |

**assume** 15:20
39:18
**assuming** 43:4
**assurances** 42:4
**attach** 41:11
**attached** 27:10
30:6
**attempt** 34:10
**attorney** 5:4,11
5:18 6:2,10,17 7:2
7:11 21:25 32:14
32:24 33:17 39:14
52:11
**attorneys** 44:7
**auction** 2:12
26:22 27:19 28:12
29:4,8,14 30:6,8
30:12,16,18 31:2
31:17 36:21 43:22
45:7,13 51:12,14
**audited** 39:9
**auditors** 15:9,11
15:12
**audits** 14:8
**august** 16:23
**authority** 2:20
13:25 24:17 28:10
**authorization**
25:9,10
**authorize** 2:1 3:10
54:10
**authorized** 3:5
**authorizing** 3:12
4:1 15:25 21:4
**available** 46:6,21
**ave** 5:12
**avenue** 6:11 7:13
**avoid** 31:23 46:11
**avoiding** 46:10
**aware** 14:3 22:6
25:22 28:1 50:3
**awful** 41:19

**b**

**b** 1:21 2:2,21,23
3:11 7:16 14:6
**back** 13:21 20:24
36:9,9 41:1 42:6
43:7 49:5
**backup** 31:5
41:23 42:1 43:8
43:10,11,19
**balin** 6:9 8:5
**balved** 29:22
**bank** 5:4 6:2 8:23
9:5
**bankruptcy** 1:1
1:16,23 2:4 3:11
3:12 14:25 16:12
16:20 31:11 32:4
32:5,7,8 33:16
35:4 47:5,8 50:21
**bar** 11:18,18 12:1
12:7
**barred** 12:1
**based** 27:16 45:12
45:17,17,18 46:14
49:9
**basically** 19:12
37:7 41:12 43:12
**basis** 28:22
**becoming** 30:11
**began** 27:18
**beginning** 10:13
21:17
**behalf** 2:7,14 3:1
3:7,14,19,25 4:4
8:8,23 9:5,8
**belief** 12:2 16:18
26:13
**believe** 8:24 11:7
11:24 14:23,25
15:13 17:21 24:16
24:25 31:6 32:1
34:14 35:13 36:13
37:6,15 38:2 42:2

42:4 43:5,16,24
44:15 47:22 48:2
50:10 52:7,21,24
53:9
**believed** 17:1
**believes** 31:22
**benefit** 28:25
31:25
**berkowitz** 6:7
8:22,23
**best** 11:13 31:18
**better** 28:23
**beyond** 39:10
**bid** 28:5,8,11
29:15,15 31:18
41:4 42:5 43:11
43:20,22
**bidder** 28:2,3
29:6,17,19,21,23
29:24 30:11 31:4
31:5,17,20 32:1
35:18,20 43:8,10
43:11,16,19
**bidders** 29:4,9,12
29:15 30:9,15,19
31:19 51:12,12
**bidding** 2:11
26:19,24 28:9
30:17
**bids** 28:16,19,23
29:8,17 30:1,3,3
30:16,20
**bilingual** 34:22
**bills** 39:1
**bit** 18:18 50:20
51:7
**bitter** 42:1
**blain** 29:5
**blank** 48:11
**blanket** 16:21
**block** 20:1,3
**blocks** 19:24,25

**bloomington** 26:9
**board** 7:11 8:21
10:5,9 11:5 31:1
34:25 35:15 38:8
**bond** 26:8
**books** 23:3
**borrowing** 24:9
**boston** 5:6
**bottom** 30:3
**boulevard** 26:2
**box** 7:13
**breaks** 29:16
**bridge** 25:13,16
**brief** 9:12 13:3
48:25
**bring** 23:2 40:19
43:21
**brings** 14:23
**broadly** 23:24
**brochures** 27:15
**broker** 3:17 16:1
16:9,13 19:2,7
54:6
**broker's** 19:2,5
**brookhaven** 9:24
10:2,11,20 50:1,6
50:10,13
**budget** 24:25 25:2
25:7
**bunches** 19:8
**bureau** 21:25
**business** 3:6 16:8
31:7,9,13 43:17
**buyer** 8:17 19:14
35:22,24 36:9,13
38:6 45:1
**buyer's** 36:12,15
**buying** 37:11 38:6
46:25

**c**

**c** 2:21 3:6 5:1 6:21
8:1 31:3 55:1,1

calendar 9:12
14:18 15:24 21:1
24:6
call 49:11
campus 2:12 9:24
10:2,11,20 22:7
25:22,25 26:2,3,5
26:7,11 27:1,4,5,6
27:9,13,13,20,24
27:25 29:10,13
33:5,20 43:17
47:10 49:25 50:1
50:8,11,14 51:2,6
54:12
campuses 22:5
50:24
candidate 29:25
capable 31:20
capital 29:20 31:4
care 49:7
carry 35:10
carveout 17:23
case 1:3,4 2:16
9:11 11:19,23
13:3,7 14:1,17
16:20 17:6 21:17
21:24 22:23 25:8
25:14,23 26:19
31:15 39:13,20,22
39:23,25 40:15
49:22 53:1,3,9
cases 38:23 39:5
39:12 40:1,4,6
53:4
cash 2:23 17:6
24:8 25:4 54:11
catherine 3:14,19
3:24 4:4
cause 2:6 45:20
celebrate 53:18
center 5:5,11 8:18
29:18 31:3 52:17

central 1:18 7:3,6
certain 3:18 4:3
7:11 16:10,23
21:6 22:13 26:6
26:17 28:4,8
30:10 39:16
certainly 17:2,7
certification 2:2
11:10,14 53:12
certified 11:23
55:3
certilman 6:9 8:4
29:5
change 25:1 28:12
28:15
changes 19:11
20:7 43:1,4
chapter 40:6
charities 21:25
44:12
charles 2:14 3:1
charter 34:8 35:6
35:22,24 36:24
37:18
charters 37:6,13
37:20
check 41:17
chen 5:10 8:17
chengyu 5:15 8:12
8:16
circulated 43:3
circumstance
17:5
circumstances
31:15
city 7:14
civil 2:3
claim 14:2,3 17:3
claimants 11:25
12:11
claims 11:25 12:7
12:9,13,17,23
13:14,23 14:4,10

21:16,19 26:15
40:10
clarification 45:8
45:18
clarify 33:1
class 2:1 11:15,22
11:22,25 12:17
53:12
classes 50:3
clear 2:13 3:23
37:1,14 39:5
41:10 42:3
clearly 35:2
clerk 8:2,14 9:3
49:12,15
client 37:10
client's 34:21
clients 35:3 36:20
close 13:19 30:10
30:20 31:2,20
36:22 37:3 42:13
45:3,9,13 46:10
closed 30:17
31:23 36:2
closes 35:13 38:15
closing 38:8 42:12
42:15 44:24 45:4
46:6
closure 14:9
code 3:11 16:12
31:11 32:5
cognizant 40:12
cohn 5:3
collaborative
15:14
collaboratively
24:25
collateral 2:23
17:7 24:8 25:5
54:11
colleague 8:24
college 1:7,13
2:14 3:2,14,20,25

4:4 7:11 8:2,8 9:8
31:2
combination
27:14
come 10:19,21
comes 20:24
comfortable
47:23
coming 11:6
commenced 29:14
commencement
30:8
comments 14:19
14:21 22:1
commission 19:5
19:5,10,16,17
committee 3:7
5:18,19 8:10
12:10 14:24 15:2
17:11 24:11 28:8
28:22 29:3 30:25
40:7,9 43:9 52:5
committee's 24:3
communication
51:8
companies 50:21
company 39:7
42:22
competing 28:18
28:23
competitive 31:17
complete 14:9
15:6 38:14 43:18
completed 35:22
compliance 32:7
complying 35:3
comprise 26:4
33:5
comprised 2:4
comprises 26:3
conceded 17:17
18:2

concepts 10:25
concludes 14:16
condition 30:11
conducted 29:4
conducting 34:4
conference 2:17
  9:10 34:11
conferred 32:23
conferring 17:9
confirm 36:19
confirmation 31:1
confirming 26:21
confirms 36:12
connection 3:17
  16:9 27:1
consecutive 18:22
  18:23 19:25
consensual 52:8
consent 24:15
  43:9
consented 15:15
consider 11:1
  18:12 28:21 30:14
  41:8
consideration
  30:24 32:17 33:12
  35:16
considered 32:3
consist 21:11
consistent 25:8
  28:10 33:23 34:25
  35:18
constituents
  10:18
constitutes 51:2
consultation 28:7
  29:3 30:24 43:9
consummate
  30:15
contained 52:1
contains 48:4
contemplated
  31:21

context 40:13
contingency 36:6
continue 24:11,14
  25:4
continued 24:7,7
  24:8 54:11
continues 14:14
continuing 31:23
  37:23 38:6
contract 43:11
conversation 18:1
  34:14,15
conversations
  40:8
copy 30:5
corneau 2:14 3:1
corp 6:10 8:5
corporation 32:9
  32:11,13,18,19,22
  38:16,16 39:11,11
corporations 47:7
correct 19:6 23:8
  25:1 33:12 35:14
  35:23 36:3 41:13
  42:7 50:12 53:13
counsel 8:24 9:23
  9:24 11:3,13,25
  15:3,16 32:23
  34:15 35:2 36:12
  36:17 43:24 44:21
  46:4 52:1
country 55:21
couple 39:2 43:1
course 40:18
  44:23
court 1:1,16 8:3
  8:13,15,19 9:6
  10:15 11:9,18,21
  12:4 13:5,23
  14:20 15:9,11,19
  15:22 16:15,17,25
  18:3,8,12,20,25
  19:7,19 20:9,15

20:20,22,24 22:11
  22:20,25 23:3,5,7
  23:9,12,17,21
  24:2,4,23 25:4,9
  25:13,16,17 30:6
  32:12,15,25 33:10
  33:22,25 34:19
  35:11,21,24 36:13
  36:13,17 37:3,5
  37:12,20,25 38:11
  38:20,23 39:2
  40:14,18 41:7,12
  41:16,20,24 42:10
  42:16,19,21,24
  43:12 44:2,4,9
  45:1,22,25 46:8
  46:14,17,22 47:3
  47:8,12,17,19,21
  47:24 48:9,23
  49:1,3 51:18,21
  51:22,25 52:9,16
  52:19 53:1,2,4,7
  53:11,14,18
court's 38:1
courthouse 7:4
cover 17:1,3
covered 16:22
  23:13,14
covers 16:19,25
  17:17
created 16:19
credit 2:20
creditor 5:19 6:3
  6:10 41:2
creditors 2:25 3:8
  5:18 8:11 12:9
  17:11,22 28:7,22
  29:3 30:25 39:1
cross 11:9,14
cumulative 19:8
current 25:10
  37:9

currently 12:14
  35:25

**d**

d 2:21 8:1 32:5,21
  49:18 54:1
d'amato 7:4
damages 11:16
data 12:9 48:22
date 2:7 9:18
  11:18,19 12:1,7
  16:22 21:9 25:16
  25:17 27:2 28:12
  45:4,10 52:25
  55:25
dated 27:7,10
dates 9:13
david 49:18
day 10:13 25:23
  28:17 37:16 40:19
  41:15 45:11 53:9
  53:10
days 2:7 9:16 10:4
  11:6 38:25 42:13
  44:22,23,25 45:1
  45:5,8,10,13,20
  46:7,7,9,10
db 1:25
deadline 28:11,13
deadlines 26:25
  28:9
deal 36:25 46:9
debate 39:3
debt 38:17
debtor 1:8 3:12
  3:17 6:17 9:18,20
  10:7 12:8,24 13:8
  13:11,17,24 14:2
  14:5,11,14 16:2,9
  19:12 20:1 21:22
  22:4 23:20 24:7,9
  24:13 25:22 26:1
  27:2 28:3,6,11,18
  29:2,9,12 30:13

30:17,23 31:10,14
31:22 32:23,25
35:12 36:1 40:9
40:22 41:3 43:8
49:10
**debtor's**  2:12 3:5
3:24 9:15 15:25
16:4,5,10,13 21:3
25:21 31:7 33:6
35:15 36:15,16
48:17 52:5
**debtors**  26:13
**december**  26:20
26:23 27:7 41:1
**decided**  11:13
28:7
**decision**  22:25
35:17 38:2,18
**decisions**  39:2
**declaration**  27:11
30:7 31:12
**deemed**  52:12
**defendant**  1:14
2:5
**delete**  46:17
**deleted**  48:3
**demands**  21:16
**denied**  28:25
**denominated**  20:1
21:10
**department**  7:1
13:17 26:12 36:25
**depends**  22:21
**deposit**  30:21,21
42:3 43:19,21
**derail**  49:4
**derailed**  49:5
**describe**  51:5
**described**  30:13
**designate**  31:3
**designation**  29:6
**designed**  21:18

**desire**  18:10 42:11
42:14
**destruction**  9:22
**determination**
38:21
**determined**  14:6
31:2
**determines**  43:10
48:5
**determining**
50:16
**developers**  30:4
**development**
10:22
**dialogue**  46:14
**different**  10:6,21
40:4,5 48:8 51:10
**diligence**  27:23
34:3
**dip**  16:18 17:2,3
17:12,16,16,24
18:6 24:10 28:8
29:3 30:25 43:9
52:4
**direct**  2:1 3:10
27:14,21 49:19
51:8
**direction**  38:12
**directors**  39:7
**disagreements**
34:3
**discovery**  13:10
15:7,14,15,17
40:11
**discuss**  24:11
**discussed**  20:6
21:23 22:6 41:22
**discussing**  17:18
46:4
**discussion**  34:3
**dispose**  22:5
**disposed**  39:22

**disposing**  22:9
**disposition**  4:3
10:12 21:5
**dispute**  11:15
15:17 23:1,2
38:21
**disruption**  45:20
**dissertation**  22:15
**district**  1:2 53:2
**docket**  16:2,6
21:2,3 25:25
26:24 27:7,12
**docketed**  15:1
**document**  9:21
**documents**  3:6
**doing**  12:10 16:8
**dollar**  20:15
**donated**  22:18
**donation**  22:22
**donor**  22:19
**dowling**  1:7,13
2:14 3:1,14,20,25
4:4 7:11 8:2,8,21
9:8 21:14 31:2
35:19 38:15 49:22
50:4,23
**dowling's**  21:8
33:20 34:25 35:1
37:18 38:5 51:3
**draft**  37:9
**dramatically**
12:21
**drop**  20:11
**due**  28:17

**e**

**e**  1:21,21,22 5:1,1
8:1,1 29:6 49:18
49:18 54:1 55:1
**eager**  31:20
**earlier**  51:9 52:23
**east**  6:12 29:5
53:1

**eastern**  1:2
**easy**  35:17
**ecro**  1:25
**edition**  24:1
**education**  5:11
8:18 13:18 26:12
29:18,22 31:3
36:25 52:17
**educational**  29:11
30:2 34:24 35:1
35:19 37:19 38:5
38:7 43:13,15
**effect**  12:21 25:7
**effective**  34:1
**effects**  21:12,16
**efficiently**  15:18
**effort**  10:3 13:18
51:7
**efforts**  27:18
**either**  11:24 28:15
47:2 52:4
**emails**  34:17
**emergency**  2:19
**emilio**  7:18 49:11
49:17,17,19
**employ**  3:16
**employment**  16:1
16:8
**ended**  24:18
**ends**  25:10
**english**  7:10
**ensure**  38:9
**enter**  3:13 26:23
48:20,23
**entered**  13:11
15:4 26:20 27:22
**enters**  25:17
**entire**  12:20
**entities**  39:7
**entity**  32:6
**entry**  15:25 26:25
27:7,12

envision 23:6
equipment 9:20
23:4,5 26:5
especially 39:8
essence 30:4 33:8
essentially 10:21
10:24 13:19 15:1
24:14 29:13 33:19
48:5
establish 25:24
establishing 3:23
16:4 19:3
estate 3:22 4:3
10:18 17:23 21:10
21:10,17 22:17,20
22:24 23:13,15,19
28:25 29:23 31:25
50:17 51:3,24
estate's 47:13
estates 50:21
estimate 48:16
estimated 26:1
evening 34:17
event 33:15
everybody 20:9
24:2 40:1 42:17
ex 2:10
exam 54:5
examination 3:4
14:24 49:19
excluded 23:7
excludes 26:5
37:17
exclusive 16:13
exclusivity 9:15
excuse 15:10
exercise 31:9
exhibit 27:10 30:7
existing 24:15
37:24
expect 12:16 14:9
45:14 51:23

expectation 24:19
expected 10:20
11:22 14:11 44:23
experience 11:4
38:25 50:19
experienced
50:16
expert 51:22
expertise 13:13
explain 50:19
explained 34:21
39:13
explanation 18:10
40:3
exposure 39:16,17
extend 9:15 24:17
extended 25:7
extending 36:4
extensive 30:23
31:16 51:7
extensively 21:23
27:13
extent 11:16
13:15 17:12,15
32:3,16 44:1
48:25
external 45:15
eye 39:21

**f**

f 1:21 2:13 3:23
55:1
facility 2:5 24:9
38:5,7 43:13,15
fact 47:24
factored 44:24
facts 31:14
faculty 12:19,19
21:12 22:14
fair 32:18 46:16
faith 40:14
fall 48:18
far 12:16 16:19
41:22

farrell 9:23 11:2
favor 23:19 26:8
26:11 28:5
federal 1:17 2:2,3
7:5
fees 19:2
felt 30:14
ferris 5:3
fifth 29:24
file 9:18 11:25
48:14
filed 12:12,20,25
14:2 22:2 25:23
25:25 26:16 27:2
27:12 28:2,4 30:7
41:1 43:2,2 52:11
53:9
filing 14:7 16:22
17:10
final 2:19 17:5
24:13
finalized 36:25
finally 14:12
financial 5:5 6:10
8:5 30:9,14,19
42:4
financials 15:19
39:9
financiers 45:15
financing 2:22
13:16 17:6 24:8,9
24:15
find 11:23 19:14
22:15 33:15 49:8
finding 44:9,11
46:20,24 47:9,12
48:9 49:9 51:25
finds 19:16 32:17
fine 45:23
firm 9:23 10:17
10:17 11:2 19:14
49:21 50:24

firm's 49:24
first 9:10 16:7
18:13 25:23 26:7
27:18 28:20
five 29:4 43:19,22
fixtures 26:4
floor 6:18
folks 39:16
follow 17:23
34:17
following 29:2
follows 12:14
29:17
foregoing 55:3
form 18:3 22:2
32:20 42:8,21
44:7 46:21
formal 35:7
formally 11:1
31:2
former 12:19
13:19 21:12 22:13
22:14
forms 14:7
forth 13:21 26:25
27:9 28:9 31:12
32:21
forty 27:21
forward 39:20
foundation 29:22
four 20:12 28:18
28:23
fourth 29:22
fpm 10:17
frame 44:18
frankly 34:24
free 2:13 3:22
41:10
friday 24:18
25:11,14 26:22
27:12 33:18 34:14
34:17 43:2

Case 8-16-75545-reg    Doc 298    Filed 04/24/17    Entered 04/24/17 14:53:42

[friedman - identified]                                                      Page 8

**friedman** 5:23
**fritz** 9:23 11:2
**front** 39:3
**full** 12:18,19
**funded** 42:2
**funding** 45:14,15
  45:18,21
**funds** 38:25
**furniture** 9:20
  26:5
**further** 30:14
  43:18 44:1 51:17
**furtherance** 36:6
  38:4
**future** 13:2 34:4,5
  34:21 35:5,16

**g**

**g** 8:1
**gaap** 15:19
**gain** 27:23
**garden** 7:14
**garfunkel** 6:1
  8:23
**general** 9:10
  12:23 32:14 39:14
**general's** 21:25
  32:24 33:17 52:11
**generally** 12:8
  51:5
**gifted** 21:14
**give** 10:12 13:3
  18:10 25:13 35:15
  47:14 48:16
**given** 9:12 18:3
  29:6 30:12
**glovsky** 5:3
**go** 8:13,14 17:12
  17:16 39:9 52:13
  53:18
**god** 49:13
**goes** 24:25
**going** 9:14 15:7
  22:25 39:20,22

41:23,24 44:13
  46:8,9,22 49:5
  53:11
**good** 8:4,6,9,12,16
  8:20,22 9:1,4,7
  25:18 42:24
**governed** 48:10
**governing** 32:7
**government** 13:23
  13:25 52:10
**governmental**
  52:10
**graciously** 15:5
**grant** 19:1,3
  20:24 24:4 52:16
**granted** 16:21
  17:8 28:10 54:6,7
  54:8,10,12
**great** 6:4,5 40:14
  53:15
**grossman** 1:22
**group** 29:23 31:3
  31:4 52:4
**groups** 27:22,24
  29:6 50:3
**guaranty** 6:10 8:5
**guess** 23:18
**guys** 11:9 20:22
  53:18

**h**

**h** 44:10
**half** 19:12,15,17
  19:17,20 20:4,10
  20:11,14,16,18
  50:9
**hammel** 5:8 9:4,4
**happen** 38:9
**happy** 18:9
**hawk** 27:3
**head** 23:21
**hear** 9:15
**heard** 18:25 24:23
  28:17 40:23 52:16

**hearing** 2:1,10,10
  2:13,16,19,19 3:4
  3:10,16,22 4:1
  9:13,14,17 18:1
  24:16,22 28:14,14
  28:21 37:15 41:4
**help** 27:4 49:13
**helpful** 36:12
**high** 29:17 35:20
  43:16
**higher** 28:19
  30:15 39:2
**highest** 19:25
  29:19,21,22,24
  30:1,19 31:18,19
**highly** 31:16
**hilco** 3:16 16:1,8,9
  16:13 19:14,23
**history** 21:14
**hoffman** 5:10
  8:17
**hold** 44:4
**holiday** 53:19
**homes** 50:7
**hon** 1:22
**honor** 8:4,6,9,16
  8:20,22 9:1,4,7,9
  9:11,13,14,17
  10:2,16 11:6,7,11
  11:20,24 12:7,13
  12:23 13:3,7,10
  13:15,17 14:1,5
  14:12,16,18,22,23
  15:4,21,23 16:6,7
  16:16 17:4,14
  18:9 19:9 20:17
  20:25 21:1,7,15
  22:4 23:1,8,10,22
  24:5,10,17,21
  25:2,6,11,15,19
  25:20,22 26:6,18
  26:23,23 27:6,9
  28:1,17,25 30:1,5

30:23 31:6 32:1,3
  32:15,20 33:13,17
  34:2,20 35:14
  36:3,4,19 37:14
  37:22 38:10,13
  40:7,24 41:8,14
  42:7,11,18,23
  43:4,15 44:1,3,6
  44:15,17,21 45:7
  46:3,5,13,19 47:4
  47:9,14,20 48:4
  48:24 49:10 51:17
  52:2,18,20 53:8
  53:13,16,17,21
**honor's** 14:15
  24:14 28:9
**hope** 17:25 24:19
**hopefully** 17:22
  18:22 24:21
**hoping** 15:18
**horse** 28:2,3,5,17
  28:19,21,24,24
  29:1,25 37:16
**hou** 5:15 8:12,12
  8:16,16 34:11,20
  36:19 37:4,9 45:7
  45:24 46:2
**hour** 26:2
**housekeeping**
  52:20
**howard** 7:16 8:20
**humble** 47:25
**hurt** 23:21
**hyde** 4:25 55:3,8
**hyman** 6:9

**i**

**ian** 5:8 9:4
**idea** 18:12
**identical** 43:15
**identification** 4:2
  21:5,20
**identified** 21:22
  28:2 47:16

Veritext Legal Solutions
212-267-6868                      www.veritext.com                      516-608-2400

identify 28:3
identifying 22:8
idle 26:2
immediately 23:24
impact 11:16 48:1
implementation 4:2 21:4
important 31:22 39:19,25
improvements 26:4
incentivize 19:7
include 49:24
included 22:1
includes 21:13 26:3 37:12
including 14:7 21:24 22:5 24:10 24:12 27:14 34:17
increased 39:16 39:17 43:21
increasing 12:21 30:21
indenture 6:3
indicated 22:14 33:19 35:2
indiscernible 8:25 15:12 23:10 36:24 37:11 44:14,20 45:10,19 46:2 50:6,22 51:9 52:22
indulge 40:25
information 13:8 13:11 27:23 51:11
initial 2:16 43:19 43:20
initially 30:22
inquiries 21:15 27:21
inspected 27:25

instance 19:22 34:8
instances 22:13
instantly 34:1
institutions 50:21
insured 13:7
intelligent 18:14
intend 9:18 22:4,4 25:7 36:20,22 40:12 43:25 45:3
intended 33:2 35:4,18,25 38:14 43:12,14,16
intent 36:9 38:4,6
intention 19:18 29:10,12 34:21 35:3,3 43:16
intentions 34:13
interest 43:3,5
interested 7:12 30:13
interestingly 33:17
interests 26:8 32:19
interim 24:15 25:4
internet 3:18 16:10 51:8
investment 51:12
investors 50:21
involved 21:24 24:19
ip 3:18,24 16:5,8 16:11,15,19,25 18:11 19:4 20:11
irrelevant 35:11
ish 51:10,10
island 29:23
islip 1:18 7:3,6
issue 12:5 17:19 36:1 39:3 40:17 42:6

issued 39:15
issues 24:12
item 15:23 24:5 25:20 47:4 52:21
items 9:9 14:17 21:9
iv 13:16,20
i'm 44:11

**j**

j 5:23 6:14
jack 2:7
jericho 5:20,21
job 53:15
joseph 2:13 3:1
journal 24:1
judge 1:23 38:2 38:18 47:19,24
judgment 26:17 31:7,9,14 41:2,6
judgments 26:6
june 2:6 24:25
jureller 6:16 8:7
justice 7:1

**k**

k 34:22 36:20 37:1
keep 39:20
keeping 42:1
kenneth 8:9
kept 30:18
kind 46:10
kiss 3:14,19,25 4:4
klein 7:10
kleinberg 7:16 8:20,21
klestadt 6:16 8:7
knew 41:25
know 10:12 12:5 18:14 22:15,18 34:25 36:11 40:16 43:4 47:13 48:21

knowing 48:16
knowledge 3:5 14:1
kpmg 3:4 14:24 15:2,5,16 40:11 54:5

**l**

l 49:18,18
l12 54:9
lab 23:4
land 37:6
language 43:1
large 22:2 50:8
larger 50:13
lauren 3:13,19,24 4:3
law 29:4 31:8 32:4 32:7,11,16,22 33:3,16,23 35:4 39:8,8 47:5,7,8,18 47:19
laws 38:1 39:15 40:13 48:11
leave 23:21
ledanski 4:25 55:3 55:8
left 22:14 34:2
legal 55:20
legitimate 38:17
lender 52:4
lenders 16:23 24:10 28:8 29:3 30:25 43:9 52:4
lending 50:20
letter 29:6
level 39:2
levels 30:10
levin 5:3
liabilities 39:9
liability 39:18
liable 40:2
licensed 34:23

licensing 38:8
lie 12:17
lien 16:15,17,18
  16:21,25 17:2,3
  17:17 23:14,14
  26:7,10 41:10
liens 2:13 3:23
  17:1,8 26:6,16,16
  26:17
light 31:14 33:16
likelihood 42:12
limited 12:15
  29:20 31:4
line 54:4
liquidation 38:24
liquidators 9:19
litigation 52:23
little 18:15,18
  38:3 49:4
liu 5:10 8:17
live 46:22
llc 5:11 8:18 16:8
  27:3,3 29:18 31:3
llp 3:4 5:10,17
  8:17
located 26:2
locked 11:23
long 47:22
longer 36:1
look 25:3 36:9,9
  38:2 40:10
looked 44:10
lori 2:7
lose 20:12
losses 31:24
lot 13:21 15:8
  39:17 45:20
lower 43:11
lowest 30:3

**m**

m 7:4 44:6,9,11,13
  46:18,20,23 49:18
  49:18

ma 5:6
madison 27:3
mailing 27:14
maintained 27:20
  27:23
making 37:23
management 2:16
manner 40:10
  43:14
march 3:19 16:2
  28:11,12,12
market 10:14
  14:14 27:4
marketed 27:13
marketing 3:17
  10:11 16:10 27:16
  27:18 31:16 49:25
  50:25 51:5,7
material 43:6
math 20:22
matter 1:6 8:2
  11:3,11 13:14
  15:2 21:1,2 33:14
  45:14 52:21,24
matters 9:12 11:7
maximize 31:24
mccord 6:14 8:4,5
meadow 6:12 29:5
mean 2:2 46:23
means 27:14 40:3
meant 18:13
  28:16 38:21
mechanics 26:16
media 51:8
medical 13:7
meet 33:8,10
meetings 10:6
members 7:11
  12:19,19 21:12
  32:19
memorandum
  27:15

mentioned 52:23
merrick 6:11
met 47:23
meyer 7:10 8:21
microphone 8:14
million 12:15,24
  12:25 26:12 29:15
  43:20 52:17
mineola 55:23
minor 43:1
mintz 5:3
miscommunicat...
  42:20
mission 35:1,19
misunderstanding
  45:2
model 17:21
modest 20:7
moment 15:14
month 36:22
morning 8:4,6,9
  8:12,16,20,22 9:1
  9:4,7,9,12 11:12
  15:24 21:1 24:6
  24:13 31:6 43:3
  48:8 49:2
morning's 25:21
  28:14
mortgage 26:13
motion 2:1,11,20
  3:4,10,22 4:1 9:15
  9:18,21,22 11:5
  11:14 13:10 16:3
  16:3,4,7,7 17:10
  17:13 18:10 19:1
  19:3 20:24 21:3,7
  21:18,23 22:2
  23:23 24:7 25:21
  25:23 27:2,12
  28:1,13 31:6 52:5
  52:16 54:5,6,7,10
  54:11,12

move 20:3
mt 1:25
multiple 29:16

**n**

n 5:1 8:1 49:18
  54:1 55:1
name 49:15,17
national 6:2
natural 44:23
ncf 29:20 31:4
  43:10
necessary 13:15
  33:8,22 44:1
neck 6:4,5
need 34:23 40:3
  48:22
needs 39:12
negotiate 17:18
negotiated 20:5
negotiating 28:6
negotiations
  17:19
net 31:24
never 26:13 49:5
new 1:2,18 5:13
  6:19 21:25 24:1
  32:10,12,21,24
  33:3,23 36:25
  37:25 39:8,8,21
  44:12 52:10
nice 53:18
nobody's 42:19
non 4:3 21:10,17
  22:24 32:4,7
  33:16 35:4 47:5,8
nondisclosure
  27:22
normal 40:18
normally 39:10
note 26:12 40:25
  42:25 44:7 47:5
  52:3

**notice** 21:18 23:24 23:25 26:19 32:14 45:9 52:13
**notwithstanding** 36:8
**november** 49:23
**number** 9:9 15:24 16:2,6 20:4 21:2,2 21:3 24:6 25:25 26:25 27:8,12
**numbered** 19:25
**numbers** 3:18 16:11 20:2,18
**nunc** 3:18 16:2
**ny** 5:13,21 6:5,12 6:19 7:6,14 55:23

**o**

**o** 1:21 8:1 49:18 49:18 55:1
**oakdale** 2:12 22:7 25:22,25 26:3,4,7 26:11 27:1,5,13 29:10,13 33:5,20 47:10 49:25 50:5 50:8,13 51:2,5 54:12
**object** 28:13
**objected** 28:22 42:19
**objection** 25:3 41:1,3,9,9 52:6,14
**objections** 12:16 13:1 23:23 52:3,9 52:12
**objects** 48:18
**obtain** 2:20,21 19:25
**obtained** 31:25 35:6,9 51:13
**occasionally** 41:25
**october** 14:10

**offer** 36:20
**offering** 27:15
**office** 7:3 9:2 11:13 20:7 22:1 32:13,24 33:2,18 34:7,9,12 52:11
**officers** 39:7
**offices** 29:5
**official** 3:7 5:18 8:10 15:2
**okay** 8:19 9:6 13:5 14:21 15:22 18:5,25 20:9,20 23:17 24:2,3,4 25:4 38:12 41:16 44:2 45:2,5,22,24 45:25 46:2 47:3 52:19 53:7,14
**old** 55:21
**once** 10:9 35:13
**open** 30:18 39:3
**operate** 35:7 37:19
**operations** 34:22
**opportunity** 21:19
**optionality** 10:22
**options** 10:21
**order** 2:10,16,19 3:12 13:10 15:25 16:4 17:6,24 18:3 18:22,23 21:4 24:13 25:7,17,17 26:20,24 27:7,22 28:9 30:15 31:10 34:1,1 41:15 42:9 42:21 43:2 44:23 46:1,9,17,20 47:23 48:1,4,10 48:20,23 52:1
**orders** 40:11
**outset** 26:19

**outside** 32:8
**overage** 19:20
**overall** 9:11 12:12 12:24
**overruled** 52:7
**overseas** 36:14
**oversight** 33:23
**overview** 13:3 14:17
**owns** 22:5 50:4

**p**

**p** 5:1,1 8:1
**p.c.** 6:1 7:10
**p18** 54:9
**pacing** 40:10
**page** 54:4
**painting** 22:18
**paintings** 23:3
**palace** 29:25
**papers** 22:14 42:16
**part** 20:17 22:2 31:9
**parte** 2:10
**participation** 13:19,20
**particular** 13:13 22:23
**particularly** 11:4 22:7
**parties** 10:7 17:10 21:24 23:25 24:10 24:19 26:18 27:21 30:13 35:17 38:11 39:6,18 43:3,5 51:10,11 52:12
**partner** 3:5 15:16
**partners** 27:3,3
**party** 7:12 13:8 14:19
**passed** 11:19 14:1
**paving** 41:2 52:6

**paving's** 41:6
**pay** 17:12 38:17 39:1
**payment** 39:1
**pc** 5:3
**people** 11:21 39:17 46:23
**people's** 46:10
**percent** 19:15,17 19:19,19,21 20:10 20:11,12 43:19,22 51:3,4
**percentages** 19:10
**perform** 3:13 33:21
**period** 24:18 41:13 45:9,11
**permit** 36:7
**permitted** 52:13
**person** 3:5 18:16 21:6
**personal** 21:7,12 21:16
**personally** 22:16
**persons** 2:5
**perspective** 14:16 35:8
**petition** 2:21,25 17:18 21:9 27:2 32:12
**phase** 10:4
**phone** 9:3
**photo** 27:15
**physically** 27:25
**pieces** 39:21
**place** 9:25 12:16
**plaintiff** 1:11 2:4
**plaintiff's** 11:12
**plan** 3:13 13:7 14:6,9
**planned** 33:21
**planning** 9:24,25 10:3,5,9,17 11:5

plate 41:19
plaza 1:17 7:5
please 8:3,15 9:3
  49:15
pleased 34:25
plus 20:11
po 7:13
podium 8:15
point 10:24 13:2
  13:22 14:21 17:5
  19:11 20:4 23:18
  24:20 34:4 38:17
  39:4,11 42:25
  43:7 45:13
points 21:14
  29:16
pool 12:9,22
popeo 5:3
portfolio 14:13
position 33:14,18
  43:21
possesses 19:13
possession 21:8
  24:9,13 31:10
possible 10:22
  17:7 31:23 42:12
  42:14 47:9
post 2:21 17:17
  38:8
potential 4:3
  10:19 11:15 13:1
  14:3 21:5 24:11
  25:11 26:16 28:3
  34:5 39:9,17
potentially 9:22
  11:16 12:1 21:11
  21:13,21 23:24
powerhouse 41:2
  41:6 52:6
practical 12:21
practice 25:8
pre 2:24 17:17

prefers 44:25
prepared 14:6
  48:24
prepetition 16:23
  52:4
present 35:6
  46:21
presented 24:21
  39:13
presently 14:3,8
  43:23
preserve 10:22
press 27:14
previously 10:16
  21:22 41:3
price 28:20 31:19
primary 40:20
princeton 5:11
  8:18 29:18 31:3
  31:13 36:5 52:17
principal 32:13
print 27:16
prior 16:22 25:8
  29:8 30:8 37:5
  45:7 50:24
priority 12:13,17
  12:20 41:6
private 34:22
pro 3:18 16:2
probably 41:16
problem 15:15
procedure 2:3,4
procedures 2:11
  3:23 4:2 14:15
  16:5 19:3 21:5
  25:24 26:20,24
  28:9 41:4 42:2
  54:7
proceed 22:8
  36:23 42:11,14
proceeding 44:12
  52:22

proceedings 55:4
proceeds 17:4,12
  17:16 38:14 41:11
process 10:13
  13:1,2,20 22:8
  23:6 31:16 34:6
production 3:6
  13:9
productive 34:15
professionals
  40:15
professor 22:13
proffer 44:7
profit 32:6,8,11
  32:21 33:3 37:25
  38:16,24 39:8,15
  40:13 47:6 48:11
profits 39:6,21
programs 13:20
progress 13:6
progressing 13:22
project 10:9 36:20
promoted 32:20
promotions 27:16
proof 30:9,19
proper 38:15
properties 14:14
  21:19
property 3:22 4:3
  21:6,8,9,10,17
  22:20,24 23:13,15
  23:19 26:4,17
  27:19 32:6 34:13
  34:22 35:9,21,25
  36:23 37:7,11,21
  37:23,24 51:11
  52:17
proposal 11:1
propose 23:23
proposed 10:10
  11:25 28:5,19,24
  29:25 31:8,13,22
  32:1,16 33:3 34:7

34:15 42:8 43:2
  52:7
proposing 23:25
protection 2:24
  41:5
protections 28:5
protocol 3:18
  16:10
provide 21:18
  30:9
provided 28:24
  34:16
providing 15:7
provision 46:17
  46:18 48:5
prudent 30:14
publish 23:25
purchase 31:18
  37:10,17 45:12
purchaser 34:7,12
  34:16 47:1
purchaser's 34:13
  35:2
purported 26:10
purpose 22:23
  34:24 35:8 37:1
  38:5,15
purposes 16:14
  17:15 29:11 32:18
pursuant 2:2,22
  2:24,25 3:10
  16:11 26:12 32:5
  32:10 42:2
pursue 35:8 43:25
put 36:17 40:15
  48:24 49:6

q

quadrangle 5:20
qualified 11:4
  29:4,5,9,12 30:9
  30:11 31:19
quarters 19:22

question   19:2
  45:4 53:12
questions   14:19
  14:20 18:14 34:12
  34:16 49:7 51:18
  54:8
quickly   31:23
  42:12,14
quite   42:7 45:15
  50:20 51:7,9
quote   32:20

r

r   1:21 5:1 8:1 55:1
raised   42:7
raising   43:7
raisner   2:7
rates   20:8
reached   24:20
read   18:13 39:17
  41:17 44:11
real   26:3 50:17
  51:3
really   19:10 21:18
  41:4 46:8
realty   27:3
reason   20:17
  21:21 46:11,11
reasonable   31:9
  32:18
received   13:9
  17:12 26:18 27:21
  28:18 30:22
recognition   41:5
reconciliation
  13:1
record   9:8 36:18
  37:16 40:16 41:1
  43:18 44:7 46:21
  47:16,22 48:12,19
  49:8,16 52:3 55:4
redevelop   29:13
redevelopment
  10:20

refer   30:2
reflect   49:8
reflects   48:12
reg   1:3,4
regard   14:12
  34:13,21 42:6
regarding   32:24
  33:1 44:19
regular   39:11
related   16:3
relates   21:7
relation   9:10,19
  9:21 14:24 16:20
  29:8 34:6 35:4
  41:15 44:22 49:22
  50:23 53:8
relative   41:6
  47:10
relatively   9:11
releases   27:15
relevant   17:10
  38:13
relief   22:2
remainder   47:13
remains   21:8
remark   36:13
remarks   52:24
reminded   44:21
removed   53:4
repeatedly   47:21
report   27:10
reported   2:5
  26:14
reporter   30:6
represent   31:8
  47:1
representations
  37:23
representatives
  10:8 13:18 30:24
represented   11:22
  12:2 51:25

representing   8:17
  34:11
represents   31:13
request   41:5
  44:22 45:19 46:5
  46:19
requested   30:18
  43:22
requesting   22:3
  51:10
require   13:12
  33:11 40:13 47:8
required   32:10,25
  37:6,6 38:1 46:7
  48:7
requisite   14:7
residential   14:13
resolution   24:12
  24:20
resolving   15:2
respect   22:7 25:2
  47:15
respective   30:20
respectively   29:7
responsible   39:6
  48:15
restricted   21:13
  21:21 22:17
restriction   22:22
result   17:22,23
  26:22 30:17
results   30:12
retain   9:22 19:1
  27:2 54:6
retained   10:17
  49:21
retention   9:19,21
  16:1,11 20:6
  49:24 50:23
retentions   27:6
retrieve   21:20
review   12:11,15
  33:2,7,9,11,21,22

40:11
reviewing   12:8
  13:11,14
richard   6:14 8:5
right   9:6 11:19
  12:4 17:14 18:8
  19:1 23:9 37:12
  37:19 38:10 39:5
  48:13 51:21
rights   46:11,12
risk   11:21
ritnand   29:22
road   6:4 55:21
robert   1:22 27:11
robust   21:18
  30:12
role   9:23 11:3
  33:23 47:25
rolling   15:7
ronald   5:23
room   5:12
rosenfeld   27:11
rosenfeld's   30:7
  31:12
rough   10:25
roughly   10:4 20:2
  20:4 50:5,6,9,11
rounds   29:16
rule   2:2,3,21 3:12
  14:25
rules   2:3
rulings   54:3
run   15:18 43:17
  44:23

s

s   5:1 8:1 27:11
  39:10
safeguarding   22:8
sale   2:11,12 3:24
  16:5 17:13,15
  18:4,23 19:3,16
  19:16 20:5 23:7
  25:22,24 26:3

27:1,11 28:1,13
28:14 30:8,15
31:8,13,17,23,25
32:1,4,8,16 33:3
33:11,15,20 35:13
35:21 36:6,7
38:15 40:10,20
41:22 47:7,17
48:5,11 49:25
52:7,13,16 54:7
54:12
**satisfied** 51:13
**satisfies** 38:1
**saturday** 34:18
**saw** 13:4
**saying** 38:20
39:19 40:16 48:10
48:20
**scale** 19:9
**schedule** 2:10,19
26:25 45:19
**scheduled** 12:12
12:13,24,25 15:14
24:16
**schedules** 47:16
**scheduling** 2:12
2:16
**schneiderman**
39:14
**school** 34:23 35:7
36:21 37:2 43:17
**scope** 11:15 24:12
49:24
**sealed** 28:11,16
**sean** 6:21 8:6 9:8
45:8
**season** 15:6
**seated** 49:15
**second** 26:10
29:19 41:18
**section** 2:20,24
31:10 32:5,21

**sections** 2:22,25
3:11 16:12 32:10
33:2,7 47:18 48:2
**secured** 2:21,25
17:11,22 52:4
**security** 17:17
26:7
**see** 11:6,14 20:23
39:10 44:10
**seek** 9:20 34:7
**seeking** 9:19
14:24 25:21,23
26:1 27:2 28:4
32:9 40:20 41:12
41:14 42:7,8
**seeks** 16:7,8
**self** 13:7
**sell** 3:22 9:20
14:14 18:15 19:7
20:10,18 26:1
27:4 32:9 41:10
52:5
**seller** 46:24
**selling** 16:14
**sense** 38:4
**sentiment** 40:8
**september** 14:10
**series** 26:8
**serve** 16:13 23:24
**served** 42:17
**services** 16:8
**set** 9:14 26:25
27:9 28:9 31:12
32:20 45:3
**seven** 27:21
**severance** 12:20
**shared** 12:9
**shown** 42:21
**showoff** 18:20
**side** 10:18 22:18
**sign** 25:13,14 34:1
**signed** 36:5 43:10

**significant** 12:16
17:22
**significantly** 18:2
50:13
**signing** 47:23
**silverman** 5:17
8:9,10 15:4,10,12
17:14 18:6,18,21
20:14 23:4 24:3
24:24 36:4 40:7
40:17 41:18,21,25
43:7 44:6,17,19
53:17,21
**silvermanacam...**
8:10
**sir** 8:14,15
**six** 19:17,19,19,21
20:11
**size** 19:21 20:1,3,3
**sliding** 19:5
**slightly** 48:8
**small** 19:8
**smoothly** 13:22
15:18
**sold** 19:22,22,24
20:11,13,16,21
37:18 51:23
**sole** 40:21
**solutions** 55:20
**somebody** 10:15
49:6
**somewhat** 17:4
**sonya** 4:25 55:3,8
**sorry** 21:2 44:5
**sort** 35:16
**sought** 13:8 16:11
**sound** 31:13
**southard** 6:16,21
8:6,7,7 9:7,8
10:16 11:11,20,24
12:5 13:6,25
14:22 15:21,23
16:16,18 17:1,14

18:9 19:6,9,21
20:13,16,21,25
22:13,21 23:1,6,8
23:10,15,18,22
24:5 25:1,6,10,15
25:19,20 33:13
34:2,20 35:13,23
36:3,16 37:14,22
38:10,13,22 40:24
41:8,14,19,22
42:6,11,18,20,23
42:25 43:14 44:3
44:5,15,18,21
46:3,13,16,19
47:1,4,14,20 48:4
48:24 49:2,10,20
51:17 52:2,18,20
53:3,6,8,13,16,20
**speak** 12:3 15:3
43:24
**special** 9:22,23
11:3
**specific** 17:19
44:18
**specifically** 37:17
**spell** 49:15
**spent** 18:13
**spoken** 14:13
**staff** 21:12
**stalking** 28:2,3,5
28:17,19,21,24,24
29:1,25 37:16
**stan** 7:8 9:1
**stand** 49:7,11
**standard** 32:20
48:22
**standards** 33:10
47:23
**start** 15:7
**starting** 15:6,13
29:15
**state** 9:3 17:13
21:25 32:11,12,15

32:16,24,25 33:23
34:23 38:8 47:19
47:24 49:15 52:10
**stated** 51:9
**statement** 33:1
37:15
**states** 1:1,16 7:1
52:10
**status** 9:10 10:3
14:17
**stay** 41:15
**stayed** 28:13
**steps** 35:8
**stevens** 6:16 8:7
**stewart** 7:13
**stip** 15:5
**stipulation** 15:1
**straight** 36:7
**streambank** 3:16
16:1,9,13
**street** 6:18 24:1
**stressful** 45:16
**strike** 45:25
**stuff** 48:16
**subchapter** 39:10
**subject** 16:17
**submissions** 26:21
**submit** 25:7 32:11
43:4
**submitted** 29:18
29:20,21,23,24
**subsequent** 36:8
42:4
**substantially** 32:9
33:6,21 47:7,10
48:6,21
**success** 35:11
**successful** 18:24
31:4,17,20 32:1
**sufficient** 47:22
**suggested** 34:9
46:5

**suite** 5:20 7:13
55:22
**summer** 16:22
**suozzi** 7:10 8:21
**superfluous** 36:10
**superpriority**
2:22 17:2
**supplemental**
30:21
**support** 3:13
27:11 30:7
**supported** 31:7
**supreme** 32:12
**sure** 39:16 41:22
**swear** 49:12
**synch** 18:4

### t

**t** 6:7 55:1,1
**take** 10:12 13:14
33:12 47:24
**taken** 12:16 13:21
35:7
**talked** 41:3
**talking** 22:12
37:20,21
**tax** 15:6
**technical** 33:14
**telephone** 33:19
34:10
**telephonically** 5:8
**tell** 34:19 42:10
49:12
**telling** 47:25
**terminate** 14:6
**terminated** 2:6
**terms** 9:13 10:2
10:14,25 11:3
12:7,23 13:6,12
13:16 19:10 20:6
24:12,15 31:7
32:17 40:9 47:5
51:8

**testified** 50:10
51:22
**testify** 44:8
**testimony** 47:15
48:25 49:9
**thank** 14:22 18:9
20:25 23:22 24:5
25:6,15,19 49:10
49:21 51:16,18,20
52:2,18 53:14,16
53:17
**thing** 49:4
**things** 12:18
21:11 27:4 30:19
31:18 39:19 40:10
40:19 41:21
**think** 10:13 12:21
13:22 18:1 19:23
20:17 33:13 35:15
36:10,12,15 38:1
38:13,17,20 39:14
39:19,25 40:21
44:9 45:2,22
46:20,23 48:2,7
**third** 13:8 29:21
53:9,10
**thought** 41:16,16
**three** 19:22 29:9
30:1,19 49:7
51:12
**threshold** 19:11
33:8
**time** 10:11 11:14
12:19,19 13:21
17:5 18:13 24:20
28:1,6 29:16 34:5
40:18 41:13 52:15
**timeframe** 31:21
**timely** 28:18
**times** 14:13 22:6
**timing** 44:24
**title** 13:16,20
42:22

**today** 14:18 18:3
34:11 40:17 41:15
41:19 43:24 45:9
51:23 52:6
**today's** 52:21
**toggle** 19:11 20:4
**told** 34:19
**top** 30:15
**topics** 15:16
**total** 12:25 48:12
51:24
**toured** 27:24
51:11
**town** 10:1,5,7,23
10:25 11:5,5
**track** 49:6 53:11
**tracking** 53:12
**tract** 50:6
**traditional** 27:15
40:6
**transaction** 31:21
32:14,16,17 42:13
**transactions** 3:6
**transcribed** 4:25
30:6
**transcript** 30:5
55:4
**transfer** 32:5,8
33:6
**transparency**
40:4
**tremendous** 18:21
**trigger** 33:9
**true** 39:23 55:4
**trued** 43:20
**trueing** 30:21
**trust** 26:9
**trustee** 6:3 7:2
8:24 9:5 26:8 31:1
52:5
**trustee's** 9:2 20:7
**trustees** 7:12 31:1

**truth** 49:12,13,13
**try** 9:11
**trying** 10:21
**tunc** 3:19 16:2
**two** 16:24 17:1
  19:10 20:11 26:15
  29:11 30:3,3
  45:10 48:1 49:7
  50:24 51:12
**type** 14:3 22:15
**types** 22:11 29:10
**typically** 19:24

**u**

**u.s.** 1:23 7:2 9:2
  13:17 20:6 26:11
  30:25 52:5
**u.s.c** 2:13 3:23
**u.s.c.** 2:22,24,25
**ultimate** 11:15
**ultimately** 22:10
  25:24 28:4,16,25
  34:23
**umb** 5:4 6:2 8:23
  9:5
**understand** 12:10
  19:18,23
**understanding**
  10:3,10 14:25
  17:9 33:4,18 36:5
  36:14,15,16 40:1
  47:6
**understood** 33:1
  46:13
**undoubtedly** 13:2
**unfold** 13:2
**unfortunately**
  38:24
**unique** 27:19
**united** 1:1,16 7:1
  52:9
**unperfected**
  26:14

**unrecorded** 26:11
**unsecured** 3:7
  5:18 8:11 12:23
**unsold** 50:6
**unusual** 17:4
**upped** 42:4
**urgency** 22:7
**urgent** 45:14
**usage** 37:13,21,22
  38:7,25
**use** 10:20 22:23
  24:8,8 29:10 34:4
  34:5,22,24 35:5
  35:16,18,25 36:6
  37:6,24 38:14
  43:12,14,16
**user** 30:2 51:12
**utilize** 2:23

**v**

**valid** 38:25
**valuable** 22:16
**valuation** 50:20
**value** 18:21 19:25
  22:16 30:10 31:24
  45:17 48:17 50:16
  50:24 51:3,13,24
**vanderbilt** 29:25
**various** 10:6,18
  13:18 21:14,15
  24:12 29:10,16
  39:6
**verified** 32:11
**veritext** 55:20
**view** 11:2 41:4
  47:18,25 48:17
**visible** 40:21
**visit** 41:18
**visitors** 27:19
**vs** 1:12

**w**

**wait** 20:23
**waived** 45:5

**waiver** 41:12,15
  42:8 44:22 45:19
  46:5
**waiving** 46:9
**wall** 24:1
**want** 18:25 24:23
  40:25 45:4,5
  46:23,24 49:3
**wanted** 13:3
  40:15,19 47:5
**wants** 45:1
**warn** 52:23
**way** 35:1,19 43:6
**we've** 14:13 15:7
  22:6 40:8 41:3
**web** 27:16
**webpage** 27:19
**week** 24:18 26:22
  32:23
**went** 15:16
**west** 6:18
**we'd** 24:17
**we'll** 36:23
**wherewithal**
  30:10,14,20
**wild** 6:1 8:23
**wiles** 38:2,18
**willing** 36:17
**wind** 36:21
**window** 10:13
**winters** 6:16 8:7
**wish** 40:23
**wishing** 52:15
**witness** 7:18
**wizards** 20:23
**wondering** 44:12
**words** 20:10
**work** 22:14,15
  38:7 49:1 50:20
**worked** 2:5
**working** 10:15,18
  12:8 13:17 14:8
  17:19,21 24:24

**works** 20:23
  48:15
**worth** 47:13 48:16
**wrong** 41:17
  48:13

**x**

**x** 1:5,9,15 54:1

**y**

**yang** 7:8 9:1,1
  25:2
**yeah** 19:22 40:14
  41:7 50:20
**year** 14:7,10 38:3
  38:3 39:14 49:23
**years** 22:19
**york** 1:2,18 5:13
  6:19 21:25 24:1
  32:11,12,21,24
  33:3,23 36:25
  37:25 39:8,8,21
  44:12 52:10

**z**

**zaikowski** 1:10
  2:8
**zheng** 5:10 8:17
**zoning** 37:13