SILVERMANACAMPORA LLP  
Attorneys for the Committee  
100 Jericho Quadrangle, Suite 300  
Jericho, New York 11753  
(516) 479-6300  
Kenneth P. Silverman  
Ronald J. Friedman  
Brian Powers  

Hearing Date: May 22, 2017  
Time: 1:30 p.m.  

Objections Due: May 17, 2017  
Time: 4:00 p.m.  

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
------------------------------------------------------------x  
In re:  

DOWLING COLLEGE f/d/b/a DOWLING  
INSTITUTE f/d/b/a DOWLING COLLEGE  
ALUMNI ASSOCIATION f/d/b/a CECOM  
a/k/a DOWLING COLLEGE, INC.  

                Debtor.  
------------------------------------------------------------x  

Chapter 11  

Case No. 16-75545 (REG)  

# FIRST INTERIM APPLICATION OF SILVERMANACAMPORA LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR PERIOD DECEMBER 12, 2016 THROUGH AND INCLUDING MARCH 31, 2017, AND REIMBURSEMENT OF EXPENSES

**Name of Applicant:** SilvermanAcampora LLP

**Authorized to Provide Professional Services to:** The Official Committee of Unsecured Creditors

**Date of Retention:** February 17, 2017, effective December 16, 2016

**Period for which Compensation and Reimbursement are Sought:** December 12, 2016 through March 31, 2017

**Amount of Compensation Sought:** $205,992.50

**Amount of Expense Reimbursement Sought:** $242.35

**This is a:** First Interim Application

SILVERMANACAMPORA LLP
Attorneys for the Committee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Kenneth P. Silverman
Ronald J. Friedman
Brian Powers

Hearing Date: May 22, 2017
Time: 1:30 p.m.

Objections Due: May 17, 2017
Time: 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

DOWLING COLLEGE f/d/b/a DOWLING
INSTITUTE f/d/b/a DOWLING COLLEGE
ALUMNI ASSOCIATION f/d/b/a CECOM
a/k/a DOWLING COLLEGE, INC.

Chapter 11

Case No. 16-75545 (REG)

Debtor.
-----------------------------------------------------------x

### FIRST INTERIM APPLICATION OF SILVERMANACAMPORA LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR PERIOD DECEMBER 12, 2016 THROUGH AND INCLUDING MARCH 31, 2017, AND REIMBURSEMENT OF EXPENSES

SilvermanAcampora LLP ("**SilvermanAcampora**" or the "**Applicant**"), counsel to the Official Committee of Unsecured Creditors (the "**Committee**") of Dowling College f/d/b/a Dowling Institute f/d/b/a Dowling College Alumni Association f/d/b/a Cecom a/k/a Dowling College, Inc. (the "**Debtor**"), the above-captioned debtor and debtor in possession, submits this first interim application for compensation (the "**Application**") seeking entry of an order pursuant to sections 105 and 330 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and General Order 613 dated June 4, 2013 Re: Guidelines for Fees and Disbursements for Professionals in Eastern District of New York Bankruptcy Cases (the "**Guidelines**"), and respectfully sets forth and represents as follows:

### INTRODUCTION

1.      By this Application, SilvermanAcampora seeks (a) interim allowance and award of compensation for the professional services rendered as counsel to the Committee for the period of December 12, 2016 through and including March 31, 2017 (the "**Application Period**")

in the amount of $205,992.50, and (b) reimbursement of actual and necessary expenses incurred by SilvermanAcampora during the Application Period in connection with the rendering of its services in the amount of $242.35.

2. Pursuant to the Court's order dated December 21, 2017 (ECF Doc. No. 117) (the "**Monthly Compensation Order**"), all estate professionals retained in the Debtor's case must submit monthly fee statements (the "**Fee Statements**") to the Debtor, the Debtor's counsel, the Committee, the Debtor's secured creditors, and the United States Trustee each month, and may receive a total of eighty (80%) percent of fees and one hundred (100%) percent of expenses, subject to future allowance of this Court. Accordingly, in connection with its Fee Statements and pursuant to the Monthly Compensation Order, by the hearing on this Application, Applicant expects to have received $164,794.00 with respect to its accrued fees and has been reimbursed $242.35 with respect to actual and necessary expenses.

3. Jurisdiction over these proceedings and this Application is based upon 28 U.S.C. §§157(a) and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Eastern District of New York, dated December 5, 2012, effective as of June 23, 2011 (Amon, C.J.). This Court is the proper venue for this proceeding in accordance with 28 U.S.C. §§1408 and 1409.

4. The statutory predicates for the relief requested herein are Bankruptcy Code § 330 and Bankruptcy Rule 2016.

## BACKGROUND

5. On November 28, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court.

6. On December 9, 2016, the Office of the U.S. Trustee filed a *Notice of Appointment of Creditors' Committee* (ECF Doc. No. 85) appointing Ultimate Power Inc., Linda Ardito, and Lori Zaikowski to the Committee. The Committee selected Applicant as its counsel, and Applicant's retention was approved by the Court on February 17, 2017 (ECF Doc. No. 206).

7.  The Debtor is authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor-in-possession under Bankruptcy Code §§ 1107 and 1108.

8.  To date, no trustee or examiner has been appointed in this matter.

## THE APPLICATION

9.  This Application is Applicant's first interim application requesting payment of compensation and reimbursement of expenses, and this Application is made pursuant to Bankruptcy Code § 330.

10. Applicant is a firm of sixteen (16) attorneys, concentrating in the practice of, among other areas, insolvency, reorganization, bankruptcy, and litigation related matters. Applicant has extensive experience in representing debtors, creditors, creditors' committees and trustees in bankruptcy proceedings before numerous Bankruptcy Courts, including the Eastern and Southern Districts of New York. As a result of Applicant's extensive experience, Applicant submits that the services it rendered in this case, as set forth below, were efficient, economical and effective.

11. A chart setting forth the categories of services rendered to the Committee by Applicant is annexed hereto as **Exhibit A**. Annexed hereto as **Exhibit B** is a chart setting forth the amount of time each professional and para-professional expended and the current hourly billing rate for each individual. The hourly rates for each of Applicant's employees and professionals is the same rate Applicant charges its clients for similar services rendered in bankruptcy and non-bankruptcy matters. Applicant believes that these rates constitute market rates and are equal to or less than the rates charged by professionals with similar experience. Annexed hereto as **Exhibit C** is a chart setting forth the disbursements Applicant has incurred on behalf of the Committee during the Application Period.

12. This Application contains a summary of the legal services which Applicant rendered during the Application Period. In light of the extensive services rendered by Applicant on behalf of the Committee, Applicant has summarized the major categories of services which

were rendered, the principal problems confronted, and the results achieved. For a detailed itemization of the actual services rendered by Applicant on behalf of the Committee during the Application Period, the Court and interested parties are referred to the time records and invoices annexed hereto as **Exhibit D**.

## PROFESSIONAL SERVICES RENDERED

13. During the Application Period, Applicant rendered a wide range of professional services which were substantial, necessary and beneficial to the Committee, the Debtor's estate and creditors, and other parties in interest. Applicant devoted substantial professional time and resources to address a variety of issues in the Debtor's case on behalf of the Committee.

### Asset Analysis

14. Pursuant to the terms of the DIP Facility (defined below) agreed to between the Debtor, the DIP Lenders (defined below), and the Committee, the Committee retained the ability to challenge the claims and prepetition liens of the DIP Lenders. Accordingly, Applicant, on behalf of the Committee, requested and received substantial documentation from the DIP Lenders in support of their claims and prepetition liens. During the Application Period, Applicant spent considerable time reviewing and analyzing the documentation provided by the DIP Lenders and preparing a memorandum to the Committee with respect to the results of that analysis. As of the date hereof, Applicant's analysis remains ongoing.

15. During the Application Period, Applicant also analyzed potential claims that the Debtor's estate may have against various parties. In furtherance of this analysis, the Committee determined that certain historical financial records, including audit documentation, would need to be received from the Debtor's auditor, KPMG LLP ("**KPMG**"). Accordingly, Applicant, on behalf of the Committee, prepared, filed, and served an application pursuant to Bankruptcy Rule 2004 to obtain the necessary documents from KPMG. Subsequent to the filing of that application, Applicant entered into discussions with KPMG to resolve the application and provide for a schedule to turn over the requested documents. Based on the Committee's agreement with KPMG with respect to its Bankruptcy Rule 2004 application, Applicant prepared

a stipulation and proposed order, which was "so ordered" by the Court on April 12, 2017 (ECF Doc. No. 281).

**Asset Sale**

Oakdale Campus

16.　At the outset of the Debtor's chapter 11 case, the Debtor filed a motion to approve the procedures for the sale of its campus located in Oakdale, New York (the "**Oakdale Campus**"). Accordingly, upon the formation of the Committee and its retention of Applicant, Applicant expended considerable time reviewing all of the pleadings and related documentation concerning the proposed sale of the Oakdale Campus, as well as taking part in lengthy conference calls and meetings with the Debtor's counsel and its retained real estate brokers with respect to the proposed sale and marketing process. During the marketing process for the Oakdale Campus, Applicant reviewed weekly updates from the Debtor's retained brokers and had numerous discussions with the Debtor's counsel and real estate brokers with respect to the status and prospects of the sale to provide the Committee's input in an effort to ensure that the sale of the Oakdale Campus was performed as efficiently as possible.

17.　As the bid deadline approached, the Debtor received an offer from Vanderbilt Palace LLC to be the stalking horse bidder in the auction of the Oakdale Campus, subject to approval of a proposed asset purchase agreement (the "**Stalking Horse Agreement**") by the Court, in the amount of $8 million. However, through Applicant's discussions with the Debtor's real estate brokers, the Committee learned that the Debtor would be receiving one or more initial bids higher than the Stalking Horse Agreement and, therefore, the approval of the termination fee and expense reimbursement provisions in the Stalking Horse Agreement was unnecessary and not in the best interests of the estate. Accordingly, Applicant prepared, filed, and served an objection to the Debtor's application to approve the Stalking Horse Agreement, and the Court denied that application by order dated April 5, 2017.

18.　Subsequent to the Application Period, the auction of the Oakdale Campus concluded with a winning bid of $26.5 million, which sale was approved by the Court.

Residential Portfolio

19.  In addition to the Oakdale Campus sale, the Debtor also sought authority to sell thirty-two (32) parcels of residential real property (the "**Residential Portfolio**") that are located adjacent to or near the Oakdale Campus.  Applicant, on behalf of the Committee, reviewed the Debtor's application and the proposed procedures for the sale of the Residential Portfolio and discussed the procedures with the Committee.  Additionally, with respect to the proposed sale of each individual property of the Residential Portfolio, Applicant reviewed the Debtor's notice of proposed sale and related documentation with respect to the potential value of such property to ensure that the proposed sale is in the best interests of the Debtor's estate.

**Case Administration**

20.  Simultaneous with the filing of its chapter 11 petition, the Debtor filed several "first day" motions seeking interim and final relief.  Upon Applicant's retention by the Committee, Applicant reviewed the "first day" motions and met with the Committee to discuss its position with respect to the relief sought in each motion.  On behalf of the Committee, Applicant then prepared, filed, and served a statement of no objection with respect to seven (7) of the "first day" motions.

21.  Additionally, during the Application Period Applicant, on behalf of the Committee, attended several status conference and hearings, as well as the meeting of creditors held pursuant to Bankruptcy Code §341(a) in the Debtor's case.  Applicant has also reviewed the Debtor's monthly operating reports and other administrative filings in the Debtor's chapter 11 case.  Moreover, in Applicant's capacity as counsel to the Committee, Applicant responded to numerous inquiries from creditors regarding the Debtor's chapter 11 filing and the status of the Debtor's case.

**Claims Administration / Objections**

22. During the Application Period, Applicant, on behalf of the Debtor's estate and in consultation with the Debtor, began the process of reviewing and analyzing the proofs of claim filed by creditors of the Debtor's estate, which process remains ongoing.

**Creditors Meeting**

23. During the Application Period, Applicant spent considerable time attending meetings of the Committee and advising the Committee with respect to the bankruptcy process. Applicant discussed with the Committee relevant matters in the Debtor's case, including outstanding motions, the sale of the Oakdale Campus and the Residential Portfolio, potential claims of the Debtor's estate, and the debtor in possession financing from the DIP Lenders.

**Fee Application**

24. Pursuant to the Monthly Compensation Order, all estate professionals retained in the Debtor's case must submit Fee Statements to the Debtor, the Debtor's counsel, the DIP Lenders, and the United States Trustee each month. During the Application Period, Applicant reviewed each professional's fee statements to ensure that the services rendered were in the best interest of the Debtor's estate.

**Financing**

25. On the Petition Date, the Debtor filed a motion to authorize it to obtain a debtor in possession financing facility (the "**DIP Facility**") from ACA Financial Guaranty Corporation and UMB Bank, National Association (together, the "**DIP Lenders**") to fund the Debtor's post-petition obligations, chapter 11 expenses, and the costs associated with the liquidation of its assets.

26. During the Application Period, Applicant spent considerable time reviewing the proposed terms of the DIP Facility and negotiating with the Debtor and the DIP Lenders with respect to the terms of proposed interim orders authorizing the DIP Facility, including proposed budgets. Applicant attended several hearings during the Application Period with respect to

approval of the DIP Facility, and the Court has entered several orders approving the DIP Facility on an interim basis.

27. In addition, Applicant has spent considerable time negotiating with the DIP Lenders regarding a potential carve-out from the DIP Lenders' collateral in favor of the Debtor's estate, including reviewing and revising a term sheet prepared by the DIP Lenders. As of the date hereof, the Committee's negotiations with the DIP Lenders are continuing and the Committee is hopeful that a consensual resolution will be reached in the near future.

### Retention Orders

28. Due to the complexity of the Debtor's chapter 11 case, the Debtor needed to retain various professionals to represent the Debtor's estate. Applicant, on behalf of the Committee, reviewed those applications to ensure that the proposed retentions complied with the Bankruptcy Code and Bankruptcy Rules, and were in the best interests of the Debtor's estate.

29. In addition, Applicant, prepared and filed the Committee's application for authority to retain Applicant as its counsel in the Debtor's chapter 11 case. On February 17, 2017, the Court entered an order (ECF Doc. No. 206) granting that application.

### LEGAL STANDARD

30. Bankruptcy Code §330(a)(1)(A) provides that the level of compensation that the court may award to an estate professional, including the Committee's counsel, should be "reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such person . . . ." 11 U.S.C. §330(a)(1)(A).

31. In awarding compensation to retained professionals pursuant to Bankruptcy Code §330, courts take into account the cost of comparable non-bankruptcy services, among other factors. *In re Busy Beaver Bldg. Center, Inc.*, 19 F.3d 833, 848 (3d Cir. 1994) ("[T]he principal purpose of the 1978 amendments to section 330 was to compensate bankruptcy attorneys at the same level as non-bankruptcy attorneys."). *See also*, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 329 (1977) ("Bankruptcy specialists, however, if required to accept fees in

all cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field."); 124 Cong. Rec. H11, 091-92 (daily ed. Sept. 28, 1978); §17, 408 (daily ed. Oct. 6, 1978).

32. When reviewing fee applications, courts generally use the "lodestar" approach, pursuant to which the court first establishes a reasonable hourly rate of compensation based on the value of the services provided and the cost of comparable services, and then multiplies such rate by the reasonable number of compensable hours. *See Busy Beaver*, 19 F.3d at 849, n.21. *See also, In re Drexel Burnham Lambert Group, Inc.* 133 B.R. 13, 21—22 (Bankr. S.D.N.Y. 1991) (stating courts employ lodestar approach "with the 'strong presumption' that the lodestar product is reasonable under §330") (citations omitted); *In re West End Fin. Advisors, LLC*, 2012 Bankr. LEXIS 3045, *12 (Bankr. S.D.N.Y. July 12, 2012) ("The rules that govern fee awards and time record keeping in bankruptcy mirror those that apply in non-bankruptcy cases. Courts outside of bankruptcy generally apply the 'lodestar' method . . . .") (citations omitted); *In re Cena's Fine Furniture, Inc.*, 109 B.R. 575, 581 (E.D.N.Y. 1990).

33. When determining whether services for which compensation is sought were reasonable, courts should only disallow fees where "a [c]ourt is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive." *In re Drexel*, 133 B.R. at 23. *See also, Nicholas v. Oren (In re Nicholas)*, 2011 Bankr. LEXIS 4498, *16 (Bankr. E.D.N.Y. 2011) ("[C]ourts are 'not to penalize attorneys by viewing the efforts of counsel with the benefit of '20/20 hindsight.'" (quoting *In re Drexel,* 133 B.R. at 23)).

34. Additionally, Bankruptcy Code §503(b) provides that, after notice and a hearing, administrative expenses can be awarded and paid including "compensation and reimbursement awarded under section 330(a)." 11 U.S.C. §503(b)(3).

35. Bankruptcy Code §504 prohibits professional persons receiving compensation under Bankruptcy Code §503 from sharing or agreeing to share: "(1) any such compensation or

reimbursement with another person; or (2) any compensation or reimbursement received by another person under such sections." 11 U.S.C. §504(a).

36. All services for which compensation and reimbursement of expenses are requested by Applicant were performed for and on behalf of the Committee. No agreement or understanding exists between Applicant and any other person for the sharing of compensation to be received for the services rendered in connection with Applicant's representation of the Committee, and no action prohibited by Bankruptcy Code §504 has been made by Applicant. Annexed hereto as **Exhibit E** is a Certification required by the Guidelines.

37. Applicant respectfully requests that this Court consider that the services required to be performed have been efficiently performed with effective results. Applicant has expended substantial time rendering professional services to the Committee in furtherance of the rights and interests of the Debtor's estate and its creditors.

38. No previous application or motion for the relief requested herein has been made to this or any other Court.

## CONCLUSION

39. It is impracticable to set forth in a fee application a detailed description of each and every service rendered to the Committee. SilvermanAcampora, however, believes that this Application appropriately sets forth the more significant matters handled and provides this Court with a comprehensive overview of the scope of the services rendered. Thus, SilvermanAcampora submits the fees sought herein are reasonable and the services rendered were necessary, effective, efficient and economical.

40. Based on the foregoing, SilvermanAcampora respectfully requests that this Application for interim allowance and payment of fees and reimbursement of expenses be granted in all respects.

**WHEREFORE,** SilvermanAcampora seeks the entry of an order (i) approving its first interim fee application for the award and payment of allowance for compensation for services rendered to the Committee in the amount of $205,992.50, (ii) authorizing and directing the reimbursement of expenses of $242.35 for a total fees and expenses in the amount of $206,234.85, and (iii) granting such further relief as this Court may deem just and proper.

Dated: Jericho, New York
April 27, 2017

                                             SILVERMANACAMPORA LLP
                                             Counsel to the Committee

                                             By: s/ Ronald J. Friedman
                                                  Ronald J. Friedman
                                           Member of the Firm
                                           100 Jericho Quadrangle, Suite 300
                                           Jericho, New York 11753
                                           (516) 479-6300