**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                              :    Chapter 11
                                                   :
DOWLING COLLEGE,                                   :
f/d/b/a DOWLING INSTITUTE,                         :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                     :
ASSOCIATION,                                       :
f/d/b/a CECOM,                                     :
a/k/a DOWLING COLLEGE, INC.,                       :
                                    Debtor.        :
----------------------------------------------------------------x

**DEBTOR'S MOTION FOR AN ORDER (I) APPROVING PROCEDURES**
**FOR THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS,**
**CLAIMS AND ENCUMBRANCES, (II) AUTHORIZING THE EMPLOYMENT**
**AND COMPENSATION OF TIGER CAPITAL GROUP, LLC**
**AS LIQUIDATION AGENT, AND (III) GRANTING RELATED RELIEF**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the

above-captioned chapter 11 case (the "Chapter 11 Case"), submits this motion (the "Motion")

for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Order") (i)

approving procedures for the sale of certain assets, free and clear of liens, claims and

encumbrances, (ii) authorizing the employment and compensation of Tiger Capital Group, LLC

("Tiger") as liquidation agent, and (iii) granting related relief. In support of this Motion, the

Debtor submits the Declaration of Jeff Tanenbaum, attached hereto as **Exhibit B** (the

"Tanenbaum Declaration").  In further support of the Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a), 327, 328 and 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2014, 2016, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules").

**BACKGROUND**

4.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

5.      The Debtor continues to manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On December 9, 2016, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code.

7.      Additional background facts surrounding the commencement of this Chapter 11 Case are more fully described in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration") [DE 23].

## BACKGROUND

**A.     The Assets**

8.      By this Motion, the Debtor is seeking to sell certain personal property that was formerly used in the Debtor's operations (collectively, the "Assets").  In connection with the proposed sale, the Debtor and Tiger entered into a liquidation services agreement (the "Agreement")[1] which provides for Tiger to act as the exclusive agent to the Debtor, a copy of which is attached as **Exhibit 1** to the Tanenbaum Declaration.  The Assets include certain furniture and equipment identified on Exhibit A-1 to the Agreement, but except certain excluded assets identified in Exhibit A-2 to the Agreement.  For the avoidance of doubt, no complete inventory list of the Assets exists.

9.      The Debtor submits that the Assets are of relatively *de minimis* value and are of no use to the Debtor in relation to the Chapter 11 Case.  The Assets are currently located at both of the Debtor's campuses.

**B.     Tiger's Qualifications**

10.      Tiger provides advisory, valuation, disposition, and auction services within a broad range of retail, wholesale, and industrial sectors.  With over 40 years of experience and substantial financial backing, Tiger's professionals help clients identify the underlying value of assets, monitor asset risk factors, and, when needed, convert assets to capital quickly and efficiently.  Tiger maintains offices in New York, Boston, and Los Angeles.

11.      Tiger's Commercial & Industrial division has facilitated the disposition through auction of over $1 billion of equipment and wholesale inventories for small businesses, the United States Bankruptcy Court, and such fortune 500 companies as Apple Computer, Read Rite Corporation, and ExxonMobil.

12.      Tiger has no connection with the Debtor, its creditors, or any other parties in interest, except as disclosed in the Tannenbaum Declaration.  Tiger does not hold or represent

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

any interests adverse to the Debtor or its respective estates and is a "disinterested person" as that term is defined by the Bankruptcy Code.

**C.      The Proposed Sale Procedures**

13.      To avoid the unnecessary costs and delays associated with obtaining Court authorization for the separate sale of each of the Assets, the Debtor proposes to hire Tiger to sell the Assets, in whole or in part, at live, online and/or sealed bid auction(s) and/or private sale(s) (collectively, the "Sale") to the highest bidder for each particular Asset or group of Assets.  The Debtor proposes the procedures set forth in this Motion as an alternative to the procedures set forth in Local Rules 6004-1 and 6005-1, and requests that the requirements of the Local Rules be waived with respect to the Sale based upon the notice provided by this Motion.

14.      In order to facilitate the Sale, Tiger proposes to conduct one or more online auctions.  Tiger's site preparation team will organize, tag, and number the Assets, and will photograph the Assets for use in the online auctions.

15.      As set forth in Section 3 to the Agreement, the Assets are currently located in various locations, including:

- 150 Idle Hour Boulevard, Oakdale, NY
- 120 Central Boulevard, Oakdale, NY
- 75 Idle Hour Boulevard, Oakdale, NY
- 65 Chateau Drive, Oakdale, NY (collectively, the "Oakdale Campus"); and
- 1300 William Floyd Parkway Shirley, NY 11967[2]("Brookhaven Campus").

Tiger proposes to maintain the Assets at all of the locations for buyer reviewing and removal. The auction will occur entirely online.

**D.      Abandonment of Unsold Assets**

16.      The Debtor proposes to abandon any items that are not deemed worthy of inclusion in the Sale by Tiger or which Tiger is unable to sell (collectively, the "Unsold Assets") and will dispose of the same to the extent required to comply with any other agreement approved by the Court (including associated with the sale of the Oakdale Campus).

---

[2] Excludes assets located at the Brookhaven Residential Village dormitory.

E.      **Compensation of Tiger**

17.     It is proposed that Tiger will be entitled to the following compensation: Tiger is proposing to provide the first proceeds of up to $155,000 to the Debtor (the "Guarantee Amount"), with the next $125,000 payable to Tiger as reimbursement of expected costs (the "Agent Reimbursement"), and for any amounts over $280,000, Tiger shall retain 15% as its share (the "Agent Revenue Share"), plus retention of a buyers' premium of 18% (the "Buyers' Premium") on all sale proceeds.

18.     Per Section 9 of the Agreement, the foregoing compensation structure is subject to modification in the event that the Court's order permitting the sale and retention of Tiger is delayed beyond May 8, 2017.  Given the Debtor's anticipated timing for the hearing of this Motion and approval of the same, the expected Guarantee Amount will be reduced to $85,000. Moreover, under certain circumstances and contingencies, the Guarantee Amount and related provisions will become null and void.

19.     In the event of cancellation of the Sale[3] following the Court's approval of this Agreement and Tiger's retention, Tiger's guarantee becomes null and void and the Debtor is required to pay a cancellation fee ($10,000 per week from date of retention to date of cancellation) and reimburse actual costs expended.

20.     Section 11 of the Agreement proposes that Tiger be authorized to deduct the compensation (including the Buyers' Premium), any costs due Tiger per the Agreement, and sales taxes collected from the proceeds of the Sale (collectively, the "Retained Proceeds") and deposit the Retained Proceeds into Tiger's segregated trust account.  Tiger shall remit the remaining proceeds of the Sale (the "Net Income") to the Debtor no later than twenty-one (21) days after the Sale is completed.  Tiger shall not be entitled to withdraw the Retained Proceeds from its segregated Trust Account until after the Net Income has been delivered to the Debtor.  It is requested that Tiger not be required to apply to the Court for payment of the compensation,

---

[3] For instance, it is possible that the current proposed purchaser of the Debtor's Oakdale Campus may seek to purchase the Assets associated with and located on the Oakdale Campus.  Under that circumstance, the Debtor would be able to cancel the Sale.

Buyers' Premium, or Costs.  It is further requested that all funds due to Tiger under the terms of the Agreement shall be paid to Tiger before any payment in satisfaction of any security interest, lien, or encumbrance against the Assets or the proceeds thereof.

### BASIS FOR RELIEF

A.    **The Sale is Within the Debtor's Sound Business Judgment and Should be Approved Pursuant to Section 363 of the Bankruptcy Code.**

21.    Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  When considering a motion to approve the sale of property, the Court must find that a "good business reason" justifies the sale.  *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).  Courts have uniformly held that approval of a proposed sale of a debtor's assets outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate when a sound business reason supports the transaction. *See In re Lionel Corp.*, 722 F.2d at 1071; *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007); *Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65, 83 (S.D.N.Y. 2010); *In re Ionosphere Clubs*, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

22.    The Debtor submits that the proposed Sale is an exercise of sound business judgment and is in the best interests of Debtor's creditors.  The Sale of the Assets will benefit the Debtor's estate and its creditors and will save the estate the continued accrual of post-petition administrative expenses.  Furthermore, the procedures set forth herein will allow the Debtor to sell the Assets promptly and efficiently.  The procedures set forth herein will also conserve judicial resources by obviating the need for separate motions for approval of the sale of assets with relatively *de minimis* value.  Obtaining Court approval for each sale of an Asset would result in unnecessary administrative costs attendant to drafting, serving and filing pleadings, as well as time incurred by attorneys for appearing in Court, all of which would reduce the realized value of the Assets.  Thus, in the Debtor's business judgment, the proposed Sale in accordance with the procedures set forth herein in the best interests of the Debtor's estate and creditors.

23.     On April 12, 2017, the Court entered an order approving the sale of the Oakdale Campus to Princeton Education Center LLC [DE 285].  The closing is expected to occur in May, 2017.  The Debtor contemplates completing the process of removing the furniture and equipment located at the Oakdale Campus no later than July 31, 2017, and the purchase agreement contemplates the same.  As such, there is some urgency associated with the Debtor's efforts to dispose of the furniture and equipment located at the Oakdale Campus.

**B.      The Assets Should be Sold Free of Liens, Claims and Encumbrances.**

24.     A debtor may sell property free and clear of liens, claims and encumbrances if one of the following conditions is satisfied:

1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;
2)  such entity consents;
3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
4)  such interest is in bona fide dispute; or
5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See, e.g., In re Borders Group, Inc.*, 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011) (court may approve sale "free and clear" provided at least one of the subsections is met).

25.     The Debtor is aware of DIP Lender's first position priming lien on the Assets and potential liens of both Trustees for the 2006 Bonds and the 2015 Bonds.  To facilitate the proposed sale transactions, the Debtor requests that the Court authorize that the Sale(s) of Assets pursuant to this Motion be free and clear of any and all such liens, claims and encumbrances (collectively, the "Liens") with any such Liens to automatically be transferred and attach to the net proceeds.

26.     In addition, pursuant to General Order 557, the Debtor is required to highlight any "extraordinary provisions" of the proposed sale of the Assets.  The extraordinary provisions in the proposed sale are as follows:

(a)    <u>Use of Proceeds</u>.    Upon consummation of any sale of the Assets, after Tiger is paid its commission from the sale proceeds of the Assets, the Debtor shall pay the remaining net cash proceeds to the administrative agent for its post-petition secured lenders (the "<u>DIP Agent</u>"), which payment shall be applied to the Debtor's Obligations in accordance with the terms of that certain Debtor-in-Possession Multi-Draw Term Loan Promissory Note dated as of November 29, 2016, by and among the Debtor and each lender party thereto and the DIP Agent (as amended, supplemented, restated or otherwise modified from time to time in accordance therewith, the "<u>DIP Note</u>").

**C.    Purchasers of the Assets Are Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

27.    Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good faith," the Second Circuit has found that:

[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (quoting *In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978)).  The Debtor will conduct all sales of the Assets at arm's-length, thereby entitling the purchasers to the protections afforded by section 363(m) of the Bankruptcy Code.

**D.    Permitting the Debtor to Abandon the Unsold Assets is Appropriate Under the Circumstances.**

28.    Section 554(a) of the Bankruptcy Code provides that a debtor in possession may abandon, subject to Court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

29.     There may be Assets that Tiger is unable to sell.  The Debtor, through Tiger, will take all reasonable steps to sell the Assets, however, any items not deemed worthy of inclusion in the Sale or any items for which no offers are received would be burdensome for the Debtor to remove and the costs of storing and maintaining such Unsold Assets would further burden the Debtor's estate.  The Debtor submits that the inability to consummate a commercially reasonable sale of any Unsold Assets would indicate that they have no meaningful monetary value to the Debtor's estate.  Moreover, the Debtor believes that the cost of retrieving, marketing and reselling the Unsold Assets, if any, would far outweigh any recovery the Debtor could hope to attain for the Unsold Assets.  Thus, the Debtor submits that the abandonment of any Unsold Assets is in the best interests of the Debtor, its estate and creditors.  *See US Airways Group, Inc.*, 287 B.R. at 645 (noting that abandonment of property is governed by the sound business judgment standard).

30.     For the avoidance of doubt, the Debtor is not intending that this request to abandon will override any contractual obligations that may existing under the purchase agreement approved by this Court in relation to the sale of the Oakdale Campus.

**E.     The Court Should Authorize the Employment and Compensation of Tiger, as the Liquidation Agent.**

31.     The Debtor seeks approval of the fee arrangement under the Agreement pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code to retain and employ Tiger as its liquidation agent to assist with the sale and disposition of the Assets in this Chapter 11 Case. Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

32.     As recognized by numerous courts, Congress intended Section 328(a) to enable a debtor to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to review if the terms are found to be improvident in

light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861, 862–63 (5th Cir. 1997); Henry A. Leonard & Co. v. United States Trustee (In re River Foal, Inc.), 161 B.R. 568, 569 (Bankr. S.D.N.Y. 1993).

33.     Section 327(a) of the United States Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more ... auctioneers, or other professional persons that do not hold or represent an interest adverse to the estate, and that are disinterested persons to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

34.     Thus, under the Bankruptcy Code, an auctioneer or other professional person such as Tiger may be employed so long as such professional does not (i) hold or represent an interest adverse to the estate, and (ii) is a "disinterested person."

35.     The term "disinterested person" is defined by Section 101(14) of the Bankruptcy Code as follows:

> The term 'disinterested person' means a person that — (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

36.     As set forth in the Tanenbaum Declaration, Tiger and each of its professionals are "disinterested persons" as that term is defined by the Bankruptcy Code.  Neither Tiger nor any of its professionals is a creditor, equity security holder, or insider of the Debtor, is or was a director, officer, or employee of the Debtor, or has any interest materially adverse to the interests of the estates or any class of creditors or equity security holders.

37.    A generally accepted definition of "adverse interest" is the (i) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (ii) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (iii) possession of a predisposition under circumstances that create a bias against the estate.  *See Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 845 (9th Cir. 2008).

38.    In the present case, as set forth in the Tanenbaum Declaration, neither Tiger nor any of its professionals hold or represent any interest that would either tend lessen the value of the bankruptcy estates or would create an actual or potential dispute with the estate.  Moreover, neither Tiger nor any of its professionals possess a predisposition that creates any bias against the estate.  Accordingly, Tiger does not hold or represent any adverse interest in connection with this case.

39.    The Debtor submits that the fee structure set forth in the Agreement is reasonable under Section 328(a) of the Bankruptcy Code in light of (a) the nature and scope of services to be provided by Tiger, (b) industry practice with respect to the fee structure proposed by Tiger, (c) market rates charged for comparable services both in and out of chapter 11, and (d) Tiger's substantial experience as liquidation agent.

40.    In addition, the terms of the Agreement were negotiated in good faith and at arms-length between the Debtor and Tiger and reflect the Debtor's evaluation of the value and expertise of the work to be performed by Tiger.

41.    As discussed above, Tiger is well qualified to assist the Debtor in the sale of the Assets.  Tiger is an experienced and highly competent agent that has liquidated items similar to the Assets on several occasions.  As such, Tiger has substantial experience in providing auction

services and is well qualified to conduct the proposed auctions of the Assets. Therefore, Tiger satisfies the requirements for employment under the Bankruptcy Code, and the Court should authorize the Debtor to employ Tiger pursuant to sections 327 and 328 of the Bankruptcy Code.

42. The Debtor respectfully submits that inasmuch as Tiger's compensation is results oriented and directly related to benefits received by the Debtor's estate as a result of the sale transactions, requiring Tiger to file detailed time records and fee applications in accordance with Sections 330 and 331 of the Bankruptcy Code, and in compliance with Bankruptcy Rule 2016 and the Fee Guidelines is unnecessary under the circumstances. The Debtor has been further advised by Tiger that it is not its practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis.

43. Given the auction process and the qualifications of Tiger discussed above, the Debtor respectfully submits that the Court should authorize the employment and compensation of Tiger on the terms proposed herein.

## NOTICE

44. Notice of this Motion will be given to (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) counsel to the Creditors' Committee; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002; and (f) all parties who are known to assert a lien, claim, encumbrance or other interests on any portion of the Assets.

## **NO PRIOR REQUEST**

45.     No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE,** the Debtor respectfully requests that this Court (a) enter the Order substantially in the form attached hereto as **<u>Exhibit A</u>**; and (b) grant to the Debtor such other and further relief as the Court may deem proper.

Dated:   New York, New York
        April 28, 2017

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   */s/ Sean C. Southard*
        Sean C. Southard
        Lauren C. Kiss
        200 West 41st Street, 17th Floor
        New York, NY 10036
        Tel: (212) 972-3000
        Fax: (212) 972-2245
        Email: ssouthard@klestadt.com
                lkiss@klestadt.com

        *Counsel to the Debtor and Debtor in Possession*

# <u>Exhibit A</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                               :     Chapter 11
                                    :
DOWLING COLLEGE,              :
f/d/b/a DOWLING INSTITUTE,     :     Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI  :
ASSOCIATION,                :
f/d/b/a CECOM,               :
a/k/a DOWLING COLLEGE, INC.,    :
                                    :
                         Debtor.    :
-------------------------------------------------------------x

**ORDER (I) APPROVING PROCEDURES FOR THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, (II) AUTHORIZING THE EMPLOYMENT AND COMPENSATION OF TIGER CAPITAL GROUP, LLC AS LIQUIDATION AGENT, AND (III) GRANTING RELATED RELIEF**

Upon the motion by Dowling College (the "Debtor") for an Order (I) Approving Procedures For the Sale of Certain Assets Free and Clear of Liens, Claims and Encumbrances, (II) Authorizing the Employment and Compensation of Tiger Capital Group, LLC as Liquidation Agent, dated April 28, 2017 (the "Motion")[1] and upon the declaration of Jeff Tanenbaum, dated April 28, 2017 and attached to the Motion as Exhibit B (the "Tanenbaum Declaration"); and it appearing that Tiger Capital Group, LLC ("Tiger") is a disinterested person pursuant to Section 101(14) of title 11 of the United States Code (the "Bankruptcy Code") and does not represent an interest adverse to the Debtor's estate; and it further appearing that the sale of furniture and equipment located at the Debtor's campuses in the manner set forth in the Motion is in the best interests of the Debtor's estate; it is

**ORDERED,** that the Motion is granted as set forth herein; and it is further

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**ORDERED**, that the Debtor, by and through Tiger, is authorized to sell the Assets (as that term is defined in the Motion and the liquidation services agreement (the "Agreement", a copy of which is annexed as Exhibit 1 to the Tanenbaum Declaration) in whole or in part, at live, online and/or sealed bid auction(s) and/or private sale(s) (collectively, the "Sale") to the highest bidder for each particular Asset or group of Assets, in the manner set forth in the Motion; and it is further

**ORDERED**, that the Sale shall be free and clear of any and all liens, claims and encumbrances (collectively, the "Liens") with any such Liens to automatically be transferred and attach to the Net Income (as defined in the Agreement); and is further

**ORDERED**, that the Debtor will conduct the Sale of the Assets at arm's-length, thereby entitling the purchasers to the protections afforded by section 363(m) of the Bankruptcy Code; and it is further

**ORDERED**, that the Debtor shall be permitted to abandon pursuant to Section 554(a) of the Bankruptcy Code, any Assets that remain unsold following conclusion of the Sale by Tiger; and it is further

**ORDERED,** that the retention of Tiger as liquidation agent to the Debtor to perform all of the services set forth in the Motion on the terms set forth in the Motion and the Tanenbaum Declaration is hereby approved pursuant to Sections 327(a) and 328 of the Bankruptcy Code; and it is further

**ORDERED,** that the compensation to be paid to Tiger in accordance with the terms set forth in the Agreement shall not be subject to any further review or approval of this Court; and it is further

**ORDERED**, that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

**ORDERED**, that if there is any inconsistency between the terms of this Order, the Motion, and the Tanenbaum Declaration, the terms of this Order shall govern.

**NO OBJECTION:**

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE


By:_____
Stan Yang, Esq.
TRIAL ATTORNEY

# Exhibit B

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                             :    Chapter 11
                                                  :
DOWLING COLLEGE,                                  :
f/d/b/a DOWLING INSTITUTE,                         :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                     :
ASSOCIATION,                                       :
f/d/b/a CECOM,                                     :
a/k/a DOWLING COLLEGE, INC.,                       :
                                                  :
                                    Debtor.        :
------------------------------------------------------------------x

**DECLARATION OF JEFF TANENBAUM IN SUPPORT OF**
**DEBTOR'S MOTION FOR AN ORDER (I) APPROVING PROCEDURES**
**FOR THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS,**
**CLAIMS AND ENCUMBRANCES, (II) AUTHORIZING THE EMPLOYMENT**
**AND COMPENSATION OF TIGER CAPITAL GROUP, LLC AS**
**LIQUIDATION AGENT, AND (III) GRANTING RELATED RELIEF**

      I, Jeff Tanenbaum, pursuant to Federal Rule of Bankruptcy Procedure 2014(a), make this

declaration (the "Declaration") in support of the *Debtor's Motion for an Order (I) Approving*

*Procedures For the Sale of Certain Assets Free and Clear of Liens, Claims and Encumbrances,*

*(II) Authorizing the Employment and Compensation of Tiger Capital Group, LLC as Liquidation*

*Agent, and (II) Granting Related Relief* (the "Motion") of the above-captioned debtor and debtor-

in-possession (the "Debtor").

1.      I am the President of the Commercial & Industrial division of Tiger Capital Group, LLC ("Tiger").  I make this Declaration in support of the Motion in accordance with the liquidation services agreement between Tiger and the Debtor dated April 28, 2017 (the "Agreement"), which is attached as **Exhibit 1** hereto.

2.      All statements made herein are made based on knowledge, information and belief.

3.      Pursuant to the Agreement, the Debtor has sought to employ and retain Tiger as liquidation agent for the Debtor to assist with the sale and disposition of certain personal property that was formerly used in the Debtor's operations (collectively, the "Assets").

4.      The Debtor has numerous creditors and other parties in interest with which it maintains business relationships.  In connection with the Debtor's proposed retention of Tiger in this Chapter 11 Case[1], Tiger has reviewed the list of parties in interest provided by the Debtor (the "Potential Parties in Interest").  Tiger undertook a comprehensive review of these parties to determine whether it had any conflicts or other relationships that might cause it to not be disinterested or to hold or represent an interest adverse to the Debtor.

5.      For purposes of disclosure, the principals of Tiger have a 10% ownership interest in A&G Realty Partners, LLC, one of the Debtor's real estate advisors in this Chapter 11 Case.

6.      Other than as set forth herein, neither I, nor Tiger, to the best of my knowledge, have any connection with the Debtor, the Debtor's estate, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

7.      In addition, to my knowledge:

        a.      Tiger does not hold or represent an interest adverse to the Debtor's estate.

        b.      Tiger is and has not been a creditor or an insider of the Debtor.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

c.    Tiger is or has not been, within two years before the Petition Date, a director, officer, or employee of the Debtor.

d.    None of Tiger's employees, officers, or directors is related to the Hon. Robert E. Grossman or has a connection to the U.S. Trustee or to any known employee in the office thereof.

8.    Disclosure will be made to the Court of any such connection to be discovered or to occur in the future while the Agreement is in effect.

9.    Insofar as I have been able to ascertain, neither I, nor Tiger, represent any interest adverse to the Debtor in this case.  To the best of my knowledge, Tiger is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

10.    Pursuant to the terms of the Agreement, Tiger will be compensated for the services rendered to the Debtor primarily on a fixed fee and/or percentage based commission (and buyer's premium paid to it by third party buyers).  Both inside and outside of bankruptcy, Tiger is often engaged on a substantially similar basis for similar work.  Furthermore, the compensation contemplated in the Agreement is consistent with the market rates for such engagements.

11.    Accordingly, I believe that Tiger is eligible for employment and retention by the Debtor pursuant to the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure.  This Declaration is provided in accordance with Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

12.     I declare that the foregoing statements are true, are based upon my personal

knowledge, and are made under penalty of perjury under the laws of the United States.

Dated:  April 28, 2017

Jeff Tanenbaum
President – Commercial & Industrial
Tiger Capital Group, LLC

# **Exhibit 1**

This Agreement is entered into effective this 26th day of April 2017, between Dowling College ("Seller") and Tiger Capital Group, LLC ("Agent"), each a "Party" and collectively the "Parties".

Section 1.        Purpose of Agreement.  Seller hereby retains Agent to act as its exclusive agent to assist in the sale of all furniture and equipment (hereinafter referred to as the "Assets") of Seller, as per the attached Exhibit A-1 as viewed by Agent on March 8, 2017, with such exclusions as listed on the attached Exhibit A-2, at one or more publicly marketed sale(s) (hereinafter referred to as the "Sale(s)").  Agent hereby agrees to use its professional skill, knowledge and experience to the best advantage of both Parties, but makes no representations or warranties regarding the outcome of the Sale, except to the extent as may be provided for in this Agreement.

Section 2.        Title to the Assets.  Seller shall be responsible to file such notices and/or comply with such legal processes, as may be required to ensure that Agent, as agent of the Seller, shall have the right to convey all Assets to purchasers free and clear of any liens, judgments or encumbrances whatsoever.   This Agreement is subject to approval by the U.S. Bankruptcy Court in the form of employment and sale orders, which shall be in a form and substance reasonably satisfactory to Agent and which shall include provisions: (a) granting the requisite authority for Agent to proceed and conduct the Sale(s) as provided herein, (b) to sell the Assets to the highest bidders without further confirmation, (c) permitting reimbursement to Agent of its Costs from the proceeds of the Sale(s), without further application to the Bankruptcy Court and (d) permitting the Agent, without further application to the Bankruptcy Court, to collect and retain the Buyer's Premium and to retain any additional compensation which may be due per this Agreement (the "Employment and Sale Orders").

Section 3.        Location of Assets.  The Assets are located at the following site(s), collectively referred to as the "Premises".

150 Idle Hour Boulevard, Oakdale, NY
120 Central Boulevard, Oakdale, NY
75 Idle Hour Boulevard, Oakdale, NY
65 Chateau Drive, Oakdale, NY
( the above properties, collectively, the "Oakdale Campus")

1300 William Floyd Parkway Shirley, NY 11967[1]("Brookhaven Campus")

Section 4.        Date and Time of Sale.  Agent shall schedule the Sale date to occur on or about June 28, 2017 (the "Sale Date"), and complete the removal of sold Assets by July 31, 2017.

Section 5.        Manner of Sale.  Seller hereby authorizes Agent to sell the Assets, in whole or in part, at live, online and/or sealed bid auction(s), and/or private sale(s) to the highest bidder thereof Agent shall conduct the Sale in a manner intended to maximize recovery given the expedited time frame necessary to vacate the Premises.  Agent shall have complete authority to conduct the Sale in the manner, and utilizing the methods, that Agent deems, in its professional judgment, to be appropriate and in the best interest of Seller.  Seller hereby agrees

---

[1] Excludes assets located at the Brookhaven Residential Village dormitory.

that it will not effectuate any sale of the Assets on its own without utilizing the services of Agent in connection therewith.

Section 6.        <u>Sale Process</u>.  Agent is hereby authorized by Seller to be its sole and exclusive agent to sell the Assets. Upon execution of this Agreement, Seller will turn over all sales or negotiations for sales of the Assets to Agent, as well as all contact information for parties that have expressed interest in the Assets to Seller.  Except as set forth in this Agreement, Seller agrees not to remove any Assets from the Sale for any reason after execution of this Agreement.  The Sale shall be without reserve.  Agent shall be authorized to accept, as Seller's agent, cash, cashiers' checks, guaranteed checks, Visa, MasterCard and American Express as payment for the Assets sold.  Agent shall be responsible to collect, report, and remit sales tax collected during the Sale(s).  Seller shall be the principal party in interest for the Sale of all Assets.  Upon full payment for the Assets by purchaser Seller hereby authorizes Agent to execute on its behalf, all bills of sale, receipts and other documents necessary to transfer title to the Assets as well as to provide Seller's federal employer identification number to purchasers, their agents, customs officials or similar parties for the limited purpose of completing a Shipper's Export Declaration form or any documentation reasonably necessary to facilitate the respective purchaser's export of the Assets.  Agent shall not be responsible for any purchaser that fails to live up to its obligation to complete a purchase of any of the Assets.

Section 7.        <u>Revenues</u>.  All monies collected from the Sale(s) of the Assets, plus any Buyers' Premium(s), Sales Tax and other funds collected shall be referred to herein as "Revenues".   For the purpose of this Agreement, "Sale Proceeds" shall be defined as Revenues, not including Buyers' Premium and Sales Taxes collected.

Section 8.        <u>Compensation</u>.  The following shall define Agent's fees ("Compensation"):

   a.  Sale Proceed Distribution

| | | | | |
|---|---|---|---|---|
| i. | First | $155,000 | 100% to Seller | "Guarantee Amount" |
| ii. | Next | $125,000 | 100% to Agent | "Agent Reimbursement" |
| iii. | Over | $280,000 | 85% to Seller | "Seller Revenue Share" |
| | | | 15% to Agent | "Agent Revenue Share" |

   b.  Buyers Premium.  Agent shall charge a Buyers' Premium on all Sales at a rate of 18%.  The Buyer's Premium will be added to each purchaser's invoice and paid directly to Agent by purchasers.  The Buyer's Premium shall not be considered part of the sale proceeds or property of the Seller.

Section 9.        <u>Guarantee.</u>  Agent shall guarantee to the Seller the Guarantee Amount, provided:

   a.  The Assets available at the time of Sale include, at a minimum, the Assets as described on the attached "Exhibit A" of this Agreement;

   b.  Where applicable, clean and ready for transfer vehicle titles have been provided;

c.  The Assets remain in the condition as inspected by Agent on March 8, 2017 (subject to exclusions defined herein);

d.  Seller cooperates with the Sale Process and meets its obligations as otherwise defined herein;

e.  Agent is allowed to use the Premises without interruption to perform the services contemplated herein, with the following caveats:

    i.  In the event Agent is authorized by Court Order to begin Sale preparations by May 8, 2017, the Guarantee Amount shall remain as defined in Section 8.a.i.

    ii.  In the event Agent is authorized by Court Order to begin Sale preparations after May 8, 2017 but by May 24, 2017 (provided 48 hour advanced notice), the Guarantee Amount and the sharing threshold as defined in Section 8.a.iii. shall each be reduced by $70,000.

    iii.  In the event Agent is not authorized by Court Order to begin Sale preparations until after May 24, 2017, the Guarantee Amount shall be reduced by $155,000 and the sharing threshold as defined in Section 8.a.iii shall be reduced to $125,000.  Further, in such event, Agent shall have the right to cancel the Agreement with no recourse by either party.

f.  No other party claims rights to the Assets or Sale Proceeds and all Assets shall be, from and after entry of the Employment and Sale Orders, free and clear of all liens, claims, and encumbrances

g.  In the event that Assets are excluded, omitted or missing at the time of sale that are considered an included Asset per Exhibit A-1 for any reason,  the Guarantee Amount shall be reduced by an amount to be mutually agreed in good faith by Seller and Agent, provided, however, that in the event of any loss (i.e. fire, theft, vandalism), the Seller shall submit an insurance claim and treat the funds received on account of such claim as Sale Proceeds to satisfy Agent's obligations to the Guarantee Amount or lower the Guarantee amount at Agent's sole discretion.  Nothing in this provision is intended to authorize Seller's removal of Assets from the Sale, but rather to provide a remedy in the event of an occurrence outside of Seller's control.

h.  To protect its financial vesting in the Assets, Agent shall be authorized to retain, for future sale, any Assets for which Agent does not receive bids sufficient to support its Guarantee to Seller ("Retained Asset(s))".  Following the Sale, and until such time as a Retained Asset is removed from the Premises or such time as Agent assumes responsibility for occupancy costs associated to the Retained Assets, a sale of a Retained Asset shall be calculated into the Sale Proceeds for purposes of calculating the Sale Proceeds.  Once Agent removes any Retained Asset(s) from the premises, revenues from a future sale of such Retained Asset(s) shall be retained exclusively by Agent, until such time as Agent's Guarantee and Costs have been recuperated by Agent, after which time, revenues from Retained Assets will be distributed per Section 8, after deduction for any costs incurred for the Assets' removal and storage .  However, in no event shall the disposition of Retained Assets alter Agent's obligations to the Guarantee Amount to Seller.

Section 10.        Sale Costs.  Agent shall be responsible for all sale related expenses (hereinafter referred to as "Costs") incurred by Agent in preparing for and conducting the sale, including labor, marketing, supplies and other related costs.  The following expenses have not been included in the Costs and are not deemed a responsibility of Agent, but rather shall be the responsibility of Seller: occupancy costs, personal property

insurance, data backup, removal and/or destruction (if applicable), hazardous material removal or storage (if applicable), provision of a broomswept facility.

Section 11.    Allocation of Sales Proceeds.  Agent is authorized to deduct Compensation, any Costs due Agent as may be authorized by this Agreement or by any subsequent written documentation, Sales Tax collected, and all other funds authorized by this Agreement from the Sale Proceeds and deposit the remaining proceeds of the Sales (hereinafter referred to as "Net Income") into Agent's segregated trust account.  Twenty-one (21) days following the completion of Agent's Sale related activities, Agent shall provide Seller with an accounting of the Sale Proceeds along with its remittance of the Net Income, including any additional payment as may be necessary by Agent to fulfill the Guarantee Amount.  All funds due to Agent under the terms of this Agreement shall be paid to Agent before any payment in satisfaction of any security interest, lien, or encumbrance against the Assets or the Sale Proceeds.

Section 12.    Taxes.  Seller warrants that now, and at the time of Sale, there shall be no taxes due to any government entity, which may cloud Agent's ability to convey free and clear title to the Assets, including personal property taxes, payroll taxes, income taxes, etc.  Seller further indemnifies and holds Agent harmless from any claims made against Agent for the payment of taxes related to the Assets, with the exception of sales taxes collected by Agent during the Sale, for which Agent shall be solely responsible for the collection, reporting, and payment of.

Section 13.    Insurance.  Until such time as title to and possession of any Asset is delivered to each sale purchaser, Seller shall obtain and thereafter maintain full fire, vandalism, burglary, theft and liability insurance on the Assets in an amount not less than the full insurable value of the Assets and shall name Agent as an additional insured.  In the event of a loss, Agent shall be paid from any claim for funds due under the terms of this Agreement.

Section 14.    Use of the Premises.  Seller shall be solely responsible to make arrangements  to make available the Premises for purposes of (i) storing the Assets, (ii) preparing for and conducting the Sale thereupon, and (iii) otherwise exhibiting the Assets.  Seller shall not charge Agent any rent, storage fees, utilities or any other fees associated with Agent's use of the Premises.  Seller shall provide adequate utilities to the Premises (including power, telephone, internet, security, and trash services) at Seller's sole expense, so as to allow Agent (i) to demonstrate and exhibit the Assets to any prospective purchaser and (ii) to conduct the Sale.  Notwithstanding any other term of this Agreement to the contrary, Seller's obligations to Agent under this Section shall commence upon the execution of this Agreement and shall terminate, unless otherwise extended by the Parties, on the below defined termination date.  Seller understands that Agent's duties defined herein are time sensitive.  Seller shall ensure Agent's representatives are provided with reasonable access to the Premises to facilitate: (i) sale preparation, (ii) purchaser inspections and (iii) Asset removal.

Section 15.    Advertising; Disclaimers of Warranties; Etc.  Agent shall have sole authority to advertise the Sale and hereby authorizes Agent: (a) to use Seller's name and logo, without additional consideration from Agent, in promotional materials pertaining to the Sale; and (b) to state both in its advertising of the Sale and at the Sale that all Assets are being sold, "AS IS, WHERE IS, AND WITH ALL FAULTS," and otherwise to include any disclaimers of warranty, including but not limited to disclaimers of the warranties of merchantability and fitness

for a particular purpose or use.  Seller hereby acknowledges and agrees that Agent: (a) has no knowledge with respect to, and has no obligation to investigate, the merchantability or fitness for any particular purpose or use of any of the Assets; and (b) has no duty to comply with the relevant provisions of the secured transaction laws (if applicable), including but not limited to the delivery of any requisite notice to third parties, as it is Seller's responsibility to ensure that every aspect of the Sale shall be commercially reasonable (if applicable).

Section 16.          Seller's Obligations.  Seller shall facilitate the following, where applicable, in such timeframes as necessary to support the time sensitive nature of the Sale: (i) executed Agreement, (ii) entered Employment and Sale Orders per the terms of this Agreement, (iii) access to the Premises, (iv) Assets which are devoid of all materials, chemicals, Hazardous Materials, refuse, debris, etc., (v) executable vehicle titles (if applicable).

Section 17.          Removal of Sensitive Information.  Seller acknowledges that certain materials located at the sites may be of sensitive or personal nature (e.g., books and records, computer data, etc.).  Agent shall not be responsible for the proper retrieval, storage and/or destruction of any personal or sensitive materials.  Seller (and not Agent) shall be responsible to remove from the Premises and offices all paperwork, personal effects, and sensitive materials.

Section 18.          Hazardous Materials.  Agent has no obligation whatsoever to purchase, sell, make, store, handle, treat, dispose, generate, transport or remove any HAZARDOUS SUBSTANCES that may be located at the Premises or otherwise associated with the Assets.  Agent shall have no liability to any party for any environmental action brought (i) because the Assets were involved in, or are somehow related to, the storage, handling, treatment, disposition, generation, or transportation of HAZARDOUS SUBSTANCES or (ii) in connection with any remedial actions associated with the Assets or the Premises.  Seller (and not Agent) shall be responsible to remove from the Premises all HAZARDOUS SUBSTANCES from Assets to be sold prior to Agent's preview of the Assets to prospective purchasers.

The term "HAZARDOUS SUBSTANCES" means, collectively, any chemical, solid, liquid, gas, or other substance having the characteristics identified in, listed under, or designated pursuant  to (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980,as amended, 42 U.S.C.A,9601(14), as a "hazardous substance,'' (ii) the Resource Conservation and Recovery Act, 42 U.S.C.A. 6903(5) and 6921, as a "hazardous waste," or (iii) any other laws, statutes or regulations of a government or political subdivision or agency thereof, as presenting an imminent and substantial danger to the public  health  or welfare  or  to the environment or as otherwise requiring special handling, collection,  storage, treatment, disposal, or transportation.

Section 19.          Term of Agreement; Removal of Sold Assets.  The rights and obligations of the Parties under this Agreement shall terminate upon the completion of the Sale of all the Assets by Agent, the removal of the sold Assets following the Sale and/or the abandonment of such sold Assets by purchasers, and satisfaction of the Parties respective payment obligations to one another as set forth herein ("Termination Date").

Section 20.    <u>Condition of Premises</u>.  Agent's services involve the orchestration of a sales and marketing effort of the Assets, on behalf of Seller.  Agent is not a cleaning, demolition, data destruction or hazardous waste company.  Following Agent's completion of the Sale, it shall endeavor to leave the premises in a clean and orderly condition, as allowable within the budget and timeframe allocated for the Sale and based upon the availability of sufficient trash containers provided by Seller.  However, under no circumstances shall Agent be responsible for i) removal of unsold items, ii) removal of items abandoned by buyers, iii) trash and debris of the Seller or resulting from the removal process, iv) Seller's paperwork, or v) hazardous materials.  As a term of sale between Agent and its purchasers, Agent compels its purchasers to remove all of their purchased items and leave the Premises clean of all trash and debris resulting from their efforts.  Further, Agent takes steps to enforce these terms of sale.  These terms also include each buyer's acknowledgment of Seller's rights to pursue Agent's buyers for their failure to fulfill purchase obligations.

Section 21.    <u>Cancellation</u>.

a.    Sale Cancellation.  In the event the Sale is cancelled for any reason, other than Agent's failure to perform, or in the event revenues from the Sale are seized or frozen by legal action, (i) Agent's Guarantee Amount shall be null and void, and (ii) Seller shall guarantee performance of its obligations under the terms of this Agreement, including reimbursement of Agent's Costs incurred up through the date of cancellation and a Sale cancellation fee of $10,000 per week elapsed between entry of the Employment and Sale Orders and the Sale Date ("Cancellation Fee"), not as a penalty, but as the Parties' good faith attempt to fix compensation to Agent in the event the Sale is cancelled.

b.    Asset Cancellation.  In the event Seller removes one or more Assets from the Sale, Agent shall be entitled to an amount equal to its projected compensation on the removed Asset and a reduction of the Guarantee.

c.    Damages.  Because the nature of this engagement involves Agent's public promotion of a Sale, any cancellation of a Sale or Assets after it has been promoted may result in reputational damages to Agent.  Therefore, with the exception of Seller's potential sale of the Assets to the purchaser of Seller's Real Property which has been discussed and acknowledged by the Parties, the cancellation provisions of this Agreement are otherwise intended to address events that might occur outside the control of the Seller, not to permit the Seller to cancel the Sale or remove Assets at its discretion, which action would be deemed a breach of this Agreement.  Furthermore, Seller hereby acknowledges that once an item has been offered for Sale by auction (i.e. bidding has opened for an item), there are no circumstances under which the item may be removed from the Sale without Agent's consent.

Section 22.     Representations of Agent.  Agent represents and warrants to Seller that:

a.   The person executing this Agreement on behalf of Agent is authorized to do so.

b.   The terms of this Agreement are binding upon and enforceable against Agent.

Section 23.     Indemnifications By Agent.  Agent hereby indemnifies, defends and agrees to hold harmless the Seller and the Seller's officers, agents and employees from and against any and all claims, demands, liabilities, judgments, damages, settlements, costs and expenses (including but not limited to court costs and reasonable attorneys' fees) that may be sustained or incurred by the Seller as a result of Agent's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in this Agreement.

Section 24.     Representations of Seller.  Seller represents and warrants to Agent that:

a.        The person executing this Agreement on behalf of the Seller is authorized to do so.

b.        The terms of this Agreement are binding upon and enforceable against Seller.

c.        To the best of Seller's knowledge, Seller now holds, and at the time of sale shall hold, good and marketable title to the Assets.

d.        To the best of Seller's knowledge, none of the Assets infringe upon or violate (or contain any parts or components which infringe upon or violate) any third party's copyright, patent, trademark, trade secret or other proprietary rights.

e.        To the best of Seller's knowledge, none of the Assets or any components thereof, or related software or technology requires a U.S. Government license for export from the United States to countries other than those which are subject to comprehensive embargoes or support for terrorism.

Section 25.     Indemnifications By The Seller.  Seller hereby indemnifies, defends and agrees to hold harmless Agent and Agent's officers, agents and employees from and against any and all claims, demands, liabilities, judgments, damages, settlements, costs and expenses (including but not limited to court costs and reasonable attorneys' fees) that may be sustained or incurred by Agent as a result of (i) Seller's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in this Agreement (ii) any failure of Seller to pay to its employees any wages, salaries or benefits due to such employees during or after the Sale??, (iii) any consumer warranty or products liability claims relating to the Assets, or (iv) any liability or other claims asserted by customers, creditors, any of Seller's employees, or any other person or entity against Agent.

Section 26.     Limitation of Liability.  Notwithstanding any of the terms of this Agreement to the contrary, Agent's maximum liability for (i) any breach of Agent's covenants, agreements and/or indemnifications

set forth herein, and (ii) any and all damages of any type *or* nature whatsoever, whether in contract, tort or otherwise, that *may* be sustained by the Seller or any other person or entity that arises from or is otherwise related to this Agreement or the Sale and which is in excess of any applicable insurance coverage shall be limited to the aggregate amounts actually received by Agent as compensation under this Agreement.

Section 27.        <u>Binding Obligation; Assignment</u>.  This Agreement shall be binding upon the Parties hereto and their respective successors and assigns.  Neither Party may assign its interest in this Agreement without the prior written consent of the other Party.  Agent, however, shall be authorized to use subcontractors and/or strategic partners, as necessary, to facilitate certain roles and responsibilities defined herein.

Section 28.        <u>Final Agreement</u>.  This Agreement, and any and all (i) exhibits that are attached hereto and made a part hereof, and (ii) side agreements, letter agreements and amendments, if any, that are executed by the Seller and Agent, contains the final and entire agreement and understanding and any terms, and conditions not set forth in this Agreement (or in such exhibits, side agreements, side letter agreements and amendments) are not part of this Agreement and the understanding of the Parties.  The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event of any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise by the virtue of the authorship of any provision of this Agreement.  This Agreement may be amended or altered only in writing, signed by the Party to be bound by the change or alteration.

Section 29.        <u>Time</u>.  Time is strictly of the essence of this Agreement.

Section 30.        <u>Number, Gender and Captions</u>.  As used herein, the singular shall include the plural and the plural may refer to the singular. The use of any gender shall be applicable to all genders.  The captions contained herein are for purposes of convenience only and are not a part of this Agreement.

Section 31.        <u>Partial Invalidity</u>.  If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected, and each term shall be valid and enforceable to the fullest extent permitted by law.

Section 32.        <u>Force Majeure</u>.  Notwithstanding any of the terms of this Agreement to the contrary, Agent shall not be deemed in default with respect to the performance of any of the terms, covenants and conditions of this Agreement and the Termination Date shall be extended accordingly, if Agent (i) is unable to conduct the Sale, (ii) determines that the Sale should be postponed, or (iii) otherwise is unable to fulfill its obligations hereunder due to or because of any: (a) strike or lockout; (b) civil commotion, war-like operation, invasion, rebellion, terrorist act, hostilities, military or usurped power, sabotage, or governmental regulation or control; or (c)hurricane, tornado, flood, mudslide, fire, act of God, or any other cause that is beyond the control of Agent.

Section 33.        <u>Technology Disclaimer</u>. Agent does not warrant that the functions, features or content contained in Agent's website (including any third party software, products or other materials used in connection with its website) or any third party website used by Agent, will be timely, secure, uninterrupted or error-free, or that defects will be corrected.

Section 34.        <u>Notices</u>.  Any notice required or permitted by or in connection with this Agreement, without implying the obligation to provide any such notice, shall be in writing and shall be made by facsimile (confirmed on the date the facsimile is sent or by one of the other methods of giving notice provided for in this Section) or by hand delivery, by Federal Express, or other similar overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to the respective Party at the appropriate address set forth below or to such other address as may be hereafter specified by written notice by the respective Parties.  If notice is tendered pursuant to the provisions of this Section and is refused by the intended recipient thereof, the notice shall be considered to have been given.

If to the Seller:

Robert S. Rosenfeld
Chief Restructuring Officer of Dowling College
c/o RSR Consulting, LLC
1330 Avenue of the Americas, Suite 23A
Telephone: 516-241-2254
Email: rsrosenfeld@rsrconsultingllc.com

If to Agent:

Tiger Capital Group, LLC
340 N. Westlake Blvd., #260
Westlake Village, CA 91362
Attention:  Jeff Tanenbaum
Telephone: 805-497-4999
Email: jtanenbaum@tigergroup.com

Section 35.        <u>No Partnership; Etc.</u> Agent is not in any way or for any purpose a partner of, joint venturer with, or an investor or member of any enterprise with, the Seller in the conduct of the Seller's business, or otherwise.  This Agreement establishes a relationship solely between a Seller and an Agent as to certain services that are to be rendered.

Section 36.        <u>Jurisdiction</u>. This Agreement shall be interpreted under and in accordance with the laws of the United States Bankruptcy for the Eastern District of New York.

In witness thereof, the Parties hereto have executed this Agreement on this <u>28th</u> day of <u>April</u>, 2017.

Seller:                                        Agent:

Dowling College                                Tiger Capital Group, LLC

By:_____                     By:_____
    Robert S. Rosenfeld, CRO

Seller:                                              Agent:

Dowling College                                      Tiger Capital Group, LLC


By:_____        By:_____
    Robert S. Rosenfeld, CRO                       Jeff Tanenbaum, President - Commercial & Industrial

EXHIBIT 'A-1'


Asset Schedule


Assets on each of the buildings at each of the Premises, from wall to wall and floor to ceiling, including but not limited to all office, dorm & classroom furniture, technical & scientific classroom equipment, computers, telecom & other technology assets, cafeterias, music & athletic departments, grounds keeping equipment & vehicles, aviation related equipment, maintenance shops & facilities, and all other assets as viewed by Agent on March 8, 2017, with the exception of those items specifically excluded on Exhibit 'A-2'.

EXHIBIT 'A-2'


Asset Exclusions


- Items at the athletic fields located at the Brookhaven Campus
- Computer servers and select network equipment pertinent to the servers
- All servers and PC desktop equipment that contains any hard-drive and main servers in Oakdale
- Hard Drives in the personal computers and laptops
- Flight Simulators
- All furniture, fixtures and equipment located at the Debtor's Brookhaven Residential Village located on the Shirley, NY campus
- All Non-Estate Property, including donor restricted assets (including, without limitation, special library collections or art collections) and endowment funds held by, or for the benefit of, Seller, the income and/or corpus of which has been designated for use in support of, for the benefit of, or otherwise relating to, any of Seller's mission, operations, programs, services, and/or assets (collectively, the "Restricted Assets") to the extent transferable and subject to any approvals required by Applicable Law; and non-estate personal property subject to the Orders entered by the Bankruptcy Court. (Personal property not owned by the Debtor) (however, if any such personal property not owned by Debtor was represented as an owned Asset to Agent upon Agent's original site visit, such exclusion may result in an adjustment to the Guarantee Amount)

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

Hearing Date:  May 22, 2017
Hearing Time:  1:30 p.m.

Objection Deadline:  May 15, 2017

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
In re                                          :    Chapter 11
                                               :
DOWLING COLLEGE,                               :
f/d/b/a DOWLING INSTITUTE,                      :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                 :
ASSOCIATION,                                    :
f/d/b/a CECOM,                                  :
a/k/a DOWLING COLLEGE, INC.,                    :
                                               :
                             Debtor.            :
-----------------------------------------------------------------x

**NOTICE OF HEARING ON DEBTOR'S MOTION FOR AN ORDER (I) APPROVING
PROCEDURES FOR THE SALE OF CERTAIN ASSETS FREE AND CLEAR
OF LIENS, CLAIMS AND ENCUMBRANCES, (II) AUTHORIZING THE
EMPLOYMENT AND COMPENSATION OF TIGER CAPITAL GROUP, LLC
AS LIQUIDATION AGENT, AND (III) GRANTING RELATED RELIEF**

    **PLEASE TAKE NOTICE** that a hearing on the motion (the "Motion") of Dowling
College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned
chapter 11 case (the "Chapter 11 Case"), for an order, (i) approving procedures for the sale of
certain assets, free and clear of liens, claims and encumbrances, (ii) authorizing the employment
and compensation of Tiger Capital Group, LLC ("Tiger") as liquidation agent, and (iii) granting
related relief, a copy of which is annexed to the Motion as **Exhibit A**, has been scheduled before
the Honorable Robert E. Grossman, United States Bankruptcy Judge, at the United States
Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato Federal
Courthouse, 290 Federal Plaza, Courtroom 860, Central Islip, New York 11722 on **May 22,
2017 at 1:30 p.m.** (the "Hearing").

    **PLEASE TAKE FURTHER NOTICE** that responses, if any, to the relief sought in the
Motion shall be made in writing, filed with the Court by registered users of the Court's electronic
case filing system and, by all other parties in interest, mailed to the Clerk of the United States

Bankruptcy Court, Eastern District of New York, 271 Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722, on a 3.5 inch floppy disc or compact disc, preferably in portable document Format (PDF), Microsoft Word, or any other Windows Based word processing format, and served upon (i) The Office of the United States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, Esq., Trial Attorney; (ii) counsel to the Debtor: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Sean C. Southard, Esq.; (iii) counsel to the Debtor's material prepetition and post-petition secured lenders: (a) Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn: P. Miyoko Sato, Esq. and Ian A. Hammel, Esq., (b) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Brian D. Pfeiffer, Esq. and Neil S. Begley, Esq., (c) Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord, Esq. and Thomas J. McNamara, Esq., and (d) Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, Attn:  Adam T. Berkowitz, Esq.; and (iv) counsel to the Creditors' Committee: SilvermanAcampora, LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Ronald J. Friedman, Esq. **so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on May 15, 2017.**

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion may be adjourned without further notice except as announced in open court at the Hearing, or at any adjourned hearing.

Dated:   New York, New York
      April 28, 2017

                **KLESTADT WINTERS JURELLER**
                **SOUTHARD & STEVENS, LLP**

      By:   */s/ Sean C. Southard*
           Sean C. Southard
           Lauren C. Kiss
           200 West 41st Street, 17th Floor
           New York, NY 10036
           Tel: (212) 972-3000
           Fax: (212) 972-2245
           Email: ssouthard@klestadt.com
                  lkiss@klestadt.com

           *Counsel to the Debtor and Debtor in*
             *Possession*