**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| DOWLING COLLEGE, : | |
| f/d/b/a DOWLING INSTITUTE, : | Case No. 16-75545 (REG) |
| f/d/b/a DOWLING COLLEGE ALUMNI : | |
| ASSOCIATION, : | |
| f/d/b/a CECOM, : | |
| a/k/a DOWLING COLLEGE, INC., : | |
| Debtor. : | |

---------------------------------------------------------------x

**DEBTOR'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a)**
**AND 363 OF THE BANKRUPTCY CODE APPROVING THE SALE OF THE**
**DEBTOR'S FURNITURE AND EQUIPMENT LOCATED AT THE**
**OAKDALE CAMPUS TO PRINCETON EDUCATION CENTER LLC FREE**
**AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), submits this motion (the "Sale Motion") pursuant to Sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") for entry of an order substantially in the form attached hereto as Exhibit A (the "Order") approving the sale (the "Sale") of the Debtor's furniture and equipment located at the Oakdale Campus (the "F&E") to Princeton Education Center LLC ("Princeton") free and clear of liens, claims and encumbrances. In support of this Sale Motion, the Debtor

submits the Declaration of Robert S. Rosenfeld, attached hereto as **Exhibit B** (the "Rosenfeld Declaration").  In further support of the Sale Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules").

## BACKGROUND

**A.    The Bankruptcy Case**

4. On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

5. The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. On December 9, 2016, the United States Trustee appointed Ultimate Power Inc., Linda Ardito and Lori Zaikowski to the Official Committee of Unsecured Creditors (the "Creditors' Committee").  Later that day, the Creditors' Committee selected SilvermanAcampora LLP as its general bankruptcy counsel.

7. Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for

managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

8. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration") [DE 23].

### B. The Oakdale Campus and the F&E

9. On the Petition Date, the Debtor filed a motion seeking, among other things, approval of the sale of the Debtor's 25 acre campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769 (the "Oakdale Campus") to the successful bidder (the "Successful Bidder") as determined by the bidding procedures [DE 13].

10. On December 16, 2016, the Court entered an order approving, among other things, bidding procedures for the sale of the Oakdale Campus and scheduling an auction (the "Auction") and sale hearing in connection therewith [DE 111].

11. On April 4, 2017, the Debtor conducted the Auction for the Oakdale Campus and thereafter declared Princeton to be the Successful Bidder at the conclusion of the Auction for the Oakdale Campus.

12. On April 6, 2017, the Debtor and Princeton executed an Asset Purchase Agreement with respect to the sale of the Oakdale Campus (the "Oakdale Campus APA"). Pursuant to the Oakdale Campus APA, the F&E located at the Oakdale Campus were Excluded Assets (as defined in the Oakdale Campus APA).

13. On April 12, 2017, the Court entered an order approving the sale of the Oakdale Campus to Princeton [DE 285]. The closing is expected to occur on or about June 20, 2017.

14. Since the F&E was excluded from the Oakdale Campus APA, the Debtor solicited proposals from five (5) liquidation agents to market and sell the F&E and certain furniture and equipment located at the Brookhaven Campus. The Debtor only received three (3) proposals from the liquidation agents to market and sell such assets for the Debtor. The Debtor determined that the best proposal was submitted by Tiger Capital Group, LLP ("Tiger"), which provided for the following compensation structure: the first proceeds of up to $155,000 would go to the Debtor (the "Guarantee Amount") if the liquidation process commenced by May 8, 2017, with the next $125,000 payable to Tiger as reimbursement of expected costs, and for any amounts over $280,000, the Debtor would receive 85% of the proceeds and Tiger would receive the remaining 15% of the proceeds, plus the retention of a buyers' premium of 18% on all sale proceeds.

15. On April 28, 2017, the Debtor filed a motion seeking an order approving procedures for the sale of certain assets free and clear or liens, claims and encumbrances, and authorizing the employment and compensation of Tiger as liquidation agent (the "Tiger Sale and Retention Motion") [DE 317]. The Tiger Sale and Retention Motion included, *inter alia*, procedures for the sale of the F&E to the highest bidder. Given the Debtor's anticipated timing for the hearing of the Tiger Sale and Retention Motion and approval of the same, the expected Guarantee Amount was reduced to $85,000. If the liquidation process commenced after May 24, 2017, the Guarantee Amount would be reduced to zero.

16. On May 22, 2017, the Court held a hearing to consider, among other things, the Tiger Sale and Retention Motion and denied the relief sought therein.

17. At or about the time that the Court denied the Tiger Sale and Retention Motion, the Debtor entered into an asset purchase agreement (the "F&E APA")[1] with Princeton for the sale of the F&E, a copy of which is attached as **Exhibit 1** to the Rosenfeld Declaration. The F&E is defined in the F&E APA to consist of all furniture, furnishings, machinery, appliances and other equipment owned by the Debtor and located on the Oakdale Campus, including all such vehicles, desks, chairs, tables, Hardware, copiers, telephone lines, telecopy machines and other telecommunication equipment and miscellaneous office furnishings, but specifically excluding Non-Estate Property.

18. Pursuant to the F&E APA, the purchase price for the F&E is $90,000 and the Debtor has received a $5,000 deposit towards the purchase price. A significant condition is set forth in section 7.1(b) of the F&E APA, which section permits Princeton to terminate the F&E APA if for any reason Princeton is unable to close on the sale of the Oakdale Campus pursuant to the Oakdale Campus APA.

19. Pursuant to General Order 557, the Debtor is required to highlight any "extraordinary provisions" of the proposed Sale of the F&E. The extraordinary provisions in the proposed Sale are as follows:

> (a) Use of Proceeds. Upon consummation of the proposed Sale of the F&E to Princeton, the Debtor shall pay the proceeds to the administrative agent for its post-petition secured lenders (the "DIP Agent"), which payment shall be applied to the Debtor's Obligations in accordance with the terms of that certain Debtor-in-Possession Multi-Draw Term Loan Promissory Note dated as of November 29, 2016, by and among the Debtor and each lender party thereto and the DIP Agent (as amended, supplemented, restated or otherwise modified from time to time in accordance therewith, the "DIP Note").
>
> (b) Private Sale/No Competitive Bidding. The Debtor is not actively seeking higher or better offers because as described more fully below, the Debtor submits that a private sale is appropriate under the circumstances and the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the F&E APA.

      Debtor's debtor-in-possession lenders and the Creditors' Committee have no objection to the same.

  (c)  <u>Relief from Bankruptcy Rule 6004(h)</u>. The proposed form of Order contains a waiver of the stay imposed by Bankruptcy Rule 6004(h).

## **BASIS FOR RELIEF**

**A. The Sale is Within the Debtor's Sound Business Judgment and Should be Approved Pursuant to Section 363 of the Bankruptcy Code.**

20. Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When considering a motion to approve the sale of property, the Court must find that a "good business reason" justifies the sale. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). Courts have uniformly held that approval of a proposed sale of a debtor's assets outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate when a sound business reason supports the transaction. *See In re Lionel Corp.*, 722 F.2d at 1071; *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007); *Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65, 83 (S.D.N.Y. 2010); *In re Ionosphere Clubs*, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

21. In addition, Bankruptcy Code Section 105(a) grants the Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case." *In re Flores*, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003) (internal citations omitted).

22. The Debtor submits that the proposed Sale of the F&E is an exercise of sound business judgment and is in the best interests of Debtor's creditors. The Debtor submits that the F&E is of relatively *de minimis* value and is of no use to the Debtor in relation to this liquidating

Chapter 11 Case. The Oakdale Campus APA provides that all furniture and equipment located at the Oakdale Campus must be removed no later than July 31, 2017. At this time, absent a sale of the F&E to Princeton, the F&E would either need to be moved offsite to be marketed and sold or destroyed, most likely resulting in a loss of funds for the estate. The proposed Sale of the F&E to Princeton is providing $90,000 to the estate, an amount greater than the Guarantee Amount provided for under the terms of the engagement agreement with Tiger. Further, the Sale to Princeton is supported by the Debtor's debtor-in-possession lenders and the Creditors' Committee.

23.     In addition, this Sale Motion complies with Section 363(d) of the Bankruptcy Code. Pursuant to Section 363(d) of the Bankruptcy Code, a transfer of property by a not-for-profit entity must be made in compliance with applicable nonbankruptcy law governing such transfer. *See* 11 U.S.C. § 363(d). An insolvent not-for-profit corporation that is seeking to sell all or substantially all of its assets is required, pursuant to Sections 510 and 511 of the New York Not-for-Profit Corporation Law, to obtain approval of such sale transaction from either the state court or bankruptcy court. The New York Not-for-Profit Corporation Law does not define what constitutes "all or substantially all" of the assets of a corporation. However, the F&E, when considered as a whole, or individually, does not amount to "all or substantially all" of the Debtor's assets such that court approval is necessary.

**B.    The Assets Should be Sold Free of Liens, Claims and Encumbrances.**

24.     A debtor may sell property free and clear of liens, claims and encumbrances if one of the following conditions is satisfied:

1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
2) such entity consents;

3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
4) such interest is in bona fide dispute; or
5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See, e.g., In re Borders Group, Inc.*, 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011) (court may approve sale "free and clear" provided at least one of the subsections is met).

25. The Debtor is aware of the Debtor's debtor-in-possession lenders first position priming lien on the F&E and potential liens of both Trustees for the 2006 Bonds and the 2015 Bonds. These parties have been notified of the proposed sale of the F&E and they have not expressed any objection thereto. Accordingly, the Debtor believes that the requirement of section 363(f) of the Bankruptcy Code is satisfied with respect to the proposed sale of the F&E. Thus, to facilitate the proposed Sale, the Debtor requests that the Court authorize that the Sale of the F&E pursuant to this Sale Motion be free and clear of any and all such liens, claims and encumbrances (collectively, the "Liens") with any such Liens to automatically be transferred and attach to the net proceeds.

26. Alternatively, Section 363(f)(5) is also satisfied because, to the extent that any party with a lien, claim, or interest in, or encumbrance on the F&E has not consented to such sales, the Debtor asserts that such party could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interests, if any, in the F&E. Therefore, it is submitted that Section 363(f)(5) can be deemed satisfied upon a sale of the F&E being conducted free and clear of all liens.

**C.      Princeton is Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

27. Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a

-8-

sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good faith," the Second Circuit has found that:

[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). The Debtor requests that this Court enter an order finding that Princeton constitutes a good faith purchaser of the F&E pursuant to Section 363(m) of the Bankruptcy Code. The Debtor and Princeton negotiated the F&E APA at arm's-length, for value and in good faith, without engaging in fraud or collusion of any kind, in accordance with Section 363(m) of the Bankruptcy Code.

**D.    A Private Sale is Appropriate.**

28.    The Debtor is seeking to sell the F&E in a private sale without the need to conduct an auction process. Although many sales of assets outside the ordinary course of business are conducted pursuant to competitive bidding procedures and public auctions, Section 363 of the Bankruptcy Code does not ordinarily require these procedures. Indeed, Bankruptcy Rule 6004(f) specifically authorizes private sales, stating that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." FED. R. BANKR. P. 6004(f)(1).

29.    Courts have approved private sales of assets upon the debtor's satisfaction of the general standards for approval under Section 363(b) of the Bankruptcy Code. *See, e.g.*, *In re Federation Employment and Guidance Service, Inc. d/b/a FEGS*, Case No. 15-71074 (REG)

(Bankr. E.D.N.Y. July 20, 2015) (DE 339) (approving private sale of the Debtor's residential real property); *In re Saint Vincents Catholic Med. Ctrs.*, Case No. 10-11963 (CGM) (Bankr. S.D.N.Y. May 27, 2010) (DE 389) (approving private sale of a cancer center pursuant to Bankruptcy Rule 9019 and Section 363 of the Bankruptcy Code); *In re Old Carco LLC*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. Nov. 12, 2009) (DE 5937) (approving sale of the debtors' assembly plant by private sale as satisfying Section 363 of the Bankruptcy Code); *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (DE 507) (approving sale of debtor's facilities by private sale).

30. It is well settled that the sale of assets outside of the ordinary course of business by means of a private sale can, and in appropriate cases should, be approved. *See*, *e.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("[T]he sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion . . . to conduct public or private sales of estate property.") (internal quotations and citation omitted); *In re Dewey & LeBeouf*, Case No. 12-12321 (MG), 2012 WL 5386276, at *6 (Bankr. S.D.N.Y. Nov. 1, 2012) (authorizing private sale of art collection after the debtor established a good business reason to proceed by private sale); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) ("There is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

31. The Debtor respectfully submits that proceeding by private Sale without an extensive auction and bidding process is appropriate here. Among other things, the Debtor has determined in its business judgment that, under the circumstances, the benefits of consummating a prompt private Sale of the F&E on the terms and conditions embodied in the F&E APA outweigh any potential benefits of conducting a further marketing and overbid process for the

F&E, particularly where the Debtor obtained proposals from three (3) liquidation agents prior to the execution of the F&E APA and, based on the estimated values received from the liquidation agents, the Debtor does not believe that an auction could significantly increase the consideration that any party is willing to pay for the F&E above the consideration offered by Princeton. Further, since Princeton is purchasing the Oakdale Campus, Princeton is the natural user of the F&E. Proceeding expeditiously with this Sale will also allow the Debtor to meet its current July 31, 2017 deadline for the removal of all furniture and equipment from the Oakdale Campus. Finally, the Debtor's debtor-in-possession lenders and Creditors' Committee support the Sale and sufficient notice of the Sale will be provided through notice of the instant Sale Motion, providing other parties in interest and any potential purchasers with the opportunity to voice any objections to the proposed private Sale.

**E.    The Court Should Waive or Reduce the Requirements of Bankruptcy Rule 6004(h)**

32.    Under Rule 6004(h) of the Bankruptcy Code, all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for 14 days after entry of the order, unless otherwise ordered by the Court. FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

33.    Although little guidance is provided by either Rule 6004(h) or the Advisory Committee Notes as to when a court should "order otherwise", it has been suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure". *See 10 Collier on Bankruptcy* § 6004.11. Colliers also proposes that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary

to seek a stay pending such appeal. *Id*. It is thus respectfully requested that the Court waive the 14 day stay period required under Rule 6004(h) or, in the alternative, if an objection is filed to the proposed Sale, reduce the stay period to the minimum amount of time reasonably necessary for the objecting party to file a stay pending appeal. This relief is both necessary and appropriate under the circumstances of this case given that the closing of the Oakdale Campus is expected to have occurred by the time the Court considers the instant Sale Motion.

## NOTICE

34.    Notice of this Sale Motion will be given to (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) counsel to the Creditors' Committee; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002; (f) all parties who are known to assert a lien, claim, encumbrance or other interests on any portion of the F&E and (g) all persons who made their interest in the F&E known to the Debtor or its counsel.

## NO PRIOR REQUEST

35.    Except as specifically set forth herein, no previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE,** the Debtor respectfully requests that this Court (a) enter the Order substantially in the form attached hereto as **<u>Exhibit A</u>**; and (b) grant to the Debtor such other and further relief as the Court may deem proper.

Dated:  New York, New York
        June 16, 2017

                                      **KLESTADT WINTERS JURELLER**
                                      **SOUTHARD & STEVENS, LLP**

                        By:  */s/ Sean C. Southard*
                            Sean C. Southard
                            Lauren C. Kiss
                            200 West 41st Street, 17th Floor
                            New York, NY 10036
                            Tel: (212) 972-3000
                            Fax: (212) 972-2245
                            Email: ssouthard@klestadt.com
                                        lkiss@klestadt.com

                            *Counsel to the Debtor and Debtor in*
                                *Possession*