# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                                           :     Chapter 11
                                                                                    :
DOWLING COLLEGE,                                                    :
f/d/b/a DOWLING INSTITUTE,                                      :     Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                          :
ASSOCIATION,                                                            :
f/d/b/a CECOM,                                                            :
a/k/a DOWLING COLLEGE, INC.,                                :
                                                                                    :
                                            Debtor.                       :
---------------------------------------------------------------x

**DECLARATION OF ROBERT S. ROSENFELD, CHIEF RESTRUCTURING OFFICER OF THE DEBTOR, IN SUPPORT OF THE DEBTOR'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING THE SALE OF THE DEBTOR'S FURNITURE AND EQUIPMENT LOCATED AT THE OAKDALE CAMPUS TO PRINCETON EDUCATION CENTER LLC FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

I, ROBERT S. ROSENFELD, declare, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.      I am the Chief Restructuring Officer (the "CRO") of the above-captioned debtor and debtor in possession ("Dowling" or the "Debtor").

2.      I submit this declaration in further support of the Debtor's motion seeking entry of an order approving the sale (the "Sale") of the Debtor's furniture and equipment located at the Oakdale Campus (the "F&E") to Princeton Education Center LLC ("Princeton") free and clear of liens, claims and encumbrances (the "Sale Motion")[1].

3.      All statements contained herein are based on personal knowledge or made upon information and belief.

---
[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

4. Prior to the Petition Date, I was retained to perform the functions and hold the title of Chief Restructuring Officer (the "CRO"). In accordance with my retention Order, entered December 16, 2016 [DE 106], I have taken over as the day-to-day manager of the Debtor and I am responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

A. *The Oakdale Campus and the F&E*

5. On the Petition Date, the Debtor filed a motion seeking, among other things, approval of the sale of the Debtor's 25 acre campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769 (the "Oakdale Campus") to the successful bidder (the "Successful Bidder") as determined by the bidding procedures [DE 13].

6. On December 16, 2016, the Court entered an order approving, among other things, bidding procedures for the sale of the Oakdale Campus and scheduling an auction (the "Auction") and sale hearing in connection therewith [DE 111].

7. On April 4, 2017, the Debtor conducted the Auction for the Oakdale Campus and thereafter declared Princeton to be the Successful Bidder at the conclusion of the Auction for the Oakdale Campus.

8. On April 6, 2017, the Debtor and Princeton executed an Asset Purchase Agreement with respect to the sale of the Oakdale Campus (the "Oakdale Campus APA"). Pursuant to the Oakdale Campus APA, the F&E located at the Oakdale Campus were Excluded Assets (as defined in the Oakdale Campus APA).

9. On April 12, 2017, the Court entered an order approving the sale of the Oakdale Campus to Princeton [DE 285]. The closing is expected to occur on or about June 20, 2017.

10. Since the F&E was excluded from the Oakdale Campus APA, the Debtor solicited proposals from five (5) liquidation agents to market and sell the F&E and certain furniture and equipment located at the Brookhaven Campus. The Debtor only received three (3) proposals from the liquidation agents to market and sell such assets for the Debtor. The Debtor determined that the best proposal was submitted by Tiger Capital Group, LLP ("Tiger"), which provided for the following compensation structure: the first proceeds of up to $155,000 would go to the Debtor (the "Guarantee Amount") if the liquidation process commenced by May 8, 2017, with the next $125,000 payable to Tiger as reimbursement of expected costs, and for any amounts over $280,000, the Debtor would receive 85% of the proceeds and Tiger would receive the remaining 15% of the proceeds, plus the retention of a buyers' premium of 18% on all sale proceeds.

11. On April 28, 2017, the Debtor filed a motion seeking an order approving procedures for the sale of certain assets free and clear or liens, claims and encumbrances, and authorizing the employment and compensation of Tiger as liquidation agent (the "Tiger Sale and Retention Motion") [DE 317]. The Tiger Sale and Retention Motion included, *inter alia*, the sale of the F&E to the highest bidder. Given the Debtor's anticipated timing for the hearing of the Tiger Sale and Retention Motion and approval of the same, the expected Guarantee Amount was reduced to $85,000. If the liquidation process commenced after May 24, 2017, the Guarantee Amount would be reduced to zero.

12. On May 22, 2017, the Court held a hearing to consider, among other things, the Tiger Sale and Retention Motion and denied the relief sought therein.

13. At approximately the same time that the Court denied the Tiger Sale and Retention Motion, the Debtor entered into an asset purchase agreement (the "F&E APA") with Princeton for the sale of the F&E, a copy of which is attached hereto as **Exhibit 1**. The F&E is

defined in the F&E APA to consist of all furniture, furnishings, machinery, appliances and other equipment owned by the Debtor and located on the Oakdale Campus, including all such vehicles, desks, chairs, tables, Hardware, copiers, telephone lines, telecopy machines and other telecommunication equipment and miscellaneous office furnishings, but specifically excluding Non-Estate Property.

14.     Pursuant to the F&E APA, the purchase price for the F&E is $90,000 and the Debtor has received a $5,000 deposit towards the purchase price. Pursuant to section 7.1(b) of the F&E APA, Princeton may terminate the F&E APA if for any reason Princeton is unable to close on the sale of the Oakdale Campus pursuant to the Oakdale Campus APA.

B.     *Debtor's Business Judgment*

15.     I believe that the Sale represents the sound business judgment of the Debtor and is appropriate in light of the facts and circumstances set forth herein. The F&E is of relatively *de minimis* value and is of no use to the Debtor in relation to this liquidating Chapter 11 Case. The Debtor has determined in its business judgment that, under the circumstances, the benefits of consummating a prompt private sale of the F&E on the terms and conditions embodied in the F&E APA, including, but not limited to, (i) receiving funds greater than the Guarantee Amount from a third party liquidator, (ii) relieving the Debtor of potentially significant costs of removal of unsold F&E prior to the contractual exit date defined in the Oakdale Campus APA, and (iii) removing the potential logistical difficulties of meeting the exit date timeline as stated in the Oakdale Campus APA, outweigh any potential benefits of conducting a further marketing and overbid process for the F&E. On behalf of the Debtor I obtained proposals from three (3) separate liquidation agents to market and sell, among other things, the F&E and certain furniture and equipment located at the Brookhaven Campus. Based on the estimated values received from

the liquidation agents, I do not believe that an auction could increase the consideration that any party is willing to pay for the F&E above the consideration offered by Princeton. Further, since Princeton is purchasing the Oakdale Campus, Princeton is the natural user of the F&E.

16.     As a result, I believe the Sale of the F&E to Princeton is the highest and best offer for the assets attainable under the circumstances and enables the Debtor to comply with the terms of the Oakdale Campus APA. I believe it is important that the proposed Sale be closed as quickly as reasonably possible to maximize the net asset value for creditors of this estate.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 16, 2017

*/s/ Robert S. Rosenfeld*
Robert S. Rosenfeld
Chief Restructuring Officer

# **Exhibit 1**

ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of May 17, 2017 (the "Execution Date") is by and between DOWLING COLLEGE, a New York not-for-profit corporation ("Dowling" or "Seller"), and Princeton Education Center LLC, a Delaware limited liability company ("Buyer"), each a "Party" and collectively the "Parties."

RECITALS

WHEREAS, on November 29, 2016 (the "Petition Date"), Dowling (the "Debtor") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") (the "Bankruptcy Case"); and

WHEREAS, on the Petition Date, the Debtor filed a motion seeking, *inter alia*, approval of the sale of the Debtor's 25 acre campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769 (the "Oakdale Campus") to the successful bidder (the "Successful Bidder") as determined by the bidding procedures; and

WHEREAS, on December 16, 2016, an order was entered by the Bankruptcy Court, approving, *inter alia*, bidding procedures for the sale, and scheduling an auction ("Auction") and sale hearing in connection therewith (the "Bidding Procedures Order"); and

WHEREAS, on April 4, 2017, the Debtor conducted the Auction for the Oakdale Campus; and

WHEREAS, the Debtor declared Buyer to be the Successful Bidder at the conclusion of the Auction for the Oakdale Campus; and

WHEREAS, on April 6, 2017, Seller and Buyer executed an Asset Purchase Agreement with respect to the sale of the Oakdale Campus to Buyer (the "Oakdale Campus APA"); and

WHEREAS, pursuant to the Oakdale Campus APA, Furniture and Equipment (as defined in the Oakdale Campus APA) located at the Oakdale Campus were Excluded Assets (as defined in the Oakdale Campus APA); and

WHEREAS, Seller agrees to sell, and Purchaser agrees to purchase, the Furniture and Equipment (defined herein) (the "Sale") pursuant to the terms of this Agreement.

ARTICLE I
DEFINITIONS

1.1    Definitions.  The following terms, as used herein, have the following meanings:

"Acquired Assets" has the meaning set forth Section 2.1.

"Claim" has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.

"Closing" has the meaning set forth in Section 3.1(a).

"Closing Date" has the meaning set forth in Section 3.1(a).

"Deposit" has the meaning set forth in Section 3.3.

"Excluded Assets" has the meaning set forth in Section 2.2

"Final Order" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for stay, new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument, or rehearing has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a stay, new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

"Furniture and Equipment" means all furniture, furnishings, machinery, appliances and other equipment owned by Seller and located on the Oakdale Campus, including all such vehicles, desks, chairs, tables, Hardware, copiers, telephone lines, telecopy machines and other telecommunication equipment and miscellaneous office furnishings, but specifically excluding Non-Estate Property.

"Hardware" means computer and computer-related hardware, including computers, file servers, facsimile servers, scanners, color printers, laser printers and networks except as may be included in the definition of Excluded Assets.

"Lien" means any claim, charge, easement, encumbrance, encroachment, security interest, mortgage, lien, pledge or restriction, whether imposed by contract, applicable law, equity or otherwise.

"Non-Estate Property" means that certain personal property that is either not owned by the Seller or which may be a Restricted Asset.

"Purchase Price" has the meaning set forth in Section 3.2(a).

"Restricted Assets" has the meaning set forth in Section 2.2(f).

## ARTICLE II
## PURCHASE AND SALE OF ASSETS

2.1     <u>Assets to be Sold to Buyer</u>.  On the terms and subject to the conditions of this Agreement, and on the basis of the representations and warranties herein contained, Seller shall sell, transfer, convey, assign and deliver to Buyer, or to an entity or entities designated by Buyer, on the Closing Date, all of its right, title and interest in the Furniture and Equipment (the "<u>Acquired Assets</u>"), free and clear of all Liens and Claims, to the fullest extent permissible under Section 363(f) of the Bankruptcy Code.

2.2     <u>Excluded Assets</u>.  For the avoidance of doubt, the following assets are not intended by the Parties to be a part of the Contemplated Transactions and are excluded from the Acquired Assets (the "<u>Excluded Assets</u>"):

(a)     Seller's cash, cash equivalents, bank deposits and similar items;

(b)     Any personal property that is not located on the grounds of the Oakdale Campus;

(c)     All property and equipment that is leased by the Seller;

(d)     All intellectual property and intangible property including, but not limited to, computer software, licenses, maintenance or support contracts, related to excluded computer equipment, IPv4 addresses, patents, trademarks, copyrights, domain addresses, e-mail addresses and phone numbers;

(e)     Seller's library special collections as described in Schedule 2.2(e);

(f)     All Non-Estate Property, including donor restricted assets (including, without limitation, special library collections, art collections or pottery) and endowment funds held by, or for the benefit of, Seller, the income and/or corpus of which has been designated for use in support of, for the benefit of, or otherwise relating to, any of Seller's mission, operations, programs, services, and/or assets (collectively, the "<u>Restricted Assets</u>");

(g)     all computer equipment containing or capable of containing data including, but not limited to, computer servers (except to the extent it can be practically separated as a stand-alone server, the server containing the library catalog system) and related equipment (uninterruptable power supply devices, blade racks, cables, adaptors, etc.), desktop PCs (except approximately 100 Lenovo ThinkCentre 7484-AM4 PCs located in the four (4) student computer labs located on the first floor of the Racanelli Center across from the library) laptops, tablets, hard drives and other data and/or media storage devices (tapes, discs, floppy drives, etc.).

(h)     all of Debtor's records, record archives, stationary, letterhead, marketing materials or other materials containing the Dowling name, logo or seal.

ARTICLE III
PURCHASE PRICE, MANNER OF PAYMENT AND CLOSING

3.1    Closing and Closing Date. The closing of the Sale (the "Closing") shall take place at a location agreed upon by Buyer and Seller, within ten (10) days after the Bankruptcy Court's order approving the Sale becomes a Final Order) or such other date as Buyer and Seller may mutually determine in writing (the "Closing Date").

3.2    Payment of Purchase Price.

(a)    Consideration.  Subject to the terms and conditions hereof, the aggregate consideration for the sale, assignment, transfer, conveyance and delivery of the Acquired Assets to Buyer (or its designee(s)) at Closing, shall be Ninety Thousand Dollars ($90,000) (the "Purchase Price").

(b)    Payment. Subject to the terms and conditions hereof, on the Closing Date, Buyer shall pay to Seller the amount of the Purchase Price less the Deposit.

3.3    Deposit.  Buyer shall have made a cash deposit in the aggregate amount of five thousand dollars ($5,000) (the "Deposit").  Seller shall retain the Deposit as liquidated damages, as its sole remedy, if this Agreement is properly terminated by Seller pursuant to Section 7.1(c). The Debtor, through its counsel's escrow, will maintain the Deposit in a non-interest bearing Debtor account.

3.4    Closing Deliveries.

(a)    Seller Deliveries.  At the Closing, contemporaneously with Buyer's delivery to Seller of Buyer's deliveries set forth in subsection (b) hereof, Seller shall deliver or cause to be delivered to Buyer, duly executed by Seller the following items:

(i)    a fully-executed bill of sale from Seller substantially in the form annexed hereto as **Exhibit A**.

(b)    Buyer Deliveries.  At the Closing, contemporaneously with Buyer's delivery to Seller of Buyer's deliveries set forth in subsection (a) hereof, Buyer shall deliver or cause to be delivered to Seller the following items:

(i)    as provided in this Agreement, the Purchase Price.

3.5    Bulk Sales Laws.  The Parties hereby waive compliance by Seller with the requirements and provisions of any applicable law related to "bulk-transfer" of any jurisdiction that may otherwise be applicable with respect to the sale and transfer of any or all of the Acquired Assets to Buyer.

ARTICLE IV
SELLER'S REPRESENTATIONS AND WARRANTIES

4.1     Seller represents and warrants to Buyer that the statements contained in this ARTICLE IV are correct and complete as of the date hereof and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the Execution Date throughout this ARTICLE IV).

(a) <u>Organization of Seller</u>.  Seller (a) is duly organized, validly existing under the laws of the State of New York, the jurisdiction of its formation, and (b) has full corporate power and authority and all necessary government approvals to own, lease and operate its properties and assets.

(b) <u>Authorization of Transaction</u>.  Except for such authorization as is required by the Bankruptcy Court, Seller has full not-for-profit corporate power and authority to execute and deliver this Agreement and, subject to such authorization as is required by the Bankruptcy Court.

(c) <u>No Other Representations or Warranties</u>.  Except for the representations and warranties contained in this ARTICLE IV, neither Seller nor any other Person makes any other representation or warranty whether express or implied, written or oral, with respect to Seller, the or the Acquired Assets, and Seller disclaims any other representations or warranties, whether made by Seller or any of its respective officers, directors, members, employees, agents, consultants or other representatives.  Except for the representations and warranties contained in this ARTICLE IV, Seller (a) expressly disclaims any representation or warranty, expressed or implied, at common law, by statute, or otherwise, relating to the condition of the Acquired Assets (including any implied or expressed warranty of merchantability or fitness for a particular purpose, or of conformity to models or samples of materials) and (b) disclaims all liability and responsibility for any representation, warranty, statement, or information made, communicated, or furnished (orally or in writing) to Buyer or its representatives (including any opinion, information, projection, or advice that may have been or may be provided to Buyer or its representatives by any director, officer, member, employee, agent, consultant or other representative of Seller).  Seller makes no implied representation or warranty as to the condition, merchantability, usage, suitability or fitness for any particular purpose with respect to the Acquired Assets except for the representations and warranties contained in this ARTICLE IV.

ARTICLE V
BUYER'S REPRESENTATIONS AND WARRANTIES

5.1     Buyer represents and warrants to Seller that the statements contained in this ARTICLE V are correct and complete as of the Execution Date and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the Execution Date throughout this ARTICLE V).

(a) <u>Organization of Buyer</u>.  Buyer (a) is duly organized, validly existing and in good standing under the laws of the State of Delaware, the jurisdiction of its formation, and (b) has full corporate power and authority and all necessary government approvals to own, lease and operate its properties and assets and to conduct its business as presently conducted.

(b) <u>Authorization of Transaction</u>.  Buyer has full power and authority to execute and deliver this Agreement and, subject to such authorizations as required by the Bankruptcy Court to perform its obligations hereunder.

5.2    <u>Acknowledgement Regarding Condition of the Acquired Assets</u>.  Notwithstanding anything contained in this Agreement to the contrary, Buyer acknowledges that (a) Buyer has had the opportunity to conduct due diligence prior to execution of this Agreement, (b) Buyer is relying solely upon Buyer's own independent review and investigation and not upon any written or oral representation of Seller, (c) Seller is not making any representations or warranties whatsoever, whether express or implied or written or oral, beyond those expressly given by it to Buyer in ARTICLE IV, and (d) Buyer agrees that, except for the representations and warranties contained therein, the Acquired Assets are being transferred to Buyer on a "WHERE IS" and, as to condition, "AS IS" basis.

5.3    <u>No Other Representations or Warranties.</u> Except for the representations and warranties contained in this ARTICLE V, neither Buyer nor any other person makes any other representation or warranty, whether express or implied, written or oral, with respect to Buyer, and Buyer disclaims any other representations or warranties, whether made by Buyer, any affiliate of Buyer or any of their respective officers, directors, members, managers, employees, agents, consultants or other Representatives.  Except for the representations and warranties contained in this ARTICLE V, Buyer disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement, or information made, communicated, or furnished (orally or in writing) to Seller or its representatives (including any opinion, information, projection, or advice that may have been or may be provided to them by any director, officer, member, manager, employee, agent, consultant, or other representative of Buyer or any of its affiliates).

## ARTICLE VI
## POST-CLOSING COVENANTS

6.1    Seller and Buyer agree as follows with respect to the period following the Closing:

(a) <u>General</u>.  After the Closing, each of Buyer and Seller will take such further action as is necessary on its part to carry out the purposes of this Agreement (including the execution and delivery of such further instruments and documents) as either may reasonably request, all at the sole cost and expense of the requesting Party (subject to such Party's indemnification rights for such expenses).  Without limiting the foregoing, each of Buyer and Seller will cooperate in providing access to all Excluded Assets, books, records, ledgers, files, documents, correspondence, lists and other documents and information related to the matters covered by this Agreement as the other may reasonably request, all at the sole cost and expense of the requesting Party (subject to such Party's indemnification rights for such expense).

(b) <u>Further Assurances</u>.  Each Party agrees to use all commercially reasonable efforts to take, or cause to be taken, all action, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to effectuate the consummation of the Sale.

## ARTICLE VII
## TERMINATION

7.1 <u>Termination of Agreement</u>.  In respect of the Sale, this Agreement may be terminated prior to the Closing as follows:

(a) <u>Termination Due to Events in Bankruptcy Case</u>.  Buyer may terminate this Agreement immediately upon written notice to Seller if: (i) the Bankruptcy Case is dismissed or converted to a Chapter 7 bankruptcy case under the Bankruptcy Code, or an interim or permanent trustee is appointed in the Bankruptcy Case, or a responsible officer or an examiner with powers beyond the duty to investigate and report (as set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in the Bankruptcy Case; (ii) relief from the automatic stay to permit foreclosure is granted or there is an exercise of other remedies on the Acquired Assets; or (iii) Seller consents to any modification of this Agreement without the prior written agreement of Buyer.

(b) <u>Termination by Buyer</u>.  Buyer may terminate this Agreement immediately upon written notice to Seller if there shall be a material breach by Seller of any material representation or warranty, or any material covenant or agreement contained in this Agreement, which breach cannot be cured or has not been cured within fifteen (15) business days after the giving of written notice by Buyer to Seller of such breach. Notwithstanding anything to the contrary set forth herein, Buyer may terminate this Agreement if for any reason Buyer is unable to close the purchase of Oakdale Campus pursuant to Oakdale Campus APA.

(c) <u>Termination by Seller</u>.  Seller may terminate this Agreement upon written notice to Buyer if there shall be a material breach by Buyer of any material representation or warranty, or by Buyer of any material covenant or agreement contained in this Agreement, which breach cannot be cured or has not been cured within 15 business days after the giving of written notice by Seller to Buyer of such breach.

(d) <u>Termination by Buyer and Seller</u>.  Subject to Bankruptcy Court approval, the Parties may terminate this Agreement by mutual written consent of Seller and Buyer.

(e) <u>Effect of Termination</u>.  If either Seller or Buyer terminates this Agreement pursuant to Section 7.1, all rights and obligations of the Parties hereunder shall terminate without any liability of any Party to any other Party (except for any liability of any Party then in breach of this Agreement).

## ARTICLE VIII
## MISCELLANEOUS

8.1 <u>Survival</u>.  To the extent specified herein, the representations, warranties, covenants and obligations in this Agreement shall survive the Closing and the consummation of the Sale.  The waiver of any condition based upon the accuracy of any representation or warranty, or on the performance of or compliance with any covenant or obligation, will not affect such right to set-off or other remedy based upon such representations, warranties, covenants and obligations.

8.2     No Third-Party Beneficiaries.  This Agreement shall not confer any rights or remedies upon any person other than the Parties and their respective successors and permitted assigns.

8.3     Entire Agreement.  This Agreement constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

8.4     Succession and Assignment.  This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns.  No Party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other Party; *provided, however*, that Buyer designate one or more of its affiliates to perform its obligations hereunder (in any or all of which cases Buyer nonetheless shall remain responsible for the performance of all of its obligations hereunder).

8.5     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.  The delivery of an executed signature page of this Agreement by fax or portable document format (.pdf) shall have the same effect as the delivery of a manually executed counterpart hereof or thereof.

8.6     Headings.  The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

8.7     Notices.  All notices, requests, demands, claims, and other communications hereunder shall be in writing.  Any notice, request, demand, claim, or other communication hereunder shall be deemed duly given (i) when delivered personally to the recipient, (ii) one business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (iii) four business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Seller:           Dowling College
                        150 Idle Hour Boulevard
                        Oakdale, New York 11769
                        Attn:  Robert S. Rosenfeld

                        -and-

                        RSR Consulting, LLC
                        1330 Avenue of the Americas, Suite 23A
                        New York, New York 10019
                        Attn:  Robert S. Rosenfeld

| | |
|---|---|
| Copy to: | Klestadt Winters Jureller Southard & Stevens, LLP<br>200 West 41st Street, 17th Floor<br>New York, New York 10036<br>Attn: Sean C. Southard, Esq. |
| If to Buyer: | Princeton Education Center LLC<br>1201 North Orange St. Suite 700-7550<br>Wilmington, DE 19801 |
| Copy to: | Liu, Zheng, Chen and Hoffman LLP<br>358 5th Ave, Suite 1003, New York, NY 10001<br>Attn: Jim Chengyu Hou, Esq. |

Any Party may change the address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Party notice in the manner herein set forth.

8.8     <u>Governing Law; Waiver of Jury Trial</u>.  This Agreement shall be governed by and construed in accordance with the domestic laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS.

8.9     <u>Submission to Jurisdiction; Consent to Service of Process</u>.  Without limiting any Party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Sale, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 8.7 hereof; *provided, however*, that, if the Bankruptcy Case has closed, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of New York sitting in Central Islip, New York or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in Suffolk County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the Parties hereby consents to process being served by any Party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 8.7.

8.10 <u>Amendments</u>. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by Buyer and Seller. Seller may consent to any such amendment at any time prior to the Closing with the prior authorization of Seller's Board.

8.11 <u>Severability</u>. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

8.12 <u>Expenses</u>. Each of the Parties will bear its own costs and expenses (including legal fees and expenses) incurred in connection with this Agreement and the Sale.

8.13 <u>Construction</u>. The Parties participated fully in the negotiation and preparation of this Agreement with full benefit of counsel. Accordingly, this Agreement is to be construed as if the Parties drafted it jointly and is not to be more strictly construed against any Party.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

DOWLING COLLEGE

By: *[signature]*
Name: ROBERT S. ROSENFELD
Title: CRO


PRINCETON EDUCATION CENTER LLC

*[signature: JIAN HUA LI]*

By: _____
Name: Jian Hua Li
Title: Member

**EXHIBIT A**

# BILL OF SALE

**THIS BILL OF SALE** made, executed and delivered this ___ day of May, 2017 by Dowling College, ("Seller") to Princeton Education Center LLC (the "Buyer"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in that certain Asset Purchase Agreement between Buyer and Seller dated as of May ___, 2017 (the "APA").

## W I T N E S S E T H:

**WHEREAS**, the APA provides for, among other things, the transfer and sale to Buyer of Seller's interest in the Acquired Assets (collectively, the "Assets").

**WHEREAS**, the parties desire to carry out the intent and purposes of the APA by Seller's execution and delivery to Buyer, in addition to such other instruments as Buyer shall have otherwise received or reasonably requested in accordance with the APA, of this Bill of Sale evidencing the transfer to and vesting in Buyer of all of Seller's right, title and interest in and to the Acquired Assets;

**NOW, THEREFORE**, in consideration of the promises and other valuable consideration paid to Seller by Buyer at or before the execution and delivery hereof, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

Conveyance. Seller hereby conveys, grants, bargains, sells, transfers, sets over, assigns and delivers to Buyer, its successors and assigns forever, all right, title, interest equities and privileges of Seller, in and to the Acquired Assets, free and clear of all Liens and Claims of any kind whatsoever.

Buyer's Benefit. Nothing in this instrument, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than Buyer, its successors and assigns, any remedy or claim under or by reason of this instrument or any terms, covenants or conditions hereof, and all the terms, covenants and conditions, promises and agreements in this instrument contained shall be for the sole and exclusive benefit of Buyer and its successors and assigns.

Effectiveness. This instrument is executed by and shall be binding upon Seller, for the uses and purposes set forth and referred to herein and in the APA, effective immediately upon its delivery to Buyer.

Governing Law. The validity, interpretation and performance of this Bill of Sale shall be governed by and construed in accordance with the laws of the State of New York without regard to its principles of conflicts of law.

2

        **IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be signed, all on the date and year first above written.

                          DOWLING COLLEGE
                          SELLER

                          By:    _____
                                Name: Robert S. Rosenfeld
                                Title: Chief Restructuring Officer

**ACCEPTED AND AGREED:**

PRINCETON EDUCATION CENTER
BUYER

By: _____
     Name: Jian Hua Li
     Title: Member

2