**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Joseph C. Corneau
Lauren C. Kiss

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                         :    Chapter 11
                                                             :
DOWLING COLLEGE,                                             :
f/d/b/a DOWLING INSTITUTE,                                   :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                               :
ASSOCIATION,                                                 :
f/d/b/a CECOM,                                               :
a/k/a DOWLING COLLEGE, INC.,                                 :
                                                             :
                                    Debtor.    :
-------------------------------------------------------------x

### SUPPLEMENT TO DEBTOR'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING THE SALE OF THE DEBTOR'S FURNITURE AND EQUIPMENT LOCATED AT THE OAKDALE CAMPUS TO PRINCETON EDUCATION CENTER LLC FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND REQUEST FOR <u>APPROVAL OF SALE TO NCF CAPITAL LIMITED OR ITS DESIGNEE</u>

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College, (the "<u>Debtor</u>"), debtor and debtor-in-possession in the above-captioned

chapter 11 case (the "<u>Chapter 11 Case</u>"), submits this *Supplement to Debtor's Motion for an*

*Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Approving the Sale of the*

*Debtor's Furniture and Equipment Located at the Oakdale Campus to Princeton Education*

*Center LLC Free and Clear of All Liens, Claims and Encumbrances and Request for Approval of*

1

*Sale to NCF Capital Limited or its Designee* (the "<u>Supplement</u>")[1] and respectfully states as follows:

**JURISDICTION**

1.     This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief sought herein are Section 105(a) and 363 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

**RELIEF REQUESTED**

3.     On June 16, 2017, the Debtor filed the *Debtor's Motion for an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Approving the Sale of the Debtor's Furniture and Equipment Located at the Oakdale Campus to Princeton Education Center LLC Free and Clear of All Liens, Claims and Encumbrances* (the "<u>F&E Sale Motion</u>") [DE 345]. By the F&E Sale Motion, the Debtor sought authority to sell certain furniture and equipment located at the Oakdale Campus to Princeton Education Center LLC ("<u>Princeton</u>"), which was the successful bidder at the auction for the Debtor's Oakdale Campus. The F&E Sale Motion is scheduled to be heard by the Court on July 10, 2017.

4.     At the time the F&E Sale Motion was filed, the Debtor expected that Princeton would close on the sale of the Oakdale Campus. However, as the Court knows, and as set forth in detail in the *Debtor's Motion for an Order (I) Confirming NCF Capital Limited or its Designee as Successful Bidder Pursuant to Bidding Procedures Order and (II) Authorizing Debtor to*

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the F&E Sale Motion (defined herein).

2

*Enter into and Perform Under Asset Purchase Agreement with NCF Capital Limited* (the "Supplemental Sale Motion") [DE 350], Princeton failed to close on the sale of the Oakdale Campus. By the Supplemental Sale Motion, the Debtor sought entry of an order confirming that NCF Capital Limited ("NCF"), which was designated as the Backup Bidder at the Auction for the Oakdale Campus, was the Successful Bidder and authorizing the Debtor to enter into and perform under the Asset Purchase Agreement between the Debtor and NCF.

5.       NCF has agreed to match the offer made by Princeton for the furniture and equipment located at the Oakdale Campus (the "F&E") on substantially the same terms and conditions.  In so doing, NCF has negotiated with the Debtor at arm's length, for value and in good faith, without fraud or collusion of any kind, in accordance with section 363(m) of the Bankruptcy Code.

6.       As a result of Princeton's failure to close on the sale of the Oakdale Campus, and NCF's offer to purchase the F&E, the Debtor files this Supplement to the F&E Sale Motion seeking entry of an order, substantially in the form annexed hereto as **Exhibit A**, approving the Asset Purchase Agreement for the F&E with NCF (the "NCF F&E APA") and authorizing the Debtor to enter into and perform under the NCF F&E APA, substantially in the form annexed hereto as **Exhibit B**.

7.       As described above and in the Supplemental Sale Motion, due to Princeton's breach of the Oakdale Campus APA, the Debtor determined to proceed with NCF, which was designated the Backup Bidder at the conclusion of the Auction for the purchase of the Oakdale Campus. NCF has offered to purchase the F&E for the same purchase price as Princeton offered, on substantially the same terms and conditions as Princeton did. A blackline comparison of the

F&E APA with Princeton attached to the F&E Sale Motion and the NCF F&E APA is annexed hereto as **Exhibit C**.

8.      The Debtor submits that the legal and factual justifications that supported the sale of the F&E to Princeton also apply to the sale of the F&E to NCF. Therefore, the legal and factual arguments set forth in the F&E Sale Motion are incorporated herein by reference as if more fully set forth herein.

## NOTICE

9.      Notice of the F&E Sale Motion was given to (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) counsel to the Creditors' Committee; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002; (f) all parties who are known to assert a lien, claim, encumbrance or other interests on any portion of the F&E and (g) all persons who made their interest in the F&E known to the Debtor or its counsel.

10.      No objections to the F&E Sale Motion were filed or received. Because the sale of the F&E to NCF is for the same price and substantially the same terms and conditions as the sale of the F&E to Princeton, the Debtor respectfully submits that no other or further notice is required.

**WHEREFORE** the Debtor respectfully requests that the Court enter an order substantially similar to the proposed order, attached hereto as **Exhibit A**, granting the relief requested herein, and granting the Debtor such other and further relief as is just and proper.

Dated:   New York, New York
         July 7, 2017

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**


By:   */s/ Sean C. Southard*
      Sean C. Southard
      Joseph C. Corneau
      Lauren C. Kiss
      200 West 41st Street, 17th Floor
      New York, NY 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: ssouthard@klestadt.com
             jcorneau@klestadt.com
             lkiss@klestadt.com

      *Counsel to the Debtor and Debtor in
       Possession*

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                             :     Chapter 11
                                             :
DOWLING COLLEGE,                    :
f/d/b/a DOWLING INSTITUTE,       :     Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI   :
ASSOCIATION,                      :
f/d/b/a CECOM,                    :
a/k/a DOWLING COLLEGE, INC.,    :
                                             :
                               Debtor.    :
---------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING THE SALE OF THE DEBTOR'S FURNITURE AND EQUIPMENT LOCATED AT THE OAKDALE CAMPUS TO NCF CAPITAL LIMITED OR ITS DESIGNEE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

Upon the Debtor's Motion for an Order Pursuant to sections 105(a) and 363 of the Bankruptcy Code Approving the Sale of the Debtor's Furniture and Equipment Located at the Oakdale Campus to Princeton Education Center LLC Free and Clear of all Liens, Claims and Encumbrances (the "Sale Motion") [DE 345],[1] as supplemented by the Supplement to Debtor's Motion for an Order Pursuant to sections 105(a) and 363 of the Bankruptcy Code Approving the Sale of the Debtor's Furniture and Equipment Located at the Oakdale Campus to Princeton Education Center LLC Free and Clear of all Liens, Claims and Encumbrances (the "Sale Motion Supplement") [DE 359] filed by Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), seeking approval of the sale (the "Sale") of the Debtor's furniture and equipment located at the Oakdale Campus (the "F&E") to NCF Capital Limited or its designee ("NCF") free and clear of liens, claims and encumbrances as provided in the Asset Purchase Agreement (the "F&E APA"), by and among

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion and Supplemental Sale Motion.

the Debtor and NCF annexed the to Sale Motion Supplement as <u>Exhibit B</u>; and it appearing that the Court has jurisdiction to consider the Sale Motion and the Sale Motion Supplement; and consideration of the Sale Motion and Sale Motion Supplement being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and appropriate notice of the Sale Motion and Sale Motion Supplement has been given under the circumstances; and it appearing that no other or further notice need be given; and this Court having reviewed the Declaration of Robert S. Rosenfeld filed on behalf of the Debtor in support of the Sale (the "<u>Rosenfeld Declaration</u>"); and a Sale Hearing having been held on July 10, 2017; and after due deliberation; and sufficient cause appearing therefore, it is hereby

**ORDERED** that the Sale Motion, as supplemented by the Sale Motion Supplement, is granted; and it is further

**ORDERED** that pursuant to Section 363(f) of the Bankruptcy Code the Sale of the F&E by the Debtor to NCF pursuant to the F&E APA shall be free and clear of all liens, claims, interests and encumbrances; and it is further

**ORDERED** that the Debtor has complied with Section 363(d)(1) of the Bankruptcy Code; and it is further

**ORDERED** that NCF is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code; and it is further

**ORDERED** that upon consummation of the Sale of the F&E to NCF, the Debtor shall pay the proceeds to the administrative agent for its post-petition secured lenders (the "<u>DIP Agent</u>"), which payment shall be applied to the Debtor's Obligations in accordance with the terms of that certain Debtor-in-Possession Multi-Draw Term Loan Promissory Note dated as of

November 29, 2016, by and among the Debtor and each lender party thereto and the DIP Agent; and it is further

ORDERED that the Debtor is authorized and empowered to take such actions and execute and deliver such documents and pay such sums as are reasonably necessary to effectuate the terms of this Order; and it is further

ORDERED that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

**Exhibit B**

ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "<u>Agreement</u>"), dated as of May 17, 2017 (the "<u>Execution Date</u>") is by and between DOWLING COLLEGE, a New York not-for-profit corporation ("<u>Dowling</u>" or "<u>Seller</u>"), and NCF CAPITAL LIMITED, or an affiliated entity ("<u>Buyer</u>"), each a "<u>Party</u>" and collectively the "<u>Parties</u>."

RECITALS

WHEREAS, on November 29, 2016 (the "<u>Petition Date</u>"), Dowling (the "<u>Debtor</u>") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 *et seq*. (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Eastern District of New York (the "<u>Bankruptcy Court</u>") (the "<u>Bankruptcy Case</u>"); and

WHEREAS, on the Petition Date, the Debtor filed a motion seeking, *inter alia*, approval of the sale of the Debtor's 25 acre campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769 (the "<u>Oakdale Campus</u>") to the successful bidder (the "<u>Successful Bidder</u>") as determined by the bidding procedures; and

WHEREAS, on December 16, 2016, an order was entered by the Bankruptcy Court, approving, *inter alia*, bidding procedures for the sale, and scheduling an auction ("<u>Auction</u>") and sale hearing in connection therewith (the "<u>Bidding Procedures Order</u>"); and

WHEREAS, on April 4, 2017, the Debtor conducted the Auction for the Oakdale Campus; and

WHEREAS, the Debtor declared Princeton Education Group LLC ("<u>Princeton</u>") to be the Successful Bidder at the conclusion of the Auction for the Oakdale Campus and Buyer was designated as Backup Bidder in accordance with the Bidding Procedures Order; and

WHEREAS, on April 7, 2017, Seller and Buyer executed an Asset Purchase Agreement with respect to the sale of the Oakdale Campus to Buyer (the "<u>Oakdale Campus APA</u>"); and

WHEREAS, Princeton failed to close on the sale of the Oakdale Campus in accordance with its asset purchase agreement with Seller and the related Order of the Court approving the sale of the Oakdale Campus to Princeton; and

WHEREAS, due to Princeton's failure to close on the sale of the Oakdale Campus following an extension of the closing date, the Debtor terminated its asset purchase agreement with Princeton and determined to proceed with Buyer as Backup Bidder in accordance with the Bidding Procedures Order and pursuant to the Oakdale Campus APA; and

WHEREAS, pursuant to the Oakdale Campus APA, Furniture and Equipment (as defined in the Oakdale Campus APA) located at the Oakdale Campus were Excluded Assets (as defined in the Oakdale Campus APA); and

WHEREAS, Seller agrees to sell, and Purchaser agrees to purchase, the Furniture and Equipment (defined herein) (the "Sale") pursuant to the terms of this Agreement.

ARTICLE I
DEFINITIONS

1.1    Definitions.  The following terms, as used herein, have the following meanings:

"Acquired Assets" has the meaning set forth Section 2.1.

"Claim" has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.

"Closing" has the meaning set forth in Section 3.1(a).

"Closing Date" has the meaning set forth in Section 3.1(a).

"Deposit" has the meaning set forth in Section 3.3.

"Excluded Assets" has the meaning set forth in Section 2.2

"Final Order" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for stay, new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument, or rehearing has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a stay, new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

"Furniture and Equipment" means all furniture, furnishings, machinery, appliances and other equipment owned by Seller and located on the Oakdale Campus, including all such vehicles, desks, chairs, tables, Hardware, copiers, telephone lines, telecopy machines and other telecommunication equipment and miscellaneous office furnishings, but specifically excluding Non-Estate Property.

"Hardware" means computer and computer-related hardware, including computers, file servers, facsimile servers, scanners, color printers, laser printers and networks except as may be included in the definition of Excluded Assets.

2

"Lien" means any claim, charge, easement, encumbrance, encroachment, security interest, mortgage, lien, pledge or restriction, whether imposed by contract, applicable law, equity or otherwise.

"Non-Estate Property" means that certain personal property that is either not owned by the Seller or which may be a Restricted Asset.

"Purchase Price" has the meaning set forth in Section 3.2(a).

"Restricted Assets" has the meaning set forth in Section 2.2(f).

## ARTICLE II
## PURCHASE AND SALE OF ASSETS

2.1     Assets to be Sold to Buyer.   On the terms and subject to the conditions of this Agreement, and on the basis of the representations and warranties herein contained, Seller shall sell, transfer, convey, assign and deliver to Buyer, or to an entity or entities designated by Buyer, on the Closing Date, all of its right, title and interest in the Furniture and Equipment (the "Acquired Assets"), free and clear of all Liens and Claims, to the fullest extent permissible under Section 363(f) of the Bankruptcy Code.

2.2     Excluded Assets.   For the avoidance of doubt, the following assets are not intended by the Parties to be a part of the Contemplated Transactions (as defined in the Oakdale Campus APA) and are excluded from the Acquired Assets (the "Excluded Assets"):

(a)     Seller's cash, cash equivalents, bank deposits and similar items;

(b)     Any personal property that is not located on the grounds of the Oakdale Campus;

(c)     All property and equipment that is leased by the Seller as described in Schedule 2.2(c);

(d)     All intellectual property and intangible property including, but not limited to, computer software, licenses, maintenance or support contracts, related to excluded computer equipment, IPv4 addresses, patents, trademarks, copyrights, domain addresses, e-mail addresses and phone numbers;

(e)     Seller's library special collections and excluded books as described in Schedule 2.2(e);

(f)     All Non-Estate Property, including donor restricted assets (including, without limitation, special library collections, art collections or pottery) and endowment funds held by, or for the benefit of, Seller, the income and/or corpus of which has been designated for use in support of, for the benefit of, or otherwise relating to, any of Seller's mission, operations, programs, services, and/or assets (collectively, the "Restricted Assets");

(g)     all computer equipment containing or capable of containing data including, but not limited to, computer servers (except to the extent it can be practically separated as a stand-alone server, the server containing the library catalog system) and related equipment (uninterruptable power supply devices, blade racks, cables, adaptors, etc.), desktop PCs (except approximately 100 Lenovo ThinkCentre 7484-AM4 PCs located in the four (4) student computer labs located on the first floor of the Racanelli Center across from the library) laptops, tablets, hard drives and other data and/or media storage devices (tapes, discs, floppy drives, etc.).

(h)     all of Debtor's records, record archives, stationary, letterhead, marketing materials or other materials containing the Dowling name, logo or seal.


ARTICLE III
PURCHASE PRICE, MANNER OF PAYMENT AND CLOSING

3.1     <u>Closing and Closing Date</u>. The closing of the Sale (the "<u>Closing</u>") shall take place at a location agreed upon by Buyer and Seller contemporaneously with the closing of the Oakdale Campus APA, or such other date as Buyer and Seller may mutually determine in writing (the "<u>Closing Date</u>").

3.2     Payment of Purchase Price.

(a)     <u>Consideration</u>.    Subject to the terms and conditions hereof, the aggregate consideration for the sale, assignment, transfer, conveyance and delivery of the Acquired Assets to Buyer (or its designee(s)) at Closing, shall be Ninety Thousand Dollars ($90,000) (the "<u>Purchase Price</u>").

(b)     <u>Payment</u>.  Subject to the terms and conditions hereof, on the Closing Date, Buyer shall pay to Seller the amount of the Purchase Price less the Deposit.

3.3     <u>Deposit</u>.  Buyer shall have made a cash deposit in the aggregate amount of five thousand dollars ($5,000) (the "<u>Deposit</u>").  Seller shall retain the Deposit as liquidated damages, as its sole remedy, if this Agreement is properly terminated by Seller pursuant to Section 7.1(c). The Debtor, through its counsel's escrow, will maintain the Deposit in a non-interest bearing Debtor account.

3.4     Closing Deliveries.

(a)     <u>Seller Deliveries</u>.  At the Closing, contemporaneously with Buyer's delivery to Seller of Buyer's deliveries set forth in subsection (b) hereof, Seller shall deliver or cause to be delivered to Buyer, duly executed by Seller the following items:

(i)     a fully-executed bill of sale from Seller substantially in the form annexed hereto as **<u>Exhibit A</u>**; and

(ii)     transferable vehicle registrations and any other documentation required by the New York State Department of Motor Vehicles in connection with the transfer of vehicles.

(b)    <u>Buyer Deliveries</u>.  At the Closing, contemporaneously with Seller's delivery to Buyer of Seller's deliveries set forth in subsection (a) hereof, Buyer shall deliver or cause to be delivered to Seller the following items:

(i)    as provided in this Agreement, the Purchase Price.

3.5    <u>Bulk Sales Laws</u>.  The Parties hereby waive compliance by Seller with the requirements and provisions of any applicable law related to "bulk-transfer" of any jurisdiction that may otherwise be applicable with respect to the sale and transfer of any or all of the Acquired Assets to Buyer.

ARTICLE IV
SELLER'S REPRESENTATIONS AND WARRANTIES

4.1    Seller represents and warrants to Buyer that the statements contained in this ARTICLE IV are correct and complete as of the date hereof and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the Execution Date throughout this ARTICLE IV).

(a) <u>Organization of Seller</u>.  Seller (a) is duly organized, validly existing under the laws of the State of New York, the jurisdiction of its formation, and (b) has full corporate power and authority and all necessary government approvals to own, lease and operate its properties and assets.

(b)    <u>Authorization of Transaction</u>.  Except for such authorization as is required by the Bankruptcy Court, Seller has full not-for-profit corporate power and authority to execute and deliver this Agreement.

(c)    <u>No Other Representations or Warranties</u>.  Except for the representations and warranties contained in this ARTICLE IV, neither Seller nor any other Person makes any other representation or warranty whether express or implied, written or oral, with respect to Seller, or the Acquired Assets, and Seller disclaims any other representations or warranties, whether made by Seller or any of its respective officers, directors, members, employees, agents, consultants or other representatives.  Except for the representations and warranties contained in this ARTICLE IV, Seller (a) expressly disclaims any representation or warranty, expressed or implied, at common law, by statute, or otherwise, relating to the condition of the Acquired Assets (including any implied or expressed warranty of merchantability or fitness for a particular purpose, or of conformity to models or samples of materials) and (b) disclaims all liability and responsibility for any representation, warranty, statement, or information made, communicated, or furnished (orally or in writing) to Buyer or its representatives (including any opinion, information, projection, or advice that may have been or may be provided to Buyer or its representatives by any director, officer, member, employee, agent, consultant or other representative of Seller). Seller makes no implied representation or warranty as to the condition, merchantability, usage, suitability or fitness for any particular purpose with respect to the Acquired Assets except for the representations and warranties contained in this ARTICLE IV.

## ARTICLE V
## BUYER'S REPRESENTATIONS AND WARRANTIES

5.1     Buyer represents and warrants to Seller that the statements contained in this ARTICLE V are correct and complete as of the Execution Date and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the Execution Date throughout this ARTICLE V).

(a) Organization of Buyer.  Buyer (a) is duly organized, validly existing and in good standing under the laws of the State of Delaware, the jurisdiction of its formation, and (b) has full corporate power and authority and all necessary government approvals to own, lease and operate its properties and assets and to conduct its business as presently conducted.

(b) Authorization of Transaction.  Buyer has full power and authority to execute and deliver this Agreement and, subject to such authorizations as required by the Bankruptcy Court to perform its obligations hereunder.

5.2     Acknowledgement Regarding Condition of the Acquired Assets. Notwithstanding anything contained in this Agreement to the contrary, Buyer acknowledges that (a) Buyer has had the opportunity to conduct due diligence prior to execution of this Agreement, (b) Buyer is relying solely upon Buyer's own independent review and investigation and not upon any written or oral representation of Seller, (c) Seller is not making any representations or warranties whatsoever, whether express or implied or written or oral, beyond those expressly given by it to Buyer in ARTICLE IV, and (d) Buyer agrees that, except for the representations and warranties contained therein, the Acquired Assets are being transferred to Buyer on a "WHERE IS" and, as to condition, "AS IS" basis.

5.3     No Other Representations or Warranties. Except for the representations and warranties contained in this ARTICLE V, neither Buyer nor any other person makes any other representation or warranty, whether express or implied, written or oral, with respect to Buyer, and Buyer disclaims any other representations or warranties, whether made by Buyer, any affiliate of Buyer or any of their respective officers, directors, members, managers, employees, agents, consultants or other Representatives.  Except for the representations and warranties contained in this ARTICLE V, Buyer disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement, or information made, communicated, or furnished (orally or in writing) to Seller or its representatives (including any opinion, information, projection, or advice that may have been or may be provided to them by any director, officer, member, manager, employee, agent, consultant, or other representative of Buyer or any of its affiliates).

## ARTICLE VI
## POST-CLOSING COVENANTS

6.1     Seller and Buyer agree as follows with respect to the period following the Closing:

(a) <u>General</u>.  After the Closing, each of Buyer and Seller will take such further action as is necessary on its part to carry out the purposes of this Agreement (including the execution and delivery of such further instruments and documents) as either may reasonably request, all at the sole cost and expense of the requesting Party (subject to such Party's indemnification rights for such expenses).  Without limiting the foregoing, each of Buyer and Seller will cooperate in providing access to all Excluded Assets, books, records, ledgers, files, documents, correspondence, lists and other documents and information related to the matters covered by this Agreement as the other may reasonably request, all at the sole cost and expense of the requesting Party (subject to such Party's indemnification rights for such expense).

(b) <u>Further Assurances</u>.  Each Party agrees to use all commercially reasonable efforts to take, or cause to be taken, all action, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to effectuate the consummation of the Sale.

ARTICLE VII
TERMINATION

7.1     <u>Termination of Agreement</u>.   In respect of the Sale, this Agreement may be terminated prior to the Closing as follows:

(a) <u>Termination Due to Events in Bankruptcy Case</u>.  Buyer may terminate this Agreement immediately upon written notice to Seller if: (i) the Bankruptcy Case is dismissed or converted to a Chapter 7 bankruptcy case under the Bankruptcy Code, or an interim or permanent trustee is appointed in the Bankruptcy Case, or a responsible officer or an examiner with powers beyond the duty to investigate and report (as set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in the Bankruptcy Case; (ii) relief from the automatic stay to permit foreclosure is granted or there is an exercise of other remedies on the Acquired Assets; or (iii) Seller consents to any modification of this Agreement without the prior written agreement of Buyer.

(b) <u>Termination by Buyer</u>.  Buyer may terminate this Agreement immediately upon written notice to Seller if there shall be a material breach by Seller of any material representation or warranty, or any material covenant or agreement contained in this Agreement, which breach cannot be cured or has not been cured within fifteen (15) business days after the giving of written notice by Buyer to Seller of such breach. Notwithstanding anything to the contrary set forth herein, Buyer may terminate this Agreement if for any reason Buyer is unable to close the purchase of Oakdale Campus pursuant to Oakdale Campus APA.

(c) <u>Termination by Seller</u>.  Seller may terminate this Agreement upon written notice to Buyer if there shall be a material breach by Buyer of any material representation or warranty, or by Buyer of any material covenant or agreement contained in this Agreement, which breach cannot be cured or has not been cured within 15 business days after the giving of written notice by Seller to Buyer of such breach.

(d) <u>Termination by Buyer and Seller</u>.  Subject to Bankruptcy Court approval, the Parties may terminate this Agreement by mutual written consent of Seller and Buyer.

7

(e) <u>Effect of Termination</u>.  If either Seller or Buyer terminates this Agreement pursuant to Section 7.1, all rights and obligations of the Parties hereunder shall terminate without any liability of any Party to any other Party (except for any liability of any Party then in breach of this Agreement and except for Seller's retention of the Deposit as liquidated damages as set forth in Section 3.3 hereof).

ARTICLE VIII
MISCELLANEOUS

8.1    <u>Survival</u>.    To the extent specified herein, the representations, warranties, covenants and obligations in this Agreement shall survive the Closing and the consummation of the Sale.  The waiver of any condition based upon the accuracy of any representation or warranty, or on the performance of or compliance with any covenant or obligation, will not affect such right to set-off or other remedy based upon such representations, warranties, covenants and obligations.

8.2    <u>No Third-Party Beneficiaries</u>.  This Agreement shall not confer any rights or remedies upon any person other than the Parties and their respective successors and permitted assigns.

8.3    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

8.4    <u>Succession and Assignment</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns.  No Party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other Party; *provided, however*, that Buyer designate one or more of its affiliates to perform its obligations hereunder (in any or all of which cases Buyer nonetheless shall remain responsible for the performance of all of its obligations hereunder).

8.5    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.  The delivery of an executed signature page of this Agreement by fax or portable document format (.pdf) shall have the same effect as the delivery of a manually executed counterpart hereof or thereof.

8.6    <u>Headings</u>.  The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

8.7    <u>Notices</u>.    All notices, requests, demands, claims, and other communications hereunder shall be in writing.  Any notice, request, demand, claim, or other communication hereunder shall be deemed duly given (i) when delivered personally to the recipient, (ii) one business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (iii) four business days after being mailed to the recipient by certified or registered

mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

| | |
|---|---|
| If to Seller: | Dowling College |
| | 150 Idle Hour Boulevard |
| | Oakdale, New York 11769 |
| | Attn:  Robert S. Rosenfeld |
| | |
| | -and- |
| | |
| | RSR Consulting, LLC |
| | 1330 Avenue of the Americas, Suite 23A |
| | New York, New York 10019 |
| | Attn:  Robert S. Rosenfeld |
| | |
| | |
| Copy to: | Klestadt Winters Jureller Southard & Stevens, LLP |
| | 200 West 41st Street, 17th Floor |
| | New York, New York 10036 |
| | Attn:  Sean C. Southard, Esq. |
| | |
| If to Buyer: | NCF Capital Limited |
| | 35/F Two Pacific Place |
| | 88 Queensway, Hong Kong |
| | |
| Copy to: | Cullen and Dykman LLP |
| | 100 Quentin Roosevelt Blvd. |
| | Garden City, New York 11530 |
| | Attn:  Matthew G. Roseman, Esq. |

Any Party may change the address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Party notice in the manner herein set forth.

8.8    <u>Governing Law; Waiver of Jury Trial</u>.  This Agreement shall be governed by and construed in accordance with the domestic laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS.

8.9    <u>Submission to Jurisdiction; Consent to Service of Process</u>.  Without limiting any Party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or

default hereunder, or the Sale, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 8.7 hereof; *provided, however*, that, if the Bankruptcy Case has closed, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of New York sitting in Central Islip, New York or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in Suffolk County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the Parties hereby consents to process being served by any Party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 8.7.

8.10    <u>Amendments</u>.  No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by Buyer and Seller.  Seller may consent to any such amendment at any time prior to the Closing with the prior authorization of Seller's Board.

8.11    <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

8.12    <u>Expenses</u>.  Each of the Parties will bear its own costs and expenses (including legal fees and expenses) incurred in connection with this Agreement and the Sale.

8.13    <u>Construction</u>.  The Parties participated fully in the negotiation and preparation of this Agreement with full benefit of counsel.  Accordingly, this Agreement is to be construed as if the Parties drafted it jointly and is not to be more strictly construed against any Party.

[remainder of page intentionally blank]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

DOWLING COLLEGE

By:_____
Name:
Title:

NCF CAPITAL LIMITED, or an affiliated entity thereof

By:_____
Name:
Title:

**EXHIBIT A**

## BILL OF SALE

**THIS BILL OF SALE** made, executed and delivered this ___ day of July, 2017 by Dowling College, ("Seller") to NCF Capital Limited, or an affiliated entity (the "Buyer"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in that certain Asset Purchase Agreement between Buyer and Seller dated as of May ___, 2017 (the "APA").

## W I T N E S S E T H:

**WHEREAS**, the APA provides for, among other things, the transfer and sale to Buyer of Seller's interest in the Acquired Assets (collectively, the "Assets").

**WHEREAS**, the parties desire to carry out the intent and purposes of the APA by Seller's execution and delivery to Buyer, in addition to such other instruments as Buyer shall have otherwise received or reasonably requested in accordance with the APA, of this Bill of Sale evidencing the transfer to and vesting in Buyer of all of Seller's right, title and interest in and to the Acquired Assets;

**NOW, THEREFORE**, in consideration of the promises and other valuable consideration paid to Seller by Buyer at or before the execution and delivery hereof, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

Conveyance.  Seller hereby conveys, grants, bargains, sells, transfers, sets over, assigns and delivers to Buyer, its successors and assigns forever, all right, title, interest equities and privileges of Seller, in and to the Acquired Assets, free and clear of all Liens and Claims of any kind whatsoever.

Buyer's Benefit.  Nothing in this instrument, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than Buyer, its successors and assigns, any remedy or claim under or by reason of this instrument or any terms, covenants or conditions hereof, and all the terms, covenants and conditions, promises and agreements in this instrument contained shall be for the sole and exclusive benefit of Buyer and its successors and assigns.

Effectiveness.  This instrument is executed by and shall be binding upon Seller, for the uses and purposes set forth and referred to herein and in the APA, effective immediately upon its delivery to Buyer.

Governing Law.  The validity, interpretation and performance of this Bill of Sale shall be governed by and construed in accordance with the laws of the State of New York without regard to its principles of conflicts of law.

       **IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be signed, all on the date and year first above written.

                                        DOWLING COLLEGE
                                        SELLER

                                      By:    _____
                                              Name: Robert S. Rosenfeld
                                            Title: Chief Restructuring Officer

**ACCEPTED AND AGREED:**

NCF CAPITAL LIMITED, or an affiliated entity
BUYER

By: _____
      Name:
      Title: Member

2

**Exhibit C**

ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of May 17, 2017 (the "Execution Date") is by and between DOWLING COLLEGE, a New York not-for-profit corporation ("Dowling" or "Seller"), and ~~Princeton Education Center LLC, a Delaware limited liability company~~NCF CAPITAL LIMITED, or an affiliated entity ("Buyer"), each a "Party" and collectively the "Parties."

RECITALS

WHEREAS, on November 29, 2016 (the "Petition Date"), Dowling (the "Debtor") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") (the "Bankruptcy Case"); and

WHEREAS, on the Petition Date, the Debtor filed a motion seeking, *inter alia*, approval of the sale of the Debtor's 25 acre campus located at 150 Idle Hour Boulevard, Oakdale, New York 11769 (the "Oakdale Campus") to the successful bidder (the "Successful Bidder") as determined by the bidding procedures; and

WHEREAS, on December 16, 2016, an order was entered by the Bankruptcy Court, approving, *inter alia*, bidding procedures for the sale, and scheduling an auction ("Auction") and sale hearing in connection therewith (the "Bidding Procedures Order"); and

WHEREAS, on April 4, 2017, the Debtor conducted the Auction for the Oakdale Campus; and

WHEREAS, the Debtor declared ~~Buyer~~Princeton Education Group LLC ("Princeton") to be the Successful Bidder at the conclusion of the Auction for the Oakdale Campus; and Buyer was designated as Backup Bidder in accordance with the Bidding Procedures Order; and

Formatted: Justified

WHEREAS, on April ~~6~~7, 2017, Seller and Buyer executed an Asset Purchase Agreement with respect to the sale of the Oakdale Campus to Buyer (the "Oakdale Campus APA"); and

WHEREAS, Princeton failed to close on the sale of the Oakdale Campus in accordance with its asset purchase agreement with Seller and the related Order of the Court approving the sale of the Oakdale Campus to Princeton; and

WHEREAS, due to Princeton's failure to close on the sale of the Oakdale Campus following an extension of the closing date, the Debtor terminated its asset purchase agreement with Princeton and determined to proceed with Buyer as Backup Bidder in accordance with the Bidding Procedures Order and pursuant to the Oakdale Campus APA; and

Formatted: Indent: First line: 0"

WHEREAS, pursuant to the Oakdale Campus APA, Furniture and Equipment (as defined in the Oakdale Campus APA) located at the Oakdale Campus were Excluded Assets (as defined in the Oakdale Campus APA); and

WHEREAS, Seller agrees to sell, and Purchaser agrees to purchase, the Furniture and Equipment (defined herein) (the "<u>Sale</u>") pursuant to the terms of this Agreement.

ARTICLE I
DEFINITIONS

1.1    <u>Definitions</u>.  The following terms, as used herein, have the following meanings:

"<u>Acquired Assets</u>" has the meaning set forth Section 2.1.

"<u>Claim</u>" has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.

"<u>Closing</u>" has the meaning set forth in Section 3.1(a).

"<u>Closing Date</u>" has the meaning set forth in Section 3.1(a).

"<u>Deposit</u>" has the meaning set forth in Section 3.3.

"<u>Excluded Assets</u>" has the meaning set forth in Section 2.2

"<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for stay, new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument, or rehearing has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a stay, new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

"<u>Furniture and Equipment</u>" means all furniture, furnishings, machinery, appliances and other equipment owned by Seller and located on the Oakdale Campus, including all such vehicles, desks, chairs, tables, Hardware, copiers, telephone lines, telecopy machines and other telecommunication equipment and miscellaneous office furnishings, but specifically excluding Non-Estate Property.

"<u>Hardware</u>" means computer and computer-related hardware, including computers, file servers, facsimile servers, scanners, color printers, laser printers and networks except as may be included in the definition of Excluded Assets.

**Comment [CaDL1]:** To the extent vehicles are being transferred, we will need provision requiring transferable registrations and any other DMV-required documentation to be furnished by Seller as Closing.

"Lien" means any claim, charge, easement, encumbrance, encroachment, security interest, mortgage, lien, pledge or restriction, whether imposed by contract, applicable law, equity or otherwise.

"Non-Estate Property" means that certain personal property that is either not owned by the Seller or which may be a Restricted Asset.

"Purchase Price" has the meaning set forth in Section 3.2(a).

"Restricted Assets" has the meaning set forth in Section 2.2(f).

ARTICLE II
PURCHASE AND SALE OF ASSETS

2.1    Assets to be Sold to Buyer.  On the terms and subject to the conditions of this Agreement, and on the basis of the representations and warranties herein contained, Seller shall sell, transfer, convey, assign and deliver to Buyer, or to an entity or entities designated by Buyer, on the Closing Date, all of its right, title and interest in the Furniture and Equipment (the "Acquired Assets"), free and clear of all Liens and Claims, to the fullest extent permissible under Section 363(f) of the Bankruptcy Code.

2.2    Excluded Assets.  For the avoidance of doubt, the following assets are not intended by the Parties to be a part of the Contemplated Transactions (as defined in the Oakdale Campus APA) and are excluded from the Acquired Assets (the "Excluded Assets"):

(a)    Seller's cash, cash equivalents, bank deposits and similar items;

(b)    Any personal property that is not located on the grounds of the Oakdale Campus;

(c)    All property and equipment that is leased by the Seller, as described in Schedule 2.2(c);

(d)    All intellectual property and intangible property including, but not limited to, computer software, licenses, maintenance or support contracts, related to excluded computer equipment, IPv4 addresses, patents, trademarks, copyrights, domain addresses, e-mail addresses and phone numbers;

(e)    Seller's library special collections and excluded books as described in Schedule 2.2(e);

(f)    All Non-Estate Property, including donor restricted assets (including, without limitation, special library collections, art collections or pottery) and endowment funds held by, or for the benefit of, Seller, the income and/or corpus of which has been designated for use in

3

support of, for the benefit of, or otherwise relating to, any of Seller's mission, operations, programs, services, and/or assets (collectively, the "Restricted Assets");

(g)    all computer equipment containing or capable of containing data including, but not limited to, computer servers (except to the extent it can be practically separated as a stand-alone server, the server containing the library catalog system) and related equipment (uninterruptible power supply devices, blade racks, cables, adaptors, etc.), desktop PCs (except approximately 100 Lenovo ThinkCentre 7484-AM4 PCs located in the four (4) student computer labs located on the first floor of the Racanelli Center across from the library) laptops, tablets, hard drives and other data and/or media storage devices (tapes, discs, floppy drives, etc.).

(h)    all of Debtor's records, record archives, stationary, letterhead, marketing materials or other materials containing the Dowling name, logo or seal.

> **Comment [CaDL2]:** Are these the only computers that are included in the definition of Hardware (as part of "Furniture and Equipment")? If so, definitions of Acquired Assets and Excluded Assets can probably be simplified?

## ARTICLE III
## PURCHASE PRICE, MANNER OF PAYMENT AND CLOSING

3.1    Closing and Closing Date. The closing of the Sale (the "Closing") shall take place at a location agreed upon by Buyer and Seller, within ten (10) days after the Bankruptcy Court's order approving the Sale becomes a Final Order contemporaneously with the closing of the Oakdale Campus APA, or such other date as Buyer and Seller may mutually determine in writing (the "Closing Date").

3.2    Payment of Purchase Price.

(a)    Consideration.    Subject to the terms and conditions hereof, the aggregate consideration for the sale, assignment, transfer, conveyance and delivery of the Acquired Assets to Buyer (or its designee(s)) at Closing, shall be Ninety Thousand Dollars ($90,000) (the "Purchase Price").

(b)    Payment.    Subject to the terms and conditions hereof, on the Closing Date, Buyer shall pay to Seller the amount of the Purchase Price less the Deposit.

3.3    Deposit.    Buyer shall have made a cash deposit in the aggregate amount of five thousand dollars ($5,000) (the "Deposit"). Seller shall retain the Deposit as liquidated damages, as its sole remedy, if this Agreement is properly terminated by Seller pursuant to Section 7.1(c). The Debtor, through its counsel's escrow, will maintain the Deposit in a non-interest bearing Debtor account.

3.4    Closing Deliveries.

(a)    Seller Deliveries.    At the Closing, contemporaneously with Buyer's delivery to Seller of Buyer's deliveries set forth in subsection (b) hereof, Seller shall deliver or cause to be delivered to Buyer, duly executed by Seller the following items:

(i)      a fully-executed bill of sale from Seller substantially in the form annexed hereto as **Exhibit A**~~.~~; and

(ii)      transferable vehicle registrations and any other documentation required by the New York State Department of Motor Vehicles in connection with the transfer of vehicles.

(b)      <u>Buyer Deliveries</u>.  At the Closing, contemporaneously with ~~Buyer's~~Seller's delivery to ~~Seller~~Buyer of ~~Buyer's~~Seller's deliveries set forth in subsection (a) hereof, Buyer shall deliver or cause to be delivered to Seller the following items:

(i)      as provided in this Agreement, the Purchase Price.

3.5      <u>Bulk Sales Laws</u>.  The Parties hereby waive compliance by Seller with the requirements and provisions of any applicable law related to "bulk-transfer" of any jurisdiction that may otherwise be applicable with respect to the sale and transfer of any or all of the Acquired Assets to Buyer.

ARTICLE IV
SELLER'S REPRESENTATIONS AND WARRANTIES

4.1      Seller represents and warrants to Buyer that the statements contained in this ARTICLE IV are correct and complete as of the date hereof and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the Execution Date throughout this ARTICLE IV).

(a) <u>Organization of Seller</u>.  Seller (a) is duly organized, validly existing under the laws of the State of New York, the jurisdiction of its formation, and (b) has full corporate power and authority and all necessary government approvals to own, lease and operate its properties and assets.

(b) <u>Authorization of Transaction</u>.  Except for such authorization as is required by the Bankruptcy Court, Seller has full not-for-profit corporate power and authority to execute and deliver this Agreement ~~and, subject to such authorization as is required by the Bankruptcy Court.~~.

(c) <u>No Other Representations or Warranties</u>.  Except for the representations and warranties contained in this ARTICLE IV, neither Seller nor any other Person makes any other representation or warranty whether express or implied, written or oral, with respect to Seller, ~~the~~ or the Acquired Assets, and Seller disclaims any other representations or warranties, whether made by Seller or any of its respective officers, directors, members, employees, agents, consultants or other representatives.  Except for the representations and warranties contained in this ARTICLE IV, Seller (a) expressly disclaims any representation or warranty, expressed or implied, at common law, by statute, or otherwise, relating to the condition of the Acquired Assets (including any implied or expressed warranty of merchantability or fitness for a particular purpose, or of conformity to models or samples of materials) and (b) disclaims all liability and responsibility for any representation, warranty, statement, or information made, communicated, or furnished (orally or in writing) to Buyer or its representatives (including any opinion,

5

information, projection, or advice that may have been or may be provided to Buyer or its representatives by any director, officer, member, employee, agent, consultant or other representative of Seller). Seller makes no implied representation or warranty as to the condition, merchantability, usage, suitability or fitness for any particular purpose with respect to the Acquired Assets except for the representations and warranties contained in this ARTICLE IV.

ARTICLE V
BUYER'S REPRESENTATIONS AND WARRANTIES

5.1     Buyer represents and warrants to Seller that the statements contained in this ARTICLE V are correct and complete as of the Execution Date and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the Execution Date throughout this ARTICLE V).

(a) Organization of Buyer.  Buyer (a) is duly organized, validly existing and in good standing under the laws of the State of Delaware, the jurisdiction of its formation, and (b) has full corporate power and authority and all necessary government approvals to own, lease and operate its properties and assets and to conduct its business as presently conducted.

(b) Authorization of Transaction.  Buyer has full power and authority to execute and deliver this Agreement and, subject to such authorizations as required by the Bankruptcy Court to perform its obligations hereunder.

5.2     Acknowledgement Regarding Condition of the Acquired Assets. Notwithstanding anything contained in this Agreement to the contrary, Buyer acknowledges that (a) Buyer has had the opportunity to conduct due diligence prior to execution of this Agreement, (b) Buyer is relying solely upon Buyer's own independent review and investigation and not upon any written or oral representation of Seller, (c) Seller is not making any representations or warranties whatsoever, whether express or implied or written or oral, beyond those expressly given by it to Buyer in ARTICLE IV, and (d) Buyer agrees that, except for the representations and warranties contained therein, the Acquired Assets are being transferred to Buyer on a "WHERE IS" and, as to condition, "AS IS" basis.

5.3     No Other Representations or Warranties. Except for the representations and warranties contained in this ARTICLE V, neither Buyer nor any other person makes any other representation or warranty, whether express or implied, written or oral, with respect to Buyer, and Buyer disclaims any other representations or warranties, whether made by Buyer, any affiliate of Buyer or any of their respective officers, directors, members, managers, employees, agents, consultants or other Representatives.  Except for the representations and warranties contained in this ARTICLE V, Buyer disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement, or information made, communicated, or furnished (orally or in writing) to Seller or its representatives (including any opinion, information, projection, or advice that may have been or may be provided to them by any director, officer, member, manager, employee, agent, consultant, or other representative of Buyer or any of its affiliates).

ARTICLE VI
POST-CLOSING COVENANTS

6.1    Seller and Buyer agree as follows with respect to the period following the Closing:

(a) <u>General</u>.  After the Closing, each of Buyer and Seller will take such further action as is necessary on its part to carry out the purposes of this Agreement (including the execution and delivery of such further instruments and documents) as either may reasonably request, all at the sole cost and expense of the requesting Party (subject to such Party's indemnification rights for such expenses).  Without limiting the foregoing, each of Buyer and Seller will cooperate in providing access to all Excluded Assets, books, records, ledgers, files, documents, correspondence, lists and other documents and information related to the matters covered by this Agreement as the other may reasonably request, all at the sole cost and expense of the requesting Party (subject to such Party's indemnification rights for such expense).

(b) <u>Further Assurances</u>.  Each Party agrees to use all commercially reasonable efforts to take, or cause to be taken, all action, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to effectuate the consummation of the Sale.

ARTICLE VII
TERMINATION

7.1    <u>Termination of Agreement</u>.  In respect of the Sale, this Agreement may be terminated prior to the Closing as follows:

(a) <u>Termination Due to Events in Bankruptcy Case</u>.  Buyer may terminate this Agreement immediately upon written notice to Seller if: (i) the Bankruptcy Case is dismissed or converted to a Chapter 7 bankruptcy case under the Bankruptcy Code, or an interim or permanent trustee is appointed in the Bankruptcy Case, or a responsible officer or an examiner with powers beyond the duty to investigate and report (as set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in the Bankruptcy Case; (ii) relief from the automatic stay to permit foreclosure is granted or there is an exercise of other remedies on the Acquired Assets; or (iii) Seller consents to any modification of this Agreement without the prior written agreement of Buyer.

(b) <u>Termination by Buyer</u>.  Buyer may terminate this Agreement immediately upon written notice to Seller if there shall be a material breach by Seller of any material representation or warranty, or any material covenant or agreement contained in this Agreement, which breach cannot be cured or has not been cured within fifteen (15) business days after the giving of written notice by Buyer to Seller of such breach. Notwithstanding anything to the contrary set forth herein, Buyer may terminate this Agreement if for any reason Buyer is unable to close the purchase of Oakdale Campus pursuant to Oakdale Campus APA.

(c) <u>Termination by Seller</u>.  Seller may terminate this Agreement upon written notice to Buyer if there shall be a material breach by Buyer of any material representation or warranty, or by Buyer of any material covenant or agreement contained in this Agreement, which breach

cannot be cured or has not been cured within 15 business days after the giving of written notice by Seller to Buyer of such breach.

(d) <u>Termination by Buyer and Seller</u>.  Subject to Bankruptcy Court approval, the Parties may terminate this Agreement by mutual written consent of Seller and Buyer.

(e) <u>Effect of Termination</u>.  If either Seller or Buyer terminates this Agreement pursuant to Section 7.1, all rights and obligations of the Parties hereunder shall terminate without any liability of any Party to any other Party (except for any liability of any Party then in breach of this Agreement <span style="color:red">and except for Seller's retention of the Deposit as liquidated damages as set forth in Section 3.3 hereof</span>).

ARTICLE VIII<br/>MISCELLANEOUS

8.1    <u>Survival</u>.    To the extent specified herein, the representations, warranties, covenants and obligations in this Agreement shall survive the Closing and the consummation of the Sale.  The waiver of any condition based upon the accuracy of any representation or warranty, or on the performance of or compliance with any covenant or obligation, will not affect such right to set-off or other remedy based upon such representations, warranties, covenants and obligations.

8.2    <u>No Third-Party Beneficiaries</u>.  This Agreement shall not confer any rights or remedies upon any person other than the Parties and their respective successors and permitted assigns.

8.3    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

8.4    <u>Succession and Assignment</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns.  No Party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other Party; *provided, however*, that Buyer designate one or more of its affiliates to perform its obligations hereunder (in any or all of which cases Buyer nonetheless shall remain responsible for the performance of all of its obligations hereunder).

8.5    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.  The delivery of an executed signature page of this Agreement by fax or portable document format (.pdf) shall have the same effect as the delivery of a manually executed counterpart hereof or thereof.

8.6    <u>Headings</u>.  The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

8.7    Notices.    All notices, requests, demands, claims, and other communications hereunder shall be in writing.  Any notice, request, demand, claim, or other communication hereunder shall be deemed duly given (i) when delivered personally to the recipient, (ii) one business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (iii) four business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Seller:        Dowling College
                150 Idle Hour Boulevard
                Oakdale, New York 11769
                Attn:  Robert S. Rosenfeld

                -and-

                RSR Consulting, LLC
                1330 Avenue of the Americas, Suite 23A
                New York, New York 10019
                Attn:  Robert S. Rosenfeld

Copy to:        Klestadt Winters Jureller Southard & Stevens, LLP
                200 West 41st Street, 17th Floor
                New York, New York 10036
                Attn:  Sean C. Southard, Esq.

If to Buyer:        ~~Princeton Education Center LLC~~NCF Capital Limited
                ~~1201 North Orange St. Suite 700 7550~~
                ~~Wilmington, DE 19801~~

                35/F Two Pacific Place
                88 Queensway, Hong Kong

Copy to:        ~~Liu, Zheng, Chen~~Cullen and ~~Hoffman~~Dykman LLP
                ~~358 5th Ave, Suite 1003~~          100 Quentin Roosevelt Blvd.
                Garden City, New York ~~NY 10001~~ 11530
                Attn: ~~Jim Chengyu Hou~~ Matthew G. Roseman, Esq.

Any Party may change the address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Party notice in the manner herein set forth.

8.8    Governing Law; Waiver of Jury Trial.  This Agreement shall be governed by and construed in accordance with the domestic laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES

9

ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS.

8.9    <u>Submission to Jurisdiction; Consent to Service of Process</u>.  Without limiting any Party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Sale, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 8.7 hereof; *provided, however*, that, if the Bankruptcy Case has closed, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of New York sitting in Central Islip, New York or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in Suffolk County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the Parties hereby consents to process being served by any Party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 8.7.

8.10    <u>Amendments</u>.  No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by Buyer and Seller.  Seller may consent to any such amendment at any time prior to the Closing with the prior authorization of Seller's Board.

8.11    <u>Severability</u>.    Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

8.12    <u>Expenses</u>.  Each of the Parties will bear its own costs and expenses (including legal fees and expenses) incurred in connection with this Agreement and the Sale.

8.13    <u>Construction</u>.  The Parties participated fully in the negotiation and preparation of this Agreement with full benefit of counsel.  Accordingly, this Agreement is to be construed as if the Parties drafted it jointly and is not to be more strictly construed against any Party.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

DOWLING COLLEGE

10

By:_____
Name:
Title:


~~PRINCETON EDUCATION CENTER LLC~~
NCF CAPITAL LIMITED, or an affiliated
entity thereof


By:_____
Name:  ~~Jian Hua Li~~
Title:  ~~Member~~

11

**EXHIBIT A**

## BILL OF SALE

**THIS BILL OF SALE** made, executed and delivered this ___ day of ~~May~~July, 2017 by Dowling College, ("Seller") to ~~Princeton Education Center LLC~~NCF Capital Limited, or an affiliated entity (the "Buyer").  Capitalized terms used but not defined herein shall have the meanings ascribed to them in that certain Asset Purchase Agreement between Buyer and Seller dated as of May ___, 2017 (the "APA").

### W I T N E S S E T H:

**WHEREAS**, the APA provides for, among other things, the transfer and sale to Buyer of Seller's interest in the Acquired Assets (collectively, the "Assets").

**WHEREAS**, the parties desire to carry out the intent and purposes of the APA by Seller's execution and delivery to Buyer, in addition to such other instruments as Buyer shall have otherwise received or reasonably requested in accordance with the APA, of this Bill of Sale evidencing the transfer to and vesting in Buyer of all of Seller's right, title and interest in and to the Acquired Assets;

**NOW, THEREFORE**, in consideration of the promises and other valuable consideration paid to Seller by Buyer at or before the execution and delivery hereof, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

Conveyance.  Seller hereby conveys, grants, bargains, sells, transfers, sets over, assigns and delivers to Buyer, its successors and assigns forever, all right, title, interest equities and privileges of Seller, in and to the Acquired Assets, free and clear of all Liens and Claims of any kind whatsoever.

Buyer's Benefit.  Nothing in this instrument, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than Buyer, its successors and assigns, any remedy or claim under or by reason of this instrument or any terms, covenants or conditions hereof, and all the terms, covenants and conditions, promises and agreements in this instrument contained shall be for the sole and exclusive benefit of Buyer and its successors and assigns.

Effectiveness.  This instrument is executed by and shall be binding upon Seller, for the uses and purposes set forth and referred to herein and in the APA, effective immediately upon its delivery to Buyer.

Governing Law.  The validity, interpretation and performance of this Bill of Sale shall be governed by and construed in accordance with the laws of the State of New York without regard to its principles of conflicts of law.

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be signed, all on the date and year first above written.

DOWLING COLLEGE
SELLER

By: _____
Name: Robert S. Rosenfeld
Title: Chief Restructuring Officer

**ACCEPTED AND AGREED:**

~~PRINCETON EDUCATION CENTER~~
NCF CAPITAL LIMITED, or an affiliated entity
BUYER

By: _____
Name: ~~Jian Hua Li~~
Title: Member

2