**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                                      :    Chapter 11
                                                                                :
DOWLING COLLEGE,                                             :
f/d/b/a DOWLING INSTITUTE,                            :    Case No. 16-75545 (REG)
f/d/b/a  DOWLING  COLLEGE  ALUMNI  :
ASSOCIATION,                                                     :
f/d/b/a CECOM,                                                   :
a/k/a DOWLING COLLEGE, INC.,                       :
                                                                                :
                                              Debtor.              :
---------------------------------------------------------------x

### FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING AND USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) GRANTING CERTAIN RELATED RELIEF

This Order, entered with support from all of the Debtor's primary stakeholders, including the Debtor's prepetition bond lenders, the bond insurer and the official committee of unsecured creditors (the "Committee"), resolves the Debtor's motion, dated November 29, 2016, to approve postpetition financing and the use of cash collateral and other assets that serve as collateral for the Debtor's prepetition lenders (the "Motion")[1] on a final basis. The Court previously entered orders allowing the Motion on an emergency and/or interim basis on December 5, 2016, December 22, 2016, January 10, 2017, March 15, 2017, April 12, 2017, May 26, 2017 and June 23, 2017.

The Court having heard and resolved or overruled any and all objections to the relief requested in the Motion, including the resolution of the Committee's objection to the Motion reflected below; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and creditors; and good and sufficient notice of the Motion having been

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Motion and related exhibits. Conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

1

provided to parties in interest; upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. <u>Disposition</u>.  The Motion is granted on a final basis on the terms set forth in this order (the "<u>Final Order</u>").

2. <u>Resolution of Objections</u>.  The Committee's objection to the Motion, filed as Docket No. 138 (the "<u>Committee Objection</u>"), has been resolved with the consent of the Committee, the Prepetition Secured Parties and the Debtor on the terms set forth in the term sheet attached as **Exhibit A** (the "<u>Term Sheet</u>").  Those terms reserve various rights and claims owned by the Debtor or its estate for unsecured creditors (including claims under Chapter 5 of the Bankruptcy Code) and otherwise provide for the creation of a pool of assets for the benefit of unsecured creditors in these proceeding.  Three prior objection deadlines were established for the Motion during these cases, the last expiring January 3, 2017.  No other timely objections to the Motion were made, and accordingly, any other objections to the Motion or reservation of rights shall be and hereby are overruled.

3. <u>Authorization For DIP Financing and Use of Prepetition Collateral</u>. The Debtor is authorized to use Prepetition Collateral, including Cash Collateral, and to incur the DIP Loan Obligations subject to the terms of the Approved Budget, the DIP Documentation, and this Final Order.  As set forth in the DIP Documentation, amendments to the Approved Budget must be consented to by the Required Lenders and Committee and subject to consultation with the and office of the United States Trustee prior to the implementation thereof but shall not require further notice, hearing or court order.

4. <u>Authority to Execute and Deliver Necessary Documents</u>. The Debtor is authorized to enter into, deliver and perform all of its obligations and acts required under the DIP Documentation, and such other agreements as may be required by the DIP Documentation to give effect to the terms of the financing provided for therein, and in this Final Order, including, subject to payment of or reserve for amounts payable to unsecured creditors under the Term Sheet, those terms of the DIP Documentation regarding the application of proceeds from any sale, lease, transfer, or other disposition of assets outside of the ordinary course.

5. <u>Valid and Binding Obligations</u>. All obligations under the DIP Documentation shall constitute valid and binding obligations of the Debtor, enforceable against it and its successors and assigns, in accordance with the terms of the DIP Documentation and this Final Order.

6. <u>Matters Regarding Prepetition Financing Documents</u>. The Debtor has acknowledged, represented, stipulated, and agreed (the "<u>Debtor Stipulations</u>"), which Debtor Stipulations are binding on the Committee and all other parties-in-interest from and after the date hereof:

(a) To secure the obligations under the Series 1996 Bond Documents, the Debtor granted to the Series 1996 Bond Trustee first priority liens (the "<u>Series 1996 Liens</u>") on certain of the Debtor's assets as described in the Series 1996 Bond Documents (the "<u>Series 1996 Collateral</u>"). To secure the obligations under the Series 2002 Bond Documents, the Debtor granted to the Series 2002 Bond Trustee first priority liens (the "<u>Series 2002 Liens</u>") on certain of the Debtor's assets including, but not limited to, that certain dormitory building located in the Town of Brookhaven, New York (the "<u>Brookhaven Dorm</u>"), as more fully described in the Series 2002 Bond Documents (the "<u>Series 2002 Collateral</u>"). To secure the obligations under the

Series 2006 Bond Documents, the Debtor granted to the Series 2006 Bond Trustee and to ACA first priority liens (the "Series 2006 Priority Liens") on certain of the Debtor's assets including, but not limited to, the real property and improvements comprising the Debtor's campuses located in the hamlet of Oakdale, New York (the "Oakdale Campus") and the Town of Brookhaven, New York (the "Brookhaven Campus"), each as more fully described in the Series 2006 Bond Documents (the "Series 2006 Collateral"), and a second priority lien (the "Series 2006 Second Liens" and together with the Series 2006 Priority Liens, the "Series 2006 Liens") on the Brookhaven Dorm (the "Series 2006 Second Lien Collateral").  To secure the obligations under the Series 2015 Bond Documents, the Debtor granted to the Series 2015 Bond Trustee first priority liens (the "Series 2015 Liens") on certain of the Debtor's assets including, but not limited to, those certain single family residential properties (the "Houses") as more fully described in the Series 2015 Bond Documents (the "Series 2015 Collateral").  As additional security for the advances made under the Series 2006 Funding Agreement (which are also secured by the Series 2006 Collateral) and the advances made under the Series 2002/2015 Funding Agreement (which are also secured by the Series 2002 Collateral and the Series 2015 collateral), the Debtor granted to the Series 2002 Bond Trustee, the Series 2006 Bond Trustee, ACA, and the Series 2015 Bond Trustee liens (the "Funding Agreement Liens" and together with the Series 1996 Liens, the Series 2002 Liens, the Series 2006 Liens, and the Series 2015 Liens, the "Prepetition Liens") on all of the Debtor's otherwise unencumbered assets, as provided in the Series 2006 Funding Agreement and the Series 2002/2015 Funding Agreement (the "Funding Agreement Additional Collateral" and together with the Series 1996 Collateral, the Series 2002 Collateral, the Series 2006 Collateral, the Series 2015 Collateral, the "Prepetition Collateral");

(b)     As of the Petition Date, (i) the aggregate amount of the Secured Bond Obligations owed to the Series 1996 Bond Trustee under the Series 1996 Bond Documents (collectively, the "Series 1996 Obligations") is $3,615,730.91 (which is the sum of principal of $3,115,000, accrued and unpaid interest of $416,250.53, and fees and expenses and other amounts which are chargeable or otherwise reimbursable under the Series 1996 Bond Documents in the amount of $84,480.38 through and including the Petition Date), (ii) the aggregate amount of the Secured Bond Obligations owed to the Series 2002 Bond Trustee under the Series 2002 Bond Documents (collectively, the "Series 2002 Obligations") is $11,692,882.29 (which is the sum of principal of $8,755,000, accrued and unpaid interest of $2,367,497.92 through and including the Petition Date, and fees and expenses and other amounts which are chargeable or otherwise reimbursable under the Series 2002 Bond Documents in the amount of $570,384.37 through and including the Petition Date), (iii) the aggregate amount of the Secured Bond Obligations owed to the Series 2006 Bond Trustee and ACA under the Series 2006 Bond Documents (collectively, the "Series 2006 Obligations") is $38,541,422.60 (which is the sum of principal of $33,855,000, accrued and unpaid interest of $1,646,146.12 through and including the Petition Date, protective advances made by the Series 2006 Bond Trustee and/or ACA of $1,752,736.89, including, but not limited to advances made under the Series 2006 Funding Agreement, and fees and expenses and other amounts which are chargeable or otherwise reimbursable under the Series 2006 Bond Documents in the amount of $1,287,539.59 through and including the Petition Date, and (iv) the aggregate amount of the Secured Bond Obligations owed to the Series 2015 Bond Trustee under the Series 2015 Bond Documents (collectively, the "Series 2015 Obligations") is $7,254,229.97 (which is the sum of principal of $6,700,000 and accrued, unpaid interest of $298,243.06 , and fees and

expenses and other amounts which are chargeable or otherwise reimbursable under the Series 2015 Bond Documents in the amount of $255,986.91 through and including the Petition Date);

(c)     None of the Series 1996 Obligations, Series 2002 Obligations, Series 2006 Obligations or Series 2015 Obligations are subject to any avoidance, reductions, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity;

(d)     The Prepetition Liens constitute valid, binding, enforceable, and perfected liens with priority over any and all other liens and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity;

(e)     The Debtor, Committee and all other parties in interest have each waived any right it may have to challenge the Secured Bond Obligations and the Prepetition Liens on the Prepetition Collateral, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Secured Parties, with respect to the Secured Bond Obligations, the Prepetition Liens or the Prepetition Collateral;

(f)     None of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties is a control person or insider of the Debtor by virtue of any of the actions taken by them in respect of or in connection with the DIP Loan Obligations or the Secured Bond Obligations.

7. <u>DIP Lenders' Lien Priority</u>.

(a) To secure the DIP Loan Obligations solely with respect to Term Loan D, the DIP Agent, on behalf of itself and for the ratable benefit of the DIP Lenders, is hereby granted on a final basis, pursuant to sections 364(c)(2), 364(c)(3) (solely as to Permitted Liens), and 364(d)(1), and subject to the terms and conditions of the DIP Note, valid, enforceable and fully perfected, first priority priming liens on and senior security interests in (collectively, the "<u>DIP Liens</u>") all of the property, assets or interests in property or assets of the Debtor, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, including, without limitation, all property of the "estate" (within the meaning of the Bankruptcy Code) of the Debtor, and all Accounts, Inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, general intangibles, payment intangibles, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases, all of the equity interests of each subsidiary of the Debtor, all of the equity interests of all other Persons directly owned by the Debtor, money, investment property, deposit accounts, all commercial tort claims and the proceeds thereof, and all cash and non-cash proceeds, rents, products and profits of any collateral described above, excluding those assets allocated to unsecured creditors in the Term Sheet (collectively, the "<u>DIP Collateral</u>"), subject only to (A) Liens granted by the Debtor in unearned premiums under the Premium Financing Agreement, and (B) the Carve-Out.

(b) To secure the DIP Loan Obligations under Term Loans A, B, and C, the DIP Agent, on behalf of each such respective DIP Lender is hereby granted on a final basis pursuant to section 364(d)(1), and subject to the terms of the DIP Note, valid, enforceable and fully

perfected first priority priming liens on the DIP Collateral that secured such respective lender's prepetition indebtedness, but excluding any Funding Agreement Additional Collateral.

(c)    The DIP Liens shall be effective immediately upon the entry of this Final Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) Liens granted by the Debtor in unearned premiums under the Premium Financing Agreement; and (ii) the Carve-Out.

(d)    The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Final Order, without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments.

8.    <u>DIP Lenders' Superpriority Claim</u>.  The DIP Lenders are hereby granted on a final basis an allowed superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>") pursuant to section 364(c)(1) of the Bankruptcy Code in the Debtor's Chapter 11 Case and in any successor cases under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "<u>Successor Cases</u>") for all Term Loan D Obligations, having priority over any and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, excluding any proceeds or property recovered in connection with the pursuit of Avoidance Actions.  The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to payment of the Carve-Out and those assets allocated to unsecured creditors in the Term Sheet.

9.    <u>DIP Lenders' Fees</u>.  All reasonable fees and costs and expenses of the DIP Lenders reimbursable under the DIP Documentation (including, without limitation, all

reasonable attorneys' fees) shall be paid to the extent no objection thereto is received by the DIP Lenders within fifteen (15) business days after delivery of a summary invoice (redacted for privilege) to the Debtor (with a copy of each such invoice (also redacted for privilege) to be delivered by the Debtor to the U.S. Trustee and any Creditors' Committee) and without the need for further application to or order of the Court

10. <u>Adequate Protection Liens for Prepetition Secured Parties</u>.  As adequate protection in respect of any diminution in the value of the Prepetition Collateral, the incurrence of the DIP Loan Obligations, the use of Cash Collateral, the granting of the DIP Liens and the DIP Superpriority Claim or otherwise (for each Prepetition Secured Party, a "<u>Diminution Claim</u>"), the Prepetition Secured Parties are hereby granted on a final basis replacement liens on such Prepetition Secured Parties' Prepetition Collateral.  The foregoing liens shall be and hereby are (i) subject and subordinate only to the DIP Liens, Permitted Liens (to the extent Permitted Liens have priority over liens of such Prepetition Secured Parties) and the Carve-Out; and (ii) effective and perfected upon December 5, 2016, the date of this Court's initial order on the Motion, without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments.

11. <u>Other Adequate Protection for Prepetition Secured Parties</u>. As further adequate protection from the Prepetition Secured Parties (a) the Debtor shall, subject to applicable fiduciary duties, support and complete the liquidation and distribution of its assets in accordance with the resolution of the Committee Objection set forth in the Term Sheet; and (b) the Prepetition Secured Parties (or any successors thereof) shall each have the right to "credit bid" their respective claims up to the full amount of their respective Secured Bond Obligations during

any sale of all or any portion of the such Prepetition Secured Parties' Prepetition Collateral, as applicable, or any deposit in connection with such sale, including, without limitation, any sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any liquidation plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code, and shall be deemed "qualified bidders" with respect to such collateral for such purposes, <u>provided</u> any such credit bid is structured to ensure the transaction does not deprive unsecured creditors of cash the unsecured creditors would have received under the Term Sheet under a cash bid of the same amount.

12. <u>Carve-Out</u>. The DIP Liens, the DIP Superpriority Claim, and the Replacement Liens shall be subject, in accordance with the priority as set forth herein and subordinate only to: (i) fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "<u>Case Administration Fees</u>"), plus (ii) unpaid professional fees and expenses ("<u>Professional Fees</u>") payable to each legal or financial advisor retained by the Debtor including for the avoidance of doubt the fees and expenses of the CRO and the Creditors' Committee that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined below), but in all events in an amount not to exceed the aggregate amount(s) allocated to each such professional in the Approved Budget, and ultimately allowed by the Court pursuant to sections 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event), plus (iii) $25,000 (earmarked for use by a Chapter 7 Trustee), plus (iv) $10,000, for the Case Administration Fees and Professional Fees accrued and unpaid on or after the date of the occurrence of a Termination Event ((i) through (iv), collectively, the "<u>Carve-Out</u>").

13. <u>Restrictions on Use of Funds</u>.  No cash that is and remains subject to a lien of the DIP Lenders and/or the Prepetition Secured Lenders (including, without limitation, Cash Collateral), nor any portion of the Carve-Out, may be used to pay, any claims for services rendered by any of the professionals retained by the Debtor, any creditor or party in interest, any committee, any trustee appointed under this Chapter 11 Case or any Successor Cases, or any other party to (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lenders in accordance with the DIP Documentation; or (ii) pay any "claim" of a "creditor" (as such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP Lenders or the Prepetition Secured Parties, unless otherwise permitted by the Term Sheet; or (iii) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby, or by the Term Sheet, without the consent of the DIP Lenders.

14. <u>Effect of Order</u>. (i) all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Final Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all challenges to the Secured Bond Obligations by any party in interest shall be deemed to be forever released, waived, and barred (iii) the Secured Bond Obligations shall be deemed to be fully allowed secured claims within the meaning of section 506 of the Bankruptcy Code, (iv) the Secured Bond Obligations shall be deemed to be fully allowed claims, and (v) the findings set forth in paragraph 6 of this order shall bind the Debtor and all parties in interest.

15. <u>Technical Amendments to the DIP Documentation</u>.  The DIP Lenders and Debtor, in consultation with the Committee, have agreed to the following technical amendments to the DIP Documentation, which are approved:

(i) The term "Maturity Date" shall be and hereby is amended to mean the earliest of: (i) October 31, 2017 and (ii) the date of the occurrence of a Termination Event. This Maturity Date may be further extended with the prior written consent of the DIP Lenders and Debtor after consultation with the Committee and office of the United States Trustee and notice to the Court but shall not require further notice, hearing or court order;

(ii) The Debtor may amend the Total Final Term Loan A Commitment, Total Final Term Loan B Commitment, Total Final Term Loan C Commitment, Total Final Term Loan D Commitment and corresponding principal amount of the DIP Note with the prior written consent of the Required Lenders after consultation with the Committee and office of the United States Trustee and notice to the Court but shall not require further notice, hearing or court order;

(iii) For purposes of calculating the existence of any Material Adverse Deviation, the Debtor shall treat the Approved Budget as commencing the week ending June 2, 2017;

(iv) The Events of Default specified in Sections 21.G, 21.J. and 21.K of the DIP Note shall be and hereby are deleted;

(v) Schedule 2 of the DIP Note shall be and hereby is replaced with the following Chapter 11 Milestones:

| **Chapter 11 Milestone** | **Completion Deadline** |
|---|---|
| Filing of a Liquidation Plan and disclosure statement consistent with the Term Sheet: | October 15, 2017 |
| Entry by the Bankruptcy Court of an Order Confirming the Liquidation Plan: | December 15, 2017 |
| Effective Date of the Liquidation Plan: | December 31, 2017 |

16. <u>Termination</u>.  Upon the occurrence of an Event of Default (as defined in the DIP Documentation), the Maturity Date (as defined in the DIP Documentation), or default by the

Debtor of any of its obligations under this Final Order unless waived in writing by all of the DIP Lenders, each in its sole discretion (the "Termination Event") (i) the Debtor's to use Cash Collateral shall immediately and automatically terminate ; (ii) the DIP Loan Obligations shall be immediately due and payable; (iii) the DIP Lenders shall have no further obligation to provide financing under the DIP Documentation or otherwise; and (iv) the Debtor, DIP Lenders, Prepetition Secured Parties or any of them may seek further relief from this Court and request emergency or expedited consideration thereof.

17.    Held Funds.  The automatic stay of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Prepetition Secured Parties to allocate or pay from any of the funds or accounts maintained by the Prepetition Secured Parties in accordance with the Prepetition Financing Documents.

18.    Release.    The release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph 18 shall be deemed effective upon entry of this Final Order.  The Debtor forever and irrevocably (i) releases, discharges, and acquits the Prepetition Secured Parties, all holders of the Series 1996 Bonds, Series 2002 Bonds, Series 2006 Bonds and Series 2015 Bonds and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the Prepetition Secured Parties and the Debtor including any equitable subordination claims or defenses, with respect to or relating to the Secured Bond Obligations, the

Prepetition Liens, the Prepetition Financing Documents, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition Secured Parties; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Secured Bond Obligations and the Prepetition Liens.

19.     <u>Limitation on Section 506(c) Claims</u>.  Except as set forth herein and in the Term Sheet, no costs or expenses of administration which have been or may be incurred in this Chapter 11 Case or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the DIP Agent, DIP Lenders or the Prepetition Secured Parties, any of their respective claims, the Carve-Out, the Prepetition Collateral or the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties.  Except as set forth herein and in the Term Sheet, no action, inaction or acquiescence by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, any of their respective claims, the Carve-Out, the Prepetition Collateral or the DIP Collateral.

20.     <u>Equities of the Case Waiver</u>.  The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the DIP Agent, the DIP Lenders or the Prepetition Secured Parties

with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral.

21. <u>Adequate Notice</u>. The notice given by the Debtor of the Motion was given in accordance with Bankruptcy Rules 2002 and 4001(c) and the local rules of this Court and, under the circumstances, was adequate and sufficient. The Debtor shall promptly mail copies of this Final Order to any known party affected by the terms of this Final Order and any other party requesting notice after the entry of this Final Order.

22. <u>Good Faith</u>. Any loan under the DIP Facility and other financial accommodations made to the Debtor by the DIP Agent or the DIP Lenders pursuant to the DIP Documentation and this Final Order shall be deemed to have been extended by the DIP Agent and the DIP Lenders, respectively, in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and DIP Lenders shall be entitled to all protections and benefits afforded thereby.

23. <u>Immediate Binding Effect; Entry of Final Order</u>. This Final Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and shall be binding upon any chapter 11 or chapter 7 trustee, and the Clerk of the Court is hereby directed to enter this Final Order on the Court's docket in this Chapter 11 Case.

65988647v.2



Dated: Central Islip, New York
      July 14, 2017

Robert E. Grossman
United States Bankruptcy Judge

15