| To: | **The Official Committee of Unsecured Creditors in *In re Dowling College, Chapter 11 Case No. 16-75545*** |
|---|---|
| Date: | **July 12, 2017** |
| Subject: | **Settlement Term Sheet** |

---

The outline attached as **Exhibit A** describes certain core terms for a potential global settlement among UMB Bank, National Association, as successor indenture trustee for the Series 1996 Bonds and Series 2002 Bonds described below and indenture trustee for the Series 2015 Bonds described below ("UMB"), Wilmington Trust, National Association, as successor indenture trustee for the Series 2006 Bonds described below ("Wilmington Trust"), ACA Financial Guarantee Corporation, as bond insurer for the Series 2006 Bonds ("ACA"), Dowling College (the "College") and the Official Committee of Unsecured Creditors (the "Committee") in *In re Dowling College, Chapter 11 Case No. 16-75545* (the "Bankruptcy Proceedings"). As used herein, UMB, Wilmington Trust and ACA may each be referred to as a "Prepetition Secured Lender" and, collectively, as "Prepetition Secured Lenders"). As used herein, UMB, Wilmington Trust, ACA, the College and the Committee may each be referred to as a "Party" and collectively as the "Parties".

The outline is for settlement and discussion purposes only, and is not itself a commitment to provide any relief to any Party with respect to the obligations and matters described herein; any settlement would be implemented ***solely*** pursuant to formal documentation acceptable to each Party.

As clarified at the July 10, 2017 hearing in the Bankruptcy Proceedings, the terms that follow contemplate that any plan in the Bankruptcy Proceedings will provide for the payment of all allowed administrative priority claims, allowed unsecured claims entitled to priority under the Bankruptcy Code and allowed secured claims (to the extent of the collateral securing the claims) subject to further order of the Bankruptcy Court.

The outline does not represent any admission, waiver or election of remedies by any Party.

[Text Continued in **Exhibit A**]

**Dowling College Settlement Term Sheet**
**Exhibit A**

| Term: | Description / Discussion: |
|---|---|
| **Affected Securities:** | The civic facility revenue refunding bonds issued in 1996 (the "Series 1996 Bonds") for the benefit of the College by the Suffolk County Industrial Development Agency ("SCIDA") pursuant to that certain Indenture of Trust dated as of June 1, 1996 between SCIDA and UMB, as successor indenture trustee (the "Series 1996 Bond Trustee"). |
| | The civic facility revenue bonds issued in 2002 (the "Series 2002 Bonds") for the benefit of the College by the Town of Brookhaven Industrial Development Agency ("BIDA") pursuant to that certain Indenture of Trust dated as of November 1, 2002 between BIDA and UMB, as successor indenture trustee (the "Series 2002 Bond Trustee"). |
| | The civic facility revenue refunding bonds issued in 2006 (the "Series 2006 Bonds") for the benefit of the College by SCIDA pursuant to that certain Indenture of Trust dated as of June 1, 2006 between SCIDA and Wilmington Trust as successor indenture trustee (the "Series 2006 Bond Trustee"). |
| | The taxable revenue bonds issued by the College in 2015 (the "Series 2015 Bonds" and, collectively with the Series 1996 Bonds, Series 2002 Bonds and Series 2006 Bonds, the "Bonds") pursuant to that certain Indenture of Trust dated as of June 15, 2015 between the College and UMB as indenture trustee (the "Series 2015 Bond Trustee"). |
| | "Bond Documents" means the documents evidencing and/or securing the Bonds. |
| **Claims Treatment:** | The claims of each of the Prepetition Secured Lenders under the Bond Documents as of the Petition Date are allowed in full. |
| | The Prepetition Secured Lenders' security interests are deemed valid and perfected. |
| **Asset Classification:** | The Parties will support a liquidation process that categorizes the assets of the College for settlement purposes as follows:[1] |
| | - Class I:  All assets of the College other than those specified in Classes II, III or IV below; |
| | - Class II:  Real Property and improvements consisting of Oakdale and Brookhaven campuses that were pledged as collateral for the Series 2006 Bonds (other than the Brookhaven Dorm); |
| | - Class III:  Real Property and improvements consisting of Brookhaven Dorm and associated real property that were pledged as collateral for the Series 2002 Bonds; |
| | - Class IV:  Real Property and improvements consisting of the Residential Portfolio that were pledged as collateral for the Series 1996 Bonds, Series 2002 Bonds and |

---

[1] Subject to verification and agreement of the parties regarding the assets included in the various classes.  The Committee, and any successor to the rights of the Committee under a confirmed chapter 11 plan (*e.g.*, a plan administrator), shall have the exclusive right to pursue any and all claims of the Debtor: (i) under the Debtor's Director and Officer Liability policies; (ii) under Bankruptcy Code Sections 544, 547, 548, 549, 550 and the New York State Debtor and Creditor Law Sections 270 *et seq.*; and (iii) against third parties.

**Dowling College Settlement Term Sheet**
**Exhibit A**

| Term: | Description / Discussion: |
|---|---|
| | Series 2015 Bonds. |
| **Disposition of Class I Assets:** | Proceeds from the disposition of Class I Assets to be applied as follows:<br><br>1. First, in an amount sufficient to pay direct costs of sale thereof (commissions, expenses, etc.);[2] then<br><br>2. Second, $200,000 to unsecured creditors; then<br><br>3. Third, to the DIP Lenders, in an amount sufficient to satisfy any portion of Term Loan D then unpaid; then<br><br>4. Fourth, to the Prepetition Secured Lenders and to unsecured creditors, in an allocation of 50% to the Prepetition Secured Lenders and 50% to unsecured creditors, until the obligations of the College under the Bond Documents are paid in full; then<br><br>5. Fifth, to unsecured creditors until paid in full.<br><br>Payments to the DIP Lenders in priority (3) shall be paid to the DIP Lenders, pro rata based on the obligations of the College to each DIP Lender on Term Loan D at the time of payment.<br><br>Payments to the Prepetition Secured Lenders in priority (4) shall be paid to the Prepetition Secured Lenders, pro rata based on the obligations of the College to each Prepetition Secured Lender under the Bond Documents at the time of payment. |
| **Disposition of Class II Assets (ACA campus collateral):** | Proceeds from the disposition of Class II Assets to be applied as follows:<br><br>1. First, in an amount sufficient to pay direct costs of sale thereof (commissions, expenses, etc.);[3] then<br><br>2. Second, to unsecured creditors in the amount of $300,000; then<br><br>3. Third, to the DIP Lender for Term Loan A, in an amount sufficient to pay the principal and interest on Term Loan A and that portion of Term Loan D funded by the Series 2006 Bond Trustee or ACA in full; then<br><br>4. Fourth, to the Series 2006 Bond Trustee or ACA in an amount equal to 70% of the amount of the claim associated with the Series 2006 Bonds as of the petition date; then<br><br>5. Fifth, to the Prepetition Secured Lenders, DIP Lenders and to unsecured creditors, in an allocation of 90% to the Prepetition Secured Lenders and DIP Lenders and 10% to unsecured creditors, until all prepetition and DIP claims |

---

[2]    Any amount reserved for this purpose but not necessary to be redistributed pursuant to this waterfall.

[3]    Any amount reserved for this purpose but not necessary to be redistributed pursuant to this waterfall.

**Dowling College Settlement Term Sheet**
**Exhibit A**

| Term: | Description / Discussion: |
|---|---|
| | secured by Class II Assets are satisfied in full; then <br><br> 6. Sixth, to unsecured creditors until paid in full. |
| **Disposition of Class III Assets (Brookhaven dorm):** | Proceeds from the disposition of Class III Assets to be applied as follows: <br><br> 1. First, in an amount sufficient to pay direct costs of sale thereof (commissions, expenses, etc.);[4] then <br><br> 2. Second, to the DIP Lender for Term Loan B, in an amount sufficient to pay the principal and interest on Term Loan B and that portion of Term Loan D funded by the Series 2002 Bond Trustee in full; then <br><br> 3. Third, to the Series 2002 Bond Trustee in an amount equal to 70% of the amount of the claim associated with the Series 2002 Bonds as of the petition date; then <br><br> 4. Fourth, to the Prepetition Secured Lenders, DIP Lenders and to unsecured creditors, in an allocation of 90% to the Prepetition Secured Lenders and DIP Lenders and 10% to unsecured creditors, until all prepetition and DIP claims secured by Class III Assets are satisfied in full; then <br><br> 5. Fifth, to unsecured creditors until paid in full. |
| **Disposition of Class IV Assets (residential portfolio):** | Proceeds from the disposition of Class IV Assets to be applied as follows: <br><br> 1. First, in an amount sufficient to pay direct costs of sale thereof (commissions, expenses, etc.);[5] then <br><br> 2. Second, to unsecured creditors the amount of $150,000; then <br><br> 3. Third, to the DIP Lender for Term Loan C, in an amount sufficient to pay the principal and interest on Term Loan C and that portion of Term Loan D funded by the Series 2015 Bond Trustee in full; then <br><br> 4. Fourth, to the Series 2015 Bond Trustee on account of the Series 2015 Bonds in an amount equal to 85% of the amount of the claim associated with the Series 2015 Bonds as of the petition date; then <br><br> 5. Fifth, to the Prepetition Secured Lenders, DIP Lenders and to unsecured creditors, in an allocation of 90% to the Prepetition Secured Lenders and DIP Lenders and 10% to unsecured creditors, until all prepetition and DIP claims secured by Class IV Assets are satisfied in full; then <br><br> 6. Sixth, to unsecured creditors until paid in full. |
| | |

---

[4]     Any amount reserved for this purpose but not necessary to be redistributed pursuant to this waterfall.

[5]     Any amount reserved for this purpose but not necessary to be redistributed pursuant to this waterfall.

**Dowling College Settlement Term Sheet**
**Exhibit A**

| Term: | Description / Discussion: |
|---|---|
| **Other:** | Standard releases in favor of the Prepetition Secured Lenders.  Prepetition Secured Lenders will also grant standard releases of other core parties.<br><br>The parties will work together to find an agreeable sale process for the Class II Assets and Class III Assets for such sales to take place as soon as practicable.  To the extent that there are assets of the College that are not sold prior to emergence, the parties will agree upon a consensual disposition process for all such assets on the following general parameters: establishment of a liquidating trust led by a liquidating trustee mutually acceptable to the Parties; all assets of the Debtor to be transferred to the liquidating trust upon emergence.  Funding of trust TBD.  The sale process with respect to each such asset will be conducted by the liquidating trustee and the Prepetition Secured Lender in the first priority position with respect to such asset, with representatives of the other secured parties and unsecured creditors having consultation rights.  To the extent a sale process is conducted post-emergence, such process will be detailed and approved by the Bankruptcy Court either as part of the plan, or by separate motion.<br><br>Prepetition Secured Lenders do not participate in distributions on account of any deficiency claim until the aggregate dividend to general unsecured creditors exceeds 10%.<br><br>Any Prepetition Secured Lender that consummates a credit bid for assets of the College shall structure the transaction to ensure the transaction does not deprive unsecured creditors of cash the unsecured creditors would have received under the applicable waterfall under a cash bid of the same amount.<br><br>All administrative expense claims against the estate shall be paid by the Debtor from proceeds of the DIP Loan Obligations in accordance with the terms of the DIP Documentation.<br><br>One half (1/2) of all unsecured priority claims against the estate shall be paid from monies that would otherwise have been available to the Prepetition Secured Lenders, on a pro rata basis with respect to each Prepetition Secured Lender, until such time as the Prepetition Secured Lenders have been paid in full.  The remaining one half (1/2) of all unsecured priority claims against the estate shall be paid from monies allocated to unsecured creditors herein. |