**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

In re                                          :        Chapter 11
                                               :
DOWLING COLLEGE,                               :
f/d/b/a DOWLING INSTITUTE,                      :        Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                 :
ASSOCIATION,                                    :
f/d/b/a CECOM,                                  :
a/k/a DOWLING COLLEGE, INC.,                    :
                                               :
                              Debtor.           :

----------------------------------------------------------------x

## NOTICE OF PROPOSED SALE OF CERTAIN IP
## ADDRESSES PURSUANT TO THE SALE PROCEDURES

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

**PLEASE TAKE NOTICE** that the debtor and debtor in possession in the above-

captioned case (the "Debtor") pursuant to the *Order Establishing Procedures for the Sale of the*

*Debtor's IP Addresses*, entered by the United States Bankruptcy Court for the Eastern District of

New York (the "Bankruptcy Court") on April 12, 2017 (the "Sale Order"), proposes to sell

certain IP Addresses to SendGrid, Inc. (the "Purchaser") pursuant to an agreement dated July 25,

2017 (the "Purchase Agreement") and attached hereto.   This Notice is being provided in

accordance with and sets forth the information required under the Sale Order.

> Description of Assets:  The assets consist of one (1) /16 block of IP Addresses identified
> as block 149.72.0.0/16, containing 65,536 IP addresses within the range 149.72.0.0 –
> 149.72.255.255 (the "IP Addresses").

> Economic Terms and Conditions of the Proposed Sale:  The Debtor proposes to sell the
> IP Addresses to the Purchaser on an "as is" basis, free and clear of all liens, claims, or
> encumbrances therein, pursuant to section 363(f) of the Bankruptcy Code.   The
> consideration for the sale is $851,968.00.

> Name and Address of Purchaser:  The Purchaser, a Delaware corporation, is not an
> insider or affiliate of the Debtor and is located at 1801 California Street, Suite 500,
> Denver, CO 80202.

Liens and Encumbrances on the Assets:  The Debtor is aware that the following parties hold liens and/or encumbrances on the IP Addresses:  (1) Wilmington Trust, National Association, as Indenture Trustee for the Series 2006 Bonds and (2) UMB Bank, National Association, as Indenture Trustee for the Series 2002 Bonds and Series 2015 Bonds.  To the extent any other party has liens or encumbrances on the IP Addresses, the Debtor believes any such lien or encumbrance would be subject to monetary satisfaction in accordance with section 363(f)(5) of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed sale (an "Objection") must: (a) be in writing, (b) state with specificity the nature of the objection; and (c) be filed with the Bankruptcy Court and served on: (i) The Office of the United States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, Esq., Trial Attorney; (ii) counsel to the Debtor: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Sean C. Southard, Esq.; (iii) counsel to the Debtor's material prepetition and post-petition secured lenders: (a) Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn: P. Miyoko Sato, Esq. and Ian A. Hammel, Esq., (b) White & Case LLP, 1221 Avenue of the Americas, New York, New York, 10020-1095 Attn:  Brian D. Pfeiffer, Esq., (c) Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord, Esq. and Thomas J. McNamara, Esq., and (d) Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, Attn:  Adam T. Berkowitz, Esq.; and (iv) counsel to the Creditors' Committee:  SilvermanAcampora, LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Ronald J. Friedman, Esq., **so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on August 9, 2017** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no objections are filed with the Bankruptcy Court and served by the Objection Deadline in accordance with the terms of the Sale

Order described above, then the Debtor may proceed with the proposed sale in accordance with

the terms of the Sale Order.

Dated:   New York, New York
         July 26, 2017

                              **KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   */s/ Sean C. Southard*

      Sean C. Southard
      Lauren C. Kiss
      200 West 41st Street, 17th Floor
      New York, NY 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: ssouthard@klestadt.com
           lkiss@klestadt.com

      *Counsel to the Debtor and Debtor in
       Possession*

3

*Execution Copy*

Asset Purchase Agreement for Purchase of IPv4 Addresses

This asset purchase agreement (this "Agreement") is entered into as of this 25th day of July 2017 (the "Effective Date"), by and among Dowling College, a New York not-for-profit corporation ("Seller"), and SendGrid, Inc., a Delaware corporation ("Purchaser"). Seller and Purchaser are each referred to herein individually as a "Party" and collectively as the "Parties." The Parties agree to the following terms:

1.  Assets.  This Agreement sets forth the terms of the acquisition (the "Transaction") by Purchaser of all of Seller's right, title and interest in, to, and under the IPv4 Internet Protocol Addresses listed on Exhibit A hereto (collectively, the "Assets").

2.  Purchase Price.  Purchaser shall pay Eight Hundred Fifty-One Thousand Nine Hundred Sixty-Eight Dollars and Zero Cents USD ($851,968.00 USD) (the "Purchase Price") in cash as consideration for the Assets. As part of the Purchase Price, Purchaser shall, upon execution of this Agreement, deposit Eighty-Five Thousand One Hundred Ninety-Six Dollars and Sixty Eight Cents USD ($85,196.68) with KWJS&S (as hereinafter defined) as a good-faith, fully refundable deposit hereunder (the "Deposit"), to be held in escrow by KWJS&S on behalf of the Parties and to be released by KWJS&S in accordance with Section 5 of this Agreement unless this Agreement is earlier terminated in which case the Purchase Price, including the Deposit, shall be returned to Purchaser by KWJS&S within two (2) business days of notice to KWJS&S by Purchaser.

3.  ARIN Approval.  The consummation of the Transaction is subject to approval by the American Registry for Internet Numbers ("ARIN").  The Parties agree that such approval requires Purchaser to sign a Registration Services Agreement (the "RSA") with ARIN ("ARIN Approval").  Purchaser and Seller shall each cooperate in good faith with ARIN regarding the RSA and will each promptly provide ARIN with any information reasonably required for its approval process.  Purchaser shall be liable for and pay any ARIN transfer fees, sales and transfer taxes (but excepting any resulting income taxes), filing fees, or documentary fees payable in connection with the purchase, sale or transfer of the Assets to Purchaser.  If ARIN, after submission of the appropriate request as set forth herein, rejects Purchaser as an eligible transferee of the Assets, either Party may terminate this Agreement in its sole discretion immediately whereupon the Purchase Price, including the Deposit, shall be returned to Purchaser within two (2) business days of notice to either Party and KWJS&S of such rejection.

4.  Bankruptcy Court Approval.  The consummation of the Transaction is subject to Bankruptcy Court (as defined below) approval pursuant to the procedures set forth in the *Order Establishing Procedures for the Sale of the Debtor's IP Addresses* (the "IPv4 Sale Procedures Order") entered by the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") on April 12, 2017.  In accordance with the IPv4 Sale Procedures Order, Seller shall, within three (3) days of the Effective Date, provide a written notice (the "Sale Notice"), by email or first class mail, to the required parties under the IPv4 Sale Procedures Order providing such parties in interest a fourteen (14) day period within which such parties may submit written objections to the Transaction. If (x) this Agreement has not been earlier terminated and no written objection from a party in interest is received by Seller or the Bankruptcy Court within the fourteen (14) day notice period provided under the Sale Notice, then the Transaction shall be deemed approved by the Bankruptcy Court, KWJS&S shall file a certification of counsel with the Bankruptcy Court that the Transaction has been conducted in accordance with the procedures contained in the IPv4 Sale Procedures Order, and the Parties shall, subject to the terms and conditions set forth in this Agreement but without the need for any further order of the Bankruptcy Court, consummate the Transaction; or (y) a written objection to the Transaction is received by Seller or the Bankruptcy Court within the fourteen (14) day notice period provided under the Sale Notice, then, absent a settlement, Bankruptcy Court approval of the Transaction will be required (each occurrence set forth in clauses (x) and (y), "Bankruptcy Court Approval"), and Purchaser may terminate this Agreement in its sole discretion at any time prior to receipt of a settlement removing all objections or the Bankruptcy Court Approval by giving notice to Seller, and immediately upon such termination the Purchase Price, including the Deposit, shall be returned to Purchaser within two (2) business days of notice to Seller and KWJS&S.

1828065.5

5.  <u>Closing</u>.  Consummation of the Transaction and the other transactions contemplated by this Agreement ("<u>Closing</u>") will take place as soon as practicable within five (5) business days after the receipt of the later of ARIN Approval and Bankruptcy Court Approval (as outlined below) and the satisfaction of all other conditions set forth herein, but in no event later than forty five (45) days after the Effective Date (the "<u>Outside Date</u>").  At Closing, an Assignment of the Assets, in the form attached hereto as <u>Exhibit B</u>, shall be fully executed and delivered by or on behalf of the Parties and KWJS&S shall deliver on behalf of Purchaser the Purchase Price, less the commission payable to Hilco Streambank ("<u>Agent</u>"), to Seller in accordance with <u>Section 6</u> of this Agreement.

6.  <u>Closing Conditions & Procedures</u>. The obligations of the Parties under this Agreement, including the obligation to effectuate the Closing, are subject to the satisfaction of all of the following conditions and procedures unless waived in writing by each Party in its sole discretion:

(a)  Within two (2) business days after the Effective Date, Purchaser shall wire transfer the Deposit to Seller's attorneys ("<u>KWJS&S</u>") to be held in escrow pending the earlier of the termination of this Agreement or the transfer of the Assets as described herein. Wire instructions are as follows:

|  |  |
|---|---|
| Bank: | Signature Bank |
| Address: | 950 Third Avenue NY, NY 10022 |
| Attention: | Marisol Figueroa |
| Tel.: | (646) 822-1504 |
| Routing #: | 026013576 |
| Swift code: | signus33 |
| A/C name: | Klestadt Winters Jureller Southard & Stevens, LLP Escrow \ Management Account |
| A/C #: | 1500879870 |

KWJS&S shall hold any funds received from Purchaser pursuant to this Agreement in the aforementioned escrow management account with Signature Bank.  The Parties acknowledge and agree that any funds received from Purchaser pursuant to this Agreement are not and shall not be deemed property of the Seller's estate and will not be commingled with any other funds of the Seller's estate.

(b)  Within two (2) business days of the Effective Date, Seller shall sign and deliver to KWJS&S the Assignment of Assets (in the form attached hereto as <u>Exhibit B</u>), to be held in escrow pending Closing.

(c)  Within one (1) business day of confirmation from KWJS&S of receipt of the Deposit, but no later than three (3) days following the Effective Date, Seller shall commence the Bankruptcy Court Approval process contemplated by the IPv4 Sale Procedures Order and <u>Section 4</u> of this Agreement.

(d)  As soon as practicable, but no later than two (2) business days following receipt by Purchaser of Bankruptcy Court Approval, Purchaser shall wire to KWJS&S an amount equal to the Purchase Price minus the Deposit in accordance with the wire provisions of <u>Section 6(a)</u> of this Agreement, to be held in escrow.

(e)  Upon confirmation of receipt of the Purchase Price by KWJS&S, Seller shall initiate transfer of the Assets into the ARIN account designated by Purchaser by submitting to ARIN the necessary transfer request.

(f)  Both Parties shall cooperate with ARIN in a timely manner and provide all information reasonably necessary to receive ARIN approval for the transfer.

(g)  Seller shall provide the ARIN transfer fee invoice to Purchaser promptly upon receipt. Upon receipt of such invoice from Seller (subject to a reasonable opportunity to review and be provided appropriate supporting materials), Purchaser shall pay the ARIN transfer fee directly to ARIN.

(h)     Upon confirmation from ARIN of the completed transfer and updated registration in the ARIN registry, unless this Agreement has been earlier terminated in accordance with its terms or Bankruptcy Court Approval has not been obtained, KWJS&S shall release and deliver (i) to Seller an amount equal to the Purchase Price, less Agent's commission, which Agent's commission shall be paid directly to Agent, and (ii) to Purchaser the fully executed Assignment of Assets.

(i)     In the event of any dispute between the Parties regarding the release of the funds and Assignment of Assets hereunder, KWJS&S may hold the funds and Assignment of Assets pending resolution by a court of proper jurisdiction in accordance with this Agreement or agreement by both Parties; provided, however, that in the event this Agreement is terminated pursuant to its terms, all such funds held by KWJS&S shall be released in accordance with the applicable provisions of this Agreement.

7.  Liabilities.  Upon the Closing (a) Purchaser shall assume all liabilities, claims or obligations relating to the Assets arising upon and after Closing (collectively, the "Assumed Liabilities"); and (b) Seller will be and remain liable for, and Purchaser will not assume, all liabilities, claims or obligations relating to the Assets arising prior to Closing or any of Seller's other obligations and liabilities, whether accrued or contingent, due or not due (collectively, the "Excluded Liabilities").

8.  Representations and Warranties.

(a)     As of the date of this Agreement and as of Closing, Seller represents and warrants to Purchaser as follows:

(i)     Seller is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized and has all necessary power and authority to enter into this Agreement and, subject to Bankruptcy Court Approval, to consummate all of the transactions contemplated herein. This Agreement has been duly executed and delivered by Seller and constitutes a valid and binding obligation of Seller, enforceable against it in accordance with its terms, subject to Bankruptcy Court Approval.  Except for Bankruptcy Court Approval and ARIN Approval, the execution, delivery and performance of this Agreement has been duly authorized by all necessary action on the part of Seller. Except for Bankruptcy Court Approval and ARIN Approval, the execution, delivery and performance by Seller of this Agreement and the transactions and agreements contemplated hereby to which Seller is or will be a party do not and will not (i) conflict with or result in a breach of the terms, conditions or provisions of, constitute a default under, result in a violation of, any provision of any existing laws and regulations applicable to Seller or the Assets; (ii) result in a violation of any agreement, instrument, order, writ, judgment or decree to which Seller is a party or is subject or which governs the Assets; or (iii) result in the creation or imposition of any lien, mortgage, pledge or security interest, hypothecation, encumbrance, license, lease, lien or similar charge of any kind (collectively, "Lien") upon any of the rights in and to the Assets, or, except as contemplated by Section 3 and 4 of this Agreement, require any approval, authorization, consent, order, license, permission, permit, qualification, exemption or waiver by any government entity or other third party (collectively, "Consent") or other action by or declaration or notice to any government entity or other third party pursuant.

(ii)    Seller is currently a debtor in possession under Chapter 11 of the United States Bankruptcy Code with its bankruptcy case currently pending before the Bankruptcy Court, Case No. 16-75545 (REG).

(iii)   Seller has obtained an order from the Bankruptcy Court authorizing the sale of the Assets, pursuant to section 363(f) of the Bankruptcy Code, free and clear of all Liens, claims, interests and encumbrances, with any such liens, claims, interests and encumbrances to attach to the net proceeds of such sale.

        (iv)      Seller is not a party to, and will not enter into, any agreements, oral or written, that are inconsistent with its obligations under this Agreement, including, but not limited to, any agreement providing for a sale, exchange or other disposition of any or all of the Assets.

        (v)      Except for those rights retained by ARIN in IP numbers generally, Seller is the owner of all right, title and interest in and to the Assets, and Seller has no knowledge of any person or entity with any license, right of first refusal, option or similar rights to use or acquire any interest in the Assets or any part thereof.

        (vi)      Seller has caused Agent to market the Assets using a process that includes the solicitation of bids and other procedures such that the Purchase Price represents no less than the fair market value of the Assets.

        (vii)      The representations and warranties of Seller in this Agreement and any ancillary agreement shall not survive the Closing.

(b)      As of the date of this Agreement and as of Closing, Purchaser represents and warrants to Seller as follows:

        (i)      Purchaser is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized and has all necessary power and authority to enter into this Agreement and to consummate all of the transactions contemplated herein. This Agreement has been duly executed and delivered by Purchaser and constitutes the valid and binding obligation of Purchaser, enforceable against it in accordance with its terms.  The execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate action on the part of Purchaser.

        (ii)      Purchaser is not a party to, and will not enter into, any legally binding agreements, oral or written, that are inconsistent with its obligations under this Agreement; provided, however, nothing will prohibit Purchaser from exercising its rights under this Agreement.

        (iii)      Purchaser acknowledges and agrees that (i) it is receiving the Assets on an "as is" and "where is" basis and (ii) except as expressly provided herein, Seller makes no express or implied warranties, representations or guarantees, including as to the quality or fitness of such Assets for their intended or any particular purpose.

9.   Additional Covenants.  From and after the date of this Agreement through the Closing, Seller shall or shall cause its agents to: (a) maintain the Assets in the condition in which they existed as of the date of this Agreement, free from Liens or other claims; (b) provide Purchaser with any other reasonably necessary and relevant information in Seller's possession with respect to the Assets upon Purchaser's reasonable request; (c) comply with all laws and regulations, agreement, instrument, order, writ, judgment or decree to which Seller is a party or is subject or which governs the Assets; and (d) promptly advise Purchaser of any written objections made in connection with the Sale Notice. From and after the date of this Agreement through the Closing, each Party shall or shall cause its agents to: (x) use its reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, and cooperate with each other in order to do, all things reasonably necessary, proper or advisable under applicable law to consummate the Transaction contemplated by this Agreement as soon as practicable and cause the fulfillment at the earliest practicable date of all of the conditions to the other Party's obligations to consummate the transactions contemplated by this Agreement, including in response to any objection received pursuant to the Sale Notice; and (y) promptly notify the other Party of the occurrence, to such first Party's knowledge, of any event or condition, or the existence, to such first Party's knowledge, of any fact, that could reasonably be expected to result in the failure of any of the conditions to the other Party's obligation to effectuate the Closing as set forth herein.

10.  Equitable Relief.  The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.

Accordingly, each of the Parties shall be entitled to equitable relief to prevent or remedy breaches of this Agreement prior to the Closing, without the proof of actual damages, including in the form of an injunction or injunctions or orders for specific performance in respect of such breaches. Each Party agrees, to the extent that such Party is subject to any equitable remedy, to waive any requirement for the security or posting of any bond in connection with any such equitable remedy. Each Party further agrees that the only permitted objection that it may raise in response to any action for equitable relief is that it contests the existence of a breach or threatened breach of the provisions of this Agreement.

11. Termination.  This Agreement may be terminated by: (i) mutual written consent of Purchaser and Seller; (ii) either Purchaser or Seller if the Closing has not occurred by the Outside Date, but only if the terminating party's actions or failures to act are not in breach of this Agreement and a principal cause of the failure of the Closing to occur on or before such date; (iii) either Purchaser or Seller if the procedures and conditions precedent set forth in Section 6 of this Agreement have not been satisfied or waived on or prior to the Closing; (iv) Purchaser upon Seller's acceptance of an offer to enter into an Alternative Transaction (as defined below); or (v) either Purchaser or Seller if (x) the representations and warranties of the other Party set forth in Section 8 are not true and correct in any material respect as of the Closing or (y) either Party shall not have performed and complied in all material respects with all of its covenants and other obligations under this Agreement which are to be performed or complied with by such Party prior to or on the Closing Date.  If this Agreement is terminated pursuant to this Section 11, KWJS&S shall return the Purchase Price, including the Deposit, to Purchaser within two (2) business days following such termination; provided, however, if the Closing does not occur due to an uncured breach of this Agreement by Purchaser, then Seller may retain the Deposit as liquidated damages.  Additionally, in consideration of the substantial time and expense incurred by Purchaser during the due diligence and negotiating process resulting in this Agreement, Seller will support a claim or application made by the Purchaser to the Bankruptcy Court, subject to the terms and conditions of this section, seeking the reimbursement and payment to Purchaser of its reasonable out-of-pocket costs and expenses (including attorneys' fees) but in no event to exceed $10,000.00 (the "Expense Reimbursement Fee") if, after execution of this Agreement, a third party shall submit an offer to purchase all or part of the Assets that is accepted by Seller and which is later consummated (an "Alternative Transaction").  In the event of such an Alternative Transaction, Seller will support payment of the Expense Reimbursement Fee as follows: (a) Seller shall pay or cause to be paid the Expense Reimbursement Fee to Purchaser in full in cash at the closing of the Alternative Transaction out of the cash proceeds delivered by the third-party purchaser of the Assets; and (b) the Expense Reimbursement Fee payable to Purchaser shall have administrative expense priority under Section 503 of the Bankruptcy Code.  For the avoidance of doubt, the Expense Reimbursement Fee shall be payable in addition to, and not as part of, the return of the Purchase Price, including the Deposit, to Purchaser.

12. Documents to be Delivered at Closing.  Seller will deliver all instruments reasonably necessary to transfer the Assets to Purchaser in accordance with this Agreement.

13. Applicable Law; Jurisdiction.  This Agreement and the Transaction contemplated hereby shall be construed in accordance with and governed by the laws of the State of New York.  Any proceeding to enforce the rights and obligations of any party under this Agreement shall be commenced and maintained exclusively in the United States Bankruptcy Court for the Eastern District of New York, which shall have exclusive jurisdiction over any such proceeding.

14. Notice. All notices hereunder shall be in writing, dated and signed by the Party giving the same.  Each notice shall be either (a) delivered in person to the address of the Party intended at the address of such Party as shown below, (b) delivered to the United States Postal Service addressed to the Party for whom it is intended at the address of such Party as provided below, (c) delivered by facsimile (with written confirmation of transmission) or electronic mail (and no notice of failure of delivery was received within a reasonable time after such message was sent), or (d) delivered to a nationally recognized overnight courier service that traces any such notice.  The address at which any Party hereto is to receive notice may be changed from time to time by such Party by giving notice of the new address to all other parties hereto.  The addresses of the Parties, until changed in accordance with the foregoing, are:

Purchaser:   SendGrid, Inc.
       1801 California Street, Suite 500
       Denver, CO 80202
       Attn: Legal Department
       Email: legal@sendgrid.com

With a copy to (which shall not constitute notice):

Purchaser's Counsel:  Bryan Cave LLP
       1700 Lincoln Street, Suite 4100
       Denver, CO 80203
       Attn:  Sean Odendahl
       Email: sean.odendahl@bryancave.com

Seller:      Dowling College
       150 Idle Hour Blvd.
       Oakdale, NY 11769
       Attn:  Robert S. Rosenfeld
       Email: rsrosenfeld@rsrconsultingllc.com

Seller's Counsel:  Klestadt Winters Jureller Southard & Stevens, LLP
       200 West 41st St., 17th Floor
       New York, NY 10036
       Attn: Sean C. Southard
       Email: ssouthard@klestadt.com

Seller's Agent:   Hilco Streambank
       1500 Broadway Ste. 810
       New York, NY 10036
       Attn: Jack Hazan
       jhazan@hilcostreambank.com

15. <u>Further Assurances</u>.  Without limiting the foregoing, on and after the Closing, each Party shall cooperate with the other Party, without any further consideration, to cause to be executed and delivered, all instruments, including instruments of conveyance, novations, assignment and transfer, and to make all filings with, and to obtain all consents that may be required under any permit, license, agreement, indenture or other instrument or regulation, and to take all such other actions as each Party may reasonably request to take by the other Party from time to time, consistent with the terms of this Agreement, in order to effectuate the provisions and purposes of this Agreement and the other documents contemplated hereby.

16. <u>Publicity</u>.  Subject to the Parties' disclosure obligations imposed by law, including the Sale Notice, (a) the Parties shall cooperate with each other in the development and distribution of all news releases, other public information disclosures and announcements, including announcements and notices to customers, suppliers and employees, with respect to this Agreement, or any of the transactions contemplated by this Agreement and the other documents contemplated hereby and (b) Seller shall not issue any such announcement or statement prior to consultation with, and the written approval of, Purchaser; provided that approval shall not be required where a Party determines, based on advice of counsel and after consultation with the other Party, that such disclosure is required by law.

17. <u>Transaction Expenses</u>.  Except as otherwise provided in this Agreement or the other documents contemplated hereby, each of Purchaser and Seller shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other documents and transactions contemplated hereby and thereby.

18. <u>Remedies</u>.  No failure to exercise, and no delay in exercising, any right, remedy, power or privilege under this Agreement by any Party will operate as a waiver of such right, remedy, power or privilege, nor will any single or partial exercise of any right, remedy, power or privilege under this Agreement preclude any other or further exercise of such right, remedy, power or privilege or the exercise of any other right, remedy, power or privilege.

19. <u>Amendments; Waivers</u>. No Party shall be deemed to have waived any provision of this Agreement or any of the other documents contemplated hereby unless such waiver is in writing, and then such waiver shall be limited to the circumstances set forth in such written waiver. This Agreement shall not be amended, altered or qualified except by an instrument in writing signed by all the parties hereto or thereto, as the case may be.

20. <u>Assignment; Successors and Assigns</u>. Except as otherwise expressly provided in this Agreement, all representations, warranties, covenants and agreements set forth in this Agreement by or on behalf of the Parties will be binding upon and inure to the benefit of such Parties and their respective successors and permitted assigns. Neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned (including by operation of law) by any Party without the prior written consent of Seller in case of an assignment by Purchaser or Purchaser in case of an assignment by Seller, which consent may be withheld in such Party's sole discretion, and any attempt to the contrary is void ab initio.

21. <u>No Presumption</u>. The Parties agree that this Agreement was negotiated fairly between them at arm's length and that the final terms of this Agreement are the product of the Parties' negotiations. Each Party represents and warrants that it has sought and received experienced legal counsel of its own choosing with regard to the contents of this Agreement and the rights and obligations affected hereby. The Parties agree that this Agreement shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Agreement therefore should not be construed against a Party on the grounds that such Party drafted or was more responsible for drafting the provisions.

22. <u>Severability</u>. If any provision, clause, or part of this Agreement, or the application thereof under certain circumstances, is held invalid, illegal or incapable of being enforced in any jurisdiction, (i) as to such jurisdiction, the remainder of this Agreement or the application of such provision, clause or part under other circumstances, and (ii) as for any other jurisdiction, all provisions of this Agreement, shall not be affected and shall remain in full force and effect, unless, in each case, such invalidity, illegality or unenforceability in such jurisdiction materially impairs the ability of the Parties to consummate the transactions contemplated by this Agreement. Upon such determination that any clause or other provision is invalid, illegal or incapable of being enforced in such jurisdiction, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible even in such jurisdiction.

23. <u>Headings</u>. The headings used in this Agreement are for the purpose of reference only and shall not affect the meaning or interpretation of any provision of this Agreement.

24. <u>Entire Agreement</u>. This Agreement sets forth the entire understanding of the Parties relating to the subject matter thereof, and all prior or contemporaneous understandings, agreements, representations and warranties, whether written or oral, are superseded by this Agreement and all such prior or contemporaneous understandings, agreements, representations and warranties are hereby terminated.

25. <u>Counterparts</u>. The Parties may execute this Agreement in two or more counterparts (no one of which need contain the signatures of all Parties), each of which will be an original and all of which together will constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or electronic transmission shall be as effective as delivery of a manually executed counterpart of a signature page to this Agreement.

*[Signatures on Following Page]*

AGREED TO ON THIS 25th DAY OF July, 2017 BY:

Seller:  Dowling College

By: _____
Name: Robert S. Rosenfeld
Title: CRO

Purchaser: SendGrid, Inc.

By: _____
Name: Michael Tognetti
Title: Senior Vice President & General Counsel

KWJS&S, as Escrow Agent

By: _____
Name: Sean C. Southard
Title: Partner

DocuSign Envelope ID: 418A0430-EEEE-4D83-AF48-2EF88E893DDF

AGREED TO ON THIS ___ DAY OF _____, 2017 BY:


**Seller:  Dowling College**                          **Purchaser: SendGrid, Inc.**

By: _____        By: _____
Name:                                                 Name: Michael Tognetti
Title:                                                Title: Senior Vice President & General Counsel

**KWJS&S, as Escrow Agent**


By: _____
Name:
Title:

**EXHIBIT A**

1.      One (1) /16 block of IP Addresses identified as block 149.72.0.0/16, containing 65,536 IP addresses within the range 149.72.0.0 – 149.72.255.255.

**EXHIBIT B**

**ASSIGNMENT OF ASSETS**

THIS ASSIGNMENT OF ASSETS (this "Assignment") is made as of _____ ___, 2017, by Dowling College (the "Assignor"), in favor of SendGrid, Inc. (the "Assignee") pursuant to that certain Asset Purchase Agreement dated July __, 2017 (the "Agreement").  Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Agreement.

WHEREAS, pursuant to the Agreement, Assignor agreed to sell to Assignee, and Assignee agreed to purchase from Assignor, the IPv4 Internet Protocol Addresses identified in the ARIN database and listed below, and subject to the terms and conditions provided in the Agreement:

One (1) /16 block containing 65,536 IP addresses within net range of 149.72.0.0 – 149.72.255.255.

WHEREAS, Assignor desires to sell, assign, transfer, convey and deliver to Assignee Assignor's rights, title and interests in the Assets on the terms and conditions set forth in the Agreement; and

WHEREAS, Assignee desires to purchase, accept and assume Assignor's rights, title and interests in the Assets on the terms and conditions set forth in the Agreement.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration payable pursuant to the Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      Assignment of Rights.  Assignor hereby sells, assigns, transfers, conveys and delivers, to Assignee, its successors and assigns forever, free and clear of any Liens, all of Assignor's rights, title and interests in, to, and under the Assets TO HAVE AND TO HOLD the same unto Assignee, for its own use, and for its successors, legal representatives and assigns forever in accordance with the terms set forth in the Agreement.

2.      Acceptance of Rights.  Assignee hereby accepts the sale, assignment, transfer, conveyance and delivery of Assignor's rights, title and interests in the Assets in accordance with the terms set forth in the Agreement.

3.      Acknowledgement of ARIN Policies.  Both Assignor and Assignee acknowledges that nothing herein is intended to effectuate an assignment of Assignor's rights, title and interests in the Assets free and clear of the policies of the American Registry for Internet Numbers.

4.      Miscellaneous. Assignor hereby irrevocably nominates, constitutes and appoints Assignee as the true and lawful attorney-in-fact of Assignor (with full power of substitution) effective as of the date of this Assignment and in relation to the Assets, and hereby authorizes Assignee, in the name of and on behalf of Assignor, to execute, deliver, acknowledge, certify, file and record any document, to institute and prosecute any proceeding and to take any other action (on or at any time after the date of this Assignment) that are reasonably necessary and appropriate for the purpose of (i) collecting, asserting, enforcing or perfecting any claim, right or interest of any kind in the Assets; (ii) defending or compromising any claim or proceeding relating to any of the Assets; or (iii) otherwise carrying out or facilitating any of the transactions contemplated by this Assignment.  The power of attorney referred to in the preceding sentence is and is coupled with an interest and is irrevocable and will survive the dissolution or insolvency of Assignor. The terms of the Agreement are incorporated in this Assignment by this reference.  The parties acknowledge and agree that the provisions contained in the Agreement will not be superseded hereby, but will remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Agreement and the terms hereof, the terms of the Agreement shall govern. Each party hereto hereby promises to deliver, upon request of the other party, all such additional assignments, assumptions, and other documents that may be reasonably necessary to accomplish the intent of this Assignment. The section headings contained in this Assignment are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Assignment.  This Assignment may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Assignment and all of which, when taken together, will be deemed to constitute one and the same agreement.  The exchange by the

parties hereto of copies of this Assignment and of signature pages by facsimile or other electronic means shall constitute effective execution and delivery of this Assignment as to the parties and shall be deemed to be their original signatures for all purposes. This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of New York without regard to principles of conflicts of law.

**IN WITNESS WHEREOF,** the parties hereto have caused this Assignment to be duly executed as of the date first above written.


**ASSIGNOR:   Dowling College**                     **ASSIGNEE: SendGrid, Inc.**

By:_____            By:_____
Name:                                            Name: Michael Tognetti
Title:                                           Title: Senior Vice President & General Counsel