**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re:                                                    :          Chapter 11
                                                          :
DOWLING COLLEGE,                                          :
f/d/b/a DOWLING INSTITUTE,                                :          Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                            :
ASSOCIATION,                                              :
f/d/b/a CECOM,                                            :
a/k/a DOWLING COLLEGE, INC.,                              :
                                                          :
                                        Debtor.           :
---------------------------------------------------------------x


**UNITED STATES DEPARTMENT OF EDUCATION'S**
**MEMORADNUM IN SUPPORT OF DEBTOR'S MOTION FOR AN ORDER**
**APPROVING AND AUTHORIZING PROCEDURES FOR THE TURNOVER**
**OF THE DEBTOR'S FEDERAL PERKINS LOAN PORTFOLIO**


                                        BRIDGET M. ROHDE
                                        Acting United States Attorney
                                        Eastern District of New York
                                        Attorney for Defendants
                                        610 Federal Plaza, 5th Floor
                                        Central Islip, New York 11722



JAMES H. KNAPP
Assistant United States Attorneys
          (Of Counsel)

# TABLE OF CONTENTS

TABLE AUTHORITIES ...................................................................................................... ii

INTRODUCTION ............................................................................................................... 2

BACKGROUND .................................................................................................................. 3

The Portfolio ........................................................................................................................ 3

Institutional Obligations Under the Perkins Loan Program ..................................................... 3

Borrower's Rights Under The Perkins Loan Program ............................................................. 4

The High Cost of Retaining a  Perkins Loan Portfolio ............................................................. 5

    A.  Servicing Costs .......................................................................................................... 6

    B.  Ancillary Costs ......................................................................................................... 6

ANALYSIS.......................................................................................................................... 8

Debtor Lacks Legal Authority To Retain The Portfolio........................................................... 8

Education Lacks Authority To Reimburse The Debtor .......................................................... 10

Retention of The  Portfolio Would Be Detrimental To The Debtor....................................... 12

Education Is In The Best Position To Service Perkins Loans. ............................................... 14

The Court Should Lift The Stay And Order The Debtor to Abandon The Portfolio ............. 15

CONCLUSION................................................................................................................... 16

## TABLE AUTHORITIES

### FEDERAL CASES

*Begier v. IRS*, 496 U.S. 53 (1990)...................................................................... 10, 12, 14

### FEDERAL STATUTES

The Consolidated Appropriations Act, 2017, P.L. 115-31, 131 Stat 135 (May 5, 2017)………..10

11 U.S.C. § 541 ................................................................................................... 2, 8, 17

11 U.S.C. §§ 362(d)(2) ............................................................................................ 2

20 U.S.C. § 1001(a) ......................................................................................... 4, 9, 11

20 U.S.C. § 1087aa-1087hh ................................................................................ 3, 11

20 U.S.C. § 1087cc(a)(4)(A)............................................................................... 7, 14

20 U.S.C. § 1087cc(a)(5) ................................................................................. 8, 9, 12

20 U.S.C. § 1087gg(b) ........................................................................................... 15

20 U.S.C. § 1087hh(4) ........................................................................................... 15

20 U.S.C. § 1092b.................................................................................................... 7

20 U.S.C. §1001.................................................................................................. 2, 4

31 U.S.C. § 1301(a) ............................................................................................... 11

31 U.S.C. § 3716................................................................................................ 14, 16

### FEDERAL REGULATIONS

34 C.F.R. § 674.17 (2017) ................................................................................ 5, 9, 10

34 C.F.R. § 674.2 .................................................................................................... 5

34 C.F.R. § 674.33(b)(5)........................................................................................... 5

34 C.F.R. § 674.33(g) ..................................................................................... 6, 7, 14

34 C.F.R. § 674.33(g)(1)........................................................................................... 7

34 C.F.R. § 674.37(f) ................................................................................................................. 5

34 C.F.R. § 674.61 ................................................................................................................ 6, 7

34 C.F.R. § 674.8 ................................................................................................................. 4, 8

34 C.F.R. § 674.8(b) .......................................................................................................... 9, 10

34 C.F.R. §§ 674.41-674.50 ..................................................................................................... 7

34 C.F.R. §§ 674.51 - 674.64 ................................................................................................... 5

34 C.F.R. § 682.200(a)(1) ........................................................................................................ 4

34 C.F.R. Part 674 .................................................................................................................... 3

Creditor United States Department of Education ("Education" or "Creditor") by its attorney BRIDGET M. ROHDE, Acting United States Attorney for the Eastern District of New York, James H. Knapp, Assistant United States Attorney, of counsel, respectfully submits this memorandum in support of Debtor Dowling College's ("Debtor") Motion For An Order Approving And Authorizing Procedures For the Turnover Of The Debtor's Federal Perkins Loan Portfolio, filed on June 16, 2017 ("Motion"). Docket No. 347. Education generally concurs with Debtor that, as of May 31, 2017, Debtor held Perkins Loan Portfolio assets consisting of: 1) revolving student loan funds in the amount of approximately $400,000 on deposit in a bank account ending in 1467 at US Bank, NA; 2) approximately $14,600 on deposit in a bank account ending in 5480 at Signature Bank; and 3) 717 Perkins loans with an approximate aggregate balance of $1.66 million[1] (collectively the "Debtor's Perkins Loan Portfolio" or "Portfolio"). Id., ¶ 12.

As set forth herein, and in Debtor's motion, this Court should grant the relief Debtor seeks because the Debtor's Perkins Loan Portfolio is not property of the Debtor pursuant to 11 U.S.C. § 541. Under the Federal Perkins Loan Program's implementing regulations, an institution of higher education that chooses to participate in the Perkins Loan Program loses the right to use the funds it contributes to the Program for any purpose other than the administration of that Program and may only retain the ownership of the loans made under the Program as long as it continues to operate and participate in the Program.

Alternatively, should the Court find the Portfolio is property of the Debtor, Education respectfully requests that the Court modify the stay and order that the Debtor abandon the Portfolio because the costs associated with retaining the Portfolio would leave little, if any, equity in it such

---

[1] Debtor identified 717 loans. However, Debtor's Fiscal Operations Report and Application to Participate, dated September 28, 2015, identified 860 borrowers. See Attachment C (Declaration of Tamy Garofano, dated August 16, 2017), ¶ 4.

that it would be of inconsequential value and benefit to the Debtor pursuant to Section 554(b) of the Bankruptcy Code.  See 11 U.S.C. §§ 362(d)(2), 554(b).

The Higher Education Act of 1965, as amended, 20 U.S.C. §1001, *et. seq*., ("HEA"), does not provide legal authority for Education to reimburse the Debtor for its contribution to the Portfolio.  Accordingly, if the Court determines that any portion of the Portfolio is property of the Debtor, the decision before the Court would be whether the Debtor should either:  1) retain the Portfolio, or  2) return the Portfolio to Education without reimbursement for its contribution. Moreover, as further explained below, Debtor's assignment of its Portfolio to Education would be in the best interest of the Debtor, its creditors, and the student loan borrowers.  However, should the Court determine that the Debtor should retain the Portfolio, the Debtor would be required to compensate Education for Education's contribution to the revolving fund that was used to make the loans in the Portfolio ("Revolving Fund").  The Debtor would also incur the cost of servicing the loans, providing loan cancellations and discharges, and defending the Debtor's collection actions in federal court.  In addition, the Debtor would be retaining a Portfolio with a 79% rate of default that is subject to loan cancellations, discharges, and mandatory assignment by Education – a substantial undertaking for the Debtor that would ultimately be detrimental to the Debtor and its creditors, as well as student loan borrowers.  As we will show below, the cost of retaining the Portfolio would far exceed any benefit of doing so.

## **INTRODUCTION**

1.      Between February 17, 1969 and August 5, 2016 Dowling College, OPEID 002667, participated in Title IV, Federal Student Aid ("FSA") programs ("Title IV"), including the Federal Perkins Loan Program, Title IV-E of the HEA (20 U.S.C. § 1087aa-1087hh)) (Regulations set forth in 34 C.F.R. Part 674).  Federal funds partially capitalize a loan fund from which colleges make student loans under the Perkins Loan Program.  As a condition of its participating in the Title

IV programs, most recently on July 16, 2014, Dowling signed a Program Participation Agreement ("PPA"), in which it agreed to abide by all the pertinent program laws and regulations.  See Attachment A ("PPA"); Docket No. 347-2 (Exhibit B)..

2.     Students who obtained loans under the Perkins loan program did so by signing standard promissory notes unique to this program ("Promissory Note").  See Attachment B (Promissory Note).  The Promissory Note is a contract, the terms of which govern the borrower's rights and obligations on the loan(s) obtained under this program.  The terms of the Promissory Note continue to apply throughout the life of the loan, and remain in effect despite any change in the identity of a loan holder.

## BACKGROUND

### The Portfolio

3.     The Portfolio, as reported on Debtor's Fiscal Operations Report and Application to Participate (FISAP), dated September 28, 2015, consists of 860 borrowers.  It has 283 borrowers not yet in repayment, 123 borrowers who are in repayment and current on their payments, and 454 borrowers in varying stages of default[2].  See Attachment C (Declaration of Tamy Garofano, dated August 16, 2017), ¶ 4.

4.     Education's contribution to the Revolving Fund was $1,774,874, while Debtor's contribution to it was $330,067.  Docket No. 347, ¶ 9.

### Institutional Obligations Under the Perkins Loan Program

5.     Participation in the Perkins Loan Program is limited, by its own terms, to "institutions of higher education" as defined in HEA Section 101(a), 20 U.S.C. § 1001(a).  As a

---

[2] Pursuant to 34 C.F.R. §682.200(a)(1), default is a "failure … to make an installment payment when due … provided that this failure persists for … 270 days for a loan repayable in monthly installments.

condition of its participation in the Title IV programs, an institution of higher education[3] must sign

a PPA, in which it agrees to abide by all the pertinent program laws and regulations.  <u>See</u> 34 C.F.R.

§ 674.8.   The PPA "provides that the institution shall use the funds it receives solely for the

purposes specified in this part."  <u>Id.</u> at § 674.8(a).  The PPA further specifies that the institution

shall establish and maintain a revolving fund from which Perkins loans are to be made and shall

deposit into the revolving fund institutional contributions in the amount specified by the regulation.

<u>Id.</u>  The institution may use money in the revolving fund only for the specified purposes, including

making loans to students, administrative and litigation expenses.  <u>Id.</u> at § 674.8(b).  If an institution

closes, it must assign the outstanding loans to Education:

>    (a) If an institution responsible for a Federal Perkins Loan fund closes or no longer wants
>    to participate in the program, the Secretary directs the institution to take the following steps
>    to protect the outstanding loans and the Federal interest in that Fund:
>
>    >    (1) A capital distribution of the liquid assets of the Fund according to section 466(c)
>    >    of the Act.
>
>    >    (2) The assignment of the outstanding loans to the United States.
>
>    (b) An institution that assigns outstanding loans under this paragraph relinquishes its
>    interest in those loans.

34 C.F.R. § 674.17 (2017).

### Borrower's Rights Under The Perkins Loan Program

6.    The Promissory Note provides, in relevant part that "[a]ll sums advanced under this

Note are subject to the [Higher Education] Act and Federal regulations issued under the Act."  <u>See</u>

Attachment B, ¶ 1.  Thus, borrowers who obtained loans pursuant to the Perkins loan program are

entitled to certain rights and benefits provided by this program.  As a matter of contract, these

---

[3] As defined in Section 101 of the HEA, 20 U.S.C. § 1001.

4

rights continue to apply throughout the life of the loan regardless of the identity of the loan holder. The loan holder bears the cost and the burden of ensuring that such rights are preserved.

7. Some of the borrowers' rights are unique to the Perkins loan program. The rights include hardship repayment extension pursuant to 34 C.F.R. § 674.33(b)(5); a six-month post-deferment grace period pursuant to 34 C.F.R. § 674.2; a three-year limit on forbearances (a period during which a borrower does not have to make any payments on the loan, but interest continues to accrue) pursuant to 34 C.F.R. § 674.37(f); and various types of loan cancellations pursuant to 34 C.F.R. §§ 674.51 - 674.64.

8. Reviewing cancellation requests and making determinations of cancellation eligibility is one of the most challenging and costly aspects of servicing a Perkins loan. It requires specialized knowledge that is unique to the Perkins loan program. Borrowers who have been denied cancellation requests can challenge cancellation denials in federal court.

9. In addition to the unique rights described above, Perkins borrowers possess other rights that, although not unique to the Perkins loan program, also have a significant impact on the Perkins loan portfolio. These include the right to a full discharge of a student loan if the student loan borrower was unable to complete his or her education due to school closure (34 C.F.R. § 674.33(g)), or has died or become disabled (34 C.F.R. § 674.61). Borrowers are entitled to challenge the denials of their discharges in federal court. The duty and the cost of defending challenges to the denial of a discharge is borne by the loan holder.

**The High Cost of Retaining a  Perkins Loan Portfolio**

10. Retaining a Perkins loan portfolio is costly because such portfolios must be maintained in accordance with the borrowers' rights under their Promissory Notes, including those granted by the HEA.  See Attachment B, ¶ 1.  The cost of complying with various borrowers'

5

rights is borne by the loan holder.  Such costs include servicing costs, the costs of discharging or cancelling loans, as well as litigating discharge denials.

### A.    <u>Servicing Costs</u>

11.    The unique nature of Perkins program rights and benefits, described above, substantially increases the cost of servicing a Perkins loan portfolio.  The average cost of servicing a portfolio with 860 borrowers ranges from $25,000 to $40,000, plus a one-time implementation fee or conversion fee that ranges from $1.00 to $20,000 per portfolio. <u>See</u> Attachment C, ¶ 6.  In most cases, the servicers charge add-on fees for additional aspects of servicing, including credit reporting, reporting to the National Student Loan Database System (mandatory reporting required under Section 485B of the HEA, 20 U.S.C. § 1092b), financial literacy and/or entrance and exit counseling.  Fees could range from an additional $1.00 to $2.00 per month for each loan serviced or flat rates of $1,000 or more per month per service.  Servicers may charge additional costs for loans that are delinquent, in varying stages of default, or for other services required by the institution. <u>See</u> Attachment C, ¶ 8.

### B.    <u>Ancillary Costs</u>

12.    In addition to paying for servicing, a holder of the Perkins loans is obligated, pursuant to the terms of the Promissory Notes, to provide Perkins borrowers with all the rights and benefits to which they are entitled under the HEA.  These include, but are not limited, to closed school discharges, 34 C.F.R. § 674.33(g), death and disability discharges, 34 C.F.R. § 674.61, and loan cancellations granted pursuant to 34 C.F.R. §§ 674.41-674.50.  For example, the closed school discharge regulation, 34 C.F.R. § 674.33(g), provides:

> (i) The holder of an NDSL or a Federal Perkins Loan discharges the borrower's (and any endorser's) obligation to repay the loan if the borrower did not complete the program of study for which the loan was made because the school at which the borrower was enrolled closed.

34 C.F.R. § 674.33(g)(1).

13.     Each discharge or cancellation that is granted decreases the value of the Portfolio and reduces potential future collections thereon.  Each discharge or cancellation that is denied carries the risk of a potential legal challenge brought by the borrower and the expenses thereof. The costs of these discharges and cancellations is borne by the loan holder.

14.     In addition, retaining a Perkins loan portfolio entails the risk of losing the loans to Education under the "mandatory assignment" provision of Section 463(a)(4)(A) of the HEA, 20 U.S.C. § 1087cc(a)(4)(A).  Section 463(a)(4)(A) of the HEA grants Education the right to mandate assignment of a Perkins loan without compensation if improper servicing of such loan results in the student's default on the loan.  It provides, in relevant part:

> . . . where a note or written agreement evidencing a [Perkins] loan has been in default despite due diligence on the part of the institution in attempting collection thereon—
>
> (A) if the institution has knowingly failed to maintain an acceptable collection record with respect to such loan as determined by the Secretary in accordance with criteria established in regulation, the Secretary may—
>
> (i) **require the institution to assign such note or agreement to the Secretary, without recompense**. . .

HEA Section 463(a)(4)(A), 20 U.S.C. § 1087cc(a)(4)(A)(emphasis added).[4]

15.     Thus, the cost of retaining and maintaining a Perkins loan portfolio includes not only the cost of the servicing, but also the cost of any discharges and cancellations to which borrowers are entitled under the terms of their Promissory Notes and the risk that Education will exercise its right to mandate assignment of such loans without recompense pursuant to the HEA. These costs and risks are borne by the loan holder.

---

[4]This mandatory assignment right is in addition to the mandatory assignment right provided in Section 463(a)(5) of the HEA, 20 U.S.C. § 1087cc(a)(5), discussed in Debtor's Motion.  Docket No. 347, pp. 6-8.

## ANALYSIS

### Debtor Lacks Legal Authority To Retain The Portfolio

16.     The Debtor did not have a legal or equitable interest in the Portfolio as of the commencement of this case, and thus the Portfolio is not property of the Debtor.  See 11 U.S.C. § 541.  When the Debtor elected to participate in the Perkins Loan Program, it signed a PPA pursuant to which it promised to abide by all the pertinent Perkins program laws and regulations.  See Attachment A; Docket No. 347-2 (Exhibit B).  This includes 34 C.F.R. § 674.8, which prohibits an educational institution from utilizing the monies it contributes to the revolving fund for any purpose other than as specified in 34 C.F.R. § 674.8(b), and 34 C.F.R.§674.17, which requires that the institution return all Perkins assets to Education when it closes.  In effect, an institution that decides to participate in the Perkins Loan Program surrenders the discretion to use the monies it contributes towards the Perkins Loan Program for any purpose other than the Program.  Pursuant to this statutory and regulatory framework, Debtor's financial interest in the Portfolio, from its inception, was limited by the terms of the PPA it signed, the HEA, and its implementing regulations.  In effect, Dowling retained a financial interest in the Portfolio only as long as it satisfied its obligations pursuant to its PPA and the conditions imposed by federal law.

17.     On August 6, 2016, when Debtor closed its doors, it ceased to be an "institution of higher education" within the meaning of the HEA, which requires that an educational institution must admit students and "provide an educational program."  HEA Section 101(a), 20 U.S.C. § 1001(a).  This made it ineligible to participate in the Perkins Loan Program, which is limited by its own terms to "institutions of higher education."  This, in turn, divested Debtor of any financial interest the Portfolio, which was contingent on Debtor's participation in the Perkins Loan Program.

18.  Furthermore, upon its closure Debtor was required to assign the loans by the express terms of HEA Section 463(a)(5), 20 U.S.C. § 1087cc(a)(5), which provides that

8

> [i]f an institution of higher education determines not to service and collect student loans made available from funds under this part, the institution will assign, at the beginning of the repayment period, notes or evidence of obligations of student loans made from such funds to the Secretary.

HEA Section 463(a)(5), 20 U.S.C. § 1087cc(a)(5).

The same requirement was also imposed by 34 C.F.R. § 674.17, which states that

> (a) If an institution responsible for a Federal Perkins Loan fund closes or no longer wants to participate in the program, the Secretary directs the institution to take the following steps to protect the outstanding loans and the Federal interest in that Fund:
>
> > (1) A capital distribution of the liquid assets of the Fund according to section 466(c) of the Act.
> >
> > (2) The assignment of the outstanding loans to the United States.
>
> (b) An institution that assigns outstanding loans under this paragraph relinquishes its interest in those loans.

34 C.F.R. § 674.17.

19.    As a result, when Dowling closed on August 6, 2016, it incurred a duty to return all of the Perkins-related assets to Education without reimbursement, including the portion of the Portfolio attributable to its own financial contribution.  Education notified Dowling of this obligation and requested assignment of the Portfolio is a letter dated August 3, 2016. See Attachment D; Docket No. 347-2 (Exhibit C).  As a result, Dowling lost any ownership interest in the Portfolio when it closed its doors on August 6, 2016.

20.    As noted above, the Debtor never possessed an unlimited right to dispose of its contribution to the Portfolio.  Rather, from the date of Portfolio's creation, Debtor's property interest in the Portfolio was limited to the uses set forth in 34 C.F.R. § 674.8(b).  While Debtor held the legal title to the loans in the Portfolio, its equitable interest was limited, from the beginning, to the uses specified in 34 C.F.R.§ 674.8(b).  Once Debtor closed its doors, it ceased to have equitable interest in those uses as well, divesting it of any property right in the Portfolio

except the legal title to the loans that it now holds as an agent for Education. "Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'" *Begier v. IRS*, 496 U.S. 53, 59 (1990). The Debtor thus lacked legal authority to retain any part of the Portfolio as of the commencement of its bankruptcy case, and now lacks authority to use any part of it for distribution to its other creditors as it is not property of the Debtor. From the moment Debtor entered into the PPA with Education and contributed funds toward the Portfolio, it lacked authority to access the funds other than in accordance with the Program. The Debtor cannot now, by virtue of filing for bankruptcy, acquire rights to the Portfolio it never had.

**Education Lacks Authority To Reimburse The Debtor**

21.     Education is a federal agency funded by monies appropriated by Congress and governed by federal appropriations laws. 31 U.S.C. § 1301(a) provides that "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law." The Consolidated Appropriations Act, 2017, P.L. 115-31, 131 Stat 135 (May 5, 2017), provided appropriations "[f]or Federal administrative expenses to carry out part D of title I, and subparts 1, 3, 9, and 10 of part A, and parts B, C, D, and E of title IV of the HEA, and subpart 1 of part A of title VII of the Public Health Service Act." Section 461 of the HEA provides the authority for the use of federal funds appropriated for the operation of the Perkins loan program. 20 U.S.C. § 1087aa. It provides that "[t]he Secretary shall carry out a program of assisting in the maintenance of funds at institutions of higher education . . . ." An "institution of higher education" is defined as "an educational institution . . . legally authorized . . . to provide a program of education beyond secondary education." HEA § 101(a), 20 U.S.C. § 1001(a).

22.     The Debtor is not an educational institution within the meaning of the HEA, as it closed its doors on August 6, 2016, and is no longer legally authorized to provide, nor does it

provide, any educational instruction. Consequently, the HEA does not provide legal authority, and Congress did not appropriate funds, for Education to reimburse the Debtor for its contribution to the revolving fund that created the Portfolio. Consistent with this, Education's Federal Perkins Loan Program Assignment and Liquidation Guide specifically provides that "[a]ll loans that a school assigns to the Department are assigned without recompense. The Department will not reimburse the school's program Fund for the loans, and all rights, authorities and privileges associated with the loan are transferred to the Department." See Attachment E (Federal Perkins Loan Program Assignment and Liquidation Guide, without Appendixes), p. 8. All assignments of Perkins loan Portfolios by educational institutions to date have been performed without reimbursement pursuant to Section 463(a)(5) of the HEA, 20 U.S.C. § 1087cc(a)(5).[5]

23. Debtor's contribution to the Revolving Fund that created the Portfolio was $330,067. Docket No. 347, ¶ 9. In addition, Debtor made various short-term loans to the revolving fund. Id. The HEA does not provide legal authority, and the Consolidated Appropriations Act of 2017 does not provide an appropriation, for Education to reimburse the Debtor for its contribution.

---

[5] The following are examples educational institutions have assigned their Perkins loan portfolios to Education without reimbursement due to closure:

| School Name | State | Timeframe for Assignment Completion | Total OPB Amount of Outstanding Portfolio Assigned at Liquidation | Perkins Liquidation Completed Date |
|---|---|---|---|---|
| Mount Washington College | NH | 10/27/2016 | $2,888,781 | 4/14/2017 |
| American Institute of Business | IA | 7/26/2016 | $705,439 | 11/29/2016 |
| Bryman College | CA | 6/14/2015 | $206,617 | 10/6/2016 |
| Manchester Beauty College | CA | 6/14/2015 | $330,994 | 10/6/2016 |
| Skyline College | VA | 3/11/2016 | $5,601 | 5/23/2016 |
| Tucson College | AZ | 6/14/2015 | $285,883 | 10/9/2015 |
| Victory University | TN | 2013 | $324,250 | 6/25/2013 |

Thus, to the extent this Court determines that the Portfolio is property of the Debtor, the Court must consider whether the Portfolio should be abandoned and assigned to Education without reimbursement of the Debtor's contribution, or retained it in its entirety with its attendant costs and risks.

**Retention of The  Portfolio Would Be Detrimental To The Debtor**

24.     The Portfolio would be a low-value asset that would be costly to retain and maintain.  It would require the Debtor to incur the expense of servicing loans, evaluating loan cancellations and discharges, hiring legal representation when necessary, as well as risk potential assignment to Education without reimbursement should it falter in any aspect of the above obligations.  At the same time the Portfolio's worth is far below its nominal value due to the extremely low repayment ratio, high closed school discharge eligibility, and high risk of mandatory assignment to Education.  As set forth below, the high cost of retaining the Portfolio, combined with its low future value, makes this outcome financially detrimental to the Debtor.

25.     Should the Curt determine that the Debtor should retain the Portfolio, it would be required to reimburse Education for its contribution of $1,774,874 to the Revolving Fund that created the Portfolio.  Docket No. 347, ¶ 9.  In addition, the Debtor would incur the cost of servicing the loans, performing loan cancellations, and defending its decisions in federal court.

26.     Debtor has previously contracted with Conduent to service the Portfolio.[6]  The contract is scheduled to expire on August 31, 2017.  As a closed school, Debtor has represented that it has no staff or resources to service the Portfolio.  Thus, unless the Portfolio is assigned to Education, the Debtor must retain one of the four existing loan servicers with the expertise to service Perkins loans. Attachment C, ¶ 8.  This further limits the choice of servicers available to

---

[6] The Debtor's current servicer, Conduent, recently announced that it is ceasing to service Perkins loans.

the Debtor, adding the potential additional cost of hiring a new servicer.  Thus, even if Debtor is able to secure a servicer for the Portfolio, the cost of such servicing would initially be in the tens of thousands of dollars, with additional attendant costs as discussed above (e.g., loan discharges and cancellations) that would offset Debtor's contribution to the revolving fund, further devaluing the Portfolio and any benefit to the Debtor and its creditors.

27.     Should the Debtor not retain a competent student loan servicer to service the Portfolio, borrowers would be unable to make payments on their loans and would lapse into default.  Education would then have the authority and the obligation to require the transfer of the Portfolio pursuant to Section 463(a)(4)(A) of the HEA,  20 U.S.C. § 1087cc(a)(4)(A), without reimbursement.  The Debtor would thus lose ownership of the Portfolio despite having incurred costs to reimburse Education for its contribution.

28.     Collections on the Portfolio are estimated to be extremely low.  See Attachment C, ¶ 4.  A review of the Debtor's Portfolio by Education's Program Specialist identified that over half of borrowers in the Portfolio, 454 out of 860, are currently in default status.  Id.  In fact, 79% of the loans that have reached repayment status are in default[7].  Debtor is ill-equipped to collect on these defaulted loans, because, unlike Education, it lacks the authority to refer defaulted student loans to the United States Department of the Treasury for collection under the Treasury Offset and Administrative Wage Garnishment tools provided by 31 U.S.C. § 3716, *et. seq*.

29.     The value of the Portfolio will be further compromised by the eligibility of many of the borrowers for the closed school discharge that the Debtor must provide pursuant to 34 C.F.R. § 674.33(g).  Of the Portfolio's 283 borrowers who have not entered repayment, most were

---

[7] Out of 860 borrowers in the Perkins loan portfolio 283 have not yet entered repayment.  Attachment C, ¶ 4.  Thus, of the 577 loans in repayment, 454 have entered default which amounts to a 79% rate of default.

enrolled in Dowling College at the time of its closure and thus were unable to complete their education due to closure. Those students, and potentially many additional borrowers, will qualify for this discharge, further reducing the repayment rate and the value of the Portfolio.

30.    As the above analysis demonstrates, should the Court determine that the Debtor should retain and maintain the Portfolio, it must reimburse Education for its contribution of $1,774,874 and incur initial loan servicing costs estimated to be tens of thousands of dollars, the costs of discharges, cancellations, and litigation, in an attempt to recoup its contribution to the Portfolio.  The funds used to accomplish this would have to come at the expense of Debtor's other creditors.  In exchange, the Debtor would be retaining a Portfolio with a 79% rate of default that is subject to further depletion through closed school discharges and mandatory assignments to Education.

**Education Is In The Best Position To Service Perkins Loans.**

31.    Section 468(4) of the HEA, 20 U.S.C. § 1087hh(4), authorizes Education to expend appropriated funds on servicing Perkins loans it holds. Section 467(b) of the HEA, 20 U.S.C. § 1087gg(b), authorizes Education to expend funds on collecting Perkins loans assigned to Education by educational institutions.

32.    Education has extensive knowledge of the Perkins loans' unique attributes, as well as significant experience in servicing Perkins loans.  Education has been servicing such portfolios for over 50 years and is currently servicing loans from hundreds of portfolios assigned to Education by various educational institutions with the help of a Federal Perkins loan servicer, which collects payments, responds to customer service inquiries, and performs other administrative tasks associated with maintaining a Perkins student loan on behalf of

Education.[8]  See Attachment C, ¶ 11.  Education also has the right to invoke unique collection tools, such as Treasury Offset and Administrative Wage Garnishment, 31 U.S.C. § 3716, not available to the Debtor.  Education thus possesses the legal authority, the funding, and the expertise to hold, service and collect on the Portfolio.  It is in the best position to administer this Portfolio and ensure that student loan borrowers' rights are preserved.

**The Court Should Lift The Stay And Order The Debtor to Abandon The Portfolio**

33.    Pursuant to Section 554(b) of the Bankruptcy Code, on request of a party in interest and after notice and hearing, the Court may order a Debtor to abandon any property that is of inconsequential value and benefit.

34.    Lack of equity in an asset is grounds for abandonment.  Another ground is that the property is burdensome, which is precisely the case here in light of the extensive costs, i.e., approximately $1.8 million the Debtor must pay Education to simply retain the Portfolio, as well as additional servicing costs associated with maintaining the Portfolio, which has a particularly high default rate.  Under these circumstances, should the Court determine that any portion of the Portfolio is property of the Debtor, the Court should order the Portfolio abandoned.

35.    Pursuant to Section 362(d)(2) of the Bankruptcy Code, on request of a party in interest and after notice and a hearing, the Court may modify the stay with respect to a property if the debtor has no equity in the property and the property is not necessary to an effective reorganization.

---

[8] Prior to November 1, 2013, the Federal Perkins loan servicer was ACS (Xerox).  Beginning on October 1, 2013, Education retained ECSI as its Federal Perkins loan servicer.  Attachment C, par. 12.

36.     Here, after accounting for the outlay Debtor must make to Education to retain the Portfolio, it would have little, if any, equity and be of no discernible benefit to the Debtor.

## CONCLUSION

37.     When this case was commenced, Debtor lacked legal authority to utilize the funds it contributed toward the establishment of the Portfolio for distribution to creditors other than Education.  Thus, the Portfolio is not property of the Debtor under 11 U.S.C. § 541.  Debtor's property interest in these funds is, and has been, limited by the terms of the PPA it entered into with Education, under the provisions of the HEA and its implementing regulations from the day it contributed these funds towards the purchase of the Portfolio.  At no time did Debtor have the authority to utilize these funds, other than for use in the Program as set forth in the HEA and its implementing regulations.  Debtor cannot now, by virtue of filing for bankruptcy, acquire the rights to the Portfolio it never had.

38.     Education has neither the legal authority nor the appropriation to reimburse the Debtor  for the Debtor's contribution to the revolving fund.  Thus, if the Court determines that the Portfolio is property of the Debtor, the Debtor must:  1) retain the Portfolio in its entirety and administer it in accordance with the mandates of the Perkins Loan Program and its attendant costs and risks; and 2) reimburse Education for its $1,774,874 contribution to the Revolving Fund.  Alternatively, if the Court decides that the Portfolio is not property of the Debtor, the entire Portfolio should be ordered abandoned and assigned to Education without recompense.

**WHEREFORE** Education respectfully requests that the Court enter an order substantially similar to the order proposed by Debtor in its Motion For An Order Approving And Authorizing Procedures For the Turnover Of The Debtor's Federal Perkins Loan Portfolio filed on June 16, 2017 and granting the relief requested herein.

Dated: Central Islip, New York
August 25, 2017

<div style="margin-left: 40%;">

BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York
Attorney for Creditor
United States Department of Education
610 Federal Plaza, 5th Floor
Central Islip, New York 11722


By:     s/ James H. Knapp, AUSA
JAMES H. KNAPP
Assistant United States Attorney
(Of counsel)

</div>