**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Joseph C. Corneau
Stephanie R. Sweeney

**Hearing Date: September 27, 2017**
**Hearing Time: 1:30 p.m. (EST)**

**Objection Deadline: September 20,**
**2017 at 4:00 p.m. (EST)**

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                                                  :    Chapter 11
                                                                          :
DOWLING COLLEGE,                                           :
f/d/b/a DOWLING INSTITUTE,                         :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI          :
ASSOCIATION,                                                  :
f/d/b/a CECOM,                                                 :
a/k/a DOWLING COLLEGE, INC.,                   :
                                                    Debtor.       :
----------------------------------------------------------------x

**NOTICE OF HEARING ON DEBTOR'S MOTION FOR AN ORDER APPROVING THE**
**REMITTANCE OF AVAILABLE NET PROCEEDS FROM THE**
**SALE OF THE OAKDALE CAMPUS TO THE DIP AGENT**

      **PLEASE TAKE NOTICE** that a hearing on the motion (the "Motion") of Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), for an order approving the remittance of available net proceeds from the sale of the Oakdale Campus to the DIP Agent has been scheduled before the Honorable Robert E. Grossman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Courtroom 860, Central Islip, New York 11722 on **September 27, 2017 at 1:30 p.m.** (the "Hearing").

      **PLEASE TAKE FURTHER NOTICE** that responses, if any, to the relief sought in the Motion shall be made in writing, filed with the Court by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court, Eastern District of New York, 271 Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722, on a 3.5 inch floppy disc or compact disc, preferably in portable document Format (PDF), Microsoft Word, or any other Windows Based word processing format, and served upon (i) The Office of the United States Trustee for the

Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, Esq., Trial Attorney; (ii) counsel to the Debtor: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Sean C. Southard, Esq.; (iii) counsel to the Debtor's material prepetition and post-petition secured lenders: (a) Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn: P. Miyoko Sato, Esq. and Ian A. Hammel, Esq., (b) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Brian D. Pfeiffer, Esq. and Neil S. Begley, Esq., (c) Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord, Esq. and Thomas J. McNamara, Esq., and (d) Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, Attn:  Adam T. Berkowitz, Esq.; and (iv) counsel to the Creditors' Committee: SilvermanAcampora, LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Ronald J. Friedman, Esq., **so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on September 20, 2017.**

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion may be adjourned without further notice except as announced in open court at the Hearing, or at any adjourned hearing.

Dated:   New York, New York
          September 6, 2017

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   _/s/ Sean C. Southard_____
      Sean C. Southard
      Joseph C. Corneau
      Stephanie R. Sweeney
      200 West 41st Street, 17th Floor
      New York, NY 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: ssouthard@klestadt.com
              jcorneau@klestadt.com
              ssweeney@klestadt.com

      *Counsel to the Debtor and Debtor in
        Possession*

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Joseph C. Corneau
Stephanie R. Sweeney

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                         :    Chapter 11
                                                              :
DOWLING COLLEGE,                                              :
f/d/b/a DOWLING INSTITUTE,                                    :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                                :
ASSOCIATION,                                                  :
f/d/b/a CECOM,                                                :
a/k/a DOWLING COLLEGE, INC.,                                  :
                                                              :
Debtor.                                                       :
-------------------------------------------------------------x

### DEBTOR'S MOTION FOR AN ORDER APPROVING THE REMITTANCE OF AVAILABLE NET PROCEEDS FROM THE SALE OF THE OAKDALE CAMPUS TO THE DIP AGENT

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned

chapter 11 case (the "Chapter 11 Case"), hereby moves (the "Motion") for an order, substantially

in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 363(f) and 506(a) of title

11 of the United States Code (the "Bankruptcy Code") and Rule 3012 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to remit certain of the

net proceeds of the sale of its campus located at 150 Idle Hour Boulevard, Oakdale, New York

11769 (the "Oakdale Campus") to UMB Bank, National Association (the "DIP Agent"), as agent

on behalf of the DIP Lenders (as defined below) as required by the DIP Note (as defined below).

In support of the Motion, the Debtor respectfully sets forth as follows:

## PRELIMINARY STATEMENT

The Debtor's sale of the Oakdale Campus (the "Sale") closed on August 21, 2017, with

the Debtor receiving approximately $24,968,400 in net proceeds. The Debtor files this Motion

seeking authorization to remit $20,000,000 of the net proceeds of the Sale to the DIP Agent as

required by the DIP Note (the "Remittance").

Consistent with and as required by the DIP Note, and as described in greater detail below,

the Remittance will be applied by the DIP Agent to certain of the Debtor's obligations under the

DIP Note and the 2006 Bonds (as defined below) as contemplated by the DIP Note.  Once

applied, the Debtor estimates that the Remittance will pay off the Debtor's current obligations

under Term Loan A (as defined in the DIP Note) and the portion of Term Loan D (as defined in

the DIP Note) that is attributable to the Term Loan A Lenders, and then to make a partial, albeit

significant, payment on account of the Debtor's pre-petition obligations pursuant to the 2006

Bonds. The Remittance will result in a material savings on accrued interest. The Debtor submits

that such savings provide material benefit to the Debtor, its estate and creditors, constitutes good

cause and supports the Debtor's business judgment in making the Remittance, particularly in

light of low interest rates for deposit accounts at commercial banks.

## JURISDICTION

1.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334, and Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the

Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986.

2.      Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## **BACKGROUND**

### A.  **General Background**

4.      On November 29, 2016   (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

5.      The Debtor continues to manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On December 9, 2016, the United States Trustee appointed Ultimate Power Inc., Linda Ardito and Lori Zaikowski to the Official Committee of Unsecured Creditors (the "Creditors' Committee").  Later that day, the Creditors' Committee selected SilvermanAcampora LLP as its general bankruptcy counsel.

7.      Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case.

### B.  **Pre-Petition First Priority Liens of the 2006 Bond Trustee on the Oakdale Assets**

8.      The Debtor is party to certain series of pre-petition bond offerings issued in 1996, 2002, 2006 and 2015, each secured by varying collateral. Those certain bonds (the "2006 Bonds") issued by the Suffolk County Industrial Development Agency ("SCIDA") pursuant to that certain

Indenture of Trust dated as of June 1, 2006 between SCIDA and the Wilmington Trust, National Association, as indenture trustee (the "2006 Bond Trustee") are secured by, among other assets, first priority liens on the Oakdale Campus. As of the Petition Date, the balance due on the 2006 Bonds was $38,541,422.60.

**C. Post-Petition Priming Liens of the 2006 Bond Trustee and ACA on the Oakdale Campus**

9.      On July 14, 2017, this Court entered its Final Order authorizing the Debtor to obtain post-petition superpriority debtor-in-possession financing in an original principal amount of up to $4,974,779 (the "DIP Facility") pursuant to that certain Debtor-in-Possession Multi-Draw Term Loan Promissory Note (the "DIP Note"), dated as of November 29, 2016, by and among the Debtor, each lender party thereto (the "DIP Lenders"), and the DIP Agent, on behalf of the DIP Lenders [DE 367] (the "Final DIP Order").

10.     The DIP Facility is comprised of three (3) collateral preservation tranches (Term Loan A[1], Term Loan B, and Term Loan C) and one (1) general and administrative tranche (Term Loan D) that is funded by the DIP lenders in proportion to their respective collateral preservation tranches. Term Loan A (as defined in the DIP Note) and the Term Loan A Lenders' proportional share of Term Loan D are secured by, among other assets, the Oakdale Campus.

11.     The DIP Note requires that the Debtor prepay the loans under the DIP Facility with 100% of any cash proceeds received by the Debtor (other than proceeds of loans under the DIP Facility) immediately upon the Debtor's receipt of such proceeds. See DIP Note § 11. Section 12(c) of the DIP Note addresses the application of proceeds of the Oakdale Campus.

12.     Specifically, section 12(c) of the DIP Note requires that proceeds of the Oakdale Campus be remitted to the DIP Agent and applied as follows: first, to fees and reimbursable expenses and indemnified liabilities of the Agent then due and payable, second, to fees and

---

[1] Capitalized terms not otherwise defined in this Motion shall have the meaning ascribed to them in the DIP Note.

reimbursable expenses and  indemnified liabilities of the Term Loan A Lenders and the Term

Loan D/A Lenders then due and payable, <u>third</u>, to interest then due and payable on the Term

Loan A Term Loans and the Term Loan D Term Loans held by the Term Loan D/A Lenders,

<u>fourth</u>, to the principal balance of the Term Loan A Term Loans and the Term Loan D Term

Loans, <u>fifth</u>, to the interest then due and payable on the Prepetition A Obligations, <u>sixth</u>, to the

principal balance of the Prepetition A Obligations, and <u>seventh</u>, to all other Prepetition A

Obligations.

**D.  <u>The Creditors' Committee Settlement Term Sheet</u>**

13.    Attached as Exhibit A to the Final DIP Order is a Settlement Term Sheet outlining

a settlement among the Debtor, the Creditors' Committee, the 2006 Bond Trustee, ACA and

UMB Bank, National Association, as indenture trustee for the Debtor's 1996, 2002 and 2015

bond issuances, resolving the objections of the Creditors' Committee to the entry of the Final

DIP Order (the "<u>UCC Settlement</u>").

14.    The UCC Settlement provides that, among other things, certain proceeds from the

disposition of assets are to be reserved for the benefit of unsecured creditors before being applied

in accordance with the waterfall provisions of the DIP Note. Pursuant to the UCC Settlement, the

Sale proceeds ("Class II Assets" as defined by the UCC Settlement) would be applied first to pay

costs, commissions and expenses of the Sale, second to fund a reserve of $300,000 for the

benefit of unsecured creditors, third to the DIP Lenders to satisfy any unpaid portion of Term

Loans A and D (as defined in the DIP Note), fourth to the 2006 Bond Trustee in an amount

sufficient to satisfy up to 70% of the outstanding balance as of the Petition Date, then fifth in

allocation of 90% to prepetition secured lenders and 10% to unsecured creditors until the

prepetition secured lenders are paid in full, and sixth to the unsecured creditors.  See UCC Settlement, p. 3, Disposition of Class II Assets.

**E.  The Sale Process**

15.     On the Petition Date, the Debtor filed a motion requesting entry of, among other things, bidding procedures and bidder protections for the Sale [DE 13] (the "Sale Motion").

16.     On December 16, 2016, the Court entered an order approving, in part, the Sale Motion, and approving bidding procedures (the "Bidding Procedures") for the Sale [DE 111] (the "Bidding Procedures Order").

17.     The Debtor conducted an auction (the "Auction") on April 4, 2017 pursuant to the Bidding Procedures Order. The Auction resulted in a high bid of $26,500,000 by Princeton Education Center LLC ("Princeton").  The second highest bid was $26,100,000 submitted by NCF Capital Limited ("NCF").

18.     On April 10, 2017, the Court held a hearing to consider the Sale Motion, and on April 12, 2017, the Court entered an order approving the sale of the Oakdale Assets free and clear of all liens, claims, encumbrances and other interests to Princeton [DE 285] (the "Sale Order").

19.     However, on June 22, 2017, the Debtor terminated the sale to Princeton due to Princeton's failure to timely close. On the same date, the Debtor notified NCF that it had been deemed the Successful Bidder in accordance with the Bidding Procedures Order.

20.     On June 23, 2017, the Debtor filed a motion seeking an order, among other things, confirming NCF or its designee as the successful bidder pursuant to the Bidding Procedures Order [DE 350] (the "Supplemental Sale Motion").

21.     On July 14, 2017, the Court entered an Order granting the Supplemental Sale Motion [DE 366] (the "Supplemental Sale Order"). Pursuant to the Supplemental Sale Order, the Court

confirmed Mercury International, LLC, as assignee of NCF (the "Purchaser"), as Successful Bidder, and authorized the Debtor to enter into the Asset Purchase Agreement with the Purchaser attached to the Supplemental Sale Motion as Exhibit H (the "APA").

22.    The closing of the Sale to the Purchaser (the "Closing") occurred on August 21, 2017.

23.    Pursuant to the Sale Order, the Oakdale Assets were transferred to the Purchaser "free and clear of all liens, claims, encumbrances, and interests, with all such liens, claims, encumbrances and interests to attach to the net proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets, including the Oakdale Campus, subject to any claims and defenses, setoffs or rights of recoupment the Debtor may possess with respect thereto." Sale Order, ¶ 4.

24.    As a result, the Sale proceeds are subject to the liens and claims of the Debtor's secured creditors on the Oakdale Assets, including the liens of the DIP Agent and the 2006 Bond Trustee.

## F.  **Sale Proceeds Available for Remittance**

25.    The Closing of the Sale resulted in the Debtor's receipt of $26,100,000. After payment of broker's commissions, title fees and other escrows, remaining funds total approximately $24,968,400 (the "Net Proceeds"). From the Net Proceeds, as set forth in detail in the distribution schedule annexed hereto as **Exhibit B**, the Debtor proposes to reserve a total of $1,111,630 (the "Reserves"), comprised of: (a) the $300,000 allocation to unsecured creditors pursuant to the UCC Settlement; (b) $285,315 in potential allowed claims for judgment creditors that had liens on the Oakdale Campus; (c) $286,315 in potential allowed claims for holders of mechanic's

liens that had been filed on the Oakdale Campus; and (d) $240,000, which is Term Loan A Lender s'

estimated share of professional fee holdbacks accrued through September, 2017.

26.    After accounting for the Reserves, the Debtor proposes to make the Remittance of

$20,000,000 to the DIP Agent for application pursuant to section 12(c) of the DIP Note, with

approximately $3,856,770 remaining in the Debtor's estate (the "Remaining Net Proceeds"),

which shall be held in one or more segregated accounts as acknowledged cash collateral and not

disbursed absent a further order of the Court.

27.    Other than the potentially allowed secured claims of judgment creditors and

mechanic's lienholders, the only remaining claims that are required to be paid in full pursuant to

section 1129 of the Bankruptcy Code to confirm a plan are priority unsecured claims. The Debtor

currently estimates that allowed priority unsecured claims will total between $2.5 million and 4.0

million. The Debtor submits that collectively, the Remittance and the Reserves will be sufficient

to satisfy both the potential for payment of any later allowed junior secured claims (provided that

the DIP Facility and 2006 Bonds are first paid in full) and to fund the Term Loan A Lenders'

(ACA and 2006 Bond Trustee) proportionate share under the UCC Settlement of allowed priority

claims (approximately 35%).

## DISCUSSION

28.    The Debtor seeks the Court's approval of the allocation and distribution of the

Available Net Proceeds as set forth herein pursuant to sections 105(a), 363(f) and 506(a)(1) of the

Bankruptcy Code, Bankruptcy Rule 3012, and this Court's Sale Order and Final DIP Order.[2]

---

[2] Section 506(a)(1) of the Bankruptcy Code provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an
interest, or that is subject to setoff under section 553 of this title, is a secured claim to the
extent of the value of such creditor's interest in the estate's interest in such property, or to
the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to

29.     Remittance of certain of the Available Net Proceeds to the DIP Agent is required under Section 363(f) of the Bankruptcy Code and this Court's Sale Order. Section 363(f) of the Bankruptcy Code permits the sale of the Debtor's assets free and clear of liens, claims, encumbrances and interests if the holders thereof can be compelled to accept a monetary satisfaction. <u>See</u> 11 U.S.C. § 363(f)(5).  Pursuant to the Sale Order, "all such liens, claims, encumbrances and interests [shall] attach to the net proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets, including the Oakdale Campus …." Sale Order, ¶ 4. At the time of the Sale, the DIP Agent and the 2006 Bond Trustee maintained post-petition priming and pre-petition first priority liens, respectively, on the Oakdale Campus. Pursuant to Sale Order, these liens maintain their validity and first position priority as against the proceeds of the Sale.

30.     Additionally, under the Final DIP Order and the DIP Note, the Debtor is required to use 100% of the proceeds of the Sale to prepay the Debtor's obligations under the DIP Facility in accordance with the waterfall set forth in Section 12(c) of the DIP Note, including by using any

---

the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Bankruptcy Rule 3012 provides:

The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

Section 105(a) of the Bankruptcy Code provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

proceeds in excess of the Debtor's obligations under the DIP Note to satisfy its prepetition obligations to the 2006 Bond Trustee.

31.     The Debtor believes that the Remittance is not only required by the DIP Note, as set forth above, but is reasonable and appropriate and in the best interests of the Debtor's estate. Satisfaction of certain of the claims of the DIP Agent and partial satisfaction of the 2006 Bonds as set forth herein will provide a substantial savings in interest payments. Specifically, the Debtor estimates the following will be saved in interest payments: (a) under Term Loan A and the ACA-funded portion of Term Loan D, approximately $18,218 per month or $218,618 per year, and (b) accrued interest on the 2006 Bonds, estimated at approximately $73,212 per month or $878,546 per year.

32.     Further, the Remittance will be net of costs, fees, escrows, and reserves for potential allowed secured claims of junior lienholders and priority and general unsecured creditors, among others, as set forth on the Distribution Schedule. The Debtor understands that the 2006 Bond Trustee has agreed to these reserves notwithstanding its first priority position, the mandatory prepayment provisions of the DIP Note, and the fact that the Available Net Proceeds will be insufficient to satisfy its debt in full.  The Debtor believes the reserves will be sufficient to pay holders of any allowed junior secured claims on the Oakdale Campus in full, to pay at least the Term Loan A Lenders' proportionate share of the estimated pool of allowed priority unsecured creditors and to pay $300,000 to unsecured creditors consistent with the UCC Settlement. Indeed, after consultation, the Debtor believes that all major creditor constituencies in the Chapter 11 Case have consented to the allocation proposed in this Motion.

33.     Accordingly, the Debtor believes the Remittance is necessary and appropriate, is in the best interests of the Debtor's estate, and should be approved.

## NOTICE

34.    Notice of this Motion has been given by first class regular mail to:  (a) the United States Trustee; (b) counsel for the Creditors' Committee; (c) the Debtor's material prepetition and post-petition secured lenders and any agent(s) therefor; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (f) all parties who are known to assert a lien, claim, encumbrance or other interest on any portion of the Oakdale Assets. The Debtor submits that under the circumstances no other notice need be given.

**WHEREFORE**, the Debtor respectfully requests that the Motion be granted and that the Court grant such other and further relief as is just and proper.

[remainder of page intentionally blank]

Dated:   New York, New York
         September 6, 2017

                              **KLESTADT WINTERS JURELLER**
                              **SOUTHARD & STEVENS, LLP**


                         By:   _/s/ Sean C. Southard_____
                               Sean C. Southard
                               Joseph C. Corneau
                               Stephanie R. Sweeney
                               200 West 41st Street, 17th Floor
                               New York, NY 10036
                               Tel: (212) 972-3000
                               Fax: (212) 972-2245
                               Email: ssouthard@klestadt.com
                                      jcorneau@klestadt.com
                                      ssweeney@klestadt.com

                               *Counsel to the Debtor and Debtor in*
                               *Possession*

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                          :    Chapter 11
                                                               :
DOWLING COLLEGE,                                               :
f/d/b/a DOWLING INSTITUTE,                                     :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                                 :
ASSOCIATION,                                                   :
f/d/b/a CECOM,                                                 :
a/k/a DOWLING COLLEGE, INC.,                                   :
                                                               :
Debtor.                                                        :
----------------------------------------------------------------x

## ORDER APPROVING THE REMITTANCE OF AVAILABLE NET PROCEEDS FROM THE SALE OF THE OAKDALE CAMPUS TO THE DIP AGENT

Upon the motion (the "Motion")[1] of Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case, for an order (this "Order"), pursuant to sections 105(a), 363(f) and 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, approving the remittance of available net proceeds from the sale of the Oakdale Campus to UMB Bank, National Association (the "DIP Agent"), as agent on behalf of the DIP Lenders; and sufficient notice of the Motion having been given as set forth in the Motion and it appearing that no further notice is required;  and upon the record of the hearing held with respect to the Motion (the "Hearing"); and the Court having heard and considered the arguments of counsel and evidence adduced at the Hearing; and no objections to the relief sought in the Motion having been filed, or any such objections having been withdrawn or overruled; and the Court having found and concluded that good and sufficient cause has been established to grant the relief request in the Motion;

**NOW, THEREFORE, IT IS HEREBY:**

**ORDERED** that the Motion is granted to the extent set forth herein; and it is further

---

[1] Terms capitalized but not defined herein shall have the meanings assigned to them in the Motion.

**ORDERED** that pursuant to 11 U.S.C. §§ 105(a), 363(f) and 506(a)(1) and Bankruptcy Rule 3012, the Debtor is hereby authorized to make the Remittance of the Available Net Proceeds to the DIP Agent as described in the Motion; and it is further

**ORDERED**, that the Remaining Net Proceeds constitute cash collateral and remain subject to the DIP Agent's and pre-petition lenders liens and security interests to the same nature, extent and validity as they existed prior to the Sale. The Debtor shall deposit the Remaining Net Proceeds into a one or more segregated accounts from which no disbursements shall be made without further order of the Court; and it is further

**ORDERED** that the Court shall retain jurisdiction to enforce the terms and provisions of this Order.

**Exhibit B**

| | |
|---|---:|
| DIP TL A Balance as of 8/31/17: | 560,732 |
| DIP TL A Accrued Interest as of 8/31/17: | 5,894 |
| ACA DIP TL D Balance as of 8/31/17: | 1,848,950 |
| ACA DIP TL D Accrued Interest as of 8/31.17: | 13,509 |
| | 2,429,086 |

| | | |
|---|---|---:|
| Proposed Paydown: | | 20,000,000 |
| Less: DIP Paydown: | - | 2,429,086 |
| Available Proceeds to Pay 2006 Bonds: | | 17,570,914 |

| | | |
|---|---|---:|
| 2006 Series Bonds Due as of Petition Date: | | 38,541,423 |
| Less: Proposed Paydown | - | 17,570,914 |
| Remaining 2006 Principal Balance: | | 20,970,509 |
| (excludes post-petition interest accrual, if applicable) | | |

**Interest Savings / Month:**

| | | |
|---|---|---:|
| DIP TL A & ACA Funded TL D | Paydown: | 2,429,086 |
| | Rate: | 9% |
| | Annual Interest: | 218,618 |
| | Monthly Interest: | 18,218 |

| | | |
|---|---|---:|
| 2006 Bonds* | Paydown: | 17,570,914 |
| | Estimated Avg Rate: | 5% |
| | Annual Interest: | 878,546 |
| | Monthly Interest: | 73,212 |

| | | |
|---|---|---:|
| | Total Estimated Monthly Interest Accrual Savings: | 91,430 |

\*  Assumes 2006 Bonds are fully secured by Oakdale and Brookhaven Campus
values and are entitled to receive post-petition interest.