1          UNITED STATES BANKRUPTCY COURT

2          EASTERN DISTRICT OF NEW YORK

3
                                      )
4    In Re:                           )
                                      )
5      DOWLING COLLEGE,               ) 16-75545 (REG)
                           Debtor.    )
6    ----------------------------------)
     ZAIKOWSKI,                       )
7                                     )
                           Plaintiff, )
8                                     )
                     v.               ) 16-08178 (REG)
9                                     )
     DOWLING COLLEGE,                 )
10                                    )
                           Defendant. )
11   _____)

12    TRANSCRIPT OF (4) SUMMONS AND NOTICE OF PRE-TRIAL CONFERENCE;
      [74] ADJ ORDER SCHEDULING INITIAL CASE MANAGEMENT CONFERENCE;
13          MOTION TO APPROVE AND AUTHORIZE PROCEDURES FOR THE
                TURNOVER OF THE DEBTOR'S FEDERAL PERKINS LOAN
14          PORTFOLIO BY LAUREN CATHERINE KISS ON BEHALF OF
         DOWLING COLLEGE; [347] MOTION TO APPROVE AND AUTHORIZE
15        PROCEDURES FOR THE TURNOVER OF THE DEBTOR'S FEDERAL
       PERKINS LOAN PORTFOLIO BY LAUREN CATHERINE KISS ON BEHALF
16                         OF DOWLING COLLEGE
             BEFORE THE HONORABLE ROBERT E. GROSSMAN
17               UNITED STATES BANKRUPTCY JUDGE
              MONDAY, AUGUST 28, 2017; 1:38 P.M.
18                    BROOKLYN, NEW YORK

19   APPEARANCES:

20   FOR THE DEBTOR:
          SEAN C. SOUTHARD, ESQ.
21        Klestadt Winters Jureller Southard & Stevens, LLP
          200 West 41st Street, 17th Floor
22        New York, New York 10036

23             [Appearances continue on next page.]

24   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
25   _____
                         MARY GRECO
              TypeWrite Word Processing Service
                      211 N. Milton Road
               Saratoga Springs, New York  12866

2

APPEARANCES CONTINUED:

**FOR THE PLAINTIFF:**
      RENE ROUPINIAN, ESQ.
      Outten & Golden LLP
      685 Third Avenue, 25th Floor
      New York, New York 10017

**FOR KIMBERLY POPPITI:**
      GLENN P. WARMUTH, ESQ.
      Stim & Warmuth PC
      2 Eighth Street
      Farmingville, New York 11738

**FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:**
      RONALD J. FRIEDMAN, ESQ.
      SilvermanAcampora LLP
      100 Jericho Quadrangle, Suite 300
      Jericho, New York 11753

**FOR THE US TRUSTEE:**
      STAN YANG, ESQ.
      Office of the United States Trustee
      560 Federal Plaza
      Central Islip, New York 11722

**FOR CERTAIN MEMBERS OF THE DOWLING COLLEGE BOARD OF TRUSTEES:**
      HOWARD B. KLEINBERG, ESQ.
      Meyer Suozzi English & Klein, PC
      990 Stewart Avenue, Suite 300
      PO Box 9194
      Garden City, New York 11530

**FOR THE DEPARTMENT OF EDUCATION:**
      JAMES H. KNAPP, ESQ.
      US Attorney's Office, EDNY
      610 Federal Plaza, 5th Floor
      Central Islip, New York 11722

1    (Proceedings began at 1:42 p.m.)

2          THE CLERK:  Matter Number 50, <u>Zaikowski v. Dowling</u>

3    <u>College</u>, and matter Number 51 and 52, <u>Dowling College</u>.

4          MS. ROUPINIAN:  Good afternoon, Your Honor.  Rene

5    Roupinian of Outten & Golden appearing on behalf of Lori

6    Zaikowski and the certified class.

7          MR. SOUTHARD:  Good afternoon, Your Honor.  Sean

8    Southard of Klestadt Winters Jureller Southard & Stevens on

9    behalf of the defendant, Dowling College.

10          MR. WARMUTH:  Glenn Warmuth, Stim & Warmuth for

11    Kimberly Poppiti.

12          MR. FRIEDMAN:  Good afternoon, Your Honor.  Ronald

13    Friedman from SilvermanAcampora, counsel for the committee.

14          MR. YANG:  Good afternoon, Your Honor.  Stan Yang for

15    the United States Trustee.

16          MR. KNAPP:  Good afternoon.  James Knapp, Assistant

17    US Attorney for the Department of Education.  Good afternoon,

18    Your Honor.

19          MR. KLEINBERG:  Howard Kleinberg, Meyer Suozzi, for

20    the Dowling Trustees.

21          THE COURT:  Okay.

22          MR. SOUTHARD:  Good afternoon, Your Honor.  Again for

23    the record Sean Southard on behalf of Dowling College.

24          Your Honor, we have just two matters on today's

25    calendar.  One is the pretrial, adjourned pretrial associated

1   with the WARN Act litigation by plaintiff Zaikowski, and the

2   other matter is the adjourned hearing having to do with the

3   debtor's Perkins loan portfolio.

4          Your Honor, I would propose to start with the WARN

5   Act pretrial --

6          THE COURT:  Why don't we start with the status?

7   We're all closed?

8          MR. SOUTHARD:  I would be happy to start with the

9   status, Your Honor.  Yes, we have closed.  I'm pleased to

10  announce we closed successfully the Oakdale transaction.  That

11  closed last week.  The proceeds are sitting in the debtor in

12  possession accounts with Signature Bank.  And we are discussing

13  what amounts of proceeds to potentially pay down to the secured

14  creditors associated with that Oakdale sale.  There have been

15  various discussions among the creditors, the creditor's

16  committee, and ACA Financial Guarantee Corporation who

17  effectively holds the first lien on the Oakdale campus and now

18  the resulting proceeds from the sale.  And in consultation with

19  the debtors, we have looked at the settlement construct that

20  the creditors reached and tried to come up with a model to

21  follow that settlement construct with various assumptions.  Now

22  one of those assumptions we actually have an actual number for

23  with the Oakdale sale having concluded and believe that with

24  reasonable reserves approximately $22 million of the roughly

25  $26 million could be paid down to ACA.

1          THE COURT:  Will that be paid with the Court's

2    approval or without?

3          MR. SOUTHARD:  Well, Your Honor, I think we obviously

4    wanted to discuss that with Your Honor today and there is a

5    mechanism that exists under the dip note which would in effect

6    be a mandatory prepayment by the debtor once it receives the

7    proceeds of the collateral.  That said, because of the

8    magnitude of the dollars that we're talking about and the

9    consequence to this case and its ultimate creditor recovery, we

10   certainly wanted to discuss that with Your Honor this morning.

11   And before we did that, we had discussions with the different

12   creditor constituents about the reasonableness of doing that

13   now.  So I believe, and I don't want to speak for committee

14   counsel, but I believe that the committee is in agreement and

15   has been very much in the forefront of these discussions about

16   an appropriate reserve and that roughly the numbers I

17   articulated of a $4 million reserve give or take is something

18   that they're amenable to, but I'll be happy to let them speak

19   to that.

20         THE COURT:  Well, I mean people have whatever rights

21   they have.  But what I'm concerned about is one, there are a

22   lot of -- you haven't resolved this WARN Act issue yet and

23   those folks and whatever they may or may not be entitled to.

24   And since no plan has been filed, I don't have any idea of what

25   the costs will be associated with liquidating, resolving,

1  whatever any claims the estate may have and that it has

2  adequate resources to commence those claims and to bring them.

3  I was a little -- I think this was probably put in a document

4  that I signed, so it's not up to me, but when I saw that the

5  deposit that had been forfeited by the first buyer was

6  distributed to the secured creditor I think the committee

7  agreed to --

8        MR. SOUTHARD:  Yes, Your Honor.

9        THE COURT:  -- as part of their deal.  I never

10  concluded that those funds should have gone there.  And I said

11  at the time, you all agreed to that and so I didn't get

12  involved in that at that point.  But I was never really

13  convinced, and it doesn't matter, that they had a secured right

14  to those funds.

15        Now I know, because I've been through this once

16  before on the exact same issue in a case called Brown

17  Publishing, but again, that was part and parcel of what I

18  understand was the stipulation between the committee and the

19  secured creditors that did create for the committee, for want

20  of a better term, carve outs.  So that was a business deal and

21  it was okay.

22        But I do want to be careful.  I mean there's another

23  large chunk of property in this case that will cost something

24  to get from here to there.  There may be, I don't know, but

25  [inaudible], there may be adversaries that need to be filed and

1  funded, and I don't want a debtor that's insolvent.

2          MR. SOUTHARD:  Understood.

3          THE COURT:  Now again, if this belongs to the secured

4  creditor, it belongs to them.

5          MR. SOUTHARD:  Understood, Your Honor.  And we have

6  thought about the same concerns that Your Honor is raising.

7  There is a DIP facility in place.  The expectation is that the

8  funding will continue through the conclusion of an effective

9  date on the plan because, among other reasons, we do have

10 another sale to run and conclude.

11         THE COURT:  Well, what's the secured creditor's

12 position?  They've been paid down, they will have been paid

13 down from this.  They have been paid down from houses.  How

14 much are they actually owed?

15         MR. SOUTHARD:  Well, recall, Your Honor that there

16 are two different sets of secured creditors, for lack of a

17 better phrase.

18         THE COURT:  The total was about 60, right?

19         MR. SOUTHARD:  Give or take, Your Honor, yes.  And

20 the largest of those two pieces is about 38 million as of the

21 petition date.  And that is the ACA piece or the 2006 bonds.

22 Those would be the facility that would be paid down fairly

23 dramatically with these Oakdale proceeds but they would still

24 hold a significant secured claim that would require a pay down

25 from the Brookhaven sale.

1          THE COURT:  Yes, but there's 112 acres in Brookdale

2    which I have no idea what it's worth.  It can be worth a lot.

3    But the remaining secured debt is 50 percent.  I'm not saying

4    to whom, but in total.  And it is a non-cash flow entity.

5          MR. SOUTHARD:  Correct.

6          THE COURT:  So the only monies that can support this

7    thing for the next year, because it'll take longer than I think

8    everybody thinks, is from whatever monies you have in the bank.

9          MR. SOUTHARD:  Correct, Your Honor.  We would either

10   self-fund with proceeds of the Oakdale sale or those proceeds

11   could effectively pay down the outstanding debt and then

12   additional borrowings occur.  Those are the two options.  And I

13   --

14         THE COURT:  Borrow post petition against the other

15   property?

16         MR. SOUTHARD:  Correct, Your Honor.

17         THE COURT:  As long as these distant creditors will

18   be subordinate to it.  You're going to have to make them

19   subordinate.  I don't think the bank will put on raw land

20   junior.  It may.  Who knows?  I just need you to think about

21   it.  And my main concern is a WARN Act question.

22         MR. SOUTHARD:  Yes, Your Honor.

23         THE COURT:  There's a decision the Circuit just

24   issued, was it the Second Circuit on WARN Act that just issued

25   one?

1          MR. SOUTHARD:  Yeah.

2          THE COURT:  So people are watching WARN Act claims

3    now.

4          MR. SOUTHARD:  Your Honor, I can talk a little bit

5    about where we are with the WARN Act.

6          THE COURT:  Please.

7          MR. SOUTHARD:  It might be appropriate at this point.

8    The parties met for a full day of mediation with the assistance

9    of Yan [Ph.] Juran [Ph.] who was appointed mediator by Your

10   Honor, and made progress that day.  It was determined at the

11   close of the day that additional information would be required

12   primarily on the plaintiff's side to better assess the

13   potential extent of damages and in addition, some additional

14   information about the defenses that the debtor was inserting.

15   And since that time, there have been a lot of exchanges of

16   information primarily by the debtor to the plaintiff.  And

17   we're at a point now where I think we're just about done with

18   that information exchange, the informal mediation based

19   information exchange and then could re-commence settlement

20   discussions.  My hope would be that we'll know in the next say

21   30 days whether we're going to have a settlement or not or

22   whether we need to go into litigation in a more meaningful way.

23   And certainly it's the hope of the debtor, and I think I speak

24   for the plaintiff when I say the hope for the plaintiff as

25   well, to try to find a constructive resolution.  And again, we

1  have made progress but we're just not there yet.  So what I

2  would ask of Your Honor, subject to hearing from plaintiff's

3  counsel is that we potentially have a holding date of roughly

4  30 days where we would come back to Your Honor and report

5  either we were successful in settling the litigation and report

6  to Your Honor where we are or alternatively talk to Your Honor

7  about potentially moving forward with discovery in the true

8  sense.

9          THE COURT:  And Mr. Juran is going to stay involved

10 because he originally was just --

11         MR. SOUTHARD:  Yeah, Your Honor.  As a technical

12 matter, the mediation order, the time to conclude that

13 mediation was August 1st.  So we are beyond that.  Mr. Juran has

14 stayed involved insofar as communicating with the parties where

15 are you, how are things?

16         THE COURT:  I've known him for many, many years.

17 He's fine.  I would have no reason, as long as you guys want to

18 continue, to continue the order.

19         MR. SOUTHARD:  Yeah.  I think at this point what I --

20 and again, I don't want to speak for the plaintiff, but I think

21 we are able to trade positions effectively without the

22 mediator.  If we get to a logjam in the next interim period, I

23 would look to bring a mediator back in for assistance in

24 clearing such a logjam.

25         THE COURT:  Does any of this require the consent of a

1  secured creditor to reach a settlement?

2          MR. SOUTHARD:  Well, ultimately when we reach a

3  settlement, hopefully we reach a settlement, certainly the

4  creditors will have a say in that.  Ultimately, the dollars

5  that we're talking about in terms of priority claims anyway

6  will need to be paid to bring this case out of Chapter 11

7  through a plan.  And so we have kept the creditors -- the

8  debtor has kept the creditors abreast of where we are in terms

9  of status but they have yet to weigh in and get to the weeds on

10 the ultimate dollars that we're talking about.

11         THE COURT:  But aren't the dollars you're trading

12 their money at this point?

13         MR. SOUTHARD:  Yes, Your Honor.  Effectively they

14 are.  But because the creditors don't understand the merits of

15 the actual litigation, I believe it is necessary for the debtor

16 to reach a proposed resolution based on the merits and then

17 deal with the mechanics of the dollars and cents that must be

18 paid out to make a plan go effective.  Again, they are not in

19 the dark in any respect but they have not been an active

20 participant in the mediation.

21         THE COURT:  How do you know what your position could

22 be if it's not your money?

23         MR. SOUTHARD:  Well, we know ultimately what we think

24 we're willing to pay in terms of merits.  Basically, what we're

25 talking about is the strength of one major defense and we have

1 a view about the strength and the likelihood of success on

2 that.  Plaintiff has a different view.

3          THE COURT:  But could the secured creditors or a

4 secured creditor just say no, my bonds don't permit me to take

5 less than what I could get to settle a claim that's not against

6 me?

7          MR. SOUTHARD:  They've not given any indication to

8 date that such a position would be put forth, but recall the

9 construct of the settlement, the inter-creditor settlement that

10 was reach provided that effectively unsecured creditors and the

11 secured creditors would share 50-50 the cost of priority claims

12 necessary to exit Chapter 11.  So --

13          THE COURT:  What does that mean?

14          MR. SOUTHARD:  Meaning it --

15          THE COURT:  They'd have to put up 50 percent?

16          MR. SOUTHARD:  If the priority claims pool turns out

17 to be $2 million, 1 million of that would effectively be paid

18 out of the secured creditors' otherwise take from the proceeds

19 and --

20          THE COURT:  And then --

21          MR. SOUTHARD:  The other million would first come

22 from the unsecured creditor proceeds.

23          THE COURT:  For which somebody has to put an

24 unsecured creditor pool together.

25          MR. SOUTHARD:  Correct, Your Honor.  Ultimately when

1  we talk about the timing for plan confirmation and proceeding

2  with a plan and ultimately the effective date of a plan, that's

3  one factor that we take into consideration is we think we need,

4  based on our model, to close the Brookhaven sale transaction

5  before the unsecureds will have enough money --

6      THE COURT:  Or for the unsecured creditors, or for

7  the committee to pursue sources of revenue that are not

8  controlled by the secured creditors.

9      MR. SOUTHARD:  To the extent they exist.  And then --

10     THE COURT:  To the extent they exist.

11     MR. SOUTHARD:  Those would be really limited at this

12  point I think to litigation recoveries which I again can let

13  committee counsel speak to, but I know that they have set a

14  potential claim against D&O Insurance and targets of that sort.

15  But I don't know where they are with that.  But I think my take

16  on that, Your Honor, from a timing perspective would be

17  unlikely that they'll get to a recovery relative to that type

18  of asset, if any.

19     THE COURT:  But I suspect that the, I'm just

20  guessing, that in the WARN Act case, as an example, the

21  settlement will come in two tranches.  There'll be money that

22  can be paid which exists because it represents 50 percent and

23  it's sitting in the bank that's secured money and 50 percent on

24  [inaudible].

25     MR. SOUTHARD:  Could be, Your Honor.  There are also

1   other priority claims that will need to be dealt with for

2   purposes of confirmation.  So it's not limited --

3           THE COURT:  Well that's the other thing.  That's why

4   I want to see somebody start putting in a plan because if this

5   case can't go through a plan, it's got to convert it.  That'll

6   be --

7           MR. SOUTHARD:  We think --

8           THE COURT:  I'm not even sure I can convert a not for

9   profit but --

10          MR. SOUTHARD:  I don't think you can legally.

11          THE COURT:  I can't convert it.  You can --

12          MR. SOUTHARD:  Correct.

13          THE COURT:  -- convert it.  I can't force you to

14  convert it.  Nobody can require the conversion but -- I mean

15  I'd rather not end up there.

16          MR. SOUTHARD:  I share your position on that, Your

17  Honor.  So I think from a big picture perspective we envision

18  in the very near future moving forward with a proposed sale

19  process for the Brookhaven campus.  And in a best case scenario

20  would expect to see a closing around year end or the first

21  quarter of --

22          THE COURT:  Really?

23          MR. SOUTHARD:  -- of 2018.  And again, an ideal

24  scenario, we would have a plan confirmation process that would

25  take place roughly in tandem with that closing on Brookhaven

1  and swiftly exit Chapter 11 thereafter.  That's again the sort

2  of best laid plans.

3         THE COURT:  So the town is cooperating out there?

4         MR. SOUTHARD:  Your Honor, to date the town has been

5  cooperating.  There's certainly been a lot of discussion with

6  the town planning.  At this point we do not expect to proceed

7  further with planning before a sale disposition.  The belief is

8  that we know about as much as we'll be able to know relative to

9  the future uses and that any buyer who will diligence the

10 opportunity at this point will be able to make their own

11 conclusions about that future use.

12        THE COURT:  Okay.

13        MR. SOUTHARD:  So we think based on again the

14 information we're getting from the different parties that have

15 been retained by the debtor, including the brokers, that it

16 would be a good time to go to market and we hope to roll out

17 with a proposed sale process that will look a lot I think like

18 the Oakdale sale process with some minor changes to some of the

19 details.

20        THE COURT:  All right.  It looks good.

21        MR. SOUTHARD:  That's our big picture plan.

22        So in terms of then the proposed potential pay down

23 of proceeds, would Your Honor like to see that on motion on

24 notice?

25        THE COURT:  Yes.

1          MR. SOUTHARD:  Okay.  We wanted to discuss that with

2    you today.  So we will work on a motion for that in the near

3    term and present that to Your Honor.  We will serve certainly

4    all the lienholders, the junior creditors, judgment holders and

5    the like and put that on before you.  And we'll look at whether

6    we can -- how much of the current modeling we can share

7    publically at this point to try to help Your Honor get a better

8    perspective of the big picture.

9          THE COURT:  Okay.

10         MR. SOUTHARD:  So then turning back to the WARN Act,

11   Your Honor, my proposal on behalf of the defendant, I'll be

12   happy to let plaintiff speak, would be to ask for in essence a

13   30 day adjournment of that matter to come back before Your

14   Honor on that.

15         MS. ROUPINIAN:  Good afternoon again, Your Honor.

16   Rene Roupinian on behalf of Lori Zaikowski and the certified

17   class.  I'm in concurrence.  We've had an opportunity to speak

18   before the conference today and I think a 30 day continuance

19   makes sense.  We had a very productive first day of mediation

20   but we needed to really get our arms around the WARN damages

21   because in this particular case we have so many different

22   categories of employees.  We have the full time and the part

23   time and the adjuncts and the instructors and so forth and so

24   on, and they had different agreements in terms of their

25   compensation and benefits and so forth.  So it's been a process

1 that I think has been very productive and they've been terrific

2 on the other side producing what they can.  We recognize that

3 the focus needed to be on the sale of the property and bringing

4 money into the estate, so we've been patient.  But we have been

5 moving forward and Yan Juran has been helpful in that process.

6 His efforts do not come at a discount so we think it does make

7 sense to do as much as we can between the parties and bring in

8 Mr. Juran when we need him if we hit any sort of roadblocks

9 when we get to the point where we can actually start talking

10 about numbers and allocating risk based on the defenses and so

11 forth.

12          So we would propose as well that the Court set a

13 further status conference 30 days out.

14          THE COURT:  When's the next [inaudible]?  When are

15 you going to put this on -- you're going to have the motion

16 returnable sooner than you want this I assume.

17          MR. SOUTHARD:  I'm sure that the creditors would like

18 that, Your Honor.  We --

19          THE COURT:  They're not going anyplace.

20          MR. SOUTHARD:  We probably -- we could probably have

21 our motion on file in a week and really subject to Your Honor's

22 calendar.  I would think we would need 14 days notice at a

23 minimum for that following the local rules --

24          THE COURT:  It's not going to be the beginning of

25 October, so it has to be towards October 23rd, around there?

1 That would be the date.

2        MR. SOUTHARD:  October 23rd?

3        THE COURT:  23rd.

4        MR. SOUTHARD:  I think we have a --

5        THE COURT:  Yes, October 28th.  No --

6        MR. SOUTHARD:  We're going in that direction.

7        THE COURT:  You're going in the wrong direction.  The

8 problem is that NCBJ is the beginning of October and so my

9 exalted position and I have to go to that thing.  And that

10 takes me to the 15th of October.  Before that we have trials,

11 trial dates, so no, that's probably the best you're going to

12 get.  You're not going to do it in September.  September is too

13 soon I guess.

14        MR. SOUTHARD:  What do we have in September?

15        MALE SPEAKER:  I think the very --

16        MALE SPEAKER:  September 30 as a benchmark day if we

17 can.  Any time before that.

18        THE COURT:  Why?

19        MALE SPEAKER:  It will save us some money on the

20 [inaudible] distribution [inaudible].

21        THE COURT:  I'll accept that.  I don't know what

22 you're talking about but I'll accept that.  What?

23        THE CLERK:  [Inaudible].

24        THE COURT:  25th or 27th.  Would that be enough time to

25 get anything out of the WARN Act question.  You guys put the

1  motion up but --

2          MR. SOUTHARD:  No, the motion will be no problem.

3          THE COURT:  That I know you can do.

4          MR. SOUTHARD:  The 27th, Your Honor.

5          THE COURT:  Okay.  Mr. Kleinberg, the 27th work?

6          MR. KLEINBERG:  Excellent, Your Honor.  Thank you so

7  much.

8          THE COURT:  We aim to please.

9          THE CLERK:  At 1:30?

10         THE COURT:  1:30.  Okay.  Good luck.

11         MS. ROUPINIAN:  Thank you.  And in terms of NCBJ,

12 I'll be speaking on the judgment panel, so hope to see you

13 there.

14         THE COURT:  That's why she can get what she wants.

15 Friends of NCBJ are reporting to me these days.

16         MS. ROUPINIAN:  Thank you.

17         MR. SOUTHARD:  Your Honor, I intend to register for

18 the NCBJ immediately after this hearing.

19         MALE SPEAKER:  I do too.

20         THE COURT:  We actually put -- the moderator put some

21 fliers in.

22         MR. SOUTHARD:  It's right here.

23         THE COURT:  Are they there too?  And there's a group

24 of lawyers in this courthouse I don't think can spell NCBJ

25 spotting them two of the initials.  They're all going.  Not

1  because of me, because it's in Vegas.  So to some people, they

2  won't show up because it's in Las Vegas, and others want to go.

3  And I just can't imagine the headline, one of our senators

4  getting in touch with the National Conference of Bankruptcy

5  Judges holding its convention in Las Vegas.  I always wondered

6  who decided that was a good idea.  It's like the Mohican Sun

7  thing that we do every couple of years.  Go through the casino

8  for it.

9         All right.  So that's set.  What else do we have on

10  today?

11         MR. SOUTHARD:  So the only other item we have on,

12  Your Honor, is the debtor's adjourn motion having to do with

13  this Perkins loan portfolio and the debtor's proposed turnover

14  of that loan portfolio.  This is docket number 347 that the

15  debtor filed back on June 16th and Your Honor initially heard in

16  July.  And we discussed during that July hearing the question

17  of whether there was and is a property of the estate interest

18  in that loan portfolio that the debtor was proposing to assign.

19  And since that point, Your Honor, the debtor and counsel to the

20  US Department of Education, the US Attorney's Office have had a

21  couple of different conversations trying to find a potential

22  resolution that would recognize the potential for that property

23  and the estate interest.  And I believe as of the end of the

24  week basically Education was at a point where they felt from

25  their perspective under their rules and regulations they were

1  unable to effectively give consideration to the bankruptcy

2  estate for Dowling's potential interest in the loan portfolio.

3  And so on Friday early evening a brief was filed explaining

4  their position which I will confess I have not had a full

5  opportunity to review myself because I was away.  But I think

6  it's possible that other parties might have views to express --

7        THE COURT:  Anybody read it?

8        MR. SOUTHARD:  -- in response to that.

9        THE COURT:  I mean I did.  You read it?

10        MALE SPEAKER:  I read it.

11        THE COURT:  This is like class.  The guy in the back

12  actually read the assignment.

13        MR. SOUTHARD:  So I generally understand because we

14  did have a discussion about their position.

15        THE COURT:  You can spend an hour arguing if you'd

16  like.  I'm going to leave, but you can spend an hour arguing.

17  The answer is -- did you see that show with that old guy, I

18  used to call him old guy, the new show, and the answer is, only

19  because he got to talk.  You're partially right and you're

20  partially wrong.  Certain of these dollars I would find are

21  property of the estate.  The single most interesting line is

22  it's 76 percent give or take of these people aren't going to

23  pay these loans back anyway and their total interest is

24  300,000.  So if I take 20 percent of 300,000 or $60,000 give or

25  take, that the estate doesn't want to spend litigating with

1  you, the results here is probably I'm not going to give you an

2  order saying this is not property of the estate.  I'm going to

3  go with door number two unless anybody objects that the debtor

4  will abandon its interest and leave for another day the

5  question of whether you're right or wrong with regards to

6  property of the estate.  So if you can live with that, that's

7  the answer.  I mean I can order it anyway.  If you can't, then

8  I'm not going to give you anything and we're going to litigate

9  it.

10         MR. SOUTHARD:  Your Honor --

11         MR. KNAPP:  This doesn't sound like the piece of cake

12  from the previous case.

13         THE COURT:  What?

14         MR. KNAPP:  It doesn't sound like the piece of cake

15  you had in the prior case.

16         MR. SOUTHARD:  Your Honor, the one thought that we on

17  the debtor's side had after this development last week is that

18  perhaps, because there is a desire to assign the loan portfolio

19  as a mechanic that perhaps we could do what Your Honor is

20  suggesting, leave open the question of the amount of the value

21  of the debtor's interest in that loan portfolio.

22         THE COURT:  But I think the Government's position is

23  it doesn't matter because once you go off the program, whatever

24  you put in, even if it's yours now becomes theirs, is that

25  correct?

1          MR. KNAPP:  Yes.

2          MR. SOUTHARD:  That is their position, Your Honor,

3   yes.

4          THE COURT:  So whatever -- figuring out the number is

5   irrelevant.  It's the legal concept.  And I don't know if

6   you're right or wrong.  I mean it's a technical fight.  And I

7   think the papers were good and somebody would have to respond

8   but you're going to be responding over if you're right and

9   their numbers are right, a rather small amount of money because

10  I think the original numbers you had 20 some odd million

11  dollars in this program but you're down to a million seven?  A

12  million seven --

13         MR. SOUTHARD:  Yes.

14         THE COURT:  -- of which somebody calculated 330 some

15  odd thousand dollars is your interest.  Their position is

16  whatever you would get of that, and it doesn't matter because

17  somehow you have a contractual obligation that once you leave

18  the program whatever you put in, even if attributable to you,

19  goes to them.  Now, I'm not sure they'd win that in a

20  bankruptcy court.  They may.  I'm not sure whether it's been

21  litigated yet.  It's a question of whether you want to on a

22  practical basis you want to use the money to do it.

23         MR. SOUTHARD:  Yeah, we don't think it has been

24  litigated, Your Honor, which is why we originally filed the

25  motion the way we did.  And I think in part we're saying the

1  same thing whether it's abandonment or assignment of the loan

2  portfolio.

3       THE COURT:  But are you going to transfer the money

4  to them?  Or you're going to hold the money?

5       MR. SOUTHARD:  No, Your Honor.  We would transfer the

6  loan portfolio, the loans themselves, for administration by the

7  Government --

8       THE COURT:  I'll do that.

9       MR. SOUTHARD:  -- and then hold the money subject to

10  a further order of Your Honor's when we've completed the

11  accounting that will be necessary associated with that.  And we

12  would leave open the question of property of the estate.

13       THE COURT:  So they would get about a million four

14  give or take?

15       MR. SOUTHARD:  They would actually get loans that

16  have --

17       THE COURT:  Or whatever that package is.

18       MR. SOUTHARD:  -- that have certain principal amounts

19  outstanding and they would then take over as the administrator

20  of those loans.  The debtor would no longer --

21       THE COURT:  And then remit to you your piece if the

22  Court determined that?

23       MR. SOUTHARD:  No, Your Honor.  I think they would --

24  those loans would pass back into the program as their rules

25  contemplate.

25

1          THE COURT:  Right.

2          MR. SOUTHARD:  We have, however, about $400,000 give

3  or take in DIP accounts that is potentially tied to that loan

4  program because the proceeds of the Perkins loan program .  And

5  instead of transferring that money now, we would do so based on

6  a further order from Your Honor after the accounting is

7  completed and --

8          THE COURT:  So you're not abandoning.  You're

9  basically arguing that they have the right -- you'll transfer

10 to them the management of the portfolio.  The debtor wishes to

11 maintain its interest to whatever extent in the cash and

12 litigate that issue with the Government.

13         MR. SOUTHARD:  Yes.

14         THE COURT:  Or settle title.

15         MR. SOUTHARD:  Yes.  And the extent to which there

16 were any hypothetical interests in the loan portfolio, we can

17 preserve that issue for a later date.

18         THE COURT:  What do you say, sir?

19         MR. KNAPP:  I really don't have anything to add other

20 than in the papers, Your Honor.  Education's position though is

21 it's an all or nothing proposition.  If we're talking about, as

22 I think I understood Your Honor a moment ago, that Education

23 would administer the loans going forward but there would be

24 some carve out of the repayments --

25         THE COURT:  That's wrong.  I misunderstood that.

1  What they're saying is the bulk of these loans go to you.

2          MR. KNAPP:  Well, all of the -- the portfolio of

3  loans that has at least on paper a value of about $1.8 million

4  would be transferred back to Education.

5          MR. SOUTHARD:  Would be assigned, right, under their

6  rules.

7          THE COURT:  But there's cash in a bank.

8          MR.  KNAPP:  Yes.

9          THE COURT:  That cash they're not prepared to agree

10  to transfer to you.

11          MR. KNAPP:  I understand.

12          THE COURT:  Your position is you own it.

13          MR. KNAPP:  Correct.

14          THE COURT:  And that would be the issue to litigate.

15  Do you own it or does the estate own it?

16          MR. KNAPP:  Or as Your Honor articulated some weeks

17  ago, is there a percentage of ownership between the Department

18  of Education --

19          THE COURT:  Right.  I mean again, what is there --

20  all I care about is what is property of the estate.  It is in

21  the debtor's possession now.  Your argument is that when they

22  terminated the participation in the program by filing the

23  bankruptcy under your rules it doesn't matter whether they

24  would own it or you would own it.  It all goes back to the

25  government.  That was the deal they made to participate in the

1  process.

2          MR. KNAPP:  And it predates the bankruptcy filing.

3          THE COURT:  Yes.

4          MR. KNAPP:  When Dowling enrolled in, for lack of a

5  better word, the Perkins program 50 odd years ago, the

6  agreement of their seed money was that this money would be used

7  only for the Perkins loan program.

8          THE COURT:  Right.

9          MR. KNAPP:  They didn't have rights to it before they

10 got to bankruptcy other than for use --

11         THE COURT:  You may be right.

12         MR. KNAPP:  -- in the Perkins loan program.  And then

13 when they closed their doors in June I believe of '16 the

14 bankruptcy case was filed in November of '16, they were

15 obligated at that point to send everything related to the

16 Perkins loan program back to the Department of Education.

17         THE COURT:  The only issue is whether the intervening

18 bankruptcy alters the rights of the parties as it does in

19 countless ways.  It may or may not.  I don't know the answer to

20 that.  They haven't put in any papers.  So I think I would

21 agree today that you guys can enter an order saying that you

22 can get the portfolio and we leave this to a second fight.  You

23 have put in papers already.  They would respond.  And we see if

24 we can short circuit and get a hearing on it and finish it.  I

25 think it's better for you to get the portfolio today because I

1  think it should be serviced.

2          MR. SOUTHARD:  From the debtor --

3          THE COURT:  So this is without prejudice to your

4  rights arguing it all belongs to you.

5          MR. SOUTHARD:  From the debtor's perspective, I think

6  that makes sense, Your Honor.

7          THE COURT:  I'll do that.

8          MR. SOUTHARD:  We'll try to work on a form of order

9  that is agreeable between the parties and we'll include the

10  committee.

11          THE COURT:  It has to be without prejudice to the

12  Government's right to argue that just because it entered into,

13  recognizes, whatever it is, that does not affect their right to

14  argue it's all theirs, nor does it affect your right to argue

15  that it's property of the estate and should be divided in a

16  certain fashion.

17          MR. SOUTHARD:  Understood, Your Honor.

18          THE COURT:  That would resolve at least that for

19  today.  And then you'll put in papers and we'll get a hearing

20  date.  So what's on today, I think we resolved this motion.

21  No, I'll carry this motion.  Just put in an interim order on

22  this and we'll use this motion to resolve the rest of it.

23          MR. SOUTHARD:  Very well, Your Honor.  And should we

24  assume this is carried to September 27th as well?

25          THE COURT:  Yes.  I'm not sure we'll have anything

1  that day because you guys got to put papers and they may want

2  to respond.  But we'll use that as a holding date.

3           MR. SOUTHARD:  Thank you, Your Honor.

4           THE COURT:  All right?

5           MR. SOUTHARD:  That concludes everything we had on

6  the calendar this afternoon.

7           THE COURT:  Well, I don't have anything.  Anybody

8  else want to talk about anything?  Golf match, Yankee game,

9  anything?  All right.  Thanks, folks.

10          MR. SOUTHARD:  Thank you, Your Honor.

11          THE COURT:  Court's adjourned.

12  (Proceedings concluded at 2:21 p.m.)

13                        * * * * * *

14

15

16

17

18

19

20

21

22

23

24

25

30

1      I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                                _Mary Greco_____

6                                    Mary Greco

7  Dated:   September 5, 2017

# Keyword Index

## $

$1.8 [1] 26:3
$2 [1] 12:17
$22 [1] 4:24
$26 [1] 4:25
$4 [1] 5:17
$400,000 [1] 25:2
$60,000 [1] 21:24

## 1

1 [1] 12:17
1:30 [2] 19:9,10
1:42 [1] 3:1
11 [3] 11:6 12:12 15:1
112 [1] 8:1
14 [1] 17:22
15th [1] 18:10
16th [1] 20:15
1st [1] 10:13

## 2

2:21 [1] 29:12
20 [2] 21:24 23:10
2006 [1] 7:21
2017 [1] 29:18
2018 [1] 14:23
23rd [3] 17:25 18:2,3
25th [1] 18:24
27th [4] 18:24 19:4,5 28:24
28th [1] 18:5

## 3

30 [6] 9:21 10:4 16:13,18
17:13 18:16
300,000 [2] 21:24,24
330 [1] 23:14
347 [1] 20:14
38 [1] 7:20

## 5

5 [1] 29:18
50 [6] 3:2 8:3 12:15 13:22,
23 27:5
50-50 [1] 12:11
51 [1] 3:3
52 [1] 3:3

## 6

60 [1] 7:18

## 7

76 [1] 21:22

## '

'16 [2] 27:13,14

## A

abandon [1] 22:4
abandoning [1] 25:8
abandonment [1] 24:1
above [1] 29:15
abreast [1] 11:8
aca [4] 4:16,25 7:21
accept [2] 18:21,22
accounting [2] 24:11 25:
6
accounts [2] 4:12 25:3
acres [1] 8:1
act [10] 4:1,5 5:22 8:20,23
9:2,5 13:20 16:10 18:25
active [1] 11:19
actual [4] 4:22 11:15
actually [6] 4:22 7:14 17:9
19:20 21:12 24:15
add [1] 25:19
addition [1] 9:13
additional [3] 8:12 9:11,
13
adequate [1] 6:2
adjourn [1] 20:12
adjourned [3] 3:25 4:2 29:
11
adjournment [1] 16:13
adjuncts [1] 16:23
administer [1] 25:23
administration [1] 24:6
administrator [1] 24:19
adversaries [1] 6:25
affect [2] 28:13,14
afternoon [9] 3:4,7,12,14,
16,17,22 16:15 29:6
ago [2] 25:22 26:17 27:5

agree [2] 26:9 27:21
agreeable [1] 28:9
agreed [2] 6:7,11
agreement [2] 5:14 27:6
agreements [1] 16:24
aim [1] 19:8
allocating [1] 17:10
already [1] 27:23
alternatively [1] 10:6
alters [1] 27:18
amenable [1] 5:18
among [2] 4:15 7:9
amount [2] 22:20 23:9
amounts [2] 4:13 24:18
announce [1] 4:10
another [3] 6:22 7:10 22:4
answer [4] 21:17,18 22:7
27:19
anybody [3] 21:7 22:3 29:
7
anyplace [1] 17:19
anyway [3] 11:5 21:23 22:
7
appearing [1] 3:5
appointed [1] 9:9
appropriate [2] 5:16 9:7
approval [1] 5:2
approximately [1] 4:24
aren't [2] 11:11 21:22
argue [2] 28:12,14,14
arguing [4] 21:15,16 25:9
28:4
argument [1] 26:21
arms [1] 16:20
around [3] 14:20 16:20 17:
25
articulated [2] 5:17 26:16
assess [1] 9:12
asset [1] 13:18
assign [2] 20:18 22:18
assigned [1] 26:5
assignment [2] 21:12 24:
1
assistance [2] 9:8 10:23
assistant [1] 3:16
associated [4] 3:25 4:14

5:25 24:11
assume [2] 17:16 28:24
assumptions [2] 4:21,22
attorney [1] 3:17
attorney's [1] 20:20
attributable [1] 23:18
august [1] 10:13
away [1] 21:5

## B

back [11] 10:4,23 16:10,13
20:15 21:11,23 24:24 26:4,
24 27:16
bank [5] 4:12 8:8,18 13:23
26:7
bankruptcy [8] 20:4 21:1
22:9 23:20 27:2,10,14,18
based [6] 9:18 11:16 13:4
15:13 17:10 25:5
basically [3] 11:24 20:24
25:9
basis [1] 23:22
becomes [1] 22:24
began [1] 3:1
beginning [2] 17:24 18:8
behalf [5] 3:5,9,23 16:11,
16
belief [1] 15:7
believe [4] 4:23 5:13,14
11:15 20:23 27:13
belongs [3] 7:3,4 28:4
benchmark [1] 18:16
benefits [1] 16:25
best [3] 14:19 15:2 18:11
better [6] 6:20 7:17 9:12
16:7 27:5,25
between [4] 6:18 17:7 26:
17 28:9
beyond [1] 10:13
big [3] 14:17 15:21 16:8
bit [1] 9:4
bonds [2] 7:21 12:4
borrow [1] 8:13
borrowings [1] 8:12
brief [1] 21:3
bring [4] 6:2 10:23 11:6 17:

# Keyword Index

7
**bringing** [1] 17:3
**brokers** [1] 15:15
**brookdale** [1] 8:1
**brookhaven** [4] 7:25 13:4 14:19,25
**brown** [1] 6:16
**bulk** [1] 26:1
**business** [1] 6:20
**buyer** [2] 6:5 15:9

## C

**cake** [2] 22:11,14
**calculated** [1] 23:14
**calendar** [3] 3:25 17:22 29:6
**call** [1] 21:18
**called** [1] 6:16
**campus** [2] 4:17 14:19
**care** [1] 26:20
**careful** [1] 6:22
**carried** [1] 28:24
**carry** [1] 28:21
**carve** [2] 6:20 25:24
**case** [11] 5:9 6:16,23 11:6 13:20 14:5,19 16:21 22:12,15 27:14
**cash** [3] 25:11 26:7,9
**casino** [1] 20:7
**categories** [1] 16:22
**cents** [1] 11:17
**certain** [3] 21:20 24:18 28:16
**certainly** [5] 5:10 9:23 11:3 15:5 16:3
**certified** [2] 3:6 16:16
**changes** [1] 15:18
**chapter** [3] 11:6 12:12 15:1
**chunk** [1] 6:23
**circuit** [3] 8:22,23 27:24
**claim** [3] 7:24 12:5 13:14
**claims** [7] 6:1,2 9:2 11:5 12:11,16 14:1
**class** [3] 3:6 16:17 21:11
**clearing** [1] 10:24

**clerk** [3] 3:2 18:23 19:9
**close** [2] 9:11 13:4
**closed** [5] 4:7,9,10,11 27:13
**closing** [2] 14:20,25
**collateral** [1] 5:7
**college** [4] 3:3,3,9,23
**come** [6] 4:20 10:4 12:21 13:21 16:13 17:6
**commence** [1] 6:2
**committee** [10] 3:13 4:16 5:13,14 6:6,18,19 13:7,13 28:10
**communicating** [1] 10:14
**compensation** [1] 16:25
**completed** [2] 24:10 25:7
**concept** [1] 23:5
**concern** [1] 8:20
**concerned** [1] 5:21
**concerns** [1] 7:6
**conclude** [2] 7:10 10:12
**concluded** [3] 4:23 6:10 29:12
**concludes** [1] 29:5
**conclusion** [1] 7:8
**conclusions** [1] 15:11
**concurrence** [1] 16:17
**conference** [3] 16:18 17:13 20:4
**confess** [1] 21:4
**confirmation** [2] 13:1 14:2,24
**consent** [1] 10:25
**consequence** [1] 5:9
**consideration** [2] 13:3 21:1
**constituents** [1] 5:12
**construct** [2] 4:19,21 12:9
**constructive** [1] 9:25
**consultation** [1] 4:18
**contemplate** [1] 24:25
**continuance** [1] 16:18
**continue** [3] 7:8 10:18,18
**contractual** [1] 23:17
**controlled** [1] 13:8

**convention** [1] 20:5
**conversations** [1] 20:21
**conversion** [1] 14:14
**convert** [5] 14:5,8,11,13,14
**convinced** [1] 6:13
**cooperating** [2] 15:3,5
**corporation** [1] 4:16
**correct** [7] 8:5,9,15 12:25 14:12 22:25 26:13
**cost** [2] 6:23 12:11
**costs** [1] 5:25
**counsel** [5] 3:13 5:14 10:3 13:13 20:19
**countless** [1] 27:19
**couple** [2] 20:7,21
**court** [93] 3:21 4:6 5:1,20 6:9 7:3,11,18 8:1,6,13,16,22 9:2,6 10:9,16,25 11:11,21 12:3,13,15,20,23 13:6,10,19 14:3,8,11,13,22 15:3,12,20,25 16:9 17:12,14,19,24 18:3,5,7,18,21,24 19:3,5,8,10,14,20,23 21:7,9,11,15 22:13,22 23:4,14,20 24:3,8,13,17,21,22 25:1,8,14,18,25 26:7,9,12,14,19 27:3,8,11,17 28:3,7,11,18,25 29:4,7,11,14
**courthouse** [1] 19:24
**court's** [2] 5:1 29:11
**create** [1] 6:19
**creditor** [8] 5:9,12 6:6 7:4 11:1 12:4,22,24
**creditors** [17] 4:14,15,20 6:19 7:16 8:16 11:4,7,8,14 12:3,10,11 13:6,8 16:4 17:17
**creditors'** [1] 12:18
**creditor's** [2] 4:15 7:11
**current** [1] 16:6

## D

**d&o** [1] 13:14
**damages** [2] 9:13 16:20
**dark** [1] 11:19

**date** [10] 7:9,21 10:3 12:8 13:2 15:4 18:1 25:17 28:20 29:2
**dated** [1] 29:18
**dates** [1] 18:11
**day** [9] 9:8,10,11 16:13,18,19 18:16 22:4 29:1
**days** [5] 9:21 10:4 17:13,22 19:15
**deal** [4] 6:9,20 11:17 26:25
**dealt** [1] 14:1
**debt** [2] 8:3,11
**debtor** [16] 4:11 5:6 7:1 9:14,16,23 11:8,15 15:15 20:15,18,19 22:3 24:20 25:10 28:2
**debtors** [1] 4:19
**debtor's** [7] 4:3 20:12,13 22:17,21 26:21 28:5
**decided** [1] 20:6
**decision** [1] 8:22
**defendant** [2] 3:9 16:11
**defense** [1] 11:25
**defenses** [2] 9:14 17:10
**department** [4] 3:17 20:20 26:17 27:16
**deposit** [1] 6:5
**desire** [1] 22:18
**details** [1] 15:19
**determined** [2] 9:10 24:22
**development** [1] 22:17
**different** [7] 5:11 7:16 12:2 15:14 16:21,24 20:21
**diligence** [1] 15:9
**dip** [3] 5:5 7:7 25:3
**direction** [2] 18:6,7
**discount** [1] 17:6
**discovery** [1] 10:7
**discuss** [3] 5:4,10 16:1
**discussed** [1] 20:16
**discussing** [1] 4:12
**discussion** [2] 15:5 21:14
**discussions** [4] 4:15 5:11,15 9:20
**disposition** [1] 15:7

# Keyword Index

**distant** [1] 8:16
**distributed** [1] 6:6
**distribution** [1] 18:20
**divided** [1] 28:15
**docket** [1] 20:14
**document** [1] 6:3
**doing** [1] 5:12
**dollars** [8] 5:8 11:4,10,11, 17 21:20 23:11,15
**done** [1] 9:17
**door** [1] 22:3
**doors** [1] 27:13
**dowling** [6] 3:2,3,9,20,23 27:4
**dowling's** [1] 21:2
**down** [10] 4:13,25 7:12,13, 13,22,24 8:11 15:22 23:11
**dramatically** [1] 7:23
**during** [1] 20:16

**E**

**early** [1] 21:3
**education** [7] 3:17 20:20, 24 25:22 26:4,18 27:16
**education's** [1] 25:20
**effect** [1] 5:5
**effective** [3] 7:8 11:18 13: 2
**effectively** [7] 4:17 8:11 10:21 11:13 12:10,17 21:1
**efforts** [1] 17:6
**either** [2] 8:9 10:5
**electronic** [1] 29:15
**employees** [1] 16:22
**end** [3] 14:15,20 20:23
**enough** [2] 13:5 18:24
**enrolled** [1] 27:4
**enter** [1] 27:21
**entered** [1] 28:12
**entitled** [2] 5:23 29:16
**entity** [1] 8:4
**envision** [1] 14:17
**essence** [1] 16:12
**estate** [13] 6:1 17:4 20:17, 23 21:2,21,25 22:2,6 24:12 26:15,20 28:15

**even** [3] 14:8 22:24 23:18
**evening** [1] 21:3
**everybody** [1] 8:8
**everything** [2] 27:15 29:5
**exact** [1] 6:16
**exalted** [1] 18:9
**example** [1] 13:20
**excellent** [1] 19:6
**exchange** [2] 9:18,19
**exchanges** [1] 9:15
**exist** [2] 13:9,10
**exists** [2] 5:5 13:22
**exit** [2] 12:12 15:1
**expect** [2] 14:20 15:6
**expectation** [1] 7:7
**explaining** [1] 21:3
**express** [1] 21:6
**extent** [5] 9:13 13:9,10 25: 11,15

**F**

**facility** [2] 7:7,22
**factor** [1] 13:3
**fairly** [1] 7:22
**fashion** [1] 28:16
**felt** [1] 20:24
**fight** [2] 23:6 27:22
**figuring** [1] 23:4
**file** [1] 17:21
**filed** [6] 5:24 6:25 20:15 21: 3 23:24 27:14
**filing** [2] 26:22 27:2
**financial** [1] 4:16
**find** [3] 9:25 20:21 21:20
**fine** [1] 10:17
**finish** [1] 27:24
**first** [5] 4:17 6:5 12:21 14: 20 16:19
**fliers** [1] 19:21
**flow** [1] 8:4
**focus** [1] 17:3
**folks** [2] 5:23 29:9
**follow** [1] 4:21
**following** [1] 17:23
**force** [1] 14:13
**forefront** [1] 5:15

**foregoing** [1] 29:14
**forfeited** [1] 6:5
**form** [1] 28:8
**forth** [4] 12:8 16:23,25 17: 11
**forward** [4] 10:7 14:18 17: 5 25:23
**four** [1] 24:13
**friday** [1] 21:3
**friedman** [2] 3:12,13
**friends** [1] 19:15
**full** [3] 9:8 16:22 21:4
**funded** [1] 7:1
**funding** [1] 7:8
**funds** [2] 6:10,14
**further** [4] 15:7 17:13 24: 10 25:6
**future** [3] 14:18 15:9,11

**G**

**game** [1] 29:8
**generally** [1] 21:13
**getting** [2] 15:14 20:4
**give** [9] 5:17 7:19 21:1,22, 24 22:1,8 24:14 25:2
**given** [1] 12:7
**glenn** [1] 3:10
**golden** [1] 3:5
**golf** [1] 29:8
**got** [4] 14:5 21:19 27:10 29: 1
**government** [3] 24:7 25: 12 26:25
**government's** [2] 22:22 28:12
**greco** [1] 29:17
**group** [1] 19:23
**guarantee** [1] 4:16
**guess** [1] 18:13
**guessing** [1] 13:20
**guy** [3] 21:11,17,18
**guys** [4] 10:17 18:25 27:21 29:1

**H**

**happy** [3] 4:8 5:18 16:12

**headline** [1] 20:3
**heard** [1] 20:15
**hearing** [6] 4:2 10:2 19:18 20:16 27:24 28:19
**help** [1] 16:7
**helpful** [1] 17:5
**hit** [1] 17:8
**hold** [3] 7:24 24:4,9
**holders** [1] 16:4
**holding** [3] 10:3 20:5 29:2
**holds** [1] 4:17
**honor** [62] 3:4,7,12,14,18, 22,24 4:4,9 5:3,4,10 6:8 7: 5,6,15,19 8:9,15,21 9:4,10 10:2,4,6,6,11 11:13 12:25 13:16,25 14:17 15:4,23 16: 3,7,11,14,15 17:18 19:4,6, 17 20:12,15,19 22:10,16, 19 23:2,24 24:5,23 25:6,20, 22 26:16 28:6,17,23 29:3, 10
**honor's** [2] 17:21 24:10
**hope** [5] 9:20,23,24 15:16 19:12
**hopefully** [1] 11:3
**hour** [2] 21:15,16
**houses** [1] 7:13
**howard** [1] 3:19
**however** [1] 25:2
**hypothetical** [1] 25:16

**I**

**idea** [3] 5:24 8:2 20:6
**ideal** [1] 14:23
**imagine** [1] 20:3
**immediately** [1] 19:18
**inaudible** [6] 6:25 13:24 17:14 18:20,20,23
**include** [1] 28:9
**including** [1] 15:15
**indication** [1] 12:7
**informal** [1] 9:18
**information** [6] 9:11,14, 16,18,19 15:14
**initially** [1] 20:15
**initials** [1] 19:25

# Keyword Index

inserting [1] 9:14
insofar [1] 10:14
insolvent [1] 7:1
instead [1] 25:5
instructors [1] 16:23
insurance [1] 13:14
intend [1] 19:17
inter-creditor [1] 12:9
interest [8] 20:17,23 21:2, 23 22:4,21 23:15 25:11
interesting [1] 21:21
interests [1] 25:16
interim [2] 10:22 28:21
intervening [1] 27:17
involved [3] 6:12 10:9,14
irrelevant [1] 23:5
issue [5] 5:22 6:16 25:12, 17 26:14 27:17
issued [2] 8:23,23
item [1] 20:11
it'll [1] 8:7

## J

james [1] 3:16
judges [1] 20:5
judgment [2] 16:4 19:12
july [2] 20:16,16
june [2] 20:15 27:13
junior [2] 8:19 16:4
juran [5] 9:9 10:9,13 17:5,8
jureller [1] 3:8

## K

kept [2] 11:7,8
kimberly [1] 3:11
kleinberg [4] 3:19,19 19:5, 6
klestadt [1] 3:8
knapp [15] 3:16,16 22:11, 14 23:1 25:19 26:2,8,11,13, 16 27:2,4,9,12
known [1] 10:16
knows [1] 8:19

## L

lack [2] 7:16 27:4

laid [1] 15:2
land [1] 8:18
large [1] 6:23
largest [1] 7:20
las [2] 20:2,5
last [2] 4:11 22:17
later [1] 25:17
lawyers [1] 19:24
least [2] 26:3 28:18
leave [6] 21:16 22:4,20 23: 17 24:12 27:22
legal [1] 23:5
legally [1] 14:10
less [1] 12:5
lien [1] 4:17
lienholders [1] 16:4
likelihood [1] 12:1
limited [2] 13:11 14:2
line [1] 21:21
liquidating [1] 5:25
litigate [3] 22:8 25:12 26: 14
litigated [2] 23:21,24
litigating [1] 21:25
litigation [5] 4:1 9:22 10:5 11:15 13:12
little [2] 6:3 9:4
live [1] 22:6
loan [15] 4:3 20:13,14,18 21:2 22:18,21 24:1,6 25:3, 4,16 27:7,12,16
loans [8] 21:23 24:6,15,20, 24 25:23 26:1,3
local [1] 17:23
logjam [2] 10:22,24
long [2] 8:16 10:17
longer [2] 8:7 24:20
look [3] 10:23 15:17 16:5
looked [1] 4:19
looks [1] 15:20
lori [2] 3:5 16:16
lot [5] 5:22 8:2 9:15 15:5,17
luck [1] 19:10

## M

made [3] 9:10 10:1 26:25

magnitude [1] 5:8
main [1] 8:20
maintain [1] 25:11
major [1] 11:25
male [5] 18:15,16,19 19:19 21:10
management [1] 25:10
mandatory [1] 5:6
many [3] 10:16,16 16:21
market [1] 15:16
mary [1] 29:17
match [1] 29:8
matter [10] 3:2,3 4:2 6:13 10:12 16:13 22:23 23:16 26:23 29:16
matters [1] 3:24
mean [5] 5:20 6:22 12:13 14:14 21:9 22:7 23:6 26:19
meaning [1] 12:14
meaningful [1] 9:22
mechanic [1] 22:19
mechanics [1] 11:17
mechanism [1] 5:5
mediation [6] 9:8,18 10: 12,13 11:20 16:19
mediator [3] 9:9 10:22,23
merits [3] 11:14,16,24
met [1] 9:8
meyer [1] 3:19
might [2] 9:7 21:6
million [12] 4:24,25 5:17 7: 20 12:17,17,21 23:10,11, 12 24:13 26:3
minimum [1] 17:23
minor [1] 15:18
misunderstood [1] 25: 25
model [2] 4:20 13:4
modeling [1] 16:6
moderator [1] 19:20
mohican [1] 20:6
moment [1] 25:22
money [15] 11:12,22 13:5, 21,23 17:4 18:19 23:9,22 24:3,4,9 25:5 27:6,6
monies [2] 8:6,8

morning [1] 5:10
most [1] 21:21
motion [11] 15:23 16:2 17: 15,21 19:1,2 20:12 23:25 28:20,21,22
moving [3] 10:7 14:18 17: 5
ms [4] 3:4 16:15 19:11,16
much [6] 5:15 7:14 15:8 16:6 17:7 19:7
must [1] 11:17
myself [1] 21:5

## N

national [1] 20:4
ncbj [5] 18:8 19:11,15,18, 24
near [2] 14:18 16:2
necessary [3] 11:15 12: 12 24:11
need [8] 6:25 8:19 9:22 11: 6 13:3 14:1 17:8,22
needed [2] 16:20 17:3
never [2] 6:9,12
new [1] 21:18
next [4] 8:7 9:20 10:22 17: 14
nobody [1] 14:14
non-cash [1] 8:4
nor [1] 28:14
note [1] 5:5
nothing [1] 25:21
notice [2] 15:24 17:22
november [1] 27:14
number [6] 3:2,3 4:22 20: 14 22:3 23:4
numbers [4] 5:16 17:10 23:9,10

## O

oakdale [7] 4:10,14,17,23 7:23 8:10 15:18
objects [1] 22:3
obligated [1] 27:15
obligation [1] 23:17
obviously [1] 5:3

# *Keyword Index*

**occur** [1] 8:12
**october** [6] 17:25,25 18:2, 5,8,10
**odd** [3] 23:10,15 27:5
**office** [1] 20:20
**okay** [7] 3:21 6:21 15:12 16:1,9 19:5,10
**old** [2] 21:17,18
**once** [4] 5:6 6:15 22:23 23: 17
**one** [8] 3:25 4:22 5:21 8:24 11:25 13:3 20:3 22:16
**only** [5] 8:6 20:11 21:18 27: 7,17
**open** [2] 22:20 24:12
**opportunity** [3] 15:10 16: 17 21:5
**options** [1] 8:12
**order** [9] 10:12,18 22:2,7 24:10 25:6 27:21 28:8,21
**original** [1] 23:10
**originally** [2] 10:10 23:24
**other** [11] 4:2 7:9 8:13 12: 21 14:1,3 17:2 20:11 21:6 25:19 27:10
**others** [1] 20:2
**otherwise** [1] 12:18
**out** [10] 11:6,18 12:16,18 15:3,16 17:13 18:25 23:4 25:24
**outs** [1] 6:20
**outstanding** [2] 8:11 24: 19
**outten** [1] 3:5
**over** [2] 23:8 24:19
**owed** [1] 7:14
**own** [6] 15:10 26:12,15,15, 24,24
**ownership** [1] 26:17

## P

**p.m** [2] 3:1 29:12
**package** [1] 24:17
**paid** [10] 4:25 5:1 7:12,12, 13,22 11:6,18 12:17 13:22
**panel** [1] 19:12

**paper** [1] 26:3
**papers** [6] 23:7 25:20 27: 20,23 28:19 29:1
**parcel** [1] 6:17
**part** [4] 6:9,17 16:22 23:25
**partially** [2] 21:19,20
**participant** [1] 11:20
**participate** [1] 26:25
**participation** [1] 26:22
**particular** [1] 16:21
**parties** [7] 9:8 10:14 15:14 17:7 21:6 27:18 28:9
**pass** [1] 24:24
**patient** [1] 17:4
**pay** [6] 4:13 7:24 8:11 11: 24 15:22 21:23
**people** [4] 5:20 9:2 20:1 21:22
**percent** [6] 8:3 12:15 13: 22,23 21:22,24
**percentage** [1] 26:17
**perhaps** [2] 22:18,19
**period** [1] 10:22
**perkins** [7] 4:3 20:13 25:4 27:5,7,12,16
**permit** [1] 12:4
**perspective** [5] 13:16 14: 17 16:8 20:25 28:5
**petition** [2] 7:21 8:13
**ph** [2] 9:9,9
**phrase** [1] 7:17
**picture** [3] 14:17 15:21 16: 8
**piece** [4] 7:21 22:11,14 24: 21
**pieces** [1] 7:20
**place** [2] 7:7 14:25
**plaintiff** [7] 4:1 9:16,24,24 10:20 12:2 16:12
**plaintiff's** [2] 9:12 10:2
**plan** [11] 5:24 7:9 11:7,18 13:1,2,2 14:4,5,24 15:21
**planning** [2] 15:6,7
**plans** [1] 15:2
**please** [2] 9:6 19:8
**pleased** [1] 4:9

**point** [13] 6:12 9:7,17 10: 19 11:12 13:12 15:6,10 16: 7 17:9 20:19,24 27:15
**pool** [2] 12:16,24
**poppiti** [1] 3:11
**portfolio** [14] 4:3 20:13,14, 18 21:2 22:18,21 24:2,6 25: 10,16 26:2 27:22,25
**position** [12] 7:12 11:21 12:8 14:16 18:9 21:4,14 22: 22 23:2,15 25:20 26:12
**positions** [1] 10:21
**possession** [2] 4:12 26: 21
**possible** [1] 21:6
**post** [1] 8:13
**potential** [6] 9:13 13:14 15:22 20:21,22 21:2
**potentially** [4] 4:13 10:3,7 25:3
**practical** [1] 23:22
**predates** [1] 27:2
**prejudice** [2] 28:3,11
**prepared** [1] 26:9
**prepayment** [1] 5:6
**present** [1] 16:3
**preserve** [1] 25:17
**pretrial** [3] 3:25,25 4:5
**previous** [1] 22:12
**primarily** [2] 9:12,16
**principal** [1] 24:18
**prior** [1] 22:15
**priority** [4] 11:5 12:11,16 14:1
**probably** [5] 6:3 17:20,20 18:11 22:1
**problem** [2] 18:8 19:2
**proceed** [1] 15:6
**proceeding** [1] 13:1
**proceedings** [3] 3:1 29: 12,15
**proceeds** [11] 4:11,13,18 5:7 7:23 8:10,10 12:18,22 15:23 25:4
**process** [7] 14:19,24 15: 17,18 16:25 17:5 27:1

**producing** [1] 17:2
**productive** [2] 16:19 17:1
**profit** [1] 14:9
**program** [11] 22:23 23:11, 18 24:24 25:4,4 26:22 27:5, 7,12,16
**progress** [2] 9:10 10:1
**property** [11] 6:23 8:14 17: 3 20:17,22 21:21 22:2,6 24: 12 26:20 28:15
**proposal** [1] 16:11
**propose** [2] 4:4 17:12
**proposed** [5] 11:16 14:18 15:17,22 20:13
**proposing** [1] 20:18
**proposition** [1] 25:21
**provided** [1] 12:10
**publically** [1] 16:7
**publishing** [1] 6:17
**purposes** [1] 14:2
**pursue** [1] 13:7
**put** [17] 6:3 8:18 12:8,15,23 16:5 17:15 18:25 19:20,20 22:24 23:18 27:20,23 28: 19,21 29:1
**putting** [1] 14:4

## Q

**quarter** [1] 14:21
**question** [7] 8:20 18:25 20:16 22:5,20 23:21 24:12

## R

**raising** [1] 7:6
**rather** [2] 14:15 23:9
**raw** [1] 8:18
**reach** [5] 11:1,2,3,16 12:10
**reached** [1] 4:20
**read** [4] 21:7,9,10,12
**really** [6] 6:12 13:11 14:22 16:20 17:21 25:19
**reason** [1] 10:17
**reasonable** [1] 4:24
**reasonableness** [1] 5:12
**reasons** [1] 7:9
**recall** [2] 7:15 12:8

# Keyword Index

**receives** [1] 5:6
**recognize** [2] 17:2 20:22
**recognizes** [1] 28:13
**re-commence** [1] 9:19
**record** [1] 3:23
**recording** [1] 29:15
**recoveries** [1] 13:12
**recovery** [2] 5:9 13:17
**regards** [1] 22:5
**register** [1] 19:17
**regulations** [1] 20:25
**related** [1] 27:15
**relative** [2] 13:17 15:8
**remaining** [1] 8:3
**remit** [1] 24:21
**rene** [2] 3:4 16:16
**repayments** [1] 25:24
**report** [2] 10:4,5
**reporting** [1] 19:15
**represents** [1] 13:22
**require** [3] 7:24 10:25 14:
14
**required** [1] 9:11
**reserve** [2] 5:16,17
**reserves** [1] 4:24
**resolution** [3] 9:25 11:16
20:22
**resolve** [2] 28:18,22
**resolved** [2] 5:22 28:20
**resolving** [1] 5:25
**resources** [1] 6:2
**respect** [1] 11:19
**respond** [3] 23:7 27:23 29:
2
**responding** [1] 23:8
**response** [1] 21:8
**rest** [1] 28:22
**resulting** [1] 4:18
**results** [1] 22:1
**retained** [1] 15:15
**returnable** [1] 17:16
**revenue** [1] 13:7
**review** [1] 21:5
**rights** [4] 5:20 27:9,18 28:
4
**risk** [1] 17:10

**roadblocks** [1] 17:8
**roll** [1] 15:16
**ronald** [1] 3:12
**roughly** [4] 4:24 5:16 10:3
14:25
**roupinian** [6] 3:4,5 16:15,
16 19:11,16
**rules** [5] 17:23 20:25 24:24
26:6,23
**run** [1] 7:10

## S

**sale** [12] 4:14,18,23 7:10,
25 8:10 13:4 14:18 15:7,17,
18 17:3
**same** [3] 6:16 7:6 24:1
**save** [1] 18:19
**saw** [1] 6:4
**saying** [5] 8:3 22:2 23:25
26:1 27:21
**scenario** [2] 14:19,24
**sean** [2] 3:7,23
**second** [2] 8:23 27:22
**secured** [16] 4:13 6:6,13,
19 7:3,11,16,24 8:3 11:1
12:3,4,11,18 13:8,23
**see** [6] 14:4,20 15:23 19:12
21:17 27:23
**seed** [1] 27:6
**self-fund** [1] 8:10
**senators** [1] 20:3
**send** [1] 27:15
**sense** [4] 10:8 16:19 17:7
28:6
**september** [6] 18:12,12,
14,16 28:24 29:18
**serve** [1] 16:3
**serviced** [1] 28:1
**set** [3] 13:13 17:12 20:9
**sets** [1] 7:16
**settle** [2] 12:5 25:14
**settlement** [10] 4:19,21 9:
19,21 11:1,3,3 12:9,9 13:
21
**settling** [1] 10:5
**seven** [2] 23:11,12

**share** [3] 12:11 14:16 16:6
**short** [1] 27:24
**show** [3] 20:2 21:17,18
**side** [3] 9:12 17:2 22:17
**signature** [1] 4:12
**signed** [1] 6:4
**significant** [1] 7:24
**silvermanacampora** [1]
3:13
**since** [3] 5:24 9:15 20:19
**single** [1] 21:21
**sir** [1] 25:18
**sitting** [2] 4:11 13:23
**small** [1] 23:9
**somebody** [4] 12:23 14:4
23:7,14
**somehow** [1] 23:17
**soon** [1] 18:13
**sooner** [1] 17:16
**sort** [3] 13:14 15:1 17:8
**sound** [3] 22:11,14 29:15
**sources** [1] 13:7
**southard** [77] 3:7,8,8,22,
23 4:8 5:3 6:8 7:2,5,15,19
8:5,9,15,21 9:1,4,7 10:11,
19 11:2,13,23 12:7,14,16,
21,25 13:9,11,25 14:7,10,
12,16,23 15:4,13,21 16:1,
10 17:17,20 18:2,4,6,14 19:
2,4,17,22 20:11 21:8,13 22:
10,16 23:2,13,23 24:5,9,15,
18,23 25:2,13,15 26:5 28:2,
5,8,17,23 29:3,5,10
**speaker** [5] 18:15,16,19
19:19 21:10
**speaking** [1] 19:12
**spell** [1] 19:24
**spend** [3] 21:15,16,25
**spotting** [1] 19:25
**stan** [1] 3:14
**start** [5] 4:4,6,8 14:4 17:9
**states** [1] 3:15
**status** [4] 4:6,9 11:9 17:13
**stay** [1] 10:9
**stayed** [1] 10:14
**stevens** [1] 3:8

**still** [1] 7:23
**stim** [1] 3:10
**stipulation** [1] 6:18
**strength** [2] 11:25 12:1
**subject** [3] 10:2 17:21 24:
9
**subordinate** [2] 8:17,18
**success** [1] 12:1
**successful** [1] 10:5
**successfully** [1] 4:10
**suggesting** [1] 22:20
**sun** [1] 20:6
**suozzi** [1] 3:19
**support** [1] 8:6
**suspect** [1] 13:19
**swiftly** [1] 15:1

## T

**tandem** [1] 14:25
**targets** [1] 13:14
**technical** [2] 10:11 23:6
**term** [2] 6:20 16:3
**terminated** [1] 26:22
**terms** [6] 11:5,8,24 15:22
16:24 19:11
**terrific** [1] 17:1
**thanks** [1] 29:9
**that'll** [1] 14:5
**theirs** [2] 22:24 28:14
**themselves** [1] 24:6
**thereafter** [1] 15:1
**there'll** [1] 13:21
**there's** [6] 6:22 8:1,22 15:
5 19:23 26:7
**they'll** [1] 13:17
**they've** [3] 7:12 12:7 17:1
**thinks** [1] 8:8
**though** [1] 25:20
**thousand** [1] 23:15
**tied** [1] 25:3
**timing** [2] 13:1,16
**title** [1] 25:14
**today** [8] 5:4 16:2,18 20:10
27:21,25 28:19,20
**today's** [1] 3:24
**together** [1] 12:24

# *Keyword Index*

**total** [3] **7**:18 **8**:4 **21**:23
**touch** [1] **20**:4
**towards** [1] **17**:25
**town** [3] **15**:3,4,6
**trade** [1] **10**:21
**trading** [1] **11**:11
**tranches** [1] **13**:21
**transaction** [2] **4**:10 **13**:4
**transcript** [1] **29**:14
**transfer** [4] **24**:3,5 **25**:9 **26**:10
**transferred** [1] **26**:4
**transferring** [1] **25**:5
**trial** [1] **18**:11
**trials** [1] **18**:10
**tried** [1] **4**:20
**true** [1] **10**:7
**trustee** [1] **3**:15
**trustees** [1] **3**:20
**try** [3] **9**:25 **16**:7 **28**:8
**trying** [1] **20**:21
**turning** [1] **16**:10
**turnover** [1] **20**:13
**turns** [1] **12**:16
**two** [7] **3**:24 **7**:16,20 **8**:12 **13**:21 **19**:25 **22**:3
**type** [1] **13**:17

## U

**ultimate** [2] **5**:9 **11**:10
**ultimately** [5] **11**:2,4,23 **12**:25 **13**:2
**unable** [1] **21**:1
**under** [4] **5**:5 **20**:25 **26**:5, 23
**understand** [4] **6**:18 **11**:14 **21**:13 **26**:11
**understood** [4] **7**:2,5 **25**:22 **28**:17
**united** [1] **3**:15
**unless** [1] **22**:3
**unlikely** [1] **13**:17
**unsecured** [4] **12**:10,22, 24 **13**:6
**unsecureds** [1] **13**:5
**up** [6] **4**:20 **6**:4 **12**:15 **14**:15

**19**:1 **20**:2
**uses** [1] **15**:9

## V

**value** [2] **22**:20 **26**:3
**various** [2] **4**:15,21
**vegas** [3] **20**:1,2,5
**view** [2] **12**:1,2
**views** [1] **21**:6

## W

**wanted** [3] **5**:4,10 **16**:1
**wants** [1] **19**:14
**warmuth** [3] **3**:10,10,10
**warn** [11] **4**:1,4 **5**:22 **8**:20, 23 **9**:2,5 **13**:20 **16**:10,20 **18**:25
**watching** [1] **9**:2
**way** [2] **9**:22 **23**:25
**ways** [1] **27**:19
**weeds** [1] **11**:9
**week** [4] **4**:11 **17**:21 **20**:24 **22**:17
**weeks** [1] **26**:16
**weigh** [1] **11**:9
**whatever** [11] **5**:20,23 **6**:1 **8**:8 **22**:23 **23**:4,16,18 **24**:17 **25**:11 **28**:13
**when's** [1] **17**:14
**whether** [10] **9**:21,22 **16**:5 **20**:17 **22**:5 **23**:20,21 **24**:1 **26**:23 **27**:17
**whom** [1] **8**:4
**will** [22] **5**:1,25 **6**:23 **7**:8,12 **8**:16,18 **11**:4,6 **13**:5,21 **14**:1 **15**:9,10,17 **16**:2,3 **18**:19 **19**:2 **21**:4 **22**:4 **24**:11
**willing** [1] **11**:24
**win** [1] **23**:19
**winters** [1] **3**:8
**wishes** [1] **25**:10
**without** [4] **5**:2 **10**:21 **28**:3, 11
**wondered** [1] **20**:5
**word** [1] **27**:5
**work** [3] **16**:2 **19**:5 **28**:8

**worth** [2] **8**:2,2

## Y

**yan** [2] **9**:9 **17**:5
**yang** [2] **3**:14,14
**yankee** [1] **29**:8
**year** [2] **8**:7 **14**:20
**years** [3] **10**:16 **20**:7 **27**:5

## Z

**zaikowski** [4] **3**:2,6 **4**:1 **16**:16