SILVERMANACAMPORA LLP
Attorneys for the Committee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Kenneth P. Silverman
Ronald J. Friedman
Brian W. Powers

Hearing Date: November 27, 2017
Time: 1:30 p.m.

Objections Due: November 20, 2017
Time: 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

DOWLING COLLEGE f/d/b/a DOWLING
INSTITUTE f/d/b/a DOWLING COLLEGE
ALUMNI ASSOCIATION f/d/b/a CECOM
a/k/a DOWLING COLLEGE, INC.

                    Debtor.
------------------------------------------------------------x

Chapter 11

Case No. 16-75545 (REG)

## SECOND INTERIM APPLICATION OF SILVERMANACAMPORA LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR PERIOD APRIL 1, 2017 THROUGH AND INCLUDING SEPTEMBER 30, 2017, AND REIMBURSEMENT OF EXPENSES

| | |
|---|---|
| **Name of Applicant**: | SilvermanAcampora LLP |
| **Authorized to Provide Professional Services to**: | Official Committee of Unsecured Creditors |
| **Date of Retention**: | February 17, 2017, effective December 12, 2016 |
| **Period for which Compensation and Reimbursement are Sought**: | April 1, 2017 through September 30, 2017 |
| **Amount of Compensation Sought:** | $187,610.50 |
| **Amount of Expense Reimbursement Sought:** | $906.94 |
| **This is a**: | Second Interim Application |
| **Fees Previously Approved on Interim Basis:** | $205,992.50 |
| **Expenses Previously Approved on Interim Basis:** | $242.35 |

BPOWERS/2122130.1/066648

SilvermanAcampora LLP
Attorneys for the Committee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Kenneth P. Silverman
Ronald J. Friedman
Brian Powers

Hearing Date: November 27, 2017
Time: 1:30 p.m.

Objections Due: November 20, 2017
Time: 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

DOWLING COLLEGE f/d/b/a DOWLING
INSTITUTE f/d/b/a DOWLING COLLEGE
ALUMNI ASSOCIATION f/d/b/a CECOM
a/k/a DOWLING COLLEGE, INC.

      Debtor.
-----------------------------------------------------------x

Chapter 11

Case No. 16-75545 (REG)

### SECOND INTERIM APPLICATION OF SILVERMANACAMPORA LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR PERIOD APRIL 1, 2017 THROUGH AND INCLUDING SEPTEMBER 30, 2017, AND REIMBURSEMENT OF EXPENSES

SilvermanAcampora LLP ("**SilvermanAcampora**" or the "**Applicant**"), counsel to the Official Committee of Unsecured Creditors (the "**Committee**") of Dowling College f/d/b/a Dowling Institute f/d/b/a Dowling College Alumni Association f/d/b/a Cecom a/k/a Dowling College, Inc. (the "**Debtor**"), the above-captioned debtor and debtor in possession, submits this second interim application for compensation (the "**Application**") seeking entry of an order pursuant to sections 105 and 330 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and General Order 613 dated June 4, 2013 Re: Guidelines for Fees and Disbursements for Professionals in Eastern District of New York Bankruptcy Cases (the "**Guidelines**"), and respectfully sets forth and represents as follows:

### INTRODUCTION

1. By this Application, SilvermanAcampora seeks (a) interim allowance and award of compensation for the professional services rendered as counsel to the Committee for the period of April 1, 2017 through and including September 30, 2017 (the "**Application Period**") in

the amount of $187,610.50, and (b) reimbursement of actual and necessary expenses incurred by SilvermanAcampora during the Application Period in connection with the rendering of its services in the amount of $906.94.

2. On March 22, 2016, the Court entered an *Order Granting Applications for a First Interim Allowance of Compensation and Reimbursement of Expenses* (ECF Doc. No. 338) (the "**First Interim Fee Order**"). The First Interim Fee Order authorized, on an interim basis, payment of Applicant's fees in an amount of $205,992.50, with a holdback of $41,198.50 (the "**First Period Holdback**") and reimbursement of necessary expenses in the amount of $242.35.

3. Pursuant to the Court's order dated December 21, 2017 (ECF Doc. No. 117) (the "**Monthly Compensation Order**"), all estate professionals retained in the Debtor's case must submit monthly fee statements (the "**Fee Statements**") to the Debtor, the Debtor's counsel, the Committee, the Debtor's secured creditors, and the United States Trustee each month, and may receive a total of eighty (80%) percent of fees and one hundred (100%) percent of expenses, subject to future allowance of this Court. Accordingly, in connection with its Fee Statements during the Application Period, and pursuant to the Monthly Compensation Order, by the hearing on this Application Applicant expects to have received $150,088.40 with respect to its accrued fees, with $37,522.10 held back (the "**Second Period Holdback**") and has been reimbursed $906.94 with respect to actual and necessary expenses.

4. Jurisdiction over these proceedings and this Application is based upon 28 U.S.C. §§157(a) and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Eastern District of New York, dated December 5, 2012, effective as of June 23, 2011 (Amon, C.J.). This Court is the proper venue for this proceeding in accordance with 28 U.S.C. §§1408 and 1409.

5. The statutory predicates for the relief requested herein are Bankruptcy Code § 330 and Bankruptcy Rule 2016.

## BACKGROUND

6. On November 28, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court.

7. On December 9, 2016, the Office of the U.S. Trustee filed a *Notice of Appointment of Creditors' Committee* (ECF Doc. No. 85) appointing Ultimate Power Inc., Linda Ardito, and Lori Zaikowski to the Committee. The Committee selected Applicant as its counsel, and Applicant's retention was approved by the Court on February 17, 2017 (ECF Doc. No. 206).

8. The Debtor is authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor-in-possession under Bankruptcy Code §§ 1107 and 1108.

9. To date, no trustee or examiner has been appointed in this matter.

## THE APPLICATION

10. This Application is Applicant's second interim application requesting payment of compensation and reimbursement of expenses, and this Application is made pursuant to Bankruptcy Code § 330.

11. Applicant is a firm of sixteen (16) attorneys, concentrating in the practice of, among other areas, insolvency, reorganization, bankruptcy, and litigation related matters. Applicant has extensive experience in representing debtors, creditors, creditors' committees and trustees in bankruptcy proceedings before numerous Bankruptcy Courts, including the Eastern and Southern Districts of New York. As a result of Applicant's extensive experience, Applicant submits that the services it rendered in this case, as set forth below, were efficient, economical and effective.

12. A chart setting forth the categories of services rendered to the Committee by Applicant is annexed hereto as **Exhibit A**. Annexed hereto as **Exhibit B** is a chart setting forth the amount of time each professional and para-professional expended and the current hourly billing rate for each individual. The hourly rates for each of Applicant's employees and professionals is the same rate Applicant charges its clients for similar services rendered in

bankruptcy and non-bankruptcy matters. Applicant believes that these rates constitute market rates and are equal to or less than the rates charged by professionals with similar experience. Annexed hereto as **Exhibit C** is a chart setting forth the disbursements Applicant has incurred on behalf of the Committee during the Application Period.

13. This Application contains a summary of the legal services which Applicant rendered during the Application Period. In light of the extensive services rendered by Applicant on behalf of the Committee, Applicant has summarized the major categories of services which were rendered, the principal problems confronted, and the results achieved. For a detailed itemization of the actual services rendered by Applicant on behalf of the Committee during the Application Period, the Court and interested parties are referred to the time records and invoices annexed hereto as **Exhibit D**.

## PROFESSIONAL SERVICES RENDERED

14. During the Application Period, Applicant rendered a wide range of professional services which were substantial, necessary and beneficial to the Committee, the Debtor's estate and creditors, and other parties in interest. Applicant devoted substantial professional time and resources to address a variety of issues in the Debtor's case on behalf of the Committee.

### Asset Analysis

15. Pursuant to the terms of the DIP Facility (defined below) agreed to between the Debtor, the DIP Lenders (defined below), and the Committee, the Committee retained the ability to challenge the claims and prepetition liens of the DIP Lenders. Accordingly, Applicant, on behalf of the Committee, requested and received substantial documentation from the DIP Lenders in support of their claims and prepetition liens. During the Application Period, Applicant spent considerable time reviewing and analyzing the documentation provided by the DIP Lenders and preparing a memorandum to the Committee with respect to the results of that analysis. As discussed below, due to Applicant's efforts, the Committee was able to reach a settlement with the DIP Lenders regarding the estate's potential claims, which settlement was approved by the Court.

**Asset Sale**

Oakdale Campus

16. During the Application Period, Applicant continued to be in constant communication with the Debtor's professionals regarding the sale of the Debtor's campus in Oakdale, New York (the "**Oakdale Campus**"). In addition, Applicant reviewed all bids received and coordinated with counsel to the Debtor and the DIP Lenders to determine which bidders would be qualified to bid at the auction. Applicant attended the auction of the Oakdale Campus on behalf of the Committee, which resulted in a winning bid of $26.5 million.

17. Subsequent to the auction of the Oakdale Campus and the approval of the winning bid by the Court, it became evident to the estate professionals that the winning bid would have difficulty closing on the transaction. Applicant, on behalf of the Committee, participated in numerous phone calls and conferences regarding the sale of the Oakdale Campus and the actions to be taken if the purchaser failed to close. In consultation with Applicant, the Debtor ultimately declared the original purchaser to be in default of the asset purchase agreement, and closed the sale of the Oakdale Campus with the backup bidder.

Residential Portfolio

18. In addition to the Oakdale Campus sale, the Debtor also received authority to sell thirty-two (32) parcels of residential real property (the "**Residential Portfolio**") that are located adjacent to or near the Oakdale Campus. With respect to the proposed sale of each individual property of the Residential Portfolio, Applicant reviewed the Debtor's notice of proposed sale and related documentation with respect to the potential value of such property to ensure that the proposed sale is in the best interests of the Debtor's estate.

Brookhaven Campus

19. During the Application Period, Applicant reviewed extensive documenataion and participated in numerous telephone calls and extensive meetings regarding the Debtor's marketing and sale process related to the sale of its campus in Brookhaven, New York (the "**Brookhaven Campus**"). Applicant assisted the Committee with respect to understanding and

addressing the many issues relating to the sale of the Brookhaven Campus, including zoning, timing, and marketing concerns.

20. In addition, Applicant reviewed and provided comments to the Debtor's proposed motion, bidding procedures, and asset purchase agreement for the sale of the Brookhaven Campus, as well as the Debtor's marketing materials relating to that sale. As of the date hereof, the Debtor's motion to approve the procedures for the sale of the Brookhaven Campus is pending before the Court.

### Case Administration

21. During the Application Period Applicant, on behalf of the Committee, attended several status conference and hearings in the Debtor's case. Applicant has also reviewed the Debtor's monthly operating reports and various motions filed by the Debtor in its chapter 11 case to determine if the relief sought therein was in the best interests of the Debtor's estate.

22. In addition, in Applicant's capacity as counsel to the Committee, Applicant responded to numerous inquiries from creditors regarding the Debtor's chapter 11 filing, the deadline for filing of proofs of claim, and the general status of the Debtor's case.

### Claims Administration / Objections

23. During the Application Period, Applicant, on behalf of the Debtor's estate and in consultation with the Debtor, continued the process of reviewing and analyzing the proofs of claim filed by creditors of the Debtor's estate, which process remains ongoing.

### Creditors Meeting

24. During the Application Period, Applicant spent considerable time attending meetings of the Committee and advising the Committee with respect to the bankruptcy process. Applicant discussed with the Committee relevant matters in the Debtor's case, including outstanding motions; the sale of the Oakdale Campus, the Brookhaven Campus, and the Residential Portfolio; potential claims of the Debtor's estate; the debtor in possession financing from the DIP Lenders; and the settlement reached between the Committee and the DIP Lenders.

**Fee Application**

25. Pursuant to the Monthly Compensation Order, all estate professionals retained in the Debtor's case must submit Fee Statements to the Debtor, the Debtor's counsel, the DIP Lenders, and the United States Trustee each month. During the Application Period, Applicant reviewed each professional's fee statements to ensure that the services rendered were in the best interest of the Debtor's estate.

26. In addition, during the Application Period, Applicant prepared and filed its first interim application for compensation and reimbursement of expenses, which application was approved in the First Interim Fee Order.

**Financing**

27. On the Petition Date, the Debtor filed a motion to authorize it to obtain a debtor in possession financing facility (the "**DIP Facility**") from ACA Financial Guaranty Corporation and UMB Bank, National Association (together, the "**DIP Lenders**") to fund the Debtor's post-petition obligations, chapter 11 expenses, and the costs associated with the liquidation of its assets.

28. During the Application Period, Applicant spent considerable time negotiating with the Debtor and the DIP Lenders with respect to the terms of proposed continued interim orders authorizing the DIP Facility, including proposed budgets. Applicant attended several hearings during the Application Period with respect to approval of the DIP Facility, and the Court entered several orders approving the DIP Facility on an interim basis.

29. In addition, Applicant has spent considerable time negotiating with the DIP Lenders regarding a carve-out from the DIP Lenders' collateral in favor of the Debtor's estate (the "**Carve-Out**"), including reviewing and revising a term sheet prepared by the DIP Lenders. On July 14, 2017, the Court entered an order approving the DIP Facility on a final basis, as well as the Carve-Out, which ensures that unsecured creditors will receive a significant distribution if the liquidation of the Debtor's assets is insufficient to pay secured claims in full.

**Litigation**

30. During the Application Period, Applicant, on behalf of the Committee, began the substantial task of examining the Debtor's prepetition operations and finances in order to determine if the Debtor's estate had colorable claims against third parties. Applicant reviewed voluminous documentation obtained from the Debtor and its prepetition professionals, and began the preparation of a memorandum to the Committee detailing Applicant's findings. As of the date hereof, Applicant's examination remains ongoing.

## LEGAL STANDARD

31. Bankruptcy Code §330(a)(1)(A) provides that the level of compensation that the court may award to an estate professional, including the Committee's counsel, should be "reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such person . . . ." 11 U.S.C. §330(a)(1)(A).

32. In awarding compensation to retained professionals pursuant to Bankruptcy Code §330, courts take into account the cost of comparable non-bankruptcy services, among other factors. *In re Busy Beaver Bldg. Center, Inc.*, 19 F.3d 833, 848 (3d Cir. 1994) ("[T]he principal purpose of the 1978 amendments to section 330 was to compensate bankruptcy attorneys at the same level as non-bankruptcy attorneys."). *See also*, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 329 (1977) ("Bankruptcy specialists, however, if required to accept fees in all cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field."); 124 Cong. Rec. H11, 091-92 (daily ed. Sept. 28, 1978); §17, 408 (daily ed. Oct. 6, 1978).

33. When reviewing fee applications, courts generally use the "lodestar" approach, pursuant to which the court first establishes a reasonable hourly rate of compensation based on the value of the services provided and the cost of comparable services, and then multiplies such rate by the reasonable number of compensable hours. *See Busy Beaver*, 19 F.3d at 849, n.21. *See also, In re Drexel Burnham Lambert Group, Inc.* 133 B.R. 13, 21—22 (Bankr. S.D.N.Y. 1991) (stating courts employ lodestar approach "with the 'strong presumption' that the lodestar

product is reasonable under §330") (citations omitted); *In re West End Fin. Advisors, LLC,* 2012 Bankr. LEXIS 3045, *12 (Bankr. S.D.N.Y. July 12, 2012) ("The rules that govern fee awards and time record keeping in bankruptcy mirror those that apply in non-bankruptcy cases. Courts outside of bankruptcy generally apply the 'lodestar' method . . . .") (citations omitted); *In re Cena's Fine Furniture, Inc.,* 109 B.R. 575, 581 (E.D.N.Y. 1990).

34. When determining whether services for which compensation is sought were reasonable, courts should only disallow fees where "a [c]ourt is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive." *In re Drexel,* 133 B.R. at 23. *See also, Nicholas v. Oren (In re Nicholas),* 2011 Bankr. LEXIS 4498, *16 (Bankr. E.D.N.Y. 2011) ("[C]ourts are 'not to penalize attorneys by viewing the efforts of counsel with the benefit of '20/20 hindsight.'" (quoting *In re Drexel,* 133 B.R. at 23)).

35. Additionally, Bankruptcy Code §503(b) provides that, after notice and a hearing, administrative expenses can be awarded and paid including "compensation and reimbursement awarded under section 330(a)." 11 U.S.C. §503(b)(3).

36. Bankruptcy Code §504 prohibits professional persons receiving compensation under Bankruptcy Code §503 from sharing or agreeing to share: "(1) any such compensation or reimbursement with another person; or (2) any compensation or reimbursement received by another person under such sections." 11 U.S.C. §504(a).

37. All services for which compensation and reimbursement of expenses are requested by Applicant were performed for and on behalf of the Committee. No agreement or understanding exists between Applicant and any other person for the sharing of compensation to be received for the services rendered in connection with Applicant's representation of the Committee, and no action prohibited by Bankruptcy Code §504 has been made by Applicant. Annexed hereto as **Exhibit E** is a Certification required by the Guidelines.

38. Applicant respectfully requests that this Court consider that the services required to be performed have been efficiently performed with effective results. Applicant has expended

substantial time rendering professional services to the Committee in furtherance of the rights and interests of the Debtor's estate and its creditors.

39. In addition, based upon the results achieved to date during this chapter 11 case, as well as the extent and scope of future work to be completed by Applicant and other estate professionals, Applicant requests that the Court consider releasing some or all of the First Period Holdback (in the amount of $41,198.50) and the Second Period Holdback (in the amount of $37,522.10). Applicant submits that it is sufficiently invested in the outcome of this chapter 11 case and, given the lack of objection by secured creditors to the fees requested in this liquidation, believes that the continued holdback of fees at the rate of 20% for this lengthy engagement is not necessary.

40. No previous application or motion for the relief requested herein has been made to this or any other Court, other than Applicant's first interim application for compensation.

## CONCLUSION

41. It is impracticable to set forth in a fee application a detailed description of each and every service rendered to the Committee. SilvermanAcampora, however, believes that this Application appropriately sets forth the more significant matters handled and provides this Court with a comprehensive overview of the scope of the services rendered. Thus, SilvermanAcampora submits the fees sought herein are reasonable and the services rendered were necessary, effective, efficient and economical.

42. Based on the foregoing, SilvermanAcampora respectfully requests that this Application for interim allowance and payment of fees and reimbursement of expenses be granted in all respects.

**WHEREFORE,** SilvermanAcampora seeks the entry of an order (i) approving its second interim fee application for the award and payment of allowance for compensation for services rendered to the Committee in the amount of $187,610.50, (ii) authorizing and directing the reimbursement of expenses of $906.94 for a total fees and expenses in the amount of

$188,517.44, (iii) authorizing the release of the First Period Holdback and the Second Period Holdback, and (iv) granting such further relief as this Court may deem just and proper.

Dated: Jericho, New York
       October 26, 2017

                                          SILVERMANACAMPORA LLP
                                          Counsel to the Committee

                                          By:  *s/ Ronald J. Friedman*
                                                 Ronald J. Friedman
                                          Member of the Firm
                                          100 Jericho Quadrangle, Suite 300
                                          Jericho, New York 11753
                                          (516) 479-6300