1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    CASE NO. 8-16-75545-reg

4    - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    DOWLING COLLEGE,

8

9        DEBTOR.

10    - - - - - - - - - - - - - - - - - x

11                          United States Bankruptcy Court

12                          Long Island Federal Courthouse

13                          290 Federal Plaza

14                          Central Islip, New York

15

16                          July 10, 2017

17                          1:40 PM

18

19    B E F O R E:

20    HON. ROBERT E. GROSSMAN

21    U.S. BANKRUPTCY JUDGE

22

23

24

25

1   HEARING Matter:  (74) ADJ Order Scheduling Initial Case

2   Management Conference

3

4   HEARING Matter:  (31)  Final ADJ Order to Schedule Emergency

5   Hearings on (9) Motion for Authority to Obtain Credit Under

6   Section 364(b), Rule 4001(c) or (d) to Obtain Post-Petition

7   Secured, Super Priority Financing Pursuant to 11 U.S.C.

8   Sections 105, 361, 362, 363 and 364 and (B) to Utilize Cash

9   Collateral Pursuant to 11 U.S.C. Section 363; Adequate

10  Protection to Pre-petition Secured Creditors Pursuant to 11

11  U.S.C. Sections 361, 362, 363 and 364 by Joseph Charles Corneau

12  on behalf of Dowling College

13

14  HEARING Matter:  (317) Motion to Sell Property of the Estate

15  Free and Clear of Liens under 11 U.S.C. 363(f); Approving

16  Procedures for the Sale of Certain Assets Free and Clear of

17  Liens, Claims and Encumbrances and Authorizing the Employment

18  and Compensation of Tiger Capital Group, LLC as Liquidation

19  Agent by Lauren Catherine Kiss on behalf of Dowling College.

20  Motion withdrawn as per letter on Docket No. 361

21

22  HEARING Matter:  (344) Second Motion to Extend Exclusivity

23  Period for Filing a Chapter 11 Plan and Disclosure Statement by

24  Lauren Catherine Kiss on behalf of Dowling College

25

1    HEARING Matter:  (345) Motion to Sell Property of the Estate

2    Free and Clear of Liens under 11 U.S.C. 363(f) Pursuant to

3    Sections 105(a) and 363 of the Bankruptcy Code with regards to

4    Furniture and Equipment located at the Oakdale Campus to

5    Princeton Education Center LLC Free and Clear of All Liens,

6    Claims and Encumbrances by Lauren Catherine Kiss on behalf of

7    Dowling College

8

9    HEARING Matter:  (347) Motion to Approve and Authorize

10   Procedures for the Turnover of the Debtor's Federal Perkins

11   Loan Portfolio by Lauren Catherine Kiss on behalf of Dowling

12   College

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sheila Orms

```
 1   A P P E A R A N C E S :

 2

 3   GARFUNKEL WILD, P.C.

 4          Attorneys for UMB BANK

 5          111 Great Neck Road

 6          Great Neck, NY   11021

 7

 8   BY:   ADAM T. BERKOWITZ, ESQ.

 9

10   MINTZ LEVIN

11          Attorneys for UMB Bank

12          One Financial Center

13          Boston, MA   02111

14

15   BY:   IAN HAMMEL, ESQ.

16

17   SILVERMAN ACAMPORA LLP

18          Attorneys for the Official Committee of

19          Unsecured Creditors

20          100 Jericho Quadrangle

21          Suite 300

22          Jericho, NY   11753

23

24   BY:   RONALD J. FRIEDMAN, ESQ.

25
```

1   MEYER, SUOZZI ENGLISH & KLEIN P.C.

2        Attorneys for Certain Members of the Dowling College

3        Board of Trustees

4        990 Stewart Avenue

5        Suite 300

6        P. O. Box 9194

7        Garden City, NY  11530

8

9   BY:   HOWARD B. KLEINBERG, ESQ.

10

11   CERTILMAN BALIN ADLER & HYMAN

12        Attorneys for ACA Financial Guaranty Corp.

13        90 Merrick Avenue

14        East Meadow, NY  11554

15

16   BY:   RICHARD J. MCCORD, ESQ.

17

18   KLESTADT WINTERS JURELLER SOUTHARD & STEVENS LLP

19        Attorneys for Dowling College, Debtor

20        41st Street

21        17th Floor

22        New York, NY  10036

23

24   BY:   SEAN C. SOUTHARD, ESQ.

25

Page 6

1    U.S. DEPARTMENT OF JUSTICE

2         UNITED STATES TRUSTEE

3         Central Islip Office

4         Alfonse M. D'Amoato

5         U.S. Courthouse

6         560 Federal Plaza

7         Central Islip, NY   11722

8

9    BY:   STAN YANG, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          (Call to Court)

3                THE COURT:  Good afternoon.  Please be seated.

4                THE CLERK:  The matter is 59 through 64, Dowling

5    College.

6                MR. SOUTHARD:  Good afternoon, Your Honor, Sean

7    Southard, Klestadt Winters Jureller Southard & Stevens on

8    behalf of Dowling College, Debtor in Possession.

9                MR. MCCORD:  Good afternoon, Your Honor, Certilman

10   Balin, by Richard McCord, ACA Financial Guaranty Corp and on

11   the phone is Brian Pfeiffer also for ACA Financial Guaranty

12   Corp.

13               MR. YANG:  Good afternoon, Your Honor, Stan Yang, for

14   the United States Trustee.

15               MR. FRIEDMAN:  Good afternoon, Your Honor, Ronald

16   Friedman, SilvermanAcampora LLP.

17               MR. HAMMEL:  Good afternoon, Your Honor, Ian Hammel

18   and Adam Berkowitz on behalf of the UMB as trustee.

19               MR. KLEINBERG:  Howard Kleinberg, Meyer Suozzi for

20   the Dowling Board of Trustees.

21               MR. KNAPP:  James Knapp, Assistant United States

22   Attorney for the Department of Education, good afternoon, Your

23   Honor.

24               THE COURT:  Who's on the phone?

25               THE CLERK:  Please state your phone appearance.

1          MR. PFEIFFER:  Good afternoon, Your Honor, Brian

2    Pfeiffer from White & Case LLP for ACA Financial.

3          THE COURT:  Okay.

4          MR. SOUTHARD:  Good afternoon again, Your Honor, Sean

5    Southard for the record on behalf of Dowling.

6          Your Honor, we have a few different matters on this

7    afternoon's calendar.  I guess first off, there is a continued

8    status conference in the case that's on the calendar for this

9    afternoon in no particular order, Your Honor, I thought we

10   would give Your Honor an update on a few different matters.

11         With regard to the Oak Hill Campus sale, which we

12   were before Your Honor a very short while ago, we continue to

13   prepare for a closing with NSF Capital.  We met with NSF and

14   its representative after the last hearing before Your Honor to

15   discuss transition matters and appropriate closing activity.

16         We are still under the impression that we are

17   targeting on or about August 15th closing date, and we are

18   awaiting at this point, the newly formed designee entity that

19   we would insert into the proposed order and then submit to Your

20   Honor.

21         With regard to the Brookhaven Campus, the planning

22   discussions continue among the debtor's advisors, as well as

23   town representatives, and the parties continue to discuss the

24   marketing -- the appropriate timing for marketing and ultimate

25   disposition of those properties.

1          Hopefully we hope we'll be back in front of Your

2     Honor soon with a better proposed timeframe for that

3     disposition, but that is about all I have at the moment to

4     report.

5          Your Honor, in terms of the Warren Act's (ph)

6     litigation, which Your Honor last entered an order appointing a

7     mediator, that mediation, the first session of that mediation

8     is scheduled to take place tomorrow.

9          THE COURT:  Don Juron (ph) is the mediator in that?

10         MR. SOUTHARD:  Yes, Your Honor.  We will be mediating

11    at his office, and tomorrow the first day if we need it, we

12    will continue to the following day as the first two scheduled

13    mediation dates.

14         Your Honor, the claims review and analysis continues

15    on the debtor's side, as well as, you know, the creditor's

16    committee has done some of their own claims analysis.  And in

17    terms of upcoming motions or items that we would ask Your Honor

18    to consider next, Stonybrook University desires to continue

19    leasing its -- the dorm facility that's located at the

20    Brookhaven campus for the next academic year.

21         THE COURT:  It's currently leased to Stonybrook?

22         MR. SOUTHARD:  Yes, Your Honor.  As of the petition

23    date, Stonybrook, basically its students, resided at the dorm

24    at the Brookhaven campus under a prepetition lease.  Stonybrook

25    desires to continue that relationship, essentially on the same

1    terms for another academic year.

2            The debtor in consultation with various creditor

3    parties is prepared to amend and extend that prepetition lease,

4    to provide for that additional period of time.  And my

5    understanding is that the creditors are agreeable to that.  So

6    that's a matter that we would ask Your Honor to consider as

7    soon as we're able and we'll be looking for a hearing date from

8    chambers on that in the next couple of weeks ideally subject to

9    Your Honor's availability.

10            Your Honor, in addition, the debtor does expect to

11    retain a consultant to assist with the collection of accounts

12    receivable.  These -- the terms I think are going to be

13    contingency based and not significant in order or magnitude but

14    nonetheless we would require retention for that proposed agent.

15            And then finally, another retention, Your Honor, we

16    would propose to retain the Baker Tilly accounting firm to

17    assist with the accounting work related to the Title IV close-

18    out, the federal loan programs and the accounting that is

19    necessary to in essence provide the Department of Education

20    with final numbers associated with both the direct loan program

21    as well as the Perkins loan program, which is a motion that's

22    on before Your Honor today.

23            THE COURT:  Does Dowling itself -- has Dowling itself

24    loaned money or is all the money loaned through the federal

25    program?

1          MR. SOUTHARD:  The -- certainly in terms of direct

2    loans, which is the largest piece, those are direct loans by

3    the government to the students.  It's not Dowling.  Dowling

4    only serves in an administrative capacity to assist the

5    financial aid.

6          With regard to the Perkins loan which is on before

7    Your Honor today, there is somewhat of a nuance there because

8    the original program when it was set up back in I think the

9    late '60s if memory serves, provided that both the government

10   would seed a fund, and then the institution Dowling also seeded

11   a smaller portion, but nonetheless contributed to a fund to

12   then loan.

13         And the idea of the program is that it is a revolving

14   program and Dowling as agent collects on the loans as they come

15   due, and then that same pot of money is loaned out again to

16   future students.

17         So we can talk about that one now or we can talk

18   about it when we get to it on the agenda, but I can explain in

19   more detail to Your Honor exactly where that stands.

20         So that is all I have for the brief status update,

21   Your Honor, unless any other party or Your Honor had any

22   questions, I'd be happy to move on.

23         THE COURT:  Anybody else?

24      (No response)

25         THE COURT:  Okay.

1          MR. SOUTHARD:  Okay.  Thank you, Your Honor.

2          So the first item we have on the proposed agenda for

3    this afternoon is the debtor's second motion for an order

4    extending the exclusive periods, during which the debtor may

5    file.

6          A Chapter 11 plan and solicit acceptances, that is

7    Docket No. 344, Your Honor, and no objection were filed.  The

8    debtor's initial exclusive periods were set to expire on March

9    29th and May 30th respectively and Your Honor previously --

10         THE COURT:  Yeah, I'll extend it because I'm not

11   really certain whether you can have a contested plan and a not

12   for profit.  I've been trying to figure that out and I can't

13   figure out how that would happen.  So unless anybody objects,

14   to the extent to the exclusive period, I don't think anybody

15   can file anything anyway and you can't be a 7.  So the only

16   thing you've got left is your plan.

17         MR. SOUTHARD:  Thank you, Your Honor.  We -- there

18   are no objections, so I think the parties are prepared --

19         THE COURT:  All right.

20         MR. SOUTHARD:  -- to consent to that.  We will submit

21   that order.

22         Your Honor, the second item on the calendar again

23   unopposed this morning or this afternoon is the debtor's motion

24   for an order approving and authorizing procedures for the

25   turnover the debtor's federal Perkins loan portfolio.  That's

1    Docket No. 347.  Mr. Knapp is here on behalf of the Department

2    of Education this morning and -- or this afternoon.  And, Your

3    Honor, essentially back beginning in 1969 and as part of its

4    operations as an institution of higher education, the debtor

5    participated in and made loans to students in accordance with

6    the federal Perkins loan program.

7             That program is comprised of the following two

8    components, as it relates to the debtor.  And that is student

9    loans which as of May 31st of this year, the debtor held

10   approximately 717 loans totaling approximately 1.65 million in

11   aggregate outstanding balance.

12            And then secondly, a student loan funds, which as of

13   May 31st, 2017 totaled approximately 414,000.  And those funds

14   are held in two of the debtor's bank accounts, one of which

15   Your Honor had previously frozen as a restricted account in

16   relation to the first day motions that the debtor filed.

17            So two components, loan portfolio with outstanding

18   loans and then cash.

19            THE COURT:  Is there anything property of the estate?

20            MR. SOUTHARD:  So, Your Honor, we have determined

21   that with regard to the loan portfolio we don't think so.  And

22   -- as we outlined in the motion, the Department of Education

23   when under its rules and procedures under the Higher Education

24   Act, once it learned that Dowling was losing its accreditation

25   effective as of the end of August 2016, it sent a notice and

1    demand for the surrender of the Perkins loan portfolio because

2    per their procedures, the debtor lost its ability to continue

3    participating in the Perkins loan program.

4            And the procedures provide basically that Dowling

5    once it loses its ability to participate in Title IV is not a

6    proper party for continued collection of loans or administering

7    of the Perkins loan program.

8            THE COURT:  Well I --

9            MR. SOUTHARD:  So --

10           THE COURT:  Okay.  Hold it, hold it, hold it.  You

11   have a million dollars outstanding of loans let's say, pick any

12   number.  Every month a student pays, ex-student or student pays

13   that loan, right?

14           MR. SOUTHARD:  Yes, Your Honor.

15           THE COURT:  Who's the money paid to?

16           MR. SOUTHARD:  The money is paid to Dowling is my

17   understanding.

18           THE COURT:  Okay.  So every month Dowling gets in X

19   dollars and then loans it out again or what?

20           MR. SOUTHARD:  In theory, yes.  When the program

21   continues, but --

22           THE COURT:  So if the merry-go-round stops, why isn't

23   the money that's being repaid Dowling's money?

24           MR. SOUTHARD:  Because of the rules and procedures

25   under applicable federal law.

1          THE COURT:  Well, I mean, I understand the government

2    wants to take the money and loan it out to other students and

3    that may be a noble exercise, why doesn't that money go to the

4    creditors of Dowling?  If the money started with Dowling?

5          MR. SOUTHARD:  Well, again, only a portion of the

6    money started with Dowling in terms of --

7          THE COURT:  Where did the rest of the money come

8    from?

9          MR. SOUTHARD:  The federal government.

10          THE COURT:  Dowling borrowed it from the government

11    to loan to the kids?

12          MR. SOUTHARD:  No.  The way it starts back in 1969 is

13    there's a seeding of a pot of money that would be the loan, the

14    corpus of the loan, right, so that the government seeded the

15    largest portion of that fund.  And Dowling likewise contributed

16    --

17          THE COURT:  What portion did Dowling seed?

18          MR. SOUTHARD:  I -- we don't have precise numbers as

19    of today, Your Honor.  But I believe the last reported numbers

20    are something in the neighborhood of 70 to 30.

21          THE COURT:  70 Government?

22          MR. SOUTHARD:  Initially 85/15.

23          THE COURT:  Which way?

24          MR. SOUTHARD:  85 for Government.

25          THE COURT:  Okay.

1          MR. SOUTHARD:  15 Dowling.

2          THE COURT:  So why wouldn't a dollar today be divided

3     85/15?

4          MR. SOUTHARD:  Because the procedures provide that we

5     lose our interest in the portfolio and we're to assign it back

6     to the Government.

7          THE COURT:  Could be a lot of procedures that change

8     when somebody files bankruptcy.  I mean, do they have a secured

9     interest?

10          MR. SOUTHARD:  They do not, Your Honor.

11          THE COURT:  Well, basically what you're doing --

12          MR. SOUTHARD:  They assert it's a trust fund.  They

13     assert that those loans --

14          THE COURT:  So the money is kept in a trust account?

15     No.

16          MR. SOUTHARD:  Well, yes, there is a segregated

17     account which is --

18          THE COURT:  And Dowling is then the trustee?

19          MR. SOUTHARD:  I believe the procedures require and

20     state that they're held in a trust.  These are the arguments,

21     and let me take a step back, Your Honor.  We saw I think the

22     same issues that Your Honor is thinking about today relative to

23     property of the estate being a very broad concept, and we

24     discussed those views with the Department of Education, with

25     the U.S. Attorney's Office and they provided us with a

1  subsequent demand and cited to procedures which we then put in

2  our motion, which after consideration and investigation, we

3  felt with regard to the loan portfolio they have the better

4  argument than we did.

5          And with regard to --

6          THE COURT:  Well, you're not talking about relevant

7  to the size of this estate, potentially an insignificant amount

8  of money.  And I'll go along with what you guys want to do if

9  somebody can show me a legal principal that you're right, or

10 even if what the argument is.  It doesn't appear.  It appears

11 the Government wants the money, and I don't fault them.

12 Because they're going to loan it out hopefully to more kids.

13         But Dowling's creditors are saying, X dollars have

14 been used of this estate's money, kids are paying back that

15 money, why don't we get it.  Apparently nobody is saying that

16 because nobody's objecting to what you're wanting to do.

17         MR. SOUTHARD:  Well, no one was objecting, Your

18 Honor.

19         THE COURT:  Huh?  If people want to tell me they

20 waive that and the committee or others say we don't care, tell

21 me.

22         MR. SOUTHARD:  Your Honor, Mr. Friedman points out to

23 me the second part of the asset class that we're discussing

24 here at the outset.  We have the loans, the one portfolio, the

25 outstanding loans that you and I have been discussing, and then

1    in addition to that, there's the pot of money that exists,

2    which are in essence, collected proceeds from these loans.

3           There is a --

4           THE COURT:  You know, intellectually I wouldn't see

5    any difference.  If the Government believes that it's their

6    money, whether it's sitting in an account today or will be

7    collected tomorrow, the Government can speak for itself.  I

8    assume they would take the same position, unless they waive

9    that and say, if you've already collected it, it's yours.

10          MR. SOUTHARD:  With regard to the fund of money, what

11   our obligation under the rules again provide that we are to

12   account, Dowling is to account to the Government --

13          THE COURT:  Fine.

14          MR. SOUTHARD:  -- for those funds, and once that

15   accounting is complete, it is possible that a portion of those

16   funds will be determined to be Dowling's and we would keep that

17   portion at the end of the day.

18          That's with regard to the collected funds, not with

19   regard to the loan portfolio, which again is under the

20   procedures --

21          THE COURT:  But I'm missing the difference.  I

22   understand the two tranches, but I'm missing the intellectual

23   difference between monies to be collected and monies have been

24   collected.

25          MR. SOUTHARD:  My understanding is as follows.

1    Because we're in a liquidation and we will not go on forever as

2    an institution, it is --

3                THE COURT:  I got that, I understand.  Their position

4    is when the merry-go-round stopped, you can no longer loan

5    money, therefore, all those funds should go back to the

6    government to loan back to other people, I understand that.

7                All I'm asking is why is that true in a bankruptcy if

8    a portion of the funds to be collected truly belong to the

9    debtor.  The government can take its 85 cents and go in and do

10   as it chooses, and yes, if you were not in bankruptcy they may

11   have mechanisms to force those funds, but you are.

12               And somebody's got to establish, other than the fact

13   the government wants it why they have a right to it, or b) all

14   of you guys tell me, you give up, you don't care.

15               MR. SOUTHARD:  I can't speak --

16               THE COURT:  And they can have it.

17               MR. SOUTHARD:  I can't speak for the other creditors,

18   so.

19               THE COURT:  Yeah, I mean, either one of those

20   scenarios is okay with me, but I'm not going to sign an order

21   divesting the estate of monies that may belong to it because

22   somebody comes in and says I want it.  They may be right, they

23   may -- we can litigate it, they may be wrong, but it wouldn't

24   be the first time people have exercised using power to try to

25   get assets that don't necessarily belong to them.

1          MR. SOUTHARD:  Yes, Your Honor.

2          MR. KNAPP:  Your Honor, we're going to have to brief

3     this, we're going to have to ask for some time to brief it.

4          THE COURT:  Yeah, I agree with that.  But I just need

5     some basis other than we want it, and we want to rotate it back

6     into the system.  If Dowling has a property right to some of

7     this money and then its estate has that right.  You can then

8     say we don't want to fight the litigation, they can do any

9     number of things, but there has to be -- I have to make a

10    finding and say how you got it.  That's all.  I'm not saying

11    you don't get it --

12         MR. KNAPP:  I understand.

13         THE COURT:  -- I'm not saying it's not a noble

14    exercise for you to get it and loan it out again.  But I -- the

15    Court has its obligations under the law and there are many,

16    many creditors, not here today, that may have a right to some

17    of that money.  And the estate at this point is not so flush

18    that it should be throwing some money around.

19         MR. KNAPP:  Understood, Your Honor.

20         THE COURT:  All right.  It doesn't mean who's going

21    to win or lose.  And if you can do the rest of this without

22    divesting the money, if you want to, you know, give them all

23    rights other than the money and put the money -- collect the

24    money and leave it till we figure out what to do with it, I'm

25    not trying to delay anything here.

1           MR. SOUTHARD:  Understood, Your Honor.  The

2     procedures as you might imagine, their regulations are dense

3     and specific in terms of requirements, but one of the things

4     that we have most recently been discussing with the Department

5     of Education is a request to relax some of the standards of

6     audit and accounting that are applicable to the wind down of

7     these programs.  And that dovetails into the rather large claim

8     that the government filed.

9           THE COURT:  Let me ask, if the government found an

10    impropriety in something, do you go after individuals on these

11    loans?

12          MR. KNAPP:  Fraud in the --

13          THE COURT:  Something -- if there was some

14    impropriety in the handling of the funds by the school, would

15    the government have claims against anyone but the school, any

16    individuals, or anything?

17          MR. KNAPP:  That's a complex question I'm not

18    prepared to answer.

19          THE COURT:  All right.  Okay.

20          MR. SOUTHARD:  That said, Your Honor, I think the

21    suggestion of potentially working to liquidate this according

22    to the government's procedures and maybe leave the ultimate

23    reckoning of property of the estate entitlements to a later day

24    is a wise suggestion that we'll discuss further with the

25    Department of Education.

1          THE COURT:  They have their rules.

2          MR. SOUTHARD:  They do, many of them.

3          Thank you, Your Honor.  So I would propose to adjourn

4    that motion subject to conferring with the Department of

5    Education about additional pleadings perhaps to be filed before

6    Your Honor.

7          THE COURT:  Okay.

8          MR. SOUTHARD:  Your Honor, the next item on the

9    calendar this morning or this afternoon is the debtor's motion

10   to sell the furniture and equipment located at the Oakdale

11   Campus and the supplement to that motion which we filed late

12   last week.

13         Your Honor, when the motion was originally filed

14   Princeton Education Center was the contemplated purchaser of

15   the Oakdale Campus.  And the debtor had entered into a purchase

16   agreement with Princeton for the sale of the furniture and

17   equipment that's located at the Oakdale Campus for $90,000.

18         Your Honor will also recall that at one point the

19   debtor had filed a motion seeking to retain a liquidation agent

20   associated with the furniture and equipment at the same campus,

21   and that motion has been subsequently withdrawn due to this

22   pending proposed sale.

23         That said, between the time we filed the motion

24   originally and now, we have a new proposed purchaser or a back-

25   up bidder, NCF Capital.

1        THE COURT:  Are they going to do it under the same

2  terms?

3        MR. SOUTHARD:  They are doing it on the same terms,

4  Your Honor.  And that was the point of our supplement to that

5  motion filed last week, was essentially to lay that out.

6        THE COURT:  So withdrawing the Tiger motion --

7        MR. SOUTHARD:  Yes, Your Honor, that's been

8  effectively withdrawn.

9        THE COURT:  -- and you want me to approve the same

10  terms to NFC whereby they only have to close if they close on

11  the proper.

12        MR. SOUTHARD:  Yes, Your Honor.

13        THE COURT:  There's no objections to that?

14        MR. SOUTHARD:  There are no objections.

15        THE COURT:  All right.  I'll grant a) the motion to

16  approve the sale to NFC under those conditions, and you're just

17  withdrawing the Tiger motion.

18        MR. SOUTHARD:  Yes, Your Honor.

19        THE COURT:  So we'll withdraw that motion and so

20  order a record on that.

21        MR. SOUTHARD:  Thank you, Your Honor.

22        Your Honor, that brings us I believe to the last

23  matter on the calendar this afternoon, and that is the debtor's

24  continued motion to approve its use of cash collateral and DIP

25  financing.  And Your Honor will recall many discussions on

1  these --

2          THE COURT:  This reminds me of a Monty Python movie.

3  I cut both legs off and one warm, and you guys keep coming back

4  and saying get back you.

5          MR. SOUTHARD:  Merely a flesh wound, Your Honor.

6          So we are back here, Your Honor, in relation to a

7  proposed final order that was filed and noticed on the docket a

8  couple of weeks back.  And, Your Honor, among other things, the

9  final order resolves the committee's objection to DIP financing

10  and use of cash collateral through terms that are set forth on

11  a term sheet that's attached to that proposed final order.

12          THE COURT:  Final order is your version of a 9019

13  basically.  That's what you're -- that's what this is all

14  about.  The committee says yes to everything that's in the

15  first part, which is the DIP loan.  The DIP lender says yes to

16  the committee and therefore there are no objections.  Is that -

17  -

18          MR. SOUTHARD:  Your Honor, that's a pretty decent

19  summary.

20          THE COURT:  Only took me 40 years to learn all that

21  stuff.  Look, I don't want people spending enormous amounts of

22  money on -- administratively on this case.  What you've put is

23  everybody's waiving everything against everybody, articulate

24  sentence.  In return, the committee has negotiated the benefit

25  of unsecured creditors pay-outs which probably violate Jevick

1    (ph) but they negotiated.

2           This is what Jevick said don't do.  We all know that,

3    or at least I hope you do.  Now, it also depends is there are

4    classes in the waterfall who would be getting less or not paid

5    if the committee steps in the spot it wants to, which is after

6    all certain costs and certain amounts are paid back to the

7    secured creditors in each tranche, and then money goes to the

8    unsecureds.

9           Are there any priority -- depending on how the Warren

10   Act class action comes out, will they be priority claims?

11          MR. SOUTHARD:  So, Your Honor, there are priority

12   claims that will be allowed in this case.

13          THE COURT:  And they'll get paid ahead of the

14   unsecureds in each tranche?

15          MR. SOUTHARD:  Yes, Your Honor.  This is not a --

16   this is not violative of Jevick in the same manner that I think

17   the Jevick case dealt with.  So we're not skipping a priority

18   here as I understand the proposed framework, rather --

19          THE COURT:  The term sheet has -- I didn't see

20   priority claims ahead of the unsecureds in its -- in their

21   initial payments in each class.

22          MR. SOUTHARD:  So, Your Honor, the term sheet, such

23   as it is, is expected to ultimately be in the form of a

24   liquidating plan voted on by creditors and I think with regard

25   --

1              THE COURT:  If I sign an order today is that term

2      sheet now binding on creditors?

3              MR. SOUTHARD:  I -- from the debtor's perspective I

4      believe that creditors still have the opportunity to vote on

5      the plan because the term sheet --

6              THE COURT:  Well, they have to have an opportunity to

7      vote, but the question is --

8              MR. SOUTHARD:  I think the --

9              THE COURT:  -- am I collaterally estopped?  If you

10     have an order approving this -- the DIP financing with

11     integrated in it is that term sheet which could be as a sub

12     rosa plan, but leaving that aside, is -- what's the point of

13     anybody voting?  What are they voting on?

14             MR. SOUTHARD:  Well, they're voting on whether they

15     want to accept the plan that presumably will contain these

16     terms.

17             THE COURT:  But if they --

18             MR. SOUTHARD:  But it's possible creditors could

19     reject the --

20             THE COURT:  Yeah, but by that time, the estate would

21     have given up all its right to go after anybody because the

22     term sheet -- strike that.  The order on the -- the final order

23     basically everybody has released everybody from everything,

24     which is probably the cost from the committee to get its deal

25     set.  And it really is, should be contained in a plan.

1        This is what you filed as a liquidating claim or a

2    plan, because you even put the provision in that the committee

3    will have jurisdiction to bring the adversaries in other cases

4    if there are any, which it's going to have to do outside of

5    this because I think under the circuit decision, that would not

6    give them comfort to have the standing to bring those cases

7    unless it's a separate order, a specific order by the Court.

8        So we're going to have that anyway.  So that --

9    that's my concern.  I'm fully comfortable that you guys are

10   capable of figuring out who you want to release and who you

11   have claims against and who you don't.  That was important to

12   me when we started.  You guys had time, that's what you think,

13   that's what you think.

14       But my fear is signing this order I'm not as sanguine

15   as you are that this doesn't violate the Supreme Court decision

16   in Jevick.

17       MR. SOUTHARD:  Well, Your Honor, I understand that

18   view.  I think what -- as I understand the constructs

19   negotiated admittedly between the creditor parties, the --

20   there is not an intention to jump priority and do in effect a

21   carve-out.

22       THE COURT:  No, there is, that's the whole plan.

23       MR. SOUTHARD:  Well it's --

24       THE COURT:  Is taking from the secured creditor,

25   which is permissible if you're not interfering with anybody

1    else.

2            MR. SOUTHARD:  Insofar as there is an intention to

3    pay priority claims in full.  And the parties -- part of that

4    stipulation is that in essence, the secured and the unsecured

5    share the responsibility for priority claims 50/50.

6            THE COURT:  Well, if you made clear, that's an

7    interesting way to look at it, if you made clear that whomever

8    secured plus unsecured, whomever wants to, is obligated before

9    receiving any of its money, well, it wouldn't go unsecured, to

10   pay in full all allowed junior claim -- senior claims.  You've

11   got some definitional work to do there.  Then I think you're

12   probably okay.  Because I think that's -- the Court went beyond

13   saying that you can't encumber, you can't skip people period.

14   And it's a lot broader than that, but.

15           So I think if the term sheet were clearer and

16   provided that if there are, I'm not saying there are, classes

17   or a class of folks other than the secured, because the secured

18   is willing to subordinate its position, they will be paid in

19   full or in a manner acceptable to them, then it's probably

20   okay.  I mean, I haven't read what you write, but then that

21   would probably be okay to me.

22           MR. SOUTHARD:  Your Honor, I think that the intention

23   was as you suggest, in that some for the avoidance of doubt

24   kind of language could certainly be added, but I don't want to

25   take away the opportunity for the creditors to state their

1    views as well.

2            THE COURT:  Because that would cover -- then the

3    administrative creditors would have to also agree.

4            MR. FRIEDMAN:  I'm sorry, Your Honor, so that we're

5    clear on the record, the anticipation, the intention of both

6    the order and the term sheet with all the administrative

7    (indiscernible) and all the priority, that those claims would

8    be paid --

9            THE COURT:  So it's solely a bilateral deal between

10   the secured creditors and the committee.  Make that clear, I'm

11   okay with that.

12           MR. FRIEDMAN:  We'll work on some language and

13   clarify it in the (indiscernible) and if it's acceptable, we

14   can file (indiscernible).

15           THE COURT:  Nobody has any indemnification rights in

16   this case, do they?

17           MR. SOUTHARD:  I'm trying to wrap my brain to think,

18   Your Honor, if there's any party that might claim an

19   indemnification, but I guess --

20           THE COURT:  That's why I asked.

21           MR. SOUTHARD:  -- theoretically --

22           MR. KLEINBERG:  The Board does.

23           THE COURT:  Excuse me?

24           MR. KLEINBERG:  The Board members do have rights of

25   indemnification under the prepetition bylaws.

1              THE COURT:  Have they filed claims?

2              MR. KLEINBERG:  They have.

3              THE COURT:  Huh?

4              MR. KLEINBERG:  They have, yes.

5              THE COURT:  Nobody knows how much that is.

6              MR. KLEINBERG:  Well, they filed their claims --

7      there's no claims -- causes of action certainly, nothing's been

8      ever asserted against the board members, so the claims on file,

9      I filed them as unliquidated contingent claims in order to meet

10     the bar date, that's all.

11             THE COURT:  And they would be what class to you?

12             MR. KLEINBERG:  They would be general unsecured

13     creditors.

14             THE COURT:  So this would not impact your client

15     negatively, clients?

16             MR. KLEINBERG:  No, as to the extent that the term

17     sheet provides a potential pot of assets, pot of cash for the

18     unsecured creditors it's favorable.

19             THE COURT:  No, there's no 506, there's nothing

20     hidden any place so that you're willing to agree, because

21     they're asking you to do this today, that if your clients do

22     have indemnification rights and exercise them as claims, they

23     would merely be part of the general unsecured creditor body.

24             MR. KLEINBERG:  That's correct.  There's -- the board

25     is not a signatory to the term sheet, we were not involved in

1  negotiating it, I don't believe it has any direct or even

2  indirect effect on our rights other than creating a pot of

3  assets.

4            THE COURT:  All right.  I just want to make sure of

5  that.  Okay.  There are things that bother me.  Not enough

6  because they can't get solved, so you learn to live with what

7  you have.

8            You guys work out this language and I'll grant the

9  motion.

10           MR. SOUTHARD:  Thank you, Your Honor.

11           MR. KLEINBERG:  Thank you, Your Honor.

12           THE COURT:  That's because everybody has agreed and

13  the class action folks, the board members, or the board is

14  represented by Mr. Kleinberg, have all voiced to the Court that

15  this settlement, if I call it a settlement, doesn't create any

16  impediments to them.

17           So your release of the prepetition secured lenders,

18  your agreements that the collateral and their liens are in full

19  force and effect, the case has been around long enough, you

20  guys -- that's your decision.  I'm not going to make you

21  litigate something.  But a plan is ultimately going to have to

22  be filed, especially if this is a not for profit.

23           MR. SOUTHARD:  Yes, Your Honor.

24           THE COURT:  You have to work the case and if anything

25  in that plan, if I'm required to alter in any way the terms of

1   this deal in that plan, we're going to have to relook at this.

2   So I'll give you comfort and I'll sign an order, but I haven't

3   seen a plan yet and this is as close to a sub rosa plan as you

4   can get.  But nobody's objecting to that either.  And when I

5   have good lawyers and a lot of them, I let them make decisions,

6   but you've got to learn to live with them too.

7           So we'll grant the motion, redo the form of the order

8   and the term sheet I assume, submit it and we'll get it signed.

9           MR. SOUTHARD:  Thank you, Your Honor.  Just in terms

10  of mechanics, we have authority to use cash collateral and

11  borrow funds through the end of this week.

12          THE COURT:  There's also something in this where I'm

13  lifting the stay to go after some monies being held.  I read

14  that and I kind of wonder what that means.  Is there any -- is

15  there a pot of money now that somebody wants meaning the

16  secured creditors and I'm now allowing them to take it?

17          MR. SOUTHARD:  No, Your Honor, I think you're

18  referring to paragraph 17 of the order that is entitled held

19  funds.

20          THE COURT:  Okay.

21          MR. SOUTHARD:  The automatic stay of Section 362 of

22  the Bankruptcy Code is hereby vacated and modified insofar as

23  necessary to --

24          THE COURT:  What does that mean?

25          MR. SOUTHARD:  Your Honor, I believe this has to do

1    with the creditors ability to allocate and pay from collected

2    funds, make new loans from collected funds.  I believe this was

3    UMB's language and I forget off the top of my head precisely

4    what it was dealing with.

5              THE COURT:  Is this one where you're going to pay

6    yourself interest out of the cash collateral and then loan it

7    back to the debtor, which you all told me you weren't going to

8    be doing?

9              MR. HAMMEL:  Good afternoon, Your Honor, Ian Hammel

10   on behalf of UMB.  At the beginning of the case, Your Honor,

11   the indentured trustee was holding some reserve funds that had

12   been established back during the original bond issuances, and

13   that was -- those were funds that were held in trust and this

14   language was simply intended to permit the indentured trustee

15   to --

16             THE COURT:  These are funds that have been held in

17   trust?

18             MR. HAMMEL:  Yes, Your Honor.

19             THE COURT:  So they're not property of the estate?

20             MR. HAMMEL:  That's been our position, Your Honor.

21             THE COURT:  Okay.

22             MR. HAMMEL:  Thank you, Your Honor.

23             THE COURT:  But we're not -- no money is being loaned

24   as part of this DIP for the purpose of paying your interest.

25   In other words, you're not charging the debtor to borrow money

1    to pay yourselves?

2            MR. HAMMEL:  Your Honor, with respect to the funds

3    coming from UMB, no, we are not charging interest.  I defer to

4    Mr. McCord.

5            THE COURT:  Because everybody told us they weren't

6    going to do that.  All right.  Okay.

7            MR. SOUTHARD:  So, Your Honor, I was going to just

8    make the point that we had until -- we have authority through

9    the end of this week.  We would be submitting a -- agreeing on

10   a budget among the parties in interest here, and the mechanism

11   under the proposed final DIP permits the debtor to use cash

12   collateral going forward under the terms of an approved budget,

13   and that amendments to that approved budget can be made without

14   further order of the Court, but requiring the consent of the

15   DIP lenders, the committee and in consultation with the U.S.

16   Trustee.

17           So to that end, we would be agreeing on a budget this

18   week and then ultimately living under that budget.

19           THE COURT:  The order that you presented, that you

20   all agree on once I sign it, the secured creditors can do

21   basically an awful lot to you all, so if that's what you want.

22   I mean, there's no active business anymore.

23           MR. SOUTHARD:  There is not.

24           THE COURT:  The debtor is operating for the purpose

25   of liquidating the secured creditor's assets.

1        MR. SOUTHARD:  Correct.

2        THE COURT:  This committee may or may not have causes

3    of action against folks.  Those are Section 5 claims, that

4    don't belong to the secured creditor, I don't think, or do

5    they?  No, they don't.

6        So the secured creditor is looking to get rid of the

7    hard assets, get its cash and go away.  And then if there are

8    causes of action, we'll be left with a liquidating trust or

9    whatever we call it to litigate and you have to file a plan.

10   The term sheet says you have to be out of here by December 31.

11       MR. SOUTHARD:  It does.

12       THE COURT:  I don't know what happens if you're not.

13   I don't know what anybody's going to do.

14       MR. SOUTHARD:  I think --

15       THE COURT:  But clearly Brookhaven is not going to be

16   sold by December 31.

17       MR. SOUTHARD:  I think there's a technical default,

18   Your Honor, and then we'll have a discussion would be the net

19   effect but yes.

20       THE COURT:  But you know going in, you're never going

21   to cut a deal to rezone or whatever this is by 12/31.

22       MR. SOUTHARD:  I wouldn't say that it's theoretically

23   impossible, Your Honor, but I do --

24       THE COURT:  You haven't sold Oakdale yet and it's

25   been sitting there.

1          MR. SOUTHARD:  We do have that as a track record.

2          THE COURT:  I mean it's not easy, it's -- who knows

3    what the world is going to do.  All right, guys, that's where

4    we are.

5          MR. SOUTHARD:  Thank you very much for your time,

6    Your Honor.

7          THE COURT:  Thank you.

8          UNIDENTIFIED:  Your Honor, is there an adjournment?

9          MR. SOUTHARD:  The Court hasn't given us an adjourn

10   date, but we can talk to chambers if Your Honor desires.

11         THE COURT:  For what?

12         MR. SOUTHARD:  For the Perkins loan motion as well as

13   the Stonybrook --

14         THE COURT:  Talk to the government, see if you guys

15   can figure out some easier way to resolve this.  If people are

16   capable of doing that.  I mean, structurally capable of doing

17   that.  If not, we'll give you some schedule to brief it on.

18   Not an evidentiary hearing, it's just going to be a brief.

19         MR. SOUTHARD:  Thank you, Your Honor.

20         MR. FRIEDMAN:  Your Honor, for the Stonybrook lease

21   extension obligation motion (indiscernible).

22         THE COURT:  What's the next date we have you guys?

23         MR. SOUTHARD:  We don't have one presently, Your

24   Honor.

25         THE COURT:  Starting -- I'm in -- we don't have

1  anything until the end of August from the last week in July.

2         MR. FREIDMAN:  So we have to try and get in before

3  the last week of July.

4         THE COURT:  Yeah, I don't think it's going to be

5  rocket science.  If you can tee it up, I'll sign it.

6         MR. SOUTHARD:  Yeah, we'll have something available

7  to be filed tomorrow, Your Honor, so.

8         THE COURT:  This is just an extension of the existing

9  lease.

10         MR. SOUTHARD:  Correct, Your Honor.

11         THE COURT:  Do they want a court order?

12         MR. SOUTHARD:  It's styled as an amendment and

13  extension of the prepetition lease.

14         THE COURT:  Okay.  I'm not -- the ordinary course

15  just extend the lease?  Get me an order, I'll sign it, we don't

16  have to have a full blown exercise about this.

17         MR. SOUTHARD:  Thank you, Your Honor.  Should we look

18  for a hearing date, or we should do it on notice of

19  presentment?

20         THE COURT:  Do that one on notice of presentment even

21  though I don't do that normally.

22         UNIDENTIFIED:  Thank you, Your Honor.

23         MR. SOUTHARD:  Appreciate it.

24         THE COURT:  But there's no point in bringing you guys

25  back here for that.

1          MR. SOUTHARD:  Thank you very much.

2          THE COURT:  And I want the kids at Stonybrook to know

3    they have a place to live, so let's do it as quickly as we can.

4          MR. SOUTHARD:  Very well, thank you very much, Your

5    Honor.

6          THE COURT:  All right.  Thank you all.  Thanks for

7    the work.

8        (Proceedings concluded at 2:27 p.m.)

9                          *  *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        I N D E X

2

3                      R U L I N G S

4    IDENTIFICATION                                    PAGE

5    (31)  Final ADJ Order to Schedule Emergency        31

6    Hearings on (9) Motion for Authority to Obtain

7    Credit

8

9    (345) Motion to Sell Property of the Estate        23

10   Free and Clear of Liens

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            CERTIFICATE

2    I, Sheila G. Orms, certify that the foregoing is a true and

3    accurate transcript from the official electronic sound

4    recording.

5    Sheila Orms
     Digitally signed by Sheila Orms
     DN: cn=Sheila Orms, o, ou,
     email=digital1@veritext.com, c=US
6    _____
     Date: 2017.11.02 12:10:36 -04'00'

7    SHEILA ORMS, APPROVED TRANSCRIBER

8

9    DATED:   October 29, 2017

10

11

12

13

14

15

     Veritext Legal Solutions

16

     330 Old Country Road

17

     Suite 300

18

     Mineola, NY 11501

19

20

21

22

23

24

25

| & |
| --- |

**&**   5:1,11,18 7:7
  8:2

| 0 |
| --- |

**02111**   4:13

| 1 |
| --- |

**1.65**   13:10
**10**   1:16
**100**   4:20
**10036**   5:22
**105**   2:8 3:3
**11**   2:7,9,10,15,23
  3:2 12:6
**11021**   4:6
**111**   4:5
**11501**   40:18
**11530**   5:7
**11554**   5:14
**11722**   6:7
**11753**   4:22
**12/31**   35:21
**15**   16:1
**15th**   8:17
**17**   32:18
**17th**   5:21
**1969**   13:3 15:12
**1:40**   1:17

| 2 |
| --- |

**2016**   13:25
**2017**   1:16 13:13
  40:9
**23**   39:9
**29**   40:9
**290**   1:13
**29th**   12:9
**2:27**   38:8

| 3 |
| --- |

**30**   15:20
**300**   4:21 5:5 40:17
**30th**   12:9

**31**   2:4 35:10,16
  39:5,5
**317**   2:14
**31st**   13:9,13
**330**   40:16
**344**   2:22 12:7
**345**   3:1 39:9
**347**   3:9 13:1
**361**   2:8,11,20
**362**   2:8,11 32:21
**363**   2:8,9,11,15
  3:2,3
**364**   2:6,8,11

| 4 |
| --- |

**40**   24:20
**4001**   2:6
**414,000**   13:13
**41st**   5:20

| 5 |
| --- |

**5**   35:3
**50/50**   28:5
**506**   30:19
**560**   6:6
**59**   7:4

| 6 |
| --- |

**60s**   11:9
**64**   7:4

| 7 |
| --- |

**7**   12:15
**70**   15:20,21
**717**   13:10
**74**   2:1

| 8 |
| --- |

**8-16-75545**   1:3
**85**   15:24 19:9
**85/15**   15:22 16:3

| 9 |
| --- |

**9**   2:5 39:6
**90**   5:13
**90,000**   22:17

**9019**   24:12
**9194**   5:6
**990**   5:4

| a |
| --- |

**ability**   14:2,5 33:1
**able**   10:7
**aca**   5:12 7:10,11
  8:2
**academic**   9:20
  10:1
**acampora**   4:17
**accept**   26:15
**acceptable**   28:19
  29:13
**acceptances**   12:6
**account**   13:15
  16:14,17 18:6,12
  18:12
**accounting**   10:16
  10:17,18 18:15
  21:6
**accounts**   10:11
  13:14
**accreditation**
  13:24
**accurate**   40:3
**act**   13:24 25:10
**act's**   9:5
**action**   25:10 30:7
  31:13 35:3,8
**active**   34:22
**activity**   8:15
**adam**   4:8 7:18
**added**   28:24
**addition**   10:10
  18:1
**additional**   10:4
  22:5
**adequate**   2:9
**adjourn**   22:3 36:9
**adjournment**   36:8
**adler**   5:11

**administering**
  14:6
**administrative**
  11:4 29:3,6
**administratively**
  24:22
**admittedly**   27:19
**adversaries**   27:3
**advisors**   8:22
**afternoon**   7:3,6,9
  7:13,15,17,22 8:1
  8:4,9 12:3,23 13:2
  22:9 23:23 33:9
**afternoon's**   8:7
**agenda**   11:18 12:2
**agent**   2:19 10:14
  11:14 22:19
**aggregate**   13:11
**ago**   8:12
**agree**   20:4 29:3
  30:20 34:20
**agreeable**   10:5
**agreed**   31:12
**agreeing**   34:9,17
**agreement**   22:16
**agreements**   31:18
**ahead**   25:13,20
**aid**   11:5
**alfonse**   6:4
**allocate**   33:1
**allowed**   25:12
  28:10
**allowing**   32:16
**alter**   31:25
**amend**   10:3
**amendment**   37:12
**amendments**
  34:13
**amount**   17:7
**amounts**   24:21
  25:6
**analysis**   9:14,16

**answer** 21:18
**anticipation** 29:5
**anybody** 11:23
  12:13,14 26:13,21
  27:25
**anybody's** 35:13
**anymore** 34:22
**anyway** 12:15
  27:8
**apparently** 17:15
**appear** 17:10
**appearance** 7:25
**appears** 17:10
**applicable** 14:25
  21:6
**appointing** 9:6
**appreciate** 37:23
**appropriate** 8:15
  8:24
**approve** 3:9 23:9
  23:16,24
**approved** 34:12
  34:13 40:7
**approving** 2:15
  12:24 26:10
**approximately**
  13:10,10,13
**argument** 17:4,10
**arguments** 16:20
**articulate** 24:23
**aside** 26:12
**asked** 29:20
**asking** 19:7 30:21
**assert** 16:12,13
**asserted** 30:8
**asset** 17:23
**assets** 2:16 19:25
  30:17 31:3 34:25
  35:7
**assign** 16:5
**assist** 10:11,17
  11:4

**assistant** 7:21
**associated** 10:20
  22:20
**assume** 18:8 32:8
**attached** 24:11
**attorney** 7:22
**attorney's** 16:25
**attorneys** 4:4,11
  4:18 5:2,12,19
**audit** 21:6
**august** 8:17 13:25
  37:1
**authority** 2:5
  32:10 34:8 39:6
**authorize** 3:9
**authorizing** 2:17
  12:24
**automatic** 32:21
**availability** 10:9
**available** 37:6
**avenue** 5:4,13
**avoidance** 28:23
**awaiting** 8:18
**awful** 34:21

**b**

**b** 1:19 2:6,8 5:9
  19:13
**back** 9:1 11:8
  13:3 15:12 16:5
  16:21 17:14 19:5
  19:6 20:5 22:24
  24:3,4,6,8 25:6
  33:7,12 37:25
**baker** 10:16
**balance** 13:11
**balin** 5:11 7:10
**bank** 4:4,11 13:14
**bankruptcy** 1:1
  1:11,21 3:3 16:8
  19:7,10 32:22
**bar** 30:10
**based** 10:13

**basically** 9:23
  14:4 16:11 24:13
  26:23 34:21
**basis** 20:5
**beginning** 13:3
  33:10
**behalf** 2:12,19,24
  3:6,11 7:8,18 8:5
  13:1 33:10
**believe** 15:19
  16:19 23:22 26:4
  31:1 32:25 33:2
**believes** 18:5
**belong** 19:8,21,25
  35:4
**benefit** 24:24
**berkowitz** 4:8
  7:18
**better** 9:2 17:3
**beyond** 28:12
**bidder** 22:25
**bilateral** 29:9
**binding** 26:2
**blown** 37:16
**board** 5:3 7:20
  29:22,24 30:8,24
  31:13,13
**body** 30:23
**bond** 33:12
**borrow** 32:11
  33:25
**borrowed** 15:10
**boston** 4:13
**bother** 31:5
**box** 5:6
**brain** 29:17
**brian** 7:11 8:1
**brief** 11:20 20:2,3
  36:17,18
**bring** 27:3,6
**bringing** 37:24
**brings** 23:22

**broad** 16:23
**broader** 28:14
**brookhaven** 8:21
  9:20,24 35:15
**budget** 34:10,12
  34:13,17,18
**business** 34:22
**bylaws** 29:25

**c**

**c** 2:6 4:1 5:24 7:1
**calendar** 8:7,8
  12:22 22:9 23:23
**call** 7:2 31:15 35:9
**campus** 3:4 8:11
  8:21 9:20,24
  22:11,15,17,20
**capable** 27:10
  36:16,16
**capacity** 11:4
**capital** 2:18 8:13
  22:25
**care** 17:20 19:14
**carve** 27:21
**case** 1:3 2:1 8:2,8
  24:22 25:12,17
  29:16 31:19,24
  33:10
**cases** 27:3,6
**cash** 2:8 13:18
  23:24 24:10 30:17
  32:10 33:6 34:11
  35:7
**catherine** 2:19,24
  3:6,11
**causes** 30:7 35:2,8
**center** 3:5 4:12
  22:14
**central** 1:14 6:3,7
**cents** 19:9
**certain** 2:16 5:2
  12:11 25:6,6
**certainly** 11:1
  28:24 30:7

**certificate** 40:1
**certify** 40:2
**certilman** 5:11
 7:9
**chambers** 10:8
 36:10
**change** 16:7
**chapter** 2:23 12:6
**charging** 33:25
 34:3
**charles** 2:11
**chooses** 19:10
**circuit** 27:5
**cited** 17:1
**city** 5:7
**claim** 21:7 27:1
 28:10 29:18
**claims** 2:17 3:6
 9:14,16 21:15
 25:10,12,20 27:11
 28:3,5,10 29:7
 30:1,6,7,8,9,22
 35:3
**clarify** 29:13
**class** 17:23 25:10
 25:21 28:17 30:11
 31:13
**classes** 25:4 28:16
**clear** 2:15,16 3:2
 3:5 28:6,7 29:5,10
 39:10
**clearer** 28:15
**clearly** 35:15
**clerk** 7:4,25
**client** 30:14
**clients** 30:15,21
**close** 10:17 23:10
 23:10 32:3
**closing** 8:13,15,17
**code** 3:3 32:22
**collateral** 2:9
 23:24 24:10 31:18
 32:10 33:6 34:12

**collaterally** 26:9
**collect** 20:23
**collected** 18:2,7,9
 18:18,23,24 19:8
 33:1,2
**collection** 10:11
 14:6
**collects** 11:14
**college** 1:7 2:12
 2:19,24 3:7,12 5:2
 5:19 7:5,8
**come** 11:14 15:7
**comes** 19:22
 25:10
**comfort** 27:6 32:2
**comfortable** 27:9
**coming** 24:3 34:3
**committee** 4:18
 9:16 17:20 24:14
 24:16,24 25:5
 26:24 27:2 29:10
 34:15 35:2
**committee's** 24:9
**compensation**
 2:18
**complete** 18:15
**complex** 21:17
**components** 13:8
 13:17
**comprised** 13:7
**concept** 16:23
**concern** 27:9
**concluded** 38:8
**conditions** 23:16
**conference** 2:2
 8:8
**conferring** 22:4
**consent** 12:20
 34:14
**consider** 9:18
 10:6
**consideration**
 17:2

**constructs** 27:18
**consultant** 10:11
**consultation** 10:2
 34:15
**contain** 26:15
**contained** 26:25
**contemplated**
 22:14
**contested** 12:11
**contingency**
 10:13
**contingent** 30:9
**continue** 8:12,22
 8:23 9:12,18,25
 14:2
**continued** 8:7
 14:6 23:24
**continues** 9:14
 14:21
**contributed** 11:11
 15:15
**corneau** 2:11
**corp** 5:12 7:10,12
**corpus** 15:14
**correct** 30:24 35:1
 37:10
**cost** 26:24
**costs** 25:6
**country** 40:16
**couple** 10:8 24:8
**course** 37:14
**court** 1:1,11 7:2,3
 7:24 8:3 9:9,21
 10:23 11:23,25
 12:10,19 13:19
 14:8,10,15,18,22
 15:1,7,10,17,21
 15:23,25 16:2,7
 16:11,14,18 17:6
 17:19 18:4,13,21
 19:3,16,19 20:4
 20:13,15,20 21:9
 21:13,19 22:1,7

 23:1,6,9,13,15,19
 24:2,12,20 25:13
 25:19 26:1,6,9,17
 26:20 27:7,15,22
 27:24 28:6,12
 29:2,9,15,20,23
 30:1,3,5,11,14,19
 31:4,12,14,24
 32:12,20,24 33:5
 33:16,19,21,23
 34:5,14,19,24
 35:2,12,15,20,24
 36:2,7,9,11,14,22
 36:25 37:4,8,11
 37:11,14,20,24
 38:2,6
**courthouse** 1:12
 6:5
**cover** 29:2
**create** 31:15
**creating** 31:2
**credit** 2:5 39:7
**creditor** 10:2
 27:19,24 30:23
 35:4,6
**creditor's** 9:15
 34:25
**creditors** 2:10
 4:19 10:5 15:4
 17:13 19:17 20:16
 24:25 25:7,24
 26:2,4,18 28:25
 29:3,10 30:13,18
 32:16 33:1 34:20
**currently** 9:21
**cut** 24:3 35:21

**d**

**d** 2:6 7:1 39:1
**d'amoato** 6:4
**date** 8:17 9:23
 10:7 30:10 36:10
 36:22 37:18

**dated**  40:9
**dates**  9:13
**day**  9:11,12 13:16
  18:17 21:23
**deal**  26:24 29:9
  32:1 35:21
**dealing**  33:4
**dealt**  25:17
**debtor**  1:9 5:19
  7:8 10:2,10 12:4
  13:4,8,9,16 14:2
  19:9 22:15,19
  33:7,25 34:11,24
**debtor's**  3:10 8:22
  9:15 12:3,8,23,25
  13:14 22:9 23:23
  26:3
**december**  35:10
  35:16
**decent**  24:18
**decision**  27:5,15
  31:20
**decisions**  32:5
**default**  35:17
**defer**  34:3
**definitional**  28:11
**delay**  20:25
**demand**  14:1 17:1
**dense**  21:2
**department**  6:1
  7:22 10:19 13:1
  13:22 16:24 21:4
  21:25 22:4
**depending**  25:9
**depends**  25:3
**designee**  8:18
**desires**  9:18,25
  36:10
**detail**  11:19
**determined**  13:20
  18:16
**difference**  18:5,21
  18:23

**different**  8:6,10
**dip**  23:24 24:9,15
  24:15 26:10 33:24
  34:11,15
**direct**  10:20 11:1
  11:2 31:1
**disclosure**  2:23
**discuss**  8:15,23
  21:24
**discussed**  16:24
**discussing**  17:23
  17:25 21:4
**discussion**  35:18
**discussions**  8:22
  23:25
**disposition**  8:25
  9:3
**district**  1:2
**divesting**  19:21
  20:22
**divided**  16:2
**docket**  2:20 12:7
  13:1 24:7
**doing**  16:11 23:3
  33:8 36:16,16
**dollar**  16:2
**dollars**  14:11,19
  17:13
**don**  9:9
**dorm**  9:19,23
**doubt**  28:23
**dovetails**  21:7
**dowling**  1:7 2:12
  2:19,24 3:7,11 5:2
  5:19 7:4,8,20 8:5
  10:23,23 11:3,3
  11:10,14 13:24
  14:4,16,18 15:4,4
  15:6,10,15,17
  16:1,18 18:12
  20:6
**dowling's**  14:23
  17:13 18:16

**due**  11:15 22:21

**e**

**e**  1:19,19,20 4:1,1
  7:1,1 39:1
**easier**  36:15
**east**  5:14
**eastern**  1:2
**easy**  36:2
**education**  3:5
  7:22 10:19 13:2,4
  13:22,23 16:24
  21:5,25 22:5,14
**effect**  27:20 31:2
  31:19 35:19
**effective**  13:25
**effectively**  23:8
**either**  19:19 32:4
**electronic**  40:3
**emergency**  2:4
  39:5
**employment**  2:17
**encumber**  28:13
**encumbrances**
  2:17 3:6
**english**  5:1
**enormous**  24:21
**entered**  9:6 22:15
**entitled**  32:18
**entitlements**
  21:23
**entity**  8:18
**equipment**  3:4
  22:10,17,20
**especially**  31:22
**esq**  4:8,15,24 5:9
  5:16,24 6:9
**essence**  10:19
  18:2 28:4
**essentially**  9:25
  13:3 23:5
**establish**  19:12
**established**  33:12

**due**  11:15 22:21

**estate**  2:14 3:1
  13:19 16:23 17:7
  19:21 20:7,17
  21:23 26:20 33:19
  39:9
**estate's**  17:14
**estopped**  26:9
**everybody**  24:23
  26:23,23 31:12
  34:5
**everybody's**
  24:23
**evidentiary**  36:18
**ex**  14:12
**exactly**  11:19
**exclusive**  12:4,8
  12:14
**exclusivity**  2:22
**excuse**  29:23
**exercise**  15:3
  20:14 30:22 37:16
**exercised**  19:24
**existing**  37:8
**exists**  18:1
**expect**  10:10
**expected**  25:23
**expire**  12:8
**explain**  11:18
**extend**  2:22 10:3
  12:10 37:15
**extending**  12:4
**extension**  36:21
  37:8,13
**extent**  12:14
  30:16

**f**

**f**  1:19 2:15 3:2
**facility**  9:19
**fact**  19:12
**fault**  17:11
**favorable**  30:18
**fear**  27:14

**federal** 1:12,13
3:10 6:6 10:18,24
12:25 13:6 14:25
15:9
**felt** 17:3
**fight** 20:8
**figure** 12:12,13
20:24 36:15
**figuring** 27:10
**file** 12:5,15 29:14
30:8 35:9
**filed** 12:7 13:16
21:8 22:5,11,13
22:19,23 23:5
24:7 27:1 30:1,6,9
31:22 37:7
**files** 16:8
**filing** 2:23
**final** 2:4 10:20
24:7,9,11,12
26:22 34:11 39:5
**finally** 10:15
**financial** 4:12
5:12 7:10,11 8:2
11:5
**financing** 2:7
23:25 24:9 26:10
**finding** 20:10
**fine** 18:13
**firm** 10:16
**first** 8:7 9:7,11,12
12:2 13:16 19:24
24:15
**flesh** 24:5
**floor** 5:21
**flush** 20:17
**folks** 28:17 31:13
35:3
**following** 9:12
13:7
**follows** 18:25
**force** 19:11 31:19

**foregoing** 40:2
**forever** 19:1
**forget** 33:3
**form** 25:23 32:7
**formed** 8:18
**forth** 24:10
**forward** 34:12
**found** 21:9
**framework** 25:18
**fraud** 21:12
**free** 2:15,16 3:2,5
39:10
**freidman** 37:2
**friedman** 4:24
7:15,16 17:22
29:4,12 36:20
**front** 9:1
**frozen** 13:15
**full** 28:3,10,19
31:18 37:16
**fully** 27:9
**fund** 11:10,11
15:15 16:12 18:10
**funds** 13:12,13
18:14,16,18 19:5
19:8,11 21:14
32:11,19 33:2,2
33:11,13,16 34:2
**furniture** 3:4
22:10,16,20
**further** 21:24
34:14
**future** 11:16

**g**

**g** 7:1 39:3 40:2
**garden** 5:7
**garfunkel** 4:3
**general** 30:12,23
**getting** 25:4
**give** 8:10 19:14
20:22 27:6 32:2
36:17

**given** 26:21 36:9
**go** 14:22 15:3 17:8
19:1,4,5,9 21:10
26:21 28:9 32:13
35:7
**goes** 25:7
**going** 10:12 17:12
19:20 20:2,3,20
23:1 27:4,8 31:20
31:21 32:1 33:5,7
34:6,7,12 35:13
35:15,20,20 36:3
36:18 37:4
**good** 7:3,6,9,13,15
7:17,22 8:1,4 32:5
33:9
**government** 11:3
11:9 15:1,9,10,14
15:21,24 16:6
17:11 18:5,7,12
19:6,9,13 21:8,9
21:15 36:14
**government's**
21:22
**grant** 23:15 31:8
32:7
**great** 4:5,6
**grossman** 1:20
**group** 2:18
**guaranty** 5:12
7:10,11
**guess** 8:7 29:19
**guys** 17:8 19:14
24:3 27:9,12 31:8
31:20 36:3,14,22
37:24

**h**

**hammel** 4:15 7:17
7:17 33:9,9,18,20
33:22 34:2
**handling** 21:14
**happen** 12:13

**happens** 35:12
**happy** 11:22
**hard** 35:7
**head** 33:3
**hearing** 2:1,4,14
2:22 3:1,9 8:14
10:7 36:18 37:18
**hearings** 2:5 39:6
**held** 13:9,14
16:20 32:13,18
33:13,16
**hidden** 30:20
**higher** 13:4,23
**hill** 8:11
**hold** 14:10,10,10
**holding** 33:11
**hon** 1:20
**honor** 7:6,9,13,15
7:17,23 8:1,4,6,9
8:10,12,14,20 9:2
9:5,6,10,14,17,22
10:6,10,15,22
11:7,19,21,21
12:1,7,9,17,22
13:3,15,20 14:14
15:19 16:10,21,22
17:18,22 20:1,2
20:19 21:1,20
22:3,6,8,13,18
23:4,7,12,18,21
23:22,25 24:5,6,8
24:18 25:11,15,22
27:17 28:22 29:4
29:18 31:10,11,23
32:9,17,25 33:9
33:10,18,20,22
34:2,7 35:18,23
36:6,8,10,19,20
36:24 37:7,10,17
37:22 38:5
**honor's** 10:9
**hope** 9:1 25:3

**hopefully** 9:1
17:12
**howard** 5:9 7:19
**huh** 17:19 30:3
**hyman** 5:11

**i**

**ian** 4:15 7:17 33:9
**idea** 11:13
**ideally** 10:8
**identification**
39:4
**imagine** 21:2
**impact** 30:14
**impediments**
31:16
**important** 27:11
**impossible** 35:23
**impression** 8:16
**impropriety**
21:10,14
**indemnification**
29:15,19,25 30:22
**indentured** 33:11
33:14
**indirect** 31:2
**indiscernible** 29:7
29:13,14 36:21
**individuals** 21:10
21:16
**initial** 2:1 12:8
25:21
**initially** 15:22
**insert** 8:19
**insignificant** 17:7
**insofar** 28:2 32:22
**institution** 11:10
13:4 19:2
**integrated** 26:11
**intellectual** 18:22
**intellectually** 18:4
**intended** 33:14
**intention** 27:20
28:2,22 29:5

**interest** 16:5,9
33:6,24 34:3,10
**interesting** 28:7
**interfering** 27:25
**investigation** 17:2
**involved** 30:25
**island** 1:12
**islip** 1:14 6:3,7
**issuances** 33:12
**issues** 16:22
**item** 12:2,22 22:8
**items** 9:17
**iv** 10:17 14:5
**i'm** 29:10

**j**

**j** 4:24 5:16
**james** 7:21
**jericho** 4:20,22
**jevick** 24:25 25:2
25:16,17 27:16
**joseph** 2:11
**judge** 1:21
**july** 1:16 37:1,3
**jump** 27:20
**junior** 28:10
**jureller** 5:18 7:7
**jurisdiction** 27:3
**juron** 9:9
**justice** 6:1

**k**

**keep** 18:16 24:3
**kept** 16:14
**kids** 15:11 17:12
17:14 38:2
**kind** 28:24 32:14
**kiss** 2:19,24 3:6
3:11
**klein** 5:1
**kleinberg** 5:9 7:19
7:19 29:22,24
30:2,4,6,12,16,24
31:11,14

**klestadt** 5:18 7:7
**knapp** 7:21,21
13:1 20:2,12,19
21:12,17
**know** 9:15 18:4
20:22 25:2 35:12
35:13,20 38:2
**knows** 30:5 36:2

**l**

**l** 39:3
**language** 28:24
29:12 31:8 33:3
33:14
**large** 21:7
**largest** 11:2 15:15
**late** 11:9 22:11
**lauren** 2:19,24 3:6
3:11
**law** 14:25 20:15
**lawyers** 32:5
**lay** 23:5
**learn** 24:20 31:6
32:6
**learned** 13:24
**lease** 9:24 10:3
36:20 37:9,13,15
**leased** 9:21
**leasing** 9:19
**leave** 20:24 21:22
**leaving** 26:12
**left** 12:16 35:8
**legal** 17:9 40:15
**legs** 24:3
**lender** 24:15
**lenders** 31:17
34:15
**letter** 2:20
**levin** 4:10
**liens** 2:15,17 3:2,5
31:18 39:10
**lifting** 32:13
**likewise** 15:15

**liquidate** 21:21
**liquidating** 25:24
27:1 34:25 35:8
**liquidation** 2:18
19:1 22:19
**litigate** 19:23
31:21 35:9
**litigation** 9:6 20:8
**live** 31:6 32:6 38:3
**living** 34:18
**llc** 2:18 3:5
**llp** 4:17 5:18 7:16
8:2
**loan** 3:11 10:18
10:20,21 11:6,12
12:25 13:6,12,17
13:21 14:1,3,7,13
15:2,11,13,14
17:3,12 18:19
19:4,6 20:14
24:15 33:6 36:12
**loaned** 10:24,24
11:15 33:23
**loans** 11:2,2,14
13:5,9,10,18 14:6
14:11,19 16:13
17:24,25 18:2
21:11 33:2
**located** 3:4 9:19
22:10,17
**long** 1:12 31:19
**longer** 19:4
**look** 24:21 28:7
37:17
**looking** 10:7 35:6
**lose** 16:5 20:21
**loses** 14:5
**losing** 13:24
**lost** 14:2
**lot** 16:7 28:14
32:5 34:21

## m

**m** 6:4
**ma** 4:13
**magnitude** 10:13
**management** 2:2
**manner** 25:16
28:19
**march** 12:8
**marketing** 8:24
8:24
**matter** 1:5 2:1,4
2:14,22 3:1,9 7:4
10:6 23:23
**matters** 8:6,10,15
**mccord** 5:16 7:9
7:10 34:4
**meadow** 5:14
**mean** 15:1 16:8
19:19 20:20 28:20
32:24 34:22 36:2
36:16
**meaning** 32:15
**means** 32:14
**mechanics** 32:10
**mechanism** 34:10
**mechanisms**
19:11
**mediating** 9:10
**mediation** 9:7,7
9:13
**mediator** 9:7,9
**meet** 30:9
**members** 5:2
29:24 30:8 31:13
**memory** 11:9
**merely** 24:5 30:23
**merrick** 5:13
**merry** 14:22 19:4
**met** 8:13
**meyer** 5:1 7:19
**million** 13:10
14:11

**mineola** 40:18
**mintz** 4:10
**missing** 18:21,22
**modified** 32:22
**moment** 9:3
**money** 10:24,24
11:15 14:15,16,23
14:23 15:2,3,4,6,7
15:13 16:14 17:8
17:11,14,15 18:1
18:6,10 19:5 20:7
20:17,18,22,23,23
20:24 24:22 25:7
28:9 32:15 33:23
33:25
**monies** 18:23,23
19:21 32:13
**month** 14:12,18
**monty** 24:2
**morning** 12:23
13:2 22:9
**motion** 2:5,14,20
2:22 3:1,9 10:21
12:3,23 13:22
17:2 22:4,9,11,13
22:19,21,23 23:5
23:6,15,17,19,24
31:9 32:7 36:12
36:21 39:6,9
**motions** 9:17
13:16
**move** 11:22
**movie** 24:2

## n

**n** 4:1 7:1 39:1,3
**ncf** 22:25
**necessarily** 19:25
**necessary** 10:19
32:23
**neck** 4:5,6
**need** 9:11 20:4
**negatively** 30:15

**negotiated** 24:24
25:1 27:19
**negotiating** 31:1
**neighborhood**
15:20
**net** 35:18
**never** 35:20
**new** 1:2,14 5:22
22:24 33:2
**newly** 8:18
**nfc** 23:10,16
**noble** 15:3 20:13
**nobody's** 17:16
32:4
**normally** 37:21
**nothing's** 30:7
**notice** 13:25 37:18
37:20
**noticed** 24:7
**nsf** 8:13,13
**nuance** 11:7
**number** 14:12
20:9
**numbers** 10:20
15:18,19
**ny** 4:6,22 5:7,14
5:22 6:7 40:18

## o

**o** 1:19 5:6 7:1
**oak** 8:11
**oakdale** 3:4 22:10
22:15,17 35:24
**objecting** 17:16
17:17 32:4
**objection** 12:7
24:9
**objections** 12:18
23:13,14 24:16
**objects** 12:13
**obligated** 28:8
**obligation** 18:11
36:21

**obligations** 20:15
**obtain** 2:5,6 39:6
**october** 40:9
**office** 6:3 9:11
16:25
**official** 4:18 40:3
**okay** 8:3 11:25
12:1 14:10,18
15:25 19:20 21:19
22:7 28:12,20,21
29:11 31:5 32:20
33:21 34:6 37:14
**old** 40:16
**once** 13:24 14:5
18:14 34:20
**operating** 34:24
**operations** 13:4
**opportunity** 26:4
26:6 28:25
**order** 2:1,4 8:9,19
9:6 10:13 12:3,21
12:24 19:20 23:20
24:7,9,11,12 26:1
26:10,22,22 27:7
27:7,14 29:6 30:9
32:2,7,18 34:14
34:19 37:11,15
39:5
**ordinary** 37:14
**original** 11:8
33:12
**originally** 22:13
22:24
**orms** 3:25 40:2,7
**outlined** 13:22
**outs** 24:25
**outset** 17:24
**outside** 27:4
**outstanding** 13:11
13:17 14:11 17:25

**p**

**p**  4:1,1 5:6 7:1
**p.c.**  4:3 5:1
**p.m.**  38:8
**page**  39:4
**paid**  14:15,16
  25:4,6,13 28:18
  29:8
**paragraph**  32:18
**part**  13:3 17:23
  24:15 28:3 30:23
  33:24
**participate**  14:5
**participated**  13:5
**participating**  14:3
**particular**  8:9
**parties**  8:23 10:3
  12:18 27:19 28:3
  34:10
**party**  11:21 14:6
  29:18
**pay**  24:25 28:3,10
  33:1,5 34:1
**paying**  17:14
  33:24
**payments**  25:21
**pays**  14:12,12
**pending**  22:22
**people**  17:19 19:6
  19:24 24:21 28:13
  36:15
**period**  2:23 10:4
  12:14 28:13
**periods**  12:4,8
**perkins**  3:10
  10:21 11:6 12:25
  13:6 14:1,3,7
  36:12
**permissible**  27:25
**permit**  33:14
**permits**  34:11
**perspective**  26:3

**petition**  2:6,10
  9:22
**pfeiffer**  7:11 8:1,2
**ph**  9:5,9 25:1
**phone**  7:11,24,25
**pick**  14:11
**piece**  11:2
**place**  9:8 30:20
  38:3
**plan**  2:23 12:6,11
  12:16 25:24 26:5
  26:12,15,25 27:2
  27:22 31:21,25
  32:1,3,3 35:9
**planning**  8:21
**plaza**  1:13 6:6
**pleadings**  22:5
**please**  7:3,25
**plus**  28:8
**pm**  1:17
**point**  8:18 20:17
  22:18 23:4 26:12
  34:8 37:24
**points**  17:22
**portfolio**  3:11
  12:25 13:17,21
  14:1 16:5 17:3,24
  18:19
**portion**  11:11
  15:5,15,17 18:15
  18:17 19:8
**position**  18:8 19:3
  28:18 33:20
**possession**  7:8
**possible**  18:15
  26:18
**post**  2:6
**pot**  11:15 15:13
  18:1 30:17,17
  31:2 32:15
**potential**  30:17
**potentially**  17:7
  21:21

**power**  19:24
**pre**  2:10
**precise**  15:18
**precisely**  33:3
**prepare**  8:13
**prepared**  10:3
  12:18 21:18
**prepetition**  9:24
  10:3 29:25 31:17
  37:13
**presented**  34:19
**presently**  36:23
**presentment**
  37:19,20
**presumably**  26:15
**pretty**  24:18
**previously**  12:9
  13:15
**princeton**  3:5
  22:14,16
**principal**  17:9
**priority**  2:7 25:9
  25:10,11,17,20
  27:20 28:3,5 29:7
**probably**  24:25
  26:24 28:12,19,21
**procedures**  2:16
  3:10 12:24 13:23
  14:2,4,24 16:4,7
  16:19 17:1 18:20
  21:2,22
**proceedings**  38:8
**proceeds**  18:2
**profit**  12:12 31:22
**program**  10:20,21
  10:25 11:8,13,14
  13:6,7 14:3,7,20
**programs**  10:18
  21:7
**proper**  14:6 23:11
**properties**  8:25
**property**  2:14 3:1
  13:19 16:23 20:6

**21:23 33:19 39:9**
**propose**  10:16
  22:3
**proposed**  8:19 9:2
  10:14 12:2 22:22
  22:24 24:7,11
  25:18 34:11
**protection**  2:10
**provide**  10:4,19
  14:4 16:4 18:11
**provided**  11:9
  16:25 28:16
**provides**  30:17
**provision**  27:2
**purchase**  22:15
**purchaser**  22:14
  22:24
**purpose**  33:24
  34:24
**pursuant**  2:7,9,10
  3:2
**put**  17:1 20:23
  24:22 27:2
**python**  24:2

**q**

**quadrangle**  4:20
**question**  21:17
  26:7
**questions**  11:22
**quickly**  38:3

**r**

**r**  1:19 4:1 7:1 39:3
**read**  28:20 32:13
**really**  12:11 26:25
**recall**  22:18 23:25
**receivable**  10:12
**receiving**  28:9
**reckoning**  21:23
**record**  8:5 23:20
  29:5 36:1
**recording**  40:4
**redo**  32:7

referring  32:18
reg  1:3
regard  8:11,21
   11:6 13:21 17:3,5
   18:10,18,19 25:24
regards  3:3
regulations  21:2
reject  26:19
related  10:17
relates  13:8
relation  13:16
   24:6
relationship  9:25
relative  16:22
relax  21:5
release  27:10
   31:17
released  26:23
relevant  17:6
relook  32:1
reminds  24:2
repaid  14:23
report  9:4
reported  15:19
representative
   8:14
representatives
   8:23
represented  31:14
request  21:5
require  10:14
   16:19
required  31:25
requirements
   21:3
requiring  34:14
reserve  33:11
resided  9:23
resolve  36:15
resolves  24:9
respect  34:2
respectively  12:9

response  11:24
responsibility
   28:5
rest  15:7 20:21
restricted  13:15
retain  10:11,16
   22:19
retention  10:14
   10:15
return  24:24
review  9:14
revolving  11:13
rezone  35:21
richard  5:16 7:10
rid  35:6
right  12:19 14:13
   15:14 17:9 19:13
   19:22 20:6,7,16
   20:20 21:19 23:15
   26:21 31:4 34:6
   36:3 38:6
rights  20:23 29:15
   29:24 30:22 31:2
road  4:5 40:16
robert  1:20
rocket  37:5
ronald  4:24 7:15
rosa  26:12 32:3
rotate  20:5
round  14:22 19:4
rule  2:6
rules  13:23 14:24
   18:11 22:1

**s**

s  4:1 7:1 39:3
sale  2:16 8:11
   22:16,22 23:16
sanguine  27:14
saw  16:21
saying  17:13,15
   20:10,13 24:4
   28:13,16

says  19:22 24:14
   24:15 35:10
scenarios  19:20
schedule  2:4
   36:17 39:5
scheduled  9:8,12
scheduling  2:1
school  21:14,15
science  37:5
sean  5:24 7:6 8:4
seated  7:3
second  2:22 12:3
   12:22 17:23
secondly  13:12
section  2:6,9
   32:21 35:3
sections  2:8,11
   3:3
secured  2:7,10
   16:8 25:7 27:24
   28:4,8,17,17
   29:10 31:17 32:16
   34:20,25 35:4,6
see  18:4 25:19
   36:14
seed  11:10 15:17
seeded  11:10
   15:14
seeding  15:13
seeking  22:19
seen  32:3
segregated  16:16
sell  2:14 3:1 22:10
   39:9
senior  28:10
sent  13:25
sentence  24:24
separate  27:7
serves  11:4,9
session  9:7
set  11:8 12:8
   24:10 26:25

settlement  31:15
   31:15
share  28:5
sheet  24:11 25:19
   25:22 26:2,5,11
   26:22 28:15 29:6
   30:17,25 32:8
   35:10
sheila  3:25 40:2,7
short  8:12
show  17:9
side  9:15
sign  19:20 26:1
   32:2 34:20 37:5
   37:15
signatory  30:25
signed  32:8
significant  10:13
signing  27:14
silverman  4:17
silvermanacam...
   7:16
simply  33:14
sitting  18:6 35:25
size  17:7
skip  28:13
skipping  25:17
smaller  11:11
sold  35:16,24
solely  29:9
solicit  12:6
solutions  40:15
solved  31:6
somebody  16:8
   17:9 19:22 32:15
somebody's  19:12
somewhat  11:7
soon  9:2 10:7
sorry  29:4
sound  40:3
southard  5:18,24
   7:6,7,7 8:4,5 9:10
   9:22 11:1 12:1,17

12:20 13:20 14:9
14:14,16,20,24
15:5,9,12,18,22
15:24 16:1,4,10
16:12,16,19 17:17
17:22 18:10,14,25
19:15,17 20:1
21:1,20 22:2,8
23:3,7,12,14,18
23:21 24:5,18
25:11,15,22 26:3
26:8,14,18 27:17
27:23 28:2,22
29:17,21 31:10,23
32:9,17,21,25
34:7,23 35:1,11
35:14,17,22 36:1
36:5,9,12,19,23
37:6,10,12,17,23
38:1,4
**speak**  18:7 19:15
  19:17
**specific**  21:3 27:7
**spending**  24:21
**spot**  25:5
**stan**  6:9 7:13
**standards**  21:5
**standing**  27:6
**stands**  11:19
**started**  15:4,6
  27:12
**starting**  36:25
**starts**  15:12
**state**  7:25 16:20
  28:25
**statement**  2:23
**states**  1:1,11 6:2
  7:14,21
**status**  8:8 11:20
**stay**  32:13,21
**step**  16:21
**steps**  25:5

**stevens**  5:18 7:7
**stewart**  5:4
**stipulation**  28:4
**stonybrook**  9:18
  9:21,23,24 36:13
  36:20 38:2
**stopped**  19:4
**stops**  14:22
**street**  5:20
**strike**  26:22
**structurally**  36:16
**student**  13:8,12
  14:12,12,12
**students**  9:23 11:3
  11:16 13:5 15:2
**stuff**  24:21
**styled**  37:12
**sub**  26:11 32:3
**subject**  10:8 22:4
**submit**  8:19 12:20
  32:8
**submitting**  34:9
**subordinate**
  28:18
**subsequent**  17:1
**subsequently**
  22:21
**suggest**  28:23
**suggestion**  21:21
  21:24
**suite**  4:21 5:5
  40:17
**summary**  24:19
**suozzi**  5:1 7:19
**super**  2:7
**supplement**  22:11
  23:4
**supreme**  27:15
**sure**  31:4
**surrender**  14:1
**system**  20:6

**t**

**t**  4:8
**take**  9:8 15:2
  16:21 18:8 19:9
  28:25 32:16
**talk**  11:17,17
  36:10,14
**talking**  17:6
**targeting**  8:17
**technical**  35:17
**tee**  37:5
**tell**  17:19,20
  19:14
**term**  24:11 25:19
  25:22 26:1,5,11
  26:22 28:15 29:6
  30:16,25 32:8
  35:10
**terms**  9:5,17 10:1
  10:12 11:1 15:6
  21:3 23:2,3,10
  24:10 26:16 31:25
  32:9 34:12
**thank**  12:1,17
  22:3 23:21 31:10
  31:11 32:9 33:22
  36:5,7,19 37:17
  37:22 38:1,4,6
**thanks**  38:6
**theoretically**
  29:21 35:22
**theory**  14:20
**thing**  12:16
**things**  20:9 21:3
  24:8 31:5
**think**  10:12 11:8
  12:14,18 13:21
  16:21 21:20 25:16
  25:24 26:8 27:5
  27:12,13,18 28:11
  28:12,15,22 29:17
  32:17 35:4,14,17
  37:4

**thinking**  16:22
**thought**  8:9
**throwing**  20:18
**tiger**  2:18 23:6,17
**till**  20:24
**tilly**  10:16
**time**  10:4 19:24
  20:3 22:23 26:20
  27:12 36:5
**timeframe**  9:2
**timing**  8:24
**title**  10:17 14:5
**today**  10:22 11:7
  15:19 16:2,22
  18:6 20:16 26:1
  30:21
**told**  33:7 34:5
**tomorrow**  9:8,11
  18:7 37:7
**top**  33:3
**totaled**  13:13
**totaling**  13:10
**town**  8:23
**track**  36:1
**tranche**  25:7,14
**tranches**  18:22
**transcribed**  3:25
**transcriber**  40:7
**transcript**  40:3
**transition**  8:15
**true**  19:7 40:2
**truly**  19:8
**trust**  16:12,14,20
  33:13,17 35:8
**trustee**  6:2 7:14
  7:18 16:18 33:11
  33:14 34:16
**trustees**  5:3 7:20
**try**  19:24 37:2
**trying**  12:12
  20:25 29:17
**turnover**  3:10
  12:25

**two** 9:12 13:7,14
  13:17 18:22

**u**

**u** 39:3
**u.s.** 1:21 6:1,5
  16:25 34:15
**u.s.c.** 2:7,9,11,15
  3:2
**ultimate** 8:24
  21:22
**ultimately** 25:23
  31:21 34:18
**umb** 4:4,11 7:18
  33:10 34:3
**umb's** 33:3
**understand** 15:1
  18:22 19:3,6
  20:12 25:18 27:17
  27:18
**understanding**
  10:5 14:17 18:25
**understood** 20:19
  21:1
**unidentified** 36:8
  37:22
**united** 1:1,11 6:2
  7:14,21
**university** 9:18
**unliquidated** 30:9
**unopposed** 12:23
**unsecured** 4:19
  24:25 28:4,8,9
  30:12,18,23
**unsecureds** 25:8
  25:14,20
**upcoming** 9:17
**update** 8:10 11:20
**use** 23:24 24:10
  32:10 34:11
**utilize** 2:8

**v**

**vacated** 32:22
**various** 10:2
**veritext** 40:15
**version** 24:12
**view** 27:18
**views** 16:24 29:1
**violate** 24:25
  27:15
**violative** 25:16
**voiced** 31:14
**vote** 26:4,7
**voted** 25:24
**voting** 26:13,13
  26:14

**w**

**waive** 17:20 18:8
**waiving** 24:23
**want** 17:8,19
  19:22 20:5,5,8,22
  23:9 24:21 26:15
  27:10 28:24 31:4
  34:21 37:11 38:2
**wanting** 17:16
**wants** 15:2 17:11
  19:13 25:5 28:8
  32:15
**warm** 24:3
**warren** 9:5 25:9
**waterfall** 25:4
**way** 15:12,23 28:7
  31:25 36:15
**week** 22:12 23:5
  32:11 34:9,18
  37:1,3
**weeks** 10:8 24:8
**went** 28:12
**white** 8:2
**wild** 4:3
**willing** 28:18
  30:20
**win** 20:21

**wind** 21:6
**winters** 5:18 7:7
**wise** 21:24
**withdraw** 23:19
**withdrawing** 23:6
  23:17
**withdrawn** 2:20
  22:21 23:8
**wonder** 32:14
**words** 33:25
**work** 10:17 28:11
  29:12 31:8,24
  38:7
**working** 21:21
**world** 36:3
**wound** 24:5
**wrap** 29:17
**write** 28:20
**wrong** 19:23

**x**

**x** 1:4,10 14:18
  17:13 39:1

**y**

**yang** 6:9 7:13,13
**yeah** 12:10 19:19
  20:4 26:20 37:4,6
**year** 9:20 10:1
  13:9
**years** 24:20
**york** 1:2,14 5:22