Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 8-16-75545-reg

4    Adv. Case No. 8-16-08178-reg

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    DOWLING COLLEGE,

9

10           Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   ZAIKOWSKI,

13               Plaintiff,

14         v.

15   DOWLING COLLEGE,

16               Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25

1          United States Bankruptcy Court

2          290 Federal Plaza

3          Central Islip, New York 11722

4

5          August 28, 2017

6          1:41 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    B E F O R E:

22    HON. ROBERT E. GROSSMAN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:   UNKNOWN

1    8-16-08178-reg Zaikowski v. Dowling College

2    HEARING re [4] ADJ Summons and Notice of Pre-Trial Conference

3

4    8-16-75545-reg - Dowling College

5    HEARING re [74] ADJ Order Scheduling Initial Case Management

6    Conference.

7

8    HEARING re [347] Motion to Approve and Authorize Procedures for

9    the Turnover of the Debtor's Federal Perkins Loan Portfolio by

10   Lauren Catherine Kiss on behalf of Dowling College.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   UNITED STATES DEPARTMENT OF JUSTICE

4        Attorney for the U.S. Trustee

5        Central Islip Office

6        Alfonse M D'Amato US Courthouse

7        560 Federal Plaza

8        Central Islip, NY 11722

9

10  BY:   STAN YANG

11

12  MEYER SUOZZI ENGLISH & KLEIN P.C.

13        Attorneys for Certain Members Of The Dowling College

14        Board of Trustees, Interested Party

15        990 Stewart Avenue

16        Suite 300 PO Box 9194

17        Garden City, NY 11530

18

19  BY:   HOWARD B. KLEINBERG

20

21

22

23

24

25

```
 1   OUTTEN & GOLDEN LLP

 2        Attorney for Lori Zaikowski

 3        685 Third Avenue, 25th Floor

 4        New York, NY 10017

 5

 6   BY:   RENE ROUPINIAN

 7

 8   KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

 9        Attorneys for the Debtor

10        200 West 41st Street, 17th Floor

11        New York, NY 10036

12

13   BY:   SEAN C. SOUTHARD

14

15   U.S. ATTORNEY'S OFFICE, EDNY

16        Department of Education, Creditor

17        610 Federal Plaza, 5th floor

18        Central Islip, NY 11722

19

20   BY:   JAMES H. KNAPP

21

22

23

24

25
```

1   SILVERMANACAMPORA LLP

2        Attorneys for Official Committee Of Unsecured

3        Creditors, Creditor Committee

4        100 Jericho Quadrangle, Suite 300

5        Jericho, NY 11753

6

7   BY:   RONALD J. FRIEDMAN

8

9   STIM & WARMUTH PC

10        Attorneys for Kimberly Dawn Poppiti, Creditor

11        2 Eighth Street

12        Farmingville, NY 11738

13

14   BY:   GLENN P. WARMUTH

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  Matter 50, Zaikowski v. Dowling College, and

3      Matter #51 and 52, Dowling College.

4              MS. ROUPINIAN:  Good afternoon, Your Honor.  Rene

5      Roupinian of Outten & Golden, appearing on behalf of Lori

6      Zaikowski in the certified class.

7              MR. SOUTHARD:  Good afternoon, Your Honor.  Sean

8      Southard of Klestadt Winters Jureller Southard & Stevens, on

9      behalf of the Defendant, Dowling College.

10              MR. WARMUTH:  Glenn Warmuth, Stim & Warmuth, for

11      Kimberly Poppiti.

12              MR. FRIEDMAN:  Good afternoon, Your Honor.  Ronald

13      Friedman from Silverman Acampora, counsel for the Committee.

14              MR. YANG:  Good afternoon, Your Honor.  Stan Yang for

15      the United States Trustee.

16              MR. KNAPP:  Good afternoon.  James Knapp, Assistant

17      U.S. Attorney for the Department of Education.  Good afternoon.

18              MR. KLEINBERG:  Howard Kleinberg, Meyer Suozzi for

19      the Dowling Trustees.

20              THE COURT:  Okay.

21              MR. SOUTHARD:  Good afternoon, Your Honor.  Again,

22      for the record, Sean Southard on behalf of Dowling College.

23              Your Honor, we have just two matters on today's

24      calendar.  One is the pretrial -- adjourned pretrial associated

25      with the WARN Act litigation by Plaintiff, Zaikowski, and the

1    other matter is the adjourned hearing having to do with the

2    Debtor's Perkins loan portfolio.

3            Your Honor, I would propose to start with the WARN

4    Act pretrial.

5            THE COURT:  Why don't we start with the status; we're

6    all closed?

7            MR. SOUTHARD:  I would be happy to start with the

8    status, Your Honor.  Yes, we have closed.  I'm pleased to

9    announce we've closed successfully the Oakdale transaction.

10   The proceeds are sitting in the Debtor's Debtor-in-possession

11   account with Signature Bank, and we are discussing what amounts

12   of proceeds to potentially pay down to the secured creditors

13   associated with that Oakdale sale.  There have been various

14   discussions among the creditors, the creditors' committee, and

15   ACA Financial Guaranty Corporation, who effectively holds the

16   first line on the Oakdale campus and now, the resulting

17   proceeds from the sale.

18            And in consultation with the Debtors, we have looked

19   at the settlement construct that the creditors reached and

20   tried to come up with a model to follow that, the settlement

21   construct, with various assumptions -- now one of those

22   assumptions, we actually have an actual number before where the

23   Oakdale sale having concluded -- and believe that, with

24   reasonable reserves, approximately $22 million of the roughly

25   $26 million could be paid down to ACA.

1          THE COURT:  Will that be paid with the Court's

2    approval or without?

3          MR. SOUTHARD:  Well, Your Honor, I think we obviously

4    wanted to discuss that with Your Honor today.  And there is a

5    mechanism that exists under the DIP note, which would in effect

6    be a mandatory prepayment by the Debtor once it receives the

7    proceeds of the collateral.

8          That said, because of the magnitude of the dollars

9    that we're talking about and the consequence to this case and

10   its ultimate creditor recovery, we certainly wanted to discuss

11   that with Your Honor this morning.  And before we did that, we

12   have discussions with the different creditor constituents about

13   the reasonableness of doing that now.

14          So I believe, and I don't want to speak for committee

15   counsel, but I believe that the committee is in agreement and

16   has been very much in the forefront of these discussions about

17   an appropriate reserve.  And that roughly the numbers I

18   articulated of a $4 million reserve, give or take, is something

19   that they're amenable to, but I'll be happy to let them speak

20   to that.

21          THE COURT:  Well, what I'm -- I mean, people have

22   whatever rights they have.  But what I'm concerned about is

23   one, there are a lot of -- you haven't received this WARN Act

24   issue yet and those folks and whatever they may or not be

25   entitled to.  And since no plan has been filed, I don't have

1    any idea of what the costs will be associated with liquidating,

2    resolving, whatever claims the estate may have, and that it has

3    adequate resources to commence those claims and to bring them.

4         I was a little -- I think this was probably put in a

5    document that I signed, so it's not up to me.  But when I saw

6    that the deposit that had been forfeited by the first buyer was

7    distributed to the secured creditor, I think the committee

8    agreed to.

9         MR. SOUTHARD:  Yes, Your Honor.

10        THE COURT:  All right, as part of their deal.  I've

11   never concluded that those funds should have gone there.  But

12   you all -- and I said it at the time -- you all agreed to that,

13   and so I didn't get involved in that at that point.  But I was

14   never really convinced -- and it doesn't matter -- that they

15   had a secured right to those funds.

16        Now, I note -- because I've been through this once

17   before on the exact same issue in a case called Brown

18   Publishing.  And, but again, that was part and parcel of what I

19   understand was the stipulation between the committee and the

20   secured creditors that didn't create for the committee, for

21   want of a better term, carveouts.  So that was a business deal

22   and I was okay.

23        But I do want to be careful.  I mean, there's another

24   large chunk of property in this case that will cost something

25   to get from here to there.  There may be -- I don't know, but

1    there might have been total (indiscernible) and maybe

2    adversaries that need to be filed and funded, and I don't want

3    a debtor that's insolvent.

4              MR. SOUTHARD:  Understood, Your Honor.

5              THE COURT:  Now, again, if this belongs to the

6    secured creditor, it belongs to them.

7              MR. SOUTHARD:  Understood, Your Honor.  And we have

8    thought about the same concerns that Your Honor is raising.

9    There is a DIP facility in place.  The expectation is that the

10    funding will continue through the conclusion of an effective

11    date on the plan because, among other reasons, we do have

12    another sale to run and conclude.

13              THE COURT:  Well, what's the secured creditors'

14    position?  They've been paid down -- they will have been paid

15    down from this.  They've been paid down from houses.  How much

16    are they actually owed?

17              MR. SOUTHARD:  Well, recall, Your Honor, that there

18    are two different sets of secured creditors, for lack of a

19    better word.

20              THE COURT:  In total was about 60, right?

21              MR. SOUTHARD:  Give or take, Your Honor, yes.  And

22    the largest of those two pieces is about $38 million as of the

23    petition date, and that is the ACA piece or the 2006 bonds.

24    Those would be the facility that would be paid down fairly

25    dramatically with these Oakdale proceeds, but they would still

1    hold a significant secured claim that would require a paydown

2    from the Brookhaven sale.

3         THE COURT:  Yeah.  There's 112 acres in Brookdale,

4    which I have no idea what it's worth.  It could be worth a lot.

5    But the remaining secured debt is 50 percent -- I'm not saying

6    to whom, but in total, and it is a non-cash flow entity.

7         MR. SOUTHARD:  Correct.

8         THE COURT:  So the only monies that can support this

9    thing for the next year, because it'll take I think longer than

10   everybody thinks, is from whatever monies you have in the bank.

11        MR. SOUTHARD:  Correct, Your Honor.  We would either

12   settle funds with proceeds of the Oakdale sale, or those

13   proceeds could effectively pay down the outstanding debt and

14   then additional borrowings occur.  Those are the two options.

15        THE COURT:  You mean borrow post-petition against the

16   other property?

17        MR. SOUTHARD:  Correct, Your Honor.

18        THE COURT:  As long as these distant creditors will

19   be subordinate to it because, you know, you're going to have to

20   make them subordinate.  I don't think the bank will put up on

21   raw land the junior -- they may.  Who knows?  I just need you

22   to think about it.  And my main concern with the WARN Act

23   question --

24        MR. SOUTHARD:  Yes, Your Honor.

25        THE COURT:  There's a decision -- did the Circuit

1    just issue, was it the Second Circuit on WARN Act that just

2    issued one?  Yeah.  So if people are watching WARN Act claims

3    then.

4            MR. SOUTHARD:  Your Honor, I could talk a little bit

5    about where we are with the WARN Act.

6            THE COURT:  Please.

7            MR. SOUTHARD:  It might be appropriate at this point.

8    The parties met for a full-day mediation with the assistance of

9    Yann Geron, who was the appointed mediator by Your Honor, and

10    made progress that day.  It was determined that at the close of

11    the day that additional information would be required,

12    primarily on the Plaintiff's side, to better the potential

13    expected damages; and, in addition, some additional information

14    about the defenses that the Debtor was asserting.

15            And since that time, there have been a lot of

16    exchanges of information, primarily by the Debtor to the

17    Plaintiff.  And we're at a point now where I think we're just

18    about done with that information exchange, the informal

19    mediation-based information exchange, and then could recommence

20    settlement discussions.

21            My hope would be that we'll know in the next, say, 30

22    days whether we're going to have a settlement or not or whether

23    we need to go into litigation in a more meaningful way.  And it

24    certainly is the hope of the Debtor, and I think I speak for

25    the Plaintiff when I say, and the hope of the Plaintiff as well

1  to try to find a constructive resolution.  And, again, we have

2  made progress, but we're just not there yet.

3          So what I would ask of Your Honor, subject to hearing

4  from Plaintiff's counsel, is that we potentially have a holding

5  date of roughly 30 days where we would come back to Your Honor

6  and report either we were successful in settling the litigation

7  and report to Your Honor where we are or, alternatively, talk

8  to Your Honor about potentially moving forward with discovery

9  in the true sense.

10         THE COURT:  And Mr. Geron is going to stay involved

11  because he originally was just --

12         MR. SOUTHARD:  Yeah.  Your Honor, as a technical

13  matter, the mediation order -- the time to conclude that

14  mediation was August 1st, so we are beyond that.  Mr. Geron has

15  stayed involved insofar as, you know, communicating with the

16  parties.  Where are you and how are things?

17         THE COURT:  No, he's a -- I've known him for many,

18  many years.  It's fine.  I think -- I would have no reason, as

19  long as you guys wanted to continue, to continue the order.

20         MR. SOUTHARD:  Yeah.  I think at this point, what I -

21  - and, again, I don't want to speak for the Plaintiff, but I

22  think we are able to trade positions effectively without the

23  mediator.  If we get into a log jam in the next interim period,

24  I would look to bring the mediator back in for assistance in

25  clearing such a log jam.

1          THE COURT:  Does any of this require the consent of

2    the secured creditor to reach a settlement?

3          MR. SOUTHARD:  Well, ultimately, when we reach a

4    settlement -- and, hopefully, we reach a settlement --

5    certainly, the creditors will have a say in that.  Ultimately,

6    the dollars that we're talking about, in terms of priority

7    claims anyway, will need to be paid to bring this case out of

8    Chapter 11 through a plan.  And so, we have kept the creditors

9    -- the Debtor has kept the creditors abreast of where we are in

10   terms of status, but they have yet to weigh in and get to the

11   weeds on the ultimate dollars that we're talking about.

12         THE COURT:  But aren't the dollars you're trading

13   their money at this point?

14         MR. SOUTHARD:  Yes, Your Honor, effectively they are.

15   But because the creditors don't understand the merits of the

16   actual litigation, it's -- I believe it's necessary for the

17   Debtor to reach a proposed resolution based on the merits, and

18   then deal with the mechanics of the dollars and cents that must

19   be paid out to make a plan go effective.  Again, they are not

20   in regards in any respect, but they have not been an active

21   participant in the mediation.

22         THE COURT:  How do you know what your position can be

23   if it's not your money?

24         MR. SOUTHARD:  Well, we know ultimately what we are -

25   - we think we're willing to pay in terms of merits.  Basically,

1    what we're talking about is the strength of the one major

2    defense.  And we have a view about the strength and the

3    likelihood of success on that; Plaintiff has a different view.

4              THE COURT:  But could the secured -- could the

5    secured creditors or a secured creditor just say no, my bonds

6    don't commit me to take less than what I could get to settle a

7    claim that's not against me?

8              MR. SOUTHARD:  They've not given any indication to

9    date that such a position would be put forth.  But recall the

10   construct of the settlement -- the intercreditor settlement --

11   that was reached provided that effectively, unsecured creditors

12   and secured creditors would share 50/50 the cost of priority

13   claims necessary to exit Chapter 11.

14             THE COURT:  What does that mean?

15             MR. SOUTHARD:  Meaning --

16             THE COURT:  They have to put up 50 percent?

17             MR. SOUTHARD:  If the priority claims pool turns out

18   to be $2 million, 1 million of that would effectively be paid

19   out of the secured creditors' otherwise take from proceeds, and

20   then the other million would first come from the unsecured

21   creditor proceeds.

22             THE COURT:  For which somebody has to put -- put an

23   unsecured creditor pool together.

24             MR. SOUTHARD:  Correct, Your Honor.  And that's

25   ultimately, when we talk about the timing for a plan

1     confirmation and proceeding with a plan and ultimately, the

2     effective date of a plan, that's one factor that we take into

3     consideration.  Is we think we need, based on our model, to

4     close the Brookhaven sale transaction before the unsecureds

5     will have enough money.

6              THE COURT:  Or for the unsecured creditors or for the

7     committee to pursue sources of revenue that are not controlled

8     by the secured creditor.

9              MR. SOUTHARD:  To the extent they exist.

10             THE COURT:  To the extent they exist.

11             MR. SOUTHARD:  Those would be really limited at this

12    point, I think, to litigation recoveries, which I, again, can

13    let the Committee counsel speak to.  But I know that they have

14    considered a potential claim against D&O insurance and targets

15    of that sort, but I don't know where they are with that.  But I

16    think my take on that, Your Honor, from a timing perspective,

17    would be unlikely that they'll get to a recovery relative to

18    that type of asset, if any.

19             THE COURT:  Yeah, but I suspect that the -- I'm just

20    guessing -- that in the WARN Act case -- this is an example --

21    the settlement will come in two tranches.  There'll be money

22    that can be paid, which exists because it represents 50 percent

23    and it's sitting in the bank -- that's the secured money -- and

24    50 percent on the claim.

25             MR. SOUTHARD:  Could be, Your Honor.  There are also

1    other priority claims that will need to be dealt with for

2    purposes of confirmation.  So it's not --

3              THE COURT:  Well, that's the other thing.  That's why

4    I want to see somebody start putting in a plan, because if this

5    case can't go through a plan, it's got to convert it.  That'll

6    be it.

7              MR. SOUTHARD:  Yeah.

8              THE COURT:  I'm not even sure I can convert a not-

9    for-profit.

10             MR. SOUTHARD:  I don't think you can legally.

11             THE COURT:  I can't convert it, but you can.

12             MR. SOUTHARD:  Correct.

13             THE COURT:  You can convert it.  I can't forcefully

14   convert it.  Nobody can require the conversion, but, I mean,

15   I'd rather not end up there.

16             MR. SOUTHARD:  I share your position on that, Your

17   Honor.  So I think from a big picture perspective, we envision

18   in the very near future moving forward with a proposed sale

19   process for the Brookhaven campus.  And in a best-case

20   scenario, would expect to see a closing around year end or the

21   first quarter of --

22             THE COURT:  Really?

23             MR. SOUTHARD:  -- 2018.  And, again, in an ideal

24   scenario, we would have a plan confirmation process that would

25   take place roughly in tandem with that closing on Brookhaven,

1    and swiftly exit Chapter 11 thereafter.  That's, again, that's

2    sort of best laid plan.

3              THE COURT:  So the town is cooperating out there?

4              MR. SOUTHARD:  Your Honor, to date, the town has been

5    cooperating.  We're -- there's certainly been a lot of

6    discussion with the town planning.  At this point, we do not

7    expect to proceed further with planning before a sale

8    disposition.  The belief is that we know about as much as we'll

9    be able to know relative to the future uses, and that any buyer

10   who will diligence the opportunity at this point will be able

11   to make their own conclusions about that future use.

12             THE COURT:  Okay.

13             MR. SOUTHARD:  So we think based on, again, the

14   information we're getting from the different parties that have

15   been retained by the Debtor, including the brokers, that it

16   would be a good time to go to market.  And we hope to roll out

17   with a proposed sale process that will look a lot, I think,

18   like the Oakdale sale process with some minor changes to some

19   of the details.

20             THE COURT:  All right.  Well, that's good.

21             MR. SOUTHARD:  That's our big picture plan.  So in

22   terms of then the proposed potential paydown of proceeds, would

23   Your Honor like to see that on motion on notice?

24             THE COURT:  Yes.

25             MR. SOUTHARD:  Okay.  We wanted to discuss that with

1    you today.  So we will work on motion for that in the near term

2    and present that to Your Honor.  We will serve certainly all

3    the lienholders, junior creditors, judgment holders, and the

4    like, and put that on before you.  And we'll look at whether we

5    can -- how much of the current modeling we can share publicly

6    at this point to try to help Your Honor get a better

7    perspective of the big picture.

8              THE COURT:  Okay.

9              MR. SOUTHARD:  So then turning back to the WARN Act,

10   Your Honor, my proposal on behalf of the Defendant -- I'll be

11   happy to let the Plaintiff speak -- would be to ask for in

12   essence a 30-day adjournment of that matter to come back before

13   Your Honor on that.

14             MS. ROUPINIAN:  Good afternoon again, Your Honor.

15   Rene Roupinian of behalf of Lori Zaikowski and the certified

16   class.  I'm in concurrence.  We've had an opportunity to speak

17   before the conference today, and I think a 30-day continuance

18   makes sense.

19             We had a very productive first day of mediation, but

20   we needed to really get our arms around the WARN damages

21   because, in this particular case, we have so many different

22   categories of employees.  We have the full time and the part

23   time and the adjuncts and the instructors and so forth and so

24   on, and they've had different agreements and paid, in terms of

25   their compensation and benefits and so forth.

1          So it's been a process that I think has been very

2     productive.  And we've been -- they've been terrific on the

3     other side producing what they can.  We recognized that the

4     focus needed to be on the sale of the property and brining

5     money into the estate.  So we've been patient, but we have been

6     moving forward, and Yann Geron has been helpful in that

7     process.

8          His efforts do not come at a discount, so we think it

9     does make sense to do as much as we can between the parties and

10    bring in Mr. Geron when we need him if we hit any sort of

11    roadblocks when we get to the point where we can actually start

12    talking about numbers and allocating risk based on the defenses

13    and so forth.

14         So we would propose, as well, that the Court set a

15    further status conference 30 days out.

16         THE COURT:  When's the next -- Dowling here.  When

17    are you going to put this on?  You're going to have the motion

18    returnable sooner than you want this, I assume.

19         MR. SOUTHARD:  I'm sure that the creditors would like

20    that, Your Honor.

21         THE COURT:  They're not going anyplace.

22         MR. SOUTHARD:  We probably -- we could probably have

23    our motion on file, and dependent really, subject to Your

24    Honor's calendar.  I would think we would need 14 days' notice

25    at a minimum for that following Court rules.

1        THE COURT:  It's not going to be the beginning of

2   October, so it'd have to be towards out to the 23rd, around

3   there?  That would be the date.

4        MR. SOUTHARD:  October --

5        THE COURT:  23rd.  October 28th, no.

6        MR. SOUTHARD:  I'm going in that direction.

7        THE COURT:  You're going in the wrong direction.  The

8   problem is that NCBJ is the beginning of October.  And so, my

9   exalted position and I have to go that thing.  And that takes

10  me to the 15th of October.  Before that, we have trial dates.

11  So, no, that's probably the best you're going to get.  You're

12  not going to do it in September; September's too soon, I guess.

13  What do we have in September?

14        MR. SOUTHARD:  September 30 is a benchmark day.

15        THE COURT:  Why?

16        MR. SOUTHARD:  It'll save us some money on the

17  (indiscernible) for the distribution.

18        THE COURT:  All right.  I'll accept that.  I know

19  what you're talking about, but I'll accept that.  25th or 27th,

20  would that be enough time to get everything out of the WARN Act

21  question?  You guys could put the motion on.

22        MR. SOUTHARD:  Yeah.  Your Honor (indiscernible).

23        THE COURT:  That, I know you can do.

24        MR. SOUTHARD:  27th Your Honor?

25        THE COURT:  Okay.  Mr. Friedman, does the 27th work?

1          MR. FRIEDMAN:  Excellent, Your Honor.  Thank you so

2     much.

3          THE COURT:  We aim to please.  1:30, okay.  Good

4     luck.

5          MS. ROUPINIAN:  Thank you.  And in terms of NCBJ,

6     I'll be speaking on the judgment panel, so hope to see you

7     there.

8          THE COURT:  That's why she can get what she wants.

9     Friends of NCBJ are important to me these days.

10         MS. ROUPINIAN:  Thank you.

11         MR. SOUTHARD:  Your Honor, I intend to register for

12    the NCBJ immediately after this hearing.

13         MAN 1:  I think I do too.

14         THE COURT:  We actually put, like, moderate

15    (indiscernible).  Are you there too?  And there's a group of

16    lawyers in the Courthouse who I don't think can spell NCBJ,

17    spotting them two of the initials.  They're all going, not

18    because of me, because it's in Vegas.  So to some people, they

19    won't show up because it's in Las Vegas, and others want to go.

20    And I just can't imagine the headline, one of our Senators get

21    in touch with the National Conference of Bankruptcy Judges is

22    holding its convention in Las Vegas.  I always wondered who

23    decided that was a good idea.  It's like the Mohegan Sun thing

24    that we do every couple of years, go through the casino for it.

25         All right, so that's set.  What else do we have on

1    today?

2            MR. SOUTHARD:  So the only other item we have on,

3    Your Honor, is the adjourned -- Debtor's adjourned motion

4    having to do with the Perkins loan portfolio, and the Debtor's

5    proposed turnover of that loan portfolio.

6            This is Docket #347 that the Debtor filed back on

7    June 16th, and Your Honor initially heard in July.  And we

8    discussed during that July hearing the question of whether

9    there was and is a property of the estate interest in that loan

10   portfolio that the Debtor is proposing to assign.

11           And since that point, Your Honor, the Debtor and

12   counsel to the U.S. Department of Education and the U.S.

13   Attorney's Office have had a couple of different conversations

14   trying to find a potential resolution that would recognize the

15   potential for that property in the estate interest.

16           And I believe as of the end of the week, basically,

17   Education was at a point where they felt from their perspective

18   under their rules and regulations, they were unable to

19   effectively give consideration to the bankruptcy estate for

20   Dowling's potential interest in the loan portfolio.  And so on

21   Friday early evening, a brief was filed explaining their

22   position, which I will confess I have not had a full

23   opportunity to review myself because I was away.  But, you

24   know, and I think it's possible that other parties might have

25   views to express --

1          THE COURT:  Did anybody read it?

2          MR. SOUTHARD:  -- in response to that.

3          THE COURT:  I mean, I did.  You read it.

4          MAN 1:  I read it.

5          THE COURT:  It's like class, the guy in the back

6   actually read the assignment.

7          MR. SOUTHARD:  So, I mean, I generally understand

8   because we did have a discussion about their position.

9          THE COURT:  You can spend an hour arguing if you'd

10  like.  I'm going to leave, but you can spend an hour arguing.

11  The answer is -- there used to be that show with that old guy

12  with -- you know, I used to call it the old guy.  The new show,

13  and the answer is, only because he got to talk.

14          You're partially right and you're partially wrong.

15  Certain of these dollars, I would find are property of the

16  estate.  The single most interesting line is, it's 76 percent

17  give or take of these people that aren't going to pay these

18  loans back anyway, and then total interest is 300,000.

19          So if I take 20 percent of 300,000 -- or $60,000,

20  give or take -- that the estate doesn't want to spend

21  litigating with you, the result here is probably I'm not going

22  to give you an order saying this is not the property of the

23  estate.  I'm going to go with door number 2, unless somebody

24  objects, that the Debtor will abandon its interest, and leave

25  for another day the question of whether you're right or wrong

1    with regards to property of the estate.

2            So if you can live with that, that's the answer.  I

3    mean, I could order it anyway.  If you can't, then I'm not

4    going to give you anything and we'll litigate it.

5            MR. SOUTHARD:  Your Honor --

6            MR. KNAPP:  Which doesn't sound like a piece of cake

7    from the previous case.

8            THE COURT:  What?

9            MR. KNAPP:  It doesn't sound like a piece of cake you

10   had in the prior case.

11           MR. SOUTHARD:  Your Honor, one thought that we on the

12   Debtor's side had after this development of, you know, late

13   last week.  Is that perhaps, because there is a desire to

14   assign the loan portfolio as a mechanic, that perhaps we could

15   do what Your Honor is suggesting and leave open the question

16   the amounts of the value of the Debtor's interest in that loan

17   portfolio.

18           THE COURT:  But I think the government's position is

19   it doesn't matter because once you go off the program, whatever

20   you put in, even if it's yours, now becomes theirs; is that

21   correct?

22           MR. KNAPP:  Yes.

23           MR. SOUTHARD:  That is their position, Your Honor.

24           THE COURT:  So you would -- whatever, figuring out

25   the number is irrelevant; it's the legal concept.  And I don't

1    know if you're right or wrong; it's a technical fight.  And I

2    think the papers were good and somebody would have to respond.

3    But you're going to be responding over if you're right and

4    their numbers are right, not a mater- -- a rather small amount

5    of money.  Because I think the original number is you had 20

6    some odd million dollars in this program, but you're down to

7    1.7 million?

8              MR. SOUTHARD:  Yes.

9              THE COURT:  Of which they -- somebody calculated 330

10   and some odd thousand dollars is your interest.  Their position

11   is whatever you would get of that, and it doesn't matter

12   because somehow you have the contractual obligation that once

13   you leave the program, whatever you put in, even if

14   attributable to you, goes to them.

15             Now I'm not sure they'd win that in a Bankruptcy

16   Court; they may.  I'm not sure whether it's been litigated yet.

17   It's just a question of whether, on a practical basis, you want

18   to use the money to do it.

19             MR. SOUTHARD:  Yeah.  We don't think it had been

20   litigated, Your Honor, which is why we originally filed the

21   motion the way we did.  And, you know, I think in part we're

22   saying the same thing, whether it's abandonment or assignment

23   of the loan portfolio.

24             THE COURT:  But are you going to transfer the money

25   to them or you're going to hold the money?

1          MR. SOUTHARD:  No, Your Honor.  We would -- we would

2    transfer the loan portfolio and the loans themselves for

3    administration by the government.

4          THE COURT:  Okay.

5          MR. SOUTHARD:  And then hold the money subject to a

6    further order of Your Honor's.  When we've completed the

7    accounting, that will be necessary associated with that, and we

8    would leave open the question of property of the estate.

9          THE COURT:  So they would get about 1.4 million, give

10   or take.

11         MR. SOUTHARD:  They would actually get the loans.

12         THE COURT:  Well, wait a minute.

13         MR. SOUTHARD:  They have --

14         THE COURT:  Packages.

15         MR. SOUTHARD:  -- have certain principal amounts

16   outstanding, and they would then take over as the administrator

17   of those loans.  The Debtor would no longer --

18         THE COURT:  And then remit to you your piece if the

19   Court determined that?

20         MR. SOUTHARD:  No, Your Honor.  I think they would --

21   those loans would pass back into the program as their rules

22   contemplate.

23         THE COURT:  Right.

24         MR. SOUTHARD:  We have, however, about $400,000, give

25   or take, in DIP accounts that is potentially tied to that loan

1    program because they're the proceeds of the Perkins loan

2    program.  And instead of transferring that money now, we would

3    do so based on a further order from Your Honor after the

4    accounting is completed.

5            THE COURT:  So you're not abandoning.  You're

6    basically arguing that they have the right -- you'll transfer

7    to them the management of the portfolio.  The Debtor wishes to

8    maintain its interest whatever extent in the cash and litigate

9    that issue with the government.

10           MR. SOUTHARD:  Yes.

11           THE COURT:  Or settle with them.

12           MR. SOUTHARD:  Yes.  And to the extent to which there

13   were any hypothetical interest in the loan portfolio, we could

14   preserve that interest -- that issue for a later date.

15           THE COURT:  All right.  What do you say, sir?

16           MR. KNAPP:  I really don't have anything to all,

17   other than in the papers, Your Honor.  Education's position,

18   though, is it's an all or nothing proposition.  And if we're

19   talking about, as I think I understood Your Honor a moment ago,

20   that Education would administer the loans going forward if

21   there will be some carveout of the repayments.

22           THE COURT:  That's wrong.  I misunderstood that.

23           MR. KNAPP:  Okay.

24           THE COURT:  What they're saying is the bulk of these

25   loans go to you.

1          MR. KNAPP:  On all the loan -- the portfolio of loans

2    that has, at least on paper, a value of about $1.8 million

3    would be transferred back to Education.

4          MR. SOUTHARD:  Would be assigned, right, under their

5    rules.

6          THE COURT:  So there's cash in a bank.

7          MR. KNAPP:  Yes.

8          THE COURT:  That cash, they're not prepared to agree

9    to transfer to you.

10          MR. KNAPP:  I understand that.

11          THE COURT:  Your position is you owned it.

12          MR. KNAPP:  Correct.

13          THE COURT:  And that would be the issue to litigate;

14    do you own it or does the estate own it?

15          MR. KNAPP:  Or as Your Honor articulated some weeks

16    ago, is there a percentage of ownership between the Department

17    of Education.

18          THE COURT:  Well, I mean, again, what is their -- all

19    I care about is what is property of the estate.  It is in the

20    Debtor's possession now.  Your argument is that when they

21    terminated the participation in the program, which is by filing

22    bankruptcy, under your rules, it doesn't matter whether they

23    would own it or you would own it; it all goes back to the

24    government.  That was the deal they made to participate in the

25    process.

1          MR. KNAPP:  Is it predates the bankruptcy filing.

2          THE COURT:  Yeah.

3          MR. KNAPP:  If it's -- when Dowling enrolled in, for

4     lack of a better word, the Perkins program 50 odd years ago,

5     the agreement of their money was that this money would be used

6     only for the Perkins loan program.

7          THE COURT:  Right.

8          MR. KNAPP:  They didn't have rights to it before they

9     had the bankruptcy, other than for use --

10          THE COURT:  You may be right.

11          MR. KNAPP:  -- in the Perkins loan program.

12          THE COURT:  I think --

13          MR. KNAPP:  And then when they closed their doors in

14     June, I believe it was of '16 and the bankruptcy case was filed

15     in November of '16, they were obligated at that point to send

16     everything related to the Perkins loan program back to the

17     Department of Education.

18          THE COURT:  The only issue is whether the intervening

19     bankruptcy alters the rights of the parties, as it does in

20     countless ways.  May or may not, I don't know the answer to

21     that; they haven't put in any papers.  So I think I would agree

22     today that you guys can enter an order saying that you get the

23     portfolio, and we leave this to a second fight.  You have put

24     in papers already.  They would respond.  Then we see if we can

25     short circuit.  We can get a hearing on it and finish it.  But

1    I think it's better for you to get the portfolio today because

2    I think it should be serviced.

3              MR. SOUTHARD:  I --

4              THE COURT:  So this is without a prejudice to your

5    rights -- pardon me -- that it all belongs to you.

6              MR. SOUTHARD:  From the Debtor's perspective, I think

7    that makes sense, Your Honor.

8              THE COURT:  I'll do that.

9              MR. SOUTHARD:  We'll try to work on a form of order

10   that is agreeable between the parties, and we'll include the

11   (indiscernible).

12             THE COURT:  It has to be without prejudice to the

13   government's right to argue that just because it entered into,

14   or recognizes, whatever it is.  That does not affect their

15   right to argue it's all theirs, nor does it affect your right

16   to argue that it's property of the estate and should be divided

17   in a certain fashion.

18             MR. SOUTHARD:  Understood, Your Honor.

19             THE COURT:  That would resolve at least that for

20   today.  And then you'll put in papers, and we'll get a hearing

21   date.  So it's on today, I think we resolved this motion -- no,

22   I'll carry this motion.  Just put in an interim order on this,

23   and we'll use this motion to resolve the rest of it.

24             MR. SOUTHARD:  Very well, Your Honor.  And should we

25   assume this is carried to September 27th as well?

1          THE COURT:  I'm not sure we'll have anything that day

2    because you guys got to put papers and then they'd want to

3    respond, but we'll use that as a holding date.

4          MR. SOUTHARD:  Thank you, Your Honor.  That concludes

5    everything we had on the calendar this afternoon.

6          THE COURT:  Well, I don't have anything.  Anybody

7    else want to talk about anything -- golf match, Yankee game,

8    anything?

9          MR. SOUTHARD:  Thank you, Your Honor.

10          THE COURT:  Court's adjourned.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya

7    Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2017.11.06 15:39:28 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 6, 2017

| & | 290  2:2 | a | agree  30:8 31:21 |
|---|---|---|---|

**&**

**&**  4:12 5:1,8 6:9
  7:5,8,10

**1**

**1**  16:18 23:13 25:4
**1.4**  28:9
**1.7**  27:7
**1.8**  30:2
**100**  6:4
**10017**  5:4
**10036**  5:11
**11**  15:8 16:13 19:1
**112**  12:3
**11501**  34:23
**11530**  4:17
**11722**  2:3 4:8 5:18
**11738**  6:12
**11753**  6:5
**14**  21:24
**15th**  22:10
**16**  31:14,15
**16th**  24:7
**17th**  5:10
**1:30**  23:3
**1:41**  2:6
**1st**  14:14

**2**

**2**  6:11 16:18 25:23
**20**  25:19 27:5
**200**  5:10
**2006**  11:23
**2017**  2:5 34:25
**2018**  18:23
**22**  8:24
**23rd**  22:2,5
**25th**  5:3 22:19
**26**  8:25
**27th**  22:19,24,25
  32:25
**28**  2:5
**28th**  22:5

**290**  2:2

**3**

**30**  13:21 14:5
  20:12,17 21:15
  22:14
**300**  4:16 6:4 34:22
**300,000**  25:18,19
**330**  27:9 34:21
**347**  3:8 24:6
**38**  11:22

**4**

**4**  3:2 9:18
**400,000**  28:24
**41st**  5:10

**5**

**50**  7:2 12:5 16:16
  17:22,24 31:4
**50/50**  16:12
**51**  7:3
**52**  7:3
**560**  4:7
**5th**  5:17

**6**

**6**  34:25
**60**  11:20
**60,000**  25:19
**610**  5:17
**685**  5:3

**7**

**74**  3:5
**76**  25:16

**8**

**8-16-08178**  1:4
  3:1
**8-16-75545**  1:3
  3:4

**9**

**9194**  4:16
**990**  4:15

**a**

**abandon**  25:24
**abandoning**  29:5
**abandonment**
  27:22
**able**  14:22 19:9,10
**abreast**  15:9
**aca**  8:15,25 11:23
**acampora**  7:13
**accept**  22:18,19
**account**  8:11
**accounting**  28:7
  29:4
**accounts**  28:25
**accurate**  34:4
**acres**  12:3
**act**  7:25 8:4 9:23
  12:22 13:1,2,5
  17:20 20:9 22:20
**active**  15:20
**actual**  8:22 15:16
**addition**  13:13
**additional**  12:14
  13:11,13
**adequate**  10:3
**adjourned**  7:24
  8:1 24:3,3 33:10
**adjournment**
  20:12
**adjuncts**  20:23
**administer**  29:20
**administration**
  28:3
**administrator**
  28:16
**adv**  1:4
**adversaries**  11:2
**affect**  32:14,15
**afternoon**  7:4,7
  7:12,14,16,17,21
  20:14 33:5
**ago**  29:19 30:16
  31:4

**agree**  30:8 31:21
**agreeable**  32:10
**agreed**  10:8,12
**agreement**  9:15
  31:5
**agreements**  20:24
**aim**  23:3
**alfonse**  4:6
**allocating**  21:12
**alternatively**  14:7
**alters**  31:19
**amenable**  9:19
**amount**  27:4
**amounts**  8:11
  26:16 28:15
**announce**  8:9
**answer**  25:11,13
  26:2 31:20
**anybody**  25:1
  33:6
**anyplace**  21:21
**anyway**  15:7
  25:18 26:3
**appearing**  7:5
**appointed**  13:9
**appropriate**  9:17
  13:7
**approval**  9:2
**approve**  3:8
**approximately**
  8:24
**argue**  32:13,15,16
**arguing**  25:9,10
  29:6
**argument**  30:20
**arms**  20:20
**articulated**  9:18
  30:15
**asserting**  13:14
**asset**  17:18
**assign**  24:10
  26:14

**assigned** 30:4
**assignment** 25:6
  27:22
**assistance** 13:8
  14:24
**assistant** 7:16
**associated** 7:24
  8:13 10:1 28:7
**assume** 21:18
  32:25
**assumptions** 8:21
  8:22
**attorney** 4:4 5:2
  7:17
**attorney's** 5:15
  24:13
**attorneys** 4:13 5:9
  6:2,10
**attributable**
  27:14
**august** 2:5 14:14
**authorize** 3:8
**avenue** 4:15 5:3

**b**

**b** 2:21 4:19
**back** 14:5,24 20:9
  20:12 24:6 25:5
  25:18 28:21 30:3
  30:23 31:16
**bank** 8:11 12:10
  12:20 17:23 30:6
**bankruptcy** 1:1
  2:1,23 23:21
  24:19 27:15 30:22
  31:1,9,14,19
**based** 13:19 15:17
  17:3 19:13 21:12
  29:3
**basically** 15:25
  24:16 29:6
**basis** 27:17
**beginning** 22:1,8

**behalf** 3:10 7:5,9
  7:22 20:10,15
**belief** 19:8
**believe** 8:23 9:14
  9:15 15:16 24:16
  31:14
**belongs** 11:5,6
  32:5
**benchmark** 22:14
**benefits** 20:25
**best** 18:19 19:2
  22:11
**better** 10:21 11:19
  13:12 20:6 31:4
  32:1
**beyond** 14:14
**big** 18:17 19:21
  20:7
**bit** 13:4
**board** 4:14
**bonds** 11:23 16:5
**borrow** 12:15
**borrowings** 12:14
**box** 4:16
**brief** 24:21
**bring** 10:3 14:24
  15:7 21:10
**brining** 21:4
**brokers** 19:15
**brookdale** 12:3
**brookhaven** 12:2
  17:4 18:19,25
**brown** 10:17
**bulk** 29:24
**business** 10:21
**buyer** 10:6 19:9

**c**

**c** 4:1 5:13 7:1 34:1
  34:1
**cake** 26:6,9
**calculated** 27:9
**calendar** 7:24
  21:24 33:5

**call** 25:12
**called** 10:17
**campus** 8:16
  18:19
**care** 30:19
**careful** 10:23
**carried** 32:25
**carry** 32:22
**carveout** 29:21
**carveouts** 10:21
**case** 1:3,4 3:5 9:9
  10:17,24 15:7
  17:20 18:5,19
  20:21 26:7,10
  31:14
**cash** 12:6 29:8
  30:6,8
**casino** 23:24
**categories** 20:22
**catherine** 3:10
**central** 2:3 4:5,8
  5:18
**cents** 15:18
**certain** 4:13 25:15
  28:15 32:17
**certainly** 9:10
  13:24 15:5 19:5
  20:2
**certified** 7:6 20:15
  34:3
**changes** 19:18
**chapter** 15:8
  16:13 19:1
**chunk** 10:24
**circuit** 12:25 13:1
  31:25
**city** 4:17
**claim** 12:1 16:7
  17:14,24
**claims** 10:2,3 13:2
  15:7 16:13,17
  18:1

**class** 7:6 20:16
  25:5
**clearing** 14:25
**clerk** 7:2
**close** 13:10 17:4
**closed** 8:6,8,9
  31:13
**closing** 18:20,25
**collateral** 9:7
**college** 1:8,15 3:1
  3:4,10 4:13 7:2,3
  7:9,22
**come** 8:20 14:5
  16:20 17:21 20:12
  21:8
**commence** 10:3
**commit** 16:6
**committee** 6:2,3
  7:13 8:14 9:14,15
  10:7,19,20 17:7
  17:13
**communicating**
  14:15
**compensation**
  20:25
**completed** 28:6
  29:4
**concept** 26:25
**concern** 12:22
**concerned** 9:22
**concerns** 11:8
**conclude** 11:12
  14:13
**concluded** 8:23
  10:11
**concludes** 33:4
**conclusion** 11:10
**conclusions** 19:11
**concurrence**
  20:16
**conference** 3:2,6
  20:17 21:15 23:21

confess 24:22
confirmation 17:1
  18:2,24
consent 15:1
consequence 9:9
consideration
  17:3 24:19
considered 17:14
constituents 9:12
construct 8:19,21
  16:10
constructive 14:1
consultation 8:18
contemplate
  28:22
continuance
  20:17
continue 11:10
  14:19,19
contractual 27:12
controlled 17:7
convention 23:22
conversations
  24:13
conversion 18:14
convert 18:5,8,11
  18:13,14
convinced 10:14
cooperating 19:3
  19:5
corporation 8:15
correct 12:7,11,17
  16:24 18:12 26:21
  30:12
cost 10:24 16:12
costs 10:1
counsel 7:13 9:15
  14:4 17:13 24:12
countless 31:20
country 34:21
couple 23:24
  24:13

court 1:1 2:1 7:20
  8:5 9:1,21 10:10
  11:5,13,20 12:3,8
  12:15,18,25 13:6
  14:10,17 15:1,12
  15:22 16:4,14,16
  16:22 17:6,10,19
  18:3,8,11,13,22
  19:3,12,20,24
  20:8 21:14,16,21
  21:25 22:1,5,7,15
  22:18,23,25 23:3
  23:8,14 25:1,3,5,9
  26:8,18,24 27:9
  27:16,24 28:4,9
  28:12,14,18,19,23
  29:5,11,15,22,24
  30:6,8,11,13,18
  31:2,7,10,12,18
  32:4,8,12,19 33:1
  33:6,10
court's 9:1 33:10
courthouse 4:6
  23:16
create 10:20
creditor 5:16 6:3
  6:10 9:10,12 10:7
  11:6 15:2 16:5,21
  16:23 17:8
creditors 6:3 8:12
  8:14,14,19 10:20
  11:13,18 12:18
  15:5,8,9,15 16:5
  16:11,12,19 17:6
  20:3 21:19
current 20:5

**d**

d 7:1
d&o 17:14
d'amato 4:6
damages 13:13
  20:20

date 11:11,23
  14:5 16:9 17:2
  19:4 22:3 29:14
  32:21 33:3 34:25
dates 22:10
dawn 6:10
day 13:8,10,11
  20:12,17,19 22:14
  25:25 33:1
days 13:22 14:5
  21:15,24 23:9
deal 10:10,21
  15:18 30:24
dealt 18:1
debt 12:5,13
debtor 1:10 5:9
  8:10 9:6 11:3
  13:14,16,24 15:9
  15:17 19:15 24:6
  24:10,11 25:24
  28:17 29:7
debtor's 3:9 8:2
  8:10 24:3,4 26:12
  26:16 30:20 32:6
debtors 8:18
decided 23:23
decision 12:25
defendant 7:9
  20:10
defendants 1:16
defense 16:2
defenses 13:14
  21:12
department 4:3
  5:16 7:17 24:12
  30:16 31:17
dependent 21:23
deposit 10:6
desire 26:13
details 19:19
determined 13:10
  28:19

development
  26:12
different 9:12
  11:18 16:3 19:14
  20:21,24 24:13
diligence 19:10
dip 9:5 11:9 28:25
direction 22:6,7
discount 21:8
discovery 14:8
discuss 9:4,10
  19:25
discussed 24:8
discussing 8:11
discussion 19:6
  25:8
discussions 8:14
  9:12,16 13:20
disposition 19:8
distant 12:18
distributed 10:7
distribution 22:17
district 1:2
divided 32:16
docket 24:6
document 10:5
doing 9:13
dollars 9:8 15:6
  15:11,12,18 25:15
  27:6,10
door 25:23
doors 31:13
dowling 1:8,15
  3:1,4,10 4:13 7:2
  7:3,9,19,22 21:16
  31:3
dowling's 24:20
dramatically
  11:25

**e**

e 2:21,21,22 4:1,1
  7:1,1 34:1

**early** 24:21
**eastern** 1:2
**ecro** 2:25
**edny** 5:15
**education** 5:16
　7:17 24:12,17
　29:20 30:3,17
　31:17
**education's** 29:17
**effect** 9:5
**effective** 11:10
　15:19 17:2
**effectively** 8:15
　12:13 14:22 15:14
　16:11,18 24:19
**efforts** 21:8
**eighth** 6:11
**either** 12:11 14:6
**employees** 20:22
**english** 4:12
**enrolled** 31:3
**enter** 31:22
**entered** 32:13
**entitled** 9:25
**entity** 12:6
**envision** 18:17
**essence** 20:12
**estate** 10:2 21:5
　24:9,15,19 25:16
　25:20,23 26:1
　28:8 30:14,19
　32:16
**evening** 24:21
**everybody** 12:10
**exact** 10:17
**exalted** 22:9
**example** 17:20
**excellent** 23:1
**exchange** 13:18
　13:19
**exchanges** 13:16
**exist** 17:9,10

**exists** 9:5 17:22
**exit** 16:13 19:1
**expect** 18:20 19:7
**expectation** 11:9
**expected** 13:13
**explaining** 24:21
**express** 24:25
**extent** 17:9,10
　29:8,12

**f**

**f** 2:21 34:1
**facility** 11:9,24
**factor** 17:2
**fairly** 11:24
**farmingville** 6:12
**fashion** 32:17
**federal** 2:2 3:9 4:7
　5:17
**felt** 24:17
**fight** 27:1 31:23
**figuring** 26:24
**file** 21:23
**filed** 9:25 11:2
　24:6,21 27:20
　31:14
**filing** 30:21 31:1
**financial** 8:15
**find** 14:1 24:14
　25:15
**fine** 14:18
**finish** 31:25
**first** 8:16 10:6
　16:20 18:21 20:19
**floor** 5:3,10,17
**flow** 12:6
**focus** 21:4
**folks** 9:24
**follow** 8:20
**following** 21:25
**forcefully** 18:13
**forefront** 9:16
**foregoing** 34:3

**forfeited** 10:6
**form** 32:9
**forth** 16:9 20:23
　20:25 21:13
**forward** 14:8
　18:18 21:6 29:20
**friday** 24:21
**friedman** 6:7 7:12
　7:13 22:25 23:1
**friends** 23:9
**full** 13:8 20:22
　24:22
**funded** 11:2
**funding** 11:10
**funds** 10:11,15
　12:12
**further** 19:7
　21:15 28:6 29:3
**future** 18:18 19:9
　19:11

**g**

**g** 7:1
**game** 33:7
**garden** 4:17
**generally** 25:7
**geron** 13:9 14:10
　14:14 21:6,10
**getting** 19:14
**give** 9:18 11:21
　24:19 25:17,20,22
　26:4 28:9,24
**given** 16:8
**glenn** 6:14 7:10
**go** 13:23 15:19
　18:5 19:16 22:9
　23:19,24 25:23
　26:19 29:25
**goes** 27:14 30:23
**going** 12:19 13:22
　14:10 21:17,17,21
　22:1,6,7,11,12
　23:17 25:10,17,21
　25:23 26:4 27:3

　27:24,25 29:20
**golden** 5:1 7:5
**golf** 33:7
**good** 7:4,7,12,14
　7:16,17,21 19:16
　19:20 20:14 23:3
　23:23 27:2
**government** 28:3
　29:9 30:24
**government's**
　26:18 32:13
**grossman** 2:22
**group** 23:15
**guaranty** 8:15
**guess** 22:12
**guessing** 17:20
**guy** 25:5,11,12
**guys** 14:19 22:21
　31:22 33:2

**h**

**h** 5:20
**happy** 8:7 9:19
　20:11
**headline** 23:20
**heard** 24:7
**hearing** 3:2,5,8
　8:1 14:3 23:12
　24:8 31:25 32:20
**help** 20:6
**helpful** 21:6
**hit** 21:10
**hold** 12:1 27:25
　28:5
**holders** 20:3
**holding** 14:4
　23:22 33:3
**holds** 8:15
**hon** 2:22
**honor** 7:4,7,12,14
　7:21,23 8:3,8 9:3
　9:4,11 10:9 11:4,7
　11:8,17,21 12:11
　12:17,24 13:4,9

14:3,5,7,8,12
15:14 16:24 17:16
17:25 18:17 19:4
19:23 20:2,6,10
20:13,14 21:20
22:22,24 23:1,11
24:3,7,11 26:5,11
26:15,23 27:20
28:1,20 29:3,17
29:19 30:15 32:7
32:18,24 33:4,9
**honor's** 21:24
28:6
**hope** 13:21,24,25
19:16 23:6
**hopefully** 15:4
**hour** 25:9,10
**houses** 11:15
**howard** 4:19 7:18
**hyde** 3:25 34:3,8
**hypothetical**
29:13

**i**

**idea** 10:1 12:4
23:23
**ideal** 18:23
**imagine** 23:20
**immediately**
23:12
**important** 23:9
**include** 32:10
**including** 19:15
**indication** 16:8
**indiscernible** 11:1
22:17,22 23:15
32:11
**informal** 13:18
**information** 13:11
13:13,16,18,19
19:14
**initial** 3:5
**initially** 24:7

**initials** 23:17
**insofar** 14:15
**insolvent** 11:3
**instructors** 20:23
**insurance** 17:14
**intend** 23:11
**intercreditor**
16:10
**interest** 24:9,15
24:20 25:18,24
26:16 27:10 29:8
29:13,14
**interested** 4:14
**interesting** 25:16
**interim** 14:23
32:22
**intervening** 31:18
**involved** 10:13
14:10,15
**irrelevant** 26:25
**islip** 2:3 4:5,8 5:18
**issue** 9:24 10:17
13:1 29:9,14
30:13 31:18
**issued** 13:2
**it'd** 22:2
**it'll** 12:9 22:16
**item** 24:2

**j**

**j** 6:7
**jam** 14:23,25
**james** 5:20 7:16
**jericho** 6:4,5
**judge** 2:23
**judges** 23:21
**judgment** 20:3
23:6
**july** 24:7,8
**june** 24:7 31:14
**junior** 12:21 20:3
**jureller** 5:8 7:8
**justice** 4:3

**k**

**kept** 15:8,9
**kimberly** 6:10
7:11
**kiss** 3:10
**klein** 4:12
**kleinberg** 4:19
7:18,18
**klestadt** 5:8 7:8
**knapp** 5:20 7:16
7:16 26:6,9,22
29:16,23 30:1,7
30:10,12,15 31:1
31:3,8,11,13
**know** 10:25 12:19
13:21 14:15 15:22
15:24 17:13,15
19:8,9 22:18,23
24:24 25:12 26:12
27:1,21 31:20
**known** 14:17
**knows** 12:21

**l**

**lack** 11:18 31:4
**laid** 19:2
**land** 12:21
**large** 10:24
**largest** 11:22
**las** 23:19,22
**late** 26:12
**lauren** 3:10
**lawyers** 23:16
**leave** 25:10,24
26:15 27:13 28:8
31:23
**ledanski** 3:25 34:3
34:8
**legal** 26:25 34:20
**legally** 18:10
**lienholders** 20:3
**likelihood** 16:3
**limited** 17:11

**line** 8:16 25:16
**liquidating** 10:1
**litigate** 26:4 29:8
30:13
**litigated** 27:16,20
**litigating** 25:21
**litigation** 7:25
13:23 14:6 15:16
17:12
**little** 10:4 13:4
**live** 26:2
**llp** 5:1,8 6:1
**loan** 3:9 8:2 24:4
24:5,9,20 26:14
26:16 27:23 28:2
28:25 29:1,13
30:1 31:6,11,16
**loans** 25:18 28:2
28:11,17,21 29:20
29:25 30:1
**log** 14:23,25
**long** 12:18 14:19
**longer** 12:9 28:17
**look** 14:24 19:17
20:4
**looked** 8:18
**lori** 5:2 7:5 20:15
**lot** 9:23 12:4
13:15 19:5,17
**luck** 23:4

**m**

**m** 4:6
**magnitude** 9:8
**main** 12:22
**maintain** 29:8
**major** 16:1
**man** 23:13 25:4
**management** 3:5
29:7
**mandatory** 9:6
**market** 19:16
**match** 33:7

**mater** 27:4
**matter** 1:6 7:2,3
8:1 10:14 14:13
20:12 26:19 27:11
30:22
**matters** 7:23
**mean** 9:21 10:23
12:15 16:14 18:14
25:3,7 26:3 30:18
**meaning** 16:15
**meaningful** 13:23
**mechanic** 26:14
**mechanics** 15:18
**mechanism** 9:5
**mediation** 13:8,19
14:13,14 15:21
20:19
**mediator** 13:9
14:23,24
**members** 4:13
**merits** 15:15,17
15:25
**met** 13:8
**meyer** 4:12 7:18
**million** 8:24,25
9:18 11:22 16:18
16:18,20 27:6,7
28:9 30:2
**mineola** 34:23
**minimum** 21:25
**minor** 19:18
**minute** 28:12
**misunderstood**
29:22
**model** 8:20 17:3
**modeling** 20:5
**moderate** 23:14
**mohegan** 23:23
**moment** 29:19
**money** 15:13,23
17:5,21,23 21:5
22:16 27:5,18,24
27:25 28:5 29:2

31:5,5
**monies** 12:8,10
**morning** 9:11
**motion** 3:8 19:23
20:1 21:17,23
22:21 24:3 27:21
32:21,22,23
**moving** 14:8
18:18 21:6

**n**

**n** 4:1 7:1 34:1
**national** 23:21
**ncbj** 22:8 23:5,9
23:12,16
**near** 18:18 20:1
**necessary** 15:16
16:13 28:7
**need** 11:2 12:21
13:23 15:7 17:3
18:1 21:10,24
**needed** 20:20 21:4
**never** 10:11,14
**new** 1:2 2:3 5:4,11
25:12
**non** 12:6
**note** 9:5 10:16
**notice** 3:2 19:23
21:24
**november** 31:15
34:25
**number** 8:22
25:23 26:25 27:5
**numbers** 9:17
21:12 27:4
**ny** 4:8,17 5:4,11
5:18 6:5,12 34:23

**o**

**o** 2:21 7:1 34:1
**oakdale** 8:9,13,16
8:23 11:25 12:12
19:18
**objects** 25:24

**obligated** 31:15
**obligation** 27:12
**obviously** 9:3
**occur** 12:14
**october** 22:2,4,5,8
22:10
**odd** 27:6,10 31:4
**office** 4:5 5:15
24:13
**official** 6:2
**okay** 7:20 10:22
19:12,25 20:8
22:25 23:3 28:4
29:23
**old** 25:11,12
34:21
**once** 9:6 10:16
26:19 27:12
**open** 26:15 28:8
**opportunity**
19:10 20:16 24:23
**options** 12:14
**order** 3:5 14:13
14:19 25:22 26:3
28:6 29:3 31:22
32:9,22
**original** 27:5
**originally** 14:11
27:20
**outstanding** 12:13
28:16
**outten** 5:1 7:5
**owed** 11:16
**owned** 30:11
**ownership** 30:16

**p**

**p** 4:1,1 6:14 7:1
**p.c.** 4:12
**packages** 28:14
**paid** 8:25 9:1
11:14,14,15,24
15:7,19 16:18
17:22 20:24

**panel** 23:6
**paper** 30:2
**papers** 27:2 29:17
31:21,24 32:20
33:2
**parcel** 10:18
**pardon** 32:5
**part** 10:10,18
20:22 27:21
**partially** 25:14,14
**participant** 15:21
**participate** 30:24
**participation**
30:21
**particular** 20:21
**parties** 13:8 14:16
19:14 21:9 24:24
31:19 32:10
**party** 4:14
**pass** 28:21
**patient** 21:5
**pay** 8:12 12:13
15:25 25:17
**paydown** 12:1
19:22
**pc** 6:9
**people** 9:21 13:2
23:18 25:17
**percent** 12:5
16:16 17:22,24
25:16,19
**percentage** 30:16
**period** 14:23
**perkins** 3:9 8:2
24:4 29:1 31:4,6
31:11,16
**perspective** 17:16
18:17 20:7 24:17
32:6
**petition** 11:23
12:15
**picture** 18:17
19:21 20:7

**piece** 11:23 26:6,9
  28:18
**pieces** 11:22
**place** 11:9 18:25
**plaintiff** 1:13 7:25
  13:17,25,25 14:21
  16:3 20:11
**plaintiff's** 13:12
  14:4
**plan** 9:25 11:11
  15:8,19 16:25
  17:1,2 18:4,5,24
  19:2,21
**planning** 19:6,7
**plaza** 2:2 4:7 5:17
**please** 13:6 23:3
**pleased** 8:8
**po** 4:16
**point** 10:13 13:7
  13:17 14:20 15:13
  17:12 19:6,10
  20:6 21:11 24:11
  24:17 31:15
**pool** 16:17,23
**poppiti** 6:10 7:11
**portfolio** 3:9 8:2
  24:4,5,10,20
  26:14,17 27:23
  28:2 29:7,13 30:1
  31:23 32:1
**position** 11:14
  15:22 16:9 18:16
  22:9 24:22 25:8
  26:18,23 27:10
  29:17 30:11
**positions** 14:22
**possession** 8:10
  30:20
**possible** 24:24
**post** 12:15
**potential** 13:12
  17:14 19:22 24:14
  24:15,20

**potentially** 8:12
  14:4,8 28:25
**practical** 27:17
**pre** 3:2
**predates** 31:1
**prejudice** 32:4,12
**prepared** 30:8
**prepayment** 9:6
**present** 20:2
**preserve** 29:14
**pretrial** 7:24,24
  8:4
**previous** 26:7
**primarily** 13:12
  13:16
**principal** 28:15
**prior** 26:10
**priority** 15:6
  16:12,17 18:1
**probably** 10:4
  21:22,22 22:11
  25:21
**problem** 22:8
**procedures** 3:8
**proceed** 19:7
**proceeding** 17:1
**proceedings** 34:4
**proceeds** 8:10,12
  8:17 9:7 11:25
  12:12,13 16:19,21
  19:22 29:1
**process** 18:19,24
  19:17,18 21:1,7
  30:25
**producing** 21:3
**productive** 20:19
  21:2
**profit** 18:9
**program** 26:19
  27:6,13 28:21
  29:1,2 30:21 31:4
  31:6,11,16

**progress** 13:10
  14:2
**property** 10:24
  12:16 21:4 24:9
  24:15 25:15,22
  26:1 28:8 30:19
  32:16
**proposal** 20:10
**propose** 8:3 21:14
**proposed** 15:17
  18:18 19:17,22
  24:5
**proposing** 24:10
**proposition** 29:18
**provided** 16:11
**publicly** 20:5
**publishing** 10:18
**purposes** 18:2
**pursue** 17:7
**put** 10:4 12:20
  16:9,16,22,22
  20:4 21:17 22:21
  23:14 26:20 27:13
  31:21,23 32:20,22
  33:2
**putting** 18:4

**q**

**quadrangle** 6:4
**quarter** 18:21
**question** 12:23
  22:21 24:8 25:25
  26:15 27:17 28:8

**r**

**r** 2:21 4:1 7:1 34:1
**raising** 11:8
**raw** 12:21
**reach** 15:2,3,4,17
**reached** 8:19
  16:11
**read** 25:1,3,4,6
**really** 10:14 17:11
  18:22 20:20 21:23
  29:16

**reason** 14:18
**reasonable** 8:24
**reasonableness**
  9:13
**reasons** 11:11
**recall** 11:17 16:9
**received** 9:23
**receives** 9:6
**recognize** 24:14
**recognized** 21:3
**recognizes** 32:14
**recommence**
  13:19
**record** 7:22 34:4
**recoveries** 17:12
**recovery** 9:10
  17:17
**reg** 1:3,4 3:1,4
**regards** 15:20
  26:1
**register** 23:11
**regulations** 24:18
**related** 31:16
**relative** 17:17
  19:9
**remaining** 12:5
**remit** 28:18
**rene** 5:6 7:4 20:15
**repayments** 29:21
**report** 14:6,7
**represents** 17:22
**require** 12:1 15:1
  18:14
**required** 13:11
**reserve** 9:17,18
**reserves** 8:24
**resolution** 14:1
  15:17 24:14
**resolve** 32:19,23
**resolved** 32:21
**resolving** 10:2
**resources** 10:3

respect 15:20
respond 27:2
  31:24 33:3
responding 27:3
response 25:2
rest 32:23
result 25:21
resulting 8:16
retained 19:15
returnable 21:18
revenue 17:7
review 24:23
right 10:10,15
  11:20 19:20 22:18
  23:25 25:14,25
  27:1,3,4 28:23
  29:6,15 30:4 31:7
  31:10 32:13,15,15
rights 9:22 31:8
  31:19 32:5
risk 21:12
road 34:21
roadblocks 21:11
robert 2:22
roll 19:16
ronald 6:7 7:12
roughly 8:24 9:17
  14:5 18:25
roupinian 5:6 7:4
  7:5 20:14,15 23:5
  23:10
rules 21:25 24:18
  28:21 30:5,22
run 11:12

**s**

s 4:1 7:1
sale 8:13,17,23
  11:12 12:2,12
  17:4 18:18 19:7
  19:17,18 21:4
save 22:16
saw 10:5

saying 12:5 25:22
  27:22 29:24 31:22
scenario 18:20,24
scheduling 3:5
sean 5:13 7:7,22
second 13:1 31:23
secured 8:12 10:7
  10:15,20 11:6,13
  11:18 12:1,5 15:2
  16:4,5,5,12,19
  17:8,23
see 18:4,20 19:23
  23:6 31:24
senators 23:20
send 31:15
sense 14:9 20:18
  21:9 32:7
september 22:12
  22:13,14 32:25
september's 22:12
serve 20:2
serviced 32:2
set 21:14 23:25
sets 11:18
settle 12:12 16:6
  29:11
settlement 8:19
  8:20 13:20,22
  15:2,4,4 16:10,10
  17:21
settling 14:6
share 16:12 18:16
  20:5
short 31:25
show 23:19 25:11
  25:12
side 13:12 21:3
  26:12
signature 8:11
signed 10:5
significant 12:1
silverman 7:13

silvermanacam...
  6:1
single 25:16
sir 29:15
sitting 8:10 17:23
small 27:4
solutions 34:20
somebody 16:22
  18:4 25:23 27:2,9
sonya 3:25 34:3,8
soon 22:12
sooner 21:18
sort 17:15 19:2
  21:10
sound 26:6,9
sources 17:7
southard 5:8,13
  7:7,8,8,21,22 8:7
  9:3 10:9 11:4,7,17
  11:21 12:7,11,17
  12:24 13:4,7
  14:12,20 15:3,14
  15:24 16:8,15,17
  16:24 17:9,11,25
  18:7,10,12,16,23
  19:4,13,21,25
  20:9 21:19,22
  22:4,6,14,16,22
  22:24 23:11 24:2
  25:2,7 26:5,11,23
  27:8,19 28:1,5,11
  28:13,15,20,24
  29:10,12 30:4
  32:3,6,9,18,24
  33:4,9
speak 9:14,19
  13:24 14:21 17:13
  20:11,16
speaking 23:6
spell 23:16
spend 25:9,10,20
spotting 23:17

stan 4:10 7:14
start 8:3,5,7 18:4
  21:11
states 1:1 2:1 4:3
  7:15
status 8:5,8 15:10
  21:15
stay 14:10
stayed 14:15
stevens 5:8 7:8
stewart 4:15
stim 6:9 7:10
stipulation 10:19
street 5:10 6:11
strength 16:1,2
subject 14:3 21:23
  28:5
subordinate
  12:19,20
success 16:3
successful 14:6
successfully 8:9
suggesting 26:15
suite 4:16 6:4
  34:22
summons 3:2
sun 23:23
suozzi 4:12 7:18
support 12:8
sure 18:8 21:19
  27:15,16 33:1
suspect 17:19
swiftly 19:1

**t**

t 34:1,1
take 9:18 11:21
  12:9 16:6,19 17:2
  17:16 18:25 25:17
  25:19,20 28:10,16
  28:25
takes 22:9
talk 13:4 14:7
  16:25 25:13 33:7

**talking** 9:9 15:6 15:11 16:1 21:12 22:19 29:19
**tandem** 18:25
**targets** 17:14
**technical** 14:12 27:1
**term** 10:21 20:1
**terminated** 30:21
**terms** 15:6,10,25 19:22 20:24 23:5
**terrific** 21:2
**thank** 23:1,5,10 33:4,9
**theirs** 26:20 32:15
**thing** 12:9 18:3 22:9 23:23 27:22
**things** 14:16
**think** 9:3 10:4,7 12:9,20,22 13:17 13:24 14:18,20,22 15:25 17:3,12,16 18:10,17 19:13,17 20:17 21:1,8,24 23:13,16 24:24 26:18 27:2,5,19 27:21 28:20 29:19 31:12,21 32:1,2,6 32:21
**thinks** 12:10
**third** 5:3
**thought** 11:8 26:11
**thousand** 27:10
**tied** 28:25
**time** 10:12 13:15 14:13 19:16 20:22 20:23 22:20
**timing** 16:25 17:16
**today** 9:4 20:1,17 24:1 31:22 32:1 32:20,21

**today's** 7:23
**total** 11:1,20 12:6 25:18
**touch** 23:21
**town** 19:3,4,6
**trade** 14:22
**trading** 15:12
**tranches** 17:21
**transaction** 8:9 17:4
**transcribed** 3:25
**transcript** 34:4
**transfer** 27:24 28:2 29:6 30:9
**transferred** 30:3
**transferring** 29:2
**trial** 3:2 22:10
**tried** 8:20
**true** 14:9 34:4
**trustee** 4:4 7:15
**trustees** 4:14 7:19
**try** 14:1 20:6 32:9
**trying** 24:14
**turning** 20:9
**turnover** 3:9 24:5
**turns** 16:17
**two** 7:23 11:18,22 12:14 17:21 23:17
**type** 17:18

**u**

**u.s.** 2:23 4:4 5:15 7:17 24:12,12
**ultimate** 9:10 15:11
**ultimately** 15:3,5 15:24 16:25 17:1
**unable** 24:18
**understand** 10:19 15:15 25:7 30:10
**understood** 11:4,7 29:19 32:18
**united** 1:1 2:1 4:3 7:15

**unknown** 2:25
**unsecured** 6:2 16:11,20,23 17:6
**unsecureds** 17:4
**use** 19:11 27:18 31:9 32:23 33:3
**uses** 19:9

**v**

**v** 1:14 3:1 7:2
**value** 26:16 30:2
**various** 8:13,21
**vegas** 23:18,19,22
**veritext** 34:20
**view** 16:2,3
**views** 24:25

**w**

**wait** 28:12
**want** 9:14 10:21 10:23 11:2 14:21 18:4 21:18 23:19 25:20 27:17 33:2 33:7
**wanted** 9:4,10 14:19 19:25
**wants** 23:8
**warmuth** 6:9,14 7:10,10,10
**warn** 7:25 8:3 9:23 12:22 13:1,2 13:5 17:20 20:9 20:20 22:20
**watching** 13:2
**way** 13:23 27:21
**ways** 31:20
**we've** 8:9 20:16 21:2,5 28:6
**weeds** 15:11
**week** 24:16 26:13
**weeks** 30:15
**weigh** 15:10
**west** 5:10
**when's** 21:16

**willing** 15:25
**win** 27:15
**winters** 5:8 7:8
**wishes** 29:7
**wondered** 23:22
**word** 11:19 31:4
**work** 20:1 22:25 32:9
**worth** 12:4,4
**wrong** 22:7 25:14 25:25 27:1 29:22

**x**

**x** 1:5,11,17

**y**

**yang** 4:10 7:14,14
**yankee** 33:7
**yann** 13:9 21:6
**yeah** 12:3 13:2 14:12,20 17:19 18:7 22:22 27:19 31:2
**year** 12:9 18:20
**years** 14:18 23:24 31:4
**york** 1:2 2:3 5:4 5:11

**z**

**zaikowski** 1:12 3:1 5:2 7:2,6,25 20:15