UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re                                                  :    Chapter 11
                                                       :
DOWLING COLLEGE,                                       :
f/d/b/a DOWLING INSTITUTE,                             :
f/d/b/a DOWLING COLLEGE ALUMNI                         :    Case No. 16-75545 (REG)
ASSOCIATION,                                           :
f/d/b/a CECOM,                                         :
a/k/a DOWLING COLLEGE, INC.,                           :
                                                       :
                              Debtor.                  :
---------------------------------------------------------------x

### SUPPLEMENTAL AFFIDAVIT OF CHRISTOPHER J. CLAYTON IN SUPPORT OF APPLICATION FOR AN ORDER APPROVING THE RETENTION OF INGERMAN SMITH, LLP AS SPECIAL COUNSEL TO THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE

STATE OF NEW YORK        )
                         ) SS.:
COUNTY OF SUFFOLK        )

CHRISTOPHER J. CLAYTON, being duly sworn, deposes and says:

1. I am an attorney at law admitted to practice in the State of New York and the District Court for the Eastern District of New York. I am a partner at the firm of Ingerman Smith, LLP ("Ingerman"), which maintains an office at 150 Motor Parkway, Suite 400, Hauppauge, New York 11788. I submit this supplement affidavit (the "Supplemental Affidavit") in further support of the application (the "Application") of Dowling College ("Dowling" or the "Debtor") for the entry of an order authorizing the Debtor's retention of Ingerman as its special counsel *nunc pro tunc* to the Petition Date.

2. I am familiar with the matters set forth herein and make this Supplemental Affidavit in further support of the Application by the Debtor for authority to retain Ingerman as special counsel.

3.  Since at least 2011, by unique agreement with the Debtor, all attorneys and paralegals at Ingerman providing services to the Debtor have provided services at a standard hourly rate of $200 per hour.  This hourly rate will not increase during the Chapter 11 Case.

4.  Ingerman maintains records of all of its clients and the matters on which it represents such clients, and the other parties which have a substantial role in such matters.  I have caused a review of such records to be performed in order to determine Ingerman's connections with the Debtor, its creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee and any person employed in the office of the United States Trustee.  In addition, I have reviewed relationships that Ingerman has with the parties listed on the interested party list provided by the Debtor to determine if any such relationships give rise to an actual or potential conflict of interest or otherwise affect its disinterestedness.

5.  Other than as previously disclosed in my prior affidavit to this Court in support of the Application dated November 29, 2016 (the "Prior Affidavit"), Ingerman has no connections to disclose.

6.  As previously disclosed in the Prior Affidavit, on or about November 23, 2016, Ingerman received a retainer via the Escrow Advance Agreement (defined herein) in the amount of $15,000 (the "Retainer") in relation to anticipated services to be provided during the Chapter 11 Case.  The Retainer was funded directly by UMB Bank, National Association, as Escrow Agent (defined herein) from funds contributed by the Bond Trustees and the Series 2006 Bond Insurer (now current debtor in possession lenders) for the benefit of the Debtor.  As explained more fully in the First Day Declaration of Robert S. Rosenfeld, on or about September 20, 2016, Dowling and the Bond Trustees, the Series 2006 Bond Insurer, and UMB Bank, N.A., as escrow agent (the "Escrow Agent"), entered into that certain Escrow Agreement, pursuant to which the Bond

Trustees and Series 2006 Bond Insurer caused certain protective advances to be made under applicable loan facilities to pay expenses otherwise due by Dowling (the "<u>Escrow Advance Agreement</u>"). The terms of the Escrow Advance Agreement reflect that Dowling maintained no interest in the funds held by the Escrow Agent. To be clear, however, Dowling is expected to repay the funds advanced under the Escrow Advance Agreement as part of the claims asserted by the Bond Trustees and Series 2006 Bond Insurer. As of the Petition Date, I'm informed that approximately $2.8 million has been funded through the Escrow Advance Agreement to pay expenses of Dowling, including the Retainer and other professional fee retainers for other professional firms. Prior to establishment of the Escrow Advance Agreement, funding of fees and expense to professional firms was generally paid directly by Dowling.

7. For the avoidance of doubt and notwithstanding the source of payment of its retainer funds, Ingerman has never represented the interests of the Escrow Agent, Bond Trustees or the Series 2006 Bond Insurer who were the ultimate source of the protective advances, whether directly or indirectly. For the further avoidance of doubt, Ingerman will not represent the individual interests of any of the Escrow Agent, Bond Trustees or the Series 2006 Bond Insurer in relation to the Chapter 11 Case. Rather, Ingerman's only client in the Chapter 11 Case and the only party that it is expected to represent the interests of during the Chapter 11 Case is the Debtor.

8. Ingerman shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this Chapter 11 Case in compliance with Sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court. Ingerman also intends to make reasonable efforts to comply with the Large Case Guidelines, both in connection

with this Application and the interim and final fee applications to be filed by Ingerman in this Chapter 11 Case.

9. The following is provided in response to the request for additional information set forth in Paragraph D.1. of the Large Case Guidelines:

**Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response: Yes. Since at least 2011, all attorneys and paralegals providing services to the Debtor have provided services at a standard hourly rate of $200 per hour.

**Question:** Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Response: No.

**Question:** If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Response: Ingerman did represent the Debtor during the 12 months prepetition and all attorneys and paralegals providing services to the Debtor during this time have provided services at a standard hourly rate of $200 per hour.

**Question:** Has your client approved your prospective budget and staffing plan, and, if so for what budget period?

Response: Client did approve a general prospective budget and staffing plan as incorporated in the DIP financing budgets approved by this Court.

10. In summary, I believe Ingerman is disinterested and is well qualified to represent the Debtor as special counsel in this Chapter 11 Case.

*Christopher J. Clayton*

Sworn to before me this
19th day of January, 2018

*Vickie Moller*

Notary Public, State of New York
LIC.:
Commission Expires:

VICKIE MOLLER
Notary Public, State of New York
No. 01MO6037424, Suffolk County
Commission Expires Feb. 22, 2018

5