**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                            :        Chapter 11
                                                                 :
DOWLING COLLEGE,                                                 :        Case No. 16-75545 (REG)
f/d/b/a DOWLING INSTITUTE,                                       :
f/d/b/a DOWLING COLLEGE ALUMNI                                   :
ASSOCIATION,                                                     :
f/d/b/a CECOM,                                                   :
a/k/a DOWLING COLLEGE, INC.,                                     :
                                                                 :
                                              Debtor.            :
---------------------------------------------------------------x


**PLAN OF LIQUIDATION OF DOWLING COLLEGE PURSUANT TO**
**CHAPTER 11 OF THE BANKRUPTCY CODE**


KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York  10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Sean C. Southard
Joseph C. Corneau

*Attorneys for Dowling College, Debtor and*
*Debtor-In Possession*

Dated: New York, New York
         February 2, 2018

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................

ARTICLE 1 – DEFINITIONS AND RULES OF INTERPRETATION ............................

        A. Definitions...............................................................................................

        B. Rules of Interpretation...........................................................................

ARTICLE 2 – PAYMENT OF CLAIMS NO REQUIRED TO BE CLASSIFIED ............

    2.1. Claims Not Classified ......................................................................................

        (a) Administrative Expense Claims ...........................................................

        (b) The DIP Term Loans ...........................................................................

        (c) Priority Tax Claims ..............................................................................

        (d) Professional Fee Claims.......................................................................

ARTICLE 3 – CLASSIFICATION OF CLAIMS AND INTERESTS .............................

    3.1. Criterion of Class ...........................................................................................

    3.2. Class Categories .............................................................................................

ARTICLE 4 – TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ...............

    4.1. Class 1 (Prepetition Series 1996 Bonds) .......................................................

    4.2. Class 2 (Prepetition Series 2002 Bonds) .......................................................

    4.3. Class 3 (Prepetition Series 2006 Bonds) .......................................................

    4.4. Class 4 (Prepetition Series 2015 Bonds)........................................................

    4.5. Class 5 (Other Secured Claims) .....................................................................

    4.6. Class 6 (Priority Non-Tax Claims) .................................................................

    4.7. Class 7 (General Unsecured Claims) ..............................................................

i

ARTICLE 5 – MEANS OF IMPLEMENTATION OF THE PLAN ..................................

5.1. Plan Funding ....................................................................................................

    (a) General ...............................................................................................................

    (b) Priority Tax Claims and Priority Non-Tax Claims .................................

5.2. Appointment of Plan Administrator....................................................................

    (a) Appointment of Plan Administrator .......................................................

    (b) Governance............................................................................................

    (c) Succession Matters ................................................................................

    (d) Indemnification .....................................................................................

5.3. Powers and Duties of Plan Administrator...........................................................

    (a) Powers and Duties .................................................................................

5.4. Establishment of Unsecured Creditor Trust .......................................................

    (a) Appointment of Unsecured Creditor Trust.............................................

    (b) Unsecured Creditor Trust Oversight Committee ...................................

    (c) Governance............................................................................................

    (d) Succession Matters ................................................................................

    (e) Funding of Unsecured Creditor Trust....................................................

    (f) Transfer of Certain Estate Assets to Unsecured Creditor Trust..............

    (g) Purpose of the Unsecured Creditor Trust...............................................

    (h) Federal Income Tax Treatment of the Unsecured Creditor Trust ...........

    (i) Indemnification ......................................................................................

5.5. Powers and Obligations of the Unsecured Creditor Trust and Unsecured
Creditor Trustee ..........................................................................................

    (a) Powers and Duties .................................................................................

5.6. Cooperation between Plan Administrator and Unsecured Creditor Trust ........

5.7. Establishment of Reserves and Funds...............................................................

      (a) Administrative Reserve .........................................................................

      (b) Disputed Claim Reserves .......................................................................

5.8. Indefeasibility of Distributions .......................................................................

5.9. Preservation of Causes of Action ....................................................................

5.10. Disposition of Records ...................................................................................

5.11. General Disposition of Assets.........................................................................

5.12. Administrative Expense Claims Bar Date .......................................................

5.13. Deadline for Filing Applications Seeking Payment of Professional Fee
Claims ........................................................................................................................

5.14. Execution of Documents to Effectuate Plan ..................................................

5.15. Dissolution Upon Closing of the Case ...........................................................

      (a) Automatic Dissolution...........................................................................

      (b) Judicial Dissolution ..............................................................................

      (c) Dissolution of Board of Trustees..........................................................

5.16. Post-Confirmation Reports and Fees .............................................................

      (a) Reporting to Office of the United States Trustee ..................................

      (b) Reporting to Prepetition Bond Trustees ................................................

5.17. Creditors' Committee ....................................................................................

5.18. Insurance Preservation .................................................................................

ARTICLE 6 – TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED
        LEASES....................................................................................

6.1. General Provisions ............................................................................................

6.2. Notice of Demand Rejection/Rejection Bar Date ............................................

6.3. Compensation and Benefit Programs ................................................................

ARTICLE 7 – CONDITIONS PRECEDENT; CONFIRMATION & EFFECTIVE
DATE.........................................................................................................

7.1. Conditions Precedent to Confirmation of the Plan ..........................................

7.2. Conditions Precedent to the Effective Date ....................................................

7.3. Waiver of Conditions Precedent ......................................................................

ARTICLE 8 – INJUNCTIONS; RELEASE; EXCULPATION .........................................

8.1. General Injunctions ..........................................................................................

(a) Injunctions against Interference with Consummation or
Implementation of Plan...........................................................................

(b) Plan Injunction ..........................................................................................

(c) Release of Collateral ................................................................................

8.2. Releases and Exculpations ...............................................................................

(a) Releases by Debtor ....................................................................................

(b) Release by Prepetition Bond Trustees......................................................

(c) Exculpation ...............................................................................................

8.3. No Bar to Claims Against Third Parties ..........................................................

8.4. All Distributions Received in Full and Final Satisfaction ...............................

8.5. No Modification of Res Judicata Effect...........................................................

8.6. Cancellation of Securities ................................................................................

8.7. No Discharge ....................................................................................................

ARTICLE 9 – PROVISIONS GOVERNING DISTRIBUTIONS .....................................

9.1. Distributions by Plan Administrator and Unsecured Creditor Trust ...............

9.2. Frequency of Distributions

9.3. Payment in U.S. Dollars....................................................................................

9.4. Claims in U.S. Dollars ......................................................................................

9.5. Distributions Only on Business Days ...............................................................

9.6. Transmittal of Payments and Notices ..............................................................

9.7. Record Date for Distributions...........................................................................

9.9. Unclaimed Distributions ..................................................................................

9.9. No Payments of Fractional Cents or Distributions of Less Than One Hundred Dollars..................................................................................................................

9.10. Setoff and Recoupment...................................................................................

9.11. Payment of Taxes on Distributions Received Pursuant to the Plan ...............

9.12. Compliance with Tax Withholding and Reporting Requirements...................

9.13. Disputed Distribution .....................................................................................

9.14. Claims Administration Responsibility ...........................................................

      (a) Reservation of Rights ...........................................................................

      (b) Objections to Claims ............................................................................

      (c) Filing Objections .................................................................................

      (d) Determination of Claims ......................................................................

9.15. Disallowance of Claims without Further Order of the Court ..........................

9.16. Disputed Claims .............................................................................................

9.17. Limitations on Funding of Disputed Claims Reserve .....................................

9.18. Tax Requirements for Income Generated by Disputed Claims Reserves .......

9.19. Timing of Distributions on Disputed Claims Subsequently Allowed ............

9.20. No Payment or Distribution on Disputed Claims ..........................................

ARTICLE 10 – PLAN INTERPRETATION, CONFIRMATION AND VOTING ............

10.1. Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired ...............................................................................................................

10.2. Withdrawal and Modification of Plan .............................................................

10.3. Governing Law ..............................................................................................

10.4. Voting of Claims ............................................................................................

10.5. Acceptance by Impaired Class.......................................................................

10.6. Presumed Acceptances of Plan ......................................................................

10.7. Presumed Rejections of Plan .........................................................................

10.8. Cram Down ....................................................................................................

ARTICLE 11 – RETENTION OF JURISDICTION BY BANKRUPTCY COURT ..........

ARTICLE 12 – MISCELLANEOUS PROVISIONS .........................................................

12.1. Headings .........................................................................................................

12.2. No Attorneys' Fees .......................................................................................

12.3. Notices ...........................................................................................................

12.4. Binding Effect ...............................................................................................

## INTRODUCTION

Dowling College (the "Debtor" or "Dowling") proposes this plan of liquidation (the "Plan") pursuant to section 1121 of the Bankruptcy Code.

## ARTICLE 1 - DEFINITIONS AND RULES OF INTERPRETATION

**A.    Definitions**.

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, shall have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

**1.1**    "Administrative Expense Claim" means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(a)(2) including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate and winding down the Debtor's operations during the Chapter 11 Case, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the wind-down of its operations during the Chapter 11 Case, (c) any Professional Fee Claims, whether fixed before or after the Effective Date, (d) any costs and expenses for the management, maintenance, preservation, sale, or other disposition of any Assets incurred during the Chapter 11 Case, and (e) any fees or charges assessed against the Debtor's Estate under 28 U.S.C. § 1930.

**1.2**    "Administrative Expense Claims Bar Date" shall have the meaning set forth in Section 5.12 of the Plan.

**1.3**    "Administrative Reserve" means a reserve in an amount to be determined on or before the Effective Date, established by the Plan Administrator as provided in Section 5.7 hereof, to fund post-confirmation costs and expenses of the Plan Administrator to complete the wind-down of the Debtor's Estate, which shall be funded by the Debtor's Estate or the DIP Term Loan Lenders pursuant to the DIP Note.

**1.4**    "Allowed" means, when referring to a Claim, a Claim against the Debtor (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules and as to which as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or the Claims Objection Bar Date, or as to which an objection has been interposed and such Claim or Interest has been allowed in whole or in part by a Final Order, or (ii) a Claim which has been or hereafter is listed by the Debtor in its Schedules as liquidated in an amount and not disputed or contingent, or (iii) a claim or interest that is allowed by this Plan or final order of the Bankruptcy Court.  For purposes hereof, an "Allowed Claim" shall include any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, provided, however, that (i) a Claim allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the

1

Bankruptcy Court shall not be considered an "Allowed" Claim hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) an "Allowed" Claim shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, unless otherwise specifically provided for in the Plan; and (iii) an "Allowed" Claim shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

**1.5** "Asset Disposition Waterfall" means the distribution of proceeds of Tier I Assets, Tier II Assets, Tier III Assets and Tier IV Assets as depicted on Schedule 1 hereto, consistent with the Unsecured Creditor Settlement, agreed to by ACA, the Prepetition Bond Trustees, and the Committee, which is incorporated herein and made a part of this Plan.

**1.6** "Assets" means any and all property of the Estate, including without limitation all property and other interests identified in section 541(a) of the Bankruptcy Code. Without limiting the foregoing, Assets shall include all of the Debtor's real, personal, tangible and intangible property, wherever located and whether acquired prior to or after the Petition Date, including Cash, real property, personal property, furniture, fixtures, equipment, artwork, intellectual property, accounts, tangibles, intangibles, Causes of Action (including Avoidance Actions), together with the proceeds and products, replacements and accessions thereof.

**1.7** "Avoidance Action" means any Causes of Action to avoid or recover a transfer of property of the Estate or an interest of the Debtor in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

**1.8** "Ballot" means the form distributed to a Holder of an Impaired Claim on which it is to be indicated whether such Holder accepts or rejects the Plan.

**1.9** "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Chapter 11 Case.

**1.10** "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Eastern District of New York wherein the Chapter 11 Case is pending.

**1.11** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, and any Local Rules of the Bankruptcy Court, as amended, in effect and applicable to the  Debtor's Chapter 11 Case.

**1.12** "Bar Date" means March 10, 2017 (May 30, 2017 for governmental entities), unless the Court has set a different date by which a specific Creditor must file a proof of claim, in which case it means, for such specific Creditor, such different date set by the Court.

**1.13** "Brookhaven Campus" means the Debtor's approximately 103-acre campus located at 1300 William Floyd Parkway, Brookhaven, New York, which was home to Dowling's School of Aviation and sports management program, Dowling's NCAA Division II athletic program, including the Brookhaven Dorm.

**1.14** "Brookhaven Dorm" means the 289-bed dormitory facility located on the Brookhaven Campus.

**1.15** "Business Day" means any day other than a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**1.16** "Cash" means legal tender of the United States of America.

**1.17** "Causes of Action" means any and all Claims, rights, actions, chose in action, suits, and causes of action belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to or after the Petition Date, and in each case whether known or unknown, in law, equity or otherwise, including Avoidance Actions, including, but not limited to, those set forth on **Exhibit B** to the Disclosure Statement.

**1.18** "Chapter 11 Case" means the case concerning the Debtor, commenced on November 29, 2016, under chapter 11 of the Bankruptcy Code, administered under case number 16-75545(REG) in the Bankruptcy Court.

**1.19** "Chief Restructuring Officer" means Robert S. Rosenfeld, the chief restructuring officer appointed by the Debtor's Board of Trustees which appointment was approved by the Bankruptcy Court on a final basis by order entered on December 16, 2016, effective as of the Petition Date.

**1.20** "Claim" means, as defined in Bankruptcy Code section 101(5): (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.21** "Claim Transfer Document" shall have the meaning set forth in Section 9.7 of this Plan.

**1.22** "Claims Objection Bar Date" means, unless otherwise extended by Order of the Court, the first Business Day that is 180 days after the Effective Date.

**1.23** "Class" means a category of Claims described in Article 3 of the Plan.

**1.24** "Collateral" means any property or interest in property of the Estate of the Debtor subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.25** "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.26** "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

**1.27** "Creditor" means any Person holding a Claim against the Debtor or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor, that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

**1.28** "Creditors' Committee" or "Committee" means the official committee of unsecured creditors appointed by the U.S. Trustee to represent the interests of unsecured creditors in the Chapter 11 Case.

**1.29** "Debtor Released Parties" means, collectively, and in each case, solely in such capacity, the Chief Restructuring Officer, the Committee, each current and former member of the Committee, the DIP Agent, the DIP Term Loan Lenders, ACA, the Prepetition Bond Trustees, the beneficial holders of the Prepetition Bonds, and, with respect to each of the foregoing, their respective officers, directors, managers, members, accountants, financial advisors, agents, advisors, attorneys, representatives or other professionals (solely in their capacities as such), and the Debtor's accountants, financial advisors, agents, advisors, attorneys, representatives or other professionals retained in the Chapter 11 Case (solely in their capacities as such).

**1.30** "Deficiency Claim" means that portion of any Allowed Claim held by a Prepetition Bond Trustee or Other Secured Creditor that exceeds the value distributed on account of such Allowed Claim pursuant to the treatment of such Allowed Claim in Class 1, 2, 3, 4, or 5 in the Plan.

**1.31** "DIP Agent" means UMB Bank, National Association, the agent designated by the DIP Lenders pursuant to the DIP Note.

**1.32** "DIP Financing Motion" means the Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor (A) to Obtain Post-Petition Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Pre-Petition Secured Creditors Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c).

**1.33** "DIP Note" means the Dowling College Debtor-in-Possession Multi-Draw Term Loan Promissory Note by and between the Debtor, the DIP Lenders, and the DIP Agent attached to the DIP Financing Motion as Exhibit A.

**1.34** "DIP Order" means the Final Order (I) Authorizing Debtor to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief entered by the Bankruptcy Court on July 14, 2017, granting the DIP Financing Motion on a final basis, and previously entered emergency and/or interim orders entered on December 5, 2016, December 22, 2016, January 10, 2017, March 15, 2017, April 12, 2017, May 26, 2017 and June 23, 2017.

**1.35** "DIP Term Loan" and "DIP Term Loans" means, individually and collectively, DIP Term Loan A, DIP Term Loan B, DIP Term Loan C and DIP Term Loan D.

**1.36** "DIP Term Loan A" means, individually and collectively, each Interim Term Loan A (as defined in the DIP Note) and each Final Term Loan A (as defined in the DIP Note) made by each Term Loan A Lender pursuant to section 1 of the DIP Note.

**1.37** "DIP Term Loan B" means, individually and collectively, each Interim Term Loan B (as defined in the DIP Note) and each Final Term Loan B (as defined in the DIP Note) made by each Term Loan B Lender pursuant to section 1 of the DIP Note.

**1.38** "DIP Term Loan C" means, individually and collectively, each Interim Term Loan C (as defined in the DIP Note) and each Final Term Loan C (as defined in the DIP Note) made by each Term Loan C Lender pursuant to section 1 of the DIP Note.

**1.39** "DIP Term Loan D" means, individually and collectively, each Interim Term Loan D (as defined in the DIP Note) and each Final Term Loan D (as defined in the DIP Note) made by each Term Loan D Lender pursuant to section 1 of the DIP Note.

**1.40** "DIP Term Loan A Lender" means ACA Financial Guaranty Corporation ("ACA") and Wilmington Trust, National Association ("Wilmington Trust"), the Prepetition Series 2006 Bond Trustee.

**1.41** "DIP Term Loan B Lender" means UMB Bank, National Association ("UMB"), as Prepetition Series 2002 Bond Trustee.

**1.42** "DIP Term Loan C Lender" means UMB, as Prepetition Series 2015 Bond Trustee.

**1.43** "DIP Term Loan D Lenders" means (a) ACA and Wilmington Trust, as Prepetition Series 2006 Bond Trustee, (b) UMB, as Prepetition 2002 Bond Trustee, and (c) UMB, as Prepetition Series 2015 Bond Trustee.

**1.44** "DIP Term Loan Lenders" means, collectively, the DIP Term Loan A Lender, the DIP Term Loan B Lender, the DIP Term Loan C Lender and the DIP Term Loan D Lenders.

**1.45** "Disallowed" means, when referring to a Claim, a Claim (including a Scheduled Claim), or any portion of a Claim, which has been disallowed or expunged by a Final Order.

**1.46** "Disclosure Statement" means the disclosure statement for the Plan, and all exhibits annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

**1.47** "Disclosure Statement Approval Order" means the Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

**1.48** "Disputed" means, with respect to a Claim against the Debtor, the extent to which the allowance of such Claim is the subject of a timely objection, complaint or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn with prejudice, or determined by a Final Order.

**1.49** "Disputed Claims Reserve" means the segregated accounts established by the Plan Administrator or Unsecured Creditors Trust, as necessary, consistent with Article 9.16 of the Plan.

**1.50** "Distribution" means any distribution made pursuant to the terms of this Plan.

**1.51** "Distribution Agent" means GCG, LLC or such other third party agent engaged by the Plan Administrator and/or the Unsecured Creditor Trust to make Distributions under the Plan.

**1.52** "Distribution Date" means any date on which a Distribution is made to holders of Allowed Claims under this Plan.  The first Distribution shall occur as soon as practicable on or after the Effective Date.

**1.53** "Effective Date" means the earlier of (a) the first Business Day after the entry of the Confirmation Order that (i) the conditions to effectiveness of the Plan set forth in Section 7.2 of the Plan have been satisfied or otherwise waived, and (ii) the effectiveness of the Confirmation Order has not been stayed, or (b) such other date following the Confirmation Date that the Debtor, in consultation with the Prepetition Bond Trustees and the Creditors' Committee, in its reasonable discretion, designates.

**1.54** "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Petition Date.

**1.55** "Fee Application Deadline" shall have the meaning set forth in Section 5.13 of the Plan.

**1.56**    "Final Order" means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

**1.57**    "General Unsecured Claim" means any Unsecured Claim against the Debtor that is not an Administrative Expense Claim, Priority Tax Claim, or Priority Non-Tax Claim. For the avoidance of doubt, any Deficiency Claim shall be a General Unsecured Claim.

**1.58**    "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.59**    "Holder" means any person that holds a Claim against the Debtor.

**1.60**    "Insurance Policies" means any policy of insurance and any agreements relating thereto that may be available to provide coverage for Claims against the Debtor, its officers, directors, trustees, or any other Person.

**1.61**    "Lien" means a "lien" as defined by section 101(37) of the Bankruptcy Code.

**1.62**    "Non-Estate Property" means personal property in the possession of the Debtor that does not constitute property of the Estate in accordance with the meaning of section 541 of the Bankruptcy Code, including the Restricted Assets.

**1.63**    "Non-Estate Property Procedures Order" means the Order Approving and Authorizing Implementation of Procedures for Identification of and Potential Disposition of Certain Personal Property entered by the Bankruptcy Court on April 12, 2017.

**1.64**    "Oakdale Campus" means the Debtor's former main campus, located at 150 Idle Hour Boulevard, Oakdale, New York 11769, which was sold during the Chapter 11 Case prior to the Effective Date.

**1.65**    "Other Secured Creditor" means the holder of a Secured Claim other than the Prepetition Bond Trustees.

**1.66** "<u>Person</u>" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or governmental unit or subdivision thereof or other entity.

**1.67** "<u>Petition Date</u>" means November 29, 2016, the date upon which the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

**1.68** "<u>Plan</u>" means this Plan and any exhibits or schedules annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

**1.69** "<u>Plan Administrator</u>" means Robert S. Rosenfeld, or such other person or entity appointed in accordance with the Plan.

**1.70** "<u>Plan Administrator Agreement</u>" means the agreement between the Debtor and the Plan Administrator in a form and substance reasonably satisfactory to the Prepetition Bond Trustees and the Creditors' Committee.

**1.71** "<u>Plan Supplement</u>" means the supplement to the Plan that includes documents and instruments required to implement the Plan, including, without limitation, the Plan Administrator Agreement and the Unsecured Creditor Trust Agreement, which shall be filed with the Bankruptcy Court not later than ten (10) days before the deadline to object to confirmation of the Plan established by the Disclosure Statement Approval Order.

**1.72** "<u>Post-Confirmation Expenses</u>" means the administrative expenses accrued following the Effective Date, including without limitation, all fees and expenses of the Plan Administrator, and any professionals retained by the Plan Administrator. For the avoidance of doubt, fees and expenses of the Unsecured Creditor Trust, the Unsecured Creditor Trustee and the Unsecured Creditor Trust Oversight Committee shall be paid solely from the Unsecured Creditor Trust.

**1.73** "<u>Prepetition Bond Documents</u>" means the documents evidencing and/or securing the Prepetition Bonds.

**1.74** "<u>Prepetition Bond Trustees</u>" means, collectively, the Prepetition Series 1996 Bond Trustee, the Prepetition Series 2002 Bond Trustee, the Prepetition Series 2006 Bond Trustee, and the Prepetition Series 2015 Bond Trustee.

**1.75** "<u>Prepetition Bond Trustees' Released Parties</u>" means, collectively, and in each case, solely in such capacity, the Chief Restructuring Officer, the Committee, each current and former member of the Committee, and, with respect to each of the foregoing, their respective accountants, financial advisors, agents, advisors, attorneys, representatives or other professionals (solely in their capacities as such), and the Debtor's accountants, financial advisors, agents, advisors, attorneys, representatives or other professionals retained in the Chapter 11 Case (solely in their capacities as such).

**1.76** "Prepetition Bonds" means, collectively, the Prepetition Series 1996 Bonds, the Prepetition Series 2002 Bonds, the Prepetition Series 2006 Bonds and the Prepetition Series 2015 Bonds.

**1.77** "Prepetition Series 1996 Bonds" means the civic facility refunding bonds issued in 1996 for the benefit of Dowling by the Suffolk County Industrial Development Agency ("SCIDA") pursuant to that certain Indenture of Trust dated as of June 1, 1996 (the "1996 Indenture") between SCIDA and UMB, as successor indenture trustee (the "Prepetition Series 1996 Bond Trustee").

**1.78** "Prepetition Series 2002 Bonds" means the civic facility revenue bonds issued in 2002 for the benefit of Dowling by the Town of Brookhaven Industrial Development Agency ("BIDA") pursuant to that certain Indenture of Trust dated as of November 1, 2002 (the "2002 Indenture") between BIDA and UMB, as successor indenture trustee (the "Prepetition Series 2002 Bond Trustee").

**1.79** "Prepetition Series 2006 Bonds" means the civic facility refunding bonds issued in 2006 for the benefit of Dowling by SCIDA pursuant to that certain Indenture of Trust dated as of June 1, 2006 (the "2006 Indenture") between SCIDA and Wilmington Trust as successor indenture trustee (the "Prepetition Series 2006 Bond Trustee") and ACA, as bond insurer for the Series 2006 Bonds.

**1.80** "Prepetition Series 2015 Bonds" means the taxable revenue bonds issued by Dowling in 2015 pursuant to that certain Indenture of Trust dated as of June 15, 2015 (the "2015 Indenture") between the Debtor and UMB as indenture trustee (the "Prepetition Series 2015 Bond Trustee").

**1.81** "Prepetition Senior Secured Claim" and "Prepetition Senior Secured Claims" means, individually and collectively, the claims held by the Prepetition Series 1996 Bond Trustee, the Prepetition Series 2002 Bond Trustee, the Prepetition Series 2006 Bond Trustee and the Prepetition Series 2015 Bond Trustee, which are secured by valid, fully perfected Liens with priority over all Other Secured Claims against the Assets that are Collateral for the Prepetition Series 1996 Bonds, the Prepetition Series 2002 Bonds, the Prepetition Series 2006 Bonds and the Prepetition Series 2015 Bonds, respectively, pursuant to the Prepetition Bond Documents.

**1.82** "Priority Claim Contribution" means the Cash that the Prepetition Bond Trustees will contribute from the proceeds of their respective Collateral on a pro rata basis, in an aggregate total amount equal to fifty percent (50%) of the total amount of Allowed Priority Non-Tax Claims and Allowed Priority Tax Claims.

**1.83** "Priority Non-Tax Claim" means an Unsecured Claim, other than an Administrative Expense Claim, a Priority Tax Claim, or a General Unsecured Claim, which is entitled to priority in payment under sections 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.84**    "<u>Priority Tax Claim</u>" means an Unsecured Claim or a portion of an Unsecured Claim of a governmental unit against the Debtor which is entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.85**    "<u>Professional Fee Claim</u>" means any Claim of a professional retained in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is allowed by the Bankruptcy Court pursuant to sections 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**1.86**    "<u>Professionals</u>" means those professional persons, including lawyers, financial advisors, and accountants and other professionals retained by the Debtor or the Creditors' Committee.

**1.87**    "<u>Record Date</u>" shall have the meaning set forth in Section 9.7 of this Plan.

**1.88**    "<u>Records Disposition Order</u>" means the Order Approving and Authorizing Procedures for the Disposition of the Debtor's Records entered by the Bankruptcy Court on May 26, 2017.

**1.89**    "<u>Residential Portfolio</u>" means the thirty-two (32) parcels of predominantly residential property and associated personal property owned by the Debtor as of the Petition Date located in the neighborhood adjacent to the Oakdale Campus.

**1.90**    "<u>Restricted Assets</u>" means the personal property donated to the Debtor subject to donor-imposed restrictions.

**1.91**    "<u>Scheduled Claim</u>" means a Claim that is listed in the Debtor's Schedules.

**1.92**    "<u>Schedules</u>" means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statement of financial affairs, and other schedules and statements filed by the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1007, and any amendments thereto.

**1.93**    "<u>Secured Claim</u>" means a Claim secured by a Lien, as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a judicial lien as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

**1.94**    "<u>Tax Information</u>" shall have the meaning set forth in Section 9.11(a) of this Plan.

**1.95**    "<u>Tax Information Request</u>" shall have the meaning set forth in Section 9.11(b) of this Plan.

**1.96** "Tier I Assets" means all Assets of the Debtor other than those defined herein as Tier II Assets, Tier III Assets or Tier IV Assets, excluding Causes of Action and Avoidance Actions.

**1.97** "Tier II Assets" means the real property and improvements consisting of the Oakdale Campus and the Brookhaven Campus that were pledged as Collateral for the Prepetition Series 2006 Bonds, but not including the Brookhaven Dorm.

**1.98** "Tier III Assets" means real property and improvements consisting of the Brookhaven Dorm and associated real property that was pledged as Collateral for the Prepetition Series 2002 Bonds.

**1.99** "Tier IV Assets" means real property and improvements consisting of the Residential Portfolio that was pledged as Collateral for the Prepetition Series 1996 Bonds, the Prepetition Series 2002 Bonds and the Prepetition Series 2015 Bonds.

**1.100** "U.S. Trustee" means any and all representatives and employees of the Office of the United States Trustee for the Eastern District of New York.

**1.101** "Unclaimed Distribution" means any Distribution that is unclaimed after ninety (90) days following any Distribution Date. Unclaimed Distributions shall include, without limitation: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (ii) funds representing checks which have not been paid; and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a valid address.

**1.102** "Unsecured Claim" means any Claim which is not secured by an offset or "lien," as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property. For the avoidance of doubt, the term "Unsecured Claim" includes any Deficiency Claim.

**1.103** "Unsecured Creditor Settlement" means the settlement between the Creditors' Committee and the Prepetition Bond Trustees evidenced by the Settlement Term Sheet annexed to the DIP Order as Exhibit A.

**1.104** "Unsecured Creditor Settlement Cash" means the Cash earmarked for payment of Unsecured Claims in the Asset Disposition Waterfall.

**1.105** "Unsecured Creditor Trust" or "Dowling College Unsecured Creditor Trust" means the unsecured creditor trust established under section 5.4 hereof.

**1.106** "Unsecured Creditor Trust Agreement" means the unsecured creditor trust agreement to be executed by the Debtor and the Unsecured Creditor Trustee on the Effective Date, which shall be filed as part of the Plan Supplement.

**1.107**  "Unsecured Creditor Trust Oversight Committee" means the committee established pursuant to the Unsecured Trust Agreement that shall oversee the activity of the Unsecured Creditor Trust. The Unsecured Creditor Trust Oversight Committee shall consist initially of (a) Linda Ardito, (b) Lori Zaikowski, and (c) Ultimate Power, Inc.

**1.108**  "Unsecured Creditor Trustee" means, initially, such Person designated by the Creditors' Committee in consultation with the Debtor and Prepetition Bond Trustees, which designation shall be contained in the Plan Supplement.

**1.109**  "Unsecured Creditor Trust Assets" means (a) the net Unsecured Creditor Settlement Cash after the Plan Administrator reserves an amount equal to fifty percent (50%) of the total amount of Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims, and (b) the Causes of Action, including Avoidance Actions, and the proceeds thereof.

**1.110**  "Voting Agent" means Garden City Group, LLC, which has been retained by the Debtor to perform certain solicitation and other administrative services.

## B.  Rules of Interpretation.

For purposes of this Plan: (a) where appropriate in the relevant context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any references in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in the Plan, any reference in the Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) unless otherwise specified herein, any reference to a Person as a holder of a Claim includes that Person's successors and assigns; (e) unless otherwise specified, all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan; (f) the words "herein", "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the Plan. To the extent that the Plan is inconsistent with the Disclosure Statement or provisions of the documents comprising the Plan Supplement, unless such document specifically states otherwise, the provisions of the Plan shall be controlling.

## ARTICLE 2 - PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED

### 2.1    Claims Not Classified.

No class is designated for Administrative Expense Claims, the DIP Term Loans, Professional Fee Claims, and Priority Tax Claims.

(a)    Administrative Expense Claims.

All Allowed Administrative Expense Claims, other than Professional Fee Claims, shall be paid by the Plan Administrator from the Administrative Reserve, in full, in Cash, in such amounts as are incurred in the ordinary course of the liquidation of the Debtor, or

in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's liquidation or (c) as may be agreed upon between the holder of any such Administrative Expense Claim and the Debtor.  In the event there exists any Disputed Administrative Expense Claims on the Effective Date, the Plan Administrator shall at all times hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Administrative Expense Claims. Administrative Expense Claims are not Impaired by the Plan.

       (b)    <u>The DIP Term Loans</u>.

The DIP Term Loan Lenders will receive one or more distributions of Cash equal to the Allowed amount of each DIP Term Loan as soon as practicable following the (a) the Effective Date, or (b) the date on which Collateral securing each DIP Term Loan is liquidated or reduced to Cash, in accordance with the Asset Disposition Waterfall. Each DIP Term Loan is an Allowed Claim.  The DIP Term Loans are not Impaired by the Plan.

       (c)    <u>Priority Tax Claims</u>.

On the Effective Date, or as soon thereafter as is reasonably practical, in full and final satisfaction of such Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Priority Tax Claim, or (b) such other treatment as to which the Debtor and the holder of such Allowed Priority Tax Claim shall have agreed upon in writing.  In the event any Disputed Priority Tax Claims exist on the Effective Date, the Debtor shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Priority Tax Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.  Priority Tax Claims are not Impaired by the Plan.

       (d)    <u>Professional Fee Claims</u>.

The Plan Administrator shall pay all Professional Fee Claims as soon as practicable after a Final Order has awarded such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.13 hereof.  In the event any Disputed Professional Fee Claims exist on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Professional Fee Claims until such dispute is resolved consensually or by order of the Bankruptcy Court. Professional Fee Claims are not Impaired by the Plan.

## ARTICLE 3 - CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.1    <u>Criterion of Class</u>.

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is in a different Class or Classes to the extent that the remainder of the Claim qualifies within the description of the different Class or Classes.

**3.2**    **Class Categories**.

The following classes of Claims and Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes shall be mutually exclusive:

| Class | Claim | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| Class 1 | Prepetition Series 1996 Bonds | Plan § 4.1 | Impaired | Entitled to Vote |
| Class 2 | Prepetition Series 2002 Bonds | Plan § 4.2 | Impaired | Entitled to Vote |
| Class 3 | Prepetition Series 2006 Bonds | Plan § 4.3 | Impaired | Entitled to Vote |
| Class 4 | Prepetition Series 2015 Bonds | Plan § 4.4 | Impaired | Entitled to Vote |
| Class 5 | Other Secured Claims | Plan § 4.5 | Impaired | Entitled to Vote |
| Class 6 | Priority Non-Tax Claims | Plan § 4.6 | Impaired | Entitled to Vote |
| Class 7 | General Unsecured Claims | Plan § 4.7 | Impaired | Entitled to Vote |

## ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The following treatment of and consideration to be received by holders of Allowed Claims pursuant to this Plan shall be in full and final satisfaction of such Allowed Claims.

**4.1**    **Class 1 (Prepetition Series 1996 Bonds)**.

Holders of Class 1 Allowed Claims shall receive one or more distributions on and after the Effective Date in accordance with the Asset Disposition Waterfall, up to one hundred percent (100%) of such Allowed Claim, plus any amount any amounts Allowed pursuant to section 506(b) of the Bankruptcy Code. Allowed Class 1 Prepetition Series 1996 Bonds are Allowed pursuant to the Final DIP Order. The Liens that secure the Prepetition Series 1996 Bonds are valid, binding, enforceable, and perfected liens with priority over any and all Other Secured Claims and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any Person. If the Prepetition Series 1996 Bond Trustee comes to hold a Deficiency Claim due to the lack of Collateral or otherwise resulting from the aforesaid treatment, the Prepetition Series 1996 Bond

Trustee shall not receive a distribution on account of such Deficiency Claim as a Class 7 General Unsecured Creditor until the distribution to holders of Class 7 General Unsecured Creditors (not including the Prepetition Bond Trustees) exceeds ten percent (10%) of the Allowed amount of such Claims. Each Distribution on account of the Prepetition Series 1996 Bonds shall be made by wire transfer to the Prepetition Series 1996 Bond Trustee.

### 4.2    Class 2 (Prepetition Series 2002 Bonds).

Holders of Class 2 Allowed Claims shall receive one or more distributions on and after the Effective Date in accordance with the Asset Disposition Waterfall, up to one hundred percent (100%) of such Allowed Claim, plus any amount any amounts Allowed pursuant to section 506(b) of the Bankruptcy Code. Class 2 Prepetition Series 2002 Bonds are Allowed pursuant to the Final DIP Order. The Liens that secure the Prepetition Series 2002 Bonds are valid, binding, enforceable, and perfected liens with priority over any and all Other Secured Claims and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any Person. If the Prepetition Series 2002 Bond Trustee comes to hold a Deficiency Claim due to the lack of Collateral or otherwise resulting from the aforesaid treatment, the Prepetition Series 2002 Bond Trustee shall not receive a distribution on account of such Deficiency Claim as a Class 7 General Unsecured Creditor until the distribution to holders of Class 7 General Unsecured Creditors (not including the Prepetition Bond Trustees) exceeds ten percent (10%) of the Allowed amount of such Claims. Each Distribution on account of the Prepetition Series 2002 Bonds shall be made by wire transfer to the Prepetition Series 2002 Bond Trustee.

### 4.3    Class 3 (Prepetition Series 2006 Bonds).

Holders of Class 3 Allowed Claims shall receive one or more distributions on and after the Effective Date in accordance with the Asset Disposition Waterfall, up to one hundred percent (100%) of such Allowed Claim, plus any amount any amounts Allowed pursuant to section 506(b) of the Bankruptcy Code. Class 3 Prepetition Series 2006 Bonds are Allowed pursuant to the Final DIP Order. The Liens that secure the Prepetition Series 2006 Bonds are valid, binding, enforceable, and perfected liens with priority over any and all Other Secured Claims and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any Person. If the Prepetition Series 2006 Bond Trustee (or ACA) comes to hold a Deficiency Claim due to the lack of Collateral or otherwise resulting from the aforesaid treatment, the Prepetition Series 2006 Bond Trustee (or ACA) shall not receive a distribution on account of such Deficiency Claim as a Class 7 General Unsecured Creditor until the distribution to holders of Class 7 General Unsecured Creditors (not including the Prepetition Bond Trustees) exceeds ten percent (10%) of the Allowed amount of such Claims. Each Distribution on account of the Prepetition Series 2006 Bonds shall be made by wire transfer to ACA.

**4.4    Class 4 (Prepetition Series 2015 Bonds).**

Holders of Class 4 Allowed Claims shall receive one or more distributions on and after the Effective Date in accordance with the Asset Disposition Waterfall, up to one hundred percent (100%) of such Allowed Claim, plus any amount any amounts Allowed pursuant to section 506(b) of the Bankruptcy Code. Class 4 Prepetition Series 2015 Bonds are Allowed pursuant to the Final DIP Order. The Liens that secure the Prepetition Series 2015 Bonds are valid, binding, enforceable, and perfected liens with priority over any and all Other Secured Claims and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any Person. If the Prepetition Series 2015 Bond Trustee comes to hold a Deficiency Claim due to the lack of Collateral or otherwise resulting from the aforesaid treatment, the Prepetition Series 2015 Bond Trustee shall not receive a distribution on account of such Deficiency Claim as a Class 7 General Unsecured Creditor until the distribution to holders of Class 7 General Unsecured Creditors (not including the Prepetition Bond Trustees) exceeds ten percent (10%) of the Allowed amount of such Claims. Each Distribution on account of the Prepetition Series 2015 Bonds shall be made by wire transfer to the Prepetition Series 2015 Bond Trustee.

**4.5    Class 5 (Other Secured Claims).**

On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Other Secured Claim shall receive (i) the net proceeds, if any, of the sale or other disposition of the Assets on which such Other Secured Creditor has a Lien, after payment, in full, of the DIP Term Loans secured by such Assets and payment, in full, of Senior Secured Claims secured by such Assets; or (ii) such other, less favorable treatment as may be agreed to in writing by the holder of such Allowed Other Secured Claim and the Plan Administrator. Any Deficiency Claim which may arise on account of the lack of Collateral or otherwise resulting from the aforesaid treatment shall be treated as a Class 7 General Unsecured Claim.

### 4.6   **Class 6 (Priority Non-Tax Claims)**.

On the Effective Date, or as soon thereafter as is reasonably practical, in full and final satisfaction of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim, or (b) such other treatment as to which the Debtor and the holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing.

### 4.7   **Class 7 (General Unsecured Claims)**.

Each Holder of an Allowed General Unsecured Claim shall receive one or more distributions from the Unsecured Creditor Trust, on a pro rata basis, up to one hundred percent (100%) of such Allowed General Unsecured Claim, in full and final satisfaction of such Allowed General Unsecured Claim. Distributions to Class 7 General Unsecured Claims shall be made solely from the Unsecured Creditor Trust as provided herein, and the Debtor shall have no responsibility to pay any portion of any Allowed General Unsecured Claim.

## ARTICLE 5 - MEANS OF IMPLEMENTATION OF THE PLAN

### 5.1   **Plan Funding**.

(a)   **General**. The Plan shall be funded by a combination of the proceeds of sale of certain of the Debtor's Assets, additional funding and/or use of cash collateral of the Debtor's Prepetition Bond Trustees in accordance with the Unsecured Creditor Settlement.

(b)   **Priority Tax Claims and Priority Non-Tax Claims**. The Plan Administrator shall reserve from the Unsecured Creditor Settlement Cash an amount equal to fifty percent 50% of the total amount of Allowed Priority Non-Tax Claims and Allowed Priority Tax Claims to pay such amounts, which, combined with the Priority Claim Contribution, will be used for the exclusive purpose of paying Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims consistent with the requirements of section 1129(a)(8) of the Bankruptcy Code. Remaining Unsecured Creditor Settlement Cash shall be transferred to the Unsecured Creditor Trust.

### 5.2   **Appointment of Plan Administrator**.

(a)   **Appointment of Plan Administrator**. The Confirmation Order shall provide for the appointment of the Plan Administrator. The Plan Administrator shall be deemed

the Estate's exclusive representative in accordance with § 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under §§ 704 and 1106 of the Bankruptcy Code.

(b)    Bond.  The Plan Administrator shall serve without a bond. The Prepetition Bond Trustees may, at their option, after consultation with the Committee or the Unsecured Creditor Trustee, as applicable, require the Plan Administrator to obtain a bond, provided that there is sufficient Cash available in the Debtor's Estate to purchase a bond.

(c)    Governance. The Plan Administrator shall be governed by the Plan and the Plan Administrator Agreement.

(d)    Succession Matters.   In the event the Plan Administrator dies, is terminated, or resigns for any reason, the Prepetition Bond Trustees, in consultation with the Unsecured Creditor Trustee, shall designate a successor. If the Prepetition Bond Trustees cannot agree on a successor Plan Administrator, each of the Prepetition Bond Trustees may nominate a successor Plan Administrator and request by motion on notice required by the Bankruptcy Rules that the Bankruptcy Court appoint a successor Plan Administrator from such nominees. Such successor Plan Administrator shall be deemed to succeed the Plan Administrator in all respects, without need for further order of the Bankruptcy Court. In the event of resignation or removal of the Plan Administrator, the departing Plan Administrator shall promptly (a) execute and deliver such documents, instruments and other writings as reasonably requested by the successor Plan Administrator or as ordered by the Bankruptcy Court; (b) turn over to the successor Plan Administrator all property of the Debtor's Estate (other than Unsecured Creditor Trust Assets) in his or her possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Debtor; and (c) otherwise assist and cooperate in affecting the assumption of his or her obligations  and functions by the successor Plan Administrator. The successor Plan Administrator may, in his or her discretion, retain such professionals as he or she deems necessary, including the Professionals of the departing Plan Administrator. If the Plan Administrator is replaced, the Professionals retained by the Plan Administrator shall be entitled to payment of their reasonable, undisputed fees and expenses from the Debtor's Estate through the date of the Plan Administrator's replacement.

(e)    Funding of Plan Administrator's Activities. The Plan Administrator and Prepetition Bond Trustees shall agree to a reasonable wind-down budget (the "Wind-Down Budget") on or before the Effective Date. The duties and obligations of the Plan Administrator hereunder are subject to the Wind-Down Budget.

(f)    Indemnification. The Plan Administrator and his designees, employees or professionals or any duly designated agent or representative of the Plan Administrator shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross

negligence, or fraud as determined by Final Order of the Bankruptcy Court. The Plan Administrator may, in connection with the performance of his functions, and in his sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys, accountants, financial advisors and agents, or any Final Order of the Bankruptcy Court. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and his determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court. The Debtor's Estate shall indemnify and hold harmless the Plan Administrator and his designees and Professionals, and all duly designated agents and representatives (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; provided however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

### 5.3 Powers and Duties of Plan Administrator.

(a) Powers and Duties. On the Effective Date, the Plan Administrator shall succeed to all of the rights of the Debtor and the Estate, except for those matters delegated to the Unsecured Creditor Trust and Unsecured Creditor Trustee pursuant to section 5.3 of the Plan and as otherwise provided herein, with all powers necessary to protect, conserve, and liquidate all Estate Assets, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Estate Assets (other than Unsecured Creditor Trust Assets) that, prior to the Effective Date, belonged to the Debtor pursuant to applicable law. The powers and duties of the Plan Administrator shall include, without further order of the Court, except where expressly stated otherwise, the rights:

    i.   to invest Cash in accordance with § 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims (other than General Unsecured Claims, which authority is vested in the Unsecured Creditor Trust) and pay taxes and other obligations owed by the Debtor in connection with the wind-down of the Estate in accordance with the Plan;

    ii.   to engage attorneys, consultants, agents, employees and all professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

    iii.   to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Debtor's Estate;

19

iv.    with the consent of the DIP Lenders and Prepetition Bond Trustees that have a Lien on remaining Assets (other than Unsecured Creditor Trust Assets) and on notice to the other DIP Lenders and Prepetition Bond Trustees, to dispose of, and deliver title to or otherwise realize the value of, all the remaining Assets (other than Unsecured Creditor Trust Assets);

v.    to coordinate the storage and maintenance of the Debtor's books and records;

vi.    to oversee compliance with the Debtor's accounting, finance and reporting obligations;

vii.    to prepare monthly operating reports and financial statements and United States Trustee quarterly reports;

viii.    to oversee the filing of final tax returns, audits and other corporate dissolution documents if required;

ix.    subject to Section 9.14 of the Plan, to object to Claims against the Debtor;

x.    subject to Section 9.14 of the Plan, upon agreement with the Unsecured Creditor Trustee, to compromise and settle Claims by and against the Debtor; and

xi.    to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Debtor.

xii.    to implement and/or enforce all provisions of the Plan;

xiii.    to implement and/or enforce all agreements entered into prior to the Effective Date;

xiv.    abandon any Assets (other than Unsecured Creditor Trust Assets) without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate; provided, however, that with respect to Non-Estate Assets and Restricted Assets, any such abandonment is subject to the Non-Estate Property Procedures Order;

xv.    to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan; and

xvi.    to the extent the Debtor retains any Cash after satisfaction of all of its and the Plan Administrator's obligations pursuant to the Plan, and only if the Unsecured Creditor Trust has not yet paid all Unsecured Claims in full, to transfer such remaining Cash to the Unsecured Creditor Trust.

In carrying out the powers and obligations in this section 5.3 of the Plan, the Plan Administrator shall reasonably consult with the Prepetition Bond Trustees and the Unsecured Creditor Trustee, and with respect to matters set forth herein that requires that the Plan Administrator to obtain the consent of the Prepetition Bond Trustees or the Unsecured Creditor Trustee, shall obtain such consent prior to carrying out such powers and obligations.

### 5.4    **Establishment of Unsecured Creditor Trust**.

(a)    <u>Appointment of Unsecured Creditor Trustee</u>. The Confirmation Order shall provide for the appointment of the Unsecured Creditor Trustee. The Unsecured Creditor Trustee shall be deemed the Unsecured Creditor Trust's exclusive representative in accordance with § 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under §§ 704 and 1106 of the Bankruptcy Code.

(b)    <u>Bond</u>. The Unsecured Creditor Trustee shall serve without a bond. The Unsecured Creditor Trust Oversight Committee may, at its option, after consultation with the Prepetition Bond Trustees, require the Unsecured Creditor Trust to obtain a bond, provided that there is sufficient Cash available in the Unsecured Creditor Trust to purchase a bond.

(c)    <u>Unsecured Creditor Trust Oversight Committee</u>. On or before the Effective Date, the Unsecured Creditor Trust Oversight Committee shall be appointed and shall consist of three (3) members willing to serve on the Unsecured Creditor Trust Oversight Committee. The Unsecured Creditor Trust Oversight Committee shall have the authority specified in the Unsecured Creditor Trust Agreement. The Unsecured Creditor Trustee shall consult with and provide information to the Unsecured Creditor Trust Oversight Committee with respect to any material action to be taken or not to be taken by the Unsecured Creditor Trust, and such other matters designated by the Unsecured Creditor Trust Oversight Committee.

(d)    <u>Governance</u>. The Unsecured Creditor Trust shall be governed by the Unsecured Creditor Trust Agreement, subject to the oversight of the Unsecured Creditor Trust Oversight Committee.

(e)    <u>Succession Matters</u>.  In the event the Unsecured Creditor Trustee dies, is terminated, or resigns for any reason, the Unsecured Creditor Trust Oversight Committee shall designate a successor. If the Unsecured Creditor Trust Oversight Committee cannot agree on a successor Unsecured Creditor Trustee, each of the members may nominate a successor Unsecured Creditor Trustee and request by motion on notice required by the Bankruptcy Rules that the Bankruptcy Court appoint a successor Unsecured Creditor Trustee from such nominees. Such successor Unsecured Creditor Trustee shall be deemed to succeed the Unsecured Creditor Trustee in all respects, including, but not limited to all litigation and other matters related to prosecution of the Causes of Action, without need for further order of the Bankruptcy Court. In the event of resignation or removal of the Unsecured Creditor Trustee, the departing Unsecured Creditor Trustee shall promptly (a) execute and deliver such documents, instruments and other writings as reasonably requested by the successor Unsecured Creditor Trustee or as ordered by the Bankruptcy

Court; (b) turn over to the successor Unsecured Creditor Trustee all property of the Unsecured Creditor Trust in his or her possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Unsecured Creditor Trust Assets and to the Debtor; and (c) otherwise assist and cooperate in affecting the assumption of his or her obligations  and functions by the successor Unsecured Creditor Trustee. The successor Unsecured Creditor Trustee may, in his or her discretion, retain such Professionals as he or she deems necessary, including the Professionals of the departing Unsecured Creditor Trustee. If the Unsecured Creditor Trustee is replaced, the professionals retained by the Unsecured Creditor Trustee shall be entitled to payment of their reasonable, undisputed fees and expenses from the Unsecured Creditor Trust Assets through the date of the Unsecured Creditor Trustee's replacement as approved by the Unsecured Creditor Trust Oversight Committee or otherwise allowed by order of the Bankruptcy Court.

(f)    Funding of Unsecured Creditor Trust. The Unsecured Creditor Trust shall be funded by the Unsecured Creditor Trust Assets.

(g)    Transfer of Certain Estate Assets to Unsecured Creditor Trust. On the Effective Date, the Debtor, on behalf of its itself and the Estate, shall transfer to the Unsecured Creditor Trust all of its right, title, and interest the Unsecured Creditor Trust Assets, including, without limitation, all Avoidance Actions and Causes of Action. For avoidance of doubt, the Causes of Action shall be deemed to have been automatically assigned and transferred to the Unsecured Creditor Trust on the Effective Date without the need for any further conveyance or assignment document. Upon the Effective Date, the Unsecured Creditor Trust shall be deemed to be substituted for, without further order of any court, the plaintiff in such claims and causes of action. Any recoveries on account of the Claims and Causes of Action transferred to the Unsecured Creditor Trust shall be distributed in accordance with the Plan.

(h)    Purpose of the Unsecured Creditor Trust. The Unsecured Creditor Trust shall be established for the sole purpose of distributing the Unsecured Creditor Trust Assets and the proceeds thereof in accordance with Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, with no objective to continue or engage in the conduct of a trade or business.

(i)    Federal Income Tax Treatment of the Unsecured Creditor Trust. The Unsecured Creditor Trust is intended to qualify as a liquidating trust for U.S. federal income tax purposes. In general, a liquidating trust is not a separate taxable entity for U.S. federal income tax purposes, but is instead treated as a grantor trust, i.e., a pass-through entity. All parties must treat the transfer of the Unsecured Creditor Trust Assets to the Unsecured Creditor Trust as a transfer of such assets directly to the Unsecured Creditor Trust beneficiaries, followed by the transfer of such assets by the beneficiaries to the Unsecured Creditor Trust. Consistent therewith, all parties must treat the Unsecured Creditor Trust as a grantor trust of which the Unsecured Creditor Trust beneficiaries are the owners and grantors. The Unsecured Creditor Trust beneficiaries (and any subsequent holders of interests in the Unsecured Creditor Trust) generally should be treated for U.S.

federal income tax purposes as the direct owners of an undivided interest in the Unsecured Creditor Trust Assets. The Unsecured Creditor Trustee shall determine the fair market value of the Unsecured Creditor Trust Assets as soon as possible after the Effective Date, and all parties must consistently use this valuation for all U.S. federal income tax purposes.

       (j)    <u>Indemnification</u>. The Unsecured Creditor Trustee and the Unsecured Creditor Trust Oversight Committee, and each of their respective designees, employees or professionals, or any duly designated agent or representative of the Unsecured Creditor Trustee or Unsecured Creditor Trust Oversight Committee, shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court.  The Unsecured Creditor Trust, Unsecured Creditor Trustee and the Unsecured Creditor Trust Oversight Committee may, in connection with the performance of their respective functions, and in their respective sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys, accountants, financial advisors and agents, or any Final Order of the Bankruptcy Court. Notwithstanding such authority, the Unsecured Creditor Trust, Unsecured Creditor Trustee and Unsecured Creditor Trust Oversight Committee shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court.  The Unsecured Creditor Trust shall indemnify and hold harmless the Unsecured Creditor Trustee and the Unsecured Creditor Trust Oversight Committee and each of their respective designees and Professionals, and all duly designated agents and representatives thereof (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; <u>provided</u> <u>however</u>, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

      **5.5**    <u>**Powers and Obligations of the Unsecured Creditor Trust and Unsecured Creditor Trustee**</u>.

       (a)    <u>Powers and Duties</u>. On the Effective Date, the Unsecured Creditor Trustee shall succeed to all of the rights of the Debtor with respect to the Unsecured Creditor Trust Assets necessary to protect, conserve, and liquidate all Unsecured Creditor Trust Assets, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Unsecured Creditor Trust Assets that, prior to the Effective Date, belonged to the Debtor pursuant to applicable law. The powers and

duties of the Unsecured Creditor Trustee shall include, without further order of the Court, except where expressly stated otherwise, the rights:

  i. to invest Cash in accordance with § 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed General Unsecured Claims and pay taxes and other obligations incurred by the Unsecured Creditor Trust in accordance with the Plan;

  ii. to receive, manage, invest, supervise, and protect the Unsecured Creditor Trust Assets, including paying taxes or other obligations incurred in connection with administering the Unsecured Creditor Trust Assets;

  iii. subject to the approval of the Unsecured Creditor Trust Oversight Committee, to engage attorneys, consultants, agents, employees and all professional persons, to assist the Unsecured Creditor Trust with respect to the Unsecured Creditor Trust's responsibilities;

  iv. subject to the approval of the Unsecured Creditor Trust Oversight Committee to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Unsecured Creditor Trust and the Unsecured Creditor Trust Oversight Committee and to pay all other expenses in connection with administering the Unsecured Creditor Trust Assets;

  v. to execute and deliver all documents, and take all actions, necessary to consummate the Plan and the responsibilities of the Unsecured Creditor Trust;

  vi. subject to the approval of the Unsecured Creditor Trust Oversight Committee, to dispose of, and deliver title to others of, or otherwise realize the value of, Unsecured Creditor Trust Assets;

  vii. subject to Section 9.14 of the Plan, to object to Claims against the Debtor;

  viii. subject to Section 9.14 of the Plan, upon agreement with the Plan Administrator, to compromise and settle Claims by and against the Debtor; and;

  ix. to act on behalf of the Unsecured Creditor Trust in all adversary proceedings and contested matters (including, without limitation, any Avoidance Actions and Causes of Action) assigned to the Unsecured Creditor Trust, then pending or that can be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving Unsecured Creditor Trust Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan, provided, however, that settlements by the Unsecured Creditor Trust of

Causes of Action shall be subject to the approval of the Unsecured Creditor Trust Oversight Committee. The Unsecured Creditor Trust shall be authorized to enter into settlements of Causes of Action without a hearing or Court approval; and

x.    with the approval of the Unsecured Creditor Trust Oversight Committee, abandon any Unsecured Creditor Trust Assets without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Unsecured Creditor Trust Assets; and

xi.    to the extent the Unsecured Creditor Trust retains any Cash after satisfaction of all of its obligations pursuant to the Plan, to transfer such remaining Cash to the Debtor.

In carrying out the powers and obligations in this section 5.5 of the Plan, the Unsecured Creditor Trustee shall reasonably consult with the Plan Administrator and Prepetition Bond Trustees, and with respect to matters set forth herein that require that the Unsecured Creditor Trustee to obtain the consent of the Plan Administrator or Prepetition Bond Trustees, shall obtain such consent prior to carrying out such powers and obligations.

5.6    **Cooperation Between Plan Administrator and Unsecured Creditor Trust**.

The Plan Administrator and Unsecured Creditor Trust shall cooperate with one another, in good faith, and each shall make available to other, documents and data in the possession of one or the other as needed by the Plan Administrator and Unsecured Creditor Trust to carry out the purposes of this Plan.

5.7    **Establishment of Reserves and Funds**.

(a) Administrative Reserve. On or prior to the Effective Date, the Administrative Reserve shall be established by the Debtor in consultation with the Prepetition Bond Trustees and the Committee or the Unsecured Creditor Trustee, as applicable.  If the Plan Administrator determines that additional funding of the Administrative Reserve is required, from time to time, following the Effective Date, such funding shall be made from available Cash, if any, with the prior consent of the Prepetition Bond Trustees. The Administrative Reserve shall be used to pay the Post-Confirmation Expenses, including, without limitation, costs and expenses of professionals or other advisors retained by the Plan Administrator. For the avoidance of doubt, the fees and expenses of the Unsecured Creditor Trust, the Unsecured Creditor Trustee, and the Unsecured Creditor Trust Oversight Committee, and their respective professionals, shall be paid solely from the Unsecured Creditor Trust Assets.

(b) <u>Disputed Claim Reserves</u>. As soon as practicable following the Effective Date, Disputed Claim Reserves shall be established by the Plan Administrator and the Unsecured Creditor Trustee, if and as required; provided, however, that neither the Plan Administrator nor Unsecured Creditor Trustee shall have any obligation to fund the Disputed Claim Reserves until, at the latest, immediately prior to the making of a Distribution to holders of Allowed Claims. The Disputed Claim Reserves shall be funded from available Cash in the Debtor's Estate in the case of the Plan Administrator and from Unsecured Creditor Trust Assets in the case of the Unsecured Creditor Trust, in an amount equal to the amount holders of Disputed Claims would have otherwise been entitled but for the dispute. The assets in the Disputed Claim Reserves shall be held separately from other assets held by the Plan Administrator and Unsecured Creditor Trustee, as applicable, subject to an allocable share of all expenses and obligations, on account of Disputed Claims. Funds shall be removed from the Disputed Claims Reserves as the Disputed Claims are resolved, which funds shall be distributed as provided in section 9.19 of the Plan. Notwithstanding any other provision of the Plan to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Plan Administrator and Unsecured Creditor Trustee may treat any assets allocable to, or retained on account of, the Disputed Claims Reserves as held by one or more discrete entities for federal, and applicable state, local or other, income tax purposes, and may determine that such entity or entities shall constitute "disputed ownership funds" under, and may make the election permitted by, Treasury Regulation 1.468B-9, or any successor provision thereto. All recipients of Distributions under the Plan shall be bound by, and shall report consistent with, such income tax treatment.

**5.8    Indefeasibility of Distributions**. All Distributions made under the Plan shall be indefeasible.

**5.9    Preservation of Causes of Action**.

Except as otherwise provided in this Plan or in any contract, instrument, release or agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action that the Debtor, the Committee, or the Estate may have against any person or entity are preserved, including without limitation any and all Causes of Action under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code.

**5.10    Disposition of Records**.

The Plan Administrator shall dispose of the Debtor's Records (as defined in the Records Disposition Order) consistent with the Records Disposition Order.

**5.11**    **General Disposition of Assets**.

Pursuant to section 1123(a)(5) of the Bankruptcy Code and subject to the terms of this Plan, as soon as is reasonably practicable following the Effective Date, the Plan Administrator shall sell or otherwise dispose of, and liquidate to or otherwise convert to Cash, any non-Cash Assets (other than Unsecured Creditor Trust Assets) in such manner as the Plan Administrator shall determine is in the best interests of the Estate. For the avoidance of doubt, the disposition of Non-Estate Property and Restricted Assets is subject to the Non-Estate Property Procedures Order.

**5.12**    **Administrative Expense Claims Bar Date**.

With the exception of Professional Fee Claims, persons asserting and Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after notice of the Effective Date has been mailed (the "Administrative Expense Claims Bar Date"). No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Expense Claim that fails to file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment as against the Debtor, its Estate and the Unsecured Creditor Trust.

**5.13**    **Deadline for Filing Applications For Payment of Professional Fee Claims**.

All parties seeking payment of Professional Fee Claims arising prior to the Effective Date must file with the Bankruptcy Court a final application and/or an application for payment of reasonable fees and expenses on the date that is 30 days after notice of the Effective Date has been mailed (the "Fee Application Deadline").  Any Professional failing to file and serve such application on or before the Fee Application Deadline shall be forever barred from asserting any such right to payment against the Debtor, its Estate and the Unsecured Creditor Trust.

**5.14**    **Execution of Documents to Effectuate Plan**.

From and after the Effective Date, the Plan Administrator shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan, with the exception of any instrument or document relating to or intended to be prepared by the Unsecured Creditor Trust. Entry of the Confirmation Order shall authorize the Plan Administrator to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan.   All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action.

**5.15**    **Dissolution Upon Closing of the Case**.

(a)    <u>Automatic Dissolution</u>. Following the Effective Date, the Debtor, through the activities of the Plan Administrator, shall continue in existence for the purposes of, among other things, completing the liquidation of its Assets, winding up its affairs and filing appropriate tax returns.  Upon the entry of an order closing this Chapter 11 Case, the Debtor shall be deemed dissolved for all purposes. No other actions or filings or payments shall be required in furtherance of such dissolution.

(b)    <u>Judicial Dissolution</u>. The Debtor may, in its discretion, seek judicial dissolution pursuant to Article 11 of the New York Not for Profit Corporation Law ("<u>NPCL</u>"), as made applicable and modified by section 216 of the New York Education Law ("<u>NYEL</u>"), by obtaining consent from the New York State Board of Regents ("<u>BOR</u>") to file a Petition for Dissolution and, with the consent of the BOR, filing a Petition for Dissolution in the Supreme Court of the State of New York pursuant to NPCL § 1102 and NYEL § 216-a(13).

(c)    <u>Dissolution of Board of Trustees</u>. Upon the Effective Date, the Debtor's Board of Trustees shall be dissolved and the members thereof shall have no further obligation or duty with respect to the Debtor, the Estate or the Chapter 11 Case.

### 5.16    <u>Post-Confirmation Reports and Fees</u>.

(a)    <u>Reporting to Office of the United States Trustee</u>. Following the Effective Date and until the Chapter 11 Case is closed, not less than once every ninety (90) days, the Plan Administrator shall file all post-Effective Date reports required during such periods and shall pay from the Administrative Reserve all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. §1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717. The Unsecured Creditor Trustee shall provide the Plan Administrator with records relating to its receipts and disbursements reasonably necessary for the Plan Administrator to comply with this section 5.16 of the Plan. The Unsecured Creditors Trust shall be responsible for its pro rata share of post-Effective Date fees based upon its disbursements, and shall promptly remit such share of post-Effective Date fees to the Plan Administrator upon written request.

(b)    <u>Reporting to Prepetition Bond Trustees</u>. Unless otherwise agreed by the Plan Administrator and the Prepetition Bond Trustees, following the Effective Date and until the Chapter 11 Case is closed or the Claims in Classes 1, 2, 3, 4, 5, and 6 are paid in full, whichever comes first, the Plan Administrator shall provide periodic reports in a form reasonably agreed to by the Prepetition Bond Trustees, on a monthly basis, or upon reasonable request, with respect to the disposition of Assets remaining in the Estate, the Estate's current Cash, the costs incurred in completing the wind-down of the Estate, and such other information reasonably requested by the Prepetition Bond Trustees or any one of them.

### 5.17    <u>Creditors' Committee</u>.

On the Effective Date, the Creditors' Committee shall be deemed to be dissolved and the members of the Creditors' Committee shall be released and discharged from all duties and obligations arising from or related to the Chapter 11 Case, provided, however, that the Creditors' Committee shall remain in existence for the purpose of reviewing and approving fee applications of its Professionals.

**5.18    Insurance Preservation**.

Nothing in this Plan shall diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtor, the Board of Trustees, or any other Person.

## ARTICLE 6 - TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES

**6.1    General Provisions**.

All executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, or (ii) has expired or otherwise terminated pursuant to its terms.

**6.2    Notice of Deemed Rejection/Rejection Bar Date**.

Any party to an executory contract or unexpired lease that is rejected in accordance with Section 6.1 shall file a proof of Claim for damages from such rejection no later than thirty (30) days after the Effective Date. The failure to timely file a proof of Claim shall be deemed a waiver of any Claim in connection with the rejection of such contract or lease.

**6.3    Compensation and Benefit Programs**.

To the extent not previously terminated, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies and programs of the Debtor applicable generally to its employees or officers in effect on the Confirmation Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans and life, accidental death and dismemberment insurance plans, shall be terminated as of the Effective Date.

## ARTICLE 7 - CONDITIONS PRECEDENT

**7.1    Conditions Precedent to Confirmation of the Plan**.

The following conditions must be satisfied, or otherwise waived in accordance with Section 7.3, on or before the Confirmation Date:

(a)    The Disclosure Statement Order shall have been entered and shall have become a Final Order; and

(b)    The entry of the Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor, the Prepetition Bond Trustees, and the Creditors' Committee, and shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud; (iv) approve the Plan Administrator Agreement; (v) approve the Unsecured Creditor Trust Agreement; and (vi) establish the Administrative Expense Claims Bar Date.

**7.2    Conditions Precedent to the Effective Date.**

The Effective Date shall not occur and no obligations under the Plan shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 7.3 hereof, on or before the Effective Date:

(a)    The Confirmation Order shall have been entered and no stay of its effectiveness of the same shall have been issued within fourteen (14) days following the entry of the Confirmation Order;

(b)    The Confirmation Order shall have authorized and approved the appointment of the Plan Administrator, the Unsecured Creditor Trustee and the Unsecured Creditor Trust Oversight Committee;

(c)    The Debtor shall have sufficient Cash on hand to pay all Administrative Expense Claims and fund the Administrative Reserve; and

(d)    The Wind-Down Budget shall be agreed to by the Plan Administrator and the Prepetition Bond Trustees.

**7.3    Waiver of Conditions Precedent.**

Each of the conditions precedent in Sections 7.1 and 7.2 hereof may be waived or modified without further Court approval, in whole or in part, but only with the consent of each of the Debtor, the Prepetition Bond Trustees, and the Creditors' Committee.

## ARTICLE 8 - INJUNCTION; RELEASES; EXCULPATION

**8.1    General Injunctions.**

**The following provisions shall apply and shall be fully set forth in the Confirmation Order.**

**(a)    Injunctions Against Interference with Consummation or Implementation of Plan.  All holders of Claims shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate, the Plan Administrator, the Unsecured Creditor Trust, the Unsecured Creditor Trustee, or the Unsecured Creditor Trust Oversight Committee with the intent or effect of interfering with the consummation and**

implementation of this Plan and the transfers, payments and Distributions to be made hereunder.

(b)    <u>Plan Injunction</u>.  Except as otherwise specifically provided for by this Plan, as and from the Effective Date, all Persons shall be enjoined from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any encumbrance of any kind; and/or (iii) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the Debtor, the Estate, the Plan Administrator, the Unsecured Creditor Trust, the Unsecured Creditor Trustee, or the Unsecured Creditor Trust Oversight Committee (and its members) to the fullest extent authorized or provided by the Bankruptcy Code.

(c)    <u>Release of Collateral</u>.    Except as expressly provided otherwise in the Plan, unless a Holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan, each Holder of (A) an Allowed Secured Claim; and (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (x) turn over and release to the Debtor any and all property that secures or purportedly secures such Claim; and (y) execute such documents and instruments as the Debtor requires to evidence such claimant's release of such property; and (ii) on the Effective Date, all claims, rights, title and interest in such property shall revert to the Debtor, free and clear of all Claims against the Debtor, including (without limitation) liens, charges, pledges, encumbrances and/or security interests of any kind. No Distribution hereunder shall be made to or on behalf of any Holder of such Claim unless and until such Holder executes and delivers to the Debtor such release of liens. Any such Holder that fails to execute and deliver such release of liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a Holder of a Disputed Claim shall not be required to execute and deliver such release of liens until the time such Claim is Allowed or Disallowed.

8.2    <u>Releases and Exculpations.</u>

(a)    <u>Releases by Debtor.</u>  Upon the Effective Date, the Debtor, on behalf of itself and the Estate, conclusively, absolutely, unconditionally, irrevocably and forever releases and discharges each of the Debtor Released Parties of and from any and all past, present and future legal actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under applicable non bankruptcy law, and any and all alter-ego, lender liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct,

indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may have heretofore accrued, occurring from the beginning of time to and including the Effective Date and/or related in any way to, directly or indirectly, and/or arising out of and/or connected with, the Debtor and its Estate, the Chapter 11 Case,  the DIP Note, the Prepetition Bond Documents, the Debtor's financial statements and/or the Debtor's cessation of operations (including any such claims based on theories of alleged negligence, misrepresentation, nondisclosure or breach of fiduciary duty); **provided**, **however**, that nothing in this Section 8.2(a) of the Plan shall (i) affect the liability of any Person due to fraud, willful misconduct, or gross negligence, as determined by a Final Order; and (ii) liability for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality, (c) laws regarding the regulation of securities administered by the Securities and Exchange Commission or (d) any criminal laws of the United States, any state, city or municipality.   From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to the Plan.

(b)    **Release by Prepetition Bond Trustees**.    Upon the Effective Date, each of the Prepetition Bond Trustees conclusively, absolutely, unconditionally, irrevocably and forever releases and discharges each of the Prepetition Bond Trustees' Released Parties of and from any and all past, present and future legal actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under applicable non bankruptcy law, and any and all alter-ego, lender liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may have heretofore accrued, occurring from the beginning of time to and including the Effective Date and/or related in any way to, directly or indirectly, and/or arising out of and/or connected with, the Debtor and its Estate, the Chapter 11 Case,  the DIP Note, the Prepetition Bond Documents, the Debtor's financial statements and/or the Debtor's cessation of operations (including any such claims based on theories of alleged negligence, misrepresentation, nondisclosure or breach of fiduciary duty); **provided**, **however**, that nothing in this Section 8.2(b) of the Plan shall (i) affect the liability of any Person due to fraud, willful misconduct, or gross negligence, as determined by a Final Order; and (ii) liability for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the

environmental laws of the United States or any state, city or municipality, (c) laws regarding the regulation of securities administered by the Securities and Exchange Commission or (d) any criminal laws of the United States, any state, city or municipality. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to the Plan.

(c)    **Exculpation**.   As of the Confirmation Date, the Debtor and its directors, trustees, officers, employees, financial advisors, attorneys, and other professionals and agents shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.   To the fullest extent permitted by section 1125(e) of the Bankruptcy Code, the Debtor, the DIP Lenders, the Prepetition Bond Trustees, the Creditors' Committee, and their respective members (acting in such capacity), employees and professionals (including professional firms and individuals within such firms), shall not have or incur any liability to any holder of any Claim or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Chapter 11 Case, the Disclosure Statement, the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Chapter 11 Case, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, including, without limitation, the steps taken to effectuate the transactions described in Article 5 of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions constituting fraud, willful misconduct or gross negligence as determined by a Final Order; and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### 8.3    No Bar to Claims Against Third Parties.

Except as set forth herein, Holders of Claims against the Debtor are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtor.

### 8.4    All Distributions Received in Full and Final Satisfaction.

Except as otherwise set forth herein, all payments, all Distributions to be made in accordance with the Plan on account of Claims, and all rights conferred under this Plan shall be received in full and final satisfaction of the Estate's obligations for such Claims as against the Debtor, its property and the Estate.

### 8.5    No Modification of Res Judicata Effect.

The provisions of this Article 8 are not intended, and shall not be construed, to modify the res judicata effect of any order entered in the Chapter 11 Case, including, without limitation, the Confirmation Order and any order finally determining Professional Fee Claims to any Professional.

**8.6** **Cancellation of Securities**.

Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, the Prepetition Bonds shall be cancelled, and the Prepetition Bonds and related Prepetition Bond Documents shall continue in effect solely to the extent they relate to and are necessary to (i) allow applicable distributions pursuant to the Plan, (ii) permit each of the Prepetition Bond Trustees to be compensated for fees and reimbursed for expenses including expenses of their respective professionals, assert their respective charging liens, enforce their respective indemnities and other rights and protections with respect to and pursuant to the Prepetition Bond Documents, (iii) permit each of the Prepetition Bond Trustees to set one or more record dates and distribution dates with respect to the distribution of funds to beneficial holders of the Prepetition Bonds, as applicable, (iv) otherwise govern the relationship between each of the Prepetition Bond Trustees and the respective holders of the Prepetition Bonds, (v) permit each of the Prepetition Bond Trustees to appear in the Chapter 11 Case, and (vi) permit each of the Prepetition Bond Trustees to perform any functions that are necessary in connection with the foregoing clauses (i) through (v).

**8.7** **No Discharge**.

Pursuant to Bankruptcy Code § 1141(d)(3), the Confirmation Order will not discharge the Debtor of any debts.

## ARTICLE 9 - PROVISIONS GOVERNING DISTRIBUTIONS

**9.1** **Distributions by Plan Administrator and Unsecured Creditor Trust**.

The Plan Administrator shall make Distributions on account of Administrative Claims, the DIP Term Loans, Priority Tax Claims, Professional Fee Claims, Class 1 (Prepetition Series 1996 Bonds), Class 2 (Prepetition Series 2002 Bonds), Class 3 (Prepetition Series 2006 Bonds), Class 4 (Prepetition Series 2015 Bonds), Class 5 (Other Secured Claims) and Class 6 (Priority Non-Tax Claims) in accordance with Article 4 of the Plan. The Unsecured Creditor Trust shall make Distributions on account of Class 7 (General Unsecured Claims) in accordance with Article 4 of the Plan. The foregoing responsibilities are mutually exclusive. The Plan Administrator and Unsecured Creditor Trustee may each use the services of a third party to aid in the Distributions required to be made under this Plan, including the Distribution Agent. If the Plan Administrator and Unsecured Creditor Trustee each choose to use the Distribution Agent or another single agent, each of the Estate (for Distributions made by the Plan Administrator) and the Unsecured Creditor Trust (for Distributions made by the Unsecured Creditors Trust) shall contract separately with such third party and shall be responsible for the payment of fees and costs related to such services rendered to the Plan Administrator and Unsecured Creditors Trust, respectively.

**9.2** **Frequency of Distributions**.

The Plan Administrator and Unsecured Creditor Trust, as applicable, shall make

distributions not less than two times per year, or such other times that they determine appropriate, in their discretion.

9.3     **Payment in U.S. Dollars**.

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on domestic bank(s) selected by the Plan Administrator or the Unsecured Creditor Trustee in accordance with the Plan or by wire transfer from a domestic bank.

9.4     **Claims In U.S. Dollars**.

Any Claims asserted in foreign currencies shall be converted to United States Dollars in accordance with the prevailing exchange rates published by the Wall Street Journal on the Confirmation Date.

9.5     **Distributions Only on Business Days**.

Notwithstanding the foregoing provisions, if any Distribution called for under this Plan is due on a day other than a Business Day, then such Distribution shall instead be due the next Business Day.

9.6     **Transmittal of Payments and Notices**.

Except as otherwise provided in the Plan, all Distributions shall be made to the holder of a Claim by regular first-class mail, postage prepaid, in an envelope addressed to such holder at the address listed on its proof of Claim filed with the Bankruptcy Court or, if no proof of Claim was filed, (i) at the address listed on the Debtor's Schedules, or (ii) at such address that a holder of a Claim provides to the Plan Administrator or Unsecured Creditor Trust, as applicable, after the Effective Date in writing at least fifteen (15) business days prior to a Distribution Date.   Neither the Plan Administrator nor the Unsecured Creditor Trustee shall have any duty to ascertain the mailing address of any holder of a Claim other than as set forth herein. The date of payment or delivery shall be deemed to be the date of mailing.  Payments made in accordance with the provisions of this Section shall be deemed made to the holder regardless of whether such holder actually receives the payment.

9.7     **Record Date for Distributions**.

Except as otherwise provided in a Final Order of the Bankruptcy Court, transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 with appropriate filings ("Claim Transfer Document") made on or before the Effective Date (the "Record Date") shall be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Record Date.   Neither the Plan Administrator nor the Unsecured Creditor Trust shall have any obligation to recognize any transfer of any Claim occurring after the Record Date.   In making a Distribution with respect to any Claim, the Plan Administrator or Unsecured Creditor Trust, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the proof of claim filed with respect to such Claim, on the

Debtor's Schedules as the holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Record Date.

> **9.8**      <u>Unclaimed Distributions</u>.

Unclaimed Distributions (including Distributions made by checks that fail to be cashed or otherwise negotiated within ninety (90) days after the Distribution Date or which Distributions are returned to the Plan Administrator or Unsecured Creditor Trust as undeliverable to the addresses of record as of the Record Date, shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distribution(s) shall be deemed forfeited and expunged without any further action or order of the Bankruptcy Court.  Any such Unclaimed Distributions shall, as soon as is practicable, be redistributed pursuant to the provisions of the Plan.

> **9.9**      <u>No Payments of Fractional Cents or Distributions of Less Than One Hundred Dollars</u>.

(a)      Notwithstanding any provision to the contrary herein, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan.   Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with a half-penny or less being rounded down and fractions in excess of half of a penny being rounded up.

(b)      Notwithstanding any provision to the contrary herein, for purposes of administrative convenience, no Distribution of less than One Hundred Dollars ($100) shall be made pursuant to the Plan.   Whenever any Distribution of less than One Hundred Dollars ($100) under the Plan would otherwise be required, such funds will be retained by the Plan Administrator or Unsecured Creditor Trust, as applicable, for the account of the recipient until such time that successive Distributions aggregate to One Hundred Dollars ($100), at which time such payment shall be made, and if successive Distributions do not ever reach One Hundred Dollars ($100) in the aggregate, then such Distributions shall revert to the Estate or Unsecured Creditor Trust, as applicable, and redistributed in accordance with the Plan.

> **9.10**      <u>Setoff and Recoupment</u>.  Except as otherwise provided in the Plan, the Debtor and Unsecured Creditor Trust may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Debtor may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Unsecured Creditor Trust of any right of setoff or recoupment against the holder of any Claim.

> **9.11**      <u>Payment of Taxes on Distributions Received Pursuant to the Plan</u>.

(a)      Notwithstanding any provision to the contrary herein, as a condition to payment of any Distribution to a Creditor under this Plan, each Creditor shall provide a valid tax identification or social security number (collectively the "<u>Tax Information</u>") for purposes of tax reporting by the Plan Administrator or Unsecured Creditor Trust, as

applicable.  All Persons that receive Distributions under the Plan shall be responsible for reporting and paying, as applicable, any taxes on account of their Distributions.

(b)      At such time as the Plan Administrator or the Unsecured Creditor Trust, as applicable, believes that Distributions to a particular Class of Claims is likely, the Plan Administrator or Unsecured Creditor Trust, as applicable, shall request Tax Information in writing from Creditors (the "Tax Information Request").  Any Creditor who fails to respond to Tax Information Request within ninety (90) days from the date posted on the Tax Information Request, shall forfeit all Distributions such Creditor may otherwise be entitled to under this Plan and such forfeited funds will revert to the Debtor or Unsecured Creditor Trust, as applicable, to be disbursed in accordance with the terms and priorities established in this Plan.

### 9.12    Compliance With Tax Withholding and Reporting Requirements.

With respect to all Distributions made under the Plan, the Debtor and the Unsecured Creditor Trust will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

### 9.13    Disputed Distribution.

If a dispute arises as to the identity of a holder of an Allowed Claim who is to receive a Distribution, the Plan Administrator or Unsecured Creditor Trust, as applicable, may, in lieu of making such Distribution to such holder, hold such amount until the dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the parties to such dispute.

### 9.14    Claims Administration Responsibility.

(a)      Reservation of Rights.  Unless a Claim is specifically Allowed prior to or after the Effective Date, prior to the Effective Date, the Debtor and the Creditors' Committee, and after the Effective Date, the Plan Administrator and Unsecured Creditor Trust, reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, or Priority Non-Tax Claims, liens and security interests (except as to the Liens on the Collateral securing the Prepetition Bonds, which rights were waived by the Debtor pursuant to the DIP Order and relinquished by the Creditors' Committee pursuant to the Unsecured Creditor Settlement), whether under the Bankruptcy Code, other applicable law or contract.  The failure to object to any Claim prior to the Effective Date shall be without prejudice to the Plan Administrator and Unsecured Creditors Trust's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of the Claim.

(b)      Objections to Claims.  Prior to the Effective Date, the Debtor and the Creditors' Committee shall be responsible for pursuing any objection to the allowance of

any Claim.  From and after the Effective Date, the Plan Administrator and the Unsecured Creditor Trust may dispute, object to, compromise or otherwise resolve all Claims, in accordance with Sections 5.3 and 5.4 hereof.  Any compromise shall be approved by both the Plan Administrator and Unsecured Creditor Trust. Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims shall be filed and served no later than one hundred eighty (180) days after the Effective Date, provided that the Plan Administrator or Unsecured Creditor Trust may request (and the Bankruptcy Court may grant) an extension of time by filing a motion with the Bankruptcy Court.

(c)     Filing Objections.  An objection to a Claim shall be deemed properly served on the claimant if the Debtor, Committee, Plan Administrator or Unsecured Creditor Trust, as applicable, effect service of any such objection in accordance with Rule 3007 of the Bankruptcy Rules by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's proof of claim at least thirty (30) days prior to the hearing thereon. The Debtor, the Committee, the Plan Administrator or the Unsecured Creditor Trust, as applicable, may also effectuate service of an objection to a claim: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, to the signatory on the proof of claim or interest or other representative identified on the proof of claim or interest or any attachment thereto or; (iii) by first class mail, postage prepaid, on counsel that has appeared on the behalf of the claimant in the Chapter 11 Case.

(d)     Determination of Claims.  Except as otherwise agreed by the Debtor, Committee, Plan Administrator or Unsecured Creditor Trust, any Claim as to which a proof of claim or motion or request for payment was timely filed in the Chapter 11 Case may be determined and liquidated after the Effective Date pursuant to (i) an order of the Bankruptcy Court (which order has not been stayed, reversed or amended and as to which determination or any revision, modification or amendment thereof, and the time to appeal or seek review or rehearing thereof, has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (ii) applicable non-bankruptcy law.  Any Claim determined to be an Allowed Claim after the Effective Date pursuant to this section shall be treated as an Allowed Claim in accordance with the Plan.

**9.15    Disallowance of Claims without Further Order of the Court**.

As of the Effective Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a proof of Claim has not been filed by the Creditor, shall be deemed disallowed and expunged.  All Scheduled Claims that correspond to a proof of Claim filed by a particular Creditor shall be deemed to have been superseded by such later filed proof of Claim and the Scheduled Claims, regardless of priority, and shall be expunged from the claims register; provided however, that such proofs of Claim shall be subject to objection in accordance with Section 9.14 hereof.

**9.16    Disputed Claims**.

(a) Except to the extent the Court determines that a lesser amount is adequate, the

Plan Administrator or Unsecured Creditor Trust, as applicable, shall, on each Distribution Date, deposit in a Disputed Claims Reserve, Cash equal to the Distributions that would have been made to holders of Disputed Claims if such Claims were Allowed Claims in their full amounts or such lower amount as to which the holder of such Claim has agreed in writing or, in the case where any such Claim is unliquidated and/or contingent, the greater of (i) $1, and (ii) such other amount as is reserved by order of the Bankruptcy Court made upon motion of the Debtor, the Unsecured Creditor Trust, or the holder of such Claim.

(b) For purposes of effectuating the provisions of this Section 9.16 and the Distributions to holders of Allowed Claims, the Court, upon the request of any holder of a Claim, on the one hand, or the Debtor or Committee, on the other hand, may liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be the aggregate amounts of the Disputed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan and for purposes of the Disputed Claims Reserve.

(c) When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such holder would have been entitled if such holder's Claim were Allowed on the Effective Date, to the extent of available Cash to make such Distribution.

(d) In no event shall any holder of any Disputed Claim be entitled to receive (under this Plan or otherwise) any Cash payment which is greater than the amount reserved, if any, for such Disputed Claim pursuant to this Section 9.16. In no event shall the Plan Administrator or Unsecured Creditor Trust have any responsibility or liability for any loss to or of any amount reserved under this Plan unless such loss is the result of that party's fraud, willful misconduct, or gross negligence. In no event may any Creditor whose Disputed Claim is subsequently allowed, pursue or recover or from any other Creditor in respect of any funds received as Distributions under the Plan.

(e) To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, then on the next succeeding Distribution Date, the Plan Administrator or Unsecured Creditor Trust, as applicable, shall make, in accordance with the terms of this Plan, a Distribution of the excess amount reserved for such Disputed Claim.

(f) Any Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

**9.17** **<u>Limitations on Funding of Disputed Claims Reserve</u>**. Except as expressly set forth in the Plan, or otherwise agreed to in writing or ordered by the Court, neither the Plan Administrator nor the Unsecured Creditor Trust shall have any duty to fund the Disputed Claims Reserve.

**9.18** **Tax Requirements for Income Generated by Disputed Claims Reserves**.

The Plan Administrator or Unsecured Creditor Trust, as applicable, shall pay, or cause to be paid, out of the funds held in a Disputed Claims Reserve, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in a Disputed Claims Reserve.   The Plan Administrator and Unsecured Creditor Trust, as applicable, shall file, or cause to be filed, any tax or information return related to a Disputed Claims Reserve that is required by any federal, state, or local taxing authority.

**9.19** **Timing of Distributions on Disputed Claims Subsequently Allowed**.

In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Distribution Date that is at least fifteen (15) business days after such Claim is Allowed.

**9.20** **No Payment or Distribution on Disputed Claims**.

Notwithstanding any provision to the contrary herein, no payments or other Distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim or some portion thereof is allowed by Final Order of the Bankruptcy Court.  For the avoidance of doubt, no portion of any Disputed Claim is entitled to a Distribution.  Holders of Disputed Claims shall be bound, obligated and governed in all respects by this Plan.

## ARTICLE 10 - PLAN INTERPRETATION, CONFIRMATION AND VOTING

**10.1** **Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired**.

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

**10.2** **Withdrawal and Modification of Plan**.

This Plan may be withdrawn or modified by the Debtor at any time prior to the Confirmation Date.   The Debtor or the Plan Administrator, with the consent of the Prepetition Bond Trustees and the Unsecured Creditor Trust, may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to substantial consummation thereof.  Upon request by the Plan Administrator, with the consent of the Prepetition Bond Trustees and Unsecured Creditor Trust, the Plan may be modified after substantial consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

**10.3** **Governing Law**.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Plan, the laws of the State of New York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

### 10.4   **Voting of Claims**.

Each holder of an Allowed Claim as of the Record Date in Classes 1 through 7 shall be entitled to vote to accept or reject the Plan.  The Disclosure Statement Order shall govern the manner and procedures for casting of Ballots with the Voting Agent.

### 10.5   **Acceptance by Impaired Class**.

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 10.6   **Cram Down**.

The Debtor will request, in the event that at least one (1) impaired Class entitled to vote on the Plan accepts the Plan, that the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the possible rejection of the Plan by any impaired Class entitled to vote on the Plan and the Plan shall constitute a motion for such relief.

## ARTICLE 11 - RETENTION OF JURISDICTION BY BANKRUPTCY COURT

**11.1**   From the Confirmation Date until entry of a final decree closing the Chapter 11 Case (pursuant to 11 U.S.C.   §350 and Bankruptcy Rule 3022), the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Chapter 11 Case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor to any Creditors, holders of Claims, or other parties in interest;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

(c) to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d) to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court including, but not limited to, the Causes of Action. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction to hear and determine compromises and settlements of any and all Causes of Action;

(e) to enforce and interpret the provisions of this Plan, the Confirmation Order, the Plan Administrator Agreement and the Unsecured Creditor Trust Agreement;

(f) to hear and determine any matters relating to the appointment and replacement of the Plan Administrator and Unsecured Creditor Trustee;

(g) to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(h) to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(i) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, the Confirmation Order, the Plan Administrator Agreement, or the Unsecured Creditor Trust Agreement as may be necessary to carry out the purposes and the intent of this Plan;

(j) to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(k) to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated.

### ARTICLE 12 - MISCELLANEOUS PROVISIONS

**12.1    Headings**.

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

**12.2    No Attorneys' Fees**.

No attorneys' fees with respect to any Claim shall be payable under the Plan, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

**12.3    Notices**.

All notices, requests and demands by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, (iii) reputable overnight delivery service, all charges prepaid, or (iv) electronic mail, and shall be deemed to have been given when received and confirmed by telephone or reply email by the following parties:

<u>If to the Plan Administrator</u>:

Robert S. Rosenfeld
RSR Consulting, LLC
1330 Avenue of the Americas, Suite 23A
New York, New York 10019
Email: rsrosenfeld@rsrconsulting.com

With copy to:

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attn: Sean C. Southard
Email: ssouthard@klestadt.com

<u>If to the Unsecured Creditor Trust</u>:

To be provided in Plan Supplement.

With copy to:

SilvermanAcampora LLP
100 Jericho Quadrangle
Suite 300
Jericho, New York 11753
Attn: Ronald J. Friedman
Email: rfriedman@silvermanacampora.com

**12.4    <u>Binding Effect</u>**.

The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).   The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

[remainder of page intentionally blank]

Dated: New York, New York
         February 2, 2018

                                        Dowling College
                                        Debtor and Debtor-in-Possession


                                        By: _____
                                             Robert S. Rosenfeld
                                             Chief Restructuring Officer

Approved as to form:

By: _____
     Sean C. Southard
     Joseph C. Corneau

Klestadt Winters Jureller Southard &
Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys for Dowling College,*
*Debtor and Debtor-in-Possession*

**<u>Schedule 1</u>**

Asset Disposition Waterfall



| | |
|---|---|
| **Disposition of Tier I Assets:** | Proceeds from the disposition of Tier I Assets to be applied as follows: |

Proceeds from the disposition of Tier I Assets to be applied as follows:

1. First, in an amount sufficient to pay direct costs of sale thereof (commissions, expenses, etc.);[1] then

2. Second, $200,000 for payment of Unsecured Claims; then

3. Third, to the DIP Term Loan Lenders, in an amount sufficient to satisfy any portion of DIP Term Loan D then unpaid; then

4. Fourth, to the Prepetition Bond Trustees and to the Unsecured Creditor Trust, in an allocation of 50% to the Prepetition Bond Trustees and 50% for payment of Unsecured Claims, until the obligations of the Debtor under the Prepetition Bond Documents are paid in full; then

5. Fifth, for payment of Unsecured Claims.

Payments to the DIP Term Loan Lenders in priority (3) shall be paid to the DIP Term Loan Lenders, pro rata based on the obligations of the Debtor to each DIP Term Loan Lender on DIP Term Loan D at the time of payment.

Payments to the Prepetition Bond Trustees in priority (4) shall be paid to the Prepetition Bond Trustees, pro rata based on the obligations of the Debtor to each Prepetition Bond Trustee under the Prepetition Bond Documents at the time of payment.

---

[1] Any amount reserved for this purpose but not necessary to be redistributed pursuant to this waterfall.

| | |
|---|---|
| **Disposition of Tier II Assets:** | Proceeds from the disposition of Tier II Assets to be applied as follows:<br><br>1. First, in an amount sufficient to pay direct costs of sale thereof (commissions, expenses, etc.);[2] then<br><br>2. Second, $300,000 for payment of Unsecured Claims; then<br><br>3. Third, to the DIP Term Loan A Lender, in an amount sufficient to pay the principal and interest on DIP Term Loan A and that portion of DIP Term Loan D funded by the Prepetition Series 2006 Bond Trustee or ACA in full; then<br><br>4. Fourth, to the Prepetition Series 2006 Bond Trustee or ACA in an amount equal to 70% of the amount of the claim associated with the Prepetition Series 2006 Bonds as of the Petition Date; then<br><br>5. Fifth, to the Prepetition Bond Trustees, DIP Term Loan Lenders and for payment of Unsecured Claims, in an allocation of 90% to the Prepetition Bond Trustees and DIP Term Loan Lenders and 10% for payment of Unsecured Claims, until all prepetition and DIP Term Loans secured by Tier II Assets are satisfied in full; then<br><br>6. Sixth, for payment of Unsecured Claims. |

---

[2] Any amount reserved for this purpose but not necessary to be redistributed pursuant to this waterfall.

| Disposition of Tier III Assets: | Proceeds from the disposition of Tier III Assets to be applied as follows: |
|---|---|
| | 1. First, in an amount sufficient to pay direct costs of sale thereof (commissions, expenses, etc.);[3] then |
| | 2. Second, to the DIP Term Loan B Lender, in an amount sufficient to pay the principal and interest on DIP Term Loan B and that portion of DIP Term Loan D funded by the Series 2002 Bond Trustee in full; then |
| | 3. Third, to the Prepetition Series 2002 Bond Trustee in an amount equal to 70% of the amount of the claim associated with the Prepetition Series 2002 Bonds as of the Petition Date; then |
| | 4. Fourth, to the Prepetition Bond Trustees, DIP Term Loan Lenders and for payment of Unsecured Claims, in an allocation of 90% to the Prepetition Bond Trustees and DIP Term Loan Lenders and 10% for payment of Unsecured Claims, until all prepetition and DIP Term Loans secured by Tier III Assets are satisfied in full; then |
| | 5. Fifth, for payment of Unsecured Claims. |

---

[3] Any amount reserved for this purpose but not necessary to be redistributed pursuant to this waterfall.

| **Disposition of Tier IV Assets:** | Proceeds from the disposition of Tier IV Assets to be applied as follows: <br><br> 1. First, in an amount sufficient to pay direct costs of sale thereof (commissions, expenses, etc.);[4] then <br><br> 2. Second, $150,000 for payment of Unsecured Claims; then <br><br> 3. Third, to the DIP Term Loan C Lender, in an amount sufficient to pay the principal and interest on DIP Term Loan C and that portion of DIP Term Loan D funded by the Prepetition Series 2015 Bond Trustee in full; then <br><br> 4. Fourth, to the Prepetition Series 2015 Bond Trustee on account of the Prepetition Series 2015 Bonds in an amount equal to 85% of the amount of the claim associated with the Prepetition Series 2015 Bonds as of the Petition Date; then <br><br> 5. Fifth, to the Prepetition Bond Trustees, DIP Term Loan Lenders and for payment of Unsecured Claims, in an allocation of 90% to the Prepetition Bond Trustees and DIP Term Loan Lenders and 10% for payment of Unsecured Claims, until all prepetition and DIP Term Loans secured by Tier IV Assets are satisfied in full; then <br><br> 6. Sixth, for payment of Unsecured Claims. |
|---|---|

---

[4] Any amount reserved for this purpose but not necessary to be redistributed pursuant to this waterfall.