**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                                                  :        Chapter 11
                                                                                            :
DOWLING COLLEGE,                                                       :
f/d/b/a DOWLING INSTITUTE,                                       :        Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI             :
ASSOCIATION,                                                                :
f/d/b/a CECOM,                                                                :
a/k/a DOWLING COLLEGE, INC.,                                :
                                                                                            :
                                                        Debtor.            :
---------------------------------------------------------------x

**DECLARATION OF ROBERT S. ROSENFELD, CHIEF RESTRUCTURING OFFICER OF THE DEBTOR, IN SUPPORT OF THE DEBTOR'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363, AND 365 OF THE BANKRUPTCY CODE APPROVING SALE OF THE DEBTOR'S BROOKHAVEN CAMPUS FREE AND <u>CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS</u>**

I, ROBERT S. ROSENFELD, declare, pursuant to section 1746 of title 28 of the United States Code, as follows:

1. I am the Chief Restructuring Officer (the "<u>CRO</u>") of the above-captioned debtor and debtor in possession ("<u>Dowling</u>" or the "<u>Debtor</u>").

2. I submit this declaration in further support of the Debtor's motion seeking entry of an order (i) approving the sale of the Brookhaven Campus[1], free and clear of all liens, claims and encumbrances, security interests and other interests pursuant to a Purchase Agreement to the Successful Bidder as determined by the Bidding Procedures and (ii) granting related relief (the "<u>Sale Motion</u>") [DE 406].

3. All statements contained herein are based on personal knowledge or made upon information and belief.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion [DE 13].

4.      Prior to the Petition Date, I was retained to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  In accordance with my retention Order, entered December 16, 2016 [DE 106], I have taken over as the day-to-day manager of the Debtor and I am responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, overseeing sales or other disposition of assets, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

A.    *Bidding Procedures*

5.      On September 26, 2017, as part of the Sale Motion, the Debtor requested the entry of an order approving bidding procedures and bidder protections (the "Bidding Procedures") in relation to the sale of the Brookhaven Campus.

6.      On December 16, 2016, the Court entered an order approving those bidding procedures (the "Bidding Procedures Order") [DE 425].

B.    *Marketing Efforts*

7.      The Debtor's real estate brokers, A&G Realty Partners, LLC, Madison Hawk Partners, LLC and CBRE, Inc. (collectively, the "Campus Agents"), have extensively marketed the Brookhaven Campus through a combination of means, including by direct mailing, press releases, color brochure and offering memorandum, both traditional print[2] and web-based advertising, solicitation of other brokers, and other promotional and marketing activities, including through social media.

8.      As set forth more fully in the report prepared by the Campus Agents, dated May 17, 2018, and attached hereto as **Exhibit A**, since the first marketing efforts began, there have been over 6,000 unique visitors to the property auction webpage maintained by the Campus Agents in relation to

---

[2] Print advertisements have run in the Wall Street Journal, New York Times, Jewish Week, Newsday, Real Estate Weekly, Long Island Jewish World, and Long Island Business News.

this sale effort. The Campus Agents received 147 direct inquiries. Fifty-nine (59) parties entered into non-disclosure agreements in order to gain access to the diligence information maintained by the Campus Agents. Of those parties, the Campus Agents accompanied nineteen (19) interested parties (both up to and after the January 31, 2018 auction date, as discussed below) that toured and physically inspected the Brookhaven Campus. In addition to the property tours led by the Campus Agents, representatives of my firm and counsel to the creditors committee arranged and participated in several property tours with additional interested parties that contacted either the Debtor and its representatives or counsel to the creditors' committee.

C.  *Auction Process*

9.  Both the Bidding Procedures Order and the Bidding Procedures attached thereto provide that the schedule for the sale of the Brookhaven Campus is subject to modification and that the Auction (as defined therein) may be adjourned, continued or suspended in consultation with certain creditor groups. *See* Bidding Procedures Order, ¶ 4; Bidding Procedures, p. 1 and 12.

10.  On November 30, 2017, after consultation with the necessary creditor groups, the Debtor filed an amended notice of bid deadline and Auction for the sale of the Brookhaven Campus [DE 455], which set forth the following schedule:

| Bid Deadline: | January 25, 2018 (4:00 p.m. EST) |
| Auction: | January 31, 2018 (10:00 a.m. EST) |
| Objection Deadline: | February 2, 2018 (4:00 p.m. EST) |
| Sale Hearing: | February 5, 2018 (1:30 p.m. EST) |

11.  Prior to the Auction, the Debtor received three (3) bids for the Brookhaven Campus. Thereafter the Debtor, in consultation with the Creditors' Committee and the lenders parties to that certain Debtor-in-Possession Multi-Draw Term Loan Promissory Note dated as of November 29, 2016 (the "Lenders"), designated the three (3) bidders as Qualified Bidders and conducted the

Auction on January 31, 2018 at the law office of Certilman Balin Adler & Hyman LLP in East Meadow, New York, commencing at approximately 10:00 a.m.

12. Each Qualified Bidder was given a letter designation: Group A, B, and C, respectively.

13. One (1) of the Qualified Bidders advised the Debtor that its intention was to use the Brookhaven Campus for certain artistic purposes, potentially as a not-for-profit. Two (2) of the Qualified Bidders advised the Debtor that their intention was to redevelop the Brookhaven Campus for commercial use.

14. The Auction commenced at approximately 10:00 a.m. and only two rounds of bidding took place with extended breaks and off-the-record discussions at various points in time. At the end, the highest bid was $10,200,000, submitted by John Pjeternikaj, individually and with right of assignment to a newly formed single purpose entity ("Pjeternikaj") (Group A). The second highest bid was $10,100,000, submitted by Paradigm Ventures Group, LLC ("Paradigm") (Group C). The third Qualified Bidder, Bridgestone Capital Partners LLC ("Bridgestone") (Group B), did not submit any bid during the formal Auction proceedings that day. A copy of the transcript of the Auction is attached hereto as **Exhibit B**.

15. At that time, representatives of the Debtor, the Campus Agents, representatives of the Lenders, and the Creditors' Committee met privately and then also met with representatives of each of the (3) Qualified Bidders. In those private meetings, the Debtor advised each of the Qualified Bidders that it lacked support of consummating a transaction at the value level reached during the formal bidding.

16. At approximately 4:00 p.m., after extended discussions and negotiations between and among the Qualified Bidders, counsel and representatives for the Debtor, the Lenders and the

Committee, the Debtor announced that the Auction was being adjourned and that no determination in relation to the bids received at the Auction had been reached.

17. It was made clear to me at that time that neither the Lenders nor the Creditors' Committee supported a sale of the Brookhaven Campus at the purchase prices described above. In addition, the Auction bids were not within the range of expected values based upon information and discussions with the Campus Agents at the time of marketing. As a result, the Auction was adjourned.

18. Following the adjournment of the Auction, I engaged in many meetings and discussions with interested parties in an effort to further canvas the local developer market, better understand the likely permissible development options at the Brookhaven Campus and in an overall effort to achieve a greater value for all creditors of this estate. These meetings and discussions included the Qualified Bidders from the Auction and other potential bidders who later inquired about the property.

19. This process involved many meetings, telephone conferences, and email communications with interested parties, including with representatives of the Town of Brookhaven, my counsel and counsel to the Creditors' Committee. These efforts led to discussions with 18 additional parties after the January 31, 2018 Auction. Throughout this process, I routinely informed all the parties in interest as to the status of our efforts to enable them to track progress and evaluate the best course of action.

20. In relation to this further marketing and sale effort, I relied, in part, upon discussions with and updates from the Campus Agents, my counsel, as well as counsel to the Lenders and the Creditors' Committee.

21. The Debtor appeared before the Court on February 5, 2018, February 26, 2018, April 23, 2018, and again on May 21, 2018, each time providing the Court with status updates as to progress concerning marketing and discussions with the Town of Brookhaven.

22. As a result of these continuing efforts, on or about May 10, 2018, a formal bid was submitted to the Debtor by Triple Five Aviation Industries LLC ("Triple Five") for a purchase price of $14,000,000. Triple Five provided a deposit to the Debtor's counsel's escrow account equal to ten percent (10%) of the purchase price, or $1,400,000. Triple Five also provided an executed form of purchase agreement that is acceptable to the Debtors, a copy of which was recently filed on the Court's docket [DE 534]. As such, in consultation with the Lenders and the Creditors' Committee, it was determined that the bid by Triple Five was the highest and best offer for the Brookhaven Campus as of that point in time.

23. The Lenders and counsel for the Creditors' Committee have expressed their unanimous consent to proceeding toward sale approval with Triple Five on a prompt basis.

24. Thereafter, I organized a meeting of the Board of Trustees of Dowling College (the "Board") and recommended that the Board authorize me to enter into the APA with Triple Five and to proceed with a reasonably prompt conclusion to the Auction process previously adjourned and thereafter seek approval of the results from this Court.

25. On May 17, 2018, the Board convened by telephone and approved a resolution which authorized and approved me to execute the APA with Triple Five and to execute any and all related closing documents in order to effectuate the sale of the Brookhaven Campus to Triple Five if approved by the Court.

26. At the last hearing before this Court and in the presence of all major creditor constituencies, the Debtor's counsel explained the intention of the Debtor to seek approval of the

Triple Five bid, subject to any higher or better Qualified Bids that may be submitted, at the sale hearing which this Court set for June 4, 2018 (the "Sale Approval Hearing").

27. The Debtor docketed notice on the Court's ECF system on May 22, 2018 [DE 532] ("Notice of Sale Hearing") and thereafter served the same upon all parties in interest who previously requested notice any and all creditors asserting liens, claims or interests in relation to the Brookhaven Campus. The Campus Agents also provided email notice to all parties previously expressing any interest in acquiring the Brookhaven Campus.

28. That latest Notice of Sale Hearing made clear that any higher competing bids (which must be higher than the bid by Triple Five by at least $100,000) must be submitted to the Debtor and other parties identified in the Bidding Procedures Order and also comply with the other Qualified Bid requirements set forth therein, including a ten percent (10%) deposit and executed Modified APA on or before 5:00 p.m. on May 30, 2018 (the "Updated Bid Deadline").

29. The Notice of Sale Hearing also stated clearly that an Auction will be held on May 31, 2018 at location and time to be determined if, and only if, a Qualified Bid is received at a value of at least $14,100,000.

30. Finally, that Notice of Sale Hearing set forth the Debtor's intention to seek Court approval of the sale of the Brookhaven Campus to Triple Five, or such higher and better Qualified Bidder, at the adjourned Sale Approval Hearing.

31. No Qualified Bid was received by the Debtor on or before the Updated Bid Deadline. As such, on May 31, 2017, the Debtor, after extensive consideration by and consultation with counsel to the Creditors' Committee and representatives of and counsel to the Lenders, determined to close the Auction formally and designated Triple Five to be the successful bidder (the "Successful Bidder"), subject to approval of this Court.

32. The Purchase Agreement between the Debtor and the Successful Bidder encompasses the real property, certain personal property, fixtures and improvements which comprise the Brookhaven Campus, and certain ancillary rights tied to the real property in the nature of insurance and warranty. Notice of the Purchase Agreement with the Successful Bidder was docketed substantially contemporaneously with this Declaration. The Closing shall take place within forty-five (45) days after satisfaction or waiver of all conditions to the obligations of the Debtor and the Successful Bidder.

E.   *Debtor's Business Judgment*

33. I believe that the Sale to the Successful Bidder represents the sound business judgment of the Debtor and is appropriate in light of the facts and circumstances set forth herein. After an extensive marketing process and Auction, I believe that the Sale to the Successful Bidder is the highest and best bid because, among other things, (i) the purchase price was the highest among the Qualified Bidders and (ii) the Successful Bidder appears eager and able to close the transaction within the contemplated time frame. I believe it is important that the proposed Sale be closed as quickly as reasonably possible to avoid continuing losses and maximize the net asset value for creditors of this estate. In my view, the proposed Sale to the Successful Bidder accomplishes this.

34. Adequate notice and marketing of this sale opportunity was provided and the Debtor complied with this Court's Bidding Procedures Order. No party has filed any objection to the relief sought in the Sale Motion. The Debtor has no practical alternative to selling the Brookhaven Campus as proposed in the Sale Motion to the Successful Bidder. I believe that consummation of the sale with the Successful Bidder is in the best interest of the Debtor and its estate.

35. The Purchase Agreement with the Successful Bidder was negotiated and entered into by and among the Debtor and the Successful Bidder without collusion, in good faith and from arm's-length bargaining positions. The Successful Bidder is not an "insider" of the Debtor, as that term is defined in Section 101(31) of the Bankruptcy Code. Neither the Debtor nor the Successful Bidder has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code Section 363(n). Specifically, the Successful Bidder has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement with unrelated third parties.

36. There is no continuity or enterprise or otherwise between the Successful Bidder and the Debtor or its estate and this Court should find that the Successful Bidder should have no successor liability on account of the debtor or obligations of the Debtor.

37. The Sale also complies with applicable non-bankruptcy law, including Sections 510 and 511 of the New York Not-for-Profit Corporation Law. Based upon the extensive marketing of the Brookhaven Campus, the Auction, and the substantial additional post-Auction marketing of the Brookhaven Campus, I believe that the consideration and the terms of the Sale are fair and reasonable to the Debtor. The Sale contemplates repayment of lawful obligations of the Debtor consistent with the not-for-profit purposes of the Debtor and applicable non-bankruptcy law. No further regulatory or state court approval is necessary for the transfer of the Brookhaven Campus to the Successful Bidder in accordance with the terms of the Purchase Agreement.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is try and correct to the best of my knowledge, information and belief.

Dated: May 31, 2018

*[signature]*

Robert S. Rosenfeld
Chief Restructuring Officer