Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 8-16-75545-reg

4    Adv. Case No. 8-16-08178-reg

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    DOWLING COLLEGE,

9

10          Debtor.

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12    ZAIKOWSKI,

13                  Plaintiff,

14          v.

15    DOWLING COLLEGE,

16                  Defendants.

17    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25

1          United States Bankruptcy Court

2          290 Federal Plaza

3          Central Islip, New York 11722

4

5          June 4, 2018

6          2:05 PM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ROBERT E. GROSSMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1    HEARING re 8-16-08178-reg [4] ADJ Summons and Notice of Pre-

2    Trial Conference

3

4    HEARING re 8-16-75545-reg [74] ADJ Order Scheduling Initial

5    Case Management Conference.

6

7    HEARING re 8-16-75545-reg [425] ADJ Order approving Bidding

8    Procedures for the Sale of the Debtor's Brookhaven Campus

9    [406] Motion to Sell Property of the Estate Free and Clear

10    of Liens under 11 U.S.C 363(f) by Debtor Dowling College.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   UNITED STATES DEPARTMENT OF JUSTICE

 4        Attorney for the U.S. Trustee

 5        560 Federal Plaza

 6        Central Islip, NY 11722

 7

 8   BY:  STAN YANG

 9

10   MINTZ LEVIN

11        Attorneys for UMB Bank

12        One Financial Center

13        Boston, MA 02111

14

15   BY:  IAN HAMMEL (TELEPHONICALLY)

16

17   CERTILMAN BALIN ADLER & HYMAN

18        Attorneys for ACA Financial Guaranty Corp., Creditor

19        90 Merrick Avenue

20        East Meadow, NY 11554

21

22   BY:  RICHARD J. MCCORD

23

24

25
```

```
 1   GARFUNKEL WILD, P.C.

 2        Attorneys for UMB Bank, National Association as

 3        Indenture Trustee, Creditor

 4        111 Great Neck Road

 5        Great Neck, NY 11021

 6

 7   BY:  ADAM T. BERKOWITZ

 8

 9   SILVERMAN ACAMPORA LLP

10        Attorneys for the Official Committee of Unsecured

11        Creditors, Creditor Committee

12        100 Jericho Quadrangle, Suite 300

13        Jericho, NY 11753

14

15   BY:  RONALD J. FRIEDMAN

16

17   KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

18        Attorneys for the Debtor

19        200 West 41st Street, 17th Floor

20        New York, NY 10036

21

22   BY:  SEAN C. SOUTHARD

23

24

25
```

1    MORGAN, LEWIS & BOCKIUS LLP

2        Attorneys for Brookhaven Labs

3        101 Park Avenue

4        New York, NY 10178

5

6    BY:  GLENN E. SIEGEL

7

8    MEYER SUOZZI ENGLISH & KLEIN P.C.

9        Attorneys for Certain Members of the Dowling College

10       Board of Trustees, Interested Party

11       990 Stewart Avenue, Suite 300

12       P.O. Box 9194

13       Garden City, NY 11530

14

15   BY:  HOWARD B. KLEINBERG

16

17   BARCLAY DAMON LLP

18       Attorneys for Carrier Corporation

19       2000 HSBC Plaza

20       100 Chestnut Street

21       Rochester, NY 14604

22

23   BY:  JOHN R. WEIDER (TELEPHONICALLY)

24

25

1   OUTTEN & GOLDEN LLP

2        Attorneys for the Plaintiff, Lori Zaikowski

3        Three Park Avenue, 29th Floor

4        New York, NY 10016

5

6   BY:  RENE S. ROUPINIAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2                CLERK:  Next matter up, Dowling College.

3                MR. MCCORD:  Good afternoon, Your Honor.

4    Certilman Balman by Richard McCord for ACA Financial

5    Guarantee Corp.

6                MR. SOUTHARD:  Good afternoon, Your Honor.  Sean

7    Southard of Klestadt Winters Jureller Southard & Stevens on

8    behalf of Dowling College, Debtor-In-Possession.

9                MR. KLEINBERG:  Good afternoon, Your Honor.

10   Howard Kleinberg, Meyer Suozzi for the Dowling College Board

11   of Trustee members.

12               MR. SIEGEL:  Excuse me.  Good afternoon, Your

13   Honor.  Glenn Siegel, Morgan Lewis on behalf of Brookhaven

14   Labs.

15               MR. FRIEDMAN:  Good afternoon, Your Honor.  Ronald

16   Friedman, Silverman Acampora, counsel for the Official

17   Committee of Unsecured Creditors.

18               MR. BERKOWITZ:  Good afternoon, Your Honor.  Adam

19   Berkowitz, again, Garfunkel Wild, on behalf of UMB Bank.

20               I'm here with my colleague, Ian Hammel, who is on

21   the telephone as well.

22               MR. YANG:  Good afternoon, Your Honor.  Stan Yang

23   for the United States Trustee.

24               CLERK:  Please state your phone appearance on

25   Dowling.

1          MR. HAMMEL:  Good afternoon.

2          MS. ROUPINIAN:  Good afternoon.  Rene Roupinian of

3    Outten & Golden, appearing on behalf of Lori Zaikowski in

4    the adversary proceeding.

5          THE COURT:  That's it?

6          MR. WEIDNER:  Good afternoon, Your Honor.  John

7    Weider, Barclay Damon, LLP, appearing on a listen-only line,

8    for Carrier Corporation, mechanic's lien (indiscernible).

9          MR. HAMMEL:  Good afternoon, Your Honor.  Ian

10   Hammel on behalf of UMB Bank as Trustee.

11         THE COURT:  Is that it?

12         CLERK:  Yes.

13         THE COURT:  Okay.

14         MR. SOUTHARD:  All set?  Thank you, Your Honor.

15   Again for the record, Sean Southard on behalf of Dowling

16   College.

17         Your Honor, we have just two matters on this

18   afternoon's calendar, the first of which is the Debtor's

19   motion in relation to approval of the Brookhaven campus for

20   sale.

21         The second is the adjourned adversary proceeding

22   in relation to what we've referred to as the "Warn Act"

23   litigation.

24         If it's agreeable to Your Honor, we propose to

25   take the sale motion first.  So, Your Honor, as I mentioned,

1    we're here today seeking approval of the Debtor's sale of

2    its Brookhaven campus to Triple Five Aviation, LLC, which is

3    the entity that the Debtor has determined submitted the

4    highest and best bid in accordance with this Court's

5    approved bidding procedures.

6            Your Honor, the sale process for this Brookhaven

7    campus started formally back in September of last year when

8    the Debtor first filed its motion seeking both the entry of

9    an order approving bid procedures and related sale, notice

10   approval, and the establishment of deadlines for bids and

11   auction.  And then secondarily seeking an order, which is

12   the subject of today's hearing, seeking approval of that

13   sale and the results of that auction and sales procedures

14   process.  That was docketed at Number 406 on this Court's

15   docket.

16           Your Honor, that motion made clear that the Debtor

17   was seeking to sell approximately 105 acres, which is known

18   as the Brookhaven Campus, in the town of Brookhaven, County

19   of Suffolk, located at the William Floyd Parkway in Shirley,

20   New York.  The Court will recall that the Brookhaven Campus

21   contains several improvements, including a dormitory

22   facility as well as various other improvements, including a

23   -- what is referred to as a national aviation center.

24           The sale, Your Honor, proposed today, includes the

25   real property, all the fixtures, as well as certain personal

1    property located at the Brookhaven Campus.

2            Your Honor, in terms of liens and secured

3    positions relative to the property, the Brookhaven Campus is

4    subject to first liens and security interests in favor of

5    the Series 2006 Bond Trustee, with one exception, which is

6    that the dormitory facility I just mentioned is subject to a

7    first lien in favor of the Series 2002 Bond Trustee.  In

8    addition to those mortgages there are various mechanic's

9    liens and judgments which were lodged prior to the

10   bankruptcy filing.

11           And Your Honor will recall that you approved a

12   bidding procedures and entered a bidding procedures order

13   back in October of last year, and that was Docket Number

14   425.  That order was served, together with the sale notice,

15   on all creditors in the case.  In addition, the Debtor

16   published notice of the sale in both Newsday and The Wall

17   Street Journal.

18           Your Honor will also recall that the original sale

19   schedule was adjusted and altered to push back the bid

20   deadline and the auction date beyond the end of the year-end

21   holidays in 2017.  And that an amended notice of those

22   deadlines was filed, and again, served broadly.

23           We have been in front of this court on several

24   occasions since then with regular updates to the Court.  And

25   at the last hearing before this Court on May 21st, Your

1    Honor was advised of the high bid received as of that point,

2    which is, again, from Triple Five Aviation.

3            Thereafter, Your Honor, my office served notice of

4    that high bid, submitted by Triple Five, and that was

5    docketed at Docket Number 532, thereafter served on all of

6    the interested parties.  And that notice, Your Honor, set

7    various deadlines and gave the parties notice as to our

8    intention to proceed today, and effectively gave one last

9    opportunity to interested purchasers to submit a higher or

10   better bid by May 30th.

11           Your Honor, we thereafter provided notice to

12   interested parties as to the Debtor's determination to close

13   that auction and determined Triple Five to be the highest

14   and best bid.  And we filed a declaration, by Robert

15   Rosenfeld, who is the chief restructuring officer of the

16   Debtors, in support of the motion to approve this sale free

17   and clear of liens, claims and encumbrances.

18           Your Honor, on Friday of last week the Committee

19   also filed a statement in support of the Debtor's motion to

20   proceed with approval of the Brookhaven Campus sale to

21   Triple 5 Aviation.  No objections have been filed, Your

22   Honor.

23           And turning to the declaration of Mr. Rosenfeld,

24   which was filed on Thursday of last week, the Rosenfeld

25   declaration talks about, and explains, Mr. Rosenfeld's role

1    and responsibility in relation to the sale process.  It

2    discusses the extensive marketing efforts, both with the

3    real estate agents retained by the Debtor, as well as the

4    Debtor's representatives and the Committee, counsel in

5    particular.  That marketing, Your Honor, occurred through a

6    combination of means, including direct mailing, press

7    releases, color brochures, an offering memorandum, both

8    traditional print and web based advertising, as well as

9    direct to broker solicitation and other marketing activities

10    through social media.

11            As set forth, Your Honor, in the report which was

12    prepared by those real estate brokers, dated May 17 of 2018,

13    which was attached to Mr. Rosenfeld's declaration at Exhibit

14    A, since the first marketing efforts began there were over

15    6,000 unique visitors to the property auction webpage

16    maintained by those agents.  The agents received

17    approximately 150 direct inquiries, of those inquiries

18    approximately 60 parties entered into nondisclosure

19    agreements in order to gain access to confidential

20    information, and of those parties approximately 19 toured

21    and physically inspected the Brookhaven Campus on at least

22    one occasion, although many of them inspected on more than

23    one occasion.

24            Your Honor, in addition to those tours of those

25    interested parties led by the campus agents, the Debtor's

1    representatives and counsel to the Creditors Committee also

2    arranged and participated in several property tours with

3    additional interested parties that either contacted the

4    Debtor and its representatives or counsel to the Creditors

5    Committee.

6            Your Honor, also in Mr. Rosenfeld's declaration is

7    an explanation and recitation of the prior auction

8    proceedings that took place on January 31st.  Prior to that

9    auction the Debtor had received three bids for the

10   Brookhaven Campus.  In consultation with its creditors, the

11   Debtor designated each of those bidders as a qualified

12   bidder, and then conducted an auction at the law offices of

13   Certilman Balin in East Meadow.

14           The highest bid, which has been previously

15   reported to this Court, after the initial auction process,

16   was 10.2 million.  The second highest bid after that auction

17   was 10.1 million.  And as this Court is aware, neither the

18   lenders nor the Creditors Committee supported a sale of the

19   campus at that level of bidding or purchase price.  And the

20   level of bidding that day was less than the expected values

21   by the Debtor in relation to its understanding of estimates

22   of value prior to the auction.  So that auction was

23   adjourned.

24           And following the adjournment of that auction, the

25   Debtor engaged in many meetings and discussions with

1    interested parties in an effort to better understand both

2    the possible development opportunities at the Brookhaven

3    Campus, and generally in an overall effort to try to find a

4    greater value for the creditors of this estate.

5              Your Honor, we've previously explained, at prior

6    hearings before this Court, generally, that back and forth

7    with the interested parties, which has included various

8    representatives of the Town of Brookhaven, and overall those

9    efforts, which spanned approximately four months, led to the

10   identification of an additional 18 parties who had shown

11   interest in a possible purchase opportunity of the

12   Brookhaven Campus.

13             Overall then, on or about May 10th of this year, a

14   formal bid was submitted to the Debtor, by Triple Five

15   Aviation, and that was for a purchase price of $14 million.

16   Triple Five has provided my office with a 10 percent

17   deposit, equal to $1.4 million, and that is currently in my

18   firm's escrow account.  They have also executed a purchase

19   agreement that is in a form acceptable to the Debtor, a copy

20   of which was recently filed on this Court's docket on

21   Thursday afternoon of last week.

22             Your Honor, in consultation with the lenders and

23   the Creditors Committee, it has been determined, by the

24   Debtor, that Triple Five has submitted the highest and best

25   offer for the Brookhaven Campus and Dowling's Board of

1    Trustees has authorized and approved Mr. Rosenfeld to

2    execute that asset purchase agreement, which he in fact did,

3    and to close the sale of the Brookhaven Campus with Triple

4    Five, subject to Your Honor's approval today.

5           Your Honor, at the last hearing, as I mentioned,

6    and in the presence of all of the major creditor

7    constituencies, we did explain our intention to proceed

8    today with approval of the Triple Five offer.  Notice to

9    that effect was docketed, parties in interest were given the

10   opportunity to submit a higher or better bid.  No such bid

11   was submitted by the deadline of Wednesday last week, and

12   therefore no auction took place.  And the Debtor determined

13   to close the auction formally and provided that notice to

14   parties in interest as well.

15          Your Honor, our expectation in relation to the

16   sale approval, should Your Honor find it acceptable today

17   with Triple Five, is to close the transaction within

18   approximately 45 days.  And Your Honor, in the Debtor's

19   business judgment, the Debtor believes that the sale to

20   Triple Five is the highest and best bid, after an extensive

21   marketing process, in accordance with the approved

22   procedures entered in this Court's bidding procedures order.

23          It's important to close that proposed sale as soon

24   as possible to avoid continuing losses associated with the

25   expenses, carrying costs of the property.

1          Your Honor, for the avoidance of doubt, and I know

2     this is something that has come up previously before the

3     Court, the Debtor does not expect to make any payments or

4     distributions at closing from the proceeds to the secured

5     creditors or to any other party, and instead I think all

6     parties are in agreement that those monies will remain

7     effectively in the Debtor's account, subject to further

8     order of Your Honor, should Your Honor approve the sale

9     today.

10          Your Honor, we believe adequate notice and

11     marketing of this sale opportunity was provided and no party

12     has filed an objection to the relief sought in today's sale

13     motion.  The Debtor has no real practical alternative to

14     selling Brookhaven Campus, as proposed in the motion, and

15     therefore asserts that consummation of this sale with Triple

16     Five is in the best interest of the Debtor and its estate.

17          The purchase agreement with Triple Five was

18     negotiated and entered into by and among the Debtor and

19     Triple Five in good faith and in arm's length fashion.

20     Triple Five is not an insider of the Debtor, as that term is

21     defined in the bankruptcy code.  There is no continuity of

22     business enterprise or otherwise between Triple Five and the

23     Debtor or its estate.  And the Debtor believes that this

24     Court should find that Triple Five should have no successor

25     liability on account of the Debtor or its obligations

1    following a closing.

2            Your Honor, one other item to bring to Your

3    Honor's attention, which we've talked about previously, both

4    in relation to this sale and a prior sale, has to do with

5    the Not-For-Profit Law and the requirements under Sections

6    510 and 511 of the New York Not-For-Profit Law.  Your Honor,

7    in relation to this sale, as we've previously indicated to

8    Your Honor, our office has had many conversations with the

9    Office of the New York State Attorney General and they have

10   indeed reviewed the submissions that we've made to this

11   Court and my understanding is they have no objection to this

12   sale proceeding today, based on the representations that

13   have been made.

14           That said, for the record today, Your Honor, we

15   also do believe that this sale complies with the applicable

16   non-bankruptcy law including Sections 510 and 511 of the New

17   York Not-For-Profit Corporation Law.  The consideration and

18   the terms of the sale are fair and reasonable to the Debtor.

19   The sale contemplates that the proceeds would be used to

20   repay lawful obligations of the Debtor, consistent with the

21   not-for-profit purposes of the Debtor and applicable non-

22   bankruptcy law.  And we believe, I believe as Your Honor

23   does, that no further regulatory or state court approval is

24   necessary in relation to approval of this sale and the

25   transfer of the campus to Triple Five, subject to Your

1    Honor's approval and the closing.

2              For all of those reasons, Your Honor, the Debtor

3    requests approval of the sale today for the reasons set

4    forth on the record.

5              There is one other item that I wanted to bring to

6    Your Honor's attention this afternoon, which was somewhat of

7    a late breaking subject on Friday afternoon.  And that is

8    that Brookhaven Science Associates, which is an entity

9    formed in relation to the remediation process that has been

10   ongoing for many years in relation to Brookhaven National

11   Labs, reached out on Friday afternoon requesting

12   clarification that this sale approval and the sale order

13   would not impair their rights in relation to testing

14   essentially under -- water testing under a memorandum of

15   understanding that exists between Dowling, Brookhaven

16   Science Associates and several other agencies that are

17   involved in the remediation of ground water in the

18   Brookhaven Town.

19             THE COURT:  On this site?

20             MR. SOUTHARD:  Your Honor, there are some testing

21   wells on the north -- northern border of the Brookhaven

22   Campus that are maintained by Brookhaven Science Associates

23   under this memorandum of understanding agreement and in

24   essence they have easement-related rights to enter the

25   property for purposes of monitoring those wells and testing

1    the water, the ground water that lies underneath the Dowling

2    -- portion of the Dowling campus.  And my understanding is

3    that there are several of these types of wells around the

4    Town of Brookhaven, generally speaking, that track a plume

5    of potential contamination in the ground water from many

6    years ago.

7              THE COURT:  If they find contamination on this

8    site, is the buyer liable?

9              MR. SOUTHARD:  Your Honor, the memorandum of

10   understanding that exists provides that Dowling, as well as

11   other parties, but Dowling, and in turn Dowling's successor,

12   are indemnified by Brookhaven Science Associates.  So --

13             THE COURT:  So if the ground water is bad, and it

14   has a negative impact on the property, Brookhaven Lab is

15   liable?

16             MR. SOUTHARD:  Correct, Your Honor, ultimately.

17             THE COURT:  Not the buyer?

18             MAN:  Correct.

19             MR. SOUTHARD:  Correct, Your Honor.

20             MR. SIEGEL:  Your Honor, the way it works is that

21   Brookhaven Labs, or Brookhaven Science Associates is

22   providing an indemnification.  We, of course, can't control

23   CERCLA.  I mean, they're all liable, but we're the

24   indemnifying party with respect to anybody else who might be

25   found to be liable.

1          THE COURT:  Science is not my best subject.

2          MR. SOUTHARD:  Your Honor, the --

3          THE COURT:  Somebody goes to build something on

4    this site, there's a closing.  My understanding of closings,

5    when I used to have to be involved with this stuff, is you

6    get a phase 1, phase 2, whatever.  Let's say they go to

7    build something and the phase 2 shows there's contaminate,

8    and the buyer can't do with the site what he wants to do

9    with it, for whatever reason.  The town comes in, the

10   government comes in and says, you owe us $100 million

11   because this 100 acres is a disaster, you've got to clean it

12   up.

13         Forget the indemnification for a minute.  Am I

14   signing anything that the buyer could say, not me, I got a

15   federal order saying I'm not liable?

16         MR. SOUTHARD:  Your Honor, the extent to which the

17   Debtor -- it's cutting off the Debtor's liability arguably,

18   but no.

19         THE COURT:  The Debtor doesn't care.  The Debtor's

20   gone.  The Debtor's directors may care, because you can't

21   get rid of it, but the Debtor is gone, so forget the Debtor.

22   Can Triple Five, does Triple Five, under your order that you

23   want me to sign, get an out of jail card?

24         MR. SOUTHARD:  Your Honor, I think that -- and I

25   am no expert in CERCLA either, as Mr. Siegel has made clear

1    about his own understanding, but I don't believe that Your

2    Honor's order would cut that off.  But, however --

3            THE COURT:  But the order is confusing, because

4    your order, on the bottom of Page 6, let's say, says that,

5    and the top of Page 7 it says, "However, this is sold free

6    of any liability, free and clear of liability for the

7    buyer."  And then you couch it in terms of something I can't

8    figure out.

9            But I'm telling you today, as I've said in the

10   past, I'm not signing any order that releases the buyer from

11   potential liability, if such liability exists for

12   environmental problems by the feds or the state.  This issue

13   has been going on for 100 -- many, many years.  That's why

14   banks didn't want certain properties, you could threaten

15   them and say, take my building, and they would say I don't

16   want the building.

17           I don't believe I have the authority to absolve

18   anyone from that statutory liability, so as long as we agree

19   you're not asking me to do that then we don't have a

20   problem.  But it's going to be clear.  Now, they may in fact

21   be indemnified, that's up to -- that's a different issue.

22           MR. SOUTHARD:  The Debtor is indemnified and --

23           THE COURT:  That's fine.

24           MR. SOUTHARD:  -- to the extent to which we pass

25   it on --

1          THE COURT:  And they may then may indemnify their

2     successor, that's up to the Brookhaven Labs and the

3     agreement you have with them.

4          MR. SOUTHARD:  Yeah.

5          THE COURT:  What I'm saying is, that if somebody

6     chooses, being the feds, or the state, or the town of

7     Brookhaven, or anybody who has authority to do it, to go

8     after the current landowner at the time for some

9     environmental problems, nothing in my order is going to

10    insulate them from that.

11         MR. SOUTHARD:  I understand, Your Honor.

12         THE COURT:  So I understand the successor

13    liability with regard to corporate issues, and that's fine,

14    at least I understand it.  But there are two things in this

15    order that I want to make sure we're all in synch on.  One,

16    the environmental aspect; and two, you asked me to sell it

17    free and clear of all liens, claims, encumberances,

18    including easements.

19         I'm not sure I can wipe out an easement.  An

20    easement runs with the land.

21         MR. SOUTHARD:  Your Honor, so the extent to which

22    title has taken an exception for easements, most certainly

23    those are being likewise excepted from the scope of Your

24    Honor's order.

25         THE COURT:  Right.  Well, the order is going to be

1  clear and probably consistent with what the title company

2  says.  Because I don't think the Court, I'm not making a

3  statement for the future, I'm not sure what authority we

4  have to wipe out easements.  We may, depending on what types

5  and how they are, but as a blanket statement I've got a

6  problem with it.  And if it's not an issue in this case then

7  we're going to adjust the order to make sure it's clear that

8  we're not doing anything with easements.

9          MR. SOUTHARD:  We can certainly work to fine tune

10  the order --

11          THE COURT:  Okay.

12          MR. SOUTHARD:  -- in a way that's acceptable to

13  Your Honor.

14          THE COURT:  And so that's okay with you guys,

15  right?

16          MR. SIEGEL:  Your Honor, I mean I just wanted to

17  clarify where we are and what I think our understanding is.

18  This is effectively -- I'm sorry.  Do you want me to go

19  here?

20          MR. SOUTHARD:  Please.

21          MR. SIEGEL:  This is effectively an executory

22  contract which everybody wants assumed.  We want it assumed

23  because we're on the hook for this.  We are doing ongoing

24  remediation, we want to make sure the thing remains safe so

25  that we don't have to pay for the clean-up.  They want this

1    assumed because they want us to do that, and they want us to

2    indemnify them in the event something goes wrong.  It's just

3    this was not initially contained in any of the

4    documentation.  We picked it up at the end.

5              THE COURT:  So this was something Brookhaven Labs

6    acknowledges they may have had responsibility for, so

7    they're cleaning it up?

8              MR. SIEGEL:  Well, the MOU goes back to 2003, this

9    is something that in the mid-90's the government advised

10    Brookhaven or some predecessor of Brookhaven, that they

11    believed Brookhaven to be responsible for.  And then

12    Brookhaven entered into an agreement where they took

13    responsibility for it.

14              THE COURT:  All right.

15              MR. SIEGEL:  And that goes back to I think '96 or

16    even earlier.

17              THE COURT:  No, if that's the agreement --

18              MR. SIEGEL:  Yeah.

19              THE COURT:  -- that's fine with me.  I don't --

20    I'm not trying to create liability.

21              MR. SIEGEL:  Yeah.

22              THE COURT:  But outside of Brookhaven, if the new

23    guy comes in and finds buried oil tanks, which has nothing

24    to do with you guys --

25              MR. SIEGEL:  That has nothing to do with us.

1          THE COURT:  -- and the state asserts, or the feds

2    assert liability for that, that has nothing to do with

3    indemnification.

4          MR. SIEGEL:  They are indemnified to the extent of

5    this MOU and this MOU does not cover that.

6          THE COURT:  Okay.  No, I'm talking about a

7    separate issue.

8          MR. SIEGEL:  This has to do with wells.

9          THE COURT:  This buyer is not getting off the

10   hook, if he's on the hook, for that.

11         MR. SOUTHARD:  Correct, Your Honor.

12         THE COURT:  Dowling remains on --

13         MR. SOUTHARD:  Not by virtue of Your Honor's sale

14   order.

15         THE COURT:  Right.  So Dowling remains on the hook

16   and anybody responsible at Dowling.  And their successor

17   would -- is not getting anything from the Court where they

18   could argue, we are -- we took it free and clear of that

19   liability?

20         MR. SOUTHARD:  With regard to the type of

21   environmental issue Your Honor raises, correct?

22         THE COURT:  Okay.

23         MR. SOUTHARD:  And there -- to be clear, there was

24   a phase 1 environmental study done by Dowling that is in the

25   data room, that was reviewed by all parties.

1              THE COURT:  It couldn't have been too bad, they

2    had kids living there.

3              MR. SOUTHARD:  We're not aware of any such issues.

4    And so yes, I agree with Your Honor's statement, however.

5              THE COURT:  Okay.  So as long as the buyer is

6    aware, we're going to make sure the order is clear, and

7    that's consistent with the deal, and I got that.  There's

8    nobody from the buyer here, right?

9              MR. SOUTHARD:  Your Honor, there is a business

10   person here from the buyer, but he is not represented by

11   counsel today.

12             THE COURT:  You want to answer questions or you

13   don't want to answer?  You don't have to if you don't want

14   to.

15             MR. BIENENSTOCK:  Yeah, no, I think that it's our

16   -- that's what our understanding is.  That it's related to

17   anything that -- it's related to anything that Brookhaven

18   may --

19             THE COURT:  Since you're not represented, just for

20   my information, is what the lawyers have just said

21   consistent with what you believe your liabilities and

22   responsibilities are if you become the buyer?

23             MR. BIENENSTOCK:  Yes.

24             THE COURT:  Okay.

25             MAN:  Have you identified yourself?

1          MR. BIENENSTOCK:  Stuart Bienenstock.

2          THE COURT:  Oh, sorry.

3          MR. SOUTHARD:  Your Honor, it's --

4          THE COURT:  Hold it.  Let him identify himself,

5   please.

6          MR. SOUTHARD:  Sure.

7          MR. BIENENSTOCK:  Stuart Bienenstock from Triple

8   Five.

9          THE COURT:  Did you get that?

10          MR. SOUTHARD:  For the record Stuart Bienenstock

11   from Triple Five.

12          MAN:  And his office?  What does he do for the

13   company?

14          THE COURT:  Just tell us what he does, who he is.

15   If you tell me he's a bankruptcy lawyer that works for

16   Proskauer.

17          MR. SOUTHARD:  No.  Your Honor, Mr. Bienenstock is

18   the director of business development for Triple Five.

19          THE COURT:  Okay.  Again, he's not represented, so

20   I would not hold them, but I just wanted to know that he

21   believes it's consistent with what you're saying.

22          MR. SOUTHARD:  Yes, Your Honor.  And again, this

23   issue, regretfully, arose for the first time at 3:00 on

24   Friday afternoon.  And so Mr. Bienenstock has --

25          THE COURT:  Along with the --

1          MR. SOUTHARD:  -- like the rest of us, just --

2          THE COURT:  -- 30 other issues that are going to

3    arise at closing.

4          MR. SOUTHARD:  -- had the weekend, but we've made

5    all good faith efforts to bring the issue to a head before

6    the hearing today and have worked with counsel in that

7    fashion.  So I do not expect, and that was the point of my

8    initially raising this matter, I do not expect it to be an

9    issue and I believe we will have satisfactory language --

10          THE COURT:  Now, are you assuming that contract?

11          MR. SOUTHARD:  The current -- so the original ask

12    was essentially that this order do no harm or not impair the

13    rights.  I think we are discussing, at this point, however,

14    the potential assumption and assignment of that.

15          THE COURT:  Because I would think the buyer wants

16    to make sure he has whatever indemnification rights exist.

17          MR. SOUTHARD:  I think that's right, Your Honor.

18    And --

19          THE COURT:  And he should.

20          MR. SOUTHARD:  -- I don't think there's any

21    objection to --

22          MR. SIEGEL:  No, I think we agree that it would be

23    cleaner to do it as an assumption and assignment.

24          THE COURT:  Yeah, I think that will make it easier

25    for everybody, because I don't want to go down the road two

1    years from now and have a litigation over whether he was or

2    wasn't covered.

3              MR. SOUTHARD:  Agreed.

4              THE COURT:  So if you can just fix that up it will

5    work.

6              All right.  Anybody else want to be heard on this?

7    So we're selling it for 14 --

8              MR. SOUTHARD:  Million dollars.

9              THE COURT:  -- 14 million.  You're renegotiating,

10   in some fashion, the carve-out agreements, as I understand

11   it.

12             MR. SOUTHARD:  Yes, Your Honor.

13             THE COURT:  There still will be some

14   distributions, I assume to the unsecureds.  There will be a

15   pot of money available, to the extent the Committee believes

16   there are any potential causes of action, which will finance

17   that.  There will be money, I'm sure, to pay the

18   administrative expenses.  And none of the money will be

19   distributed to any of the lienholders or anyone else without

20   further order of the Court.

21             MR. SOUTHARD:  Correct.

22             MAN:  Correct.

23             THE COURT:  Okay.  Anybody want to be heard?  Last

24   chance.  Done.  The Court will approve the sale.

25             MR. SOUTHARD:  Thank you, Your Honor.

1          THE COURT:  Okay.

2          MR. SOUTHARD:  Your Honor, the second matter on

3     today's calendar is the adjourned adversary proceeding,

4     which is commenced by Lori Zaikowski as Class Plaintiff in

5     relation to essentially Warn Act claims against Dowling

6     College as the Defendant.

7          Your Honor, we've been in front of you many times

8     in relation to this matter, and I believe the general

9     agreement was that certain settlement efforts, which began

10    in the context of court-approved mediation and have, to some

11    extent, stalled, on account of the uncertain value

12    associated with the Brookhaven sale, can now restart based

13    on Your Honor's approval today of the sale of 14 million.

14          I would propose that we adjourn this matter for at

15    least 30 days, allow the parties to attempt to finalize --

16          THE COURT:  Do we have a mediator in this, not

17    that --

18          MR. SOUTHARD:  Your Honor, Yann Geron --

19          THE COURT:  -- I'm a big fine of that.  Huh?

20          MR. SOUTHARD:  Yann Geron was appointed by this

21    Court as mediator, however, he has not really been engaged

22    since the expiration of his original term under Your Honor's

23    order.  It's conceivable that his efforts could be useful in

24    the next 30 days, but I think, frankly, there's a bid and

25    ask that is outstanding and the parties, with the assistance

1    of the Committee --

2             THE COURT:  Well, once there's a bid and ask

3    you're just talking about monies, so you should be able to

4    solve it.

5             MR. SOUTHARD:  Agreed.

6             THE COURT:  I don't think you need a mediator when

7    it's just money.

8             MR. SOUTHARD:  We tend to agree on behalf of the

9    Debtor, and I believe the Committee is in agreement as well.

10            MR. FRIEDMAN:  Yes.

11            THE COURT:  All right.  So at the next hearing you

12   can tell me where we are on that.

13            MR. SOUTHARD:  Yes, Your Honor.

14            THE COURT:  And what are we doing with plans and

15   disclosure statements and how do we get out of this thing?

16            MR. SOUTHARD:  Your Honor, as we've told you

17   before, and there's at least one filing to this effect,

18   there is a substantial draft of the plan that essentially

19   needs to be reworked and the disclosure statement now that

20   we have some finality associated with the value of the

21   Brookhaven property.  And my proposal, subject to speaking

22   with counsel to the Committee and the Secured Creditors,

23   would be to work to have that on file in the next 60 days or

24   so, in a revised fashion, with the expectation that the

25   Brookhaven sale will hopefully close in that interim period.

1          THE COURT:  All right.  The timing makes sense.

2    Are we getting close on any statutory problems for bringing

3    --

4          MR. SOUTHARD:  November --

5          THE COURT:  -- adversaries?

6          MR. SOUTHARD:  I'm sorry, Your Honor.  November

7    29th was the filing date, in 2016, so there are, I guess,

8    five months remaining in that period before the two year

9    point is reached.

10         THE COURT:  Don't lose track of it, guys.

11         MAN:  We got it, Your Honor.

12         THE COURT:  All right.  Okay.  Anybody else want

13   to be heard?  Good.

14         So we got both pieces sold now.  We can go to a

15   plan, we can try to figure the rest of this out.  Good.

16   That's where we are.

17         MR. SOUTHARD:  Thank you, Your Honor.

18         THE COURT:  Thank you, guys.

19         MAN:  Thank you, Your Honor.

20         MAN:  Your Honor, is there going to be a date for

21   the (indiscernible)?

22         THE COURT:  Yeah.

23         CLERK:  We have July 23rd.

24         THE COURT:  That's not going to do you any good,

25   July 23rd.  Nothing is going to be new by then, right?

1          MAN:  For Zaikowski that's a fine date, Your

2     Honor.

3          MAN:  For the plan and disclosure statement.

4          THE COURT:  Well, the plan and disclosure

5     statement -- they're not going to file it for two months,

6     probably.

7          MR. SOUTHARD:  That might be a good holding date,

8     Your Honor, for purposes of the Zaikowski matter and we

9     could certainly report to the Court.

10         THE COURT:  Let's do that.  Put it on for that and

11    at some point you're going to move ahead with the litigation

12    and continue to negotiate, while you litigate.

13         MAN:  Correct.

14         THE COURT:  Because I always find that nothing

15    ever happens until whatever the 11th hour is and so whatever

16    date I put it doesn't matter, it's going to be the day

17    before that hearing date.  So the message is, on the 23rd,

18    if we don't have an agreement, it doesn't have to be

19    approved that day, but if we don't have an agreement, you're

20    going to continue -- you're going to litigation.

21         MR. SOUTHARD:  Understood, Your Honor.

22         THE COURT:  All right?

23         MR. SOUTHARD:  Thank you.

24         THE COURT:  And you can tell the other side that.

25         MAN:  They're on the phone.  They're on the phone.

1          THE COURT:  Oh.

2          MS. ROUPINIAN:  I hear you, Your Honor.

3          THE COURT:  So you heard?

4          MS. ROUPINIAN:  I heard.

5          THE COURT:  Okay.

6          MS. ROUPINIAN:  Thank you.

7          THE COURT:  Okay, guys.  Thank you.

8          MAN:  And what time is that, Your Honor?

9          THE COURT:  1:30.

10         MR. SOUTHARD:  Thank you very much, Your Honor.

11         THE COURT:  Thank you.

12         MAN:  Thank you, Your Honor.  Have a good day.

13         THE COURT:  Thank you.

14         MR. SOUTHARD:  Thank you, Your Honor.

15         (Whereupon these proceedings were concluded at

16    2:44 PM)

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                        Page      Line

5

6    Approval of Sale                    30        24

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4  transcript is a true and accurate record of the proceedings.

5

6      Sonya

   Ledanski Hyde

7

Digitally signed by Sonya
Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o,
ou, email=digital1@veritext.com,
c=US
Date: 2018.06.12 14:25:23 -04'00'

8  Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  June 12, 2018

**&**

**&**   4:17 5:17 6:1,8
  7:1 8:7 9:3

**0**

**02111**   4:13

**1**

**1**   21:6 26:24
**1.4**   15:17
**10**   15:16
**10.1**   14:17
**10.2**   14:16
**100**   5:12 6:20
  21:10,11 22:13
**10016**   7:4
**10036**   5:20
**101**   6:3
**10178**   6:4
**105**   10:17
**10th**   15:13
**11**   3:10
**11021**   5:5
**111**   5:4
**11501**   37:23
**11530**   6:13
**11554**   4:20
**11722**   2:3 4:6
**11753**   5:13
**11th**   34:15
**12**   37:25
**14**   15:15 30:7,9
  31:13
**14604**   6:21
**150**   13:17
**17**   13:12
**17th**   5:19
**18**   15:10
**19**   13:20
**1:30**   35:9

**2**

**2**   21:6,7
**200**   5:19

**2000**   6:19
**2002**   11:7
**2003**   25:8
**2006**   11:5
**2016**   33:7
**2017**   11:21
**2018**   2:5 13:12
  37:25
**21st**   11:25
**23rd**   33:23,25
  34:17
**24**   36:6
**290**   2:2
**29th**   7:3 33:7
**2:05**   2:6
**2:44**   35:16

**3**

**30**   29:2 31:15,24
  36:6
**300**   5:12 6:11
  37:22
**30th**   12:10
**31st**   14:8
**330**   37:21
**363**   3:10
**3:00**   28:23

**4**

**4**   2:5 3:1
**406**   3:9 10:14
**41st**   5:19
**425**   3:7 11:14
**45**   16:18

**5**

**5**   12:21
**510**   18:6,16
**511**   18:6,16
**532**   12:5
**560**   4:5

**6**

**6**   22:4
**6,000**   13:15

**60**   13:18 32:23

**7**

**7**   22:5
**74**   3:4

**8**

**8-16-08178**   1:4
  3:1
**8-16-75545**   1:3
  3:4,7

**9**

**90**   4:19
**90's**   25:9
**9194**   6:12
**96**   25:15
**990**   6:11

**a**

**able**   32:3
**absolve**   22:17
**aca**   4:18 8:4
**acampora**   5:9
  8:16
**acceptable**   15:19
  16:16 24:12
**access**   13:19
**account**   15:18
  17:7,25 31:11
**accurate**   37:4
**acknowledges**
  25:6
**acres**   10:17 21:11
**act**   9:22 31:5
**action**   30:16
**activities**   13:9
**adam**   5:7 8:18
**addition**   11:8,15
  13:24
**additional**   14:3
  15:10
**adequate**   17:10
**adjourn**   31:14
**adjourned**   9:21
  14:23 31:3

**adjournment**
  14:24
**adjust**   24:7
**adjusted**   11:19
**adler**   4:17
**administrative**
  30:18
**adv**   1:4
**adversaries**   33:5
**adversary**   9:4,21
  31:3
**advertising**   13:8
**advised**   12:1 25:9
**afternoon**   8:3,6,9
  8:12,15,18,22 9:1
  9:2,6,9 15:21 19:6
  19:7,11 28:24
**afternoon's**   9:18
**agencies**   19:16
**agents**   13:3,16,16
  13:25
**ago**   20:6
**agree**   22:18 27:4
  29:22 32:8
**agreeable**   9:24
**agreed**   30:3 32:5
**agreement**   15:19
  16:2 17:6,17
  19:23 23:3 25:12
  25:17 31:9 32:9
  34:18,19
**agreements**   13:19
  30:10
**ahead**   34:11
**allow**   31:15
**altered**   11:19
**alternative**   17:13
**amended**   11:21
**answer**   27:12,13
**anybody**   20:24
  23:7 26:16 30:6
  30:23 33:12

**appearance** 8:24
**appearing** 9:3,7
**applicable** 18:15
18:21
**appointed** 31:20
**approval** 9:19
10:1,10,12 12:20
16:4,8,16 18:23
18:24 19:1,3,12
31:13 36:6
**approve** 12:16
17:8 30:24
**approved** 10:5
11:11 16:1,21
31:10 34:19
**approving** 3:7
10:9
**approximately**
10:17 13:17,18,20
15:9 16:18
**arguably** 21:17
**argue** 26:18
**arm's** 17:19
**arose** 28:23
**arranged** 14:2
**asked** 23:16
**asking** 22:19
**aspect** 23:16
**assert** 26:2
**asserts** 17:15 26:1
**asset** 16:2
**assignment** 29:14
29:23
**assistance** 31:25
**associated** 16:24
31:12 32:20
**associates** 19:8,16
19:22 20:12,21
**association** 5:2
**assume** 30:14
**assumed** 24:22,22
25:1

**assuming** 29:10
**assumption** 29:14
29:23
**attached** 13:13
**attempt** 31:15
**attention** 18:3
19:6
**attorney** 4:4 18:9
**attorneys** 4:11,18
5:2,10,18 6:2,9,18
7:2
**auction** 10:11,13
11:20 12:13 13:15
14:7,9,12,15,16
14:22,22,24 16:12
16:13
**authority** 22:17
23:7 24:3
**authorized** 16:1
**available** 30:15
**avenue** 4:19 6:3
6:11 7:3
**aviation** 10:2,23
12:2,21 15:15
**avoid** 16:24
**avoidance** 17:1
**aware** 14:17 27:3
27:6

**b**

**b** 2:21 6:15
**back** 10:7 11:13
11:19 15:6 25:8
25:15
**bad** 20:13 27:1
**balin** 4:17 14:13
**balman** 8:4
**bank** 4:11 5:2
8:19 9:10
**bankruptcy** 1:1
2:1,23 11:10
17:21 18:16,22
28:15

**banks** 22:14
**barclay** 6:17 9:7
**based** 13:8 18:12
31:12
**began** 13:14 31:9
**behalf** 8:8,13,19
9:3,10,15 32:8
**believe** 17:10
18:15,22,22 22:1
22:17 27:21 29:9
31:8 32:9
**believed** 25:11
**believes** 16:19
17:23 28:21 30:15
**berkowitz** 5:7
8:18,19
**best** 10:4 12:14
15:24 16:20 17:16
21:1
**better** 12:10 15:1
16:10
**beyond** 11:20
**bid** 10:4,9 11:19
12:1,4,10,14
14:14,16 15:14
16:10,10,20 31:24
32:2
**bidder** 14:12
**bidders** 14:11
**bidding** 3:7 10:5
11:12,12 14:19,20
16:22
**bids** 10:10 14:9
**bienenstock** 27:15
27:23 28:1,1,7,7
28:10,17,24
**big** 31:19
**blanket** 24:5
**board** 6:10 8:10
15:25
**bockius** 6:1
**bond** 11:5,7

**border** 19:21
**boston** 4:13
**bottom** 22:4
**box** 6:12
**breaking** 19:7
**bring** 18:2 19:5
29:5
**bringing** 33:2
**broadly** 11:22
**brochures** 13:7
**broker** 13:9
**brokers** 13:12
**brookhaven** 3:8
6:2 8:13 9:19 10:2
10:6,18,18,20
11:1,3 12:20
13:21 14:10 15:2
15:8,12,25 16:3
17:14 19:8,10,15
19:18,21,22 20:4
20:12,14,21,21
23:2,7 25:5,10,10
25:11,12,22 27:17
31:12 32:21,25
**build** 21:3,7
**building** 22:15,16
**buried** 25:23
**business** 16:19
17:22 27:9 28:18
**buyer** 20:8,17
21:8,14 22:7,10
26:9 27:5,8,10,22
29:15

**c**

**c** 4:1 5:22 8:1 37:1
37:1
**calendar** 9:18
31:3
**campus** 3:8 9:19
10:2,7,18,20 11:1
11:3 12:20 13:21
13:25 14:10,19
15:3,12,25 16:3

17:14 18:25 19:22
20:2
**card** 21:23
**care** 21:19,20
**carrier** 6:18 9:8
**carrying** 16:25
**carve** 30:10
**case** 1:3,4 3:5
11:15 24:6
**causes** 30:16
**center** 4:12 10:23
**central** 2:3 4:6
**cercla** 20:23 21:25
**certain** 6:9 10:25
22:14 31:9
**certainly** 23:22
24:9 34:9
**certified** 37:3
**certilman** 4:17
8:4 14:13
**chance** 30:24
**chestnut** 6:20
**chief** 12:15
**chooses** 23:6
**city** 6:13
**claims** 12:17
23:17 31:5
**clarification**
19:12
**clarify** 24:17
**class** 31:4
**clean** 21:11 24:25
**cleaner** 29:23
**cleaning** 25:7
**clear** 3:9 10:16
12:17 21:25 22:6
22:20 23:17 24:1
24:7 26:18,23
27:6
**clerk** 8:2,24 9:12
33:23
**close** 12:12 16:3
16:13,17,23 32:25

33:2
**closing** 17:4 18:1
19:1 21:4 29:3
**closings** 21:4
**code** 17:21
**colleague** 8:20
**college** 1:8,15
3:10 6:9 8:2,8,10
9:16 31:6
**color** 13:7
**combination** 13:6
**come** 17:2
**comes** 21:9,10
25:23
**commenced** 31:4
**committee** 5:10
5:11 8:17 12:18
13:4 14:1,5,18
15:23 30:15 32:1
32:9,22
**company** 24:1
28:13
**complies** 18:15
**conceivable** 31:23
**concluded** 35:15
**conducted** 14:12
**conference** 3:2,5
**confidential** 13:19
**confusing** 22:3
**consideration**
18:17
**consistent** 18:20
24:1 27:7,21
28:21
**constituencies**
16:7
**consultation**
14:10 15:22
**consummation**
17:15
**contacted** 14:3
**contained** 25:3

**contains** 10:21
**contaminate** 21:7
**contamination**
20:5,7
**contemplates**
18:19
**context** 31:10
**continue** 34:12,20
**continuing** 16:24
**continuity** 17:21
**contract** 24:22
29:10
**control** 20:22
**conversations**
18:8
**copy** 15:19
**corp** 4:18 8:5
**corporate** 23:13
**corporation** 6:18
9:8 18:17
**correct** 20:16,18
20:19 26:11,21
30:21,22 34:13
**costs** 16:25
**couch** 22:7
**counsel** 8:16 13:4
14:1,4 27:11 29:6
32:22
**country** 37:21
**county** 10:18
**course** 20:22
**court** 1:1 2:1 9:5
9:11,13 10:20
11:23,24,25 14:15
14:17 15:6 17:3
17:24 18:11,23
19:19 20:7,13,17
21:1,3,19 22:3,23
23:1,5,12,25 24:2
24:11,14 25:5,14
25:17,19,22 26:1
26:6,9,12,15,17
26:22 27:1,5,12

27:19,24 28:2,4,9
28:14,19,25 29:2
29:10,15,19,24
30:4,9,13,20,23
30:24 31:1,10,16
31:19,21 32:2,6
32:11,14 33:1,5
33:10,12,18,22,24
34:4,9,10,14,22
34:24 35:1,3,5,7,9
35:11,13
**court's** 10:4,14
15:20 16:22
**cover** 26:5
**covered** 30:2
**create** 25:20
**creditor** 4:18 5:3
5:11 16:6
**creditors** 5:11
8:17 11:15 14:1,4
14:10,18 15:4,23
17:5 32:22
**current** 23:8
29:11
**currently** 15:17
**cut** 22:2
**cutting** 21:17

**d**

**d** 8:1 36:1
**damon** 6:17 9:7
**data** 26:25
**date** 11:20 33:7
33:20 34:1,7,16
34:17 37:25
**dated** 13:12
**day** 14:20 34:16
34:19 35:12
**days** 16:18 31:15
31:24 32:23
**deadline** 11:20
16:11
**deadlines** 10:10
11:22 12:7

**deal** 27:7
**debtor** 1:10 3:10 5:18 8:8 10:3,8,16 11:15 13:3 14:4,9 14:11,21,25 15:14 15:19,24 16:12,19 17:3,13,16,18,20 17:23,23,25 18:18 18:20,21 19:2 21:17,19,21,21 22:22 32:9
**debtor's** 3:8 9:18 10:1 12:12,19 13:4,25 16:18 17:7 21:17,19,20
**debtors** 12:16
**declaration** 12:14 12:23,25 13:13 14:6
**defendant** 31:6
**defendants** 1:16
**defined** 17:21
**department** 4:3
**depending** 24:4
**deposit** 15:17
**designated** 14:11
**determination** 12:12
**determined** 10:3 12:13 15:23 16:12
**development** 15:2 28:18
**different** 22:21
**direct** 13:6,9,17
**director** 28:18
**directors** 21:20
**disaster** 21:11
**disclosure** 32:15 32:19 34:3,4
**discusses** 13:2
**discussing** 29:13
**discussions** 14:25

**distributed** 30:19
**distributions** 17:4 30:14
**district** 1:2
**docket** 10:15 11:13 12:5 15:20
**docketed** 10:14 12:5 16:9
**documentation** 25:4
**doing** 24:8,23 32:14
**dollars** 30:8
**dormitory** 10:21 11:6
**doubt** 17:1
**dowling** 1:8,15 3:10 6:9 8:2,8,10 8:25 9:15 19:15 20:1,2,10,11 26:12,15,16,24 31:5
**dowling's** 15:25 20:11
**draft** 32:18

e

**e** 2:21,21,22 4:1,1 6:6 8:1,1 36:1 37:1
**earlier** 25:16
**easement** 19:24 23:19,20
**easements** 23:18 23:22 24:4,8
**easier** 29:24
**east** 4:20 14:13
**eastern** 1:2
**ecro** 2:25
**effect** 16:9 32:17
**effectively** 12:8 17:7 24:18,21
**effort** 15:1,3

**efforts** 13:2,14 15:9 29:5 31:9,23
**either** 14:3 21:25
**encumberances** 23:17
**encumbrances** 12:17
**engaged** 14:25 31:21
**english** 6:8
**enter** 19:24
**entered** 11:12 13:18 16:22 17:18 25:12
**enterprise** 17:22
**entity** 10:3 19:8
**entry** 10:8
**environmental** 22:12 23:9,16 26:21,24
**equal** 15:17
**escrow** 15:18
**essence** 19:24
**essentially** 19:14 29:12 31:5 32:18
**establishment** 10:10
**estate** 3:9 13:3,12 15:4 17:16,23
**estimates** 14:21
**event** 25:2
**everybody** 24:22 29:25
**excepted** 23:23
**exception** 11:5 23:22
**excuse** 8:12
**execute** 16:2
**executed** 15:18
**executory** 24:21
**exhibit** 13:13
**exist** 29:16

**exists** 19:15 20:10 22:11
**expect** 17:3 29:7,8
**expectation** 16:15 32:24
**expected** 14:20
**expenses** 16:25 30:18
**expert** 21:25
**expiration** 31:22
**explain** 16:7
**explained** 15:5
**explains** 12:25
**explanation** 14:7
**extensive** 13:2 16:20
**extent** 21:16 22:24 23:21 26:4 30:15 31:11

f

**f** 2:21 3:10 37:1
**facility** 10:22 11:6
**fact** 16:2 22:20
**fair** 18:18
**faith** 17:19 29:5
**fashion** 17:19 29:7 30:10 32:24
**favor** 11:4,7
**federal** 2:2 4:5 21:15
**feds** 22:12 23:6 26:1
**figure** 22:8 33:15
**file** 32:23 34:5
**filed** 10:8 11:22 12:14,19,21,24 15:20 17:12
**filing** 11:10 32:17 33:7
**finality** 32:20
**finalize** 31:15
**finance** 30:16

**financial** 4:12,18 8:4

**find** 15:3 16:16 17:24 20:7 34:14

**finds** 25:23

**fine** 22:23 23:13 24:9 25:19 31:19 34:1

**firm's** 15:18

**first** 9:18,25 10:8 11:4,7 13:14 28:23

**five** 10:2 12:2,4,13 15:14,16,24 16:4 16:8,17,20 17:16 17:17,19,20,22,24 18:25 21:22,22 28:8,11,18 33:8

**fix** 30:4

**fixtures** 10:25

**floor** 5:19 7:3

**floyd** 10:19

**following** 14:24 18:1

**foregoing** 37:3

**forget** 21:13,21

**form** 15:19

**formal** 15:14

**formally** 10:7 16:13

**formed** 19:9

**forth** 13:11 15:6 19:4

**found** 20:25

**four** 15:9

**frankly** 31:24

**free** 3:9 12:16 22:5,6 23:17 26:18

**friday** 12:18 19:7 19:11 28:24

**friedman** 5:15 8:15,16 32:10

**front** 11:23 31:7

**further** 17:7 18:23 30:20

**future** 24:3

**g**

**g** 8:1

**gain** 13:19

**garden** 6:13

**garfunkel** 5:1 8:19

**general** 18:9 31:8

**generally** 15:3,6 20:4

**geron** 31:18,20

**getting** 26:9,17 33:2

**given** 16:9

**glenn** 6:6 8:13

**go** 21:6 23:7 24:18 29:25 33:14

**goes** 21:3 25:2,8 25:15

**going** 22:13,20 23:9,25 24:7 27:6 29:2 33:20,24,25 34:5,11,16,20,20

**golden** 7:1 9:3

**good** 8:3,6,9,12,15 8:18,22 9:1,2,6,9 17:19 29:5 33:13 33:15,24 34:7 35:12

**government** 21:10 25:9

**great** 5:4,5

**greater** 15:4

**grossman** 2:22

**ground** 19:17 20:1,5,13

**guarantee** 8:5

**guaranty** 4:18

**guess** 33:7

**guy** 25:23

**guys** 24:14 25:24 33:10,18 35:7

**h**

**hammel** 4:15 8:20 9:1,9,10

**happens** 34:15

**harm** 29:12

**head** 29:5

**hear** 35:2

**heard** 30:6,23 33:13 35:3,4

**hearing** 3:1,4,7 10:12 11:25 16:5 29:6 32:11 34:17

**hearings** 15:6

**high** 12:1,4

**higher** 12:9 16:10

**highest** 10:4 12:13 14:14,16 15:24 16:20

**hold** 28:4,20

**holding** 34:7

**holidays** 11:21

**hon** 2:22

**honor** 8:3,6,9,13 8:15,18,22 9:6,9 9:14,17,24,25 10:6,16,24 11:2 11:11,18 12:1,3,6 12:11,18,22 13:5 13:11,24 14:6 15:5,22 16:5,15 16:16,18 17:1,8,8 17:10 18:2,6,8,14 18:22 19:2,20 20:9,16,19,20 21:2,16,24 23:11 23:21 24:13,16 26:11,21 27:9 28:3,17,22 29:17 30:12,25 31:2,7 31:18 32:13,16

33:6,11,17,19,20 34:2,8,21 35:2,8 35:10,12,14

**honor's** 16:4 18:3 19:1,6 22:2 23:24 26:13 27:4 31:13 31:22

**hook** 24:23 26:10 26:10,15

**hopefully** 32:25

**hour** 34:15

**howard** 6:15 8:10

**hsbc** 6:19

**huh** 31:19

**hyde** 3:25 37:3,8

**hyman** 4:17

**i**

**ian** 4:15 8:20 9:9

**identification** 15:10

**identified** 27:25

**identify** 28:4

**impact** 20:14

**impair** 19:13 29:12

**important** 16:23

**improvements** 10:21,22

**included** 15:7

**includes** 10:24

**including** 10:21 10:22 13:6 18:16 23:18

**indemnification** 20:22 21:13 26:3 29:16

**indemnified** 20:12 22:21,22 26:4

**indemnify** 23:1 25:2

**indemnifying** 20:24

**indenture** 5:3
**indicated** 18:7
**indiscernible** 9:8
  33:21
**information** 13:20
  27:20
**initial** 3:4 14:15
**initially** 25:3 29:8
**inquiries** 13:17,17
**insider** 17:20
**inspected** 13:21
  13:22
**insulate** 23:10
**intention** 12:8
  16:7
**interest** 15:11
  16:9,14 17:16
**interested** 6:10
  12:6,9,12 13:25
  14:3 15:1,7
**interests** 11:4
**interim** 32:25
**involved** 19:17
  21:5
**islip** 2:3 4:6
**issue** 22:12,21
  24:6 26:7,21
  28:23 29:5,9
**issues** 23:13 27:3
  29:2
**item** 18:2 19:5

**j**

**j** 4:22 5:15
**jail** 21:23
**january** 14:8
**jericho** 5:12,13
**john** 6:23 9:6
**journal** 11:17
**judge** 2:23
**judgment** 16:19
**judgments** 11:9
**july** 33:23,25

**june** 2:5 37:25
**jureller** 5:17 8:7
**justice** 4:3

**k**

**kids** 27:2
**klein** 6:8
**kleinberg** 6:15 8:9
  8:10
**klestadt** 5:17 8:7
**know** 17:1 28:20
**known** 10:17

**l**

**lab** 20:14
**labs** 6:2 8:14
  19:11 20:21 23:2
  25:5
**land** 23:20
**landowner** 23:8
**language** 29:9
**late** 19:7
**law** 14:12 18:5,6
  18:16,17,22
**lawful** 18:20
**lawyer** 28:15
**lawyers** 27:20
**led** 13:25 15:9
**ledanski** 3:25 37:3
  37:8
**legal** 37:20
**lenders** 14:18
  15:22
**length** 17:19
**level** 14:19,20
**levin** 4:10
**lewis** 6:1 8:13
**liabilities** 27:21
**liability** 17:25
  21:17 22:6,6,11
  22:11,18 23:13
  25:20 26:2,19
**liable** 20:8,15,23
  20:25 21:15

**lien** 9:8 11:7
**lienholders** 30:19
**liens** 3:10 11:2,4,9
  12:17 23:17
**lies** 20:1
**likewise** 23:23
**line** 9:7 36:4
**listen** 9:7
**litigate** 34:12
**litigation** 9:23
  30:1 34:11,20
**living** 27:2
**llc** 10:2
**llp** 5:9,17 6:1,17
  7:1 9:7
**located** 10:19 11:1
**lodged** 11:9
**long** 22:18 27:5
**lori** 7:2 9:3 31:4
**lose** 33:10
**losses** 16:24

**m**

**ma** 4:13
**mailing** 13:6
**maintained** 13:16
  19:22
**major** 16:6
**making** 24:2
**man** 20:18 27:25
  28:12 30:22 33:11
  33:19,20 34:1,3
  34:13,25 35:8,12
**management** 3:5
**marketing** 13:2,5
  13:9,14 16:21
  17:11
**matter** 1:6 8:2
  29:8 31:2,8,14
  34:8,16
**matters** 9:17
**mccord** 4:22 8:3,4
**meadow** 4:20
  14:13

**mean** 20:23 24:16
**means** 13:6
**mechanic's** 9:8
  11:8
**media** 13:10
**mediation** 31:10
**mediator** 31:16
  31:21 32:6
**meetings** 14:25
**members** 6:9 8:11
**memorandum**
  13:7 19:14,23
  20:9
**mentioned** 9:25
  11:6 16:5
**merrick** 4:19
**message** 34:17
**meyer** 6:8 8:10
**mid** 25:9
**million** 14:16,17
  15:15,17 21:10
  30:8,9 31:13
**mineola** 37:23
**mintz** 4:10
**minute** 21:13
**money** 30:15,17
  30:18 32:7
**monies** 17:6 32:3
**monitoring** 19:25
**months** 15:9 33:8
  34:5
**morgan** 6:1 8:13
**mortgages** 11:8
**motion** 3:9 9:19
  9:25 10:8,16
  12:16,19 17:13,14
**mou** 25:8 26:5,5
**move** 34:11

**n**

**n** 4:1 8:1 36:1
  37:1
**national** 5:2 10:23
  19:10

necessary 18:24
neck 5:4,5
need 32:6
needs 32:19
negative 20:14
negotiate 34:12
negotiated 17:18
neither 14:17
new 1:2 2:3 5:20
  6:4 7:4 10:20 18:6
  18:9,16 25:22
  33:25
newsday 11:16
non 18:16,21
nondisclosure
  13:18
north 19:21
northern 19:21
notice 3:1 10:9
  11:14,16,21 12:3
  12:6,7,11 16:8,13
  17:10
november 33:4,6
number 10:14
  11:13 12:5
ny 4:6,20 5:5,13
  5:20 6:4,13,21 7:4
  37:23

**o**

o 2:21 8:1 37:1
objection 17:12
  18:11 29:21
objections 12:21
obligations 17:25
  18:20
occasion 13:22,23
occasions 11:24
occurred 13:5
october 11:13
offer 15:25 16:8
offering 13:7
office 12:3 15:16
  18:8,9 28:12

officer 12:15
offices 14:12
official 5:10 8:16
oh 28:2 35:1
oil 25:23
okay 9:13 24:11
  24:14 26:6,22
  27:5,24 28:19
  30:23 31:1 33:12
  35:5,7
old 37:21
once 32:2
ongoing 19:10
  24:23
opportunities
  15:2
opportunity 12:9
  15:11 16:10 17:11
order 3:4,7 10:9
  10:11 11:12,14
  13:19 16:22 17:8
  19:12 21:15,22
  22:2,3,4,10 23:9
  23:15,24,25 24:7
  24:10 26:14 27:6
  29:12 30:20 31:23
original 11:18
  29:11 31:22
outside 25:22
outstanding 31:25
outten 7:1 9:3
overall 15:3,8,13
owe 21:10

**p**

p 4:1,1 8:1
p.c. 5:1 6:8
p.o. 6:12
page 22:4,5 36:4
park 6:3 7:3
parkway 10:19
participated 14:2
particular 13:5

parties 12:6,7,12
  13:18,20,25 14:3
  15:1,7,10 16:9,14
  17:6 20:11 26:25
  31:15,25
party 6:10 17:5
  17:11 20:24
pass 22:24
pay 24:25 30:17
payments 17:3
percent 15:16
period 32:25 33:8
person 27:10
personal 10:25
phase 21:6,6,7
  26:24
phone 8:24 34:25
  34:25
physically 13:21
picked 25:4
pieces 33:14
place 14:8 16:12
plaintiff 1:13 7:2
  31:4
plan 32:18 33:15
  34:3,4
plans 32:14
plaza 2:2 4:5 6:19
please 8:24 24:20
  28:5
plume 20:4
pm 2:6 35:16
point 12:1 29:7,13
  33:9 34:11
portion 20:2
positions 11:3
possession 8:8
possible 15:2,11
  16:24
pot 30:15
potential 20:5
  22:11 29:14 30:16

practical 17:13
pre 3:1
predecessor 25:10
prepared 13:12
presence 16:6
press 13:6
previously 14:14
  15:5 17:2 18:3,7
price 14:19 15:15
print 13:8
prior 11:9 14:7,8
  14:22 15:5 18:4
probably 24:1
  34:6
problem 22:20
  24:6
problems 22:12
  23:9 33:2
procedures 3:8
  10:5,9,13 11:12
  11:12 16:22,22
proceed 12:8,20
  16:7
proceeding 9:4,21
  18:12 31:3
proceedings 14:8
  35:15 37:4
proceeds 17:4
  18:19
process 10:6,14
  13:1 14:15 16:21
  19:9
profit 18:5,6,17
  18:21
properties 22:14
property 3:9
  10:25 11:1,3
  13:15 14:2 16:25
  19:25 20:14 32:21
proposal 32:21
propose 9:24
  31:14

**proposed** 10:24 16:23 17:14
**proskauer** 28:16
**provided** 12:11 15:16 16:13 17:11
**provides** 20:10
**providing** 20:22
**published** 11:16
**purchase** 14:19 15:11,15,18 16:2 17:17
**purchasers** 12:9
**purposes** 18:21 19:25 34:8
**push** 11:19
**put** 34:10,16

**q**

**quadrangle** 5:12
**qualified** 14:11
**questions** 27:12

**r**

**r** 2:21 4:1 6:23 8:1 37:1
**raises** 26:21
**raising** 29:8
**reached** 19:11 33:9
**real** 10:25 13:3,12 17:13
**really** 31:21
**reason** 21:9
**reasonable** 18:18
**reasons** 19:2,3
**recall** 10:20 11:11 11:18
**received** 12:1 13:16 14:9
**recitation** 14:7
**record** 9:15 18:14 19:4 28:10 37:4
**referred** 9:22 10:23

**reg** 1:3,4 3:1,4,7
**regard** 23:13 26:20
**regretfully** 28:23
**regular** 11:24
**regulatory** 18:23
**related** 10:9 19:24 27:16,17
**relation** 9:19,22 13:1 14:21 16:15 18:4,7,24 19:9,10 19:13 31:5,8
**relative** 11:3
**releases** 13:7 22:10
**relief** 17:12
**remain** 17:6
**remaining** 33:8
**remains** 24:24 26:12,15
**remediation** 19:9 19:17 24:24
**rene** 7:6 9:2
**renegotiating** 30:9
**repay** 18:20
**report** 13:11 34:9
**reported** 14:15
**representations** 18:12
**representatives** 13:4 14:1,4 15:8
**represented** 27:10 27:19 28:19
**requesting** 19:11
**requests** 19:3
**requirements** 18:5
**respect** 20:24
**responsibilities** 27:22
**responsibility** 13:1 25:6,13

**responsible** 25:11 26:16
**rest** 29:1 33:15
**restart** 31:12
**restructuring** 12:15
**results** 10:13
**retained** 13:3
**reviewed** 18:10 26:25
**revised** 32:24
**reworked** 32:19
**richard** 4:22 8:4
**rid** 21:21
**right** 23:25 24:15 25:14 26:15 27:8 29:17 30:6 32:11 33:1,12,25 34:22
**rights** 19:13,24 29:13,16
**road** 5:4 29:25 37:21
**robert** 2:22 12:14
**rochester** 6:21
**role** 12:25
**ronald** 5:15 8:15
**room** 26:25
**rosenfeld** 12:15 12:23,24 16:1
**rosenfeld's** 12:25 13:13 14:6
**roupinian** 7:6 9:2 9:2 35:2,4,6
**rulings** 36:3
**runs** 23:20

**s**

**s** 4:1 7:6 8:1
**safe** 24:24
**sale** 3:8 9:20,25 10:1,6,9,13,24 11:14,16,18 12:16 12:20 13:1 14:18 16:3,16,19,23

17:8,11,12,15 18:4,4,7,12,15,18 18:19,24 19:3,12 19:12 26:13 30:24 31:12,13 32:25 36:6
**sales** 10:13
**satisfactory** 29:9
**saying** 21:15 23:5 28:21
**says** 21:10 22:4,5 24:2
**schedule** 11:19
**scheduling** 3:4
**science** 19:8,16,22 20:12,21 21:1
**scope** 23:23
**sean** 5:22 8:6 9:15
**second** 9:21 14:16 31:2
**secondarily** 10:11
**sections** 18:5,16
**secured** 11:2 17:4 32:22
**security** 11:4
**seeking** 10:1,8,11 10:12,17
**sell** 3:9 10:17 23:16
**selling** 17:14 30:7
**sense** 33:1
**separate** 26:7
**september** 10:7
**series** 11:5,7
**served** 11:14,22 12:3,5
**set** 9:14 12:6 13:11 19:3
**settlement** 31:9
**shirley** 10:19
**shown** 15:10
**shows** 21:7

**side** 34:24
**siegel** 6:6 8:12,13
  20:20 21:25 24:16
  24:21 25:8,15,18
  25:21,25 26:4,8
  29:22
**sign** 21:23
**signing** 21:14
  22:10
**silverman** 5:9
  8:16
**site** 19:19 20:8
  21:4,8
**social** 13:10
**sold** 22:5 33:14
**solicitation** 13:9
**solutions** 37:20
**solve** 32:4
**somebody** 21:3
  23:5
**somewhat** 19:6
**sonya** 3:25 37:3,8
**soon** 16:23
**sorry** 24:18 28:2
  33:6
**sought** 17:12
**southard** 5:17,22
  8:6,7,7 9:14,15
  19:20 20:9,16,19
  21:2,16,24 22:22
  22:24 23:4,11,21
  24:9,12,20 26:11
  26:13,20,23 27:3
  27:9 28:3,6,10,17
  28:22 29:1,4,11
  29:17,20 30:3,8
  30:12,21,25 31:2
  31:18,20 32:5,8
  32:13,16 33:4,6
  33:17 34:7,21,23
  35:10,14
**spanned** 15:9

**speaking** 20:4
  32:21
**stalled** 31:11
**stan** 4:8 8:22
**started** 10:7
**state** 8:24 18:9,23
  22:12 23:6 26:1
**statement** 12:19
  24:3,5 27:4 32:19
  34:3,5
**statements** 32:15
**states** 1:1 2:1 4:3
  8:23
**statutory** 22:18
  33:2
**stevens** 5:17 8:7
**stewart** 6:11
**street** 5:19 6:20
  11:17
**stuart** 28:1,7,10
**study** 26:24
**stuff** 21:5
**subject** 10:12 11:4
  11:6 16:4 17:7
  18:25 19:7 21:1
  32:21
**submissions** 18:10
**submit** 12:9 16:10
**submitted** 10:3
  12:4 15:14,24
  16:11
**substantial** 32:18
**successor** 17:24
  20:11 23:2,12
  26:16
**suffolk** 10:19
**suite** 5:12 6:11
  37:22
**summons** 3:1
**suozzi** 6:8 8:10
**support** 12:16,19
**supported** 14:18

**sure** 23:15,19
  24:3,7,24 27:6
  28:6 29:16 30:17
**synch** 23:15

**t**

**t** 5:7 37:1,1
**take** 9:25 22:15
**taken** 23:22
**talked** 18:3
**talking** 26:6 32:3
**talks** 12:25
**tanks** 25:23
**telephone** 8:21
**telephonically**
  4:15 6:23
**tell** 28:14,15
  32:12 34:24
**telling** 22:9
**tend** 32:8
**term** 17:20 31:22
**terms** 11:2 18:18
  22:7
**testing** 19:13,14
  19:20,25
**thank** 9:14 30:25
  33:17,18,19 34:23
  35:6,7,10,11,12
  35:13,14
**thing** 24:24 32:15
**things** 23:14
**think** 17:5 21:24
  24:2,17 25:15
  27:15 29:13,15,17
  29:20,22,24 31:24
  32:6
**threaten** 22:14
**three** 7:3 14:9
**thursday** 12:24
  15:21
**time** 23:8 28:23
  35:8
**times** 31:7

**timing** 33:1
**title** 23:22 24:1
**today** 10:1,24
  12:8 16:4,8,16
  17:9 18:12,14
  19:3 22:9 27:11
  29:6 31:13
**today's** 10:12
  17:12 31:3
**told** 32:16
**top** 22:5
**toured** 13:20
**tours** 13:24 14:2
**town** 10:18 15:8
  19:18 20:4 21:9
  23:6
**track** 20:4 33:10
**traditional** 13:8
**transaction** 16:17
**transcribed** 3:25
**transcript** 37:4
**transfer** 18:25
**trial** 3:2
**triple** 10:2 12:2,4
  12:13,21 15:14,16
  15:24 16:3,8,17
  16:20 17:15,17,19
  17:20,22,24 18:25
  21:22,22 28:7,11
  28:18
**true** 37:4
**trustee** 4:4 5:3
  8:11,23 9:10 11:5
  11:7
**trustees** 6:10 16:1
**try** 15:3 33:15
**trying** 25:20
**tune** 24:9
**turn** 20:11
**turning** 12:23
**two** 9:17 23:14,16
  29:25 33:8 34:5

| | | |
|---|---|---|
| **type** 26:20 | 25:1 27:12,13,13 | **year** 10:7 11:13 |
| **types** 20:3 24:4 | 29:25 30:6,23 | 11:20 15:13 33:8 |
| **u** | 33:12 | **years** 19:10 20:6 |
| **u.s.** 2:23 4:4 | **wanted** 19:5 | 22:13 30:1 |
| **u.s.c** 3:10 | 24:16 28:20 | **york** 1:2 2:3 5:20 |
| **ultimately** 20:16 | **wants** 21:8 24:22 | 6:4 7:4 10:20 18:6 |
| **umb** 4:11 5:2 8:19 | 29:15 | 18:9,17 |
| 9:10 | **warn** 9:22 31:5 | **z** |
| **uncertain** 31:11 | **water** 19:14,17 | **zaikowski** 1:12 |
| **underneath** 20:1 | 20:1,1,5,13 | 7:2 9:3 31:4 34:1 |
| **understand** 15:1 | **way** 20:20 24:12 | 34:8 |
| 23:11,12,14 30:10 | **we've** 9:22 15:5 | |
| **understanding** | 18:3,7,10 29:4 | |
| 14:21 18:11 19:15 | 31:7 32:16 | |
| 19:23 20:2,10 | **web** 13:8 | |
| 21:4 22:1 24:17 | **webpage** 13:15 | |
| 27:16 | **wednesday** 16:11 | |
| **understood** 34:21 | **week** 12:18,24 | |
| **unique** 13:15 | 15:21 16:11 | |
| **united** 1:1 2:1 4:3 | **weekend** 29:4 | |
| 8:23 | **weider** 6:23 9:7 | |
| **unknown** 2:25 | **weidner** 9:6 | |
| **unsecured** 5:10 | **wells** 19:21,25 | |
| 8:17 | 20:3 26:8 | |
| **unsecureds** 30:14 | **west** 5:19 | |
| **updates** 11:24 | **wild** 5:1 8:19 | |
| **useful** 31:23 | **william** 10:19 | |
| **v** | **winters** 5:17 8:7 | |
| **v** 1:14 | **wipe** 23:19 24:4 | |
| **value** 14:22 15:4 | **work** 24:9 30:5 | |
| 31:11 32:20 | 32:23 | |
| **values** 14:20 | **worked** 29:6 | |
| **various** 10:22 | **works** 20:20 | |
| 11:8 12:7 15:7 | 28:15 | |
| **veritext** 37:20 | **wrong** 25:2 | |
| **virtue** 26:13 | **x** | |
| **visitors** 13:15 | **x** 1:5,11,17 36:1 | |
| **w** | **y** | |
| **wall** 11:16 | **yang** 4:8 8:22,22 | |
| **want** 21:23 22:14 | **yann** 31:18,20 | |
| 22:16 23:15 24:18 | **yeah** 23:4 25:18 | |
| 24:22,24,25 25:1 | 25:21 27:15 29:24 | |
| | 33:22 | |