*KLESTADT WINTERS JURELLER*
*SOUTHARD & STEVENS, LLP*
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re     :    Chapter 11
    :
DOWLING COLLEGE,     :
f/d/b/a DOWLING INSTITUTE,     :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI     :
ASSOCIATION,     :
f/d/b/a CECOM,     :
a/k/a DOWLING COLLEGE, INC.,     :
                    Debtor.     :
-----------------------------------------------------------------x

**DEBTOR'S MOTION FOR AN ORDER PURSUANT TO SECTIONS**
**105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING THE SALE**
**OF THE DEBTOR'S SIMULATORS LOCATED AT THE BROOKHAVEN**
**CAMPUS TO FARMINGDALE STATE COLLEGE FREE AND CLEAR**
**OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

      Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the

above-captioned chapter 11 case (the "Chapter 11 Case"), submits this motion (the "Sale

Motion") pursuant to Sections 105(a) and 363 of Title 11 of the United States Code (the

"Bankruptcy Code"), and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedures

(the "Bankruptcy Rules") for entry of an order substantially in the form attached hereto as

Exhibit A (the "Order") approving the sale (the "Sale") of the Debtor's Simulators (as defined

herein) located at the Brookhaven Campus (as defined herein) to Farmingdale State College

("Farmingdale") free and clear of liens, claims and encumbrances.  In support of this Sale

Motion, the Debtor submits the Declaration of Robert S. Rosenfeld, attached hereto as **Exhibit B** (the "Rosenfeld Declaration").  In further support of the Sale Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules").

**BACKGROUND**

A.      **The Bankruptcy Case**

4.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

5.      The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On December 9, 2016, the United States Trustee appointed Ultimate Power Inc., Linda Ardito and Lori Zaikowski to the Official Committee of Unsecured Creditors (the "Creditors' Committee").  Later that day, the Creditors' Committee selected SilvermanAcampora LLP as its general bankruptcy counsel.

7.      Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the

"CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

8.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration") [DE 23].

**B.      The Brookhaven Campus and the Simulators**

9.      On September 26, 2017, the Debtor filed a motion seeking, *inter alia*, approval of the sale of the Debtor's 105.33-acre campus located in the Town of Brookhaven, County of Suffolk, at William Floyd Parkway, Shirley, New York 11967 (the "Brookhaven Campus") to the successful bidder as determined by the bidding procedures [DE 406].

10.     October 17, 2017, an order was entered by the Bankruptcy Court, approving, *inter alia*, bidding procedures for the sale of the Brookhaven Campus, and scheduling an auction ("Auction") and sale hearing in connection therewith [DE 425].

11.     On January 31, 2018, the Debtor conducted the Auction for the Brookhaven Campus.  After all bidding was completed the Debtor, in consultation with the Debtor's professionals and the necessary creditor groups, determined to adjourn the Auction without a date given the lack of creditor support for values obtained at the Auction that day.

12.     Following the Auction, the Debtor, its professionals and the Creditors' Committee engaged in extensive marketing, meetings, and negotiations with interested parties in an effort to

further canvas the local developer market, better understand the likely permissible development options at the Brookhaven Campus, and achieve a greater value for all creditors.

13.     As a result of these efforts, a bid was submitted by Triple Five Aviation Industries LLC ("<u>Triple Five</u>") for the sum of $14,000,000.00.

14.     On May 17, 2018, the Board of Trustees of Dowling (the "<u>Board</u>") convened and approved a resolution which authorized the CRO to execute the asset purchase agreement (the "<u>Brookhaven Campus APA</u>") with Triple Five.

15.     On June 19, 2018 the Bankruptcy Court entered an order approving the sale of the Brookhaven Campus to Triple Five [DE  544].

16.     In connection with the Debtor's former aviation program, the Debtor owns certain air traffic control simulators located at the Brookhaven Campus, including the Raytheon FIRSTplus Air Traffic Control Simulator and the NASA/VAST Simulator (collectively, the "<u>Simulators</u>").  The Simulators were used in coursework related to the training and certification of air traffic controllers.  The Simulators utilize somewhat outdated technology and the system hardware and software appear to be in need of upgrades.

17.     Given the specific use and limited potential users for the Simulators and given that a majority of interested bidders for the Brookhaven Campus contemplated development uses other than as an aviation school, the Debtor felt that any purchaser without a specific need would likely remove and discard the Simulators and thus chose to exclude the Simulators from the Brookhaven Campus APA.

18.     However, all potential bidders for the Brookhaven Campus were made aware that the Simulators were available for purchase.  After some consideration, Triple Five ultimately determined that it was not interested in purchasing the Simulators.

19.     In order to locate a potential purchaser for the Simulators, the Debtor's representatives contacted a former Dowling engineer who was once in charge of the Simulators while employed at Dowling, as well as FirstNAV, the company that provided support and services for the Simulators when the Debtor's aviation program was in existence.  Together, the former employee and FirstNAV assisted with the Debtor with contacting many of the schools in the United States that are certified for air traffic controller training.  Only one such school, Farmingdale, was interested in making an offer for the Simulators.

20.     Farmingdale initially offered to purchase the Simulators for $10,000.  The Debtor rejected this offer and through subsequent negotiations the offer was increased to $45,000, which the Debtor has accepted, subject to Court approval.

21.     On June 29, 2018, the Debtor entered into a letter agreement with Farmingdale for the sale of the Simulators (the "Letter Agreement")[1], a copy of which is attached as **Exhibit 1** to the Rosenfeld Declaration.

22.     Pursuant to the Letter Agreement, the purchase price for the Simulators is $45,000.

23.     Pursuant to General Order 557, the Debtor is required to highlight any "extraordinary provisions" of the proposed Sale of the Simulators.  The extraordinary provisions in the proposed Sale are as follows:

> (a)     Use of Proceeds.  Upon consummation of the proposed Sale of the Simulators to Farmingdale, the Debtor shall pay the proceeds to the administrative agent for its post-petition secured lenders (the "DIP Agent"), which payment shall be applied to the Debtor's Obligations in accordance with the terms of that certain Debtor-in-Possession Multi-Draw Term Loan Promissory Note dated as of November 29, 2016, by and among the Debtor and each lender party thereto and the DIP Agent (as

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Letter Agreement.

amended, supplemented, restated or otherwise modified from time to time in accordance therewith, the "<u>DIP Note</u>").

(b)    <u>Private Sale/No Competitive Bidding</u>.  Though the Debtor is prepared to accept any higher or better offer made prior to this Court's approval of the proposed Sale, the Debtor is not intending to further market or solicit any higher or better offers because as described more fully below, the Debtor submits that a private sale is appropriate under the circumstances, including the asset involved and cost of further marketing, and the Debtor's debtor-in-possession lenders and the Creditors' Committee have no objection to the same.

(c)    <u>Relief from Bankruptcy Rule 6004(h)</u>. The proposed form of Order contains a waiver of the stay imposed by Bankruptcy Rule 6004(h).

## BASIS FOR RELIEF

**A.    The Sale is Within the Debtor's Sound Business Judgment and
Should be Approved Pursuant to Section 363 of the Bankruptcy Code.**

24.    Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  When considering a motion to approve the sale of property, the Court must find that a "good business reason" justifies the sale.  *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).  Courts have uniformly held that approval of a proposed sale of a debtor's assets outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate when a sound business reason supports the transaction.  *See In re Lionel Corp.*, 722 F.2d at 1071; *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007); *Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65, 83 (S.D.N.Y. 2010); *In re Ionosphere Clubs*, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

25.    In addition, Bankruptcy Code Section 105(a) grants the Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  This provision is "the basis for a broad exercise

of power [by the Court] in the administration of a bankruptcy case." *In re Flores*, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003) (internal citations omitted).

26.     The Debtor submits that the proposed Sale of the Simulators is an exercise of sound business judgment and is in the best interests of Debtor's creditors.  The Debtor submits that the Simulators are of relatively *de minimis* value and are of no use to the Debtor in relation to this liquidating Chapter 11 Case.  The Brookhaven Campus APA provides that prior to the closing or as soon thereafter as is reasonably practical, the Debtor will remove all Excluded Assets (as defined in the Brookhaven Campus APA), including the Simulators, from the Brookhaven Campus.  *See* Brookhaven Campus APA, § 7.6.  At this time, absent a sale of the Simulators to Farmingdale, the Simulators would either need to be moved offsite to be marketed and sold or destroyed, most likely resulting in a loss of funds for the estate.  The proposed Sale of the Simulators to Farmingdale is providing $45,000 to the estate and Farmingdale is responsible for the cost and removal of the Simulators.  Further, the Sale to Farmingdale is supported by the Debtor's debtor-in-possession lenders and the Creditors' Committee.

27.     In addition, this Sale Motion complies with Section 363(d) of the Bankruptcy Code.  Pursuant to Section 363(d) of the Bankruptcy Code, a transfer of property by a not-for-profit entity must be made in compliance with applicable nonbankruptcy law governing such transfer.  *See* 11 U.S.C. § 363(d).  An insolvent not-for-profit corporation that is seeking to sell all or substantially all of its assets is required, pursuant to Sections 510 and 511 of the New York Not-for-Profit Corporation Law, to obtain approval of such sale transaction from either the state court or bankruptcy court.  The New York Not-for-Profit Corporation Law does not define what constitutes "all or substantially all" of the assets of a corporation.  However, the Simulators,

-7-

when considered as a whole, or individually, do not amount to "all or substantially all" of the Debtor's assets such that court approval is necessary.

**B.    The Assets Should be Sold Free of Liens, Claims and Encumbrances.**

28.    A debtor may sell property free and clear of liens, claims and encumbrances if one of the following conditions is satisfied:

1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
2) such entity consents;
3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
4) such interest is in bona fide dispute; or
5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See, e.g., In re Borders Group, Inc.*, 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011) (court may approve sale "free and clear" provided at least one of the subsections is met).

29.    The Debtor is aware of the Debtor's debtor-in-possession lenders first position priming lien on the Simulators and potential lien of the Trustee for the 2006 Bonds.  These parties have been notified of the proposed Sale of the Simulators and they have not expressed any objection thereto.  Accordingly, the Debtor believes that the requirement of section 363(f) of the Bankruptcy Code is satisfied with respect to the proposed Sale of the Simulators.  Thus, to facilitate the proposed Sale, the Debtor requests that the Court authorize that the Sale of the Simulators pursuant to this Sale Motion be free and clear of any and all such liens, claims and encumbrances (collectively, the "<u>Liens</u>") with any such Liens to automatically be transferred and attach to the net proceeds.

30.    Alternatively, Section 363(f)(5) is also satisfied because, to the extent that any party with a lien, claim, or interest in, or encumbrance on the Simulators has not consented to such sales, the Debtor asserts that such party could be compelled, in a legal or equitable

-8-

proceeding, to accept a money satisfaction of its interests, if any, in the Simulators.  Therefore, it

is submitted that Section 363(f)(5) can be deemed satisfied upon a sale of the Simulators being

conducted free and clear of all liens.

**C.    Farmingdale is Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

31.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or
> (c) of this section of a sale or lease of property does not affect the validity of a
> sale or lease under such authorization to an entity that purchased or leased such
> property in good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good faith," the Second

Circuit has found that:

> [g]ood faith of a purchaser is shown by the integrity of his conduct during the
> course of the sale proceedings; where there is a lack of such integrity, a good faith
> finding may not be made. A purchaser's good faith is lost by fraud, collusion
> between the purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (quoting *In re Rock Indus.*

*Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978)).  The Debtor requests that this Court enter an

order finding that Farmingdale constitutes a good faith purchaser of the Simulators pursuant to

Section 363(m) of the Bankruptcy Code.  The Debtor and Farmingdale negotiated the Letter

Agreement at arm's-length, for value and in good faith, without engaging in fraud or collusion of

any kind, in accordance with Section 363(m) of the Bankruptcy Code.

**D.    A Private Sale is Appropriate.**

32.    The Debtor is seeking to sell the Simulators in a private sale without the need to

conduct an auction process.  Although many sales of assets outside the ordinary course of

business are conducted pursuant to competitive bidding procedures and public auctions, Section 363 of the Bankruptcy Code does not ordinarily require these procedures.  Indeed, Bankruptcy Rule 6004(f) specifically authorizes private sales, stating that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  FED. R. BANKR. P. 6004(f)(1).

33.    Courts have approved private sales of assets upon the debtor's satisfaction of the general standards for approval under Section 363(b) of the Bankruptcy Code. *See, e.g.*, *In re Federation Employment and Guidance Service, Inc. d/b/a FEGS*, Case No. 15-71074 (REG) (Bankr. E.D.N.Y. July 20, 2015) (DE 339) (approving private sale of the Debtor's residential real property); *In re Saint Vincents Catholic Med. Ctrs.*, Case No. 10-11963 (CGM) (Bankr. S.D.N.Y. May 27, 2010) (DE 389) (approving private sale of a cancer center pursuant to Bankruptcy Rule 9019 and Section 363 of the Bankruptcy Code); *In re Old Carco LLC*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. Nov. 12, 2009) (DE 5937) (approving sale of the debtors' assembly plant by private sale as satisfying Section 363 of the Bankruptcy Code); *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (DE 507) (approving sale of debtor's facilities by private sale).

34.    It is well settled that the sale of assets outside of the ordinary course of business by means of a private sale can, and in appropriate cases should, be approved. *See*, *e.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("[T]he sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion . . . to conduct public or private sales of estate property.") (internal quotations and citation omitted); *In re Dewey & LeBeouf*, Case No. 12-12321 (MG), 2012 WL 5386276, at *6 (Bankr. S.D.N.Y. Nov. 1, 2012) (authorizing private sale of art collection after the debtor established a good business reason to proceed by private sale); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape*

*Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) ("There is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

35.    The Debtor respectfully submits that proceeding by private Sale without an auction and bidding process is appropriate here.  Among other things, the Debtor has determined in its business judgment that, under the circumstances, the benefits of consummating a prompt private Sale of the Simulators on the terms and conditions embodied in the Letter Agreement outweigh any potential benefits of conducting a further marketing and overbid process for the Simulators, particularly where domestic schools with air traffic controller programs were informed about the sale of the Simulators prior to the execution of the Letter Agreement and, based on the lack of interest from these schools, the Debtor does not believe that an auction could significantly increase the consideration that any party is willing to pay for the Simulators above the consideration offered by Farmingdale.  Pursuant to the Brookhaven Campus APA, prior to the closing of the sale of the Brookhaven Campus or as soon thereafter as is reasonably practical, the Debtor must remove the Simulators from the property.  *See* Brookhaven Campus APA, § 7.6. Proceeding expeditiously with this Sale will also allow the Debtor to meet its deadline for the removal of the Simulators from the Brookhaven Campus.  Finally, the Debtor's debtor-in-possession lenders and Creditors' Committee support the Sale and sufficient notice of the Sale will be provided through notice of the instant Sale Motion, providing other parties in interest and any potential purchasers with the opportunity to voice any objections to the proposed private Sale.

**E.    The Court Should Waive or Reduce the Requirements of Bankruptcy Rule 6004(h)**

36.    Under Rule 6004(h) of the Bankruptcy Code, all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for 14 days

after entry of the order, unless otherwise ordered by the Court. FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

37.    Although little guidance is provided by either Rule 6004(h) or the Advisory Committee Notes as to when a court should "order otherwise", it has been suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure". *See 10 Collier on Bankruptcy* § 6004.11. Colliers also proposes that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay pending such appeal. *Id.* It is thus respectfully requested that the Court waive the 14 day stay period required under Rule 6004(h) or, in the alternative, if an objection is filed to the proposed Sale, reduce the stay period to the minimum amount of time reasonably necessary for the objecting party to file a stay pending appeal. This relief is both necessary and appropriate under the circumstances of this case given that the closing of the Brookhaven Campus is either expected to have occurred by the time the Court considers the instant Sale Motion or will occur shortly thereafter.

## NOTICE

38.    Notice of this Sale Motion will be given to (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) counsel to the Creditors' Committee; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department

of Taxation and Finance, and (vii) the Securities and Exchange Commission; (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002; (f) all parties who are known to assert a lien, claim, encumbrance or other interests on any portion of the Simulators and (g) all persons who made their interest in the Simulators known to the Debtor or its counsel.

## NO PRIOR REQUEST

39.     Except as specifically set forth herein, no previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE,** the Debtor respectfully requests that this Court (a) enter the Order substantially in the form attached hereto as **<u>Exhibit A</u>**; and (b) grant to the Debtor such other and further relief as the Court may deem proper.

Dated:   New York, New York
   June 29, 2018

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By: */s/ Sean C. Southard*
   Sean C. Southard
   Lauren C. Kiss
   200 West 41st Street, 17th Floor
   New York, NY 10036
   Tel: (212) 972-3000
   Fax: (212) 972-2245
   Email: ssouthard@klestadt.com
      lkiss@klestadt.com

   *Counsel to the Debtor and Debtor in
    Possession*

# **Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                      :        Chapter 11
                                                           :
DOWLING COLLEGE,                                           :
f/d/b/a DOWLING INSTITUTE,                                 :        Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                             :
ASSOCIATION,                                               :
f/d/b/a CECOM,                                             :
a/k/a DOWLING COLLEGE, INC.,                               :
                                                           :
                                         Debtor.           :
---------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING THE SALE OF THE DEBTOR'S SIMULATORS LOCATED AT THE BROOKHAVEN CAMPUS TO FARMINGDALE STATE COLLEGE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

Upon the motion dated June 29, 2018 (the "Sale Motion")[1] of Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), for an order pursuant to sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") approving the sale (the "Sale") of the Debtor's Simulators to Farmingdale State College ("Farmingdale") free and clear of liens, claims and encumbrances as provided in the Letter Agreement, a copy of which is annexed to the Rosenfeld Declaration (defined below) as Exhibit 1, by and among the Debtor and Farmingdale; and it appearing that the Court has jurisdiction to consider the Sale Motion and the relief requested herein; and consideration of the Sale Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and appropriate notice of the Sale Motion

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

has been given under the circumstances; and it appearing that no other or further notice need be given; and this Court having reviewed the Declaration of Robert S. Rosenfeld filed on behalf of the Debtor in support of the Sale (the "Rosenfeld Declaration"); and a Sale Hearing having been held on July 23, 2018; and after due deliberation; and sufficient cause appearing therefore, it is hereby

**ORDERED** that the Sale Motion is granted; and it is further

**ORDERED** that pursuant to Section 363(f) of the Bankruptcy Code the Sale of the Simulators by the Debtor to Farmingdale pursuant to the Letter Agreement shall be free and clear of all liens, claims, interests and encumbrances; and it is further

**ORDERED** that the Debtor has complied with Section 363(d)(1) of the Bankruptcy Code; and it is further

**ORDERED** that Farmingdale is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code; and it is further

**ORDERED** that upon consummation of the Sale of the Simulators to Farmingdale, the Debtor shall pay the proceeds to the administrative agent for its post-petition secured lenders (the "DIP Agent"), which payment shall be applied to the Debtor's Obligations in accordance with the terms of that certain Debtor-in-Possession Multi-Draw Term Loan Promissory Note dated as of November 29, 2016, by and among the Debtor and each lender party thereto and the DIP Agent (as amended, supplemented, restated or otherwise modified from time to time in accordance therewith, the "DIP Note"); and it is further

**ORDERED** that the Debtor is authorized and empowered to take such actions and execute and deliver such documents and pay such sums as are reasonably necessary to effectuate the terms of this Order; and it is further

**ORDERED** that notwithstanding the possible applicability of Bankruptcy Rule 6004, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

# <u>Exhibit B</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                          :        Chapter 11
                                               :
DOWLING COLLEGE,                               :
f/d/b/a DOWLING INSTITUTE,                      :        Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                 :
ASSOCIATION,                                   :
f/d/b/a CECOM,                                 :
a/k/a DOWLING COLLEGE, INC.,                   :
                                               :
                              Debtor.          :
---------------------------------------------------------------x


**DECLARATION OF ROBERT S. ROSENFELD, CHIEF RESTRUCTURING**
**OFFICER OF THE DEBTOR, IN SUPPORT OF THE DEBTOR'S MOTION FOR**
**AN ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY**
**CODE APPROVING THE SALE OF THE DEBTOR'S SIMULATORS LOCATED AT**
**THE BROOKHAVEN CAMPUS TO FARMINGDALE STATE COLLEGE**
**<u>FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES</u>**


        I, ROBERT S. ROSENFELD, declare, pursuant to section 1746 of title 28 of the United

States Code, as follows:

        1.      I am the Chief Restructuring Officer (the "<u>CRO</u>") of the above-captioned debtor

and debtor in possession ("<u>Dowling</u>" or the "<u>Debtor</u>").

        2.      I submit this declaration in further support of the Debtor's motion seeking entry of

an order approving the sale (the "<u>Sale</u>") of the Debtor's Simulators[1] to Farmingdale State College

("<u>Farmingdale</u>") free and clear of liens, claims and encumbrances (the "<u>Sale Motion</u>").

        3.      All statements contained herein are based on personal knowledge or made upon

information and belief.

---
[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

4.      Prior to the Petition Date, I was retained to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  In accordance with my retention Order, entered December 16, 2016 [DE 106], I have taken over as the day-to-day manager of the Debtor and I am responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

A.      *The Brookhaven Campus and the Simulators*

5.      On September 26, 2017, the Debtor filed a motion seeking, *inter alia*, approval of the sale of the Debtor's 105.33-acre campus located in the Town of Brookhaven, County of Suffolk, at William Floyd Parkway, Shirley, New York 11967 (the "Brookhaven Campus") to the successful bidder as determined by the bidding procedures [DE 406].

6.      On October 17, 2017, an order was entered by the Bankruptcy Court, approving, *inter alia*, bidding procedures for the sale of the Brookhaven Campus, and scheduling an auction ("Auction") and sale hearing in connection therewith [DE 425].

7.      On January 31, 2018, the Debtor conducted the Auction for the Brookhaven Campus.  After all bidding was completed the Debtor, in consultation with the Debtor's professionals and the necessary creditor groups, determined to adjourn the Auction without a date given the lack of creditor support for values obtained at the Auction that day.

8.      Following the Auction, the Debtor, its professionals and the Creditors' Committee engaged in extensive marketing, meetings, and negotiations with interested parties in an effort to further canvas the local developer market, better understand the likely permissible development options at the Brookhaven Campus, and achieve a greater value for all creditors.

2

9.      As a result of these efforts, a bid was submitted by Triple Five Aviation Industries LLC ("Triple Five") for the sum of $14,000,000.00.

10.     On May 17, 2018, the Board of Trustees of Dowling (the "Board") convened and approved a resolution which authorized me, as CRO to execute the asset purchase agreement (the "Brookhaven Campus APA") with Triple Five.

11.     On June 19, 2018 the Bankruptcy Court entered an order approving the sale of the Brookhaven Campus to Triple Five [DE  544].

12.     In connection with the Debtor's former aviation program, the Debtor owns certain air traffic control simulators located at the Brookhaven Campus, including the Raytheon FIRSTplus Air Traffic Control Simulator and the NASA/VAST Simulator (collectively, the "Simulators").  I understand that the Simulators were once used in coursework related to the training and certification of air traffic controllers by Dowling.  I further understand that the Simulators utilize somewhat outdated technology and that the system hardware and software appear to be in need of upgrades.

13.     Given the specific use and limited potential users for the Simulators and given that a majority of interested bidders for the Brookhaven Campus contemplated development uses other than as an aviation school, the Debtor felt that any purchaser without a specific need would likely remove and discard the Simulators and thus chose to exclude the Simulators from the Brookhaven Campus APA.[2]

14.     However, all potential bidders for the Brookhaven Campus were made aware that the Simulators were available for purchase.  After some consideration, Triple Five ultimately determined that it was not interested in purchasing the Simulators.

---

[2] The Brookhaven Campus APA provides that prior to the closing or as soon thereafter as is reasonably practical, the Debtor will remove all Excluded Assets (as defined in the Brookhaven Campus APA), including the Simulators, from the Brookhaven Campus.  *See* Brookhaven Campus APA, § 7.6.

15.     In order to locate a potential purchaser for the Simulators, we contacted a former Dowling engineer who was in charge of the Simulators while employed at Dowling, as well as FirstNAV, the company that provided support and services for the Simulators when the Debtor's aviation program was in existence.  The former employee and FirstNAV assisted us with contacting many of the schools in the United States that are certified for air traffic controller training.  Only one such school, Farmingdale, was interested in making an offer for the Simulators.

16.     Farmingdale initially offered to purchase the Simulators for $10,000.  The Debtor rejected this offer and through subsequent negotiations, Farmingdale increased its offer to $45,000, which the Debtor has accepted, subject to this Court's approval.

17.     On June 29, 2018, the Debtor entered into a letter agreement with Farmingdale for the sale of the Simulators (the "Letter Agreement")[3], a copy of which is attached hereto as **Exhibit 1**.  Pursuant to the Letter Agreement, the purchase price for the Simulators is $45,000.

B.     *Debtor's Business Judgment*

18.     I believe that the Sale represents the sound business judgment of the Debtor and is appropriate in light of the facts and circumstances set forth herein.  The Simulators are of relatively *de minimis* value and are of no use to the Debtor in relation to this liquidating Chapter 11 Case. The Debtor has determined in its business judgment that, under the circumstances, the benefits of consummating a prompt private sale of the Simulators on the terms and conditions embodied in the Letter Agreement, including, but not limited to, (i) receiving immediate funds for the benefit of the Debtor's estate, (ii) relieving the Debtor of potentially significant costs of removal of the Simulators by the deadline set forth in the Brookhaven Campus APA, and (iii) removing the potential logistical difficulties of meeting the exit date timeline as stated in the Brookhaven

---

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Letter Agreement.

Campus APA, outweigh any potential benefits of conducting a further marketing and overbid process for the Simulators.  Based on the lack of interest in the Simulators from the schools in the United States that offer air traffic controller training, I do not believe that an auction could increase the consideration that any party is willing to pay for the Simulators above the consideration offered by Farmingdale.

19.    As a result, I believe the Sale of the Simulators to Farmingdale is the highest and best offer for the assets attainable under the circumstances and enables the Debtor to comply with the terms of the Brookhaven Campus APA.  I believe it is important that the proposed Sale be closed as quickly as reasonably possible to maximize the net asset value for creditors of this estate.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  June 29, 2018

/s/ Robert S. Rosenfeld
Robert S. Rosenfeld
Chief Restructuring Officer

# Exhibit 1



# DOWLING COLLEGE
— LONG ISLAND, NEW YORK —

June 27, 2018

<u>Via E-Mail</u>
Farmingdale State College
2350 Broadhollow Road
Farmingdale, New York 11735-1021
Attn: Gregory W. O'Connor (oconnor@farmingdale.edu)
Vice President and Chief Financial Officer

Re:     **Sale of Simulators from Dowling College to Farmingdale State College**

Dear Mr. O'Connor:

We are in receipt of your letter dated April 27, 2018, wherein you offered to purchase the Simulators (as defined herein) from Dowling College for $45,000. This letter shall memorialize the terms of the agreement between Dowling College (the "Seller") and Farmingdale State College (the "Buyer") for the sale of the Simulators.

<u>Assets</u>:

Seller agrees to sell and Buyer agrees to purchase those certain air traffic control simulators located at the Debtor's 105.33-acre campus located in the Town of Brookhaven, County of Suffolk, at William Floyd Parkway, Shirley, New York 11967 (the "Brookhaven Campus"), including the Raytheon FIRSTplus Air Traffic Control Simulator and the NASA/VAST Simulator (collectively, the "Simulators"). The Simulators are being transferred to Buyer on a "WHERE IS" and, as to condition, "AS IS" basis.

<u>Purchase Price</u>:

The aggregate consideration for the sale of the Simulators to Buyer shall be Forty-Five Thousand Dollars ($45,000.00) (the "Purchase Price"). On the Closing Date (as defined herein), Buyer shall pay to Seller the amount of the Purchase Price.

<u>Closing and Closing Date</u>:

The closing of the sale shall take place at a location agreed upon by Buyer and Seller, within ten (10) calendar days after entry of an order by the United States Bankruptcy Court for the Eastern District of New York approving the sale of the Simulators from Seller to Buyer free and clear of all liens and claims to the fullest extent permissible under section 363(f) of title 11 of the United States Code, or such other date as Buyer and Seller may mutually determine in writing (the

"Closing Date"). Seller is delivering possession of the Simulators at the Brookhaven Campus and Buyer is obligated at its sole cost and expense, to remove the Simulators from the Brookhaven Campus upon the Closing Date. At the closing, Seller shall deliver or cause to be delivered to Buyer, a fully-executed bill of sale substantially in the form annexed hereto as Exhibit A.

Sincerely,

Robert S. Rosenfeld
Chief Restructuring Officer of
Dowling College

AGREED AND ACCEPTED:

Farmingdale State College
Gregory W. O'Connor
Vice President and Chief Financial Officer

2

# <u>Exhibit A</u>

## BILL OF SALE

**THIS BILL OF SALE** made, executed and delivered this ___ day of ___, 2018 by Dowling College, ("<u>Seller</u>") to Farmingdale State College, or an affiliated entity (the "<u>Buyer</u>"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in that certain letter agreement between Buyer and Seller dated as of June 29, 2018 (the "<u>Letter Agreement</u>").

## W I T N E S S E T H:

**WHEREAS**, the Letter Agreement provides for, among other things, the transfer and sale to Buyer of Seller's interest in the Simulators.

**WHEREAS**, the parties desire to carry out the intent and purposes of the Letter Agreement by Seller's execution and delivery to Buyer, in addition to such other instruments as Buyer shall have otherwise received or reasonably requested in accordance with the Letter Agreement, of this Bill of Sale evidencing the transfer to and vesting in Buyer of all of Seller's right, title and interest in and to the Simulators;

**NOW, THEREFORE**, in consideration of the promises and other valuable consideration paid to Seller by Buyer at or before the execution and delivery hereof, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

<u>Conveyance</u>.  Seller hereby conveys, grants, bargains, sells, transfers, sets over, assigns and delivers to Buyer, its successors and assigns forever, all right, title, interest equities and privileges of Seller, in and to the Simulators, free and clear of all liens and claims of any kind whatsoever.

<u>Buyer's Benefit</u>.   Nothing in this instrument, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than Buyer, its successors and assigns, any remedy or claim under or by reason of this instrument or any terms, covenants or conditions hereof, and all the terms, covenants and conditions, promises and agreements in this instrument contained shall be for the sole and exclusive benefit of Buyer and its successors and assigns.

<u>Effectiveness</u>.  This instrument is executed by and shall be binding upon Seller, for the uses and purposes set forth and referred to herein and in the Letter Agreement, effective immediately upon its delivery to Buyer.

<u>Governing Law</u>.  The validity, interpretation and performance of this Bill of Sale shall be governed by and construed in accordance with the laws of the State of New York without regard to its principles of conflicts of law.

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be signed, all on the date and year first above written.

DOWLING COLLEGE
SELLER


By:    _____
       Name: Robert S. Rosenfeld
       Title: Chief Restructuring Officer


**ACCEPTED AND AGREED:**

FARMINGDALE STATE COLLEGE


By: _____
    Name:
    Title:

**KLESTADT WINTERS JURELLER**　　　Hearing Date: July 23, 2018
**SOUTHARD & STEVENS, LLP**　　　　Hearing Time: 1:30 p.m. (EST)
200 West 41st Street, 17th Floor
New York, NY 10036-7203　　　　　　**Objection Deadline:**
Telephone: (212) 972-3000　　　　　　**July 16, 2018 at 4:00 p.m. (EST)**
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re　　　　　　　　　　　　　　:　Chapter 11
　　　　　　　　　　　　　　　　　:
DOWLING COLLEGE,　　　　　　　:
f/d/b/a DOWLING INSTITUTE,　　　　:　Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI　:
ASSOCIATION,　　　　　　　　　　:
f/d/b/a CECOM,　　　　　　　　　　:
a/k/a DOWLING COLLEGE, INC.,　　　:
　　　　　　　　　　　　Debtor.　　:
----------------------------------------------------------------x

**NOTICE OF HEARING ON DEBTOR'S MOTION FOR AN ORDER PURSUANT
TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING
THE SALE OF THE DEBTOR'S SIMULATORS LOCATED AT THE
BROOKHAVEN CAMPUS TO FARMINGDALE STATE COLLEGE FREE
AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

　　　**PLEASE TAKE NOTICE** that a hearing on the motion (the "Motion")[1] of Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case") for entry of an order approving the sale of the Debtor's Simulators located at the Brookhaven Campus to Farmingdale State College free and clear of liens, claims and encumbrances, has been scheduled before the Honorable Robert E. Grossman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Courtroom 860, Central Islip, New York 11722 on **July 23, 2018 at 1:30 p.m.** (the "Hearing").

　　　**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the relief sought in the Motion shall be made in writing, filed with the Court by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court, Eastern District of New York, 271 Alfonse M. D'Amato Federal Courthouse,

---
[1] Terms capitalized but not defined herein shall have the meanings ascribed to them in the Motion.

290 Federal Plaza, Central Islip, New York 11722, on a 3.5 inch floppy disc or compact disc, preferably in portable document Format (PDF), Microsoft Word, or any other Windows Based word processing format, and served upon (i) The Office of the United States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, Esq., Trial Attorney; (ii) counsel to the Debtor:  Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Sean C. Southard, Esq.; (iii) counsel to the Debtor's material prepetition and post-petition secured lenders: (a) Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn: P. Miyoko Sato, Esq. and Ian A. Hammel, Esq., (b) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn:  Brian D. Pfeiffer, Esq., (c) Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord, Esq. and Thomas J. McNamara, Esq., and (d) Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, Attn:  Adam T. Berkowitz, Esq.; and (iv) counsel to the Creditors' Committee:  SilvermanAcampora, LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Ronald J. Friedman, Esq., **so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on July 16, 2018.**

　　　　**PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion may be adjourned without further notice except as announced in open court at the Hearing, or at any adjourned hearing.

Dated:　New York, New York
　　　　　June 29, 2018

　　　　　　　　　　　　　　　**KLESTADT WINTERS JURELLER**
　　　　　　　　　　　　　　　**SOUTHARD & STEVENS, LLP**


　　　　　　　　　　　By:　*/s/ Sean C. Southard*
　　　　　　　　　　　　　　Sean C. Southard
　　　　　　　　　　　　　　Lauren C. Kiss
　　　　　　　　　　　　　　200 West 41st Street., 17th Floor
　　　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　　　Tel: (212) 972-3000
　　　　　　　　　　　　　　Fax: (212) 972-2245
　　　　　　　　　　　　　　Email: ssouthard@klestadt.com
　　　　　　　　　　　　　　　　　lkiss@klestadt.com

　　　　　　　　　　　　　　*Counsel to the Debtor and*
　　　　　　　　　　　　　　　*Debtor-in-Possession*