**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                  :        Chapter 11
                                                       :
DOWLING COLLEGE,                                       :
f/d/b/a DOWLING INSTITUTE,                             :        Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                         :
ASSOCIATION,                                           :
f/d/b/a CECOM,                                         :
a/k/a DOWLING COLLEGE, INC.,                           :
                                        Debtor.        :
---------------------------------------------------------------x

### DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GARDEN CITY GROUP, LLC AS ADMINISTRATIVE ADVISOR FOR THE DEBTOR AND DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 330, *NUNC PRO TUNC* TO APRIL 25, 2018

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dowling College (the "Debtor"), debtor and debtor-in-possession in the above-captioned

chapter 11 case (the "Chapter 11 Case"), hereby submits this application (the "327 Application")

for entry of an order, authorizing the Debtor to retain and employ Garden City Group, LLC

("GCG") as its administrative advisor (the "Administrative Advisor") pursuant to sections 327(a)

and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local

Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), *nunc pro tunc* to April 25, 2018.  In support of this 327 Application, the Debtor submits the declaration of Marcia Uhrig, Director of GCG (the "Uhrig Declaration"), which is attached hereto as Exhibit B and incorporated herein by reference.  In further support of this 327 Application, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding under 28 U.S.C. § 157(b).

3.      Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1.

## BACKGROUND

5.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

6.      The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On December 9, 2016, the United States Trustee appointed Ultimate Power Inc., Linda Ardito and Lori Zaikowski to the Creditors' Committee.  Later that day, the Creditors' Committee selected SilvermanAcampora LLP as its general bankruptcy counsel.

8.      Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession  in  this  Chapter  11  Case,  assisting  in  the  formulation,  preparation  and

consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

9.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* (the "First Day Declaration") [DE 23].

**RELIEF REQUESTED**

10.     On the Petition Date, the Debtor filed an application for entry of an order appointing GCG as claims and noticing agent pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code and Local Rule 5075-1 (the "Section 156(c) Application").  On December 6, 2016, the Court entered the order approving the Section 156(c) Application [DE 70] (the "Section 156(c) Order"). The Debtor intends to file a plan of liquidation in the next few months and will require the assistance of GCG to prepare for the plan solicitation process and associated work, which will require GCG to perform duties outside the scope of the Section 156(c) Order.  Therefore, by this 327 Application, the Debtor requests entry of an order authorizing the Debtor to retain and employ GCG as the Administrative Advisor pursuant to sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, *nunc pro tunc* to April 25, 2018, pursuant to the terms of that certain Bankruptcy Administration Agreement between GCG and the Debtor, dated as of November 14, 2016, a copy of which is attached hereto as Exhibit C (the "Retention Agreement").[1]

---

[1] GCG has agreed to provide the modified pricing schedule, reflecting further agreed-upon discounts to be provided by GCG to the Debtor, to the Office of the U.S. Trustee, counsel for any official committee appointed in these chapter 11 cases, and any other party in interest upon request.

## GCG'S QUALIFICATIONS

11.     As a specialist in claims management and legal administration services, GCG provides comprehensive administrative services to chapter 11 cases.  GCG is one of the country's leading chapter 11 administrators, with substantial experience in matters of all sizes and levels of complexity, including many large bankruptcy cases filed in this district: In re Long Beach Medical Center, et al., Case No. 14-70593 (AST) (Bankr. E.D.N.Y. Feb. 26, 2016); In re Peninsula Hospital, et al., Case No. 11-47056 (ESS) (Bankr. E.D.N.Y. Nov. 28, 2011); In re Agape World, Inc., Case No. 09-70660 (DTE) (Bankr. E.D.N.Y. Mar. 12, 2009); In re Cooperfield Investment, LLC, Case No. 07-71327 (CEC) (Bankr. E.D.N.Y. Aug. 20, 2007); In re Zurich Depository Corp., Case No. 07-71352 (JBR) (Bankr. E.D.N.Y. June 20, 2007).  Based on GCG's experience, the Debtor believes that GCG is well qualified to serve as the Administrative Advisor in this Chapter 11 Case.

## SERVICES TO BE PROVIDED

12.     Pursuant to the Retention Agreement, and to the extent requested by the Debtor, GCG has agreed to perform, among other services, the following:

(a)     managing the solicitation[2] and tabulation of votes in connection with any chapter 11 plan (a "Plan") filed by the Debtor and providing ballot reports to the Debtor and its professionals;

(b)     generating an official ballot certification and testifying, if necessary, in support of the ballot tabulation results;

(c)     if applicable, launching, administering, and managing any rights offering and performing any administrative tasks in connection with the rights offering and any related backstop, including but not limited to processing the relevant forms, collecting and managing payments, and making or assisting in the distributions of cash, securities, and/or other entitlements;

---

[2] The actual compilation and mailing of solicitation materials falls within GCG's role as Claims and Noticing Agent under the Section 156(c) Order.

(d)      managing the publication of legal notices if requested by the Debtor;

(e)      managing any distributions made pursuant to a plan (including the distribution of cash, securities and/or other entitlements);

(f)      assisting with claims reconciliation, including generating claim objection exhibits and contract cure notices; and

(g)      providing any and all necessary administrative tasks not otherwise specifically set forth above as the Debtor or its professionals may require in connection with this Chapter 11 Case.

13.     GCG's retention as Administrative Advisor will provide the Debtor with experienced professionals and services that are essential to a successful liquidation.  GCG will coordinate with the Debtor's other retained professionals in this Chapter 11 Case to avoid any unnecessary duplication of services.  Accordingly, the relief requested in this 327 Application is in the best interests of the Debtor's estate and all parties in interest.

## PROFESSIONAL COMPENSATION AND INDEMNIFICATION

14.     The Debtor proposes to compensate GCG on substantially the same terms and conditions set forth in the Retention Agreement.  For services provided as Administrative Advisor, GCG intends to apply to the Court for allowance of compensation and reimbursement of reasonable and necessary out-of-pocket expenses in accordance with the *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "Interim Compensation Order") [DE 117], Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any further orders of the court (collectively, the "Fee Guidelines").

## GCG'S DISINTERESTEDNESS

15.     GCG has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of

the Debtor's knowledge, information, and belief, and as disclosed in the Uhrig Declaration, GCG is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code—as required by section 327(a) of the Bankruptcy Code—and does not hold or represent any interest materially adverse to the Debtor's estate.

16.     Additionally, in connection with its retention as Administrative Advisor, GCG represents in the Uhrig Declaration, among other things, that:

(a)     GCG and its personnel are not creditors, equity security holders, or insiders of the Debtor;

(b)     GCG and its personnel are not, and were not, within two years before the Petition Date, directors, officers, or employees of the Debtor;

(c)     GCG and its personnel do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor;

(d)     GCG will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Administrative Advisor;

(e)     by accepting employment in this Chapter 11 Case, GCG waives any right to receive compensation from the United States government in connection with this Chapter 11 case;

(f)     in its capacity as Administrative Advisor, GCG will not be an agent of the United States and will not act on behalf of the United States; and

(g)     GCG will not employ any past or present employees of the Debtor in connection with its work as the Administrative Advisor in this Chapter 11 Case.

17.     GCG will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## **BASIS FOR RELIEF**

18.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

19.     Additionally, Bankruptcy Rule 2014(a) requires that an application for retention:

> [S]hall state specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

20.     In light of the foregoing and the size and complexity of this Chapter 11 Case, the Debtor respectfully submits that GCG's retention and employment pursuant to the terms of the Retention Agreement is in the best interests of the estate, its creditors, and all parties in interest in this Chapter 11 Case.  The Debtor also believes that the terms and conditions of the Retention Agreement are reasonable in light of the hundreds of creditors and other parties in interest that are involved in this Chapter 11 Case.  The Debtor therefore submits that it has satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Debtor to retain and employ GCG in this Chapter 11 Case on the terms described herein and in the Retention Agreement.

## NOTICE

21.     Notice of this 327 Application will be given to (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) counsel to the Creditors' Committee; (d) the following taxing and regulatory authorities: (i) the United

States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

**NO PRIOR REQUEST**

22.     No prior request for the relief sought herein has been made by the Debtor to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:   New York, New York
           July 6, 2018

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**

By:  */s/ Sean C. Southard*
       Sean C. Southard
       Lauren C. Kiss
       200 West 41st Street, 17th Floor
       New York, NY 10036
       Tel: (212) 972-3000
       Fax: (212) 972-2245
       Email: ssouthard@klestadt.com
            lkiss@klestadt.com

       *Counsel to the Debtor and Debtor in*
       *Possession*

# **<u>Exhibit A</u>**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                          :          Chapter 11
                                                               :
DOWLING COLLEGE,                                               :
f/d/b/a DOWLING INSTITUTE,                                     :          Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                                 :
ASSOCIATION,                                                   :
f/d/b/a CECOM,                                                 :
a/k/a DOWLING COLLEGE, INC.,                                   :
                                           Debtor.             :
-------------------------------------------------------------x

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF GARDEN CITY GROUP, LLC AS ADMINISTRATIVE ADVISOR FOR**
**THE DEBTOR AND DEBTOR IN POSSESSION PURSUANT TO**
**11 U.S.C. §§ 327(a) AND 330, *NUNC PRO TUNC* TO APRIL 25, 2018**

Upon the application (the "327 Application")[1] of the above-captioned Debtor and Debtor

in possession (collectively, the "Debtor") for entry of an order (this "Order") authorizing the

Debtor to retain and employ Garden City Group, LLC ("GCG") as the Administrative Advisor

pursuant to sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local

Rule 2014-1, pursuant to the terms of the Retention Agreement, *nunc pro tunc* to April 25, 2018;

and upon consideration of the Uhrig Declaration; and this Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334; and venue of this proceeding and the 327

Application in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate

notice of and the opportunity for a hearing on the 327 Application having been given; and the relief

requested in the 327 Application being in the best interests of the Debtor's estate, its creditors and

other parties in interest; and the Court being satisfied that GCG does not hold or represent any

entity having an interest adverse to the interests of the Debtor's estate or of any class of creditors

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Application.

1

and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; it is

    **ORDERED**, that the 327 Application is granted as set forth herein; and it is further

    **ORDERED**, that the retention of GCG as Administrator Advisor in this Chapter 11 Case, pursuant to the terms of the Retention Agreement, is hereby approved pursuant to section 327(a) of the Bankruptcy Code, *nunc pro tunc* to April 25, 2018; and it is further

    **ORDERED**, that GCG is authorized to take such other action to comply with all duties set forth in the 327 Application and this Order; and it is further

    **ORDERED**, that for work performed in its capacity as Administrative Advisor, GCG shall apply to this Court for allowance of compensation and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Interim Compensation Order and any further orders entered in this Chapter 11 Case regarding professional compensation and reimbursement of expenses; and it is further

    **ORDERED**, that for the avoidance of doubt, all payments to GCG on account of compensation in this Chapter 11 Case shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash collateral, including but not limited to any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Order and those materials; and it is further

    **ORDERED**, that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

**ORDERED**, that if there is any inconsistency between the terms of this Order, the 327

Application, or the Uhrig Declaration, the terms of this Order shall govern.

**NO OBJECTION:**

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:_____
Stan Yang, Esq.
TRIAL ATTORNEY

# <u>Exhibit B</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                              :       Chapter 11
                                                   :
DOWLING COLLEGE,                                   :
f/d/b/a DOWLING INSTITUTE,                         :       Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                     :
ASSOCIATION,                                       :
f/d/b/a CECOM,                                     :
a/k/a DOWLING COLLEGE, INC.,                       :
                                        Debtor.    :

---------------------------------------------------------------x

**DECLARATION OF MARCIA UHRIG IN SUPPORT OF THE DEBTOR'S
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF GARDEN CITY GROUP, LLC AS ADMINISTRATIVE
ADVISOR FOR THE DEBTOR AND DEBTOR IN POSSESSION PURSUANT
TO 11 U.S.C. §§ 327(a) AND 330, *NUNC PRO TUNC* TO APRIL 25, 2018**

I, Marcia Uhrig, hereby declare under penalty of perjury that, to the best of my

knowledge and belief, and after reasonable inquiry, the following is true and correct:

1.      I am a Director of Garden City Group, LLC ("GCG"), and I am authorized to

make and submit this Declaration on behalf of GCG.  The statements contained herein are based

upon personal knowledge.  GCG submits this Declaration in support of the *Debtor's Application

for Entry of an Order Authorizing the Retention and Employment of Garden City Group, LLC as

Administrative Advisor for the Debtor and Debtor in Possession Pursuant to 11 U.S.C. §§ 327(a)

and 330 Nunc Pro Tunc to April 25, 2018* (the "327 Application"),[1] of the above-captioned

debtor and debtor in possession (the "Debtor"), for authorization to retain and employ GCG as

administrative advisor (the "Administrative Advisor") in the above-captioned chapter 11 case

(the "Chapter 11 Case") pursuant to 11 U.S.C. § 327(a).

---

[1] Capitalized terms utilized but not otherwise defined herein shall have the meanings ascribed to such terms in the
Application.

1

2.    Except as otherwise noted, I have personal knowledge of the matters set forth herein, and, if called as a witness, I would testify thereto.  Certain of the disclosures herein, however, relate to matters within the personal knowledge of other professionals at GCG and are based on information provided by such professionals.

3.    As a specialist in claims management and legal administration services, GCG provides comprehensive administrative services to chapter 11 cases.  GCG is one of the country's leading chapter 11 administrators, with substantial experience in matters of all sizes and levels of complexity, including several bankruptcy cases filed in this District: In re Long Beach Medical Center, et al., Case No. 14-70593 (AST) (Bankr. E.D.N.Y. Feb. 26, 2016); In re Peninsula Hospital, et al., Case No. 11-47056 (ESS) (Bankr. E.D.N.Y. Nov. 28, 2011); In re Agape World, Inc., Case No. 09-70660 (DTE) (Bankr. E.D.N.Y. Mar. 12, 2009); In re Cooperfield Investment, LLC, Case No. 07-71327 (CEC) (Bankr. E.D.N.Y. Aug. 20, 2007); In re Zurich Depository Corp., Case No. 07-71352 (JBR) (Bankr. E.D.N.Y. June 20, 2007).  Based on GCG's experience, the Debtor believes that GCG is well-qualified to serve as the Administrative Advisor in this Chapter 11 Case.

4.    The Debtor has selected GCG to serve as its Administrative Advisor for the Debtor's estate, as set forth in greater detail in the 327 Application.  Pursuant to the Retention Agreement, and to the extent requested by the Debtor, as Administrative Advisor GCG has agreed to perform, among other services, the following:

(a)    managing the solicitation[2] and tabulation of votes in connection with any chapter 11 plan (a "Plan") filed by the Debtor and providing ballot reports to the Debtor and its professionals;

---

[2] The actual compilation and mailing of solicitation materials falls within GCG's role as Claims and Noticing Agent under the Section 156(c) Order.

     (b)      generating an official ballot certification and testifying, if necessary, in support of the ballot tabulation results;

     (c)      if applicable, launching, administering, and managing any rights offering and performing any administrative tasks in connection with the rights offering and any related backstop, including but not limited to processing the relevant forms, collecting and managing payments, making or assisting in the distributions of cash, securities, and/or other entitlements;

     (d)      managing the publication of legal notices if requested by the Debtor;

     (e)      managing any distributions made pursuant to a Plan (including cash, securities, and/or other entitlements);

     (f)      assisting with claims reconciliation, including generating claim objection exhibits and contract cure notices; and

     (g)      providing any and all necessary administrative tasks not otherwise specifically set forth above as the Debtor or its professionals may require in connection with this Chapter 11 Case.

5.      To the best of my knowledge, neither GCG nor any of its professional personnel have any relationship with the Debtor that would impair GCG's ability to serve as Administrative Advisor in this Chapter 11 Case.

6.      GCG may have (or may have had) relationships with some of the Debtor's creditors and may provide (or may have provided) professional services to entities or persons that may be creditors or parties in interest in this Chapter 11 Case. These relationships and the services provided are, however, in matters completely unrelated to this Chapter 11 Case and relate to GCG's role as a class action settlement claims administrator[3] or bankruptcy administrator.

7.      GCG has working relationships with certain of the professionals retained by the Debtor and other parties herein but such relationships are completely unrelated to this Chapter 11 Case. GCG has represented, and will continue to represent, clients in matters unrelated to this

---

[3] GCG's assistance in the cases where GCG acts as a class action settlement claims administrator has been primarily related to the design and dissemination of legal notice and other administrative functions in class actions.

Chapter 11 Case, and has had, and will continue to have, relationships in the ordinary course of its business with certain vendors and professionals in connection with matters unrelated to this Chapter 11 Case.

8.      In addition, GCG personnel may have relationships with some of the Debtor's creditors; however, such relationships are of a personal, financial nature and completely unrelated to this Chapter 11 Case.

9.      On June 15, 2018, GCG was acquired as a wholly owned subsidiary of Epiq Class Action & Claims Solutions, Inc. ("Epiq").  Like GCG, Epiq is one of the country's leading Chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of Chapter 11 cases including in cases of this same size and complexity.  While Epiq or its affiliate Epiq Corporate Restructuring, LLC (f/k/a Epiq Bankruptcy Solutions, LLC) may have rendered services to certain creditors, received services from certain creditors, or have a vendor relationship with some creditors, upon information and belief, I do not believe that such relationships were (or are) in any way connected to GCG's retention by the Debtor in this chapter 11 Case.  To the extent GCG discovers any facts bearing on matters described herein, GCG will supplement information contained herein.

10.     GCG is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), in that GCG and its professional personnel:

(a)      are not creditors, equity security holders, or insiders of the Debtor;

(b)      are not, and were not, within two years before the date of the filing of this Chapter 11 Case, directors, officers, or employees of the Debtor; and

(c)      do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

4

11.    GCG has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this Chapter 11 Case.  If GCG's proposed retention and employment is approved by this Court, GCG will not accept any engagement or perform any service for any entity or person other than the Debtor in this Chapter 11 Case other than the services described in the 327 Application or approved by the Section 156(c) Order.

12.    GCG represents, among other things, that:

(a)    it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Administrative Advisor;

(b)    by accepting employment in this Chapter 11 Case, GCG waives any right to receive compensation from the United States government;

(c)    in its capacity as Administrative Advisor, GCG will not be an agent of the United States and will not act on behalf of the United States; and

(d)    GCG will not employ any past or present employees of the Debtor in connection with its work as Administrative Advisor.

13.    Subject to Court approval, the Debtor has agreed to compensate GCG for professional services rendered pursuant to 11 U.S.C. § 327(a) in connection with this Chapter 11 Case according to the terms and conditions of the Retention Agreement.  Payments are to be based upon the submission of GCG's relevant applications in accordance with the Fee Guidelines.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 5, 2018

/s/ Marcia Uhrig
_____
Marcia Uhrig
Director
Garden City Group, LLC

5

# <u>Exhibit C</u>


Garden City Group, LLC™

## BANKRUPTCY ADMINISTRATION AGREEMENT

This Bankruptcy Administration Agreement, dated as of November 14, 2016, is between Garden City Group, LLC, a Delaware limited liability company (the "Company"), and Dowling College (the "Client").

The Client desires to retain the Company to perform certain basic administrative services for the Client in its chapter 11 case anticipated to be filed in the United States Bankruptcy Court for the Eastern District of New York (such Court or such other Bankruptcy Court where said chapter 11 cases may actually be filed in lieu thereof, the "Bankruptcy Court"), and the Company desires to be retained to perform such services in accordance with the terms and conditions of this Agreement.

In consideration of the mutual covenants herein contained, the parties hereby agree as follows:

1.    Services.  The Company agrees to provide certain basis claims, noticing, solicitation, tabulation, website, and other services relating to the administration of the Client's case (the "Services") commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The pricing for the Services is set forth in the pricing schedule, dated November 11, 2016 that has been supplied to the Client (the "Dowling Pricing Schedule").

The Client agrees and understands that none of the Services constitute legal advice.

2.    Payment for Services; Expenses.

2.1.    Compensation.  The Client agrees to pay the Company its fees and expenses as outlined in the Dowling Pricing Schedule (subject to Bankruptcy Court approval in the event of an unresolved dispute).  Because the Dowling Pricing Schedule contains sensitive / competitive information, the Company and Client have agreed to attach to this publicly-available Retention Agreement the Company's standard discounted pricing schedule.  Nonetheless, the actual Dowling Pricing Schedule reflects GCG's standard discounted pricing schedule with further agreed-upon discounts and pricing concessions.

The Client and the Company intend that all fees and expenses incurred in connection with Services rendered by the Company pre-petition be paid in advance of or contemporaneously with the rendering of such Services.  To that end, the Client agrees to pay, by wire transfer, the Company a retainer of $15,000 (which may be replenished from time to time), to be applied as follows: (a) first against the contemporaneous and subsequent fees and expenses incurred by the Client in connection with Services rendered by the Company pre-petition; and (b) with respect to the portion of the retainer that remains outstanding, if any, after the petitions are filed, first against any outstanding pre-petition fees and expenses incurred by the Client in connection with the Services (and the retainer will thereafter be replenished to the original retainer amount to the extent necessary), and then against the final bill that will be rendered by the Company to the Client for the post-petition fees and expenses incurred by the Client in connection with the Services.

2.2.    Expenses.    In addition to the compensation set forth in Section 2.1, the Client shall reimburse the Company for all out-of-pocket expenses reasonably incurred by the Company in connection with the performance of the Services (subject to Bankruptcy Court determination in the event of an unresolved dispute). The out-of-pocket expenses will be billed on the expense (non-fee) portion of the Company's invoice to the Client and may include, but are not limited to, postage, banking fees, brokerage fees, costs of messenger and delivery service, travel, filing fees, staff overtime meal expenses and other similar expenses. In some cases, the Company may receive a rebate at the end of a year from a vendor. The Client and the Company intend to satisfy all expenses incurred in connection with pre-petition Services from advance retainers or contemporaneous payments. All such payments shall be made by wire transfer.

2.3.    Billing and Payment.    Except as provided in Section 2.2, or specifically set forth below in this Section 2.3, the Company shall bill the Client for its fees and expenses for Services performed under 28 U.S.C. § 156(c) on a monthly basis, and the Client shall pay the Company within thirty (30) days of its receipt of each such bill in the ordinary course of business (subject to Bankruptcy Court approval in the event of an unresolved dispute). With respect to pre-petition invoices, the same will show application of advance and contemporaneous payments against subsequent and contemporaneous fees and expenses and state an advance amount to replenish the retainer. Unless otherwise agreed to in writing, (i) postage expense, and certain other expenses, and (ii) fees for print notice and media publication (including any markups and/or commissions charged by GCG and included in those fees) must be paid within three (3) business days of the date of GCG's invoice.

3.    Term and Termination.

3.1.    Term.    The term of this Agreement shall commence on the date hereof and shall continue until performance in full of the Services, unless earlier terminated as set forth herein.

3.2.    Termination.

(a)    In the event of any material breach of this Agreement by either party hereto, either party may apply to the Bankruptcy Court for an order allowing termination of the Agreement. Grounds for termination include: (i) failure to cure a material breach within thirty (30) days after receipt of written notice by the non-breaching party or (ii) in the case of any breach which requires more than thirty (30) days to effect a cure, failure to commence and continue, in good faith, efforts to cure such breach, provided that such cure shall be effected no later than ninety (90) days after receipt of written notice of such breach. Waiver of any such default or material breach by either party hereto shall not be construed as limiting any right of termination for a subsequent default or material breach.

(b)    The Company shall be entitled to an administrative claim for all fees and expenses outstanding at the time of termination (subject to Bankruptcy Court approval in the event of an unresolved dispute).

(c)    In accordance with the Bankruptcy Court's Local Rules, procedures and/or directives, or in the absence thereof, as soon as practicable (i) following the entry of a final decree closing the chapter 11 case, or (ii) following the conversion of the chapter 11 case to chapter 7, the Company shall forward all original proofs of claim to the Federal Archives Record Administration. For all other documents in the Company's actual or constructive possession (including, but not limited to, letters, e-mails, facsimiles, other correspondence and all undeliverable and/or returned mail), the Company shall retain paper copies and electronic copies for one (1) year (i) following the entry of a final decree closing the chapter 11 cases, or (ii) following the conversion of the chapter 11 case to chapter 7. Following the one (1) year retention period, the Company shall have the right to destroy all such

2

documents. This provision shall not affect the Company's normal course business processes for archives and back-up tapes.

4.    Independent Contractor. It is understood and agreed that the Company, through itself or any of its agents, shall perform the Services as an independent contractor. Neither the Company nor any of its employees shall be deemed to be an employee of the Client. Neither the Company nor any of its employees shall be entitled to any benefits provided by the Client to its employees, and the Client will make no deductions from any of the payments due to the Company hereunder for state or federal tax purposes. The Company agrees that the Company shall be responsible for any and all taxes and other payments due on payments received hereunder by the Company from the Client. Nothing in this Agreement requires the Client to use the Company for any future work relating to the Services, and, in the event the Client decides to use another party for such future work, the Company agrees to cooperate fully with the Client to ensure a smooth transition to the new party.

5.    Accuracy of Client Supplied Information. The Client are responsible for the accuracy of all programs, data and other information they submit to the Company (including all information for the preparation of Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements")) and for the output of such information. The Company may undertake to place such data and information into certain systems and programs, including in connection with the generation of Schedules and Statements. The Company does not verify information provided by the Client and, with respect to Schedules and Statements preparation, all decisions are at the sole discretion and direction of the Client. All Schedules and Statements filed on behalf of, or by, the Client are reviewed and ultimately approved by the Client, and the Company bears no responsibility for the accuracy or contents therein.

6.    Confidential Information.

6.1.    Confidentiality. In connection with this Agreement, each of the Client and the Company (as the case may be, the "Disclosing Party") may disclose to the Company or the Client (as the case may be, the "Receiving Party") certain information (a) that is marked or otherwise identified in writing as confidential or proprietary information of the Disclosing Party ("Confidential Information") prior to or upon receipt by the Receiving Party; or (b) which the Receiving Party reasonably should recognize from the circumstances surrounding the disclosure to be Confidential Information. The Receiving Party (x) shall hold all Confidential Information in confidence and will use such information only for the purposes of fulfilling the Receiving Party's obligations hereunder, and for no other purpose, and (y) shall not disclose, provide, disseminate or otherwise make available any Confidential Information to any third party other than for the purposes of fulfilling the Receiving Party's obligations hereunder, in either case, without the express prior written permission of the Disclosing Party. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information pursuant to a validly issued subpoena or order of a court of competent jurisdiction, provided, however, that the Receiving Party must provide the Disclosing Party with prompt written notice of such subpoena or court order so that the Disclosing Party may seek a protective order or other appropriate remedy, and the Receiving Party shall reasonably cooperate with the Disclosing Party's efforts to obtain same.

6.2.   Protection of Intellectual Property.  The Client acknowledge that the Company's intellectual property, including, without limitation, the Company's inventions (whether or not patentable), processes, trade secrets and know how are of ultimate importance to the Company. Accordingly, the Client agrees to use its best efforts to protect such intellectual property, and shall not, either during the term of this Agreement, or subsequent to its termination, utilize, reveal or disclose any of such intellectual property.  The Client understands that the software programs and other materials furnished by the Company pursuant to this Agreement, and/or developed during the course of this Agreement by the Company, are the sole property of the Company.  The term "program" shall include, without limitation, data processing programs, check printing programs, specifications, applications, routines, sub-routines, procedural manuals and documentation.  The Client further agrees that any ideas, concepts, know-how or techniques relating to the claims management software used or developed by the Company during the course of this Agreement shall be the exclusive property of the Company.

6.3.   Scope.  The foregoing obligations in Sections 6.1 and 6.2 shall not apply to (a) information that is or becomes generally known or available by publication, commercial use or otherwise through no fault of the Receiving Party; (b) information that is known by the Receiving Party prior to the time of disclosure by the Disclosing Party to the Receiving Party; (c) information that is obtained from a third party who, to the Receiving Party's knowledge, has the right to make such disclosure without restriction; (d) any disclosure required by applicable law; or (e) information that is released for publication by the Disclosing Party in writing.  The obligations set forth under Sections 6.1 and 6.2 shall survive the termination of this Agreement.

7.   Limitation on Damages.  The Company shall be without liability to the Client with respect to anything done or omitted to be done, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct.  In no event shall liability to the Client for any claims, losses, costs, fines, penalties or damages, including court costs and reasonable attorneys' fees (collectively, "Losses"), whether direct or indirect, arising out of or in connection with or related to this Agreement, exceed the total amount billed or billable to the Client for the portion of the particular work which gave rise to the Losses.  Under no circumstances will the Company be liable to the Client for any special, consequential or incidental damages incurred by the Client relating to this Agreement or the performance of Services hereunder, regardless of whether the Client's claim is for breach of warranty, contract, tort (including negligence), strict liability or otherwise.

8.   Indemnification.  The Client hereby indemnifies and holds harmless the Company and its directors, officers, employees, affiliates and agents against any losses incurred by the Company arising out of, in connection with or related to (a) any gross negligence or willful misconduct by the Client, its employees, agents or representatives, or any misrepresentations made by such persons to third parties in connection with the Company's acts or omissions in connection with its rendering of the Services; (b) any breach of this Agreement by the Client; or (c) any erroneous instructions or information provided to the Company by any of the Clients for use in providing the Services.

9.   Jurisdiction.  This Agreement is subject to the approval of the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction over all matters regarding this Agreement.

10.    Force Majeure.    Whenever performance by the Company of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions or by reason of any other matter beyond the Company's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

11.    Notice.    Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five (5) days after the date of deposit in the United States mail, or, if sent by overnight courier, one (1) business day after delivery to such courier, as follows:  if to the Company, to Garden City Group, LLC, 1985 Marcus Avenue, Lake Success, New York 11042, Attention:  Kenneth Cutshaw, Chief Executive Officer; and if to the Client, to RSR Consulting, LLC, 1330 Avenue of the Americas, Suite 23A, New York, New York 10019, Attention:  Robert S. Rosenfeld.

12.    Governing Law.    This contract will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

13.    Severability.    All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court having competent jurisdiction, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

14.    Assignment.    This Agreement and the rights and obligations of the Company and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

15.    General.    This Agreement supersedes and replaces any existing agreement entered into by the Company and the Client relating generally to the same subject matter, and may be modified only in a writing signed by the Company and the Client.  The paragraph headings in this Agreement are included only for convenience, do not in any manner modify or limit any of the provisions of this Agreement and may not be used in the interpretation of this Agreement.  Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument.  The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application").  If an order is entered approving such Application (the "Retention Order"), any discrepancies between this Agreement, the Application and the Retention Order shall be controlled by the Application and the Retention Order.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

**Dowling College**

By: _[signature]_____
Name:   Robert S. Rosenfeld
Title:   Chief Restructuring Officer

*Garden City Group, LLC*

By: _[signature]_____
Name:   Angela Ferrante
Title:   Senior Vice President

6



Garden City Group, LLC™

# Exhibit A



# GCG Pricing

| Services | Fees (Unit/Hourly) |
| --- | --- |

**Set-Up Creditor File**

Set-up fee ......................................................................................................Waived

Electronic import of creditor data ..............................................................No per creditor charge

Assist with production of Schedules and Statements of Financial Affairs ..........................Standard hourly rates

**Noticing**

Notice printing / copies ..............................................................................$0.10 per page
(volume discounts apply)

Electronic noticing (e-mail) ........................................................................$50 per 1,000

Facsimile noticing (domestic facsimile) ......................................................$0.10 per page

Personalization/labels...............................................................................$0.05 each

Legal publication of notice.........................................................................Quote

Processing undeliverables .........................................................................$0.25 each

**Document Management**

Sort and prep mail (including handling remails)..........................................Standard hourly rates

Document scanning....................................................................................$0.12 per image

Monthly document storage   (paper) ..........................................................$1.50 per box
(electronic).........................................................$0.02 per image
(waived for first three months)

**Claims Administration**

Association of claimant name and address to database.................................$0.15 per claim

Claim acknowledgement postcards..............................................................$0.10 each

Processing of claims, including non-conforming claims,
supervisory review and application of message codes.........................................Standard hourly rates

**Public Securities / Balloting / Solicitation and Tabulation**

Solicitation and Balloting (including coordination with nominees and Broadridge
and processing of master ballots, tabulation, verification and certification of vote)............Standard hourly rates

**Web Site**

Creating customized, interactive web site (including e-mail box for creditors) .................Standard hourly rates

Monthly maintenance fee............................................................................$200 per month

Providing updates to website .....................................................................Standard hourly rates

| Services | Fees (Unit/Hourly) |
|---|---|

**Contact Services**

| | |
|---|---|
| Case-specific voice-mail box for creditors | No charge |
| Interactive Voice Response ("IVR") | $1,900 set up $0.39 per minute |
| Customer Service Representatives | $0.95 per minute |
| Monthly maintenance charge | $100 per month |
| Management of Call Center (including handling of claimant communications, call backs, e-mails, and other correspondences) | Standard hourly rates |

**Miscellaneous Expenses**

| | |
|---|---|
| Travel | At cost |
| Postage, courier, etc | At cost |
| Copying, facsimile | $0.10 per page |

### Hourly Billing Rates[*]

| Title | Standard Hourly Rates |
|---|---|
| Administrative, Mailroom and Claims Control | $45-$55 |
| Project Administrators | $70-$85 |
| Project Supervisors | $95-$110 |
| Graphic Support & Technology Staff | $100-$200 |
| Project Managers and Senior Project Managers | $125-$175 |
| Directors and Asst. Vice Presidents | $200-$295 |
| Vice Presidents and above | $295* |

---

[*] For this engagement, GCG agrees to provide discounted hourly rates as reflected in the chart above and to cap its highest hourly rate at $295. Expert services provided by Angela Ferrante and Craig Johnson, the latter in connection with solicitation (including of public securities) and tabulation will be at a rate of $310 per hour.  Any additional services not covered by this proposal will be charged at GCG hourly rates including any outsourced work performed under GCG supervision and controls. GCG will not charge overtime for any of its hourly rates.

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

Hearing Date: July 23, 2018
Hearing Time: 1:30 p.m. (EST)

Objection Deadline:
July 16, 2018 at 4:00 p.m. (EST)

*Counsel to the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DOWLING COLLEGE, | : | |
| f/d/b/a DOWLING INSTITUTE, | : | Case No. 16-75545 (REG) |
| f/d/b/a DOWLING COLLEGE ALUMNI | : | |
| ASSOCIATION, | : | |
| f/d/b/a CECOM, | : | |
| a/k/a DOWLING COLLEGE, INC., | : | |
| Debtor. | : | |

---------------------------------------------------------------x

### NOTICE OF HEARING ON DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GARDEN CITY GROUP, LLC AS ADMINISTRATIVE ADVISOR FOR THE DEBTOR AND DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 330, *NUNC PRO TUNC* TO APRIL 25, 2018

**PLEASE TAKE NOTICE** that a hearing on the motion (the "Motion")[1] of Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), for entry of an order authorizing the Debtor to retain and employ Garden City Group, LLC as its administrative advisor pursuant to sections 327(a) and 330 of title 11 of the United States Code, Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, and Rule 2014-1 of the Local Bankruptcy Rules for the Eastern District of New York, *nunc pro tunc* to April 25, 2018, has been scheduled before the Honorable Robert E. Grossman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Courtroom 860, Central Islip, New York 11722 on **July 23, 2018 at 1:30 p.m.** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the relief sought in the Motion shall be made in writing, filed with the Court by registered users of the Court's electronic

---

[1] Terms capitalized but not defined herein shall have the meanings ascribed to them in the Motion.

case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court, Eastern District of New York, 271 Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722, on a 3.5 inch floppy disc or compact disc, preferably in portable document Format (PDF), Microsoft Word, or any other Windows Based word processing format, and served upon (i) The Office of the United States Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, Esq., Trial Attorney; (ii) counsel to the Debtor:  Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Sean C. Southard, Esq.; (iii) counsel to the Debtor's material prepetition and post-petition secured lenders: (a) Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn: P. Miyoko Sato, Esq. and Ian A. Hammel, Esq., (b) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn:  Brian D. Pfeiffer, Esq., (c) Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord, Esq. and Thomas J. McNamara, Esq., and (d) Garfunkel Wild, P.C., 111 Great Neck Road, Great Neck, NY 11021, Attn:  Adam T. Berkowitz, Esq.; and (iv) counsel to the Creditors' Committee:  SilvermanAcampora, LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Ronald J. Friedman, Esq., **so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on July 16, 2018.**

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion may be adjourned without further notice except as announced in open court at the Hearing, or at any adjourned hearing.

Dated:   New York, New York
July 6, 2018

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By:   */s/ Sean C. Southard*
Sean C. Southard
Lauren C. Kiss
200 West 41st Street., 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: ssouthard@klestadt.com
lkiss@klestadt.com

*Counsel to the Debtor and Debtor-in-Possession*

2