**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Sean C. Southard
Brendan M. Scott
Lauren C. Kiss

*Attorneys for Dowling College*

**OUTTEN & GOLDEN LLP**
685 Third Ave 25th Floor
New York, NY 10017
Tel: (212) 245-1000
Fax: (646) 506-2060
Jack A. Raisner
Rene Roupinian

*Attorneys for the Class*
*Representatives and the Class*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DOWLING COLLEGE, | : | |
| f/d/b/a DOWLING INSTITUTE, | : | Case No. 16-75545 (REG) |
| f/d/b/a DOWLING COLLEGE ALUMNI | : | |
| ASSOCIATION, | : | |
| f/d/b/a CECOM, | : | |
| a/k/a DOWLING COLLEGE, INC., | : | |
| | : | |
| Debtor. | : | |

--------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| LORI ZAIKOWSKI, on behalf of herself and all | : | |
| others similarly situated, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 16-08187 (REG) |
| | : | |
| v. | : | |
| | : | |
| | : | |

DOWLING COLLEGE, f/d/b/a DOWLING : 
INSTITUTE, f/d/b/a DOWLING COLLEGE :
ALUMNI ASSOCIATION, f/d/b/a CECOM, a/k/a :
DOWLING COLLEGE, INC., :
                               Defendant. :
-------------------------------------------------------------x

**JOINT MOTION PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 7023 AND 9019 TO (I) APPROVE A SETTLEMENT PURSUANT TO FED. R. BANKR. P. 9019, (II) CERTIFY CLASS B FOR SETTLEMENT PURPOSES ONLY, APPOINT CLASS COUNSEL AND THE CLASS B REPRESENTATIVE, AND PRELIMINARILY APPROVE THE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 7023, (III) APPROVE THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE CLASS CERTIFICATION AND SETTLEMENT, (IV) SCHEDULE A FINAL HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, (V) APPROVE THE SETTLEMENT ON A FINAL BASIS, AND (VI) GRANT RELATED RELIEF**

Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), Lori Zaikowski (the "Class A Representative"), on behalf of herself and Class A Members[1], and prospective class representative Cathryn Mooney (the "Class B Representative"), on behalf of herself and Class B Members, by and through their respective attorneys, hereby respectfully move (the "Joint Motion") this Court pursuant to Section 105 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable hereto by Bankruptcy Rule 7023, for the entry of orders: (a) approving the *Settlement and Release Agreement* (the "Settlement Agreement" or the "Settlement")[2] among the Debtor and the Class Members (collectively, the "Parties") pursuant to Bankruptcy Rule 9019; (b) certifying Class B for settlement purposes only, appointing the law firm of Outten & Golden LLP as counsel for Class B ("Class Counsel"), appointing Cathryn Mooney as the Class B Representative, and preliminarily approving the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.
[2] A true copy of the Settlement Agreement is attached hereto as Exhibit 1.

Settlement Agreement pursuant to Civil Rule 23(c); (c) approving the form and manner of notice of the conditional class certification to Class B Members and settlement to Class Members ("Class Notices" or "Notices"); (d) scheduling a final hearing (the "Final Hearing") to consider final approval of the Settlement Agreement pursuant to Civil Rule 23; (e) after the Final Hearing, approving the Settlement Agreement on a final basis pursuant to Civil Rule 23; and (f) granting related relief.  In support of the Joint Motion, the Parties respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Settlement is fair and reasonable and reflects a balanced analysis by the parties of the risks and costs of protracted litigation.  As such, the Court should approve the Settlement Agreement.  The Class A Representative has sued the Debtor for, among other things, allegedly failing to provide notice required by the *Worker Adjustment and Retraining Notification Act,* 29 U.S.C. §§ 2101-2109 (the "WARN Act") and New York Labor Law § 860 *et seq.* (the "NY WARN Act" and together with the WARN Act, the "WARN Acts") and seeks, among other things, damages in the form of wage priority claims pursuant to section 507(a) of the Bankruptcy Code, equal to (i) Class A Members' wages, salary, health and life insurance premiums, accrued sick and vacation for 60 days following their respective terminations; (ii) accrued unpaid wages and vacation time, applicable liquidated damages, and attorneys' fees and costs pursuant to New York Labor Law Sections 191 and 198; (iii) unpaid wage, severance, vacation, sick, medical and dental claims, and other forms of compensation alleged to be earned upon a Class A Member's termination; and (iv) Class A Representative's reasonable attorneys' fees and the costs and disbursements that the Class A Representative has incurred in the prosecution of this action.

2.     Similarly, the prospective Class B Representative has asserted claims for unpaid wage, severance, vacation, sick, medical and dental claims, and other forms of compensation alleged to be earned upon a Class B Member's termination.

3.     In exchange for a release of claims by Class Members, as described in the Settlement, assuming the Total Potential Class Participation Amount is met, (i) Class A Members shall be deemed to hold Allowed Priority Claims pursuant to 11 U.S.C. § 507(a)(4) in the aggregate amount of $1,355,593.74[3] and (ii) Class B Members shall be deemed to hold Allowed Priority Claims pursuant to 11 U.S.C. § 507(a)(4) in the aggregate amount of $71,980.29, for a Total Potential Allowed Priority Claims Value of $1,427,574.03, as set forth on Exhibit "A" to the Settlement Agreement.  In addition, assuming the Total Potential Class Participation Amount is met, (i) Class A Members shall be deemed to hold Allowed Unsecured Claims in the aggregate amount of $4,885,537.13[4] and (ii) Class B Members shall be deemed to hold Allowed Unsecured Claims in the aggregate amount of $1,238,462.72, as set forth on Exhibit "A" to the Settlement Agreement.  Distributions on the Allowed Priority Claims and Allowed Unsecured Claims will be made in accordance with the provisions of the Settlement Agreement, Bankruptcy Code, Plan and Confirmation Order.

4.     As set forth more fully below, there are many factual and legal issues in dispute concerning the claims set forth in the WARN Action and the defenses thereto.  A trial in the WARN Action would require both sides to engage in extensive expert and fact discovery at significant expense with inherently uncertain results at trial.  The Debtor's incurrence of litigation expenses would be detrimental to all creditors of the estate, including the Class Members.

---

[3] This amount is subject to increase in the event the two individuals who timely exercised their right to opt-out of Class A rescind such opt-out.

[4] This amount is subject to increase in the event the two individuals who timely exercised their right to opt-out of Class A rescind such opt-out.

Expending the Debtor's estate funds to defend against the WARN Action would deplete the funds available to pay the Debtor's creditors and impair the Debtor's ability to satisfy the claims of the Class Members should they prevail at trial.

5.      In light of these factors, the Debtor and the Class Representatives have determined that the Settlement is well within the range of reasonableness.  Accordingly, the Court should approve the Settlement under Bankruptcy Rule 9019.

6.      Further, it is appropriate to certify Class B for settlement purposes and appoint the Class B Representative and Class Counsel.  As set forth below, for purposes of settlement, the Parties agree that Class B meets all of the requirements of Civil Rule 23 and that Class Counsel is competent and experienced and has already been appointed Class Counsel for Class A.  Moreover, certifying Class B benefits the Debtor by eliminating the need to deal with Class B Members on a claim by claim basis, which would be inefficient and potentially increase administrative expenses for the Debtor.

7.      Finally, the Parties request approval of their proposed two-step process to facilitate notice to Class Members.  Specifically, the Parties contemplate an initial hearing on this Motion to request preliminary approval of the Settlement Agreement and the Class Notice and to request a Final Hearing on the Settlement.  If approval is obtained, the Debtor would provide the Class Notice to each Class Member as described in the Settlement Agreement, and inform the member of his or her right to opt-out of the Class, if applicable, or object to the Settlement Agreement.  In addition, all parties in interest would be provided with notice of the Final Hearing and an opportunity to object.

8.      Based on the foregoing, and as set forth more fully below, the Parties submit that the Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## JURISDICTION

9.      The Court has jurisdiction over the Joint Motion under 28 U.S.C. §§ 157 and 1334.

10.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

11.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

12.      The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code and Bankruptcy Rules 9019 and 7023.

## BACKGROUND

A.    The Bankruptcy Case

13.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court" or "Court").

14.      The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

15.      On December 9, 2016, the United States Trustee appointed Ultimate Power Inc., Linda Ardito and Lori Zaikowski to the Official Committee of Unsecured Creditors (the "Creditors' Committee").  Later that day, the Creditors' Committee selected SilvermanAcampora LLP as its proposed general bankruptcy counsel.

16.      Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as

debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan of liquidation and performing such other duties customary to a chief restructuring officer.

17.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Robert S. Rosenfeld, Chief Restructuring Officer of the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions* [DE 23].

B.  <u>The WARN Action</u>

18.      On or about June 1, 2016, the Debtor provided notice to its employees that it would cease active operations and shortly thereafter terminated certain employees, including Class A Members.

19.      The Debtor informed Class A Members that it had provided less than the 90-day notice required under the NY WARN Act and the 60-day notice required under the federal WARN Act in a letter that stated it had been actively seeking capital to keep the college running and believed that to provide this notice any earlier would have compromised that effort.

20.      On December 1, 2016, the Class A Representative, on behalf of herself and Class A Members, commenced the WARN Action by the filing of a class action complaint against the Debtor, which alleged that the Debtor violated the WARN Acts by ordering a plant closing and/or mass layoff on June 1, 2016 without providing sixty (60) or ninety (90) days advance written notice thereof.  In addition, the Class A Representative asserted claims for unpaid wage, vacation, medical and dental claims, and any other forms of compensation alleged to be earned prior to a Class Member's termination.  The Class A Representative asserted that, as a consequence of these alleged failures, Class A Members have a priority and unsecured claim against the Debtor for

damages for (i) the alleged sixty (60) day violation period, (ii) the earned but unpaid prepetition wages and vacation time, and (ii) amounts due under the Class A Members' respective employment contracts with the Debtor.

21.    On December 13, 2017, the Class A Representative, on behalf of herself and Class A Members, filed a second amended class action complaint adding a third cause of action for unpaid wages in violation of NYLL § 191, and a fourth cause of action for unpaid compensation in breach of contract and the covenant of good faith and fair dealing.

22.    On January 13, 2017, the Debtor answered the WARN Complaint, wherein it generally denied the Class A Representative's allegations and asserted numerous defenses.

23.    On March 10, 2017, the Class A Representative, on behalf of herself and Class A Members, filed the Class Proof of Claim based on the claims set forth in the WARN Complaint.

24.    On May 24, 2017, the Bankruptcy Court entered an order pursuant to Rule 23 certifying Class A, appointing Lori Zaikowski as the Class A Representative and appointing Outten & Golden LLP as Class Counsel for Class A.

25.    Class A was certified pursuant to Rule 23(a) and (b)(3) comprising former employees of the Debtor who were terminated without cause, as part of, or as the result of, mass layoffs or plant closings ordered by the Debtor on or about June 1, 2016 and within thirty (30) days of that date, who were not provided 60 days advance written notice of their terminations by the Debtor and, accordingly, is an opt-out class.  After the Notice of Class Action was mailed to Class A Members, only two (2) individuals exercised their right to opt out of Class A.

26.    Beginning in June 2017, the Debtor, in consultation with the Creditors' Committee, and Class Counsel entered into good faith, arm's length negotiations, including formal mediation, regarding a resolution of the WARN Action, and began to informally share facts and circumstances

underlying the claims and defenses in the WARN Action, as well as relating to other claims of unpaid unemployment compensation.

27.     Based on the claims and defenses asserted in the WARN Action, there exist significant, complex legal and factual issues regarding the application of the WARN Acts to the facts and circumstances at issue and the viability of the WARN Action, including, without limitation: (i) whether the Debtor was entitled to give fewer than sixty (60) days' notice because of the faltering company exception; (ii) whether certain Class A Members, including part time, adjunct professors, are entitled to an award of damages; (iii) whether the Debtor has other defenses to the application of the WARN Acts; (iv) whether the Debtor is entitled to a reduction or elimination of damages under the "good faith" exception to the WARN Acts; (v) the computation of the amount of damages, if any; and (vi) whether and to what extent the alleged damages are entitled to priority under 11 U.S.C. § 507(a).

28.     The Class A Representative has the burden of proof on some of these issues, and the Debtor has the burden on others, and the litigation and trial of this matter likely would require extensive discovery and be lengthy and complex, adding to cost and potential delay.

29.     Due to the complex nature of the issues involved, the Debtor and the Class A Representative recognize that the outcome of the WARN Action is uncertain, costly and time consuming.

30.     On December 13, 2016, the Debtor filed schedules of assets and liabilities and a statement of financial affairs and on February 23, 2017 the Debtor filed amended schedules.

31.     On January 13, 2017, the Bankruptcy Court entered the Bar Date Order which (i) fixed the Bar Date, (ii) established procedures for filing proofs of claim against the Debtor and its Estate pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3), and (iii) approved the Bar

Date Notice.  The Bar Date Order approved as adequate and sufficient, the service of the Bar Date Notice by first class mail and publication of the Bar Date Notice in the New York edition of the Wall Street Journal, and either Newsday or Long Island Business News.  The Bar Date Order fixed March 10, 2017, at 5:00 P.M. (EST) as the Bar Date by which all claims against the Debtor which arose prior to November 29, 2016, other than those types of Claims specifically excepted thereby, had to be filed. The Bar Date Order also set a Bar Date of May 30, 2017, with respect to governmental entities.

32.    The Bar Date Notice was served by first class regular mail upon, among others, all creditors and other known holders of claims, as well as all parties known to the Debtor as having potential claims against the Debtor's estate.  Except for the holders of certain specifically excluded claims, every creditor was required to file a proof of claim on or before the applicable Bar Date so that the Debtor could ascertain with certainty the total amount of pre-petition claims outstanding.

33.    In accordance with Federal Rule of Bankruptcy Procedure 3003(c)(2), holders of claims who failed to comply with the terms of the Bar Date Order are forever barred from (i) filing a proof of claim with respect to such claim, (ii) asserting such claims against the Debtor or its Estate and/or property, (iii) voting on any Plan and (iv) participating in any distribution in the Chapter 11 Case on account of such claims.

34.    Approximately one hundred and twenty-six (126) individual claims were filed by Class Members against the Debtor's estate.  In the aggregate, the claims asserted the following amounts: (i) secured claims in the amount of $14,943.35; (ii) priority claims in the amount of $5,338,462.43; and (v) unsecured claims in the amount of $2,391,458.66.

35.    The Schedules filed by the Debtor listed the following amounts outstanding in favor of individual Class Members (i) priority claims totaling $102,100.67; and (iii) unsecured claims

totaling $1,323,037.00. Certain of these scheduled claim amounts were listed as contingent, disputed or unliquidated.

36.    Edward Hugler, Acting Secretary of Labor for Dowling College Employee Benefit Plan, c/o the U.S. DOL filed the U.S. DOL Claim in the unsecured amount of $983,769.86 asserting possible violations of Title I of ERISA on account of the U.S. DOL's determination that the Debtor, as sponsor and fiduciary of the Benefit Plan, failed to pay participant medical and dental claims.

37.    The U.S. DOL Claim calculation was estimated based on documentation provided by CIGNA and Healthplex (each a third-party administrator previously in contract with the Debtor) and asserts the potential for priority treatment in relation to certain of the 163 participants and beneficiaries of the Benefit Plan referenced in the U.S. DOL Claim.

38.    Because the U.S. DOL Claim clearly requests that any payments on account of the claim be made directly to the affected participants and beneficiaries and because substantially all of the affected participants are Class Members herein, the Parties intend that the settlements contemplated herein will resolve and satisfy the U.S. DOL Claim as it relates to any Class Member.

39.    The Debtor and U.S. DOL have engaged in extensive discussion and negotiation concerning the U.S. DOL Claim and the interrelated nature of termination based claims of Class Members, including those asserted on their behalf by and through the U.S. DOL Claim.

40.    In addition to Class A Members who hold Non-WARN Act Claims, the Debtor has identified sixty-seven (67) individuals who meet the definition of a Class B Member, and therefore, also hold Non-WARN Act Claims.

41.    There exist significant, complex legal and factual issues regarding the application of the specific entitlements for holders of Non-WARN Act Claims to the facts and circumstances

at issue and the viability of such claims, including, without limitation: (i) whether Class Members were entitled to vacation pay after termination and whether certain credits should be applied in relation to vacation; (ii) whether wage reductions or deferrals applied to Class Members; (iii) whether the Debtor has other setoffs or defense to claims of certain Class Members; (iv) the computation of the amount of Class Member damages, if any; and (v) whether the alleged damages are entitled to priority under 11 U.S.C. § 507(a).

42.    There exists a complex interrelationship between Non-WARN Act Claims and WARN Act Claims as it relates to each particular Class Member's priority level claim entitlements and the aggregate general unsecured claims of such parties.

43.    Class Counsel with the assistance of members of the class, has expended significant time analyzing both the WARN and Non-WARN Act Claims and their interrelationship.

44.    Due to the complex nature of the issues involved, the Debtor and the Class Representatives recognize that the outcome of litigation concerning the Non-WARN Act Claims is uncertain, costly and time consuming.

45.    Counsel to the Debtor and Class Counsel determined that a comprehensive settlement involving holders of both WARN Act Claims and Non-WARN Act Claims was the most efficient and appropriate manner to proceed before the Bankruptcy Court under the circumstances of this Chapter 11 Case.

46.    The Parties acknowledge that the Debtor has limited resources and that any recoveries to Class Members can best be maximized by distributing funds to satisfy the same in a consensual manner.

47.    To avoid extensive, costly and uncertain litigation, the Parties have agreed to settle all WARN Act Claims and Non-WARN Act Claims and all claims relating to or arising out of the

WARN Action  or the prepetition employment of the Class Members, in accordance with the terms of the Settlement Agreement.

C. <u>Essential Terms of the Proposed Settlement</u>.

48.    On or about August 31, 2018, the Parties reached a tentative agreement to resolve the WARN Act Claims and Non-WARN Act Claims, the terms of which were later memorialized in the Settlement Agreement.  The essential terms of the Settlement Agreement are as follows[5]:

a)    <u>Certification of the Class</u>. The Parties have agreed to the certification of Class B, for settlement purposes only pursuant to Civil Rule 23(b)(3).  Outten & Golden LLP shall be appointed Class Counsel for Class B created under the Settlement Agreement and Cathryn Mooney shall be appointed as the Class B Representative.

b)    <u>The Allowed Priority Claims</u>.  Upon the Final Approval Date and assuming the Total Potential Class Participation Amount is met, (i) Class A Members shall be deemed to hold Allowed Priority Claims pursuant to 11 U.S.C. § 507(a)(4) in the aggregate amount of $1,355,593.74[6] and (ii) Class B Members shall be deemed to hold Allowed Priority Claims pursuant to 11 U.S.C. § 507(a)(4) in the aggregate amount of $71,980.29, for a Total Potential Allowed Priority Claims Value of $1,427,574.03, as set forth on Exhibit "A" to the Settlement Agreement.  For the avoidance of doubt, Class Counsel's Fees and the Service Payments shall not be paid directly from the distributions to be made on account of the Allowed Priority Claims.  No Class Member's payment on account of the Allowed Priority Claim shall exceed $12,850.00.

c)    <u>The Allowed Unsecured Claims</u>.  Upon the Final Approval Date and assuming the Total Potential Class Participation Amount is met, (i) Class A Members shall be deemed to hold Allowed Unsecured Claims in the aggregate amount of $4,885,537.13[7] and (ii) Class B Members shall be deemed to hold Allowed Unsecured Claims in the aggregate amount of $1,238,462.72, as set forth on Exhibit "A" to the Settlement Agreement.  For the avoidance of doubt, Class Counsel's Fees and the Service Payments shall not be paid directly from the distributions to be made on account of the Allowed Unsecured Claims.

---

[5] For ease of reference, a summary of the terms of the Settlement Agreement are included here.  Parties are encouraged to review the Settlement Agreement in its entirety and not rely on the summary set forth herein.  To the extent there is any conflict between the terms of the Settlement Agreement and the description contained herein, the terms of the Settlement Agreement shall control.

[6] This amount is subject to increase in the event the two individuals who timely exercised their right to opt-out of Class A rescind such opt-out.

[7] This amount is subject to increase in the event the two individuals who timely exercised their right to opt-out of Class A rescind such opt-out.

d)    <u>Service Payments to Class Representatives</u>.  The Class A Representative shall receive a one-time Service Payment in the amount of Eleven Thousand Five Hundred dollars ($11,500) for her services in this matter.  Similarly, the Class B Representative shall receive a one-time Service Payment in the amount of One Thousand dollars ($1,000) for her services in this matter.  The Service Payments will be made in addition to the Class Representatives' settlement amounts and Class Counsel's Fees will not be deducted from the Service Payments.

e)    <u>Class Counsel's Fees</u>.  Subject to the approval of the Bankruptcy Court, Class Counsel shall receive no more than $350,000.00 in fees and $10,000.00 in expenses or such lesser amount as is allowed by the Bankruptcy Court or as set forth in the Settlement Agreement as payment for all fees and expenses in connection with this matter.  To the extent there are Opt-Outs from the Settlement, the amount payable to Class Counsel as set forth above shall be reduced in direct proportion (and on pro rata basis) to the aggregate value of Allowed Priority Claims for Class Members that participate in the Settlement as compared to the Total Potential Allowed Priority Claims Value; provided however, that Class Counsel shall be entitled to receive full payment of fees and expenses, subject to Bankruptcy Court approval, if Class A Members who are entitled to opt-out and Class B Members holding 85% or more of Allowed Priority Claims for such respective groups do not Opt-Out of the Settlement.

f)    <u>Issuance of Class Notices</u>.  The Debtor shall bear the cost and responsibility of the distribution of the Class Notices, except to the extent Class Counsel sends or resends such Class Notices, as provided for in the Settlement Agreement.  The Class Notice shall contain the following information, which shall be individualized for each Class Member:

- that each Class A Member that did not receive the Notice of Class Action has the right to timely elect to opt-out of Class A and preserve all of his/her rights against the Debtor's Estate, if any;

- that each Class B Member has the right to timely elect to opt-out of Class B and preserve all of his/her rights against the Debtor's Estate, if any;

- that the Debtor in its sole and exclusive discretion, has the right to declare the Settlement Agreement null and void, and of no future effect, if (i) Class Members holding 5% or more of the Allowed Priority Claims opt-out of the Settlement or (ii) 20% or more of Class Members opt-out of the Settlement;

- that the Settlement shall become effective only if it is finally approved by the Bankruptcy Court;

- that, if approved, the Settlement shall be effective as to all Class Members who do not timely elect to opt-out of the Class;

- the proposed Allowed Priority Claim and/or Proposed Unsecured Claim for such Class Member;

- the projected dollar amount such Class Member would receive as a net payment for their Allowed Priority Claim under this Settlement, if this Settlement becomes effective, which amount shall be calculated by the Debtor and Class Counsel, and the projected date of payment of that amount;

- that such Class Member has the right to object to this Settlement, either in person or through counsel, and be heard at the Final Hearing;

- that if any information pertaining to IRS Form W-4 has changed since the last form submitted to Dowling prior to June 1, 2016, the Class Member should complete and sign an enclosed IRS Form W-4 and return it to the Debtor no later than [_____, 2018].  If no update of tax status is timely provided by a Class Member, the Debtor will utilize the most recent relevant information in its books and records to calculate the appropriate amount of withholding taxes.  If no information is available to the Debtor at all, it will utilize the maximum applicable rate when calculating withholding tax amounts for Class Members;

- that any and all claims released under the Settlement Agreement shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon from the Debtor's Estate; and

- that upon final approval of the Settlement any individual proof of claim forms filed with the Bankruptcy Court by a Class Member who does not opt-out of the Settlement shall be disallowed insofar as and only to the extent such proof of claim Form relates to or arises out of any of the claims released in the Settlement Agreement.

g)    Residual Funds.  In the event that there are any settlement funds remaining for any reason, including checks that are not deposited, endorsed or negotiated, within six (6) months of their date of issuance, such Residual Funds shall be vested in the Debtor to be utilized or distributed in accordance with the terms of the Plan.

h)    Release by Settlement Class. If this Settlement Agreement is given final approval by this Court, except for any Class Members who timely request exclusion, each Class Member shall release, pursuant to the Settlement Agreement, all claims on account of such Class Member's termination or separation from prior employment with the Debtor, including any alleged violation of the WARN Act, New York Labor Law or any other federal, state, or municipal law or legal claim based on similar factual allegations, whether for wages, severance, expenses or benefits asserted or that could have been asserted in the WARN Complaint, Class Proof of Claim, or U.S. DOL Claim.

i)      <u>Dismissal of WARN Action</u>.  Within five (5) business days of the Final Approval Date, Class Counsel shall dismiss the WARN Action with prejudice.

**RELIEF REQUESTED**

49.      By this Joint Motion, the Parties request that the Court enter orders, substantially in the form annexed hereto as <u>Exhibits 2 and 3</u>: (i) authorizing the Parties to enter into the Settlement Agreement; (ii) certifying Class B for settlement purposes only, appointing Class Counsel for Class B and the Class B Representative; (iii) preliminarily approving the Settlement Agreement and request for Class Counsel's fees and reimbursable costs; (iv) approving the form and manner of Class Notices; (v) scheduling a Final Hearing at the Court's earliest convenience to consider final approval of the Settlement Agreement; and (vi) approving the Settlement Agreement and Class Counsel's fees on a final basis.

**<u>BASIS FOR RELIEF REQUESTED</u>**

50.    Bankruptcy Rule 9019 provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bank. P. 9019(a).  Bankruptcy Rule 9019 empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." <u>Vaughn v. Drexel Burnham Lambert Group, Inc.</u> (<u>In re Drexel Burnham Lambert Group, Inc.</u>), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  In fact, settlements and compromises are "a normal part of the process of reorganization." <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968)(<u>quoting</u> <u>Case v. Los Angeles Lumber Prods. Co.</u>, 308 U.S. 106, 130 (1939)).  Accordingly, the Court is authorized to approve the settlement, on the terms set forth in the Settlement Agreement.

51.    In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and

in the best interests of the debtor's estate.  TMT Trailer Ferry, 390 U.S. at 424; In re Ionosphere

Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F. 3d 600 (2d Cir. 1994).  A decision to

approve a particular compromise or settlement is within the sound discretion of the bankruptcy

court.  Drexel Burnham, 134 B.R. at 505.  In exercising its discretion, the bankruptcy court must

make an independent determination that the settlement is fair and reasonable.  Nellis v. Shugrue,

165 B.R. 115, 122 (S.D.N.Y. 1994) (a court may consider the opinions of the trustee or debtor in

possession that a settlement is fair and reasonable).  In addition, a bankruptcy court may exercise

its discretion "in light of the general public policy favoring settlements."  In re Hibbard Brown &

Co., 217 B.R. 31 (Bankr. S.D.N.Y. 1998); see also Shugrue, 165 B.R. at 123 ("the general rule [is]

that settlements are favored and, in fact, encouraged by the approval process outlined above").

52.     Approval of a settlement under Bankruptcy Rule 9019(a) is appropriate when the

settlement is fair and equitable and is in the best interests of a debtor's estate.  See, e.g., TMT

Trailer Ferry, 390 U.S. at 424; In re: Adelphia Communications Corp., 327 B.R. 143, 159 (Bankr.

S.D.N.Y. 2005) (citations omitted) ("The settlement need not be the best that the debtor could have

obtained.    Rather, the settlement must fall 'within the reasonable range of litigation

possibilities.'"); Shugrue, 165 B.R. at 121 (S.D.N.Y. 1994) ("The obligation of the bankruptcy

court is to determine whether a settlement is in the best interest of an estate before approving it.").

53.     Bankruptcy courts in the Second Circuit have applied the following factors in

determining whether a settlement should be approved:

> (a) the balance between the litigation's possibility of success and the
> settlement's future benefits;
>
> (b) the likelihood of complex and protracted litigation, with its
> attendant expense, inconvenience, and delay, including the
> difficulty in collecting on the judgment;

(c) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

(d) whether other parties in interest support the settlement;

(e) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

(f) the nature and breadth of releases to be obtained by officers and directors; and

(g) the extent to which the settlement is the product of arm's-length bargaining.

Motorola. Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) (internal citations omitted).

A. The Financial Terms of the Settlement Agreement Should Be Approved.

54.    Here, the results of a trial are uncertain and the litigation is complex. As noted above, there are significant, complex legal and factual issues regarding (i) the application of the WARN Act to the facts and circumstances at issue and the viability of the WARN Action, and (ii) the application of the specific entitlements for holders of Non-WARN Act Claims to the facts and circumstances at issue and the viability of such claims.

55.    Continued litigation would be costly and time-consuming and expose the Debtor to significant litigation risks.  The Debtor's analysis reveals that its WARN Act liability, excluding any fees payable to Class Counsel, could be as high as approximately $2.2 million.  As part of the Settlement, Class A Members will receive priority and/or unsecured claims totaling approximately 32.5% of this amount, or $700,000.00.  In addition, as part of the Settlement, each Class Member will receive priority and/or unsecured claims for amounts due on termination under their respective employment contracts with the Debtor, which total approximately $7 million.  As a result, the

Settlement would resolve all employee-based compensation claims and eliminates further accrual of the substantial litigation expenses associated therewith.  Accordingly, the Parties respectfully submit that approval of the Settlement is warranted.

56.    The paramount interest of creditors and reasonable deference to the Debtor's views favors approval of the Settlement Agreement.  As set forth above, the Settlement Agreement spares the Debtor the significant expense and uncertainty associated with the litigation of the myriad of issues in the WARN Action. Accordingly, in light of each of the above factors, the Settlement Agreement should be approved.

B.   The Court Should Certify Class B, Appoint Class Counsel for
       <u>Class B and the Class B Representative Pursuant to Civil Rule 23</u>.

57.    Where, as in this case, the Court has not certified Class B, before approving a class settlement pursuant to Civil Rule 23, the Court must determine whether the proposed settlement class satisfies the certification requirements of Civil Rule 23. <u>See</u> <u>Amchem v. Windsor</u>, 521 U.S. 591,620 (1997); <u>In re Community Bank of Northern Virginia</u>, 418 F.3d 277, 300 (3d Cir. 2005).

58.    The proposed Class B, certified for settlement purposes only, comprises the Class B Representative and those persons who (i) do not fit within the definition of Class A; (ii) currently or previously worked at or reported to a Facility of the Debtor; (iii) allegedly hold Non-WARN Act Claims; and (i) do not timely opt-out of Class B.

i.   <u>The Court Should Conditionally Certify Class B</u>

59.    To be certified, a class must satisfy the four requirements of Civil Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23; see <u>Community Bank</u>, 418 F.3d at 302.  In addition, the class must satisfy the requirements of Civil Rule 23(b)(1), (2) or (3). In this case, the Parties have agreed to request conditional certification under Civil Rule 23(b)(3), "the customary vehicle for damage actions." <u>Id</u>.  In order

to satisfy a class under Rule 23(b)(3), the court must make two additional findings, predominance and superiority.  That is, "[i]ssues common to the class must predominate over individual issues, and the class device must be superior to other means of handling the litigation." <u>Gates v. Rohm & Hass Co.</u>, 248 F.R.D. 434, 442-43 (E.D. Pa. 2008).  The proposed settlement Class B meets each of the foregoing elements.

### a. The Rule 23(a) Criteria

60.    The numerosity factor of Fed. R. Civ. P. 23(a)(1) is met because the proposed Class B Members consist of sixty-seven (67) former or current employees, clearly making joinder of Class B Members impracticable. <u>Jermyn v. Best Buy Stores, L.P.</u>, 256 F.R.D. 418, 429 (S.D.N.Y. 2009).

61.    The commonality factor of Fed. R. Civ. P. 23(a)(2) is met because there are numerous questions of law or fact common to every member of Class B, namely: (1) whether the Debtor failed to pay Class B Members accrued wage, severance, vacation, sick, medical and dental claims upon termination of employment; (2) whether these compensation-based claims are entitled to priority treatment; and (3) how these compensation-based claims are calculated.  In short, the Class B Members' claims raise identical issues regarding their claims to amounts owed by the Debtor upon termination of their employment.  The differences in the issues affecting Class B Members' circumstances are minor, for example, their rates of pay or the number of vacation days they were entitled to.  These differences do not outweigh the questions of law and fact that are common to every Class B Member.

62.    The typicality factor of Fed. R. Civ. P. 23(a)(3) is met because the claims of the Class B Representative are typical of the claims of Class B.  Here, the Class B Representative has the same claims based on the same facts as the other Class B Members.  With respect to adequacy,

a class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Class B Representative has no conflict of interest with the other Class B Members, and has and will continue to diligently prosecute the WARN Action, and represent and protect the interests of Class B.  In addition, the Class B Representative has engaged counsel, namely, Outten Golden LLP, which is already counsel to Class A and has successfully prosecuted numerous WARN Act and other employment actions. Fed. R. Civ. P. 23(a)(4).  Therefore, the Class B Representative and Class Counsel will provide Class B with adequacy of representation.

63.     Accordingly, the Court should find that the Class B Representative and Class Counsel adequately represent the interests of the Class B Members.

  b.  *The Rule 23(b)(3) Criteria*

64.     Class B also meets the requirements of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact detailed above that affect all members of Class B predominate over any questions affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons: no Class B Member has an interest in individually controlling the prosecution of a separate action under the WARN Action; to the Parties' knowledge, except for the WARN Action, no other litigation concerning the Non-WARN Act Claims of any Class B Member is currently pending; concentrating all potential litigation concerning the Non-WARN Act claims of Class B Members in this Court will avoid a multiplicity of suits, will conserve the resources of the Parties and is the most efficient means of resolving the Non-WARN Act claims of all Class B Members; and administration of this action as a class action will not be complicated or difficult because the Parties already have reached a proposed Settlement premised upon certification of Class B; and the names and addresses of Class B Members have been established from the Debtor's records.  Based on the

foregoing, the Court should certify Class B for settlement purposes, appoint Cathryn Mooney as the Class B Representative and the law firm of Outten & Golden LLP as Class Counsel for Class B.

C.  The Court Should Preliminarily Approve the
    Settlement Agreement Pursuant to Civil Rule 23.

65.    "'Review of a proposed class action settlement generally involves a twostep process: preliminary approval and a subsequent 'Final Hearing' .... If the court preliminarily approves the settlement, it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the Final Hearing.'" Velez v. Majik Cleaning Serv., No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at **4-5 n.1 (S.D.N.Y. June 22, 2007) (quoting In re Initial Pub. Offering Sec. Litig., 243 F.R.D. 79, **4-5 (S.D.N. Y. 2007)). At the subsequent Final Hearing, class members may formally object to the proposed settlement. See In re Drexel Burnham Lambert Group, 130 B.R. 910, 924 (Bankr. S.D.N.Y. 1991) ("Notice of the Settlement and hearing thereon is required so as to allow the Class members an opportunity to object to the fairness, reasonableness or adequacy of the Settlement.")

66.    "'In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.'" In re Stock Exchs. Options Trading Antitrust Litig., 99 Civ. 0962 (RCC), MDL No. 1283, Master Docket No. M-21-79 (RCC), 2005 U.S. Dist. LEXIS 13734, at **16-17 (S.D.N.Y. July 8, 2005) (quoting In re NASDAQ Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

67.     The Settlement Agreement has no obvious deficiencies and falls well within the range of reason.  Further, each of the above-cited factors weighs in favor of preliminary approval of the Settlement Agreement.

68.     First, the Settlement is the result of good faith, arm's length negotiations between capable adversaries. The Parties have been in discussions with respect to the WARN Action since June 2017, and the Class is represented by counsel with extensive experience and expertise in WARN Act matters.  The Parties participated in a mediation last year, with Yann Geron, Esq. serving as the Bankruptcy Court appointed mediator, and while the Parties were not able to resolve the dispute at Mediation, the Parties continued to engage in extensive settlement discussions.

69.     Second, the Parties exchanged a significant amount of information during their negotiations.  In particular, the Debtor provided extensive information to Class Counsel regarding facts relating to their defenses and the unforeseeable business circumstances that led to terminations at issue here.  The Debtor also shared payroll information and a WARN damages analysis with Class Counsel, and Class Counsel independently reviewed and analyzed all of this data and information prior to reaching a tentative settlement with the Debtor.

70.     Third, Class Counsel has successfully prosecuted dozens of WARN, wage and hour, discrimination, and labor law cases, and has won millions of dollars in judgments and settlements for their clients, including in cases filed as class and collective actions.  Class Counsel has the experience and skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate.  They have exercised that judgment in this case with respect to the Settlement Agreement.

71.     Accordingly, the Court should preliminarily approve the Settlement Agreement.

D.  <u>The Court Should Approve the Form and Manner of the Proposed Notice of the Settlement</u>.

72. Civil Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

73.    In addition, Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. Fed. R. Civ. P. 23(e).

74.    The proposed Class Notices are attached to the Settlement Agreement as Exhibits "B", "C", and "D".  Within five (5) business days following entry of the order certifying Class B for settlement purposes and preliminarily approving the Settlement Agreement, the Debtor will serve the Class Notices substantially in the forms attached to the Settlement Agreement, upon the Class Members at the last known address of each Class Member according to the Debtor's books and records (or as updated by the Debtor or Class Counsel's searches for current addresses or as may otherwise be determined by the Parties).  In the event that a Class Notice is returned as undeliverable, the Debtor shall re-mail the Class Notice to the corrected address, if any, of the intended Class Member recipient as may be determined by the Debtor or Class Counsel.  An individual mailing to each class members' last known address has been held to satisfy the "best notice practicable" test. Eisen v. Carlisle & Jacquelin et al., 417 U.S. 156 (1974) (individual mailings satisfy Rule 23 (c)(2)).

75.     The Class Notices include each of the facts required by Fed. R. Civ. P. 23(c)(2)(B). The Class Notices also outlines the terms of the Settlement Agreement, including the attorneys' fees to be paid to Class Counsel.  The Class Notices also state the date, time, location and purpose of the Final Hearing, informs each Class Member of their right to appear at the Final Hearing, and describes the procedure for opting out of the Class A or Class B, as applicable, or objecting to the Settlement Agreement.  Finally, the Class Notice will inform each Class Member of his or her Allowed Priority Claim, Allowed Unsecured Claim and Net Allowed Priority Claim, if the Settlement becomes effective.  Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

E.  The Court Should Finally Approve the Settlement
    at the Final Hearing Pursuant to Civil Rule 23.

76.     The Court should set a Final Hearing that, subject to the Court's calendar, would be heard no sooner than the earliest date for entry of a binding order under 28 U.S.C. § 1715.  At the Final Hearing, the Court should finally approve the Settlement.

77.     Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Final approval of a settlement pursuant to Federal Rule of Civil Procedure 23( e) turns on whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); see also In re Initial Pub. Offering Sec. Litig., 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

78.     Appellate review of a challenge to the approval of a class action settlement is limited. See Kayo v. Fitzgerald, 91 Fed. Appx. 714, 715 (2d Cir. 2004) (citing In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983)).  "A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005).  There is a strong judicial policy in favor of

settlement in order to conserve scarce resources that would otherwise be devoted to protracted litigation. See Bennett v. Behring Corp., 737 F. 982, 986 (11th Cir. 1984). The Court is entitled to rely upon the judgment of experienced counsel for the parties. The "opinion of experienced counsel carries great weight in approval of settlements." Selby v. Principal Mut. Life Ins. Co., 98 Civ. 5283 (RLC), 2003 U.S. Dist. LEXIS 21138, at *18 (S.D.N.Y. Nov. 17, 2003) (citing Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)).

79.    "To evaluate the substantive reasonableness of a settlement, [the Court] appl[ies] the Grinnell factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." MBA v. World Airways, Inc., 369 Fed. Appx. 194, 197 (2d Cir. 2010) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000)). The following factors support approval of the Settlement Agreement:

- Litigation will be complicated, protracted and expensive.

- The Class Representatives support the Settlement Agreement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will not object to it.

- The Settlement Agreement was reached after the essential facts had been thoroughly investigated by Class Counsel and after the Parties had informally exchanged information relating to their respective positions as to the strengths and weaknesses of the Claims.

- The risk that the Class Representatives would be unable to establish liability was present because of the numerous defenses asserted by the Debtor.

- When considered in light of the best possible recovery and the attendant risks, the Settlement falls well within the range of reasonableness.

80.     In sum, the Parties submit that not only should the Settlement be approved pursuant to Bankruptcy Rule 9019 as set forth above, but the Settlement should also be approved as fair, reasonable and adequate to the Class under the factors enumerated by the Second Circuit.

## <u>NOTICE</u>

81.     Notice of this Joint Motion will be given to (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) counsel to the Creditors' Committee; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

**WHEREFORE**, the Parties respectfully request that the Court enter orders, substantially in the proposed form annexed hereto as <u>Exhibits 2 and 3</u> (i) granting the Joint Motion in its entirety; (ii) authorizing the Parties to enter into the Settlement Agreement; (iii) certifying Class B for settlement purposes only, appointing Class Counsel for Class B and the Class B Representative; (iv) preliminarily approving the Settlement and request for Class Counsel's fees and reimbursable costs; (v) approving the form and manner of Class Notice; (vi) scheduling a Final Hearing; (vii) approving the Settlement Agreement on a final basis; and (viii) granting such other relief as the Court deems necessary and appropriate.

Dated:   New York, New York
          August 31, 2018

                               **KLESTADT WINTERS JURELLER**
                               **SOUTHARD & STEVENS, LLP**

By:   */s/ Sean C. Southard*
       Sean C. Southard
       Lauren C. Kiss
       200 West 41st Street., 17th Floor
       New York, New York 10036
       Tel: (212) 972-3000
       Fax: (212) 972-2245
       Email: ssouthard@klestadt.com

       *Counsel to the Debtor and*
        *Debtor-in-Possession*

Dated:   New York, New York
          August 31, 2018

                               **OUTTEN & GOLDEN LLP**

By:   */s/ René S. Roupinian*
       René S. Roupinian
       Jack Raisner
       685 Third Avenue, 25th Floor
       New York, NY 10017
       Tel: (212) 245-1000

Fax: (646) 506-2060
Email: rsr@outtengolden.com
        jar@outtengolden.com

*Counsel to the Class Representatives and the
Class*