# <u>Exhibit C</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
In re                                          :      Chapter 11
                                               :
DOWLING COLLEGE,                               :
f/d/b/a DOWLING INSTITUTE,                      :      Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                 :
ASSOCIATION,                                    :
f/d/b/a CECOM,                                  :
a/k/a DOWLING COLLEGE, INC.,                    :
                                               :
                              Debtor.           :
-------------------------------------------------------------x
                                               :
LORI ZAIKOWSKI, on behalf of herself and all   :
others similarly situated,                      :
                                               :
                              Plaintiff,        :      Adv. Pro. No. 16-08178 (REG)
                                               :
               v.                               :
                                               :
DOWLING COLLEGE, f/d/b/a DOWLING               :
INSTITUTE, f/d/b/a DOWLING COLLEGE             :
ALUMNI ASSOCIATION, f/d/b/a CECOM, a/k/a       :
DOWLING COLLEGE, INC.,                          :
                              Defendant.        :
-------------------------------------------------------------x
```

## NOTICE OF CLASS ACTION

TO:    Former employees of Dowling College ("<u>Dowling</u>" or the "<u>Debtor</u>") who were terminated without cause, as part of, or as the result of, mass layoffs or plant closings ordered by the Debtor on or about June 1, 2016 and within thirty (30) days of that date, who were not provided 60 days advance written notice of their terminations by the Debtor.

***You were recently identified as a former Dowling employee who meets the definition of a member of Class A[1], as set forth herein.***

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

SUBJECT: The claim of a former employee alleging that her rights under the Federal WARN Act and New York Labor Law were violated and seeking to recover 60 days' wages and ERISA benefits on behalf of herself and all those similarly situated.

DATE: [      ], 2018

### Description of the Class Litigation

1.      On December 1, 2016, Lori Zaikowski (the "Class A Representative"), on behalf of herself and Class A Members, commenced an adversary proceeding (the "WARN Action") by the filing of a class action complaint against the Debtor, which alleged that the Debtor did not provide sixty (60) days' advance written notice of a mass layoff as required by the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* ("WARN Act") or ninety (90) days' advance written notice of a mass layoff as required by New York Labor Law § 860 *et seq.* ("NY WARN Act").  The Class A Representative asserted that, as a consequence of this alleged failure, Class A Members' claims were entitled to priority treatment pursuant to section 507(a) of the Bankruptcy Code and the remainder as a general unsecured claim on account of damages for the alleged sixty (60) day violation period.  The Class A Representative asserted both WARN Act Claims and Non-WARN Act Claims on behalf of herself and Class A Members.  Non-WARN Act Claims consist of monies owed by the Debtor for unpaid wage, vacation, sick, medical and dental claims, and any other forms of compensation alleged to be earned prior to a Class A Member's termination.

2.      On December 13, 2017, the Class A Representative, on behalf of herself and Class A Members, filed a second amended class action complaint adding a third cause of action for unpaid wages in violation of NYLL § 191, and a fourth cause of action for unpaid compensation in breach of contract and the covenant of good faith and fair dealing.

3.      On January 13, 2017, the Debtor answered the WARN Complaint, wherein it generally denied the Class A Representative's allegations and asserted numerous defenses.

4.      On March 10, 2017, the Class A Representative, on behalf of herself and Class A Members, filed the Class Proof of Claim based on the claims set forth in the WARN Complaint.

5.      There exist significant, complex legal and factual issues regarding the application of the WARN Acts to the facts and circumstances at issue and the viability of the WARN Action, including, without limitation:

- whether the Debtor was entitled to give fewer than sixty (60) days' notice because of the faltering company exception;

- whether certain Class A Members, including part time, adjunct professors, are entitled to an award of damages;

- whether the Debtor has other defenses to the application of the WARN Acts;

- whether the Debtor is entitled to a reduction or elimination of damages under the "good faith" exception to the WARN Acts;

- the computation of the amount of damages, if any; and

- whether and to what extent the alleged damages are entitled to priority under 11 U.S.C. § 507(a).

6.      The Class A Representative has the burden of proof on some of these issues, and the Debtor has the burden on others, including the major affirmative defenses, and the trial of this matter would likely be lengthy, complex, and costly and would delay resolution of this matter.

7.      On December 13, 2016, the Debtor filed schedules of assets and liabilities and a statement of financial affairs and on February 23, 2017 the Debtor filed amended schedules.

8.      On January 13, 2017, the Bankruptcy Court entered the Bar Date Order which (i) fixed the Bar Date, (ii) established procedures for filing proofs of claim against the Debtor and its Estate pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3), and (iii) approved the Bar Date Notice.  The Bar Date Order approved as adequate and sufficient, the service of the Bar Date Notice by first class mail and publication of the Bar Date Notice in the New York edition of the Wall Street Journal, and either Newsday or Long Island Business News.  The Bar Date Order fixed March 10, 2017, at 5:00 P.M. (EST) as the Bar Date by which all claims against the Debtor which arose prior to November 29, 2016, other than those types of claims specifically excepted thereby, had to be filed. The Bar Date Order also set a Bar Date of May 30, 2017, with respect to governmental entities.

9.      The Bar Date Notice was served by first class regular mail upon, among others, all creditors and other known holders of claims, as well as all parties known to the Debtor as having potential claims against the Debtor's estate.  Except for the holders of certain specifically excluded claims, every creditor was required to file a proof of claim on or before the applicable Bar Date so that the Debtor could ascertain with certainty the total amount of pre-petition claims outstanding.

10.     In accordance with Federal Rule of Bankruptcy Procedure 3003(c)(2), holders of claims who failed to comply with the terms of the Bar Date Order are forever barred from (i) filing a proof of claim with respect to such claim, (ii) asserting such claims against the Debtor or its Estate and/or property, (iii) voting on any Plan and (iv) participating in any distribution in the Chapter 11 Case on account of such claims.

11.     Approximately one hundred and twenty-six (126) individual claims were filed by Class Members against the Debtor's estate.  In addition, the Schedules filed by the Debtor listed

certain amounts outstanding in favor of individual Class Members.  Certain of these scheduled claim amounts were listed as contingent, disputed or unliquidated.

12.     Edward Hugler, Acting Secretary of Labor for Dowling College Employee Benefit Plan, c/o the U.S. DOL filed the U.S. DOL Claim in the unsecured amount of $983,769.86 asserting possible violations of Title I of ERISA on account of the U.S. DOL's determination that the Debtor, as sponsor and fiduciary of the Benefit Plan, failed to pay participant medical and dental claims.

13.     The U.S. DOL Claim calculation was estimated based on documentation provided by CIGNA and Healthplex (each a third-party administrator previously in contract with the Debtor) and asserts the potential for priority treatment in relation to certain of the 163 participants and beneficiaries of the Benefit Plan referenced in the U.S. DOL Claim.

14.     Because the U.S. DOL Claim clearly requests that any payments on account of the claim be made directly to the affected participants and beneficiaries and because substantially all of the affected participants are Class Members herein, the Parties intend that the settlements contemplated herein will resolve and satisfy the U.S. DOL Claim as it relates to any Class Member.

15.     There exist significant, complex legal and factual issues regarding the application of the specific entitlements for holders of Non-WARN Act Claims to the facts and circumstances at issue and the viability of such claims, including, without limitation:

- whether Class A Members were entitled to vacation pay after termination and whether certain credits should be applied in relation to vacation;
- whether wage reductions or deferrals applied to Class A Members;
- whether the Debtor has other setoffs or defense to claims of certain Class A Members;

5

- the computation of the amount of Class A Member damages, if any; and

- whether the alleged damages are entitled to priority under 11 U.S.C. § 507(a).

16.     There exists a complex interrelationship between Non-WARN Act Claims and WARN Act Claims as it relates to each particular Class A Member's priority level claim entitlements and the aggregate general unsecured claims of such parties.

17.     Due to the complex nature of the issues involved, the Parties recognize that the outcome of litigation concerning the WARN Act Claims and Non-WARN Act Claims is uncertain, costly and time consuming.  To avoid extensive, costly and uncertain litigation over these issues, the Parties have engaged in significant good faith, arm's length negotiations regarding a possible consensual resolution of the WARN Act Claims and Non-WARN Act Claims.

18.     The Debtor has identified three hundred and seventy-two (372) persons, who constitute all of the individuals who meet the definition of a Class A Member.

19.     Class Counsel has thoroughly investigated the claims made in the WARN Action and the Parties have exchanged a significant amount of information during their settlement negotiations.  In particular, the Debtor provided extensive information to Class Counsel regarding the facts relating to the Debtor's defenses and the circumstances that led to the termination of the Class A Members' employment with the Debtor.  The Debtor also shared payroll information and a damages analysis with Class Counsel.  Class Counsel has analyzed the applicable law and weighed the likelihood of success.

## The Definition of the Class

20.     The Court has defined the Class as: the Class A Representative and all persons who worked at or reported to a Facility of the Debtor who: (1) were terminated without cause on or

6

about June 1, 2016 or within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of any mass layoff and/or plant closing by the Debtor on or about June 1, 2016,  (2) who are affected employees within the meaning of 29 U.S.C. § 2101(a)(5) and New York Labor Law § 860-A (1),(4) and(6) and (3) who have not opted-out of the class.

<u>**Class Counsel and the Class Representative**</u>

21.    The Plaintiff who initiated this lawsuit is represented by attorneys Jack A. Raisner and René S. Roupinian of Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York, New York 10017, (212) 245-1000, who have been appointed Class Counsel.  The Court appointed Plaintiff Lori Zaikowski as the Class A Representative.

<u>**The Proposed Settlement**</u>

22.    The following description of the proposed settlement is only a summary.  In the event of any difference between this summary and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.  You may secure a copy of the complete Settlement Agreement from Class Counsel at the address shown below.  The terms of the settlement relevant to Class A Members may be summarized as follows:

- The settlement shall result in Class A Members holding (i) Allowed Priority Claims pursuant to 11 U.S.C. § 507(a)(4) in the aggregate amount of $1,355,593.74[2] and (ii) Allowed Unsecured Claims in the aggregate amount of $4,885,537.13[3].

- **The amount projected to be your (i) Allowed Priority Claim, which consists of, as applicable, the Priority Medical Claim (which is not subject to withholding taxes), Priority Dental Claim (which is not subject to withholding taxes), and**

---

[2] This amount is subject to increase in the event the two individuals who timely exercised their right to opt-out of Class A rescind such opt-out.
[3] This amount is subject to increase in the event the two individuals who timely exercised their right to opt-out of Class A rescind such opt-out.

**Taxable Priority Claim (which is subject to withholding taxes) and (ii) Allowed Unsecured Claim (which is subject to withholding taxes) and an explanation of how the Debtor and Class Counsel calculated these amounts is attached hereto as Schedule 1.**

- **Following the Effective Date, which is estimated to be in [late December of this year], and which may be extended further due to unforeseen circumstances, the Debtor will distribute to you your Allowed Priority Claim Amount, net of withholding tax deductions that will be applied to the Taxable Priority Claim Amount, which amount remains subject to adjustment.**

- The Unsecured Creditor Trust shall distribute your Allowed Unsecured Claim Amount pursuant to the terms set forth in the Plan and Confirmation Order.

- The Class A Representative made significant contributions to the litigation and discussions that led to the Settlement.  In recognition of her service on behalf of all Class A Members, she shall receive a one-time payment of Eleven Thousand Five Hundred dollars ($11,500) ("Service Payment").  The Service Payment will be made in addition to the Class A Representative's settlement amount and Class Counsel's Fees will not be deducted from the Service Payment.

- The Settlement Agreement shall not become effective if the Bankruptcy Court does not approve it in its entirety.

- If settlement checks issued to Class A Members on account of his or her Allowed Priority Claim Amount or Allowed Unsecured Claim Amount are not deposited, endorsed or negotiated within six (6) months of their date of issuance, such

Residual Funds shall be vested in the Debtor to be utilized or distributed in accordance with the terms of the Plan.

- The Parties have agreed that, in the event that (i) Class Members[4] holding 5% or more of the Allowed Priority Claims opt-out of the Settlement or (ii) 20% or more of Class Members opt-out of the Settlement, then the Settlement Agreement may be declared null and void, and of no future effect, for all purposes in the sole and exclusive discretion of the Debtor.

- The Parties have agreed that, in this circumstance, the Debtor may elect to terminate the Settlement Agreement by providing written notice to Class Counsel within the later of (a) ten (10) days after the expiration of the right of Class B Members and Class A Members who did not receive the Notice of Class Action to opt-out of the Settlement Agreement; (b) ten (10) days after the later of the expiration of the Objection Deadline or any objection deadline imposed by the Bankruptcy Court for Class Members, creditors, or other parties in interest to object to the Settlement or the Motion; or (c) the date that is ten (10) days after the date that Class Counsel files the list of Class Members that have opted out, as required under the Settlement Agreement.

### Class Counsel's Recommendation

23.     Class Counsel recommends the Settlement Agreement, believing that it is fair, reasonable and adequate to the Class.

---

[4] The Class Members consist of, collectively, Class A Members and Class B Members.  Class B Members consist of all persons who (i) do not fit within the definition of Class A; (ii) currently or previously worked at or reported to a Facility of the Debtor; (iii) allegedly hold Non-WARN Act Claims; and (iv) do not timely opt-out of Class B.

## Tax Consequences of the Settlement Payments

24.     Standard withholding taxes will be withheld by the Debtor or the Unsecured Creditor Trust, as applicable, from the Taxable Priority Claim Amount and Allowed Unsecured Claim Amount pursuant to the terms of the Settlement Agreement.  **If any information pertaining to IRS Form W-4 has changed since the last form submitted to Dowling prior to June 1, 2016, please complete and sign the enclosed IRS Form W-4 and return it to the Debtor at the following address no later than [_____], 2018.**

> **Via Mail: Dowling College**
> **P.O. Box 470**
> **Massapequa Park, NY 11762**
> **Attn:  Robert S. Rosenfeld, CRO**
>
> **Via Email: rsrosenfeld@rsrconsultingllc.com**

25.     If no update of tax status is timely provided by a Class A Member, the Debtor will utilize the most recent relevant information in its books and records to calculate the appropriate amount of withholding taxes.  If no information is available to the Debtor at all, it will utilize the maximum applicable rate when calculating withholding tax amounts for Class A Members.

## Class Counsel's Fees

26.     Under the proposed Settlement Agreement and subject to final court approval, Class Counsel shall be paid no more than $350,000.00 in fees and $10,000.00 in expenses, or such lesser amount as is allowed by the Bankruptcy Court or as set forth in the Settlement Agreement as payment for all fees and expenses in connection with this matter.  Class Counsel's Fees shall not be paid directly from the distributions to be made on account of the Allowed Priority Claims and Allowed Unsecured Claims.  You may object to the request of Class Counsel for attorneys' fees by filing an objection within the time and in the manner specified below.

## Release of Claims and Effect of Approval of Settlement Agreement

27.    Upon final approval by the Bankruptcy Court, the Settlement Agreement will result in the dismissal of the WARN Action on the merits and with prejudice, and shall constitute a waiver and release of all Released Claims, including, but not limited to, all WARN Act Claims and Non-WARN Act Claims.  A complete definition of all "Released Claims," is set forth in section 10 of the Settlement Agreement, which may be obtained from Class Counsel.  Any and all claims released under the Settlement Agreement shall be waived, and no person, including the Class A Member, shall be entitled to any further distribution thereon from the Debtor's Estate. Not included in Released Claims are any obligations created by or arising out of the Settlement or any claims which federal or state law clearly provides may not be released by settlement.

28.    Upon final approval of the Settlement any individual proof of claim forms filed with the Bankruptcy Court by a Class A Member who does not opt-out of the Settlement shall be disallowed insofar as and only to the extent such proof of claim form relates to or arises out of any of the claims released in the Settlement Agreement.

## How to Object or Opt-Out

29.    **If you are satisfied with the proposed Settlement including the amount of your projected claim as set forth on Schedule 1 and Class Counsel's requested fees, you do not need to do anything.   The Debtor will mail your Allowed Priority Claim Amount, which amount remains subject to adjustment and withholding taxes on the Taxable Priority Claim Amount, in accordance with the Settlement Agreement.  The Unsecured Creditor Trust shall distribute your Allowed Unsecured Claim Amount in accordance with the Settlement Agreement and as set forth in the Plan and Confirmation Order.  The payments will be mailed to your last known address as indicated in the Debtor's books and records or to such**

address that you have updated with Class Counsel.  If you are concerned that Class Counsel

does not have your current address, please promptly notify Class Counsel as follows:

> Via Mail: René S. Roupinian, Esq.
> Outten & Golden LLP
> 685 Third Avenue, 25th Floor
> New York, NY 10017
>
> Via Email: rsr@outtengolden.com

30.    If, on the other hand, you believe that the proposed Settlement Agreement is

unfair or inadequate, you are dissatisfied with your Allowed Priority Claim Amount or

Allowed Unsecured Claim Amount, or you feel that Class Counsel's request for attorneys'

fees should not be approved, you may object to the Settlement Agreement and/or Class

Counsel's request for attorneys' fees by filing a detailed written statement with the

Bankruptcy Court electronically in accordance with General Order 559 (which can be found

at www.nyeb.uscourts.gov, the official website for the Bankruptcy Court) by registered users

of the Bankruptcy Court's case filing system, and by all other parties in interest, by mailing

the statement to the Clerk of the United States Bankruptcy Court, Eastern District of New

York,  Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York

11722, and by sending copies of that statement to (1) Klestadt Winters Jureller Southard &

Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York  10036, Attention: Sean

C. Southard, Esq.; and (2) Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York,

New York 10017, Attention:  René S. Roupinian, Esq.   Objections must be mailed so as to

be received no later than [_____], 2018 at 5:00 p.m., and must include the caption of the

action and your name, address, and telephone number, together with a detailed statement of

the basis for your objection and whether you wish to be heard personally or by counsel at

the final hearing at which the Parties will be requesting binding Bankruptcy Court approval of the Settlement and the award of attorneys' fees, as described above.

31.    You may also appear in person or by counsel at the final hearing described below.

32.    **If you wish to be a member of the class, you do not need to do anything. The Debtor will mail your Allowed Priority Claim Amount, which amount remains subject to adjustment and withholding taxes on the Taxable Priority Claim Amount, in accordance with the Settlement Agreement. The Unsecured Creditor Trust shall distribute your Allowed Unsecured Claim Amount in accordance with the Settlement Agreement and as set forth in the Plan and Confirmation Order. The payments will be mailed to your last known address as indicated in the Debtor's books and records or to such address that you have updated with Class Counsel. If you are concerned that Class Counsel does not have your current address, please promptly notify Class Counsel as follows:**

> **Via Mail: René S. Roupinian, Esq.**
> **Outten & Golden LLP**
> **685 Third Avenue, 25th Floor**
> **New York, NY 10017**
>
> **Via Email: rsr@outtengolden.com**

33.    **If you choose not to be bound by this Settlement Agreement and do not wish to share in any of the benefits described herein, you may opt-out of Class A by filling out the attached "Opt-Out Form," signing and mailing that form to Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York, New York 10017, (212) 245-1000, Attn: René S. Roupinian. The form must be received by Ms. Roupinian no later than [_____], 2018 at 5:00 p.m. (the "Opt-Out Deadline"). All requests for exclusion received after the Opt-Out Deadline will not be effective and such person will be a member of Class A and will be bound in the same way and to the same extent as all other Class A Members.**

**Final Hearing to Approve Settlement and Award Attorneys' Fees**

34.     The hearing for final consideration and approval of the Settlement Agreement and the award of attorney's fees to Class Counsel is scheduled to take place on **[_____], at [_____],** **before the Honorable Robert E. Grossman, United States Bankruptcy Judge, in Courtroom** **860 of the United States Bankruptcy Court for the Eastern District of New York, Alfonse M.** **D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722**.   That hearing may be adjourned without further notice.   If you wish to determine if the hearing is adjourned, you may contact Class Counsel at the address shown above.

**Other Information**

35.     Any questions from members of Class A concerning this notice or the WARN Action should be directed to Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York, New York 10017, Attention:   René S. Roupinian, Esq.   All requests for more information, including a copy of the Settlement Agreement, should be sent by first-class mail to Ms. Roupinian to the address indicated above. A copy is also available on the internet at https://www.pacer.gov. ***Please do not call or contact the Court or the Debtor's Counsel for information.***

36.     While the Bankruptcy Court has approved the sending of this notice, such approval does not indicate, and is not intended to indicate, that the Bankruptcy Court has any opinion as to the respective claims or defenses asserted by the parties in the WARN Action.

## **OPT-OUT FORM**

*Zaikowski v. Dowling College*
United States Bankruptcy Court for the Eastern District of New York
Adversary Case No. 8-16-08178-reg

I, the undersigned, have read the foregoing Notice and understand its contents.

I, the undersigned, **do not** want to be part of the Class Action or receive any benefits from the Class Action and do not wish to be bound by the outcome of the Class Action.

_____           _____
Signature                                             Address

_____           _____
Name (printed or type)                               Telephone

_____
Date

If you do NOT wish to be included, send this completed form to:

Outten & Golden LLP

685 Third Avenue, 25th Floor

New York, New York 10017

Attn: René S. Roupinian

**SCHEDULE 1**

Date

Name
Address


Your total estimated **Allowed Priority Claim Amount** is $\_\_\_[1]

     Your estimated **Priority Medical Claim Amount** is $_____[2]

     Your estimated **Priority Dental Claim Amount** is $_____[3]

     Your estimated **Taxable Priority Claim Amount** is $_____[4]

Your total estimated **Allowed Unsecured Claim Amount**:  $\_\_\_\_[5]

Explanation of Terms:

"**Allowed Priority Claim**" – to the extent you are entitled to the following benefits, this claim category pays WARN Act damages, unpaid wages, severance, accrued and unused vacation, accrued and unused sick pay, unpaid medical claims, and unpaid dental claims earned in the 180 days prior to the cessation of the Debtor's business, at the full rate of 100 cents-on-the-dollar, up to the statutory cap of $12,850. "Allowed" means the Debtor does not contest the claim or amount.

"**Allowed Unsecured Claim**" – this claim category includes the above amounts that exceed $12,850.  To the extent you are entitled to the following benefits, it also includes unpaid wages, accrued and unused vacation, and accrued and unused sick pay that were earned more than 180 days prior to the cessation of the Debtor's business. These claims will be paid at a later date, and at a rate of fewer cents-on-the-dollar which have yet to be determined.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the accompanying notice.  Your total **Allowed Priority Claim Amount** consists of the **Priority Medical Claim Amount, Priority Dental Claim Amount**, and **Taxable Priority Claim Amount**.  No withholding taxes will be deducted from your **Priority Medical Claim Amount** and **Priority Dental Claim Amount.**  The balance of your **Allowed Priority Claim Amount** will be subject to payroll taxes and will, therefore, be paid net of employment and withholding tax deductions. Your **Allowed Priority Claim Amount** is subject to Court approval and any final adjustments that may be required.

[2] Your estimated **Priority Medical Claim Amount** consists of amounts which the Debtor failed to pay on account of medical claims which were covered under the terms of the Benefit Plan.  The Debtor hired a third-party administrator who processed these claims to determine the amounts that would have been payable under the Benefit Plan.

[3] Your estimated **Priority Dental Claim Amount** consists of amounts which the Debtor failed to pay on account of dental claims which were covered under the terms of the Benefit Plan.  The Debtor hired a third-party administrator who processed these claims to determine the amounts that would have been payable under the Benefit Plan.

[4] Your **Taxable Priority Claim Amount** is the difference between your total **Allowed Priority Claim Amount** and the sum of your **Priority Medical Claim Amount** and **Priority Dental Claim Amount**.

[5] Your estimated **Allowed Unsecured Claim Amount** will be paid subject to recoveries by the bankruptcy estate and will be paid net of employment and withholding tax deductions and is also subject to Court approval and any final adjustments that may be required.

## I.    How the Debtor and Class Counsel arrived at your Allowed Priority Claim Amount:

1.    If you were terminated by the Debtor without cause on or about June 1, 2016 or within thirty (30) days of that date, or were terminated without cause as the foreseeable consequence of the mass layoff and/or closing by Debtor and did not receive 60 days' advance written notice, you are entitled to 60 additional days of pay, beyond your regular earned pay, as WARN Act damages, plus the value of your benefits for the 60-day WARN period.  The 60 days of WARN pay will be reduced by the number of days you continued to work, if any, after June 1, 2016. If you continued to work for 60 days after June 1, 2016, you are not entitled to any WARN Act damages.

The calculation of your WARN Act damages was based on reasonable payroll data maintained by the Debtor.  Your WARN Act damages was then reduced to 32.5 % to reflect the risks of a) litigation posed by the Debtor's asserted defenses to WARN Act liability, and b) collection due to the Debtor's bankruptcy.

2.    The Debtor and Class Counsel then analyzed any Non-WARN Act Claims you may have depending on your position with Dowling College at the time of your termination.

   a.  Faculty Members:
   Upon termination of employment, if you were a faculty member, you are entitled to the following:

   (i)     full pay and benefits from the period of July 20, 2016 through August 31, 2016; and

   (ii)    depending on whether you were tenured or non-tenured and your length of employment as a non-tenured faculty member, you are entitled to severance payments as follows: (i) a non-tenured faculty member employed for 1 to 2 years is entitled to 6 months' pay, (ii) a non-tenured faculty member employed for 2 to 4 years is entitled to 8 months' pay, (iii) a non-tenured faculty member employed for 4 to 7 years is entitled to 10 months' pay, and (iv) a tenured faculty member is entitled to 1 years' pay.

   b.  Local 153, AFL-CIO Members:

   Upon termination of employment, if you were a member of Local 153, you are entitled to the following:

   (i)     unused vacation prorated at your appropriate accrual rate for each full month earned in the 180 days prior to the cessation of the Debtor's business;

        (ii)      severance payment according to the following schedule:  a full-time employee with 1 year of full-time employment is entitled to receive (a) 2 weeks' pay if employed for more than 1 year but less than 5 years, (b) 3 weeks' pay if employed for 5 years but less than 10 years, or (c) 4 weeks' pay if employed for 10 years or more; and

        (iii)     two weeks' pay if notice of layoff is not provided two weeks prior to layoff.

    c.  <u>Local 434, AFL-CIO Members</u>:
Upon termination of employment, if you were a member of Local 434, you are entitled to the following:

        (i)       pro rata vacation pay for all unused vacation earned in the 180 days prior to the cessation of the Debtor's business;

        (ii)      sick time entitlement accrued for time worked and earned in the 180 days prior to the cessation of the Debtor's business; and

        (iii)     one weeks' notice of layoff.

    d.  <u>Unaligned Employees</u>:

Upon termination of employment, if you were not a member of any union, you are entitled to accrued and unused vacation earned in the 180 days prior to the cessation of the Debtor's business.

3.     Your estimated **Allowed Priority Claim Amount** as set forth on the first page of this schedule is subject to a cap of $12,850 pursuant to Section 507(a)(4) of the Bankruptcy Code.  What that means is that any amount owed to you which exceeds the $12,850 cap will be treated as a general unsecured claim and will be added to your estimated **Allowed Unsecured Claim Amount**, as discussed below.

4.     Your estimated total **Allowed Priority Claim Amount** consists of, among other things and to the extent applicable, your **Priority Medical Claim Amount** and **Priority Dental Claim Amount**. Your **Priority Medical and Dental Claim Amounts** are not subject to taxes or payroll deductions.  However, the remaining portion of your **Allowed Priority Claim Amount**, the **Taxable Priority Claim Amount**, is subject to payroll deductions. Prior to payment of the **Taxable Priority Claim Amount**, deductions will be taken for applicable taxes and withholdings as required by federal, state, and local law (in accordance with the provisions of Section 6 of the Settlement Agreement).  A Form W-2 reflecting the reductions for applicable taxes and withholdings will be issued to you. You should consult a tax professional regarding your tax obligations in connection with your settlement payment.

5.    Assuming the Court approves the settlement and the Dowling bankruptcy Plan is confirmed, your **Priority Medical Claim Amount**, **Priority Dental Claim Amount** and **Taxable Priority Claim Amount** (net of payroll deductions) will be mailed to you no later than 60 days from the date the order confirming the Debtor's bankruptcy Plan is final.

II.    **How the Debtor and Class Counsel arrived at your Allowed Unsecured Claim Amount**:

1.    In addition to any amounts from your **Allowed Priority Claim Amount** which exceed the $12,850 cap, you may also be entitled to the following Non-WARN Act Claims depending on your position with Dowling College at the time of your termination:

a.    Faculty Members:

Upon termination of employment, if you were a faculty member, you are entitled to the wage reduction imposed upon the faculty member between January 2, 2015 and May 21, 2015.

b.    Local 153, AFL-CIO Members

Upon termination of employment, if you were a member of Local 153, you are entitled to the following:

(i)    unused vacation prorated at your appropriate accrual rate for each full month earned in the 2015-2016 fiscal year, excluding the 180 days prior to the cessation of the Debtor's business; and

(ii)    twenty percent wage reduction imposed upon the union member between June 22, 2012 and August 30, 2012.

c.    Local 434, AFL-CIO Members:

Upon termination of employment, if you were a member of Local 434, you are entitled to the following:

(i)    pro rata vacation pay for all unused vacation earned in the 2015-2016 fiscal year, excluding the 180 days prior to the cessation of the Debtor's business; and

(ii)    sick time entitlement accrued for time worked and earned in the 2015-2016 fiscal year, excluding the 180 days prior to the cessation of the Debtor's business.

4

    d.  <u>Unaligned Employees</u>:

Upon termination of employment, if you were not a member of any union, you are entitled to the following:

    (i)    accrued and unused vacation earned in the 2015-2016 fiscal year, excluding the 180 days prior to the cessation of the Debtor's business; and

    (ii)    twenty percent wage reduction imposed upon you between May 25, 2012 and August 2, 2012.

2.    Your estimated **Allowed Unsecured Claim Amount** is subject to payroll deductions. Prior to payment, deductions will be taken for applicable taxes and withholdings as required by federal, state, and local law (in accordance with the provisions of Section 6 of the Settlement Agreement). A Form W-2 reflecting the reductions for applicable taxes and withholdings will be issued to you. You should consult a tax professional regarding your tax obligations in connection with your settlement payment.

3.    Payment of your estimated **Allowed Unsecured Claim Amount** is subject to Court approval of the settlement, confirmation of the Debtor's bankruptcy Plan, and the estate recovering funds sufficient to make a distribution to holders of allowed unsecured claims. Assuming those conditions are met, a percentage of your **Allowed Unsecured Claim Amount**, net of payroll deductions, will be mailed to you. We do not have an estimate yet, as to the timing or amount of payment of allowed unsecured claims.

Should you have any questions regarding the above, please contact Class Counsel, Outten & Golden LLP attention attorney René Roupinian at rsr@outtengolden.com or by calling (212) 245-1000.

Please do not call or contact the Court or Debtor's Counsel.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                 :    Chapter 11
                                     :
DOWLING COLLEGE,                  :
f/d/b/a DOWLING INSTITUTE,        :    Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI   :
ASSOCIATION,                 :
f/d/b/a CECOM,                 :
a/k/a DOWLING COLLEGE, INC.,      :
                                     :
                         Debtor.    :
-----------------------------------------------------------------x
                                     :
LORI ZAIKOWSKI, on behalf of herself and all  :
others similarly situated,          :
                                     :
                    Plaintiff,    :    Adv. Pro. No. 16-~~08187~~08178
                                     :    (REG)
                v.                 :
                                       :
DOWLING COLLEGE, f/d/b/a DOWLING      :
INSTITUTE, f/d/b/a DOWLING COLLEGE    :
ALUMNI ASSOCIATION, f/d/b/a CECOM, a/k/a :
DOWLING COLLEGE, INC.,          :
                    Defendant.  :
-----------------------------------------------------------------x

## <u>NOTICE OF CLASS ACTION</u>

TO:    Former employees of ~~Defendant~~Dowling College ("Dowling" or the "Debtor") who

were terminated without cause, as part of, or as the result of, mass layoffs or plant closings ordered

by ~~Defendant~~the Debtor on or about June 1, 2016 and within thirty (30) days of that date, who

were not provided 60 days advance written notice of their terminations by ~~Defendant.~~ the Debtor.

*You were recently identified as a former Dowling employee who meets the definition of a*

*member of Class A[1], as set forth herein.*

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Settlement
Agreement.

SUBJECT: The claim of a former employee alleging that her rights under the Federal WARN Act and New York Labor Law were violated and seeking to recover 60 days' wages and ERISA benefits on behalf of herself and all those similarly situated.

DATE: [      ], 2018

### Description of the Class Litigation

1.      On December 1, 2016, Lori Zaikowski (the "Class A Representative"), on behalf of herself and Class A Members, commenced an adversary proceeding (the "WARN Action") by the filing of a class action complaint against the Debtor, which alleged that the Debtor did not provide sixty (60) days' advance written notice of a mass layoff as required by the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* ("WARN Act") or ninety (90) days' advance written notice of a mass layoff as required by New York Labor Law § 860 *et seq.* ("NY WARN Act").  The Class A Representative asserted that, as a consequence of this alleged failure, Class A Members' claims were entitled to priority treatment pursuant to section 507(a) of the Bankruptcy Code and the remainder as a general unsecured claim on account of damages for the alleged sixty (60) day violation period.  The Class A Representative asserted both WARN Act Claims and Non-WARN Act Claims on behalf of herself and Class A Members.  Non-WARN Act Claims consist of monies owed by the Debtor for unpaid wage, vacation, sick, medical and dental claims, and any other forms of compensation alleged to be earned prior to a Class A Member's termination.

2.      On December 13, 2017, the Class A Representative, on behalf of herself and Class A Members, filed a second amended class action complaint adding a third cause of action for unpaid wages in violation of NYLL § 191, and a fourth cause of action for unpaid compensation in breach of contract and the covenant of good faith and fair dealing.

3.     On January 13, 2017, the Debtor answered the WARN Complaint, wherein it generally denied the Class A Representative's allegations and asserted numerous defenses.

4.     On March 10, 2017, the Class A Representative, on behalf of herself and Class A Members, filed the Class Proof of Claim based on the claims set forth in the WARN Complaint.

5.     There exist significant, complex legal and factual issues regarding the application of the WARN Acts to the facts and circumstances at issue and the viability of the WARN Action, including, without limitation:

- whether the Debtor was entitled to give fewer than sixty (60) days' notice because of the faltering company exception;

- whether certain Class A Members, including part time, adjunct professors, are entitled to an award of damages;

- whether the Debtor has other defenses to the application of the WARN Acts;

- whether the Debtor is entitled to a reduction or elimination of damages under the "good faith" exception to the WARN Acts;

- the computation of the amount of damages, if any; and

- whether and to what extent the alleged damages are entitled to priority under 11 U.S.C. § 507(a).

6.     The Class A Representative has the burden of proof on some of these issues, and the Debtor has the burden on others, including the major affirmative defenses, and the trial of this matter would likely be lengthy, complex, and costly and would delay resolution of this matter.

7.     On December 13, 2016, the Debtor filed schedules of assets and liabilities and a statement of financial affairs and on February 23, 2017 the Debtor filed amended schedules.

8.      On January 13, 2017, the Bankruptcy Court entered the Bar Date Order which (i) fixed the Bar Date, (ii) established procedures for filing proofs of claim against the Debtor and its Estate pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3), and (iii) approved the Bar Date Notice.  The Bar Date Order approved as adequate and sufficient, the service of the Bar Date Notice by first class mail and publication of the Bar Date Notice in the New York edition of the Wall Street Journal, and either Newsday or Long Island Business News.  The Bar Date Order fixed March 10, 2017, at 5:00 P.M. (EST) as the Bar Date by which all claims against the Debtor which arose prior to November 29, 2016, other than those types of claims specifically excepted thereby, had to be filed. The Bar Date Order also set a Bar Date of May 30, 2017, with respect to governmental entities.

9.      The Bar Date Notice was served by first class regular mail upon, among others, all creditors and other known holders of claims, as well as all parties known to the Debtor as having potential claims against the Debtor's estate.  Except for the holders of certain specifically excluded claims, every creditor was required to file a proof of claim on or before the applicable Bar Date so that the Debtor could ascertain with certainty the total amount of pre-petition claims outstanding.

10.     In accordance with Federal Rule of Bankruptcy Procedure 3003(c)(2), holders of claims who failed to comply with the terms of the Bar Date Order are forever barred from (i) filing a proof of claim with respect to such claim, (ii) asserting such claims against the Debtor or its Estate and/or property, (iii) voting on any Plan and (iv) participating in any distribution in the Chapter 11 Case on account of such claims.

11.     Approximately one hundred and twenty-six (126) individual claims were filed by Class Members against the Debtor's estate.  In addition, the Schedules filed by the Debtor listed

certain ~~amount~~amounts outstanding in favor of individual Class Members. Certain of these scheduled claim amounts were listed as contingent, disputed or unliquidated.

12.     Edward Hugler, Acting Secretary of Labor for Dowling College Employee Benefit Plan, c/o the U.S. DOL filed the U.S. DOL Claim in the unsecured amount of $983,769.86 asserting possible violations of Title I of ERISA on account of the U.S. DOL's determination that the Debtor, as sponsor and fiduciary of the Benefit Plan, failed to pay participant medical and dental claims.

13.     The U.S. DOL Claim calculation was estimated based on documentation provided by CIGNA and Healthplex (each a third-party administrator previously in contract with the Debtor) and asserts the potential for priority treatment in relation to certain of the 163 participants and beneficiaries of the Benefit Plan referenced in the U.S. DOL Claim.

14.     Because the U.S. DOL Claim clearly requests that any payments on account of the claim be made directly to the affected participants and beneficiaries and because substantially all of the affected participants are Class Members herein, the Parties intend that the settlements contemplated herein will resolve and satisfy the U.S. DOL Claim as it relates to any Class Member.

15.     There exist significant, complex legal and factual issues regarding the application of the specific entitlements for holders of Non-WARN Act Claims to the facts and circumstances at issue and the viability of such claims, including, without limitation:

- whether Class A Members were entitled to vacation pay after termination and whether certain credits should be applied in relation to vacation;

- whether wage reductions or deferrals applied to Class A Members;

- whether the Debtor has other setoffs or defense to claims of certain Class A Members;

- the computation of the amount of Class A Member damages, if any; and

- whether the alleged damages are entitled to priority under 11 U.S.C. § 507(a).

16.     There exists a complex interrelationship between Non-WARN Act Claims and WARN Act Claims as it relates to each particular Class A Member's priority level claim entitlements and the aggregate general unsecured claims of such parties.

17.     Due to the complex nature of the issues involved, the Parties recognize that the outcome of litigation concerning the WARN Act Claims and Non-WARN Act Claims is uncertain, costly and time consuming.  To avoid extensive, costly and uncertain litigation over these issues, the Parties have engaged in significant good faith, arm's length negotiations regarding a possible consensual resolution of the WARN Act Claims and Non-WARN Act Claims.

18.     The Debtor has identified three hundred and seventy-two (372) persons, who constitute all of the individuals who meet the definition of a Class A Member.

19.     Class Counsel has thoroughly investigated the claims made in the WARN Action and the Parties have exchanged a significant amount of information during their settlement negotiations.  In particular, the Debtor provided extensive information to Class Counsel regarding the facts relating to the Debtor's defenses and the circumstances that led to the termination of the Class A Members' employment with the Debtor.  The Debtor also shared payroll information and a damages analysis with Class Counsel.  Class Counsel has analyzed the applicable law and weighed the likelihood of success.

**The Definition of the Class**

20.     The Court has defined the Class as: the Class A Representative and all persons who worked at or reported to a Facility of ~~Defendant~~the Debtor who: (1) were terminated without cause

6

on or about June 1, 2016 or within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of any mass layoff and/or plant closing by ~~Defendant~~the Debtor on or about June 1, 2016,  (2) who are affected employees within the meaning of 29 U.S.C. § 2101(a)(5) and New York Labor Law § 860-A (1),(4) and(6) and (3) who have not opted-out of the class.

## Class Counsel and the Class Representative

21.    The Plaintiff who initiated this lawsuit is represented by attorneys Jack A. Raisner and René S. Roupinian of Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York, New York 10017, (212) 245-1000, who have been appointed Class Counsel.  The Court appointed Plaintiff Lori Zaikowski as the Class A Representative.

## The Proposed Settlement

22.    The following description of the proposed settlement is only a summary.  In the event of any difference between this summary and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.  You may secure a copy of the complete Settlement Agreement from Class Counsel at the address shown below.  The terms of the settlement relevant to Class A Members may be summarized as follows:

- The settlement shall result in Class A Members holding (i) Allowed Priority Claims pursuant to 11 U.S.C. § 507(a)(4) in the aggregate amount of $1,355,593.74[2] and (ii) Allowed Unsecured Claims in the aggregate amount of $4,885,537.13[3].

---

[2] This amount is subject to increase in the event the two individuals who timely exercised their right to opt-out of Class A rescind such opt-out.
[3] This amount is subject to increase in the event the two individuals who timely exercised their right to opt-out of Class A rescind such opt-out.

- The amount projected to be your **(i)** Allowed Priority Claim ~~prior~~**, which consists of, as applicable, the Priority Medical Claim (which is not subject** to ~~deduction of~~ withholding taxes ~~is $[____].~~

- ~~The amount projected~~**), Priority Dental Claim (which is not subject** to ~~be your Allowed Priority Claim after deduction of~~ withholding taxes ~~is $[_____] (the "Net Allowed Priority Claim"). )~~**, and Taxable Priority Claim (which is subject to withholding taxes) and (ii) Allowed Unsecured Claim (which is subject to withholding taxes) and an explanation of how the Debtor and Class Counsel calculated these amounts is attached hereto as Schedule 1.**

- Following the Effective Date, which is estimated to be in [late December of this year], and which may be extended further due to unforeseen circumstances, the Debtor will distribute to you ~~the Net~~**your** Allowed Priority Claim **Amount, net of withholding tax deductions that will be applied to the Taxable Priority Claim Amount**, which amount remains subject to adjustment.

- ~~The amount projected to be your Allowed Unsecured Claim prior to deduction of withholding taxes is $[____].~~ The Unsecured Creditor Trust shall distribute your Allowed Unsecured Claim **Amount** pursuant to the terms set forth in the Plan and Confirmation Order.

- The Class A Representative made significant contributions to the litigation and discussions that led to the Settlement.  In recognition of her service on behalf of all Class A Members, she shall receive a one-time payment of Eleven Thousand Five Hundred dollars ($11,500) ("Service Payment").  The Service Payment will be

made in addition to the Class A Representative's settlement amount and Class Counsel's Fees will not be deducted from the Service Payment.

- The Settlement Agreement shall not become effective if the Bankruptcy Court does not approve it in its entirety.

- If settlement checks issued to Class A Members on account of his or her Allowed Priority Claim Amount or Allowed Unsecured Claim Amount are not deposited, endorsed or negotiated within six (6) months of their date of issuance, such Residual Funds shall be vested in the Debtor to be utilized or distributed in accordance with the terms of the Plan.

- The Parties have agreed that, in the event that (i) Class Members[4] holding 5% or more of the Allowed Priority Claims opt-out of the Settlement or (ii) 20% or more of Class Members opt-out of the Settlement, then the Settlement Agreement may be declared null and void, and of no future effect, for all purposes in the sole and exclusive discretion of the Debtor.

- The Parties have agreed that, in this circumstance, the Debtor may elect to terminate the Settlement Agreement by providing written notice to Class Counsel within the later of (a) ten (10) days after the expiration of the right of Class B Members and Class A Members who did not receive the Notice of Class Action to opt-out of the Settlement Agreement; (b) ten (10) days after the later of the expiration of the Objection Deadline or any objection deadline imposed by the Bankruptcy Court for Class Members, creditors, or other parties in interest to object to the Settlement or

---

[4] The Class Members consist of, collectively, Class A Members and Class B Members.  Class B Members consist of all persons who (i) do not fit within the definition of Class A; (ii) currently or previously worked at or reported to a Facility of the Debtor; (iii) allegedly hold Non-WARN Act Claims; and (iiv) do not timely opt-out of Class B.

the Motion; or (c) the date that is ten (10) days after the date that Class Counsel files the list of Class Members that have opted out, as required under the Settlement Agreement.

## Class Counsel's Recommendation

23.    Class Counsel recommends the Settlement Agreement, believing that it is fair, reasonable and adequate to the Class.

## Tax Consequences of the Settlement Payments

24.    Standard withholding taxes will be withheld by the Debtor or the Unsecured Creditor Trust, as applicable, from ~~all distributions made to you~~the Taxable Priority Claim Amount and Allowed Unsecured Claim Amount pursuant to the terms of the Settlement Agreement. ~~The Debtor calculated the Net Allowed Priority Claim based upon the most recent relevant information in its books and records to determine the appropriate amount of withholding taxes.~~  **If any information pertaining to IRS Form W-4 has changed since the last form submitted to Dowling prior to June 1, 2016, please complete and sign the enclosed IRS Form W-4 and return it to the Debtor at the following address no later than [_____], 2018.**

> **Via Mail: Dowling College**
> **P.O. Box. 470**
> **Massapequa Park, NY 11762**
> **Attn:  Robert S. Rosenfeld, CRO**
>
> **Via Email: rsrosenfeld@rsrconsultingllc.com**

25.    If no update of tax status is timely provided by a Class A Member, the Debtor will utilize the most recent relevant information in its books and records to calculate the appropriate

amount of withholding taxes.  If no information is available to the Debtor at all, it will utilize the maximum applicable rate when calculating withholding tax amounts for Class A Members.

<b><u>Class Counsel's Fees</u></b>

26.      Under the proposed Settlement Agreement and subject to final court approval, Class Counsel shall be paid no more than $350,000.00 in fees and $10,000.00 in expenses, or such lesser amount as is allowed by the Bankruptcy Court or as set forth in the Settlement Agreement as payment for all fees and expenses in connection with this matter.  Class Counsel's Fees shall not be paid directly from the distributions to be made on account of the Allowed Priority Claims and Allowed Unsecured Claims.  You may object to the request of Class Counsel for attorneys' fees by filing an objection within the time and in the manner specified below.

<b><u>Release of Claims and Effect of Approval of Settlement Agreement</u></b>

27.      Upon final approval by the Bankruptcy Court, the Settlement Agreement will result in the dismissal of the WARN Action on the merits and with prejudice, and shall constitute a waiver and release of all Released Claims, including, but not limited to, all WARN Act Claims and Non-WARN Act Claims.  A complete definition of all "Released Claims," is set forth in section 10 of the Settlement Agreement, which may be obtained from Class Counsel.  Any and all claims released under the Settlement Agreement shall be waived, and no person, including the Class A Member, shall be entitled to any further distribution thereon from the Debtor's Estate. Not included in Released Claims are any obligations created by or arising out of the Settlement or any claims which federal or state law clearly provides may not be released by settlement.

28.     Upon final approval of the Settlement any individual proof of claim forms filed with the Bankruptcy Court by a Class A Member who does not opt-out of the Settlement shall be disallowed insofar as and only to the extent such proof of claim form relates to or arises out of any of the claims released in the Settlement Agreement~~, including any and all claims against the Debtor~~.

**How to Object or Opt-Out**

29.     **If you are satisfied with the proposed Settlement including the amount of your projected claim as ~~described herein~~set forth on Schedule 1 and Class Counsel's requested fees, you do not need to do anything.   The Debtor will mail your ~~Net~~ Allowed Priority Claim Amount, which amount remains subject to adjustment and withholding taxes on the Taxable Priority Claim Amount, in accordance with the Settlement Agreement.  The Unsecured Creditor Trust shall distribute your Allowed Unsecured Claim Amount in accordance with the Settlement Agreement and as set forth in the Plan and Confirmation Order.  The payments will be mailed to your last known address as indicated in the Debtor's books and records or to such address that you have updated with Class Counsel.  If you are concerned that Class Counsel does not have your current address, please promptly notify Class Counsel as follows:**

> **Via Mail: René S. Roupinian, Esq.**
> **Outten & Golden LLP**
> **685 Third Avenue, 25th Floor**
> **New York, NY 10017**
>
> **Via Email: rsr@outtengolden.com**

30.     **If, on the other hand, you believe that the proposed Settlement Agreement is unfair or inadequate, you are dissatisfied with your Allowed Priority Claim Amount or Allowed Unsecured Claim Amount, or you feel that Class Counsel's request for attorneys'**

12

fees should not be approved, you may object to the Settlement Agreement and/or Class Counsel's request for attorneys' fees by filing a detailed written statement with the Bankruptcy Court electronically in accordance with General Order 559 (which can be found at www.nyeb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest, by mailing the statement to the Clerk of the United States Bankruptcy Court, Eastern District of New York, Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722, and by sending copies of that statement to (1) Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attention: Sean C. Southard, Esq.; and (2) Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York, New York 10017, Attention: René S. Roupinian, Esq. Objections must be mailed so as to be received no later than [_____], 2018 at 5:00 p.m., and must include the caption of the action and your name, address, and telephone number, together with a detailed statement of the basis for your objection and whether you wish to be heard personally or by counsel at the final hearing at which the Parties will be requesting binding Bankruptcy Court approval of the Settlement and the award of attorneys' fees, as described above.

31.    You may also appear in person or by counsel at the final hearing described below.

### ~~How to Opt-Out~~

32.    **If you wish to be a member of the class, you do not need to do anything. The Debtor will mail your ~~Net~~ Allowed Priority Claim _Amount_, which amount remains subject to adjustment _and withholding taxes on the Taxable Priority Claim Amount_, in accordance with the Settlement Agreement. The Unsecured Creditor Trust shall distribute your Allowed Unsecured Claim _Amount_ in accordance with the Settlement Agreement and as set forth in**

the Plan and Confirmation Order.  The payments will be mailed to your last known address as indicated in the Debtor's books and records or to such address that you have updated with Class Counsel.  If you are concerned that Class Counsel does not have your current address, please promptly notify Class Counsel as follows:

> Via Mail: René S. Roupinian, Esq.
> Outten & Golden LLP
> 685 Third Avenue, 25th Floor
> New York, NY 10017
>
> Via Email: rsr@outtengolden.com

33.    **If you choose not to be bound by this Settlement Agreement and do NOTnot wish to participate in this WARN Action, and wish to be EXCLUDED and thereby reserve your rights under the WARN Act and NOT share in any recovery inof the benefits described herein, you may opt-out of Class A by filling out the WARN Action, sign theattached "Opt-Out Form" below," signing and mail it by First Class Mailmailing that form to Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York, New York 10017, (212) 245-1000, Attn: René S. Roupinian.  The form must be received by Ms. Roupinian no later than [_____], 2018. at 5:00 p.m. (the "Opt-Out Deadline").  All requests for exclusion received after that datethe Opt-Out Deadline will not be effective, and anysuch person who sends a late request will be a member of the class in the WARN ActionClass A and will be bound in the same way and to the same extent as all other Class A Members.**

34.    If you WISH to participate in this WARN Action, but you believe that the proposed Settlement Agreement is unfair or inadequate, you are dissatisfied with your Allowed Priority Claim or Allowed Unsecured Claim, or you feel that Class Counsel's request for attorneys' fees should not be approved, you may object to the Settlement Agreement and/or Class Counsel's request for attorneys' fees by filing a detailed written statement with the Bankruptcy Court

~~electronically in accordance with General Order 559 (which can be found at~~
~~www.nyeb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the~~
~~Bankruptcy Court's case filing system, and by all other parties in interest, by mailing the statement~~
~~to the Clerk of the United States Bankruptcy Court, Eastern District of New York,  Alfonse M.~~
~~D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722, and by sending~~
~~copies of that statement to (1) Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st~~
~~Street, 17th Floor, New York, New York 10036, Attention: Sean C. Southard, Esq.; and (2) Outten~~
~~& Golden LLP, 685 Third Avenue, 25th Floor, New York, New York 10017, Attention:  René S.~~
~~Roupinian, Esq.   Objections must be mailed so as to be received no later than [_____], 2018 at~~
~~5:00 p.m., and must include the caption of the action and your name, address, and telephone~~
~~number, together with a detailed statement of the basis for your objection and whether you wish~~
~~to be heard personally or by counsel at the final hearing at which the Parties will be requesting~~
~~binding Bankruptcy Court approval of the Settlement and the award of attorneys' fees, as described~~
~~above.~~

~~35.    You may also appear in person or by counsel at the final hearing described below.~~

**Final Hearing to Approve Settlement and Award Attorneys' Fees**

~~36.~~34.  The hearing for final consideration and approval of the Settlement Agreement and
the award of attorney's fees to Class Counsel is scheduled to take place on **[_____], at [_____],**
**before the Honorable Robert E. Grossman, United States Bankruptcy Judge, in Courtroom**
**860 of the United States Bankruptcy Court for the Eastern District of New York, Alfonse M.**
**D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722**.   That
hearing may be adjourned without further notice.  If you wish to determine if the hearing is
adjourned, you may contact Class Counsel at the address shown above.

## Other Information

37.35.  Any questions from members of Class A concerning this notice or the WARN Action should be directed to Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York, New York 10017, Attention:  René S. Roupinian, Esq.  All requests for more information, including a copy of the Settlement Agreement, should be sent by first-class mail to Ms. Roupinian to the address indicated above. A copy is also available on the internet at https://www.pacer.gov. ***Please do not call or contact the Court or the Debtor's Counsel for information.***

38.36.  While the Bankruptcy Court has approved the sending of this notice, such approval does not indicate, and is not intended to indicate, that the Bankruptcy Court has any opinion as to the respective claims or defenses asserted by the parties in the WARN Action.

## ~~Additional Information~~

~~39.~~      ~~If you wish information or assistance, please contact Khristine de Leon of Outten & Golden LLP at (212) 245-1000.~~ ***~~Please do not call or contact the Court or Defendant's Counsel for information.~~***

## **OPT-OUT FORM**

*Zaikowski v. Dowling College*
United States Bankruptcy Court for the Eastern District of New York
Adversary Case No. 8-16-08178-reg

I, the undersigned, have read the foregoing Notice and understand its contents.
I, the undersigned, **do not** want to be part of the Class Action or receive any benefits from the Class Action and do not wish to be bound by the outcome of the Class Action.

_____          _____
Signature                                                    Address

_____          _____
Name (printed or type)                              Telephone

_____
Date

If you do NOT wish to be included, send this completed form to:
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017

Attn: René S. -Roupinian

# SCHEDULE 1

Date

Name
Address

Your total estimated **Allowed Priority Claim Amount** is $____[1]

    Your estimated **Priority Medical Claim Amount** is $_____[2]

    Your estimated **Priority Dental Claim Amount** is $_____[3]

    Your estimated **Taxable Priority Claim Amount** is $_____[4]

Your total estimated **Allowed Unsecured Claim Amount**:  $_____[5]

Explanation of Terms:

"**Allowed Priority Claim**" – to the extent you are entitled to the following benefits, this claim category pays WARN Act damages, unpaid wages, severance, accrued and unused vacation, accrued and unused sick pay, unpaid medical claims, and unpaid dental claims earned in the 180 days prior to the cessation of the Debtor's business, at the full rate of 100 cents-on-the-dollar, up to the statutory cap of $12,850. "Allowed" means the Debtor does not contest the claim or amount.

"**Allowed Unsecured Claim**" – this claim category includes the above amounts that exceed $12,850.  To the extent you are entitled to the following benefits, it also includes unpaid wages, accrued and unused vacation, and accrued and unused sick pay that were earned more than 180 days prior to the cessation of the Debtor's business. These claims will be paid at a later date, and at a rate of fewer cents-on-the-dollar which have yet to be determined.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the accompanying notice.  Your total **Allowed Priority Claim Amount** consists of the **Priority Medical Claim Amount, Priority Dental Claim Amount**, and **Taxable Priority Claim Amount**.  No withholding taxes will be deducted from your **Priority Medical Claim Amount** and **Priority Dental Claim Amount.**  The balance of your **Allowed Priority Claim Amount** will be subject to payroll taxes and will, therefore, be paid net of employment and withholding tax deductions. Your **Allowed Priority Claim Amount** is subject to Court approval and any final adjustments that may be required.

[2] Your estimated **Priority Medical Claim Amount** consists of amounts which the Debtor failed to pay on account of medical claims which were covered under the terms of the Benefit Plan.  The Debtor hired a third-party administrator who processed these claims to determine the amounts that would have been payable under the Benefit Plan.

[3] Your estimated **Priority Dental Claim Amount** consists of amounts which the Debtor failed to pay on account of dental claims which were covered under the terms of the Benefit Plan.  The Debtor hired a third-party administrator who processed these claims to determine the amounts that would have been payable under the Benefit Plan.

[4] Your **Taxable Priority Claim Amount** is the difference between your total **Allowed Priority Claim Amount** and the sum of your **Priority Medical Claim Amount** and **Priority Dental Claim Amount**.

[5] Your estimated **Allowed Unsecured Claim Amount** will be paid subject to recoveries by the bankruptcy estate and will be paid net of employment and withholding tax deductions and is also subject to Court approval and any final adjustments that may be required.

**I.    How the Debtor and Class Counsel arrived at your Allowed Priority Claim Amount**:

1.    If you were terminated by the Debtor without cause on or about June 1, 2016 or within thirty (30) days of that date, or were terminated without cause as the foreseeable consequence of the mass layoff and/or closing by Debtor and did not receive 60 days' advance written notice, you are entitled to 60 additional days of pay, beyond your regular earned pay, as WARN Act damages, plus the value of your benefits for the 60-day WARN period.  The 60 days of WARN pay will be reduced by the number of days you continued to work, if any, after June 1, 2016. If you continued to work for 60 days after June 1, 2016, you are not entitled to any WARN Act damages.

The calculation of your WARN Act damages was based on reasonable payroll data maintained by the Debtor.  Your WARN Act damages was then reduced to 32.5 % to reflect the risks of a) litigation posed by the Debtor's asserted defenses to WARN Act liability, and b) collection due to the Debtor's bankruptcy.

2.    The Debtor and Class Counsel then analyzed any Non-WARN Act Claims you may have depending on your position with Dowling College at the time of your termination.

   a.   Faculty Members:
   Upon termination of employment, if you were a faculty member, you are entitled to the following:

      (i)    full pay and benefits from the period of July 20, 2016 through August 31, 2016; and

      (ii)    depending on whether you were tenured or non-tenured and your length of employment as a non-tenured faculty member, you are entitled to severance payments as follows: (i) a non-tenured faculty member employed for 1 to 2 years is entitled to 6 months' pay, (ii) a non-tenured faculty member employed for 2 to 4 years is entitled to 8 months' pay, (iii) a non-tenured faculty member employed for 4 to 7 years is entitled to 10 months' pay, and (iv) a tenured faculty member is entitled to 1 years' pay.

   b.   Local 153, AFL-CIO Members:

   Upon termination of employment, if you were a member of Local 153, you are entitled to the following:

      (i)    unused vacation prorated at your appropriate accrual rate for each full month earned in the 180 days prior to the cessation of the Debtor's business;

2

        (ii)     severance payment according to the following schedule:  a full-time employee with 1 year of full-time employment is entitled to receive (a) 2 weeks' pay if employed for more than 1 year but less than 5 years, (b) 3 weeks' pay if employed for 5 years but less than 10 years, or (c) 4 weeks' pay if employed for 10 years or more; and

        (iii)    two weeks' pay if notice of layoff is not provided two weeks prior to layoff.

  c.   Local 434, AFL-CIO Members:
Upon termination of employment, if you were a member of Local 434, you are entitled to the following:

        (i)     pro rata vacation pay for all unused vacation earned in the 180 days prior to the cessation of the Debtor's business;

        (ii)    sick time entitlement accrued for time worked and earned in the 180 days prior to the cessation of the Debtor's business; and

        (iii)    one weeks' notice of layoff.

  d.   Unaligned Employees:

Upon termination of employment, if you were not a member of any union, you are entitled to accrued and unused vacation earned in the 180 days prior to the cessation of the Debtor's business.

3.     Your estimated **Allowed Priority Claim Amount** as set forth on the first page of this schedule is subject to a cap of $12,850 pursuant to Section 507(a)(4) of the Bankruptcy Code.  What that means is that any amount owed to you which exceeds the $12,850 cap will be treated as a general unsecured claim and will be added to your estimated **Allowed Unsecured Claim Amount**, as discussed below.

4.     Your estimated total **Allowed Priority Claim Amount** consists of, among other things and to the extent applicable, your **Priority Medical Claim Amount** and **Priority Dental Claim Amount**. Your **Priority Medical and Dental Claim Amounts** are not subject to taxes or payroll deductions.  However, the remaining portion of your **Allowed Priority Claim Amount**, the **Taxable Priority Claim Amount**, is subject to payroll deductions. Prior to payment of the **Taxable Priority Claim Amount**, deductions will be taken for applicable taxes and withholdings as required by federal, state, and local law (in accordance with the provisions of Section 6 of the Settlement Agreement).  A Form W-2 reflecting the reductions for applicable taxes and withholdings will be issued to you. You should consult a tax professional regarding your tax obligations in connection with your settlement payment.

5.    Assuming the Court approves the settlement and the Dowling bankruptcy Plan is confirmed, your **Priority Medical Claim Amount**, **Priority Dental Claim Amount** and **Taxable Priority Claim Amount** (net of payroll deductions) will be mailed to you no later than 60 days from the date the order confirming the Debtor's bankruptcy Plan is final.

**II.    How the Debtor and Class Counsel arrived at your Allowed Unsecured Claim Amount**:

1.    In addition to any amounts from your **Allowed Priority Claim Amount** which exceed the $12,850 cap, you may also be entitled to the following Non-WARN Act Claims depending on your position with Dowling College at the time of your termination:

a.    Faculty Members:

Upon termination of employment, if you were a faculty member, you are entitled to the wage reduction imposed upon the faculty member between January 2, 2015 and May 21, 2015.

b.    Local 153, AFL-CIO Members

Upon termination of employment, if you were a member of Local 153, you are entitled to the following:

(i)    unused vacation prorated at your appropriate accrual rate for each full month earned in the 2015-2016 fiscal year, excluding the 180 days prior to the cessation of the Debtor's business; and

(ii)    twenty percent wage reduction imposed upon the union member between June 22, 2012 and August 30, 2012.

c.    Local 434, AFL-CIO Members:

Upon termination of employment, if you were a member of Local 434, you are entitled to the following:

(i)    pro rata vacation pay for all unused vacation earned in the 2015-2016 fiscal year, excluding the 180 days prior to the cessation of the Debtor's business; and

(ii)    sick time entitlement accrued for time worked and earned in the 2015-2016 fiscal year, excluding the 180 days prior to the cessation of the Debtor's business.

      d.   Unaligned Employees:

Upon termination of employment, if you were not a member of any union, you are entitled to the following:

    (i)       accrued and unused vacation earned in the 2015-2016 fiscal year, excluding the 180 days prior to the cessation of the Debtor's business; and

    (ii)     twenty percent wage reduction imposed upon you between May 25, 2012 and August 2, 2012.

2.     Your estimated **Allowed Unsecured Claim Amount** is subject to payroll deductions.  Prior to payment, deductions will be taken for applicable taxes and withholdings as required by federal, state, and local law (in accordance with the provisions of Section 6 of the Settlement Agreement).  A Form W-2 reflecting the reductions for applicable taxes and withholdings will be issued to you. You should consult a tax professional regarding your tax obligations in connection with your settlement payment.

3.     Payment of your estimated **Allowed Unsecured Claim Amount** is subject to Court approval of the settlement, confirmation of the Debtor's bankruptcy Plan, and the estate recovering funds sufficient to make a distribution to holders of allowed unsecured claims.  Assuming those conditions are met, a percentage of your **Allowed Unsecured Claim Amount**, net of payroll deductions, will be mailed to you.  We do not have an estimate yet, as to the timing or amount of payment of allowed unsecured claims.

Should you have any questions regarding the above, please contact Class Counsel, Outten & Golden LLP attention attorney René Roupinian at rsr@outtengolden.com or by calling (212) 245-1000.

Please do not call or contact the Court or Debtor's Counsel.