**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                                          :    Chapter 11
                                                                                    :
DOWLING COLLEGE,                                              :
f/d/b/a DOWLING INSTITUTE,                                  :
f/d/b/a DOWLING COLLEGE ALUMNI            :    Case No. 16-75545 (REG)
ASSOCIATION,                                                      :
f/d/b/a CECOM,                                                      :
a/k/a DOWLING COLLEGE, INC.,                          :
                                                                                    :
                                            Debtor.                   :
---------------------------------------------------------------x

**STIPULATION AND CONSENT ORDER APPROVING AND AUTHORIZING THE TURNOVER OF THE DEBTOR'S FEDERAL PERKINS LOAN PORTFOLIO**

**RECITALS**

**WHEREAS**, upon the motion dated June 16, 2017 (the "Motion") [DE 347],[1] Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), moved this Court for an order approving and authorizing procedures for the turnover of the Debtor's Federal Perkins Loan portfolio (the "Perkins Procedures"); and

**WHEREAS,** the Motion was granted on an interim basis to the extent set forth in that certain Interim Order Approving and Authorizing the Turnover of the Debtor's Federal Perkins Loan Portfolio dated as of September 27, 2017 [Docket No. 407] (the "Interim Order") and for the reasons stated on the record; and

**WHEREAS,** consistent with the Interim Order, the Debtor has taken significant steps to assign the ownership of and transfer the possession of all Student Loans to the DOE in a manner consistent with the HEA and other pertinent laws and regulations (the "Portfolio Assignment");

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

and

**WHEREAS,** the Portfolio Assignment authorized by the Interim Order did not preclude, the Debtor, the Committee, or DOE, from making further arguments that the Debtor or its estate is either entitled to or not entitled to associated value of the Perkins Student Loans by virtue of their either being considered property of the Debtor's estate under Section 541 of the Bankruptcy Code or not; and

**WHEREAS**, the Interim Order prohibited the Debtor from transferring any portion of the Perkins Loan Funds[2] to the DOE without further Order of this Court; and

**WHEREAS,** since entry of the Interim Order, the parties hereto have met and conferred in good faith concerning (1) the outstanding claims of DOE, including the proof of claim filed by DOE (the "DOE Claim"); (2) certain open issues related to the Portfolio Assignment; (3) the rights and obligations of the respective parties under applicable non-bankruptcy law in relation to the Portfolio Assignment and the Perkins Loan Funds; (4) the impact of bankruptcy law and potential conflict with Federal non-bankruptcy law in relation to the same; and (5) costs and expenses of the Debtor's estate associated with compliance with applicable non-bankruptcy law; and

**WHEREAS**, as of August 31, 2018, the Perkins Loan Funds totaled $460,983.07, inclusive of interest accrued through that date; and

**WHEREAS,** the following amounts must be deducted from the Perkins Loan Funds before any distribution to DOE can take place:

    (a) $1,287.98 in refunds owed to former Dowling students on account of overpayments on loans;

    (b) $3,791.83 in post-assignment payments received by the Debtor which must be

---

[2] Perkins Loan Funds is defined in the Motion as "Student Loan Funds".

     turned over to DOE (the "<u>Post-Assignment Payments</u>"); and

  (c) $353.90 in services rendered by Conduent in relation to the Portfolio Assignment; and

  (d) $600.00 reserve for bank charges/account maintenance fees until all checks have cleared and the account is closed; and

  **WHEREAS**, after these adjustments are made, there remains a net balance of the Perkins Loan Funds in the amount of $454,949.36 (the "<u>Net Perkins Loan Funds</u>"); and

  **WHEREAS**, based upon annual filings made by the Debtor, the Federal Capital Contribution to the revolving Perkins fund that was used to make Perkins loans to qualifying students was $1,774,874.00 and the Institutional Capital Contribution by Dowling to the revolving Perkins fund was $330,067.00; and

  **WHEREAS,** certain of the loans in the Debtor's Federal Perkins Loan portfolio were not assignable under the applicable Perkins Procedures and outside of bankruptcy the Debtor would have an obligation to purchase those loans from the program and pay the entire principal balance to DOE; and

  **WHEREAS**, the DOE Claim, as filed, asserted aggregate claims of not less than approximately $22,899,773.37 and included claims for (1) closed school discharges of former student debt obligations ("<u>Loan Discharge Claims</u>") of at least $2,629,452.00, (2) failure to account by way of Close Out audit for (a) direct loans of at least $13,951,644.00, (b) Pell grants of at least $2,033,770.00, (c) Supplemental Educational Opportunity Grants of at least $101,000.00 and (d) Federal Work Study funds of at least $237,556.00, (3) DOE's share of the Perkins Loan Funds calculated to be at least $141,372.00, (4) and a facilities loan of $1,296,990.00; and

  **WHEREAS**, DOE has determined to modify the asserted DOE Claim, wherein the Loan

Discharge Claims will increase to approximately $4,027,424, as set forth on that draft amended proof of claim annexed hereto as Exhibit A (the "Amended DOE Claim"); and

**WHEREAS**, the parties recognize that litigating the merits of their disputes concerning the foregoing is not in the best interest of either and they desire to enter into a settlement as reflected herein which will avoid the delays and expense of litigation;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Based on the percentage of funds contributed by DOE and Dowling to the revolving fund, the Debtor shall transfer funds totaling $383,610.65 (plus any final distribution amount upon closing of the Perkins Loan Funds account) to DOE in full and final satisfaction of any claim by the DOE directly associated with the Perkins Loan Funds. In addition, Dowling shall pay the amount of the $3,791.83 on account of the Post-Assignment Payments to the DOE.

2. Nothing in this Stipulation shall be interpreted to reduce or compromise any portion of DOE claim not directly associated with the Perkins Loan Fund.

3. Within five (5) business days from DOE's receipt of the funds set forth in Paragraph 1, DOE shall file the Amended DOE Claim, in substantially similar form to that attached as Exhibit A.

[*Signature Page Follows*]

| | |
|---|---|
| KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP | RICHARD P. DONOGHUE UNITED STATES ATTORNEY |
| By:  */s/ Sean C. Southard*<br>        Sean C. Southard<br>        Lauren C. Kiss<br>200 West 41st Street<br>17th Floor<br>New York, New York 10036<br>(212) 972-3000 | By:  */s/ James H. Knapp*<br>        James H. Knapp<br><br>Assistant United States Attorney<br>610 Federal Plaza<br>Central Islip, New York 11722<br>(631) 715-7879 |
| *Attorneys for the Debtor* | *Attorneys for DOE* |

***IT IS HEREBY SO ORDERED***:

# **<u>Exhibit A</u>**

**Fill in this information to identify the case:**

Debtor 1       Dowling College

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of New York

Case number    16-75545

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   United States Department of Education
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor _____

2. **Has this claim been acquired from someone else?**

   ☑ No
   ☐ Yes. From whom? _____

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

   Where should notices to the creditor be sent?

   Natasha Varnovitsky
   Name

   400 Maryland Ave Ste, SW, Ste 6E215
   Number    Street

   Washington        DC        20202
   City              State     ZIP Code

   Contact phone  202 205-3529

   Contact email  natasha.varnovitsky@ed.gov

   Where should payments to the creditor be sent? (if different)

   Name _____

   Number    Street _____

   City    State    ZIP Code

   Contact phone _____

   Contact email _____

   Uniform claim identifier for electronic payments in chapter 13 (if you use one):

   __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

4. **Does this claim amend one already filed?**

   ☐ No
   ☑ Yes. Claim number on court claims registry (if known) _____    Filed on  05/25/2017
                                                                                MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☑ No
   ☐ Yes. Who made the earlier filing? _____

Official Form 410                          Proof of Claim                          page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**
☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**    $_____ 7,752,056.00_. **Does this amount include interest or other charges?**
☐ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Debtor's participation in Title IV of the HEA. See attachment.

**9. Is all or part of the claim secured?**
☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                    $_____
**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed) _____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☐ Yes. Check all that apply:

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.  $_____

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
                  MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

Name: Sylvester Osineme
      First name    Middle name    Last name

Title: Supervisor, Accounts Receivable and Bank Management Group

Company: Office of the Chief Financial Officer, U.S. Department of Education
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 550 12th SW
         Number    Street
         Washington,          DC        20202
         City                 State     ZIP Code

Contact phone: 202 245-8081        Email: sylvester.osineme@ed.gov

**Attachment to the United States' Proof of Claim Filed by the
Department of Education in *In re Dowling College, Inc.*, Case No. 8-16-75545-reg**

1.  The United States Department of Education ("Education") makes grants and loans under student financial assistance programs authorized under Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ 1070-1099c-2. At the time of its closing, debtor Dowling College, Inc. ("Dowling") participated in the Title IV programs under a Program Participation Agreement ("PPA"), which, among other things, incorporates Education's regulations implementing the Title IV programs. As set forth below, Education's claims arise from Dowling's participation in the Title IV programs.

Closed-School Discharges

2.  Under Title IV, Education makes loans directly to students or their parents for the students to pursue higher education. Education sends proceeds of these loans to participating institutions. Generally, Education discharges direct student loans for students affected by a school's closure. "If a borrower who received, on or after January 1, 1986, a loan made, insured, or guaranteed under this part and the student borrower, or the student on whose behalf a parent borrowed, is unable to complete the program in which such student is enrolled due to the closure of the institution . . . , then the Secretary shall discharge the borrower's liability on the loan (including interest and collection fees) . . . ." 20 U.S.C. § 1087(c)(1); *see* 20 U.S.C. § 1087a(b)(2) (generally incorporating by reference into Education's direct loan program those statutory provisions for "loans made to borrowers under section 1078 of this title," i.e., under the Federal Family Education Loan Program). Thus, a borrower may obtain discharge of his or her "obligation to repay a Direct Loan . . . if the borrower (or the student on whose behalf a parent borrowed) did not complete the program of study for which the loan was made because the school at which the borrower (or student) was enrolled closed . . . ." 34 C.F.R. § 685.214(a)(1); *see also* 34 C.F.R. § 682.402(d). In applying for a discharge, among other things, the borrower must attest that the borrower (or the student on whose behalf a parent borrowed) "[d]id not complete the program of study through a teach-out at another school or by transferring academic credits or hours earned at the closed school to another school." 34 C.F.R. § 685.214(c)(1)(i)(C). If Education grants a discharge, the borrower is relieved of any obligation to repay the loan and is eligible for reimbursement of amounts already paid. *Id.* § 685.214(b).

3.  To date, Education has granted approximately $ 4,027,424.00 in closed-school discharges of debt incurred by former Dowling students for direct loans. Moreover, Education continues to receive and review closed-school discharge applications and reserves the right to assess the liability for those discharges as they are granted.

4.  Dowling College is liable to Education for these discharges. Under Title IV, Education has a right to recover closed-school discharges from Dowling College. *See* 20 U.S.C. §§ 1087(c)(1) (requiring Secretary of Education to "pursue any claim available to [discharged borrower for student loan] against the institution") and 1087(c)(2) ("A borrower whose loan has

been discharged pursuant to this subsection shall be deemed to have assigned to the United States the right to a loan refund up to the amount discharged against the institution and its affiliates and principals."); 34 C.F.R. § 685.214(e)(1) (providing that upon Education's discharge of a borrower's loan, "the borrower is deemed to have assigned to and relinquished in favor of the Secretary [of Education] any right to a loan refund (up to the amount discharged) that the borrower (or student) may have by contract or applicable law with respect to the loan or the enrollment agreement for the program for which the loan was received, against the school"); *College of Visual Arts*, 2015 WL 6396241, at *8 (Dep't of Educ., Office of Hearings and Appeals, July 20, 2015) (holding, based on 20 U.S.C. §§ 1087(c) and 1099c(e)(1)(B), that Education has a direct claim to recover closed-school discharges). Dowling student borrowers who could not obtain a degree because Dowling closed had a right to recover from Dowling amounts of the direct loans made to them by Education, including without limitation because Dowling breached its enrollment agreements with the students and because Dowling was unjustly enriched by retaining these amounts. In addition, Education has a right to recover the closed-school discharges from Dowling as damages caused by Dowling's breach of the PPA, including without limitation its failure to provide an eligible program to students.

5. Due to the ongoing process of receiving, reviewing, and deciding applications for these discharges, the full amount of Education's claim based upon closed-school discharge is unliquidated at this time.

Failure to Submit a Close-Out Audit Report

6. When an institution's participation in Title IV ends, among other things, the institution must arrange for an independent audit of all Title IV funds received, and submit the resulting "close-out" audit report to Education within 90 days after the end of its participation. 34 C.F.R. § 668.26(b)(2); *see also* 34 C.F.R. § 668.82(b)(1) ("In the capacity of a fiduciary—(1) A participating institution is subject to the highest standard of care and diligence in administering the programs and in accounting to the Secretary for the funds received under those programs.").

7. Dowling College ceased to participate in Title IV when it closed on August 31, 2016. A close-out audit report for the period of July 1, 2015 through June 31, 2016 was due to Education by March 31, 2017. To date, no audit report has been submitted. Until the audit report is submitted and approved by Education, Education has a claim against Dowling relating to Title IV funds received during the unaudited period.

8. With respect to funds disbursed to Dowling College for Direct loans, Pell grants, Supplemental Educational Opportunity Grants ("SEOGs"), and Federal Work Study ("FWS") funds, Education has a claim against Dowling College arising from Dowling's obligation to repay such funds received during the unaudited period:

- Direct loans: $20,946 for the 2014-2015 award year.

- Pell grants: $2,037,476 ($6,630 for the 2014-2015 award year and $2,030,846 for the 2015-2016 award year).

- SEOGs: $101,000 for the 2015-2016 award year.

- FWS funds: $268,220 ($237,557 for the 2015-2016 award year and $30,663 for the 2014-2015 award year).

College Housing and Academic Facilities Loan.

9. This claim states debtor's liability for a loan obtained by Dowling College from Education under the College Facilities Loan Program for the construction of Kramer Science Building, 150 Idle Hour Boulevard, Oakdale, NY 11769, on February 18, 1990. *See* Attachment A (Mortgage Note & Loan Agreement), on February 18, 1990. Dowling College signed a College Facilities Program Loan Agreement in the amount of $3,000,000. As part of the Loan Agreement Dowling College agreed to "sign and deliver to ED ... a security agreement and financing statement... covering all property ... purchased with loan proceeds." In accordance with this agreement Dowling College executed a mortgage in favor of Education in the amount of $3,000,000. The current balance on that loan obligation is $1,296,990, including $ 1,179,667.71 in principal and $97,322.57 in interest. The Order approving the sale of this property was entered on April 12, 2017.

Miscellaneous Provisions

10. The filing of this proof of claim is not: (a) a waiver or release of Education's rights against any person, entity or property; (b) a waiver or release of any right or claim of Education arising out of any other claim, of any nature whatsoever, which Education has against Daniel Webster; (c) a waiver or release of any rights of Education under the regulations implementing Title IV, any provisions of the Bankruptcy Code or other applicable non-bankruptcy law; (d) an election of any remedy to the exclusion, express or implied, of any other remedy; (e) a waiver or release of any rights of Education to have any and all final orders in any and all noncore matters entered only after de novo review by a United States District Court; (f) a waiver or release of any rights of Education to trial by jury in any proceeding as to any and all matters so triable; or (g) a waiver or release of any rights of Education to have the reference in this matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal. All of such rights are hereby expressly reserved by Education, without exemption and with no purpose of confessing or conceding any of the foregoing in any way by this filing or by any other participation in this case.

11. Education expressly reserves the right to amend or withdraw this proof of claim for any legally permissible reason whatsoever.

12. Education preserves its rights to setoff and recoupment.

<u>Summary of Liabilities</u>

| | |
|---|---:|
| Closed School Discharges | $4,027,424 |
| Failure to Submit a Close-Out Audit Report | |
|     Direct loans | $20,946 |
|     Pell grants | $2,037,476 |
|     SEOG | $101,000 |
|     FWS | $268,220 |
| College Housing and Academic Facilities Loan | <u>$1,296,990</u> |
| **Total** | **<u>$7,752,056</u>** |