**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Joseph C. Corneau
Lauren C. Kiss

*Attorneys for the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DOWLING COLLEGE, | : | Case No. 16-75545 (REG) |
| f/d/b/a DOWLING INSTITUTE, | : | |
| f/d/b/a DOWLING COLLEGE ALUMNI | : | |
| ASSOCIATION, | : | |
| f/d/b/a CECOM, | : | |
| a/k/a DOWLING COLLEGE, INC., | : | |
| | : | |
| Debtor. | : | |

-------------------------------------------------------------x

### SUPPLEMENT TO THE FIRST AMENDED PLAN OF LIQUIDATION OF DOWLING COLLEGE PURSUANT TO CHAPTER 11 OF THE BANRUPTCY CODE, AS MODIFIED

Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case") submits this supplement (the "Plan Supplement") in support of confirmation of the First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the United States Bankruptcy Code, as Modified (the "Plan"). Capitalized terms used but not defined herein have the meanings set forth in the Plan. The documents contained in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. These documents have not yet been approved by the Bankruptcy Court. If the Plan is confirmed, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

The Plan Supplement contains the following documents, as may be amended, modified or supplemented from time to time by the Debtor in accordance with the Plan:

**Exhibit A**:     Plan Administrator Agreement

**Exhibit B**:     Unsecured Creditor Trust Agreement

Dated:   New York, New York
        November 30, 2018

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**

By:   /s/ Sean C. Southard  _____
        Sean C. Southard
        Joseph C. Corneau
        Lauren C. Kiss
        200 West 41st Street, 17th Floor
        New York, New York 10036
        Tel: (212) 972-3000
        Fax: (212) 972-2245
        Email: ssouthard@klestadt.com
               jcorneau@klestadt.com
               lkiss@klestadt.com

        *Attorneys for the Debtor and*
        *Debtor-in-Possession*

## **EXHIBIT A**

(Plan Administrator Agreement)

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement ("Agreement") is made this ___ day of December, 2018 (the "Effective Date"), by and between Dowling College (the "Debtor") and Robert S. Rosenfeld (the "Plan Administrator," and prior to the Effective Date, the "CRO"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the *First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modified* dated October 31, 2018, as the same has and may from time to time be amended or modified (the "Plan").

## RECITALS:

A.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

B.      Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC ("RSR") to perform the functions and hold the title of CRO.

C.      On December __, 2018, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order Pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020 Confirming First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modified* (the "Confirmation Order").

D.      On December __, 2018, the conditions precedent to the Effective Date set forth in section 7.2 of the Plan were satisfied or waived, and the Debtor certified that the Effective Date had occurred.

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, the parties hereto agree as follows:

# ARTICLE I

## ACCEPTANCE OF POSITION

**1.1**     **Acceptance.**

By signing this Agreement, Robert S. Rosenfeld accepts appointment as the Plan Administrator and agrees to perform all duties and obligations as and to the extent set forth in the Plan, this Agreement, orders of the Bankruptcy Court, and applicable law.

# ARTICLE II

## THE PLAN ADMINISTRATOR

**2.1**     **Powers and Duties**.

Upon the Effective Date, the Plan Administrator shall have exclusive authority to act for the Debtor in accordance with the terms of this Plan. The powers, rights and responsibilities of the Plan Administrator, until such time he is discharged in accordance with this Agreement shall include, but are not be limited to:

    i.     to invest Cash in accordance with § 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims (other than General Unsecured Claims, which authority is vested in the Unsecured Creditor Trust) and pay taxes and other obligations owed by the Debtor in connection with the wind-down of the Estate in accordance with the Plan;

    ii.     open and close bank accounts for the Debtor in connection with the Debtor's winddown process;

    iii.     to be sole signatory for the Debtor's bank accounts and be responsible party for executing documents on behalf of the Debtor in connection with the Debtor's winddown;

    iv.     to engage attorneys, consultants, agents, employees and all professional persons (including the Debtor's professionals), to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

    v.     to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Debtor's Estate;

vi.  with the consent of the DIP Lenders and Prepetition Bond Trustees that have a Lien on remaining Assets (other than Unsecured Creditor Trust Assets) and on notice to (a) the other DIP Lenders, (b) Prepetition Bond Trustees and (c) parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 9010(b), to dispose of, and deliver title to or otherwise realize the value of, all the remaining Assets (other than Unsecured Creditor Trust Assets);

vii.  to coordinate the storage and maintenance of the Debtor's books and records in accordance with prior orders of the Court;

viii.  to oversee compliance with the Debtor's accounting, finance and reporting obligations;

ix.  to prepare the operating reports required by the Plan and process and oversee disbursement of the Debtor's quarterly U.S. Trustee fees;

x.  to oversee the filing of final tax related filings, audits and other corporate dissolution documents if required; and have authority to sign tax returns on behalf of the Debtor and be responsible party for speaking with the taxing authorities; for avoidance of doubt, the Plan Administrator shall be an authorized party of the Debtor for taxing authority communications;

xi.  subject to Section 9.15 of the Plan, to object to Claims against the Debtor;

xii.  subject to Section 9.15 of the Plan, upon agreement with the Unsecured Creditor Trustee, to compromise and settle Claims by and against the Debtor;

xiii.  to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Debtor.

xiv.  to implement and/or enforce all provisions of the Plan;

xv.  to implement and/or enforce all agreements entered into prior to the Effective Date;

xvi.  abandon any Assets (other than Unsecured Creditor Trust Assets) without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate; provided, however, that with respect to Non-Estate Assets and Restricted Assets, any such abandonment is subject to the Non-Estate Property Procedures Order;

xvii.  to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan;

xviii.  to the extent the Debtor retains any Cash after satisfaction of all of its and the Plan Administrator's obligations pursuant to the Plan, and only if the Unsecured Creditor

Trust has not yet paid all Unsecured Claims in full, to transfer such remaining Cash to the Unsecured Creditor Trust; and

xix.    to file an application to close the Chapter 11 Case upon substantial consummation.

In carrying out the foregoing powers and obligations, the Plan Administrator shall reasonably consult with the Prepetition Bond Trustees, ACA, and the Unsecured Creditor Trustee.  With respect to matters set forth herein that require the Plan Administrator to obtain the consent of the Prepetition Bond Trustees or the Unsecured Creditor Trustee, the Plan Administrator shall obtain such consent prior to carrying out such powers and obligations.

### 2.2    Compensation of Plan Administrator.

The Plan Administrator shall be compensated from the Administrative Reserve. Unless otherwise agreed in writing, the Plan Administrator and employees of RSR shall bill on an hourly basis at their respective normal hourly rate and shall be reimbursed for all reasonable out-of-pocket expenses incurred in carrying out the terms of the Plan and this Agreement.  Any professionals retained by the Plan Administrator shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred by such professionals.  The payment of the fees and expenses of the Plan Administrator and the Plan Administrator's retained professionals is not subject to the approval of the Bankruptcy Court.

### 2.3    Succession Matters.

In the event the Plan Administrator dies, is terminated, or resigns for any reason, the Prepetition Bond Trustees and ACA, in consultation with the Unsecured Creditor Trustee, shall designate a successor. If the Prepetition Bond Trustees and ACA cannot agree on a successor Plan Administrator, each of the Prepetition Bond Trustees and ACA may nominate a successor Plan Administrator and request by motion on notice required by the Bankruptcy Rules that the

Bankruptcy Court appoint a successor Plan Administrator from such nominees. Such successor Plan Administrator shall be deemed to succeed the Plan Administrator in all respects, without need for further order of the Bankruptcy Court. In the event of resignation or removal of the Plan Administrator, the departing Plan Administrator shall promptly (a) execute and deliver such documents, instruments and other writings as reasonably requested by the successor Plan Administrator or as ordered by the Bankruptcy Court; (b) turn over to the successor Plan Administrator all property of the Debtor's Estate (other than Unsecured Creditor Trust Assets) in his or her possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Debtor; and (c) otherwise assist and cooperate in effecting the assumption of his or her obligations and functions by the successor Plan Administrator. The successor Plan Administrator may, in his or her discretion, retain such professionals as he or she deems necessary, including the Professionals of the departing Plan Administrator. If the Plan Administrator is replaced, the Professionals retained by the Plan Administrator shall be entitled to payment of their reasonable, undisputed fees and expenses from the Administrative Reserve through the date of the Plan Administrator's replacement. Upon the effectiveness of the succession to another Plan Administrator, the Plan Administrator Robert S. Rosenfeld and RSR Consulting, LLC shall be discharged and released from any and all further duties and obligations. Any unpaid fees and expenses incurred by Robert S. Rosenfeld and RSR Consulting, LLC up to the effectiveness of the successor Plan Administrator, shall remain due and payable.

2.4    **Indemnification**.

The Plan Administrator and his designees, employees or professionals or any duly designated agent or representative of the Plan Administrator shall not be liable for any act or

omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court.    The Plan Administrator may, in connection with the performance of his functions, and in his sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys, accountants, financial advisors and agents, or any Final Order of the Bankruptcy Court. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and his determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court. The Debtor's Estate shall indemnify and hold harmless the Plan Administrator and his or her designees and Professionals, and all duly designated agents and representatives (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; provided however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

## ARTICLE III

## IMPLEMENTATION OF PLAN

### 3.1    Funding of Plan Administrator's Activities.

On or before the Effective Date, the Plan Administrator, Prepetition Bond Trustees and ACA shall agree to a reasonable wind-down budget, which shall include the Administrative Reserve and Disputed Claims Reserves, if any (the "Wind-Down Budget"). The duties and obligations of the Plan Administrator hereunder are subject to the Wind-Down Budget.

### 3.2    Establishment of Reserves.

On the Effective Date (or as soon thereafter as practicable), the Plan Administrator shall establish the following accounts and reserves (the "Reserves") in accordance with section 5.7 of the Plan:

(a)    Administrative Reserve. On or prior to the Effective Date, the Administrative Reserve shall be established by the Debtor with the consent of the Prepetition Bond Trustees, ACA, and the Committee or the Unsecured Creditor Trustee, as applicable.  If the Plan Administrator determines that additional funding of the Administrative Reserve is required, from time to time, following the Effective Date, such funding shall be made from available Cash, if any, with the prior consent of the Prepetition Bond Trustees and ACA. The Administrative Reserve shall be used to pay the Post-Confirmation Expenses, including, without limitation, costs and expenses of professionals or other advisors retained by the Plan Administrator. For the avoidance of doubt, the fees and expenses of the Unsecured Creditor Trust, the Unsecured Creditor Trustee, and the Unsecured Creditor Trust Oversight Committee, and their respective professionals, shall be paid solely from the Unsecured Creditor Trust Assets.

(b)    <u>Disputed Claim Reserves</u>. As soon as practicable following the Effective Date, Disputed Claim Reserves shall be established by the Plan Administrator, if and as required; provided, however, that the Plan Administrator shall not have any obligation to fund the Disputed Claim Reserves until, at the latest, immediately prior to the making of a Distribution to holders of Allowed Claims. The Disputed Claim Reserves shall be funded from available Cash in the Debtor's Estate in an amount equal to the amount holders of Disputed Claims would have otherwise been entitled but for the dispute. The assets in the Disputed Claim Reserves shall be held separately from other assets held by the Plan Administrator subject to an allocable share of all expenses and obligations, on account of Disputed Claims. Funds shall be removed from the Disputed Claims Reserves as the Disputed Claims are resolved, which funds shall be distributed as provided in section 9.20 of the Plan. The Plan Administrator shall pay, or cause to be paid, out of the funds held in the Disputed Claims Reserve, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in the Disputed Claims Reserve.   The Plan Administrator shall file, or cause to be filed, any tax or information return related to the Disputed Claims Reserve that is required by any federal, state, or local taxing authority.

**3.2    <u>Distributions</u>.**

(a)    <u>Generally</u>. The Plan Administrator shall make Distributions on account of Administrative Expense Claims, the DIP Term Loans, Priority Tax Claims, Professional Fee Claims, Class 1 (Prepetition Series 1996 Bonds), Class 2 (Prepetition Series 2002 Bonds), Class 3 (Prepetition Series 2006 Bonds), Class 4 (Prepetition Series 2015 Bonds), Class 5 (Other Secured Claims) and Class 6 (Priority Non-Tax Claims) in accordance with Article 4 of the Plan. For the avoidance of doubt, the Plan Administrator shall have no responsibility to make

Distributions to Class 7 General Unsecured Claims, which responsibility lies with the Unsecured Creditor Trust as provided in the Plan.

**3.3** **Compliance with Tax Withholding and Reporting Requirements.**

With respect to all payments and distributions made by the Plan Administrator under the Plan, the Plan Administrator shall comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Plan Administrator retains accountants, shall have the right to rely on such accountants' advice in connection with all tax matters.

**3.4.** **Disposition of Records.**

The Plan Administrator shall dispose of the Debtor's Records (as defined in the Records Disposition Order) consistent with the Records Disposition Order. For the avoidance of doubt, the Plan Administrator shall have no obligation to and will not be responsible for answering or responding to inquiries by former students related to grades, degrees, transcripts or any other related student record matters.

**3.5** **Post-Confirmation Reports and Fees.**

(a)     Reporting to Office of the United States Trustee. Following the Effective Date and until the Chapter 11 Case is closed, not less than once every ninety (90) days, the Plan Administrator shall file all post-Effective Date reports required during such periods and shall pay from the Administrative Reserve all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. §1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

(c)     Reporting to Prepetition Bond Trustees. Unless otherwise agreed by the Plan Administrator and the Prepetition Bond Trustees, following the Effective Date and until the

Chapter 11 Case is closed or the Claims in Classes 1, 2, 3, 4, 5, and 6 are paid in full, whichever comes first, the Plan Administrator shall provide periodic reports in a form reasonably agreed to by the Prepetition Bond Trustees, on a monthly basis, or upon reasonable request, with respect to the disposition of Assets remaining in the Estate, the Estate's current Cash, the costs incurred in completing the wind-down of the Estate, and such other information reasonably requested by the Prepetition Bond Trustees or any one of them.

   3.6    **Relationship to Plan**.

   The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control; provided, however, that provisions of this Agreement adopted by amendment and approved by the Bankruptcy Court following substantial consummation (as such term is used in Section 1127(b) of the Bankruptcy Code) shall control over provisions of the Plan.

## ARTICLE IV

## RESIGNATION AND TERMINATION

   4.1    **Resignation**.

   The Plan Administrator may resign by giving no less than thirty (30) days' prior written notice to the Prepetition Bond Trustees and ACA and the filing of such notice with the Bankruptcy Court.

### 4.2    **Discharge**.

Notwithstanding anything to the contrary in this Agreement, the Plan Administrator:  (a) shall have no further duties or obligations of any kind whatsoever, and shall automatically be released and discharged from any and all of them, upon the depletion of Administrative Reserve; (b) shall have no duty or obligation to undertake any action, or refrain from undertaking any action, if it appears to him, in his reasonable discretion, that there will be insufficient Assets for him to pay the costs or expenses of such action or inaction; and (c) shall only be required to store or otherwise maintain books and records, other than the records, if any, referenced in paragraph 3.4, above, for any longer than two (2) years from such discharge or release.

### 4.3    **Automatic Termination**.

This Agreement shall terminate automatically upon the closing of the Chapter 11 Case.

## ARTICLE V

## MISCELLANEOUS PROVISIONS

### 5.1    **Descriptive Headings**.

The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

### 5.2    **Governing Law**.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

### 5.3    **Counterparts; Effectiveness**.

This Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement. This Agreement shall

become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

      5.4      **Severability; Validity**.

If any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

      5.5      **Notices**.

All notices, requests and demands by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, (iii) reputable overnight delivery service, all charges prepaid, or (iv) electronic mail, and shall be deemed to have been given when received and confirmed by telephone or reply email by the following parties at the following addresses (or such other addresses as may be given):

If to the Plan Administrator:

Robert S. Rosenfeld
RSR Consulting, LLC
1330 Avenue of the Americas, Suite 23A
New York, New York 10019
Email: rsrosenfeld@rsrconsulting.com

With copy to:

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attn: Sean C. Southard
      Lauren C. Kiss
Email: ssouthard@klestadt.com
      lkiss@klestadt.com

**5.6**    **Retention of Jurisdiction**.

As provided in Article 11 of the Plan, the Bankruptcy Court shall retain jurisdiction over the Estate and the Debtor to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.


Dowling College

By: _____

        Chairman, Board of Trustees

Plan Administrator

By: _____
        Robert S. Rosenfeld

# **EXHIBIT B**

(Unsecured Creditor Trust Agreement)

## UNSECURED CREDITOR TRUST AGREEMENT

This Unsecured Creditor Trust Agreement (the "**Unsecured Creditor Trust Agreement**") is made and entered into, as of the ___ day of December 2018, by and between the Official Committee of Unsecured Creditors (the "**Committee**") of the bankruptcy estate of Dowling College f/d/b/a Dowling Institute f/d/b/a Dowling College Alumni Association f/d/b/a Cecom a/k/a Dowling College, Inc. (the "**Debtor**"), and Ronald J. Friedman, Esq., as Unsecured Unsecured Creditor Trustee (the "**Trustee**" and together with the Committee, the "**Parties**") and executed in connection with the *First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modified* dated November 6, 2018 (as the same has been or may be amended, the "**Plan**"), filed with the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Plan.

## RECITALS

WHEREAS, on November 29, 2016 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the Bankruptcy Court; and

WHEREAS, on November 6, 2018, the Debtor filed the Plan (ECF Doc. No. 640); and

WHEREAS, on December __, 2018 (the "**Confirmation Date**"), the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order Pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020 Confirming First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modified* (ECF Doc. No. ___) (the "**Confirmation Order**"); and

WHEREAS, the Plan contemplates: (a) the creation of a creditor trust (the "**Unsecured Creditor Trust**") and the creation of beneficial interests in the Unsecured Creditor Trust solely for the benefit of entities with Allowed Unsecured Claims contemplated by the Plan (the "**Beneficiaries**"); and (b) that the Unsecured Creditor Trust will be vested with the initial funding of (i) a carve-out of $300,000 from the proceeds of the sales of the Debtor's assets, as contemplated under the Plan,[1] and (ii) all of the Causes of Action, as defined in Section 1.19 of the Plan, held by the Debtor as of the Confirmation Date, pursuant to Section 5.4 of the Plan (the "**Unsecured Creditor Trust Assets**"), to be liquidated and distributed to the Beneficiaries, as set forth in the Plan and this Agreement; and

WHEREAS, the Plan contemplates that the Unsecured Creditor Trust shall be created for the purpose of: (a) administering the Unsecured Creditor Trust Assets; (b) resolving Disputed Claims; (c) pursuing the Causes of Action, and (d) making all distributions to the Beneficiaries provided for under the Plan ("**Distributions**"); and

---

[1] The Plan provides that fifty percent (50%) of the carve-out will be used to fund the activities of the Unsecured Creditor Trust and fifty percent (50%) of which will be distributed to holders of Allowed General Unsecured Claims.

WHEREAS, the Unsecured Creditor Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes, pursuant to Sections 671-677 of the Internal Revenue Code of 1986, as amended (the "**IRC**"), with the Beneficiaries to be treated as the grantors of the Unsecured Creditor Trust and deemed to be the owners of the Unsecured Creditor Trust Assets (subject to the rights of creditors of the Unsecured Creditor Trust), and consequently, the transfer of the Unsecured Creditor Trust Assets to the Unsecured Creditor Trust shall be treated as a deemed transfer of those assets from the Debtor and the Estate to the Beneficiaries followed by a deemed transfer by such Beneficiaries to the Unsecured Creditor Trust for federal income tax purposes; and

WHEREAS, the Plan provides that this Unsecured Creditor Trust Agreement shall establish an Unsecured Creditor Trust Oversight Committee (the "**Unsecured Creditor Trust Oversight Committee**"); and

WHEREAS, the Committee has designated Linda Ardito, Lori Zaikowski, and Ultimate Power, Inc. as the initial members of the Unsecured Creditor Trust Oversight Committee; and

WHEREAS, the Plan provides that the Committee shall designate the Trustee; and

WHEREAS, the Committee has designated Ronald J. Friedman, Esq. as the Trustee, and he has agreed to serve as the Trustee.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## I.    DECLARATION OF TRUST

1.1    **Creation and Purpose of the Unsecured Creditor Trust.**  The Parties hereby create the Unsecured Creditor Trust for the primary purpose of liquidating and distributing the Unsecured Creditor Trust Assets to the Beneficiaries in accordance with the Plan, the Confirmation Order, and applicable tax statutes, rules, and regulations.  In particular, the Trustee shall (a) make continuing efforts to collect and reduce the Unsecured Creditor Trust Assets to Cash, and (b) make timely Distributions and not unduly prolong the duration of the Unsecured Creditor Trust.

1.2    **Declaration of Trust.**  To declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, Parties have executed this Unsecured Creditor Trust Agreement and, effective on the Confirmation Date, all of the rights, title, and interests of the Debtor in and to the Unsecured Creditor Trust Assets are irrevocably transferred to the Unsecured Creditor Trust under and subject to the terms of the Plan and the Confirmation Order, for the benefit of the Beneficiaries and their successors and assigns as provided for in this Unsecured Creditor Trust Agreement and in the Plan and Confirmation Order.

1.3 **Vesting of Estate Assets.** On the Confirmation Date, pursuant to the terms of the Plan, the Unsecured Creditor Trust Assets shall be vested in the Unsecured Creditor Trust, which also shall be authorized to obtain, liquidate, collect, and receive all of the Unsecured Creditor Trust Assets and pursue all of the Causes of Action. Subject to the provisions of the Plan, all such Unsecured Creditor Trust Assets shall be delivered to the Unsecured Creditor Trust free and clear of interests, Claims, Liens, or other encumbrances of any kind. The Trustee shall have no duty to arrange for any of the transfers contemplated hereunder and shall be conclusively entitled to rely on the legality and validity of such transfers. Moreover, on the Confirmation Date, all privileges with respect to any Unsecured Creditor Trust Assets, including the attorney/client privilege, to which the Debtor is entitled shall be automatically vested in, and available for assertion or waiver by the Trustee on behalf of the Unsecured Creditor Trust. To the extent any of the foregoing does not automatically occur on the Confirmation Date or is not effectuated through the Confirmation Order or this Unsecured Creditor Trust Agreement, the Parties shall, on the Effective Date, execute such other and further documents as are reasonably necessary to effectuate all of the foregoing.

1.4 **Funding of the Unsecured Creditor Trust.** The Unsecured Creditor Trust shall be funded, on the Confirmation Date, with the Unsecured Creditor Trust Assets, as provided for in the Plan and in the Confirmation Order.

1.5 **Acceptance by the Trustee.** The Trustee hereby accepts the trust imposed upon him by this Unsecured Creditor Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Unsecured Creditor Trust Agreement, the Plan, and the Confirmation Order. In connection with and in furtherance of the purposes of the Unsecured Creditor Trust, the Trustee hereby accepts the transfer of the Unsecured Creditor Trust Assets.

1.6 **Name of the Unsecured Creditor Trust.** The Unsecured Creditor Trust established hereby shall be known as the "Dowling College Unsecured Creditor Trust".

1.7 **Statement of Intent, No Partnership**. The Parties intend (i) the Unsecured Creditor Trust to qualify as a "grantor trust" for U.S. federal income tax purposes, (ii) that the Unsecured Creditor Trust shall not be a partnership or joint venture, and (iii) that no Party shall be a partner or joint venturer of any other Party, for any purpose other than federal, state, and local tax purposes, and the provisions of this Unsecured Creditor Trust Agreement shall not be construed otherwise.

## II. THE TRUSTEE

2.1 **Appointment.** The Trustee has been appointed pursuant to the provisions of the Plan. The Trustee's appointment shall continue until the earlier of (a) the termination of the Unsecured Creditor Trust or (b) the Trustee's resignation, death, dissolution, removal, or liquidation.

2.2 **General Powers.** Except as otherwise provided in this Unsecured Creditor Trust Agreement, the Plan, or the Confirmation Order, the Trustee may control and exercise authority over the Unsecured Creditor Trust Assets, over the acquisition, management, and disposition

thereof, and over the management and conduct of the business of the Unsecured Creditor Trust. No Person dealing with the Unsecured Creditor Trust shall be obligated to inquire into the Trustee's authority in connection with the acquisition, management, or disposition of Unsecured Creditor Trust Assets.  Without limiting the foregoing, but subject to the Plan, the Confirmation Order, and other provisions of this Unsecured Creditor Trust Agreement, the Trustee shall be expressly authorized to, with respect to the Unsecured Creditor Trust and the Unsecured Creditor Trust Assets:

(a)     invest Cash in accordance with § 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed General Unsecured Claims and pay taxes and other obligations incurred by the Unsecured Creditor Trust in accordance with the Plan;

(b)     receive, manage, invest, supervise, and protect the Unsecured Creditor Trust Assets, including paying taxes or other obligations incurred in connection with administering the Unsecured Creditor Trust Assets;

(c)     subject to the approval of the Unsecured Creditor Trust Oversight Committee, engage attorneys, consultants, agents, employees and all professional persons, to assist the Unsecured Creditor Trust with respect to the Unsecured Creditor Trust's responsibilities;

(d)     subject to the approval of the Unsecured Creditor Trust Oversight Committee, pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Unsecured Creditor Trust and the Unsecured Creditor Trust Oversight Committee and to pay all other expenses in connection with administering the Unsecured Creditor Trust Assets;

(e)     execute and deliver all documents, and take all actions, necessary to consummate the Plan and the responsibilities of the Unsecured Creditor Trust;

(f)     subject to the approval of the Unsecured Creditor Trust Oversight Committee, dispose of, and deliver title to others of, or otherwise realize the value of, Unsecured Creditor Trust Assets;

(g)     subject to Section 9.15 of the Plan, object to Claims against the Debtor;

(h)     subject to Section 9.15 of the Plan, upon agreement with the Plan Administrator, to compromise and settle Claims by and against the Debtor;

(i)     act on behalf of the Unsecured Creditor Trust in all adversary proceedings and contested matters (including, without limitation, any Avoidance Actions and Causes of Action, as those terms are defined in the Plan) assigned to the Unsecured Creditor Trust, then pending or that can be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving Unsecured Creditor Trust Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in

the Plan, provided, however, that settlements by the Unsecured Creditor Trust of Causes of Action shall be subject to the approval of the Unsecured Creditor Trust Oversight Committee. The Unsecured Creditor Trust shall be authorized to enter into settlements of Causes of Action without a hearing or Court approval;

(j) with the approval of the Unsecured Creditor Trust Oversight Committee, abandon any Unsecured Creditor Trust Assets without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Unsecured Creditor Trust Assets; and

(k) the extent the Unsecured Creditor Trust retains any Cash after satisfaction of all of its obligations pursuant to the Plan, to transfer such remaining Cash to the Debtor.

2.3 **Limitations on the Trustee.** Notwithstanding anything to the contrary under applicable law, this Unsecured Creditor Trust Agreement, or the Plan, the Trustee shall not do or undertake any of the following, provided, however, that nothing in this Unsecured Creditor Trust Agreement shall be deemed to prevent the Trustee from taking, or failing to take, any action that, based upon the advice of counsel, he is obligated to take (or fail to take) in the performance of any fiduciary or similar duty which the Trustee owes to the Beneficiaries or any other Person.

(a) Take, or fail to take, any action that would jeopardize treatment of the Unsecured Creditor Trust as a "liquidating trust" for federal income tax purposes.

(b) Receive transfers of any listed stocks or securities, any readily-marketable assets or any operating assets of a going business, except as is absolutely necessary or required under the Plan and the Confirmation Order; provided, however, that in no event shall the Trustee receive any such investment that would jeopardize treatment of the Unsecured Creditor Trust as a "liquidating trust" for federal income tax purposes.

(c) Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or temporary investments such as short term certificates of deposit or Treasury bills or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the IRS guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements, or otherwise.

(d) Receive or retain any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets; provided, however, that in no event shall the Trustee receive or retain any such asset or interest that would jeopardize treatment of the Unsecured Creditor Trust as a "liquidating trust" for federal income tax purposes.

(e) Notwithstanding any of the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on his own account, provided that such activity does not interfere with the Trustee's administration of the Unsecured Creditor Trust.

2.4 **Compensation of the Trustee and his Agents and Professionals.**

(a)    The Trustee shall be entitled to a monthly fee of $6,000 for the performance of his duties after the Confirmation Date, plus the reimbursement of all reasonable out-of-pocket expenses incurred in connection with this Unsecured Creditor Trust Agreement. Any successor to the Trustee shall also be entitled to reasonable compensation in connection with the performance of its duties, which compensation may be different from the terms provided herein, plus the reimbursement of reasonable out-of-pocket expenses.

(b)    The Trustee's fees for the previous month shall be paid from the Unsecured Creditor Trust Assets by wire transfer on the fifth business day of each month; provided, however, that the first monthly payment shall include a *pro rata* payment for services rendered for any partial month following the Confirmation Date.

(c)    No later than the fifteenth (15th) day of each month, each of the Trustee's agents and professionals (unless any such agents or professionals and the Trustee agree to different treatment) seeking compensation or reimbursement shall serve a statement on the Trustee and the Unsecured Creditor Trust Oversight Committee.  The Trustee and/or the Unsecured Creditor Trust Oversight Committee will have fifteen (15) days from the date such statement is received to review the statement and object to such statement by serving an objection on the party seeking compensation setting forth the precise nature of the objection and the amount at issue.  At the expiration of the fifteen (15) day period, and without further order of the Bankruptcy Court (except as provided herein), the Trustee shall pay from the Unsecured Creditor Trust Assets, or the proceeds or income thereof, 100% of the amounts requested, except for the portion of such fees and expenses to which any objection has been made.  The parties shall attempt to consensually resolve objections, if any, to any statement.  If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees and expenses may seek payment of such fees and expenses by filing a motion with and obtaining an order from the Bankruptcy Court and providing notice to the Trustee.  If the Trustee or his agent or professional fails to submit a statement, it shall be ineligible to receive payment of fees and expenses therefor as provided in this Unsecured Creditor Trust Agreement until such statement is submitted.

2.5    **General Duties, Obligations, Rights, and Benefits of the Trustee.**  The Trustee shall have all duties, obligations, rights, and benefits assumed by, assigned to, or vested in the Unsecured Creditor Trust under the Plan, the Confirmation Order, this Unsecured Creditor Trust Agreement and any other agreement entered into pursuant to or in connection with the Plan. Such duties, obligations, rights, and benefits include, without limitation, all duties, obligations, rights and benefits relating to the collection and liquidation of the Unsecured Creditor Trust Assets, administration of Claims, the pursuit of Causes of Action, Distributions to Beneficiaries, administration of the Unsecured Creditor Trust, and any other duties, obligations, rights, and benefits reasonably necessary to accomplish the purpose of the Unsecured Creditor Trust under the Plan, the Confirmation Order, this Unsecured Creditor Trust Agreement, and any other agreement entered into pursuant to or in connection with the Plan.  Without limiting the duties, obligations, rights, and benefits of the Trustee under this Section or any other provision of this Unsecured Creditor Trust Agreement, the Trustee shall have all duties, obligations, rights, and benefits assigned to the Trustee under the Plan.

2.6    **Reporting to the Unsecured Creditor Trust Oversight Committee**.    The Trustee shall provide reports to the Unsecured Creditor Trust Oversight Committee on a monthly basis, or on such more or less frequent basis as requested by the Unsecured Creditor Trust Oversight Committee.  Such reports shall detail, among other things, the status of all Causes of Action commenced or to potentially be commenced by the Trustee, the status of all objections to Claims being prosecuted by the Trustee, and all Distributions made by the Trustee to Beneficiaries.    Additionally, unless excused by the Unsecured Creditor Trust Oversight Committee, the Trustee shall meet with the Unsecured Creditor Trust Oversight Committee, either in person or telephonically, on a bi-annual basis to discuss all outstanding matters relating to the Unsecured Creditor Trust.

2.7    **Replacement of the Trustee.**  The Trustee may resign at any time upon thirty (30) days' written notice delivered to the Unsecured Creditor Trust Oversight Committee, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Trustee.  Additionally, the Trustee may be removed by a unanimous vote of the Unsecured Creditor Trust Oversight Committee at any time, without cause.  In the event of the resignation or removal of the Trustee, a successor Trustee shall be appointed by the Unsecured Creditor Trust Oversight Committee.  Upon its appointment, the successor Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor, and all responsibilities of the predecessor Trustee relating to the Unsecured Creditor Trust shall be terminated.  In the event the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation, or removal, such Trustee, and any professionals employed by such Trustee, shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced. The provisions of Article V of this Unsecured Creditor Trust Agreement shall survive the resignation or removal of any Trustee.

2.8    **Unsecured Creditor Trust Continuance.**  The death, dissolution, liquidation, resignation, or removal of the Trustee shall not terminate the Unsecured Creditor Trust or revoke any existing agency created by the Trustee pursuant to this Unsecured Creditor Trust Agreement or invalidate any action theretofore taken by the Trustee, and the provisions of this Unsecured Creditor Trust Agreement shall be binding upon and inure to the benefit of the successor Trustee and all its successors or assigns.

### III.        ESTABLISHMENT OF THE UNSECURED CREDITOR TRUST OVERSIGHT COMMITTEE

3.1    **Establishment of the Unsecured Creditor Trust Oversight Committee.**  The Unsecured Creditor Trust Oversight Committee is hereby established, and its initial members shall be (a) Linda Ardito, (b) Lori Zaikowski, and (c) Ultimate Power, Inc.

3.2    **Duties and Powers of the Unsecured Creditor Trust Oversight Committee.** The Unsecured Creditor Trust Oversight Committee shall be charged with the duty to oversee the Trustee's administration of the Unsecured Creditor Trust to ensure that the Trustee and the Unsecured Creditor Trust are at all times compliant with this Unsecured Creditor Trust Agreement, the Plan, the Confirmation Order, and applicable law.  The Unsecured Creditor Trust

Oversight Committee shall have the power to remove the Trustee pursuant to Section 2.7 hereof and to appoint any replacement trustee.

3.3    **Compensation of Members of the Unsecured Creditor Trust Oversight Committee**.  Members of the Unsecured Creditor Trust Oversight Committee shall receive no compensation for services rendered to the Unsecured Creditor Trust, however each member may be reimbursed by the Unsecured Creditor Trust for reasonable out of pocket expenses.  Any request for reimbursement of expenses shall be submitted for approval to the Trustee and all other members of the Unsecured Creditor Trust Oversight Committee.

## IV.    UNSECURED CREDITOR TRUST PROSECUTION OF CAUSES OF ACTION; PRESERVATION OF ATTORNEY-CLIENT PRIVILEGE.

4.1    **The Unsecured Creditor Trust's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action.**  Pursuant to the Plan, the Unsecured Creditor Trust shall have the exclusive right, power, and interest to pursue, settle, or abandon all Causes of Action.

4.2    **Preservation of Confidences and Attorney-Client Privilege**.  To effectively investigate, defend, or pursue the Causes of Action and the other Unsecured Creditor Trust Assets, the Parties and all counsel thereto must be able to exchange information with each other on a confidential basis and cooperate in common interest efforts without waiving any applicable privilege.  Given the common interests of the parties and the Trustee's position as successor to the Unsecured Creditor Trust Assets, including the Causes of Action and other Unsecured Creditor Trust Assets, sharing such information in the manner described in the previous sentence shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information.

In connection with the Unsecured Creditor Trust Assets, including the Causes of Action and other Unsecured Creditor Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) shall also exist for the benefit of the Unsecured Creditor Trust and shall vest in the Trustee and his representatives, and shall also be preserved for and as to the Parties.  The Trustee is authorized to take all necessary actions to benefit from or waive such privileges.

## V.    LIABILITY OF THE TRUSTEE

5.1    **Standard of Care; Exculpation**.  Neither the Trustee, the Unsecured Creditor Trust Oversight Committee, nor any director, officer, affiliate, employee, employer, professional, successor, assign, agent, or representative of the Trustee or the Unsecured Creditor Trust Oversight Committee (each, an "**Exculpated Party**" and collectively, the "**Exculpated Parties**") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "**Losses**"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Unsecured Creditor Trust Agreement (including these exculpation provisions), as and when imposed on the Trustee, incurred, caused by, relating to, based upon or arising out

of (directly or indirectly) the Trustee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Unsecured Creditor Trust Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Exculpated Party; provided, however, that the foregoing limitation shall not apply to any Losses suffered or incurred by any holder of a Claim or Beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Exculpated Party.  Every act taken or omitted, power exercised, or obligation assumed by the Unsecured Creditor Trust or any Exculpated Party pursuant to the provisions of this Unsecured Creditor Trust Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Unsecured Creditor Trust or any Exculpated Party acting for and on behalf of the Unsecured Creditor Trust and not otherwise; provided, however, that none of the foregoing Entities or Persons are deemed to be responsible for any other such Entities' or Persons' actions or inactions.  Except as provided in the first proviso of the first sentence of this Section 5.1, every Person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with the Unsecured Creditor Trust or any Exculpated Party shall have recourse only to the Unsecured Creditor Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Unsecured Creditor Trust and the Exculpated Parties shall not be individually liable therefore.  In no event shall the Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.  Any liability of the Trustee under this Unsecured Creditor Trust Agreement will be limited to twice the amount of annual fees paid to the Trustee.

    5.2    **Indemnification**.

            (a)    The Trustee and the Unsecured Creditor Trust Oversight Committee, and any director, officer, affiliate, employee, employer, professional, successor, assign, agent, or representative of the Trustee or the Unsecured Creditor Trust Oversight Committee (each, an "**Indemnified Party**" and collectively, the "**Indemnified Parties**") shall be defended, held harmless, and indemnified from time to time by the Unsecured Creditor Trust against any and all Losses, including, without limitation, the costs for counsel or others in investigating, preparing, defending, or settling any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Unsecured Creditor Trust Agreement (including these indemnity provisions), as and when imposed on the Trustee, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Trustee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Unsecured Creditor Trust Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Indemnified Party; provided, however, such indemnity shall not apply to any such Losses to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Indemnified Party.  Satisfaction of any obligation of the Unsecured Creditor Trust arising pursuant to the terms of this Section shall be payable only from the Unsecured Creditor Trust Assets, shall be advanced prior to the conclusion of such matter and such right to payment shall

be prior and superior to any other rights to receive a distribution of the Unsecured Creditor Trust Assets.

(b)      The Unsecured Creditor Trust shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefor on a current basis.  Each Indemnified Party hereby undertakes, and the Unsecured Creditor Trust hereby accepts its undertaking, to repay any and all such amounts so paid by the Unsecured Creditor Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Unsecured Creditor Trust Agreement.

5.3      **No Liability for Acts of Successor/Predecessor Trustees.**  Upon the appointment of a successor Trustee and the delivery of the Unsecured Creditor Trust Assets to the successor Trustee, the predecessor Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Trustee shall have no further liability or responsibility with respect thereto.  A successor Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Trustee shall be in any way liable for the acts or omissions of any predecessor Trustee unless a successor Trustee expressly assumes such responsibility.  A predecessor Trustee shall have no liability for the acts or omissions of any successor Trustee for any events or occurrences subsequent to the cessation of its role as Trustee.

5.4      **Reliance by Trustee on Documents or Advice of Counsel.**  Except as otherwise provided in this Unsecured Creditor Trust Agreement, the Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the Trustee may rely, and shall be protected from liability for acting or failing to act, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Trustee to be genuine and to have been presented by an authorized party.  The Trustee shall not be liable for any action taken or omitted or suffered by the Trustee in reasonable reliance upon the advice of counsel or other professionals engaged by the Trustee in accordance with this Unsecured Creditor Trust Agreement.  The Trustee shall be fully indemnified by the Unsecured Creditor Trust for or in respect of any action taken, suffered or omitted by it and in accordance with such advice or opinion.

5.5      **Insurance.**  The Trustee may purchase, using the Unsecured Creditor Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any Losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Unsecured Creditor Trust Agreement.

5.6      **Survival.**  The provisions of this Article V shall survive the termination of this Unsecured Creditor Trust Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of the Trustee.

## VI.    GENERAL PROVISIONS CONCERNING ADMINISTRATION OF THE UNSECURED CREDITOR TRUST

6.1    **Incorporation of Plan Provisions; Dispute Claims Reserve.**    As of the Confirmation Date, the Unsecured Creditor Trust shall assume responsibility for all Claims matters established by the Plan for holders of Class 7 Claims.  In accordance with the Plan, the Unsecured Creditor Trust shall establish appropriate Disputed Claims Reserves pending resolution, as set forth in the Plan, of all contested matters and adversary proceedings concerning Disputed Claims.  Such Disputed Claims Reserves shall be created, funded, and administered in accordance with the Plan.

6.2    **Register of Beneficiaries.**    The Trustee shall maintain at all times a register of the names, distribution addresses, amounts of Allowed Claims, and the ratable interests in the Unsecured Creditor Trust of the Beneficiaries (the "**Register**").  The initial Register shall be delivered to the Trustee by the Debtor and shall be based on the list of holders of Claims maintained by the Debtor as of the Confirmation Date and prepared in accordance with the provisions of the Plan and the Confirmation Order.  All references in this Unsecured Creditor Trust Agreement to holders of beneficial interests in the Unsecured Creditor Trust shall be read to mean holders of record as set forth in the Register maintained by the Trustee and shall exclude any beneficial owner not recorded on such Register.

6.3    **Books and Records.**    The Trustee shall maintain books and records relating to the Unsecured Creditor Trust Assets, any income or proceeds realized therefrom, and the payment of expenses of and claims against or assumed by the Unsecured Creditor Trust in such detail and for such period of time as may be necessary to enable him to make full and proper reports in respect thereof.  Except as expressly provided in this Unsecured Creditor Trust Agreement, the Plan, or the Confirmation Order, or as may be required by applicable law, nothing in this Unsecured Creditor Trust Agreement is intended to require the Unsecured Creditor Trust to file any accounting or seek approval of any court with respect to the administration of the Unsecured Creditor Trust, or as a condition for making any payment or distribution out of the Unsecured Creditor Trust Assets.

6.4    **Confidentiality of Human Resources and Medical Information.**    The Trustee will not disclose to any Person, either directly or indirectly, any information related to the Debtor's employees, including medical information, unless otherwise permitted or required by applicable law; provided, that the Trustee may disclose such information to their directors, officers, stockholders, employees, agents, or advisors (including attorneys, accountants, and financial advisors) who need to know such information to consummate the Plan who are bound by confidentiality obligations in favor of the Trustee.

## VII.    BENEFICIAL INTERESTS AND BENEFICIARIES

7.1    **Trust Beneficial Interests.**    Each holder of an Allowed Claim, shall be entitled to receive beneficial interests in accordance with the treatment of such Claim under the Plan, and shall be entitled to Distributions as set forth in the Plan.

7.2    **Interest Beneficial Only**.  Ownership of a beneficial interest in the Unsecured Creditor Trust shall not entitle any Beneficiary to any title in or to the Unsecured Creditor Trust Assets or to any right to call for a partition or division of the Unsecured Creditor Trust Assets or to require an accounting.

7.3    **Evidence of Beneficial Interest.**  Ownership of a beneficial interest in the Unsecured Creditor Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Unsecured Creditor Trust by the Trustee, which may be the Register.

7.4    **Exemption from Registration**.  The parties hereto intend that the rights of the holders of the beneficial interests arising under this Unsecured Creditor Trust Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the Parties intend for the exemption from registration provided by Section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

7.5    **Transfers of Beneficial Interests.**  Beneficial interests in the Unsecured Creditor Trust shall be nontransferable except upon death of Beneficiary or by operation of law.  The Unsecured Creditor Trust shall not have any obligation to recognize any transfer of Claims occurring after the Record Date.  Only those holders of Claims of record stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

7.6    **Absolute Owners.**  The Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving Distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

7.7    **Change of Address.**  A Beneficiary may, after the Effective Date, select an alternative Distribution address by identifying such alternative distribution address, in writing, to the Trustee.  Absent such notice, the Trustee shall not recognize any such change of distribution address.  Such notification shall be effective only upon receipt by the Trustee.

7.8    **Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary.**  The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the Unsecured Creditor Trust shall not operate to terminate the Unsecured Creditor Trust during the term of the Unsecured Creditor Trust nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the Distribution of the Unsecured Creditor Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Unsecured Creditor Trust Agreement or in the Unsecured Creditor Trust.

7.9    **Standing.**  Except as expressly provided in this Unsecured Creditor Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct

the Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Unsecured Creditor Trust Assets.

## VIII.  DISTRIBUTIONS

8.1    **Distributions to Beneficiaries from Unsecured Creditor Trust Assets.**  All payments to be made by the Unsecured Creditor Trust to any Beneficiary from the Unsecured Creditor Trust Assets (or from the income and proceeds realized from the Unsecured Creditor Trust Assets) shall be made only in accordance with the Plan, the Confirmation Order, and this Unsecured Creditor Trust Agreement.  Distributions shall be made by the Trustee only to the extent that the Unsecured Creditor Trust has sufficient Unsecured Creditor Trust Assets (or income and proceeds realized from the Unsecured Creditor Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Unsecured Creditor Trust Agreement, and shall be made at the sole discretion of the Trustee.

8.2    **Distributions; Withholding.**  The Unsecured Creditor Trust may retain and supplement from time to time a reserve (the "**Unsecured Creditor Trust Reserve**") in such amount (a) as is reasonably necessary to meet contingent liabilities and to maintain the value of the Unsecured Creditor Trust Assets during the term of the Unsecured Creditor Trust; (b) to pay reasonable administrative expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees, and expenses (including attorneys' fees and expenses, financial advisor fees and expenses, and disbursing agent fees and expenses) of the Trustee in connection with the performance of its duties in connection with this Unsecured Creditor Trust Agreement; and (c) to satisfy all other liabilities and claims of creditors of the Unsecured Creditor Trust incurred or assumed in respect of the Unsecured Creditor Trust (or to which the Unsecured Creditor Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Unsecured Creditor Trust Agreement. All such distributions shall be made as provided, and subject to any withholding or reserve, in this Unsecured Creditor Trust Agreement, the Plan or the Confirmation Order.  Additionally, the Trustee may withhold from amounts distributable to any Beneficiary any and all amounts, determined in the Trustee's sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.  In addition, all Distributions under this Unsecured Creditor Trust Agreement shall be net of the actual and reasonable costs of making such Distributions.

8.3    **No Distribution Pending Allowance.**  No payment or Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, except for distributions into a Disputed Claims Reserve in accordance with the Plan, Confirmation Order, and this Unsecured Creditor Trust Agreement.

8.4    **Distributions after Allowance.**  Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan, Confirmation Order, and this Unsecured Creditor Trust Agreement.

8.5    **Non-Cash Property**.  Any non-Cash property of the Unsecured Creditor Trust may be sold, transferred, or abandoned by the Trustee.  If, in the Trustee's reasonable judgment,

such property cannot be sold in a commercially reasonable manner, or the Trustee believes, in good faith, such property has no value to the Unsecured Creditor Trust, the Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Trustee after consultation with the Parties.  Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a claim or cause of action against the Trustee or any director, officer, employee, consultant, or professional of the Trustee, or of any of its professionals, arising from or related to the disposition of non-Cash property in accordance with this Section.

8.6    **No Distribution in Excess of Allowed Amount of Claim.**  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

8.7    **Setoff and Recoupment**.  The Unsecured Creditor Trust may, but shall not be required to, setoff against, or recoup from, any Claim and the Distribution to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtor, the Estate or the Unsecured Creditor Trust may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate or the Unsecured Creditor Trust of any claim, defense, right of setoff, or recoupment that any of them may have against the holder of any Claim.

## IX.    TAXES

9.1    **Income Tax Status.**  Consistent with Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Unsecured Creditor Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677.  As such, the Beneficiaries will be treated as both the grantors and the deemed owners of the Unsecured Creditor Trust.  Any items of income, deduction, credit, and loss of the Unsecured Creditor Trust shall be allocated for federal income tax purposes to the Beneficiaries in accordance with Section 1.8 hereof.

9.2    **Tax Returns.**  In accordance with IRC Section 6012 and Treasury Regulation Section 1.671-4(a), the Unsecured Creditor Trust shall file with the IRS annual tax returns on Form 1041.  In addition, the Unsecured Creditor Trust shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon out of the Unsecured Creditor Trust Assets (or the income or proceeds thereof).  Within a reasonable time following the end of the taxable year, the Unsecured Creditor Trust shall send to each Beneficiary a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on their federal income tax returns.

9.3    **Withholding of Taxes and Reporting Related to Unsecured Creditor Trust Operations.**  The Unsecured Creditor Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Unsecured Creditor Trust shall be subject to any such withholding and reporting requirements.  To the extent that the operation of the Unsecured Creditor Trust or the

liquidation of the Unsecured Creditor Trust Assets creates a tax liability, the Unsecured Creditor Trust shall promptly pay such tax liability out of the Unsecured Creditor Trust Assets (or the income or proceeds thereof) and any such payment shall be considered a cost and expense of the operation of the Unsecured Creditor Trust payable without Bankruptcy Court order. The Unsecured Creditor Trust may reserve a sum, the amount of which shall be determined by the Unsecured Creditor Trust in it sole discretion, sufficient to pay the accrued or potential tax liability arising out of the operations of the Unsecured Creditor Trust or the operation of the Unsecured Creditor Trust Assets. The Trustee, on behalf of the Unsecured Creditor Trust, may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder. All Beneficiaries shall be required to provide any information necessary to effect the withholding of such taxes.

9.4    **Treatment of Disputed Claims Reserves.** Notwithstanding any other provision of this Unsecured Creditor Trust Agreement to the contrary, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Unsecured Creditor Trust shall (a) treat any Unsecured Creditor Trust Assets allocable to, or retained on account of, a Disputed Claim Reserve in accordance with this Unsecured Creditor Trust Agreement as held by one or more discrete trusts for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the IRC (sections 641 *et seq.*), (b) treat as taxable income or loss of each Disputed Claim Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Unsecured Creditor Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (c) treat as a distribution from the Disputed Claim Reserve any increased amounts distributed by the Unsecured Creditor Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such Distributions relate to taxable income or loss of the Disputed Claim Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All Beneficiaries shall report, for income tax purposes, consistent with the foregoing. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claim Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Trustee as a result of the resolutions of such Disputed Claims.

9.5    **Expedited Determination of Taxes.** The Unsecured Creditor Trust may request an expedited determination of taxes of the Debtor and of the Unsecured Creditor Trust, including the Disputed Reserves, under section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor and the Unsecured Creditor Trust for all taxable periods through the termination of the Unsecured Creditor Trust.

## X.    TERMINATION OF THE UNSECURED CREDITOR TRUST

10.1    **Termination of Unsecured Creditor Trust.**  The Trustee shall be discharged, and the Unsecured Creditor Trust shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Unsecured Creditor Trust Assets have been liquidated, (c) all duties and obligations of the Trustee hereunder have been fulfilled, (d) all Distributions required to be made by the Trustee under the Plan, the Confirmation Order, and this Unsecured Creditor Trust Agreement have been made, and (e) the Chapter 11 Case has been closed.

10.2    **Final Accounting of the Trustee.**  The Trustee (or any such successor Trustee) shall within ninety (90) days after the termination of the Unsecured Creditor Trust or the death, dissolution, liquidation, resignation, or removal of the Trustee, render an accounting containing the following information:

(a)    A description of the Unsecured Creditor Trust Assets.

(b)    A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Unsecured Creditor Trust and the Unsecured Creditor Trust Assets during the Trustee's term of service, including their source and nature.

(c)    Separate entries for all receipts of principal and income.

(d)    The ending balance of all Unsecured Creditor Trust Assets as of the date of the accounting, including the Cash balance on hand and the name(s) and location(s) of the depository or depositories where the Cash is kept.

(e)    All known liabilities of the Unsecured Creditor Trust.

(f)    All pending actions.

## XI.    MISCELLANEOUS PROVISIONS

11.1    **Amendments.**  The Trustee may, with the approval of the Bankruptcy Court, modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.

11.2    **Waiver.**  No failure by the Unsecured Creditor Trust or the Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

11.3    **Cumulative Rights and Remedies.**  The rights and remedies provided in this Unsecured Creditor Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

11.4    **No Bond Required.**  Notwithstanding any state law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction other than as provided under this Unsecured Creditor Trust Agreement.

11.5    **Irrevocability.**  This Unsecured Creditor Trust Agreement and the Unsecured Creditor Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Unsecured Creditor Trust Agreement.

11.6    **Tax Identification Numbers.**  The Trustee may require any Beneficiary to furnish to the Trustee its social security number or employer or taxpayer identification number as assigned by the IRS and the Trustee may condition any Distribution to any Beneficiary upon the receipt of such identification number.

11.7    **Relationship to the Plan.**  The principal purpose of this Unsecured Creditor Trust Agreement is to aid in the implementation of the Plan and, therefore, this Unsecured Creditor Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  In the event that any provision of this Unsecured Creditor Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.  In the event that any provision of the Plan is found to be inconsistent with a provision of the Confirmation Order, the Confirmation Order shall control.

11.8    **Division of Unsecured Creditor Trust.**  Under no circumstances shall the Trustee have the right or power to divide the Unsecured Creditor Trust unless authorized to do so by the Bankruptcy Court.

11.9    **Applicable Law.**  This Unsecured Creditor Trust shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws.

11.10    **Retention of Jurisdiction.**  To the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Unsecured Creditor Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Unsecured Creditor Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Trustee or any professional retained by the Trustee, in each case in its capacity as such. Each party to this Unsecured Creditor Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Unsecured Creditor Trust Agreement or of any other agreement or document delivered in connection with this Unsecured Creditor Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum *non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Unsecured Creditor Trust Agreement will be brought only in the Bankruptcy Court.  Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Unsecured Creditor Trust Agreement.

11.11   **Severability.**   In the event that any provision of this Unsecured Creditor Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Unsecured Creditor Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Unsecured Creditor Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.12   **Limitation of Benefits.**   Except as otherwise specifically provided in this Unsecured Creditor Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Unsecured Creditor Trust Agreement.

11.13   **Notices.**   Except as provided in Section 11.10 of this Unsecured Creditor Trust Agreement, all notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

> If to the Trustee:
>
>> Ronald J. Friedman, Esq.
>> 100 Jericho Quadrangle, Suite 300
>> Jericho, New York 11753
>> (516) 479-6300
>
> If to the Committee:
>
>> SILVERMANACAMPORA LLP
>> Attorneys for the Committee
>> 100 Jericho Quadrangle, Suite 300
>> Jericho, New York 11753
>> (516) 479-6300
>> Attn: Kenneth P. Silverman
>
> If to a Beneficiary:
>
>> To the name and distribution address set forth in the
>> Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

11.14   **Further Assurances.**   From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and

purposes of this Unsecured Creditor Trust Agreement, and to consummate the transactions contemplated hereby.

11.15 **Integration.**    This Unsecured Creditor Trust Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan and in the Confirmation Order.   This Unsecured Creditor Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.   Except as otherwise provided in this Unsecured Creditor Trust Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Unsecured Creditor Trust Agreement.

11.16 **Interpretation.**    The enumeration and Section headings contained in this Unsecured Creditor Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Unsecured Creditor Trust Agreement or of any term or provision hereof.   Unless context otherwise requires, whenever used in this Unsecured Creditor Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations.   The words herein, hereby, and hereunder and words with similar import, refer to this Unsecured Creditor Trust Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.   Any reference to the "Trustee" shall be deemed to include a reference to the "Unsecured Creditor Trust" and any reference to the "Unsecured Creditor Trust" shall be deemed to include a reference to the "Trustee" except for the references in provisions in which the context otherwise requires.

11.17 **Counterparts.**    This Unsecured Creditor Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Unsecured Creditor Trust Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Unsecured Creditor Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**Trustee**

Ronald J. Friedman, Esq., solely in his capacity as Trustee

By:_____

Name: _____

Title: _____

**Official Committee of Unsecured Creditors of Dowling College**

By:_____

Name: _____

Title: _____