**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DOWLING COLLEGE, | : | Case No. 16-75545 (REG) |
| f/d/b/a DOWLING INSTITUTE, | : | |
| f/d/b/a DOWLING COLLEGE ALUMNI | : | |
| ASSOCIATION, | : | |
| f/d/b/a CECOM, | : | |
| a/k/a DOWLING COLLEGE, INC., | : | |
| | : | |
| | : | |
| Debtor. | : | |

---------------------------------------------------------------x

### DECLARATION OF ROBERT S. ROSENFELD IN SUPPORT OF ENTRY OF AN ORDER CONFIRMING THE FIRST AMENDED PLAN OF LIQUIDATION OF DOWLING COLLEGE PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED

I, Robert S. Rosenfeld, declare under penalty of perjury as follows:

1.      I am over the age of eighteen and am competent to testify to the matters set forth herein.

2.      I am the Chief Restructuring Officer for Dowling College (the "Debtor"), the proponent of the *First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modified*, dated October 31, 2018 (the "Plan") [Dkt. No. 640].

3.      I submit this declaration (the "Declaration") in support of confirmation of the Plan proposed by Debtor under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtor's books and records and other relevant documents, including the Plan. Any opinions set forth herein are based on my experience, expertise and knowledge of the Debtor's operations and financial condition, and/or information and materials

1

that the Debtor's professional advisors have supplied to me.  If I were called to testify as a witness in this matter, I would testify to the facts set forth herein.

5.      The Plan divides Claims into seven (7) Classes. Of the seven (7) Classes, six (6) Classes were entitled to vote (the "Voting Classes"). All six (6) of the Voting Classes have voted to accept the Plan: Class 1 (Prepetition Series 1996 Bonds), Class 2 (Prepetition Series 2002 Bonds), Class 3 (Prepetition Series 2006 Bonds), Class 4 (Prepetition Series 2015 Bonds), Class 5 (Other Secured Claims) and Class 7 (General Unsecured Claims). Class 6 (Priority Non-Tax Claims) is conclusively presumed to accept the Plan.

6.      No objections to confirmation of the Plan were filed or received.

**A.      The Plan Complies with the Requirements of Section 1129(a)(1) of the Bankruptcy Code.**

7.      Based on my review of the Plan and all related materials, I believe that the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code, which govern, respectively, the classification of claims and the contents of a plan.

(i)      *The Plan Complies with Section 1122(a) of the Bankruptcy Code.*

8.      Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Based upon my review of the Plan, Article 3 of the Plan designates seven (7) classes of Claims[1].  Class 1 includes only Prepetition Series 1996 Bond Claims.  Class 2 includes only Prepetition Series 2002 Bond Claims.  Class 3 includes only Prepetition Series 2006 Bond Claims.  Class 4 includes only Prepetition Series 2015 Bond Claims. Class 5 includes only Other Secured Claims. Class 6 includes only Priority Non-Tax Claims. Class 7 includes only

---

[1] Unless otherwise defined herein, capitalized terms are used as defined in the Plan.

General Unsecured Claims. Thus, the Claims placed in each Class are substantially similar to other Claims in each such Class.  Accordingly, I believe that the Plan complies with section 1122 of the Bankruptcy Code.

       (ii)      *The Plan Complies with Section 1123 of the Bankruptcy Code.*

9.      Section 1123(a) of the Bankruptcy Code identifies seven (7) required contents of a plan.  Based upon my review of the Plan, the Plan contains each of these seven required contents.

10.      Section 1123(a)(1) of the Bankruptcy Code requires that a chapter 11 plan designate classes of claims and interests other than claims of a kind specified in section 507(a)(2) of the Bankruptcy Code (administrative expense claims), section 507(a)(3) of the Bankruptcy Code (claims arising during the "gap" period in an involuntary bankruptcy case), and section 507(a)(8) of the Bankruptcy Code (priority tax claims). Based upon my review of the Plan, Article 3 of the Plan satisfies this requirement by expressly classifying all Claims, other than Administrative Expense Claims (other than professional fees and expenses), the DIP Term Loans, Priority Tax Claims and Professional Fee Claims, as follows: Class 1 (Prepetition Series 1996 Bond Claims), Class 2 (Prepetition Series 2002 Bond Claims), Class 3 (Prepetition Series 2006 Bond Claims), Class 4 (Prepetition Series 2015 Bond Claims), Class 5 (Other Secured Claims), Class 6 (Priority Non-Tax Claims), and Class 7 (General Unsecured Claims).

11.      Section 1123(a)(2) of Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2).  Based upon my review of the Plan, Article 3 of the Plan satisfies this requirement by specifying that Class 6 is not impaired under the Plan.  Accordingly, I believe that section 1123(a)(2) of the Bankruptcy Code is satisfied.

12.     Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3).  Based upon my review of the Plan, Article 3 of the Plan specifies that Class 1, Class 2, Class 3, Class 4, Class 5 and Class 7 are impaired under the Plan and Article 4 of the Plan specifies the treatment of each such Class.  Accordingly, I believe that section 1123(a)(3) of the Bankruptcy Code is satisfied.

13.     Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4).  Based upon my review of the Plan, Article 4 of the Plan satisfies this requirement by providing the same treatment to each Claim in each respective Class[2].   Accordingly, I believe section 1123(a)(4) of the Bankruptcy Code is satisfied.

14.     Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means" for its implementation.  Based upon my review of the Plan, Article 5 of the Plan provides adequate and proper means for the implementation of the Plan.  In particular, section 5.1 of the Plan provides that the Plan shall be funded by a combination of the proceeds of sale of certain of the Debtor's Assets, additional funding and/or use of cash collateral of ACA and the Prepetition Bond Trustees in accordance with the Unsecured Creditor Settlement and the Priority Claim Contribution. Sections 5.2 and 5.3 of the Plan provide for the appointment of a Plan Administrator to complete the wind-down of the Debtor's affairs and make distributions to certain Classes of Creditors. Sections 5.4 and 5.5 of the Plan provide for the establishment of the Unsecured Creditor

---

[2] Deficiency Claims of ACA and the Prepetition Bond Trustees are included in Class 7. As part of the Unsecured Creditor Settlement, ACA and the Prepetition Bond Trustees agreed that they would not receive distributions as members of Class 7 until holders of Class 7 Claims other than ACA and the Prepetition Bond Trustees receive at least five percent (5%) on account of such claims. Because this different treatment for Deficiency Claims of ACA and the Prepetition Bond Trustees is consensual, the Debtor believes that section 1123(a)(4) is satisfied.

Trust, the transfer of Unsecured Creditor Trust Assets to the Unsecured Creditor Trust, and the pursuit of Causes of Action by the Unsecured Creditor Trustee for the benefit of Class 8 General Unsecured Creditors. Section 5.7 of the Plan provides for the establishment of an Administrative Reserve and a Disputed Claims Reserve. In addition, Article 9 of the Plan provides procedures related to, among other things, distributions, resolution of disputed claims, and the means by which distributions will be transmitted. I believe that the foregoing provisions constitute adequate means for implementation of the Plan, and therefore section 1123(a)(5) of the Bankruptcy Code is satisfied.

15.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate documents prohibit the issuance of non-voting equity securities and related corporate governance matters. 11 U.S.C. §1123(a)(6). The Plan does not contemplate the issuance of new stock in the Debtor. Accordingly, I believe section 1123(a)(6) of the Bankruptcy Code is not applicable.

16.    Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan…." 11 U.S.C. § 1123(a)(7). The Debtor does not currently, and will not, have continued operations following confirmation of the Plan. No new officers or directors are appointed under the Plan, nor is it expected that any new officers or directors will be appointed following confirmation of the Plan. Section 5.2(a) of the Plan provides for the appointment of a Plan Administrator, and section 1.73 of the Plan defines the term "Plan Administrator" as myself. In addition, section 5.4(a) of the Plan provides for the appointment of an Unsecured Creditor Trustee, and section 1.108 of the Plan defines the term "Unsecured Creditor Trustee" as Ronald J. Friedman, currently one of attorneys for the Creditors' Committee. Finally, section 5.4(c) of the

Plan provides for the appointment of an Unsecured Creditor Trust Oversight Committee, and section 1.107 of the Plan defines the term "Unsecured Creditor Trust Oversight Committee" as, initially, (a) Linda Ardito, (b) Lori Zaikowski, and (c) Ultimate Power, Inc., who are currently the members of the Creditors' Committee. Such appointments are due to the respective appointee's substantial knowledge and experience gained in current roles in the Chapter 11 Case. As a result, I respectfully submit that such appointments are consistent with the interests of Creditors and with public policy. Accordingly, I believe section 1123(a)(7) of the Bankruptcy Code is satisfied.

17.    Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan, but are not required.

18.    Section 1123(b)(1) states that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1).  Based upon my review of the Plan, the Plan provides that Class 6 (Priority Non-Tax Claims) is left unimpaired, and Class 1 (Prepetition Series 1996 Bonds), Class 2 (Prepetition Series 2002 Bonds), Class 3 (Prepetition Series 2006 Bonds), Class 4 (Prepetition Series 2015 Bonds), Class 5 (Other Secured Claims) and Class 7 (General Unsecured Claims) are impaired.  I believe that the foregoing treatment of Claims as set forth in Article 3 and Article 4 of the Plan is consistent section 1123(b)(1).

19.    Section 1123(b)(2) of the Bankruptcy Code provides that a plan may, subject to section 365 of the Bankruptcy Code, "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." Based upon my review of the Plan, the Plan provides that any and all executory contracts (not otherwise previously assumed or rejected or the subject of a motion to assume or reject pending on the Confirmation Date), shall be deemed rejected by the Debtor.  See Plan, § 6.1.  I believe that the provisions of the Plan regarding the treatment of executory contracts and unexpired leases are

fair and reasonable, and that the treatment is consistent with sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

20.    Section 1123(b)(3) of the Bankruptcy Code provides that a plan may provide for "(a) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (b) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." Based upon my review of the Plan and knowledge of the Chapter 11 Case, substantially all of the Debtor's physical assets were sold and the proceeds thereof are to be distributed under the Plan consistent with the Unsecured Creditor Settlement and the Priority Claim Contribution. Causes of Action are vested with the Unsecured Creditor Trust for pursuit for the benefit of General Unsecured Creditors. I believe these provisions of the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

21.    Section 1123(b)(4) of the Bankruptcy Code provides that a plan may provide "for the sale of substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." 11 U.S.C. § 1123(b)(4).  Based upon my review of the Plan, the Plan does not provide for the sale of any property of the estate, which was substantially liquidated prior to the date the Plan was filed.  Accordingly, I believe that section 1123(b)(4) of the Bankruptcy Code is not applicable.

22.    Section 1123(b)(5) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."  Based upon my review of the Plan, the Plan modifies the rights of holders of secured claims (Class 1, Class 2, Class 3, Class 4 and Class 5). See Plan §§ 4.1-4.5.

The Plan also modifies the rights of holders of unsecured claims (Class 7). <u>See</u> Plan § 4.7. I believe that the modification of such rights is consistent with section 1123(b)(5) of the Bankruptcy Code.

23. Section 1123(b)(6) of the Bankruptcy Code provides that a Plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title." Based upon my review of the Plan, the Plan does provide additional appropriate provisions that are not inconsistent with applicable sections of the Bankruptcy Code, including, but not limited to: (i) Plan § 5.2 (appointment of Plan Administrator); (ii) Plan § 5.4 (establishment of Unsecured Creditor Trust) (iii) Plan § 5.7 (establishment of reserves) 8.1 (injunctions against interference with consummation or implementation of Plan); (iii) Plan § 8.2 (releases by Debtor and ACA and the Prepetition Bond Trustees and exculpations); and (iv) Plan § 9.10 (no distributions of less than one hundred dollars). I believe that these provisions are appropriate and consistent with the Bankruptcy Code, and thus, the Plan complies with section 1123(b) of the Bankruptcy Code.

24. Section 1123(c) of the Bankruptcy Code requires that in a case involving an individual, that "a plan proposed by an entity other than the debtor may not provide for the use, sale, or lease of property exempted under section 522 of this title, unless the debtor consents to such use, sale or lease." 11 U.S.C. § 1123(c). The Debtor is not an individual, and accordingly, I believe that section 1123(c) is not applicable.

25. Section 1123(d) of the Bankruptcy Code states that "[n]otwithstanding subsection (a) of this section and sections 506(b), 1129(a)(7), and 1129(b) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). Based upon my review of the Plan, the Plan does not contemplate the curing of any default. Accordingly, I believe that section 1123(d) is not applicable.

**B.      The Debtor Has Complied with the Requirements of Section 1129(a)(2) of the Bankruptcy Code.**

26.      Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [title 11 of the Bankruptcy Code]," including, without limitation, sections 1125 and 1126 of the Bankruptcy Code.  11 U.S.C. § 1129(a)(2).

27.      This Court has approved the Disclosure Statement, pursuant to section 1125 of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical reasonable investors typical of the Debtor's creditors to make an informed judgment whether to accept or reject the Plan.  Accordingly, I believe that the Debtor has complied with section 1125 of the Bankruptcy Code.  In addition, this Court entered the *Order Approving (I) Disclosure Statement, (II) Form and Manner of Notices, (III) Form of Ballots, and (IV) Solicitation Materials and Solicitation Procedures* (the "Solicitation Procedures Order").  As set forth in the Affidavit of Service of Lance Mulhern, sworn to on November 15, 2018 (the "Solicitation Affidavit") [Dkt. No. 646], the Debtor fully complied with the requirements of the Solicitation Procedures Order.  See, generally, Solicitation Affidavit.

28.      As set forth in the Solicitation Affidavit, in accordance with section 1126 of the Bankruptcy Code, the Debtor solicited votes on the Plan from holders of Claims in the Voting Classes.  See Solicitation Affidavit.  Each of the Voting Classes is impaired under the Plan, and will receive distributions under the Plan.  See Plan §§ 3.2, 4.1-4.5, 4.7.  Accordingly, pursuant to section 1126(a) of the Bankruptcy Code, holders of Claims in the Voting Classes were entitled to vote to accept or reject the Plan.  See Plan § 10.4.

29.      Class 6 (Priority Non-Tax Claims) is not impaired under the Plan.  See Plan §§ 3.2, 4.6.  As a result, pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims in Class 6

are conclusively presumed to have accepted the Plan.  As such, the votes of holders of Class 6 Claims were not solicited.  See Solicitation Affidavit.

**C.     Section 1129(a)(3) of the Bankruptcy Code is Satisfied.**

30.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  The Plan has been proposed by the Debtor in good faith, with the legitimate and honest purpose of maximizing the value of the Debtor's estate. The acceptance of the Plan by all six (6) of the Voting Classes reflects the overall fairness of the Plan and the acknowledgment by the Voting Classes that the Plan has been proposed in good faith and for proper purposes.  I believe that the Plan maximizes value and that there is no alternative to the Plan that would return more value to Creditors, and accordingly, believe that section 1129(a)(3) of the Bankruptcy Code is satisfied.

**D.     The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code.**

31.     Section 1129(a)(4) of the Bankruptcy Code requires that: "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."  In this Chapter 11 Case, the only such payments are to the retained professionals of the Debtor and the Creditors' Committee.  Based upon my review of the Plan, the Plan requires such persons to file final applications for allowance of professional fees and reimbursement of expenses within 30 days of the Effective Date of the Plan.  See Plan § 5.12. In addition, section 11.1(b) of the Plan provides that the Bankruptcy Court will retain jurisdiction after the Effective Date to hear and determine all applications for professional fees and

reimbursement of expenses.  I therefore believe that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

**E.      The Debtor Has Complied with Section 1129(a)(5) of the Bankruptcy Code.**

32.      Section 1129(a)(5)(A)(i) requires that the proponent of a plan disclose the identity and affiliations of any individual proposed to serve, after confirmation of a plan, as director, officer or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the Plan.

33.      The Plan satisfies section 1129(a)(5)(A)(i). The Plan discloses my appointment as Plan Administrator to complete the Debtor's wind-down and to make distributions to certain Classes of Creditors. See Plan §§ 1.73, 5.2, 5.3. The Plan also discloses the establishment of an Unsecured Creditor Trust to pursue causes of action and to make distributions to Class 7 General Unsecured Creditors. See Plan § 5.4. The trustee of the Unsecured Creditor Trust will be Ronald J. Friedman, currently one of the attorneys for the Creditors' Committee who will pursue Causes of Action on behalf of Class 7 General Unsecured Creditors and make distributions to such Class. See Plan §§ 1.108, 5.4(a), 5.5. The Plan further discloses that the Unsecured Creditor Trust Oversight Committee, comprised of the current members of the Creditors Committee, to oversee the activities of the Unsecured Creditor Trustee. See Plan §§ 1.107, 5.4(c). The Plan relates solely to the Debtor and not to any other person or entity.  Thus, I believe that the Debtor has complied with section 1129(a)(5)(A)(i) of the Bankruptcy Code.

34.      Section 1129(a)(5)(A)(ii) requires that the appointment of the person identified in accordance with section 1129(a)(5)(A)(i) be "consistent with the interests of creditors and equity security holders and with public policy."  11 U.S.C. § 1129(a)(5)(A)(ii).  As described above, the Plan contemplates my appointment as Plan Administrator. I believe that such appointment is

11

consistent with the interests of creditors and with public policy because, among other things, I have substantial knowledge of the Debtor's remaining Assets and have led the Debtor's wind-down activities for over two years, and my completion of such activities will therefore be the most economical and efficient and therefore satisfies section 1129(a)(5)(A)(ii) of the Bankruptcy Code. I further believe that the appointment of Ronald J. Friedman as Unsecured Creditor Trustee and the appointment of the Unsecured Creditor Trust Oversight Committee satisfies section 1129(a)(5)(A)(ii) of the Bankruptcy Code because those appointees have substantial experience in representing the interests of their constituency of General Unsecured Creditors and continuing such appointments is in the best interests of that constituency.   As a result, I believe that the requirements of section 1129(a)(5)(ii) of the Bankruptcy Code.

35.    Section 1129(a)(5)(B) of the Bankruptcy Code states that a plan may be confirmed if the proponent discloses the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.   11 U.S.C. § 1129(a)(5)(B).

36.    In my capacity as Chief Restructuring Officer, I am an officer of the Debtor. As a result, pursuant to section 101(31)(B) of the Bankruptcy Code, I may be considered an "insider." As described above, I will be appointed as Plan Administrator. It is my expectation that I will be compensated for being the Plan Administrator in the same manner and at the same rate as I was for acting as Chief Restructuring Officer of the Debtor. I respectfully submit that the foregoing statements satisfy section 1129(a)(5)(B) of the Bankruptcy Code.

**F.    Section 1129(a)(6) of the Bankruptcy Code is Not Applicable.**

37.    Section 1129(a)(6) of the Bankruptcy Code requires, with respect to a debtor the rates of which are subject to governmental regulation following confirmation, that appropriate

governmental approval has been obtained for any rate change provided for in the plan, or that such rate change be expressly conditioned on such approval. 11 U.S.C. § 1129(a)(6). Because there is no governmental regulatory commission that has jurisdiction over any rates of the Debtor, I believe that section 1129(a)(6) of the Bankruptcy Code is not applicable.

**G.    Section 1129(a)(7) of the Bankruptcy Code is Satisfied.**

38.    The "best interests of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest has accepted the plan or will receive property of a value not less than what such holder would receive if the debtor were liquidated under Chapter 7.

39.     The Plan received overwhelming support, with five (5) of the six (6) Voting Classes voting unanimously in favor of the Plan. Only one (1) creditor in Class 7, representing less than two percent (2%) in amount and less than one-half of one percent (1%) in number voted to reject the Plan.

40.    Notwithstanding the single dissenting vote in Class 7, the Plan can be confirmed because the Plan provides each impaired Class with a better treatment than would result if the Debtor were liquidated under Chapter 7. Attached hereto as **<u>Exhibit A</u>** is a liquidation analysis (the "<u>Liquidation Analysis</u>") that demonstrates the treatments for each Class under the Plan and in a hypothetical Chapter 7 scenario. The Plan, which is the product of extensive arms'-length negotiations between the Debtor, the Prepetition Secured Lenders, and the Creditors' Committee, includes the Unsecured Creditor Settlement, which, among other things, provides for the Unsecured Creditor Trust Initial Funding and the Priority Claim Contribution by the Prepetition Bond Trustees and ACA. Absent the Unsecured Creditor Trust Initial Funding and the Priority Claim Contribution, funds would not be available to pay Priority Non-Tax Claims or Priority Tax

Claims, much less General Unsecured Claims. The Unsecured Creditor Settlement would not be available in a Chapter 7 scenario. The Liquidation Analysis demonstrates the recoveries under the Plan with the benefits of the Unsecured Creditor Settlement and the likely recoveries without them. Based upon the Liquidation Analysis, it is indisputable that single holder of a Claim that has chosen to vote against the Plan, if any, will receive value under the Plan that is not less than such holder would receive if the debtor were liquidated in Chapter 7.

41.     Accordingly, I believe that the "best interests of creditors" test in section 1129(a)(7) is satisfied as to each impaired class of claims and interests because each dissenting holder of a Claim in each such Class will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive in a Chapter 7 liquidation of the Debtor's assets on such date.

42.     Finally, the docket of the Chapter 11 Case does not reflect an election by any class pursuant to § 1111(b)(2) of the Bankruptcy Code. Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**H.     Section 1129(a)(8) of the Bankruptcy Code is Satisfied.**

43.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests under a plan has either accepted the plan or is not impaired under the plan.  With respect to an unimpaired class of claims, under section 1126 of the Bankruptcy Code, any such unimpaired class of claims is "conclusively presumed" to have accepted the plan and need not be further examined under section 1129(a)(8). 11 U.S.C. § 1126(f).  Class 6 is not impaired and is therefore conclusively presumed to have accepted the Plan.  See Plan § 3.2.

44.     As to each Impaired Class, section 1126(c) of the Bankruptcy Code provides that a plan is accepted if the accepting class members hold at least two-thirds in amount and more than

14

one-half in number of the claims held by the class members that have cast votes on the plan, excluding any holder designated pursuant to section 1126(e) of the Bankruptcy Code. 11 U.S.C. § 1126(c).

45.    As set forth in the *Declaration of Joseph Arena on Behalf of Epiq Corporate Restructuring, LLC, Regarding Voting and Tabulation of Ballots Cast on the First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modified*[3], dated December 11, 2018 (the "Voting Declaration"), Classes 1, 2, 3, 4, 5 and 7 voted to accept the Plan, as follows:

| Class 1 – Prepetition Series 1996 Bonds | | Result |
|---|---|---|
| **Ballots Received** | 9 votes accepting the Plan.<br>0 votes rejecting the Plan. | **Accept** |
| **Acceptance** | 100.00% in number of voted accepting the Plan (9)<br>100.00% in dollar amount accepting the Plan ($2,595,000.00) | |
| **Rejection** | 0.00% in number of voted rejecting the Plan (0)<br>0.00% in dollar amount rejecting the Plan ($0.00) | |

| Class 2 – Prepetition Series 2002 Bonds | | Result |
|---|---|---|
| **Ballots Received** | 1 vote accepting the Plan.<br>0 votes rejecting the Plan. | **Accept** |
| **Acceptance** | 100% in number of voted accepting the Plan (1)<br>100.00% in dollar amount accepting the Plan ($11,692,882.29) | |
| **Rejection** | 0.00% in number of voted rejecting the Plan (0)<br>0.00% in dollar amount rejecting the Plan ($0.00) | |

---

[3] Garden City Group, LLC was acquired by EPIQ Class Action & Claims Solutions, Inc. on June 15, 2018

| Class 3 – Prepetition Series 2006 Bonds | | Result |
|---|---|---|
| **Ballots Received** | 1 vote accepting the Plan.<br>0 votes rejecting the Plan. | **Accept** |
| **Acceptance** | 100.00% in number of voted accepting the Plan (1)<br>100.00% in dollar amount accepting the Plan ($37,673,472.78) | |
| **Rejection** | 0.00% in number of voted rejecting the Plan (0)<br>0.00% in dollar amount rejecting the Plan ($0.00) | |

| Class 4 – Prepetition Series 2015 Bonds | | Result |
|---|---|---|
| **Ballots Received** | 2 votes accepting the Plan.<br>0 votes rejecting the Plan. | **Accept** |
| **Acceptance** | 100.00% in number of voted accepting the Plan (2)<br>100.00% in dollar amount accepting the Plan ($7,254,229.97) | |
| **Rejection** | 0.00% in number of voted rejecting the Plan (0)<br>0.00% in dollar amount rejecting the Plan ($0.00) | |

| Class 5 – Other Secured Claims | | Result |
|---|---|---|
| **Ballots Received** | 1votes accepting the Plan.<br>0 votes rejecting the Plan. | **Accept** |
| **Acceptance** | 100.00% in number of voted accepting the Plan (1)<br>100.00% in dollar amount accepting the Plan ($50,000.00) | |
| **Rejection** | 0.00% in number of voted rejecting the Plan (0)<br>0.00% in dollar amount rejecting the Plan ($0.00) | |

| Class 7 – General Unsecured Claims | | Result |
|---|---|---|
| **Ballots Received** | 211 votes accepting the Plan.<br>1 vote rejecting the Plan. | **Accept** |
| **Acceptance** | 99.53% in number of voted accepting the Plan (211)<br>98.13% in dollar amount accepting the Plan ($6,845,834.82) | |
| **Rejection** | 0.47% in number of voted rejecting the Plan (1)<br>1.87% in dollar amount rejecting the Plan ($130,500) | |

**I.    Section 1129(a)(9) of the Bankruptcy Code is Satisfied.**

46.    Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan.  Based upon my review of the Plan, the Plan satisfies each of the requirements of section 1129(a)(9).  First, consistent with section 1129(a)(9)(A) of the Bankruptcy Code, the Plan provides that all Allowed Priority Non-Tax Claims arising under sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code will either (a) be paid in Cash equal to the Allowed amount of such Priority Non-Tax Claim, or (b) such other treatment as to which the Debtor and the holder of a Priority Non-Tax Claim agree in writing. See Plan § 4.6.

47.    Second, consistent with section 1129(a)(9)(B) of the Bankruptcy Code, the Plan provides that all Allowed Priority Non-Tax Claims arising under sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, will either (a) be paid in Cash equal to the Allowed amount of such Priority Non-Tax Claim, or (b) such other treatment as to which the Debtor and the holder of a Priority Non-Tax Claim agree in writing.  See Id.

48.    Third, consistent with section 1129(a)(9)(C) of the Bankruptcy Code, the Plan provides that all Allowed Priority Tax Claims arising under section 507(a)(8) of the Bankruptcy Code will either (a) be paid in Cash equal to the Allowed amount of such Priority Non-Tax Claim, or (b) such other treatment as to which the Debtor and the holder of a Priority Non-Tax Claim agree in writing. See Plan § 2.1(c).

49.    Thus, I believe that the Plan complies with each of the requirements of section 1129(a)(9) of the Bankruptcy Code.

**J.    Section 1129(a)(10) of the Bankruptcy Code is Satisfied.**

50.    Section 1129(a)(10) of the Bankruptcy Code states that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted

the plan, determined without including any acceptance of the plan by any insider". 11 U.S.C. § 1129(a)(10). Based upon my review of the Voting Declaration, I believe that this requirement has been satisfied. As described in the Voting Declaration, the Plan has been accepted by Classes 1, 2, 3, 4, 5, and 7, none of which included an insider.

51.     As a result, at least one Class of Claims that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, as required by section 1129(a)(10) of the Bankruptcy Code.

**K.     Section 1129(a)(11) of the Bankruptcy Code is Satisfied.**

52.     Pursuant to section 1129(a)(11) of the Bankruptcy Code, a plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

53.     As described in detail in the Disclosure Statement, substantially all of the Debtor's physical assets were liquidated during the Chapter 11 Case. As a result, no further liquidation or reorganization will be required after confirmation of the Plan. I therefore believe that the feasibility requirement of section 1129(a)(11) is satisfied. Moreover, the Plan provides the funding necessary to implement the Plan in accordance with its terms. See Plan § 5.1.

**L.     The Plan Satisfies Section 1129(a)(12) of the Bankruptcy Code.**

54.     Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that provision be made for their payment. 11 U.S.C. § 1129(a)(12). Based upon my review of the Plan, this requirement has been satisfied. The Plan provides that all fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date (if any are

due) by the Debtor's estate.  See Plan §§ 1.3, 2.1(a). The Plan also provides for the payment, when

due, of all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6) from the Effective

Date until the Chapter 11 Case is closed.  See Plan, section 5.15(a).

**M.      Section 1129(a)(13) of the Bankruptcy Code is Not Applicable.**

55.      Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the

continuation, after the plan's effective date, of all retiree benefits at the level established by

agreement or by court order pursuant to section 1114 of the Bankruptcy Code at any time prior to

confirmation of the plan, for the duration of the period that the debtor has obligated itself to provide

such benefits.  The Debtor has no obligation to provide retiree benefits, and accordingly, I believe

that section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

**N.      Section 1129(a)(14) of the Bankruptcy Code is Not Applicable.**

56.      Section 1129(a)(14) of the Bankruptcy Code requires a debtor to pay all domestic

support obligations that first become payable after the date of the filing of the petition.  The Debtor

does not have any domestic support obligations, and accordingly, section 1129(a)(4) of the

Bankruptcy Code is not applicable.

**O.      Section 1129(a)(15) of the Bankruptcy Code is Not Applicable.**

57.      Section 1129(a)(15) of the Bankruptcy Code provides that in a case where the

debtor is an individual and in which the holder of an allowed unsecured claim objects to the

confirmation of the plan, either "(a) the value, as of the effective date of the plan, of the property

to be distributed under the plan on account of such claim is not less than the amount of such claim;

or (b) the value of the property to be distributed under the plan is not less than the projected

disposable income of the debtor as defined by section 1325(b)(2)) to be received during the 5-year

period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer."

58.     The Debtor is not an individual, and accordingly, I believe that section 1129(a)(15) of the Bankruptcy Code is not applicable.

**P.      Section 1129(a)(16) of the Bankruptcy Code is Satisfied.**

59.     Section 1129(a)(16) of the Bankruptcy Code requires that "[a]ll transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16).

60.     As a nonprofit entity, section 1129(a)(16) is applicable to the Debtor and the Plan. Substantially all physical assets of the Debtor's Estate were liquidated prior to the filing of the Plan, in each case consistent with applicable law governing nonprofit entities, including, without limitation, the New York Not for Profit Corporation Law and in each case was approved by the Bankruptcy Court.

**Q.      Section 1129(b) of the Bankruptcy Code Need Not be Invoked.**

61.     Section 1129(b)(1) of the Bankruptcy Code provides that, "if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent under the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

62.     As set forth above, all of the Voting Classes voted to accept the Plan. As a result, the Debtor need not invoke section 1129(b) of the Bankruptcy Code.

**R.      Section 1129(c) of the Bankruptcy Code is Satisfied.**

63.      Bankruptcy Code section 1129(c) states that a court "may only confirm one plan." 11 U.S.C. § 1129(c).   The Plan is the only plan that has been filed in this Chapter 11 Case. Accordingly, I believe that section 1129(c) of the Bankruptcy Code is satisfied.

**S.      Section 1129(d) of the Bankruptcy Code is Satisfied.**

64.      Section 1129(d) of the Bankruptcy Code states that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."   The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.   Moreover, no party that is a governmental unit, or any other entity, has requested that the Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, I believe that the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## <u>CONCLUSION</u>

As evidenced by its overwhelming approval by the Voting Classes, the Plan overall is fair in my opinion, and reasonable and has been proposed in good faith and for proper purposes.   The Plan will enable the maximization of value for the benefit of the Debtor's creditors and all parties-in-interest.   For all of these reasons, I respectfully submit that the Court should confirm the Plan.

[remainder of page intentionally blank]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:      New York, New York
            December 11, 2018

                                        *Robert S. Rosenfeld*
                                        Robert S. Rosenfeld
                                        Chief Restructuring Officer

**Exhibit A**

**Liquidation Analysis**

|  |  | Plan | | Ch. 7 | |
|---|---|---|---|---|---|
|  | **Assets:** |  |  |  |  |
| 1 | Cash | $ | 5,760,000 | $ | 5,760,000 |
| 2 | Brookhaven Campus Real Estate | $ | 12,830,000 | $ | 12,830,000 |
| 3 | Oakdale Residential Real Estate | $ | 912,800 | $ | 912,800 |
| 4 | Other Assets | $ | 170,000 | $ | 170,000 |
|  |  | $ | 19,672,800 | $ | 19,672,800 |
|  |  |  |  |  |  |
| 5 | **DIP Facility Outstanding Balance** | $ | (3,150,000) | $ | (3,150,000) |
|  |  |  |  |  |  |
|  | **Administrative Claims** |  |  |  |  |
| 6 | Costs through Confirmation | $ | (750,000) | $ | (750,000) |
| 7 | Professional Fees | $ | (675,000) | $ | (675,000) |
| 8 | Post Confirmation Wind Down Budget | $ | (750,000) | $ | (750,000) |
| 9 | U.S. Trustee Fees | $ | (50,000) |  | n/a |
|  |  |  |  |  |  |
|  | **Ch. 7 Expenses** |  |  |  |  |
| 10 | Chapter 7 Trustee Commissions |  | n/a | $ | (650,000) |
| 11 | Chapter 7 Trustee Legal Counsel |  | n/a | $ | (250,000) |
| 12 | Chapter 7 Trustee Financial Advisor |  | n/a | $ | (50,000) |
| 13 | Estimated Wind Down Costs |  | n/a | $ | (225,000) |
|  |  |  |  |  |  |
|  | Net Available for Distribution | $ | 14,297,800 | $ | 13,172,800 |

|  |  | $ Recovery | % Recovery | $ Recovery | % Recovery |
|---|---|---|---|---|---|
| 14 | Prepetition Senior Secured Claims | $ 10,997,800 | 58% | $ 13,172,800 | 61% |
| 15 | Other Secured Claims | $ 0 | 0% | $ 0 | 0% |
| 16 | Priority Tax Claims | $ 1,200,000 | 100% | $ 0 | 0% |
| 17 | Priority Non-Tax Claims | $ 1,800,000 | 100% | $ 0 | 0% |
| 18 | General Unsecured Claims | $ 300,000 | < 1% | $ 0 | 0% |

1

Notes:

1        From MOR less Department of Education share of Perkins Funds.

2        Projected net proceeds after broker commissions, real estate tax pro-ration and other closing expenses.

3        Projected net proceeds after broker commissions, real estate tax pro-ration and other closing expenses.

4        Estimated mid-point value of remaining miscellaneous assets for liquidation.

5        Based upon DIP facility outstanding as of August 31, 2018.

6        Estimated costs and professional fees from August 31, 2018 through plan confirmation (funded through the DIP Facility).

7        Reflects 20% retained professional holdback amounts (actual through 8-31-18 plus projected through Plan confirmation).

8        Estimated costs to complete post-confirmation winddown including expenses and Debtor's professional fees.

9        U.S. Trustee fees based upon actual and projected disbursements through Plan confirmation.

10       Chapter 7 Trustee fees based upon actual and projected disbursements through Plan confirmation.

11       Estimated fees of Chapter 7 Trustee legal counsel.

12       Estimated fees of Chapter 7 Trustee financial advisor.

13       Estimated costs to complete post-confirmation winddown excluding expenses and Debtor's professional fees.

14       Stipulated claim amounts as per Unsecured Creditor Settlement, less net proceeds applied during the Chapter 11 case through August 31, 2018.

|  | Prepetition Series 1996 Bonds | Prepetition Series 2002 Bonds | Prepetition Series 2006 Bonds | Prepetition Series 2015 Bonds | Total |
|---|---|---|---|---|---|
| Secured Claim Amt | $  3,615,731 | $ 11,692,882 | $ 39,701,471 | $  7,598,310 | $ 62,608,394 |
| Prior Repayments | $          - | $            - | $(17,494,170) | $ (7,598,310) | $(25,092,480) |
| Net Claims at 8-31-18 | $  3,615,731 | $ 11,692,882 | $ 22,207,300 | $          - | $ 37,515,913 |

15       No excess collateral value after Prepetition Senior Secured Claims available to Other Secured Claims.  Will be treated as General Unsecured Claims.

16       Priority Tax Claims are being funded out of secured debt collateral under the Plan pursuant to the Unsecured Creditor Settlement.  The Prepetition Bond Trustees' and ACA's contribution to the payment of Priority Claims is not applicable under a Chapter 7 scenario.

17       Includes NYS Self-Insured Unemployment payments and employee 507(a) Priority Claims being funded out of secured debt collateral under the Plan pursuant to the Unsecured Creditor Settlement.  The Prepetition Bond Trustees' and ACA's contribution to the payment of Priority Claims is not applicable under a Chapter 7 scenario.

18      General Unsecured Claims.  $300k is being funded into Unsecured Creditor Trust for the benefit of General Unsecured Creditors out of secured debt collateral under the Plan pursuant to the Unsecured Creditor Settlement.  The Prepetition Bond Trustees' and ACA's contribution to the Unsecured Creditor Trust is not applicable under a Chapter 7 scenario.