**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Joseph C. Corneau
Lauren C. Kiss

*Attorneys for Dowling College, Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                  :    Chapter 11
                                                       :
DOWLING COLLEGE,                                       :    Case No. 16-75545 (REG)
f/d/b/a DOWLING INSTITUTE,                             :
f/d/b/a DOWLING COLLEGE ALUMNI                         :
ASSOCIATION,                                           :
f/d/b/a CECOM,                                         :
a/k/a DOWLING COLLEGE, INC.,                           :
                                                       :
                              Debtor.                  :
------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF ENTRY OF**
**AN ORDER CONFIRMING THE FIRST AMENDED PLAN OF**
**LIQUIDATION OF DOWLING COLLEGE PURSUANT**
**TO CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................v

I.    PRELIMINARY STATEMENT .....................................................................1

II.   BACKGROUND AND OVERVIEW OF THE PLAN ......................................2

    A.  Background ..............................................................................................2

    B.  The Plan ..................................................................................................3

    C.  The Solicitation of Votes and Noticing of Non-Voting Classes ..................................4

III.  THE PLAN SHOULD BE CONFIRMED ..........................................................5

    A.  The Plan Complies With The Applicable Provisions of Title 11
       (Section 1129(a)(1)) ................................................................................7

      i.        The Plan Designates Classes of Claims and Interests.....................................10

      ii.       The Plan Identifies Unimpaired Classes of Claims and Interests ....................10

      iii.     The Plan Specifies The Treatment of Impaired Classes ..................................10

      iv.     The Plan Provides The Same Treatment Within Each Class ............................11

      v.       The Plan Provides Adequate Means for Implementation ................................11

      vi.     Prohibition On The Issuance Of Non-Voting Securities ................................12

      vii.    Selection Of Trustees, Member And Manager ................................................12

      viii.   Impairment and Non-Impairment of Claims and Interests ............................13

      ix.     Executory Contracts and Unexpired Leases ..................................................14

      x.       Settlements and Retention of Claims..............................................................15

      xi.     Sale of Property and Distribution of Proceeds................................................15

      xii.    Modification of Rights of Holders of Secured Claims and Unsecured
             Claims ............................................................................................................15

      xiii.   The Plan Includes Other Provisions That Are Not Inconsistent With
             Applicable Sections Of The Bankruptcy Code ................................................16

B. The Debtor Has Complied With The Applicable Provisions Of
Title 11 (Section 1129(a)(2)) ..........................................................................17

C. The Plan Was Proposed In Good Faith (Section 1129(a)(3)) ......................................18

D. All Payments To Be Made By The Estate In Connection With This Case Are
Subject To The Approval Of The Court (Section 1129(a)(4)) ....................................21

E. Disclosure of All Required Information Regarding Post-Confirmation Directors,
Management and Insiders (Section 1129(a)(5)) ..........................................................22

F. The Plan Does Not Provide For Any Rate Change Subject To Regulatory
Approval (Section 1129(a)(6)) ....................................................................................24

G. The Plan Satisfies The "Best Interests" Test (Section 1129(a)(7)) .............................24

H. Each Impaired Class, Except for Class 8, Has Voted to Accept the Plan
(Section 1129(a)(8)) ....................................................................................................26

I. The Plan Provides For The Payment Of Priority Claims (Section 1129(a)(9)) ...........27

J. The Plan Has Been Accepted By At Least One Impaired, Non-Insider Class
(Section 1129(a)(10)) ..................................................................................................28

K. The Plan Is Feasible or Feasibility Analysis Not Applicable
(Section 1129(a)(11)) ..................................................................................................28

L. The Plan Provides For The Payment of Certain Fees (Section 1129(a)(12)) ..............29

M. Preservation of Retiree Benefits(Section 1129(a)(13)) ...............................................29

N. Domestic Support Obligations (Section 1129(a)(14) .................................................30

O. Requirements for Individual Chapter 11 Cases Not Applicable
(Section 1129(a)(15)) ..................................................................................................30

P. Property Transfers By Corporations or Trusts that are not Moneyed, Business or
Commercial Corporations or Trusts (Section 1129(a)(16)).........................................30

Q. Fair and Equitable; No Unfair Discrimination (Section 1129(b)) ...............................31

R. Confirmation of One Plan (Section 1129(c)) ..............................................................31

S. The Principal Purpose of the Plan is Not Avoidance of Taxes or Section 5 of the
Securities Act (Section 1129(d)) .................................................................................32

T.  Compliance with Bankruptcy Rule 3016 ...................................................................32

IV.  THE INJUNCTIONS, RELEASES AND
EXCULPATIONS SHOULD BE APPROVED ...............................................................32

A.  The Injunctions ...........................................................................................33

B.  The Releases ...............................................................................................35

C.  The Exculpation ..........................................................................................37

CONCLUSION .............................................................................................................41

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

ACC Bondholder Group v. Adelphia Communications Corp.,
  (In re Adelphia Communications Corp.), 361 B.R. 337 (S.D.N.Y. 1997)................................ 25

Argo Fund Ltd. v. Bd. of Dirs. Of Telecom Argentina, S.A.
  (In re Bd. of Dirs. Of Telecom Argentina, S.A.),,
  528 F.3d 162 (2d Cir. 2008)........................................................................................................ 19

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,
  526 U.S. 434 (1999)..................................................................................................................... 25

Coltex Loop Central Three Partners, L.P. v. BT/SAP Pool C Assocs., L.P.,
  (In re Coltex Loop Central Three Partners, L.P.), 138 F.3d 39 (2d Cir. 1998) ......................... 5

Corestates Bank N.A. v. United Chemical Techs., Inc.,
  202 B.R. 33 (Bankr. E.D. Pa. 1996) ........................................................................................... 7

Davis v. Elliot Mgmt. Corp. (In re Lehman Bros. Holdings Inc.),
  508 B.R. 283 (S.D.N.Y. 2014)..................................................................................................... 21

Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters.,
  (In re Briscoe Enters.), 994 F.2d 1160 (5th Cir. 1993)........................................................... 6, 7

In re 20 Bayard Views, LLC,
  445 B.R. 83 (Bankr. E.D.N.Y. 2011)...................................................................................... 17, 25

In re 203 N. LaSalle St. Ltd. P'ship,
  190 B.R. 567 (Bankr. N.D. Ill. 1995) ........................................................................................ .25

In re Adelphia Communications Corp.,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007) .................................................................................... 6, 41

In re Bally Total Fitness,
  2007 WL 2779438 ............................................................................................................ 34, 36, 39

In re Best Prods. Co.,
  68 F.3d 26 (2d Cir. 1995)............................................................................................................. 25

In re Best Prods. Co.,
  168 B.R. 35 (Bankr. S.D.N.Y. 1994) .......................................................................................... 25

In re Best Prods. Co.,
    177 B.R. 791 (S.D.N.Y.) ................................................................. 25

In re Borders Grp.,
    Case No. 11-10614(MG) (Bankr. S.D.N.Y. Dec. 21, 2011) ................... 40

In re Cellular Info. Sys., Inc.,
    171 B.R. 926 (Bankr. S.D.N.Y. 1994) ............................................... 19

In re Cengage Learning, Inc.,
    Case No. 13-44106(ESS) (Bankr. E.D.N.Y. March 14, 2014) ............... 35

In re DBSD N. Am., Inc.,
    419 B.R. 179, 217-18 (Bankr. S.D.N.Y. 2009) ................................... 41

In re DBSD N. Am., Inc.,
    627 F.3d 496 (2d Cir. 2010) ........................................................... 41

In re Drexel Burnham Lambert Grp, Inc.,
    960 F.2d 285 ................................................................................. 39

In re Ellis,
    478 B.R. 132 (Bankr. N.D.N.Y. 2012) ................................................ 6

In re Future Energy Corp.,
    83 B.R. 470 (Bankr. S.D. Ohio 1988) ............................................... 21

In re Genco Shipping & Trading Ltd.,
    513 B.R. 233 (Bankr. S.D.N.Y. 2014) ............................................... 19

In re Granite Broadcasting Corp.,
    369 B.R. 120 (Bankr. S.D.N.Y. 2007) .......................................... 19, 20

In re Holywell Corp.,
    913 F.2d 873 (11th Cir. 1990) ...................................................... 8, 9

In re Ionsphere Clubs, Inc.,
    184 B.R. 648 (S.D.N.Y. 1995) ........................................................ 34

In re Jersey City Med. Center,
    817 F.2d 1055 (3d Cir. 1987) ........................................................... 8

In re Jennifer Convertibles, Inc.,
    447 B.R. 713 (Bankr. S.D.N.Y. 2011) .............................................. 25

In re Johns-Manville Corp.,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986) ................................................................. 21

In re Journal Register Co.,
  407 B.R. 520 (Bankr. S.D.N.Y. 2009) ................................................................ 21

In re Koelbl,
  751 F.2d 137 (2d Cir. 1984) .............................................................................. 19

In re Leslie Fay Cos., Inc.,
  207 B.R. 764 (Bankr. S.D.N.Y. 1997) ........................................................... 19, 25

In re Lionel L.L.C.,
  2008 Bankr. LEXIS 1047 (Bankr. S.D.N.Y. March 31, 2008) ................................ 19

In re Linda Vista Cinemas, L.L.C.,
  442 B.R. 724 (Bankr. D. Ariz. 2010) ................................................................. 23

In re Madison Hotel Assocs.,
  749 F.2d 410 (7th Cir. 1984) ............................................................................ 19

In re MF Global Inc.,
  478 B.R. 611 (Bankr. S.D.N.Y. 2012) ................................................................ 11

In re Momentum Mfg. Corp.,
  F.3d 1132 (2d Cir. 1994) ................................................................................. 34

In re Old Carco LLC,
  406 B.R. 180 (Bankr. S.D.N.Y. 2009) ................................................................ 14

In re Oneida Ltd.,
  351 B.R. 79 (Bankr. S.D.N.Y. 2006) ............................................................. 19, 38

In re Penn Traffic Co.,
  524 F.3d 373 (2d Cir. 2008) ............................................................................. 14

In re Personal Communications Devices, LLC,
  Case No. 13-74303(AST) (Bankr. E.D.N.Y. April 14, 2014) ................................. 35

In re Purofied Down Prods. Corp.,
  150 B.R. 519 (S.D.N.Y. 1993) .......................................................................... 36

In re PWS Holding Corp.,
  228 F.3d 224 (3d Cir. 2000) ........................................................................ 20, 40

In re Quigley Co., Inc.,
    437 B.R. 102 (Bankr. S.D.N.Y. 2010) ............................................................. 6, 19

In re Richard Buick, Inc.,
    126 B.R. 840 (Bankr. E.D. Pa. 1991) ...................................................................... 6

In re Sabine Oil & Gas Corp.,
    555 B.R. 180 (Bankr. S.D.N.Y. 2016) ........................................................... 6, 8, 17

In re Sabine Oil & Gas Corp.,
    2016 WL 6238616 (S.D.N.Y. Oct. 24, 2016) ........................................................ 6

In re Sabine Oil & Gas Corp.,
    2017 WL 477780 (S.D.N.Y. Feb. 3, 2017) ............................................................. 6

In re Saint Vincent's Catholic Medical Centers of New York,
    Case No. 10-11963(CGM) (Bankr. S.D.N.Y. June 29, 2012) ................................ 35

In re Source Enters., Inc.,
    392 B.R. 541 (S.D.N.Y. 2008) ................................................................................ 9

In re Source Enters., Inc.,
    No. 06-11707 (AJG), 2007 WL 2903954 (Bankr. S.D.N.Y. Oct. 1, 2007) ............ 20

In re Spiegel, Inc.,
    No. 03-11540, 2005 WL 1278094 (Bankr. S.D.N.Y. May 25, 2005) ..................... 36

In re Texaco Inc.,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988) ....................................................................... 8

In re Texas Extrusion Corp.,
    844 F.2d 1142 (5th Cir. 1988) .............................................................................. 19

In re Uno Rest. Holdings Corp.,
    Case No. 10-10209(MG) (Bankr. S.D.N.Y. July 6, 2010) ....................................

In re Victory Constr. Co., Inc.,
    42 B.R. 145 (Bankr. C.D. Cal. 1984) ..................................................................... 25

In re Wash. Mut., Inc.,
    442 B.R. 314 (Bankr. D. Del. 2011) ...................................................................... 26

In re Worldcom, Inc.,
    2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ................................... 6, 7, 8

Kane v. Johns-Manville Corp.,
   843 F.2d 636 (2d Cir. 1988)........................................................................... 7, 19

Lubrizol Enters. v. Richmond Metal Finishers,
   756 F.2d 1043 (4th Cir. 1985) .......................................................................... 14

N.L.R.B. v. Bildisco & Bildisco,
   465 U.S. 513 (1984)........................................................................................ 14

Norwest Bank Worthington v. Ahlers,
   485 U.S. 197 (1988) ......................................................................................... 5

Plaza Equities LLC v. Pauker (In re Copperfield Invs., LLC),
   401 B.R. 87 (Bankr. E.D.N.Y. 2009) ............................................................... 36

Teamster's Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co.,
   (In re U.S. Truck Co.), 800 F.2d 581 (6th Cir. 1986) ........................................ 9

Upstream Upstream Energy Servs. v. Enron Corp.
   (In re Enron Corp.), 326 B.R. 497 (S.D.N.Y. 2005) ................................ 38, 39, 40

Williams v. Hibernia Nat'l Bank,
   (In re Williams), 850 F.2d 250 (5th Cir. 1988).................................................. 5

**Statutes and Other Authorities:**

3 Collier Bankruptcy Manual 1129................................................................... 6

7 Collier Bankruptcy Manual 1123................................................................... 13

7 Collier Bankruptcy Manual 1129................................................................... 21

11 U.S.C. § 101(31)(B) ................................................................................... 24

11 U.S.C. § 105(a) .......................................................................................... 24

11 U.S.C. § 365 .............................................................................................. 14

11 U.S.C. § 365(a) ...................................................................................... 14, 15

11 U.S.C. § 506(b) .......................................................................................... 17

11 U.S.C. § 507(a)(1)....................................................................................... 27

11 U.S.C. § 507(a)(2)................................................................................... 10, 27

11 U.S.C. § 507(a)(3) .................................................................................. 10, 27

11 U.S.C. § 507(a)(4) ........................................................................................... 27

11 U.S.C. § 507(a)(5) ........................................................................................... 27

11 U.S.C. § 507(a)(6) ........................................................................................... 27

11 U.S.C. § 507(a)(7) ........................................................................................... 27

11 U.S.C. § 507(a)(8) ........................................................................................... 10

11 U.S.C. § 1107(a) ............................................................................................... 2

11 U.S.C. § 1108 .................................................................................................... 2

11 U.S.C. § 1114 .................................................................................................. 29

11 U.S.C. § 1122 ................................................................................... 7, 8, 9, 17

11 U.S.C. § 1122(a) ........................................................................................... 8, 9

11 U.S.C. § 1123 ....................................................................................... 7, 8, 17

11 U.S.C. § 1123(a) ............................................................................................... 9

11 U.S.C. § 1123(a)(1) ..................................................................................... 9, 10

11 U.S.C. § 1123(a)(2) ......................................................................................... 10

11 U.S.C. § 1123(a)(3) ................................................................................... 10, 11

11 U.S.C. § 1123(a)(4) ......................................................................................... 11

11 U.S.C. § 1123(a)(5) ................................................................................... 11, 12

11 U.S.C. § 1123(a)(6) ......................................................................................... 12

11 U.S.C. § 1123(a)(7) ......................................................................................... 12

11 U.S.C. § 1123(b) ............................................................................................. 13

11 U.S.C. § 1123(b)(1) ................................................................................... 13, 14

11 U.S.C. § 1123(b)(2) ................................................................................... 14, 15

11 U.S.C. § 1123(b)(3) ................................................................................... 15, 36

11 U.S.C. § 1123(b)(3)(A) .......................................................................................... 36

11 U.S.C. § 1123(b)(4) ............................................................................................... 15

11 U.S.C. § 1123(b)(5) ........................................................................................... 15, 16

11 U.S.C. § 1123(b)(6) ............................................................................................... 16

11 U.S.C. § 1123(c) .................................................................................................... 16

11 U.S.C. § 1123(d) .................................................................................................... 17

11 U.S.C. § 1125 ........................................................................................................ 17

11 U.S.C. § 1126 ............................................................................................. 17, 18, 26

11 U.S.C. § 1126(a) .................................................................................................... 18

11 U.S.C. § 1126(c) .................................................................................................... 27

11 U.S.C. § 1126(f) ........................................................................................... 4, 18, 26

11 U.S.C. § 1129 .......................................................................................................... 6, 7

11 U.S.C. § 1129(a) ................................................................................................... 7, 8

11 U.S.C. § 1129(a)(1) ......................................................................................... 7, 8, 17

11 U.S.C. § 1129(a)(2) ........................................................................................... 17, 18

11 U.S.C. § 1129(a)(3) ....................................................................................... 18, 19, 21

11 U.S.C. § 1129(a)(4) ....................................................................................... 21, 22, 30

11 U.S.C. § 1129(a)(5) ........................................................................................... 12, 22

11 U.S.C. § 1129(a)(5)(A)(i) .................................................................................. 22, 23

11 U.S.C. § 1129(a)(5)(A)(ii) ................................................................................. 23, 24

11 U.S.C. § 1129(a)(5)(B) ........................................................................................... 24

11 U.S.C. § 1129(a)(6) ................................................................................................ 24

11 U.S.C. § 1129(a)(7) ........................................................................................... 17, 24

11 U.S.C. § 1129(a)(8) ............................................................................................... 26

11 U.S.C. § 1129(a)(9) ........................................................................................... 27, 28

11 U.S.C. § 1129(a)(9)(A) ......................................................................................... 27

11 U.S.C. § 1129(a)(9)(C) ......................................................................................... 28

11 U.S.C. § 1129(a)(10) ............................................................................................. 28

11 U.S.C. § 1129(a)(11) ........................................................................................ 28, 29

11 U.S.C. § 1129(a)(12) ............................................................................................. 29

11 U.S.C. § 1129(a)(13) ............................................................................................. 29

11 U.S.C. § 1129(a)(14) ........................................................................................ 29, 30

11 U.S.C. § 1129(a)(15) ............................................................................................. 30

11 U.S.C. § 1129(a)(16) ........................................................................................ 30, 31

11 U.S.C. § 1129(b) ............................................................................................... 17, 31

11 U.S.C. § 1129(b)(1) ............................................................................................... 31

11 U.S.C. § 1129(c) ................................................................................................... 31

11 U.S.C. § 1129(d) ............................................................................................... 31, 32

11 U.S.C. § 1325(b)(2) ............................................................................................... 30

11 U.S.C. §§ 101-1532 ................................................................................................ 2

28 U.S.C. § 1930 ....................................................................................................... 29

28 U.S.C. § 1930(a)(6) ............................................................................................... 29

Federal Rule of Bankruptcy Procedure 3016 ............................................................ 32

Federal Rule of Bankruptcy Procedure 3016(a) ....................................................... 32

Federal Rule of Bankruptcy Procedure 3016(b) ....................................................... 32

Federal Rule of Bankruptcy Procedure 3016(c) ....................................................... 32

Securities Act of 1933 § 5............................................................................................................. 32

Dowling College ("Dowling" or the "Debtor"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case") submits this *Memorandum of Law in Support of Entry of an Order Confirming the First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modified* (the "Memorandum of Law") and respectfully states as follows:

## I.    PRELIMINARY STATEMENT

1.      On September 21, 2018, the Debtor filed the Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code (the "Initial Plan") [Dkt. No. 604] and the Disclosure Statement for Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code (the "Initial Disclosure Statement") [Dkt. No. 605].

2.      Following receipt of comments from various interested parties, the Debtor filed the *First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code*, dated October 31, 2018 [Dkt. No. 629] (the "First Amended Plan") and related *First Amended Disclosure Statement for First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code*, dated October 31, 2018 (the "First Amended Disclosure Statement") [Dkt. No. 630].

3.      Following the hearing to consider approval of the First Amended Disclosure Statement on November 5, 2018 and prior to solicitation of votes, the Debtor filed the *First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modifed*, dated October 31, 2018 (the "Plan") [Dkt. No. 640] and the *First Amended Disclosure Statement for First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modified* (the "Disclosure Statement") [Dkt. No. 641].

4.      The Plan and Disclosure Statement represent the culmination of substantial efforts by the Debtor to propose a fair and equitable resolution of the financial and legal issues presented

in this Chapter 11 case.  These efforts have resulted in a plan that maximizes value for the Debtor's creditors.

5.     As discussed more fully below, the Debtor submits that the Plan satisfies all applicable requirements of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Local Bankruptcy Rules for the Eastern District of New York (the "<u>Local Rules</u>").

6.     The Plan has been accepted by each of Class 1, Class 2, Class 3, Class 4, Class 5, and Class 7. <u>See</u> *Declaration of Joseph Arena on Behalf of Epiq Corporate Restructuring, LLC, Regarding Voting and Tabulation of Ballots Cast on the First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, as Modified* [Dkt. No. 652] filed concurrently herewith (the "<u>Voting Declaration</u>") Exhibit A. Class 6 was not impaired under the Plan and therefore is conclusively presumed to accept the Plan.

7.     No objections to confirmation of the Plan were filed or received.

## II.     BACKGROUND AND OVERVIEW OF THE PLAN

### A.     <u>Background</u>

8.     On November 29, 2016 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (this "<u>Court</u>" or "<u>Bankruptcy Court</u>").

9.     The Debtor continues to manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10.     No trustee or examiner has been appointed in this Chapter 11 Case.

11.     On December 9, 2016, the United States Trustee appointed Ultimate Power Inc., Linda Ardito and Lori Zaikowski to the Official Committee of Unsecured Creditors (the

"Creditors' Committee").  Later that day, the Creditors' Committee selected SilvermanAcampora LLP as its general bankruptcy counsel.

12.     Prior to the Petition Date, the Debtor retained Robert S. Rosenfeld of RSR Consulting, LLC to perform the functions and hold the title of Chief Restructuring Officer (the "CRO").  The CRO has taken over as the day-to-day manager of the Debtor and is responsible for managing the Debtor as debtor-in-possession in this Chapter 11 Case, assisting in the formulation, preparation and consummation of a plan and performing such other duties customary to a chief restructuring officer.

13.     The factual background relating to the Debtor's commencement of this Chapter 11 Case and the facts and circumstances supporting the relief requested herein are set forth in greater detail in the Declaration of Robert S. Rosenfeld, Chief Restructuring Officer to the Debtor, Pursuant to Local Bankruptcy Rule 1007-4 in Support of First Day Motions [Dkt. No. 23].

B.     The Plan

14.     The Plan provides for the classification of certain classes of Claims[1] as impaired or not impaired.  The classification scheme is set forth in the table below.

| Class | Type of Claim | Impairment | Entitled to Vote |
|-------|---------------|------------|------------------|
| N/A | Administrative Expense Claims | Not Impaired | N/A |
| N/A | The DIP Term Loans | Not Impaired | N/A |
| N/A | Priority Tax Claims | Not Impaired | N/A |
| N/A | Professional Fee Claims | Not Impaired | N/A |
| 1 | Prepetition Series 1996 Bonds | Impaired | Yes |
| 2 | Prepetition Series 2002 Bonds | Impaired | Yes |
| 3 | Prepetition Series 2006 Bonds | Impaired | Yes |
| 4 | Prepetition Series 2015 Bonds | Impaired | Yes |
| 5 | Other Secured Claims | Impaired | Yes |
| 6 | Priority Non-Tax Claims | Not Impaired | No; conclusively presumed to accept |
| 7 | General Unsecured Claims | Impaired | Yes |

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

15.    Thus, other than claims that are not required to be classified under the Bankruptcy Code, the Plan provides for seven (7) different classes of Claims.

16.    Class 6 (Priority Non-Tax Claims) is not impaired under the Plan and is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the votes of holders of Class 6 Claims were not solicited. See Rosenfeld Declaration ¶ 29.

17.    Classes 1, 2, 3, 4, 5 and 7 (the "Voting Classes") are impaired under the Plan. The votes of holders of Claims in the Voting Classes were solicited. See Rosenfeld Declaration ¶ 28, Voting Declaration ¶ 4. Each of Voting Classes voted in favor of the Plan.  See Voting Declaration Exhibit A.

C.    The Solicitation of Votes and Noticing of Non-Voting Classes.

18.    On October 3, 2018, the Debtor filed the *Debtor's Motion for Entry of an Order Approving (I) Disclosure Statement, (II) Form and Manner of Notices, (III) Form of Ballots and (IV) Solicitation Materials and Solicitation Procedures* (the "Solicitation Procedures Motion") [Dkt. No. 615].

19.    On November 6, 2018, the Court entered its *Order Approving (I) Disclosure Statement, (II) Form and Manner of Notices, (III) Form of Ballots and (IV) Solicitation Materials and Solicitation Procedures* (the "Solicitation Procedures Order") [Dkt. No. 639]. By the Solicitation Procedures Order, the Bankruptcy Court, *inter alia*, approved the Disclosure Statement as containing adequate information sufficient for a reasonable hypothetical investor to make an informed judgment about the Plan.

20.    On November 9, 2018, the Debtor commenced its solicitation (the "Solicitation") of votes on the Plan, by mailing to the members of each of the Voting Classes, a package containing (a) the Confirmation Hearing Notice (as defined in the Solicitation Procedures Motion) (b) one of

the Ballots (as defined in the Solicitation Procedures Motion); and (c) a self-addressed postage prepaid envelope. See Affidavit of Service of Lance Mulhern, sworn to on November 15, 2018 (the "Solicitation Affidavit") [Dkt. No. 646] ¶ ¶ 3-9.

21.     In addition, as required by the Solicitation Procedures Order, on November 9, 2018, holders of Unclassified Claims and Class 6 Claims were mailed a package containing (a) the Confirmation Hearing Notice; and (b) the Notice of Non-Voting substantially in the form annexed to the Solicitation Procedures Motion as Exhibit G. See Solicitation Affidavit ¶ 8.

22.     As provided in the Solicitation Procedures Order, the deadline to vote on the Plan was set for December 10, 2018.

23.     As set forth in the Voting Declaration, all six (6) of the of the Voting Classes voted to accept the Plan. See Voting Declaration Exhibit A.

24.     The Bankruptcy Court scheduled the Confirmation Hearing for 1:30 p.m. on December 17, 2018 and set an objection deadline of December 10, 2018. Notice of the dates and times for the Confirmation hearing and objection deadline was included in the Confirmation Hearing Notice (as defined in the Solicitation Procedures Motion).

## III.    THE PLAN SHOULD BE CONFIRMED

25.     Applicable case law holds that when considering confirmation of a chapter 11 plan, creditor democracy, an integral element in a chapter 11 case, should be afforded substantial deference in the absence of a clear impediment to plan confirmation.  See, e.g., Williams v. Hibernia Nat'l Bank (In re Williams), 850 F.2d 250, 253 (5th Cir. 1988).  Further, the United States Supreme Court has emphasized that creditors should be permitted to decide whether the proposed plan treatment is in their best interests.  See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 207 (1988); see also Coltex Loop Cent. Three Partners, L.P. v. BT/SAP Pool C Assocs., L.P. (In re Coltex Loop Central Three Partners, L.P.), 138 F.3d 39, 44 (2d Cir. 1998) ("The Code thus

strikes a considered balance between creditor and debtor interests, which . . . courts must scrupulously respect."). In this case, all six (6) of the Voting Classes voted to accept the Plan.

26.    However, the Court has an independent duty to ensure that the Plan satisfies each of the requirements of section 1129 of the Bankruptcy Code.

27.    The Debtor, as proponent of the Plan, bears the burden of proof on all elements necessary for confirmation. See, e.g., 3 COLLIER BANKRUPTCY MANUAL ¶ 1129.02[4], at 1129 – 6 (3d ed. revised 2005); see also In re Sabine Oil & Gas Corp., 555 B.R. 180, 310 (Bankr. S.D.N.Y. 2016), motion to certify appeal denied, No. 16-CV-2561 (JGK), 2016 WL 6238616 (S.D.N.Y. Oct. 24, 2016), and appeal dismissed as moot, No. 16 CIV. 6054 (LAP), 2017 WL 477780 (S.D.N.Y. Feb. 3, 2017); In re Ellis, 478 B.R. 132, 139 (Bankr. N.D.N.Y. 2012) ("The Debtor has the burden to establish all of the elements essential to confirmation of the Plan."); In re Adelphia Comm'ns Corp., 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007) (plan proponent possesses burden to establish the satisfaction of the best interests test); see also In re WorldCom Inc., No. 02-13533(AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003) ("A debtor, as the proponent of the Plan, bears the burden of proof under section 1129 of the Bankruptcy Code"); see also In re Richard Buick, Inc., 126 B.R. 840, 851 (Bankr. E.D. Pa. 1991). To meet this burden, the Debtor must demonstrate that the Plan complies with the provisions of the Bankruptcy Code by a preponderance of the evidence. See, e.g., Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. (In re Briscoe Enters., Ltd., II), 994 F.2d 1160, 1165 (5th Cir. 1993) (preponderance of evidence is debtors' appropriate standard of proof); see also In re Quigley Co., Inc., 437 B.R. 102, 125 (Bankr. S.D.N.Y. 2010) ("The proponent of confirmation bears the burden of proof by a preponderance of the evidence."); In re Adelphia Comm'ns Corp., 368 B.R. at 252 (under best interests test, plan proponent possesses burden to establish its satisfaction by preponderance of the evidence); see

also In re WorldCom Inc., 2003 WL 23861928, at *46 (debtor must meet the burden by a preponderance of the evidence under section 1129 of the Bankruptcy Code); see also Corestates Bank, N.A. v. United Chem. Techs., Inc., 202 B.R. 33, 45 (E.D. Pa. 1996) (preponderance of evidence is appropriate standard of proof under "both § 1129(a) and in a cram down") (quoting In re Briscoe Enters., Ltd., II, 994 F.2d at 1165).

28.    To confirm the Plan, the Bankruptcy Court must find that both the Plan and the plan proponent comply with each of the requirements of section 1129(a) of the Bankruptcy Code. See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 648 (2d Cir. 1988) (plan must comply with section 1129(a) requirements).

29.    As further described herein, and as evidenced by the Rosenfeld Declaration and the Voting Declaration, the Debtor has satisfied its burden, by at least a preponderance of the evidence, that all of the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules have been satisfied. Accordingly, the Debtor respectfully submits that the Plan should be confirmed.

A.    The Plan Complies With The Applicable Provisions Of Title 11  (11 U.S.C. § 1129(a)(l))

30.    Section 1129(a)(1) of the Bankruptcy Code provides that a plan may be confirmed only if "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1).

31.    The legislative history of section 1129(a)(1) explains that this provision embodies the requirements of, among others, sections 1122 and 1123 of the Bankruptcy Code governing, respectively, the classification of claims and the contents of the plan. H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978); see also In re Johns-Manville Corp., 843 F.2d at 648–49 ("[T]he legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this subsection to mean provisions of

Chapter 11 that concern the form and content of reorganization plans."); In re WorldCom Inc., 2003 WL 23861928, at *46 ("the legislative history of section 1129(a)(1) explains that this provision encompasses the requirement of section 1122 and 1123 governing classification of claims and contents of a plan, respectively"); In re Drexel Burnham Lambert Group Inc., 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) (same); In re Sabine Oil & Gas Corp., 555 B.R. 180, 310 (Bankr. S.D.N.Y. 2016) ("In order to determine whether a plan complies with section 1129(a)(1) of the Code, a court must ensure that the requirements of sections 1122 and 1123 are met."); In re Texaco Inc., 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization").

32.    Section 1122 of the Bankruptcy Code provides:

(a)    Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b)    A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

33.    The relevant inquiry under section 1122(a) is whether all claims in a class have substantially similar rights to the Debtor's assets.  Thus, a plan proponent has significant flexibility in classifying claims under section 1122, as long as a reasonable legal and/or factual basis exists for the proposed classifications, and all claims within a particular class are substantially similar. See, e.g., In re Jersey City Med. Ctr., 817 F.2d 1055, 1060–61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [pursuant to section 1122] to decide the propriety of plans in light of the facts"); Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell

Corp.), 913 F.2d 873, 880 (11th Cir. 1990) (proponent of plan has considerable discretion in classifying claims and interests according to relevant facts and circumstance of case); Teamster's Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.), 800 F.2d 581, 586 (6th Cir. 1986) (noting court's "broad discretion" to determine proper classifications); Windels Marx Lane & Mittendorf, LLP v. Source Enters., Inc. (In re Source Enters., Inc.), 392 B.R. 541, 556 (S.D.N.Y. 2008) ("Moreover, '[a] plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if there is a reasonable basis for the classification scheme and if all claims within a particular class are substantially similar.") (quoting In re Drexel Burnham Lambert Grp., Inc., 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992)).

34.    In addition to Administrative Expense Claims, the DIP Term Loans, Professional Fee Claims, and Priority Tax Claims, which need not be designated pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan designates designates seven (7) classes of Claims.  Class 1 includes only Prepetition Series 1996 Bond Claims.  Class 2 includes only Prepetition Series 2002 Bond Claims.  Class 3 includes only Prepetition Series 2006 Bond Claims.  Class 4 includes only Prepetition Series 2015 Bond Claims. Class 5 includes only Other Secured Claims. Class 6 includes only Priority Non-Tax Claims. Class 7 includes only General Unsecured Claims. Thus, the Claims placed in each Class are substantially similar to other Claims in each such Class.

35.    Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, and such Classes do not unfairly discriminate between holders of Claims in any particular class.  The Debtor respectfully submits that classification scheme in the Plan satisfies section 1122 of the Bankruptcy Code.

36.    Section 1123(a) of the Bankruptcy Code identifies seven (7) required contents of a plan. The Plan fully complies with section 1123(a).

i.    The Plan Designates Classes Of Claims

37.    Section 1123(a)(1) of the Bankruptcy Code requires that a Chapter 11 plan designate classes of claims and interests other than claims of a kind specified in section 507(a)(2) of the Bankruptcy Code (administrative expense claims), section 507(a)(3) of the Bankruptcy Code (claims arising during the "gap" period in an involuntary bankruptcy case), and section 507(a)(8) of the Bankruptcy Code (priority tax claims). 11 U.S.C. § 1123(a)(1).    Article 3 of the Plan satisfies this requirement by expressly classifying all Claims, other than Administrative Expense Claims (other than professional fees and expenses), the DIP Term Loans, Priority Tax Claims and Professional Fee Claims, as follows: Class 1 (Prepetition Series 1996 Bond Claims), Class 2 (Prepetition Series 2002 Bond Claims), Class 3 (Prepetition Series 2006 Bond Claims), Class 4 (Prepetition Series 2015 Bond Claims), Class 5 (Other Secured Claims), Class 6 (Priority Non-Tax Claims), and Class 7 (General Unsecured Claims).

38.    Therefore, the Debtor respectfully submits that section 1123(a)(1) of the Bankruptcy Code is satisfied.

ii.    The Plan Identifies Unimpaired Classes Of Claims

39.    Section 1123(a)(2) of Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2).    Article 3 of the Plan satisfies this requirement by specifying that Class 6 is not impaired under the Plan.

iii.    The Plan Specifies The Treatment Of Impaired Classes

40.    Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). Article 3 of the Plan specifies that Class 1, Class 2, Class 3, Class 4, Class 5 and Class

7 are impaired under the Plan and Article 4 of the Plan specifies the treatment of each such Class.

Accordingly, section 1123(a)(3) of the Bankruptcy Code is satisfied.

iv.   <u>The Plan Provides The Same Treatment Within Each Class</u>

41.     Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4).   Article 4 of the Plan satisfies this requirement by providing the same treatment to each Claim in each respective Class[2]. Accordingly, section 1123(a)(4) of the Bankruptcy Code is satisfied.

v.   <u>The Plan Provides Adequate Means For Implementation</u>

42.     Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means" for its implementation. 11 U.S.C. § 1123(a)(5).   Adequate means for implementation of a plan may include, *inter alia*, retention by the debtor of all or part of its property and the transfer of property of the estate to one or more entities.   See  In re MF Global Inc., 478 B.R. 611, 618 (Bankr. S.D.N.Y. 2012) ("Section 1123(a)(5) provides a means for the estate to transfer property as part of a confirmed plan, requiring that a plan of reorganization provide means for implementation . . . .").

43.     Article 5 of the Plan provides adequate and proper means for the implementation of the Plan.   In particular, section 5.1 of the Plan provides that the Plan shall be funded by a combination of the proceeds of sale of certain of the Debtor's Assets, additional funding and/or use of cash collateral of ACA and the Prepetition Bond Trustees in accordance with the Unsecured Creditor Settlement and the Priority Claim Contribution. Sections 5.2 and 5.3 of the Plan provide

---

[2] As described in the Rosenfeld Declaration, Deficiency Claims of ACA and the Prepetition Bond Trustees are included in Class 7. As part of the Unsecured Creditor Settlement, ACA and the Prepetition Bond Trustees agreed that they would not receive distributions as members of Class 7 until holders of Class 7 Claims other than the ACA and the Prepetition Bond Trustees receive at least five percent (5%) on account of such claims. Because this different treatment for Deficiency Claims of ACA and the Prepetition Bond Trustees is consensual, the Debtor believes that section 1123(a)(4) is satisfied.

for the appointment of a Plan Administrator to complete the wind-down of the Debtor's affairs and make distributions to certain Classes of Creditors. Sections 5.4 and 5.5 of the Plan provide for the establishment of the Unsecured Creditor Trust, the transfer of Unsecured Creditor Trust Assets to the Unsecured Creditor Trust, and the pursuit of Causes of Action by the Unsecured Creditor Trustee for the benefit of Class 7 General Unsecured Creditors. Section 5.7 of the Plan provides for the establishment of an Administrative Reserve and a Disputed Claims Reserve. In addition, Article 9 of the Plan provides procedures related to, among other things, distributions, resolution of disputed claims, and the means by which distributions will be transmitted. The foregoing provisions constitute adequate means for implementation of the Plan, and therefore section 1123(a)(5) of the Bankruptcy Code is satisfied.

vi.    <u>Prohibition On The Issuance Of Non-Voting Securities</u>

44.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate documents prohibit the issuance of non-voting equity securities and related corporate governance matters. 11 U.S.C. §1123(a)(6).  The Plan does not contemplate the issuance of new stock in the Debtor. Accordingly, section 1123(a)(6) of the Bankruptcy Code is not applicable.

vii.    <u>Selection Of Trustees, Member And Manager</u>

45.    Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan," 11 U.S.C. § 1123(a)(7). This provision is supplemented by section 1129(a)(5) of the Bankruptcy Code, which directs the Bankruptcy Court to scrutinize the methods by which the management of a reorganized corporation is to be chosen to provide adequate representation of those whose investments are involved in the bankruptcy – i.e., creditors and equity holders. <u>See</u> <u>7</u>

Collier on Bankruptcy ¶1123.01[7] (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. 2010). The Debtor does not currently, and will not, have continued operations following confirmation of the Plan.  No new officers or directors are appointed under the Plan, nor is it expected that any new officers or directors will be appointed following confirmation of the Plan. Section 5.2(a) of the Plan provides for the appointment of a Plan Administrator, and section 1.73 of the Plan defines Plan Administrator as Robert S. Rosenfeld, currently the Debtor's chief restructuring officer.  In addition, section 5.4(a) of the Plan provides for the appointment of an Unsecured Creditor Trustee, and section 1.108 of the Plan defines Unsecured Creditor Trustee as Ronald J. Friedman, currently one of attorneys for the Creditors' Committee. Finally, section 5.4(c) of the Plan provides for the appointment of an Unsecured Creditor Trust Oversight Committee, and section 1.107 of the Plan defines Unsecured Creditor Trust Oversight Committee as, initially, (a) Linda Ardito, (b) Lori Zaikowski, and (c) Ultimate Power, Inc., who are currently the members of the Creditors' Committee. Such appointments are due to the respective appointee's substantial knowledge and experience gained in current roles in the Chapter 11 Case and are consistent with the interests of Creditors and with public policy.

46.     Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan, but are not required.

viii.    Impairment and Non-Impairment of Claims

47.     Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1).

48.     The Plan provides that Class 6 (Priority Non-Tax Claims) is left unimpaired, and Class 1 (Prepetition Series 1996 Bonds), Class 2 (Prepetition Series 2002 Bonds), Class 3 (Prepetition Series 2006 Bonds), Class 4 (Prepetition Series 2015 Bonds), Class 5 (Other Secured

Claims) and Class 7 (General Unsecured Claims) are impaired. <u>See</u> Plan, Article 4. The Debtor respectfully submits that such treatment is permissible under section 1123(b)(1).

ix.   <u>Executory Contracts and Unexpired Leases</u>

49.    Section 1123(b)(2) of the Bankruptcy Code provides that a plan may, subject to section 365 of the Bankruptcy Code, "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1123(b)(2).

50.    The Plan provides that any and all executory contracts (not otherwise previously assumed or rejected or the subject of a motion to assume or reject pending on the Confirmation Date), shall be deemed rejected by the Debtor.  <u>See</u> Plan, § 6.1.  The Plan constitutes a motion under section 365(a) of the Bankruptcy Code for the authorization to reject executory contracts and unexpired leases not previously assumed, assigned or rejected.  Section 365(a) of the Bankruptcy Code states that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor" if such action represents a reasonable exercise of its business judgment.  11 U.S.C. § 365(a).  If the Court finds a debtor's business judgment has been reasonably exercised, it approves the proposed rejection. <u>See</u> <u>N.L.R.B. v. Bildisco & Bildisco,</u> 465 U.S. 513, 523 (1984); <u>In re Penn Traffic Co.</u>, 524 F.3d 373, 377 (2d Cir. 2008). Under the business judgment standard, courts will approve a debtor's business decision unless that judgment is the product of bad faith, whim, or caprice.  <u>See</u> <u>Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.</u>, 756 F.2d 1043, 1047 (4th Cir. 1985); <u>In re Old Carco LLC</u>, 406 B.R. 180, 190 (Bankr. S.D.N.Y. 2009).

51. The Debtor respectfully submits that the provisions of the Plan regarding the treatment of executory contracts are fair and reasonable under the circumstances, and comply with sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

        x.     <u>Settlements and Retention of Claims</u>

52. Section 1123(b)(3) of the Bankruptcy Code provides that a plan may "provide for (a) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (b) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." 11 U.S.C. § 1123(b)(3).

53. Substantially all of the Debtor's physical assets were sold and the proceeds thereof are to be distributed under the Plan consistent with the Unsecured Creditor Settlement and the Priority Claim Contribution. Causes of Action are vested with the Unsecured Creditor Trust for pursuit for the benefit of General Unsecured Creditors. <u>See</u> Plan § 5.4(g). The Debtor respectfully submits that these provisions of the Plan complies with section 1123(b)(3) of the Bankruptcy Code.

        xi.     <u>Sale of Property and Distribution of Proceeds</u>

54. Section 1123(b)(4) of the Bankruptcy Code provides that a plan may provide "for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." 11 U.S.C. § 1123(b)(4).

55. The Plan does not provide for the sale of any property of the estate, which was substantially liquidated prior to the date the Plan was filed. Accordingly, section 1123(b)(4) of the Bankruptcy Code is not applicable.

        xii.     <u>Modification of Rights of Holders of Secured Claims and Unsecured Claims</u>

56. Section 1123(b)(5) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the

debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5).

57.    The Plan modifies the rights of holders of secured claims (Class 1, Class 2, Class 3, Class 4 and Class 5). See Plan §§ 4.1-4.5.   The Plan also modifies the rights of holders of unsecured claims (Class 7). See Plan § 4.7. The Debtor submits that the modification of such rights is consistent with section 1123(b)(5) of the Bankruptcy Code.

xiii.    The Plan Includes Other Provisions That Are Not Inconsistent With Applicable Sections Of The Bankruptcy Code

58.    Section 1123(b)(6) of the Bankruptcy Code provides that a Plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6).   The Plan does provide additional appropriate provisions that are not inconsistent with applicable sections of the Bankruptcy Code, including, but not limited to: (i) Plan § 5.2 (appointment of Plan Administrator); (ii) Plan § 5.4 (establishment of Unsecured Creditor Trust); (iii) Plan § 5.7 (establishment of reserves); Plan § 8.1 (injunctions against interference with consummation or implementation of Plan); (iv) Plan § 8.2 (releases by Debtor and ACA and the Prepetition Bond Trustees and exculpations); and (v) Plan § 9.10 (no distributions of less than one hundred dollars).   These provisions are consistent with the Bankruptcy Code, and thus, the Plan complies with section 1123(b)(6) of the Bankruptcy Code.

59.    Section 1123(c) of the Bankruptcy Code requires in a case involving an individual, that "a plan proposed by an entity other than the debtor may not provide for the use, sale, or lease of property exempted under section 522 of this title, unless the debtor consents to such use, sale or lease." 11 U.S.C. § 1123(c). The Debtor is not an individual, and accordingly, section 1123(c) is not applicable.

60.     Section 1123(d) of the Bankruptcy Code provides that "[n]otwithstanding subsection (a) of this section and sections 506(b), 1129(a)(7), and 1129(b) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." The Plan does not contemplate the curing of any default. Accordingly, section 1123(d) is not applicable.

61.     Based upon the foregoing, the Debtor respectfully submits that the Plan complies with the applicable provisions sections 1122 and 1123 of the Bankruptcy Code and, therefore, meets the requirements of section 1129(a)(1) of the Bankruptcy Code.

**B.**     The Debtor Has Complied With The Applicable Provisions Of Title 11 (11 U.S.C. § 1129(a)(2))

62.     Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [title 11 of the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2).  The principal purpose of section 1129(a)(2) is to ensure that a plan proponent has complied with the requirements of sections 1125 and 1126 of the Bankruptcy Code.  See In re Sabine Oil & Gas Corp., 555 B.R. at 311 n. 589; In re 20 Bayard Views, LLC, 445 B.R. 83, 95 (Bankr. E.D.N.Y. 2011) ("Courts interpret [the language of section 1129(a)(2)] to require that the plan proponent comply with the disclosure and solicitation requirements set forth in Bankruptcy Code Sections 1125 and 1126.").

63.     As noted above, this Court has approved the Disclosure Statement, pursuant to section 1125 of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical reasonable investors typical of the Debtor's creditors to make an informed judgment whether to accept or reject the Plan.  Accordingly, the Debtor has complied with section 1125 of the Bankruptcy Code.  In addition, this Court entered the *Order Approving (I) Disclosure Statement, (II) Form and Manner of Notices, (III) Form of Ballots, and*

*(IV) Solicitation Materials and Solicitation Procedures* (the "Solicitation Procedures Order").  As set forth in the Affidavit of Service of Lance Mulhern, sworn to on November 15, 2018 (the "Solicitation Affidavit") [Dkt. No. 646], the Debtor fully complied with the requirements of the Solicitation Procedures Order.  See, generally, Solicitation Affidavit.

64.     Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan.  Under section 1126, only holders of allowed claims and allowed equity interests in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan. See 11 U.S.C. § 1126.

65.     As set forth in the Solicitation Affidavit, in accordance with section 1126 of the Bankruptcy Code, the Debtor solicited votes on the Plan from holders of Claims in the Voting Classes.  See Solicitation Affidavit.  Each of the Voting Classes is impaired under the Plan, and will receive distributions under the Plan.  See Plan §§ 3.2, 4.1-4.5, 4.7.  Accordingly, pursuant to section 1126(a) of the Bankruptcy Code, holders of Claims in Class 1, Class 2, Class 3, Class 4, Class 5 and Class 7 were entitled to vote to accept or reject the Plan.  See Plan § 10.4.

66.     Class 6 (Priority Non-Tax Claims) is not impaired under the Plan.  See Plan §§ 3.2, 4.6.  As a result, pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims in Class 6 are conclusively presumed to have accepted the Plan.  As such, the votes of holders of Class 6 Claims were not solicited.

67.     Based upon the foregoing, the Debtor respectfully submits that the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

C.     The Plan Was Proposed In Good Faith (11 U.S.C. § 1129(a)(3))

68.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law," 11 U.S.C. § 1129(a)(3).  Courts within the

Second Circuit have defined the good faith standard to require "a showing that the plan was proposed with 'honesty, good intentions' and with a basis for expecting that a reorganization can be effected." In re Granite Broad. Corp., 369 B.R. 120, 128 (Bankr. S.D.N.Y. 2007) ("The Second Circuit has construed the standard as requiring a showing that 'the plan [was] proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected.'") (quoting In re Johns-Manville Corp., 843 F.2d at 649); Argo Fund Ltd. v. Bd. of Dirs. Of Telecom Argentina, S.A. (In re Bd. of Dirs. Of Telecom Argentina, S.A.), 528 F.3d 162, 174 (2d Cir. 2008) (quoting Koelbl v. Glessing (In re Koelbl), 751 F.2d 137, 139 (2d Cir. 1984)). In the context of a Chapter 11 plan, courts have held that "a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code.'" In re Genco Shipping & Trading Ltd., 513 B.R. 233, 261 (Bankr. S.D.N.Y. 2014) (quoting In re Leslie Fay Cos., Inc., 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997)). Good faith is to be determined "in light of the totality of the circumstances surrounding" formulation of the plan. In re Quigley Co., Inc., 437 B.R. 102, 126 (Bankr. S.D.N.Y. 2010) (citing In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir. 1984)); see also Tex. Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1160 (5th Cir. 1988); In re Oneida Ltd., 351 B.R. 79, 85 (Bankr. S.D.N.Y. 2006) ("Good faith should be evaluated 'in light of the totality of the circumstances surrounding confirmation.'") (quoting In re Cellular Info. Sys., Inc., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994)); In re Lionel L.L.C., No. 04-17324 (BRL), 2008 WL 905928, at *6 (Bankr. S.D.N.Y. March 31, 2008) (looking to totality of the circumstances in order to determine a plan proposed in good faith under section 1129(a)(3)). In determining whether the good faith requirement has been satisfied, the court will focus on "the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." In re

Granite Broad. Corp., 369 B.R. 120, 128 (Bankr. S.D.N.Y. 2007) (quoting In re PWS Holding

Corp., 228 F.3d 224, 242 (3d Cir. 2000)).  Accordingly, bankruptcy courts have held that the good

faith requirement is satisfied if the plan has been proposed for the purpose of preserving the value

of the bankruptcy estate and distributing that value to creditors.  In re Source Enters, Inc., No. 06-

11707 (AJG), 2007 WL 2903954, at *6 (Bankr. S.D.N.Y. Oct. 1, 2007) (the good faith requirement

was satisfied in plan filed with the legitimate and honest purposes of maximizing value of estate

and effectuating equitable distribution), aff'd, 392 B.R. 541 (S.D.N.Y. 2008).

69.    The Plan has been proposed by the Debtor in good faith, with the legitimate and

honest purpose of maximizing the value of the Debtor's estate.  See Rosenfeld Declaration ¶ 30.

70.    By its terms, the Plan incorporates an intercreditor settlement which is the product

of extensive negotiation during the Chapter 11 Case between the Debtor, ACA, the Prepetition

Bond Trustees, and the Creditors' Committee.  The Plan effectively implements the Unsecured

Creditor Settlement, which, among other things, provides for the Unsecured Creditor Trust Initial

Funding and the Priority Claim Contribution by the Prepetition Bond Trustees and ACA. Absent

the Unsecured Creditor Trust Initial Funding and the Priority Claim Contribution, plan

confirmation would not be feasible as funds would not be available to pay Priority Non-Tax Claims

or Priority Tax Claims, much less General Unsecured Claims.  As such, the Unsecured Creditor

Settlement funded by the Prepetition Bond Trustees and ACA permits confirmation of the Plan

and provides for potential further recovery by holders of General Unsecured Claims who may later

share in recoveries realized from Causes of Action pursued by the Unsecured Creditor Trust.

71.    Further, the overwhelming support of all six (6) of the Voting Classes reflects the

overall fairness of the Plan and the acknowledgment by the voting classes that the Plan has been

proposed in good faith and for proper purposes.  Accordingly, the Debtor respectfully submits that section 1129(a)(3) of the Bankruptcy Code is satisfied.

D.    All Payments To Be Made By The Estate In Connection With This Case Are Subject To The Approval Of The Court (11 U.S.C. § 1129(a)(4))

72.    Section 1129(a)(4) of the Bankruptcy Code requires that: "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4).  In essence, this subsection requires that any and all fees promised or received from the estate in connection with or in contemplation of a chapter 11 case must be disclosed and made subject to the court's approval.  Davis v. Elliot Mgmt. Corp. (In re Lehman Bros. Holdings Inc.), 508 B.R. 283, 294 n. 9 (S.D.N.Y. 2014) ("Section 1129(a)(4) is partly focused on ensuring disclosure of payments made in connection with the plan, but not written into the plan."); In re Journal Register Co., 407 B.R. 520, 537 (Bankr. S.D.N.Y. 2009); see In re Johns-Manville Corp., 68 B.R. 618, 632 (Bankr. S.D.N.Y. 1986) (implying that court must be permitted to review and approve reasonableness of professional fees made from estate assets).  The court in In re Journal Register Co., 407 B.R. 520, 537 (Bankr. S.D.N.Y. 2009), held that the requirements of section 1129(a)(4) are twofold: first, there must be disclosure and second that the court must approve the reasonableness of the payments.  (quoting 7 Collier on Bankruptcy 1129.03[4].  "Section 1129(a)(4) is designed to insure compliance with the policies of the Code that (1) the bankruptcy court should police the awarding of fees in title 11 cases and (2) holders of claims and interests should have the benefit of such information as might affect the claimants' decision to accept or reject the plan."  Id. (quoting In re Future Energy Corp., 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988)).

73.     In this Chapter 11 Case, the only such payments are to the retained professionals of the Debtor and the Creditors' Committee.  The Plan requires such professionals to file final applications for allowance of professional fees and reimbursement of expenses within 30 days of the Effective Date of the Plan.  See Plan § 5.12.  In addition, section 11.1(b) of the Plan provides that the Bankruptcy Court will retain jurisdiction after the Effective Date to hear and determine all applications for professional fees and reimbursement of expenses.

74.     Accordingly, Debtor respectfully submits that the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

E.     Disclosure Of All Required Information Regarding Post-Confirmation Directors, Management And Insiders (11 U.S.C. § 1129(a)(5))

75.     Section 1129(a)(5)(A)(i) requires that the proponent of a plan disclose the identity and affiliations of any individual proposed to serve, after confirmation of a plan, as director, officer or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the Plan.

76.     The Plan satisfies section 1129(a)(5)(A)(i). The Plan discloses the appointment of the Debtor's current Chief Restructuring Officer as Plan Administrator to complete the Debtor's wind-down and to make distributions to certain Classes of Creditors. See Plan §§ 1.73, 5.2, 5.3. The Plan also discloses the establishment of an Unsecured Creditor Trust to pursue causes of action and to make distributions to Class 7 General Unsecured Creditors. See Plan § 5.4. The trustee of the Unsecured Creditor Trust will be Ronald J. Friedman, currently one of the attorneys for the Creditors' Committee who will pursue Causes of Action on behalf of Class 7 General Unsecured Creditors and make distributions to such Class. See Plan §§ 1.108, 5.4(a), 5.5. The Plan further discloses the appointment of the Unsecured Creditor Trust Oversight Committee, comprised of the current members of the Creditors Committee, to oversee the activities of the Unsecured Creditor

Trustee. See Plan §§ 1.107, 5.4(c). The Plan relates solely to the Debtor and not to any other person or entity. Thus, the Plan complies with section 1129(a)(5)(A)(i) of the Bankruptcy Code to the extent applicable.

77.    Section 1129(a)(5)(A)(ii) requires the appointment of the person identified in accordance with section 1129(a)(5)(A)(i) "is consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1129(a)(5)(A)(ii). Thus, section 1129(a)(5)(A)(ii) asks the bankruptcy court to ensure that post-confirmation governance is in "good hands," which has been interpreted by courts to mean that, without limitation: (a) the proposed directors and officers have experience in the debtor's business and industry and in financial and management matters; (b) control of the reorganized entity by the proposed individuals will be beneficial; and (c) the appointment of such persons does not "perpetuate[] incompetence, lack of discretion, inexperience, or affiliation[] with groups inimical to the best interests of the debtor." In re Linda Vista Cinemas, L.L.C., 442 B.R. 724, 735 (Bankr. D. Ariz. 2010); See, e.g., In re Drexel Burnham Lambert Grp, Inc., 138 B.R. at 760 (citations omitted).

78.    The Debtor believes that appointments described above are in fact consistent with the interests of creditors and equity security holders and with public policy. The Plan Administrator, who is the Debtor's current Chief Restructuring Officer, has substantial knowledge of the Debtor's remaining Assets and has led the Debtor's wind-down activities for over two years, and his completion of such activities will therefore be the most economical and efficient and therefore satisfies section 1129(a)(5)(A)(ii) of the Bankruptcy Code. The appointment of Ronald J. Friedman as Unsecured Creditor Trustee and the appointment of the Unsecured Creditor Trust Oversight Committee satisfies section 1129(a)(5)(A)(ii) of the Bankruptcy Code because those appointees have substantial experience in representing the interests of their constituency of

General Unsecured Creditors and continuing such appointments is in the best interests of that constituency. Therefore, the Debtor believes that the requirements of section 1129(a)(5)(A)(ii) of the Bankruptcy Code. See Rosenfeld Declaration ¶ 34.

79.    Section 1129(a)(5)(B) of the Bankruptcy Code provides that a plan may be confirmed if the proponent discloses the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider. 11 U.S.C. § 1129(a)(5)(B).

80.    Robert Rosenfeld, who is to be the Plan Administrator, is currently the Debtor's Chief Restrucuring Officer, and may therefore be considered to be an "insider" within the meaning of section 101(31)(B) of the Bankruptcy Code. Mr. Rosenfeld disclosed his expected compensation in the Rosenfeld Declaration. See Rosenfeld Declaration ¶ 36. The Debtor submits that the foregoing disclosure satisfies section 1129(a)(5)(B) of the Bankruptcy Code.

F.    The Plan Does Not Provide For Any Rate Change Subject To Regulatory Approval (11 U.S.C. § 1129(a)(6))

81.    Section 1129(a)(6) of the Bankruptcy Code requires, with respect to a debtor whose rates are subject to governmental regulation following confirmation, that appropriate governmental approval has been obtained for any rate change provided for in the plan, or that such rate change be expressly conditioned on such approval. 11 U.S.C. §1129(a)(6).  Section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan as there is no governmental regulatory commission that has jurisdiction over any rates of the Debtor.

G.    The Plan Satisfies The "Best Interests" Test (11 U.S.C. § 1129(a)(7))

82.    The "best interests of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest has accepted the plan or will receive property of a value not less than

what such holder would receive if the debtor were liquidated under chapter 7.  In re Jennifer Convertibles, Inc., 447 B.R. 713, 724 (Bankr. S.D.N.Y. 2011).

83.      The best interests test focuses on individual dissenting creditors rather than classes of claims.  In re Drexel Burnham Lambert Grp., Inc., 138 B.R. at 761; see also ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 361 B.R. 337, 364 (S.D.N.Y. 2007) ("The best interest of creditors test 'applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.' If even one dissenting member of an impaired class would get less under the Plan than in a hypothetical liquidation, the fact that the class as a whole approved the Plan is immaterial") (quoting Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 442 n. 13 (1999)).  The analysis requires that each holder of a claim or interest either accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  In re 20 Bayard Views, LLC, 445 B.R. at 98 (the "best interests test" focuses on whether creditors would receive at least as much in a chapter 7 distribution of debtor's assets as under reorganization plan); In re Best Prods. Co. Inc., 168 B.R. 35, 72 (Bankr. S.D.N.Y. 1994) (best interests test met when classes voting against plan would receive either the same or larger distribution than under chapter 7 liquidation), appeal dismissed, 177 B.R. 791 (S.D.N.Y.), aff'd, 68 F.3d 26 (2d Cir. 1995); see In re Leslie Fay Co., Inc., 207 B.R. at 787 (best interests test requires court to "find that each [dissenting] creditor will receive or retain value that is not less than the amount he [or she] would receive if the debtor were liquidated") (quoting In re Victory Constr. Co., Inc., 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984)).  Accordingly, if the Court finds that each nonconsenting member of an impaired class will receive at least as much under the Plan as it would receive in a chapter 7

liquidation, the Plan satisfies the best interests of creditors test.  See In re Wash. Mut., Inc., 442 B.R. 314, 356 (Bankr. D. Del. 2011).

84.    As set forth in the Rosenfeld Declaration, the Plan provides for the liquidation of the Debtor's remaining assets. Attached to the Rosenfeld Declaration as Exhibit A is a liquidation analysis that demonstrates the treatments for each Class under the Plan and in a hypothetical Chapter 7 scenario. The Plan, which is the product of extensive arms'-length negotiations between the Debtor, ACA and the Prepetition Bond Trustees, and the Creditors' Committee, includes the Unsecured Creditor Settlement, which, among other things, provides for the Unsecured Creditor Trust Initial Funding and the Priority Claim Contribution by the Prepetition Bond Trustees and ACA. Absent the Unsecured Creditor Trust Initial Funding and the Priority Claim Contribution, funds would not be available to pay Priority Non-Tax Claims or Priority Tax Claims, much less General Unsecured Claims. The Unsecured Creditor Settlement would not be available in a Chapter 7 scenario. The Liquidation Analysis demonstrates the recoveries under the Plan with the benefits of the Unsecured Creditor Settlement and the likely recoveries without them. Based upon the Liquidation Analysis, it is undisputable that holders of Claims that have chosen to vote against the Plan (of which there was only one), will receive value under the Plan that is not less than such holder would receive if the debtor were liquidated in Chapter 7.

H.    Each Impaired Class Has Voted to Accept the Plan (11 U.S.C. § 1129(a)(8))

85.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests under a plan has either accepted the plan or is not impaired under the plan.  With respect to an unimpaired class of claims, under section 1126 of the Bankruptcy Code, any such unimpaired class of claims is "conclusively presumed" to have accepted the plan and need not be further examined under section 1129(a)(8). 11 U.S.C. § 1126(f).  Class 6 is not impaired and is therefore conclusively presumed to have accepted the Plan.  See Plan § 3.2.

86.     With respect to an impaired class of claims, acceptance of a plan is determined by reference to section 1126(c) of the Bankruptcy Code, which identifies the members of a class who may vote and the number and amount of votes necessary for the acceptance of a plan by a class of claims.  In particular, section 1126(c) of the Bankruptcy Code provides that a plan is accepted by an impaired class of claims if the class members accepting hold at least two-thirds in amount and more than one-half in number of the claims held by the class members that have cast votes on the plan. 11 U.S.C. § 1126(c).

87.     As set forth in Exhibit A of the Voting Declaration, and as set forth in paragraph 6, above, each of the Voting Classes voted to accept the Plan.

I.      The Plan Provides For The Payment Of Priority Claims (11 U.S.C. § 1129(a)(9))

88.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan.  The Plan satisfies each of the requirements of section 1129(a)(9).  First, consistent with section 1129(a)(9)(A), the Plan provides for all Allowed Administrative Claims (i.e., § 507(a)(2)  and § 507(a)(3) claims) to be paid in full in Cash as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Administrative Claim, or upon such other terms as may be agreed to by the holder of such Allowed Administrative Claim, or (b) such lesser amount as the holder of such Allowed Administrative Claim might otherwise agree. See Plan § 2.2.

89.     Second, with respect to priority claims under sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7), the Plan provides for payment of such Non-Tax Priority Claims as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon such other terms as may be agreed to by the holder of such Allowed Non-Tax Priority Claim, or (b) such lesser amount as the holder of such Allowed Non-Tax Priority Claim might otherwise agree. See Plan § 4.3.

90.     Third, the Plan provides that Priority Tax Claims will be treated consistently with section 1129(a)(9)(C), in that each holder of an Allowed Priority Tax Claim shall be paid the full amount thereof, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim. See Plan § 2.4.

91.     Thus, the Plan complies with the requirements of section 1129(a)(9) of the Bankruptcy Code.

J.      The Plan Has Been Accepted By At Least One Impaired, Non-Insider Class (11 U.S.C. § 1129(a)(10))

92.     Section 1129(a)(10) of the Bankruptcy Code provides that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider". 11 U.S.C. § 1129(a)(10).

93.     The Plan satisfies this requirement. As described above and in the Voting Declaration, the Plan has been accepted by each of the Voting Classes, none of which include any insiders.  As a result, at least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, as required by section 1129(a)(10) of the Bankruptcy Code.

K.      The Plan Is Feasible or Feasibility Analysis Not Applicable (11 U.S.C. § 1129(a)(11))

94.     Pursuant to section 1129(a)(11) of the Bankruptcy Code, a plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

95.     Substantially all of the Debtor's physical assets liquidated during the Chapter 11 Case and the Plan provides that Causes of Action will be transferred to the Unsecured Creditor

Trust for prosecution. As a result, the Debtor submits that the requirements of section 1129(a)(11) are not applicable. However, to the extent Bankruptcy Code section 1129(a)(11) applies to implementation of the Plan, the Debtor submits that the feasibility requirement of section 1129(a)(11) is satisfied, because the Debtor's estate has sufficient assets on hand to implement the Plan as proposed.  See Plan §§ 5.1, 5.2(e), Rosenfeld Declaration ¶ 54.

L.    The Plan Provides For The Payment Of Certain Fees (11 U.S.C. § 1129(a)(12))

96.    Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that provision be made for their payment. 11 U.S.C. § 1129(a)(12). The Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date (if any are due) by the Debtor's estate.  The Debtor will pay when due all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6) from the Effective Date until the Chapter 11 Case is closed.  See Plan § 5.15(a).

M.    Preservation of Retiree Benefits (11 U.S.C. § 1129(a)(13))

97.    Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation, after the plan's effective date, of all retiree benefits at the level established by agreement or by court order pursuant to section 1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the duration of the period that the debtor has obligated itself to provide such benefits.  11 U.S.C. § 1129(a)(13).

98.    The Debtor has no obligation to provide any retiree benefits, and accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable.

N.    Domestic Support Obligations (11 U.S.C. § 1129(a)(14)

99.     Section 1129(a)(14) of the Bankruptcy Code requires a debtor to pay all domestic support obligations that first become payable after the date of the filing of the petition.  11 U.S.C. § 1129(a)(14).

100.     The Debtor does not have any domestic support obligations, and accordingly, section 1129(a)(4) of the Bankruptcy Code is not applicable.

O.     Requirements for Individual Chapter 11 Cases Not Applicable (11 U.S.C. § 1129(a)(15)

101.     Section 1129(a)(15) of the Bankruptcy Code provides that "[i]n a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan, either (a) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b)  the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined by section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer."  11 U.S.C. § 1129(a)(15).

102.     The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is not applicable.

P.     Property Transfers By Corporations or Trusts that are not Moneyed, Business or Commercial Corporations or Trusts (11 U.S.C. § 1129(a)(16)

103.     Section 1129(a)(16) of the Bankruptcy Code requires that "[a]ll transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business or commercial corporation or trust." 11 U.S.C. § 1129(a)(16).

104.     As a nonprofit entity, section 1129(a)(16) is applicable to the Debtor and the Plan. However, substantially all physical assets of the Debtor's Estate were liquidated prior to the filing

of the Plan, in each case consistent with applicable law governing nonprofit entities, including, without limitation, the New York Not for Profit Corporation Law, and in each case was approved by the Bankruptcy Court.

105.    Moreover, those certain restricted funds in the form of endowments which are non-estate property, will be transferred consistent with applicable non-bankruptcy law through a cy pres process with the oversight of the Office of the Attorney General of the State of New York.

106.    Accordingly, the Debtor submits that section 1129(a)(16) is satisfied in all respects by the Debtor and the Plan.

Q.    All Impaired Classes Accept Plan (11 U.S.C. § 1129(b))

107.    Section 1129(b)(1) of the Bankruptcy Code provides that, "if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent under the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1).

108.    As set forth above, each impaired Class voted to accept the Plan. As a result, the Debtor need not invoke section 1129(b) of the Bankruptcy Code.

R.    Confirmation of One Plan (11 U.S.C. § 1129(c))

109.    The Plan is the only plan that has been filed in this Chapter 11 Case. Accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

S.    The Principal Purpose of the Plan is Not Avoidance of Taxes or Section 5 of the Securities Act (11 U.S.C. § 1129(d))

110.    Section 1129(d) of the Bankruptcy Code states that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application

of section 5 of the Securities Act of 1933." 11 U.S.C. § 1129(d). The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933. Moreover, no party that is a governmental unit, or any other entity, has requested that the Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

      T.    <u>Compliance with Bankruptcy Rule 3016</u>

111.    Bankruptcy Rule 3016(a) requires that "[e]very proposed plan and any modification thereof shall be dated and, in a chapter 11 case, identified with the name of the entities or entity submitting or filing it." This requirement is satisfied because the Plan is dated, as of October 31, 2018, and the Plan identifies the Debtor as the party filing it.

112.    Bankruptcy Rule 3016(b) requires that a disclosure statement be filed with the plan or within a time fixed by the Court. The Debtor satisfied this requirement by filing the Disclosure Statement contemporaneously with the Plan.

113.    Bankruptcy Rule 3016(c) requires that "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." Article 8 of the Plan provides for certain injunctions and exculpations, which are specifically and conspicuously identified by the use of bold typeface. Accordingly, the Plan complies with Bankruptcy Rule 3016(c).

## IV.    THE INJUNCTIONS, RELEASES AND EXCULPATIONS SHOULD BE APPROVED

114.    The Debtor requests approval of certain injunctions and releases and exculpations of certain parties for their acts during the Chapter 11 Case. All injunctive, release and exculpation

provisions were included in the Plan and the Disclosure Statement in bold typeface in order to draw attention to these provisions and ensure their due consideration by holders of Claims entitled to vote on the Plan. Significantly, as evidenced by the overwhelming acceptance of the Plan by the voting classes, the injunctions, releases and exculpations were approved by [all/substantially all] holders of Claims that voted on the Plan. The Debtor therefore submits that the injunctions, releases and exculpations should be approved in all respects.

    A.    <u>The Injunctions</u>

115.    Section 8.1 of the Plan contains two (2) injunctions: an injunction against interference with consummation or implemention of the plan (the "<u>Consummation Injunction</u>"), <u>see</u> Plan § 8.1(a); and a general injunction against attempts to collecting or otherwise enforcing claims in any manner inconsistent with the Plan (the "<u>Plan Injunction</u>," and together with the Consummation Injunction, the "<u>Injunctions</u>"), <u>see</u> Plan § 8.1(b).

116.    The Consummation Injunction enjoins any holder of a Claim from commencing or continuing any action, or employing any process, against the Debtor, the Estate, the Plan Administrator, the Unsecured Creditor Trust, the Unsecured Creditor Trustee, or the Unsecured Creditor Trust Oversight Committee with the intent of interfering with consummation or implementation of the Plan. This standard, necessary and appropriate injunction ensures that those who are responsible for making payments and Distributions under the Plan are able to do so unfettered.

117.    The Plan Injunction enjoins all Persons from extra-Plan efforts to collect on Claims by prohibiting: (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any encumbrance of any kind; and or (iii) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the Debtor, the Estate, and Persons designed in

the Plan to carry it out. This injunction, like the Consummation Injunction, is a standard, necessary and appropriate aid to implementation of the Plan.

118.    The Injunctions are appropriate, consistent with applicable law, and should be approved in their entirety. They are narrowly tailored to their purpose of enforcing the Releases (as defined below) and Exculpations (as defined below). Absent the Injunctions, the Releases and Exculpations, and the Plan at large, would be rendered meaningless. Further, the Injunctions are well within the scope of section 105(a) of the Bankruptcy Code and well within the Court's authority to approve.

119.    Bankruptcy Courts are empowered to issue permanent injunctions under a chapter 11 plan pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) authorizes a bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [title 11]." Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets and to facilitate the efficient administration of the Chapter 11 Case. See, e.g., In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

120.    In the Second Circuit, bankruptcy courts previously have approved injunctions in situations where injunctions were an integral part of the chapter 11 plan, conferred material benefits on a debtor's estate and its creditors, or were necessary to effectuate the plan. See In re Bally Total Fitness, 2007 WL 2779438, at *8 (finding injunctions provisions appropriate because they were fair and equitable, necessary to a successful reorganization, and integral to the plan); In re Ionsphere Clubs, Inc., 184 B.R. 648, 655 (S.D.N.Y. 1995) ("Courts may issue injunctions

enjoining creditors from suing third parties…in order to resolve finally all claims in connection with the estate and to give finality to a reorganization plan."). Similar injunction provisions have been approved by this Court and other courts in this Circuit. In re Personal Communications Devices, LLC, Case No. 13-74303(AST) (Bankr. E.D.N.Y. April 14, 2014) [Docket No. 413] (approving general injunction of all claims related to the administration of the chapter 11 case or the plan); In re Cengage Learning, Inc., Case No. 13-44106(ESS) (Bankr. E.D.N.Y. March 14, 2014) [Docket No. 1225] (approving general injunction necessary to preserve and enforce releases, exculpations and compromises and settlements under the plan); In re Saint Vincent's Catholic Medical Centers of New York, Case No. 10-11963(CGM) (Bankr. S.D.N.Y. June 29, 2012) [Docket No. 3060] (approving general injunction of actions related to claims released under plan or that would contradict plan provisions.

121.    Based on the relevant case law, the facts and circumstances of the Chapter 11 Case, and in light of the benefits that the Debtor and its estate will receive from the Injunctions in section 8.1 of the Plan are reasonable, well-justified and should be approved.

B.    The Releases

122.    The Plan contemplates releases ("Releases") by the Debtor of Debtor Released Parties in section 8.2(a) of the Plan from any and all liabilities through the Effective Date in any way arising, directly or indirectly, or connected with, the Debtor and its Estate, the Chapter 11 Case, the DIP Note, the Prepetition Bond Documents, the Debtor's financial statements and/or the Debtor's cessation of operations.

123.    The Releases do not apply to instances of fraud, wilfull misconduct or gross negligence as determined by Final Order. Moreover, the Releases do not release the Debtor Released Parties from any liability to the United States or any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code; (b) the environmental

laws of the United States or any state, city or municipality; (c) laws regarding the regulation of securities by the United States Securities and Exchange Commission; or (d) any criminal laws of the United States or any state, city or municipality.

124.    Finally, section 8.2(a) of the Plan expressly provides that the Releases do not release any of the Causes of Action transferred to the Unsecured Creditor Trust under the Plan.

125.    A plan that proposes to release a claim or cause of action belong to a debtor is considered a "settlement" for purposes of satisfying section 1123(b)(3)(A) of the Bankruptcy Code. Settlements pursuant to a plan are generally subject to the same "reasonable business judgment" standard applied to settlements under Rule 9019 of the Bankruptcy Rules, which provides: "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. See In re Bally Total Fitness, 2007 WL 2779438, at *12 ("To the extent that a release or other provision in the Plan constitutes a compromise of a controversy, this Confirmation Order shall constitute an order under Bankruptcy Rule 9019 approving such compromise."); In re Spiegel, Inc., No. 03-11540, 2005 WL 1278094, at * 11 (Bankr. S.D.N.Y. May 25, 2005) (approving releases pursuant to section 1123(b)(3) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules). The legal standard for determining the propriety of a bankruptcy settlement is whether it is in the "best interests of the estate and does not fall below the lowest point in the range of reasonableness. See Plaza Equities LLC v. Pauker (In re Copperfield Invs., LLC), 401 B.R. 87, 91 (Bankr. E.D.N.Y. 2009); In re Purofied Down Prods. Corp., 150 B.R. 519, 523 (S.D.N.Y. 1993).

126.    The Debtor believes that the Releases are reasonable and satisfy the applicable judicial standard. The Debtor Released Parties, i.e., the Chief Restructuring Officer, the Committee, the members of the Committee, the DIP Agent, the DIP Term Loan Lenders, ACA, the Prepetition Bond Trustees, and the Registered Holders and beneficial owners of the Prepetition

Bonds (in each case, solely in their capacity as such) have each devoted substantial effort to the successful resolution of this Chapter 11 Case. The DIP Agent, the DIP Term Loan Lenders, ACA, the Prepetition Bond Trustees and the Registered Holders and beneficial owners of the Prepetition Bonds have financed the Chapter 11 Case through the use of cash collateral and the DIP Term Loans, and made the filing of a plan possible in this Chapter 11 Case through the Unsecured Creditor Trust Initial Funding and the Priority Claim Contribution, without which no confirmable plan would have been possible. The Committee and its members, through their active participation in the Chapter 11 Case, were integral parts of several key events in the Chapter 11 Case, including, but not limited to the sale of the Brookhaven Campus and the Employee Settlement (as defined in the Disclosure Statement). Finally, the Chief Restructuring Officer worked tirelessly throughout the Chapter 11 Case to affect an orderly and efficient wind-down of the Debtor. These substantial contributions were each integral to the successful conclusion of the Chapter 11 Case.

127.    Accordingly, the Debtor submits that the Releases are consistent with applicable law, represent a valid settlement and a valid exercise of the Debtor's business judgment, and should be approved.

C.    The Exculpation

128.    Section 8.2(c) of the Plan includes a customary exculpatory provision, which, with certain limitations, protects specified parties from liability that might arise from the administration of certain aspects of the Chapter 11 Case (the "Exculpation"). The Exculpation, among other things, augments the proposed Injunctions and provides that except as otherwise set forth in the Plan, the Debtor, its directors, trustees (including the Board of Trustees), officers, employees , and professionals (including professional firms and individuals within such firms), the DIP Lenders, ACA, the Prepetition Bond Trustees, the Creditors' Committee, and there respective members (acting in such capacity), employees and professionals (including professional firms and

individuals within such firms, shall have or incur any liability to any holder of a Claim or any other

Person for any act or omission taken or not taken in good faith in connection with, or arising out

of, the Chapter 11 Case, the Disclosure Statement, the Plan, or any contract, instrument, release or

other agreement or document created or entered into in connection with the Plan, or any act taken

or omitted to be taken during the Chapter 11 Case, the solicitation of votes for and the pursuit of

confirmation of the Plan, the consummation of the Plan, including, without limitation, the steps

taken to effectuate the transactions described in Article 5 of the Plan, the administration of the Plan

or the property to be distributed under the Plan.

129.    Notwithstanding anything in section 8.2(c) of the Plan to the contrary, the

provisions of section 8.2(c) of the Plan do not limit the liability of any Person that would otherwise

result from any act or omission to the extent such act or omission is determined by Final Order to

have constituted fraud, willful misconduct or gross negligence. The Debtor submits that, for the

reasons set forth herein, the Exculpation contained in the Plan is appropriate and should be

approved.

130.    Exculpations like those contained in section 8.2(c) of the Plan, which are limited to

certain parties instrumental in the administration of the Chapter 11 Case from liability for acts and

omissions related to the Chapter 11 Case, other than liability for fraud, willful misconduct and

gross negligence, are viewed as reasonable and customary in this jurisdiction. Indeed, courts have

recognized that, without the protections afforded by limited exculpation provisions, "negotiation

of a [plan in a reorganization case] would not…[be] possible. In re Enron Corp., 326 B.R. 497,

501-03 (S.D.N.Y. 2005) (endorsing the findings of the bankruptcy court concerning the propriety

and justification for the limited exculpation contained in that plan); In re Oneida Ltd., 351 B.R.

79, 94 n. 22 (Bankr. S.D.N.Y. 2006) (exculpation provision contained in chapter 11 plan which

provided for a release of prepetition and postpetition claims related to various matters associated with confirmation of a chapter 11 plan "sufficiently narrow to be unexceptionable.").

131.    Courts in the Second Circuit evaluate the appropriateness of similar exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether the provision is integral to the plan, and whether the exculpation provision was necessary for plan negotiations. See, e.g., In re Bally Total Fitness, 2007 WL 2779438 at*8 (finding exculpation, release and injunction provisions appropriate because they were necessary to successful reorganization and integral to plan); Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.), 326 B.R. 497, 501, 503-04 (S.D.N.Y. 2005) (affirming approval of exculpation provision where it was necessary to effectuate plan and excluded gross negligence and wilfull midconduct; also noting that excising similar exculpation provisions would "tend to unravel the entire fabric of the Plan, and would be inequitable to all those who participated in good faith to bring it into fruition").

132.    Thus, courts have found that exculpation for participating in the chapter 11 process is appropriate when the plan has been proposed in good faith and otherwise meets the requirements for plan confirmation, and plan negotiations could not have occurred without protection from liability for parties involved in those negotiations. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d at 293 (finding that where a debtor's plan of reorganization requires the settlement of numerous, complex issues, protection of third parties against legal exposure may be a key component of the settlement). Indeed, failing to include an exculpation provision in a chapter 11 plan could deter the critical participation of the debtor's management and advisors, as well as essential parties in interest and creditor groups from fully participating in a chapter 11 case and plan negotiations. See id.; In re Enron Corp., 326 B.R. at 503 (finding that without such protection

from liability, key constituents might not actively participate in plan process or might abandon efforts to help a debtor).

133.    In general, the effect of an appropriate exculpation provision is to set a standard of case liablity as that of gross negligence or willful misconduct in future litigation by a non-releasing party against an "exculpated party" for acts arising out of a debtor's restructuring. See In re PWS Holding Corp., 228 F.3d 224, 245 (3d Cir. 2000) (holding an exculpation provision is "apparently a commonplace provision in Chapter 11 Plans, [and] does not affect the liability of these parties, but rather states a different standard of care under the Code"); see also In re Enron Corp., 326 B.R. at 501 (finding exculpation provision was appropriate where such provision excluded gross negligence and willful misconduct).

134.    Accordingly, exculpation provisions appropriately prevent collateral attacks against parties that have made substantial contributions to a debtor's chapter 11 case and have negotiated a chapter 11 plan that is ultimately confirmed by the Court. Parties to be exculpated from liability may include those that are indemnified by a debtor or that provide substantial contributions to the debtor and the debtor's case. See, e.g., In re Borders Grp., Case No. 11-10614(MG) (Bankr. S.D.N.Y. Dec. 21, 2011) [Docket No. 2384]; In re Uno Rest. Holdings Corp., Case No. 10-10209(MG) (Bankr. S.D.N.Y. July 6, 2010 [Docket No. 559].

135.    Based on this widely accepted precedent, the Exculpation contained in section 8.2(c) of the Plan is wholly justified, properly limited, and should be approved. The Exculpation is appropriately crafted so as to insulate those parties whose efforts have been instrumental in connection with the formulation and development, confirmation and consummation of the Plan, as well as the overall success of the Chapter 11 Case, from certain types of liability. Moreover, the Exculpation, including its carve-out for fraud, willful misconduct and gross negligence, is entirely

consistent with established practice in this circuit. See, e.g., In re DBSD N. Am., Inc., 419 B.R. 179, 217-18 (Bankr. S.D.N.Y. 2009), aff'd in part, rev'd in part, 627 F.3d 496 (2d Cir. 2010); ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 368 B.R. at 267 (same). Accordingly, the Exculpation is reasonable, consistent with prior case law in this circuit, and should be approved.

## CONCLUSION

Based upon the foregoing, the Debtor respectfully submits that (i) the Plan satisfies all of the applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules; and (ii) the Debtor, as plan proponent, has satisfied the applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules. According, for all of these reasons the Debtor respectfully requests that the Court enter an order confirming the Plan.

Dated:   New York, New York
　　　　 December 13, 2018

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**

By:   _/s/ Sean C. Southard_
　　　 Sean C. Southard
　　　 Joseph C. Corneau
　　　 Lauren C. Kiss
　　　 200 West 41st Street, 17th Floor
　　　 New York, New York 10036
　　　 Tel: (212) 972-3000
　　　 Fax: (212) 972-2245
　　　 Email: ssouthard@klestadt.com
　　　　　　　jcorneau@klestadt.com
　　　　　　　lkiss@klestadt.com

_Attorneys for Dowling College, Debtor and_
_Debtor-in-Possession_
