**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                      :      Chapter 11
                                                           :
DOWLING COLLEGE,                                           :
f/d/b/a DOWLING INSTITUTE,                                 :      Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                             :
ASSOCIATION,                                               :
f/d/b/a CECOM,                                             :
a/k/a DOWLING COLLEGE, INC.,                               :
                                                           :
                                         Debtor.           :
----------------------------------------------------------------x

**FIRST AND FINAL FEE APPLICATION OF A&G REALTY PARTNERS, LLC AND**
**MADISON HAWK PARTNERS, LLC FOR COMPENSATION FOR SERVICES**
**RENDERED AS REAL ESTATE ADVISOR TO THE DEBTOR FOR THE PERIOD OF**
**<u>NOVEMBER 29, 2016 THROUGH AND INCLUDING JANUARY 14, 2019</u>**

| | |
|---|---|
| Name of Applicant: | A&G Realty Partners, LLC and Madison Hawk Partners, LLC |
| Authorized to Provide Professional Services to: | Dowling College |
| Date of Retention: | December 19, 2016 *nunc pro tunc* to November 29, 2016 |
| Period for which compensation and reimbursement is sought: | November 29, 2016 through and including January 14, 2019 |
| Amount of Compensation sought as actual, reasonable and necessary: | $1,239,000 |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $143,459.97 |

This is a/an: __ monthly __ interim <u>x</u> final application.

No prior fee applications have been filed.

### Summary of Fees and Expenses Sought in this Fee Application

| | |
|---|---|
| Period for which Compensation and Reimbursement is Sought: | November 29, 2016 through and including January 14, 2019 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $1,239,000 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $143,459.97 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $1,382,459.97 |

### Rate Increases Applicable to the Fee Period

There have been no rate increases during this Fee Period.

### Summary of Past Requests for Compensation

There have been no prior requests made by A&G Realty Partners, LLC or Madison Hawk Partners, LLC for compensation and reimbursement of expenses.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DOWLING COLLEGE, | : | |
| f/d/b/a DOWLING INSTITUTE, | : | Case No. 16-75545 (REG) |
| f/d/b/a DOWLING COLLEGE ALUMNI | : | |
| ASSOCIATION, | : | |
| f/d/b/a CECOM, | : | |
| a/k/a DOWLING COLLEGE, INC., | : | |
| | : | |
| Debtor. | : | |

---------------------------------------------------------------x

### FIRST AND FINAL FEE APPLICATION OF A&G REALTY PARTNERS, LLC AND MADISON HAWK PARTNERS, LLC FOR COMPENSATION FOR SERVICES RENDERED AS REAL ESTATE ADVISOR TO THE DEBTOR FOR THE <u>PERIOD OF NOVEMBER 29, 2016 THROUGH AND INCLUDING JANUARY 14, 2019</u>

A&G Realty Partners, LLC ("<u>A&G</u>") and Madison Hawk Partners ("Madison Hawk, and together with A&G, the "<u>Campus Agents</u>") submit this first and final fee application (this "<u>Application</u>" or "<u>Final Fee Application</u>") approving the compensation and expenses for professional services rendered to Dowling College, the debtor and debtor-in-possession (the "<u>Debtor</u>") in the above captioned chapter 11 case (the "<u>Chapter 11 Case</u>") for the period from November 29, 2016 through and including January 14, 2019 (the "<u>Fee Period</u>") pursuant to Sections 327(a) and 328(a) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "<u>Local Rules</u>").  In support of this Final Fee Application, the Campus Agents are attaching the declarations of Andrew Graiser, the Co-President of A&G (the "<u>Graiser Declaration</u>") and Jeffrey L. Hubbard, President of Madison Hawk (the "<u>Hubbard Declaration</u>"), which are attached hereto

1

as Exhibits 1 and 2.   In further support hereof, the Campus Agents respectfully represents the following:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

2.      Venue of this proceeding within this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Sections 327 and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1.

## Retention of the Campus Agents

4.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the or this "Court").

5.      In consideration of the unique circumstances and complex real estate issues that would arise during the pendency of this Chapter 11 Case, the Debtor determined that the service of experienced real estate advisors that are familiar with the Debtor's real property was required. The Debtor determined that experienced real estate advisors would enable the Debtor to maximize the value of its estate and would be in the best interests of the Debtor, its estate and its creditors. The Debtor chose the Campus Agents to serve as their real estate advisors because of the Campus Agents' significant experience in providing services regarding the review, analysis and negotiation of real property agreements, and more specifically, significant experience in the negotiation and disposition of properties in bankruptcy.   The Campus Agents have facilitated the sale of commercial properties for many large corporations and non-profit organizations both in and out of

bankruptcy and has vast experience in the evaluation, restructuring and disposition of all types of real estate. Furthermore, the professionals of the Campus Agents have been retained as real estate advisors in a variety of bankruptcy cases involving issues relating to the review, analysis, negotiation and disposition of real property agreements. The Campus Agents are well-known, reputable and diversified real estate consulting and advisory firms with offices located throughout the United States and the principals of the Campus Agents have over 50 years of commercial real estate experience. As a result of their numerous years of business experience, the Campus Agents have acquired a wide pool of prospective buyers, investors and active broker contacts. The Debtor believed that the engagement of the Campus Agents was critical to its efforts to navigate successfully through Chapter 11 and provide maximum recovery to its creditors. Additionally, prior to the Petition Date, the Campus Agents conducted due diligence regarding the Properties (as defined herein) in preparation for an active post-petition marketing process. As a result of these efforts and the prepetition services provided, the Campus Agents acquired significant knowledge of the Properties and the Debtor's goals and objectives related thereto.

6.      The Debtor selected the Campus Agents as its real estate advisors based upon, among other things, (i) the Debtor's need to retain skilled and experienced real estate advisors to provide services relating to the Properties; (ii) the Campus Agents' extensive knowledge of the Properties, and (iii) the Campus Agents' extensive experience and excellent reputation in providing real estate consulting services in complex chapter 11 cases such as this case. The Debtor determined that all parties in interest would benefit from the Campus Agents' business contacts, marketing strengths and extensive industry experience and their services would substantially enhance Debtor's efforts to maximize the value of its Properties. Furthermore, the Campus Agents

are well qualified to perform all services required by the Debtor and to represent the Debtor's

interests in this Chapter 11 Case, in a cost effective, efficient and timely manner

7.    Therefore, the Debtor retained the Campus Agents pursuant to a certain real estate

services agreement dated October 19, 2016 (the "Services Agreement")[1] to serve as the Debtor's

*exclusive* real estate advisors in relation to certain of the Debtor's Properties. Specifically, the

Debtor's Oakdale Campus (excluding all residences or other properties that constitute the

collateral of the Series 2015 Taxable Bonds) and the Debtor's Brookhaven Campus (excluding the

dormitory facility that constitutes the collateral of the Series 2002 Bonds (the "Brookhaven

Dorms") (each a "Property" and collectively the "Properties").  For further clarification, the

Properties subject to the Services Agreement are the collateral held by the Series 2006 Bond

Trustee under the Series 2006 Bond Documents[2] (the "Series 2006 Collateral") consisting of the

following parcels of the Debtor's real property:  (i) an approximately 25 acre campus located at 150

Idle Hour Boulevard, Oakdale, New York 11769, as more fully described in the Series 2006 Bond

Documents (the "Oakdale Campus") and (ii) an approximately 103 acre campus located at 1300

William Floyd Parkway, Shirley, Town of Brookhaven, New York 11967, as more fully described in

the Series 2006 Bond Documents (the "Brookhaven Campus").  For the avoidance of doubt, the Series

2006 Collateral excludes (i) the thirty-two residences adjacent to the Oakdale Campus and (ii) the

dormitories located at the Brookhaven Campus.

8.    Accordingly, the Debtor applied to this Court for an order authorizing it to retain

the Campus Agents as their *exclusive* real estate advisors for the Properties, effective *nunc pro*

*tunc* to the Petition Date (the "Retention Application") [Docket No. 15].

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Services Agreement and the
    Retention Application.
[2] The Series 2006 Bond Trustee and the Series 2006 Bond Documents shall have the meaning ascribed to them in the First Day
    Declaration.

9.      As detailed in the Retention Application, the Debtor sought to retain the Campus Agents to (i) consult with the Debtor to discuss the Debtor's goals, objectives and financial parameters in relation to the Properties; (ii) prepare marketing materials for the Properties for distribution and presentation to prospective purchasers of the Properties; (iii) prepare and implement a marketing plan for the sale of the Properties; (iv) organize and host a secure and confidential virtual data room and interact with prospective bidders concerning confidential diligence in relation to the Properties; (v) summarize proposals received and assist in the evaluation and comparison of proposals received from potential purchasers of the Properties; (vi) report periodically to the Debtor regarding the status of the marketing and sale of the Properties; and (vii) solicit and manage offers to purchase the Properties (collectively the "Services")[3].

10.     In the Retention Application, the Debtor also requested approval to compensate the Campus Agents in accordance with the terms set forth in the Services Agreement.  Pursuant to the Services Agreement, the Debtor agreed to pay the Campus Agents as follows (the "Fee Structure"): For each sale of a Property negotiated by the Campus Agents on behalf of the Debtor, the Campus Agents shall earn and be paid a fee of four percent (4%) of the Gross Proceeds of such sale, but only as if and when title to each Property actually closes and is conveyed to the purchaser/s with whom the Campus Agents negotiated such sale on behalf of the Debtor.

11.     The Debtor explained in the Retention Application that the Fee Structure of the Campus Agents is on reasonable terms and conditions in light of, among other things, (a) the nature and scope of services to be provided by the Campus Agents; (b) industry practice with respect to the fee structure proposed by the Campus Agents; (c) market rates charged for comparable services

---

[3] A description of the Services Agreement contained herein is a summary provided for convenience purposes only.  In the event of any inconsistency between the summary of the Services as set forth herein and the Services Agreement, the Services Agreement shall control.

both in and out of chapter 11; and (d) the Campus Agents' substantial experience with respect to real estate issues.  The Debtor also explained that the Fee Structure is consistent with the Campus Agents' normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in this case.  In addition, the Fee Structure was negotiated in good faith and at arms-length between the Debtor and the Campus Agents and reflects the Debtor's evaluation of the value and expertise of the work to be performed by the Campus Agents.

12.    Additionally, the Services Agreement provided that the Debtor shall reimburse the Campus Agents for their reasonable out-of-pocket expenses (including, but not limited to, legal, mailing, marketing and travel expenses) incurred in connection with their retention and performance of Services.  Furthermore, it was agreed that the Campus Agents would provide the Debtor with a detailed marketing budget and that all reimbursable expenses for goods or services provided by third parties would be billed and payable without markup by the Campus Agents, and with respect to reimbursable expenses incurred directly by the Campus Agents would represent the actual expense to the Campus Agents for providing such good or service.  Any reimbursable expenses and disbursements were required to be approved in advance by the Debtor and were to be paid by Debtor within two weeks upon receipt of invoice.

13.    The Debtor further requested that the Court modify the reporting requirements set forth in the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 and General Order 613, Guidelines for Fees and Disbursements for Professionals in the Eastern District of New York Bankruptcy Cases, effective as of June 10, 2103 with respect to the Campus Agents. The basis for the request was that the Campus Agents were retained by the Debtor pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code and that it is standard practice in the Campus Agents' industry for professionals providing services relating to the sale of property to be compensated on a flat fee percentage basis, rather than on an incremental hourly basis, for such services.  Additionally, the Debtor explained that the Campus Agents were being employed to perform a highly specialized and discrete task and accordingly were not being compensated based upon time and effort expended.  The Campus Agents' services were transactional in nature and their benefit could not be measured merely by reference to the number of hours expended by the Campus Agents in the performance of their Services.

14.     The Debtor requested that, subject to the requirement that the Campus Agents file a final fee application with the Court, the Property Sale Fees shall be paid directly from the sale proceeds of any parcel of the Property and that upon completion of its work for the Debtor, the Campus Agents would file a final fee application for review by the Court and parties in interest pursuant to Section 328(a) of the Bankruptcy Code for all Services.

15.     The Debtor stated their belief that applications submitted in this manner would provide the Court and other parties in interest with sufficient information to monitor the amount and types of services rendered to the Debtor by the Campus Agents.

16.     On December 20, 2016 the Court entered the *Order Authorizing the Debtor To Retain A&G Realty Partners, LLC and Madison Hawk Partners, LLC as Real Estate Advisors to the Debtor Nunc Pro Tunc to the Petition Date* [Docket No. 115] (the "Retention Order").

17.     Pursuant to the Retention Order and in accordance with Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014, the Debtor was authorized by this Court to retain and employ the Campus Agents as their exclusive real estate advisors for the Properties *nunc pro tunc* to the Petition Date, on the terms and conditions set forth in the Application and the

7

Services Agreement and in accordance with the Fee Structure, except as provided by the Retention Order.

18.    The Retention Order requires that the Campus Agents file a final fee application for final allowance of compensation and reimbursement of fees and expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any Orders entered by the Court.

19.    The Retention Order further stated that all payments made directly by the Debtor to the Campus Agents, with the exception of the Property Sale Fee, shall in all respects remain subject to the terms of any documents or orders of this Court concerning debtor in possession financing or the use of cash and other collateral, including, but not limited to, any approved budget associated therewith, and which shall control in the event of any conflict between the relief contemplated by this Order and those other materials.

20.    Pursuant to the Retention Order, the Campus Agents would be compensated directly from the sale proceeds of any parcel of the Property and upon completion of their work for the Debtor, the Campus Agents would be required to file a final fee application for review by the Court and parties in interest pursuant to section 328(a) of the Bankruptcy Code for all Services.

21.    Additionally, the Retention Order stated that the information requirements in the United States Trustees Guidelines For Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 and General Order 613, Guidelines for Fees and Disbursements for Professionals in the Eastern District of New York Bankruptcy Cases, effective as of June 10, 2103 were waived and the Campus Agents are not be required to maintain records of detailed time entries in connection with the Services.

22.    Accordingly, in compliance with the Retention Order, the Campus Agents are hereby submitting this Final Fee Application.

### Relief Requested

23.    By this Final Fee Application, the Campus Agents seek final allowance of fees incurred for real estate advisory services rendered during the Fee Period, the sale of the Property/Series 2006 Collateral, specifically, the Brookhaven and the Oakdale Campuses, in the amount of $1,239,000.  The Campus Agents are also seeking final approval of their reasonable, actual and necessary expenses incurred during the Fee Period in the amount of $143,459.97.  A detailed summary of expenses is annexed hereto as Exhibit 3.

24.    The Campus Agents have received no payment and no promises for payment from any source other than the Debtor for services rendered during the Fee Period in connection with this Chapter 11 Case.  There exists no agreement or understanding between the Campus Agents and any other person for the sharing of any compensation to be received for Services, other than as between A&G and Madison Hawk, as previously disclosed in its Retention Application.

25.    All Services for which compensation is requested by Campus Agents pursuant to this Final Fee Application were performed for or on behalf of the Debtor in this Chapter 11 Case.

### Basis for Relief Requested

26.    During the Fee Period, the Campus Agents performed significant services on behalf of the Debtor.  As further detailed below, during the Fee Period, the Campus Agents provided extensive and important professional services to the Debtor in connection with this Chapter 11 Case.  The services were often performed under severe time constraints, took numerous hours and personnel and were necessary to address a multitude of critical issues both unique to this Chapter

11 Case and typically faced by a large corporate Debtor in similar cases of this magnitude and complexity.

## Summary of Services Rendered

27.     During the Fee Period, the Campus Agents represented the Debtor professionally and diligently, advising them on a variety of complex real estate matters and issues, as a result of which the Debtor took action to maximize the value of the Debtor's estate for the benefit of all parties in interest.

28.     Upon being retained, the Campus Agents met with the Debtor to discuss their goals, objectives, and financial parameters in relation to the Properties. The Campus Agents reviewed the Debtor's real estate data, strategy and Properties and provided extensive advice and guidance throughout the Fee Period. The Campus Agents worked extremely closely with the Debtor throughout the Fee Period to create a strategy for implementation of the Services.

29.     The Campus Agents prepared marketing materials for the Properties for distribution and presentation to prospective purchasers and prepared and implemented a marketing plan for the sale of the Properties.

30.     Throughout the Fee Period, the Campus Agents negotiated extensively on behalf of the Debtor with third parties to assist the Debtor in selling the Properties.  The Campus Agents, among other things, organized and hosted a secure and confidential virtual data room and interacted with prospective bidders concerning confidential diligence that may be performed in relation to the Properties.  The Campus Agents also summarized proposals received and assisted in the evaluation and comparison of proposals received from potential purchasers of the Properties.

31.     As a result of the Campus Agents' diligent work, the Campus Agents were able to negotiate significant purchase prices for the Debtor's Brookhaven and Oakdale Campuses.  The

total Gross Proceeds attained by, among others, the Campus Agents on behalf of the Debtor was $14 million for the sale of the Brookhaven Campus and $26.1 million for the sale of the Oakdale campus.

32.    Pursuant to the terms of the Services Agreement, for each sale of a Property negotiated by the Campus Agents on behalf of the Debtor, the Campus Agents shall earn and be paid a fee of four percent (4%) of the Gross Proceeds of such sale, but only as if and when title to each Property actually closes and is conveyed to the purchaser/s with whom the Campus Agents have negotiated such sale on behalf of the Debtor.  Additionally, the Services Agreement states that the Debtor shall pay all Property Sale fees due to A&G directly as part of the closing and/or the transfer of title of each asset.

33.    Accordingly, in accordance with the Fee Structure set forth in the Services Agreement, the total fees accrued as a result of the Gross Proceeds and Property Sales obtained by the Campus Agents on behalf of the Debtor during the Fee Period were $560,000 for the sale of the Brookhaven Campus and $1,044,000 for the sale of the Oakdale campus.  However, pursuant to a separate Order entered into by the Court, the Debtor was authorized to retain and compensate CBRE, Inc. as its real estate advisor to assist with the sale and disposition of the Brookhaven Dorms.  Pursuant to both retention orders the maximum aggregate fee or commission to be paid to all of the real estate agents is a fee equal to four percent (4%) of the purchase price for the Property sold, but the retention orders did not allocate or apportion the aggregate fee or commission entitlements as between the real estate agents.

34.    Accordingly, on or about November 20, 2018, all parties entered into a Stipulation and Consent Order Approving and Authorizing the Payment of Commission Due on Sale of Brookhaven Campus (the "Stipulation") [DE 648].  Pursuant to the terms of the Stipulation, A&G

11

shall be paid a fee in the amount of $195,000, for the benefit of the Campus Agents, for the sale

of the Brookhaven Property.  On November 28, 2018, the Court "so ordered" the Stipulation [DE

649].  Therefore, in compliance and in accordance with the Stipulation, the total fees earned by

the Campus Agents from the sales of the Brookhaven and Oakdale campuses are $1,239,000:

$195,000 from the sale of the Brookhaven Campus and $1,044,000 from the sale of the Oakdale

Campus.

35.     As noted above, it is clear that the Campus Agents' diligence, hard work, numerous

hours, negotiation skills and Services resulted in substantial earnings to the Debtor totaling $40.1

million dollars.

36.     In summary, the fees charged by the Campus Agents have been billed in accordance

with the Services Agreement, the Retention Application, and the Retention Order and are

reasonable in light of, among other things, (a) industry practice, (b) market rates charged for

comparable services both in and out of the chapter 11 context and (c) the Campus Agents'

substantial experience with respect to real estate advisory services. The Fee Structure appropriately

reflect the nature and scope of services performed by the Campus Agents in this Chapter 11 Case

and the fee structure typically utilized by the Campus Agents.  The Campus Agents respectfully

submits that such fees are reasonable based upon the customary compensation charged by similarly

skilled professionals in comparable bankruptcy cases and non-bankruptcy matters in the

competitive real estate market.   Additionally, as noted above, the Campus Agents' fee represents

a significant reduction to the fee that the Campus Agents are entitled to pursuant to the terms of

the Services Agreement that the Campus Agents agreed to in accordance with the Stipulation.

37.     Additionally, the Campus Agents are seeking final approval of their reasonable out-

of-pocket expenses incurred during the Fee Period in connection with their Services in the amount

of $143,459.97 as detailed in the invoices attached hereto.  In compliance with the terms of their Services Agreement, the Campus Agents provided the Debtor with a detailed marketing budget and all reimbursable expenses were approved in advance by the Debtor.  The expenses were for the following throughout the Fee Period:  advertising (both print and internet advertising), creating Property flyers, professional photos of the Properties, public relations, the creation of a website for the Debtor and the management of a data room for the Debtor. The data room was created by A&G, maintained throughout the Fee Period and was for the purpose of working confidentially with third parties for the receipt and review of diligence information surrounding the Properties. All reimbursable expenses for goods and services were billed without markup by the Campus Agents and represent the actual expense paid by the Campus Agents for such goods or service. As the reimbursable expenses were approved in advance by the Debtors and were in compliance with the terms of the Services Agreement, the Campus Agents respectfully request that the Court grant final approval of such expenses.

## Allowance of Compensation

38.    The Campus Agents respectfully submit that the services for which it seeks compensation in this Application were, at the time rendered, necessary for and beneficial to the Debtor and its estate and were rendered to protect and preserve the Debtor's estate.  The Campus Agents further believe that they performed the services for the Debtor economically, effectively, and efficiently, and the results obtained benefited not only the Debtor, but also the Debtor's estate and the Debtor's constituents.  The Campus Agents further submit that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtor, its estate, and all parties in interest.

39.    The Campus Agents were retained pursuant to Sections 327 and 328 of the Bankruptcy Code.  Section 328(a) provides, in relevant part, that a debtor, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

40.    Numerous courts have recognized that Congress intended section 328(a) to enable a debtor to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to review if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."  *See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862–63 (5th Cir. 1997); *Henry A. Leonard & Co. v. United States Trustee (In re River Foal, Inc.)*, 161 B.R. 568, 569 (Bankr. S.D.N.Y. 1993).  Courts in this district and others have approved similar relief in other chapter 11 cases.  *In re Dots, LLC*, No. 14-11016 (DHS) (Bankr. D.N.J. Feb. 19, 2014); *In re HDOS Enterprises*, No. 14-12028 (NB) (Bankr. C.D. Cal. March 7, 2014); *In re Orchard Supply Hardware Stores Corp.*, No. 13-11565 (CSS) (Bankr. D. Del. July 11, 2013); *In re Sbarro, Inc.*, No. 11-11527 (SCC) (Bankr. S.D.N.Y. July 11, 2011); *In re Loehmann's Holdings, Inc.*, No. 10-16077 (REG) (Bankr. S.D.N.Y. Jan. 24, 2011); *In re Blockbuster Inc.*, No. 10-14997 (BRL) (Bankr. S.D.N.Y. Nov. 23, 2010); *In re Saint Vincent's Catholic Med. Ctrs. of N.Y.*, No. 10-11963 (CGM) (Bankr. S.D.N.Y. May 18, 2010); *In re Movie Gallery Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. Jan. 9, 2009).

41.    The Campus Agents submit that the Fee Structure is reasonable under section 328(a) of the Bankruptcy Code in light of: (a) the nature and scope of services provided by the Campus

Agents; (b) industry practice with respect to the Fee Structure proposed by the Campus Agents; (c) market rates charged for comparable services both in and out of chapter 11; and (d) the Campus Agents' substantial experience with respect to real estate issues. Additionally, the terms of the Services Agreement were negotiated in good faith and at arm's-length between the Debtor and the Campus Agents and reflect the Debtor's evaluation of the value and expertise of the work performed by the Campus Agents.

42.     Additionally, the Fee Structure was negotiated in good faith by the Campus Agents and the Debtor due to many factors, including the fact that there was significant work to be done by the Campus Agents in order to obtain Property Sales, the bankruptcy filing of the Debtor and the fact that there was an immense amount of work to be done with no guarantee of payment if the Debtor determined not to accept a proposed sale of Property. Also, as noted above, the Campus Agents' fee represents a significant reduction to the fee that the Campus Agents' are entitled to pursuant to the terms of the Services Agreement that the Campus Agents' agreed to in accordance with the Stipulation.

43.     The Campus Agents performed the services for which it is seeking compensation on behalf of the Debtor and its estate, and not on behalf of any committee, creditor, or other entity. The Campus Agents have received no payment and no promises for payment from any source other than the Debtor for services provided in any capacity whatsoever in connection with this Chapter 11 Case.

44.     Pursuant to Bankruptcy Rule 2016(b), the Campus Agents have entered into a certain agreement between themselves to share the Property Sale Fee and that other than this agreement, the Campus Agents have not agreed to share with any person or firm, other than its

own members and employees, the compensation to be paid for the professional services rendered in connection with this Chapter 11 Case.

## **Reservation of Rights**

45.     The Campus Agents do not waive, and expressly reserve, their right to respond to any objections regarding this Final Fee Application and the amounts sought for the Campus Agents' work in this Chapter 11 Case.

## **No Prior Request**

46.     Other than as set forth herein, no previous request for the relief sought herein has been made to this Court or any other court.

## **Notice**

47.     Notice of this Application shall be given to the following parties:  (a) United States Trustee; (b) the Debtor's material prepetition and post-petition secured lenders and any agent therefore; (c) counsel to the Creditors' Committee; (d) the following taxing and regulatory authorities: (i) the United States Attorney for the Eastern District of New York, (ii) the Attorney General of the State of New York, (iii) United States Department of Education, (iv) New York State Department of Education, (v) the Internal Revenue Service, (vi) the New York State Department of Taxation and Finance, and (vii) the Securities and Exchange Commission; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

## **Conclusion**

WHEREFORE, the Campus Agents respectfully request that the Court enter an order: (a) approving its fees in the amount of $1,239,000 for reasonable and necessary professional services rendered during the Fee Period; (b) approving its expenses in the amount of $143,459.97 for actual, reasonable and necessary expenses incurred during the Fee Period; (c) authorizing the Debtor's payment to A&G of such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dated:  February 1, 2019

A&G REALTY PARTNERS, LLC

By:

*/s/ Andrew Graiser*
Andrew Graiser,  Co-President
A&G Realty Partners, LLC
445 Broadhollow Road, Suite 410
Melville, New York 11747
Email:  andy@agrealtypartners.com

**Exhibit 1**

**Andrew Graiser Declaration**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                                   :        Chapter 11
                                                        :
DOWLING COLLEGE,                                        :
f/d/b/a DOWLING INSTITUTE,                              :        Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                          :
ASSOCIATION,                                            :
f/d/b/a CECOM,                                          :
a/k/a DOWLING COLLEGE, INC.,                            :
                                                        :
                                          Debtor.       :

---------------------------------------------------------------x

**DECLARATION OF ANDREW GRAISER IN SUPPORT OF THE FIRST AND
FINAL FEE APPLICATION OF A&G REALTY PARTNERS, LLC AND MADISON
HAWK PARTNERS, LLC FOR COMPENSATION FOR SERVICES RENDERED
AS REAL ESTATE ADVISOR TO THE DEBTOR FOR THE PERIOD OF
NOVEMBER 29, 2016 THROUGH AND INCLUDING JANUARY 14, 2019**

I, ANDREW GRAISER, being duly sworn, state the following under penalty of perjury:

1.      I am a Co-President of A&G Realty Partners, LLC ("A&G"), a real estate consulting and advisory firm, which maintains offices in New York, Los Angeles, Philadelphia and Chicago.

2.      I have read the final fee application of A&G and Madison Hawk Partners, LLC ("Madison Hawk", and together with A&G, the "Campus Agents") as real estate advisors for the Debtor and the Debtor in Possession, for the Fee Period (the "Final Fee Application").  To the best of my knowledge, information and belief, the statements contained in the Final Fee Application are true and correct.  In addition, I believe that the Final Fee Application complies with Local Bankruptcy Rule 2016-1.

3.      In connection therewith, I hereby certify that:

    a)      to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Final Fee

1

Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, except as specifically set forth herein;

b)     except to the extent disclosed in the Final Fee Application, the fees and disbursements sought in the Final Fee Application are billed at rates customarily employed by A&G and generally accepted by A&G's clients;

c)     the Campus Agents are seeking compensation with respect to Property Sales (as that term is defined in the Services Agreement) obtained by the Campus Agents on behalf of the Debtor;

d)     in providing a reimbursable expense, A&G does not make a profit on that expense, whether the service is performed by A&G in-house or through a third party;

e)     in accordance with Rule 2016(a) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 504, no agreement or understanding exists between the Campus Agents and any other person for the sharing of compensation to be received in connection with the above cases except as authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules other than as set forth in the Retention Application; and

f)     All services for which compensation is sought were professional services on behalf of the Debtor and not on behalf of any other person.

4.     I certify that the U.S. Trustee for the Eastern District of New York, the Debtor and the Creditors' Committee are each being provided with a copy of the Application and this Certification.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  February 1, 2019                                  /s/ Andrew Graiser
Melville, New York                                        Andrew Graiser
                                                          Co-President
                                                          A&G Realty Partners, LLC

**<u>Exhibit 2</u>**

**Jeffrey L. Hubbard  Declaration**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re                                                            :          Chapter 11
                                                                 :
DOWLING COLLEGE,                                                 :
f/d/b/a DOWLING INSTITUTE,                                       :          Case No. 16-75545 (REG)
f/d/b/a DOWLING COLLEGE ALUMNI                                   :
ASSOCIATION,                                                     :
f/d/b/a CECOM,                                                   :
a/k/a DOWLING COLLEGE, INC.,                                     :
                                                                 :
                                      Debtor.                    :
---------------------------------------------------------------x

**DECLARATION OF JEFFREY L. HUBBARD IN SUPPORT OF THE FIRST AND
FINAL FEE APPLICATION OF A&G REALTY PARTNERS, LLC AND MADISON
HAWK PARTNERS, LLC FOR COMPENSATION FOR SERVICES RENDERED
AS REAL ESTATE ADVISOR TO THE DEBTOR FOR THE PERIOD OF
<u>NOVEMBER 29, 2016 THROUGH AND INCLUDING SEPTEMBER 30, 2018</u>**

     I, JEFFREY L. HUBBARD, being duly sworn, state the following under penalty of perjury:

     1.     I am President of Madison Hawk Partners, LLC ("<u>Madison Hawk</u>"), a real estate consulting and advisory firm, which maintains offices in New York.

     2.     I have read the final fee application of A&G and Madison Hawk ("<u>Madison Hawk</u>", and together with A&G, the "<u>Campus Agents</u>") as real estate advisors for the Debtor and the Debtor in Possession, for the Fee Period (the "<u>Final Fee Application</u>").  To the best of my knowledge, information and belief, the statements contained in the Final Fee Application are true and correct.  In addition, I believe that the Final Fee Application complies with Local Bankruptcy Rule 2016-1.

     3.     In connection therewith, I hereby certify that:

          a)  to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Final Fee Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, except as specifically set forth herein;

1

b)        except to the extent disclosed in the Final Fee Application, the fees and disbursements sought in the Final Fee Application are billed at rates customarily employed by Madison Hawk and generally accepted by Madison Hawk's clients;

c)        the Campus Agents are seeking compensation with respect to Property Sales (as that term is defined in the Services Agreement) obtained by the Campus Agents on behalf of the Debtor;

d)        in providing a reimbursable expense, Madison Hawk does not make a profit on that expense, whether the service is performed by Madison Hawk in-house or through a third party;

e)        in accordance with Rule 2016(a) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 504, no agreement or understanding exists between the Campus Agents and any other person for the sharing of compensation to be received in connection with the above cases except as authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules other than as set forth in the Retention Application; and

f)        All services for which compensation is sought were professional services on behalf of the Debtor and not on behalf of any other person.

5.      I certify that the U.S. Trustee for the Eastern District of New York, the Debtor and the Creditors' Committee are each being provided with a copy of the Application and this Certification.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  February 1, 2019
New York, New York

/s/ Jeffrey L. Hubbard
Jeffrey L. Hubbard
President
Madison Hawk Partners, LLC

**Exhibit 3**

**Invoices of Expenses**
**November 29, 2016 through January 14, 2019**

# Invoice

| | |
|---|---|
| Date: | 01/18/2017 |
| Invoice No.: | 10353 |



A&G Realty Partners LLC
445 Broadhollow Road, Suite 410
Melville, NY 11747
Emilio Amendola
emilio@agrealtypartners.com
631-465-9507

Bill To:
Deborah Caruso, Trustee
ITT Educational Services, Inc.
13000 N Meridian St
Carmel, IN 46032

ITT Educational Services, Inc.
13000 N Meridian St
Carmel, IN 46032

| Quantity | Site | Fee | Total |
|---|---|---|---|
| 1 | Dowling Website Invoice | $1,153.75 | $1,153.75 |

| | |
|---|---|
| **Total** | **$1,153.75** |
| **Balance Due** | **$1,153.75** |

**Send checks to above address or**
**Make All Wires Payable To:**
**JP Morgan Chase Bank**
**A&G Realty Partners**
**445 Broadhollow Rd, Suite 410**
**Melville, NY 11747**
**Account #404526712**
**Routing #021000021**

**Thank you for your business.**

# Invoice



| | |
|---|---|
| Date: | 01/18/2017 |
| Invoice No.: | 10355 |

A&G Realty Partners LLC
445 Broadhollow Road, Suite 410
Melville, NY 11747
Emilio Amendola
emilio@agrealtypartners.com
631-465-9507

Bill To:
Dowling College
150 Idle Hour Blvd.
Oakdale, NY 11769

150 Idle Hour Blvd.
Oakdale, NY 11769

| Quantity | Site | Fee | Total |
|---:|---|---:|---:|
| 1 | Scan Studios | $2,921.00 | $2,921.00 |
| 1 | Best Aerial Photos | $830.00 | $830.00 |
| 1 | Cahn Invoice | $5,470.00 | $5,470.00 |

| | |
|---:|---:|
| **Total** | **$9,221.00** |
| **Balance Due** | **$9,221.00** |

**Send checks to above address or**
**Make All Wires Payable To:**
**JP Morgan Chase Bank**
**A&G Realty Partners**
**445 Broadhollow Rd, Suite 410**
**Melville, NY 11747**
**Account #404526712**
**Routing #021000021**

**Thank you for your business.**

# Invoice



| | |
|---|---|
| Date: | 01/18/2017 |
| Invoice No.: | 10356 |

A&G Realty Partners LLC
445 Broadhollow Road, Suite 410
Melville, NY 11747
Emilio Amendola
emilio@agrealtypartners.com
631-465-9507

Bill To:
Dowling College
150 Idle Hour Blvd.
Oakdale, NY 11769

150 Idle Hour Blvd.
Oakdale, NY 11769

| Quantity | Site | Fee | Total |
|---:|---|---:|---:|
| 1 | Scan Studios | $39,595.96 | $39,595.96 |

| | |
|---:|---:|
| **Total** | **$39,595.96** |
| **Balance Due** | **$39,595.96** |

**Send checks to above address or**
**Make All Wires Payable To:**
**JP Morgan Chase Bank**
**A&G Realty Partners**
**445 Broadhollow Rd, Suite 410**
**Melville, NY 11747**
**Account #404526712**
**Routing #021000021**

**Thank you for your business.**

# Invoice



Date:            01/27/2017
Invoice No.:    10361

A&G Realty Partners LLC
445 Broadhollow Road, Suite 410
Melville, NY 11747
Emilio Amendola
emilio@agrealtypartners.com
631-465-9507

Bill To:
Dowling College
150 Idle Hour Blvd.
Oakdale, NY 11769

150 Idle Hour Blvd.
Oakdale, NY 11769

| Quantity | Site | Fee | Total |
|---:|---|---:|---:|
| 1 | Alexander Scott Printing | $734.91 | $734.91 |
| 1 | Scan Studios | $15,562.68 | $15,562.68 |

|  |  |
|---:|---:|
| **Total** | **$16,297.59** |
| **Balance Due** | **$16,297.59** |

**Send checks to above address or**
**Make All Wires Payable To:**
**JP Morgan Chase Bank**
**A&G Realty Partners**
**445 Broadhollow Rd, Suite 410**
**Melville, NY 11747**
**Account #404526712**
**Routing #021000021**

**Thank you for your business.**

# Invoice



| | |
|---|---|
| Date: | 11/03/2017 |
| Invoice No.: | 10519 |

A&G Realty Partners LLC
445 Broadhollow Road, Suite 410
Melville, NY 11747
Emilio Amendola
emilio@agrealtypartners.com
631-465-9507

Bill To:
Robert Rosenfeld
Dowling College
150 Idle Hour Blvd.
Oakdale, NY 11769

Dowling College
150 Idle Hour Blvd.
Oakdale, NY 11769

| Quantity | Site | Fee | Total |
|---|---|---|---|
| 1 | Dowling Website Charge | $32.50 | $32.50 |
| 1 | Scan Studios Marketing | $10,364.14 | $10,364.14 |

| | |
|---|---|
| **Total** | **$10,396.64** |
| **Balance Due** | **$10,396.64** |

**Send checks to above address or**
**Make All Wires Payable To:**
**JP Morgan Chase Bank**
**A&G Realty Partners**
**445 Broadhollow Rd, Suite 410**
**Melville, NY 11747**
**Account #404526712**
**Routing #021000021**

**Thank you for your business.**

# Invoice



| | |
|---|---|
| Date: | 10/25/2017 |
| Invoice No.: | 10512 |

A&G Realty Partners LLC
445 Broadhollow Road, Suite 410
Melville, NY 11747
Emilio Amendola
emilio@agrealtypartners.com
631-465-9507

Bill To:
Robert Rosenfeld
Dowling College
150 Idle Hour Blvd.
Oakdale, NY 11769

Dowling College
150 Idle Hour Blvd.
Oakdale, NY 11769

| Quantity | Site | Fee | Total |
|---:|---|---:|---:|
| 1 | Marketing Expense Scan Studios | $58,445.03 | $58,445.03 |
| 1 | Marketing Expense Real Capital Markets | $4,350.00 | $4,350.00 |
| 1 | Cahn Communication | $4,000.00 | $4,000.00 |

|  |  |
|---:|---:|
| **Total** | **$66,795.03** |
| **Balance Due** | **$66,795.03** |

**Send checks to above address or**
**Make All Wires Payable To:**
**JP Morgan Chase Bank**
**A&G Realty Partners**
**445 Broadhollow Rd, Suite 410**
**Melville, NY 11747**
**Account #404526712**
**Routing #021000021**

**Thank you for your business.**