Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    DOWLING COLLEGE,                    Case No. 16-75545-reg

8

9              Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    Alfonse M. D'Amato Federal Courthouse

14                    290 Federal Plaza

15                    Central Islip, New York 11722

16

17                    August 21, 2019

18                    1:47 p.m.

19

20

21   B E F O R E :

22   HON ROBERT E. GROSSMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  Unidentified

1  [724] Motion to Object/Reclassify/Reduce/Expunge Claim

2  Numbers #131 of Airwald, #132 of Airweld, #443 of Angie L

3  Martinez, #130 of Courtney Whalley, #15 of East Islip Lumber

4  Co Inc, #3 of Justin Robert Carlson, #72 of Mike Covello,

5  #482 of United States Department of Education, #783 of

6  United States Department of Education , #802 of Vladislav

7  Tsalko, #186 of Ann Saggese Garnes, 133 of Ashvin Doshi,

8  #226 of Carole Saturnino, #188 of David C Maserjian, #448 of

9  David Gold & Bertha Gold JT Penn, #171 of Dennis H Hawkins,

10 #208 of Siana Sclafini, #105 of George Roberta, #210 of

11 George Roberta, #282 of Gerald R & Beverly G Sullivan, #352

12 of Harold A Koster & Joan M Koster, #206 of Irwin M

13 Weinstock, #241 of John Grande , #409 of Joseph M Kazckowski

14 Trustee, #205 of Kenneth A Dooppelt; # 150 of Laurie

15 Hoffman, #317 of Lewis T Boxwell, #177 of Marie Turro

16 Gillespie,249 of Melanie Dobel, #242 of Miroslav Satan, #229

17 of Nicholas Peppino, #316 of Peggy B Reed, #283 of Steven J

18 Dobel, #122 of US Trust Company of Delaware Co-Trustee

19 Danyal Ozizmir Irrevocable Trust, #123 of US Trust Co of

20 Delaware Co-Trustee Danyal Ozizmir Irrevocable Trust, #240

21 of Waldemar Lipinski & #222 of William A Apfel by Anthony C

22 Acampora on behalf of Ronald J. Friedman, Esq., Unsecured

23 Creditor Trustee.

24

25

1    [726] Motion to Object/Reclassify/Reduce/Expunge Claim

2    Numbers 194-Allan B Mendelsohn, #408-Barnes & Noble College,

3    #187-Block Chiropractic Sports & Willness, #9-Bonnie Nohs

4    for Michelle T Nohs, #290-Bri-Tech, Inc, #75-CIT Finance

5    LLC, #53-Deanna Ocampo for Michelle T Nohs, #179-Delta Mu

6    Delta, #252-Doherty, Enterprises, Inc, #405-Elinor Brunswick

7    Appel, #447-Elsevier BV, #358-Expense Reduction Analysts

8    Addison Tower, #203-Gayle M Balmuth, #451-Geeta Persad,

9    #169-Grammy Enterprises LLc, #455-Hartford Fire Insurance Co

10   Hartford Plaza, #276-Hobsons Inc, #142-Joseph Economico,

11   #125-Laser Performance Products, Inc, #383-Local 153 Pension

12   Plan, #425-Maryann Caputo, #85-Mike Caldarella, #293-

13   National Union Fire Insurance Company, #168-Platinum Energy

14   LLC, #27-Robert Elkins, #165-Robert Moccia, #393-Royal Star

15   Associates, Inc, #39-Skyrush Marketing, #288-Smart Power

16   Inc, #318-Steven Murray, #391-The Hartford, #784-United

17   States Department of Education & #780-Westchester Journal

18   News Acct by Anthony C Acampora on behalf of Ronald J.

19   Friedman, Esq., Unsecured Creditor Trustee

20

21

22

23

24

25

1   [728] Motion to Object/Reclassify/Reduce/Expunge Claim

2   Numbers: 351, 442, 340, 462, 180, 463, 266, 779, 438, 292,

3   212, 445, 161, 246, 431, 291, 496, 224, 272, 217, 201, 454,

4   420, 392, 307, 239, 237, 158, 444, 439, 403, 479, 143, 257,

5   435, 471, 119, 476, 114, 199, 251, 424, 453, 416, 350, 386,

6   401, 412, 197, 126, 216, 478, 782, 459, 461, 163, 489, 379,

7   243, 490, 275, 385, 378, 207, 195, 475, 474, 486, 400, 308,

8   433, 464, 374, 166, 170, 215, 422, 284, 202, 432, 342, 499,

9   366, 193, 460, 801, 493, 339, 419, 200, 137, 410, 427, 141,

10  223, 389, 364, 417, 387, 470, 803, 81, 359, 376 & 149 by

11  Anthony C Acampora on behalf of Ronald J. Friedman, Esq.,

12  Unsecured Creditor Trustee.

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sherri L. Breach

1    A P P E A R A N C E S :

2    SILVERMANACAMPORA, LLP

3        Attorneys for Dowling College Unsecured Creditor Trust

4        100 Jericho Quadrangle, Suite 300

5        Jericho, New York 11753

6

7    BY:  BRIAN POWERS, ESQ.

8        ANTHONY ACAMPORA, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE CLERK:  Matters Number 39 through 41, Dowling

3    College.

4        (Pause)

5            MR. ACAMPORA:  Good afternoon, Your Honor.

6    Anthony Acampora, SilvermanAcampora for Ronald Friedman, the

7    unsecured creditor trustee.  With me today is Mr. Brian

8    Powers and the trustee, Ronald Friedman.

9            MR. POWERS:  Good afternoon, Your Honor.

10            THE COURT:  Okay.

11            MR. ACAMPORA:  We have three claims motions on.

12    The reason I'm here, Your Honor, is to give you a little

13    quick status as to what's going on with the litigation so

14    that you're aware, and then Mr. Powers will do the claims

15    objections, with your permission.

16            DNO settlement is being finalized.  We're

17    gathering the signatures of the 12 defendants.  Money is in

18    that pipeline.  We will serve the Rule 41 dismissals that we

19    spoke about at the last hearing as soon as we have the money

20    and the case is actually settled, and we'll be serving that

21    on the creditors and filing it on the docket.

22            I've settled with KPMG.

23            We plan to file -- there's no pending litigation

24    as Your Honor is aware.  That was through a mediation before

25    we commenced any litigation.  We were planning on filing

1    something similar to the Rule 41, but not exactly, another

2    notice of settlement of litigation or settlement of claim,

3    putting that on the docket in the main case because there's

4    no adversary from which to put it.

5            And the only question I have for Your Honor is do

6    you want to see that document in camera along with the

7    settlement agreement in camera as we did with the DNO?

8            THE COURT:  Yeah.  I mean, you're aware that

9    there's a good bit of public sentiment as emphasized in a

10   newspaper article that was circulated that disagrees with

11   the trustee and apparently your firm's belief that you can

12   do all this without explaining it to anybody, or adequately

13   explaining it.  That's the view of alumni of Dowling

14   College.

15           I have made my view very clear in this case.  You

16   guys do what you do at your own peril.  That's going to be

17   highlighted in about five minutes when we get into the

18   claims objections.  But I have nothing to say, not nothing

19   to say.  I will have plenty to deal with in this case,

20   plenty.

21           I think what you're doing by not -- if that's your

22   ultimate decision, not explaining what went on in this case,

23   what happened -- and don't tell me the complaint does it.

24   I've heard your whole argument about this.  There's an

25   entire constituency of people that were hurt in Dowling

1   College who are unsatisfied, and I agree with them, with the

2   actions of the trustee in this case so far, that the

3   settlement you've entered into which you have agreed not to

4   publicize or give people an opportunity to comment on I

5   think is a horrendous decision.  That's a decision you're

6   making.  We've been through this.  When it's my turn I'll

7   have something to deal with and say about it.

8           I'm not interested in any more discussion on this

9   one.  I really am not.  I told you what I think you should

10  do.  You guys are going about this under the view that you

11  said to me in the last hearing, I'm the only person who

12  believes you have to seek the Court's approval on this.  I

13  disagree with that.  I'm not sure what you sign is

14  enforceable in any form.  Okay.  You're free to sign it.

15  you do what you want.

16          I'm not discussing this anymore.  I've made my

17  views perfectly clear.  I'm going to have my say in this

18  case down the road.  You're going to understand it very

19  clearly down the road.  But for now you have the belief, as

20  counsel to Mr. Friedman, and Mr. Friedman has a belief that

21  you can proceed in a certain fashion.  I disagree with that.

22  You want to go ahead.  It's a free country.  The Court will

23  have its opportunity to participate at another point.

24          We're done.  Move on to the objections.  I don't

25  want to hear anymore about your settlements.  I really

1    don't.  I don't have any interest in your settlement where

2    you don't ask the Court to review it, approve it or do

3    anything else.

4           I don't know what you're doing with the KPMG

5    settlement.  What I told you to do or suggested you guys do,

6    and you may still be doing it in which case it will be fine,

7    is let the public know what the settlement is, what you're

8    doing, why you did it, what the monies are involved in it,

9    how it's going to proceed, and let people come in and say

10   they either agree or disagree.  You don't agree that they

11   have that right.

12          MR. ACAMPORA:  Your Honor doesn't want me to

13   discuss it.

14          THE COURT:  No, I don't.  I really don't.  I

15   really don't.  I don't want to hear it anymore.

16          MR. ACAMPORA:  I understand.

17          THE COURT:  Then don't do it.  I just told you I

18   don't want to hear this anymore.  We're going to have an

19   opportunity where you will have the right and probably the

20   need to explain this fully.  Not today.

21          MR. ACAMPORA:  I have no intention of doing it

22   today.

23          THE COURT:  Okay.  Anything else you want to say,

24   you can -- free to go ahead and say it.

25          MR. ACAMPORA:  Yes.

1          THE COURT:  Go ahead.

2          MR. ACAMPORA:  That is consistent with something

3    you said to me prior months ago.  We then, I thought,

4    reached an understanding as to how we would proceed, that

5    the number was -- and I'm not arguing.  I'm just -- I'm

6    protecting my record, Your Honor.

7          THE COURT:  That's fine.

8          MR. ACAMPORA:  And I'm entitled to do that.

9          THE COURT:  You are entitled to that.

10         MR. ACAMPORA:  We had a conversation about what

11   could and could not be spread upon the record based upon the

12   parameters of the ability to settle with these defendants.

13   We also discussed that we needed to put something on the

14   record that showed what the claims were, what their

15   objections were, that you were concerned about notice.

16         We also discussed that there's no 9019 procedure

17   here, so everything that you just said confuses me a little

18   bit because creditors don't have the right to object under

19   the plan and the confirmation order.

20         THE COURT:  That's your view.  I know that.  That

21   doesn't seem to be the view of a fairly large -- a large

22   constituency.

23         MR. ACAMPORA:  So let me address that constituency

24   for one minute and then I will subside and let Mr. Powers

25   proceed.

1          I spoke to Newsday and I've spoke -- and Mr.

2     Friedman spoke to the person that was quoted in Newsday.

3     The Alumni Association of Dowling College was -- Inc., was

4     created two months after Dowling closed its doors.  So the

5     tenor of that article was how is the trustee representing

6     that organization.  And I think it's clear that we're not.

7     The Dowling Alumni Association was a DBA that was rolled up,

8     as Your Honor is well aware, by the debtor when they filed

9     for bank -- when it filed for bankruptcy.

10          So what I had told Newsday was that's wrong.

11    We're not representing the Dowling Alumni Association or the

12    -- I'm sorry -- the Association -- the Association of Alumni

13    -- the Alumni Association of Dowling, Inc. is the actual

14    name.  We're not representing that entity.  That individual

15    is known to Mr. Suther (ph).  He's spoken to Mr. Friedman.

16    He wants to buy the college.  He wants to do something else.

17    The college's charter is gone.  We've gotten no objection

18    from them.

19          I understand what's in the newspaper.  I think

20    it's inflammatory, and I don't think it reflects reality.

21    Your Honor knows I'm not trying to settle claims that that

22    entity may have.  I don't believe that entity has any claims

23    because as an entity it didn't exist until the debtor was

24    done.

25          THE COURT:  Well, your view on claims, which is

1    going to be the next round of this series today, and my view

2    on claims vary dramatically.  So why don't you wait till Mr.

3    Powers is done and hear my view on that, and you may

4    understand why I'm concerned, to put it mildly, about what's

5    going on.

6              We have numbers of people who have sang the same

7    tune.  Dowling took money from them.  You said to this Court

8    on at least two occasions that Dowling paid no bills during

9    the two-year period, whatever it was, which I don't find

10   possible, but that was your statement.  If Dowling paid

11   nothing out and Dowling collected money, money went

12   someplace, either -- I don't assume a bunch of people took

13   it in suitcases.  I don't assume you guys have a clue where

14   it went.  I really don't.

15             Don't answer me, because everything I've seen in

16   this case from the Section 5 claims on is that the trustee

17   and his professionals, other than drafting a complaint which

18   explain that millions of dollars couldn't be found, forget

19   the dollars that may have been used for one purpose.  You

20   have any number of allegations that we couldn't -- that the

21   accountants told you in a certain year a million and a half

22   dollars couldn't be found.  This couldn't be found.  It's in

23   the --

24             MR. ACAMPORA:  That's not accurate.

25             THE COURT:  It's --

1          MR. ACAMPORA:  No, Your Honor.

2          THE COURT:  -- in the complaint.

3          MR. ACAMPORA:  That's not accurate.

4          THE COURT:  You want me to give you a copy of it?

5    I read it.

6          MR. ACAMPORA:  I drafted it.

7          THE COURT:  Well, I understand what you drafted.

8    I read it.  There are sections in that complaint where it

9    says in a particular year a million and a half dollars we

10   don't know what happened to it.  You don't argue that it

11   went here or there.  You just say they can't tell you where

12   it went.

13         MR. ACAMPORA:  That's --

14         THE COURT:  And in each year there were several

15   years where that statement was made.

16         MR. ACAMPORA:  I know what sections you're

17   referring to.

18         THE COURT:  Okay.

19         MR. ACAMPORA:  Those --

20         THE COURT:  I'm not having a discussion.

21         MR. ACAMPORA:  Please.

22         THE COURT:  Mr. Acampora, please.

23         MR. ACAMPORA:  Your Honor, we have these one-sided

24   conversations.

25         THE COURT:  Yes, they are.

1          MR. ACAMPORA:  And I agree that you're entitled to

2    do that.  But I'm entitled to protect my record.

3          THE COURT:  Well, when I'm done you can protect

4    your record.

5          MR. ACAMPORA:  Fine.

6          THE COURT:  I repeat that a normal source of money

7    for any Chapter 11 I've ever seen in 45 years is claims

8    under Section 5, monies that paid out that shouldn't have

9    been paid out, some form of claims.  When I asked about it

10   in this case I was told we couldn't do that because we don't

11   think any money was paid and, by the way, we didn't look at

12   the books and records.  We never hired an accountant.  The

13   trustee has never hired an accountant in this case, to my

14   knowledge, on behalf of you -- on behalf of the estate.

15         You're now settling with KPMG.  I don't know what

16   you're settling because I've never seen a complaint.  I

17   don't know what KPMG's responsibility was.  I don't know

18   what it's for.  I don't -- I don't know any of this.  I

19   don't -- and nobody else will either.

20         And what I'm telling you is one way or another, it

21   could be really painful, but one way or another the story of

22   what happened at Dowling is not going to get swept under the

23   rug.  And I don't care how I get there.  I don't care

24   whether it's in this court or another court.  This is going

25   to be explained, what everybody's role was from the

1    creditors' committee to the creditors' committee's counsel

2    to the trustee to the trustee's counsel.  I've made this

3    abundantly clear time after time after time.

4          When you say we reach an agreement -- I don't have

5    to reach an agreement with you.  I have no agreements with

6    you.  You do as a lawyer what you think is right.  My job is

7    to review that and determine if I agree with it or not.  And

8    if I have a legal basis to disagree, then I'm going to do

9    something.

10          So keep going.  Keep doing what you're doing.

11   I've made my record incredibly clear in this case,

12   incredibly clear.  You have made your record clear.  You

13   believe you had no obligation or the trustee has no

14   obligation.  And you've -- to do certain things.  You

15   believe I don't have the authority to review your

16   settlements.  I think you're wrong.  Go settle the case and

17   when somebody else comes in and challenges it, maybe there

18   will be a hearing on it.  Maybe nobody will ever challenge

19   it.

20          But just understand we have no agreements.  We

21   have no understanding.  My view of how you all have handled

22   this is marginally better than when you did nothing.  And

23   that will be reviewed at a certain point in time, not today.

24   Today is just for what we're doing, which is your claims

25   objections motion.

1              Now I would like to move onto that.

2              MR. ACAMPORA:  Very well.

3              THE COURT:  Thank you.

4              MR. POWERS:  Your Honor, for the record Brian

5    Powers, SilvermanAcampora, counsel to the creditor trustee.

6              I think it makes sense probably to take the

7    omnibus objections in numerical order.  So the first omnibus

8    objection, Your Honor, was to duplicative, amended and

9    superseded claims.  That was filed on July 12th and it's ECF

10   724.  The affidavit of service of that is at ECF 724-5.  It

11   was also filed in cert on the same day on all of the

12   claimants and the United States Trustee.

13             The claims on this, as I stated, Your Honor, were

14   claims that were duplicative --

15             THE COURT:  You had one objection in that and your

16   response to that is that that party is taken care of as part

17   of the bondholders.

18             MR. POWERS:  That is correct, Your Honor.

19             THE COURT:  All right.  That makes sense to me.

20   And all the rest there's no objections from anybody?

21             MR. POWERS:  No objections to anybody else.

22             THE COURT:  And these are all these duplicative --

23   I guess they're being taken care of through your resolution

24   of the bond --

25             MR. POWERS:  The bond -- so it's two buckets, Your

1    Honor.  There's the bondholder claims which you're correct.

2    They're being taken care of otherwise.

3              There's also claims, I believe, that the

4    Department of Education and a few others that just flat out

5    they were --

6              THE COURT:  All right.

7              MR. POWERS:  -- superseded by later filings.

8              THE COURT:  But nobody's objected to it, so --

9              MR. POWERS:  Correct.

10             THE COURT:  -- the Court will grant that motion.

11             MR. POWERS:  Thank you, Your Honor.

12             Going to the second omnibus objection, Your Honor,

13   this one was filed on July 15th.  It's ECF 726.  The

14   affidavit of service is ECF 727.  It was filed in cert,

15   again, on July 15th on all claimants and the United States

16   Trustee.

17             This one is claims that, based on the debtor's

18   books and records, should either be reduced or disallowed.

19   There are a few --

20             THE COURT:  Let me just make one statement

21   quickly.  One of the parties that filed a response to this

22   is a Bonnie Nohs.

23             MR. POWERS:  Correct.

24             THE COURT:  Bonnie Nohs is an employee of the

25   District Court in this building.  I have no reason to recuse

1    myself.  I've never spoken to her about this.  Her -- the

2    judge that she works for has nothing to do with this case.

3    That judge is aware that Bonnie had -- that Ms. Nohs had

4    filed this objection.  And so I -- it has no impact on my

5    decisions, but I thought it was fair to let you know.

6              MR. POWERS:  I appreciate that, Your Honor.  I

7    agree with you.  I don't think it has anything --

8              THE COURT:  Okay.

9              MR. POWERS:  Just for the record we did file two

10   notices of withdrawals of claims objections.  These

11   claimants contacted us, provided us with additional

12   information.  We were able to reconcile the books and

13   records.  We withdrew those.  That's Claim Number 169 and

14   Claim Number 408.

15             We also were contacted by Mr. Alan Mendelson.  He

16   filed Claim Number 194.  This is a bit of a strange

17   situation.  He is the trustee of multiple debtors that are

18   substantively consolidated estates.  We scheduled one of the

19   debtors.  He filed a claim for a different debtor.  We

20   objected based on the --

21             THE COURT:  In his role as the trustee, Chapter 7

22   trustee?

23             MR. POWERS:  As trustee, yes.  I believe in the

24   Eastern District.

25             Regardless, we ultimately came to a resolution.

1    The numbers are very close between the --

2              THE COURT:  All right.

3              MR. POWERS:  -- schedule and the filed claims, so

4    he agreed.  And as long as Your Honor is okay with it, he

5    circulated a stip and order that we would ask Your Honor to

6    enter separate and apart --

7              THE COURT:  All right.

8              MR. POWERS:  -- from this, where essentially

9    they're withdrawing their claim and we're agreeing to pay

10   their scheduled claim which we were going to be paying

11   anyway.

12             THE COURT:  Okay.

13             MR. POWERS:  That's, again, Claim Number 194.

14             There's also Claim Number 383 which was filed by

15   Local 153 Pension Plan.  That claim, Your Honor, they

16   contacted us as well.  They gave us a substantial amount of

17   documentation.  They --essentially, they had filed a claim

18   that said this is a good faith estimate, and we objected

19   saying, what does that mean, essentially.  And they gave us

20   a substantial amount of documentation.

21             Your Honor, we're going to be withdrawing the

22   objection to that claim.

23             THE COURT:  All right.

24             MR. POWERS:  And then finally Claim Number 784 was

25   the United States Department of Education.  They had

1    contacted us, Your Honor, and requested an extension.  The

2    United States Attorney on that matter isn't here, isn't

3    available today.  He's on vacation.  But we're hopeful that

4    we're going to be able to get that one resolved in the short

5    term anyway.

6           But to the extent we don't, we would ask for a

7    holding date sometime maybe early September just for an

8    adjourn date on this.

9           THE COURT:  Okay.  So the claim that's left is

10   Claim Number 53 here, Ms. Nohs' objection?

11          MR. POWERS:  That's the objection, yes.

12          THE COURT:  Right.

13          MR. POWERS:  I think it's -- it's actually two

14   claims, Your Honor.  So Ms. Nohs' claim is Claim Number 9

15   and then she filed with another -- I believe her name is

16   Deanna Ocampo, that was Claim Number 53 for $500.  They both

17   filed it.

18          THE COURT:  Right.  It's 19 -- 14,5 and 500, I

19   guess.

20          MR. POWERS:  I think it's 15,0000 even.

21          THE COURT:  Okay.

22          MR. POWERS:  So --

23          THE COURT:  And what's your -- they objected by

24   saying they endowed a scholarship for specific purposes at

25   Dowling.

1          MR. POWERS:  That is correct, Your Honor.

2          THE COURT:  Ms. Nohs is in the courtroom if she

3     wants to come up.  You don't have to if you wish to --

4          MS. NOHS:  I can't hear him, so I'm a little

5     (indiscernible).

6          THE COURT:  Okay.  Why don't you have a seat over

7     here?

8          MR. POWERS:  So essentially, Your Honor, the basis

9     of our objection -- and this has been before the Court in

10    numerous different settings -- is that under New York State

11    law the cy pres doctrine is the only way to distribute

12    endowed monies.

13         THE COURT:  That's not true.  That's not true.  As

14    a matter of law that's not true.

15         MR. POWERS:  I -- Mr. Bevona (ph) is in the

16    courtroom today, Your Honor.  He's had --

17         THE COURT:  I don't care who is here.  I've dealt

18    with this in several cases.  As a black letter law, that's

19    not true.  That's not how New York law works.

20         What happens is if you have a charitable donation,

21    often times those donations end up in places where the party

22    that made the donation passes away, dead.  And the

23    institution then either goes out of business or decides to

24    use the money differently.  That then doesn't go back to the

25    estate because the person who put up the money is no longer

1    with us.  And the ultimate resolution of how that money is

2    distributed would be under a Cy pres concept.

3              But exclusive of that, parties are free to come to

4    a court and reach agreements of to the change of how money

5    is used because if the party is still alive who gave you the

6    money, as Ms. Nohs obviously is, her objection is, I gave

7    the money to Dowling specifically to endow a scholarship in

8    the name of X, not to endow that scholarship at St. Mary's.

9    I think that's basically what she's arguing.  That was her

10   specific purpose.  She's still with us and she can evidence

11   to me that was her purpose.

12             The fact -- now your argument is we shouldn't give

13   it back to her even if the, what, court orders it?

14             MR. POWERS:  So --

15             THE COURT:  So if you and she agree that you would

16   give her back the money, I could order you giving her back

17   the money.

18             MR. POWERS:  Your Honor --

19             THE COURT:  There are tax consequences to her, but

20   that's not my issue.

21             MR. POWERS:  If I may, Your Honor, just quickly.

22   I think we're conflating issues here.

23             So the money for all of the scholarships is

24   sitting with the plan administrator, all of the endowed

25   funds waiting to be distributed, to the extent they haven't

1    been.  I know they've been working to do it.

2              THE COURT:  All right.  And it's supposed to be --

3              MR. POWERS:  That's --

4              THE COURT:  -- way.

5              MR. POWERS:  That is separate and apart --

6              THE COURT:  It's not --

7              MR. POWERS:  -- from the trust.

8              THE COURT:  It does not get paid to creditors.

9              MR. POWERS:  Right.

10             THE COURT:  Those funds are not available to the

11   general creditors.

12             MR. POWERS:  Right.

13             THE COURT:  And that's clear under New York law.

14             MR. POWERS:  But the claims in the case have now

15   -- so the general unsecured claims are now at the trust

16   level, whereas we're talking about two pools of money.

17   We're talking about the scholarship money is sitting with

18   the plan administrator waiting to be distributed, whereas

19   the money that comes in from whatever settlements we have --

20             THE COURT:  Who should she ask for the money?

21             MR. POWERS:  The plan administrator, ultimately.

22   And if --

23             THE COURT:  So if the plan --

24             MR. POWERS:  And, again, Mr. Bevona is in the

25   courtroom.

1              THE COURT:  If the plan administrator agrees to

2      give her the money, then she doesn't have a claim here.

3      Somebody should have explained that --

4              MR. POWERS:  I totally agree, Your Honor.

5              THE COURT:  -- to her.

6              MS. NOHS:  Well, that's not what --

7              THE COURT:  Hold it.  Hold it.  Hold it.  Just

8      let's not have a --

9              MS. NOHS:  Okay.

10             MR. POWERS:  More than happy to have that

11     conversation, Your Honor.

12             THE COURT:  Okay.

13             MR. POWERS:  But, ultimately, the -- there's no

14     claim against the trust because, again, there are --

15             THE COURT:  That may be right.  You may have no

16     claim -- what they're saying is that these monies are not

17     property of the -- well, I want to be careful.  It may or

18     may not be property of the estate, but it can't be used to

19     pay creditors.

20             So they can't give you the money as a creditor,

21     but you can be -- you can ask the plan administrator,

22     because that's different from these guys, to have me issue

23     an order if he wants directing that $15,000 or 15,5, if

24     they're both the same, of the funds he has instead of going

25     to Mount St. Mary's return to you.  They should be -- they

1    shouldn't care.  If you weren't alive, then that's a

2    different issue because interpreting your will, small "W"

3    not your will, it creates more of a problem.

4            Here -- and I think these guys can help you if

5    they think you're right.  We're not doing this because I

6    know you or you're in this courtroom.  This -- I would do

7    this for anybody.  If the party comes in and says, I endowed

8    something at a specific institution and I want my money

9    back, there's a mechanism -- there are tax consequences, but

10   that's not their tax consequences.  They're your

11   consequences.

12           If the money was gone, then you could in theory

13   say I have a claim here and then their argument was probably

14   correct.  You're not a creditor of the estate because

15   they're perfectly willing to give you the money.  Not

16   perfect -- they don't hold your money.  They don't owe you

17   the money.  The plan administrator owes you the money.  So

18   whomever that is --

19           MR. POWERS:  It's Mr. Rosenfeld.

20           THE COURT:  Okay.

21           MR. POWERS:  Again --

22           THE COURT:  These guys will facilitate for you,

23   Mr. Powers will facilitate a relation -- a connection.

24           Again, I am not making a determination --

25           MR. POWERS:  Mr. Bevona is from our --

1          THE COURT:  Okay.  I'm not making -- Mr. Bevona,

2    I'm not making a determination that he has to give you the

3    money if he thinks it's wrong.  Make sure you're careful

4    about that.  I'm not directing you to give her the money.

5    I'm directing you to have a conversation and if, as a matter

6    of law, you believe you can do it, do it.  If you can't,

7    then we'll have to revisit this in a different forum.

8          MR. POWERS:  Your Honor, I've just been informed,

9    Mr. Bevona will give Ms. Nohs her card and -- his card and

10   get into a dialogue --

11          THE COURT:  Okay.

12          MR. POWERS:  -- and figure out how to work it out.

13          THE COURT:  Again, I'm not -- all we're

14   determining is that your objection to the claim probably is

15   moot because you don't get the money from the general pool

16   of creditors because the money that you put up is not in

17   that pool, and those funds all have to -- and they are

18   segregated.  So there's $15,000 plus whatever is there.  I

19   don't know what's there.  99 percent of those funds are

20   going to go through a cy pres because there's nobody around

21   to fight about it.

22          But in this particular case he'll have to make a

23   decision as to how he believes the estate should operate,

24   and then you're free to come back here with the estate

25   issue, not the creditor issue.  This isn't their issue.

1              MS. NOHS:  Okay.

2              THE COURT:  Okay.

3              MS. NOHS:  Yeah.

4              THE COURT:  So hopefully it will work out one way

5      or another.  But I don't think you have a claim -- I don't

6      make a ruling on that.  Let's see what happens over there

7      and I'll adjourn the decision on this particular claim.  But

8      if it's resolved in any fashion to the satisfaction of the

9      parties, then all you would do is either withdraw the claim

10     or stipulate to the objection that they've raised.

11             MS. NOHS:  Okay.

12             THE COURT:  All right.

13             MS. NOHS:  Thank you.

14             THE COURT:  Okay.  So that's that set, right?

15             MR. POWERS:  I think that that's the end of the

16     second omnibus set.

17             THE COURT:  Okay.

18             MR. POWERS:  I think there are a few other --

19             THE COURT:  No.  We go the third one going.

20             MR. POWERS:  Well, obviously, but I think there's

21     a few other claims on the second omnibus --

22             THE COURT:  I only have Ms. Nohs.  That's the only

23     one I had on this --

24             MR. POWERS:  No.  No.  That's objections and

25     whatnot.

1           THE COURT:  Right.

2           MR. POWERS:  I'm just talking about claims to be

3      either disallowed or reduced.

4           THE COURT:  Oh, other than that I'll grant the

5      motion.

6           MR. POWERS:  Thank you, Your Honor, just as

7      housekeeping.

8           THE COURT:  No.  That's true.  You're right.

9      You're right.

10          MR. POWERS:  All right.  So that brings us to the

11     third omnibus objection, Your Honor.  This was the student

12     claims.  This was filed again on July 15th.  It's ECF 728.

13     The affidavit of service is ECF 729, served on that same

14     day, July 15th, on all the claimants and the United States

15     Trustee.

16          THE COURT:  Now there are -- you have a whole list

17     of folks, but let's only deal with the ones that actually

18     filed objections.

19          MR. POWERS:  Understood, Your Honor.

20          THE COURT:  You have a Mr. Ketterer (ph), a Justin

21     Deluca (ph), a Peter Esposito (ph).  I think that may be it.

22          MR. POWERS:  There's four.

23          THE COURT:  And a Timothy Going (ph).

24          MR. POWERS:  Correct.

25          THE COURT:  So there are four of all the ones that

1    you served that have replied to your objection to claims.

2              MR. POWERS:  Correct, Your Honor.

3              THE COURT:  Okay.  So let's deal with in any

4    order.  I think it's Mr. Ketterer is first.  But I think

5    your response was a singular response to all of them.

6              MR. POWERS:  It was, Your Honor.  We didn't go --

7    I mean, ultimately, we feel that these are -- as much as the

8    facts are different in each individual case based on certain

9    circumstances, whether it's they have scholarship, whether

10   it's they stood online waiting for their transcripts,

11   whether they claim that there was little help between

12   Dowling, their future educational institution, the State and

13   whatnot, they're all kind of similarly situated in that

14   Dowling closed and they had to scramble to get another

15   educational institution.

16             And I think -- and of course Your Honor feels this

17   way as well from all of his statements, everybody feels

18   badly for the students.  The question, and it's our

19   position, they don't have a legally cognizable claim against

20   the Dowling estate for what happened.

21             And even to the extent they did, they don't --

22   there's no connection between the damages that they're

23   alleging and what happened to them.

24             THE COURT:  So your position is they have no

25   damages or they have no claims?

1          MR. POWERS:  It's both.  They don't have a claim

2     in the first place, but even if they did --

3          THE COURT:  Why don't they have a claim?

4          MR. POWERS:  Well, I --

5          THE COURT:  Your response generally says Dowling

6     as an institution, after it shut its doors, entered into a

7     series of agreements with both New York State and other

8     schools to provide students who were now sort of left out in

9     the cold the ability to finish their degree programs at

10    another institution, or in other matters to eliminate

11    certain amount of their debt, if they wanted to give up

12    certain credits, all of which has to do with mitigation of

13    damages, not whether there was an underlying cause of

14    action.

15          MR. POWERS:  I understand your position on that,

16    Your Honor.

17          THE COURT:  Well, it's not only mine.  In the

18    affidavit I think of either Mr. Bevano or somebody that you

19    guys submitted, in a footnote you acknowledged that these

20    parties are making a veiled reference to fraud.

21          And that while they are not complete in their

22    analysis, you represent -- he represented in his affidavit

23    as filed by you guys that there's a recognition on your part

24    that essentially what they're arguing is they were defrauded

25    and, therefore, I agree with that.  I know -- I'm not saying

1    they were.  I'm saying their allegations require an

2    evidentiary hearing, for all of these guys if they want it,

3    as to whether or not they were defrauded, not whether or not

4    you've mitigated their damages.  That's a different issue.

5           You have people who put in pleadings here who

6    said, I paid 1,400 bucks in April and they shut the door in

7    June.  They knew they were going to shut the door.  They

8    took my money.

9           You had other people who say, I have damages in

10   that when you sent me to another school and I had three

11   credits left, in order to get a degree I had to spend

12   another $8,000 and take 12 credits.

13          You have another person -- and these stories are

14   replete.  They're all over this case, whether they filed

15   these objections or not.

16          The fundamental issue, which is what I was getting

17   at with Mr. Acampora before, is that while there may be an

18   attempt to resolve this case, there may, in fact, be a

19   series of hearings on whether Dowling, operating through

20   whomever it was operating, committed fraud.

21          And if you read the pleadings and you read other

22   cases that have gone down this line, and including in this

23   case, there are people who say, what were the trustees

24   doing, are they responsible; what were the principals of

25   Dowling or the administrators doing.  And I caution that any

1    settlement that seems to preclude somebody from arguing that

2    they committed fraud and the trustee was aware of it is not

3    going to work.

4          Now you may think it will work, but if these

5    people come in and argue that these trustees participated in

6    a fraud that caused them damages, you didn't waive that.

7    You don't have the ability to waive that, I don't think.

8          So that individual, who is a creditor in this

9    case, and if you want to look at a history of a similar

10   case, look at Oak Rock.  Oak Rock had huge amounts of

11   creditors who the debtor originally viewed had participating

12   interests.  I viewed they weren't participating interests.

13   I got reversed and said they were.  The reason they still

14   had claims is they said, yes, I had participating interests,

15   but those interests I was defrauded to buy and Oak Rock

16   defrauded me.

17         There's two different things going on here.  One,

18   what was the school's responsibility to these students upon

19   shuttering the school.  And your argument is they did

20   everything they could.  They gave them places to go.  They

21   did -- and that may be right.  That may be right.

22         They're arguing they were defrauded in the first

23   place; that the school was operating in a fashion that

24   defrauded them when they were told to continue to pay their

25   tuition leading up to the closure of the school.  Where did

1    the money go, what happened, which is a question I've had

2    since the beginning.  Where did the tuition go?  If you

3    weren't paying any bills and students were paying tuition,

4    where did it go?  Did it go to the bondholders?  Did it go

5    to -- I don't know where it went.

6              So if these parties, and I'm not going to grant

7    your motion to object to their claims.  I think they have

8    valid claims at this point, or they've made a prima facie

9    case of a valid claim.

10             Now it may be that they and others don't wish to

11   proceed, in which case that's possible.  But I think you

12   have failed to answer the fundamental question in either

13   your response or in anything else that's been done in this

14   case to explain why Dowling didn't commit a fraud.

15             MR. POWERS:  I understand Your Honor's position.

16   Just quickly just as a clarification.  A very large number

17   of these claims attach absolutely nothing, don't even write

18   a basis --

19             THE COURT:  Well, then in an evidentiary hearing

20   you'll take the position that they can't prove it.  I don't

21   know what -- you're back to, they failed to show you their

22   transcripts or something.  I don't know what it is.  If they

23   could establish they paid money, which you agree they were

24   students.  They paid tuition.  Your difference is you're

25   saying they can't demonstrate why they have damages, which

1    may ultimately be correct.  That doesn't deal with the

2    underlying question of whether they were defrauded in the

3    first place.  And I've had no satisfactory response from

4    anybody as to whether or not this thing was a fraud.

5            The pleadings seem to suggest it may have been;

6    that they defrauded people into going to an institution that

7    they knew shouldn't exist.  Now as a matter of law they may

8    win that.  There may not be the elements of fraud.  But

9    there's a colorable claim for it, and I believe these claims

10   and anyone else who would have taken the same position, much

11   like we had in other cases, demonstrate a plausible argument

12   for fraud.

13           Now they can choose to proceed.  They can choose

14   not to proceed.  They're not here.  They may have lawyers.

15   They may not have lawyers.  I don't know what they have.

16   But you guys in continuing down the path you are should be

17   aware that that issue is out there.  And if you think a

18   settlement with the trustees or anyone else where these

19   parties don't have a right to approve or reject the release

20   of whatever claims they may have will be binding on them, I

21   wish you all the luck in the world.  I do.  But I'll hear

22   that case.

23           MR. ACAMPORA:  Can I confer with Mr. Powers for a

24   moment?

25           THE COURT:  Sure.

1          (Pause)

2              MR. ACAMPORA:  Your Honor, just a point of

3      clarification, I understand where you're going.  I

4      understand what you think is the scenario.  But I think the

5      one thing -- I have to go check, double check this.

6              THE COURT:  All right.

7              MR. ACAMPORA:  Dowling closed in July of --

8              MR. POWERS:  June.

9              THE COURT:  June.

10             MR. ACAMPORA:  June of 2016.

11             THE COURT:  Right.

12             MR. ACAMPORA:  It didn't collect any more tuition.

13     So these students weren't defrauded into giving money like

14     say, you know, one of the wedding places.  They weren't

15     defrauded into paying money and then didn't get their

16     credits.  They got all of their credits.  So I paid $10,000,

17     got my credit -- and I know Your Honor is smiling at me.  I

18     feel bad --

19             THE COURT:  You're smarter than this.  You're

20     smarter than this.

21             MR. ACAMPORA:  No, Judge, because --

22             THE COURT:  No.  You are smarter than this.  You

23     know exactly what I'm saying.  Let's not go through this

24     now.

25             MR. ACAMPORA:  There -- let me just finish,

1    please.

2              THE COURT:  Go ahead.

3              MR. ACAMPORA:  They got their credits, and I

4    understand your point.  There's this potential fraud here.

5    I do not believe that's the case because part of that is

6    based upon where did the money go.  Money came in and money

7    went to operations.  And --

8              THE COURT:  No.

9              MR. ACAMPORA:  -- if you read the complaint --

10             THE COURT:  No.  No.

11             MR. ACAMPORA:  -- they were --

12             THE COURT:  Mr. --

13             MR. ACAMPORA:  -- they were losing money every

14   year.

15             THE COURT:  All right.  Bingo.

16             MR. ACAMPORA:  Okay.  So they had fewer students.

17   They were letting off staff.  They were losing money every

18   year.

19             THE COURT:  Right.

20             MR. ACAMPORA:  Your Honor --

21             THE COURT:  None of which --

22             MR. ACAMPORA:  -- I spent --

23             THE COURT:  -- was told to incoming students when

24   they took their tuition in 2015, 2014, 2016 and a half,

25   quarter.

1          MR. ACAMPORA:  But let me finish, please, sir.

2    But if you had credits at that point that were transferrable

3    to another university -- and at the last hearing Your Honor

4    said to me, it's really nobody's fault.  It's certainly not

5    mine or the trustee's fault that CW Post wanted them to

6    spend $8,000 instead of buying three credits.  I -- we had

7    no control over that.

8          THE COURT:  You didn't.

9          MR. ACAMPORA:  Dowling didn't have any --

10         THE COURT:  I agree with that.

11         MR. ACAMPORA:  I don't think Dowling --

12         THE COURT:  You didn't.

13         MR. ACAMPORA:  I don't think Dowling had any

14    control over that.

15         The essence, then, of what you're saying is they

16    thought they were going to graduate from Dowling College.

17         THE COURT:  No.  I --

18         MR. ACAMPORA:  That's what they're buying.

19         THE COURT:  No.  The essence of their argument,

20    not mine, their argument is that had they known that either

21    their scholarships weren't going to exist, the school wasn't

22    going to be able to continue to -- in a manner that they

23    could earn a degree because they were firing teachers and

24    letting off programs, that the school eventually was

25    operating for several years when most reasonable people --

1    their view -- most reasonable people should have shut it

2    down.  Leave aside the debts the school incurred.  That's

3    not what these guys are arguing about.  That's a whole other

4    question, whether that school should have incurred $54

5    million in debt or not.  It's not in front of -- that's a

6    different issue.

7            MR. ACAMPORA:  And it happened way before.

8            THE COURT:  What these folks are arguing, much

9    like people in normal other civil matters, had you told me

10   X, I wouldn't be in the pickle I'm in and, therefore, I

11   wouldn't have lost the money I lost.  The hurdles for that

12   party is, one, did you have an obligation to tell me; did I

13   give you enough information; is that fraud; and the money --

14   and are -- do you have damages.  There's a whole panoply of

15   issues that people have to prove to prove fraud.

16           That's not -- I'm not declaring there was a fraud.

17   I'm arguing, much like the affidavit submitted, that these

18   folks are eluding to that.

19           MR. ACAMPORA:  Uh-huh.

20           THE COURT:  And since I did the exact same thing

21   in another case, it's not just this one, that they have

22   essentially two forms of act -- causes of action here.  One

23   is post-2016 you messed me up.  Your argument is that may be

24   true, but we're not liable for that.  You may be right.

25           Their second argument is, I wouldn't have been in

1    that spot but for Dowling's and the trustees' failure to do

2    A, B, C, D and E, the accountants' failure to do A, B, C, D

3    and E, and there are defenses to all of that.  I understand

4    that.  But they have raised to me viable claims and those

5    claims -- now will they prosecute them, will -- are they

6    subject to a summary judge -- fraud is rarely subject to

7    summary judgment.

8            But I believe you need an evidentiary hearing to

9    determine what Dowling did and didn't do, and whether what

10    they did leading up to their closure can be viewed as fraud

11    on these students and all the other students who were

12    injured.

13            Your argument is you're uninjured or you weren't

14    injured that much.

15            MR. ACAMPORA:  Among other things.

16            THE COURT:  Among other things.  That's perfectly

17    fine.  That's a -- I realize that's the argument, and I'm

18    not ruling on who's right or wrong.  But I am unwilling to

19    eliminate their right to recognize this cause of action.

20    And the cause of action is what happened.

21            And this leads into our prior discussion.  Unless

22    one can articulate why -- what somebody did and why that

23    wasn't a problem, but explain what they did, then you're

24    left with the type of the article and type of view you have,

25    which is I think these trustees knew it -- not me.  This is

1    paraphrasing -- knew what was going on and they had a duty

2    to X.

3              Their view is even if we knew we didn't have a

4    duty, or we did exercise all our duty, we didn't do anything

5    wrong is their argument.  They obviously view -- and you

6    guys have gotten together.  And I don't argue that that's a

7    resolution either way.  You reached an accommodation to

8    avoid a lawsuit.  Got it.

9              I think -- and I've made myself clear on it.  I

10   don't know what the KMG thing is about at all.

11             MR. ACAMPORA:  It's --

12             THE COURT:  But that's -- no.  No.  I know what

13   the possible lawsuit is.

14             MR. ACAMPORA:  Yeah.

15             THE COURT:  But as you say, there's never been a

16   pleading filed in that case --

17             MR. ACAMPORA:  But --

18             THE COURT:  -- in that allegation.  I think one

19   can take it out of --

20             MR. ACAMPORA:  May I --

21             THE COURT:  -- the 90 some odd pages, but --

22             MR. ACAMPORA:  Yes, Your Honor.  So I'm going to,

23   with a very big smile on my face say, you're very smart.

24   You know what my claim would be.

25             THE COURT:  Absolutely.

1            MR. ACAMPORA:  Okay.

2            THE COURT:  And I know their defense.  It's the

3    same defense every accounting firm has.

4            MR. ACAMPORA:  It's better than that.

5            THE COURT:  Yeah.  But if the defense is

6    hypothetically, you can't blame me because I told all those

7    guys what was going on, I didn't -- it didn't take ten

8    seconds to understand that once you settled one of these,

9    the other was going to be settled.  They had to be settled

10   in tandem.

11           MR. ACAMPORA:  They actually settled in the

12   opposite order that --

13           THE COURT:  Whatever order it's in --

14           MR. ACAMPORA:  -- I thought they would settle.

15           THE COURT:  -- they both got to go away at the

16   same time.

17           MR. ACAMPORA:  Yes.

18           THE COURT:  And all I am trying to do, as

19   uncomfortable as I seem to be making you with this.  And I

20   understand that.  And I know it's --

21           MR. ACAMPORA:  We've known each other a long time.

22           THE COURT:  It's just -- I believe that in a -- as

23   opposed to a single asset real estate case or some company

24   in Commack, you have a public institution.  That creates

25   certain -- and I had it in (indiscernible) and I have some

1    of the same problems there, too.  There is a tension on one

2    side in these cases that said, look, these people are really

3    good people.  They're volunteering their time.  In fact,

4    Scott Rudolph, and I knew his father pretty well, as you

5    know --

6            MR. ACAMPORA:  Put a lot of money in it.

7            THE COURT:  -- put a ton of money in it.  I knew

8    Arthur.  I used to -- I played golf with -- I knew Arthur

9    Rudolph.

10           MR. ACAMPORA:  Ten or $12 million.

11           THE COURT:  And their view of this crazy system is

12    one thing over here.  No good deed goes unpunished if you

13    want to capitalize that.  But there were laws.  And the

14    other side of that is tens of thousands or thousands of

15    people who have been injured.  We all agree they've been

16    injured.  There may not be any culpable -- there may not be

17    any adequate response to their injury, but they've been

18    injured.

19           And not all injuries, as we've learned as lawyers,

20    get satisfied.  Justice and fairness are often two different

21    things.  But the goal on one side, which is to keep it as

22    quiet as possible and limit the exposure in that, and the

23    goal on the other side which is just explain to me what

24    you're doing, not me, these people.

25           You -- the trustee in this case walks an

1    incredibly difficult line.  I understand that.

2              MR. ACAMPORA:  Thank you.

3              THE COURT:  And I still recognize you're his

4    lawyer.  You're not Mr. Friedman.  He walks a tough line.

5    But he chose to do it.  That's his job.  He accepted that

6    responsibility.  And you've got to figure out the best

7    mechanism to tell this story, let people vent and move on.

8    They're not going to be happy.  I know that.  I'm going to

9    get a lot more grief than you will ever get in this case.  I

10   know that, too, but that's okay.  That's the deal.

11             All I need is for the people to understand why in

12   your -- if you believe this, yes, you were injured, but the

13   law doesn't -- we did the best we can.  There is no law.  I

14   can't force somebody to do that which is not true in the

15   law.  They don't understand that now.  All they understand

16   is from that article, and you can say it's one person, it's

17   hundreds that say, you guys are entering into what you

18   always do -- all of us, not just you, the Court, too.  I'm

19   right in the middle of it -- a secret transaction to take

20   care of those -- you know, the whole story.  I don't think

21   that's what you're doing.  I really don't.

22             MR. ACAMPORA:  We're not.

23             THE COURT:  And I just am trying to communicate

24   unsuccessfully that Mr. Kleinberg's clients chose to be in

25   this position.  They chose to be trustees.  They can't

1    really now say, no mas.

2            So however, and this is the conversation we did

3    have.  Whether it's a 9019 which I agree may be not

4    possible, if you put in -- and I said this last time and

5    I'll say it again -- in the dismissal an adequate

6    disclosure.  Let somebody come in and argue.  You're going

7    to serve it on them.  The case is going to be dismissed.

8    You want to come in and argue it.  You can then argue you

9    have no say over that.  I don't care what you argue then.

10           But I want them to be able to see that it was a

11   thoughtful process where you are not necessarily -- you're

12   settling.  You're not stipulating whatever they did was

13   fine.

14           MR. ACAMPORA:  Uh-huh.

15           THE COURT:  That's the issue.

16           MR. ACAMPORA:  So, Your Honor, we gave you that

17   document in camera.  And it might be my misunderstanding as

18   well as Mr. Kleinberg --  I'll speak to -- I'll speak for

19   him.  It will be the only time I can because he's not here

20   -- that Your Honor would review that document for that bent

21   on whether it -- you thought it satisfied that.  You were

22   going to assist the litigants because we don't have a 9019

23   scenario.

24           THE COURT:  I was told that you didn't want me to.

25           MR. ACAMPORA:  No.  That's not what we said.

1              THE COURT:  That's what I was told.

2              MR. ACAMPORA:  Your Honor, Judge, Judge --

3              THE COURT:  No.  No.  No.  Not you.  It filtered

4     back to me.

5              MR. ACAMPORA:  By who?  It wouldn't come from me.

6              THE COURT:  It doesn't matter.  It's my own --

7              MR. ACAMPORA:  Judge --

8              THE COURT:  I run my own show.

9              MR. ACAMPORA:  -- we --

10             THE COURT:  Internally, not blaming you --

11             MR. ACAMPORA:  Okay.

12             THE COURT:  -- so let's move on from that.

13             MR. ACAMPORA:  We wanted --

14             THE COURT:  I have operated on the last several

15    weeks under the impression that nobody wanted my in --

16             MR. ACAMPORA:  I want your input.

17             THE COURT:  Let me just tell you.  I'm not blaming

18    you.

19             MR. ACAMPORA:  I don't think you are.

20             THE COURT:  Back off.

21             MR. ACAMPORA:  I will tell you --

22             THE COURT:  I'm not --

23             MR. ACAMPORA:  -- I want your input.  Mr.

24    Kleinberg, we wanted to avoid --

25             THE COURT:  Then what we should do, which I -- in

1    my opinion, is pick a date next week, Monday morning,

2    Monday, you and Mr. Kleinberg and whoever -- Mr. Friedman,

3    and if Mr. Kleinberg wants the head of their trustees to

4    come in, sit down and you can hear what I want and we can

5    have a -- what I think you should do, and we --

6             MR. ACAMPORA:  That would be --

7             THE COURT:  -- can have a discussion.  You don't

8    have -- I'm not dictating unless it's my way it's no way.

9    I'm perfectly willing to create some document that I can

10   say, yes, I'm okay with this.  If you -- you guys are

11   welcome to come into court, you or anybody else --

12            MR. ACAMPORA:  Uh-huh.

13            THE COURT:  -- and argue with me why Mr. Friedman

14   shouldn't settle the lawsuit.  He has rights to do certain

15   things, but it gives them a forum to discuss it.

16            MR. ACAMPORA:  I --

17            THE COURT:  That's all I'm interested in.

18            MR. ACAMPORA:  That's all --

19            THE COURT:  I'm not trying to make -- I figured

20   out already the numbers in the settlement.

21            MR. ACAMPORA:  I know you have.

22            THE COURT:  So I understand why those numbers are

23   there.  But you have people, then you're going to have

24   people like this other group who have a different agenda.

25   They want this school to be Dowling College again and

1    resurrect it.

2              MR. ACAMPORA:  It's not going --

3              THE COURT:  That's not his -- Mr. Friedman's

4    issue, my issue or your issue.  Go to whoever bought it and

5    convince him.  That's not damages.  That's a different

6    thing.

7              But if we can get something that's circulated,

8    however you couch it.  Mr. Kleinberg will tell his clients

9    that we can reach an accommodation.  He's free to put in,

10   and we disagree with everything here.  We believe we're the

11   best people on -- I don't care.  I just want people to be

12   able to read in their own minds, so when they then say, you

13   did these under a rock, no, I didn't.  If you didn't want to

14   come in, you didn't come in.  You were free to come in and

15   make an argument.  You may prevail.  I don't know.  Mr.

16   Friedman may agree with you.

17             MR. ACAMPORA:  Recognizing some -- a couple of

18   points.  That's what I thought we were going to do.

19             THE COURT:  Then it's my fault.

20             MR. ACAMPORA:  I would love to do that.

21             THE COURT:  Then I -- then part of my ire in this

22   case is --

23             MR. ACAMPORA:  Well, when we were here --

24             THE COURT:  -- I thought I was rejected, not

25   rejected in that sense, rejected for other reasons.

1    MR. ACAMPORA:  When we were here the last time Mr.

2  Kleinberg and I were waiting for you to say to us, hey,

3  let's go sit down and here's some of the things we need to

4  do --

5    THE COURT:  Okay.  My -- fully my fault.

6    MR. ACAMPORA:  So that --

7    THE COURT:  Now let's start over --

8    MR. ACAMPORA:  -- miscommunication was --

9    THE COURT:  -- the rest of our lives.

10    MR. ACAMPORA:  -- that miscommunication is done.

11    THE COURT:  Right.

12    MR. ACAMPORA:  And that way I can then take that

13  kind of format and use it for my KPMG which I will then put

14  on the docket because Your Honor did come out and say, I'm

15  concerned.  They haven't had notice.  Again, we have an

16  issue about --

17    THE COURT:  Yeah.  I have been waiting to see --

18    MR. ACAMPORA:  -- 9019 --

19    THE COURT:  -- something for three weeks.

20    MR. ACAMPORA:  Well, we sent --

21    THE COURT:  And you've been waiting for me to talk

22  to you.

23    MR. ACAMPORA:  We sent the Rule 41 and the

24  settlement agreement to your chambers --

25    THE COURT:  No, after our last hearing.

1          MR. ACAMPORA:  No, before.

2          THE COURT:  No.  I'm saying after our last hearing

3     --

4          MR. ACAMPORA:  Oh.

5          THE COURT:  -- you were going to confer with Mr.

6     Kleinberg -- it doesn't matter.

7          MR. ACAMPORA:  I think the timeline is a little

8     muddled.

9          THE COURT:  It doesn't matter.

10         MR. ACAMPORA:  How about we start over?

11         THE COURT:  I will take the blame for it.

12         MR. ACAMPORA:  We will resend it to you.

13         THE COURT:  You don't have to resend.  I got what

14    you already sent me.

15         MR. ACAMPORA:  We modified it even further --

16         THE COURT:  Send me the modified --

17         MR. ACAMPORA:  -- based upon your conversation.

18         THE COURT:  -- and then I will make time.  We can

19    do it next Tuesday -- see if Mr. Kleinberg is available.  I

20    know it's his -- and everybody else.  I'm not forcing this,

21    next Tuesday at 10.  I would like to do it before the Labor

22    Day weekend, so then after Labor Day we can -- between Labor

23    Day and the end we can finish this.

24         MR. ACAMPORA:  So then we're going to have an

25    evidentiary -- potentially evidentiary hearings on the

1    student claims.  Look, I'm not here to -- I'm not going to

2    stand up here, but I always feel like I stand up here and

3    raise the, yeah, but there's a problem with that.  There's

4    no pleading that says fraud.  So none of the elements of

5    fraud --

6              THE COURT:  Well, you guys acknowledged their

7    claim.

8              MR. ACAMPORA:  That's the gist of what they're

9    trying to say.  And I would agree with you.  They're saying,

10   hey, look, I would have transferred to some other college in

11   2015 had I know that.

12             The flipside of that is, everybody knew Dowling

13   was in trouble.  The financials as you see in the complaint

14   show that Dowling is losing money.  It's struggling to

15   maintain its student body.  That's the buzz.

16             THE COURT:  Of the objection -- listen, of the

17   objection -- hold it.  Hold it.  Of the objections we have,

18   he probably knows better than you, of the objections how

19   many of them relate to students and how many dollars does

20   that relate to?

21             MR. POWERS:  It's $200,000 and there's four

22   students.

23             MR. ACAMPORA:  It's the -- are you talking about

24   the total students?

25             MR. POWERS:  Like the total --

1          THE COURT:  Those are the only four that

2    responded.

3          MR. POWERS:  That responded to anything.

4          THE COURT:  Five.

5          MR. ACAMPORA:  Four.

6          MR. POWERS:  There's four and it's $200,000.

7          THE COURT:  Four.  And if they get claims, they're

8    going to get a --

9          MR. POWERS:  A percentage.

10          THE COURT:  -- some percentage of that.

11          MR. POWERS:  Correct.

12          THE COURT:  You're free to try to resolve it with

13    them.

14          MR. ACAMPORA:  And the balance?

15          THE COURT:  What?

16          MR. ACAMPORA:  And the remaining 100 claims, is

17    the motion granted or --

18          THE COURT:  I can't force people to file

19    objections.

20          MR. ACAMPORA:  So we're going to have to --

21          THE COURT:  I mean, you have rights, too.  You

22    gave them a time by which they had to file an objection.

23    They can have the greatest claims in the world, unless they

24    come in.  Now they'll have a chance to have a discussion

25    about the settlement, but --

1          MR. ACAMPORA:  Potentially.

2          THE COURT:  -- they may not even have that chance

3    if they're not creditors anymore.  I don't know where that

4    goes.  But it's nothing -- I can't --

5          MR. ACAMPORA:  So you're granting the motion as to

6    the --

7          THE COURT:  -- muse on that.

8          MR. ACAMPORA:  You're granting the motion as to

9    the other one hundred that haven't responded, otherwise I

10   have a free for all, Your Honor.

11         THE COURT:  They had to submit objections to

12   claims.  They had exactly the same information as the

13   parties who did object.  Today was the day by which -- or

14   actually it passed.  And so, no, I can't extend it on my

15   own.  I don't have the power under the code to do that.

16         MR. ACAMPORA:  So --

17         THE COURT:  So you're saying to me, I assume, that

18   since their time has run, much like any statute of

19   limitations, under the code I must grant the motion relative

20   to these claims.

21         MR. ACAMPORA:  I would never tell you you must do

22   anything.  We know each other a very long time.

23         THE COURT:  In this case it wouldn't be bad.

24         I'll grant that motion.

25         MR. ACAMPORA:  Thank you, Your Honor.

1              And now if Your Honor indulges me one more minute,

2    this may fall under the rubric of be careful what you ask

3    for, will I get it.

4              If -- assuming we can get the Department of

5    Education done, assuming we can get the other

6    (indiscernible) student claims done, and I believe I can get

7    KPMG and the Dowling DNO claims done, the only thing left in

8    this matter is Your Honor's fee order for October 16th.

9              THE COURT:  Let's do A before we do B.

10             MR. ACAMPORA:  Okay.  My only -- here's my only

11   comment.  I'm not -- we would like to close this case in the

12   third quarter, if possible, so that we can avoid --

13             THE COURT:  You want a practical answer or you

14   want a legal answer?

15             MR. ACAMPORA:  I'll take both.

16             THE COURT:  Well, the legal I don't have because I

17   can't think of it yet.

18        (Laughter)

19             MR. ACAMPORA:  Okay.

20             THE COURT:  My view of the world, as you know, is

21   I have never had a problem paying lawyers.  I was a lawyer

22   for a long time.  And there have been cases here where I

23   haven't for -- and I've written decisions on it, for

24   reasons, not in this case, in other cases.

25             Things should be looked at in the totality of the

1    -- in the totality.  Now I could break this up between up to

2    the date of confirmation because you all argue I have

3    nothing to say post-confirmation.  That's your argument.  I

4    have plenty to say pre.  All of the fees of your firm as

5    creditors' committee counsel --

6              MR. ACAMPORA:  Uh-huh.

7              THE COURT:  -- are subject to this Court and it

8    all deals with what happened between the beginning and the

9    time the case was confirmed.

10             MR. ACAMPORA:  Right.

11             THE COURT:  I can measure what was done during

12   that period of time and then either say, well, the whole

13   settlement and everything was done after, so nothing was

14   accomplished, A, which is -- don't.  Let me finish before

15   you --

16             MR. ACAMPORA:  Uh-huh.

17             THE COURT:  -- fall down.

18        (Laughter)

19             THE COURT:  I don't know in this settlement -- let

20   me backtrack.

21             Bulls, bears and pigs, it's one of the great

22   expressions of all time.

23             MR. ACAMPORA:  Yes.

24             THE COURT:  You are smart enough.  You're young.

25   Mr. Friedman knows.  Don't be a pig.  If the total for this

1    project pre and post is a reasonable number, because I don't

2    -- you say I can't tell you what to take out of the

3    "settlements," we're not going to have a problem.

4           If the total -- and you can guess what totals are

5    as well as I because we've all dealt with this stuff -- is

6    more than would make sense to people, then we're going to

7    have a problem and the only place I can get it is the pre.

8    I don't want to do that.  I would prefer you guys take that

9    number, some other number here, and say here's the answer.

10   We're getting blank.  We've recovered --

11          MR. ACAMPORA:  Blank.

12          THE COURT:  -- blank.  I don't know what it,

13   because I don't know what it will be.  The majority of that

14   is part of the ten percent, which goes to -- play with it

15   any way you want.  And it was solely through our efforts

16   that we did this.  The complaint forced us.  I got that.

17          But if I find that 60 percent of the money is

18   going to fees, and not ten percent, but two percent, then

19   we're going to have an issue.  So just --

20          MR. ACAMPORA:  Always.

21          THE COURT:  -- be smart.  And it's not like you're

22   doing this for the first time.

23          MR. ACAMPORA:  This is not the first rodeo.

24          THE COURT:  Right.

25          MR. ACAMPORA:  What I would like to do, Your

1    Honor, is to take the next couple of days, get the measure

2    and when we have our meeting on Tuesday, we would like to

3    try to close this --

4              THE COURT:  If you don't want to --

5              MR. ACAMPORA:  -- and get as much --

6              THE COURT:  -- talk about this --

7              MR. ACAMPORA:  -- as much money as we can --

8              THE COURT:  If you don't want to discuss it in

9    front of Mr. Kleinberg or anybody else, that's okay, too.

10             MR. ACAMPORA:  Fine.

11             THE COURT:  The fee portion of this.

12             MR. ACAMPORA:  Fine.  We really want to get this

13   --

14             THE COURT:  Because I don't want them to say,

15   well, we were going to attribute this to fees and now that

16   you're not collecting it, we're going to cut down the

17   settlement.  That ain't going to happen.

18             MR. ACAMPORA:  That's fine.

19             THE COURT:  And I don't want the secured creditor

20   coming in and saying, well, since it would be our money, why

21   -- we don't want you to do --

22             MR. ACAMPORA:  They get it.

23             THE COURT:  My recommendation to the secured

24   creditors, don't come back here.  You've -- just don't come

25   back here.

1            MR. ACAMPORA:  I don't think they will be.

2            THE COURT:  Not on this case.  Just don't show up

3    again.  I like you guys, but don't show up again.

4            And as far as you all go, just come up with a

5    number that represents a reasonable effort because that's my

6    goal.  I pay reasonable amounts of fees.  That's what we're

7    charged to do.

8            MR. ACAMPORA:  Uh-huh.

9            THE COURT:  And don't conflate post and pre.  It's

10   one big pot to me.

11           MR. ACAMPORA:  Very well.  We will check with

12   chambers -- we'll check with Mr. Kleinberg, check with

13   chambers and set something up for Tuesday.

14           THE COURT:  Okay.

15           MR. ACAMPORA:  Thank you, Your Honor.

16           THE COURT:  Sorry we got upset before -- I got

17   upset.  It was my fault because I didn't realize you guys

18   were waiting for me to get back to you.  I take the blame on

19   that one.

20           Thank you, guys.

21           UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

22       (Whereupon, these proceedings concluded at 2:48 p.m.)

23

24

25

1                        I N D E X

2

3                       RULINGS

4                                                    Page

5    [724] Motion to Object/Reclassify/Reduce/Expunge

6    Claims                                          17

7

8    [726] Motion to Object/Reclassify/Reduce/Expunge

9    Claims                                          28

10

11   [728] Motion to Object/Reclassify/Reduce/Expunge

12   Claims                                          52

13

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T I O N

2

3       I, Sherri L. Breach, certify that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   Sonya                   Digitally signed by Sonya
                            Landanski Hyde
                            DN: cn=Sonya Landanski Hyde, o,
    Landanski Hyde          ou, email=digital1@veritext.com,
                            c=US
7   _____   Date: 2019.08.28 16:00:04 -04'00'

8   Sherri L. Breach

9   AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11  Date:  August 27, 2019

12

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501

| & | | | |
|---|---|---|---|
| **&**  2:9,11,12,21 3:2,3,17 4:10 59:9 | **16-75545**  1:7 | **210**  2:10 | **317**  2:15 |
| | **161**  4:3 | **212**  4:3 | **318**  3:16 |
| | **163**  4:6 | **215**  4:8 | **330**  59:23 |

| 1 | | | |
|---|---|---|---|
| **1,400**  31:6 | **165**  3:14 | **216**  4:6 | **339**  4:9 |
| **10**  49:21 | **166**  4:8 | **217**  4:3 | **340**  4:2 |
| **10,000**  35:16 | **168**  3:13 | **222**  2:21 | **342**  4:8 |
| **100**  5:4 51:16 | **169**  3:9 18:13 | **223**  4:10 | **350**  4:5 |
| **105**  2:10 | **16th**  53:8 | **224**  4:3 | **351**  4:2 |
| **11**  14:7 | **17**  58:6 | **226**  2:8 | **352**  2:11 |
| **114**  4:5 | **170**  4:8 | **229**  2:16 | **358**  3:7 |
| **11501**  59:25 | **171**  2:9 | **237**  4:4 | **359**  4:10 |
| **11722**  1:15 | **177**  2:15 | **239**  4:4 | **364**  4:10 |
| **11753**  5:5 | **179**  3:5 | **240**  2:20 | **366**  4:9 |
| **119**  4:5 | **180**  4:2 | **241**  2:13 | **374**  4:8 |
| **12**  6:17 31:12 42:10 | **186**  2:7 | **242**  2:16 | **376**  4:10 |
| **122**  2:18 | **187**  3:3 | **243**  4:7 | **378**  4:7 |
| **123**  2:19 | **188**  2:8 | **246**  4:3 | **379**  4:6 |
| **125**  3:11 | **19**  20:18 | **249**  2:16 | **383**  3:11 19:14 |
| **126**  4:6 | **193**  4:9 | **251**  4:5 | **385**  4:7 |
| **12th**  16:9 | **194**  3:2 18:16 19:13 | **252**  3:6 | **386**  4:5 |
| **130**  2:3 | **195**  4:7 | **257**  4:4 | **387**  4:10 |
| **131**  2:2 | **197**  4:6 | **266**  4:2 | **389**  4:10 |
| **132**  2:2 | **199**  4:5 | **27**  3:14 59:11 | **39**  3:15 6:2 |
| **133**  2:7 | **1:47**  1:18 | **272**  4:3 | **391**  3:16 |
| **137**  4:9 | | **275**  4:7 | **392**  4:4 |
| **14,5**  20:18 | | **276**  3:10 | **393**  3:14 |
| **141**  4:9 | | **28**  58:9 | **397**  59:9 |

| 2 | | | |
|---|---|---|---|
| **142**  3:10 | **200**  4:9 | **282**  2:11 | 4 |
| **143**  4:4 | **200,000**  50:21 51:6 | **283**  2:17 | **400**  4:7 |
| **149**  4:10 | **201**  4:3 | **284**  4:8 | **401**  4:6 |
| **15**  2:3 | **2014**  36:24 | **288**  3:15 | **403**  4:4 |
| **15,000**  24:23 26:18 | **2015**  36:24 50:11 | **290**  1:14 3:4 | **405**  3:6 |
| **15,0000**  20:20 | **2016**  35:10 36:24 38:23 | **291**  4:3 | **408**  3:2 18:14 |
| **15,5**  24:23 | **2019**  1:17 59:11 | **292**  4:2 | **409**  2:13 |
| **150**  2:14 | **202**  4:8 | **293**  3:12 | **41**  6:2,18 7:1 48:23 |
| **153**  3:11 19:15 | **203**  3:8 | **2:48**  57:22 | **410**  4:9 |
| **158**  4:4 | **205**  2:14 | 3 | **412**  4:6 |
| **15th**  17:13,15 28:12,14 | **206**  2:12 | **3**  2:4 | **416**  4:5 |
| | **207**  4:7 | **300**  5:4 59:24 | **417**  4:10 |
| | **208**  2:10 | **307**  4:4 | **419**  4:9 |
| | **21**  1:17 | **308**  4:7 | **420**  4:4 |
| | | **316**  2:17 | |

**422**   4:8
**424**   4:5
**425**   3:12
**427**   4:9
**431**   4:3
**432**   4:8
**433**   4:8
**435**   4:5
**438**   4:2
**439**   4:4
**442**   4:2
**443**   2:2
**444**   4:4
**445**   4:3
**447**   3:7
**448**   2:8
**45**   14:7
**451**   3:8
**453**   4:5
**454**   4:3
**455**   3:9
**459**   4:6
**460**   4:9
**461**   4:6
**462**   4:2
**463**   4:2
**464**   4:8
**470**   4:10
**471**   4:5
**474**   4:7
**475**   4:7
**476**   4:5
**478**   4:6
**479**   4:4
**482**   2:5
**486**   4:7
**489**   4:6
**490**   4:7
**493**   4:9
**496**   4:3
**499**   4:8

**5**

**5**   12:16 14:8
**500**   20:16,18
**52**   58:12
**53**   3:5 20:10,16
**54**   38:4

**6**

**60**   55:17

**7**

**7**   18:21
**72**   2:4
**724**   2:1 16:10 58:5
**724-5**   16:10
**726**   3:1 17:13 58:8
**727**   17:14
**728**   4:1 28:12
   58:11
**729**   28:13
**75**   3:4
**779**   4:2
**780**   3:17
**782**   4:6
**783**   2:5
**784**   3:16 19:24

**8**

**8,000**   31:12 37:6
**801**   4:9
**802**   2:6
**803**   4:10
**81**   4:10
**85**   3:12

**9**

**9**   3:3 20:14
**90**   40:21
**9019**   10:16 44:3
   44:22 48:18
**99**   26:19

**a**

**aaert**   59:9
**ability**   10:12 30:9
   32:7

**able**   18:12 20:4
   37:22 44:10 47:12
**absolutely**   33:17
   40:25
**abundantly**   15:3
**acampora**   2:22
   3:18 4:11 5:8 6:5
   6:6,11 9:12,16,21
   9:25 10:2,8,10,23
   12:24 13:1,3,6,13
   13:16,19,21,22,23
   14:1,5 16:2 31:17
   34:23 35:2,7,10
   35:12,21,25 36:3
   36:9,11,13,16,20
   36:22 37:1,9,11
   37:13,18 38:7,19
   39:15 40:11,14,17
   40:20,22 41:1,4
   41:11,14,17,21
   42:6,10 43:2,22
   44:14,16,25 45:2
   45:5,7,9,11,13,16
   45:19,21,23 46:6
   46:12,16,18,21
   47:2,17,20,23
   48:1,6,8,10,12,18
   48:20,23 49:1,4,7
   49:10,12,15,17,24
   50:8,23 51:5,14
   51:16,20 52:1,5,8
   52:16,21,25 53:10
   53:15,19 54:6,10
   54:16,23 55:11,20
   55:23,25 56:5,7
   56:10,12,18,22
   57:1,8,11,15
**accepted**   43:5
**accommodation**
   40:7 47:9
**accomplished**
   54:14

**accountant**   14:12
   14:13
**accountants**
   12:21 39:2
**accounting**   41:3
**acct**   3:18
**accurate**   12:24
   13:3 59:4
**acknowledged**
   30:19 50:6
**act**   38:22
**action**   30:14
   38:22 39:19,20
**actions**   8:2
**actual**   11:13
**addison**   3:8
**additional**   18:11
**address**   10:23
**adequate**   42:17
   44:5
**adequately**   7:12
**adjourn**   20:8 27:7
**administrator**
   22:24 23:18,21
   24:1,21 25:17
**administrators**
   31:25
**adversary**   7:4
**affidavit**   16:10
   17:14 28:13 30:18
   30:22 38:17
**afternoon**   6:5,9
**agenda**   46:24
**ago**   10:3
**agree**   8:1 9:10,10
   14:1 15:7 18:7
   22:15 24:4 30:25
   33:23 37:10 42:15
   44:3 47:16 50:9
**agreed**   8:3 19:4
**agreeing**   19:9
**agreement**   7:7
   15:4,5 48:24

**agreements** 15:5
15:20 22:4 30:7
**agrees** 24:1
**ahead** 8:22 9:24
10:1 36:2
**ain't** 56:17
**airwald** 2:2
**airweld** 2:2
**alan** 18:15
**alfonse** 1:13
**alive** 22:5 25:1
**allan** 3:2
**allegation** 40:18
**allegations** 12:20
31:1
**alleging** 29:23
**alumni** 7:13 11:3
11:7,11,12,13
**amended** 16:8
**amount** 19:16,20
30:11
**amounts** 32:10
57:6
**analysis** 30:22
**analysts** 3:7
**angie** 2:2
**ann** 2:7
**answer** 12:15
33:12 53:13,14
55:9
**anthony** 2:21 3:18
4:11 5:8 6:6
**anybody** 7:12
16:20,21 25:7
34:4 46:11 56:9
**anymore** 8:16,25
9:15,18 52:3
**anyway** 19:11
20:5
**apart** 19:6 23:5
**apfel** 2:21
**apparently** 7:11

**appel** 3:7
**appreciate** 18:6
**approval** 8:12
**approve** 9:2 34:19
**april** 31:6
**argue** 13:10 32:5
40:6 44:6,8,8,9
46:13 54:2
**arguing** 10:5 22:9
30:24 32:1,22
38:3,8,17
**argument** 7:24
22:12 25:13 32:19
34:11 37:19,20
38:23,25 39:13,17
40:5 47:15 54:3
**arthur** 42:8,8
**article** 7:10 11:5
39:24 43:16
**articulate** 39:22
**ashvin** 2:7
**aside** 38:2
**asked** 14:9
**asset** 41:23
**assist** 44:22
**associates** 3:15
**association** 11:3,7
11:11,12,12,13
**assume** 12:12,13
52:17
**assuming** 53:4,5
**attach** 33:17
**attempt** 31:18
**attorney** 20:2
**attorneys** 5:3
**attribute** 56:15
**august** 1:17 59:11
**authority** 15:15
**available** 20:3
23:10 49:19
**avoid** 40:8 45:24
53:12

**aware** 6:14,24 7:8
11:8 18:3 32:2
34:17

**b**

**b** 1:21 2:17 3:2
39:2,2 53:9
**back** 21:24 22:13
22:16,16 25:9
26:24 33:21 45:4
45:20 56:24,25
57:18
**backtrack** 54:20
**bad** 35:18 52:23
**badly** 29:18
**balance** 51:14
**balmuth** 3:8
**bank** 11:9
**bankruptcy** 1:1
1:12,23 11:9
**barnes** 3:2
**based** 10:11 17:17
18:20 29:8 36:6
49:17
**basically** 22:9
**basis** 15:8 21:8
33:18
**bears** 54:21
**beginning** 33:2
54:8
**behalf** 2:22 3:18
4:11 14:14,14
**belief** 7:11 8:19
8:20
**believe** 11:22
15:13,15 17:3
18:23 20:15 26:6
34:9 36:5 39:8
41:22 43:12 47:10
53:6
**believes** 8:12
26:23
**bent** 44:20

**bertha** 2:9
**best** 43:6,13 47:11
50:18
**better** 15:22 41:4
50:18
**bevano** 30:18
**beverly** 2:11
**bevona** 21:15
23:24 25:25 26:1
26:9
**big** 40:23 57:10
**bills** 12:8 33:3
**binding** 34:20
**bingo** 36:15
**bit** 7:9 10:18
18:16
**black** 21:18
**blame** 41:6 49:11
57:18
**blaming** 45:10,17
**blank** 55:10,11,12
**block** 3:3
**body** 50:15
**bond** 16:24,25
**bondholder** 17:1
**bondholders**
16:17 33:4
**bonnie** 3:3 17:22
17:24 18:3
**books** 14:12 17:18
18:12
**bought** 47:4
**boxwell** 2:15
**breach** 4:25 59:3
59:8
**break** 54:1
**bri** 3:4
**brian** 5:7 6:7 16:4
**brings** 28:10
**brunswick** 3:6
**buckets** 16:25
**bucks** 31:6
**building** 17:25

**bulls** 54:21
**bunch** 12:12
**business** 21:23
**buy** 11:16 32:15
**buying** 37:6,18
**buzz** 50:15
**bv** 3:7

**c**

**c** 2:8,21 3:18 4:11
  5:1 6:1 39:2,2
  59:1,1
**caldarella** 3:12
**camera** 7:6,7
  44:17
**capitalize** 42:13
**caputo** 3:12
**card** 26:9,9
**care** 14:23,23
  16:16,23 17:2
  21:17 25:1 43:20
  44:9 47:11
**careful** 24:17 26:3
  53:2
**carlson** 2:4
**carole** 2:8
**case** 1:7 6:20 7:3
  7:15,19,22 8:2,18
  9:6 12:16 14:10
  14:13 15:11,16
  18:2 23:14 26:22
  29:8 31:14,18,23
  32:9,10 33:9,11
  33:14 34:22 36:5
  38:21 40:16 41:23
  42:25 43:9 44:7
  47:22 52:23 53:11
  53:24 54:9 57:2
**cases** 21:18 31:22
  34:11 42:2 53:22
  53:24
**cause** 30:13 39:19
  39:20

**caused** 32:6
**causes** 38:22
**caution** 31:25
**central** 1:15
**cert** 16:11 17:14
  59:9
**certain** 8:21 12:21
  15:14,23 29:8
  30:11,12 41:25
  46:14
**certainly** 37:4
**certified** 59:9
**certify** 59:3
**challenge** 15:18
**challenges** 15:17
**chambers** 48:24
  57:12,13
**chance** 51:24 52:2
**change** 22:4
**chapter** 14:7
  18:21
**charged** 57:7
**charitable** 21:20
**charter** 11:17
**check** 35:5,5
  57:11,12,12
**chiropractic** 3:3
**choose** 34:13,13
**chose** 43:5,24,25
**circulated** 7:10
  19:5 47:7
**circumstances**
  29:9
**cit** 3:4
**civil** 38:9
**claim** 2:1 3:1 4:1
  7:2 18:13,14,16
  18:19 19:9,10,13
  19:14,15,17,22,24
  20:9,10,14,14,16
  24:2,14,16 25:13
  26:14 27:5,7,9
  29:11,19 30:1,3

33:9 34:9 40:24
  50:7
**claimants** 16:12
  17:15 18:11 28:14
**claims** 6:11,14
  7:18 10:14 11:21
  11:22,25 12:2,16
  14:7,9 15:24 16:9
  16:13,14 17:1,3
  17:17 18:10 19:3
  20:14 23:14,15
  27:21 28:2,12
  29:1,25 32:14
  33:7,8,17 34:9,20
  39:4,5 50:1 51:7
  51:16,23 52:12,20
  53:6,7 58:6,9,12
**clarification**
  33:16 35:3
**clear** 7:15 8:17
  11:6 15:3,11,12
  15:12 23:13 40:9
**clearly** 8:19
**clerk** 6:2
**clients** 43:24 47:8
**close** 19:1 53:11
  56:3
**closed** 11:4 29:14
  35:7
**closure** 32:25
  39:10
**clue** 12:13
**code** 52:15,19
**cognizable** 29:19
**cold** 30:9
**collect** 35:12
**collected** 12:11
**collecting** 56:16
**college** 1:7 3:2 5:3
  6:3 7:14 8:1 11:3
  11:16 37:16 46:25
  50:10

**college's** 11:17
**colorable** 34:9
**come** 9:9 21:3
  22:3 26:24 32:15
  44:6,8 45:5 46:4
  46:11 47:14,14,14
  48:14 51:24 56:24
  56:24 57:4
**comes** 15:17
  23:19 25:7
**coming** 56:20
**commack** 41:24
**commenced** 6:25
**comment** 8:4
  53:11
**commit** 33:14
**committed** 31:20
  32:2
**committee** 15:1
  54:5
**committee's** 15:1
**communicate**
  43:23
**company** 2:18
  3:13 41:23
**complaint** 7:23
  12:17 13:2,8
  14:16 36:9 50:13
  55:16
**complete** 30:21
**concept** 22:2
**concerned** 10:15
  12:4 48:15
**concluded** 57:22
**confer** 34:23 49:5
**confirmation**
  10:19 54:2,3
**confirmed** 54:9
**conflate** 57:9
**conflating** 22:22
**confuses** 10:17
**connection** 25:23
  29:22

**consequences** 22:19 25:9,10,11
**consistent** 10:2
**consolidated** 18:18
**constituency** 7:25 10:22,23
**contacted** 18:11 18:15 19:16 20:1
**continue** 32:24 37:22
**continuing** 34:16
**control** 37:7,14
**conversation** 10:10 24:11 26:5 44:2 49:17
**conversations** 13:24
**convince** 47:5
**copy** 13:4
**correct** 16:18 17:1 17:9,23 21:1 25:14 28:24 29:2 34:1 51:11
**couch** 47:8
**counsel** 8:20 15:1 15:2 16:5 54:5
**country** 8:22 59:23
**couple** 47:17 56:1
**course** 29:16
**court** 1:1,12 6:10 7:8 8:22 9:2,14,17 9:23 10:1,7,9,20 11:25 12:7,25 13:2,4,7,14,18,20 13:22,25 14:3,6 14:24,24 16:3,15 16:19,22 17:6,8 17:10,10,20,24,25 18:8,21 19:2,7,12 19:23 20:9,12,18 20:21,23 21:2,6,9

21:13,17 22:4,13 22:15,19 23:2,4,6 23:8,10,13,20,23 24:1,5,7,12,15 25:20,22 26:1,11 26:13 27:2,4,12 27:14,17,19,22 28:1,4,8,16,20,23 28:25 29:3,24 30:3,5,17 33:19 34:25 35:6,9,11 35:19,22 36:2,8 36:10,12,15,19,21 36:23 37:8,10,12 37:17,19 38:8,20 39:16 40:12,15,18 40:21,25 41:2,5 41:13,15,18,22 42:7,11 43:3,18 43:23 44:15,24 45:1,3,6,8,10,12 45:14,17,20,22,25 46:7,11,13,17,19 46:22 47:3,19,21 47:24 48:5,7,9,11 48:17,19,21,25 49:2,5,9,11,13,16 49:18 50:6,16 51:1,4,7,10,12,15 51:18,21 52:2,7 52:11,17,23 53:9 53:13,16,20 54:7 54:7,11,17,19,24 55:12,21,24 56:4 56:6,8,11,14,19 56:23 57:2,9,14 57:16
**court's** 8:12
**courthouse** 1:13
**courtney** 2:3
**courtroom** 21:2 21:16 23:25 25:6

**covello** 2:4
**crazy** 42:11
**create** 46:9
**created** 11:4
**creates** 25:3 41:24
**credit** 35:17
**creditor** 2:23 3:19 4:12 5:3 6:7 16:5 24:20 25:14 26:25 32:8 56:19
**creditors** 6:21 10:18 15:1,1 23:8 23:11 24:19 26:16 32:11 52:3 54:5 56:24
**credits** 30:12 31:11,12 35:16,16 36:3 37:2,6
**culpable** 42:16
**cut** 56:16
**cw** 37:5
**cy** 21:11 22:2 26:20

## d

**d** 6:1 39:2,2 58:1 59:9
**d'amato** 1:13
**damages** 29:22,25 30:13 31:4,9 32:6 33:25 38:14 47:5
**danyal** 2:19,20
**date** 20:7,8 46:1 54:2 59:11
**david** 2:8,9
**day** 16:11 28:14 49:22,22,23 52:13
**days** 56:1
**dba** 11:7
**dead** 21:22
**deal** 7:19 8:7 28:17 29:3 34:1 43:10

**deals** 54:8
**dealt** 21:17 55:5
**deanna** 3:5 20:16
**debt** 30:11 38:5
**debtor** 1:9 11:8 11:23 18:19 32:11
**debtor's** 17:17
**debtors** 18:17,19
**debts** 38:2
**decides** 21:23
**decision** 7:22 8:5 8:5 26:23 27:7
**decisions** 18:5 53:23
**declaring** 38:16
**deed** 42:12
**defendants** 6:17 10:12
**defense** 41:2,3,5
**defenses** 39:3
**defrauded** 30:24 31:3 32:15,16,22 32:24 34:2,6 35:13,15
**degree** 30:9 31:11 37:23
**delaware** 2:18,20
**delta** 3:5,6
**deluca** 28:21
**demonstrate** 33:25 34:11
**dennis** 2:9
**department** 2:5,6 3:17 17:4 19:25 53:4
**determination** 25:24 26:2
**determine** 15:7 39:9
**determining** 26:14
**dialogue** 26:10

**dictating** 46:8
**difference** 33:24
**different** 18:19
  21:10 24:22 25:2
  26:7 29:8 31:4
  32:17 38:6 42:20
  46:24 47:5
**differently** 21:24
**difficult** 43:1
**directing** 24:23
  26:4,5
**disagree** 8:13,21
  9:10 15:8 47:10
**disagrees** 7:10
**disallowed** 17:18
  28:3
**disclosure** 44:6
**discuss** 9:13 46:15
  56:8
**discussed** 10:13
  10:16
**discussing** 8:16
**discussion** 8:8
  13:20 39:21 46:7
  51:24
**dismissal** 44:5
**dismissals** 6:18
**dismissed** 44:7
**distribute** 21:11
**distributed** 22:2
  22:25 23:18
**district** 1:2 17:25
  18:24
**dno** 6:16 7:7 53:7
**dobel** 2:16,18
**docket** 6:21 7:3
  48:14
**doctrine** 21:11
**document** 7:6
  44:17,20 46:9
**documentation**
  19:17,20

**doherty** 3:6
**doing** 7:21 9:4,6,8
  9:21 15:10,10,24
  25:5 31:24,25
  42:24 43:21 55:22
**dollars** 12:18,19
  12:22 13:9 50:19
**donation** 21:20,22
**donations** 21:21
**dooppelt** 2:14
**door** 31:6,7
**doors** 11:4 30:6
**doshi** 2:7
**double** 35:5
**dowling** 1:7 5:3
  6:2 7:13,25 11:3,4
  11:7,11,13 12:7,8
  12:10,11 14:22
  20:25 22:7 29:12
  29:14,20 30:5
  31:19,25 33:14
  35:7 37:9,11,13
  37:16 39:9 46:25
  50:12,14 53:7
**dowling's** 39:1
**drafted** 13:6,7
**drafting** 12:17
**dramatically** 12:2
**duplicative** 16:8
  16:14,22
**duty** 40:1,4,4

### e

**e** 1:21,21,22 5:1,1
  6:1,1 39:2,3 58:1
  59:1
**early** 20:7
**earn** 37:23
**east** 2:3
**eastern** 1:2 18:24
**ecf** 16:9,10 17:13
  17:14 28:12,13
**economico** 3:10

**ecro** 1:25
**education** 2:5,6
  3:17 17:4 19:25
  53:5
**educational** 29:12
  29:15
**effort** 57:5
**efforts** 55:15
**either** 9:10 12:12
  14:19 17:18 21:23
  27:9 28:3 30:18
  33:12 37:20 40:7
  54:12
**electronic** 59:9
**elements** 34:8
  50:4
**eliminate** 30:10
  39:19
**elinor** 3:6
**elkins** 3:14
**elsevier** 3:7
**eluding** 38:18
**emphasized** 7:9
**employee** 17:24
**endow** 22:7,8
**endowed** 20:24
  21:12 22:24 25:7
**energy** 3:13
**enforceable** 8:14
**enter** 19:6
**entered** 8:3 30:6
**entering** 43:17
**enterprises** 3:6,9
**entire** 7:25
**entitled** 10:8,9
  14:1,2
**entity** 11:14,22,22
  11:23
**esposito** 28:21
**esq** 2:22 3:19 4:11
  5:7,8
**essence** 37:15,19

**essentially** 19:8
  19:17,19 21:8
  30:24 38:22
**establish** 33:23
**estate** 14:14 21:25
  24:18 25:14 26:23
  26:24 29:20 41:23
**estates** 18:18
**estimate** 19:18
**eventually** 37:24
**everybody** 29:17
  49:20 50:12
**everybody's**
  14:25
**evidence** 22:10
**evidentiary** 31:2
  33:19 39:8 49:25
  49:25
**exact** 38:20
**exactly** 7:1 35:23
  52:12
**exclusive** 22:3
**exercise** 40:4
**exist** 11:23 34:7
  37:21
**expense** 3:7
**explain** 9:20
  12:18 33:14 39:23
  42:23
**explained** 14:25
  24:3
**explaining** 7:12
  7:13,22
**exposure** 42:22
**expressions** 54:22
**expunge** 2:1 3:1
  4:1 58:5,8,11
**extend** 52:14
**extension** 20:1
**extent** 20:6 22:25
  29:21

| f | | | |
|---|---|---|---|

**f** 1:21 59:1
**face** 40:23
**facie** 33:8
**facilitate** 25:22,23
**fact** 22:12 31:18
42:3
**facts** 29:8
**failed** 33:12,21
**failure** 39:1,2
**fair** 18:5
**fairly** 10:21
**fairness** 42:20
**faith** 19:18
**fall** 53:2 54:17
**far** 8:2 57:4
**fashion** 8:21 27:8
32:23
**father** 42:4
**fault** 37:4,5 47:19
48:5 57:17
**federal** 1:13,14
**fee** 53:8 56:11
**feel** 29:7 35:18
50:2
**feels** 29:16,17
**fees** 54:4 55:18
56:15 57:6
**fewer** 36:16
**fight** 26:21
**figure** 26:12 43:6
**figured** 46:19
**file** 6:23 18:9
51:18,22
**filed** 11:8,9 16:9
16:11 17:13,14,21
18:4,16,19 19:3
19:14,17 20:15,17
28:12,18 30:23
31:14 40:16
**filing** 6:21,25
**filings** 17:7

**filtered** 45:3
**finalized** 6:16
**finally** 19:24
**finance** 3:4
**financials** 50:13
**find** 12:9 55:17
**fine** 9:6 10:7 14:5
39:17 44:13 56:10
56:12,18
**finish** 30:9 35:25
37:1 49:23 54:14
**fire** 3:9,13
**firing** 37:23
**firm** 41:3 54:4
**firm's** 7:11
**first** 16:7 29:4
30:2 32:22 34:3
55:22,23
**five** 7:17 51:4
**flat** 17:4
**flipside** 50:12
**folks** 28:17 38:8
38:18
**footnote** 30:19
**force** 43:14 51:18
**forced** 55:16
**forcing** 49:20
**foregoing** 59:3
**forget** 12:18
**form** 8:14 14:9
**format** 48:13
**forms** 38:22
**forum** 26:7 46:15
**found** 12:18,22,22
**four** 28:22,25
50:21 51:1,5,6,7
**fraud** 30:20 31:20
32:2,6 33:14 34:4
34:8,12 36:4
38:13,15,16 39:6
39:10 50:4,5
**free** 8:14,22 9:24
22:3 26:24 47:9

47:14 51:12 52:10
**friedman** 2:22
3:19 4:11 6:6,8
8:20,20 11:2,15
43:4 46:2,13
47:16 54:25
**friedman's** 47:3
**front** 38:5 56:9
**fully** 9:20 48:5
**fundamental**
31:16 33:12
**funds** 22:25 23:10
24:24 26:17,19
**further** 49:15
**future** 29:12

| g | | | |
|---|---|---|---|

**g** 2:11 6:1
**garnes** 2:7
**gathering** 6:17
**gayle** 3:8
**geeta** 3:8
**general** 23:11,15
26:15
**generally** 30:5
**george** 2:10,11
**gerald** 2:11
**getting** 31:16
55:10
**gillespie** 2:16
**gist** 50:8
**give** 6:12 8:4 13:4
22:12,16 24:2,20
25:15 26:2,4,9
30:11 38:13
**gives** 46:15
**giving** 22:16
35:13
**go** 8:22 9:24 10:1
15:16 21:24 26:20
27:19 29:6 32:20
33:1,2,4,4,4 35:5
35:23 36:2,6
41:15 47:4 48:3

57:4
**goal** 42:21,23 57:6
**goes** 21:23 42:12
52:4 55:14
**going** 6:13 7:16
8:10,17,18 9:9,18
12:1,5 14:22,24
15:8,10 17:12
19:10,21 20:4
24:24 26:20 27:19
28:23 31:7 32:3
32:17 33:6 34:6
35:3 37:16,21,22
40:1,22 41:7,9
43:8,8 44:6,7,22
46:23 47:2,18
49:5,24 50:1 51:8
51:20 55:3,6,18
55:19 56:15,16,17
**gold** 2:9,9
**golf** 42:8
**good** 6:5,9 7:9
19:18 42:3,12
**gotten** 11:17 40:6
**graduate** 37:16
**grammy** 3:9
**grande** 2:13
**grant** 17:10 28:4
33:6 52:19,24
**granted** 51:17
**granting** 52:5,8
**great** 54:21
**greatest** 51:23
**grief** 43:9
**grossman** 1:22
**group** 46:24
**guess** 16:23 20:19
55:4
**guys** 7:16 8:10 9:5
12:13 24:22 25:4
25:22 30:19,23
31:2 34:16 38:3
40:6 41:7 43:17

46:10 50:6 55:8
57:3,17,20

**h**

**h**  2:9
**half**  12:21 13:9
36:24
**handled**  15:21
**happen**  56:17
**happened**  7:23
13:10 14:22 29:20
29:23 33:1 38:7
39:20 54:8
**happens**  21:20
27:6
**happy**  24:10 43:8
**harold**  2:12
**hartford**  3:9,10
3:16
**hawkins**  2:9
**he'll**  26:22
**head**  46:3
**hear**  8:25 9:15,18
12:3 21:4 34:21
46:4
**heard**  7:24
**hearing**  6:19 8:11
15:18 31:2 33:19
37:3 39:8 48:25
49:2
**hearings**  31:19
49:25
**help**  25:4 29:11
**hey**  48:2 50:10
**highlighted**  7:17
**hired**  14:12,13
**history**  32:9
**hobsons**  3:10
**hoffman**  2:15
**hold**  24:7,7,7
25:16 50:17,17
**holding**  20:7
**hon**  1:22

**honor**  6:5,9,12,24
7:5 9:12 10:6 11:8
11:21 13:1,23
16:4,8,13,18 17:1
17:11,12 18:6
19:4,5,15,21 20:1
20:14 21:1,8,16
22:18,21 24:4,11
26:8 28:6,11,19
29:2,6,16 30:16
35:2,17 36:20
37:3 40:22 44:16
44:20 45:2 48:14
52:10,25 53:1
56:1 57:15,21
**honor's**  33:15
53:8
**hopeful**  20:3
**hopefully**  27:4
**horrendous**  8:5
**housekeeping**
28:7
**huge**  32:10
**huh**  38:19 44:14
46:12 54:6,16
57:8
**hundred**  52:9
**hundreds**  43:17
**hurdles**  38:11
**hurt**  7:25
**hypothetically**
41:6

**i**

**impact**  18:4
**impression**  45:15
**including**  31:22
**incoming**  36:23
**incredibly**  15:11
15:12 43:1
**incurred**  38:2,4
**indiscernible**  21:5
41:25 53:6

**individual**  11:14
29:8 32:8
**indulges**  53:1
**inflammatory**
11:20
**information**  18:12
38:13 52:12
**informed**  26:8
**injured**  39:12,14
42:15,16,18 43:12
**injuries**  42:19
**injury**  42:17
**input**  45:16,23
**institution**  21:23
25:8 29:12,15
30:6,10 34:6
41:24
**insurance**  3:9,13
**intention**  9:21
**interest**  9:1
**interested**  8:8
46:17
**interests**  32:12,12
32:14,15
**internally**  45:10
**interpreting**  25:2
**involved**  9:8
**ire**  47:21
**irrevocable**  2:19
2:20
**irwin**  2:12
**islip**  1:15 2:3
**issue**  22:20 24:22
25:2 26:25,25,25
31:4,16 34:17
38:6 44:15 47:4,4
47:4 48:16 55:19
**issues**  22:22 38:15

**j**

**j**  2:17,22 3:18
4:11
**jericho**  5:4,5

**joan**  2:12
**job**  15:6 43:5
**john**  2:13
**joseph**  2:13 3:10
**journal**  3:17
**jt**  2:9
**judge**  1:23 18:2,3
35:21 39:6 45:2,2
45:7
**judgment**  39:7
**july**  16:9 17:13,15
28:12,14 35:7
**june**  31:7 35:8,9
35:10
**justice**  42:20
**justin**  2:4 28:20

**k**

**kazckowski**  2:13
**keep**  15:10,10
42:21
**kenneth**  2:14
**ketterer**  28:20
29:4
**kind**  29:13 48:13
**kleinberg**  44:18
45:24 46:2,3 47:8
48:2 49:6,19 56:9
57:12
**kleinberg's**  43:24
**kmg**  40:10
**knew**  31:7 34:7
39:25 40:1,3 42:4
42:7,8 50:12
**know**  9:4,7 10:20
13:10,16 14:15,17
14:17,18 18:5
23:1 25:6 26:19
30:25 33:5,21,22
34:15 35:14,17,23
40:10,12,24 41:2
41:20 42:5 43:8
43:10,20 46:21
47:15 49:20 50:11

52:3,22 53:20
54:19 55:12,13
**knowledge** 14:14
**known** 11:15
37:20 41:21
**knows** 11:21
50:18 54:25
**koster** 2:12,12
**kpmg** 6:22 9:4
14:15 48:13 53:7
**kpmg's** 14:17

**l**

**l** 2:2 4:25 59:3,8
**labor** 49:21,22,22
**large** 10:21,21
33:16
**laser** 3:11
**laughter** 53:18
54:18
**laurie** 2:14
**law** 21:11,14,18
21:19 23:13 26:6
34:7 43:13,13,15
**laws** 42:13
**lawsuit** 40:8,13
46:14
**lawyer** 15:6 43:4
53:21
**lawyers** 34:14,15
42:19 53:21
**leading** 32:25
39:10
**leads** 39:21
**learned** 42:19
**leave** 38:2
**left** 20:9 30:8
31:11 39:24 53:7
**legal** 15:8 53:14
53:16 59:22
**legally** 29:19
**letter** 21:18
**letting** 36:17
37:24

**level** 23:16
**lewis** 2:15
**liable** 38:24
**limit** 42:22
**limitations** 52:19
**line** 31:22 43:1,4
**lipinski** 2:21
**list** 28:16
**listen** 50:16
**litigants** 44:22
**litigation** 6:13,23
6:25 7:2
**little** 6:12 10:17
21:4 29:11 49:7
**lives** 48:9
**llc** 3:5,9,14
**llp** 5:2
**local** 3:11 19:15
**long** 19:4 41:21
52:22 53:22
**longer** 21:25
**look** 14:11 32:9
32:10 42:2 50:1
50:10
**looked** 53:25
**losing** 36:13,17
50:14
**lost** 38:11,11
**lot** 42:6 43:9
**love** 47:20
**luck** 34:21
**lumber** 2:3

**m**

**m** 1:13 2:12,12,13
3:8
**main** 7:3
**maintain** 50:15
**majority** 55:13
**making** 8:6 25:24
26:1,2 30:20
41:19
**manner** 37:22

**marginally** 15:22
**marie** 2:15
**marketing** 3:15
**martinez** 2:3
**mary's** 22:8 24:25
**maryann** 3:12
**mas** 44:1
**maserjian** 2:8
**matter** 1:5 20:2
21:14 26:5 34:7
45:6 49:6,9 53:8
**matters** 6:2 30:10
38:9
**mean** 7:8 19:19
29:7 51:21
**measure** 54:11
56:1
**mechanism** 25:9
43:7
**mediation** 6:24
**meeting** 56:2
**melanie** 2:16
**mendelsohn** 3:2
**mendelson** 18:15
**messed** 38:23
**michelle** 3:4,5
**middle** 43:19
**mike** 2:4 3:12
**mildly** 12:4
**million** 12:21 13:9
38:5 42:10
**millions** 12:18
**minds** 47:12
**mine** 30:17 37:5
37:20
**mineola** 59:25
**minute** 10:24 53:1
**minutes** 7:17
**miroslav** 2:16
**miscommunicat...**
48:8,10
**misunderstanding**
44:17

**mitigated** 31:4
**mitigation** 30:12
**moccia** 3:14
**modified** 49:15,16
**moment** 34:24
**monday** 46:1,2
**money** 6:17,19
12:7,11,11 14:6
14:11 21:24,25
22:1,4,6,7,16,17
22:23 23:16,17,19
23:20 24:2,20
25:8,12,15,16,17
25:17 26:3,4,15
26:16 31:8 33:1
33:23 35:13,15
36:6,6,6,13,17
38:11,13 42:6,7
50:14 55:17 56:7
56:20
**monies** 9:8 14:8
21:12 24:16
**months** 10:3 11:4
**moot** 26:15
**morning** 46:1
**motion** 2:1 3:1 4:1
15:25 17:10 28:5
33:7 51:17 52:5,8
52:19,24 58:5,8
58:11
**motions** 6:11
**mount** 24:25
**move** 8:24 16:1
43:7 45:12
**mu** 3:5
**muddled** 49:8
**multiple** 18:17
**murray** 3:16
**muse** 52:7

**n**

**n** 5:1 6:1 58:1
59:1

**name**  11:14 20:15
22:8
**national**  3:13
**necessarily**  44:11
**need**  9:20 39:8
43:11 48:3
**needed**  10:13
**never**  14:12,13,16
18:1 40:15 52:21
53:21
**new**  1:2,15 5:5
21:10,19 23:13
30:7
**news**  3:18
**newsday**  11:1,2
11:10
**newspaper**  7:10
11:19
**nicholas**  2:17
**noble**  3:2
**nobody's**  17:8
37:4
**nohs**  3:3,4,5 17:22
17:24 18:3 20:10
20:14 21:2,4 22:6
24:6,9 26:9 27:1,3
27:11,13,22
**normal**  14:6 38:9
**notice**  7:2 10:15
48:15
**notices**  18:10
**number**  6:2 10:5
12:20 18:13,14,16
19:13,14,24 20:10
20:14,16 33:16
55:1,9,9 57:5
**numbers**  2:2 3:2
4:2 12:6 19:1
46:20,22
**numerical**  16:7
**numerous**  21:10
**ny**  59:25

**o**

**o**  1:21 6:1 59:1
**oak**  32:10,10,15
**object**  2:1 3:1 4:1
10:18 33:7 52:13
58:5,8,11
**objected**  17:8
18:20 19:18 20:23
**objection**  11:17
16:8,15 17:12
18:4 19:22 20:10
20:11 21:9 22:6
26:14 27:10 28:11
29:1 50:16,17
51:22
**objections**  6:15
7:18 8:24 10:15
15:25 16:7,20,21
18:10 27:24 28:18
31:15 50:17,18
51:19 52:11
**obligation**  15:13
15:14 38:12
**obviously**  22:6
27:20 40:5
**ocampo**  3:5 20:16
**occasions**  12:8
**october**  53:8
**odd**  40:21
**oh**  28:4 49:4
**okay**  6:10 8:14
9:23 13:18 18:8
19:4,12 20:9,21
21:6 24:9,12
25:20 26:1,11
27:1,2,11,14,17
29:3 36:16 41:1
43:10 45:11 46:10
48:5 53:10,19
56:9 57:14
**old**  59:23
**omnibus**  16:7,7
17:12 27:16,21

28:11
**once**  41:8
**ones**  28:17,25
**online**  29:10
**operate**  26:23
**operated**  45:14
**operating**  31:19
31:20 32:23 37:25
**operations**  36:7
**opinion**  46:1
**opportunity**  8:4
8:23 9:19
**opposed**  41:23
**opposite**  41:12
**order**  10:19 16:7
19:5 22:16 24:23
29:4 31:11 41:12
41:13 53:8
**orders**  22:13
**organization**  11:6
**originally**  32:11
**owe**  25:16
**owes**  25:17
**ozizmir**  2:19,20

**p**

**p**  5:1,1 6:1
**p.m.**  1:18 57:22
**page**  58:4
**pages**  40:21
**paid**  12:8,10 14:8
14:9,11 23:8 31:6
33:23,24 35:16
**painful**  14:21
**panoply**  38:14
**parameters**  10:12
**paraphrasing**
40:1
**part**  16:16 30:23
36:5 47:21 55:14
**participate**  8:23
**participated**  32:5
**participating**
32:11,12,14

**particular**  13:9
26:22 27:7
**parties**  17:21 22:3
27:9 30:20 33:6
34:19 52:13
**party**  16:16 21:21
22:5 25:7 38:12
**passed**  52:14
**passes**  21:22
**path**  34:16
**pause**  6:4 35:1
**pay**  19:9 24:19
32:24 57:6
**paying**  19:10 33:3
33:3 35:15 53:21
**peggy**  2:17
**pending**  6:23
**penn**  2:9
**pension**  3:11
19:15
**people**  7:25 8:4
9:9 12:6,12 31:5,9
31:23 32:5 34:6
37:25 38:1,9,15
42:2,3,15,24 43:7
43:11 46:23,24
47:11,11 51:18
55:6
**peppino**  2:17
**percent**  26:19
55:14,17,18,18
**percentage**  51:9
51:10
**perfect**  25:16
**perfectly**  8:17
25:15 39:16 46:9
**performance**  3:11
**peril**  7:16
**period**  12:9 54:12
**permission**  6:15
**persad**  3:8
**person**  8:11 11:2
21:25 31:13 43:18

**peter** 28:21
**ph** 11:15 21:15
28:20,21,21,23
**pick** 46:1
**pickle** 38:10
**pig** 54:25
**pigs** 54:21
**pipeline** 6:18
**place** 30:2 32:23
34:3 55:7
**places** 21:21
32:20 35:14
**plan** 3:12 6:23
10:19 19:15 22:24
23:18,21,23 24:1
24:21 25:17
**planning** 6:25
**platinum** 3:13
**plausible** 34:11
**play** 55:14
**played** 42:8
**plaza** 1:14 3:10
**pleading** 40:16
50:4
**pleadings** 31:5,21
34:5
**please** 13:21,22
36:1 37:1
**plenty** 7:19,20
54:4
**plus** 26:18
**point** 8:23 15:23
33:8 35:2 36:4
37:2
**points** 47:18
**pool** 26:15,17
**pools** 23:16
**portion** 56:11
**position** 29:19,24
30:15 33:15,20
34:10 43:25
**possible** 12:10
33:11 40:13 42:22

44:4 53:12
**post** 37:5 38:23
54:3 55:1 57:9
**pot** 57:10
**potential** 36:4
**potentially** 49:25
52:1
**power** 3:15 52:15
**powers** 5:7 6:8,9
6:14 10:24 12:3
16:4,5,18,21,25
17:7,9,11,23 18:6
18:9,23 19:3,8,13
19:24 20:11,13,20
20:22 21:1,8,15
22:14,18,21 23:3
23:5,7,9,12,14,21
23:24 24:4,10,13
25:19,21,23,25
26:8,12 27:15,18
27:20,24 28:2,6
28:10,19,22,24
29:2,6 30:1,4,15
33:15 34:23 35:8
50:21,25 51:3,6,9
51:11
**practical** 53:13
**pre** 54:4 55:1,7
57:9
**preclude** 32:1
**prefer** 55:8
**pres** 21:11 22:2
26:20
**pretty** 42:4
**prevail** 47:15
**prima** 33:8
**principals** 31:24
**prior** 10:3 39:21
**probably** 9:19
16:6 25:13 26:14
50:18
**problem** 25:3
39:23 50:3 53:21

55:3,7
**problems** 42:1
**procedure** 10:16
**proceed** 8:21 9:9
10:4,25 33:11
34:13,14
**proceedings**
57:22 59:4
**process** 44:11
**products** 3:11
**professionals**
12:17
**programs** 30:9
37:24
**project** 55:1
**property** 24:17,18
**prosecute** 39:5
**protect** 14:2,3
**protecting** 10:6
**prove** 33:20 38:15
38:15
**provide** 30:8
**provided** 18:11
**public** 7:9 9:7
41:24
**publicize** 8:4
**purpose** 12:19
22:10,11
**purposes** 20:24
**put** 7:4 10:13 12:4
21:25 26:16 31:5
42:6,7 44:4 47:9
48:13
**putting** 7:3

**q**

**quadrangle** 5:4
**quarter** 36:25
53:12
**question** 7:5
29:18 33:1,12
34:2 38:4
**quick** 6:13

**quickly** 17:21
22:21 33:16
**quiet** 42:22
**quoted** 11:2

**r**

**r** 1:21 2:11 5:1 6:1
59:1
**raise** 50:3
**raised** 27:10 39:4
**rarely** 39:6
**reach** 15:4,5 22:4
47:9
**reached** 10:4 40:7
**read** 13:5,8 31:21
31:21 36:9 47:12
**real** 41:23
**reality** 11:20
**realize** 39:17
57:17
**really** 8:9,25 9:14
9:15 12:14 14:21
37:4 42:2 43:21
44:1 56:12
**reason** 6:12 17:25
32:13
**reasonable** 37:25
38:1 55:1 57:5,6
**reasons** 47:25
53:24
**reclassify** 2:1 3:1
4:1 58:5,8,11
**recognition** 30:23
**recognize** 39:19
43:3
**recognizing** 47:17
**recommendation**
56:23
**reconcile** 18:12
**record** 10:6,11,14
14:2,4 15:11,12
16:4 18:9 59:4
**records** 14:12
17:18 18:13

recovered 55:10
recuse 17:25
reduce 2:1 3:1 4:1
  58:5,8,11
reduced 17:18
  28:3
reduction 3:7
reed 2:17
reference 30:20
referring 13:17
reflects 11:20
reg 1:7
regardless 18:25
reject 34:19
rejected 47:24,25
  47:25
relate 50:19,20
relation 25:23
relative 52:19
release 34:19
remaining 51:16
repeat 14:6
replete 31:14
replied 29:1
reporter 59:9
represent 30:22
represented 30:22
representing 11:5
  11:11,14
represents 57:5
requested 20:1
require 31:1
resend 49:12,13
resolution 16:23
  18:25 22:1 40:7
resolve 31:18
  51:12
resolved 20:4 27:8
responded 51:2,3
  52:9
response 16:16
  17:21 29:5,5 30:5
  33:13 34:3 42:17

responsibility
  14:17 32:18 43:6
responsible 31:24
rest 16:20 48:9
resurrect 47:1
return 24:25
reversed 32:13
review 9:2 15:7
  15:15 44:20
reviewed 15:23
revisit 26:7
right 9:11,19
  10:18 15:6 16:19
  17:6 19:2,7,23
  20:12,18 23:2,9
  23:12 24:15 25:5
  27:12,14 28:1,8,9
  28:10 32:21,21
  34:19 35:6,11
  36:15,19 38:24
  39:18,19 43:19
  48:11 54:10 55:24
rights 46:14 51:21
road 8:18,19
  59:23
robert 1:22 2:4
  3:14,14
roberta 2:10,11
rock 32:10,10,15
  47:13
rodeo 55:23
role 14:25 18:21
rolled 11:7
ronald 2:22 3:18
  4:11 6:6,8
rosenfeld 25:19
round 12:1
royal 3:14
rubric 53:2
rudolph 42:4,9
rug 14:23
rule 6:18 7:1
  48:23

ruling 27:6 39:18
rulings 58:3
run 45:8 52:18

s

s 5:1 6:1
saggese 2:7
sang 12:6
satan 2:16
satisfaction 27:8
satisfactory 34:3
satisfied 42:20
  44:21
saturnino 2:8
saying 19:19
  20:24 24:16 30:25
  31:1 33:25 35:23
  37:15 49:2 50:9
  52:17 56:20
says 13:9 25:7
  30:5 50:4
scenario 35:4
  44:23
schedule 19:3
scheduled 18:18
  19:10
scholarship 20:24
  22:7,8 23:17 29:9
scholarships
  22:23 37:21
school 31:10
  32:19,23,25 37:21
  37:24 38:2,4
  46:25
school's 32:18
schools 30:8
sclafini 2:10
scott 42:4
scramble 29:14
seat 21:6
second 17:12
  27:16,21 38:25
seconds 41:8

secret 43:19
section 12:16 14:8
sections 13:8,16
secured 56:19,23
see 7:6 27:6 44:10
  48:17 49:19 50:13
seek 8:12
seen 12:15 14:7
  14:16
segregated 26:18
send 49:16
sense 16:6,19
  47:25 55:6
sent 31:10 48:20
  48:23 49:14
sentiment 7:9
separate 19:6
  23:5
september 20:7
series 12:1 30:7
  31:19
serve 6:18 44:7
served 28:13 29:1
service 16:10
  17:14 28:13
serving 6:20
set 27:14,16 57:13
settings 21:10
settle 10:12 11:21
  15:16 41:14 46:14
settled 6:20,22
  41:8,9,9,11
settlement 6:16
  7:2,2,7 8:3 9:1,5,7
  32:1 34:18 46:20
  48:24 51:25 54:13
  54:19 56:17
settlements 8:25
  15:16 23:19 55:3
settling 14:15,16
  44:12
sherri 4:25 59:3,8

**short** 20:4
**shouldn't** 14:8
  25:1
**show** 33:21 45:8
  50:14 57:2,3
**showed** 10:14
**shut** 30:6 31:6,7
  38:1
**shuttering** 32:19
**siana** 2:10
**side** 42:2,14,21,23
**sided** 13:23
**sign** 8:13,14
**signatures** 6:17
**silvermanacam...**
  5:2 6:6 16:5
**similar** 7:1 32:9
**similarly** 29:13
**single** 41:23
**singular** 29:5
**sir** 37:1
**sit** 46:4 48:3
**sitting** 22:24
  23:17
**situated** 29:13
**situation** 18:17
**skyrush** 3:15
**small** 25:2
**smart** 3:15 40:23
  54:24 55:21
**smarter** 35:19,20
  35:22
**smile** 40:23
**smiling** 35:17
**solely** 55:15
**solutions** 59:22
**somebody** 15:17
  24:3 30:18 32:1
  39:22 43:14 44:6
**someplace** 12:12
**soon** 6:19
**sorry** 11:12 57:16

**sort** 30:8
**source** 14:6
**speak** 44:18,18
**speaker** 57:21
**specific** 20:24
  22:10 25:8
**specifically** 22:7
**spend** 31:11 37:6
**spent** 36:22
**spoke** 6:19 11:1,1
  11:2
**spoken** 11:15 18:1
**sports** 3:3
**spot** 39:1
**spread** 10:11
**st** 22:8 24:25
**staff** 36:17
**stand** 50:2,2
**star** 3:14
**start** 48:7 49:10
**state** 21:10 29:12
  30:7
**stated** 16:13
**statement** 12:10
  13:15 17:20
**statements** 29:17
**states** 1:1,12 2:5,6
  3:17 16:12 17:15
  19:25 20:2 28:14
**status** 6:13
**statute** 52:18
**steven** 2:17 3:16
**stip** 19:5
**stipulate** 27:10
**stipulating** 44:12
**stood** 29:10
**stories** 31:13
**story** 14:21 43:7
  43:20
**strange** 18:16
**struggling** 50:14
**student** 28:11
  50:1,15 53:6

**students** 29:18
  30:8 32:18 33:3
  33:24 35:13 36:16
  36:23 39:11,11
  50:19,22,24
**stuff** 55:5
**subject** 39:6,6
  54:7
**submit** 52:11
**submitted** 30:19
  38:17
**subside** 10:24
**substantial** 19:16
  19:20
**substantively**
  18:18
**suggest** 34:5
**suggested** 9:5
**suitcases** 12:13
**suite** 5:4 59:24
**sullivan** 2:11
**summary** 39:6,7
**superseded** 16:9
  17:7
**supposed** 23:2
**sure** 8:13 26:3
  34:25
**suther** 11:15
**swept** 14:22
**system** 42:11

**t**

**t** 2:15 3:4,5 59:1,1
**take** 16:6 31:12
  33:20 40:19 41:7
  43:19 48:12 49:11
  53:15 55:2,8 56:1
  57:18
**taken** 16:16,23
  17:2 34:10
**talk** 48:21 56:6
**talking** 23:16,17
  28:2 50:23

**tandem** 41:10
**tax** 22:19 25:9,10
**teachers** 37:23
**tech** 3:4
**tell** 7:23 13:11
  38:12 43:7 45:17
  45:21 47:8 52:21
  55:2
**telling** 14:20
**ten** 41:7 42:10
  55:14,18
**tenor** 11:5
**tens** 42:14
**tension** 42:1
**term** 20:5
**thank** 16:3 17:11
  27:13 28:6 43:2
  52:25 57:15,20,21
**theory** 25:12
**thing** 34:4 35:5
  38:20 40:10 42:12
  47:6 53:7
**things** 15:14
  32:17 39:15,16
  42:21 46:15 48:3
  53:25
**think** 7:21 8:5,9
  11:6,19,20 14:11
  15:6,16 16:6 18:7
  20:13,20 22:9,22
  25:4,5 27:5,15,18
  27:20 28:21 29:4
  29:4,16 30:18
  32:4,7 33:7,11
  34:17 35:4,4
  37:11,13 39:25
  40:9,18 43:20
  45:19 46:5 49:7
  53:17 57:1
**thinks** 26:3
**third** 27:19 28:11
  53:12

thought 10:3 18:5 37:16 41:14 44:21 47:18,24
thoughtful 44:11
thousands 42:14 42:14
three 6:11 31:10 37:6 48:19
till 12:2
time 15:3,3,3,23 41:16,21 42:3 44:4,19 48:1 49:18 51:22 52:18 52:22 53:22 54:9 54:12,22 55:22
timeline 49:7
times 21:21
timothy 28:23
today 6:7 9:20,22 12:1 15:23,24 20:3 21:16 52:13
told 8:9 9:5,17 11:10 12:21 14:10 32:24 36:23 38:9 41:6 44:24 45:1
ton 42:7
total 50:24,25 54:25 55:4
totality 53:25 54:1
totally 24:4
totals 55:4
tough 43:4
tower 3:8
transaction 43:19
transcribed 4:25
transcriber 59:9
transcript 59:4
transcripts 29:10 33:22
transferrable 37:2
transferred 50:10

trouble 50:13
true 21:13,13,14 21:19 28:8 38:24 43:14 59:4
trust 2:18,19,19 2:20 5:3 23:7,15 24:14
trustee 2:14,18,20 2:23 3:19 4:12 6:7 6:8 7:11 8:2 11:5 12:16 14:13 15:2 15:13 16:5,12 17:16 18:17,21,22 18:23 28:15 32:2 42:25
trustee's 15:2 37:5
trustees 31:23 32:5 34:18 39:1 39:25 43:25 46:3
try 51:12 56:3
trying 11:21 41:18 43:23 46:19 50:9
tsalko 2:7
tuesday 49:19,21 56:2 57:13
tuition 32:25 33:2 33:3,24 35:12 36:24
tune 12:7
turn 8:6
turro 2:15
two 11:4 12:8,9 16:25 18:9 20:13 23:16 32:17 38:22 42:20 55:18
type 39:24,24

u

u.s. 1:23
uh 38:19 44:14 46:12 54:6,16 57:8

ultimate 7:22 22:1
ultimately 18:25 23:21 24:13 29:7 34:1
uncomfortable 41:19
underlying 30:13 34:2
understand 8:18 9:16 11:19 12:4 13:7 15:20 30:15 33:15 35:3,4 36:4 39:3 41:8,20 43:1 43:11,15,15 46:22
understanding 10:4 15:21
understood 28:19
unidentified 1:25 57:21
uninjured 39:13
union 3:13
united 1:1,12 2:5 2:6 3:16 16:12 17:15 19:25 20:2 28:14
university 37:3
unpunished 42:12
unsatisfied 8:1
unsecured 2:22 3:19 4:12 5:3 6:7 23:15
unsuccessfully 43:24
unwilling 39:18
upset 57:16,17
use 21:24 48:13

v

vacation 20:3
valid 33:8,9
vary 12:2
veiled 30:20
vent 43:7

veritext 59:22
viable 39:4
view 7:13,15 8:10 10:20,21 11:25 12:1,3 15:21 38:1 39:24 40:3,5 42:11 53:20
viewed 32:11,12 39:10
views 8:17
vladislav 2:6
volunteering 42:3

w

w 25:2
wait 12:2
waiting 22:25 23:18 29:10 48:2 48:17,21 57:18
waive 32:6,7
waldemar 2:21
walks 42:25 43:4
want 7:6 8:15,22 8:25 9:12,15,18 9:23 13:4 24:17 25:8 31:2 32:9 42:13 44:8,10,24 45:16,23 46:4,25 47:11,13 53:13,14 55:8,15 56:4,8,12 56:14,19,21
wanted 30:11 37:5 45:13,15,24
wants 11:16,16 21:3 24:23 46:3
way 14:11,20,21 21:11 23:4 27:4 29:17 38:7 40:7 46:8,8 48:12 55:15
we've 8:6 11:17 41:21 42:19 55:5 55:10

| | |
|---|---|
| **wedding** 35:14 | **year** 12:9,21 13:9 |
| **week** 46:1 | 13:14 36:14,18 |
| **weekend** 49:22 | **years** 13:15 14:7 |
| **weeks** 45:15 48:19 | 37:25 |
| **weinstock** 2:13 | **york** 1:2,15 5:5 |
| **welcome** 46:11 | 21:10,19 23:13 |
| **went** 7:22 12:11 | 30:7 |
| 12:14 13:11,12 | **young** 54:24 |
| 33:5 36:7 | |
| **westchester** 3:17 | |
| **whalley** 2:3 | |
| **whatnot** 27:25 | |
| 29:13 | |
| **william** 2:21 | |
| **willing** 25:15 46:9 | |
| **willness** 3:3 | |
| **win** 34:8 | |
| **wish** 21:3 33:10 | |
| 34:21 | |
| **withdraw** 27:9 | |
| **withdrawals** | |
| 18:10 | |
| **withdrawing** 19:9 | |
| 19:21 | |
| **withdrew** 18:13 | |
| **work** 26:12 27:4 | |
| 32:3,4 | |
| **working** 23:1 | |
| **works** 18:2 21:19 | |
| **world** 34:21 51:23 | |
| 53:20 | |
| **write** 33:17 | |
| **written** 53:23 | |
| **wrong** 11:10 | |
| 15:16 26:3 39:18 | |
| 40:5 | |
| **x** | |
| **x** 1:4,10 22:8 | |
| 38:10 40:2 58:1 | |
| **y** | |
| **yeah** 7:8 27:3 | |
| 40:14 41:5 48:17 | |
| 50:3 | |