**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Lauren C. Kiss

*Counsel to Robert S. Rosenfeld, in his capacity*
   *as Plan Administrator of Dowling College*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                      :     Chapter 11
                                                           :
DOWLING COLLEGE,                                           :     Case No. 16-75545 (REG)
f/d/b/a DOWLING INSTITUTE,                                 :
f/d/b/a DOWLING COLLEGE ALUMNI                             :
ASSOCIATION,                                               :
f/d/b/a CECOM,                                             :
a/k/a DOWLING COLLEGE, INC.,                               :
                                                           :
                                            Debtor.        :
-------------------------------------------------------------------x

**PLAN ADMINISTRATOR'S MOTION SEEKING ENTRY OF AN ORDER**
**(I) DISCHARGING THE PLAN ADMINISTRATOR AND HIS PROFESSIONALS OF**
**ANY FURTHER DUTIES IN THE CHAPTER 11 CASE AND (II) CLOSING**
**THE CHAPTER 11 CASE AND ENTERING A FINAL DECREE**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Robert S. Rosenfeld, in his capacity as Plan Administrator for Dowling College

("Dowling" or the "Debtor"), by and through his undersigned counsel, as and for his motion (the

"Motion") pursuant to sections 105(a) and 350 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 3022 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), seeking entry of an order (i) discharging the Plan Administrator and his

professionals from further duties in the above-captioned chapter 11 case (the "Chapter 11 Case"), and (ii) closing the Chapter 11 Case and entering a final decree, respectfully represents as follows:

## PRELIMINARY STATEMENT

The Plan Administrator's role in this post-confirmation Chapter 11 Case includes implementing the applicable provisions of the Debtor's First Amended Joint Plan of Liquidation (the "Plan")[1] and administering the Debtor's estate in accordance with the terms of the Plan and the Plan Administrator Agreement. In particular, the Plan Administrator was tasked with the management and liquidation of the Debtor's Estate and the making of distributions to holders of certain allowed claims pursuant to the Plan. As of the filing of this Motion, all Disputed Claims have been resolved, all of the Assets have been liquidated or otherwise abandoned, all of the Restricted Assets have been transferred in accordance with applicable non-bankruptcy law, all duties and obligations of the Plan Administrator and Unsecured Creditors Trustee have been fulfilled, and all Distributions required to be made by the Plan Administrator and Unsecured Creditor Trustee under the Plan, Plan Administrator Agreement, and Unsecured Creditor Trust Agreement, respectively, have been made.

Accordingly, the Plan Administrator respectfully requests the entry of an order, in substantially the same form as that annexed hereto as **Exhibit A**, (i) discharging the Plan Administrator and his professionals from further duties in the Chapter 11 Case, and (ii) closing the Chapter 11 Case.

---

1 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief requested herein is sections 105(a) and 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022, and Rule 3022-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules").

## BACKGROUND

A.      **Chapter 11 Case**

8.      On November 29, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (this "Court" or "Bankruptcy Court").

9.      On December 20, 2018 (the "Confirmation Date"), the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order Pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020 Confirming the First Amended Plan of Liquidation of Dowling College Pursuant to Chapter 11 of the Bankruptcy Code, As Modified* [Docket No. 662] (the "Confirmation Order").

10.     The effective date of the Plan occurred on January 14, 2019.  *See* Docket No. 671.

11.     Pursuant to the Plan and Confirmation Order, Robert S. Rosenfeld was appointed the Plan Administrator to implement the Plan in a manner consistent with the terms and conditions set forth therein.

B.      **Plan Administrator and Unsecured Creditor Trustee's**
        **Satisfaction of Plan Obligations**

i.      **Restricted Assets**

12.     Substantially all of the Debtor's physical assets were liquidated during the Chapter 11 Case[2] and the Plan Administrator was charged with the disposition of the Restricted Assets, which were classified as Non-Estate Property and consisted of approximately 51 restricted assets totaling approximately $1.5 million in endowed scholarship funds historically used for particular purposes, as expressed by the donors, in addition to a $1.25 million unmatured life insurance policy donated in connection with one of the endowed scholarship funds.

13.     The Plan Administrator and his counsel worked closely with the New York State Office of the Attorney General, Charities Bureau (the "AG") in proposing releases and/or modifications to the scholarship criteria and providing descriptions of the proposed uses after such releases or modifications.  In addition and as required by the AG, the Plan Administrator wrote numerous letters to the donors of the Restricted Assets, informing them of Dowling's bankruptcy, requesting documentation regarding the restrictions placed on the Restricted Assets, and seeking their consent to modify the scholarship criteria and transfer the Restricted Assets funds to the Suffolk Community College Foundation, Inc. (the "Suffolk Foundation"), a not-for-profit corporation formed by Suffolk County Community College ("SCCC" and together with the Suffolk Foundation, "Suffolk") dedicated to advancing the mission of SCCC.  Only

---

[2] On June 27, 2022, the Plan Administrator filed a notice seeking to abandon the Debtor's interests in (i) New Made Island in Moriches Bay and (ii) 0 Montauk Highway, Oakdale, New York 11769 (the "Notice of Proposed Abandonment") [Docket No. 776].  No Objections were received to the Notice of Proposed Abandonment by the objection deadline and, accordingly, the Debtor's interests in (i) New Made Island in Moriches Bay and (ii) 0 Montauk Highway, Oakdale, New York 11769 were abandoned to Suffolk County on July 11, 2022.

one (1) donor consented to the transfer of funds in their particular Restricted Asset to the Suffolk Foundation.

14.    Section 555(d) of the New York Not-for-Profit Corporation Law ("NPL") sets forth a procedure whereby an institution may lift or modify a donor-imposed restriction on the management, investment, or purpose of an institutional fund if the fund is less than $100,000 in value and has been in existence for more than 20 years.  In January of 2021, and in accordance with NPL § 555(d), the Plan Administrator submitted an application to the AG seeking to release or modify the restrictions for a total of thirteen (13) Restricted Assets, totaling in the aggregate approximately $550,000 (collectively, the "Older Funds Notice").  No objections were received to the Older Funds Notice and in June of 2021, the Plan Administrator transferred approximately $560,000 to the Suffolk Foundation.

15.    In April of 2021, the Plan Administrator filed a petition (the "Cy Pres Petition") with the Supreme Court of the State of New York, County of Suffolk (the "State Court"), requesting that the Court issue an order pursuant to NPL § 555 and EPTL §8.1-1(c), directing Dowling with regard to the manner of disposition of thirty-six (36) restricted assets, totaling in the aggregate approximately $990,00, plus the $1.25 million unmatured life insurance policy. As part of the Cy Pres Petition, the Plan Administrator requested that the Restricted Assets be transferred to the Suffolk Foundation.

16.    On September 1, 2021, the State Court held a hearing to consider the relief sought in the Cy Pres Petition.  The donors of two (2) of the Restricted Assets (the "Objecting Donors") objected to the relief sought in the Cy Pres Petition and requested that the funds (or a portion of the funds) in their respective Restricted Asset be transferred to Siena College and SUNY Old Westbury, respectively.  After responding to questions and submitting documentation to the

AG's office, the parties submitted to the State Court a consensual form of proposed order that transferred certain funds in the Restricted Assets in accordance with the Objecting Donors requests.

17.     Between September 29, 2021 and November 15, 2021, the State Court entered thirty-six (36) orders directing the transfer of funds in the Restricted Assets.  As a result of these orders, the Plan Administrator transferred approximately $993,000 to the Suffolk Foundation, $25,000 to Siena College, and approximately $31,000 to the Old Westbury College Foundation, a not-for-profit corporation dedicated to assisting the State University of New York at Old Westbury.

18.     In addition, in December of 2021, the last remaining Restricted Asset – the $1.25 million John Hancock Joint Variable Life Insurance Policy on the lives of David Ochoa and Myrka Gonzalez as insured and naming Dowling as the policy owner and beneficiary was transferred to the Suffolk Foundation.

<strong>ii.     Unsecured Creditor Trust Assets</strong>

19.     The Plan provided for the establishment of the Unsecured Creditor Trust, the transfer of Unsecured Creditor Trust Assets to the Unsecured Creditor Trust, and the pursuit of Causes of Action by the Unsecured Creditor Trustee for the benefit of Class 7 General Unsecured Creditors.  *See* Plan, §§ 5.4, 5.5.

20.     Pursuant to the Unsecured Creditor Trust Agreement, Ronald J. Friedman, Esq., was appointed the Unsecured Creditor Trustee.  On May 13, 2019, the Unsecured Creditor Trustee filed a complaint commencing an adversary proceeding (the "Adversary Proceeding") against defendants Patricia M. Blake, Gerald J. Curtin, Denise Fischer, Myrka Gonzalez, Jack O'Connor, Dennis O'Doherty, Ronald Parr, Joseph K. Posillico, Michael P. Puorro, John

Racanelli, Deborah K. Richman, Scott Rudolph, and Ralph Cerullo (collectively, the "Defendants").  *See* Docket No. 1, Adv. Proc. No. 19-8063 (REG).  The complaint sought to recover damages based on Defendants alleged (a) breach of their fiduciary duty to the Debtor, (b) breach of their duty of loyalty to the Debtor, (c) breach of their duty of good faith to the Debtor, (d) self-dealing, and (e) waste and mismanagement of the Debtor's assets.

21.    The Defendants disputed the allegations in the complaint and engaged in extensive good faith negotiations with the Unsecured Creditor Trustee, which resulted in a settlement set forth in a confidential settlement agreement.

22.    On October 3, 2019, the Unsecured Creditor Trustee filed a notice of dismissal with prejudice of the Adversary Proceeding.

23.    The Unsecured Creditor Trustee has carried out his responsibilities under the Plan and the Unsecured Creditor Trust Agreement and determined, after an investigation, that no other Causes of Action existed.

### iii.    **Distributions**

24.    The Plan provided for the appointment of a Plan Administrator to make distributions to the holders of Allowed Claims (other than General Unsecured Claims).  *See* Plan, §§ 5.2, 5.3.  The Plan also provided for the the establishment of an Unsecured Creditor Trust to, among other things, make distributions to Class 7 General Unsecured Creditors. *See* Plan § 5.4.

25.    In addition to Administrative Expense Claims, the DIP Term Loans, Professional Fee Claims, and Priority Tax Claims, which were not required to be designated pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan designated the following seven (7) classes of Claims:  Class 1 (Prepetition Series 1996 Bond Claims); Class 2 (Prepetition Series 2002 Bond Claims); Class 3 (Prepetition Series 2006 Bond Claims); Class 4 (Prepetition Series 2015

Bond Claims); Class 5 (Other Secured Claims); Class 6 (Priority Non-Tax Claims); and Class 7 (General Unsecured Claims).  *See* Plan, Article III.

26.    Class 1 consisted of the Prepetition Series 1996 Bond Claims.  The Plan Administrator did not make any distribution to the Prepetition Series 1996 Bond Trustee.  The Deficiency Claim held by the Prepetition Series 1996 Bond Trustee was treated as a Class 7 General Unsecured Claim, subject to the restriction discussed in paragraph 32 below.

27.    Class 2 consisted of the Prepetition Series 2002 Bond Claims.  The Plan Administrator made distributions, totaling in the aggregate $2,601,217, to the holders of Allowed Class 2 Claims, resulting in a 22% recovery for the holders of Allowed Class 2 Claims.  The Deficiency Claim held by the Prepetition Series 2002 Bond Trustee was treated as a Class 7 General Unsecured Claim, subject to the restriction discussed in paragraph 32 below.

28.    Class 3 consisted of the Prepetition Series 2006 Bond Claims.  The Plan Administrator made distributions, totaling in the aggregate $25,007,826, to the holders of Allowed Class 3 Claims, resulting in a 63% recovery for the holders of Allowed Class 3 Claims. The Deficiency Claim held by the Prepetition Series 2006 Bond Trustee was treated as a Class 7 General Unsecured Claim, subject to the restriction discussed in paragraph 32 below.

29.    Class 4 consisted of the Prepetition Series 2015 Bond Claims.  The Plan Administrator made distributions, totaling in the aggregate $9,298,663, to the holders of Allowed Class 4 Claims, resulting in a 101% recovery for the holders of Allowed Class 4 Claims.

30.    Class 5 consisted of the Other Secured Claims.  The Plan Administrator did not make any distribution to the holders of Other Secured Claims as such claims were classified as deficiency claims because the net proceeds from the sale of the Assets on which such Holder had

a Lien were not sufficient to pay such Holder and such claims were treated as Class 7 General Unsecured Claims.

31.     Class 6 consisted of the Priority Non-Tax Claims.  The Plan Administrator made distributions totaling $2,934,532.99 to the holders of Allowed Class 6 Claims.

32.     Class 7 consisted of the General Unsecured Claims.  Deficiency Claims of ACA and the Prepetition Bond Trustees are included in Class 7.  As part of the Unsecured Creditor Settlement, ACA and the Prepetition Bond Trustees agreed that they would not receive distributions as members of Class 7 until holders of Class 7 Claims other than the ACA and the Prepetition Bond Trustees receive at least ten percent (10%) on account of such claims.  The Unsecured Creditor Trustee made a 13.91% distribution to the holders of Allowed Class 7 Claims, with aggregate payments totaling $2.6 million.

iv.     **Books and Records**

33.     The Plan required the Plan Administrator to dispose of the Debtor's Records in accordance with the terms of the Records Disposition Order.  Among other things, the Records Disposition Order required the Plan Administrator to notify (i) Cigna Health and Life Insurance Company ("Cigna") before any proposed destruction of records relating to employee benefits, and (ii) New York State Education Department ("NYSED") before any proposed destruction of backup tapes relating to data existing in Banner, and provide Cigna and NYSED with an opportunity to object and be heard with regard to any objection.  After receipt of the proposed destruction of records and backup tapes, respectively, Cigna informed counsel to the Plan Administrator that it had no objection to the destruction of records relating to employee benefits and NYSED informed counsel to the Plan Administrator that it had no desire to retain the backup tapes.

34.     With the exception of the backup tapes, all of the Debtor's Records have been destroyed or are in the process of being destroyed.[3]  In accordance with the terms of the Records Disposition Order, the backup tapes will be destroyed on or after January 14, 2024.[4]

35.     With regard to transcripts and related grade reports for former students of the Debtor, the Debtor entered into various arrangements with Long Island University ("LIU") during July 2016, whereby LIU agreed to act as custodian of the Debtor's academic transcripts and the Debtor agreed to grant LIU the right to use the Dowling College seal for purposes of issuing transcripts to former students.  Accordingly, given this arrangement with LIU, the Plan Administrator had no obligation to former students in connection with transcripts or other related student record matters.

### RELIEF REQUESTED

36.     By this Motion, the Plan Administrator seeks entry of an order (i) discharging the Plan Administrator and his professionals from further duties in the Chapter 11 Case, and (ii) closing the Chapter 11 Case and entering a final decree and order pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

37.     In addition, at the request of NYSED for the clarity of dissolution of the Debtor, the proposed order contains the following sentence:  "For the avoidance of doubt, as of August 15, 2019, in accordance with Section 5.14(a) of the Plan, the Debtor and its charter as an education corporation were deemed dissolved in accordance with the applicable Sections of the Education Law of the State of New York" (the "Dissolution Provision").

---

[3] Iron Mountain has begun the process of destroying the remaining Records of the Debtor and counsel to Iron Mountain with inform counsel to the Plan Administrator when the destruction process is complete.
[4] The backup tapes are currently located at the offices of RSR Consulting, LLC in a bankers box.

## BASIS FOR REQUESTED RELIEF

38.    The Chapter 11 Case has been fully administered within the meaning of section 350 of the Bankruptcy Code, making it appropriate for the Court to enter a final decree closing the Chapter 11 Case.  "After an estate is fully administered and the court has discharged the trustee, the court shall close the case."  11 U.S.C. § 350(a); *see also* Bankruptcy Rule 3022 ("After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party interest, shall enter a final decree closing the case.").

39.    The term "fully administered" is not defined in the Bankruptcy Code or Bankruptcy Rules.  However, in determining whether an estate has been fully administered for final decree purposes, courts frequently have considered the following non-exhaustive factors set forth in the advisory committee's note to the 1991 amendment to Bankruptcy Rule 3022:

    (i)    whether the order confirming the plan has become final;

    (ii)    whether deposits required by the plan have been distributed;

    (iii)    whether the property proposed by the plan to be transferred has been transferred;

    (iv)    whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

    (v)    whether payments under the plan have commenced; and

    (vi)    whether all motions, contested matters, and adversary proceedings have been finally resolved.

Bankruptcy Rule 3022, advisory committee's note to 1991 amendment; *see, e.g., In re Aquatic Dev. Grp. Inc.*, 352 F.3d 671, 676 (2d Cir. 2003); *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 541-545 (Bankr. E.D.N.Y. 1999).

40.    The Chapter 11 Case has been "fully administered" within the meaning of section 350 of the Bankruptcy Code.  In particular:

    (i)    The Confirmation Order has become final;

    (ii)    The Plan does not require any deposits;

    (iii)    The property required to be transferred under the Plan has been transferred;

    (iv)    The business and management of the property has been dealt with by the Plan;

    (v)    The Plan Administrator and Unsecured Creditor Trustee have finished making payments under the Plan; and

    (vi)    There are no outstanding contested matters or adversary proceedings.

41.    The Plan Administrator has filed all post-confirmation quarterly operating reports with the UST through the second quarter of 2022 and paid all outstanding fees of the UST for this Chapter 11 Case pursuant to 28 U.S.C. § 1930(a)(6) through the second quarter of 2022. The Plan Administrator will file any remaining post-confirmation quarterly reports and pay any remaining quarterly fees owed to the UST within forty-five (45) days after entry of an order approving this Motion.

42.    Based on the foregoing, ample justification exists for entry of a final decree closing this Chapter 11 Case.

43.    With respect to the Dissolution Provision, Section 5.14 of the Plan, entitled "Dissolution" provides:

(a)    <u>Automatic Dissolution</u>. Subject to earlier application by the Debtor and Order of this Court, as of August 15, 2019, the Debtor and its charter as an education corporation shall be deemed dissolved in accordance with applicable Sections of the Education Law of the State of New York. Notwithstanding any prior stays or provisions of this Plan to the contrary and following August 15, 2019, the Board of Regents is permitted to take such administrative actions as it may deem appropriate to formally recognize the

12

> Debtor's dissolution and termination of its charter in accordance with the terms of this Plan. No further notice, filings, payments, or other actions shall be required in furtherance of such dissolution by the Debtor or the Board of Regents. Notwithstanding dissolution as provided for herein, in accordance with Section 220(5) of the Education Law of the State of New York, the Plan Administrator is empowered to continue to settle the affairs of the Debtor in accordance with the terms of this Plan.

Plan, § 5.14(a).

44.    Paragraph 8 of the Confirmation Order provides that "[u]pon entry of an order closing the Chapter 11 Case, the Debtor shall be deemed dissolved for all purposes." Confirmation Order, ¶ 8.

45.    Accordingly, given the potential inconsistency between the terms of the Plan and the Confirmation Order, NYSED requests the addition of the Dissolution Provision in the proposed order to make clear that the Debtor and its charter as an education corporation were deemed dissolved as of August 15, 2019.

## **NOTICE**

46.    Notice of this Motion will be provided to (i) the UST; (ii) the Prepetition Bond Trustees and ACA and their respective counsel; (iii) counsel to the Unsecured Creditor Trustee; and (iv) all parties filing a notice of appearance in the Chapter 11 Case.  The Plan Administrator submits that no other notice need be given.

**WHEREFORE**, the Plan Administrator respectfully requests the entry of an order substantially in the form of **Exhibit A** attached hereto, (i) discharging the Plan Administrator and his professionals from further duties in the Chapter 11 Case, (ii) closing the Chapter 11 Case, and (iii) granting such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         July 22, 2022

                                   **KLESTADT WINTERS JURELLER**
                                   **SOUTHARD & STEVENS, LLP**


                          By:   /s/ Sean C. Southard
                                Sean C. Southard
                                Lauren C. Kiss
                                200 West 41st Street, 17th Floor
                                New York, New York 10036-7203
                                Tel: (212) 972-3000
                                Fax: (212) 972-2245
                                Email: ssouthard@klestadt.com
                                       lkiss@klestadt.com

                                *Counsel to Robert S. Rosenfeld, in his*
                                *capacity as Plan Administrator of Dowling*
                                *College*